UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JANE DOE, *et al*.,

*Plaintiffs*,

-against-

1:20-cv-0840
(BKS/CFH)

HOWARD ZUCKER, in his official capacity as
Commissioner of the New York State Department of
Health, *et al*.,

*Defendants*.

---

## STATE DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants Howard Zucker, M.D.,*
*J.D., Elizabeth Rausch-Phung, M.D., and the*
*N.Y.S. Department of Health*
The Capitol
Albany, New York 12224-0341

MICHAEL G. McCARTIN
Assistant Attorney General, Of Counsel
Bar Roll No. 511158
Tel.: 518-776-2620
michael.mccartin@ag.ny.gov

ANDREW W. KOSTER
Assistant Attorney General, Of Counsel

August 24, 2020

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................................1

STATEMENT OF FACTS………………..……………………………………………………4

    A. Mandatory Vaccination Laws in New York State…………………………………………4
    B. DOH Emergency Medical Exemption Regulations………………………………………6

STANDARD OF REVIEW…………………………………………………………………8

ARGUMENT .........................................................................................................................9

    I.      EACH OF PLAINTIFFS' FOUR CONSTITUTIONAL CLAIMS FAIL UNDER
          THE WEIGHT OF WELL-SETTLED LAW.…………………………............9

    II.     PLAINTIFFS' REHABILITATION ACT CLAIMS FAIL AS A MATTER OR
         LAW…………………………………………………………………………17

    III.   THE CHILDREN'S HEALTH DEFENSE LACKS STANDING TO BRING THIS
         ACTION……………………………………………………………………..19

    IV.   PLAINTIFFS' CONSTITUTIONAL CLAIMS AGAINST DOH MUST BE
         DISMISSED PURSUANT TO THE ELEVENTH AMENDMENT………………..23

CONCLUSION........................................................................................................................24

## PRELIMINARY STATEMENT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Howard Zucker, M.D., J.D., the Commissioner of the New York State Department of Health ("DOH" or "Department"); Elizabeth Rausch-Phung, M.D., the Director of the Bureau of Immunizations for the DOH; and DOH (collectively, "State Defendants"), respectfully move to dismiss Plaintiffs' Complaint in this purported class action lawsuit.  Because Plaintiffs fail to state a viable cause of action, this Court should dismiss the Complaint in its entirety.

Plaintiffs are eight families with children with alleged special medical needs that Plaintiffs assert make them particularly vulnerable and unable to receive certain vaccinations that are required by New York State Public Health Law § 2164 in order to attend school.  The Children's Health Defense ("CHD") is also a Plaintiff in this action.  The Complaint contains six total claims, four of which are constitutional challenges under the Fourteenth Amendment: (1) an alleged substantive due process claim, (2) an alleged overburdening of Plaintiffs' parenting rights, (3) an alleged overburdening of Plaintiffs' informed consent rights, and (4) an alleged improper denial of a free public education to Plaintiffs.  Plaintiffs also bring two additional claims under § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794(a)).

In all six of these claims, Plaintiffs challenge 2019 changes to DOH regulations regarding the availability of medical exemptions from vaccinations generally required for all schoolchildren. The new regulations incorporate Centers for Disease Control and Prevention ("CDC") immunization schedules and guidelines for when immunization may be detrimental to a child's health.  The CDC's recommendations are clearly authoritative, rational, and reasonable, despite Plaintiffs' assertions, and DOH may properly rely upon them and other nationally-recognized evidence-based standards of care, to inform the DOH regulations related to medical exemptions

for vaccinations. Furthermore, the regulations expressly permit a physician to determine the immunization is detrimental to the health of the child if it is determined the child has a medical contraindication or precaution to a specific immunization consistent with CDC guidance "or other nationally recognized evidence-based standard of care," something plaintiffs fail to acknowledge.

Therefore, the issue at bar boils down to a dispute over precisely *who* decides what constitutes a legitimate medical exemption under Public Health Law § 2164(8) and its controlling regulations found at 10 N.Y.C.R.R. Subpart 66-1.1.  Will it be, as the New York State Legislature has directed, the expert DOH officials who are entrusted with the public health of the entire State of New York, or will it be Plaintiffs and their individual medical providers?  The short answer is that, under the law, which includes century-old U.S. Supreme Court precedent and more recent precedent from the Second Circuit Court of Appeals, the DOH public officials are properly entrusted with that authority.

Notably, the hinge claim that Plaintiffs advance here – that medically-untrained local-school officials can improperly overrule the determinations of the Plaintiffs' medically-trained physicians – is a baseless claim that is not grounded in fact or law.  First and foremost, local-school officials base their determinations on the well-established professional medical guidance contained in the DOH's regulations – the nationally-recognized evidence-based standards of medical care, such as CDC's Advisory Committee on Immunization Practices ("ACIP"), established by medical professionals.

