September 4, 2019
Vol. XLI
Issue 36

DEPARTMENT OF STATE
Division of Administrative Rules

# NEW YORK STATE
# REGISTER

*INSIDE THIS ISSUE:*

- Removal of Non-Medical Exemption from Vaccination Regulations for Child Day Care Programs
- Eligibility Criteria for Student Financial Aid Award Programs Under Article 14 of the Education Law
- Debarment of Contractors

State agencies must specify in each notice which proposes a rule the last date on which they will accept public comment. Agencies must always accept public comment: for a minimum of 60 days following publication in the *Register* of a Notice of Proposed Rule Making, or a Notice of Emergency Adoption and Proposed Rule Making; and for 45 days after publication of a Notice of Revised Rule Making, or a Notice of Emergency Adoption and Revised Rule Making in the *Register*. When a public hearing is required by statute, the hearing cannot be held until 60 days after publication of the notice, and comments must be accepted for at least 5 days after the last required hearing. When the public comment period ends on a Saturday, Sunday or legal holiday, agencies must accept comment through the close of business on the next succeeding workday.

*For notices published in this issue:*
- the 60-day period expires on November 3, 2019
- the 45-day period expires on October 19, 2019
- the 30-day period expires on October 4, 2019

**ANDREW M. CUOMO**
**GOVERNOR**

**ROSSANA ROSADO**
**SECRETARY OF STATE**

**NEW YORK STATE DEPARTMENT OF STATE**

For press and media inquiries call:
(518) 474-0050

For *State Register* production, scheduling and subscription information
call: (518) 474-6957
E-mail: adminrules@dos.ny.gov

For legal assistance with *State Register* filing requirements
call: (518) 474-6740
E-mail: dos.dl.inetcounsel@dos.ny.gov

The *New York State Register* is now available on-line at:
www.dos.ny.gov/info/register.htm



*The **New York State Register** (ISSN 0197 2472) is published weekly. Subscriptions are $80 per year for first class mailing and $40 per year for periodical mailing. The **New York State Register** is published by the New York State Department of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231-0001. Periodical postage is paid at Albany, New York and at additional mailing offices.*

*POSTMASTER: Send address changes to NY STATE REGISTER, the Department of State, Division of Administrative Rules, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231-0001*

♻ *printed on recycled paper*



# NEW YORK STATE
# REGISTER

## Be a part of the rule making process!

The public is encouraged to comment on any of the proposed rules appearing in this issue. Comments must be made in writing and must be submitted to the agency that is proposing the rule. Address your comments to the agency representative whose name and address are printed in the notice of rule making. No special form is required; a handwritten letter will do. Individuals who access the online *Register* (www.dos.ny.gov) may send public comment via electronic mail to those recipients who provide an e-mail address in Notices of Proposed Rule Making. This includes Proposed, Emergency Proposed, Revised Proposed and Emergency Revised Proposed rule makings.

To be considered, comments should reach the agency before expiration of the public comment period. The law provides for a minimum 60-day public comment period after publication in the *Register* of every Notice of Proposed Rule Making, and a 45-day public comment period for every Notice of Revised Rule Making. If a public hearing is required by statute, public comments are accepted for at least five days after the last such hearing. Agencies are also required to specify in each notice the last date on which they will accept public comment.

When a time frame calculation ends on a Saturday or Sunday, the agency accepts public comment through the following Monday; when calculation ends on a holiday, public comment will be accepted through the following workday. Agencies cannot take action to adopt until the day after expiration of the public comment period.

The Administrative Regulations Review Commission (ARRC) reviews newly proposed regulations to examine issues of compliance with legislative intent, impact on the economy, and impact on affected parties. In addition to sending comments or recommendations to the agency, please do not hesitate to transmit your views to ARRC:

Administrative Regulations Review Commission
State Capitol
Albany, NY 12247
Telephone: (518) 455-5091 or 455-2731

-------------------------------------------------------------------------------------------------------------

Each paid subscription to the *New York State Register* includes one weekly issue for a full year and four "Quarterly Index" issues. The Quarterly is a cumulative list of actions that shows the status of every rule making action in progress or initiated within a calendar year.

The *Register* costs $80 a year for a subscription mailed first class and $40 for periodical (second) class. Prepayment is required. To order, send a check or money order payable to the NYS Department of State to the following address:

NYS Department of State
One Commerce Plaza
99 Washington Avenue
Suite 650
Albany, NY 12231-0001
Telephone: (518) 474-6957

# New York State Register

September 4, 2019/Volume XLI, Issue 36

KEY:     (P) Proposal; (RP) Revised Proposal; (E) Emergency; (EP) Emergency and Proposal; (A) Adoption; (AA) Amended Adoption; (W) Withdrawal

Individuals may send public comment via electronic mail to those recipients who provided an e-mail address in Notices of Proposed Rule Making. This includes Proposed, Emergency Proposed, Revised Proposed and Emergency Revised Proposed rule makings. Choose pertinent issue of the *Register* and follow the procedures on the website (www.dos.ny.gov)

## Rule Making Activities

**Children and Family Services, Office of**
1 / Removal of Non-Medical Exemption from Vaccination Regulations for Child Day Care Programs (EP)

**Civil Service, Department of**
4 / Notice of expiration

**Criminal Justice Services, Division of**
4 / Changes the Accrediting Authority to the ANSI-ASQ National Accreditation Board (A)

**Environmental Conservation, Department of**
4 / Waste Fuels (P)
7 / New Aftermarket Catalytic Converter (AMCC) Standards (P)
11 / Stationary Combustion Installations (P)
15 / Distributed Generation Sources Located in New York City, Long Island, Westchester and Rockland Counties (P)

**Health, Department of**
22 / School Immunization Requirements (EP)
24 / Schroon Lake Water District (A)
24 / Limits on Executive Compensation (P)

**Higher Education Services Corporation**
26 / Eligibility Criteria for Student Financial Aid Award Programs Under Article 14 of the Education Law (E)
28 / Eligibility Criteria for Student Financial Aid Award Programs Under Article 14 of the Education Law (A)

**Metropolitan Transportation Agency**
28 / Debarment of Contractors (E)

**Public Service Commission**
30 / Gas Metering Equipment (A)
30 / Tariff Amendments (A)
30 / Submetering of Electricity (A)
30 / Submetering of Electricity and Waiver Request (A)
31 / Tariff Amendment (A)
31 / Submetering of Electricity (A)
31 / Transfer of Street Lighting Facilities (P)
31 / Minor Rate Filing to Increase Annual Electric Revenues (P)
32 / Notice of Intent to Submeter Electricity and Waiver of Energy Audit (P)
32 / Minor Electric Rate Filing to Increase Annual Electric Revenues (P)
32 / Transfer of Street Lighting Facilities (P)

**State University of New York**
33 / College Fees (P)

**Victim Services, Office of**
33 / Limits on Administrative Expenses and Executive Compensation (P)

**Hearings Scheduled for Proposed Rule Makings** / 35
**Action Pending Index** / 39

**Securities Offerings**
    85 / State Notices

**Advertisements for Bidders/Contractors**
    87 / Sealed Bids

**Miscellaneous Notices/Hearings**
    89 / Notice of Abandoned Property Received by the State Comptroller
    89 / Public Notice

# RULE MAKING ACTIVITIES

Each rule making is identified by an I.D. No., which consists of 13 characters. For example, the I.D. No. AAM-01-96-00001-E indicates the following:

AAM    -the abbreviation to identify the adopting agency
01    -the *State Register* issue number
96    -the year
00001    -the Department of State number, assigned upon receipt of notice.
E    -Emergency Rule Making—permanent action not intended (This character could also be: A for Adoption; P for Proposed Rule Making; RP for Revised Rule Making; EP for a combined Emergency and Proposed Rule Making; EA for an Emergency Rule Making that is permanent and does not expire 90 days after filing.)

Italics contained in text denote new material. Brackets indicate material to be deleted.

## Office of Children and Family Services

### EMERGENCY/PROPOSED RULE MAKING NO HEARING(S) SCHEDULED

**Removal of Non-Medical Exemption from Vaccination Regulations for Child Day Care Programs**

**I.D. No.** CFS-36-19-00004-EP
**Filing No.** 748
**Filing Date:** 2019-08-16
**Effective Date:** 2019-08-16

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Proposed Action:* Amendment of sections 415.4, 416.11, 417.1, 418-1.11 and 418-2.11 of Title 18 NYCRR.

*Statutory authority:* Social Services Law, sections 20(3)(d), 34(3)(f), 390(2)(d); 42 USC 9858 et. seq.

*Finding of necessity for emergency rule:* Preservation of public health, public safety and general welfare.

*Specific reasons underlying the finding of necessity:* On June 13, 2019, Governor Andrew M. Cuomo signed legislation removing non-medical exemptions from school vaccination requirements for children. As of that date, there is no longer a religious exemption to the requirement that children be vaccinated against measles and other diseases to attend public, private or parochial schools (in grades pre-kindergarten through 12), or child day care settings.

The Office of Children and Family Services (the Office) must change

New York State Child Care Regulations to achieve compliance and consistency with the changes in Section 2164 of the New York State Public Health Law. In order to comply, and in order to protect the health, safety and general welfare of children in care, the Office must adopt emergency regulations removing from regulation the existing religious exemption from immunization requirements as currently provided for children in licensed, registered and enrolled legally-exempt child care programs. OCFS is revising current regulation regarding medical exemptions to vaccination in order to be consistent with Public Health Law.

OCFS is also simultaneously proceeding with a notice of proposed rulemaking to Title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (NYCRR) sections 415.4, 416.11, 417.1, 418-1.11 and 418-2.11.

*Subject:* Removal of non-medical exemption from vaccination regulations for child day care programs.

*Purpose:* To remove the non-medical exemption from vaccination regulations for child day care programs.

*Text of emergency/proposed rule:* Clause (w) of subparagraph (v) of paragraph (7) of subdivision (f) of section 415.4 is repealed and a new clause (w) of subparagraph (v) of paragraph (7) of subdivision (f) of section 415.4 is added to read as follows:

(w) The caregiver shall not provide child care to any child unless the caregiver has been furnished with a statement signed by a physician or other authorized individual who specifies that the child has received age appropriate immunizations in accordance with the requirements of New York Public Health Law. A caregiver may provide child care to any child not yet immunized provided the child's immunizations are in process and the parent gives the program specific appointment dates for required immunizations in accordance with the requirements of New York Public Health Law. Any child who is missing one or more of the required immunizations may be provided care if a physician, licensed to practice medicine in New York State furnishes the program with a *signed, completed medical exemption form issued by the New York State Department of Health or New York City Department of Education. The medical exemption must be reissued annually.*

Paragraph (4) of subdivision (a) of section 416.11 is amended to read as follows:

(4) *A program may admit any* [Any] child not yet immunized [may be admitted] provided the child's immunizations are in process[, in accordance with the requirements of New York State Public Health Law], and the parent gives the program specific appointment dates for required immunizations *in accordance with the requirements of New York Public Health Law.*

Paragraph (5) of subdivision (a) of section 416.11 is repealed and reserved.

Paragraph (6) of subdivision (a) of section 416.11 is amended to read as follows:

(6) Any child who is missing one or more of the required immunizations may be admitted if a physician licensed to practice medicine *in New York State* furnishes the program with a [written statement] *signed, completed medical exemption form issued by the New York State Department of Health or New York City Department of Education. The medical exemption must be reissued annually.*

Paragraph (7) of subdivision (a) of section 416.11 is amended to read as follows:

(7) With the exception of children meeting the criteria of section 416.11(a) [(5) or] (6), children enrolled in [the] child day care must remain current with their immunizations in accordance with the current schedule for required immunizations established in the New York [State] Public Health Law.

Paragraph (4) of subdivision (a) of section 417.11 is amended to read as follows:

(4) *A program may admit any* [Any] child not yet immunized [may be admitted] provided the child's immunizations are in process[, in accor-

dance with the requirements of New York State Public Health Law,] and the parent gives the program specific appointment dates for required immunizations *in accordance with the requirements of New York Public Health Law.*

Paragraph (5) of subdivision (a) of section 417.11 is repealed and reserved.

Paragraph (6) of subdivision (a) of section 417.11 is amended to read as follows:

(6) Any child who is missing one or more of the required immunizations may be admitted if a physician licensed to practice medicine *in New York State* furnishes the program with a [written statement] *signed, completed medical exemption form issued by the New York State Department of Health or New York City Department of Education. The medical exemption must be reissued annually.*

Paragraph (7) of subdivision (a) of section 417.11 is amended to read as follows:

(7) With the exception of children meeting the criteria of section 417.11(a) [(5) or] (6) children enrolled in [the] child day care must remain current with their immunizations in accordance with the current schedule for required immunizations established in the New York [State] Public Health Law.

Paragraph (4) of subdivision (a) of section 418-1.11 is amended to read as follows:

(4) *A program may admit any* [Any] child not yet immunized [may be admitted] provided the child's immunizations are in process[, in accordance with the requirements of New York State Public Health Law,] and the parent gives the program specific appointment dates for required immunizations *in accordance with the requirements of New York Public Health Law.*

Paragraph (5) of subdivision (a) of section 418-1.11 is repealed and reserved.

Paragraph (6) of subdivision (a) of section 418-1.11 is amended to read as follows:

(6) Any child who is missing one or more of the required immunizations may be admitted if a physician licensed to practice medicine *in New York State* furnishes the program with a [written statement] *signed, completed medical exemption form issued by the New York State Department of Health or New York City Department of Education. The medical exemption must be reissued annually.*

Paragraph (7) of subdivision (a) of section 418-1.11 is amended to read as follows:

(7) With the exception of children meeting the criteria of sections 418-1.11(a) [(5) or] (6) children enrolled in [the] child day care must remain current with their immunizations in accordance with the current schedule for required immunizations established in the New York [State] Public Health Law.

Paragraph (4) of subdivision (a) of section 418-2.11 is amended to read as follows:

(4) *A program may admit any* [Any] child not yet immunized [may be admitted] provided the child's immunizations are in process[, in accordance with the requirements of New York State Public Health Law,] and the parent gives the program specific appointment dates for required immunizations *in accordance with the requirements of New York Public Health Law.*

Paragraph (5) of subdivision (a) of section 418-2.11 is repealed and reserved.

Paragraph (6) of subdivision (a) of section 418-2.11 is amended to read as follows:

(6) Any child who is missing one or more of the required immunizations may be admitted if a physician licensed to practice medicine *in New York State* furnishes the program with a [written statement] *signed, completed medical exemption form issued by the New York State Department of Health or New York City Department of Education. The medical exemption must be reissued annually.*

Paragraph (7) of subdivision (a) of section 418-2.11 is amended to read as follows:

(7) With the exception of children meeting the criteria of sections 418-2.11(a) [(5) or] (6) children enrolled in [the] child day care must remain current with their immunizations in accordance with the current schedule for required immunizations established in the New York [State] Public Health Law.

*This notice is intended:* to serve as both a notice of emergency adoption and a notice of proposed rule making. The emergency rule will expire November 13, 2019.

*Text of rule and any required statements and analyses may be obtained from:* Leslie Robinson, Senior Attorney, Office of Children and Family Services, 52 Washington Street, Rensselaer, New York 12144, (518) 486-9563, email: regcomments@ocfs.ny.gov

*Data, views or arguments may be submitted to:* Same as above.

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement*

1. Statutory authority:

Section 20(3)(d) of the Social Services Law (SSL) authorizes the Commissioner of the Office of Children and Family Services (Office) to establish rules, regulations, and policies to carry out the Office's powers and duties under the SSL.

Section 34(3)(f) of SSL authorizes the Commissioner of the Office to establish regulations for the administration of public assistance and care within the State.

Section 390(2-a)(a) of the SSL authorizes the Office to establish regulations to set minimum quality program requirements for licensed and registered child day care programs, including health, infection control and record keeping.

Section 410(1) of the SSL authorizes a social services official of a county, city, or town to provide day care for children at public expense and authorizes the Office to establish criteria for when such day care is to be provided.

Section 410-x(3) of the SSL requires the Office to establish in regulation minimum health and safety standards that must be met by child care providers, funded under the New York State Child Care Block Grant, not required to be licensed or registered under section 390 of the SSL or to be licensed under the administrative code of the City of New York.

Section 658E(c)(2)(I) of the Child Care and Development Block Grant Act of 2014 (CCDBG) requires the Office to have in effect health and safety requirements for providers and caregivers in specified topic areas including prevention and control of infectious diseases including immunizations.

2. Legislative objectives:

The regulations support the legislative objectives underlying of sections 390, 390-a and 410-x of the Social Services Law to protect the health and safety of children in child care.

3. Needs and benefits:

The change in regulation ensures that the State remains in compliance with the requirements of Section 2164 of the New York State Public Health Law, as well as, the Child Care and Development Block Grant Act of 2014 (CCDBG) (42 U.S.C. 9858 et seq.) and continue to protect the health and safety of children in child care.

At the present time, all New York State Regulations pertaining to licensed, registered and enrolled legally-exempt group programs, require that a program may not provide care to any child unless they have been furnished with a statement signed by a physician or other authorized individual for each child in care that states that the child has received all age appropriate immunizations in accordance with New York State Public Health Law or a statement that one or more of the required immunizations would be detrimental to the child's health or the child's caretaker provides a statement indicating that the child has not been immunized due to the caretaker's religious beliefs.

On June 13, 2019, Governor Andrew M. Cuomo signed legislation removing non-medical exemption from school vaccinations for children. As of that date, there is no longer a religious exemption to the requirement that children be vaccinated against measles and other diseases to attend public, private or parochial schools (in grades pre-kindergarten through 12) or child day care settings.

Those children attending child day care or public, private or parochial school and having a religious exemption to required immunizations must now receive the first age appropriate dose by June 28, 2019 to attend or remain in school or child day care. In addition, by July 14, 2019 parents and guardians of such children must show that they have scheduled appointments for all required follow-up doses.

A licensed, registered or enrolled, legally-exempt child care program may no longer accept a statement from a parent/caretaker stating the child has not been immunized based on their religious beliefs as proof of compliance with the immunization regulation.

All children, unless meeting the exception criteria set forth in regulation, that attend licensed or registered group family day care programs, family day care programs and day care centers must remain current with their immunizations in accordance with the current schedule for required immunizations established by the New York State Public Health Law. A group family day care, family day care or day care center may admit any child who is not yet fully immunized, given that the required immunizations are in process and the parent or caretaker has submitted documentation to the program showing specific appointment dates related to completion of the required immunization series. Any child who is missing one or more of the required immunizations may be provided care if a physician, licensed to practice medicine in New York State furnishes the program with a signed, completed medical exemption form issued by the New York State Department of Health or New York City Department of Education certifying that such immunizations may be detrimental to the child's

**Rule Making Activities**

health, containing sufficient information to identify a medical contraindication to the specific immunizations and specifying the length of time each immunization is medically contraindicated. The medical exemption must be reissued annually.

Legally-exempt child care programs may not provide care to any child unless the provider has received a statement signed by a physician or other authorized individual for each child in care that states that the child has received all age appropriate immunizations in accordance with New York State Public Health Law, or for any child who is not yet fully immunized, documentation to the program showing that the required immunizations are in process and the parent or caretaker has submitted specific appointment dates related to completion of the required immunization series.. Any child who is missing one or more of the required immunizations may be provided care if a physician, licensed to practice medicine in New York State furnishes the program with a signed, completed medical exemption form issued by the New York State Department of Health or New York City Department of Education certifying that such immunizations may be detrimental to the child's health, containing sufficient information to identify a medical contraindication to the specific immunizations and specifying the length of time each immunization is medically contraindicated. The medical exemption must be reissued annually.

4. Costs:

The implementation of emergency and proposed regulations does not result in costs to child care programs.

5. Local government mandates:

The emergency and proposed regulations support a change to section 2164 of the New York State Public Health Law.

6. Paperwork:

Child care programs will continue to have to keep immunization records for all non-school age children in care to maintain compliance with the regulations.

7. Duplication:

The new requirements do not duplicate any existing State or federal requirements.

8. Federal standards:

The regulations are consistent with the Child Care and Development Block Grant Act of 2014 (42 U.S.C. 9858 et seq.), which requires the Office to establish minimum health and safety standards.

9. Compliance schedule:

The regulations are effective when filed, as the change in legislation is already in effect.

10. Alternatives:

No alternative approaches were considered as this change was necessary for child care regulations to remain in line with New York State Public Health Law.

*Regulatory Flexibility Analysis*

1. Effect of rule:

The emergency and proposed regulations will affect all licensed and registered family day care homes, group family day care homes, and day care centers (outside of New York City), approximately 17,230 programs. Additionally, approximately 30,000 legally-exempt child care programs statewide.

2. Compliance requirements:

Child care programs will continue to be required to keep immunization records for all non-school aged children in care. A program may no longer accept a statement from a parent/caretaker stating the child has not been immunized based on their religious beliefs as proof of compliance with the immunization regulation, and children who have not been immunized in accordance with the requirements of Section 2164 of the New York State Public Health Law will not be eligible to attend child care programs.

Children receiving care from a licensed, registered or enrolled legally-exempt child care program must remain current with their immunizations in accordance with New York State Public Health Law. Revisions to the current regulation regarding medical exemption requirements have been made to be consistent with Public Health Law, but children who have a medical exemption from immunization will not be negatively impacted by this rulemaking.

3. Professional services:

No new professional services are required by small business or local government to comply with this change.

4. Compliance costs:

The implementation of emergency and proposed regulations will not result in costs to child care programs.

5. Economic and technological feasibility:

No new economic or technology requirements for small business or local government are expected.

6. Minimizing adverse impact:

To minimize the impact of the regulations on license and registered child care programs, the Office is allowing for licensed and registered programs to admit a child who has not yet been immunized if the parent/

caretaker can demonstrate that the child's immunizations are in process by providing specific appointment dates for the required immunizations in accordance with New York State Public Health Law and joint guidance issued by this Office, the New York State Department of Health and the New York State Education Department.

7. Small business and local government participation:

The proposed emergency regulations affect day care centers, home-based child care providers, and legally-exempt child care providers located in all areas of New York State and stem from changes to Section 2164 of the New York State Public Health Law.

*Rural Area Flexibility Analysis*

1. Types and estimated numbers of rural areas:

The emergency and proposed regulations will affect day care centers, home-based child care providers, and legally-exempt child care providers located in all 44 rural areas of the State. Statewide, there are approximately 17,230 child care programs, 30,000 legally-exempt child care programs statewide.

2. Reporting, recordkeeping, and other compliance requirements; and professional services:

The regulations will not result in any new reporting or recordkeeping requirements for child care programs.

Licensed, registered and enrolled legally-exempt child care programs are currently required by regulation to maintain a record that demonstrates that each non-school age child in care has received age-appropriate immunizations in accordance with New York State Public Health Law or, a statement indicating the child is not immunized based on parent's religious beliefs, or with a statement from a physician stating that one or more of the immunizations would be detrimental to a child's health.

3. Costs:

The implementation of emergency regulations will not result in costs to child care programs.

4. Minimizing adverse impact:

To minimize the impact of the proposed regulations, any group family day care, family day care, or day care center may admit or continue to serve any child who is not yet fully immunized when the child receives the first dose of immunization within 14 days of enrollment, and the parent or caretaker submits documentation to the program within 30 days showing they have made appointments for all follow-up doses. Any child who is missing one or more of the required immunizations may be provided care if a physician, licensed to practice medicine in New York State furnishes the program with a signed, completed medical exemption form issued by the New York State Department of Health or New York City Department of Education certifying that such immunizations may be detrimental to the child's health, containing sufficient information to identify a medical contraindication to the specific immunizations and specifying the length of time each immunization is medically contraindicated. The medical exemption must be reissued annually. Legally-exempt child care programs may continue to provide care when the caregiver has received a statement signed by a physician or other authorized individual for each child in care that states that the child has received all age appropriate immunizations in accordance with New York State Public Health Law, for any child who is not yet fully immunized, documentation to the program showing that the required immunizations are in process and the parent or caretaker has submitted specific appointment dates related to completion of the required immunization series. . Any child who is missing one or more of the required immunizations may be provided care if a physician, licensed to practice medicine in New York State furnishes the program with a signed, completed medical exemption form issued by the New York State Department of Health or New York City Department of Education certifying that such immunizations may be detrimental to the child's health, containing sufficient information to identify a medical contraindication to the specific immunizations and specifying the length of time each immunization is medically contraindicated. The medical exemption must be reissued annually.

5. Rural area participation:

The proposed emergency regulations affect day care centers, home-based child care providers, and legally-exempt child care providers located in all areas of New York State.

*Job Impact Statement*

Section 201-a of the State Administrative Procedures Act requires a job impact statement to be filed if proposed regulations will have an adverse impact on jobs and employment opportunities in the State. Proposed changes to the child care regulations relate to a change to Section 2164 of the New York State Public Health Law.

The emergency and proposed regulations are not expected to have a negative impact on jobs or employment in either the public or private sector.

Nature of Impact:

The Office does not expect any reduction to the number of employees at

family day care homes, group family day care homes, day care centers, or legally-exempt child care programs based on the regulations.

Categories and Numbers Affected:

There are no changes in categories or numbers.

Regions of Adverse Impact:

There are no regions where the regulations would have a disproportionate adverse impact on jobs or employment opportunities.

Self-Employment Opportunities:

No measureable impact on opportunities for self-employment is expected.

# Department of Civil Service

## NOTICE OF EXPIRATION

The following notice has expired and cannot be reconsidered unless the Department of Civil Service publishes a new notice of proposed rule making in the NYS *Register*.

**Jurisdictional Classification**

| I.D. No. | Proposed | Expiration Date |
|---|---|---|
| CVS-33-18-00007-P | August 15, 2018 | August 15, 2019 |

# Division of Criminal Justice Services

## NOTICE OF ADOPTION

**Changes the Accrediting Authority to the ANSI-ASQ National Accreditation Board**

**I.D. No.** CJS-21-19-00004-A

**Filing No.** 752

**Filing Date:** 2019-08-19

**Effective Date:** 2019-09-04

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

**Action taken:** Amendment of sections 6190.1, 6190.3, 6190.4 and 6190.5 of Title 9 NYCRR.

**Statutory authority:** Executive Law, sections 837(13), 995-b(1), (9) and (12)

**Subject:** Changes the accrediting authority to the ANSI-ASQ National Accreditation Board.

**Purpose:** To change the accrediting authority to the ANSI-ASQ National Accreditation Board.

**Text or summary was published** in the May 22, 2019 issue of the Register, I.D. No. CJS-21-19-00004-P.

**Final rule as compared with last published rule:** No changes.

**Text of rule and any required statements and analyses may be obtained from:** Danise Linen, Division of Criminal Justice Services, 80 South Swan Street, Albany, NY 12210, (518) 457-8413, email: dcjslegalrulemaking@dcjs.ny.gov

**Assessment of Public Comment**
The agency received no public comment.

# Department of Environmental Conservation

## PROPOSED RULE MAKING HEARING(S) SCHEDULED

**Waste Fuels**

**I.D. No.** ENV-36-19-00001-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

**Proposed Action:** Amendment of Part 200; repeal of Subpart 225-2; and addition of new Subpart 225-2 to Title 6 NYCRR.

**Statutory authority:** Environmental Conservation Law, sections 1-0101, 3-0301, 19-0103, 19-0105, 19-0301, 19-0303, 19-0305, 19-0311, 71-2103 and 71-2105

**Subject:** Waste Fuels.

**Purpose:** Update permit references, rule citations, monitoring, recordkeeping, reporting requirements, and incorporate Federal standards.

**Public hearing(s) will be held at:** 11:00 a.m., November 8, 2019 at Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129 A/B, Albany, NY.

**Interpreter service:** Interpreter services will be made available to hearing impaired persons, at no charge, upon written request submitted within reasonable time prior to the scheduled public hearing. The written request must be addressed to the agency representative designated in the paragraph below.

**Accessibility:** All public hearings have been scheduled at places reasonably accessible to persons with a mobility impairment.

**Text of proposed rule:** Existing subdivisions 200.1(a) through (cu) remain unchanged.

Existing subdivision (cw) is amended as follows:

(cw) Waste Oil. *Any* [Used]*used* and/or reprocessed[ engine lubricating] oil [and/or any other used oil, including but not limited to, fuel oil, engine oil, gear oil, cutting oil, transmission fluid, hydraulic fluid, dielectric fluid, oil storage tank residue, animal oil, and vegetable oil, ]which has not[ subsequently] been re-refined*, and which does not contain chemical waste. This includes but is not limited to, engine oil, gear oil, cutting oil, transmission fluid, hydraulic fluid, dielectric fluid, oil storage tank residue, animal oil, and vegetable oil.*

A new subdivision (cx) is added as follows:

*(cx) Residual oil. A fuel oil which meets the latest American Society for Testing and Materials (ASTM) specification number D396 for residual fuel oils (#4, #5, or #6).*

Existing sections 200.2 through 200.8 remain unchanged.

Existing section 200.9, Table 1 is amended as follows:

| Regulation | Referenced Material | Availability |
|---|---|---|
| [225-2.4(a)(3)] | [40 CFR Part 761 (July 1989) pages 213-267] | [*] |

Existing section 200.10 through section 200.16 remains unchanged.

Existing 6 NYCRR Subpart 225-2, Fuel Composition and Use - Waste Fuels is repealed. A new Subpart 225-2, Fuel Composition and Use - Waste Oil as a Fuel is added as follows:

*6 NYCRR Subpart 225-2, Fuel Composition and Use - Waste Oil as a Fuel*

*Section 225-2.1 Applicability.*
*This Subpart applies to the use of waste oil to be burned as a fuel.*
*Section 225-2.2 Definitions.*
*(a) To the extent that they are not inconsistent with the specific definitions in Subdivision (b) of this Section, the general definitions of Part 200 and Part 201 of this Title apply.*
*(b) For the purposes of this Subpart, the following definitions also apply:*
*(1) 'Automotive maintenance/service facility or marine service facility'. Any facility that performs automotive/marine fluid changes, collects automotive/marine fluids, or drains automotive/marine fluids.*
*(2) 'Chemical waste'. Waste including but not limited to spent solvents, tars, paints, resins and wastes, and sludges from any process.*
*(3) 'Reprocessed oil'. Any oil from which physical and/or chemical*

contaminants have been removed such that the oil is suitable for productive use (including but not limited to reuse as a lubricant, or burned as a fuel).

(4) 'Re-refined oil'. Any oil from which physical and/or chemical contaminants have been removed such that the oil is substantially equivalent to virgin distillate or residual oil.

(5) 'Total halogens'. The total organic and inorganic halides (fluorine, F; chlorine, Cl; bromine, Br; iodine, I), expressed as chloride present in a fuel oil or waste fuel, in parts per million by weight (water free basis).

Section 225-2.3 Prohibitions.

(a) No owner or operator of a facility, except for emission sources in subdivision 225-2.4(d) of this subpart, may burn waste oil without a permit or registration issued by the department pursuant to Part 201 of this Title. To be permitted to burn a waste oil, an owner or operator of a facility must meet the requirements of this Subpart.

(b) The sale and/or use of waste oil or blends of waste oil and virgin oil for residential heating is strictly prohibited.

(c) No owner or operator of a facility located in New York County may burn waste oil in either a permitted, registered, or exempt emission source.

Section 225-2.4 Requirements for owners or operators of facilities proposing to burn waste oil. As part of an application for a permit or registration to burn waste oil, except as provided in subdivision (d) of this Section, owners or operators of facilities must meet the following criteria:

(a) submit an analysis of the waste oil proposed to be burned to the department, pursuant to Section 225-2.6 of this Subpart.

(b) a stationary combustion installation or process source that proposes to burn waste oil must have a minimum operating heat input of 20 million Btus per hour or greater.

(c) an incinerator that proposes to burn waste oil must have a minimum charging capacity that equals or exceeds 2,000 pounds per hour of refuse.

(d) an owner or operator of space heaters located in automotive maintenance/service facilities or marine service facilities may burn waste oil and be excepted from the requirements of this section, where the following conditions are met:

(1) the maximum operating heat input is less than 500,000 Btus per hour;

(2) the waste oil is generated on site (this includes waste oils generated by do-it-yourself customers that the facility is required to accept) or at another facility under common ownership; and

(3) the waste oil meets the criteria in Section 225-2.5 Table 1 of this Subpart, except that lead may not exceed 25 parts per million (ppm) by weight (water free basis) of fuel.

Section 225-2.5 General waste oil limits. Any waste oil that is proposed to be burned must meet the minimum limitations in Table 1 below:

Table 1

| Constituent/Property | Limit |
|---|---|
| Polychlorinated Biphenyls (PCB) | < 2 ppm (1) |
| Total Halogens | <= 1,000 ppm (1) |
| Sulfur | See 6 NYCRR 225-1(2) |
| Gross Heat Content | >= 125,000 (Btu/gal) |
| Arsenic | < 5 ppm (1) |
| Cadmium | < 2 ppm (1) |
| Chromium | < 10 ppm (1) |
| Lead | < 100 ppm (1) |

(1) ppm by weight (water free basis) of fuel.
(2) As per the requirements of subdivision 6 NYCRR 225-1.2(i) of this Title.

Section 225-2.6 Reports, sampling, and analysis of waste oil.

(a) The owner or operator of a facility permitted to burn waste oil shall:

(1) sample, analyze, and measure each load of waste oil received, or maintain copies of supplier provided analyses of each load of waste oil received, to prove compliance with the limits listed in Table 1 of this Subpart; and

(2) maintain, for a minimum of five years, records of the total quantity of waste oil received and the names, addresses, and waste oil analysis from each waste oil supplier.

(b) Owners or operators required to maintain and retain records pursuant to this section must make such records available for inspection by the department during normal business hours. These records must be submitted upon request to the department.

(c) Sampling and analysis of waste oil samples must be carried out in accordance with methods acceptable to the department.

(d) Owners or operators of space heaters that fire waste oil located in automotive maintenance/service facilities or marine service facilities must sample and analyze the waste oil upon the request of the department.

Section 225-2.7 Severability.

Each provision of this Subpart shall be deemed severable. In the event that any provision of this Subpart is held to be invalid, the remainder of this Subpart shall continue in full force and effect.

**Text of proposed rule and any required statements and analyses may be obtained from:** Mike Jennings, NYSDEC, Division of Air Resources, 625 Broadway, Albany, NY 12233-3254, (518) 402-8403, email: air.regs@dec.ny.gov

**Data, views or arguments may be submitted to:** Same as above.

**Public comment will be received until:** November 13, 2019.

**Additional matter required by statute:** Pursuant to Article 8 of the State Environmental Quality Review Act, a Short Environmental Assessment Form and a Coastal Assessment Form have been prepared and are on file.

**Summary of Regulatory Impact Statement** (Full text is posted at the following State website:http://www.dec.ny.gov/regulations/propregulations.html#public):

INTRODUCTION

Proposed 6 NYCRR Subpart Part 225-2 (Proposed Subpart 225-2) regulates the use of waste oil to be burned for heat and/or energy recovery at non-exempt, stationary sources. The Department is proposing to repeal Existing 6 NYCRR Part 225-2 Fuel Composition and Use – Waste Fuel (Existing Subpart 225-2) and replace it with Proposed 6 NYCRR Subpart 225-2, Fuel Composition and Use - Waste Oils (Proposed Subpart 225-2). Proposed Subpart 225-2 regulates the burning of waste oils in combustion, incineration, and process sources throughout New York State. Proposed Subpart 225-2 establishes applicability criteria, composition limits, and permitting requirements for waste oils; establishes monitoring, record-keeping, and reporting requirements for facilities that are determined eligible to burn waste oil; and allows for the burning of waste oils in space heaters at automotive maintenance/service facilities. Also, as part of this rulemaking, the Department is adding the definition for "residual oil" to 6 NYCRR Part 200 (Part 200). If finalized, Proposed Subpart 225-2 will be included as a component of the State Implementation Plan (SIP) for New York State (NYS), as required by the Clean Air Act. This is not a mandate on local governments. It applies to any entity that owns or operates a subject stationary source. In addition, Part 200, which contains definitions related to air regulations, will also be updated.

STATUTORY AUTHORITY

The statutory authority for promulgation of Proposed 6 NYCRR Subpart 225-2 is found in the following Sections of the Environmental Conservation Law (ECL): Section 1-0101, Section 3-0301, Section 19-0103, Section 19-0105, Section 19-0301, Section 19-0303, Section 19-0305, Section 19-0311, Section 71-2103, and Section 71-2105.

Based on the above-referenced sections the Commissioner has sufficient authority to regulate air pollution from emission sources, including the promulgation of Proposed 6 NYCRR Subpart 225-2 "Fuel Composition and Use - Waste Oils".

LEGISLATIVE OBJECTIVES

Article 19 of the ECL was adopted to safeguard the air resources of New York from pollution. To facilitate this purpose, the Legislature granted specific powers and duties to the Department, including the power to formulate, adopt, promulgate, amend, and repeal regulations that prevent, control, or prohibit air pollution. This authority specifically extends these powers over areas of the State that are or may be affected by air pollution and allows the Department to prescribe for such areas (1) the degree of air pollution or air contamination that may be permitted therein, and (2) the extent to which air contaminants may be emitted to the air by any air contamination source. In addition, this authority includes the preparation of a general, comprehensive plan for the control or abatement of existing air pollution and for the control or prevention of any new air pollution recognizing various requirements for different areas of the State. The legislative objectives underlying the above statutes are directed toward protection of the environment and public health.

Proposed 6 NYCRR Subpart 225-2 addresses the burning of waste oils and subsequent emissions from burning waste oils throughout New York State. The regulation defines waste oil and establishes clear limits on its constituents. Finally, the regulation incorporates monitoring, record keeping, and reporting requirements for the purpose of compliance with the regulation.

NEEDS AND BENEFITS

The Department is proposing this repeal and replacement of Existing Subpart 225-2 with Proposed Subpart 225-2, Fuel Composition and Use – Waste Fuel to best protect and preserve the state's air resources. The Department proposes to achieve this by imposing composition limits on waste oil to minimize emissions and clarify the types of emission sources eligible to burn waste oil. Existing Subpart 225-2 has not been updated since its promulgation in 1983. As a result, many of its provisions are outdated and contain obsolete references and standards.

Rule Streamlining and Simplification

The permitting process contained in Existing Subpart 225-2 has become outdated. Proposed Subpart 225-2 will simplify and streamline implementation of the regulation by eliminating obsolete regulatory references; correcting typographical errors; updating the regulation's waste oil constituent limits; removing outdated work practices; expanding the number of facilities eligible to burn waste oil; updating the permitting process to include monitoring, record keeping, and reporting requirements, thus aligning it with Part 201 and Title V criteria found in the Clean Air Act; and moving the definition of "residual oil" from Existing Subpart 225-2 to 6 NYCRR Part 200 (Part 200). Existing Subpart 225-2 also contains references to liquid waste transportation regulations that, over the past thirty years, have changed and need to be removed from this regulation. Based on comments received during the public comment period that arsenic (5ppm), cadmium (2 ppm), and chromium (10 ppm) were not in the Proposed 225-2, the Department will include these pollutants and their corresponding limits in Table 1 of Proposed Subpart 225-1. The Department is removing the ninety-nine (99) percent combustion efficiency requirement. The Proposed Subpart 225-2 will no longer address the burning of chemical waste and "off-spec" waste oils (i.e. Waste fuel B) that do not meet the limitations specified in Table 1 of Existing Subpart 225-2. Instead, burning chemical waste and off-spec waste oils will be regulated under 6 NYCRR Part 212 (Process Operations) or 6 NYCRR Parts 370-376 as appropriate. Proposed Subpart 225-2 clarifies the regulation's process for the burning of waste oil while removing the term waste fuel.

As part of the Department's streamlining, it will lower the size of the eligible exempt space heating equipment size from one million Btu/hr to 500,000 Btu/hr. This revision is consistent with both federal and NYS hazardous waste regulations for space heating sources that fire waste oils.

The Department is extending the permitting exemption for facilities generating their own waste oils to fire waste oil in space heaters of less than 500,000 mmBtu/hr heat input. Existing Subpart 225-2 provides this permitting exemption exclusively to automotive service facilities. These facilities are required under Article 23, Title 23, Section 7 of the ECL to accept waste oil from "do-it-yourself" oil changers. The Department will also include marine service facilities to the exemption, based on comments received during the public comment period for Proposed Subpart 225-2. The Empire State Marine Trades Association (Association) commented that their constituents are also subject to the requirements of Article 23, Title 23, Section 7 of the ECL. Proposed Subpart 225-2 allows additional types of facilities to burn waste oil in space heaters. Automotive maintenance/service facility or marine service facility are now defined as "Any facility that performs automotive/marine fluid changes, collects automotive/marine fluids, or drains automotive/marine fluids." Eligible facilities now include, but are not limited to, fleet maintenance facilities like municipal garages, rental car maintenance facilities, auto crushing facilities, junkyards, and marine service facilities.

Finally, the Department will be adding a specific prohibition on the use of waste oil in residential sources. During the rulemaking process several reports/newspaper articles of waste oil recyclers selling waste oil to home heating oil delivery companies in the New York City area were published. Waste oil was never intended to be fired as home heating fuel (by itself or blended). Although the current regulation does not allow for waste oil to be used in this manner, the Department believes that adding a specific prohibition of this use will ensure compliance with the regulation.

Stakeholder Meetings

During the drafting of Proposed Subpart 225-2, the Department held a stakeholder webinar on May 15th, 2018. There were 35 stakeholders signed in to the webinar. The Department solicited comments on Proposed Subpart 225-2 from the stakeholders which included the environmental justice contact list (8000 to 10,000 contacts), environmental advocate groups, industrial groups that fire waste oil, and waste oil collectors and distributors. The stakeholders asked some questions which the Department answered.

COSTS

Costs to Regulated Parties and Consumers:

There will be no additional costs associated with the Proposed Subpart 225-2.

In addition, the removal of the 99 percent combustion efficiency limit will save regulated facilities money by eliminating the requirement to periodically test combustion efficiency. Depending on equipment size and configuration, these tests can cost a subject facility between $1,000.00 and $5,000.00 per test.

Costs to State and Local Governments:

Based on the Department's permitting data, there currently are no State and local government facilities that have a Title V permit, air state facility permit, or registration subject to this regulation. Therefore, no additional costs will be incurred by State and local government facilities based on this regulatory update.

Costs to the Regulating Agency:

No additional monitoring, recordkeeping, or reporting requirements are being proposed under this rule-making. The only costs to the Regulating Agency are those routine costs associated with the rulemaking. These costs are regularly-incurred, operating costs.

LOCAL GOVERNMENT MANDATES

This is not a mandate on local governments. Local governments have no additional compliance obligations as compared to other subject entities. No additional monitoring, recordkeeping, reporting, or other requirements will be imposed on local governments under this rulemaking. Finally, as stated above in the Cost section of this Regulatory Impact Statement, there are currently no local government facilities subject to this regulation.

PAPERWORK

Proposed Subpart 225-2 will create no additional paperwork for the facilities subject to the requirements of this rule.

DUPLICATION

Proposed Subpart 225-2 does not duplicate, overlap, or conflict with any other State or federal Air requirements.

ALTERNATIVES

The Department evaluated the following alternatives:

1) No action - do not change the current version of the regulation. This option will not address the issue of consistency with Title V monitoring, record keeping, or reporting requirements. It will also not correct inconsistencies with other State and federal regulations and will not simplify and streamline the requirements.

2) Title V Update only - update the rule to match the current Title V permitting requirements. This regulation has not been updated since its promulgation in 1983. The regulation does not conform to the requirements of the Title V program (Subpart 201-6). Updating the monitoring, record keeping, and reporting requirements of this rule to match those of Title V is long overdue. However, this option by itself would not address inconsistencies with other State and Federal liquid waste transportation requirements, nor would it simplify and/or streamline the regulation.

FEDERAL STANDARDS

Proposed Subpart 225-2 does not exceed any minimum federal standards. The proposed reduction of the lead standard will make the Proposed 225-2 lead limit equivalent to the lead standards regulated under the federal regulations for liquid waste transporters.

COMPLIANCE SCHEDULE

The Department proposes to promulgate the Proposed Subpart 225-2 by the summer of 2016. The provisions of this rule will take effect upon promulgation of the rule.

*Regulatory Flexibility Analysis*

EFFECT OF RULE

The Department is proposing to repeal Existing 6 NYCRR Part 225-2 Fuel Composition and Use – Waste Fuel (Existing Subpart 225-2) and replace it with Proposed 6 NYCRR Subpart 225-2, Fuel Composition and Use - Waste Oils (Proposed Subpart 225-2). Proposed Subpart 225-2 regulates the burning of waste oils in combustion, incineration, and process sources throughout New York State. Small businesses are those that are independently owned, located within New York State, and that employ 100 or fewer persons. Proposed Subpart 225-2 requirements apply equally to every stationary source that fires oil in New York State. Proposed Subpart 225-2 will not affect small businesses or local governments differently from any other source subject to this rule and may help certain small businesses.

COMPLIANCE REQUIREMENTS

Proposed Subpart 225-2 establishes applicability criteria, composition limits, and permitting requirements for waste oils; establishes monitoring, recordkeeping, and reporting requirements for facilities that are determined eligible to burn waste oil; and allows for the burning of waste oils in space heaters at automotive maintenance/service facilities. If finalized, Proposed Subpart 225-2 will be included as a component of the State Implementation Plan (SIP) for New York State (NYS), as required by the Clean Air Act. Also, as part of this rulemaking, the Department is adding the definition for "residual oil" to 6 NYCRR Part 200 (Part 200). No new compliance requirements will be incurred by stationary sources subject to the provisions of the proposed rule.

PROFESSIONAL SERVICES

As stated above, this revision will place no new compliance obligation on subject stationary sources. Therefore, the Department does not expect small businesses or local governments will need to hire additional professional services to comply with the provisions of the proposed rule.

COMPLIANCE COSTS

Based on the Department's permitting data there currently are no local government facilities that have a Title V permit, air state facility permit, or registration subject to this regulation. Therefore, no additional costs will be incurred by local government facilities based on this regulatory update. In addition, because there will be no additional compliance requirements placed on subject facilities, the Department does not anticipate any new costs to small businesses.

MINIMIZING ADVERSE IMPACT

The Department does not expect any adverse impacts on small businesses and local governments throughout New York State. Proposed Subpart 225-2 is a statewide regulation. Its requirements are the same for all facilities. The Department does not anticipate small businesses or local governments to be impacted differently than any other sources subject to Proposed Subpart 225-2.

SMALL BUSINESS AND LOCAL GOVERNMENT PARTICIPATION

During the drafting of Proposed Subpart 225-2, the Department held a stakeholder webinar on May 15th, 2018. There were 35 stakeholders signed in to the webinar. The Department solicited comments on Proposed Subpart 225-2 from the stakeholders which included the environmental justice contact list (8000 to 10,000 contacts), environmental advocate groups, industrial groups that fire waste oil, and waste oil collectors and distributors. The stakeholders asked some questions which the Department answered. In addition, the Department will hold public hearings on Proposed Subpart 225-2 at various locations in New York State which will be open to small business and local government representatives.

ECONOMIC AND TECHNOLOGICAL FEASIBILITY

The Department does not expect any adverse economic or technological feasibility impacts on small businesses and local governments throughout New York State. Proposed Subpart 225-2 is a statewide regulation. Its requirements are the same for all facilities. The Department does not anticipate small businesses or local governments to be impacted economically or technologically differently than any other sources subject to Proposed Subpart 225-2.

CURE PERIOD

The Department is not including a cure period in this rulemaking. The purpose of this rulemaking is to update, clarify, and simplify the regulation. Delaying the promulgation of the regulation will adversely affect the facilities that are subject to this regulation in that they will not receive the benefits of the streamlining and updating in a timely fashion.

*Rural Area Flexibility Analysis*

TYPES AND ESTIMATED NUMBERS OF RURAL AREAS

Proposed 6 NYCRR Subpart 225-2 (Proposed Subpart 225-2) is not expected to have a substantial adverse impact on rural areas in New York State. The proposed rulemaking will apply statewide and thus all stationary sources that fire waste fuels in New York State will be equally affected.

Rural areas are defined as rural counties in New York State that have populations of less than 200,000 people, towns in non-rural counties where the population densities are less than 150 people per square mile, and villages within those towns.

REPORTING, RECORDKEEPING AND OTHER COMPLIANCE REQUIREMENTS; AND PROFESSIONAL SERVICES

The Department is proposing to repeal Existing 6 NYCRR Part 225-2 Fuel Composition and Use – Waste Fuel (Existing Subpart 225-2) and replace it with Proposed 6 NYCRR Subpart 225-2, Fuel Composition and Use - Waste Oils (Proposed Subpart 225-2). Proposed Subpart 225-2 regulates the burning of waste oils in combustion, incineration, and process sources throughout New York State. Proposed Subpart 225-2 establishes applicability criteria, composition limits, and permitting requirements for waste oils; establishes monitoring, recordkeeping, and reporting requirements for facilities that are determined eligible to burn waste oil; and allows for the burning of waste oils in space heaters at automotive maintenance/service facilities. If finalized, Proposed Subpart 225-2 will be included as a component of the State Implementation Plan (SIP) for New York State (NYS), as required by the Clean Air Act. Also, as part of this rulemaking, the Department is adding the definition for "residual oil" to 6 NYCRR Part 200 (Part 200). No new compliance requirements will be incurred by stationary sources subject to the provisions of the proposed rule.

COSTS

There will be no additional costs associated with Proposed Subpart 225-2.

The removal of the 99 percent combustion efficiency limit will save regulated facilities money ($1,000.00 to $5,000.00 per test) by eliminating the requirement to periodically test combustion efficiency.

MINIMIZING ADVERSE IMPACT

The Department does not expect any adverse impacts on rural areas. Proposed Subpart 225-2 is a statewide regulation. Its requirements are the same for all facilities, and rural areas are impacted no differently than other areas in the state.

RURAL AREA PARTICIPATION

During the drafting of Proposed Subpart 225-2, the Department held a stakeholder webinar on May 15th, 2018. There were 35 stakeholders signed in to the webinar. The Department solicited comments on Proposed Subpart 225-2 from the stakeholders which included the environmental justice contact list (8000 to 10,000 contacts), environmental advocate groups, industrial groups that fire waste oil, and waste oil collectors and distributors. The stakeholders asked some questions which the Depart-

ment answered. In addition, the Department will hold public hearings on Proposed Subpart 225-2 at various locations in New York State which will be open to representatives from rural areas.

*Job Impact Statement*

NATURE OF IMPACT

The Department is proposing to repeal Existing 6 NYCRR Part 225-2 Fuel Composition and Use – Waste Fuel (Existing Subpart 225-2) and replace it with Proposed 6 NYCRR Subpart 225-2, Fuel Composition and Use - Waste Oils (Proposed Subpart 225-2). Proposed Subpart 225-2 regulates the burning of waste oils in combustion, incineration, and process sources throughout New York State. Proposed Subpart 225-2 establishes applicability criteria, composition limits, and permitting requirements for waste oils; establishes monitoring, recordkeeping, and reporting requirements for facilities that are determined eligible to burn waste oil; and allows for the burning of waste oils in space heaters at automotive maintenance/service facilities. Also, as part of this rulemaking, the Department is adding the definition for "residual oil" to 6 NYCRR Part 200 (Part 200). If finalized, Proposed Subpart 225-2 will be included as a component of the State Implementation Plan (SIP) for New York State (NYS), as required by the Clean Air Act. These proposed changes to Subpart 225-2 are not anticipated to have an adverse impact on employment opportunities in the State.

CATEGORIES AND NUMBERS AFFECTED

Proposed Subpart 225-2 is meant to streamline regulations and is not placing any new substantive requirements on subject stationary sources. Therefore, Proposed Subpart 225-2 is not anticipated to have any short-term or long-term effects on the number of current jobs or future employment opportunities throughout New York State.

REGIONS OF ADVERSE IMPACT

Proposed Subpart 225-2 is a statewide regulation. This regulation is not expected to have an adverse impact on jobs or employment opportunities in New York State. It does not impact any region or area of the state disproportionately in terms of jobs or employment opportunities.

MINIMIZING ADVERSE IMPACT

The Department does not expect any adverse impacts on jobs in New York State based on Proposed Subpart 225-2. Proposed Subpart 225-2 is a statewide regulation. Its requirements are the same for all facilities and will not impact job opportunities in the State.

SELF-EMPLOYMENT OPPORTUNITIES

There are no anticipated affects on self-employment opportunities associated with Proposed Subpart 225-2.

## PROPOSED RULE MAKING
## HEARING(S) SCHEDULED

**New Aftermarket Catalytic Converter (AMCC) Standards**

**I.D. No.** ENV-36-19-00002-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Amendment of Parts 200 and 218 of Title 6 NYCRR.

*Statutory authority:* Environmental Conservation Law, sections 1-0101, 1-0303, 3-0301, 19-0103, 19-0105, 19-0107, 19-0301, 19-0303, 19-0305, 19-1101, 19-1103, 19-1105, 71-2103, 71-2105; and Federal Clean Air Act (42 USC 7507), section 177

*Subject:* New Aftermarket Catalytic Converter (AMCC) standards.

*Purpose:* Prohibit sale of Federal AMCCs and update existing AMCC recordkeeping and reporting requirements.

*Public hearing(s) will be held at:* 11:00 a.m., November 8, 2019 at Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129 A/B, Albany, NY.

*Interpreter Service:* Interpreter services will be made available to hearing impaired persons, at no charge, upon written request submitted within reasonable time prior to the scheduled public hearing. The written request must be addressed to the agency representative designated in the paragraph below.

*Accessibility:* All public hearings have been scheduled at places reasonably accessible to persons with a mobility impairment.

*Text of proposed rule:* Sections 200.1 through 200.8 remain unchanged
   Section 200.9, Table 1 is amended to read as follows:
   218-1.2(d) through 218-6.2 remain unchanged
   218-7.2 through 218-7.5 is amended to read as follows:

| | | |
|---|---|---|
| 218-7.2(c)(1) | California Code of Regulations, Title 13, Section 2222 [(10-1-09)] *(4-17-17)* | **<br>*** |

| 218-7.2(c)(2) | California Code of Regulations, Title 13, Section 2222 [(10-1-09)] *(4-17-17)* | ** *** |
| *218-7.2(c)(8)* | *California Code of Regulations, Title 13, Section 2222 (4-17-17)* | ** *** |
| 218-7.3(a)(1) | California Code of Regulations, Title 13, Section 2221 (12-30-83) | ** *** |
| | California Code of Regulations, Title 13, Section 2224 (8-16-90) | ** *** |
| 218-7.3(a)(2) | California Code of Regulations, Title 13, Section 2224a (8-16-90) | ** *** |
| 218-7.4(b)(3)(i) | California Code of Regulations, Title 13, Section 2222 [(10-1-09)] *(4-17-17)* | ** *** |
| 218-7.4(b)(3)(ii) | California Code of Regulations, Title 13, Section 2222 [(10-1-09)] *(4-17-17)* | ** *** |
| 218-7.5(b) | California Code of Regulations, Title 13, Section 2222 [(10-1-09)] *(4-17-17)* | ** *** |

218-8.1(a) through 218-11.2 remain unchanged

Subdivisions 218-7 (a) and (b) are unchanged, subdivision (c) is amended to read:

(1) It is unlawful for any person to install, sell, offer for sale, or advertise any new aftermarket catalytic converter intended for use on a gasoline powered passenger car, light-duty truck, or medium duty vehicle originally certified with a catalytic converter in New York State unless it has been exempted pursuant to the requirements of California Code of Regulations, title 13, section 2222 (see Table 1, section 200.9 of this Title). *As of January 1, 2021 all replacement catalytic converters sold, offered for sale, or installed in New York State shall be either a CARB certified new aftermarket catalytic converter, or an original equipment manufacturer replacement catalytic converter. After January 1, 2021 it is unlawful to offer for sale, sell or install any federal certified aftermarket catalytic converter in New York State unless the vehicle owner has obtained a waiver from the department. Federal certified aftermarket catalytic converters may be shipped to distribution centers, warehoused, and shipped through New York State without penalty. Federal certified aftermarket catalytic converters may be sold out of state without penalty.*

(2) It is unlawful for any person to install, sell, offer for sale or advertise any used, recycled, or salvaged catalytic converter in New York State pursuant to the requirements of California Code of Regulations, title 13, section 2222 (see Table 1, section 200.9 of this Title).

*(3) Installers of new aftermarket catalytic converters shall verify that the vehicle is specifically included in the vehicle application list for the new aftermarket catalytic converter being installed. This shall be verified by means including, but not limited to, the aftermarket catalytic converter manufacturer's vehicle application guide, the aftermarket catalytic converter manufacturer's website, contacting the aftermarket catalytic converter manufacturer, other manufacturer's documentation distributed to installers, or by contacting the department.*

*(4) Manufacturers of aftermarket catalytic converters shall ensure that the required information is available to installers using, but not limited to, the previously mentioned methods.*

*(5) A new aftermarket catalytic converter shall not be installed if any of the following installation requirements are not met: 1) The vehicle must be beyond its original emissions warranty coverage period and a legitimate need for replacing the existing catalytic converter must be established and documented on the repair invoice; 2) The new aftermarket catalytic converter shall be installed in the same location as the original equipment manufacturer catalytic converter; 3) The installation shall not alter the location, position, number of catalytic converters, nor the location, position, number or orientation of oxygen sensors, nor disable other emission control devices.*

*(6) Installers of new aftermarket catalytic converters shall retain records pertaining to the sale and installation of the aftermarket catalytic converters for a minimum of 4 years from the date of installation. Records shall be kept onsite at the installation location, either hardcopy or electronically, and shall be produced upon request from the commissioner's designee.*

*(7) Manufacturers (including manufacturers of cross-marketed catalytic converters), distributors, wholesalers, and retailers (including on-line retailers providing products to New York State customers) of new aftermarket catalytic converters delivered or sold in New York State shall provide records pertaining to the delivery and sale of aftermarket catalytic converters in the State upon request from the commissioner's designee.*

*(8) Manufacturers of aftermarket catalytic converters, including cross-marketed catalytic converters, are required to submit, to the department, using the same format used to report this information to CARB as*

*set forth in California Code of Regulations, title 13, section 2222 (see Table 1, section 200.9 of this Title), semi-annual warranty information reports of catalytic converters sold in New York.*

**Text of proposed rule and any required statements and analyses may be obtained from:** Jeff Marshall P. E., NYSDEC, Division of Air Resources, 625 Broadway, Albany, NY 12233, (518) 402-8292, email: air.regs@dec.ny.gov

**Data, views or arguments may be submitted to:** Same as above.

**Public comment will be received until:** November 13, 2019.

**Additional matter required by statute:** Pursuant to Article 8 of the State Environmental Quality Review Act, a Short Environmental Assessment Form, a Negative Declaration, and a Coastal Assessment Form have been prepared and are on file.

**Summary of Regulatory Impact Statement (Full text is posted at the following State website: http://www.dec.ny.gov/regulations/propregulations.html#public):**

1. Statutory authority

The statutory authority for this rule is found in Environmental Conservation Law (ECL) Sections 1-0101, 1-0303, 3-0301, 19-0103, 19-0105, 19-0107, 19-0301, 19-0303, 19-0305, 19-1101, 19-1103, 19-1105, 71-2103, 71-2105 and Section 177 of the federal Clean Air Act (42 USC 7507).

2. Legislative objectives

The Department is proposing to revise standards for new aftermarket catalytic converters (AMCC) which were originally adopted November 9, 2012 and effective June 1, 2013. This regulation package will further the goals of reducing air pollution from motor vehicles by requiring cleaner AMCCs be sold in New York. This is not a mandate on local governments pursuant to Executive Order 17.

3. Needs and benefits

New York has made considerable progress in improving its air quality; however, several areas of the State still do not meet federal health based national ambient air quality standards (NAAQS) for ozone and have been categorized as non-attainment areas. The Department has the obligation to regulate and mitigate criteria pollutant and greenhouse gas (GHG) emissions from mobile sources to safeguard the health of State residents and protect the State's environment.

In 2014, on-road light-duty vehicles emitted approximately 65,600 tons of volatile organic compounds (VOC) and 72,600 tons of oxides of nitrogen (NOx) annually[1]. In 2014, the transportation sector accounted for approximately 34 percent of all GHG emissions in New York State[2]. It is essential that the Department continue to adopt stringent mobile source emissions standards to protect human health and the environment.

The Department is proposing to amend Subpart 218-7 to incorporate revisions to the standards for new California certified AMCCs. The proposed amendments prohibit the sale and installation of federal certified AMCC in New York State absent a waiver from the Department. The proposed amendments also include provisions pertaining to AMCC installation requirements; AMCC installer recordkeeping requirements; recordkeeping requirements for AMCC manufacturers, distributors, wholesalers, and retailers; and clarification of AMCC manufacturer reporting requirements.

Prohibition of federal certified AMCC: The Department is proposing to prohibit the sale and installation of federal certified AMCCs in New York. Following adoption of the AMCC standards in 2012, the Department determined that federal certified AMCCs may legally be offered for sale and installed on vehicles with federal only emissions certification. The continued sale of federal certified AMCCs has become unmanageable from an enforcement standpoint.

Staff conducted compliance audits at various points in the AMCC supply chain including AMCC distributors. Some audits determined that more than 60 percent of AMCCs delivered to retailers, installers and consumers in New York were noncompliant federal certified AMCCs. These findings appear to corroborate allegations that federal certified AMCCs are continuing to be shipped into New York in quantities far exceeding the number of federally certified vehicles in New York State's fleet mix.

The proposed amendments will prohibit the offering for sale, sale, advertising, and installation of federal certified AMCCs on any vehicle in New York regardless of the vehicle's emissions certification or state of registration. Legal replacement options will be California AMCCs or original equipment manufacturer (OEM) parts. The lone exception will be for vehicles that have been granted a waiver from the Department. AMCC manufacturers, distributors, and retailers operating distribution centers within New York State will be allowed to warehouse in, and ship through, the State without violating the standards.

The prohibition of federal certified AMCCs will become effective January 1, 2021. The delayed effective date provides AMCC manufacturers, distributors, and retailers adequate time to certify, produce, and stock sufficient quantities of complaint AMCCs to serve the New York market. The

Department will conduct outreach and education activities directed towards the regulated community and consumers to inform them of the proposed changes.

AMCC installer requirements: Under the proposed amendments, AMCC installers will be required to verify that the AMCC being installed is California certified and specifically included on the vehicle application list for the make, model, model year, engine displacement, and engine family in question. Installers will be required to ensure installation requirements are met before installing a new AMCC.

Recordkeeping requirements for AMCC installers: The Department is proposing to amend the AMCC standards to require all installers of California certified AMCCs to retain records pertaining to the sale and installation of AMCC at the site of the installation. Records shall be kept onsite at the installation location in either electronic or paper copies and shall be produced upon request from Department staff.

Recordkeeping requirements for AMCC manufacturers, distributors and retailers: The Department is proposing new recordkeeping requirements for AMCC manufacturers, distributors and retailers of California AMCCs delivered for sale or sold in New York State. Any entity involved in the production, delivery, or sale of new AMCCs in New York must provide records associated with such sale upon request from a Department representative.

AMCC manufacturer reporting requirements: The proposed amendments will require AMCC manufacturers to submit semi-annual warranty reports. The reports will be identical in format and content to those submitted to California. The lone exception is the inclusion of New York State sales data rather than California sales. The Department is also proposing that all companies wishing to sell cross-marketed AMCCs in New York must submit a copy of all cross-marketing agreements to the Department prior to offering products for sale in New York. The Department is proposing cross-marketed AMCC manufacturers to be subject to the same recordkeeping, reporting, and warranty requirements as original AMCC manufacturers.

The Department updated the estimated emissions benefit derived from the AMCC standards for this proposed rulemaking. The estimated hydrocarbon + oxides of nitrogen (HC + NOx) emission benefit Statewide for 2016 is 2.00 tons per day.

4. Costs

Potential Impact on Manufacturers.

The proposed amendments may increase costs for AMCC manufacturers. California compliant AMCCs have a greater catalyst loading and a longer warranty period relative to federal certified AMCCs, which will require manufacturers to allocate resources for production and warranty claims. The proposed amendments also include recordkeeping and reporting requirements for AMCC manufacturers that will require the allocation of resources.

AMCC manufacturers currently not producing California compliant AMCCs will experience the greatest adverse impact. These manufacturers will have to certify their products with CARB, enter into cross-marketing agreements with manufacturers of CARB compliant AMCCs, or exit the New York market. The Department is proposing an extended lead time from the date of adoption to provide all manufacturers time to certify, produce, and deliver sufficient quantities of compliant AMCCs for the New York market.

In the 2012 rulemaking, the Department estimated the cost effectiveness in New York State to be $3.60 per pound of HC+ NOx reduced. The average cost increase is attributable to the increased amounts of precious metals required to comply with the regulation. However, this cost increase is partially offset by the regulation's increased durability and warranty requirements. The Department believes this cost estimate is still valid.

Potential Impact on Consumers.

The proposed amendments are expected to result in additional costs for New York State consumers. The Department reviewed publicly available AMCC retail prices from automotive parts retailers and determined the $200 average incremental cost increase estimated in the original 2012 rulemaking was still valid for this proposed rulemaking. This increase would be offset by improved warranty provisions for applicable consumers.

Consumers accustomed to purchasing federal certified AMCC, regardless of their vehicle's emission certification, will experience the greatest adverse impact. This practice has been in violation of the AMCC standards for most vehicles since enforcement of the standards began January 1, 2014. Some vehicle owners may be limited to purchasing OEM replacement catalytic converters. The Department does not require owners to scrap their vehicles if a compliant AMCC or OEM replacement is unavailable. A waiver process is available which will allow the installation of a suitable replacement converter.

Potential Impact on Business Competitiveness.

The proposed amendments apply equally to all AMCC manufacturers and affiliated businesses delivering new AMCCs for sale in New York.

The proposed standards apply equally to entities selling AMCCs in New York whether they have a physical location in the State or are an online retailer. While New York State registered vehicles may cross state lines to obtain non-compliant AMCCs, any CARB or 50 State emissions certified out-of-state vehicles installing an AMCC while in New York State will be required to comply with the regulation. Several of the surrounding states have adopted, or may adopt, similar requirements. The proposed regulation is not expected to impose a competitive disadvantage.

Potential Impact on Employment.

The proposed amendments are not expected to cause a noticeable change in New York employment.

Potential Impact on Business Creation, Elimination or Expansion.

The proposed AMCC regulations may have an adverse impact on business creation, elimination, or expansion. The Department expects any increase in materials, research, development and testing costs to be passed along to consumers in the form of higher purchase prices. The Department is aware of retailers curtailing sales to exclude federal certified AMCC following implementation of the initial AMCC regulation. These businesses will not be at a disadvantage under the proposed amendments since the continued sale of federal certified AMCC will be prohibited without a DEC issued waiver.

The Department is aware of allegations attributing business closures or loss of income to the current AMCC regulations. The Department has been unable to substantiate any alleged business closures directly resulting from the current AMCC regulations. Several stakeholders raised issues related to the cost and space required to stock dual inventories of CARB and federal certified AMCCs for the sale in the New York market. It is the Department's belief that many of the issues related to stocking dual inventories stems largely from widespread non-compliance with the existing regulation.

Potential Costs to Local and State Agencies.

The proposed amendments are not expected to result in any additional costs for local and state agencies. No additional paperwork or staffing requirements are expected.

5. Local government mandates

The proposed amendments do not impose a local government mandate. No additional paperwork or staffing requirements are expected. This is not a mandate on local governments pursuant to Executive Order 17. Local governments have no additional compliance obligations as compared to other subject entities.

6. Paperwork

The proposed AMCC amendments will not result in any new significant paperwork requirements for New York vehicle manufacturers or dealers. This has been the case since New York first adopted the California AMCC standards in 2012. Implementation of the proposed amendments is not expected to be burdensome in terms of paperwork to owners/operators of vehicles. Installers that have not been complying with the current AMCC regulation will experience an increase in paperwork associated with the AMCC warranty requirements. All AMCC installers will be required to complete a warranty card in triplicate with the original going to the customer, one copy to the installer, and one copy to the AMCC manufacturer. Companies manufacturing cross-marketed AMCCs will be required to submit copies of the cross-marketing agreement and required reports to the Department. The Department will experience an increase in paperwork associated with AMCC warranty reporting requirements and cross-marketing agreements. An increase in AMCC waiver requests and associated paperwork is anticipated. Existing Department staff will cover the increased workload.

7. Duplication

There are no relevant state or federal rules or other legal requirements that will duplicate, overlap, or conflict with this.

8. Alternatives

The option of maintaining current AMCC standards without adopting the proposed amendments was reviewed and rejected. The continued sale and installation of federal certified AMCCs in New York State has led to widespread noncompliance which has adversely affected emissions reductions from the LEV program.

9. Federal standards

There are no equivalent federal certified AMCC standards available as an alternative. Current federal certified AMCC standards do not achieve equivalent emission reductions, nor provide equivalent emission warranty coverage.

10. Compliance schedule

The proposed regulatory amendments, except the federal certified AMCC prohibition, will take effect 30 days after adoption. The prohibition of federal certified AMCC for all 1993 and subsequent model year on-road gasoline fueled light and medium-duty motor vehicles will take effect January 1, 2021.

---

[1]   U.S. Environmental Protection Agency. National Emissions Inventory. https://www.epa.gov/air-emissions-inventories/2014-nei-data

2   New York State Energy Research and Development Authority (NYSERDA). New York State Greenhouse Gas Inventory:1990-2014. December 2016, Revised February 2017. Pg S-3. https://www.nyserda.ny.gov/About/Publications/EA-Reports-and-Studies/Energy-Statistics

*Regulatory Flexibility Analysis*

1. Effect of rule:

The New York State Department of Environmental Conservation (Department) is proposing to amend 6 NYCRR Section 200.9 and 6 NYCRR Subpart 218-7 to update New York's standards for new aftermarket catalytic converters (AMCC). The AMCC standards were initially adopted in November 2012 as part of the low emission vehicle (LEV) program, and incorporate California's AMCC standards by reference. These changes apply to AMCCs purchased by consumers, businesses, and government agencies in New York and may impact businesses involved in manufacturing, selling, leasing, or installing AMCCs.

State and local governments are also consumers of AMCCs that will be regulated under the proposed amendments. Therefore, local governments who own or operate vehicles in New York State are subject to the same requirements as owners of private vehicles in New York State; i.e., they must purchase California certified AMCCs. This rulemaking is not a local government mandate pursuant to Executive Order 17.

The proposed changes are a revision of the current LEV standards. The new motor vehicle emissions program has been in effect in New York State since model year 1993 for passenger cars and light-duty trucks, with the exception of the 1995 model year, and the Department is unaware of any significant adverse impact to small businesses or local governments as a result of previous revisions. Section 177 of the federal Clean Air Act requires New York to maintain standards identical to California's in order to maintain the LEV program.

2. Compliance requirements:

There are no specific requirements in the proposed regulation which apply exclusively to small businesses or local governments. Reporting, recordkeeping and compliance requirements are effective statewide. The proposed amendments prohibit the sale and installation of federal certified AMCC in New York State absent a waiver from the Department. The proposed amendments also include provisions pertaining to AMCC installation requirements; AMCC installer recordkeeping requirements; recordkeeping requirements for AMCC manufacturers, distributors, wholesalers, and retailers; and clarification of AMCC manufacturer reporting requirements.

The proposed amendments will prohibit the offering for sale, sale, advertising, and installation of federal certified AMCCs for use on any vehicle in New York regardless of the vehicle's emissions certification or state of registration. Legal replacement options will be California AMCCs or original equipment manufacturer (OEM) parts. The lone exception will be for vehicles that have been granted a waiver from the Department. AMCC manufacturers, distributors, and retailers operating distribution centers within New York State will be allowed to warehouse in, and ship through, the State without violating the standards.

Installers will be required to ensure the following installation requirements are met before installing a new AMCC. The vehicle must be beyond its original emissions warranty coverage period and a legitimate need for replacement of the existing catalytic converter must be established and documented on the repair invoice. The installation must not alter the location, position, number of catalytic converters, nor the location, position, or orientation of the oxygen sensors. AMCC manufacturers will be required to ensure that the information required by AMCC installers is available and accessible.

The Department is proposing to amend the AMCC standards to require all installers of California certified AMCCs to retain records pertaining to the sale and installation of AMCC at the site of the installation. Records shall be kept onsite at the installation location in either electronic or paper copies and shall be produced upon request from Department staff. The records must be retained for a minimum of 4 years from the installation date. Failure to retain AMCC records onsite, or failure to provide access to these records upon request from a Department representative, shall be considered a violation of Part 218 and subject to potential enforcement action.

The Department is proposing new recordkeeping requirements for AMCC manufacturers, distributors and retailers of California AMCCs delivered for sale or sold in New York State. Any entity involved in the production, delivery, or sale of new AMCCs in New York must provide records associated with such sale upon request from a Department representative. Failure to comply with records requests will be considered a violation of Part 218 and subject to potential enforcement action.

Following adoption of the proposed amendments, AMCC manufacturers will be required to submit semi-annual warranty reports. The reports will be identical in format and content to those submitted to California as set forth in California Evaluation Procedures for New Aftermarket Catalytic Converters (f)(2)(C). The lone exception is the inclusion of New York State sales data rather than California sales.

3. Professional services:

There are no professional services needed by small business or local government to comply with the proposed rule.

4. Compliance costs:

Any entity involved in the manufacture, distribution, sale, or installation of AMCCs must comply with the proposed recordkeeping and reporting requirements. The costs associated with these requirements are expected to be minimal. The prohibition of federal certified AMCCs is not expected to negatively impact profits as the same overall demand for AMCCs would remain unchanged. AMCC manufacturers, particularly those currently without California certified AMCCs, would incur costs related to research, development, and certification of compliant AMCCs. It is expected that any compliance costs would be passed onto consumers in the form of increased retail prices.

New York State currently maintains personnel and equipment to administer the LEV program. No additional costs will be incurred by local governments for the administration of this program.

5. Economic and technological feasibility:

As stated previously, the prohibition of federal certified AMCCs is not expected to negatively impact profits as the same overall demand for AMCCs would remain unchanged. It is expected that any compliance costs would be passed onto consumers in the form of increased retail prices. While compliant California AMCCs may initially cost more than noncompliant federal certified AMCCS, they offer better emission reduction performance and better warranty protection which partially offsets the increased purchase price.

The proposed revisions apply equally to all AMCC manufacturers and affiliated businesses delivering new AMCCs for sale in New York and is not expected to impose a competitive disadvantage. Cross-border sales of non-compliant AMCCs have been put forth as a significant threat to affiliated businesses within the State. The Department notes that cross-border sales have always existed to varying degrees and will likely continue. However, it should also be noted that out-of-state vehicles requiring the installation of an AMCC while in New York will be required to comply with the proposed regulation. Overall, the adverse impact of cross-border sales and non-compliant AMCCs should be minimal.

6. Minimizing adverse impact:

The amendments attempt to minimize adverse impacts of the federal certified AMCC prohibition by delaying the effective date of the prohibition until January 1, 2021. The delayed effective date provides approximately 3 years leadtime, which is almost twice as much leadtime as provided during the initial AMCC adoption. The recordkeeping and reporting provisions will take effect 30 days after adoption. The revisions to Part 218 will apply to all 1993 and subsequent model year passenger cars, light-duty trucks, and medium-duty vehicles. AMCC manufacturers, distributors, and retailers will be allowed to warehouse and ship non-compliant AMCCs through New York State to supply surrounding states. The proposed revisions only prohibit the sale of non-compliant AMCCs within New York State.

There will be no adverse impact on local governments who own or operate vehicles in the state because they are subject to the same requirements as those imposed on owners of private vehicles. This rulemaking is not a local government mandate pursuant to Executive Order 17. This regulation contains exemptions for emergency vehicles, and military tactical vehicles and equipment.

7. Small business and local government participation:

The Department plans on holding public hearings at various locations throughout New York State after the amendments are proposed. Small businesses and local governments will have the opportunity to attend these public hearings. Additionally, there will be a public comment period in which interested parties can submit written comments.

8. For rules that either establish or modify a violation or penalties associated with a violation:

In accordance with NYS State Administrative Procedure Act (SAPA) Section 202-b, this rulemaking does not include a cure period because the Department is undertaking this rulemaking to maintain identicality with Section 177 of the Clean Air Act.

*Rural Area Flexibility Analysis*

1. Types and estimated numbers of rural areas:

The New York State Department of Environmental Conservation (Department) is proposing to amend 6 NYCRR Section 200.9 and 6 NYCRR Subpart 218-7 to update New York's standards for new aftermarket catalytic converters (AMCC). The AMCC standards were initially adopted in November 2012 as part of the low emission vehicle (LEV) program, and incorporate California's AMCC standards by reference.

There are no requirements in the proposed regulation which apply only to rural areas. These changes apply to manufacturers' requirements for the

manufacture and sale of vehicles sold in New York. The changes to these regulations may impact businesses involved in manufacturing, selling, or installing new AMCCs for on-road gasoline fueled passenger cars, light-duty trucks, and medium-duty vehicles.

The proposed changes are revisions to the current LEV standards. The new motor vehicle emission program has been in effect in New York State since model year 1993 for passenger cars as well as light-duty trucks, with the exception of model year 1995, and the Department is unaware of any adverse impact to rural areas as a result. The beneficial emission reductions from the program accrue to all areas of the state.

2. Reporting, recordkeeping and other compliance requirements; and professional services:

There are no specific requirements in the proposed regulations which apply exclusively to rural areas. Reporting, recordkeeping and compliance requirements apply to AMCC installers, retailers, distributors, and manufacturers. Reporting and recordkeeping requirements mirror the California requirements, and are thus not expected to be burdensome. AMCC installers must maintain records for a minimum of 4 years onsite to demonstrate compliance. Professional services are not anticipated to be necessary to comply with the proposed rules.

3. Costs:

The proposed revisions are expected to result in additional costs for New York State consumers. When the AMCC standards were initially adopted in November 2012, it was estimated that the average cost of a compliant AMCC would increase $200 relative to a non-compliant federal certified AMCC. The Department reviewed publicly available AMCC retail prices and determined that the $200 average incremental cost increase remained valid for this proposed rulemaking. Owners of low-volume vehicles, or vehicles without a compliant AMCC option, may be limited to purchasing original equipment manufacturer (OEM) replacement catalytic converters. OEM converters cost significantly more than AMCC, in some cases well over $1,000.

4. Minimizing adverse impact:

The proposed changes apply Statewide. The Department has proposed a delayed effective date for the prohibition of non-compliant federal certified AMCC until January 1, 2021. The intent of the delayed effective date is to provide sufficient lead-time for AMCC manufacturers and affiliated businesses to certify, produce, and stock complaint AMCCs to service the New York market.

The Department also has a waiver process available for vehicles without a compliant AMCC or OEM replacement catalytic converter option in order to avoid scrapping an otherwise functioning vehicle. The waiver permits the installation of a suitable AMCC in cases where compliant replacement options no longer exist. The vehicle is still required to pass an annual emissions inspection.

5. Rural area participation:

The Department plans on holding public hearings at various locations throughout New York State once the regulation is proposed. Some of these locations will be convenient for persons from rural areas to participate. Additionally, there will be a public comment period in which interested parties can submit written comments.

**Job Impact Statement**

1. Nature of impact:

The New York State Department of Environmental Conservation (Department) is proposing to amend 6 NYCRR Section 200.9 and 6 NYCRR Subpart 218-7 to update New York's standards for new aftermarket catalytic converters (AMCC). The AMCC standards were initially adopted in November 2012 as part of the low emission vehicle (LEV) program, and incorporate California's AMCC standards by reference.

The proposed amendments to the regulations may adversely impact jobs and employment opportunities in New York State. New York State has had a LEV program in effect since model year 1993 for passenger cars and light-duty trucks, with the exception of model year 1995, and the Department is unaware of any significant adverse impact to jobs and employment opportunities as a result of previous revisions.

2. Categories and numbers affected:

The proposed revisions may have an adverse impact on AMCC manufacturers, distributors, and retailers. There is currently little, or no, AMCC manufacturing in New York State. As a result, no significant job losses in this sector are expected within the State. Most, if not all, AMCC manufacturers will have to allocate resources to produce a greater quantity of California compliant AMCCs to supply the New York market along with associated recordkeeping, reporting, and warranty costs.

After the initial AMCC adoption, some AMCC manufacturers stated they would be forced to layoff employees due to decreased business. The Department is aware of allegations attributing business closures or loss of income to the current AMCC regulations. The Department has been unable to substantiate any alleged business closures directly resulting from the current AMCC regulations. AMCC manufacturers that currently do not produce compliant AMCCs will be required to obtain California

certification(s) for their product(s), negotiate cross-marketing agreements for compliant AMCCs, or exit the New York market.

There are a significant number of affiliated businesses such as distributors and retailers located in New York State which may be adversely impacted by the proposed revisions. The proposed revisions apply equally to all AMCC manufacturers and affiliated businesses delivering new AMCCs for sale in New York and is not expected to impose a competitive disadvantage. Cross-border sales and online sales of non-compliant AMCCs have been put forth as a significant threat to affiliated businesses within the State. The Department notes that cross-border sales have always existed to varying degrees and will likely continue. However, it should also be noted that out-of-state vehicles requiring the installation of an AMCC while in New York will be required to comply with the proposed regulation. Online retailers conducting transactions with New York customers will be held to the same standards as retailers located within the State to ensure a level playing field for all retailers. Overall, the adverse impact of cross-border sales and non-compliant AMCCs should be minimal. The Department is unaware of any affiliated business job losses which are directly attributable to the existing AMCC regulation.

3. Regions of adverse impact:

None.

4. Minimizing adverse impact:

The amendments attempt to minimize adverse impacts of the federal certified AMCC prohibition by delaying the effective date of the prohibition until January 1, 2021. The delayed effective date provides approximately 3 years lead-time, which is almost twice as much lead-time as provided during the initial AMCC adoption. The recordkeeping and reporting provisions will take effect 30 days after adoption. The revisions to Subpart 218-7.2 will apply to all 1993 and subsequent model year passenger cars, light-duty trucks, and medium-duty vehicles. Online retailers conducting transactions with New York customers will be held to the same standards as retailers located within the State to ensure a level playing field for all retailers. AMCC manufacturers, distributors, and retailers will be allowed to warehouse and ship non-compliant AMCCs through New York State to supply surrounding states. The proposed revisions only prohibit the sale of non-compliant AMCCs within New York State.

5. Self-employment opportunities:

None that the Department is aware of at this time.

## PROPOSED RULE MAKING
## HEARING(S) SCHEDULED

**Stationary Combustion Installations**

**I.D. No.** ENV-36-19-00003-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Amendment of Part 200; repeal of Subpart 227-1; and addition of new Subpart 227-1 to Title 6 NYCRR.

*Statutory authority:* Environmental Conservation Law, sections 1-0101, 3-0301, 3-0303, 19-0103, 19-0105, 19-0107, 19-0301, 19-0302, 19-0303, 19-0305, 19-0311, 71-2103 and 71-2105

*Subject:* Stationary Combustion Installations.

*Purpose:* Update permit references, rule citations, monitoring, recordkeeping, reporting requirements, and lower emission standards.

*Public hearing(s) will be held at:* 11:00 a.m., November 8, 2019 at Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129 A/B, Albany, NY.

*Interpreter Service:* Interpreter services will be made available to hearing impaired persons, at no charge, upon written request submitted within reasonable time prior to the scheduled public hearing. The written request must be addressed to the agency representative designated in the paragraph below.

*Accessibility:* All public hearings have been scheduled at places reasonably accessible to persons with a mobility impairment.

*Text of proposed rule:* Existing sections 200.1 through 200.8 remain unchanged.

Existing section 200.9, Table 1 is amended as follows:

| | | |
|---|---|---|
| [227-1.3(b)(1)] | [40 CFR Part 60, Appendix A (Updated July 1, 1996) Reference Method 9, pages 734-740] | [*] |
| 227-1.2(a) | *40 CFR 60 and 40 CFR 63 (Updated July 1, 2017)* | * |
| 227-1.4(b)(1) | *40 CFR 60, Appendix A (Updated July 1, 2017) Reference Method 9, pages 311-318* | * |

| 227-1.4(b)(2) | 40 CFR 60, Appendix F, Procedure - 3 (Updated July 1, 2017) | * |
| 227-1.5(a)(2) | 40 CFR 60, Appendix A Method 5 (Updated July 1, 2017) | |
| 227-1.5(b)(1) | 40 CFR 60, Appendix B (Updated July 1, 2017) | * |

Existing section 200.10 through section 200.16 remains unchanged.

Existing 6 NYCRR Subpart 227-1, Stationary Combustion Installations is repealed. A new Subpart 227-1, Stationary Combustion Installations is added as follows:

*Section 227-1.1 Definitions. The definitions within Part 200, Part 201, and Subpart 227-2 of this Title apply to this Subpart.*

*Section 227-1.2 Applicability and Prohibitions.*

*(a) This Subpart applies to stationary combustion installations except for those stationary combustion installations that are subject to new source performance standards under 40 Code of Federal Regulation (CFR) 60 and/or national emissions standards for hazardous air pollutants under 40 CFR 63 (See Table 1, section 200.9 of this Title), where the particulate matter standards established in the above regulations are equal to or more stringent than the particulate matter emission standards established in this Subpart.*

*(b) No owner or operator shall construct, install, or modify, or cause to be constructed, installed, or modified, any hand fed stationary combustion installation designed to fire bituminous coal.*

*Section 227-1.3 Particulate emissions.*

*(a) Upon promulgation of this regulation, no owner or operator of an existing stationary combustion installation which fires oil or oil in combination with other liquid or gaseous fuels shall be allowed to emit particulate matter in excess of 0.10 pound per million Btu heat input. Within two years of the promulgation of this regulation, no owner or operator of an existing stationary combustion installation firing solid fuel shall be allowed to emit particulate matter in excess of 0.10 pound per million Btu heat input. Upon the commencement of operation, no owner or operator of a new stationary combustion installation shall be allowed to emit particulate matter in excess of 0.10 pound per million Btu heat input. The above emission limits apply to stationary combustion installations with a maximum heat input capacity equal to or exceeding:*

*(1) 1 million Btu per hour firing any amount of solid fuel; or*

*(2) 50 million Btu per hour firing oil or oil in combination with other liquid or gaseous fuels.*

*(b) When two or more stationary combustion installations are connected to a common air cleaning device and/or stack, the total heat input of all the connected emission sources shall be the heat input for the purpose of determining the applicability of subdivision (a) of this Section, unless there is a limit in the facility's permit that prohibits operation of the connected emission sources below the specified heat inputs in subdivision (a) of this Section.*

*(c) All stationary combustion installations subject to the requirements of this subpart shall perform an annual tune-up of their equipment.*

*Section 227-1.4 Opacity.*

*(a) No owner or operator shall operate a stationary combustion installation which exhibits greater than 20 percent opacity (six-minute average), except for one six-minute period per hour of not more than 27 percent opacity.*

*(b) Compliance with the opacity standard may be determined by:*

*(1) conducting observations in accordance with 40 CFR 60 Appendix A Method 9 (See Table 1, section 200.9 of this Title);*

*(2) evaluating Continuous Opacity Monitoring System (COMS) records and reports as per Procedure 3 – Quality Assurance Requirements for Continuous Opacity Monitoring Systems at Stationary Sources of 40 CFR Part 60 Appendix F, Procedure – 3 (See Table 1, section 200.9 of this Title); and/or*

*(3) considering any other credible evidence.*

*Section 227-1.5 Compliance testing, monitoring, and recordkeeping.*

*(a) The owner or operator of a new solid fuel fired stationary combustion installation must conduct an initial compliance test within 180 days of the commencement of operation of the new stationary combustion installation to determine compliance with the applicable particulate matter emission limit as prescribed in this Subpart. The owner or operator of an existing solid fuel fired stationary combustion installation must conduct a compliance test within two years of the promulgation of this regulation. After the initial compliance test, all solid fuel fired stationary combustion installations must conduct periodic compliance tests at least once during the term of the permit. Prior to each test, the owner or operator of a solid fuel fired stationary combustion installation must meet the following criteria:*

*(1) submit a compliance test protocol to the department for approval*

*at least 30 days prior to emission testing. The conditions of the testing, including the representative loads of operation the testing will be conducted at, and the locations of the sampling devices be acceptable to the department;*

*(2) follow the procedures set forth in 40 CFR 60, Appendix A Method 5 (See Table 1, section 200.9 of this Title), or any other method acceptable to the department and the administrator for determining compliance with the appropriate particulate matter emission limit in section 227-1.3 of this Subpart; and*

*(3) submit a compliance test report containing the results of the emission test to the department for approval no later than 60 days after completion of the emission test.*

*(b) Monitoring requirements.*

*(1) Any owner or operator of a stationary combustion installation (excluding combustion turbines) or a group of stationary combustion installations with a total maximum heat input capacity exceeding 250 million Btu per hour shall install, operate, and properly maintain in accordance with manufacturer's instructions, accurate COMS that satisfy the criteria in either 40 CFR 60 Appendix B (See Table 1, section 200.9 of this Title) or a department approved case-by-case method for continuously monitoring and recording opacity. Stationary combustion installations required to install COMS shall operate the COMS during all periods of oil and/or solid fuel firing.*

*(2) Each owner or operator required to operate a COMS in accordance with paragraph (1) of this subdivision shall submit an accurate excess emissions and monitoring system performance report to the department for each calendar year quarter. All reports shall be certified by a responsible corporate official as true, accurate and complete and postmarked by the 30th day following the end of each calendar quarter. The quarterly excess emissions report shall be submitted in a form acceptable to the department and shall include the following minimum information:*

*(i) the magnitude, date and time of each six-minute block average during which the average opacity of emissions exceeds 20 percent, except for one six-minute block average per hour not to exceed 27 percent;*

*(ii) identification of the specific cause and corrective action taken for each period of excess emission;*

*(iii) identification of all periods of COMS downtime, including the date, time and duration of each inoperable period, and the cause and corrective action for each COMS downtime period;*

*(iv) the total time in which the COMS are required to record data during the reporting period;*

*(v) the total number of exceedances and the duration of exceedances expressed as a percentage of the total time in which the COMS are required to record data; and*

*(vi) such other things as the department may deem necessary, proper or desirable in order to enforce article 19 of the Environmental Conservation Law or the rules promulgated thereunder.*

*(3) Any owner or operator of a stationary combustion installation (excluding combustion turbines) or a group of stationary combustion installations firing oil or oil in combination with other liquid or gaseous fuels with a total maximum heat input capacity of at least 50 million Btu per hour shall keep vendor certified fuel receipts which contain the sulfur content of the oil being fired as required in 6 NYCRR Subpart 225-1 of this Chapter.*

*(c) Recordkeeping.*

*(1) All records, department approved compliance testing protocols, and test results must be maintained on site or at an alternative location, as approved by the department, for a minimum of five years.*

*(2) Stationary combustion installations required to maintain a COMS must maintain a record of all measurements made by the COMS and the hours of COMS downtime.*

*(3) Facilities required to conduct annual tune-ups must maintain records of each annual tune-up for all subject stationary combustion installations at the facility.*

*Section 227-1.6 Severability. Each provision of this Subpart shall be deemed severable. In the event that any provision of this Subpart is held to be invalid the remainder of this Subpart shall continue in full force and effect.*

**Text of proposed rule and any required statements and analyses may be obtained from:** Mike Jennings, NYSDEC, Division of Air Resources, 625 Broadway Albany, NY 12233-3254, (518) 402-8403, email: air.regs@dec.ny.gov

**Data, views or arguments may be submitted to:** Same as above.

**Public comment will be received until:** November 13, 2019.

**Additional matter required by statute:** Pursuant to Article 8 of the State Environmental Quality Review Act, a Short Environmental Assessment Form, a Negative Declaration and a Coastal Assessment Form have been prepared and are on file.

*Summary of Regulatory Impact Statement (Full text is posted at the following State website: http://www.dec.ny.gov/regulations/propregulations.html#public):*

INTRODUCTION

The New York State Department of Environmental Conservation (Department) is proposing to repeal and replace 6 NYCRR Subpart 227-1, "Stationary Combustion Installations" as well as attendant provisions under Part 200, "General Provisions" (collectively, Subpart 227-1). Currently, Subpart 227-1 establishes emission limits for particulate matter (PM) on oil fuel (including oil which is fired in combination with other liquid and gaseous fuels), and solid fuel (any amount) fired stationary combustion installations. Subpart 227-1 also establishes an opacity limit for all stationary combustion installations.

The Department is revising Subpart 227-1 to lower PM emission limits for existing and new stationary combustion installations that either predate, or are not subject to, a federal new source performance standard (NSPS) and/or national emissions standard for hazardous air pollutants (NESHAP). These revisions will also correct minor typographical errors and update the regulation to incorporate changes to the air permitting regulations that have occurred over the past twenty years. In addition, the Department is revising Part 200 to incorporate by reference the applicable federal rule provisions.

As required by the Clean Air Act (CAA), the Department will incorporate the revisions to Subpart 227-1 and the attendant revisions to Part 200 into New York's State Implementation Plan (SIP) and provide the revised SIP to U.S. Environmental Protection Agency (EPA) for review and approval. The SIP is directed at maintaining the PM national ambient air quality standard (NAAQS) and fulfilling the Department's obligations under the regional haze SIP submitted to the EPA on March 15, 2010. These revisions are not a mandate on local governments. It applies to any entity that owns or operates a stationary combustion installation as set forth in the regulations.

STATUTORY AUTHORITY

The statutory authority for these revisions is found in the New York State Environmental Conservation Law (ECL): sections 1-0101, 3-0301, 3-0303, 19-0103, 19-0105, 19-0107, 19-0301, 19-0303, 19-0302, 19-0305, 19-0311, 71-2103, and 71-2105.

Based on the above-referenced sections, the Department has very broad authority to regulate air pollution from portable or stationary sources, including the promulgation of 6 NYCRR Subpart 227-1 entitled "Stationary Combustion Installations".

LEGISLATIVE OBJECTIVES

Article 19 of the ECL was adopted for the purpose of safeguarding the air resources of New York State from pollution. To facilitate this purpose, the Legislature bestowed specific powers and duties on the Department including the power to formulate, adopt, promulgate, amend, and repeal regulations for preventing, controlling or prohibiting air pollution. This authority also specifically includes promulgating rules and regulations for preventing, controlling or prohibiting air pollution in such areas of the state as shall or may be affected by air pollution, and provisions establishing areas of the state and prescribing for such areas (1) the degree of air pollution or air contamination that may be permitted therein, and (2) the extent to which air contaminants may be emitted to the air by any air contamination source. In addition, this authority also includes the preparation of a general comprehensive plan for the control or abatement of existing air pollution and for the control or prevention of any new air pollution recognizing various requirements for different areas of the state.

The legislative objectives underlying the statutes are directed toward protection of the environment and public health. The proposed rulemaking will further the state's goals by reducing air pollution, specifically PM emissions, a criteria pollutant and a precursor to PM-2.5 which in turn is a precursor to visibility-impairing haze from the majority of oil firing stationary sources.

NEEDS AND BENEFITS

There are many environmental benefits inherent in the reductions of PM that do not explicitly relate to visibility improvement. These reductions will lead to advances in health protection as well. In addition to experiencing improved visibility, forested areas such as the Adirondack Park will benefit from reduced PM acid deposition impacts. These environmental impacts could also be expected to translate into economic benefits from increased public use of a cleaner and visibly healthier park.

Elevated PM levels are of concern for the New York City metropolitan area, which has been designated, until recently, as non-attainment for the annual and 24-hour PM-2.5 NAAQS. PM consists of microscopic solid or liquid particles, and is the major cause of the regional haze issue. PM can be emitted directly from stationary sources, or comprised of nitrate and sulfate particles formed through reactions involving NOx and SO2 in the atmosphere. These particles are small enough to be inhaled into the lungs and can even enter the bloodstream. Ongoing scientific studies show that particulate inhalation, similarly to ozone, leads to health problems such as

coughing, difficulty breathing, aggravated asthma, and a higher likeliness for other respiratory disorders. Increased PM exposure may even cause premature death in those with existing heart or lung disease.

The revisions to Subpart 227-1 are intended to reduce the emission of PM that are the precursors of PM-2.5 below the present levels. Regulatory efforts such as the NSPS and NESHAP programs, past NYS and federal fuel PM emission limits for stationary and mobile sources, and efforts like the Clean Air Interstate Rule have had a significant effect on air quality and health. The proposed PM limits in this rule are expected to further reduce monitored values of PM-2.5, and to enable and maintain attainment of the NAAQS. The proposed PM emission limits will reduce actual PM emissions throughout NYS by two to five tons per day.

Stakeholder Meetings:

The Department held stakeholder meetings on July 26th through July 28th, 2017 in Albany, NY, New York City, NY and Avon, NY, respectively. The Department sent a fact sheet out to interested parties including the environmental justice community. Several of the interested parties attended each of these meetings where they asked questions and provided comments on the draft regulatory language.

COSTS

Costs to Regulated Parties and Consumers:

For oil fuel fired stationary combustion installation control costs, there is a direct correlation between the sulfur content of fuel oil and PM emissions. The USEPA's 5th Edition AP-42 Final Section for External Combustion Sources (AP-42) emission factors for residual oil contain a sulfur-in-fuel component. Since the 2013 rule revision of Subpart 225-1 lowered the sulfur-in-fuel requirements for fuel oil (both residual and distillate oils) the emission factor derived from AP-42 would be lower than the Subpart 227-1 revised prescribed limit of 0.1 pounds per million Btu PM emission limit for oil fired stationary combustion installations.

The AP-42 distillate oil PM emission factors are also lower than the prescribed Subpart 227-1 PM emission limits. Based on these factors the Department does not believe that there will be a need to install PM emission controls on oil fired stationary combustion installations as a result of these proposed revisions to Subpart 227-1. Therefore, the Department's proposed PM emission limit for oil fired stationary combustion installations will not cause any new control costs to be incurred by the sources subject to the proposed regulation.

For solid fuel fired stationary combustion installation control costs, there are several control technologies that may be used to control PM emissions from solid fuel stationary combustion installations. The following table[1] lists the control types and costs for installing PM controls on solid stationary combustion installations of 10 mmBtu/hr or smaller heat input:

| Control Type | Removal Effectiveness (%) | Installation Costs ($) | Annual Operations/ Maintenance Costs ($) |
|---|---|---|---|
| Cyclone | 50 | 7,000 - 10,000 | < 1,000 |
| Multi-Clone | 75 | 10,000 – 16,000 | < 1,000 |
| Core Separator | 60 | 100,000 | Unknown |
| ESP | 90 | 60,000 – 175,000 | 1,000 – 3,000 + electricity costs |
| Fabric Filter | 98 | 80,000 – 135,000 | 10,000 |

For solid fuel fired stationary combustion installations greater than 10 mmBtu/hr heat input the cost figures can be conservatively increased one time for every 10 mmBtu/hr increase in heat input. Therefore, the cost figure would double for a 20 mmBtu/hr heat input stationary combustion installation, while tripling for a 30 mmBtu/hr heat input combustion installation. The life span of these control devices has been conservatively estimated to be 20 years.

Both oil and solid fuel fired stationary combustion installations will be required to perform annual tune-ups. Solid fuel fired stationary combustion installations will be required to conduct emissions compliance testing at least once during the term of their permit. Annual tune-ups cost between $1,000.00 and $5,000.00 per tune-up depending on the size of the source. Compliance tests cost between $5,000.00 and $10,000.00 per test depending on the size of the source and complexity of the test set-up based on source configuration.

Costs to State and Local Governments:

New York State and local governments may incur increased control and compliance testing costs associated with this proposed regulation. There will also minimal new recordkeeping and annual tune-up requirements imposed on local governments as a result of this proposed rule-making.

Based on the Department's permitting data, there are a total of 56 Title V permits, 104 state facility permits, and 760 registrations at New York State and local government facilities. Approximately 210 of these facilities contain stationary combustion installations where the requirements of Subpart 227-1 are applicable. The vast majority of the 210 affected facilities contain oil fired stationary combustion installations (approximately 180 facilities). Therefore, over 85 percent of the affected New York State and local government facilities will incur minimal costs to comply with the proposed rulemaking.

Costs to the Regulating Agency:

The Department will face some initial administrative costs associated with the application review and permitting of the new PM limits. Minimal additional monitoring, recordkeeping, and reporting requirements are being proposed under this rule-making. Therefore, minimal additional costs will be incurred by the regulating agency based on these factors.

LOCAL GOVERNMENT MANDATES

This is not a mandate on local governments. Local governments have no additional compliance obligations as compared to other subject entities. Also, no additional monitoring, recordkeeping, reporting, or other requirements will be imposed on local governments under this rulemaking.

PAPERWORK

The proposed changes to Subpart 227-1 will create no additional paperwork for the facilities subject to the requirements of this rule.

DUPLICATION

The proposed revisions to Subpart 227-1 do not duplicate, overlap, or conflict with any other State or federal requirements.

ALTERNATIVES

The Department evaluated the following alternatives:

(1) Take no action: This alternative could prevent New York State from complying with its obligations under the CAA. If the Department does not implement this regulation, the state would not be able to meet its obligations to maintain attainment with the PM-2.5 standard, nor would it reduce the regional haze impacts in the northeast. The reduction in PM emission limits will directly result in reductions of PM, PM-10, and PM-2.5. Therefore, the "Take no action" alternative has been rejected.

(2) Partial revision of the current regulation: The Department could revise Subpart 227-1 to only correct the typographical errors and update the permitting language contained in the regulation. However, the Subpart 227-1 PM emission limits were last revised in 1971 and are over 45 years old, and do not lend favorably to the state's air quality goals that were discussed earlier. These limitations are based on combustion and control technologies that are 50 years old. Therefore, based on the vast improvements in both combustion and control technologies the "partial revision" alternative has been rejected.

FEDERAL STANDARDS

The proposed revisions to Subpart 227-1 do not exceed any minimum federal standards.

COMPLIANCE SCHEDULE

The Department anticipates promulgating the revisions to Subpart 227-1 in 2018. The compliance date for existing solid fuel fired stationary combustion installations, including the installation of any required controls and the completion of compliance testing, is two years from the effective date of the revisions. For existing stationary combustion installations which fire oil or oil in combination with other liquid or gaseous fuels, compliance is required on the effective date of the regulation. The compliance date for new stationary combustion installations will be upon the commencement of operation.

---

[1]   The information contained in this table comes from the July 2010 NYSERDA report – Comparative Emissions Characterization of a Small-Scale Wood Chip-Fired Boiler and an Oil-Fired Boiler.

*Regulatory Flexibility Analysis*

EFFECT OF RULE

The Department proposes to revise Subpart 227-1, "Stationary Combustion Installations" as well as attendant provisions under Part 200, "General Provisions" (collectively, Subpart 227-1). The proposed rulemaking will apply statewide. Small businesses are those that are independently owned, located within New York State (NYS), and that employ 100 or fewer persons. The proposed revisions to the Subpart 227-1 requirements flow from the state's obligations under the federal Clean Air Act. Therefore, the proposed revisions do not constitute a mandate on local governments. The Subpart 227-1 requirements apply equally to every facility that contains a stationary combustion installation in New York State. The proposed revisions will not affect small businesses or local governments differently from any other source subject to this rule.

COMPLIANCE REQUIREMENTS

The proposed rule will lower particulate matter (PM) emission limits, correct typographical errors, and update the regulation to incorporate changes to the air permitting regulations. Minimal additional monitoring,

recordkeeping, and reporting requirements are being proposed under this rule-making.

PROFESSIONAL SERVICES

The proposed rule will lower PM limits. No changes will be made in the monitoring, recordkeeping, or reporting requirements in the current version of Subpart 227-1. Facilities subject to this rule are simply required to comply with the new lower PM emission limits. Based on the requirement to meet lower PM emission limits the Department expects that some small businesses and/or local governments will need to hire additional professional services to comply with the provisions of the proposed rule.

COMPLIANCE COSTS

Solid fuel fired (any amount) stationary combustion installations subject to the Subpart 227-1 provisions may incur increased control costs associated with this proposed regulation. Depending on the size of the affected emission source and type of control required to meet the prescribed limit of the proposed regulation the costs incurred may vary greatly. The annualized cost control range, which includes installation, operations, maintenance (including annual tune-ups), and monitoring costs is based on a 20-year control life and has been calculated to be between $1,250.00 and $20,500.00 per individual emission source.

There are no projected control costs associated with oil fired (this includes oil fired in combination with other liquid and gaseous fuels) stationary combustion installations. There will be minimal new costs associated with compliance testing (once during the term of the permit or registration), recordkeeping, and annual tune-ups that are required under the proposed regulation. The annualized cost for these sources has been calculated to be between $1,250.00 and $5,500.00 per individual emission source.

Based on the Department's permitting data, there are a total of 56 Title V permits, 104 state facility permits, and 760 registrations at New York State and local government facilities. Approximately 210 of these facilities contain stationary combustion installations where the requirements of Subpart 227-1 are applicable. The vast majority of the 210 affected facilities contain oil fired stationary combustion installations (approximately 180 facilities). Therefore, over 85 percent of the affected New York State and local government facilities will incur minimal costs to comply with the proposed rulemaking.

MINIMIZING ADVERSE IMPACT

The Department does not expect any particular adverse impacts on small businesses and local governments throughout New York State. Subpart 227-1 is a statewide regulation. Its requirements are the same for all facilities. The Department does not anticipate small businesses or local governments to be impacted differently than other sources subject to the proposed revisions to Subpart 227-1.

SMALL BUSINESS AND LOCAL GOVERNMENT PARTICIPATION

The Department held stakeholder meetings (including environmental justice outreach) on July 26th through July 28th, 2017 in Albany, NY, New York City, NY and Avon, NY, respectively. The Department sent a fact sheet out to interested parties, including the environmental justice community. Several of the interested parties attended each of these meetings where they asked questions and provided comments on the draft regulatory language. The meetings were held to give representatives from the affected small business and local government representatives an opportunity to meet with Department staff and discuss various issues during the rulemaking process. The Department will also hold public hearings and seek comments on Subpart 227-1 throughout New York State and will notify small business and local government representatives as part of this proposed rulemaking.

ECONOMIC AND TECHNOLOGICAL FEASIBILITY

The Department has determined that the control technologies available for affected emission sources are both economically and technologically feasible.

CURE PERIOD OR AMELIORATIVE ACTION

The Department is not including a cure period in this rulemaking. The purpose of this regulation is to provide timely emissions reductions, delaying enforcement of the regulation adversely affects such emissions reductions.

*Rural Area Flexibility Analysis*

TYPES AND ESTIMATED NUMBERS OF RURAL AREAS

The proposed rule (Subpart 227-1) is not expected to have a substantial adverse impact on rural areas in New York State (NYS). Rural areas are defined as rural counties in New York State that have populations of less than 200,000 people, towns in non-rural counties where the population densities are less than 150 people per square mile, and villages within those towns. The proposed rulemaking will apply statewide and thus all affected stationary combustion installations throughout the state will be equally affected.

REPORTING, RECORDKEEPING AND OTHER COMPLIANCE REQUIREMENTS; AND PROFESSIONAL SERVICES

The proposed rule will lower particulate matter (PM) emission limits, correct typographical errors, and update the regulation to incorporate changes to the air permitting regulations. Minimal modified recordkeeping and reporting requirements are being proposed under this rule-making.

COSTS

Solid fuel fired (any amount) stationary combustion installations subject to the Subpart 227-1 provisions may incur increased control costs associated with this proposed regulation. Depending on the size of the affected emission source and type of control required to meet the prescribed limit of the proposed regulation the costs incurred may vary greatly. An annualized cost control range, which includes installation, operations, maintenance (including annual tune-ups), and monitoring costs is based on a 20-year control life, and has been calculated to be between $1,250.00 and $20,500.00 per individual emission source.

There are no projected control costs associated with oil fired (this includes oil fired in combination with other liquid and gaseous fuels) stationary combustion installations. There will be minimal new costs associated with compliance testing (once during the term of the permit or registration), recordkeeping, and annual tune-ups that are required under the proposed regulation. The annualized cost for these sources has been calculated to be between $1,250.00 and $5,500.00 per individual emission source.

MINIMIZING ADVERSE IMPACT

The Department does not expect any adverse impacts on rural areas of the state. There will be positive environmental impacts from the regulation in rural areas. Rural areas should witness improved visibility with an associated decrease in airborne PM.

Subpart 227-1 is a statewide regulation. Its requirements are the same for all affected facilities, and rural areas are impacted no differently than other areas in New York State.

RURAL AREA PARTICIPATION

The Department held stakeholder meetings on July 26th through July 28th, 2017 in Albany, NY, New York City, NY and Avon, NY, respectively. The Department sent a fact sheet out to interested parties, including the environmental justice community. Several of the interested parties attended each of these meetings where they asked questions and provided comments on the draft regulatory language. These meetings included the rural-area stakeholders and as well as industry representatives. The Department will also hold public hearings and seek comments on Subpart 227-1 in the upstate and other rural areas as part of this proposed rulemaking.

*Job Impact Statement*

NATURE OF IMPACT

The promulgation of Subpart 227-1 is not anticipated to have any long-term effects on the number of current jobs or future employment opportunities throughout New York State (NYS).

CATEGORIES AND NUMBERS AFFECTED

The reductions in visibility-impairing pollutants resulting from the implementation of Subpart 227-1 could result in a positive impact on the tourism industry, particularly for the Adirondack and Catskill Parks. Aside from the mitigation of haze in these areas and across New York State, improvements in acid deposition will be seen, keeping trees and waterways in good condition, thus allowing state parks to remain healthy and attractive places to visit. Increased tourism could create additional job opportunities throughout the state.

REGIONS OF ADVERSE IMPACT

The proposed Subpart 227-1 is a statewide regulation. This regulation is not expected to have an adverse impact on jobs or employment opportunities in New York State. It does not impact any region or area in the state disproportionately in terms of jobs or employment opportunities.

MINIMIZING ADVERSE IMPACT

The Department does not expect any adverse impacts on jobs in New York State based on the proposed changes to Subpart 227-1. Subpart 227-1 is a statewide regulation. Its requirements are the same for all facilities and will not impact job opportunities in the state.

SELF-EMPLOYMENT OPPORTUNITIES

There are no anticipated adverse impacts towards self-employment opportunities associated with the proposed Subpart 227-1 regulation.

## PROPOSED RULE MAKING
## HEARING(S) SCHEDULED

**Distributed Generation Sources Located in New York City, Long Island, Westchester and Rockland Counties**

**I.D. No.** ENV-36-19-00014-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Amendment of Part 200; repeal of Part 222; and addition of new Part 222 to Title 6 NYCRR.

*Statutory authority:* Environmental Conservation Law, sections 1-0101, 3-0301, 19-0103, 19-0105, 19-0107, 19-0301, 19-0302, 19-0303, 19-0305, 19-0311, 71-2103 and 71-2105

*Subject:* Distributed generation sources located in New York City, Long Island, Westchester and Rockland counties.

*Purpose:* Establish emission control requirements for sources used in demand response programs or as price-responsive generation sources.

*Public hearing(s) will be held at:* 11:00 a.m., November 12, 2019 at Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129A/B, Albany, NY; 2:00 p.m., November 20, 2019 at Department of Transportation, One Hunter's Point Plaza, 47-40 21st St., Rm. 834, Long Island City, NY.

*Interpreter Service:* Interpreter services will be made available to hearing impaired persons, at no charge, upon written request submitted within reasonable time prior to the scheduled public hearing. The written request must be addressed to the agency representative designated in the paragraph below.

*Accessibility:* All public hearings have been scheduled at places reasonably accessible to persons with a mobility impairment.

*Text of proposed rule:* Section 200.9, Table 1, is amended to read as follows:

|  |  |  |
|---|---|---|
| | [California Code of Regulations, Title 13, Section 2700 (10-1-2013) | *** |
| | California Code of Regulations, Title 13, Section 2701 (10-1-2013) | *** |
| | California Code of Regulations, Title 13, Section 2702 (10-1-2013) | *** |
| | California Code of Regulations, Title 13, Section 2703 (10-1-2013) | *** |
| | California Code of Regulations, Title 13, Section 2704 (10-1-2013) | *** |
| | California Code of Regulations, Title 13, Section 2705 (10-1-2013) | *** |
| [222.6] 222.5 | California Code of Regulations, Title 13, Section 2706 (10-1-2013) | *** |
| | California Code of Regulations, Title 13, Section 2707 (10-1-2013) | *** |
| | California Code of Regulations, Title 13, Section 2708 (10-1-2013) | *** |
| | California Code of Regulations, Title 13, Section 2709 (10-1-2013) | *** |
| | California Code of Regulations, Title 13, Section 2710 (10-1-2013) | *** |
| | California Code of Regulations, Title 13, Section 2711 (10-1-2013) | ***] |
| | 40 CFR 60, Appendix A (Updated July 1, 2013), Method 7E, pages 289-305 | * |
| | [40 CFR 60, Appendix A (Updated July 1, 2013), Method 5, pages 169-195 | *] |

Existing 6 NYCRR Part 222 is repealed. A new Part 222 is added to read as follows:

*Part 222, Distributed Generation Sources*

*Section 222.1 Applicability.*

This Part applies to owners and operators of distributed generation sources classified as economic dispatch sources located in the New York City metropolitan area with a maximum mechanical output rating of 200 horsepower or greater where the potential to emit oxides of nitrogen at a facility is less than 25 tons per year.

*Section 222.2 Definitions.*

(a) The definitions of Part 200 and Subpart 201-2 of this Title apply to this Part unless they are inconsistent with the definitions in subdivision (b) of this Section.

(b) The following definitions also apply to this Part:

(1) 'Compression ignition'. A type of stationary internal combustion engine that is not a spark ignition engine.

(2) 'Demand response program'. The Emergency Demand Response Program or Special Case Resources demand response programs sponsored by the New York Independent System Operator or similarly designed programs sponsored by distribution utilities and approved by the Public Service Commission.

(3) 'Demand response source'. A distributed generation source enrolled in a demand response program.

*(4) 'Demand response event'.* Activation of a demand response program by the New York Independent System Operator or a distribution utility.

*(5) 'Distribution utility'.* A retail distributor of electricity.

*(6) 'Distributed generation source'.* A stationary reciprocating or rotary internal combustion engine that feeds into the distribution grid or produces electricity for use at the host facility or both. This includes, but is not limited to, emergency power generating stationary internal combustion engines and demand response sources.

*(7) 'Economic dispatch source'.* A distributed generation source intended to provide electricity for general use to a building, structure, or collection of structures in place of electricity supplied by the distribution utilities. Demand response and price-responsive generation sources are considered economic dispatch sources. Economic dispatch sources do not include emergency generators or distributed generation sources that provide electricity to power equipment or structures not served by distribution utilities.

*(8) 'Lean burn engine'.* A natural gas-fired spark ignition engine that is not a rich burn engine.

*(9) 'Maximum load relief'.* Maximum power (kilowatts) pledged by a demand response source during demand response events or the maximum load the source operates at as a price-responsive generation source.

*(10) 'Model year'.* Means either:

*(i)* The calendar year in which the engine was originally produced, or

*(ii)* The annual new model production period of the engine manufacturer if it is different than the calendar year. This must include January 1 of the calendar year for which the model year is named. It may not begin before January 2 of the previous calendar year and it must end by December 31 of the named calendar year.

*(11) 'Price-responsive generation source'.* A distributed generation source used to provide electricity for short periods of time when the cost of electricity supplied by the distribution utility is high.

*(12) 'Rich burn engine'.* Any four-stroke spark ignited engine where the manufacturer's recommended operating air-to-fuel ratio divided by the stoichiometric air-to-fuel ratio at full load conditions is less than or equal to 1.1.

*(13) 'Spark ignition'.* A natural gas fueled engine or any other type of engine with a spark plug (or other sparking device) and with operating characteristics similar to the theoretical Otto combustion cycle. Dual-fuel engines in which a liquid fuel (typically diesel fuel) is used for compression ignition and gaseous fuel (typically natural gas) is used as the primary fuel at an annual average ratio of less than 2 parts diesel fuel to 100 parts total fuel on an energy equivalent basis are spark ignition engines.

*(14) 'Three-way catalyst emission controls'.* A control technology (also known as non-selective catalytic reduction) that reduces NOx, VOC and CO emissions from rich burn engines.

*Section 222.3 Notification of Applicability.*

*(a)* An owner or operator of a distributed generation source must obtain a registration certificate or permit issued in accordance with Part 201 of this Title prior to operation as an economic dispatch source.

*(b)* By March 15, 2020, an owner or operator of a distributed generation source subject to a registration certificate or permit issued by the Department prior to the effective date of this Part must notify the Department in writing whether the source will operate as an economic dispatch source.

*Section 222.4 Control requirements.*

*(a)* Effective May 1, 2020, owners or operators of economic dispatch sources subject to this Part must comply with the following requirements:

*(1)* combustion turbines firing natural gas: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer;

*(2)* combustion turbines firing oil: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer;

*(3)* compression-ignition engines: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer;

*(4)* lean-burn engines: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer; or

*(5)* rich-burn engines: must be equipped with three-way catalyst emission controls.

*(b)* Effective May 1, 2025, owners or operators of economic dispatch sources subject to this Part must comply with the following NOx emission limits:

*(1)* combustion turbines firing natural gas: 25 parts per million on a dry volume basis corrected to 15 percent oxygen;

*(2)* combustion turbines firing oil: 42 parts per million on a dry volume basis corrected to 15 percent oxygen;

*(3)* spark ignition engines firing natural gas: 1.0 grams per brake horsepower-hour;

*(4)* compression-ignition engines firing distillate oil (solely or in combination with other fuels) with nameplate ratings less than 750 horsepower: 0.30 grams per brake horsepower-hour; or

*(5)* compression-ignition engines firing distillate oil (solely or in combination with other fuels) with nameplate ratings greater than or equal to 750 horsepower: 0.50 grams per brake horsepower-hour.

*Section 222.5 Emissions testing.*

*(a)* Emissions test reports demonstrating compliance with subdivision 222.4(b) must be submitted to and approved by the Department before an economic dispatch may operate on or after May 1, 2025.

*(b)* Emission test requirements.

*(1)* The owner or operator of an economic dispatch source must notify the Regional Air Pollution Control Engineer in writing at least 15 calendar days prior to the scheduled date of an emissions test. Written test protocols are required only if the test method listed in paragraph 222.5(b)(2) will not be used during the emissions testing. In such case, the emissions test may not commence until 15 calendar days following the Department's approval of the protocols.

*(2)* Emission test method. Method 7E pursuant to 40 CFR 60, Appendix A (see Table 1, Section 200.9 of this Title).

*(3)* Additional protocols.

*(i)* Each emissions test must be conducted at the maximum load relief of the economic dispatch source.

*(ii)* The span of the monitoring system must be selected such that the pollutant gas concentration equivalent to the emission limit is not less than 30 percent of the span.

*(4)* Emission test reports. The owner or operator of an economic dispatch source subject to this section must submit an electronic copy of the emission test report to the Department within 60 calendar days after the completion of the tests. In addition, the data collected during the test must be available to the Department in an electronic format acceptable to the Department.

*Section 222.6 Recordkeeping.*

*(a)* The Department may enter a facility during normal operating hours to inspect an economic dispatch source subject to the requirements of this Part, and any records, papers, log books, and operational data maintained pursuant to this Part. Upon request, all records, papers, log books and operational data maintained pursuant to this Part must be made available to the Department.

*(b)* Emission test results must be maintained at a facility for five years from the date of the emission test.

*(c)* The following operational data must be recorded for each economic dispatch source subject to this Part in a format acceptable to the Department. The following data must be recorded monthly and maintained at the facility for five years from the date the data were recorded:

*(1)* hours of operation;

*(2)* type and quantity of fuel(s) used or purchased; and

*(3)* electricity generated by economic dispatch source in kilowatt-hours.

*Section 222.7 Severability.*

Each provision of this Part shall be deemed severable. If any provision of this Part is held to be invalid, the remainder of this Part shall continue in full force and effect.

**Text of proposed rule and any required statements and analyses may be obtained from:** John Barnes, P.E., NYSDEC, Division of Air Resources, 625 Broadway, Albany, NY 12233-3251, (518) 402-8396, email: air.regs@dec.ny.gov

**Data, views or arguments may be submitted to:** Same as above.

**Public comment will be received until:** November 25, 2019.

**Additional matter required by statute:** Pursuant to Article 8 of the State Environmental Quality Review Act, a Short Environmental Assessment Form, a Negative Declaration and a Coastal Assessment Form have been prepared and are on file.

**Summary of Regulatory Impact Statement (Full text is posted at the following State website: http://www.dec.ny.gov/regulations/propregulations.html#public):**

INTRODUCTION

The Department of Environmental Conservation (Department or DEC) adopted 6 NYCRR Part 222, "Distributed Generation Sources," on November 1, 2016. On March 1, 2017, an Article 78 Petition was filed challenging various aspects of Part 222. On July 26, 2017, a Stipulation and Order was issued whereby the Department agreed to propose a new rule pursuant to the State Administrative Procedure Act to replace the adopted rule. The purpose of this rule making is to promulgate a new Part 222 along with the attendant changes to Part 200, "General Provisions."

Distributed generation (DG) sources are engines used by host sites to supply electricity outside that supplied by distribution utilities. This on-

site generation of electricity by DG sources is used by a wide-range of commercial, institutional and industrial facilities either in non-emergency situations when electricity costs are high (price-responsive generation) or to reduce demand on the electric grid (demand response), or in emergency situations when the usual supply of power from central station power plants becomes unavailable.

SUMMARY OF RULE

The proposed rule will apply to economic dispatch sources with output ratings of 200 horsepower (hp) or greater in the New York City metropolitan area (NYMA). Economic dispatch sources will be required to meet control requirements beginning May 1, 2020. The proposed rule also sets forth certain monitoring requirements, maintenance and record keeping requirements for economic dispatch sources.

The Department is planning to incorporate Part 222 and the attendant revisions to Part 200 into New York's State Implementation Plan (SIP) and provide the revised SIP to the United States Environmental Protection Agency (EPA) for review and approval.

STATUTORY AUTHORITY

The statutory authority for the promulgation of Part 222 and the attendant revisions to Part 200 is found in the New York State Environmental Conservation Law (ECL), Sections 1-0101, 3-0301, 19-0103, 19-0105, 19-0301, 19-0303, 19-0305, 19-0311, 71-2103 and 71-2105.

LEGISLATIVE OBJECTIVES

Article 19 of the ECL was enacted to safeguard the air resources of New York from pollution and ensure the protection of the public health and welfare, the natural resources of the State, physical property, and integrating industrial development with sound environmental practices. The policy of the State is to require the use of all available, practical and reasonable methods to prevent and control air pollution in New York.

NEEDS AND BENEFITS

There are currently two eight-hour ozone National Ambient Air Quality Standards (NAAQS) established by the EPA. An ozone NAAQS of 0.075 parts per million (ppm) was established in March 2008. Subsequently, the EPA reduced the 8-hour ozone NAAQS to 0.070 ppm on October 1, 2015 with the intention of revoking the 2008 NAAQS. Ozone NAAQS attainment status is demonstrated by measurements recorded from a monitoring network set up across the United States. The ozone NAAQS is in the form of an eight-hour concentration average. The ozone design value is calculated as the 4th highest daily maximum 8-hour ozone concentration averaged over three years.[1] The current design value monitor for the New York/New Jersey/Connecticut nonattainment area is located in Westport, Connecticut. The 2017 design value for that monitor is 0.083 ppm and the preliminary design value for 2018 is 0.082 ppm.

Emergency generators are operated when the usual source of electricity is unavailable or for facility-related emergencies. Pursuant to Section 200.1(cq), emergency generators are allowed to operate for up to 500 hours per year.[2] The New York City building code requires buildings greater than 75 feet high be equipped with emergency generators.[3] There are approximately 10,960 buildings in New York City greater than 75 feet in height.[4] Assuming a typical emergency generator is 1000 kW,[5] the capacity of emergency generation sources in New York City is estimated at 10,960 MW.

In the new Part 222, economic dispatch sources are defined as DG sources enrolled in demand response (DR) programs sponsored by the New York Independent System Operator (NYISO) or transmission utilities as well as price-responsive generation sources located in the NYMA. These source categories encompass DG sources previously classified as emergency generators for economic purposes.

Since 2001, the NYISO and distribution utilities[6] in New York have called upon owners of uncontrolled, primarily diesel-fired engines to generate electricity for host facilities on high demand days in order to reduce demand on the electric grid, thus preserving the reliability of the grid. Sources enrolled in these programs, referred to as 'demand response programs,' are generally called upon to operate on hot summer days when ozone levels are typically high. The use of uncontrolled DG sources in demand response programs has correspondingly led to increased emissions from sources previously used exclusively in emergency situations.

Price-responsive generation sources are defined in Part 222 as distributed generation sources used to provide electricity when the cost of electricity supplied by the distribution utility is high. This category of economic dispatch sources was added to Part 222 to counter potential increases in NOx emissions resulting from the use of engines previously classified as emergency generators for short periods of time when the cost of electricity supplied by the transmission utility is high.

On July 2, 2018, the maximum 8-hour average ozone value observed in the NY/NJ/CT ozone nonattainment area was 0.115 ppm at a monitor in Rockland County, New York. An 8-hour ozone value of 0.115 ppm is considered to be unhealthy for sensitive groups. This marked the first time since June 14, 2008 that a monitored 8-hour ozone value was 0.100 ppm or greater. In that event, the White Plains monitor, located in Westchester

County, New York, had a value of 0.101 ppm. Ozone concentrations greater than 0.070 ppm were observed on July 2nd at thirteen monitors in New York. Ozone concentrations greater than 0.070 ppm were also observed that day at six monitors in Connecticut and eight monitors in New Jersey.

The dominant weather feature in the eastern United States on July 2, 2018 was a high pressure system situated along the coast. A weak cold front stalled near the Ohio Valley. A surface trough formed to the east of the front along a line from central New York through the Appalachian Valley. Winds in the nonattainment area were light and variable, and at times, calm. Generally, the air mass moved from south to north.[7]

Demand response resources were called upon by the NYISO (New York City), Consolidated Edison (New York City and Westchester County) and Orange & Rockland Utilities, Inc. (Orange, Rockland and Sullivan counties). The NYISO called a five-hour event from 1:00 pm to 6:00 pm that day.[8] Con Edison and Orange & Rockland called four-hour events that afternoon. The NOx emissions during the four-hour events called by Con Edison and Orange & Rockland on July 2, 2018 are estimated to be 2.15 and 0.08 tons, respectively. The estimated NOx emissions during the NYISO event was 2.92 tons.

Part 222 will also apply to price-responsive generation sources in the NYMA. The potential NOx emissions that could result if all of these sources operate at the same time is as much as 38.4 tons per hour.

Effective May 1, 2020, combustion turbines, compression ignition engines and lean-burn natural gas-fired engines must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer. Also, effective May 1, 2020, rich-burn natural gas-fired engines must be equipped with three-way catalyst emission controls.

These provisions are expected to result in a NOx emission reduction of more than 3.5 tons for a typical 6-hour demand response event. NOx emission reductions during DR events will come from sources currently enrolled in the NYISO programs. Potential NOx emissions from price-responsive generation sources will be reduced to 11.87 tons per hour effective May 1, 2020.

The following NOx emission limits will apply to DR sources effective May 1, 2025:

(1) combustion turbines firing natural gas: 25 parts per million on a dry basis corrected to 15 percent oxygen;

(2) combined cycle turbines firing oil: 42 parts per million on a dry basis corrected to 15 percent oxygen;

(3) spark ignition engines firing natural gas: 1.0 grams per brake horsepower- hour;

(4) compression-ignition engines firing distillate oil (solely or in combination with other fuels) with nameplate ratings less than 750 hp: 0.30 grams per brake horsepower-hour; or

(5) compression-ignition engines firing distillate oil (solely or in combination with other fuels) with nameplate ratings greater than or equal to 750 hp: 0.50 grams per brake horsepower-hour.

Emissions test reports demonstrating compliance with subdivision 222.4(b) or Part 222 must be submitted to and approved by the Department before a distributed generation source may be operated as an economic dispatch source on or after May 1, 2025. The purpose of the emissions testing requirements in Part 222 is to ensure that sources subject to the rule meet the emission standards set forth in the rule.

Beginning May 1, 2025, the potential NOx emissions from price-responsive generation sources will be approximately 2.56 tons/hour.[9] Further, the estimated NOx emissions from DR sources would be less than 0.5 tons per event (based on current enrollment in DR programs).

COSTS

The primary cost for complying with Part 222 will be lost income for sources that will drop out of demand response programs. For sources that decide to comply with the emission standards set forth in the rule, the installed capital costs range from approximately $40/hp for rich-burn engines to $160/hp for other types of sources.

PAPERWORK

The record keeping requirements set forth in new Part 222 are not expected to be burdensome since the data that must be recorded each month should already be recorded as a standard business practice.

LOCAL GOVERNMENT MANDATES

There are no specific mandates for local governments. Local governments that operate sources subject to this rule must meet the same requirements as any other source owner.

DUPLICATION

EPA promulgated NSPS rules for new engines and turbines in 2006 and 2008. The stricter of the NSPS or new Part 222 standards will apply in cases where sources are subject to both regulations.

ALTERNATIVES

Three alternatives to the proposed rule were evaluated. Under the No Action alternative, a new Part 222 would not be adopted. In addition, two

alternatives for expanding the existing NOx RACT Rule (Subpart 227-2) were considered. One alternative was limited to DG sources statewide. The second alternative would apply the NOx RACT Rule to all non-emergency engines at minor sources statewide.

FEDERAL STANDARDS

There are three New Source Performance Standards adopted by EPA that establish NOx emission limits for new sources:

1. 40 CFR 60, Subpart IIII (Compression-Ignition Engines)
2. 40 CFR 60, Subpart JJJJ (Spark-Ignition Engines)
3. 40 CFR 60, Subpart KKKK (Turbines)

The emission standards set forth under these rules are discussed in the Regulatory Impact Statement for this rulemaking.

COMPLIANCE SCHEDULE

By March 15, 2020, an owner or operator of a DG source subject to a registration certificate or permit issued by the Department in accordance with 6 NYCRR Part 201 must provide a written notice to the Department whether the source will operate as an economic dispatch source under Part 222.

The first set of control requirements take effect on May 1, 2020. The second set of control requirements (NOx emission limits) take effect on May 1, 2025.

---

1  Code of Federal Regulations, Part 50 Appendix I.
2  Facilities may accept a more restrictive operational limit in order to avoid triggering certain regulatory thresholds such as new source review (Part 231).
3  Section 2702 of the New York City Electrical Code.
4  https://www.emporis.com/city/101028/new-york-city-usa/status/existing/548.
5  The average nameplate for DR sources in New York City is 1080 kW based on the data submitted under Section 222.3(a) of the adopted rule.
6  In addition to the NYISO, demand response programs are currently sponsored by the Consolidated Edison Company of New York (Con Edison) and Orange & Rockland Utilities.
7  https://www.nj.gov/dep/cleanairnj/exceedances/2018/070218.pdf.
8  "NYISO – Called Events & Test", NYISO, dated 7/3/2018.
9  Assuming 10,960 MW of capacity and an emission rate of 0.5 g/bhp-h.

*Regulatory Flexibility Analysis*

Distributed generation (DG) sources are engines used by host sites to supply electricity outside that supplied by distribution utilities. This on-site generation of electricity by DG sources is used by a wide-range of commercial, institutional and industrial facilities either in non-emergency situations when electricity costs are high or to reduce demand on the electric grid, or in emergency situations when the usual supply of power from central station power plants becomes unavailable.

DG sources emit nitrogen oxides (NOx), a precursor to ground-level ozone, which has been linked to adverse public health impacts. The increasing use of uncontrolled DG sources, if left unchecked, will exacerbate public health impacts and make it very difficult for New York to meet its obligations under the Clean Air Act (CAA) to attain the 2008 and 2015 8-hour ozone National Ambient Air Quality Standards (NAAQS).

The Department of Environmental Conservation (Department or DEC) adopted 6 NYCRR Part 222, "Distributed Generation Sources", along with attendant revisions to 6 NYCRR Part 200, "General Provisions", on November 1, 2016. The new rule took effect on December 1, 2016. On March 1, 2017, an Article 78 petition was filed challenging various aspects of Part 222. On July 26, 2017, a Stipulation and Order was issued whereby the Department agreed to propose a new rule to replace the adopted rule pursuant to the State Administrative Procedure Act (SAPA). The purpose of this rule making is to promulgate a new Part 222 along with the attendant changes to Part 200. The new rule will apply to economic dispatch sources located in the New York City metropolitan area (NYMA)[1] which are not currently regulated under Subpart 227-2. In addition, the Department may initiate a new rule to develop a minor source new source review regulation in accordance with Section 110(a)(2)(C) of the Clean Air Act to address NOx emitting sources not covered under Subpart 227-2 or the new Part 222.

EFFECT OF RULE

The proposed rule is limited to economic dispatch sources located in the NYMA. Economic dispatch includes DG sources enrolled in demand response (DR) programs sponsored by the New York Independent System Operator (NYISO) or distribution utilities and that receive capacity or energy payments or both. In addition, price-responsive generation sources, defined in Part 222 as DG sources used to provide electricity when the cost of electricity supplied by the distribution utility is high, are also covered under the definition of economic dispatch sources.

Part 222 may impact a wide range of businesses in the NYMA. Based upon responses received pursuant to the notification provision in Section

222.3 of the rule adopted on November 1, 2016, more than 160 facilities enrolled in demand response programs may be subject to the new rule. Participants in DR programs include industrial, commercial and institutional facilities. There are approximately 10,960 buildings in New York City that are required to have emergency generators pursuant to Section 2702 of the New York City Electrical Code. These facilities could potentially operate those generators as price-responsive generation sources as a result of the ongoing Reforming the Energy Vision initiative overseen by the Public Service Commission.

Energy services companies (ESCOs) enroll facilities into DR programs sponsored by NYISO and distribution utilities. ESCOs' DR portfolios include curtailment, load shifting, energy efficiency and DG resources. Most DG resources in these portfolios are uncontrolled, diesel-fired engines. The Department is proposing a requirement whereby economic dispatch sources subject to Part 222 must be of Model Year 2000 or newer effective May 1, 2020. The Department anticipates that this will amount to a 35 percent reduction in generation resources enrolled in the NYISO's DR programs through 2025 with zero impact to the DR programs sponsored by Con Edison and Orange & Rockland Utilities. In addition, the Department is proposing NOx emission limits in Part 222 that would take effect on May 1, 2025 that are based, in large part, on provisions in New York City Local Law 38. Therefore, it is expected that the provisions of Part 222 will minimally impact employment opportunities with ESCOs.

COMPLIANCE REQUIREMENTS

Part 222 will apply to economic dispatch sources in the NYMA with mechanical output ratings of 200 horsepower (hp) or greater. The rule will not apply to economic dispatch sources currently regulated under Subpart 227-2.

The following NOx provisions will apply to economic dispatch sources subject to Part 222, effective May 1, 2020 through April 30, 2025:

1. combustion turbines firing natural gas: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer;
2. combustion turbines firing oil: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer;
3. compression-ignition engines: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer;
4. lean-burn engines: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer; or
5. rich-burn engines: must be equipped with three-way catalyst emission controls.

The following NOx emission limits will apply to economic dispatch sources effective May 1, 2025:

1. combustion turbines firing natural gas: 25 parts per million on a dry basis corrected to 15 percent oxygen;
2. combined cycle turbines firing oil: 42 parts per million on a dry basis corrected to 15 percent oxygen;
3. spark ignition engines firing natural gas: 1.0 grams per brake horsepower-hour;
4. compression-ignition engines firing distillate oil (solely or in combination with other fuels) with nameplate ratings less than 750 hp: 0.30 grams per brake horsepower-hour; or
5. compression-ignition engines firing distillate oil (solely or in combination with other fuels) with nameplate ratings greater than or equal to 750 hp: 0.50 grams per brake horsepower-hour.

Emissions test reports demonstrating compliance with subdivision 222.4(b) of Part 222 must be submitted to and approved by the Department before a distributed generation source may be operated as an economic dispatch source on or after May 1, 2025.

PROFESSIONAL SERVICES

The services of an engineering consultant may be required in order to complete a permit. A stack testing company would be required to conduct the emissions testing required in Section 222.5.

COMPLIANCE COSTS

There are several pathways by which facilities subject to Part 222 may follow in order to comply with the emission limits set forth in Section 222.4 of Part 222:

1. replace a DG source with a new source;
2. install post-combustion NOx controls on an existing source; or
3. limit the use of non-compliant sources to emergency uses only.

The costs for post-combustion control systems are presented in the following sections for 1200 hp and 2000 hp engines as a possible compliance option for existing sources operating on or beyond May 1, 2025. As a point of comparison, replacement costs for new 1200 hp or 2000 hp engines that meet the NSPS requirements range from $525,000 to $1,000,000.[2,3] The compliance costs for relegating a source to emergency-

only status as defined in subdivision 200.1(cq) are lost income from capacity payments and generation payments during DR events.

Selective Catalytic Reduction (SCR) Systems

Selective catalytic reduction (SCR) systems can reduce the NOx emissions from lean-burn natural gas fired-engines and diesel-fired engines by up to 90 percent.[4] The capital cost (installed) of SCR control systems are presented in Table 1.

Table 1: Capital Costs for SCR Systems

| Cost Component | 1200 hp Engine | 2000 hp Engine |
| --- | --- | --- |
| SCR System[5] | $108,300 | $180,500 |
| Installation | $65,000 | $108,300 |
| Taxes | $8,700 | $14,500 |
| Testing[6] | $8,000 | $8,000 |
| Total Cost | $190,000 | $311,300 |

Operational costs vary depending upon several factors. The primary driver is the reagent (urea) cost. The other operational factors DEC considered in developing cost estimates for SCR systems are insurance, maintenance and labor costs.

Non-Selective Catalytic Reduction (NSCR) Systems

Non-selective catalytic reduction (NSCR) systems can reduce the NOx emissions from rich-burn natural gas fired-engines engines by up to 98 percent.[7] The capital cost (installed) of NSCR control systems are presented in Table 2.

Table 2: Capital Costs for NSCR Systems

| Cost Component | 1200 hp Engine | 2000 hp Engine |
| --- | --- | --- |
| SCR System | $23,500 | $39,200 |
| Installation | $14,100 | $23,500 |
| Taxes | $1,900 | $3,200 |
| Testing[8] | $8,000 | $8,000 |
| Total Cost | $47,500 | $73,900 |

NSCR catalysts need to be replaced every five years.[9] Replacement catalysts are estimated to cost 7 percent of the original NSCR system cost. In DEC cost analyses, the cost of installing the replacement catalyst was assumed to be 60 percent of the cost of the new catalyst. Annual costs for operating NSCR include insurance, maintenance and labor costs.

Compliance Testing

The emission testing costs are estimated to be $8,000.[10] This is a one-time cost for sources operating on or after May 1, 2025.

MINIMIZING ADVERSE IMPACT

The Department has taken the following steps to minimize the adverse impacts of Part 222 on small businesses and local governments:

1. The provisions that take effect on May 1, 2020 mirror the tariff provisions governing the demand response programs sponsored by Con Edison and Orange & Rockland Utilities. Sources enrolled in those programs will not be affected by this rulemaking until 2025, at which time most sources will be impacted by New York City Local Law 38. This rule is anticipated to impact approximately 35 MW of DR sources enrolled in the NYISO's DR programs beginning May 1, 2020. This amounts to approximately 7.7 percent of the capacity enrolled in the Special Case Resources program in NYISO Zones I, J and K.[11] Therefore, the impact to ESCO's will be small in 2020.

2. The provisions limiting DR enrollment and price-responsive generation sources to model year 2000 or newer do not take effect until May 1, 2020 in order to provide DR sponsors, ESCOs and source owners sufficient time to adjust to the new rule.

3. The emissions testing requirements have been reduced significantly compared to the rule adopted in November 2016. PM testing will not be required. Only one emissions test per source is required – and this only applies to economic dispatch sources operating on or after May 1, 2025.

SMALL BUSINESS AND LOCAL GOVERNMENT PARTICIPATION

The rule adopted on November 1, 2016 was the result of a stakeholder process initiated by the Department in 2001. Stakeholder Meetings were held on November 13, 2001, December 12, 2002, April 8, 2003, May 17, 2004, June 29, 2006 and June 25, 2013. Drafts of Part 222 were circulated electronically to stakeholders in May 2004, January 2005, June 2006 and May 2013. More than 175 stakeholders have been involved in the process of developing Part 222 and anyone who requested to be added to the list of stakeholders was added. The meeting of April 8, 2003 was advertised in the Department's Environmental Notice Bulletin.

Drafts of a proposed replacement rule were released to stakeholders on November 3, 2017, February 26, 2018 and June 5, 2018. Stakeholder meetings were held on November 13, 2017 and March 12, 2018.

Many of the participants in the stakeholder process represented small businesses and local governments. These groups include law firms, consultants, ESCOs, trade organizations, manufacturers, and governmental agencies that work with small businesses and local governments.

ECONOMIC AND TECHNOLOGICAL FEASIBILITY

Facilities that decide to participate in demand response or utilize price-responsive generation sources will have two compliance pathways to choose from. First, they can purchase new DG sources that meet the NOx limits set forth in Part 222. Second, they can install post-combustion NOx controls on existing sources in order to comply with the appropriate NOx standard. Both options are technically feasible. It will be up to each facility to decide whether participating in DR or price-responsive generation is consistent with their respective business models.

CURE PERIOD:

In accordance with SAPA Section 202-b, this rulemaking does not include a cure period since the first compliance date (May 1, 2020) will be more than 30 days after rule adoption. This rulemaking does not require stakeholders to take any actions which necessitate a cure period.

INITIAL REVIEW

The initial review of this rule shall occur within the third year after this rule is adopted.

---

[1]   The term 'New York City metropolitan area' is defined in Part 200.1(au) as all of New York City and Nassau, Suffolk, Westchester and Rockland Counties.

[2]   E-mail from Joe Suchecki (Truck & Engine Manufacturers Association) to John Barnes (DEC) dated November 8, 2013.

[3]   Replacement costs as well as the costs for pollution control systems could be higher than the costs presented in this section in cases where there are space limitations or building or fire code requirements that must be met.

[4]   "NOx Control for Stationary Gas Engines", Wilson Chu (Johnson-Matthey), Advances in Air Pollution Control Technology, MARAMA Workshop, May 19, 2011.

[5]   Sources: CARB 2010. Regulatory Analysis for Revisions to Stationary Diesel Engine Air Toxic Control Measure. Appendix B. Analysis of Technical Feasibility and Costs of After-treatment Controls on New Emergency Diesel Engines; and (2) Producer Price Index, U.S. Department of Labor, Bureau of Labor Statistics.

[6]   Testing costs include NOx and PM tests (diesel engines). For natural gas-fired engines, the estimated cost is $8,000 for NOx tests only.

[7]   "NOx Control for Stationary Gas Engines", Wilson Chu (Johnson-Matthey), Advances in Air Pollution Control Technology, MARAMA Workshop, May 19, 2011.

[8]   Emissions tests for NOx only since the PM standard does not apply to natural gas engines.

[9]   E-mail from Wilson Chu (Johnson Matthey) to John Barnes (DEC) dated January 24, 2008.

[10]   Stack testing costs are based upon an informal Department survey of several stack testing companies.

[11]   "Semi-Annual Reports on New Generation Projects and Demand Response Programs", Attachment II, New York Independent System Operator, June 1, 2017.

*Rural Area Flexibility Analysis*

Distributed generation (DG) sources are engines used by host sites to supply electricity outside that supplied by distribution utilities. This on-site generation of electricity by DG sources is used by a wide-range of commercial, institutional and industrial facilities either in non-emergency situations when electricity costs are high or to reduce demand on the electric grid, or in emergency situations when the usual supply of power from central station power plants becomes unavailable.

DG sources emit nitrogen oxides (NOx), a precursor to ground-level ozone, which has been linked to adverse public health impacts. The increasing use of uncontrolled DG sources, if left unchecked, will exacerbate public health impacts and make it very difficult for New York to meet its obligations under the Clean Air Act (CAA) to attain the 2008 and 2015 8-hour ozone National Ambient Air Quality Standards (NAAQS).

The Department of Environmental Conservation (Department or DEC) adopted 6 NYCRR Part 222, "Distributed Generation Sources", along with attendant revisions to 6 NYCRR Part 200, "General Provisions", on November 1, 2016. The new rule took effect on December 1, 2016. On March 1, 2017, an Article 78 petition was filed challenging various aspects of Part 222. On July 26, 2017, a Stipulation and Order was issued whereby

the Department agreed to propose a new rule to replace the adopted rule pursuant to the State Administrative Procedure Act (SAPA). The purpose of this rule making is to promulgate a new Part 222 along with the attendant changes to Part 200. The new rule will apply to economic dispatch sources located in the New York City metropolitan area (NYMA)[1] which are not currently regulated under Subpart 227-2. In addition, the Department may initiate a new rule to develop a minor source new source review regulation in accordance with Section 110(a)(2)(C) of the Clean Air Act to address NOx emitting sources not covered under Subpart 227-2 or the new Part 222.

TYPES AND ESTIMATED NUMBERS OF RURAL AREAS

This rule will apply in the NYMA which includes the counties of Rockland, Westchester and Suffolk. A few towns in these counties could be considered rural areas. However, at this time, we do not anticipate that new Part 222 and attendant revisions to Part 200 will apply to any current facilities in these rural areas.

REPORTING, RECORDKEEPING AND OTHER COMPLIANCE REQUIREMENTS; AND PROFESSIONAL SERVICES

Reporting & Recordkeeping:

By March 15, 2020, an owner or operator of a DG source subject to a registration certificate or permit issued by the Department in accordance with 6 NYCRR Part 201 must provide a written notice to the Department indicating whether the source will operate as an economic dispatch source under new Part 222.

Emissions test reports demonstrating compliance with subdivision 222.4(b) of new Part 222 must be submitted to and approved by the Department before a distributed generation source may be operated as an economic dispatch source on or after May 1, 2025. The purpose of the emissions testing requirements in new Part 222 is to ensure that sources subject to the rule meet the emission standards set forth in the rule.

In addition, facilities subject to Part 222 must maintain records regarding hours of operation and fuel use for a period of five years.

Compliance Requirements:

The following provisions will apply to economic dispatch sources effective May 1, 2020:

1. combustion turbines firing natural gas: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer;

2. combustion turbines firing oil: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer;

3. compression-ignition engines: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer;

4. lean-burn engines: must be of model year 2000 or newer or must have a NOx emission rate less than or equal to 2.96 pounds per megawatt-hour as certified in writing by a professional engineer; or

5. rich-burn engines: must be equipped with three-way catalyst emission controls.

The following NOx emission limits will apply to economic dispatch sources effective May 1, 2025:

1. combustion turbines firing natural gas: 25 parts per million on a dry basis corrected to 15 percent oxygen;

2. combined cycle turbines firing oil: 42 parts per million on a dry basis corrected to 15 percent oxygen;

3. spark ignition engines firing natural gas: 1.0 grams per brake horsepower-hour;

4. compression-ignition engines firing distillate oil (solely or in combination with other fuels) with nameplate ratings less than 750 hp: 0.30 grams per brake horsepower-hour; or

5. compression-ignition engines firing distillate oil (solely or in combination with other fuels) with nameplate ratings greater than or equal to 750 hp: 0.50 grams per brake horsepower-hour.

Professional Services:

The services of an engineering consultant may be required in order to complete a permit application. A stack testing company would be required to conduct the emissions testing required in Section 222.5.

COSTS

There are several pathways facilities subject to Part 222 may follow in order to comply with the emission limits set forth in Section 222.4 of Part 222:

1. replace a DG source with a new source;

2. install post-combustion NOx controls on an existing source; or

3. limit the use of non-compliant sources to emergency uses only.

The costs for post-combustion control systems are presented in the following sections for 1,200 hp and 2,000 hp engines as a possible compliance option for existing sources operating on or beyond May 1, 2025. As a point of comparison, replacement costs for new 1,200 hp or 2,000 hp engines that meet the New Source Performance Standards[2] requirements

range from \$525,000 to \$1,000,000.[3,4] The compliance costs for relegating a source to emergency-only status as defined in subdivision 200.1(cq) are lost income from capacity payments and generation payments during DR events.

Selective Catalytic Reduction (SCR) Systems

Selective catalytic reduction (SCR) systems can reduce the NOx emissions from lean-burn natural gas fired-engines and diesel-fired engines by up to 90 percent.[5] The capital cost (installed) of SCR control systems are presented in Table 1.

Table 1: Capital Costs for SCR Systems

| Cost Component | 1200 hp Engine | 2000 hp Engine |
|---|---|---|
| SCR System[6] | \$108,300 | \$180,500 |
| Installation | \$65,000 | \$108,300 |
| Taxes | \$8,700 | \$14,500 |
| Testing[7] | \$8,000 | \$8,000 |
| Total Cost | \$190,000 | \$311,300 |

Operational costs vary depending upon several factors. The primary driver is the reagent (urea) cost. The other operational factors DEC considered in developing cost estimates for SCR systems are insurance, maintenance and labor costs.

Non-Selective Catalytic Reduction (NSCR) Systems

Non-selective catalytic reduction (NSCR) systems can reduce the NOx emissions from rich-burn natural gas fired-engines engines by up to 98 percent.[8] The capital cost (installed) of NSCR control systems are presented in Table 2.

Table 2: Capital Costs for NSCR Systems

| Cost Component | 1200 hp Engine | 2000 hp Engine |
|---|---|---|
| SCR System | \$23,500 | \$39,200 |
| Installation | \$14,100 | \$23,500 |
| Taxes | \$1,900 | \$3,200 |
| Testing[9] | \$8,000 | \$8,000 |
| Total Cost | \$47,500 | \$73,900 |

NSCR catalysts need to be replaced every five years.[10] Replacement catalysts are estimated to cost 7 percent of the original NSCR system cost. In DEC cost analyses, the cost of installing the replacement catalyst was assumed to be 60 percent of the cost of the new catalyst. Annual costs for operating NSCR include insurance, maintenance and labor.

Compliance Testing

The emission testing costs are estimated to be \$8,000.[11] This is a one-time cost for sources operating on or after May 1, 2025.

MINIMIZING ADVERSE IMPACT

The Department has taken the following steps to minimize the adverse impacts of Part 222 on facilities subject to the rule:

1. The provisions that take effect on May 1, 2020 mirror the tariff provisions governing the demand response programs sponsored by Con Edison and Orange & Rockland Utilities. Sources enrolled in those programs will not be affected by this rulemaking until 2025, at which time most sources will be impacted by New York City Local Law 38. This rule is anticipated to impact approximately 35 MW of DR sources enrolled in the NYISO's DR programs beginning May 1, 2020. This amounts to approximately 7.7 percent of the capacity enrolled in the Special Case Resources program in NYISO Zones I, J and K.[12]

2. The provisions limiting DR enrollment and price-responsive generation sources to model year 2000 or newer do not take effect until May 1, 2020 in order to provide DR sponsors, energy services companies (ESCOs) and source owners sufficient time to adjust to the new rule.

3. The emissions testing requirements have been reduced significantly compared to the rule adopted in November 2016. PM testing will not be required. Only one emissions test per source is required – and this only applies to economic dispatch sources operating on or after May 1, 2025.

RURAL AREA PARTICIPATION

Drafts of a proposed replacement rule were released to stakeholders on November 3, 2017, February 26, 2018 and June 5, 2018. Stakeholder meetings were held on November 13, 2017 and March 12, 2018. Stakeholders included demand response program sponsors, ESCOs, trade organizations, manufacturers, and governmental agencies.

INITIAL REVIEW

The initial review of this rule shall occur no later than in the third calendar year after the year in which the rule is adopted.

---

[1]   The term 'New York City metropolitan area' is defined in Part

200.1(au) as all of New York City and Nassau, Suffolk, Westchester and Rockland Counties.

2   40 CFR 60, Subparts IIII (compression-ignition engines), JJJJ (spark-ignition engines) and KKKK (turbines).

3   E-mail from Joe Suchecki (Truck & Engine Manufacturers Association) to John Barnes (DEC) dated November 8, 2013.

4   Replacement costs as well as the costs for pollution control systems could be higher than the costs presented in this section in cases where there are space limitations or building or fire code requirements that must be met.

5   "NOx Control for Stationary Gas Engines", Wilson Chu (Johnson-Matthey), Advances in Air Pollution Control Technology, MARAMA Workshop, May 19, 2011.

6   Sources: CARB 2010. Regulatory Analysis for Revisions to Stationary Diesel Engine Air Toxic Control Measure. Appendix B. Analysis of Technical Feasibility and Costs of After-treatment Controls on New Emergency Diesel Engines; and (2) Producer Price Index, U.S. Department of Labor, Bureau of Labor Statistics.

7   Testing costs include NOx and PM tests (diesel engines). For natural gas-fired engines, the estimated cost is $8,000 for NOx tests only.

8   "NOx Control for Stationary Gas Engines", Wilson Chu (Johnson-Matthey), Advances in Air Pollution Control Technology, MARAMA Workshop, May 19, 2011.

9   Emissions tests for NOx only since the PM standard does not apply to natural gas engines.

10   E-mail from Wilson Chu (Johnson Matthey) to John Barnes (DEC) dated January 24, 2008.

11   Stack testing costs are based upon an informal Department survey of several stack testing companies.

12   "Semi-Annual Reports on New Generation Projects and Demand Response Programs", Attachment II, New York Independent System Operator, June 1, 2017.

## Job Impact Statement

Distributed generation (DG) sources are engines used by host sites to supply electricity outside that supplied by distribution utilities. This on-site generation of electricity by DG sources is used by a wide-range of commercial, institutional and industrial facilities either in non-emergency situations when electricity costs are high or to reduce demand on the electric grid, or in emergency situations when the usual supply of power from central station power plants becomes unavailable.

The Department of Environmental Conservation (Department or DEC) adopted 6 NYCRR Part 222, Distributed Generation Sources, along with attendant revisions to 6 NYCRR Part 200, General Provisions, on November 1, 2016. The new rule took effect on December 1, 2016. On March 1, 2017, an Article 78 petition was filed challenging various aspects of Part 222. On July 26, 2017, a Stipulation and Order was issued whereby the Department agreed to propose a new rule to replace the adopted rule pursuant to the State Administrative Procedure Act. The purpose of this rule making is to promulgate a new Part 222 along with the attendant changes to Part 200. The new rule will apply to economic dispatch sources located in the New York City metropolitan area (NYMA)[1] which are not currently regulated under Subpart 227-2. In addition, the Department may initiate a new rule making in 2019 to develop a minor source review regulation in accordance with Section 110(a)(2)(C) of the Clean Air Act to address NOx emitting sources not covered under Subpart 227-2 or the new Part 222.

NATURE OF IMPACT

The proposed rule is limited to economic dispatch sources located in the NYMA. Economic dispatch includes DG sources enrolled in demand response (DR) programs sponsored by the New York Independent System Operator (NYISO) or distribution utilities that receive capacity or energy payments or both. In addition, price-responsive generation sources, defined in Part 222 as DG sources used to provide electricity when the cost of electricity supplied by the distribution utility is high, are also covered under the definition of economic dispatch sources.

DR programs are sponsored by the New York Independent System Operator (NYISO) and distribution utilities. Sources enrolled in these programs receive capacity or energy payments or both. Part 222 may impact jobs and employment opportunities at a wide range of businesses in the NYMA. Based upon responses received pursuant to the notification provision in Section 222.3 of the rule adopted on November 1, 2016, more than 160 facilities may be affected by the new proposed rule. Facilities participating in DR programs include industrial, commercial and institutional facilities. Energy production is not a primary function at these facilities. Therefore, Part 222 may have minimal impacts, if any, on employment opportunities at affected facilities.

Energy services companies (ESCOs) enroll facilities into DR programs

sponsored by the NYISO and distribution utilities. ESCOs' DR portfolios include curtailment, load shifting, energy efficiency and DG resources. Most DG resources in these portfolios are uncontrolled, diesel-fired engines that will be subject to control requirements that will take effect on May 1, 2020. In 2025, very few DR sources will be able to meet the Part 222 limits. However, the emission limits in Part 222 that would take effect on May 1, 2025 are based, in large part, on provisions in New York City Local Law 38. Therefore, it is expected that the provisions of Part 222 will minimally impact employment opportunities with ESCOs.

Stack testing will be required to demonstrate compliance with Part 222 emission standards for economic dispatch sources that will operate May 1, 2025 and beyond. Therefore, employment opportunities with consultants and vendors specializing in stack testing are expected to increase as a result of the adoption of Part 222.

There will be an additional work load for the Department to implement Part 222, including preparing new and modified air permits, reviewing stack test reports and creating compliance reports in the Air Facility System database. It is estimated that it will take one staff-year to initiate the program to implement Part 222 and two staff-years annually to implement Part 222. The Department does not anticipate hiring additional staff to implement Part 222.

CATEGORIES AND NUMBERS AFFECTED

Distributed generation can be used at a wide range of industrial, commercial and institutional facilities. More than 160 facilities in the NYMA are enrolled in demand response programs. DR activities are not the primary source of income for affected facilities. Therefore, the Department expects that impacts to employment opportunities would be minimal.

The adoption of Part 222 may lead to increased employment opportunities with professional services companies that provide environmental monitoring and compliance services (such as stack testing) as well as for vendors who sell and install pollution control systems.

REGIONS OF ADVERSE IMPACT

The rule only impacts facilities located in the NYMA that utilize economic dispatch sources and that are not subject to Subpart 227-2.

MINIMIZING ADVERSE IMPACT

The Department has taken the following steps to minimize the adverse impacts of Part 222:

1. The provisions that take effect on May 1, 2020 mirror the tariff provisions that govern the demand response programs sponsored by Con Edison and Orange & Rockland Utilities. Sources enrolled in those programs will not be affected by this rulemaking until 2025, at which time most affected sources will also be impacted by New York City Local Law 38. This rule is anticipated to impact approximately 35 MW of DR sources enrolled in the NYISO's DR programs beginning May 1, 2020. This amounts to approximately 7.7 percent of the capacity enrolled in the Special Case Resources program in NYISO Zones I, J and K.[2] Therefore, the impact to ESCO's will be small in 2020.

2. The provisions limiting DR enrollment and price-responsive generation sources to model year 2000 or newer do not take effect until May 1, 2020 in order to provide DR sponsors, ESCOs and source owners sufficient time to adjust to the new rule.

3. The emissions testing requirements have been reduced significantly compared to the rule adopted in November 2016. PM testing will not be required. Only one emissions test per source is required – and this only applies to sources that will operate as economic dispatch sources on or after May 1, 2025.

SELF-EMPLOYMENT OPPORTUNITIES

The adoption of Part 222 is not expected to result in negative impacts to self-employment opportunities.

INITIAL REVIEW

The initial review of this rule shall occur within the third year after this rule is adopted.

1   The term 'New York City metropolitan area' is defined in Part 200.1(au) as all of New York City and Nassau, Suffolk, Westchester and Rockland Counties.

2   "Semi-Annual Reports on New Generation Projects and Demand Response Programs", Attachment II, New York Independent System Operator, June 1, 2017.

# Department of Health

## EMERGENCY/PROPOSED
## RULE MAKING
## NO HEARING(S) SCHEDULED

**School Immunization Requirements**

**I.D. No.** HLT-36-19-00005-EP

**Filing No.** 749

**Filing Date:** 2019-08-16

**Effective Date:** 2019-08-16

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Proposed Action:* Amendment of Subpart 66-1 of Title 10 NYCRR.

*Statutory authority:* Public Health Law, sections 2164(10) and 2168(13)

*Finding of necessity for emergency rule:* Preservation of public health.

*Specific reasons underlying the finding of necessity:* Compliance with the requirements of the State Administrative Procedure Act for filing of a regulation on a non-emergency basis including the requirement for a period of time for public comment cannot be met because to do so would be detrimental to the health and safety of the general public, particularly children.

There currently exist outbreaks of measles in New York City and in the Counties of Rockland, Orange, and Westchester, and cases have also been identified in the County of Sullivan and Greene. Measles is a viral disease transmitted via the airborne route when a person with measles coughs or sneezes. It is one of the most contagious diseases known. Following exposure to the virus about 90% of people who are susceptible will develop measles.

Measles virus can remain active and contagious for up to 2 hours in the air or on surfaces. People can contract measles by walking into a room where an individual infected with measles has been, being in an elevator after someone with measles has been there, or being next to a person with measles who sneezes or coughs.

Measles is characterized by a period of fever, which can be as high as 105 degrees F, with cough, coryza, and/or conjunctivitis. A red rash typically presents 2-4 days later and lasts 5-6 days. Hence, non-immune persons who are exposed to, and become infected with, measles are contagious for four days before the rash appears.

The rash usually starts on the face and proceeds down the body to involve the extremities last and may include the palms and soles. The rash is usually discrete but may become confluent on the upper body; it resolves in the same order that it appeared. Koplik's spots (punctate blue-white spots on the bright red background of the buccal mucosa) may be present, often before the rash develops, but are often not seen and are not required for the diagnosis of measles.

Measles can be a very serious disease. This is especially true for children less than 5 years of age, adults who are over 20 years of age, pregnant women and those who are immunocompromised. Common complications include ear infection and diarrhea. Severe complications include pneumonia and encephalitis. About one child out of 1,000 will get encephalitis, which can result in seizures. Deafness and other complications can occur. For every 1,000 cases of measles, one or two children will die, despite the best medical care. Measles can also cause premature birth in pregnant women.

The measles vaccine is very effective and remains the best protection against the disease. One dose of measles vaccine is about 93% effective at preventing the measles if exposed to the virus. Two doses are about 97% effective.

The measles vaccine is safe and serious side effects are rare. Fever is the most common side effect of the MMR vaccine. About 1 in 10 people will get a fever about a week to a week and a half after vaccination. The fever usually lasts for a day or two and then gets better on its own. About 1 in 20 people will develop a red rash about a week to a week and a half after MMR or MMRV vaccine. The rash may look like measles but usually is much milder. There has never been a documented case of a vaccinated person spreading measles as a result of receiving the MMR vaccine. Severe allergic reactions rarely occur after the MMR vaccine.

Despite the safety of the vaccine, because of underlying conditions or factors, some individuals are not able to receive measles vaccination such as those who are immunocompromised, women known to be pregnant or attempting to become pregnant, young infants, or those who have a medical contraindication. Additionally, children under 5 years of age typically not fully immunized based on routine immunization schedules. Importantly, these non-immune, under-vaccinated or higher risk individuals are at risk of contracting measles, may frequent healthcare settings, and are also most at risk for severe complications from measles.

Endemic measles transmissions have been eliminated in the United States. However, because some individuals have chosen not to receive the vaccine and to not have their children vaccinated, outbreaks stemming from imported cases have occurred and new cases continue to occur in multiple counties across New York State.

Chapter 35 of the Laws of 2019 was enacted in response to the current measles outbreak, to increase the number of students immunized against this preventable disease. These regulations are necessary in order to execute and implement this new law and, as such, delaying these regulations would increase the risk of new outbreaks of measles or the spread of existing outbreaks, placing children, and adults who lack immunity to measles, at greater risk of illness and potentially severe complications including death.

*Subject:* School Immunization Requirements.

*Purpose:* To be consistent with national immunization regulations and guidelines and to define "may be detrimental to the child's health".

*Substance of emergency/proposed rule (Full text is posted at the following State website:www.health.ny.gov/Laws & Regulations/Proposed Rulemaking):* This regulation will amend Subpart 66-1 (School Immunization Requirements) to conform to recent amendments to Sections 2164 and 2168 of the Public Health Law (PHL). In addition, these amendments make the regulations consistent with national immunization recommendations and guidelines. The regulations also define the phrase "may be detrimental to the child's health" for purposes of medical exemptions to vaccination requirements. The regulations will be effective upon publication of a Notice of Adoption in the New York State Register.

Technical amendments throughout Section 66-1.1 update references to the "Advisory Committee on Immunization Practices" (ACIP) schedule to its current title, the "Advisory Committee on Immunization Practices Recommended Child and Adolescent Immunization Schedule for ages 18 years or younger." Technical amendments also clarify the grades covered by the varicella, poliomyelitis and vaccine interval requirements.

Amendments to subdivision (g) of section 66-1.1 clarify that positive serologic tests for all three serotypes of poliomyelitis submitted to a New York State school prior to September 1, 2019 may be accepted as evidence of poliomyelitis immunity. However, serologic tests against poliomyelitis submitted on or after September 1, 2019 may not be accepted in place of poliomyelitis vaccination, in accordance with current ACIP guidance. Similar amendments are made to section 66-1.6 to incorporate these changes into the certificate of immunization.

A new subdivision (k) of section 66-1.1 adds a definition of laboratory confirmation of measles, mumps, rubella and varicella infections, and amendments to subdivision (g) of that section expand the definition of immunity to include laboratory confirmation against these diseases. Laboratory confirmation of immunity means a positive culture or polymerase chain reaction test against measles, mumps, rubella or varicella, or a positive blood test for Immunoglobulin M against measles or rubella, where such positive laboratory test is not otherwise explained by recent vaccination. Amendments to section 66-1.6 add laboratory confirmation of measles, mumps, rubella and varicella to the certificate of immunization.

A new subdivision (l) of section 66-1.1 defines "may be detrimental to the child's health" to mean that a physician has determined that a child has a medical contraindication or precaution to a specific immunization consistent with ACIP guidance. Amendments to subparagraph (ii) of paragraph (4) of subdivision (c) of section 66-1.2 require that the reason why an immunization is detrimental to a child's health be documented in the New York State Immunization Information System. Additionally, amendments to subdivision (c) of section 66-1.3 require the use of medical exemption forms approved by the New York State Department of Health or New York City Department of Education; a written statement from a physician is no longer allowed.

Finally, subdivision (d) of section 66-1.3 is repealed, and amendments to section 66-1.10 remove references to subdivision (d) of section 66-1.3.

*This notice is intended:* to serve as both a notice of emergency adoption and a notice of proposed rule making. The emergency rule will expire November 13, 2019.

*Text of rule and any required statements and analyses may be obtained from:* Katherine Ceroalo, DOH, Bureau of Program Counsel, Reg. Affairs Unit, Room 2438, ESP Tower Building, Albany, NY 12237, (518) 473-7488, email: regsqna@health.ny.gov

*Data, views or arguments may be submitted to:* Same as above.

*Public comment will be received until:* 60 days after publication of this notice.

    

*This rule was not under consideration at the time this agency submitted its Regulatory Agenda for publication in the Register.*

**Regulatory Impact Statement**

Statutory Authority:

The Commissioner of Health is authorized pursuant to Section 2164(10) of the Public Health Law (PHL) to adopt and amend rules and regulations necessary to effectuate the provisions and purposes of Section 2164 of the PHL. The Commissioner of Health is authorized pursuant to Section 2168(13) of the PHL to adopt and amend rules and regulations necessary to effectuate the provisions of Section 2168 of the PHL.

Legislative Objectives:

The legislative objective of PHL § 2164 includes the protection of the health of residents of the state by assuring that children are immunized according to current recommendations before attending day care, pre-kindergarten, or school, to prevent the transmission of vaccine preventable disease and accompanying morbidity and mortality. The legislative objective of PHL § 2168 is to establish a comprehensive database of complete, accurate and secure immunization records.

Chapter 35 of the Laws of 2019 amended both PHL §§ 2164 and 2168, repealing the exemption from vaccination requirements for children whose parents had non-medical objections to immunizations.

Needs and Benefits:

There currently exist outbreaks of measles in New York City and in the Counties of Rockland, Orange, and Westchester, and cases have also been identified in the County of Sullivan. Measles is a viral disease transmitted via the airborne route when a person with measles coughs or sneezes. It is one of the most contagious diseases known. Following exposure to the virus about 90% of people who are susceptible will develop measles.

Measles can be a very serious disease. This is especially true for children less than 5 years of age, adults who are over 20 years of age, pregnant women and those who are immunocompromised. Common complications include ear infection and diarrhea. Severe complications include pneumonia and encephalitis. About one child out of 1,000 will get encephalitis, which can result in seizures. Deafness and other complications can occur. For every 1,000 cases of measles, one or two children will die, despite the best medical care. Measles can also cause premature birth in pregnant women.

The measles vaccine is very effective and remains the best protection against the disease. One dose of measles vaccine is about 93% effective at preventing the measles if exposed to the virus. Two doses are about 97% effective. The measles vaccine is also safe and serious side effects are rare.

According to the Centers for Disease Control (CDC), sustaining a high vaccination rate among school children is vital to the prevention of disease outbreaks, including the reestablishment of diseases that have been largely eradicated in the United States, such as measles. According to State data from 2017-2018, there are at least 280 schools in New York with an immunization rate below 85%, including 211 schools below 70%, far below the CDC's goal of at least a 95% vaccination rate to maintain herd immunity.

Endemic measles transmission had been eliminated in the United States. However, because some individuals have chosen not to receive the vaccine and to not have their children vaccinated, outbreaks stemming from imported cases have occurred and new cases continue to occur in multiple counties across New York State.

In response to the current measles outbreak, the Legislature enacted Chapter 35 of the Laws of 2019, which repealed non-medical exemptions to the vaccination requirements for admission to day care, pre-kindergarten, or school. By increasing the number of children immunized against vaccine-preventable diseases like measles, this legislation will prevent outbreaks and protect both the immunized children and those members of the community who cannot be vaccinated for medical reasons.

This regulation conforms existing regulations with the provisions Chapter 35 of the Laws of 2019, by eliminating any reference to non-medical exemptions to vaccination rules for school admissions.

In addition, this regulation clarifies that a child may only receive a medical exemption from vaccination requirements when there is a medical contraindication or precaution to a specific immunization consistent with ACIP guidance. The regulation further requires that such contraindication be documented on forms approved by the Department of Health (Department) or the New York City Department of Education, and that they be documented in the New York State Immunization Information System. Although most physicians act in good faith and only issue medical exemptions for true medical contraindications to vaccination, as demonstrated by the experience of California, a small number may issue medical exemptions for non-medical reasons. In 2015, the State of California removed non-medical exemptions to school immunization requirements without taking steps to strengthen the rules governing medical exemptions. Over the next three years, the use of medical exemptions to school immunization requirements more than tripled. By providing clear, evidence-based guidance to physicians, this regulation will help prevent medical exemptions being issued for non-medical reasons.

Finally, this regulation makes several technical amendments to conform with current guidance from the CDC's Advisory Committee on Immunization Practices (ACIP), including clarifying the grades covered by varicella, poliomyelitis and vaccine interval requirements; removing poliovirus from the list of diseases for which a positive serologic test is acceptable proof of immunity; and permitting laboratory confirmation of immunity to measles, mumps, rubella and varicella infections.

Costs:

Costs to the Regulated Entity:

Chapter 35 of the Laws of 2019 eliminates non-medical exemptions to school vaccination requirements. This created additional administrative work for the schools and day care businesses that are regulated under PHL § 2164. This regulation implements the law but does not impose any additional costs. Regulated entities that were already in compliance with the law will not have significant additional costs.

Costs to Local Government:

This regulation will affect schools, many of which are operated by local governments. The costs are as described above.

Costs to the Department of Health:

The Department intends to implement Chapter 35 of the Laws of 2019 and this regulation within existing appropriations.

Local Government Mandates:

Schools must already comply with Chapter 35 of the Laws of 2019.

Paperwork:

Children who previously had non-medical exemptions to school vaccination requirements will now have to provide regulated entities with evidence of immunity or a medical exemption. Regulated entities will need to maintain new paperwork for students who previously had religious exemptions.

Duplication:

These amendments do not duplicate, overlap or conflict with any Federal and State laws.

Alternatives:

An alternative would be not to amend the regulation to align with the Public Health Law as enacted by the Legislature. This alternative was rejected as unacceptable and inconsistent with the Department's duty to execute and implement the laws of New York State.

Federal Standards:

The Centers for Disease Control and Prevention maintains immunization schedules and guidelines for when immunization may be detrimental to a child's health because a child has a medical contraindication or precaution to a specific immunization.

Compliance Schedule:

There is no compliance schedule imposed by these amendments, which shall be effective upon publication of a Notice of Adoption in the New York State Register.

**Regulatory Flexibility Analysis**

Effect of Rule:

This regulation will apply to private schools, including parochial schools, and day care, some of which may be small businesses, as well as public schools operated by local governments. These regulated entities will be required to change their policies and procedures for school attendance to comply with PHL § 2164 and these regulations.

This regulation will also apply to physicians who may also be considered small businesses. In order to reduce the risk of medical exemptions being issued for non-medical reasons, physicians will be required to document the reason for granting medical exemptions in the New York State Immunization Information Systems (NYSIIS) and use medical exemption forms approved by the Department or the New York City Department of Education.

Compliance Requirements:

All day care, pre-kindergarten, private and public schools must already comply with the requirements of Chapter 35 of the Laws of 2019. All physicians providing medical exemptions must comply with the requirement to document such exemptions as described above.

Professional Services:

There are no additional professional services required as a result of this regulation.

Compliance Costs:

Chapter 35 of the Laws of 2019 eliminated the non-medical exemption to school vaccination requirements. This created additional administrative work for the schools and day care businesses that are regulated under PHL § 2164. This regulation implements the law but does not impose any additional costs. Regulated entities that were already in compliance with the law will not have significant additional costs. Physicians will not incur any additional costs.

Economic and Technological Feasibility:

This proposal is economically and technically feasible, as it does not require any special technology and does not impose an unreasonable financial burden on private schools, day care centers, public schools, or physicians.

Minimizing Adverse Impact:

The Department will work with regulated entities to ensure that they are aware of the requirements and have the information necessary to comply.

Small Business and Local Government Participation:

Small business, local government, and the public are invited to comment during the Codes and Regulations Committee meeting of the Public Health and Health Planning Council.

Cure Period:

Chapter 524 of the Laws of 2011 requires agencies to include a "cure period" or other opportunity for ameliorative action to prevent the imposition of penalties on a party subject to enforcement when developing a regulation or explain in the Regulatory Flexibility Analysis why one is not included. As this proposed regulation does not create a new penalty or sanction, no cure period is necessary.

*Rural Area Flexibility Analysis*

Types and Estimated Numbers of Rural Areas:

This rule applies uniformly throughout the state, including in rural areas. Rural areas are defined as counties with a population less than 200,000 and counties with a population of 200,000 or greater that have towns with population densities of 150 persons or fewer per square mile. The following 43 counties have a population of less than 200,000 based upon the United States Census estimated county populations for 2010 (http://quickfacts.census.gov).

| | | |
|---|---|---|
| Allegany County | Greene County | Schoharie County |
| Cattaraugus County | Hamilton County | Schuyler County |
| Cayuga County | Herkimer County | Seneca County |
| Chautauqua County | Jefferson County | St. Lawrence County |
| Chemung County | Lewis County | Steuben County |
| Chenango County | Livingston County | Sullivan County |
| Clinton County | Madison County | Tioga County |
| Columbia County | Montgomery County | Tompkins County |
| Cortland County | Ontario County | Ulster County |
| Delaware County | Orleans County | Warren County |
| Essex County | Oswego County | Washington County |
| Franklin County | Otsego County | Wayne County |
| Fulton County | Putnam County | Wyoming County |
| Genesee County | Rensselaer County | Yates County |
| | Schenectady County | |

The following counties have a population of 200,000 or greater and towns with population densities of 150 persons or fewer per square mile. Data is based upon the United States Census estimated county populations for 2010.

| | | |
|---|---|---|
| Albany County | Monroe County | Orange County |
| Broome County | Niagara County | Saratoga County |
| Dutchess County | Oneida County | Suffolk County |
| Erie County | Onondaga County | |

This regulation will apply all day care, pre-kindergarten, and private and public schools, including parochial schools, as well as all physicians, throughout New York, including in rural areas.

Reporting, Recordkeeping and Other Compliance Requirements; and Professional Services:

This regulation will apply to public schools and private schools, including parochial schools, and day care in rural areas. These regulated entities will be required to change their policies and procedures for school attendance to comply with PHL § 2164 and these regulations.

This regulation will also apply to physicians in rural areas. In order to reduce the risk of medical exemptions being issued for non-medical reasons, physicians will be required to document the reason for granting medical exemptions in the New York State Immunization Information Systems (NYSIIS) and use medical exemption forms issued by the Department or the New York City Department of Education.

There are no additional professional services required as a result of this regulation.

Costs:

Chapter 35 of the Laws of 2019 eliminated the non-medical exemption to school vaccination requirements. This created additional administrative work for the schools and day care businesses that are regulated under PHL § 2164. This regulation implements the law but does not impose any additional costs. Regulated entities that were already in compliance with the law will not have significant additional costs. Physicians will not incur any additional costs.

Minimizing Adverse Impact:

The Department will work with regulated entities in rural areas to ensure that they are aware of the requirements and have the information necessary to comply.

Rural Area Participation:

Small business, local government, and the public are invited to comment during the Codes and Regulations Committee meeting of the Public Health and Health Planning Council.

*Job Impact Statement*

No Job Impact Statement is required pursuant to Section 201-a(2)(a) of the State Administrative Procedure Act (SAPA). It is apparent, from the nature of the proposed amendment, that it will have no impact on jobs and employment opportunities.

## NOTICE OF ADOPTION

### Schroon Lake Water District

**I.D. No.** HLT-20-19-00006-A

**Filing No.** 755

**Filing Date:** 2019-08-20

**Effective Date:** 2019-09-04

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* Repeal of section 114.20 of Title 10 NYCRR.

*Statutory authority:* Public Health Law, sections 201(1)(l) and 1100

*Subject:* Schroon Lake Water District.

*Purpose:* The regulation is no longer needed since Horseshoe Pond no longer serves as the public drinking water source.

*Text or summary was published* in the May 15, 2019 issue of the Register, I.D. No. HLT-20-19-00006-P.

*Final rule as compared with last published rule:* No changes.

*Text of rule and any required statements and analyses may be obtained from:* Katherine Ceroalo, DOH, Bureau of Program Counsel, Reg. Affairs Unit, Room 2438, ESP Tower Building, Albany, NY 12237, (518) 473-7488, email: regsqna@health.ny.gov

*Initial Review of Rule*

As a rule that does not require a RFA, RAFA or JIS, this rule will be initially reviewed in the calendar year 2024, which is no later than the 5th year after the year in which this rule is being adopted.

*Assessment of Public Comment*

The agency received no public comment.

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

### Limits on Executive Compensation

**I.D. No.** HLT-36-19-00006-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Amendment of section 1002.3 of Title 10 NYCRR.

*Statutory authority:* Social Services Law, section 363-a(2); Public Health Law, sections 201(1)(o), (p), 206(3) and (6)

*Subject:* Limits on Executive Compensation.

*Purpose:* Removes "Soft Cap" prohibition on covered executive salaries.

*Text of proposed rule:* Pursuant to the authority vested in the Commissioner of Health by section 363-a(2) of the Social Services Law and sections 201(1)(o), 201(1)(p), 206(3) and 206(6) of the Public Health Law, section 1002.3 of Title 10 (Health) of the Official Compilation of Codes, Rules and Regulations of the State of New York is amended, to be effective upon publication of a Notice of Adoption in the New York State Register, to read as follows:

1002.3 Limits on executive compensation

(a) Limits on executive compensation. Except if a covered provider has obtained a waiver pursuant to section 1002.4 of this Part, a covered provider as defined in this regulation shall not use State funds or State-authorized payments for executive compensation given directly or indirectly to a covered executive in an amount greater than $199,000 per annum, provided, however, that the department shall review this figure an-

nually to determine whether adjustment is necessary based on appropriate factors and subject to the approval of the Director of the Division of the Budget. Commencing on July 1, 2013, the limits on executive compensation pursuant to this Part shall be effective and applicable to each covered provider on the first day of each covered provider's respective covered reporting period.

[(b) Except if a covered provider has obtained a waiver pursuant to section 1002.4 of this Part, where a covered provider's executive compensation given to a covered executive is greater than $199,000 per annum (including not only State funds and State-authorized payments but also any other sources of funding), and either:

(1) greater than the 75th percentile of that compensation provided to comparable executives in other providers of the same size and within the same program service sector and the same or comparable geographic area as established by a compensation survey identified, provided, or recognized by the department and the Director of the Division of the Budget; or

(2) was not reviewed and approved by the covered provider's board of directors or equivalent governing body (if such a board or body exists) including at least two independent directors or voting members (or, where a duly authorized compensation committee including at least two independent directors or voting members conducted such review on behalf of the full board, such actions were not reviewed and ratified by such board), or such review did not include an assessment of appropriate comparability data; then such covered provider shall be subject to the penalties set forth in section 1002.6 of this Part. To determine whether a covered provider or related organization may be subject to penalties, such provider shall provide, upon request by the department or its designee, contemporaneous documentation in a form and level of detail sufficient to allow such determination to be made.]

[(c)] (b) Program services rendered by covered executives. The limit on executive compensation pursuant to this Section shall not be applied to limit reimbursement with State funds or State-authorized payments for reasonable compensation paid to a covered executive for program services, including but not limited to supervisory services performed to facilitate the covered provider's program services, rendered by the executive outside of his or her managerial or policy-making duties. Documentation of such program services rendered shall be used by the covered provider to determine that percentage, if any, of the covered executive's compensation that is attributable to program services and that compensation shall not be considered in the calculation of his or her executive compensation. Such documentation shall be maintained and provided to the department or its designee upon request. Clinical and program personnel in a hospital or other entity providing program services, including chairs of departments, heads of service, chief medical officers, directors of nursing, or similar types of personnel fulfilling administrative functions that are nevertheless directly attributable to and comprise program services shall not be considered covered executives for purposes of limiting the use of State funds or State-authorized payments to compensate them.

[(d)] (c) Covered providers with multiple sources of State funds or State-authorized payments. If a covered provider receives State funds or State-authorized payments from multiple sources, the provider's compliance with the limits on executive compensation in subdivision (a) shall be determined based upon the total amount of such funding received and the reimbursements received from all sources of State funds or State-authorized payments. As set forth in section 1002.5 of this Part, the covered provider shall report all of such State funds and State-authorized payments in the form specified by the department or its designee.

[(e)] (d) Subcontractors and agents of covered providers. The limits on executive compensation in subdivision (a) [and (b)] of this section and the reporting requirements in section 1002.5 of this Part shall apply to subcontractors and agents of covered providers if and to the extent that such a subcontractor or agent has received State funds or State-authorized payments from the covered provider to provide program or administrative services during the reporting period and would otherwise meet the definition of a covered provider but for the fact that it has received State funds or State-authorized payments from the covered provider rather than directly from a governmental agency. A covered provider shall incorporate into its agreement with such a subcontractor or agent the terms of those regulations by reference to require and facilitate compliance. Upon request, covered providers shall promptly report to the funding or authorizing agency the identity of such subcontractors and agents, along with any other information requested by that agency or by the department or its designee. A covered provider shall not be held responsible for a subcontractor's or agent's failure to comply with these regulations.

[(f)] (e) Covered providers receiving State funds or State-authorized payments from county or local government or an entity contracting on its behalf. The department or its designee, rather than the county or local unit of government or an entity contracting on behalf of such government, shall be responsible for obtaining the necessary reporting from and compliance by such covered providers, and shall issue guidance to affected county and local governments to set forth the procedures by which the department or its designee shall do so.

[(g)] (f) Other limits on executive compensation. If the contract, grant, or other agreement which is subject to more stringent limits on executive compensation, whether through law or contract, such limits shall control and shall not be affected by the less stringent limits imposed by these regulations. However, the definition and interpretation of terms in this Part shall not be affected or limited by the definition or interpretation of terms in other regulations or agreements.

[(h)] (g) A covered provider's contract or other agreement with a covered executive agreed to prior to July 1, 2012 shall not be subject to the limits in this section during the term of the contract, except that:

(1) covered providers must apply for a waiver for any contracts or agreements with covered executives for executive compensation that exceeds or otherwise fails to comply with these regulations if such contracts or agreements extend beyond April 1, 2015; and

(2) renewals of such contracts or agreements after the completion of their term must comply with these regulations.

***Text of proposed rule and any required statements and analyses may be obtained from:*** Katherine Ceroalo, DOH, Bureau of Program Counsel, Reg. Affairs Unit, Room 2438, ESP Tower Building, Albany, NY 12237, (518) 473-7488, email: regsqna@health.ny.gov

***Data, views or arguments may be submitted to:*** Same as above.

***Public comment will be received until:*** 60 days after publication of this notice.

***This rule was not under consideration at the time this agency submitted its Regulatory Agenda for publication in the Register.***

### Regulatory Impact Statement

Statutory Authority:
The authority for the promulgation of these regulations is contained in section 363-a(2) of the Social Security Law and in sections 201(1)(o), 201(1)(p), 206(3) and 206(6) of the Public Health Law.

Legislative Objectives:
The objective of section 363-a(2) of the Social Security Law, and sections 201(1)(o), 201(1)(p), 206(3) and 206(6) of the Public Health Law, is to ensure the proper use of funds in furtherance of the Department's oversight of the various programs and procurements for which it pays, or authorizes payment.

Needs and Benefits:
This proposed regulation is necessary to comply with the Court of Appeal's decision in LeadingAge, et al. v. Shah, et al., 32 N.Y.3d 249 (2018), which invalidated a portion of the existing regulations concerning limits on executive compensation.

Costs:
Costs to Private Regulated Parties:
This amendment will provide covered providers clarity in calculating the limits on executive compensation and should not result in any additional costs.

Costs to Local Government:
This proposal will not impact local governments unless they are covered providers, in which case costs will be the same as costs for private entities.

Costs to the Department of Health:
The proposed regulatory changes will not result in any additional operational costs to the Department of Health.

Costs to Other State Agencies:
The proposed regulatory changes will not result in any additional costs to other state agencies.

Local Government Mandates:
This provision does not impose any additional mandates on local governments.

Paperwork:
This provision does not impose any additional paperwork.

Duplication:
This regulation does not duplicate any other State or federal regulation.

Alternatives:
There are no alternatives to the proposed amendment.

Federal Standards:
This proposal does not conflict or duplicate federal provisions.

Compliance Schedule:
This proposed amendment will become effective upon publication of a Notice of Adoption in the New York State Register.

### Regulatory Flexibility Analysis

No regulatory flexibility analysis is required pursuant to section 202-b(3)(a) of the State Administrative Procedure Act. The proposed amendment does not impose an adverse economic impact on small businesses or local governments, and it does not impose reporting, record keeping or other compliance requirements on small businesses or local governments.

### Rural Area Flexibility Analysis

No Rural Area Flexibility Analysis is required pursuant to Section 202-bb(4)(a) of the State Administration Procedure Act (SAPA). It is apparent

from the nature of the proposed regulation that it will not impose any adverse impact on rural areas, and the rule does not impose any new reporting, recordkeeping or other compliance requirements on public or private entities in rural areas.

**Job Impact Statement**

No job impact statement is required pursuant to Section 201-a(2)(a) of the State Administrative Procedure Act. It is apparent, from the nature of the proposed amendment, that it will not have an adverse impact on jobs and employment opportunities.

# Higher Education Services Corporation

## EMERGENCY
## RULE MAKING

**Eligibility Criteria for Student Financial Aid Award Programs Under Article 14 of the Education Law**

**I.D. No.** ESC-25-19-00012-E

**Filing No.** 753

**Filing Date:** 2019-08-20

**Effective Date:** 2019-08-20

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

**Action taken:** Amendment of sections 2201.1 and 2407.1 of Title 8 NYCRR.

**Statutory authority:** Education Law, sections 653 and 655; L. 2019, ch. 26; L. 2019, ch. 56, part D

**Finding of necessity for emergency rule:** Preservation of general welfare.

**Specific reasons underlying the finding of necessity:** This statement is being submitted pursuant to subdivision (6) of section 202 of the State Administrative Procedure Act and in support of the New York State Higher Education Services Corporation's Notice of Emergency Adoption seeking to amend sections 2201.1 and 2407.1 of Title 8 of the Official Compilation of Codes, Rules and Regulations of the State of New York.

This regulation implements a statutory expansion of the eligibility requirements for student financial aid programs to undocumented and other individuals who attend a New York State institution of higher education beginning with the fall 2019 term. Decisions on applications for these programs are made prior to the beginning of the term, which generally begins in August. Therefore, emergency adoption is necessary to avoid an adverse impact on the processing of awards to eligible scholarship applicants. For this reason, compliance with section 202(1) of the State Administrative Procedure Act would be contrary to the public interest.

**Subject:** Eligibility criteria for student financial aid award programs under article 14 of the Education Law.

**Purpose:** To implement the eligibility criteria for student financial aid award programs under article 14 of the Education Law.

**Text of emergency rule:** Subdivision (a) of section 2201.1 is amended as follows:

(a) Application. To be eligible to receive payment for any award under this Subchapter, a candidate must file annually with the corporation a complete formal application for payment, in the form prescribed by the corporation, no later than the deadline required by the U.S. Department of Education for the Free Application for Federal Student Aid (FAFSA), or a subsequent Federal form required for need based student aid. Responses to supplemental information requests, submission of supplemental forms whether electronic or otherwise, or requests to amend any information included on an application or for an adjustment to any award must be received by the corporation no later than 45 days from the date of the award notification, request for additional information or the application deadline, whichever is later. Applications received after the Federal deadline shall not be processed by the corporation. No initial award or award adjustment shall be made to candidates who fail to respond to a corporation request for information necessary to make a determination of award eligibility or award amount by the applicable deadline. The date of issuance of any document from the corporation and the receipt of any document returned to the corporation by the candidate shall be determinative. Such request shall be made upon forms prescribed by the corporation and

shall contain all information deemed necessary to make the amendment or adjustment. Any TAP Certifying Officer may submit corrections to the reported college of attendance for a term up to the corporation's annually announced close-out date for payment reconciliation. All information contained with the applications filed with the corporation shall be deemed confidential, except that the corporation shall be entitled to release information to participating institutions as necessary for the administration of financial aid programs and to the extent required pursuant to article 6 of the public officers law or otherwise required by law.

Subdivision (b) of section 2201.1 is repealed and a new subdivision (b) is adopted to read as follows:

(b) Residency. Applicants who are legal residents of the state. A legal resident of the state means an individual whose place of domicile is New York state and is either (i) a United States citizen, (ii) a permanent lawful resident, or (iii) an individual of a class of refugees paroled by the attorney general under his or her parole authority pertaining to the admission of aliens to the United States.

Subdivision (c) of section 2201.1 is repealed and subdivisions (d), (e), (f), (g), (h), and (i) are renumbered (c), (d), (e), (f), (g), and (h).

Paragraph (1) of subdivision (a) of section 2407.1 is repealed and paragraphs (2) through (8) are renumbered (1) through (7).

Paragraph (1) of subdivision (a) of section 2407.1 is amended as follows:

(1) meet the residency requirements pursuant to subdivision 5 of section 661 of the Education Law and further defined in subdivision [(c)] *(b)* of this section;

Paragraph (1) of subdivision (b) of section 2407.1 is amended as follows:

(1) Application. To be eligible to receive payment for an award under this Subchapter, a candidate must file annually with the corporation a complete formal application for payment, in the form prescribed by the corporation, no later than the deadline required by the U.S. Department of Education for the Free Application for Federal Student Aid (FAFSA), or a subsequent Federal form required for need based student aid. Responses to supplemental information requests, submission of supplemental forms whether electronic or otherwise, or requests to amend any information included on an application or for an adjustment to any award must be received by the corporation no later than 45 days from the date of the award notification, request for additional information or the application deadline, whichever is later. Applications received after the Federal deadline shall not be processed by the corporation. No initial award or award adjustment shall be made to candidates who fail to respond to a corporation request for information necessary to make a determination of award eligibility or award amount by the applicable deadline. The date of issuance of any document from the corporation and the receipt of any document returned to the corporation by the candidate shall be determinative. Such request shall be made upon forms prescribed by the corporation and shall contain all information deemed necessary to make the amendment or adjustment. Any TAP Certifying Officer may submit corrections to the reported educational institution of attendance for a term up to the corporation's annually announced close-out date for payment reconciliation. All information contained with the applications filed with the corporation shall be deemed confidential, except that the corporation shall be entitled to release information to participating institutions as necessary for the administration of financial aid programs and to the extent required pursuant to article 6 of the public officers law or otherwise required by law.

Paragraph (2) of subdivision (b) of section 2407.1 is repealed and a new paragraph (2) is adopted to read as follows:

(2) Residency. Applicants who are legal residents of the state. A legal resident of the state means an individual whose place of domicile is New York state and is either (i) a United States citizen, (ii) a permanent lawful resident, or (iii) an individual of a class of refugees paroled by the attorney general under his or her parole authority pertaining to the admission of aliens to the United States.

Paragraph (3) of subdivision (b) of section 2407.1 is repealed and paragraphs (4) through (8) are renumbered (3) through (7).

**This notice is intended** to serve only as a notice of emergency adoption. This agency intends to adopt the provisions of this emergency rule as a permanent rule, having previously submitted to the Department of State a notice of proposed rule making, I.D. No. ESC-25-19-00012-EP, Issue of June 19, 2019. The emergency rule will expire October 18, 2019.

**Text of rule and any required statements and analyses may be obtained from:** Cheryl B. Fisher, NYS Higher Education Services Corporation, 99 Washington Avenue, Room 1325, Albany, New York 12255, (518) 474-5592, email: regcomments@hesc.ny.gov

**Regulatory Impact Statement**

Statutory authority:

The New York State Higher Education Services Corporation's

("HESC") statutory authority to promulgate regulations is codified within Article 14 of the Education Law. In particular, Chapter 26 and Part D of Chapter 56 of the Laws of 2019, which expanded the eligibility requirements for student financial aid programs, specifically authorized HESC to promulgate regulations to implement its provisions.

Pursuant to Education Law § 652(2), HESC was established for the purpose of improving the post-secondary educational opportunities of eligible students through the centralized administration of New York State financial aid programs and coordinating the State's administrative effort in student financial aid programs with those of other levels of government.

In addition, Education Law § 653(9) empowers HESC's Board of Trustees to perform such other acts as may be necessary or appropriate to carry out the objectives and purposes of the corporation including the promulgation of rules and regulations.

HESC's President is authorized, under Education Law § 655(4), to propose rules and regulations, subject to approval by the Board of Trustees, governing, among other things, the application for and the granting and administration of student aid and loan programs, the repayment of loans or the guarantee of loans made by HESC; and administrative functions in support of state student aid programs. Also, consistent with Education Law § 655(9), HESC's President is authorized to receive assistance from any Division, Department or Agency of the State in order to properly carry out his or her powers, duties and functions. Finally, Education Law § 655(12) provides HESC's President with the authority to perform such other acts as may be necessary or appropriate to carry out effectively the general objects and purposes of HESC.

Legislative objectives:

The Education Law was amended to expand the eligibility requirements for student financial aid programs. The objective of the DREAM Act is to eliminate potential financial obstacles to obtaining State financial aid and extend the opportunities for undocumented students to attend higher education institutions in this State by providing a benefit consistent with U.S. citizens and nationals. The DREAM Act would also eliminate barriers for certain immigrant aliens to save for their family's higher education expenses by allowing such individuals to open a New York State 529 family tuition account under the New York State College Tuition Savings Program and/or be a designated beneficiary on an account if they have a taxpayer identification number.

Needs and benefits:

Currently, New York enables hundreds of thousands of undocumented and immigrant alien students to receive an education through the State's public school system recognizing the value of an investment in career and college readiness for these students. While these students have qualified for in-state tuition at public colleges in New York State since 2002, many of these talented students were unable to fulfill their potential because they could not afford the cost of higher education without access to NYS tuition assistance programs. Our society and economic growth depend on a vibrant, well-educated workforce. Providing access to financial aid enables these students to achieve a college education. Many studies have underscored the importance of a college degree in today's global economy. According to a report by the Center on Education and the Workforce (CEW) at Georgetown University, by 2020, 65 percent of all jobs will require some form of postsecondary education or training, compared to 59 percent of jobs in 2010. Studies also show that the average college graduate earns nearly 60 percent more than a high-school graduate. Therefore, these students would add significant taxable income to our economy over the course of their careers. New York has already invested in the education of these children at the secondary level, the DREAM Act enables the State to achieve a return on its investment through a skilled and diverse workforce.

Costs:

a. There are no application fees, processing fees, or other costs to the applicants of this Program.

b. The estimated cost to the agency for the implementation of, or continuing compliance with, this rule is:

$3M - NYS Office of Information Technology Services; and

$200,000 to $300,000 – third party vendor.

c. The maximum cost of the Program to the State is $27 million in the first year, based upon budget estimates.

d. It is anticipated that there will be no costs to Local Governments for the implementation of, or continuing compliance with, this rule.

e. The source of the cost data in (c) above is derived from the New York State Division of the Budget.

Local government mandates:

No program, service, duty or responsibility will be imposed by this rule upon any county, city, town, village, school district, fire district or other special district.

Paperwork:

This proposal will require applicants to file an electronic application for eligibility and may be required to submit supporting documentation.

Duplication:

No relevant rules or other relevant requirements duplicating, overlapping, or conflicting with this rule were identified.

Alternatives:

The proposed regulation conforms to the statutory provisions. Given the statutory language, a "no action" alternative was not an option.

Federal standards:

This proposal does not exceed any minimum standards of the Federal government.

Compliance schedule:

The agency will be able to comply with the regulation immediately upon its adoption.

*Regulatory Flexibility Analysis*

This statement is being submitted pursuant to subdivision (3) of section 202-b of the State Administrative Procedure Act and in support of the New York State Higher Education Services Corporation's ("HESC") Notice of Emergency Adoption seeking to amend sections 2201.1 and 2407.1 of Title 8 of the Official Compilation of Codes, Rules and Regulations of the State of New York.

It is apparent from the nature and purpose of this rule that it will not impose an adverse economic impact on small businesses or local governments. HESC finds that this rule will not impose any compliance requirement or adverse economic impact on small businesses or local governments. Rather, it has potential positive economic impacts inasmuch as it expands the eligibility requirements for student financial aid programs, several with post-graduation requirements to live and work in New York State for a specified number of years as a condition of receiving the award, to undocumented and other individuals who attend a New York State institution of higher education. Providing these individuals with access to grants and scholarships that support their higher education costs, which were previously unavailable to them, will encourage them to attend college in New York State and possibly seek employment opportunities in the State as well, which will provide an economic benefit to the State's small businesses and local governments as well.

*Rural Area Flexibility Analysis*

This statement is being submitted pursuant to subdivision (4) of section 202-bb of the State Administrative Procedure Act and in support of the New York State Higher Education Services Corporation's Notice of Emergency Adoption seeking to amend sections 2201.1 and 2407.1 of Title 8 of the Official Compilation of Codes, Rules and Regulations of the State of New York.

It is apparent from the nature and purpose of this rule that it will not impose an adverse impact on rural areas. Rather, it has potential positive economic impacts inasmuch as it expands the eligibility requirements for student financial aid programs, several with post-graduation requirements to live and work in New York State for a specified number of years as a condition of receiving the award, to undocumented and other individuals who attend a New York State institution of higher education. Providing these individuals with access to grants and scholarships that support their higher education costs, which were previously unavailable to them, will encourage them to attend college in New York State and possibly seek employment opportunities in the State as well, which benefits rural areas around the State as well.

This agency finds that this rule will not impose any reporting, record keeping or other compliance requirements on public or private entities in rural areas.

*Job Impact Statement*

This statement is being submitted pursuant to subdivision (2) of section 201-a of the State Administrative Procedure Act and in support of the New York State Higher Education Services Corporation's Notice of Emergency Adoption seeking to amend sections 2201.1 and 2407.1 of Title 8 of the Official Compilation of Codes, Rules and Regulations of the State of New York.

It is apparent from the nature and purpose of this rule that it will not have any negative impact on jobs or employment opportunities. Rather, it has potential positive economic impacts inasmuch as it expands the eligibility requirements for student financial aid programs, several with post-graduation requirements to live and work in New York State for a specified number of years as a condition of receiving the award, to undocumented and other individuals who attend a New York State institution of higher education. Providing these individuals with access to grants and scholarships that support their higher education costs, which were previously unavailable to them, will encourage them to attend college in New York State and possibly seek employment opportunities in the State as well, benefiting the State.

## NOTICE OF ADOPTION

**Eligibility Criteria for Student Financial Aid Award Programs Under Article 14 of the Education Law**

**I.D. No.** ESC-25-19-00012-A
**Filing No.** 754
**Filing Date:** 2019-08-20
**Effective Date:** 2019-09-04

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* Amendment of sections 2201.1 and 2407.1 of Title 8 NYCRR.

*Statutory authority:* Education Law, sections 653 and 655; L. 2019, ch. 26; L. 2019, ch. 56, part D

*Subject:* Eligibility criteria for student financial aid award programs under article 14 of the Education Law.

*Purpose:* To implement the eligibility criteria for student financial aid award programs under article 14 of the Education Law.

*Text or summary was published* in the June 19, 2019 issue of the Register, I.D. No. ESC-25-19-00012-EP.

*Final rule as compared with last published rule:* No changes.

*Text of rule and any required statements and analyses may be obtained from:* Cheryl B. Fisher, NYS Higher Education Services Corporation, 99 Washington Avenue, Room 1325, Albany, New York 12255, (518) 474-5592, email: regcomments@hesc.ny.gov

*Initial Review of Rule*
As a rule that does not require a RFA, RAFA or JIS, this rule will be initially reviewed in the calendar year 2024, which is no later than the 5th year after the year in which this rule is being adopted.

*Assessment of Public Comment*
The agency received no public comment.

# Metropolitan Transportation Agency

## EMERGENCY RULE MAKING

**Debarment of Contractors**

**I.D. No.** MTA-23-19-00006-E
**Filing No.** 751
**Filing Date:** 2019-08-19
**Effective Date:** 2019-08-19

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* Addition of Part 1004 to Title 21 NYCRR.

*Statutory authority:* Public Authorities Law, sections 1279-h, 1265(5) and 1266(4)

*Finding of necessity for emergency rule:* Preservation of general welfare.

*Specific reasons underlying the finding of necessity:* The emergency rule is necessary to immediately implement the recent amendment to the Public Authorities Law, enacted as part of the 2020 Budget, which added a new Section 1279-h. That new statutory provision, effective immediately on enactment on April 12, 2019 and applicable to all contracts in effect on or entered into after that date, requires the Metropolitan Transportation Authority to establish "pursuant to regulation" a process for debarment of contractors under certain circumstances specified in the statute.

*Subject:* Debarment of contractors.

*Purpose:* To comply with Public Authorities Law, section 1279-h, which requires the MTA to establish a debarment process for contractors.

*Text of emergency rule:* A new Part 1004 is added to read as follows:

*Section 1004.1 Purpose*
(a) This Part establishes rules and regulations governing the debarment of contractors by the Metropolitan Transportation Authority and its subsidiaries and affiliates, as required by Section 1279-h of the Public Authorities Law, which was enacted on and made effective immediately as

of April 12, 2019. Once adopted, it shall apply to all contracts that were in effect on, or entered into after, April 12, 2019.

(b) Nothing in this Part shall preclude or otherwise limit the Authority, as defined below, from assessing the responsibility of any bidder, contractor, subcontractor, or supplier pursuant to its All-Agency Responsibility Guidelines or from prohibiting any bidder, contractor, subcontractor, or supplier found to be not responsible from responding to new and future contract solicitations or from being awarded new and future contracts or subcontracts.

*Section 1004.2 Definitions*
As used in this Part, the following terms shall have the following meanings unless otherwise specified:

(a) Authority means the Metropolitan Transportation Authority, the Long Island Rail Road Company, the Metro-North Commuter Railroad Company, the Staten Island Rapid Transit Operating Authority, MTA Bus Company, MTA Capital Construction Company, the New York City Transit Authority, the Manhattan and Bronx Surface Transit Operating Authority, or the Triborough Bridge and Tunnel Authority, or any combination thereof, as the case may be.

(b) Contract means an enforceable agreement including a task order entered into by a contractor and the Authority for goods or services, including without limitation construction services.

(c) Contractor means any person, partnership, firm, corporation, or association, including any consultant, supplier or vendor, with whom the Authority has entered into a construction, consultant, equipment, supply, or services contract, but shall not include the federal government, a state agency, any public authority or public benefit corporation, or any unit of local government.

(d) Debar or debarment means the prohibition of a contractor from responding to any contract solicitation of or entering into any contract with the Authority for five years from a final debarment determination as provided in section 1004.6 of this Part.

(e) Contract Modification means amendments, change orders, additional work orders, or modifications with respect to a contract that are executed in accordance with the terms and conditions of such contract.

(f) Substantially Complete, unless otherwise defined in the contract at issue, means the contractor's completion of the work as necessary for the Authority's beneficial use of the applicable project or improvements or the Authority's acceptance of those goods or services required to be delivered by a deadline.

(g) Total adjusted time frame means (1) with respect to all work under a contract, the period of time that a contract provides for a contractor to substantially complete the work, as may have been extended or reduced by one or more contract modifications, and (2) with respect to contracts for goods or services, as to any portion of the goods or services that must be delivered by a deadline, the period of time that the contract provides for such delivery, as may have been extended or reduced by one or more contract modifications.

(h) Total adjusted contract value means the original awarded amount of the contract plus or minus the aggregate net amount of all contract modifications.

*Section 1004.3 Grounds for Debarment*
(a) The Authority, including all contracting personnel therein, must debar a contractor if it makes a final determination that the contractor has:

(1)(i) failed to substantially complete all the work within the total adjusted time frame by more than ten percent of the total adjusted time frame, or (ii) failed to progress the work in a manner so that it will be substantially complete within ten percent of the total adjusted time frame and has refused or in the opinion of the Authority is unable to accelerate the work so that it will be substantially complete within ten percent of the total adjusted time frame, and such refusal or failure is an event of default under the contract; or (iii) with respect to contracts for goods or services, as to any portion of the goods or services that must be delivered by a deadline, materially failed to deliver such goods or services by more than ten percent of the total adjusted time frame.

(2) asserted a claim or claims for payment of additional amounts beyond the total adjusted contract value and one or more of such claims are determined to be invalid under the contract's dispute resolution process or if no such process is specified in the contract in a final determination made by the chief engineer or otherwise by the Authority, and together the sum of any such invalid claims exceeds by ten percent or more the total adjusted contract value.

(3) The Authority, including all contracting personnel therein, must commence a debarment procedure where there is any evidence that any specific provision referenced in provision (a)(1) and (a)(2) have been violated, and the Authority and its contracting personnel have no discretion to excuse or justify violations of any provision referenced in provision (a)(1) and (a)(2).

*Section 1004.4 Notice of Intent to Debar and Written Response*

*(a) Upon the occurrence of one or both of the circumstances set forth in section 1004.3 of this Part, the Authority shall provide a written notice of intent to debar to the contractor, advising the contractor that it will hold a hearing to make a final determination as to whether a ground for debarment exists. At a minimum, the notice of intent to debar shall:*

*(1) state the facts upon which the Authority made its preliminary finding that one or both statutory grounds for debarment exists, including the basis for determining as provided in section 1004.4 of this Part that the contractor failed to timely Substantially Complete or the Authority's calculation of costs arising from claims determined to be invalid, and*

*(2) provide the contractor 30 calendar days after the date of the notice of intent to debar to respond.*

*(b) A contractor's written response must address each of the factual statements made by the Authority in its notice of intent to debar and state in detail any defenses including but not limited to force majeure.*

*(c) After submission by the contractor of a written response within the time permitted, or after the failure by the contractor to submit a written response within such time, a debarment hearing will be held, as provided in section 1004.5 of this Part.*

*(d) Subject to section 1004.1(b) of this Part, a contractor who has received a notice of intent to debar may respond to other contract solicitations issued by the Authority pending the hearing and a final debarment determination, if any; provided, however, that if the Authority awards such contractor a new contract or contracts after having provided the contractor a notice of intent to debar, and such contractor is later debarred by the Authority pursuant to such notice, the Authority must view such debarment as cause for termination under such new contract or contracts and thereupon terminate any such new contracts for cause.*

*Section 1004.5 Debarment Hearing*

*(a) A debarment hearing shall be conducted within:*

*(1) 21 calendar days from the Authority's receipt of a contractor's written response to a notice of intent to debar or within such further reasonable time that the authority shall proscribe; or*

*(2) 14 calendar days after the date the contractor's response was due, if no response is received from the contractor within the deadline.*

*(b) A recording or transcript of the debarment hearing shall be made.*

*(c) The debarment hearing shall be conducted by a panel of at least three managerial level employees of the MTA designated by majority vote of the Authority's board; provided that no employee who has taken part in the award of any Authority contract to such contractor or overseen such contractor's performance on any Authority contract may serve on a panel considering the debarment of such contractor.*

*(d) A contractor shall have the right to appear by and be represented by counsel at the debarment hearing and any hearings in connection with other proceedings conducted pursuant to this Part.*

*(e) A contractor at the debarment hearing may assert any and all defenses to debarment including without limitation force majeure.*

*(f) If a contractor fails to appear at a debarment hearing, the panel may proceed with the hearing on the basis of the record before it and reach a final determination without providing for any further appearance or submission by the contractor.*

*Section 1004.6 Final Debarment Determination*

*(a) After the hearing is completed, the panel shall determine if one or both of the grounds for debarment as set forth in section 1004.3 of this Part exists.*

*(b) The panel's determination shall be set forth in writing. If the final debarment determination is that one or both of the grounds for debarment exist, the contractor shall be debarred for five years from the date of the final debarment determination. The panel may, in its discretion, also debar any of (1) the contractor's parent(s), subsidiaries and affiliates; (2) any joint venture (including its individual members) and any other form of partnership (including its individual members) that includes a contractor or a contractor's parent(s), subsidiaries, or affiliates of a contractor, (3) a contractor's directors, officers, principals, managerial employees, and any person or entity with a ten percent or more interest in a contractor; (4) any legal entity controlled, or ten percent or more of which is owned or controlled, by a contractor, or by any director, officer, principal, managerial employee of contractor, or by any person or entity with a 10 percent or greater interest in contractor, including without limitation any new entity created after the date of the notice of intent to debar.*

*(c) The panel's determination shall be timely submitted to the board of the Authority for ratification. The board of the Authority shall review such determination and either: (i) ratify the determination or, (ii) remit the determination to the panel for further consideration of facts or circumstances identified in the remission. The facts or circumstances identified in the remission shall be reviewed by the panel who shall then, after reconsideration, make a determination. Such determination shall then be resubmitted to the Authority board for ratification or nullification. Upon initial Authority board ratification of a panel determination, or Authority board ratification or nullification of a panel determination made after reconsideration, such determination shall be deemed final.*

*(d) Timely and complete compliance with each and all of the requirements of this Part shall be a precondition to any legal challenge that the contractor may be permitted to bring arising out of its debarment pursuant to Section 1279-h of the Public Authorities Law.*

*(e) Pursuant to Executive Order 192, the Authority shall notify the New York State Office of General Services of any final debarment determination within five days of the date thereof.*

**This notice is intended** to serve only as a notice of emergency adoption. This agency intends to adopt the provisions of this emergency rule as a permanent rule, having previously submitted to the Department of State a notice of proposed rule making, I.D. No. MTA-23-19-00006-EP, Issue of June 5, 2019. The emergency rule will expire October 17, 2019.

**Text of rule and any required statements and analyses may be obtained from:** Peter Sistrom, Metropolitan Transportation Authority, 2 Broadway, 9th Floor, New York, New York 10004, (212) 878-7176, email: psistrom@mtahq.org

**Regulatory Impact Statement**

Statutory Authority:

Section 1266(4) of the Public Authorities Law provides that the Metropolitan Transportation Authority (MTA) may establish rules and regulations as it may deem necessary, convenient, or desirable for the use and operation of any transportation facility and related services operated by the MTA. Newly enacted Section 1279-h of the Public Authorities Law, enacted on April 12, 2019 and effective immediately, directs the MTA to establish pursuant to regulation a debarment process for its contractors.

Legislative Objectives:

The Legislature enacted the new Section 1279-h of the Public Authorities Law as part of the 2020 Budget. It requires the MTA to establish a process that will debar for five years any contractor who either fails to substantially complete the work within the time frame set by the contract, or in any subsequent change order, by more than ten percent of the contract term, or whose disputed work exceeds ten percent or more of the total contract cost where claimed costs are deemed to be invalid pursuant to the contractual dispute resolution process. And the statute requires that the debarment process ensures that contractors have notice and an opportunity to be heard including the opportunity to present as a defense acts such as force majeure. The proposed rule accords with this legislative objective by establishing a process for debarment of contractors.

Needs and Benefits:

The proposed rule is necessary to implement the newly enacted Section 1279-h of the Public Authorities, which expressly requires the MTA to establish a debarment process and specifies the circumstances under which MTA must debar a contractor. Contractors who are significantly late in performing their contractual work or in meeting contractual delivery dates or who assert substantial and unjustified claims for payment should not be allowed to compete to be awarded new contracts.

Costs:

(a) Regulated parties. This proposal does not impose new costs on contractors. It provides for process for determining whether factual circumstances exist, which the Legislature has determined require debarment. The proposed rule establishes a process to ensure that contractors are provided notice and an opportunity to be heard.

(b) Local government. The proposed rule will impose no costs on local governments.

(c) MTA. The MTA will use existing resources including its existing procurement and legal staff to undertake debarments of contractors.

Paperwork:

The proposed rule will require the MTA to develop a notice to inform contractors that they might be debarred.

Local Government Mandates:

The proposed rule does not impose any new programs, services, duties, or responsibilities on local government.

Duplication:

The proposed rule does not duplicate, overlap, or conflict with any State or Federal rule.

Alternatives:

The Legislature has expressly directed the MTA to establish by regulation a debarment process for its contractors, so MTA has not considered not doing so.

Federal Standards:

The proposed rule does not exceed any Federal minimum standards.

Compliance Schedule:

There is no compliance schedule imposed by this proposed rule. Once adopted, it will be effective immediately and will apply to contracts in effect on, or entered into after, the effective date of Section 1279-h of the Public Authorities Law, which was April 12, 2019.

**Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement**

A regulatory flexibility analysis for small business and local governments, a rural area flexibility analysis, and a job impact statement are not

required for this rule making proposal because it will not adversely affect small businesses, local governments, rural areas, or jobs.

This proposed rule making will allow the Metropolitan Transportation Authority to debar a contractor under specified statutorily proscribed circumstances after giving such contractor notice and opportunity to be heard. Due to its narrow focus, this proposed rule will not impose an adverse economic impact or reporting, record keeping, or other compliance requirements on small businesses or local governments in rural or urban areas or on jobs and employment opportunities.

# Public Service Commission

## NOTICE OF ADOPTION

**Gas Metering Equipment**

**I.D. No.** PSC-31-18-00011-A
**Filing Date:** 2019-08-15
**Effective Date:** 2019-08-15

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 8/8/19, the PSC adopted an order approving Orange and Rockland Utilities, Inc. (O&R) and Consolidated Edison Company of New York, Inc.'s (Con Edison) joint petition to use the Itron IMU 500T for gas metering applications in New York State.

*Statutory authority:* Public Service Law, section 67(1)

*Subject:* Gas metering equipment.

*Purpose:* To approve O&R and Con Edison's joint petition to use the Itron IMU 500T for gas metering applications in New York State.

*Substance of final rule:* The Commission, on August 8, 2019, adopted an order approving Orange and Rockland Utilities, Inc. and Consolidated Edison Company of New York, Inc.'s joint petition to use the Itron Commercial Gas Interface Management Unit 500T device (IMU 500T) for Advanced Metering Infrastructure commercial gas metering applications in New York State, subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*

An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(18-G-0339SA1)

## NOTICE OF ADOPTION

**Tariff Amendments**

**I.D. No.** PSC-52-18-00012-A
**Filing Date:** 2019-08-14
**Effective Date:** 2019-08-14

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 8/8/19, the PSC adopted an order approving Valley Energy, Inc.'s (Valley Energy) tariff amendments to increase its annual revenues by $186,972, contained in P.S.C. No. 1 — Gas.

*Statutory authority:* Public Service Law, sections 65 and 66

*Subject:* Tariff amendments.

*Purpose:* To approve Valley Energy's tariff amendments to increase its annual revenues.

*Substance of final rule:* The Commission, on August 8, 2019, adopted an order approving Valley Energy, Inc. (Valley Energy) to revise its tariff, effective September 1, 2019, contained in P.S.C. No. 1 – Gas, to increase its annual revenues by $186,972, which is an increase of approximately 11.4% of total revenues, or 20.8% of base delivery revenues. Valley

Energy is directed to file a cancellation supplement, effective on not less than one day's notice, on or before August 28, 2019, cancelling the tariff amendments listed in Appendix I. Valley Energy is also directed to file by August 28, 2019, to become effective September 1, 2019, further tariff revisions establishing the approved gas rates as shown in Appendix III and any other tariff changes, subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*

An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(18-G-0730SA1)

## NOTICE OF ADOPTION

**Submetering of Electricity**

**I.D. No.** PSC-13-19-00020-A
**Filing Date:** 2019-08-15
**Effective Date:** 2019-08-15

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 8/8/19, the PSC adopted an order approving Liberty for Columbus LLC's (Liberty) petition to submeter electricity at 671 Liberty Avenue, Brooklyn, New York.

*Statutory authority:* Public Service Law, sections 2, 4(1), 30, 32-48, 52, 53, 65(1), 66(1), (2), (3), (4), (12) and (14)

*Subject:* Submetering of electricity.

*Purpose:* To approve Liberty's petition to submeter electricity.

*Substance of final rule:* The Commission, on August 8, 2019, adopted an order approving Liberty for Columbus LLC's petition to submeter electricity at 671 Liberty Avenue, Brooklyn, New York, located in the service territory of Consolidated Edison Company of New York, Inc., subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*

An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-E-0132SA1)

## NOTICE OF ADOPTION

**Submetering of Electricity and Waiver Request**

**I.D. No.** PSC-20-19-00013-A
**Filing Date:** 2019-08-15
**Effective Date:** 2019-08-15

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 8/8/19, the PSC adopted an order approving 260 Kent LLC's (260 Kent) notice of intent to submeter electricity at 260 Kent Avenue, Brooklyn, New York and request for waiver of 16 NYCRR section 96.5(k)(3).

*Statutory authority:* Public Service Law, sections 2, 4(1), 30, 32-48, 52, 53, 65(1), 66(1), (2), (3), (4), (12) and (14)

*Subject:* Submetering of electricity and waiver request.

*Purpose:* To approve 260 Kent's notice of intent to submeter electricity and request for waiver of 16 NYCRR section 96.5(k)(3).

*Substance of final rule:* The Commission, on August 8, 2019, adopted an order approving 260 Kent LLC's notice of intent to submeter electricity at

260 Kent Avenue, Brooklyn, New York, located in the service territory of Consolidated Edison Company of New York, Inc. and request for waiver of 16 NYCRR § 96.5(k)(3), subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*

An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-E-0273SA1)

### NOTICE OF ADOPTION

**Tariff Amendment**

**I.D. No.** PSC-21-19-00017-A
**Filing Date:** 2019-08-14
**Effective Date:** 2019-08-14

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 8/8/19, the PSC adopted an order approving Corning Natural Gas Corporation's (Corning) tariff amendment to P.S.C. No. 7 — Gas, to become effective on September 1, 2019.

*Statutory authority:* Public Service Law, sections 39(4), 65 and 66

*Subject:* Tariff amendment.

*Purpose:* To approve Corning's tariff amendment to P.S.C. No. 7 — Gas.

*Substance of final rule:* The Commission, on August 8, 2019, adopted an order approving Corning Natural Gas Corporation's tariff amendment to P.S.C. No. 7 – Gas, to conform its gas tariff to the requirements reflected in the amended Public Service Law § 39(4), which provides that a residential customer who is discontinuing service be notified of their right to obtain, upon request, an actual meter reading within forty-eight hours of such request, to become effective on September 1, 2019, subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*

An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(18-M-0679SA19)

### NOTICE OF ADOPTION

**Submetering of Electricity**

**I.D. No.** PSC-22-19-00012-A
**Filing Date:** 2019-08-15
**Effective Date:** 2019-08-15

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 8/8/19, the PSC adopted an order approving VBG 990 AOA LLC's (VBG 990) notice of intent to submeter electricity at 70 West 37th Street, New York, New York.

*Statutory authority:* Public Service Law, sections 2, 4(1), 30, 32-48, 52, 53, 65(1), 66(1), (2), (3), (4), (12) and (14)

*Subject:* Submetering of electricity.

*Purpose:* To approve VBG 990's notice of intent to submeter electricity.

*Substance of final rule:* The Commission, on August 8, 2019, adopted an order approving VBG 990 AOA LLC's notice of intent to submeter electricity at 70 West 37th Street, New York, New York, located in the service territory of Consolidated Edison Company of New York, Inc., subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*

An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-E-0300SA1)

### PROPOSED RULE MAKING
### NO HEARING(S) SCHEDULED

**Transfer of Street Lighting Facilities**

**I.D. No.** PSC-36-19-00008-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* The Public Service Commission is considering a petition filed by Niagara Mohawk Power Corporation d/b/a National Grid seeking authorization to transfer its street lighting facilities located in the City of Utica to the City of Utica.

*Statutory authority:* Public Service Law, sections 5, 65, 66 and 70(1)

*Subject:* Transfer of street lighting facilities.

*Purpose:* To determine whether to authorize the transfer of street lighting facilities and the proper accounting for the transaction.

*Substance of proposed rule:* The Public Service Commission (Commission) is considering a petition filed on August 5, 2019 by Niagara Mohawk Power Corporation d/b/a National Grid (National Grid), requesting approval to transfer certain street lighting facilities located in the City of Utica, New York (City) to the City.

Based on plant records, National Grid states that the original book cost of the facilities is approximately \$6,490,534 and the net book value, as of May 31, 2019, is \$4,002,164. National Grid proposes to transfer the street lighting facilities to the City for approximately \$4,127,849, which includes the net book value of the assets as well as the transition and transaction costs. National Grid explains that the agreement between it and the City provides that the purchase price will be adjusted (up or down) to reflect the actual net book value at the date of closing.

The full text of the petition and the full record of the proceeding may be viewed online at the Department of Public Service web page: www.dps.ny.gov. The Commission may adopt, reject, or modify, in whole or in part, the action proposed and may resolve related matters.

*Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.ny.gov/f96dir.htm. For questions, contact:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov

*Data, views or arguments may be submitted to:* Kathleen H. Burgess, Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6530, email: secretary@dps.ny.gov

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement*

Statements and analyses are not submitted with this notice because the proposed rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-E-0533SP1)

### PROPOSED RULE MAKING
### NO HEARING(S) SCHEDULED

**Minor Rate Filing to Increase Annual Electric Revenues**

**I.D. No.** PSC-36-19-00009-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* The Commission is considering proposed tariff amendments filed by the Village of Freeport, to P.S.C. No. 9, to increase its annual electric revenues by approximately \$1,259,574, or 4.65%.

*Statutory authority:* Public Service Law, sections 65 and 66

*Subject:* Minor rate filing to increase annual electric revenues.

*Purpose:* To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences.

*Substance of proposed rule:* The Commission is considering a proposal, filed by the Village of Freeport (Freeport) on August 7, 2019, to amend its electric tariff schedule, P.S.C. No. 9, to increase its annual electric revenues by approximately $1,259,574 or 4.65%.

Freeport's last rate increase became effective on August 1, 2014. Freeport states the need for the increase is driven by increased expenses related to general inflation, labor costs, medical and dental, fringe benefits, depreciation, and interconnection maintenance from the Long Island Power Authority. The proposed amendments have an effective date of January 1, 2020.

The full text of the proposal and the full record of the proceeding may be reviewed online at the Department of Public Service web page: www.dps.ny.gov. The Commission may adopt, reject, or modify, in whole or in part, the action proposed and may resolve related matters.

*Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.ny.gov/f96dir.htm. For questions, contact:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov

*Data, views or arguments may be submitted to:* Kathleen H. Burgess, Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6530, email: secretary@dps.ny.gov

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement*

Statements and analyses are not submitted with this notice because the proposed rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-E-0538SP1)

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Notice of Intent to Submeter Electricity and Waiver of Energy Audit**

**I.D. No.**  PSC-36-19-00010-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* The Commission is considering the notice of intent of Site 2 DSA Residential LLC and Site 2 DSA Affordable MT LLC to submeter electricity at 125 Delancey Street, New York, New York and request for a waiver of 16 NYCRR section 96.5(k)(3).

*Statutory authority:* Public Service Law, sections 2, 4(1), 30, 32-48, 52, 53, 65(1), 66(1), (2), (3), (4), (12) and (14)

*Subject:* Notice of intent to submeter electricity and waiver of energy audit.

*Purpose:* To ensure adequate submetering equipment, consumer protections and energy efficiency protections are in place.

*Substance of proposed rule:* The Commission is considering the notice of intent, filed by Site 2 DSA Residential and Site 2 DSA Affordable MT LLC on July 31, 2019, to submeter electricity at 125 Delancey Street, New York, New York, located in the service territory of Consolidated Edison Company of New York, Inc. (Con Edison).

By stating its intent to submeter electricity, Site 2 DSA Residential LLC and Site 2 DSA Affordable MT LLC request authorization to take electric service from Con Edison and then distribute and meter that electricity to its tenants. Submetering of electricity to residential tenants is allowed so long as it complies with the protections and requirements of the Commission's regulations in 16 NYCRR Part 96.

The Commission is also considering the Owner's request for waiver of 16 NYCRR § 96.5(k)(3), which requires proof that an energy audit has been conducted when 20 percent or more of the residents receive income-based housing assistance. The owner states that because the building is new construction, it must comply with the current New York State Energy Conservation Construction Code, which provides strict energy conservation requirements for new and renovated buildings, including the design and construction of energy-efficient building envelopes, and mechanical, lighting, and power systems. The owner therefore contends that an energy audit is not necessary in this case.

The full text of the notice of intent and waiver request and the full record of the proceeding may be reviewed online at the Department of Public Service web page: www.dps.ny.gov. The Commission may adopt, reject or modify, in whole or in part, the action proposed and may resolve related matters.

*Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.ny.gov/f96dir.htm. For questions, contact:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov

*Data, views or arguments may be submitted to:* Kathleen H. Burgess, Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6530, email: secretary@dps.ny.gov

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement*

Statements and analyses are not submitted with this notice because the proposed rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-E-0519SP1)

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Minor Electric Rate Filing to Increase Annual Electric Revenues**

**I.D. No.**  PSC-36-19-00011-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* The Commission is considering proposed tariff amendments filed by Fishers Island Electric Corporation (FIEC) to increase annual revenues by about $300,000 or 16.43%.

*Statutory authority:* Public Service Law, sections 65 and 66

*Subject:* Minor electric rate filing to increase annual electric revenues.

*Purpose:* To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences.

*Substance of proposed rule:* The Commission is considering a proposal, filed by Fishers Island Electric Corporation (FIEC) on August 1, 2019, to amend its electric tariff, P.S.C. No. 2 – Electricity, to increase its annual electric revenues by approximately $300,000 or 16.43%.

FIEC states the need for the increase is driven by increases in operating expenses and necessary capital improvements since rates were last set in 2008. The proposed amendments have an effective date of December 1, 2019.

The full text of the proposal and the full record of the proceeding may be reviewed online at the Department of Public Service web page: www.dps.ny.gov. The Commission may adopt, reject or modify in whole or in part, the action proposed and may also resolve related matters.

*Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.ny.gov/f96dir.htm. For questions, contact:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov

*Data, views or arguments may be submitted to:* Kathleen H. Burgess, Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6530, email: secretary@dps.ny.gov

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement*

Statements and analyses are not submitted with this notice because the proposed rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-E-0525SP1)

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Transfer of Street Lighting Facilities**

**I.D. No.**  PSC-36-19-00012-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* The Public Service Commission is considering a petition filed by Niagara Mohawk Power Corporation d/b/a National Grid for authority to transfer its street lighting facilities located in the Village of Medina to the Village of Medina.

*Statutory authority:* Public Service Law, sections 5, 65, 66 and 70(1)

*Subject:* Transfer of street lighting facilities.

*Purpose:* To determine whether to authorize the transfer street of lighting facilities and the proper accounting for the transaction.

*Substance of proposed rule:* The Public Service Commission (Commission) is considering a petition filed on August 5, 2019 by Niagara Mohawk Power Corporation d/b/a National Grid (National Grid), requesting approval to transfer certain street lighting facilities located in the Village of Medina, New York (Village) to the Village.

Based on plant records, National Grid states that the original book cost of the facilities is approximately $184,590, and the net book value is $51,119, as of March 31, 2019. National Grid proposes to transfer the street lighting facilities to the Village for approximately $69,784, which includes the net book value of the assets as well as transition and transaction costs. National Grid explains that the agreement between it and the Village provides that the purchase price will be adjusted (up or down) to reflect the actual net book value at the date of the closing.

The full text of the petition and the full record of the proceeding may be viewed online at the Department of Public Service web page: www.dps.ny.gov. The Commission may adopt, reject, or modify, in whole or in part, the action proposed and may resolve related matters.

*Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.ny.gov/f96dir.htm. For questions, contact:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov

*Data, views or arguments may be submitted to:* Kathleen H. Burgess, Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6530, email: secretary@dps.ny.gov

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement*

Statements and analyses are not submitted with this notice because the proposed rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-E-0534SP1)

# State University of New York

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**College Fees**

**I.D. No.** SUN-36-19-00013-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Amendment of section 302.3 of Title 8 NYCRR.

*Statutory authority:* Education Law, section 355(2)(d) and (h)

*Subject:* College Fees.

*Purpose:* To increase the college fee charged at State-operated campuses, excluding the four University Centers.

*Text of proposed rule:* Section 302.3 College fees.

Effective with respect to the [2016-17] *2019/20* academic year and thereafter, there shall be collected a college fee in the amount of [$12.50] *$25.00* a semester or [$8.50] *$17.00* a quarter from all full-time students and [85 cents] *$1.70* a semester credit hour and [55 cents] *$1.10* a quarter credit hour from all special students at all State-operated institutions of the University except for those full-time or special students attending the University at Albany, Binghamton University, Stony Brook University, or the University at Buffalo, where the amount collected for the college fee shall be $62.50 a semester or $42.50 a quarter from full-time students and $4.25 a semester credit hour and $2.75 a quarter credit hour from special students. *With the exception of the fixed fees to be charged at the University at Albany, Binghamton University, Stony Brook University and the University at Buffalo, college fees shall be set by each institution at this maximum amount.*

*Text of proposed rule and any required statements and analyses may be obtained from:* Lisa S. Campo, State University of New York, State University Plaza, Albany, NY 12246, (518) 320-1400, email: Lisa.Campo@SUNY.edu

*Data, views or arguments may be submitted to:* Same as above.

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement*

1. Statutory Authority: Education Law, Sections 355(2)(b) and 355(2)(h). Section 355(2)(b) authorizes the State University Trustees to make and amend rules and regulations for the overall governance of the State University and institutions therein. Section 355(2)(h) authorizes the State University Trustees to regulate the admission of students, tuition charges, other fees and charges, curricula, and all other matters pertaining to the operation and administration of each State-operated institution of the State University.

2. Legislative Objectives: The present measure provides the State-operated campuses (excluding the four University Centers (University at Albany, Binghamton University, Stony Brook University, and the University at Buffalo)) with authority to increase the College Fee. The four University Centers are required to charge a different amount for the College Fee, which will not change under the present measure.

3. Needs and Benefits: The present measure increases the College Fee for all full-time or special students attending all State-operated institutions of the University except for those full-time or special students attending the University at Albany, Binghamton University, Stony Brook University, or the University at Buffalo.

4. Costs: Students: College Fees for full-time or special students enrolled in SUNY's State-operated institutions (except for the four University Centers specified in Paragraph #2 above) have been increased from $12.50 to $25 per year.

5. Local Government Mandates: There are no local government mandates. The amendment does not affect students enrolled in the community colleges operating under the program of the State University of New York.

6. Paperwork: No parties will experience any new reporting responsibilities. SUNY publications and documents containing notices regarding costs of attendance will need to be revised to reflect these changes.

7. Duplication: None.

8. Alternatives: Other modification levels were considered, however, there is no acceptable alternative to the proposed changes when considering competitiveness, programmatic needs, and anticipated costs.

9. Federal Standards: None.

10. Compliance Schedule: The increase in fees was approved by the System Administration.

*Regulatory Flexibility Analysis*

No regulatory flexibility analysis is submitted with this notice because the proposed rule does not impose any requirements on small businesses and local governments. This proposed rule making will not impose any adverse economic impact on small businesses and local governments or impose any reporting, recordkeeping or other compliance requirements on small businesses and local governments.

*Rural Area Flexibility Analysis*

No rural area flexibility analysis is submitted with this notice because the proposed rule does not impose any requirements on rural areas. The rule will not impose any adverse economic impact on rural areas or impose any reporting, recordkeeping, professional services or other compliance requirements on rural areas.

*Job Impact Statement*

No job impact statement is submitted with this notice because the proposed rule does not impose any adverse economic impact on existing jobs, employment opportunities, or self-employment. This regulation governs college fees for State University of New York and will not have any adverse impact on the number of jobs or employment.

# Office of Victim Services

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Limits on Administrative Expenses and Executive Compensation**

**I.D. No.** OVS-36-19-00007-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Repeal of section 525.24(d)(2); and addition of new section 525.24(d)(2) to Title 9 NYCRR.

*Statutory authority:* Executive Law, section 623(3); Executive Order No. 38.

*Subject:* Limits on administrative expenses and executive compensation.

*Purpose:* To codify the determination made in the Matter of Leading Age NY, Inc v. Shah (2018), striking a portion of the rule.

*Text of proposed rule:* Paragraph 2 of subdivision d of section 525.24 of Title 9 of the New York Codes Rules and Regulations is REPEALED and replaced to read as follows:

    *(2) INTENTIONALLY OMMITTED.*

*Text of proposed rule and any required statements and analyses may be obtained from:* John Watson, Counsel, Office of Victim Services, 80 South Swan Street, 2nd Floor, Albany, NY 12210, (518) 457-8066, email: john.watson@ovs.ny.gov

*Data, views or arguments may be submitted to:* Same as above.

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement*

1. Statutory authority: Subdivision 3 of section 623 of the Executive Law provides that the Office of Victim Services (OVS or Office) shall have the power and duty to adopt, promulgate, amend and rescind suitable rules and regulations to carry out the provisions and purposes of Article 22 of the Executive Law. The additional authority for enacting this rule is Executive Order No. 38, enacted January 18, 2012. The authority under which this amendment is proposed is the NYS Court of Appeals' 2018 determination in the Matter of Leading Age NY, Inc v. Shah.

2. Legislative objectives: Pursuant to Executive Order No. 38, enacted January 18, 2012, OVS recognized its fiduciary duties related to any State funds or State-authorized payments made by the Office via competitive grants for the provision of services to victims of crimes and others impacted by such victimization. The original rule established the minimum expectations and requirements pursuant to Executive Order #38. This amendment shall codify the determination made in the Matter of Leading Age NY, Inc v. Shah, striking a portion of that rule.

3. Needs and benefits: OVS amends this rule pursuant to the determination made in the Matter of Leading Age NY, Inc v. Shah.

4. Costs:

a. Costs to regulated parties. None.

b. Costs to local governments. These proposed regulations do not apply to local governments and would not impose any additional costs on local governments.

c. Costs to private regulated parties. The proposed regulations would impose minimal any additional costs on private regulated parties.

5. Local government mandates: These proposed regulations do not impose any program, service duty or responsibility upon any local government.

6. Paperwork: The proposed regulatory amendment will reduce the additional information to be reported to OVS by providers receiving State funds or State-authorized payments.

7. Duplication: This proposed rule codifies the NYS Court of Appeals' 2018 determination in the Matter of Leading Age NY, Inc v. Shah; it does not duplicate, overlap, or conflict with any State or federal statute or rule.

8. Alternatives: The NYS Court of Appeals' 2018 determination in the Matter of Leading Age NY, Inc v. Shah strikes a portion of the current rule and this proposed amendment codifies that.

9. Federal standards: This amendment does not conflict with federal standards.

10. Compliance schedule: The rule will become effective upon the Notice of Adoption being published in the State Register.

*Regulatory Flexibility Analysis*

The Office of Victim Services projects there will be no adverse economic impact or reporting, recordkeeping or other compliance requirements on small businesses or local governments in the State of New York as a result of this proposed rule change. This proposed rule change is simply designed to address the NYS Court of Appeals' 2018 determination in the Matter of Leading Age NY, Inc v. Shah as it relates to OVS' current rules for executive compensation of those providers of program services that receive State funds or State-authorized payments paid by the Office. Since nothing in this proposed rule change will create any adverse impacts on any small businesses or local governments in the state, no further steps were needed to ascertain these facts and none were taken. As apparent from the nature and purpose of this proposed rule change, a full Regulatory Flexibility Analysis is not required and therefore one has not been prepared.

*Rural Area Flexibility Analysis*

The Office of Victim Services projects there will be no adverse impact on rural areas or reporting, recordkeeping or other compliance requirements on public or private entities in rural areas in the State of New York as a result of this proposed rule change. This proposed rule change is simply designed to address the NYS Court of Appeals' 2018 determination in the Matter of Leading Age NY, Inc v. Shah as it relates to OVS' current rules for executive compensation of those providers of program services that receive State funds or State-authorized payments paid by the Office. Since nothing in this proposed rule change will create any adverse impacts on any public or private entities in rural areas in the state, no further steps were needed to ascertain these facts and none were taken. As apparent from the nature and purpose of this proposed rule change, a full Rural Area Flexibility Analysis is not required and therefore one has not been prepared.

*Job Impact Statement*

The Office of Victim Services projects there will be no adverse impact on jobs or employment opportunities in the State of New York as a result of this proposed rule change. This proposed rule change is simply designed to address the NYS Court of Appeals' 2018 determination in the Matter of Leading Age NY, Inc v. Shah as it relates to OVS' current rules for executive compensation of those providers of program services that receive State funds or State-authorized payments paid by the Office. Since nothing in this proposed rule change will create any adverse impacts on jobs or employment opportunities in the state, no further steps were needed to ascertain these facts and none were taken. As apparent from the nature and purpose of this proposed rule change, a full Job Impact Statement is not required and therefore one has not been prepared.

# HEARINGS SCHEDULED
# FOR PROPOSED RULE MAKINGS

| Agency I.D. No. | Subject Matter | Location—Date—Time |
|---|---|---|
| **Environmental Conservation, Department of** | | |
| ENV-29-19-00016-P . . . . . . . . . . . . . . . . . . . . . . . | Reasonably Available Control Technology (RACT) for major facilities of oxides of nitrogen (NOx) | Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129A/B, Albany, NY—September 16, 2019, 11:00 a.m. |
| ENV-29-19-00017-P . . . . . . . . . . . . . . . . . . . . . . . | Federal and State standards for acceptable air quality | Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129A/B, Albany, NY—September 16, 2019, 11:00 a.m. |
| ENV-36-19-00001-P . . . . . . . . . . . . . . . . . . . . . . . | Waste fuels | Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129A/B, Albany, NY—November 8, 2019, 11:00 a.m. |
| ENV-36-19-00002-P . . . . . . . . . . . . . . . . . . . . . . . | New aftermarket catalytic converter (AMCC) standards | Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129A/B, Albany, NY—November 8, 2019, 11:00 a.m. |
| ENV-36-19-00003-P . . . . . . . . . . . . . . . . . . . . . . . | Stationary combustion installations | Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129A/B, Albany, NY—November 8, 2019, 11:00 a.m. |
| ENV-36-19-00014-P . . . . . . . . . . . . . . . . . . . . . . . | Distributed generation sources located in New York City, Long Island, Westchester and Rockland Counties | Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129A/B, Albany, NY—November 12, 2019, 11:00 a.m. |
| | | Department of Transportation, One Hunters Point Plaza, 47-40 21st St., Rm. 834, Long Island City, NY—November 20, 2019, 2:00 p.m. |
| **Public Service Commission** | | |
| PSC-31-19-00015-P . . . . . . . . . . . . . . . . . . . . . . . | Proposed major rate increase in KEDNY's gas delivery revenues by $236.8 million (13.6% increase in total revenues) | Department of Public Service, Three Empire State Plaza, Albany, NY—October 2, 2019 and continuing daily as needed, 10:00 a.m. (Evidentiary Hearing)* *On occasion, there are requests to reschedule or postpone hearing dates. If such a request is granted, notification of any subsequent scheduling changes will be available at the DPS website (www.dps.ny.gov) under Case 19-G-0309. |
| PSC-31-19-00016-P . . . . . . . . . . . . . . . . . . . . . . . | Proposed major rate increase in KEDNY's gas delivery revenues by $49.4 million (4.1% increase in total revenues) | Department of Public Service, Three Empire State Plaza, Albany, NY—October 2, 2019 and continuing daily as needed, 10:00 a.m. (Evidentiary Hearing)* *On occasion, there are requests to reschedule or postpone hearing dates. If such a request is granted, notification of any subsequent scheduling changes will be available at the DPS website (www.dps.ny.gov) under Case 19-G-0310. |
| PSC-32-19-00013-P . . . . . . . . . . . . . . . . . . . . . . . | Disposition of tax refunds received by New York American Water Company, Inc. | Department of Public Service, Three Empire State Plaza, Albany, NY— October 9, 2019, 10:30 a.m. (Evidentiary Hearing)* *On occasion, there are requests to reschedule or postpone hearing dates. If such a request is granted, notification of any subsequent scheduling changes will be available at the DPS website (www.dps.ny.gov) under Case 19-W-0185. |
| PSC-34-19-00015-P . . . . . . . . . . . . . . . . . . . . . . . | Major electric rate filing | Department of Public Service, Three Empire State Plaza, 19th Fl. Board Rm., Albany, NY— October 28, 2019 and continuing daily as needed, 10:30 a.m. (Evidentiary Hearing)* |

|  |  |  |
|---|---|---|
|  |  | *On occasion, there are requests to reschedule or postpone hearing dates. If such a request is granted, notification of any subsequent scheduling changes will be available at the DPS website (www.dps.ny.gov) under Case 19-E-0380. |
| PSC-34-19-00016-P . . . . . . . . . . . . . . . . . . . . . . | Major gas rate filing | Department of Public Service, Three Empire State Plaza, 19th Fl. Board Rm., Albany, NY—October 28, 2019 and continuing daily as needed, 10:30 a.m. (Evidentiary Hearing)* |
|  |  | *On occasion, there are requests to reschedule or postpone hearing dates. If such a request is granted, notification of any subsequent scheduling changes will be available at the DPS website (www.dps.ny.gov) under Case 19-E-0381. |
| PSC-34-19-00018-P . . . . . . . . . . . . . . . . . . . . . . | Major electric rate filing | Department of Public Service, Three Empire State Plaza, 19th Fl. Board Rm., Albany, NY—October 28, 2019 and continuing daily as needed, 10:30 a.m. (Evidentiary Hearing)* |
|  |  | *On occasion, there are requests to reschedule or postpone hearing dates. If such a request is granted, notification of any subsequent scheduling changes will be available at the DPS website (www.dps.ny.gov) under Case 19-E-0378. |
| PSC-34-19-00020-P . . . . . . . . . . . . . . . . . . . . . . | Major gas rate filing | Department of Public Service, Three Empire State Plaza, 19th Fl. Board Rm., Albany, NY—October 28, 2019 and continuing daily as needed, 10:30 a.m. (Evidentiary Hearing)* |
|  |  | *On occasion, there are requests to reschedule or postpone hearing dates. If such a request is granted, notification of any subsequent scheduling changes will be available at the DPS website (www.dps.ny.gov) under Case 19-E-0379. |

**State, Department of**

| | | |
|---|---|---|
| DOS-27-19-00014-P . . . . . . . . . . . . . . . . . . . . . . | New York State Uniform Fire Prevention and Buildiing Code (the Uniform Code) | Department of State, 99 Washington Ave., Conference Rm. 505, Albany, NY—September 5, 2019, 10:00 a.m. |
|  |  | Department of State, 123 William St., Conference Rm. 231, New York, NY—September 5, 2019, 10:00 a.m. |
|  |  | Perry B. Duryea Jr. State Office Bldg., 250 Veterans Memorial Hwy., Rms. 2 and 3, Hauppauge, NY—September 5, 2019, 10:00 a.m. |
|  |  | Utica State Office Bldg., 207 Genesee St., 1st Fl., Conference Rm. A, Utica, NY—September 5, 2019, 10:00 a.m. |
|  |  | Amherst Town Hall, 5583 Main St., Council Chambers, 2nd Fl., Williamsville, NY—September 5, 2019, 10:00 a.m. |
| DOS-27-19-00015-P . . . . . . . . . . . . . . . . . . . . . . | State Energy Conservation Construction Code (the "Energy Code") | Department of State, 99 Washington Ave., Conference Rm. 505, Albany, NY—September 5, 2019, 10:00 a.m. |
|  |  | Department of State, 123 William St., Conference Rm. 231, New York, NY—September 5, 2019, 10:00 a.m. |
|  |  | Perry B. Duryea Jr. State Office Bldg., 250 Veterans Memorial Hwy., Rms. 2 and 3, Hauppauge, NY—September 5, 2019, 10:00 a.m. |

**Rule Making Activities**

Utica State Office Bldg., 207 Genesee St., 1st Fl., Conference Rm. A, Utica, NY—September 5, 2019, 10:00 a.m.

Amherst Town Hall, 5583 Main St., Council Chambers, 2nd Fl., Williamsville, NY—September 5, 2019, 10:00 a.m.

DOS-29-19-00015-EP . . . . . . . . . . . . . . . . . . . . .   New York State Uniform Fire Prevention and Building Code (the Uniform Code)   Department of State, 99 Washington Ave., Rm. 505, Albany, NY—September 16, 2019, 10:00 a.m.

# ACTION PENDING
# INDEX

The action pending index is a list of all proposed rules which are currently being considered for adoption. A proposed rule is added to the index when the notice of proposed rule making is first published in the *Register*. A proposed rule is removed from the index when any of the following occur: (1) the proposal is adopted as a permanent rule; (2) the proposal is rejected and withdrawn from consideration; or (3) the proposal's notice expires.

Most notices expire in approximately 12 months if the agency does not adopt or reject the proposal within that time. The expiration date is printed in the second column of the action pending index. Some notices, however, never expire. Those notices are identified by the word "exempt" in the second column. Actions pending for one year or more are preceded by an asterisk(*).

For additional information concerning any of the proposals listed in the action pending index, use the identification number to locate the text of the original notice of proposed rule making. The identification number contains a code which identifies the agency, the issue of the *Register* in which the notice was printed, the year in which the notice was printed and the notice's serial number. The following diagram shows how to read identification number codes.

| Agency code | Issue number | Year published | Serial number | Action Code |
|---|---|---|---|---|
| **AAM** | **01** | **12** | **00001** | **P** |

Action codes: P — proposed rule making; EP — emergency and proposed rule making (expiration date refers to proposed rule); RP — revised rule making

---

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## AGING, OFFICE FOR THE

| AGE-44-18-00005-P | . . . . . . . . . . . 10/31/19 | Nutrition Program | The purpose of this rule is to update the regulations governing the Nutrition Program |
| AGE-34-19-00014-P | . . . . . . . . . . . 08/20/20 | Limits on Administrative Expenses and Executive Compensation | To bring this rule into compliance with current law in New York State |

## AGRICULTURE AND MARKETS, DEPARTMENT OF

| AAM-17-19-00001-P | . . . . . . . . . . . 04/23/20 | Farm wineries, breweries, and distilleries; hops processors; and cideries | To update references to regulations and to exempt small hops processors from food processing licensing requirements |
| AAM-21-19-00002-EP | . . . . . . . . . . . 05/21/20 | Control of the European Cherry Fruit Fly | To help control the spread of the European Cherry Fruit Fly (ECFF), which renders cherries unmarketable if they are infested. |
| AAM-30-19-00004-P | . . . . . . . . . . . 07/23/20 | Fuels for use in automobiles and motor-driven devices and equipment. | To conform regulations with federal requirements; to provide standards for, and relieve confusion in the sale of new fuels. |
| AAM-33-19-00003-P | . . . . . . . . . . . 08/13/20 | State aid to districts | To conform Part 363 to S&WCL Sec. 11-a statutory amendments and to make technical amendments. |
| AAM-34-19-00001-EP | . . . . . . . . . . . 08/20/20 | Spotted Lanternfly ("SL") | To prevent SL-infested articles originating in Dauphin County, in PA, or Cecil County, in MD, from entering NYS |

## ALCOHOLISM AND SUBSTANCE ABUSE SERVICES, OFFICE OF

| ASA-32-19-00005-P | . . . . . . . . . . . 08/06/20 | Appeals, Hearings and Rulings | Protect patient confidentiality, update due process provisions, technical amendments |

## AUDIT AND CONTROL, DEPARTMENT OF

| AAC-29-19-00021-P | . . . . . . . . . . . 07/16/20 | Limitations on Public Safety Overtime | To clarify that public safety overtime is subject to the limitations contained in the RSSL |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## CHILDREN AND FAMILY SERVICES, OFFICE OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| CFS-51-18-00010-P | 12/19/19 | Residential and non-residential services to victims of domestic violence | To conform the existing regulations to comply with state and federal laws regarding services to victims of domestic violence |
| CFS-19-19-00006-EP | 05/07/20 | Procedures for addressing children absent without consent from foster care, conditional releases and searches | To put into place procedures for children absent without consent from foster care, conditional releases and searches |
| CFS-20-19-00001-EP | 05/14/20 | To eliminate requirement that victims of domestic violence apply for public assistance to pay for cost of shelter and services | To eliminate requirement that victims of domestic violence apply for public assistance to pay for cost of shelter and services |
| CFS-36-19-00004-EP | 09/03/20 | Removal of non-medical exemption from vaccination regulations for child day care programs. | To remove the non-medical exemption from vaccination regulations for child day care programs. |

## CIVIL SERVICE, DEPARTMENT OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| CVS-06-19-00001-P | 02/06/20 | Jurisdictional Classification | To classify a position in the exempt class |
| CVS-13-19-00003-P | 03/26/20 | Jurisdictional Classification | To delete positions from and classify positions in the exempt class |
| CVS-18-19-00007-P | 04/30/20 | Jurisdictional Classification | To classify positions in the exempt class |
| CVS-18-19-00008-P | 04/30/20 | Jurisdictional Classification | To delete positions from the non-competitive class |
| CVS-25-19-00001-P | 06/18/20 | Jurisdictional Classification | To delete positions from and classify positions in the exempt and non-competitive classes. |
| CVS-25-19-00002-P | 06/18/20 | Jurisdictional Classification | To classify positions in the exempt class. |
| CVS-25-19-00003-P | 06/18/20 | Jurisdictional Classification | To classify a position in the exempt class. |
| CVS-25-19-00004-P | 06/18/20 | Jurisdictional Classification | To delete positions from the non-competitive class. |
| CVS-25-19-00005-P | 06/18/20 | Jurisdictional Classification | To delete positions from and classify a position in the non-competitive class. |
| CVS-25-19-00006-P | 06/18/20 | Jurisdictional Classification | To classify positions in the non-competitive class. |
| CVS-25-19-00007-P | 06/18/20 | Jurisdictional Classification | To delete positions from and classify a position in the non-competitive class. |
| CVS-25-19-00008-P | 06/18/20 | Jurisdictional Classification | To classify positions in the non-competitive class. |
| CVS-25-19-00009-P | 06/18/20 | Jurisdictional Classification | To delete positions from and classify positions in the exempt and non-competitive classes. |
| CVS-25-19-00010-P | 06/18/20 | Jurisdictional Classification | To classify positions in the non-competitive class. |
| CVS-29-19-00001-P | 07/16/20 | Jurisdictional Classification | To delete positions from and classify a position in the non-competitive class |

**NYS Register/September 4, 2019**                    **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

**CIVIL SERVICE, DEPARTMENT OF**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| CVS-29-19-00002-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To classify a position in the exempt class and to delete positions from and classify a position in the non-competitive class |
| CVS-29-19-00003-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To classify a position in the non-competitive class |
| CVS-29-19-00004-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To delete positions from the non-competitive class |
| CVS-29-19-00005-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-29-19-00006-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-29-19-00007-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-29-19-00008-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To delete a position from and classify positions in the non-competitive class |
| CVS-29-19-00009-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To classify a position in the non-competitive class |
| CVS-29-19-00010-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-29-19-00011-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To classify a position in the non-competitive class |
| CVS-29-19-00012-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To classify a position in the non-competitive class |
| CVS-29-19-00013-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To classify positions in the exempt class and to delete positions from the non-competitive class |
| CVS-29-19-00014-P | . . . . . . . . . . 07/16/20 | Jurisdictional Classification | To delete a position in the non-competitive class |
| CVS-34-19-00002-P | . . . . . . . . . . 08/20/20 | Jurisdictional Classification | To classify positions in the exempt and non-competitive classes. |
| CVS-34-19-00003-P | . . . . . . . . . . 08/20/20 | Jurisdictional Classification | To classify a position in the exempt class |
| CVS-34-19-00004-P | . . . . . . . . . . 08/20/20 | Jurisdictional Classification | To classify a position in the non-competitive class |
| CVS-34-19-00005-P | . . . . . . . . . . 08/20/20 | Jurisdictional Classification | To classify a position in the non-competitive class |
| CVS-34-19-00006-P | . . . . . . . . . . 08/20/20 | Jurisdictional Classification | To delete positions from the non-competitive class |
| CVS-34-19-00007-P | . . . . . . . . . . 08/20/20 | Jurisdictional Classification | To delete positions from the non-competitive class |
| CVS-34-19-00008-P | . . . . . . . . . . 08/20/20 | Jurisdictional Classification | To delete a subheading and to delete a position in the non-competitive class |

**Action Pending Index**              **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
| --- | --- | --- | --- |

## CIVIL SERVICE, DEPARTMENT OF

| | | | |
| --- | --- | --- | --- |
| CVS-34-19-00009-P | . . . . . . . . . . 08/20/20 | Jurisdictional Classification | To delete a position from and classify a position in the non-competitive class |
| CVS-34-19-00010-P | . . . . . . . . . . 08/20/20 | Jurisdictional Classification | To classify positions in the exempt and non-competitive classes |
| CVS-34-19-00011-P | . . . . . . . . . . 08/20/20 | Jurisdictional Classification | To delete positions from and classify positions in the non-competitive class |

## CORRECTION, STATE COMMISSION OF

| | | | |
| --- | --- | --- | --- |
| CMC-35-19-00002-P | . . . . . . . . . . 08/27/20 | Disciplinary and administrative segregation of inmates in special housing. | Prohibit the segregation of vulnerable inmates, and to standardize allowable uses and duration of special housing segregation. |

## CORRECTIONS AND COMMUNITY SUPERVISION, DEPARTMENT OF

| | | | |
| --- | --- | --- | --- |
| CCS-05-19-00006-P | . . . . . . . . . . 01/30/20 | Standard Conditions of Release Parole Revocation Dispositions | Establish standard conditions of release and provide a workable structure for applying appropriate parole revocation penalties |
| CCS-21-19-00014-P | . . . . . . . . . . 05/21/20 | Adolescent Offender Facilities | To reclassify two existing correctional facilities to adolescent offender facilities. |
| CCS-28-19-00003-EP | . . . . . . . . . . 07/09/20 | Reclassification of Correctional Facilities | The classification of Collins and Queensboro Correctional Facilities as Work Release facilities |
| CCS-32-19-00007-P | . . . . . . . . . . 08/06/20 | Transfer of Foreign Nationals | Correct spelling and update employee responsibility |
| CCS-35-19-00001-P | . . . . . . . . . . 08/27/20 | Special Housing Units | Revisions have been made in order to be in compliance with new laws regarding special housing units and solitary confinement use |

## CRIMINAL JUSTICE SERVICES, DIVISION OF

| | | | |
| --- | --- | --- | --- |
| CJS-20-19-00003-P | . . . . . . . . . . 05/14/20 | Certified Instructors and Course Directors | Establish/maintain effective procedures governing certified instructors and course directors who deliver MPTC-approved courses |
| CJS-30-19-00010-EP | . . . . . . . . . . 07/23/20 | Use of Force | Set forth use of force reporting and recordkeeping procedures |

## ECONOMIC DEVELOPMENT, DEPARTMENT OF

| | | | |
| --- | --- | --- | --- |
| EDV-30-19-00003-EP | . . . . . . . . . . 07/23/20 | START-UP NY Program | Establish procedures for the implementation and execution of START-UP NY program |

## EDUCATION DEPARTMENT

| | | | |
| --- | --- | --- | --- |
| EDU-40-18-00010-RP | . . . . . . . . . . 10/03/19 | Professional development plans and other related requirements for school districts and BOCES | To improve the quality of teaching and learning for teachers and leaders for professional growth |
| EDU-52-18-00005-P | . . . . . . . . . . 12/26/19 | Annual professional performance reviews. | To extend the transition period for an additional year (until 2019-2020). |

**NYS Register/September 4, 2019**                                 **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## EDUCATION DEPARTMENT

| | | | |
|---|---|---|---|
| EDU-05-19-00008-RP | . . . . . . . . . . 01/30/20 | Protecting Personally Identifiable Information | To implement the provisions of Education Law section 2-d |
| EDU-13-19-00009-ERP | . . . . . . . . . . 03/26/20 | The Execution by Registered Professional Nurses of Non-Patient Specific Orders to Administer Immunizations | To conform the regulation to current immunization standards |
| EDU-17-19-00008-P | . . . . . . . . . . 04/23/20 | To require study in language acquisition and literacy development of English language learners in certain teacher preparation | To ensure that newly certified teachers enter the workforce fully prepared to serve our ELL population |
| EDU-21-19-00007-EP | . . . . . . . . . . 05/21/20 | The Certification of Manufacturers and Wholesalers for Export Purposes | To clarify who may issue free sale certificates to New York State registered manufacturers or wholesalers |
| EDU-21-19-00008-P | . . . . . . . . . . 05/21/20 | Continuing Teacher and Leader Education (CTLE) for Educators in nonpublic schools. | To make technical amendments to the CTLE regulations for educators employed in nonpublic schools. |
| EDU-21-19-00009-P | . . . . . . . . . . 05/21/20 | Creation of safety nets for the science Content Specialty Tests (CSTs) | Allow candidates to be held harmless during a one-year transition period from the predecessor CSTs to the revised CST's |
| EDU-21-19-00010-P | . . . . . . . . . . 05/21/20 | Conditional initial certificate requirements. | Provides that candidates may be eligible for an Initial certificate even after their conditional initial certificate expires. |
| EDU-21-19-00011-P | . . . . . . . . . . 05/21/20 | Educational Broadcast Councils and Radio Stations | Reduce costs incurred by each Council and Radio Station for redundant annual certified audits & to streamline reporting process |
| EDU-21-19-00012-P | . . . . . . . . . . 05/21/20 | Requirements for Transitional D Programs that Lead to School District Leader Certification | Certificate enables the candidates to work in a school dist. /BOCES as a school dist. leader while they complete their requireme |
| EDU-25-19-00014-EP | . . . . . . . . . . 06/18/20 | Eligibility Requirements for the Endorsement Pathway for Certification as an Educator in the Classroom Teaching Service | To provide candidates with more flexibility to be eligible for the endorsement pathway |
| EDU-25-19-00015-EP | . . . . . . . . . . 06/18/20 | Statement of continued eligibility for certain teachers of students with disabilities | Extends the deadline to apply for a statement of continued eligibility for certain teachers of students with disabilities |
| EDU-26-19-00001-P | . . . . . . . . . . 06/25/20 | Reports of child abuse in an educational setting | To implement the provisions of Chapter 363 of the Laws of 2018 relating to reports of child abuse in an educational setting |
| EDU-27-19-00010-P | . . . . . . . . . . 07/02/20 | Substantially Equivalent Instruction for Nonpublic School Students | Provide guidance to local school authorities to assist them in fulfilling their responsibilities under the Compulsory Ed Law |
| EDU-31-19-00009-EP | . . . . . . . . . . 07/30/20 | Instructional Time for State Aid purposes | To provide school districts with additional flexibility when establishing their school calendars |
| EDU-31-19-00010-EP | . . . . . . . . . . 07/30/20 | School and district safety plans | To implement certain provisions of section 32 of part YYY of chapter 59 of the Laws of 2019 |

## ELECTIONS, STATE BOARD OF

| | | | |
|---|---|---|---|
| SBE-22-19-00001-EP | . . . . . . . . . . 05/28/20 | Audit Status for Early Voting | Establishes Process for Auditing Early Voting Machines and Systems |

**Action Pending Index**                                    **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## ELECTIONS, STATE BOARD OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| SBE-22-19-00002-ERP | 05/28/20 | Related to the Minimum Required Voting Machines and Privacy Booths needed for Early Voting Polling Sites | Establishes the Minimum Required Voting Machines and Privacy Booths needed for Early Voting Polling Sites |
| SBE-22-19-00003-EP | 05/28/20 | Process for Early Voting | Establishing Process for Early Voting |
| SBE-35-19-00003-EP | 08/27/20 | Ballot Accountability Practices | Establishes additional ballot accountability procedures |

## ENVIRONMENTAL CONSERVATION, DEPARTMENT OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| ENV-09-19-00015-RP | 05/13/20 | Set nitrogen oxide (NOx) emission rate limits for simple cycle and regenerative combustion turbines | Reduction of nitrogen oxide (NOx) emissions from simple cycle and regenerative combustion turbines |
| ENV-10-19-00003-P | 05/13/20 | Regulate volatile organic compounds (VOCs) in architectural and industrial maintenance (AIM) coatings | To set new and lower VOC limits for certain coating categories. Update categories and methods |
| ENV-12-19-00002-P | 05/23/20 | Air emissions regulation of cleaning solutions containing volatile organic compounds. | Update existing regulation with latest emission control requirements and add requirements recently issued by EPA. |
| ENV-18-19-00006-EP | 04/30/20 | Regulations governing commercial fishing and harvest of scup. | To revise regulations concerning the commercial harvest of scup in New York State waters. |
| ENV-24-19-00002-P | 08/18/20 | Hazardous Waste Management Regulations (FedReg5) | To amend regulations pertaining to hazardous waste management |
| ENV-27-19-00001-P | 07/02/20 | Feeding of wild deer and moose, use of 4-PosterTM devices. | To prohibit feeding of wild deer and moose, to define conditions for use of 4-PosterTM devices. |
| ENV-27-19-00003-P | 07/02/20 | Black Bear hunting. | Expand bear hunting opportunities in Wildlife Management Unit 4W to reduce bear abundance. |
| ENV-28-19-00001-P | 07/09/20 | Omnibus changes to 6 NYCRR | Bring regulations current with statutory changes and to improve application efficiency as part of the Governor's Lean initiative |
| ENV-28-19-00002-EP | 07/09/20 | Regulations governing recreational fishing of scup | To revise regulations concerning the recreational harvest of scup in New York State |
| ENV-29-19-00016-P | 09/15/20 | Reasonably Available Control Technology (RACT) for Major Facilities of Oxides of Nitrogen (NOx) | Regulation of NOx emissions from major facilities of NOx. The regulation sets NOx limits for boilers, turbines, and engines |
| ENV-29-19-00017-P | 09/15/20 | Federal and State standards for acceptable air quality | To revise outdated State and Federal air quality standards |
| ENV-31-19-00008-EP | 07/30/20 | Sanitary Condition of Shellfish Lands | To reclassify underwater shellfish lands to protect public health |
| ENV-32-19-00006-P | 08/06/20 | Chronic wasting disease | Amend regulations to reduce risk of introduction of infectious material into New York |

**Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## ENVIRONMENTAL CONSERVATION, DEPARTMENT OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| ENV-36-19-00001-P | . . . . . . . . . . 11/07/20 | Waste Fuels | Update permit references, rule citations, monitoring, record keeping, reporting requirements, and incorporate federal standards. |
| ENV-36-19-00002-P | . . . . . . . . . . 11/07/20 | New Aftermarket Catalytic Converter (AMCC) standards | Prohibit sale of federal AMCCs and update existing AMCC record keeping and reporting requirements |
| ENV-36-19-00003-P | . . . . . . . . . . 11/07/20 | Stationary Combustion Installations | Update permit references, rule citations, monitoring, record keeping, reporting requirements, and lower emission standards |
| ENV-36-19-000014-P | . . . . . . . . . . 11/07/20 | Distributed generation sources located in New York City, Long Island, Westchester and Rockland counties | Establish emission control requirements for sources used in demand response programs or as price-responsive generation sources |

## FINANCIAL SERVICES, DEPARTMENT OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *DFS-17-16-00003-P | . . . . . . . . . . exempt | Plan of Conversion by Commercial Travelers Mutual Insurance Company | To convert a mutual accident and health insurance company to a stock accident and health insurance company |
| *DFS-25-18-00006-P | . . . . . . . . . . exempt | Plan of Conversion by Medical Liabilty Mutual Insurance Company | To convert a mutual property and casualty insurance company to a stock property and casualty insurance company |
| *DFS-30-18-00007-RP | . . . . . . . . . . 10/23/19 | Minimum Standards for Form, Content, and Sale of Health Insurance, Including Standards for Full and Fair Disclosure | To clarify requirements regarding coverage and disclosure of information for contraceptives |
| DFS-36-18-00003-RP | . . . . . . . . . . 12/04/19 | Professional Bail Agents; Managing General Agents; et al | To provide greater protection to consumers, and raise the standards of integrity in the bail business. |
| DFS-46-18-00014-P | . . . . . . . . . . 11/14/19 | Regulations Implementing the Comprehensive Motor Vehicle Insurance Reparations Act-Claims for Personal Injury Protection Benefit | To give insurer option to void assignment of benefits when insurer issues denial for EIP's failure to attend IME or EUO |
| DFS-18-19-00005-P | . . . . . . . . . . 04/30/20 | Servicing Mortgage Loans: Business Conduct Rules | Sets standards governing the servicing of residential home mortgage loans. |
| DFS-20-19-00002-P | . . . . . . . . . . 05/14/20 | Electronic Filings and Submissions | To require certain filings or submissions to be made electronically |
| DFS-20-19-00004-P | . . . . . . . . . . 05/14/20 | Valuation of Individual and Group Accident and Health Insurance Reserves | To adopt the 2016 Cancer Claim Cost Valuation Tables |
| DFS-21-19-00005-P | . . . . . . . . . . 05/21/20 | Continuing Care Retirement Communities | Amend rules related to permitted investments, financial transactions, reporting requirements and add new optional contract type. |
| DFS-28-19-00007-P | . . . . . . . . . . 07/09/20 | Accelerated Payment of the Death Benefit Under a Life Insurance Policy | Implement statutory amendments in: Laws of 2017 ch. 300, Laws of 2014 ch. 465, Laws of 2014 ch. 448, and Laws of 2010 ch. 563 |
| DFS-31-19-00007-P | . . . . . . . . . . 07/30/20 | Student Loan Servicers | To provide for the supervision of the student loan servicing industry |
| DFS-32-19-00003-P | . . . . . . . . . . 08/06/20 | Minimum Standards for Form, Content and Sale of Medicare Supplement and Medicare Select Insurance, et al. | To conform with the NAIC model regulation for Medicare supplement insurance, as required by 42 U.S.C. Section 1395ss. |

**Action Pending Index**                                    **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **FINANCIAL SERVICES, DEPARTMENT OF** | | | |
| DFS-33-19-00004-P | . . . . . . . . . . 08/13/20 | Minimum Standards for Form, Content, and Sale of Health Insurance, Including Standards for Full and Fair Disclosure | To set forth minimum standards for the content of health insurance identification cards. |
| **HEALTH, DEPARTMENT OF** | | | |
| *HLT-14-94-00006-P | . . . . . . . . . . exempt | Payment methodology for HIV/AIDS outpatient services | To expand the current payment to incorporate pricing for services |
| HLT-42-18-00008-P | . . . . . . . . . . 10/17/19 | Office-Based Surgery Practice Reports | Requires accredited Office-Based Surgery practices to submit adverse event & practice information which includes procedural data |
| HLT-51-18-00018-P | . . . . . . . . . . 12/19/19 | New requirements for Annual Registration of Licensed Home Care Services Agencies | To amend the regulations for licensed home care services agencies for the annual registration requirements of the agency |
| HLT-05-19-00005-P | . . . . . . . . . . 01/30/20 | Midwifery Birth Center Services | To set the standards for all birth centers to follow the structure of Article 28 requirements |
| HLT-09-19-00004-P | . . . . . . . . . . 02/27/20 | Cardiac Catheterization Laboratory Centers | To amend existing Certificate of Need requirements for the approval and operation of Cardiac Catheterization Laboratory Centers. |
| HLT-18-19-00016-P | . . . . . . . . . . 04/30/20 | Blood Lead Level | To improve the current understanding of lead poisoning risks to children and pregnant women |
| HLT-22-19-00015-P | . . . . . . . . . . 05/28/20 | Residents' Rights | Require nursing homes provide info. about home and community based services & comm. transition progs. to residents upon admission |
| HLT-25-19-00013-P | . . . . . . . . . . 06/18/20 | Registered Nurses in the Emergency Department | To remove a barrier to new graduate nurse recruitment in the emergency department |
| HLT-29-19-00020-P | . . . . . . . . . . 07/16/20 | Patients' Bill of Rights | To protect D&TC patients against unknowingly receiving care from out-of-network providers, resulting in surprise medical bills |
| HLT-30-19-00006-P | . . . . . . . . . . 07/23/20 | Maximum Contaminant Levels (MCLs) | Incorporating MCLs for perfluorooctanoic acid (PFOA), perfluorooctanesulfonic acid (PFOS) and 1,4-dioxane. |
| HLT-36-19-00005-EP | . . . . . . . . . . 09/03/20 | School Immunization Requirements | To be consistent with national immunization regulations and guidelines and to define "may be detrimental to the child's health". |
| HLT-36-19-00006-P | . . . . . . . . . . 09/03/20 | Limits on Executive Compensation | Removes "Soft Cap" prohibition on covered executive salaries. |
| **HIGHER EDUCATION SERVICES CORPORATION** | | | |
| ESC-31-19-00001-EP | . . . . . . . . . . 07/30/20 | NYS Child Welfare Worker Loan Forgiveness Incentive Program | To implement the NYS Child Welfare Worker Loan Forgiveness Incentive Program |
| ESC-31-19-00002-EP | . . . . . . . . . . 07/30/20 | New York State Science, Technology, Engineering and Mathematics Incentive Program | To implement the New York State Science, Technology, Engineering and Mathematics Incentive Program |
| ESC-31-19-00003-EP | . . . . . . . . . . 07/30/20 | NYS Child Welfare Worker Incentive Scholarship Program | To implement the NYS Child Welfare Worker Incentive Scholarship Program |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

### HIGHER EDUCATION SERVICES CORPORATION

| | | | |
|---|---|---|---|
| ESC-31-19-00004-EP | . . . . . . . . . . 07/30/20 | Excelsior Scholarship | To implement the Excelsior Scholarship |
| ESC-31-19-00005-EP | . . . . . . . . . . 07/30/20 | Enhanced Tuition Awards program | To implement the Enhanced Tuition Awards program |

### HOUSING AND COMMUNITY RENEWAL, DIVISION OF

| | | | |
|---|---|---|---|
| HCR-21-19-00019-P | . . . . . . . . . . 07/21/20 | Low-Income Housing Qualified Allocation Plan | To amend definitions, threshold criteria and application scoring for the allocation o flow-income housing tax credits. |

### HOUSING FINANCE AGENCY

| | | | |
|---|---|---|---|
| HFA-21-19-00020-P | . . . . . . . . . . 07/21/20 | Low-Income Housing Qualified Allocation Plan | To amend definitions, threshold criteria and application scoring for the allocation of low-income housing tax credits |

### HUMAN RIGHTS, DIVISION OF

| | | | |
|---|---|---|---|
| HRT-27-19-00002-P | . . . . . . . . . . 07/02/20 | Gender Identity or Expression Discrimination | To conform the Division's regulations with Executive Law as amended by Chapter 8 of the Laws of New York 2019. |

### LONG ISLAND POWER AUTHORITY

| | | | |
|---|---|---|---|
| *LPA-08-01-00003-P | . . . . . . . . . . exempt | Pole attachments and related matters | To approve revisions to the authority's tariff |
| *LPA-41-02-00005-P | . . . . . . . . . . exempt | Tariff for electric service | To revise the tariff for electric service |
| *LPA-04-06-00007-P | . . . . . . . . . . exempt | Tariff for electric service | To adopt provisions of a ratepayer protection plan |
| *LPA-03-10-00004-P | . . . . . . . . . . exempt | Residential late payment charges | To extend the application of late payment charges to residential customers |
| *LPA-15-18-00013-P | . . . . . . . . . . exempt | Outdoor area lighting | To add an option and pricing for efficient LED lamps to the Authority's outdoor area lighting |
| LPA-37-18-00013-P | . . . . . . . . . . exempt | The net energy metering provisions of the Authority's Tariff for Electric Service | To implement PSC guidance increasing eligibility for value stack compensation to larger projects |
| LPA-37-18-00017-P | . . . . . . . . . . exempt | The treatment of electric vehicle charging in the Authority's Tariff for Electric Service. | To effectuate the outcome of the Public Service Commission's proceeding on electric vehicle supply equipment. |
| LPA-37-18-00018-P | . . . . . . . . . . exempt | The treatment of energy storage in the Authority's Tariff for Electric Service. | To effectuate the outcome of the Public Service Commission's proceeding on the NY Energy Storage Roadmap. |

### METROPOLITAN TRANSPORTATION AGENCY

| | | | |
|---|---|---|---|
| MTA-23-19-00006-EP | . . . . . . . . . . 06/04/20 | Debarment of contractors | To comply with Public Authorities Law, section 1279-h, which requires the MTA to establish a debarment process for contractors |

Action Pending Index                                       NYS Register/September 4, 2019

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

**MOTOR VEHICLES, DEPARTMENT OF**

| | | | |
|---|---|---|---|
| MTV-25-19-00011-P | . . . . . . . . . . 06/18/20 | Alcohol & Drug Rehabilitation Programs - Restricted Use License eligibility provision | Conforms regulation with statute |
| MTV-27-19-00011-P | . . . . . . . . . . 07/02/20 | Limited Use Vehicles - provides that number of characters in a VIN be in conformance with Federal standards. | conforms regulation with statute |
| MTV-27-19-00012-P | . . . . . . . . . . 07/02/20 | Private Service Bureaus-employment of persons who've been convicted of a crime in accordance with Article 23-A of Correction Law | conforms regulation with statute |
| MTV-27-19-00013-P | . . . . . . . . . . 07/02/20 | Driving Schools-relates to employment of persons convicted of a crime in accordance with Article 23-A of Correction Law. | conforms regulation with statute |

**NIAGARA FALLS WATER BOARD**

| | | | |
|---|---|---|---|
| *NFW-04-13-00004-EP | . . . . . . . . . . exempt | Adoption of Rates, Fees and Charges | To pay for the increased costs necessary to operate, maintain and manage the system, and to achieve covenants with bondholders |
| *NFW-13-14-00006-EP | . . . . . . . . . . exempt | Adoption of Rates, Fees and Charges | To pay for increased costs necessary to operate, maintain and manage the system and to achieve covenants with the bondholders |
| NFW-01-19-00019-EP | . . . . . . . . . . exempt | Adoption of Rates, Fees, and Charges | To pay for increased costs necessary to operate, maintain, and manage the system, and to meet covenants with the bondholders |

**OGDENSBURG BRIDGE AND PORT AUTHORITY**

| | | | |
|---|---|---|---|
| *OBA-33-18-00019-P | . . . . . . . . . . exempt | Increase in Bridge Toll Structure | To increase bridge toll revenue in order to become financially self-supporting. Our bridge operations are resulting in deficit. |
| OBA-07-19-00019-P | . . . . . . . . . . exempt | Increase in Bridge Toll Structure | To increase bridge toll revenue in order to become financially self-supporting. Our bridge operations are resulting in deficit |

**PEOPLE WITH DEVELOPMENTAL DISABILITIES, OFFICE FOR**

| | | | |
|---|---|---|---|
| PDD-31-19-00006-P | . . . . . . . . . . 07/30/20 | Procedures for the Control of Tuberculosis | To modify the tuberculosis testing requirements for service recipients only receiving clinical services within an Art 16 clinic |
| PDD-33-19-00015-P | . . . . . . . . . . 08/13/20 | Limits on Administrative Expenses and Executive Compensation | To conform with recent court decisions |

**POWER AUTHORITY OF THE STATE OF NEW YORK**

| | | | |
|---|---|---|---|
| *PAS-01-10-00010-P | . . . . . . . . . . exempt | Rates for the sale of power and energy | Update ECSB Programs customers' service tariffs to streamline them/include additional required information |

**PUBLIC SERVICE COMMISSION**

| | | | |
|---|---|---|---|
| *PSC-09-99-00012-P | . . . . . . . . . . exempt | Transfer of books and records by Citizens Utilities Company | To relocate Ogden Telephone Company's books and records out-of-state |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| | | **PUBLIC SERVICE COMMISSION** | |
| *PSC-15-99-00011-P | . . . . . . . . . . . exempt | Electronic tariff by Woodcliff Park Corp. | To replace the company's current tariff with an electronic tariff |
| *PSC-12-00-00001-P | . . . . . . . . . . . exempt | Winter bundled sales service election date by Central Hudson Gas & Electric Corporation | To revise the date |
| *PSC-44-01-00005-P | . . . . . . . . . . . exempt | Annual reconciliation of gas costs by Corning Natural Gas Corporation | To authorize the company to include certain gas costs |
| *PSC-07-02-00032-P | . . . . . . . . . . . exempt | Uniform business practices | To consider modification |
| *PSC-36-03-00010-P | . . . . . . . . . . . exempt | Performance assurance plan by Verizon New York | To consider changes |
| *PSC-40-03-00015-P | . . . . . . . . . . . exempt | Receipt of payment of bills by St. Lawrence Gas Company | To revise the process |
| *PSC-41-03-00010-P | . . . . . . . . . . . exempt | Annual reconciliation of gas expenses and gas cost recoveries | To consider filings of various LDCs and municipalities |
| *PSC-41-03-00011-P | . . . . . . . . . . . exempt | Annual reconciliation of gas expenses and gas cost recoveries | To consider filings of various LDCs and municipalities |
| *PSC-44-03-00009-P | . . . . . . . . . . . exempt | Retail access data between jurisdictional utilities | To accommodate changes in retail access market structure or commission mandates |
| *PSC-02-04-00008-P | . . . . . . . . . . . exempt | Delivery rates for Con Edison's customers in New York City and Westchester County by the City of New York | To rehear the Nov. 25, 2003 order |
| *PSC-06-04-00009-P | . . . . . . . . . . . exempt | Transfer of ownership interest by SCS Energy LLC and AE Investors LLC | To transfer interest in Steinway Creek Electric Generating Company LLC to AE Investors LLC |
| *PSC-10-04-00005-P | . . . . . . . . . . . exempt | Temporary protective order | To consider adopting a protective order |
| *PSC-10-04-00008-P | . . . . . . . . . . . exempt | Interconnection agreement between Verizon New York Inc. and VIC-RMTS-DC, L.L.C. d/b/a Verizon Avenue | To amend the agreement |
| *PSC-14-04-00008-P | . . . . . . . . . . . exempt | Submetering of natural gas service to industrial and commercial customers by Hamburg Fairgrounds | To submeter gas service to commercial customers located at the Buffalo Speedway |
| *PSC-15-04-00022-P | . . . . . . . . . . . exempt | Submetering of electricity by Glenn Gardens Associates, L.P. | To permit submetering at 175 W. 87th St., New York, NY |
| *PSC-21-04-00013-P | . . . . . . . . . . . exempt | Verizon performance assurance plan by Metropolitan Telecommunications | To clarify the appropriate performance level |
| *PSC-22-04-00010-P | . . . . . . . . . . . exempt | Approval of new types of electricity meters by Powell Power Electric Company | To permit the use of the PE-1250 electronic meter |
| *PSC-22-04-00013-P | . . . . . . . . . . . exempt | Major gas rate increase by Consolidated Edison Company of New York, Inc. | To increase annual gas revenues |
| *PSC-22-04-00016-P | . . . . . . . . . . . exempt | Master metering of water by South Liberty Corporation | To waive the requirement for installation of separate water meters |

Action Pending Index

NYS Register/September 4, 2019

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| | | | |
|---|---|---|---|
| *PSC-25-04-00012-P | . . . . . . . . . . . exempt | Interconnection agreement between Frontier Communications of Ausable Valley, Inc., et al. and Sprint Communications Company, L.P. | To amend the agreement |
| *PSC-27-04-00008-P | . . . . . . . . . . . exempt | Interconnection agreement between Verizon New York Inc. and various Verizon wireless affiliates | To amend the agreement |
| *PSC-27-04-00009-P | . . . . . . . . . . . exempt | Interconnection agreement between Verizon New York Inc. and various Verizon wireless affiliates | To amend the agreement |
| *PSC-28-04-00006-P | . . . . . . . . . . . exempt | Approval of loans by Dunkirk & Fredonia Telephone Company and Cassadaga Telephone Corporation | To authorize participation in the parent corporation's line of credit |
| *PSC-31-04-00023-P | . . . . . . . . . . . exempt | Distributed generation service by Consolidated Edison Company of New York, Inc. | To provide an application form |
| *PSC-34-04-00031-P | . . . . . . . . . . . exempt | Flat rate residential service by Emerald Green Lake Louise Marie Water Company, Inc. | To set appropriate level of permanent rates |
| *PSC-35-04-00017-P | . . . . . . . . . . . exempt | Application form for distributed generation by Orange and Rockland Utilities, Inc. | To establish a new supplementary application form for customers |
| *PSC-43-04-00016-P | . . . . . . . . . . . exempt | Accounts recievable by Rochester Gas and Electric Corporation | To include in its tariff provisions for the purchase of ESCO accounts recievable |
| *PSC-46-04-00012-P | . . . . . . . . . . . exempt | Service application form by Consolidated Edison Company of New York, Inc. | To revise the form and make housekeeping changes |
| *PSC-46-04-00013-P | . . . . . . . . . . . exempt | Rules and guidelines governing installation of metering equipment | To establish uniform statewide business practices |
| *PSC-02-05-00006-P | . . . . . . . . . . . exempt | Violation of the July 22, 2004 order by Dutchess Estates Water Company, Inc. | To consider imposing remedial actions against the company and its owners, officers and directors |
| *PSC-09-05-00009-P | . . . . . . . . . . . exempt | Submetering of natural gas service by Hamlet on Olde Oyster Bay | To consider submetering of natural gas to a commercial customer |
| *PSC-14-05-00006-P | . . . . . . . . . . . exempt | Request for deferred accounting authorization by Freeport Electric Inc. | To defer expenses beyond the end of the fiscal year |
| *PSC-18-05-00009-P | . . . . . . . . . . . exempt | Marketer Assignment Program by Consolidated Edison Company of New York, Inc. | To implement the program |
| *PSC-20-05-00028-P | . . . . . . . . . . . exempt | Delivery point aggregation fee by Allied Frozen Storage, Inc. | To review the calculation of the fee |
| *PSC-25-05-00011-P | . . . . . . . . . . . exempt | Metering, balancing and cashout provisions by Central Hudson Gas & Electric Corporation | To establish provisions for gas customers taking service under Service Classification Nos. 8, 9 and 11 |
| *PSC-27-05-00018-P | . . . . . . . . . . . exempt | Annual reconciliation of gas costs by New York State Electric & Gas Corporation | To consider the manner in which the gas cost incentive mechanism has been applied |

**NYS Register/September 4, 2019**                                                                    **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-41-05-00013-P | . . . . . . . . . . . exempt | Annual reconciliation of gas expenses and gas cost recoveries by local distribution companies and municipalities | To consider the filings |
| *PSC-45-05-00011-P | . . . . . . . . . . . exempt | Treatment of lost and unaccounted gas costs by Corning Natural Gas Corporation | To defer certain costs |
| *PSC-46-05-00015-P | . . . . . . . . . . . exempt | Sale of real and personal property by the Brooklyn Union Gas Company d/b/a KeySpan Energy Delivery New York and Steel Arrow, LLC | To consider the sale |
| *PSC-47-05-00009-P | . . . . . . . . . . . exempt | Transferral of gas supplies by Corning Natural Gas Corporation | To approve the transfer |
| *PSC-50-05-00008-P | . . . . . . . . . . . exempt | Long-term debt by Saratoga Glen Hollow Water Supply Corp. | To obtain long-term debt |
| *PSC-04-06-00024-P | . . . . . . . . . . . exempt | Transfer of ownership interests by Mirant NY-Gen LLC and Orange and Rockland Utilities, Inc. | To approve of the transfer |
| *PSC-06-06-00015-P | . . . . . . . . . . . exempt | Gas curtailment policies and procedures | To examine the manner and extent to which gas curtailment policies and procedures should be modified and/or established |
| *PSC-07-06-00009-P | . . . . . . . . . . . exempt | Modification of the current Environmental Disclosure Program | To include an attributes accounting system |
| *PSC-22-06-00019-P | . . . . . . . . . . . exempt | Hourly pricing by National Grid | To assess the impacts |
| *PSC-22-06-00020-P | . . . . . . . . . . . exempt | Hourly pricing by New York State Electric & Gas Corporation | To assess the impacts |
| *PSC-22-06-00021-P | . . . . . . . . . . . exempt | Hourly pricing by Rochester Gas & Electric Corporation | To assess the impacts |
| *PSC-22-06-00022-P | . . . . . . . . . . . exempt | Hourly pricing by Consolidated Edison Company of New York, Inc. | To assess the impacts |
| *PSC-22-06-00023-P | . . . . . . . . . . . exempt | Hourly pricing by Orange and Rockland Utilities, Inc. | To assess the impacts |
| *PSC-24-06-00005-EP | . . . . . . . . . . . exempt | Supplemental home energy assistance benefits | To extend the deadline to Central Hudson's low-income customers |
| *PSC-25-06-00017-P | . . . . . . . . . . . exempt | Purchased power adjustment by Massena Electric Department | To revise the method of calculating the purchased power adjustment and update the factor of adjustment |
| *PSC-34-06-00009-P | . . . . . . . . . . . exempt | Inter-carrier telephone service quality standards and metrics by the Carrier Working Group | To incorporate appropriate modifications |
| *PSC-37-06-00015-P | . . . . . . . . . . . exempt | Procedures for estimation of customer bills by Rochester Gas and Electric Corporation | To consider estimation procedures |
| *PSC-37-06-00017-P | . . . . . . . . . . . exempt | Procedures for estimation of customer bills by Rochester Gas and Electric Corporation | To consider estimation procedures |

**Action Pending Index**                                          **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| | | | |
|---|---|---|---|
| *PSC-43-06-00014-P | . . . . . . . . . . . exempt | Electric delivery services by Strategic Power Management, Inc. | To determine the proper mechanism for the rate-recovery of costs |
| *PSC-04-07-00012-P | . . . . . . . . . . . exempt | Petition for rehearing by Orange and Rockland Utilities, Inc. | To clarify the order |
| *PSC-06-07-00015-P | . . . . . . . . . . . exempt | Meter reading and billing practices by Central Hudson Gas & Electric Corporation | To continue current meter reading and billing practices for electric service |
| *PSC-06-07-00020-P | . . . . . . . . . . . exempt | Meter reading and billing practices by Central Hudson Gas & Electric Corporation | To continue current meter reading and billing practices for gas service |
| *PSC-11-07-00010-P | . . . . . . . . . . . exempt | Investigation of the electric power outages by the Consolidated Edison Company of New York, Inc. | To implement the recommendations in the staff's investigation |
| *PSC-11-07-00011-P | . . . . . . . . . . . exempt | Storm-related power outages by Consolidated Edison Company of New York, Inc. | To modify the company's response to power outages, the timing for any such changes and other related matters |
| *PSC-17-07-00008-P | . . . . . . . . . . . exempt | Interconnection agreement between Verizon New York Inc. and BridgeCom International, Inc. | To amend the agreement |
| *PSC-18-07-00010-P | . . . . . . . . . . . exempt | Existing electric generating stations by Independent Power Producers of New York, Inc. | To repower and upgrade existing electric generating stations owned by Rochester Gas and Electric Corporation |
| *PSC-20-07-00016-P | . . . . . . . . . . . exempt | Tariff revisions and making rates permanent by New York State Electric & Gas Corporation | To seek rehearing |
| *PSC-21-07-00007-P | . . . . . . . . . . . exempt | Natural Gas Supply and Acquisition Plan by Corning Natural Gas Corporation | To revise the rates, charges, rules and regulations for gas service |
| *PSC-22-07-00015-P | . . . . . . . . . . . exempt | Demand Side Management Program by Consolidated Edison Company of New York, Inc. | To recover incremental program costs and lost revenue |
| *PSC-23-07-00022-P | . . . . . . . . . . . exempt | Supplier, transportation, balancing and aggregation service by National Fuel Gas Distribution Corporation | To explicitly state in the company's tariff that the threshold level of elective upstream transmission capacity is a maximum of 112,600 Dth/day of marketer-provided upstream capacity |
| *PSC-24-07-00012-P | . . . . . . . . . . . exempt | Gas Efficiency Program by the City of New York | To consider rehearing a decision establishing a Gas Efficiency Program |
| *PSC-39-07-00017-P | . . . . . . . . . . . exempt | Gas bill issuance charge by New York State Electric & Gas Corporation | To create a gas bill issuance charge unbundled from delivery rates |
| *PSC-41-07-00009-P | . . . . . . . . . . . exempt | Submetering of electricity rehearing | To seek reversal |
| *PSC-42-07-00012-P | . . . . . . . . . . . exempt | Energy efficiency program by Orange and Rockland Utilities, Inc. | To consider any energy efficiency program for Orange and Rockland Utilities, Inc.'s electric service |
| *PSC-42-07-00013-P | . . . . . . . . . . . exempt | Revenue decoupling by Orange and Rockland Utilities, Inc. | To consider a revenue decoupling mechanism for Orange and Rockland Utilities, Inc. |
| *PSC-45-07-00005-P | . . . . . . . . . . . exempt | Customer incentive programs by Orange and Rockland Utilities, Inc. | To establish a tariff provision |

**NYS Register/September 4, 2019**                                   **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| | | | |
|---|---|---|---|
| *PSC-02-08-00006-P | . . . . . . . . . . . exempt | Additional central office codes in the 315 area code region | To consider options for making additional codes |
| *PSC-03-08-00006-P | . . . . . . . . . . . exempt | Rehearing of the accounting determinations | To grant or deny a petition for rehearing of the accounting determinations |
| *PSC-04-08-00010-P | . . . . . . . . . . . exempt | Granting of easement rights on utility property by Central Hudson Gas & Electric Corporation | To grant easement rights to Millennium Pipeline Company, L.L.C. |
| *PSC-04-08-00012-P | . . . . . . . . . . . exempt | Marketing practices of energy service companies by the Consumer Protection Board and New York City Department of Consumer Affairs | To consider modifying the commission's regulation over marketing practices of energy service companies |
| *PSC-08-08-00016-P | . . . . . . . . . . . exempt | Transfer of ownership by Entergy Nuclear Fitzpatrick LLC, et al. | To consider the transfer |
| *PSC-12-08-00019-P | . . . . . . . . . . . exempt | Extend the provisions of the existing electric rate plan by Rochester Gas and Electric Corporation | To consider the request |
| *PSC-12-08-00021-P | . . . . . . . . . . . exempt | Extend the provisions of the existing gas rate plan by Rochester Gas and Electric Corporation | To consider the request |
| *PSC-13-08-00011-P | . . . . . . . . . . . exempt | Waiver of commission policy and NYSEG tariff by Turner Engineering, PC | To grant or deny Turner's petition |
| *PSC-13-08-00012-P | . . . . . . . . . . . exempt | Voltage drops by New York State Electric & Gas Corporation | To grant or deny the petition |
| *PSC-23-08-00008-P | . . . . . . . . . . . exempt | Petition requesting rehearing and clarification of the commission's April 25, 2008 order denying petition of public utility law project | To consider whether to grant or deny, in whole or in part, the May 7, 2008 Public Utility Law Project (PULP) petition for rehearing and clarification of the commission's April 25, 2008 order denying petition of Public Utility Law Project |
| *PSC-25-08-00007-P | . . . . . . . . . . . exempt | Policies and procedures regarding the selection of regulatory proposals to meet reliability needs | To establish policies and procedures regarding the selection of regulatory proposals to meet reliability needs |
| *PSC-25-08-00008-P | . . . . . . . . . . . exempt | Report on Callable Load Opportunities | Rider U report assessing callable load opportunities in New York City and Westchester County during the next 10 years |
| *PSC-28-08-00004-P | . . . . . . . . . . . exempt | Con Edison's procedure for providing customers access to their account information | To consider Con Edison's implementation plan and timetable for providing customers access to their account information |
| *PSC-31-08-00025-P | . . . . . . . . . . . exempt | Recovery of reasonable DRS costs from the cost mitigation reserve (CMR) | To authorize recovery of the DRS costs from the CMR |
| *PSC-32-08-00009-P | . . . . . . . . . . . exempt | The ESCO referral program for KEDNY to be implemented by October 1, 2008 | To approve, reject or modify, in whole or in part, KEDNY's recommended ESCO referral program |
| *PSC-33-08-00008-P | . . . . . . . . . . . exempt | Noble Allegany's request for lightened regulation | To consider Noble Allegany's request for lightened regulation as an electric corporation |
| *PSC-36-08-00019-P | . . . . . . . . . . . exempt | Land Transfer in the Borough of Manhattan, New York | To consider petition for transfer of real property to NYPH |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-39-08-00010-P | . . . . . . . . . . . exempt | RG&E's economic development plan and tariffs | Consideration of the approval of RG&E's economic development plan and tariffs |
| *PSC-40-08-00010-P | . . . . . . . . . . . exempt | Loans from regulated company to its parent | To determine if the cash management program resulting in loans to the parent should be approved |
| *PSC-41-08-00009-P | . . . . . . . . . . . exempt | Transfer of control of cable TV franchise | To determine if the transfer of control of Margaretville's cable TV subsidiary should be approved |
| *PSC-43-08-00014-P | . . . . . . . . . . . exempt | Annual Reconcilliation of Gas Expenses and Gas Cost Recoveries | The filings of various LDCs and municipalities regarding their Annual Reconciliation of Gas Expenses and Gas Cost Recoveries |
| *PSC-46-08-00008-P | . . . . . . . . . . . exempt | Property transfer in the Village of Avon, New York | To consider a petition for the transfer of street lighting and attached equipment to the Village of Avon, New York |
| *PSC-46-08-00010-P | . . . . . . . . . . . exempt | A transfer of indirect ownership interests in nuclear generation facilities | Consideration of approval of a transfer of indirect ownership interests in nuclear generation facilities |
| *PSC-46-08-00014-P | . . . . . . . . . . . exempt | The attachment of cellular antennae to an electric transmission tower | To approve, reject or modify the request for permission to attach cellular antennae to an electric transmission tower |
| *PSC-48-08-00005-P | . . . . . . . . . . . exempt | A National Grid high efficiency gas heating equipment rebate program | To expand eligibility to customers converting from oil to natural gas |
| *PSC-48-08-00008-P | . . . . . . . . . . . exempt | Petition for the master metering and submetering of electricity | To consider the request of Bay City Metering, to master meter & submeter electricity at 345 E. 81st St., New York, New York |
| *PSC-48-08-00009-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of PCV/ST to submeter electricity at Peter Cooper Village & Stuyvesant Town, New York, New York |
| *PSC-50-08-00018-P | . . . . . . . . . . . exempt | Market Supply Charge | A study on the implementation of a revised Market Supply Charge |
| *PSC-51-08-00006-P | . . . . . . . . . . . exempt | Commission's October 27, 2008 Order on Future of Retail Access Programs in Case 07-M-0458 | To consider a Petition for rehearing of the Commission's October 27, 2008 Order in Case 07-M-0458 |
| *PSC-51-08-00007-P | . . . . . . . . . . . exempt | Commission's October 27, 2008 Order in Cases 98-M-1343, 07-M-1514 and 08-G-0078 | To consider Petitions for rehearing of the Commission's October 27, 2008 Order in Cases 98-M-1343, 07-M-1514 and 08-G-0078 |
| *PSC-53-08-00011-P | . . . . . . . . . . . exempt | Use of deferred Rural Telephone Bank funds | To determine if the purchase of a softswitch by Hancock is an appropriate use of deferred Rural Telephone Bank funds |
| *PSC-53-08-00012-P | . . . . . . . . . . . exempt | Transfer of permanent and temporary easements at 549-555 North Little Tor Road, New City, NY | Transfer of permanent and temporary easements at 549-555 North Little Tor Road, New City, NY |
| *PSC-53-08-00013-P | . . . . . . . . . . . exempt | To transfer common stock and ownership | To consider transfer of common stock and ownership |
| *PSC-01-09-00015-P | . . . . . . . . . . . exempt | FCC decision to redefine service area of Citizens/Frontier | Review and consider FCC proposed redefinition of Citizens/Frontier service area |

**NYS Register/September 4, 2019**                                    **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| | | | |
|---|---|---|---|
| *PSC-02-09-00010-P | . . . . . . . . . . . exempt | Competitive classification of independent local exchange company, and regulatory relief appropriate thereto | To determine if Chazy & Westport Telephone Corporation more appropriately belongs in scenario 1 rather than scenario 2 |
| *PSC-05-09-00008-P | . . . . . . . . . . . exempt | Revenue allocation, rate design, performance metrics, and other non-revenue requirement issues | To consider any remaining non-revenue requirement issues related to the Company's May 9, 2008 tariff filing |
| *PSC-05-09-00009-P | . . . . . . . . . . . exempt | Numerous decisions involving the steam system including cost allocation, energy efficiency and capital projects | To consider the long term impacts on steam rates and on public policy of various options concerning the steam system |
| *PSC-06-09-00007-P | . . . . . . . . . . . exempt | Interconnection of the networks between Frontier Comm. and WVT Communications for local exchange service and exchange access | To review the terms and conditions of the negotiated agreement between Frontier Comm. and WVT Comm. |
| *PSC-07-09-00015-P | . . . . . . . . . . . exempt | Transfer certain utility assets located in the Town of Montgomery from plant held for future use to non-utility property | To consider the request to transfer certain utility assets located in the Town of Montgomery to non-utility assets |
| *PSC-07-09-00017-P | . . . . . . . . . . . exempt | Request for authorization to defer the incremental costs incurred in the restoration work resulting from the ice storm | To allow the company to defer the incremental costs incurred in the restoration work resulting from the ice storm |
| *PSC-07-09-00018-P | . . . . . . . . . . . exempt | Whether to permit the submetering of natural gas service to an industrial and commercial customer at Cooper Union, New York, NY | To consider the request of Cooper Union, to submeter natural gas at 41 Cooper Square, New York, New York |
| *PSC-12-09-00010-P | . . . . . . . . . . . exempt | Charges for commodity | To charge customers for commodity costs |
| *PSC-12-09-00012-P | . . . . . . . . . . . exempt | Charges for commodity | To charge customers for commodity costs |
| *PSC-13-09-00008-P | . . . . . . . . . . . exempt | Options for making additional central office codes available in the 718/347 numbering plan area | To consider options for making additional central office codes available in the 718/347 numbering plan area |
| *PSC-14-09-00014-P | . . . . . . . . . . . exempt | The regulation of revenue requirements for municipal utilities by the Public Service Commission | To determine whether the regulation of revenue requirements for municipal utilities should be modified |
| *PSC-16-09-00010-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of AMPS on behalf of Park Imperial to submeter electricity at 230 W. 56th Street, in New York, New York |
| *PSC-16-09-00020-P | . . . . . . . . . . . exempt | Whether SUNY's core accounts should be exempt from the mandatory assignment of local distribution company (LDC) capacity | Whether SUNY's core accounts should be exempt from the mandatory assignment of local distribution company (LDC) capacity |
| *PSC-17-09-00010-P | . . . . . . . . . . . exempt | Whether to permit the use of Elster REX2 solid state electric meter for use in residential and commerical accounts | To permit electric utilities in New York State to use the Elster REX2 |
| *PSC-17-09-00011-P | . . . . . . . . . . . exempt | Whether Brooklyn Navy Yard Cogeneration Partners, L.P. should be reimbursed by Con Edison for past and future use taxes | Whether Brooklyn Navy Yard Cogeneration Partners, L.P. should be reimbursed by Con Edison for past and future use taxes |
| *PSC-17-09-00012-P | . . . . . . . . . . . exempt | Petition for the submetering of gas at commercial property | To consider the request of Turner Construction, to submeter natural gas at 550 Short Ave., & 10 South St., Governors Island, NY |

**Action Pending Index**                                          **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-17-09-00014-P | . . . . . . . . . . . exempt | Benefit-cost framework for evaluating AMI programs prepared by the DPS Staff | To consider a benefit-cost framework for evaluating AMI programs prepared by the DPS Staff |
| *PSC-17-09-00015-P | . . . . . . . . . . . exempt | The construction of a tower for wireless antennas on land owned by National Grid | To approve, reject or modify the petition to build a tower for wireless antennas in the Town of Onondaga |
| *PSC-18-09-00012-P | . . . . . . . . . . . exempt | Petition for rehearing of Order approving the submetering of electricity | To consider the request of Frank Signore to rehear petition to submeter electricity at One City Place in White Plains, New York |
| *PSC-18-09-00013-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of Living Opportunities of DePaul to submeter electricity at E. Main St. located in Batavia, New York |
| *PSC-18-09-00017-P | . . . . . . . . . . . exempt | Approval of an arrangement for attachment of wireless antennas to the utility's transmission facilities in the City of Yonkers | To approve, reject or modify the petition for the existing wireless antenna attachment to the utility's transmission tower |
| *PSC-20-09-00016-P | . . . . . . . . . . . exempt | The recovery of, and accounting for, costs associated with the Companies' advanced metering infrastructure (AMI) pilots etc | To consider a filing of the Companies as to the recovery of, and accounting for, costs associated with it's AMI pilots etc |
| *PSC-20-09-00017-P | . . . . . . . . . . . exempt | The recovery of, and accounting for, costs associated with CHG&E's AMI pilot program | To consider a filing of CHG&E as to the recovery of, and accounting for, costs associated with it's AMI pilot program |
| *PSC-22-09-00011-P | . . . . . . . . . . . exempt | Cost allocation for Consolidated Edison's East River Repowering Project | To determine whether any changes are warranted in the cost allocation of Consolidated Edison's East River Repowering Project |
| *PSC-25-09-00005-P | . . . . . . . . . . . exempt | Whether to grant, deny, or modify, in whole or in part, the petition | Whether to grant, deny, or modify, in whole or in part, the petition |
| *PSC-25-09-00006-P | . . . . . . . . . . . exempt | Electric utility implementation plans for proposed web based SIR application process and project status database | To determine if the proposed web based SIR systems are adequate and meet requirements needed for implementation |
| *PSC-25-09-00007-P | . . . . . . . . . . . exempt | Electric rates for Consolidated Edison Company of New York, Inc | Consider a Petition for Rehearing filed by Consolidated Edison Company of New York, Inc |
| *PSC-27-09-00011-P | . . . . . . . . . . . exempt | Interconnection of the networks between Vernon and tw telecom of new york l.p. for local exchange service and exchange access. | To review the terms and conditions of the negotiated agreement between Vernon and tw telecom of new york l.p. |
| *PSC-27-09-00014-P | . . . . . . . . . . . exempt | Billing and payment for energy efficiency measures through utility bill | To promote energy conservation |
| *PSC-27-09-00015-P | . . . . . . . . . . . exempt | Interconnection of the networks between Oriskany and tw telecom of new york l.p. for local exchange service and exchange access | To review the terms and conditions of the negotiated agreement between Oriskany and tw telecom of new york l.p |
| *PSC-29-09-00011-P | . . . . . . . . . . . exempt | Consideration of utility compliance filings | Consideration of utility compliance filings |
| *PSC-32-09-00009-P | . . . . . . . . . . . exempt | Cost allocation for Consolidated Edison's East River Repowering Project | To determine whether any changes are warranted in the cost allocation of Consolidated Edison's East River Repowering Project |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-34-09-00016-P | . . . . . . . . . . . exempt | Recommendations made in the Management Audit Final Report | To consider whether to take action or recommendations contained in the Management Audit Final Report |
| *PSC-34-09-00017-P | . . . . . . . . . . . exempt | To consider the transfer of control of Plattsburgh Cablevision, Inc. d/b/a Charter Communications to CH Communications, LLC | To allow the Plattsburgh Cablevision, Inc. to distribute its equity interest in CH Communications, LLC |
| *PSC-36-09-00008-P | . . . . . . . . . . . exempt | The increase in the non-bypassable charge implemented by RG&E on June 1, 2009 | Considering exemptions from the increase in the non-bypassable charge implemented by RG&E on June 1, 2009 |
| *PSC-37-09-00015-P | . . . . . . . . . . . exempt | Sale of customer-generated steam to the Con Edison steam system | To establish a mechanism for sale of customer-generated steam to the Con Edison steam system |
| *PSC-37-09-00016-P | . . . . . . . . . . . exempt | Applicability of electronic signatures to Deferred Payment Agreements | To determine whether electronic signatures can be accepted for Deferred Payment Agreements |
| *PSC-39-09-00015-P | . . . . . . . . . . . exempt | Modifications to the $5 Bill Credit Program | Consideration of petition of National Grid to modify the Low Income $5 Bill Credit Program |
| *PSC-39-09-00018-P | . . . . . . . . . . . exempt | The offset of deferral balances with Positive Benefit Adjustments | To consider a petition to offset deferral balances with Positive Benefit Adjustments |
| *PSC-40-09-00013-P | . . . . . . . . . . . exempt | Uniform System of Accounts - request for deferral and amortization of costs | To consider a petition to defer and amortize costs |
| *PSC-51-09-00029-P | . . . . . . . . . . . exempt | Rules and guidelines for the exchange of retail access data between jurisdictional utilities and eligible ESCOs | To revise the uniform Electronic Data Interchange Standards and business practices to incorporate a contest period |
| *PSC-51-09-00030-P | . . . . . . . . . . . exempt | Waiver or modification of Capital Expenditure condition of merger | To allow the companies to expend less funds for capital improvement than required by the merger |
| *PSC-52-09-00006-P | . . . . . . . . . . . exempt | ACE's petition for rehearing for an order regarding generator-specific energy deliverability study methodology | To consider whether to change the Order Prescribing Study Methodology |
| *PSC-52-09-00008-P | . . . . . . . . . . . exempt | Approval for the New York Independent System Operator, Inc. to incur indebtedness and borrow up to $50,000,000 | To finance the renovation and construction of the New York Independent System Operator, Inc.'s power control center facilities |
| *PSC-05-10-00008-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of University Residences - Rochester, LLC to submeter electricity at 220 John Street, Henrietta, NY |
| *PSC-05-10-00015-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of 243 West End Avenue Owners Corp. to submeter electricity at 243 West End Avenue, New York, NY |
| *PSC-06-10-00022-P | . . . . . . . . . . . exempt | The Commission's Order of December 17, 2009 related to redevelopment of Consolidated Edison's Hudson Avenue generating facility | To reconsider the Commission's Order of December 17, 2009 related to redevelopment of the Hudson Avenue generating facility |
| *PSC-07-10-00009-P | . . . . . . . . . . . exempt | Petition to revise the Uniform Business Practices | To consider the RESA petition to allow rescission of a customer request to return to full utility service |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-08-10-00007-P | . . . . . . . . . . . exempt | Whether to grant, deny, or modify , in whole or in part, the rehearing petition filed in Case 06-E-0847 | Whether to grant, deny, or modify , in whole or in part, the rehearing petition filed in Case 06-E-0847 |
| *PSC-08-10-00009-P | . . . . . . . . . . . exempt | Consolidated Edison of New York, Inc. energy efficiency programs | To modify approved energy efficiency programs |
| *PSC-12-10-00015-P | . . . . . . . . . . . exempt | Recommendations made by Staff intended to enhance the safety of Con Edison's gas operations | To require that Con Edison implement the Staff recommendations intended to enhance the safety of Con Edison's gas operations |
| *PSC-14-10-00010-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of 61 Jane Street Owners Corporation to submeter Electricity at 61 Jane Street, Manhattan, NY |
| *PSC-16-10-00005-P | . . . . . . . . . . . exempt | To consider adopting and expanding mobile stray voltage testing requirements | Adopt additional mobile stray voltage testing requirements |
| *PSC-16-10-00007-P | . . . . . . . . . . . exempt | Interconnection of the networks between TDS Telecom and PAETEC Communications for local exchange service and exchange access | To review the terms and conditions of the negotiated agreement between TDS Telecom and PAETEC Communications |
| *PSC-16-10-00015-P | . . . . . . . . . . . exempt | Interconnection of the networks between Frontier and Choice One Communications for local exchange service and exchange access | To review the terms and conditions of the negotiated agreement between Frontier and Choice One Communications |
| *PSC-18-10-00009-P | . . . . . . . . . . . exempt | Electric utility transmission right-of-way management practices | To consider electric utility transmission right-of-way management practices |
| *PSC-19-10-00022-P | . . . . . . . . . . . exempt | Whether National Grid should be permitted to transfer a parcel of property located at 1 Eddy Street, Fort Edward, New York | To decide whether to approve National Grid's request to transfer a parcel of vacant property in Fort Edward, New York |
| *PSC-22-10-00006-P | . . . . . . . . . . . exempt | Requirement that Noble demonstrate that its affiliated electric corporations operating in New York are providing safe service | Consider requiring that Noble demonstrate that its affiliated electric corporations in New York are providing safe service |
| *PSC-22-10-00008-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of 48-52 Franklin Street to submeter electricity at 50 Franklin Street, New York, New York |
| *PSC-24-10-00009-P | . . . . . . . . . . . exempt | Verizon New York Inc. tariff regulations relating to voice messaging service | To remove tariff regulations relating to retail voice messaging service from Verizon New York Inc.'s tariff |
| *PSC-25-10-00012-P | . . . . . . . . . . . exempt | Reassignment of the 2-1-1 abbreviated dialing code | Consideration of petition to reassign the 2-1-1 abbreviated dialing code |
| *PSC-27-10-00016-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of 9271 Group, LLC to submeter electricity at 960 Busti Avenue, Buffalo, New York |
| *PSC-34-10-00003-P | . . . . . . . . . . . exempt | The modification of Central Hudson Gas & Electric Corporation's Enhanced Powerful Opportunities Program | The modification of Central Hudson Gas & Electric Corporation's Enhanced Powerful Opportunities Program |
| *PSC-34-10-00005-P | . . . . . . . . . . . exempt | Approval of a contract for $250,000 in tank repairs that may be a financing | To decide whether to approve a contract between the parties that may be a financing of $250,000 for tank repairs |

**Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-34-10-00006-P | ........... exempt | The modification of Central Hudson Gas & Electric Corporation's Enhanced Powerful Opportunities Program | The modification of Central Hudson Gas & Electric Corporation's Enhanced Powerful Opportunities Program |
| *PSC-36-10-00010-P | ........... exempt | Central Hudson's procedures, terms and conditions for an economic development plan | Consideration of Central Hudson's procedures, terms and conditions for an economic development plan |
| *PSC-40-10-00014-P | ........... exempt | Disposition of a state sales tax refund | To determine how much of a state sales tax refund should be retained by National Grid |
| *PSC-40-10-00021-P | ........... exempt | Whether to permit the submetering of natural gas service to a commercial customer at Quaker Crossing Mall | To permit the submetering of natural gas service to a commercial customer at Quaker Crossing Mall |
| *PSC-41-10-00018-P | ........... exempt | Amount of hourly interval data provided to Hourly Pricing customers who have not installed a phone line to read meter | Allow Central Hudson to provide less than a years worth of interval data and charge for manual meter reading for some customers |
| *PSC-41-10-00022-P | ........... exempt | Request for waiver of the individual living unit metering requirements at 5742 Route 5, Vernon, NY | Request for waiver of the individual living unit metering requirements at 5742 Route 5, Vernon, NY |
| *PSC-42-10-00011-P | ........... exempt | Petition for the submetering of electricity | To consider the request of 4858 Group, LLC to submeter electricity at 456 Main Street, Buffalo, New York |
| *PSC-43-10-00016-P | ........... exempt | Utility Access to Ducts, Conduit Facilities and Utility Poles | To review the complaint from Optical Communications Group |
| *PSC-44-10-00003-P | ........... exempt | Third and fourth stage gas rate increase by Corning Natural Gas Corporation | To consider Corning Natural Gas Corporation's request for a third and fourth stage gas rate increase |
| *PSC-51-10-00018-P | ........... exempt | Commission proceeding concerning three-phase electric service by all major electric utilities | Investigate the consistency of the tariff provisions for three-phase electric service for all major electric utilities |
| *PSC-11-11-00003-P | ........... exempt | The proposed transfer of 55.42 acres of land and $1.4 million of revenues derived from the rendition of public service | The proposed transfer of 55.42 acres of land and $1.4 million of revenues derived from the rendition of public service |
| *PSC-13-11-00005-P | ........... exempt | Exclude the minimum monthly bill component from the earnings test calculation | Exclude the minimum monthly bill component from the earnings test calculation |
| *PSC-14-11-00009-P | ........... exempt | Petition for the submetering of electricity | To consider the request of 83-30 118th Street to submeter electricity at 83-30 118th Street, Kew Gardens, New York |
| *PSC-19-11-00007-P | ........... exempt | Utility price reporting requirements related to the Commission's "Power to Choose" website | Modify the Commission's utility electric commodity price reporting requirements related to the "Power to Choose" website |
| *PSC-20-11-00012-P | ........... exempt | Petition for the submetering of electricity | To consider the request of KMW Group LLC to submeter electricity at 122 West Street, Brooklyn, New York |
| *PSC-20-11-00013-P | ........... exempt | Determining the reasonableness of Niagara Mohawk Power Corporation d/b/a National Grid 's make ready charges | To determine if the make ready charges of Niagara Mohawk Power Corporation d/b/a National Grid are reasonable |

Action Pending Index                                                    NYS Register/September 4, 2019

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| | | | |
|---|---|---|---|
| *PSC-22-11-00004-P | . . . . . . . . . . . exempt | Whether to permit the use of the Sensus accWAVE for use in residential gas meter applications | To permit gas utilities in New York State to use the Sensus accWAVE diaphragm gas meter |
| *PSC-26-11-00007-P | . . . . . . . . . . . exempt | Water rates and charges | To approve an increase in annual revenues by about $25,266 or 50% |
| *PSC-26-11-00009-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity at commercial property | To consider the request of by Hoosick River Hardwoods, LLC to submeter electricity at 28 Taylor Avenue, in Berlin, New York |
| *PSC-26-11-00012-P | . . . . . . . . . . . exempt | Waiver of generation retirement notice requirements | Consideration of waiver of generation retirement notice requirements |
| *PSC-29-11-00011-P | . . . . . . . . . . . exempt | Petition requesting the Commssion reconsider its May 19, 2011 Order and conduct a hearing, and petition to stay said Order. | To consider whether to grant or deny, in whole or in part, Windstream New York's Petition For Reconsideration and Rehearing. |
| *PSC-35-11-00011-P | . . . . . . . . . . . exempt | Whether to permit Consolidated Edison a waiver to commission regulations Part 226.8 | Permit Consolidated Edison to conduct a inspection program in lieu of testing the accuracy of Category C meters |
| *PSC-36-11-00006-P | . . . . . . . . . . . exempt | To consider expanding mobile stray voltage testing requirements | Adopt additional mobile stray voltage testing requirements |
| *PSC-38-11-00002-P | . . . . . . . . . . . exempt | Operation and maintenance procedures pertaining to steam trap caps | Adopt modified steam operation and maintenance procedures |
| *PSC-38-11-00003-P | . . . . . . . . . . . exempt | Waiver of certain provisions of the electric service tariffs of Con Edison | Consideration of waiver of certain provisions of the electric service tariffs of Con Edison |
| *PSC-40-11-00010-P | . . . . . . . . . . . exempt | Participation of regulated local exchange carriers in the New York Data Exchange, Inc. (NYDE) | Whether to partially modify its order requiring regulated local exchange carriers' participation NYDE |
| *PSC-40-11-00012-P | . . . . . . . . . . . exempt | Granting of transfer of plant in-service to a regulatory asset | To approve transfer and recovery of unamortized plant investment |
| *PSC-42-11-00018-P | . . . . . . . . . . . exempt | Availability of telecommunications services in New York State at just and reasonable rates | Providing funding support to help ensure availability of affordable telecommunications service throughout New York |
| *PSC-43-11-00012-P | . . . . . . . . . . . exempt | Transfer of outstanding shares of stock | Transfer the issued outstanding shares of stock of The Meadows at Hyde Park Water-Works Corporation to HPWS, LLC |
| *PSC-47-11-00007-P | . . . . . . . . . . . exempt | Remedying miscalculations of delivered gas as between two customer classes | Consideration of Con Edison's proposal to address inter-class delivery imbalances resulting from past Company miscalculations |
| *PSC-48-11-00007-P | . . . . . . . . . . . exempt | Transfer of controlling interests in generation facilities from Dynegy to PSEG | Consideration of the transfer of controlling interests in electric generation facilities from Dynegy to PSEG |
| *PSC-48-11-00008-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of To Better Days, LLC to submeter electricity at 37 East 4th Street, New York, New York |
| *PSC-01-12-00007-P | . . . . . . . . . . . exempt | The New York State Reliability Council's revisions to its rules and measurements | To adopt revisions to various rules and measurements of the New York State Reliability Council |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| | | | |
|---|---|---|---|
| *PSC-01-12-00008-P | . . . . . . . . . . . exempt | Transfer of real property and easements from NMPNS to NMP3 | Consideration of the transfer of real property and easements from NMPNS to NMP3 |
| *PSC-01-12-00009-P | . . . . . . . . . . . exempt | Recovery of expenses related to the expansion of Con Edison's ESCO referral program, PowerMove | To determine how and to what extent expenses related to the Expansion of Con Edison's ESCO referral program should be recovered |
| *PSC-11-12-00002-P | . . . . . . . . . . . exempt | Whether to grant, deny or modify, in whole or part, Hegeman's petition for a waiver of Commission policy and Con Edison tariff | Whether to grant, deny or modify, in whole or part, Hegeman's petition for a waiver of Commission policy and Con Edison tariff |
| *PSC-11-12-00005-P | . . . . . . . . . . . exempt | Transfer of land and water supply assets | Transfer the land and associated water supply assets of Groman Shores, LLC to Robert Groman |
| *PSC-13-12-00005-P | . . . . . . . . . . . exempt | Authorization to transfer certain real property | To decide whether to approve the transfer of certain real property |
| *PSC-19-12-00023-P | . . . . . . . . . . . exempt | Petition for approval pursuant to Section 70 for the sale of goods with an original cost of less than $100,000 | To consider whether to grant, deny or modify, in whole or in part, the petition filed by Orange and Rockland Utilities, Inc. |
| *PSC-21-12-00006-P | . . . . . . . . . . . exempt | Tariff filing requirements and refunds | To determine if certain agreements should be filed pursuant to the Public Service Law and if refunds are warranted |
| *PSC-21-12-00011-P | . . . . . . . . . . . exempt | Whether to grant, deny or modify, in whole or part, the petition for waiver of tariff Rules 8.6 and 47 | Whether to grant, deny or modify, in whole or part, the petition for waiver of tariff Rules 8.6 and 47 |
| *PSC-23-12-00007-P | . . . . . . . . . . . exempt | The approval of a financing upon a transfer to Alliance of upstream ownership interests in a generation facility | To consider the approval of a financing upon a transfer to Alliance of upstream ownership interests in a generation facility |
| *PSC-23-12-00009-P | . . . . . . . . . . . exempt | Over earnings sharing between rate payers and shareholders | To establish an Earnings Sharing Mechanism to be applied following the conclusion of Corning's rate plan |
| *PSC-27-12-00012-P | . . . . . . . . . . . exempt | Implementation of recommendations made in a Management Audit Report | To consider implementation of recommendations made in a Management Audit Report |
| *PSC-28-12-00013-P | . . . . . . . . . . . exempt | Exemption of reliability reporting statistics for the purpose of the 2012 Reliability Performance Mechanism | Consideration of Orange and Rockland Utilities request for exemption of the 2012 reliability reporting statistics |
| *PSC-29-12-00019-P | . . . . . . . . . . . exempt | Waiver of 16 NYCRR 894.1 through 894.4 | To allow the Town of Hamden to waive certain preliminary franchising procedures to expedite the franchising process. |
| *PSC-30-12-00010-P | . . . . . . . . . . . exempt | Waiver of 16 NYCRR 894.1 through 894.4 | To allow the Town of Andes to waive certain preliminary franchising procedures to expedite the franchising process |
| *PSC-33-12-00009-P | . . . . . . . . . . . exempt | Telecommunications companies ability to attach to utility company poles | Consideration of Tech Valley's ability to attach to Central Hudson poles |
| *PSC-37-12-00009-P | . . . . . . . . . . . exempt | Proposed modification by Con Edison of its procedures to calculate estimated bills to its customers | Proposed modification by Con Edison of its procedures to calculate estimated bills to its customers |

Action Pending Index

NYS Register/September 4, 2019

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| | | | |
|---|---|---|---|
| *PSC-42-12-00009-P | . . . . . . . . . . . exempt | Regulation of Gipsy Trail Club, Inc.'s long-term financing agreements | To exempt Gipsy Trail Club, Inc. from Commission regulation of its financing agreements |
| *PSC-45-12-00008-P | . . . . . . . . . . . exempt | Whether to grant, deny or modify, in whole or part, ESHG's petition for a waiver of Commission policy and RG&E tariff | Whether to grant, deny or modify, in whole or part, ESHG's petition for a waiver of Commission policy and RG&E tariff |
| *PSC-45-12-00010-P | . . . . . . . . . . . exempt | Whether to grant, deny or modify, in whole or in part the petition of Con Edison to grant easements to Millwood Fire District | Whether to grant, deny or modify, in whole or in part the petition of Con Edison to grant easements to Millwood Fire District |
| *PSC-50-12-00003-P | . . . . . . . . . . . exempt | Affiliate standards for Corning Natural Gas Corporation | To resolve issues raised by Corning Natural Gas Corporation in its petition for rehearing |
| *PSC-04-13-00006-P | . . . . . . . . . . . exempt | Expansion of mandatory day ahead hourly pricing for customers of Orange and Rockland Utilities with demands above 100 kW | To consider the expansion of mandatory day ahead hourly pricing for customers with demands above 100 kW |
| *PSC-04-13-00007-P | . . . . . . . . . . . exempt | Authorization to transfer certain real property. | To decide whether to approve the transfer of certain real property. |
| *PSC-06-13-00008-P | . . . . . . . . . . . exempt | Verizon New York Inc.'s retail service quality | To investigate Verizon New York Inc.'s retail service quality |
| *PSC-08-13-00012-P | . . . . . . . . . . . exempt | Filing requirements for certain Article VII electric facilities | To ensure that applications for certain electric transmission facilities contain pertinent information |
| *PSC-08-13-00014-P | . . . . . . . . . . . exempt | Uniform System of Accounts - Request for Accounting Authorization | To allow the company to defer an item of expense or capital beyond the end of the year in which it was incurred |
| *PSC-12-13-00007-P | . . . . . . . . . . . exempt | Protecting company water mains | To allow the company to require certain customers to make changes to the electrical grounding system at their homes |
| *PSC-13-13-00008-P | . . . . . . . . . . . exempt | The potential waiver of 16 NYCRR 255.9221(d) completion of integrity assessments for certain gas transmission lines. | To determine whether a waiver of the timely completion of certain gas transmission line integrity assessments should be granted. |
| *PSC-18-13-00007-P | . . . . . . . . . . . exempt | Whether Demand Energy Networks energy storage systems should be designated technologies for standby rate eligibility purposes | Whether Demand Energy Networks energy storage systems should be designated technologies for standby rate eligibility purposes |
| *PSC-21-13-00003-P | . . . . . . . . . . . exempt | To consider policies that may impact consumer acceptance and use of electric vehicles | To consider and further develop policies that may impact consumer acceptance and use of electric vehicles |
| *PSC-21-13-00005-P | . . . . . . . . . . . exempt | To implement an abandonment of Windover's water system | To approve the implementation of abandonment of Windover's water system |
| *PSC-21-13-00008-P | . . . . . . . . . . . exempt | Rates of National Fuel Gas Distribution Corporation | To make the rates of National Fuel Gas Distribution Corporation temporary, subject to refund, if they are found to be excessive |
| *PSC-21-13-00009-P | . . . . . . . . . . . exempt | Reporting requirements for natural gas local distribution companies | To help ensure efficient and economic expansion of the natural gas system as appropriate |

**NYS Register/September 4, 2019**                                             **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-22-13-00009-P | . . . . . . . . . . . exempt | On remand from New York State court litigation, determine the recovery of certain deferred amounts owed NFG by ratepayers | On remand, to determine the recovery of certain deferral amounts owed NFG from ratepayers |
| *PSC-23-13-00005-P | . . . . . . . . . . . exempt | Waiver of partial payment, directory database distribution, service quality reporting, and service termination regulations | Equalize regulatory treatment based on level of competition and practical considerations |
| *PSC-25-13-00008-P | . . . . . . . . . . . exempt | To deny, grant or modify, in whole or in part, Central Hudson's rehearing request. | To deny, grant or modify, in whole or in part, Central Hudson's rehearing request. |
| *PSC-25-13-00009-P | . . . . . . . . . . . exempt | Provision by utilities of natural gas main and service lines. | To help ensure efficient and economic expansion of the natural gas system as appropriate. |
| *PSC-25-13-00012-P | . . . . . . . . . . . exempt | To deny, grant or modify, in whole or in part, Central Hudson's rehearing request. | To deny, grant or modify, in whole or in part, Central Hudson's rehearing request. |
| *PSC-27-13-00014-P | . . . . . . . . . . . exempt | Columbia Gas Transmission Corporation Cost Refund | For approval for temporary waiver of tariff provisions regarding its Columbia Gas Transmission Corporation cost refund. |
| *PSC-28-13-00014-P | . . . . . . . . . . . exempt | Provision for the recovery and allocation of costs of transmission projects that reduce congestion on certain interfaces | To consider the recovery and allocation of costs of transmission projects that reduce congestion on certain interfaces |
| *PSC-28-13-00016-P | . . . . . . . . . . . exempt | The request of NGT for lightened regulation as a gas corporation. | To consider whether to approve, reject, or modify the request of Niagara gas transport of Lockport, NY LLC. |
| *PSC-28-13-00017-P | . . . . . . . . . . . exempt | The request by TE for waiver of regulations requiring that natural gas be odorized in certain gathering line segments | Consider the request by TE for waiver of regulations that gas be odorized in certain lines |
| *PSC-32-13-00009-P | . . . . . . . . . . . exempt | To consider the definition of "misleading or deceptive conduct" in the Commission's Uniform Business Practices | To consider the definition of "misleading or deceptive conduct" in the Commission's Uniform Business Practices |
| *PSC-32-13-00012-P | . . . . . . . . . . . exempt | To consider whether NYSEG should be required to undertake actions to protect its name and to minimize customer confusion | To consider whether NYSEG should be required to undertake actions to protect its name and to minimize customer confusion |
| *PSC-33-13-00027-P | . . . . . . . . . . . exempt | Waive underground facility requirements for new construction in residential subdivisions to allow for overhead electric lines. | Determine whether Chapin Lumberland, LLC subdivision will be allowed overhead electric distribution and service lines. |
| *PSC-33-13-00029-P | . . . . . . . . . . . exempt | Deferral of incremental costs associated with the restoration of steam service following Superstorm Sandy. | To consider a petition by Con Edison to defer certain incremental steam system restoration costs relating to Superstorm Sandy. |
| *PSC-34-13-00004-P | . . . . . . . . . . . exempt | Escrow account and surcharge to fund extraordinary repairs | To approve the establishment of an escrow account and surcharge |
| *PSC-42-13-00013-P | . . . . . . . . . . . exempt | Failure to Provide Escrow Information | The closure of the Escrow Account |
| *PSC-42-13-00015-P | . . . . . . . . . . . exempt | Failure to Provide Escrow Information | The closure of the Escrow Account |
| *PSC-43-13-00015-P | . . . . . . . . . . . exempt | Petition for submetering of electricity | To consider the request of 2701 Kingsbridge Terrace L.P. to submeter electricity at 2701 Kingsbridge Terrace, Bronx, N.Y. |

**Action Pending Index**                                        **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-45-13-00021-P | . . . . . . . . . . . exempt | Investigation into effect of bifurcation of gas and electric utility service on Long Island. | To consider a Petition for an investigation into effect of bifurcation of gas and electric utility service on Long Island. |
| *PSC-45-13-00022-P | . . . . . . . . . . . exempt | Waiver of PSC regulations, 16 NYCRR section 88.4(a)(4) | To consider a waiver of certain regulations relating to the content of an application for transmission line siting |
| *PSC-45-13-00023-P | . . . . . . . . . . . exempt | Waiver of PSC regulations, 16 NYCRR section 88.4(a)(4). | To consider a waiver of certain regulations relating to the content of an application for transmission line siting |
| *PSC-45-13-00024-P | . . . . . . . . . . . exempt | Waiver of PSC regulations, 16 NYCRR section 88.4(a)(4); waiver of filing deadlines. | To consider a waiver of certain regulations relating to the content of an application for transmission line siting |
| *PSC-45-13-00025-P | . . . . . . . . . . . exempt | Waiver of PSC regulations, 16 NYCRR section 88.4(a)(4). | To consider a waiver of certain regulations relating to the content of an application for transmission line siting |
| *PSC-47-13-00009-P | . . . . . . . . . . . exempt | Petition for submetering of electricity. | To consider the request of Hegeman Avenue Housing L.P. to submeter electricity at 39 Hegeman Avenue, Brooklyn, N.Y. |
| *PSC-47-13-00012-P | . . . . . . . . . . . exempt | Conditioning,restricting or prohibiting the purchase of services by NYSEG and RG&E from certain affiliates. | Consideration of conditioning,restricting or prohibiting the purchase of services by NYSEG and RG&E from certain affiliates. |
| *PSC-49-13-00008-P | . . . . . . . . . . . exempt | Authorization to transfer all of Crystal Water Supply Company, Inc. stocks to Essel Infra West Inc. | To allow Crystal Water Supply Company, Inc to transfer all of its issued and outstanding stocks to Essel Infra West Inc. |
| *PSC-51-13-00009-P | . . . . . . . . . . . exempt | Consolidated Edison proposing to use data from a test period ending September 30, 2013 to support its next rate filing. | To ensure there is a reasonable basis for data submitted in support of a request for a change in rates. |
| *PSC-51-13-00010-P | . . . . . . . . . . . exempt | Consolidated Edison proposing to use data from a test period ending September 30, 2013 to support its next rate filing. | To ensure there is a reasonable basis for data submitted in support of a request for a change in rates. |
| *PSC-51-13-00011-P | . . . . . . . . . . . exempt | Consolidated Edison proposing to use data from a test period ending September 30, 2013 to support its next rate filing. | To ensure there is a reasonable basis for data submitted in support of a request for a change in rates. |
| *PSC-52-13-00012-P | . . . . . . . . . . . exempt | The development of reliability contingency plan(s) to address the potential retirement of Indian Point Energy Center (IPEC). | To address the petition for rehearing and reconsideration/motion for clarification of the IPEC reliability contingency plan(s). |
| *PSC-52-13-00015-P | . . . . . . . . . . . exempt | To enter into a loan agreement with the banks for up to an amount of $94,000. | To consider allowing Knolls Water Company to enter into a long-term loan agreement. |
| *PSC-05-14-00010-P | . . . . . . . . . . . exempt | The New York State Reliability Council's revisions to its rules and measurements | To adopt revisions to various rules and measurements of the New York State Reliability Council |
| *PSC-07-14-00008-P | . . . . . . . . . . . exempt | Petition for submetering of electricity | To consider the request of Greater Centennial Homes HDFC, Inc. to submeter electricity at 102, 103 and 106 W 5th Street, et al. |
| *PSC-07-14-00012-P | . . . . . . . . . . . exempt | Water rates and charges | Implementation of Long-Term Water Supply Surcharge to recover costs associated with the Haverstraw Water Supply Project |

**NYS Register/September 4, 2019**                                    **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-08-14-00015-P | exempt | Verizon New York Inc.'s service quality and Customer Trouble Report Rate (CTRR) levels at certain central office entities | To improve Verizon New York Inc.'s service quality andthe Customer Trouble Report Rate levels at certain central office entities |
| *PSC-10-14-00006-P | exempt | Actions to facilitate the availability of ESCO value-added offerings, ESCO eligibility and ESCO compliance | To facilitate ESCO value-added offerings and to make changes to ESCO eligibility and to ensure ESCO compliance |
| *PSC-11-14-00003-P | exempt | Provision for the recovery and allocation of costs of transmission projects that reduce congestion on certain interfaces | To consider the recovery and allocation of costs of transmission projects that reduce congestion on certain interfaces |
| *PSC-16-14-00014-P | exempt | Whether to order NYSEG to provide gas service to customers when an expanded CPCN is approved and impose PSL 25-a penalties. | To order gas service to customers in the Town of Plattsburgh after approval of a town wide CPCN and to impose penalties. |
| *PSC-16-14-00015-P | exempt | Whether Central Hudson should be permitted to defer obligations of the Order issued on October 18, 2013 in Case 13-G-0336. | Consideration of the petition by Central Hudson to defer reporting obligations of the October 18, 2013 Order in Case 13-G-0336 |
| *PSC-17-14-00003-P | exempt | Con Edison's Report on its 2013 performance under the Electric Service Reliability Performance Mechanism | Con Edison's Report on its 2013 performance under the Electric Service Reliability Performance Mechanism |
| *PSC-17-14-00004-P | exempt | To consider certain portions of petitions for rehearing, reconsideration and/or clarification | To consider certain portions of petitions for rehearing, reconsideration and/or clarification |
| *PSC-17-14-00007-P | exempt | To consider petitions for rehearing, reconsideration and/or clarification | To consider petitions for rehearing, reconsideration and/or clarification |
| *PSC-17-14-00008-P | exempt | To consider certain portions of petitions for rehearing, reconsideration and/or clarification | To consider certain portions of petitions for rehearing, reconsideration and/or clarification |
| *PSC-19-14-00014-P | exempt | Market Supply Charge | To make tariff revisions to the Market Supply Charge for capacity related costs |
| *PSC-19-14-00015-P | exempt | Whether to permit the use of the Sensus accuWAVE for use in residential and commercial gas meter applications | To permit gas utilities in New York State to use the Sensus accuWAVE 415TC gas meter |
| *PSC-22-14-00013-P | exempt | Petition to transfer and merge systems, franchises and assets. | To consider the Comcast and Time Warner Cable merger and transfer of systems, franchises and assets. |
| *PSC-23-14-00010-P | exempt | Whether to permit the use of the GE Dresser Series B3-HPC 11M-1480 rotary gas met for use in industrial gas meter applications | To permit gas utilities in New York State to use the GE Dresser Series B3-HPC 11M-1480 rotary gas meter |
| *PSC-23-14-00014-P | exempt | Waiver of the negative revenue adjustment associated with KEDLI's 2013 Customer Satisfaction Performance Metric | Consideration of KEDLI's waiver request pertaining to its 2013 performance under its Customer Satisfaction Metric |
| *PSC-24-14-00005-P | exempt | To examine LDC's performance and performance measures. | To improve gas safety performance. |
| *PSC-26-14-00013-P | exempt | Waiver of RG&E's tariffed definition of emergency generator. | To consider waiver of RG&E's tariffed definition of emergency generator. |
| *PSC-26-14-00020-P | exempt | New electric utility backup service tariffs and standards for interconnection may be adopted. | To encourage development of microgrids that enhance the efficiency, safety, reliability and resiliency of the electric grid. |

**Action Pending Index**                                                    **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-26-14-00021-P | exempt | Consumer protections, standards and protocols pertaining to access to customer data may be established. | To balance the need for the information necessary to support a robust market with customer privacy concerns. |
| *PSC-28-14-00014-P | exempt | Petition to transfer systems, franchises and assets. | To consider the Comcast and Charter transfer of systems, franchise and assets. |
| *PSC-30-14-00023-P | exempt | Whether to permit the use of the Sensus iPERL Fire Flow Meter. | Pursuant to 16 NYCRR Part 500.3 , it is necessary to permit the use of the Sensus iPERL Fire Flow Meter. |
| *PSC-30-14-00026-P | exempt | Petition for a waiver to master meter electricity. | Considering the request of Renaissance Corporation of to master meter electricity at 100 Union Drive,Albany, NY. |
| *PSC-31-14-00004-P | exempt | To transfer 100% of the issued and outstanding stock from Vincent Cross to Bonnie and Michael Cross | To transfer 100% of the issued and outstanding stock from Vincent Cross to Bonnie and Michael Cross |
| *PSC-32-14-00012-P | exempt | Whether to grant or deny, in whole or in part, the Connect New York Coalition's petition | To consider the Connect New York Coalition's petition seeking a formal investigation and hearings |
| *PSC-35-14-00004-P | exempt | Regulation of a proposed electricity generation facility located in the Town of Brookhaven, NY | To consider regulation of a proposed electricity generation facility located in the Town of Brookhaven, NY |
| *PSC-35-14-00005-P | exempt | Whether to permit the use of the Sensus iConA electric meter | Pursuant to 16 NYCRR Parts 92 and 93, Commission approval is necessary to permit the use of the Sensus iConA electric meter |
| *PSC-36-14-00009-P | exempt | Modification to the Commission's Electric Safety Standards. | To consider revisions to the Commission's Electric Safety Standards. |
| *PSC-38-14-00003-P | exempt | Whether to approve, reject or modify, in whole or in part a time-sensitive rate pilot program. | Whether to approve, reject or modify, in whole or in part a time-sensitive rate pilot program. |
| *PSC-38-14-00004-P | exempt | The study and petition of Con Edison regarding use, accounting and ratemaking treatment for 11-23 and 2-28 Hudson Ave. Brooklyn. | The study and petition of Con Edison regarding use, accounting and ratemaking treatment for 11-23 and 2-28 Hudson Ave. Brooklyn. |
| *PSC-38-14-00005-P | exempt | Action on the report and petition of Con Edison regarding the Storm Hardening and Resiliency Collaborative, Phase 2. | Action on the report and petition of Con Edison regarding the Storm Hardening and Resiliency Collaborative, Phase 2. |
| *PSC-38-14-00007-P | exempt | Whether to expand Con Edison's low income program to include Medicaid recipients. | Whether to expand Con Edison's low income program to include Medicaid recipients. |
| *PSC-38-14-00008-P | exempt | The study and petition of Con Edison regarding use, accounting and ratemaking treatment for 11-23 and 2-28 Hudson Ave. Brooklyn. | The study and petition of Con Edison regarding use, accounting and ratemaking treatment for 11-23 and 2-28 Hudson Ave. Brooklyn. |
| *PSC-38-14-00010-P | exempt | Inter-carrier telephone service quality standard and metrics and administrative changes. | To review recommendations from the Carrier Working Group and incorporate appropriate modifications to the existing Guidelines. |
| *PSC-38-14-00012-P | exempt | Action on the report and petition of Con Edison regarding the Storm Hardening and Resiliency Collaborative, Phase 2. | Action on the report and petition of Con Edison regarding the Storm Hardening and Resiliency Collaborative, Phase 2. |

NYS Register/September 4, 2019                                                    Action Pending Index

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-39-14-00020-P | . . . . . . . . . . . exempt | Whether to permit the use of the Mueller Systems 400 Series and 500 Series of water meters | Pursuant to 16 NYCRR section 500.3, whether to permit the use of the Mueller Systems 400, and 500 Series of water meters |
| *PSC-40-14-00008-P | . . . . . . . . . . . exempt | To consider granting authorization for Buy Energy Direct to resume marketing to residential customers. | To consider granting authorization for Buy Energy Direct to resume marketing to residential customers. |
| *PSC-40-14-00009-P | . . . . . . . . . . . exempt | Whether to permit the use of the Itron Open Way Centron Meter with Hardware 3.1 for AMR and AMI functionality. | Pursuant to 16 NYCRR Parts 93, is necessary to permit the use of the Itron Open Way Centron Meter with Hardware 3.1. |
| *PSC-40-14-00011-P | . . . . . . . . . . . exempt | Late Payment Charge. | To modify Section 7.6 - Late Payment Charge to designate a specific time for when a late payment charge is due. |
| *PSC-40-14-00013-P | . . . . . . . . . . . exempt | Regulation of a proposed natural gas pipeline and related facilities located in the Town of Ticonderoga, NY. | To consider regulation of a proposed natural gas pipeline and related facilities located in the Town of Ticonderoga, NY. |
| *PSC-40-14-00014-P | . . . . . . . . . . . exempt | Waiver of 16 NYCRR Sections 894.1 through 894.4(b)(2) | To allow the Town of Goshen, NY, to waive certain preliminary franchising procedures to expedite the franchising process. |
| *PSC-40-14-00015-P | . . . . . . . . . . . exempt | Late Payment Charge. | To modify Section 6.6 - Late Payment Charge to designate a specific time for when a late payment charge is due. |
| *PSC-42-14-00003-P | . . . . . . . . . . . exempt | Annual Reconciliation of Gas Expenses and Gas Cost Recoveries | The filings of various LDCs and municipalities regarding their Annual Reconciliation of Gas Expenses and Gas Cost Recoveries |
| *PSC-42-14-00004-P | . . . . . . . . . . . exempt | Winter Bundled Sales Service Option | To modify SC-11 to remove language relating to fixed storage charges in the determination of the Winter Bundled Sales charge |
| *PSC-48-14-00014-P | . . . . . . . . . . . exempt | Considering the recommendations contained in Staff' s electric outage investigation report for MNRR, New Haven Line. | To consider the recommendations contained in Staff's electric outage investigation report for MNRR, New Haven Line. |
| *PSC-52-14-00019-P | . . . . . . . . . . . exempt | Petition for a waiver to master meter electricity. | Considering the request of 614 South Crouse Avenue, LLC to master meter electricity at 614 South Crouse Avenue, Syracuse, NY.. |
| *PSC-01-15-00014-P | . . . . . . . . . . . exempt | State Universal Service Fund Disbursements | To consider Edwards Telephone Company's request for State Universal Service Fund disbursements |
| *PSC-08-15-00009-P | . . . . . . . . . . . exempt | Approval of a surcharge. | To allow or disallow Emerald Green Lake Louise Marie Water Company, Inc. for a surcharge. |
| *PSC-08-15-00010-P | . . . . . . . . . . . exempt | Request pertaining to the lawfulness of National Grid USA continuing its summary billing program. | To grant, deny, or modify URAC Rate Consultants' request that National Grid cease its summary billing program. |
| *PSC-10-15-00007-P | . . . . . . . . . . . exempt | Notification concerning tax refunds | To consider Verizon New York Inc.'s partial rehearing or reconsideration request regarding retention of property tax refunds |

**Action Pending Index**                                                    **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-10-15-00008-P | . . . . . . . . . . . exempt | Whether to waive Policy on Test Periods in Major Rate Proceedings and provide authority to file tariff changes | Whether to waive Policy on Test Periods in Major Rate Proceedings and provide authority to file tariff changes |
| *PSC-13-15-00024-P | . . . . . . . . . . . exempt | Whether Leatherstocking should be permitted to recover a shortfall in earnings | To decide whether to approve Leatherstocking's request to recover a shortfall in earnings |
| *PSC-13-15-00026-P | . . . . . . . . . . . exempt | Whether to permit the use of the Sensus Smart Point Gas AMR/AMI product | To permit the use of the Sensus Smart Point Gas AMR/AMI product |
| *PSC-13-15-00027-P | . . . . . . . . . . . exempt | Whether to permit the use of the Measurlogic DTS 310 electric submeter | To permit the use of the Measurlogic DTS 310 submeter |
| *PSC-13-15-00028-P | . . . . . . . . . . . exempt | Whether to permit the use of the SATEC EM920 electric meter | To permit necessary to permit the use of the SATEC EM920 electric meter |
| *PSC-13-15-00029-P | . . . . . . . . . . . exempt | Whether to permit the use the Triacta Power Technologies 6103, 6112, 6303, and 6312 electric submeters | To permit the use of the Triacta submeters |
| *PSC-17-15-00007-P | . . . . . . . . . . . exempt | To consider the petition of Leatherstocking Gas Company, LLC seeking authority to issue long-term debt of $2.75 million | To consider the petition of Leatherstocking Gas Company, LLC seeking authority to issue long-term debt of $2.75 million |
| *PSC-18-15-00005-P | . . . . . . . . . . . exempt | Con Edison's Report on its 2014 performance under the Electric Service Reliability Performance Mechanism | Con Edison's Report on its 2014 performance under the Electric Service Reliability Performance Mechanism |
| *PSC-19-15-00011-P | . . . . . . . . . . . exempt | Gas Safety Performance Measures and associated negative revenue adjustments | To update the performance measures applicable to KeySpan Gas East Corporation d/b/a National Grid |
| *PSC-22-15-00015-P | . . . . . . . . . . . exempt | To consider the request for waiver of the individual residential unit meter requirements and 16 NYCRR 96.1(a) | To consider the request for waiver of the individual residential unit meter requirements and 16 NYCRR 96.1(a) |
| *PSC-23-15-00005-P | . . . . . . . . . . . exempt | The modification of New York American Water's current rate plan | Whether to adopt the terms of the Joint Proposal submitted by NYAW and DPS Staff |
| *PSC-23-15-00006-P | . . . . . . . . . . . exempt | The modification of New York American Water's current rate plan | Whether to adopt the terms of the Joint Proposal submitted by NYAW and DPS Staff |
| *PSC-25-15-00008-P | . . . . . . . . . . . exempt | Notice of Intent to Submeter electricity. | To consider the request of 165 E 66 Residences, LLC to submeter electricity at 165 East 66th Street, New York, New York. |
| *PSC-29-15-00025-P | . . . . . . . . . . . exempt | Joint Petition for authority to transfer real property located at 624 West 132nd Street, New York, NY | Whether to authorize the proposed transfer of real property located at 624 West 132nd Street, New York, NY |
| *PSC-32-15-00006-P | . . . . . . . . . . . exempt | Development of a Community Solar Demonstration Project. | To approve the development of a Community Solar Demonstration Project. |
| *PSC-33-15-00009-P | . . . . . . . . . . . exempt | Remote net metering of a demonstration community net metering program. | To consider approval of remote net metering of a demonstration community net metering program. |
| *PSC-33-15-00012-P | . . . . . . . . . . . exempt | Remote net metering of a Community Solar Demonstration Project. | To consider approval of remote net metering of a Community Solar Demonstration Project. |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| | | | |
|---|---|---|---|
| *PSC-34-15-00021-P | . . . . . . . . . . exempt | Petition by NYCOM requesting assistance with obtaining information on CLECs and ESCOs | To consider the petition by NYCOM requesting assistance with obtaining information on CLECs and ESCOs |
| *PSC-35-15-00014-P | . . . . . . . . . . exempt | Consideration of consequences against Light Power & Gas, LLC for violations of the UBP | To consider consequences against Light Power & Gas, LLC for violations of the UBP |
| *PSC-37-15-00007-P | . . . . . . . . . . exempt | Submetered electricity | To consider the request of 89 Murray Street Ass. LLC, for clarification of the submetering order issued December 20, 2007 |
| *PSC-40-15-00014-P | . . . . . . . . . . exempt | Whether to permit the use of the Open Way 3.5 with cellular communications | To consider the use of the Open Way 3.5 electric meter, pursuant to 16 NYCRR Parts 92 and 93 |
| *PSC-42-15-00006-P | . . . . . . . . . . exempt | Deferral of incremental expenses associated with NERC's new Bulk Electric System (BES) compliance requirements approved by FERC. | Consideration of Central Hudson's request to defer incremental expenses associated with new BES compliance requirements. |
| *PSC-44-15-00028-P | . . . . . . . . . . exempt | Deferral of incremental expenses associated with new compliance requirements | Consideration of Central Hudson's request to defer incremental expenses associated with new compliance requirements |
| *PSC-47-15-00013-P | . . . . . . . . . . exempt | Whitepaper on Implementing Lightened Ratemaking Regulation. | Consider Whitepaper on Implementing Lightened Ratemaking Regulation. |
| *PSC-48-15-00010-P | . . . . . . . . . . exempt | Lightened and incidental regulation of a 55 MW electric and steam generating facility. | Consider the lightened and incidental regulation of a 55 MW electric and steam generating facility. |
| *PSC-48-15-00011-P | . . . . . . . . . . exempt | Proposal to retire Huntley Units 67 and 68 on March 1, 2016. | Consider the proposed retirement of Huntley Units 67 and 68. |
| *PSC-50-15-00006-P | . . . . . . . . . . exempt | The reduction of rates. | To consider the reduction of rates charged by Independent Water Works, Inc. |
| *PSC-50-15-00009-P | . . . . . . . . . . exempt | Notice of Intent to submeter electricity. | To consider the request to submeter electricity at 31-33 Lincoln Road and 510 Flatbush Avenue, Brooklyn, New York. |
| *PSC-51-15-00010-P | . . . . . . . . . . exempt | Modification of the EDP | To consider modifying the EDP |
| *PSC-01-16-00005-P | . . . . . . . . . . exempt | Proposed amendment to Section 5, Attachment 1.A of the Uniform Business Practices | To consider amendment to Section 5, Attachment 1.A of the Uniform Business Practices |
| *PSC-04-16-00007-P | . . . . . . . . . . exempt | Whether Hamilton Municipal Utilities should be permitted to construct and operate a municipal gas distribution facility. | Consideration of the petition by Hamilton Municipal Utilities to construct and operate a municipal gas distribution facility. |
| *PSC-04-16-00012-P | . . . . . . . . . . exempt | Proposal to mothball three gas turbines located at the Astoria Gas Turbine Generating Station. | Consider the proposed mothball of three gas turbines located at the Astoria Gas Turbine Generating Station. |
| *PSC-04-16-00013-P | . . . . . . . . . . exempt | Proposal to find that three gas turbines located at the Astoria Gas Turbine Generating Station are uneconomic. | Consider whether three gas turbines located at the Astoria Gas Turbine Generating Station are uneconomic. |
| *PSC-06-16-00013-P | . . . . . . . . . . exempt | Continued deferral of approximately $16,000,000 in site investigation and remediation costs. | To consider the continued deferral of approximately $16,000,000 in site investigation and remediation costs. |

**Action Pending Index**                                    **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-06-16-00014-P | . . . . . . . . . . . exempt | MEGA's proposed demonstration CCA program. | To consider MEGA's proposed demonstration CCA program. |
| *PSC-14-16-00008-P | . . . . . . . . . . . exempt | Resetting retail markets for ESCO mass market customers. | To ensure consumer protections with respect to residential and small non-residential ESCO customers. |
| *PSC-18-16-00013-P | . . . . . . . . . . . exempt | Amendments to the Uniform Business Practices of ESCOs. | To ensure consumer protection for ESCO customers. |
| *PSC-18-16-00014-P | . . . . . . . . . . . exempt | Amendments to the Uniform Business Practices of ESCOs. | To ensure consumer protection for ESCO customers. |
| *PSC-18-16-00015-P | . . . . . . . . . . . exempt | Petitions for rehearing of the Order Resetting Retail Energy Markets and Establishing Further Process. | To ensure consumer protections for ESCO customers. |
| *PSC-18-16-00016-P | . . . . . . . . . . . exempt | Amendments to the Uniform Business Practices of ESCOs. | To ensure consumer protection for ESCO customers. |
| *PSC-18-16-00018-P | . . . . . . . . . . . exempt | Amendments to the Uniform Business Practices of ESCOs. | To ensure consumer protection for ESCO customers. |
| *PSC-20-16-00008-P | . . . . . . . . . . . exempt | Consideration of consequences against Global Energy Group, LLC for violations of the Uniform Business Practices (UBP). | To consider consequences against Global Energy Group, LLC for violations of the Uniform Business Practices (UBP). |
| *PSC-20-16-00010-P | . . . . . . . . . . . exempt | Deferral and recovery of incremental expense. | To consider deferring costs of conducting leak survey and repairs for subsequent recovery. |
| *PSC-20-16-00011-P | . . . . . . . . . . . exempt | Enetics LD-1120 Non-Intrusive Load Monitoring Device in the Statewide Residential Appliance Metering Study. | To consider the use of the Enetics LD-1120 Non-Intrusive Load Monitoring Device. |
| *PSC-24-16-00009-P | . . . . . . . . . . . exempt | Petition to submeter gas service. | To consider the Petition of New York City Economic Development Corp. to submeter gas at Pier 17, 89 South Street, New York, NY. |
| *PSC-25-16-00009-P | . . . . . . . . . . . exempt | To delay Companies' third-party assessments of customer personally identifiable information until 2018. | To extend the time period between the Companies' third-party assessments of customer personally identifiable information. |
| *PSC-25-16-00025-P | . . . . . . . . . . . exempt | Acquisition of all water supply assets of Woodbury Heights Estates Water Co., Inc. by the Village of Kiryas Joel. | To consider acquisition of all water supply assets of Woodbury Heights Estates Water Co., Inc. by the Village of Kiryas Joel. |
| *PSC-25-16-00026-P | . . . . . . . . . . . exempt | Use of the Badger E Series Ultrasonic Cold Water Stainless Steel Meter, in residential fire service applications. | To consider the use of the Badger E Series Ultrasonic Cold Water Stainless Steel Meter in fire service applications. |
| *PSC-28-16-00017-P | . . . . . . . . . . . exempt | A petition for rehearing of the Order Adopting a Ratemaking and Utility Revenue Model Policy Framework. | To determine appropriate rules for and calculation of the distributed generation reliability credit. |
| *PSC-29-16-00024-P | . . . . . . . . . . . exempt | Participation of NYPA customers in surcharge-funded clean energy programs. | To consider participation of NYPA customers in surcharge-funded clean energy programs. |
| *PSC-32-16-00012-P | . . . . . . . . . . . exempt | Benefit-Cost Analysis Handbooks. | To evaluate proposed methodologies of benefit-cost evaluation. |

**NYS Register/September 4, 2019**                                      **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-33-16-00001-EP | . . . . . . . . . . exempt | Use of escrow funds for repairs. | To authorize the use of escrow account funds for repairs. |
| *PSC-33-16-00005-P | . . . . . . . . . . exempt | Exemption from certain charges for delivery of electricity to its Niagara Falls, New York facility. | Application of System Benefits Charges, Renewable Portfolio Standard charges and Clean Energy Fund surcharges. |
| *PSC-35-16-00015-P | . . . . . . . . . . exempt | NYSRC's revisions to its rules and measurements | To consider revisions to various rules and measurements of the NYSRC |
| *PSC-36-16-00004-P | . . . . . . . . . . exempt | Recovery of costs for installation of electric service. | To consider the recovery of costs for installation of electric service. |
| *PSC-40-16-00025-P | . . . . . . . . . . exempt | Consequences pursuant to the Commission's Uniform Business Practices (UBP). | To consider whether to impose consequences on Smart One for its apparent non-compliance with Commission requirements. |
| *PSC-47-16-00009-P | . . . . . . . . . . exempt | Petition to use commercial electric meters | To consider the petition of Itron, Inc. to use the Itron CP2SO and CP2SOA in commercial electric meter applications |
| *PSC-47-16-00010-P | . . . . . . . . . . exempt | Standby Service rate design | To consider the report filed and the recommendations therein |
| *PSC-47-16-00013-P | . . . . . . . . . . exempt | Standby Service rate design | To consider the report filed and the recommendations therein |
| *PSC-47-16-00014-P | . . . . . . . . . . exempt | Standby Service rate design | To consider the report filed and the recommendations therein |
| *PSC-47-16-00016-P | . . . . . . . . . . exempt | Standby Service rate design | To consider the report filed and the recommendations therein |
| *PSC-02-17-00010-P | . . . . . . . . . . exempt | Implementation of the four EAMs. | To consider the implementation of EAMs for RG&E. |
| *PSC-02-17-00012-P | . . . . . . . . . . exempt | Implementation of the four EAMs. | To consider the implementation of EAMs for NYSEG. |
| *PSC-14-17-00017-P | . . . . . . . . . . exempt | Petition for Full-Scale Deployment of AMI and to Establish an AMI Surcharge. | To consider the petition for Full-Scale Deployment of AMI and to Establish an AMI Surcharge. |
| *PSC-18-17-00024-P | . . . . . . . . . . exempt | A petition for rehearing or reconsideration of the Order Addressing Public Policy Transmission Need for AC Transmission Upgrades | To determine whether Public Policy Transmission Need/Public Policy Requirements continue to exist. |
| *PSC-18-17-00026-P | . . . . . . . . . . exempt | Revisions to the Dynamic Load Management surcharge. | To consider revisions to the Dynamic Load Management surcharge. |
| *PSC-19-17-00004-P | . . . . . . . . . . exempt | NYAW's request to defer and amortize, for future rate recognition, pension settlement payout losses incurred in 2016. | Consideration of NYAW's petition to defer and amortize, for future rate recognition, pension payour losses incurred in 2016. |
| *PSC-20-17-00008-P | . . . . . . . . . . exempt | Compressed natural gas as a motor fuel for diesel fueled vehicles. | To consider a report filed by National Grid NY regarding the potential for adoption of compressed natural gas as a motor fuel. |

**Action Pending Index**                                    **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-20-17-00010-P | exempt | Compressed natural gas as a motor fuel for diesel fueled vehicles. | To consider a report filed by National Grid regarding the potential for adoption of compressed natural gas as a motor fuel. |
| *PSC-21-17-00013-P | exempt | The establishment and implementation of Earnings Adjustment Mechanisms. | To consider the establishment and implementation of Earnings Adjustment Mechanisms. |
| *PSC-21-17-00018-P | exempt | Proposed agreement for the provision of water service by Saratoga Water Services, Inc. | To consider a waiver and approval of terms of a service agreement. |
| *PSC-22-17-00004-P | exempt | Financial incentives to create customer savings and develop market-enabling tools, with a focus on outcomes and incentives | To consider the proposed Interconnection Survey Process and Earnings Adjustment Mechanisms |
| *PSC-23-17-00022-P | exempt | Changes in regulation of ESCOs, including restrictions on or prohibitions of marketing or offering certain products or services. | To ensure consumer protection for ESCO customers. |
| *PSC-24-17-00006-P | exempt | Development of the Utility Energy Registry. | Improved data access. |
| *PSC-26-17-00005-P | exempt | Notice of Intent to submeter electricity. | To consider the Notice of Intent to submeter electricity at 125 Waverly Street, Yonkers, New York. |
| *PSC-34-17-00011-P | exempt | Waiver to permit Energy Cooperative of America to serve low-income customers | To consider the petition for a waiver |
| *PSC-37-17-00005-P | exempt | Financial incentives to create customer savings and develop market-enabling tools, with a focus on outcomes and incentives. | To consider the revised Interconnection Survey Process and Earnings Adjustment Mechanisms. |
| *PSC-37-17-00006-P | exempt | Petition to submeter electricity. | To consider the petition of ACC OP (Park Point SU) LLC to submeter electricity at 417 Comstock Avenue, Syracuse, New York. |
| *PSC-39-17-00011-P | exempt | Whether to direct New York State Electric & Gas to complete electric facility upgrades at no charge to Hanehan. | To determine financial responsibility between NYSEG and Hanehan for the electric service upgrades to Hanehan. |
| *PSC-40-17-00006-P | exempt | The aggregation of electric service for the Empire State Plaza and the Sheridan Avenue Steam Plant | To consider a waiver of National Grid's tariff provision requiring all electric delivery points to be on the same premises |
| *PSC-42-17-00010-P | exempt | Petition for rehearing of negative revenue adjustment and contents of annual Performance Report. | To consider NFGD's petition for rehearing. |
| *PSC-48-17-00015-P | exempt | Low Income customer options for affordable water bills. | To consider the Low Income Bill Discount and/or Energy Efficiency Rebate Programs. |
| *PSC-50-17-00017-P | exempt | New Wave Energy Corp.'s petition for rehearing. | To consider the petition for rehearing filed by New Wave Energy Corp. |
| *PSC-50-17-00018-P | exempt | Application of the Public Service Law to DER suppliers. | To determine the appropriate regulatory framework for DER suppliers. |
| *PSC-50-17-00019-P | exempt | Transfer of utility property. | To consider the transfer of utility property. |

**NYS Register/September 4, 2019**                                    **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-50-17-00021-P | . . . . . . . . . . . exempt | Disposition of tax refunds and other related matters. | To consider the disposition of tax refunds and other related matters. |
| *PSC-50-17-00022-P | . . . . . . . . . . . exempt | Data protection rules for DER suppliers. | To determine the appropriate regulatory framework for DER suppliers. |
| *PSC-51-17-00011-P | . . . . . . . . . . . exempt | Petition for recovery of certain costs related to the implementation of a Non-Wires Alternative Project. | To consider Con Edison's petition for the recovery of costs for implementing the JFK Project. |
| *PSC-04-18-00005-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To consider the notice of intent of Montante/ Morgan Gates Circle LLC to submeter electricity. |
| *PSC-05-18-00004-P | . . . . . . . . . . . exempt | Lexington Power's ZEC compliance obligation. | To promote and maintain renewable and zero-emission electric energy resources. |
| *PSC-06-18-00012-P | . . . . . . . . . . . exempt | To consider further proposed amendments to the original criteria to grandfathering established in the Transition Plan | To modify grandfathering criteria |
| *PSC-06-18-00017-P | . . . . . . . . . . . exempt | Merger of NYAW and Whitlock Farms Water Corp. | To consider the merger of NYAW and Whitlock Farms Water Company into a single corporate entity |
| *PSC-07-18-00015-P | . . . . . . . . . . . exempt | The accuracy and reasonableness of National Grid's billing for certain interconnection upgrades. | To consider AEC's petition requesting resolution of their billing dispute with National Grid. |
| *PSC-11-18-00004-P | . . . . . . . . . . . exempt | New York State Lifeline Program. | To consider TracFone's petition seeking approval to participate in Lifeline. |
| *PSC-13-18-00015-P | . . . . . . . . . . . exempt | Eligibility of an ESCO to market to and enroll residential customers. | To consider whether Astral should be allowed to market to and enroll residential customers following a suspension. |
| *PSC-13-18-00023-P | . . . . . . . . . . . exempt | Reconciliation of property taxes. | To consider NYAW's request to reconcile property taxes. |
| *PSC-14-18-00006-P | . . . . . . . . . . . exempt | Petition for abandonment | To consider the abandonment of Willsboro Bay Water Company's water system |
| *PSC-15-18-00008-P | . . . . . . . . . . . exempt | Amendments to the Uniform Business Practices. | Consideration of revised consumer protections and business practices of energy service companies. |
| *PSC-17-18-00010-P | . . . . . . . . . . . exempt | Petition for use of gas metering equipment. | To ensure that consumer bills are based on accurate measurements of gas usage. |
| *PSC-18-18-00009-P | . . . . . . . . . . . exempt | Transfer of control of Keene Valley Video Inc. | To ensure performance in accordance with applicable cable laws, regulations and standards and the public interest |
| *PSC-23-18-00006-P | . . . . . . . . . . . exempt | Whether to impose consequences on Aspirity for its non-compliance with Commission requirements. | To ensure the provision of safe and adequate energy service at just and reasonable rates. |
| *PSC-23-18-00014-P | . . . . . . . . . . . exempt | Proposed major rate increase of approximately $11.7 million to cover its Franklin and St. Lawrence Counties expansion project. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |

**Action Pending Index**

**NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-24-18-00013-P | . . . . . . . . . . . exempt | Implementation of program rules for Renewable Energy Standard and ZEC requirements. | To promote and maintain renewable and zero-emission electric energy resources. |
| *PSC-28-18-00011-P | . . . . . . . . . . . exempt | Storm Hardening Collaborative Report. | To ensure safe and adequate gas service. |
| *PSC-29-18-00008-P | . . . . . . . . . . . exempt | Participation in Targeted Accessibility Fund | To encourage enhanced services for low-income consumers |
| *PSC-29-18-00009-P | . . . . . . . . . . . exempt | Overvaluing real property tax expense recovery in water rates | To prevent unjust and unreasonable water rates |
| *PSC-30-18-00004-P | . . . . . . . . . . . exempt | Ownership of St. Lawrence Gas Company, Inc. | To consider whether a proposed transfer of ownership interests in St. Lawrence Gas Company, Inc. is in the public interest. |
| *PSC-34-18-00011-P | . . . . . . . . . . . exempt | Compensation of distributed energy resources. | To ensure just and reasonable rates, including compensation, for distributed energy resources. |
| *PSC-34-18-00015-P | . . . . . . . . . . . exempt | Petition to submeter electricity. | To ensure adequate submetering equipment and energy efficiency protections are in place. |
| *PSC-34-18-00016-P | . . . . . . . . . . . exempt | Deferral of pre-staging and mobilization storm costs. | To ensure just and reasonable rates for ratepayers and utility recovery of unexpected, prudently incurred costs. |
| PSC-35-18-00003-P | . . . . . . . . . . . exempt | Con Edison's 2018 DSIP and BCA Handbook Update. | To continue Con Edison's transition to a modern utility serving as a Distributed System Platform Provider. |
| PSC-35-18-00005-P | . . . . . . . . . . . exempt | NYSEG and RG&E's 2018 DSIP and BCA Handbook Update. | To continue NYSEG and RG&E's transition to modern utilities acting as Distributed System Platform Providers. |
| PSC-35-18-00006-P | . . . . . . . . . . . exempt | National Grid's 2018 DSIP and BCA Handbook Update. | To continue National Grid's transition to a modern utility serving as a Distributed System Platform Provider. |
| PSC-35-18-00008-P | . . . . . . . . . . . exempt | Central Hudson's 2018 DSIP and BCA Handbook Update. | To continue Central Hudson's transition to a modern utility serving as a Distributed System Platform Provider. |
| PSC-35-18-00010-P | . . . . . . . . . . . exempt | O&R's 2018 DSIP and BCA Handbook Update. | To continue O&R's transition to a modern utility acting as a Distributed System Platform Provider. |
| PSC-36-18-00005-P | . . . . . . . . . . . exempt | Permanent operator of gas wells and certain gas facilities. | To resolve ownership of overlapping gas facilities associated with wells transferred to two gas companies. |
| PSC-39-18-00005-P | . . . . . . . . . . . exempt | Participation in New York State Lifeline Program. | To encourage enhanced services for low-income customers. |
| PSC-40-18-00014-P | . . . . . . . . . . . exempt | Annual Reconciliation of Gas Expenses and Gas Cost Recoveries. | To review the gas utilities' reconciliation of Gas Expenses and Gas Cost Recoveries for 2018. |
| PSC-40-18-00015-P | . . . . . . . . . . . exempt | Proposed rate filing to increase annual revenues. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |

**Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| PSC-42-18-00011-P | exempt | Voluntary residential beneficial electrification rate design. | To provide efficient rate design for beneficial technologies in New York State that is equitable for all residential customers. |
| PSC-42-18-00013-P | exempt | Petition for clarification and rehearing of the Smart Solutions Program Order. | To address the increased demand for natural gas in the Con Edison's service territory and the limited pipeline capacity. |
| PSC-44-18-00012-P | exempt | Petition for approval of gas metering equipment. | To ensure that customer bills are based on accurate measurements of gas usage. |
| PSC-44-18-00013-P | exempt | Petition for approval of gas metering equipment. | To ensure that customer bills are based on accurate measurements of gas usage. |
| PSC-44-18-00016-P | exempt | Petition for approval of gas metering equipment. | To ensure that customer bills are based on accurate measurements of gas usage. |
| PSC-45-18-00004-P | exempt | Proposed transfer of two natural gas pipeline operating companies, and for lightened and incidental regulation | To consider transfer if there is no market power or ratepayer harm, incidental regulation, and continuing lightened regulation |
| PSC-45-18-00005-P | exempt | Notice of intent to submeter electricity and waiver of energy audit | To ensure adequate submetering equipment, consumer protections and energy efficiency protections are in place |
| PSC-47-18-00008-P | exempt | Proposed Public Policy Transmission Needs/ Public Policy Requirements, as defined under the NYISO tariff. | To identify any proposed Public Policy Transmission Needs/Public Policy Requirements for referral to the NYISO. |
| PSC-50-18-00003-P | exempt | Proposed transfer of interests in an electric generating facility and dedicated natural gas pipeline | To consider the transfer of generating facility and dedicated gas pipeline if there is no market power or ratepayer harm |
| PSC-52-18-00008-P | exempt | Minor rate filing. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-01-19-00004-P | exempt | Advanced Metering Infrastructure. | To determine whether Niagara Mohawk Power Corporation d/b/a National Grid should implement advanced metering infrastructure. |
| PSC-01-19-00013-P | exempt | Order of the Commission related to caller ID unblocking. | To require telephone companies to unblock caller ID on calls placed to the 311 municipal call center in Suffolk County. |
| PSC-01-19-00014-P | exempt | To modify provisions for accepting new or additional gas service applications when there is inadequate supply or capacity. | To continue to provide safe and reliable service to existing customers. |
| PSC-01-19-00015-P | exempt | To modify provisions for accepting new or additional gas service applications when there is inadequate supply or capacity. | To continue to provide safe and reliable service to existing customers. |
| PSC-01-19-00016-P | exempt | To modify provisions for accepting new or additional gas service applications when there is inadequate supply or capacity. | To continue to provide safe and reliable service to existing customers. |
| PSC-02-19-00014-P | exempt | Petition for use of electric metering equipment. | To ensure that consumer bills are based on accurate measurements of electric usage. |

**Action Pending Index**                                    **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| PSC-03-19-00002-P | exempt | DPS Staff White Paper for who must be trained in 16 NYCRR Part 753 requirements and how the Commission will approve trainings. | To reduce damage to underground utility facilities by requiring certain training and approving training curricula. |
| PSC-04-19-00004-P | exempt | Con Edison's petition for the Gas Innovation Program and associated budget. | To pursue programs that continue service reliability and meet customer energy needs while aiding greenhouse gas reduction goals. |
| PSC-04-19-00011-P | exempt | Update of revenue targets. | To ensure NYAW's rates are just and reasonable and accurately reflect the needed revenues. |
| PSC-05-19-00009-P | exempt | Transfer of street lighting facilities | To consider whether the transfer of certain street lighting facilities is in the public interest |
| PSC-06-19-00005-P | exempt | Consideration of the Joint Utilities' proposed BDP Program. | To to expand opportunities for low-income households to participate in Community Distributed Generation (CDG) projects. |
| PSC-07-19-00009-P | exempt | Whether to impose consequences on AAA for its non-compliance with Commission requirements. | To insure the provision of safe and adequate energy service at just and reasonable rates. |
| PSC-07-19-00010-P | exempt | The rates and charges for non-roadway LED service offerings for outdoor lighting customers. | To determine whether to amend National Grid's P.S.C. No. 214 - Outdoor Lighting Tariff to provide new LED service offerings. |
| PSC-07-19-00016-P | exempt | Participation in New York State Lifeline Program. | To encourage enhanced services for low-income customers. |
| PSC-09-19-00007-P | exempt | Exemptions from standby rates. | To consider whether the standby rate exemptions proposed by the City of New York are reasonable and in the public interest. |
| PSC-09-19-00009-P | exempt | Amendments to the tariff of Con Edison pertaining to interruptible gas service customers. | To consider the appropriate tariff provisions for Con Edison interruptible gas service customers. |
| PSC-09-19-00010-P | exempt | Non-pipeline alternatives report recommendations. | To consider the terms and conditions applicable to gas service. |
| PSC-09-19-00013-P | exempt | Cyber Security requirements. | Establish a framework to ensure the protection of utility systems and customer data from cyber events. |
| PSC-10-19-00006-P | exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-11-19-00003-P | exempt | Transfer of street lighting facilities | To consider whether the transfer of certain street lighting facilities is in the public interest |
| PSC-12-19-00004-P | exempt | To test innovative pricing proposals on an opt-out basis. | To provide pricing structures that deliver benefits to customers and promote beneficial electrification technologies. |
| PSC-13-19-00010-P | exempt | New Commission requirements for gas company operator qualification programs. | To make pipelines safer with improved training of workers who perform construction and repairs on natural gas facilities. |
| PSC-13-19-00012-P | exempt | Paperless billing credit. | To provide just and reasonable rates. |

**Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| PSC-15-19-00010-P | . . . . . . . . . . . exempt | Tariff provisions for Interruptible and Off-Peak Firm Service Customers. | To amend certain penalties for non-compliant Interruptible and Off-Peak Firm Customers. |
| PSC-16-19-00003-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-16-19-00005-P | . . . . . . . . . . . exempt | Proposed major electric delivery revenue requirement increase of approximately $485 million (or 4.6% in total revenues). | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-16-19-00007-P | . . . . . . . . . . . exempt | Recommencement of the levelization surcharge, changes to the System Improvement Charge, and a one-year stay-out. | To address the issues in NYAW's petition dated February 25, 2019. |
| PSC-16-19-00008-P | . . . . . . . . . . . exempt | Proposed major rate increase in Con Edison's gas delivery revenues of approximately $210 million (or 9.1% in total revenues). | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-17-19-00010-P | . . . . . . . . . . . exempt | Waiver of tariff rules and a related Commission regulation. | To consider whether a waiver of tariff rules and a Commission regulation are just and reasonable and in the public interest. |
| PSC-17-19-00014-P | . . . . . . . . . . . exempt | Minor rate filing. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-18-19-00010-P | . . . . . . . . . . . 04/30/20 | Energy efficiency programs, budgets, and targets for investor-owned utilities. | To encourage the delivery and procurement of energy efficiency by investor-owned utilities. |
| PSC-18-19-00011-P | . . . . . . . . . . . exempt | Policies, budgets and targets for support of heat pump deployment by investor-owned utilities. | To encourage the support for heat pump deployment by investor-owned utilities. |
| PSC-18-19-00012-P | . . . . . . . . . . . 04/30/20 | Policies, budgets and targets for support of energy effiency programs for low- and moderate-income customers. | To encourage the support of energy effiency programs for low- and moderate-income customers by investor-owned utilities. |
| PSC-18-19-00013-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-18-19-00015-P | . . . . . . . . . . . exempt | Minor rate filing. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-19-19-00012-P | . . . . . . . . . . . exempt | Minor rate filing. | To ensure that the Village of Silver Spring provides safe and adequate service and that its rates are just and reasonable. |
| PSC-19-19-00013-P | . . . . . . . . . . . exempt | Proposed merger of three water utilities into one corporation. | To determine if the proposed merger is in the public interest. |
| PSC-19-19-00014-P | . . . . . . . . . . . exempt | Establishment of the regulatory regime applicable to an approximately 124 MW electric generating facility. | Consideration of a lightened regulatory regime for an approximately 124 MW electric generating facility. |
| PSC-19-19-00015-P | . . . . . . . . . . . exempt | Establishment of the regulatory regime applicable to an energy storage facility of up to 316 MW. | Consideration of a lightened regulatory regime for an energy storage facility of up to 316 MW |

**Action Pending Index**                                    **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| PSC-19-19-00016-P | . . . . . . . . . . . exempt | Establishment of the regulatory regime applicable to an approximately 242 MW electric generating facility. | Consideration of a lightened regulatory regime for an approximately 242 MW electric generating facility. |
| PSC-20-19-00008-P | . . . . . . . . . . . exempt | Reporting on energy sources | To ensure accurate reporting and encourage clean energy purchases |
| PSC-20-19-00009-P | . . . . . . . . . . . exempt | Petition to submeter electricity | To ensure adequate submetering equipment and consumer protections are in place |
| PSC-20-19-00010-P | . . . . . . . . . . . exempt | Compensation policies for certain CHP projects | To consider appropriate rules for compensation of certain CHP resources |
| PSC-20-19-00011-P | . . . . . . . . . . . exempt | Petition to submeter electricity | To ensure adequate submetering equipment and consumer protections are in place |
| PSC-20-19-00015-P | . . . . . . . . . . . exempt | Establishment of the regulatory regime applicable to an approximately 105.8 MW electric generating facility | Consideration of a lightened regulatory regime for an approximately 105.8 MW electric generating facility |
| PSC-21-19-00015-P | . . . . . . . . . . . exempt | The Implementation Plan used to recover the costs of ZECs from Load Serving Entities. | To more accurately calculate Load Serving Entities' future ZEC obligation payments. |
| PSC-21-19-00016-P | . . . . . . . . . . . exempt | Use of electric metering equipment. | To ensure that consumer bills are based on accurate measurements of electric usage. |
| PSC-21-19-00018-P | . . . . . . . . . . . exempt | Methodology used to set discount level for income-based discounts to residential electric and gas utility bills. | To ensure that income-based discounts are adjusted in a manner that moderates annual changes. |
| PSC-22-19-00013-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-23-19-00003-P | . . . . . . . . . . . exempt | Ownership interest in poles. | To consider the transfer of ownership interest in certain poles from NYSEG to Verizon. |
| PSC-23-19-00004-P | . . . . . . . . . . . exempt | Individually negotiated contracts. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-23-19-00005-P | . . . . . . . . . . . exempt | Proposed major rate increase in SWNY's annual base revenues of approximately $31.5 million (or 19.8% in total revenues). | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-24-19-00003-P | . . . . . . . . . . . exempt | Three-year pilot for inspecting gas services at intervals longer than existing regulations require. | To use risk-based reasoning for gas service lines inspection intervals on a pilot basis. |
| PSC-24-19-00004-P | . . . . . . . . . . . exempt | Municipal Gross Receipts Taxes. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-24-19-00005-P | . . . . . . . . . . . exempt | Non-Firm Demand Response service classes. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-24-19-00006-P | . . . . . . . . . . . exempt | Municipal Gross Receipts Taxes. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |

**NYS Register/September 4, 2019**                                   **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| PSC-24-19-00007-P | exempt | Municipal Gross Receipts Taxes. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-24-19-00008-P | exempt | Non-Firm Demand Response service classes. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-24-19-00009-P | exempt | Municipal Gross Receipts Taxes. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-25-19-00016-P | exempt | The request of New York Transco LLC to assume debt with a repayment period that exceeds 12 months. | To consider a petition to incur debt. |
| PSC-25-19-00017-P | exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-26-19-00002-P | exempt | Petition to submeter electricity and waiver of energy audit | To ensure adequate submetering equipment, consumer protections and energy efficiency protections are in place |
| PSC-27-19-00006-P | exempt | Tariff provisions for SHR Demonstration Project customers. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-27-19-00007-P | exempt | Implementation of consolidated billing for distributed energy resources. | To facilitate development of and participation in Community Distributed Generation projects. |
| PSC-27-19-00008-P | exempt | Tariff provisions for SHR Demonstration Project customers. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-27-19-00009-P | exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-28-19-00004-P | exempt | Revenue and Property Tax Reconciliation Mechanism. | To ensure recovery of proper expenses and the continued provision of safe and adequate service. |
| PSC-28-19-00005-P | exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-28-19-00006-P | exempt | Establishment of an escrow account. | To maintain a replenishable escrow account with a maximum balance of $5,000. |
| PSC-29-19-00018-P | exempt | Compensation for distributed energy resources. | To establish rules for NYPA customer participation in the Value of Distributed Energy Resources program. |
| PSC-29-19-00019-P | exempt | Transfer of street lighting facilities. | To determine whether to transfer street lighting facilities and the proper accounting for the transaction. |
| PSC-30-19-00007-P | exempt | Use of electric metering equipment. | To ensure that consumer bills are based on accurate measurements of electric usage. |
| PSC-30-19-00008-P | exempt | To institute a voluntary Tier 2(B) Physical Storage Program under the DDS Program. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |

**Action Pending Index**                                                    **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| PSC-30-19-00009-P | exempt | An Index REC procurement mechanism for Tier 1 REC procurements. | To provide a hedge against market volatility, and lower costs to both renewable generators and customers. |
| PSC-31-19-00011-P | exempt | Electric metering equipment. | To ensure that consumer bills are based on accurate measurements of electric usage. |
| PSC-31-19-00012-P | exempt | Purchase of renewable energy from distributed generators and energy storage systems 15 kilowatts or less. | To establish provisions to ensure safe and reliable service for all customers. |
| PSC-31-19-00013-P | exempt | Implementation of Statewide Energy Benchmarking. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-31-19-00014-P | exempt | Consideration of NYAW's Interim Implementation Plan. | To ensure NYAW improves its service to ratepayers. |
| PSC-31-19-00015-P | exempt | Proposed major rate increase in KEDNY's gas delivery revenues by $236.8 million (13.6% increase in total revenues). | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-31-19-00016-P | exempt | Proposed major rate increase in KEDLI's gas delivery revenues of approximately $49.4 million (or 4.1% in total revenues). | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-31-19-00017-P | exempt | Implementation of e-DPAs. | To consider a proposal to implement e-DPAs. |
| PSC-32-19-00004-EP | exempt | RDM target modifications for SC 8 customers and defer any revenue shortfall as a regulatory asset. | To ensure SC 8 electric customers are being charged properly and avoid customer confusion and unnecessary rate volatility. |
| PSC-32-19-00008-P | exempt | Compensation of distributed energy resources | To ensure just and reasonable rates, including compensation, for distributed energy resources |
| PSC-32-19-00009-P | exempt | Petition to submeter electricity and waiver request | To ensure adequate submetering equipment, consumer protections and energy efficiency protections are in place |
| PSC-32-19-00010-P | exempt | Notice of intent to submeter electricity | To ensure adequate submetering equipment and consumer protections are in place |
| PSC-32-19-00011-P | exempt | Notice of intent to submeter electricity and waiver of energy audit | To ensure adequate submetering equipment, consumer protections and energy efficiency protections are in place |
| PSC-32-19-00012-P | exempt | Standby Service Rates and Buyback Service Rates | To ensure just and reasonable rates, including compensation, for distributed energy resources |
| PSC-32-19-00013-P | exempt | Disposition of tax refunds received by New York American Water Company, Inc. | To determine the disposition of tax refunds and other related matters |
| PSC-33-19-00007-P | exempt | Transfer of street lighting facilities. | To determine whether to provide written consent for the proposed transfer of certain street lighting facilities. |
| PSC-33-19-00008-P | exempt | Pole attachment rates. | To ensure safe and adequate service at just and reasonable rates charged to customers without preferences. |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| PSC-33-19-00009-P | . . . . . . . . . . . exempt | Transfer of street lighting facilities. | To determine whether to provide written consent for the proposed transfer of certain street lighting facilities. |
| PSC-33-19-00010-P | . . . . . . . . . . . exempt | Purchase of renewable energy from new distributed generators and energy storage systems 15 kilowatts or less. | To establish provisions to ensure safe and reliable service for all customers. |
| PSC-33-19-00011-P | . . . . . . . . . . . exempt | Update revenue targets and pass back regulatory liability/asset resulting from tax law changes. | To ensure New York American Water's rates are just and reasonable and accurately reflect the needed revenues. |
| PSC-33-19-00012-P | . . . . . . . . . . . exempt | Limited waiver of tariff provisions for customers with PEVs under Special Provision L of the SC-1 VTOU rate. | To ensure just and reasonable rates charged to customers without undue preferences |
| PSC-33-19-00013-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-33-19-00014-P | . . . . . . . . . . . exempt | Electric metering equipment. | To ensure that consumer bills are based on accurate measurements of electric usage. |
| PSC-34-19-00015-P | . . . . . . . . . . . exempt | Major electric rate filing. | To consider a proposed increase in RG&E's electric delivery revenues of approximately $31.7 million (or 4.1% in total revenues). |
| PSC-34-19-00016-P | . . . . . . . . . . . exempt | Major gas rate filing. | To consider a proposed increase in RG&E's gas delivery revenues of approximately $5.8 million (or 1.4% in total revenues). |
| PSC-34-19-00017-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-34-19-00018-P | . . . . . . . . . . . exempt | Major electric rate filing. | To consider a proposed increase in NYSEG's electric delivery revenues of approximately $156.7 million (10.4% in total revenues). |
| PSC-34-19-00019-P | . . . . . . . . . . . exempt | Compensation of distributed energy resources. | To ensure just and reasonable rates, including compensation for distributed energy resources. |
| PSC-34-19-00020-P | . . . . . . . . . . . exempt | Major gas rate filing. | To consider a proposed increase in NYSEG's gas delivery revenues of approximately $6.3 million (or 1.4% in total revenues). |
| PSC-34-19-00021-P | . . . . . . . . . . . exempt | Customer Consent to Contact. | To include a new provision establishing customer consent for the utility to contact them electronically about utility service. |
| PSC-35-19-00004-P | . . . . . . . . . . . exempt | Transfer of street lighting facilities. | To determine whether to authorize the transfer of street lighting facilities and the proper accounting for the transaction. |
| PSC-35-19-00005-P | . . . . . . . . . . . exempt | Administrative costs and funding sources for the RES and ZEC programs. | To promote and maintain renewable and zero emission electric energy resources. |
| PSC-35-19-00006-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-35-19-00007-P | . . . . . . . . . . . exempt | Wireless pole attachment rate. | To ensure safe and adequate service at just and reasonable rates charged to customers without preferences. |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| PSC-35-19-00008-P | exempt | Compensation of distributed energy resources. | To ensure just and reasonable rates, including compensation, for distributed energy resources. |
| PSC-36-19-00008-P | exempt | Transfer of street lighting facilities. | To determine whether to authorize the transfer of street lighting facilities and the proper accounting for the transaction. |
| PSC-36-19-00009-P | exempt | Minor rate filing to increase annual electric revenues. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-36-19-00010-P | exempt | Notice of intent to submeter electricity and waiver of energy audit. | To ensure adequate submetering equipment, consumer protections and energy efficiency protections are in place. |
| PSC-36-19-00011-P | exempt | Minor electric rate filing to increase annual electric revenues. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-36-19-00012-P | exempt | Transfer of street lighting facilities. | To determine whether to authorize the transfer street of lighting facilities and the proper accounting for the transaction. |

## STATE, DEPARTMENT OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| DOS-27-19-00014-P | 09/04/20 | New York State Uniform Fire Prevention and Building Code (the Uniform Code) | To repeal the existing Uniform Code and adopt a new Uniform Code and to make conforming changes to 19 NYCRR Parts 1264 and 1265. |
| DOS-27-19-00015-P | 09/04/20 | The State Energy Conservation Construction Code (the "Energy Code"). | To repeal the existing Energy Code and to adopt a new, updated Energy Code. |
| DOS-29-19-00015-EP | 09/15/20 | New York State Uniform Fire Prevention and Building Code (the Uniform Code) | Incorporating the 2019 Energy Storage System Supplement to add provisions to the New York State Uniform Fire Prevention and Building Code relating to the installation, use and maintenance of Energy Storage Systems |

## STATE UNIVERSITY OF NEW YORK

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| SUN-15-19-00007-P | 04/09/20 | Proposed amendments to Appointment of Employees and Leave of Absences for Employees in the Professional Service. | Allow a temporary cessation of service credit during birth/adoption/foster care placement of child and update leave accruals. |
| SUN-30-19-00001-P | 07/23/20 | State basic financial assistance for the operating expenses of community colleges under the program of SUNY and CUNY. | To modify limitations formula for basic State financial assistance and institute an operating support "floor". |
| SUN-30-19-00011-P | 07/23/20 | State University of New York Tuition and Fees Schedule | To amend the Tuition and Fees Schedule to increase tuition for students in all programs of the State University of New York |
| SUN-36-19-00013-P | 09/03/20 | College Fees | To increase the college fee charged at State-operated campuses, excluding the four University Centers. |

## TAXATION AND FINANCE, DEPARTMENT OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| TAF-34-19-00013-P | exempt | To set the sales tax component and the composite rate per gallon for the period October 1, 2019 through September 31, 2019 | To set the sales tax component and the composite rate per gallon for the period October 1, 2019 through September 31, 2019 |

NYS Register/September 4, 2019                                                      **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

### TEMPORARY AND DISABILITY ASSISTANCE, OFFICE OF

| | | | |
|---|---|---|---|
| TDA-14-19-00002-P | . . . . . . . . . . 04/02/20 | Enforcement of support obligations and issuance of income withholding orders (IWOs) | To clarify the requirements for income withholding for persons served by the Title IV-D child support program (IV-D) to conform with changes to the federal IV-D IWO/Notice for Support form |
| TDA-14-19-00007-P | . . . . . . . . . . 04/02/20 | Abandonment of requests for fair hearings | To require the issuance of letters to appellants who fail to appear at scheduled fair hearings involving Medical Assistance, also known as Medicaid, advising them how to request the rescheduling of such fair hearings |
| TDA-19-19-00007-P | . . . . . . . . . . 05/07/20 | Adult-Care Facilities and Shelters for Adults | To update State regulations pertaining to general provisions, inspections and enforcement, and shelters for adults |
| TDA-19-19-00008-P | . . . . . . . . . . 05/07/20 | Shelters for Families | To update State regulations pertaining to shelters for families |
| TDA-19-19-00010-P | . . . . . . . . . . 05/07/20 | Elimination of finger imaging requirement for public assistance applicants and recipients | To update State regulations to align public assistance programs with other State benefit programs regarding identification verification requirements |

### URBAN DEVELOPMENT CORPORATION

| | | | |
|---|---|---|---|
| UDC-33-19-00006-EP | . . . . . . . . . . 08/13/20 | Life Sciences initiative Program | Create administrative procedures for all components of the Life Sciences Initiatives program |

### VICTIM SERVICES, OFFICE OF

| | | | |
|---|---|---|---|
| OVS-24-19-00001-EP | . . . . . . . . . . 06/11/20 | Conduct contributing related to burial awards | Adopt rules necessary as the result of chapter 494 of the Laws of 2018, when considering the victim's own conduct |
| OVS-36-19-00007-P | . . . . . . . . . . 09/03/20 | Limits on administrative expenses and executive compensation. | To codify the determination made in the Matter of Leading Age NY, Inc v. Shah (2018), striking a portion of the rule. |

### WORKERS' COMPENSATION BOARD

| | | | |
|---|---|---|---|
| WCB-22-19-00009-P | . . . . . . . . . . 05/28/20 | Group self-insured trusts that are inactive but not insolvent | Provide assistance with inactive but not insolvent group self-insured trusts to purchase ALPs to wind down liabilities |
| WCB-25-19-00018-P | . . . . . . . . . . 06/18/20 | Prior authorization for medical treatment and variances form the Medical Treatment Guidelines | Add new authorized medical provider types to rules regarding prior authorizations and variances |
| WCB-25-19-00019-P | . . . . . . . . . . 06/18/20 | Medical Provider Authorization | Describe the process for providers to become authorized by the Board and maintain authorization |
| WCB-27-19-00005-P | . . . . . . . . . . 07/02/20 | Medical Fee Schedules | Add new providers to the fee schedule |
| WCB-31-19-00018-P | . . . . . . . . . . 07/30/20 | Medical Treatment Guidelines | Add guidelines for treatment of hip and groin, foot and ankle, elbow and occupational interstitial lung disease |

**Action Pending Index**                                              **NYS Register/September 4, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

**WORKERS' COMPENSATION BOARD**

| WCB-32-19-00001-P | . . . . . . . . . . . 08/06/20 | Updating the prescription drug formulary | To add drugs to the prescription drug formulary in response to continuous feedback |

# SECURITIES
## OFFERINGS

**STATE NOTICES**

Published pursuant to provisions of General Business Law
[Art. 23-A, § 359-e(2)]

DEALERS; BROKERS

Acacia Diversified Holdings, Inc.
13575 58th St. N, #138, Clearwater, FL 33760
*State or country in which incorporated* — Texas

Arsenal IO Co-Invest 3 LP
100 Park Ave., 31st Fl., New York, NY 10017
*Partnership* — Arsenal Capital Investment IO LP

Cabral Gold Inc.
409 Granville St., Suite 1500, Vancouver, British Columbia, V6C 1T2, Canada
*State or country in which incorporated* — Canada

Capital Management Investment Trust
630 Fitzwatertown Rd., Bldg. A, Willow Grove, PA 19090
*State or country in which incorporated* — Massachusetts

ChoiceOne Financial Services, Inc.
109 E. Division, Sparta, MI 49345
*State or country in which incorporated* — Michigan

DC MSA Multifamily DST
2901 Butterfield Rd., Oak Brook, IL 60523
*State or country in which incorporated* — Delaware

Digital Growth Fund, LP
111 Ellis St., 2nd and 3rd Fls., San Francisco, CA 94102
*Partnership* — Digital Finance Management Limited

Elliott Co-Investment A-1 L.P.
c/o Harmonic Fund Services, Cayman Corp. Center, 4th Fl., 27 Hospital Rd., George Town, Grand Cayman, Cayman Islands KY1-1102
*Partnership* — Elliott Co-Investment GP LLC

Elliott Co-Investment B-1 L.P.
c/o Harmonic Fund Services, Cayman Corp. Center, 4th Fl., 27 Hospital Rd., George Town, Grand Cayman, Cayman Islands KY1-1102
*Partnership* — Elliott Co-Investment GP LLC

EMR Capital Resources Fund III, LP
190 Elgin Ave., Georgetown, Grand Cayman KY1-9007, Cayman Islands
*Partnership* — EMR Capital GP III Limited

Herbalist Witch LLC
c/o Three Ocean Partners, 551 Fifth Ave., #3800, New York, NY 10176
*State or country in which incorporated* — Delaware

Herbert J. Sims & Co. Inc.
2150 Post Rd., Suite 301, Fairfield, CT 06824
*State or country in which incorporated* — Delaware

IIFL Seed Ventures Fund - Series 2
IIFL Center, Kamala City, Senapati Bapat Marg, Lower Parel, Mumbai, Maharashtra - 400013
*State or country in which incorporated* — India

JenCap Holding LLC
1350 Broadway, Suite 602, New York, NY 10018
*State or country in which incorporated* — Delaware

Kotak Mahindra Inc.
369 Lexington Ave., 28th Fl., New York, NY 10017
*State or country in which incorporated* — Delaware

Lubert-Adler Workforce Housing Fund, L.P.
2929 Walnut St., Suite 1530, Philadelphia, PA 19104
*Partnership* — Lubert-Adler WH Group, L.P.

Morton-Werner Real Estate Income Fund, LP
P.O. Box 268, Buffalo, NY 14201
*Partnership* — Morton-Werner Real Estate, LLC

One Oak Alpha Opportunities Offshore Fund Ltd.
c/o Harneys Fiduciary (Cayman) Limited, 103 S. Church St., 4th Fl., Grand Cayman, Cayman Islands KY1-1002
*State or country in which incorporated* — Cayman Islands

PFS Funds
1939 Friendship Dr., Suite C, El Cajon, CA 92020
*State or country in which incorporated* — Massachusetts

Real Eats America Inc.
122 N. Genesee St., Geneva, NY 14456
*State or country in which incorporated* — New York

Signet AH Investment, LLC
19 N. High St., Akron, OH 44308
*State or country in which incorporated* — Ohio

Solar Integrated Roofing Corp.
12411 Poway Rd., Poway, CA 92064
*State or country in which incorporated* — Nevada

Summit Ridge Apts JV LLC
One World Trade Center, Suite 8500, New York, NY 10007
*Partnership* — Summit Ridge Apts MM LLC

**Securities Offerings**                                    **NYS Register/September 4, 2019**

TruTex Exploration, LLC
2910 Edith Lane, Haltom City, TX 76117
*Partnership* — Texas

Westmoreland Capital Corporation
2350 N. Forest Rd., Getzville, NY 14068
*State or country in which incorporated* — New York

# ADVERTISEMENTS FOR BIDDERS/CONTRACTORS

## SEALED BIDS

### PROVIDE
#### STRUCTURAL REPAIRS
Empire State Plaza East Parking Garage
Albany, Albany County

Sealed bids for Project No. 45944-C, for Construction Work, Provide Structural Repairs to Parking Garage, Empire State Plaza East Parking Garage, Philip Street, Albany (Albany County), NY, will be received by the Office of General Services (OGS), Design & Construction Group (D&C), Division of Contract Management, 35th Fl., Corning Tower, Empire State Plaza, Albany, NY 12242, on behalf of the Office of General Services, until 2:00 p.m. on Wednesday, September 11, 2019, when they will be publicly opened and read. Each bid must be prepared and submitted in accordance with the Instructions to Bidders and must be accompanied by a certified check, bank check, or bid bond in the amount of $423,900 for C.

All successful bidders will be required to furnish a Performance Bond and a Labor and Material Bond in the statutory form of public bonds required by Sections 136 and 137 of the State Finance Law, each for 100% of the amount of the Contract estimated to be between $15,000,000 and $20,000,000 for C.

Pursuant to State Finance Law §§ 139-j and 139-k, this solicitation includes and imposes certain restrictions on communications between OGS D&C and a bidder during the procurement process. A bidder is restricted from making contacts from the earliest posting, on the OGS website, in a newspaper of general circulation, or in the Contract Reporter of written notice, advertisement or solicitation of offers through final award and approval of the contract by OGS D&C and the Office of the State Comptroller ("Restricted Period") to other than designated staff unless it is a contact that is included among certain statutory exceptions set forth in State Finance Law § 139-j(3)(a). Designated staff are Jessica Hoffman, Carl Ruppert and Pierre Alric in the Division of Contract Management, telephone (518) 474-0203, fax (518) 473-7862 and John Lewyckyj, Deputy Director, Design & Construction Group, telephone (518) 474-0201, fax (518) 486-1650. OGS D&C employees are also required to obtain certain information when contacted during the restricted period and make a determination of the responsibility of the bidder pursuant to these two statutes. Certain findings of non-responsibility can result in rejection for contract award and in the event of two findings within a four-year period, the bidder is debarred from obtaining governmental Procurement Contracts. Bidders responding to this Advertisement must familiarize themselves with the State Finance Law requirements and will be expected to affirm that they understand and agree to comply on the bid form. Further information about these requirements can be found within the project manual or at: http://www.ogs.ny.gov/aboutOGS/regulations/defaultAdvisoryCouncil.html

The substantial completion date for this project is 779 days after the Agreement is approved by the Comptroller.

The only time prospective bidders will be allowed to visit the job site to take field measurements and examine existing conditions of the project area will be at 10:00 a.m. on August 28, 2019 at the Empire State Plaza, Concourse-Rm 125, Albany NY. Prospective bidders are urged to visit the site at this time. Prospective bidders or their representatives attending the pre-bid site visit will not be admitted on facility grounds without proper photo identification. Note that parking restrictions and security provisions will apply and all vehicles will be subject to search.

Phone the office of Barb Hacker, (518-474-5584) or Mark Rice (518-470-7273) a minimum of 48 hours in advance of the date to provide the names of those who will attend the pre-bid site visit.

Pursuant to New York State Executive Law Article 15-A and the rules and regulations promulgated thereunder, OGS is required to promote opportunities for the maximum feasible participation of New York State-certified Minority- and Women-owned Business Enterprises ("MWBEs") and the employment of minority group members and women in the performance of OGS contracts. All bidders are expected to cooperate in implementing this policy. OGS hereby establishes an overall goal of 30% for MWBE participation, 15% for Minority-Owned Business Enterprises ("MBE") participation and 15% for Women-Owned Business Enterprises ("WBE") participation (based on the current availability of qualified MBEs and WBEs). The total contract goal can be obtained by utilizing any combination of MBE and /or WBE participation for subcontracting and supplies acquired under this Contract.

The Office of General Services reserves the right to reject any or all bids.

The Bidding and Contract Documents for this Project are available on compact disc (CD) only, and may be obtained for an $8.00 deposit per set, plus a $2.00 per set shipping and handling fee. Contractors and other interested parties can order CD's on-line through a secure web interface available 24 hours a day, 7 days a week. Please use the following link at the OGS website for ordering and payment instructions: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

For questions about purchase of bid documents, please send an e-mail to DCPlans@ogs.ny.gov, or call (518) 474-0203.

For additional information on this project, please use the link below and then click on the project number: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

By *John D. Lewyckyj, Deputy Director*
OGS - Design & Construction Group

### PROVIDE
#### CELL BLOCK & QUARTERMASTER/RECORDS STORAGE
Coxsackie Correctional Facility
Coxsackie, Greene County

Sealed bids for Project No. 46628-C for Construction Work, Provide Cell Block & Quartermaster/Records Storage, Coxsackie Correctional Facility, 11260 Route 9W, Coxsackie (Greene County), NY, will be received by the Office of General Services (OGS), Design & Construction Group (D&C), Division of Contract Management, 35th Fl., Corning Tower, Empire State Plaza, Albany, NY 12242, on behalf of the Department of Correctional Services, until 2:00 p.m. on Wednesday, September 11, 2019, when they will be publicly opened and read. Each bid must be prepared and submitted in accordance with the Instructions to Bidders and must be accompanied by a certified check, bank check, or bid bond in the amount of $ 636,000 for C.

**87**

All successful bidders will be required to furnish a Performance Bond and a Labor and Material Bond in the statutory form of public bonds required by Sections 136 and 137 of the State Finance Law, each for 100% of the amount of the Contract estimated to be between $25,000,000 and $30,000,000 for C.

Pursuant to State Finance Law §§ 139-j and 139-k, this solicitation includes and imposes certain restrictions on communications between OGS D&C and a bidder during the procurement process. A bidder is restricted from making contacts from the earliest posting, on the OGS website, in a newspaper of general circulation, or in the Contract Reporter of written notice, advertisement or solicitation of offers through final award and approval of the contract by OGS D&C and the Office of the State Comptroller ("Restricted Period") to other than designated staff unless it is a contact that is included among certain statutory exceptions set forth in State Finance Law § 139-j(3)(a). Designated staff are Jessica Hoffman, Carl Ruppert and Pierre Alric in the Division of Contract Management, telephone (518) 474-0203, fax (518) 473-7862 and John Lewyckyj, Deputy Director, Design & Construction Group, telephone (518) 474-0201, fax (518) 486-1650. OGS D&C employees are also required to obtain certain information when contacted during the restricted period and make a determination of the responsibility of the bidder pursuant to these two statutes. Certain findings of non-responsibility can result in rejection for contract award and in the event of two findings within a four-year period, the bidder is debarred from obtaining governmental Procurement Contracts. Bidders responding to this Advertisement must familiarize themselves with the State Finance Law requirements and will be expected to affirm that they understand and agree to comply on the bid form. Further information about these requirements can be found within the project manual or at: http://www.ogs.ny.gov/aboutOGS/regulations/defaultAdvisoryCouncil.html

The substantial completion date for this project is 854 days after the Agreement is approved by the Comptroller.

As a condition of award, within 48 hours of receipt of the proposed Contract Agreement from the State, the low bidder shall return the Contract Agreement to the State, properly executed, along with the Bonds if required by said Agreement. Low bidders who cannot meet these provisions may be subject to disqualification and forfeiture of the bid security.

The State intends to expedite award of this Contract and the Contractor shall be prepared to proceed with the Work accordingly. Bidders are warned that time is of the essence of the Contract and substantial completion of the Work must be within 854 days after the Agreement is approved by the Comptroller. Due to the tightness of the construction schedule, bidders should consider the necessity for an increased work force and shift operations.

The only time prospective bidders will be allowed to visit the job site to take field measurements and examine existing conditions of the project area will be at 11:00 a.m. on August 29. 2019 at the Coxsackie Correctional Facility, 11262 Route 9W, West Coxsackie, NY. Prospective bidders are urged to visit the site at this time. Prospective bidders or their representatives attending the pre-bid site visit will not be admitted on facility grounds without proper photo identification. Note that parking restrictions and security provisions will apply and all vehicles will be subject to search.

Phone the office of Karen Disonell, (518-731-8290) a minimum of 48 hours in advance of the date to provide the names of those who will attend the pre-bid site visit.

Pursuant to New York State Executive Law Article 15-A and the rules and regulations promulgated thereunder, OGS is required to promote opportunities for the maximum feasible participation of New York State-certified Minority- and Women-owned Business Enterprises ("MWBEs") and the employment of minority group members and women in the performance of OGS contracts. All bidders are expected to cooperate in implementing this policy. OGS hereby establishes an overall goal of 30% for MWBE participation, 15% for Minority-Owned Business Enterprises ("MBE") participation and 15% for Women-Owned Business Enterprises ("WBE") participation (based on the current availability of qualified MBEs and WBEs). The total contract goal can be obtained by utilizing any combination of MBE and /or WBE participation for subcontracting and supplies acquired under this Contract.

The Office of General Services reserves the right to reject any or all bids.

The Bidding and Contract Documents for this Project are available on compact disc (CD) only, and may be obtained for an $8.00 deposit per set, plus a $2.00 per set shipping and handling fee. Contractors and other interested parties can order CD's on-line through a secure web interface available 24 hours a day, 7 days a week. Please use the following link at the OGS website for ordering and payment instructions: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

For questions about purchase of bid documents, please send an e-mail to DCPlans@ogs.ny.gov, or call (518) 474-0203.

For additional information on this project, please use the link below and then click on the project number: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

By *John D. Lewyckyj, Deputy Director*
OGS - Design & Construction Group

# MISCELLANEOUS
## NOTICES/HEARINGS

### Notice of Abandoned Property
### Received by the State Comptroller

Pursuant to provisions of the Abandoned Property Law and related laws, the Office of the State Comptroller receives unclaimed monies and other property deemed abandoned. A list of the names and last known addresses of the entitled owners of this abandoned property is maintained by the office in accordance with Section 1401 of the Abandoned Property Law. Interested parties may inquire if they appear on the Abandoned Property Listing by contacting the Office of Unclaimed Funds, Monday through Friday from 8:00 a.m. to 4:30 p.m., at:

1-800-221-9311
or visit our web site at:
www.osc.state.ny.us

Claims for abandoned property must be filed with the New York State Comptroller's Office of Unclaimed Funds as provided in Section 1406 of the Abandoned Property Law. For further information contact: Office of the State Comptroller, Office of Unclaimed Funds, 110 State St., Albany, NY 12236.

### PUBLIC NOTICE
### Department of Civil Service

PURSUANT to the Open Meetings Law, the New York State Civil Service Commission hereby gives public notice of the following:

Please take notice that the regular monthly meeting of the State Civil Service Commission for September 2019 will be conducted on September 18 and September 19 commencing at 10:00 a.m. This meeting will be conducted at NYS Media Services Center, Suite 146, South Concourse, Empire State Plaza, Albany, NY with live coverage available at https://www.cs.ny.gov/commission/.

*For further information, contact*: Office of Commission Operations, Department of Civil Service, Empire State Plaza, Agency Bldg. One, Albany, NY 12239, (518) 473-6598

### PUBLIC NOTICE
### Department of Health

Pursuant to 42 CFR Section 447.205, the Department of Health hereby gives public notice of the following:

The Department of Health proposes to amend the Title XIX (Medicaid) State Plan for non-institutional services to comply with Federal enacted statutory provisions. The following changes are proposed:

Non-Institutional Services

Effective on or after October 1, 2019, this proposes to provide that the state is in compliance with new drug review and utilization requirements set forth in section 1902(oo) of the Act, as amended by Section 1004 of the SUPPORT for Patients and Communities Act.

There is no additional estimated annual change to gross Medicaid expenditures as a result of the clarifying proposed amendments.

The public is invited to review and comment on this proposed State Plan Amendment, a copy of which will be available for public review on the Department's website at http://www.health.ny.gov/regulations/state_plans/status. Individuals without Internet access may view the State Plan Amendments at any local (county) social services district.

For the New York City district, copies will be available at the following places:

New York County
250 Church Street
New York, New York 10018

Queens County, Queens Center
3220 Northern Boulevard
Long Island City, New York 11101

Kings County, Fulton Street
114 Willoughby Street
Brooklyn, New York 11201

Bronx County, Tremont Center
1916 Monterey Avenue
Bronx, New York 10457

Richmond County, Richmond Center
95 Central Avenue, St. George
Staten Island, New York 10301

*For further information and to review and comment, please contact*: Department of Health, Division of Finance and Rate Setting, 99 Washington Ave., One Commerce Plaza, Suite 1432, Albany, NY 12210, spa_inquiries@health.ny.gov

### PUBLIC NOTICE
### Oneida-Herkimer Solid Waste Management Authority
### Draft Request For Proposals (RFP)
### Purchase and/or Marketing of Processed
### Paper Recyclables
### For Oneida-Herkimer Solid Waste
### Management Authority

Pursuant to New York State General Municipal Law, Section 120-w, the Oneida- Herkimer Solid Waste Authority hereby gives notice of the following:

The Oneida-Herkimer Solid Waste Authority desires to procure an agreement for 5 years beginning January 1, 2020 for the purchase and/or marketing of paper recyclables processed at the Oneida-Herkimer Recycling Center, Utica, NY. Written comments on the Draft RFP must be received by 1:00 P.M. on November 4, 2019.

In order to promote its established Affirmative Action Plan, the Authority invites proposals from minority and women's business enterprises (M/WBE). Firms that are not M/WBE's responding to this RFP are strongly encouraged to consider partnering or creating other similar joint venture arrangements with certified M/WBE's. The directory of New York State Certified M/WBE's can be viewed at http://www.esd.ny.gov/mwbe.html. This Affirmative Action Policy regarding sealed bids and contracts applies to all persons without regard to race, color, creed, national origin, age, sex, or handicap. All qualified bidders will be afforded equal opportunities without discrimination.

*Copies of the Draft RFP may be obtained at*: www.ohswa.org or

through Emily M. Albright, Director of Recycling, Oneida-Herkimer Solid Waste Authority, 1600 Genesee St., Utica, NY 13502, (315) 733-1224, e-mail: emilya@ohswa.org

# PUBLIC NOTICE
## Department of State
### F-2019-0478
### Date of Issuance – September 4, 2019

The New York State Department of State (DOS) is required by Federal regulations to provide timely public notice for the activities described below, which are subject to the consistency provisions of the Federal Coastal Zone Management Act of 1972, as amended.

The applicant has certified that the proposed activity complies with and will be conducted in a manner consistent with the approved New York State Coastal Management Program.

In F-2019-0478 or the "Yerganian Residence Dock", the applicant Gary Yerganian, is proposing to replace an existing fixed dock in place and kind which includes a fixed dock, three floating docks and reinstalling the existing aluminum ramp. The applicant proposes to install three prefabricated 5 foot by 12 foot 7 inch jet ski floats. The project is located at 30 Spring Hollow Road, Town of Huntington, Suffolk County, Northport Harbor.

The applicant's consistency certification and supporting information are available for review at: http://www.dos.ny.gov/opd/programs/pdfs/Consistency/F-2019-0478_Yerganian_Dock_App.pdf

Original copies of public information and data submitted by the applicant are available for inspection at the New York State Department of State offices located at One Commerce Plaza, 99 Washington Avenue, in Albany, New York.

Any interested parties and/or agencies desiring to express their views concerning any of the above proposed activities may do so by filing their comments, in writing, no later than 4:30 p.m., 15 days from the date of publication of this notice, or, September 19, 2019.

*Comments should be addressed to*: Consistency Review Unit, Department of State, Office of Planning, Development & Community Infrastructure, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-6000, Fax (518) 473-2464. Electronic submissions can be made by email at: CR@dos.ny.gov

This notice is promulgated in accordance with Title 15, Code of Federal Regulations, Part 930.

# PUBLIC NOTICE
## Department of State
### F-2019-0740
### Date of Issuance – September 4, 2019

The New York State Department of State (DOS) is required by Federal regulations to provide timely public notice for the activities described below, which are subject to the consistency provisions of the Federal Coastal Zone Management Act (CZMA) of 1972, as amended.

The applicant has certified that the proposed activities comply with and will be conducted in a manner consistent with the federally approved New York State Coastal Management Program (NYSCMP). The applicant's consistency certification and accompanying public information and data are available for inspection at the New York State Department of State offices located at One Commerce Plaza, 99 Washington Avenue, in Albany, New York.

4919 Noyac, LLC proposes to demolish a pre-existing wood dock. To construct a new dock for residential use that consists of a 4' x 10'ramp up; connecting to a 4' x 43' fixed pier catwalk measuring 4.5' above grade over vegetation (per ACOE) and 26″ above MHW over open water; connecting to a 4' x 14' ramp down; connecting to a 6' x 20' float. Ramps and catwalk to be constructed with thru-flow decking to allow for light penetration. Pilings, girders, ledger, and float to be constructed with untreated tropical hardwood. The pier length seaward of MHW measures 60'. The project is located at 4519 Noyack Road, Southampton, NY 11968 on Ligonee Brook.

The applicant's consistency certification and supporting information are available for review at: http://www.dos.ny.gov/opd/programs/pdfs/Consistency/F-2019-0740NoyacLLC.pdf

Any interested parties and/or agencies desiring to express their views concerning any of the above proposed activities may do so by filing their comments, in writing, no later than 4:30 p.m., 30 days from the date of publication of this notice or October 4, 2019.

*Comments should be addressed to*: Department of State, Office of Planning and Development and Community Infrastructure, Consistency Review Unit, One Commerce Plaza, Suite 1010, 99 Washington Ave., Albany, NY 12231, (518) 474-6000. Electronic submissions can be made by email at: CR@dos.ny.gov

This notice is promulgated in accordance with Title 15, Code of Federal Regulations, Part 930.

# PUBLIC NOTICE
## Department of State
### F-2019-0775 (DA)
### Date of Issuance – September 4, 2019

The New York State Department of State (DOS) is required by Federal regulations to provide timely public notice for the activities described below, which are subject to the consistency provisions of the Federal Coastal Zone Management Act of 1972, as amended.

The applicant has certified that the proposed activities comply with and will be conducted in a manner consistent to the maximum extent practicable with the federally approved New York State Coastal Management Program (NYSCMP). The applicant's consistency certification and accompanying public information and data are available for inspection at the New York State Department of State offices located at One Commerce Plaza, 99 Washington Avenue, in Albany, New York.

In F-2019-0775-DA, the U.S. Department of Commerce, National Oceanic and Atmospheric Administration (NOAA), National Marine Fisheries Service (NMFS) is proposing to enact an Omnibus Deep-Sea Coral Amendment which would affect several commercial fisheries operating in offshore Atlantic Ocean areas along the outer continental shelf and within two (2) designated areas in the Gulf of Maine. The purpose of the Omnibus Deep-Sea Coral Amendment is to implement measures that reduce impacts of fishing gear on deep-sea corals in these areas.

This action would prohibit the use of mobile bottom-tending gear (i.e. bottom trawls, dredges, bottom longlines, sink gillnets, or pots/traps) in two areas within the Gulf of Maine – 1) Mount Desert Rock and 2) Outer Schoodic Ridge – and would prohibit the use of all gear (with an exception for red crab pots) along the outer continental shelf in waters no shallower than 600 meters.

An Environmental Assessment (EA) has been prepared and is available at the New England Fishery Management Council (NEFMC) website at: https://www.nefmc.org/library/omnibus-deep-sea-coral-amendment

The federal agency's consistency determination and accompanying public information and data are available for inspection at the New York State Department of State offices located at One Commerce Plaza, 99 Washington Avenue, in Albany, New York or at the following location: https://www.dos.ny.gov/opd/programs/pdfs/Consistency/F-2019-0775-DA.pdf

Any interested parties and/or agencies desiring to express their views concerning any of the above proposed activities may do so by filing their comments, in writing, no later than 4:30 p.m., 30 days from the date of publication of this notice or October 04, 2019.

*Comments should be addressed to*: Department of State, Office of Planning and Development and Community Infrastructure, Consistency Review Unit, One Commerce Plaza, Suite 1010, 99 Washington Ave., Albany, NY 12231, (518) 474-6000, Fax (518) 473-2464. Comments can also be submitted electronically via e-mail to: CR@dos.ny.gov

This notice is promulgated in accordance with Title 15, Code of Federal Regulations, Part 930.

## PUBLIC NOTICE
### Department of State
### F-2019-0784 (DA)

### Date of Issuance – September 4, 2019

The New York State Department of State (DOS) is required by Federal regulations to provide timely public notice for the activities described below, which are subject to the consistency provisions of the Federal Coastal Zone Management Act of 1972, as amended.

The applicant has certified that the proposed activities comply with and will be conducted in a manner consistent to the maximum extent practicable with the federally approved New York State Coastal Management Program (NYSCMP). The applicant's consistency certification and accompanying public information and data are available for inspection at the New York State Department of State offices located at One Commerce Plaza, 99 Washington Avenue, in Albany, New York.

In F-2019-0784-DA, the U.S. Department of Commerce, National Oceanic and Atmospheric Administration (NOAA), National Marine Fisheries Service (NMFS) is proposing an exemption from regulations which are broadly applicable within the New England Fishery Management Council created Great South Channel Habitat Management Area (HMA). This special management area was created via the NEFMC Omnibus Habitat Amendment 2 (OHA2) which prohibited the use of all mobile bottom-tending fishing gear within the HMA to protect complex benthic habitat that is important for juvenile cod and other groundfish species. The OHA2 provided for a one-year delay that allowed the surfclam fishery to continue fishing with hydraulic clam dredges in the HMA in order to give the Council time to determine if a long-term exemption is warranted. This one-year delay ended in April 2019 and the HMA is now closed to all mobile bottom-tending fishing gear.

Proposed is a Habitat Clam Dredge Exemption Framework which would allow the surfclam fishery to operate hydraulic dredge gear year-round in two small areas (McBlair and Fishing Rip) and seasonally in a third area (Old South) within the HMA. Mussel dredge fishing would also be allowed only within these exemption areas. Two additional areas (Rose and Crown; and Davis Bank East) are being considered for exemption also due to their importance to the surfclam fishery. A final rule is expected for publication in the Federal Register this summer.

The environmental assessment (EA) for the Habitat Clam Dredge Exemption Framework is available from the Council at: https://s3.amazonaws.com/nefmc.org/190722-Final-Clam-Dredge-Framework.pdf

The federal agency's consistency determination and accompanying public information and data are available for inspection at the New York State Department of State offices located at One Commerce Plaza, 99 Washington Avenue, in Albany, New York, or at the following hyperlink: https://www.dos.ny.gov/opd/programs/pdfs/Consistency/F-2019-0784-DA.pdf

Any interested parties and/or agencies desiring to express their views concerning any of the above proposed activities may do so by filing their comments, in writing, no later than 4:30 p.m., 30 days from the date of publication of this notice or October 4, 2019.

*Comments should be addressed to*: Department of State, Office of Planning and Development and Community Infrastructure, Consistency Review Unit, One Commerce Plaza, Suite 1010, 99 Washington Ave., Albany, NY 12231, (518) 474-6000, Fax (518) 473-2464. Comments can also be submitted electronically via e-mail to: CR@dos.ny.gov

This notice is promulgated in accordance with Title 15, Code of Federal Regulations, Part 930.

## PUBLIC NOTICE
### Department of State
### Uniform Code Variance / Appeal Petitions

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0487 Matter of Trinity Church of Nunda, located at 25 East Street, Village of Nunda, (County of Livingston), NY, for a variance concerning a vertical platform lift. (Routine Variance).

## PUBLIC NOTICE
### Department of State
### Uniform Code Variance / Appeal Petitions

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0496 Matter of St. Joseph's Chapel, P.O. Box 205 Round Top, NY 12473 for a variance concerning, a fire sprinkler installation. Involved is the conversion of an existing building for use as a dormitory occupancy. The building is located at 18 Old East Neck Road, Town of Huntington, County of Suffolk, State of New York.

2019-0495 Matter of Robert Minelli, 120 Forest Avenue, Massapequa, NY 11758 for a variance concerning, a residential fire sprinkler installation. Involved is an existing one family dwelling that has been elevated. The dwelling is located at 120 Forest Avenue, Town of Oyster Bay, County of Nassau, State of New York.

2019-0488 Matter of Stanley Stevens Architect P.C. 1679 Beech Street, Wantagh, NY 11793 for a variance concerning, a residential fire sprinkler installation. Involved is the addition to an existing one family dwelling located at 152 Horseshoe Road, Incorporated Village of Mill Neck, County of Nassau, State of New York.

2019-0404 Matter of Monte Scott Leeper Architect P.C. 414 Foxhurst Road, Oceanside, NY 11572 for a variance concerning, basement ceiling heights. Involved is the alteration to an existing one family dwelling located at 365 Foxhurst Road, Town of Hempstead, County of Nassau, State of New York.

2019-0496 Matter of St. Joseph's Chapel, P.O. Box 205 Round Top, NY 12473 for a variance concerning, a fire sprinkler installation. Involved is the conversion for use as a dormitory occupancy of an existing building located at 18 Old East Neck Road, Town of Huntington, County of Suffolk, State of New York.

2019-0494 Matter of James R Burton, 235 Watson Road, Fairport, NY 14450 for a variance concerning, the installation of exterior outlets. Involved are new multiple residence buildings known as Grand Street apartments. The buildings are located at Grand Street, Town of North Hempstead, County of Nassau, State of New York.

2019-0485 Matter of Leo J Pyzynski Jr, 100 Clinton Avenue – 4L, Mineola, NY 11501 for a variance to plumbing requirements including, the installation of separate gender specific toilet rooms. Involved is an office occupancy located at 326 Sunrise Highway, Incoporated Village of Rockville Centre, County of Nassau, State of New York.

2019-0484 Matter of Jose Benitez, 961 Nassau Road, Uniondale, NY 11553 for a variance to plumbing requirements including, the installation of separate gender specific toilet rooms. Involved is a resturant occupancy located at 961 Nassau Road, Town of Hempstead, County of Nassau, State of New York.

2019-0468 Matter of Guilor Architects P.C., 17 Ravine Road, Great Neck, NY 11023 for a variance concerning, stair tread requirements. Involved is an existing one family dwelling located at 18 ½ Arleigh Road, Incorporated Village of Kensington, County of Nassau, State of New York.

## PUBLIC NOTICE
### Department of State
### Uniform Code Variance / Appeal Petitions

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0497 Matter of 451 Arizona Avenue LLC, Melville A. Mapp, 68 Stonehurst Lane, Dix Hills, NY 11746, for a variance concerning safety requirements, including the height under a girder/soffit. Involved is an existing one family dwelling located at 451 Arizona Avenue, Town of Islip, NY 11706, County of Suffolk, State of New York.

2019-0506 Matter of Scott Taub, 817 Plainfield Lane, Valley Stream, NY 11581, for a variance concerning safety requirements, including the required ceiling height. Involved is an existing one family dwelling located at 10 North 4th Street, Town of North Hempstead, NY 11581, County of Nassau, State of New York.

## PUBLIC NOTICE
### Department of State
### Uniform Code Variance / Appeal Petitions

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0499 In the matter of Jinee Kim, 139 Lexington Drive, Ithaca, NY 14850 concerning safety requirements including a variance for reduction in required height of an existing exterior porch guardrail and interior handrails and guardrails.

Involved is the certificate of compliance inspection of an existing residential occupancy, two stories in height, located at 128 Blair Street, City of Ithaca, County of Tompkins, New York.

## PUBLIC NOTICE
### Department of State
### Uniform Code Variance / Appeal Petitions

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0500 Matter of Ronald Kuhner Residence, located at Eight Loomis Lane, Town of Busti (County of Chautauqua), NY, for a variance concerning foundations. (Routine Variance).

## PUBLIC NOTICE
### Department of State
### Uniform Code Variance / Appeal Petitions

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0501 Matter of Grandpa Sam's Italian Kitchen, located at 138 South Union Street, Village of Spencerport (County of Monroe), NY, for a variance concerning Fire sprinklers and ceiling height requirements. (Board Variance).

## PUBLIC NOTICE
### Department of State
### Uniform Code Variance / Appeal Petitions

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0503 In the matter of Aislyn Colgan, 333 Center Street, Ithaca, NY 14850 concerning safety requirements including a variance for reduction in required height of an existing interior handrails and guardrails.

Involved is the certificate of compliance inspection of an existing residential occupancy, two stories in height, located at 333 Center Street, City of Ithaca, County of Tompkins, New York.

## PUBLIC NOTICE
### Department of State
### Uniform Code Variance / Appeal Petitions

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0504 Matter of Sarah Blankenship Residence, located at 73 Redmond Avenue, City of Buffalo (County of Erie), NY, For a variance concerning reroofing requirements. (Routine Variance).