Local-school officials also rely upon the expert advice of medical professionals – both private doctors and officials at the DOH – *before* they make an initial decision regarding a child's application for a medical exemption to the vaccination requirement.  Then *after* that initial decision is made, the parents may administratively appeal it to the Commissioner of Education pursuant to

Education Law § 310.   During the administrative appeals process before the State Education Department ("SED"), SED officials can consult with DOH officials to determine whether they are correctly interpreting DOH's regulations and the associated ACIP guidance.   The SED Commissioner can reverse the initial decision if she determines that the decision by the school officials to deny the medical exemption was improper (*i.e.* not made in accordance with DOH's regulations).   If the parents lose in the administrative appeal, they can avail themselves of a full-blown due process hearing before a State court in a N.Y.C.P.L.R. Article 78 proceeding.   Indeed, parents can even bypass the SED administrative appeal process, if they so choose, and they can proceed directly to an Article 78 proceeding.   In an Article 78 proceeding, if the State court determines that the decision denying the vaccination exemption was arbitrary or capricious, the State court can provide relief and order a school to enroll that particular child in the school.   *See, e.g., Lynch v. Clarkstown Cent. Sch. Dist*., 155 Misc. 2d 846 (Sup. Ct. 1992) (in an Article 78 hearing the Supreme Court heard testimony from the parties' various medical experts before making its decision).   So, it is simply not true that local-school officials can simply override Plaintiffs' medical experts without a valid basis supported by nationally-recognized standards of medical care – including the gold standards in disease prevention advanced by the CDC.

In sum, as supported by the overwhelming precedent presented below, public officials with expertise in public health must be entrusted to set the guidelines as to what constitutes a legitimate medical exemption from vaccination.   Indeed, each of Plaintiffs' four Fourteenth Amendment causes of action must be dismissed, as well as their two claims brought pursuant to the Rehabilitation Act.   Plaintiffs here simply have not stated a proper cause of action and all six claims presented in this federal action must be dismissed.

3

## STATEMENT OF FACTS

**A.      Mandatory Vaccination Laws in New York State**

Vaccination laws requiring immunizations prior to attending school protect the health and safety of children and the general public, and they have been upheld by the U.S. Supreme Court and by state courts across the country for more than a century.  Specifically, New York Public Health Law § 2164 requires children aged two months to eighteen years to be immunized from certain diseases before they can attend "any public, private or parochial child caring center, day nursery, day care agency, nursery school, kindergarten, elementary, intermediate or secondary school."  Public Health Law § 2164(1)(a).  Children are required to be immunized against poliomyelitis, mumps, measles, diphtheria, rubella, varicella, hepatitis B, pertussis, tetanus, and where applicable, Haemophilus influenzae type band pneumococcal disease.  *Id*. at § 2164(7).  Schools cannot permit any child to be admitted to or attend school in excess of fourteen days without either a certificate or some other acceptable evidence showing that the child was immunized, or documentation that the child is "in process" of complying their immunization series pursuant to 10 N.Y.C.R.R. Subpart 66-1.1(j).  *Id*.

Public Health Law § 2164 initially provided for two exemptions to the vaccination requirements: a medical exemption requiring a physician's certification that the physician had determined that the vaccination would be detrimental to the child's health, and a non-medical exemption that required only a statement by the parent indicating that they objected to vaccination on religious grounds.  *Id*. at §§ 2164(8) and (9); *see also F.F. v. State*, 66 Misc.3d 467, 2019 WL 6709264 at *1 (Sup. Ct. Albany Co. Dec. 3, 2019).

In 2018 and 2019, however, New York State faced a growing outbreak of measles, which prompted the New York State Legislature to reevaluate both of these exemptions.  Specifically, the

Legislature took note that, between October 2018 and May 2019, there were at least 810 confirmed measles cases in New York State.  Sponsor Memo, S2994A.  At that time, the Legislature also found that the State faced declining vaccination rates.  N.Y. Reg. Sept. 4, 2019 at 23.  For instance, from 2017-2018, there were 280 New York schools with vaccination rates of only 85 percent, and, alarmingly, 211 of those schools had vaccination rates as low as 70 percent, which jeopardized "herd immunity," posing a significant public health risk.  N.Y. Reg. Sept. 4, 2019 at 23.

Concerning the issue of "herd immunity," the Sixth Circuit Court of Appeals has informatively explained the concept:

> The importance of extensive vaccination should not be understated – the efficacy of vaccination relies on the theory of 'herd immunity.'  In essence, once a critical mass of the population is immune to a particular disease, the chance that unvaccinated individuals contract that disease drastically decreases.  *See* Dina Nathanson, *Herd Protection v. Vaccine Abstention: Potential Conflict Between School Vaccine Requirements and State Religious Freedom Restoration Acts*, 42 Am. J.L. & Med. 621, 624 (2016).  The critical mass needed to achieve herd immunity varies by disease, but is uniformly large.  *Id*. ("[T]he following immunization thresholds are required: measles: 83-94[%]; mumps: 75-86%; rubella: 83-85%; diphtheria: 85%; polio: 80-86%; pertussis: 92-94%; and varicella: 90%.").  Thus, to stop the outbreak of preventable diseases in public school, the significant majority of children entering the school system must be vaccinated.

*Nikolao v. Lyon*, 875 F.3d 310, 318 (6th Cir. 2017).

With the aim of controlling the outbreak of measles in New York, preventing future outbreaks, and increasing vaccinations rates generally to ensure proper "herd immunity," on June 13, 2019, the Legislature repealed the religious exemption to mandatory vaccination requirements. L. 2019, c. 35 §§ 1 and 2; Sponsor Memo, S2994A; *F.F. v. State*, 65 Misc.3d 616, 631 (Sup. Ct. Albany Co., Aug. 23, 2019) ("[t]he repeal was enacted on the heels of the most serious outbreak of measles in New York in 25 years, which was concentrated in areas of low vaccination rates").

Since then, numerous lawsuits have been brought challenging that legislative repeal, none of which have been successful.  At least one such state court challenge – brought by some of the

counsel representing Plaintiffs in this action – has already been reviewed and dismissed on the merits by the Supreme Court (Albany County) in *F.F. v. State*, 2019 WL 6709264 at *1. Additionally, in a slew of other cases (both federal and state), courts have rejected requests for injunctive relief from the repeal.  *See, e.g., V.D. v. State*, 403 F.Supp.3d 76 (E.D.N.Y. 2019); *Stoltzfus v. Cuomo*, Index No. 20190311, NYSCEF Doc. No. 56 (Sup. Ct., Seneca Cty, Nov. 4, 2019); *Sullivan-Knapp v. Cuomo*, Index No. E2019-1338CV, NYSCEF Doc. No. 41 (Sup. Ct., Steuben Cty, Oct. 9, 2019); *Mermigis v. Cuomo*, Index No. 608729/2019, NYSCEF Doc. No. 15 (Sup. Ct., Nassau Cty. June 29, 2019).

### B.    DOH Emergency Medical Exemption Regulations

Following the legislative repeal, DOH determined that it was necessary to update its regulations governing mandatory vaccinations in order to conform the then existing regulations with Public Health Law § 2164.  N.Y. Reg. Sept. 4, 2019 at 22-24; N.Y. Reg. Dec. 31, 2019 at 25. The Commissioner of Health is authorized to "adopt and amend rules and regulations to effectuate the provisions and purposes of [Public Health Law § 2164]."  Public Health Law § 2164(10).  The Public Health Law also generally requires the Commissioner to establish and operate adult and child immunization programs necessary to prevent or minimize the spread of disease and protect the public health.  *See* Public Health Law § 206(l).  Pursuant to that authority, DOH promulgates regulations to govern vaccinations.  *See* 10 N.Y.C.R.R. Subpart 66-1.

On August 16, 2019, DOH and the New York State Office of Children and Family Services jointly issued emergency regulations designed to strengthen and clarify the process by which physicians can grant medical exemptions to vaccination requirements ("Emergency Regulations"). The Emergency Regulations conformed Subpart 66-1 to the text and intent of the legislative amendments to Public Health Law §§ 2164 and 2168 by removing references to the non-medical

exemptions and strengthening and clarifying the remaining medical exemptions to prevent inappropriate use of that exemption.

Notably, the Emergency Regulations did not change the requirement that the relevant document signed by the physician certify that immunization may be detrimental to the child's health, contain sufficient information to identify a medical contraindication to a specific immunization, and specify the length of time the immunization is medically contraindicated. *See* 10 N.Y.C.R.R. § 66-1.3(c). The requirement that such a certification must be completed annually also was unchanged. In addition, the Emergency Regulations defined the term "may be detrimental to the child's health," as used in Public Health Law § 2164(8). Specifically, the new regulations now provide that a physician must determine "that a child has a medical contraindication or precaution to a specific immunization consistent with [the CDC Advisory Committee on Immunization Practices] guidance *or other nationally recognized evidence-based standard of care*." See 10 N.Y.C.R.R. § 66-1.1(l) (emphasis added); *see also* N.Y. Reg., Sept. 4, 2019 at 23.[1] Thus, these regulatory changes conform the regulations with the current guidance from the CDC's Advisory Committee on Immunization Practices ("ACIP"). Importantly, the CDC maintains schedules and guidelines for when immunization may be detrimental to a child's health due to a medical contraindication or precaution to a specific immunization, which is a nationally recognized scientific-based standard of care.

---

[1] Examples of other nationally-recognized evidence-based standards of care come from: (1) the Infectious Diseases Society of America ("IDSA"), which has clinical practice guidelines for vaccination of the immunocompromised host; (2) the American Academy of Pediatrics ("AAP"); and (3) the American Academy of Family Physicians ("AAFP"). The AAP and AAFP both publish vaccine recommendations that closely mirror, but sometimes differ from, the ACIP guidelines. The AAP also addresses contraindications and precautions to vaccination in its *Red Book: Report of the Committee on Infections Diseases*. *See* https://redbook.solutions.aap.org/redbook.aspx (last visited on August 24, 2020).

By November 2019, the measles emergency was still present, with the number of confirmed cases having risen to 1,075.  Thus, on November 14, 2019, the Emergency Regulations were renewed.  Final regulations were filed on December 17, 2019, and were made permanent on December 31, 2019.  *See* N.Y. Reg., Dec. 31, 2019 at 25.

## STANDARD OF REVIEW

As this Court is aware, to survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'"  *Mayor & City Council of Balt. v. Citigroup, Inc*., 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. (quoting *Bell*, 550 U.S. at 555).  The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To succeed on a "facial challenge" to a regulation, which is the claim that Plaintiffs bring against the State Defendants, a plaintiff must demonstrate that "no set of circumstances exists under which the [regulation] would be valid, *i.e*., that the law is unconstitutional in all of its applications."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).  However, "a facial challenge must fail where the [regulation] has a plainly legitimate sweep."  *Id*. (omits internal quotations).  Notably, the U.S. Supreme Court has held that facial challenges are disfavored by courts for several reasons:

> Claims of facial invalidity often rest on speculation. … Facial challenges also run
> contrary to the fundamental principle of judicial restraint that courts should neither

"'anticipate a question of constitutional law in advance of the necessity of deciding it'" nor "'formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Ashwander v. TVA*, 297 U.S. 288, 346–347, 56 S. Ct. 466, 80 L. Ed. 688 (1936) (Brandeis, J., concurring) (quoting *Liverpool, New York & Philadelphia S. S. Co. v. Commissioners of Emigration*, 113 U.S. 33, 39, 5 S. Ct. 352, 28 L. Ed. 899 (1885)). Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that "'[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.'" *Ayotte v. Planned Parenthood of Northern New Eng*., 546 U.S. 320, 329, 126 S. Ct. 961, 163 L. Ed. 2d 812 (2006) (quoting *Regan v. Time, Inc*., 468 U.S. 641, 652, 104 S. Ct. 3262, 82 L. Ed. 2d 487 (1984) (plurality opinion)).

*Id*. at 450-51. That is precisely why a plaintiff raising a facial challenge shoulders a "heavy burden." *Amidon v. Student Ass'n,* 508 F.3d 94, 98 (2d Cir. 2007). Indeed, "[f]acial invalidation is, manifestly, strong medicine, that [is to be employed] sparingly and only as a last resort." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) (internal quotation omitted).

## ARGUMENT

### Point I

### Each of Plaintiffs' Four Constitutional Claims Fails Under Well-Settled Law

Plaintiffs assert four separate constitutional claims challenging DOH's 2019 amendment to the regulations that now control the administration of the medical exemption allowable under Public Health Law § 2164(8). Specifically, Plaintiffs argue that the new regulations, as written by DOH and as applied by the localschool districts, violate the Fourteenth Amendment because: (1) they violate Plaintiffs' substantive due process rights since they shock the conscience (Claim One, Complt. at ¶¶ 355-359); (2) they overburden Plaintiffs' liberty interest in parenting (Claim Two, Complt. at ¶¶ 360-365); (3) they violate Plaintiffs' liberty interest in informed consent (Claim Three, Complt. at ¶¶ 366-370); and finally, (4) they deny Plaintiffs' right to a free public education, irrespective of whether the schoolchildren are immunized (Claim Four, Complt. at ¶¶ 371-373).

9

Because none of these Fourteenth Amendment claims can withstand the controlling precedent, this Court should find that the Plaintiffs fail to state a viable constitutional claim.

### A.  Plaintiffs fail to state a substantive due process claim

To begin, "[t]he standard for a substantive due process violation is difficult to meet" since "executive action only violates substantive due process rights when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"  *DeMartino v. N.Y. State Dep't of Labor*, 167 F. Supp. 3d 342, 368-69 (E.D.N.Y. 2016) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)).  Furthermore, "[i]n order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity."  *Lombardi v. Whitman*, 485 F.3d 73, 81 (2d Cir. 2007) (internal quotation marks and citation omitted).

This well-established standard cannot be met in the context of a mandatory school vaccination regulation because, for more than a century, the U.S. Supreme Court has upheld the right of states to enact and enforce laws requiring citizens to be vaccinated.  *See Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27 (1905)[2] and *Zucht v. King*, 260 U.S. 174 (1922). In 1902, the Board of Health in Cambridge, Massachusetts enacted a regulation to that effect, and the state thereafter filed a criminal complaint against an adult man, Mr. Jacobson, for failing to comply with that regulation.  In his defense, Mr. Jacobson argued that the law was unconstitutional because a compulsory vaccination law is unreasonable, arbitrary, and oppressive, and, therefore, hostile to his right to care for his own body and health in his own way.  197 U.S. at 26.

---

[2] Although this U.S. Supreme Court case is more than 100 years old, recent courts have noted that it is still good law.  *See, e.g., Altman v. Cty. of Santa Clara*, 2020 U.S. Dist. LEXIS 97535, at *20 (N.D. Cal. June 2, 2020) ("Although Plaintiffs attempt to dismiss *Jacobson* as 'arcane constitutional jurisprudence,' … the case remains alive and well …") (collecting cases).

The Supreme Court rejected that argument and held that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members," *id*. at 27, and "it [is] the duty of the constituted authorities primarily to keep in view the welfare, comfort, and safety of the many, and not permit the interests of the many to be subordinated to the wishes or convenience of the few." *Id*. at 29.  The Court concluded that the challenged statute was a proper exercise of legislative authority and that it did not deprive the plaintiff of his constitutional guarantees of liberty.

Then, seventeen years later, the Supreme Court considered another mandatory vaccination law, this one aimed solely at schoolchildren.  *Zucht*, 260 U.S. 174.  There, the plaintiff's children were excluded from a Texas public school because they were not vaccinated.  The plaintiff argued that the vaccination laws violated her rights to due process and equal protection under the U.S. Constitution.  The Court flatly rejected those arguments:  Relying on *Jacobson*, a unanimous Court held that a state may, consistent with the Federal Constitution, delegate to a municipal authority to determine under what conditions health regulations shall become operative, and that a municipality may vest in its officials broad discretion in matters affecting the application and enforcement of a health law.  *Zucht*, 260 U.S. at 176-77 (citing *Laurel Hill Cemetery v. San Francisco*, 216 U.S. 358 (1910) and *Lieberman v. Van De Carr*, 199 U.S. 552 (1905)).  The Court continued: "A long line of decisions by this Court had also settled that in the exercise of the police power reasonable classification may be freely applied and that regulation is not violative of the equal protection clause merely because it is not all-embracing."  *Id*. (citing *Adams v. Milwaukee*, 228 U.S. 572 (1913) and *Miller v. Wilson*, 236 U.S. 373, 384 (1915)).

Now fast-forward nearly 100 years to *Phillips v. City of N.Y.*, 775 F.3d 538 (2d Cir. 2015), in which the Second Circuit Court of Appeals heard a case where the plaintiffs challenged New

York State's mandatory vaccination requirement for schoolchildren – asserting a substantive due process claim as Plaintiffs do here.  Relying upon *Jacobson*, the Second Circuit made clear it would not entertain such an argument, stating:

> This argument is foreclosed by the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts* … The Supreme Court held that mandatory vaccination was within the State's police power. … The Court rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population as a whole. … Plaintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as *Jacobson* made clear, that is a determination for the legislature, not the individual objectors.   … Plaintiffs' substantive due process challenge to the mandatory vaccination regime is therefore no more compelling than Jacobson's was more than a century ago.

*Phillips*, 775 F.3d at 542-43 (citing *Caviezel v. Great Neck Pub. Schs.*, 500 F. App'x 16, 19 (2d Cir. 2012) (summary order) (rejecting substantive due process challenge to vaccination mandate based on *Jacobson*).

Consequently, under the clear precedent of *Jacobson* and its progeny, Plaintiffs' substantive due process claim fails as a matter of law.  The regulation at issue here is not arbitrary; rather, it is a narrowly tailored exemption to the mandatory immunization requirement.

### B.  Plaintiffs fail to state a parental rights claim

Although the Supreme Court has long recognized the constitutional stature of parental rights to the upbringing of children, *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), the Court has made clear that these parental rights are not absolute. *See Prince v. Massachusetts*, 321 U.S. 158, 167 (1944) ("the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare").  Here, Plaintiffs do not state a viable parental rights claim.  Indeed, in *Boone v. Boozman*, 217 F. Supp. 2d 938 (E.D. Ark. 2002), the district court specifically addressed a parental rights claim in the context of a mandatory immunization statute, and after citing *Jacobson*, *Zucht,* and *Prince*, held: "It is well

established that the State may enact reasonable regulations to protect the public health and the public safety, and it cannot be questioned that compulsory immunization is a permissible exercise of the State's police power. The Supreme Court has long recognized that a state may require public and private school children to be immunized. … [P]arental rights are subordinated to society's interest in protecting against the spread of disease." *Id*. at 954 (omits internal citations). Thus, Plaintiffs' parental rights claim does not overcome the State's strong interests in maintaining the public health and safety of society.

### C. Plaintiffs fail to state an informed consent claim

The doctrine of "informed consent" is generally viewed as encompassing "the right of a competent individual to refuse medical treatment," and it is grounded in the Fourteenth Amendment concept that individuals have a right to bodily integrity, balanced against the state's own valid interests. *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 277 (1990). Importantly, although the litigant in *Jacobson* did not use the words "informed consent" in his specific claim to the Court, this is indeed the precise issue that he presented to the Supreme Court in 1905, when he asserted that "a compulsory vaccination law is . . . hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems best; and that the execution of such a law against one who objects to vaccination, no matter for what reason, is nothing short of an assault upon his person." *Jacobson*, 197 U.S. at 26.

So, the argument asserted in *Jacobson* was just another way of saying that a competent individual has a right to refuse medical treatment in the context of a mandatory vaccination statute. Yet, as noted above, the Supreme Court rejected that argument in *Jacobson*, and since then there has been no case in which a court has found that the right to refuse medical treatment surpasses mandatory vaccination laws designed by public officials to protect the public health and welfare

13

of the people.  To the contrary, Chief Justice John Roberts recently cited *Jacobson* favorably and

sternly warned the federal judiciary from unnecessarily wading into disputes between private

litigants and public health officials who have expertise in what is required to maintain the public

health:

> Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect."  *Jacobson v. Massachusetts*, 197 U. S. 11, 38, 25 S. Ct. 358, 49 L. Ed. 643 (1905).  When those officials "undertake[ ] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad."  *Marshall v. United States*, 414 U. S. 417, 427, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974).  Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people.  *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U. S. 528, 545, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985).

*South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020).

This finding is particularly instructive here, since this is a case in which the Plaintiffs

challenge DOH's public health experts' regulatory guidance that incorporates the CDC's

immunization schedules and guidelines on when medical exemptions to vaccinations are

warranted.   As a district court within the Second Circuit noted in *Smith v. Potter*, 187 F. Supp. 2d

93 (S.D.N.Y. 2001), the CDC is in fact the gold standard in the area of public health, and its

conclusions, determinations, and recommendations should be properly respected by district courts.

In fact, quoting the D.C. Circuit Court of Appeals, the *Smith* court stated that "'[i]t is not the court's

role to second-guess scientific judgments of' a governmental agency that is responsible for

protecting public health," concluding that "the CDC is the type of public medical health agency to

which courts should defer."  *Smith*, 187 F. Supp. 2d at 97 (quoting *American Mining Congress v. EPA*, 907 F.2d 1179, 1187 (D.C. Cir. 1990).  Such is the case here.

14

Also, just because a person receives a treatment or procedure that they do not want does not mean that person has a cause of action based on lack of informed consent. In fact, under Public Health Law § 2805-d, in order to state a cause of action based on lack of informed consent, the treatment or procedure has to be something a reasonably prudent person in the patient's position would not have undergone the treatment or procedure if they had been fully informed, and the lack of information has to be the cause of the alleged injuries. Here Plaintiffs are fully informed about the treatment, a fact that is not in dispute. Thus, this Court should accept DOH's guidance as being authoritative, and it should reject Plaintiffs' "informed consent" claim as being meritless.

### D.  Plaintiffs fail to state a viable right to a free public education claim

While the United States Constitution does not provide a property right to education, the Second Circuit has found that New York State law creates a right to a free public education for individuals under the age of twenty-one. *Handberry v. Thompson*, 436 F.3d 52, 71 (2d Cir. 2006). The Second Circuit has further held that this right is protected by the Due Process Clause of the Fourteenth Amendment. *Id*.

No court, however, has ever found that a schoolchild's right to a free public education exceeds a state's right to require mandatory vaccinations to protect the public health of its people. In fact, in *V.D. v. New York*, 403 F. Supp. 3d 76 (E.D.N.Y. 2019), the district court recently held that "[t]he case law clearly establishes that conditioning school enrollment on vaccination has long been accepted by the courts as a permissible way for States to inoculate large numbers of young people and prevent the spread of contagious diseases. A state's compulsory immunization law is a proper exercise of police power, and such legislation is supported by a state's strong interests in protecting the public health and welfare." *V.D. v. New York*, 403 F. Supp. 3d at 86-87 (omits internal citations and quotations) (citing *Zucht*, 260 U.S. at 176 and *Whitlow v. Cal. Dep't of Educ.*,

15

203 F. Supp. 3d 1079, 1091 (S.D. Cal. 2016)).  *See also Love v. State Dep't of Educ*., 29 Cal.App.5th 980, 990 (App. Ct. 2018) ("laws mandating vaccination of school-aged children promote a compelling governmental interest of ensuring health and safety by preventing the spread of contagious disease").  Thus, Plaintiffs' claim based on a right to a free education fails as a matter of law.  *Phillips*, 775 F.3d at 543 ("New York could constitutionally require that all children be vaccinated in order to attend public school.").

In sum, as noted above, Plaintiffs' four constitutional claims boil down to a dispute about *who* precisely decides what constitutes a valid medical exemption under Public Health Law § 2164(8) and its controlling regulations.  The U.S. Supreme Court's decisions in *Jacobson* and *Zucht*, as well as Chief Justice Robert's more recent admonishment in *South Bay United Pentecostal Church*, provides the answer to this dispositive question: it is the *State public health officials* whose latitude is especially broad.  And that is not a matter – particularly in the well-settled area of the law regarding vaccinations – that can be second-guessed.  *See, e.g., League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 2020 U.S. App. LEXIS 19691, at *9 (6th Cir. June 24, 2020) ("Shaping the precise contours of public health measures entails some difficult line-drawing.  Our Constitution wisely leaves that task to officials directly accountable to the people."); *Huls Am. v. Browner*, 83 F.3d 445, 452 (D.C. Cir. 1996) ("[W]e will give an extreme degree of deference to the agency when it is evaluating scientific data within its technical expertise."); *Browning-Ferris Indus. of S. Jersey, Inc. v. Muszynski*, 899 F.2d 151, 160 (2d Cir. 1990) ("Courts should be particularly reluctant to second-guess agency choices involving scientific disputes that are in the agency's province of expertise."); *Garcia v. N.Y.C. Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 616 (2018) (citing with approval the New York City Board of Health's reliance on the CDC's ACIP recommendations).

Consequently, the Court should dismiss each of Plaintiffs' four constitutional claims against the State Defendants.

## Point II

### Plaintiffs' Rehabilitation Act Claims Fail as a Matter of Law

Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act" or "Act") provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." *D.A.B. v. NYC Dep't of Educ.*, 45 F. Supp.3d 400, 406 (S.D.N.Y. 2014) (*aff'd*, 630 Fed. Appx. 73 (2d Cir. 2015)). To recover under the Rehabilitation Act, a plaintiff must show: (1) that he has a disability for purposes of the Act, (2) that he is "otherwise qualified" for the benefit that has been denied, (3) that he has been denied the benefits "solely by reason of" his disability, and (4) that the benefit is part of a program or activity receiving Federal financial assistance. *Id*. (citing *Loeffler v. Staten Island Univ. Hosp*., 582 F.3d 268, 275 (2d Cir.2009)). Indeed, "[i]f proof of *any* of the four elements is lacking, the claim must fail." *Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir. 1994) (emphasis added). Such is the case here.

Assuming for the purposes of this motion that Plaintiffs can satisfy the other elements cited above, they cannot, as a matter of law, meet the third element. To show that Plaintiffs were discriminated against solely because of their alleged disabilities, they must show "(a) that there was a causal connection between the disability and the adverse decision . . . and (b) that the disability was the *only cause* of the decision." *See Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir. 1994) (emphasis added). If the decision-maker can show that the decision was motivated at least in part by a factor *other than the disability*, then the Rehabilitation Act claim must be rejected. *Id*. "[T]o

satisfy the "solely" part of the "solely by reason of" element, the disability must have been the only cause" of the decision at issue.  *Id*.

Here, Plaintiffs cannot show that they were denied a benefit – namely, attending school – *solely by reason of their disabilities*.  To the contrary, as is clear from the Complaint, Plaintiffs were denied the benefit they sought because they failed to comply with the vaccination requirements, not for any other reason.  Indeed, courts have rejected Rehabilitation Act claims where the plaintiff was unable to attend school because a medical condition allegedly precluded him or her from receiving a vaccine.  *See, e.g.*, *D.A.B.*, 45 F. Supp.3d at 407 (generally applicable vaccination requirements intended to limit the spread of contagious disease do not constitute discrimination under the Rehabilitation Act); *Wren v. Midwestern State University*, 2019 WL 3099408, at *10 (N.D. Tex. Jun. 25, 2019) ("It appears that Defendants' alleged 'harassment and discrimination' consisted of attempting to verify [Plaintiff's] exemption from compliance with Texas' immunization requirements.  Thus, [Plaintiff's] alleged disability is not the only cause for Defendants' conduct.").  As a result, Plaintiffs' Rehabilitation claims in Claim Five and Claim Six must be dismissed.[3]

Even if the Rehabilitation Act claims could proceed (which they cannot), they certainly cannot proceed against Commissioner Zucker or Director Rausch-Phung because "it is well-established that there is no individual liability under … the Rehabilitation Act, whether the individual is sued in their official or individual capacity."  *Perros v. County of Nassau*, 238 F.

---

[3] Although Claim Six – like Claim Five – is labeled as a claim under the Act , the supporting paragraphs appear to actually assert an equal protection claim.  *See* Complt. at ¶¶ 378-385.  In the event that Plaintiffs intended to assert an equal protection claim, rather than a Rehabilitation Act claim in Claim Six, then that claim should be dismissed for the reasons stated above.  *See Zucht*, 260 U.S. at 176-77 (dismissing an equal protection claim regarding the vaccination of schoolchildren); *Whitlow*, 203 F.Supp.3d at 1089-1090; *Love*, 29 Cal.App.5th at 990.  *See also Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 354-55 (4th Cir. 2011)

Supp.3d 395, 402 n.3 (E.D.N.Y. 2017) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010)).

**Point III**

**The Children's Health Defense Lacks Standing To Bring This Action**

As this Court is aware, "Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases or Controversies.'" *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 31 (2d Cir. 2015). Standing is one element of this requirement. *Id.* Because standing is jurisdictional under Article III, "'it is a threshold issue in all cases since putative plaintiffs lacking standing are not entitled to have their claims litigated in federal court.'" *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 156 (2d Cir. 2003) (quoting *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 117 (2d Cir. 1991)). There are two types of standing an organization like CHD may assert – associational standing or organizational standing. CHD lacks both so to enable it to assert claims pursuant to 42 U.S.C. § 1983 or the Rehabilitation Act.

**I.     CHD lacks standing to assert constitutional claims pursuant to Section 1983**

**A. Associational Standing**

Organizations relying upon "associational standing" seek to assert claims on behalf of their members. Such claims cannot support a Section 1983 claim in this Circuit. As the Second Circuit has repeatedly held a case brought pursuant to Section 1983, an organization may sue only "on its own behalf, rather than that of its members." *N.Y. State Citizens' Coal. for Children v. Velez*, 629 F. App'x 92, 93 (2d Cir. 2015). *See also Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) ("It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983... ."). "This is because we have 'interpret[ed] the rights

[42 U.S.C. § 1983] secures to be personal to those purportedly injured." *N.Y. State Citizens' Coal.*, 629 F. App'x at 93 (quoting *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984) (brackets in original)). *See also Rodriguez v. Winski*, 2020 WL 1188462, at *6 (S.D.N.Y. March 12, 2020) (claims asserted by organization on behalf of members dismissed for lack of subject matter jurisdiction). Thus, CHD cannot assert associational standing to support its Section 1983 claims.

### B. Organizational Standing

An organization "'may have standing in its own right to seek judicial relief to itself and to vindicate whatever rights and immunities the association itself may enjoy' under the organizational standing theory." *Rodriguez v. Winski*, 12 Civ. 3389 (NRB), 2020 WL 1188462, at *2 (S.D.N.Y. Mar. 12, 2020) (quoting *Warth*, 422 U.S. at 511). "To establish organizational standing, an organizational plaintiff 'must meet the same standing test that applies to individuals.'" *Id.* (quoting *Irish Lesbian & Gay Org. v. Guiliani*, 143 F.3d 638, 649 (2d Cir. 1998)). Specifically, the organization must show "(1) a distinct and palpable injury in fact to itself as an organization; (2) that is fairly traceable to the challenged action; and (3) that a favorable decision would redress its injuries." *Id.* (citing *Nnebe*, 644 F.3d at 156).

"To establish injury in fact, an organizational plaintiff must show that is has suffered "a 'perceptible impairment' of its activities." *Id.* (quoting *Nnebe*, 644 F.3d at 157) (internal brackets omitted). It is not enough for the organization to allege that it spent time and money supporting its members. Instead, it "must sufficiently allege that 'the defendant's conduct or policy *interferes with or burdens an organization's ability to carry out its usual activities*.'" *Id.* at n.2 (quoting *De Dandrade v. U.S. Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 182 (S.D.N.Y. 2019) (emphasis in original)). *See also Centro*, 868 F.3d at 110 ("We have held that an organization shows injury-

in-fact where, as here, a policy has impeded, and will continue to impede, the organization's ability to carry out its responsibilities.") (internal quotation marks and brackets omitted).  Organizational standing cannot be established in the absence of non-conclusory allegations showing *how* the support provided by the organization to its members was inconsistent with the organization's ordinary operations.  *See Rodriguez*, 2020 WL 1188462, at *4 n.2 (rejecting organizational standing claim where complaint did not include allegations showing how the support provided by the organization was inconsistent to its ordinary operations); *Lowell v. Lyft Inc.*, 352 F. Supp. 3d 248, 259 (S.D.N.Y. 2018) (rejecting claim in absence of facts beyond conclusory allegations that plausibly show the defendant's conduct interfered with the plaintiff's mission or that the plaintiff was forced to divert resources to prevent an adverse consequence).  If a plaintiff's alleged actions were in fact consistent with its mission, then the claim will be rejected.  *See id.*; *Doe v. Village of Mamaroneck*, 462 F. Supp.2d 520, 542 (S.D.N.Y. 2006) (rejecting organizational plaintiff's claims because "[s]ending in its officers to consult about that work is part and parcel of its fundamental mission . . . . [The plaintiff] simply has not shown that the pre-suit advocacy it undertook . . . is anything other than its 'regular tasks'").

Finally, a plaintiff asserting organizational standing must meet a high burden.  "The Second Circuit has repeatedly observed that, in contrast to a motion to dismiss for failure to state a claim, 'when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'"  *Rodriguez*, 2020 WL 1188462, at *4 (quoting *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).  "Therefore, in order to pursue a claim to recover compensatory damages for resources allegedly expended, [the plaintiff] must adduce sufficient facts that establish an injury-in-fact on their face and without the benefit of

21

any inference that may be drawn therefrom." *Id.*

Here, CHD's allegations cannot support organizational standing because the actions it took as a result of the Defendants' decisions were consistent with its mission. As described in the Complaint, CHD alleges that it typically provides "resources, training, and information to members to assist them in protecting the rights and health of their children; educat[es] the public and policy makers about the experiences of children with disabilities and their families; and educat[es] members about developments in the federal laws and policies affecting the health of children." Complt. at ¶ 50. The Complaint further alleges that, as a result of Defendants' actions, CHD personnel have had to expend increased time and resources to "respond to requests for assistance." Complt. at ¶ 52. These allegations cannot support the organizational standing theory because providing "assistance" to members is part of CHD's mission and usual activities. *Compare* Complt. at ¶ 50 *with* ¶ 52.

The claim also fails because CHD does not show *how* the support it provided to its members was inconsistent with its mission. *See Rodriguez*, 2020 WL 1188462, at *4 n.2 (rejecting organizational standing claim where complaint did not include allegations showing how the support provided by the organization was inconsistent to its ordinary operations).

Because CHD lacks organizational standing to support any of its claims, these claims must be dismissed from the action.

## II. CHD also lacks standing to assert any Rehabilitation Act claims

### A. Associational Standing

Associational standing is permissible in the Second Circuit outside the Section 1983 context. In order to establish associational standing, an organization must satisfy three requirements: (1) its members would otherwise have standing to sue in their own right; (2) the

interests it seeks to protect are germane to the organizations purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004). CHD cannot satisfy the third prong of this test because the relief requested in this claim would require the participation of individual members to determine whether the applicable regulations violated any of the individuals' constitutional rights. CHD therefore cannot establish associational standing.

### B. Organizational Standing

Nor can CHD establish organizational standing. In order to show organizational standing, CHD must show that it has standing to sue in its own right. For the same reasons discussed above, CHD is unable to show that it has organizational standing. CHD's Rehabilitation Act claim must therefore be rejected.

### Point IV

### Plaintiffs' Constitutional Claims Against DOH Must Be Dismissed Pursuant to the Eleventh Amendment

Plaintiffs' constitutional claims against DOH, all of which are asserted pursuant to 42 U.S.C. § 1983, are barred by the Eleventh Amendment to the United States Constitution. It is well established that the Eleventh Amendment "bars a suit in law or equity in federal court against a State absent the State's consent to such a suit or congressional abrogation of immunity." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). "[I]t is beyond dispute that the State of New York and its agencies have never consented to be sued in federal court." *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594-95 (2d Cir. 1990). Congress did not abrogate New York's Eleventh Amendment immunity by enacting Section 1983. *Aron v. Becker*, 48 F. Supp.3d 347, 366 (N.D.N.Y. 2014). Furthermore, the Supreme Court has held that states, state agencies, and state

officials sued in their official capacities are not "persons" subject to suit under Section 1983.  *Will v. Michigan Dep't of the State Police*, 491 U.S. 58, 70-71 (1989).  *See also Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) ("Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983.").  As a result, the constitutional claims against the DOH – Claim One through Claim Four – are barred by the Eleventh Amendment.[4]

## CONCLUSION

For the foregoing reasons, this Court should grant the State Defendants' motion to dismiss, enter judgment in favor of the State Defendants, and grant such other and further relief as the Court deems just and proper.

---

[4] The *Ex parte Young* doctrine does not save Plaintiffs' claim against the Department of Health.  "Under the doctrine of *Ex parte Young*, a 'plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that [her] complaint[:] (a) alleges an ongoing violation of federal law[;] and (b) seeks relief properly characterized as prospective.'"  *Aron*, 48 F. Supp.3d at 367 (quoting *Clark v. DiNapoli*, 510 Fed. Appx. 49, 51 (2d Cir. 2013) (brackets and quotations in original)).  Here, the claims against DOH are not claims for relief against an official capacity state officer, but rather against the State itself.  *Ex parte Young* is therefore inapplicable.  Furthermore, the Eleventh Amendment bars any claims for anything other than prospective injunctive relief against Commissioner Zucker and/or Director Rausch-Phang in their official capacities for the reasons described above.

Dated: Albany, New York
      August 24, 2020

                                              LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants Howard Zucker,*
*M.D., J.D., Elizabeth Rausch-Phung, M.D.,*
*and the N.Y.S. Department of Health*
The Capitol
Albany, New York 12224

By: *Michael McCartin*

        Michael G. McCartin
        Assistant Attorney General, Of Counsel
        Bar Roll No. 511158
        Tel.: (518) 776-2620
        michael.mccartin@ag.ny.gov

*Andrew Koster*

        Andrew W. Koster
        Assistant Attorney General, Of Counsel
        Bar Roll No. 701106
        Tel.: (518) 776-2609
        andrew.koster@ag.ny.gov

TO:    Michael H. Sussman, Esq. (*via* CM/ECF)
        Sussman, Watkins Law Firm

        Sujata S. Gibson, Esq. (*via* CM/ECF)
        The Gibson Law Firm, PLLC

        Robert F. Kennedy, Jr., Esq. (*via* CM/ECF)
        Mary Holland, Esq.
        Children's Health Defense

        *Attorneys for Plaintiffs*