December 31, 2019
Vol. XLI
Issue 53

DEPARTMENT OF STATE
Division of Administrative Rules

# NEW YORK STATE
# REGISTER

*INSIDE THIS ISSUE:*

- Required Signage Warning Against the Dangers of Illegal Products
- Prohibition on the Sale of Electronic Liquids with Characterizing Flavors
- Debarment of Contractors

**Regulatory Agenda**
**Rule Review**
**Executive Orders**
**Court Notices**
**Financial Reports**

State agencies must specify in each notice which proposes a rule the last date on which they will accept public comment. Agencies must always accept public comment: for a minimum of 60 days following publication in the *Register* of a Notice of Proposed Rule Making, or a Notice of Emergency Adoption and Proposed Rule Making; and for 45 days after publication of a Notice of Revised Rule Making, or a Notice of Emergency Adoption and Revised Rule Making in the *Register*. When a public hearing is required by statute, the hearing cannot be held until 60 days after publication of the notice, and comments must be accepted for at least 5 days after the last required hearing. When the public comment period ends on a Saturday, Sunday or legal holiday, agencies must accept comment through the close of business on the next succeeding workday.

*For notices published in this issue:*
  – the 60-day period expires on February 29, 2020
  – the 45-day period expires on February 14, 2020
  – the 30-day period expires on January 30, 2020

**ANDREW M. CUOMO**
**GOVERNOR**

**ROSSANA ROSADO**
**SECRETARY OF STATE**

**NEW YORK STATE DEPARTMENT OF STATE**

For press and media inquiries call:
(518) 474-0050

For *State Register* production, scheduling and subscription information
call: (518) 474-6957
E-mail: adminrules@dos.ny.gov

For legal assistance with *State Register* filing requirements
call: (518) 474-6740
E-mail: dos.dl.inetcounsel@dos.ny.gov

The *New York State Register* is now available on-line at:
www.dos.ny.gov/info/register.htm

 The **New York State Register** (ISSN 0197 2472) is published weekly. Subscriptions are $80 per year for first class mailing and $40 per year for periodical mailing. The **New York State Register** is published by the New York State Department of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231-0001. Periodical postage is paid at Albany, New York and at additional mailing offices.

POSTMASTER: Send address changes to NY STATE REGISTER, the Department of State, Division of Administrative Rules, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231-0001

♲ *printed on recycled paper*



## NEW YORK STATE
# REGISTER

**Be a part of the rule making process!**

The public is encouraged to comment on any of the proposed rules appearing in this issue. Comments must be made in writing and must be submitted to the agency that is proposing the rule. Address your comments to the agency representative whose name and address are printed in the notice of rule making. No special form is required; a handwritten letter will do. Individuals who access the online *Register* (www.dos.ny.gov) may send public comment via electronic mail to those recipients who provide an e-mail address in Notices of Proposed Rule Making. This includes Proposed, Emergency Proposed, Revised Proposed and Emergency Revised Proposed rule makings.

To be considered, comments should reach the agency before expiration of the public comment period. The law provides for a minimum 60-day public comment period after publication in the *Register* of every Notice of Proposed Rule Making, and a 45-day public comment period for every Notice of Revised Rule Making. If a public hearing is required by statute, public comments are accepted for at least five days after the last such hearing. Agencies are also required to specify in each notice the last date on which they will accept public comment.

When a time frame calculation ends on a Saturday or Sunday, the agency accepts public comment through the following Monday; when calculation ends on a holiday, public comment will be accepted through the following workday. Agencies cannot take action to adopt until the day after expiration of the public comment period.

The Administrative Regulations Review Commission (ARRC) reviews newly proposed regulations to examine issues of compliance with legislative intent, impact on the economy, and impact on affected parties. In addition to sending comments or recommendations to the agency, please do not hesitate to transmit your views to ARRC:

Administrative Regulations Review Commission
State Capitol
Albany, NY 12247
Telephone: (518) 455-5091 or 455-2731

-----------------------------------------------------------------------------------------------

Each paid subscription to the *New York State Register* includes one weekly issue for a full year and four "Quarterly Index" issues. The Quarterly is a cumulative list of actions that shows the status of every rule making action in progress or initiated within a calendar year.

The *Register* costs $80 a year for a subscription mailed first class and $40 for periodical (second) class. Prepayment is required. To order, send a check or money order payable to the NYS Department of State to the following address:

NYS Department of State
One Commerce Plaza
99 Washington Avenue
Suite 650
Albany, NY 12231-0001
Telephone: (518) 474-6957

# New York State Register

December 31, 2019/Volume XLI, Issue 53

KEY:      (P) Proposal; (RP) Revised Proposal; (E) Emergency; (EP) Emergency and Proposal; (A) Adoption; (AA) Amended Adoption; (W) Withdrawal

Individuals may send public comment via electronic mail to those recipients who provided an e-mail address in Notices of Proposed Rule Making. This includes Proposed, Emergency Proposed, Revised Proposed and Emergency Revised Proposed rule makings. Choose pertinent issue of the *Register* and follow the procedures on the website (www.dos.ny.gov)

## Rule Making Activities

**Correction, State Commission of**
  1 / Necessary Age for Admission to an Adult Lockup (A)
**Environmental Conservation, Department of**
  1 / Set Nitrogen Oxide (NOx) Emission Rate Limits for Simple Cycle and Regenerative Combustion Turbines During the Ozone Season (A)
  5 / Regulate Volatile Organic Compounds (VOCs) in Architectural and Industrial Maintenance (AIM) Coatings (A)
  11 / Certain Substances That Contain Hydrofluorocarbons, Highly-Potent Greenhouse Gases (P)
**Financial Services, Department of**
  14 / Rules Governing the Procedures for Adjudicatory Proceedings Before the Department of Financial Services (EP)
  17 / Charges for Professional Health Services (EP)
  19 / Supplementary Uninsured/Underinsured Motorist Coverage (EP)
**Health, Department of**
  21 / Required Signage Warning Against the Dangers of Illegal Products (E)
  22 / Prohibition on the Sale of Electronic Liquids with Characterizing Flavors (E)
  25 / School Immunization Requirements (A)
  26 / Prohibition on the Sale of Electronic Liquids with Characterizing Flavors (P)
  28 / Cardiac Services (P)
  30 / Consumer Directed Personal Assistance Program Reimbursement (P)
**Metropolitan Transportation Agency**
  32 / Debarment of Contractors (E)
**Public Service Commission**
  34 / Implementation of a Surcharge (A)
  34 / Modifications to the Retail Access Energy Market (A)
  34 / Rate Increase in Annual Revenues (A)
  35 / Transfer of Ownership Interest in Poles (A)
  35 / Consolidated Billing for Distributed Energy Resources (A)
  35 / Transfer of Street Lighting Facilities (A)
  36 / Compensation of Distributed Energy Resources (A)
  36 / SIR Modifications (A)
  36 / Motion for Waiver of Article VII Application Regulations (A)
  36 / Petition to Implement a CDG-P (A)
  37 / Appointment of Temporary Operator (A)
  37 / Transfer of Cable Television Assets (A)
  37 / Technical Amendments of State Regulations and Administrative Corrections (P)
  40 / To Amend the Terms to Which the Customer Must Abide When Discontinuing Gas Service (P)
  40 / Notice of Intent to Submeter Electricity (P)
  40 / Extension of Time for Issuance of Securities and Other Forms of Indebtedness (P)
  41 / Transfer of Street Lighting Facilities (P)

41 / To Clarify the Term ''Customer'' Under Rule 28 — Special Services Performed by Company for Customer at a Charge (P)

**State University of New York**

42 / Proposed Amendments to the Traffic and Parking Regulations at State University of New York College at Old Westbury (P)

42 / Proposed Amendments to the Traffic and Parking Regulations at State University Agricultural and Technical College at Morrisville (P)

**Victim Services, Office of**

43 / Limits on Administrative Expenses and Executive Compensation (A)

**Hearings Scheduled for Proposed Rule Makings** / 44

**Action Pending Index** / 45

**Regulatory Agenda**

**Rule Review**

93 / Motor Vehicles, Department of

**Advertisements for Bidders/Contractors**

97 / Sealed Bids

**Miscellaneous Notices/Hearings**

101 / Notice of Abandoned Property Received by the State Comptroller

101 / Public Notice

**Executive Orders**

107 / Executive Order No. 168.31: Continuing the Declaration of a Disaster Emergency in the Five Boroughs of New York City and the Counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk and Westchester that Incorporate the MTA Region in the State of New York.

**Court Notices**

109 / Practice Rules of the Appellate Division

**Financial Reports** / 111
**Rule Making Activities**
**Hearings Scheduled for Proposed Rule Makings** / 1

# RULE MAKING ACTIVITIES

Each rule making is identified by an I.D. No., which consists of 13 characters. For example, the I.D. No. AAM-01-96-00001-E indicates the following:

AAM -the abbreviation to identify the adopting agency

01 -the *State Register* issue number

96 -the year

00001 -the Department of State number, assigned upon receipt of notice.

E -Emergency Rule Making—permanent action not intended (This character could also be: A for Adoption; P for Proposed Rule Making; RP for Revised Rule Making; EP for a combined Emergency and Proposed Rule Making; EA for an Emergency Rule Making that is permanent and does not expire 90 days after filing.)

Italics contained in text denote new material. Brackets indicate material to be deleted.

## State Commission of Correction

### NOTICE OF ADOPTION

**Necessary Age for Admission to an Adult Lockup**

**I.D. No.** CMC-41-19-00002-A

**Filing No.** 1151

**Filing Date:** 2019-12-17

**Effective Date:** 2019-12-31

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* Amendment of section 7501.1(c) of Title 9 NYCRR.

*Statutory authority:* Correction Law, section 45(6) and (15)

*Subject:* Necessary age for admission to an adult lockup.

*Purpose:* To ensure that individuals under 18 years old are not admitted to an adult lockup.

*Text or summary was published* in the October 9, 2019 issue of the Register, I.D. No. CMC-41-19-00002-EP.

*Final rule as compared with last published rule:* No changes.

*Text of rule and any required statements and analyses may be obtained from:* Brielle Christian, NYS Commission of Correction, 80 S. Swan St., 12th Floor, Albany, New York 12210, (518) 485-2346, email: Brielle.Christian@scoc.ny.gov

*Initial Review of Rule*

As a rule that does not require a RFA, RAFA or JIS, this rule will be initially reviewed in the calendar year 2024, which is no later than the 5th year after the year in which this rule is being adopted.

*Assessment of Public Comment*

The agency received no public comment.

## Department of Environmental Conservation

### NOTICE OF ADOPTION

**Set Nitrogen Oxide (NOx) Emission Rate Limits for Simple Cycle and Regenerative Combustion Turbines During the Ozone Season**

**I.D. No.** ENV-09-19-00015-A

**Filing No.** 1156

**Filing Date:** 2019-12-17

**Effective Date:** 30 days after filing

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* Addition of Subpart 227-3 to Title 6 NYCRR.

*Statutory authority:* Environmental Conservation Law, sections 1-0101, 3-0301, 19-0103, 19-0105, 19-0301, 19-0303, 19-0305, 19-0311, 71-2103 and 71-2105

*Subject:* Set nitrogen oxide (NOx) emission rate limits for simple cycle and regenerative combustion turbines during the ozone season.

*Purpose:* Reduction of nitrogen oxide (NOx) emissions from simple cycle and regenerative combustion turbines during the ozone season.

*Text or summary was published* in the February 27, 2019 issue of the Register, I.D. No. ENV-09-19-00015-P.

*Final rule as compared with last published rule:* No changes.

*Revised rule making(s) were previously published in the State Register on* August 21, 2019.

*Text of rule and any required statements and analyses may be obtained from:* Ona Papageorgiou, NYSDEC, Division of Air Resources, 625 Broadway, Albany, NY 12233-3251, (518) 402-8396, email: air.regs@dec.ny.gov

*Additional matter required by statute:* Pursuant to Article 8 of the State Environmental Quality Review Act, a Short Environmental Assessment Form, a Negative Declaration and a Coastal Assessment Form have been prepared and are on file.

*Summary of Revised Regulatory Impact Statement*

The New York State Department of Environmental Conservation (DEC) is proposing 6 NYCRR Subpart 227-3, "Ozone Season Oxides of Nitrogen (NOx) Emission Limits for Simple Cycle and Regenerative Combustion Turbines." The primary goal of this proposal is to lower allowable NOx emissions from simple cycle and regenerative combustion turbines during the ozone season. The lower emissions from these sources will help to address Clean Air Act (CAA) requirements, ozone nonattainment and protect the health of New York State residents. This proposal is only applicable to simple cycle and regenerative combustion turbines. This is not a mandate on local governments. It applies to any entity that owns or operates a subject source.

STATUTORY AUTHORITY

The statutory authority for the promulgation of Subpart 227-3 is found in the New York State Environmental Conservation Law (ECL), Sections 1-0101, 3-0301, 19-0103, 19-0105, 19-0301, 19-0303, 19-0305, 19-0311, 71-2103 and 71-2105.

LEGISLATIVE OBJECTIVES

Article 19 of the ECL was enacted to safeguard the air resources of New York from pollution and ensure the protection of the public health

and welfare, the natural resources of the State, physical property, and integrating industrial development with sound environmental practices.

NEEDS AND BENEFITS

In March of 2008, the United States Environmental Protection Agency (EPA) lowered the eight-hour ozone National Ambient Air Quality Standard (NAAQS) from 0.08 parts per million (ppm) to 0.075 ppm.[1] Subsequently, on October 1, 2015, the EPA signed a rule that lowered this standard to 0.070 ppm.[2] Ozone NAAQS attainment status is demonstrated by measurements recorded from a monitoring network set up across the United States.

EPA designated the New York-Northern New Jersey-Long Island-Connecticut metropolitan area (New York metropolitan area, or NYMA) as a "marginal" nonattainment area for the 2008 ozone NAAQS effective July 20, 2012. On August 23, 2019 EPA reclassified the NYMA to "serious" nonattainment.[3] The area was designated as "moderate" nonattainment for the 2015 ozone NAAQS.[4] NYMA monitors are currently reporting ozone concentrations of 0.082 ppm, well above the standard.

Simple cycle and regenerative combustion turbines (SCCTs) sometimes referred to as peaking units, run to meet electric load during periods of peak electricity demand. They typically run on hot summer days when there is a strong likelihood of high ozone readings. Many peaking units in New York have high NOx emission rates, are inefficient and are approaching 50 years of age. It is difficult to install after-market controls on most of these units because of their age and site limitations.

New York must fulfill its CAA "good neighbor" obligations which require states to include adequate measures in its state implementation plans (SIPs) prohibiting emissions of air pollutants "in amounts which will… contribute significantly to nonattainment in, or interfere with maintenance by, any other state with respect to" a NAAQS. In addition, New York must meet the 2008 and 2015 ozone NAAQS, for which the New York-Northern New Jersey-Long Island, NY-NJ-CT area is in nonattainment.

Because high ozone days significantly impact human health in the NYMA and because older units significantly contribute on these days, DEC assessed the 99 high ozone days between 2011 and 2017. Analysis shown in Table 1.

| | NOx (tons) | Heat Input (MMBtu) | Gross Load (MWh) |
|---|---|---|---|
| Pre-1986 SCCT* | 1,849 | 7,193,633 | 580,109 |
| Post-1986 SCCT* | 73 | 6,908,887 | 1,040,831 |

*Values are the sum of high ozone days 2011 - 2017

Table 1: NOx emissions from NY SCCTs.[5]

As demonstrated in Table 1, on high ozone days newer SCCTs produced 64 percent of the electricity generated from SCCTs while emitting only 4 percent of NOx emissions from these sources[6].

If the older sources were replaced with newer sources, the total NOx emissions from those older sources on the 99 high ozone days assessed would drop from the reported 1,849 tons to between 40 and 60 tons depending on efficiency. This would result in an approximate 1,800-ton reduction of NOx emissions over those high ozone days. A reduction of 18 tons of NOx emissions on an ozone season day would represent a reduction of over 10 percent of NYMA NOx emissions from the electricity generation sector and an overall reduction of 3.5 percent from all sources.[7]

Electric Grid Reliability:

To adequately assess future reliability needs associated with this rule making the Department is proposing that affected facilities submit compliance plans by March 2, 2020 so that the New York Independent System Operator (NYISO) may include the compliance solutions selected by facilities in its 2020 Reliability Needs Assessment (RNA).

Proposal:

To address NOx emissions on high ozone days from SCCTs, DEC is proposing to develop a new regulation, Subpart 227-3, that will apply to SCCTs with a nameplate capacity of 15 megawatts or greater that inject power into the transmission or distribution systems. This regulation will phase in lower emission limits for NOx and will limit the current averaging provision found in Subpart 227-2 during the ozone season. The sources subject to this proposal will continue to be subject to the requirements of Subpart 227-3 year-round. This rulemaking proposes additional requirements for SCCTs during the ozone season while allowing more flexibility outside of the ozone season. Black start resources, defined in paragraph 227-3.2(b)(1) of Subpart 227-3 as electric generating units used to bring a facility from shutdown to operational without reliance on external supplies or the electrical system, will not be subject to Subpart 227-2. The requirements of the proposed rule are presented in the following paragraphs.

Control Requirements:

The NOx emission limits for SCCTs will be phased in as shown in Tables 2 and 3 below. These limits may be met by averaging SCCTs, electric storage resources and/or renewable generation resources on a facility-wide basis.

By May 1, 2023

| | NOx Emission Limit (ppmvd[8]) |
|---|---|
| All SCCTs | 100 |

Table 2: NOx emission limits for SCCTs beginning 5/1/2023

By May 1, 2025

| Fuel Type | NOx Emission Limit (ppmvd) |
|---|---|
| Gaseous fuels | 25 |
| Distillate oil or other liquid fuel | 42 |

Table 3: NOx emission limits for SCCTs beginning 5/1/2025

Also beginning May 1, 2023, SCCTs will only be able to average emissions with other SCCTs at the facility or, if the facility opts to utilize the electric storage and renewable energy resources compliance option, then those SCCTs may also average with approved electricity storage or renewable energy resources during the ozone season.

Compliance Options:

Owners and operators may elect to meet the limits as proposed. To offer flexibility, this rule is proposing two additional compliance options:

1) Owners and operators may elect an ozone season stop where it is recorded in the operating permit that the source may not operate during the ozone season.

2) Owners and operators may elect to adhere to an output-based NOx daily emission rate that includes electric storage and renewable energy under common control with the SCCTs with which they are averaging.

COSTS

Older SCCTs are typically not conducive to the addition of retrofit control technology. DEC expects that most impacted facilities will choose to replace or shutdown the non-compliant older SCCTs. To estimate replacement costs DEC looked to information provided by the NYISO and Department of Energy's Energy Information Administration (EIA).

Table 4 presents costs developed by EIA and NYISO for full replacement of an SCCT.

| Source | Overnight Cost ($/kW) | Notes |
|---|---|---|
| EIA | $1,054 - $1,558[9] | Range is specific for the Long Island and New York City area and includes conventional and advanced combustion turbines. |
| NYISO | $1,314 - $1,357[10] | Range is specific for the Long Island and New York City area and represents replacement with a dual fuel peaking turbine. |

Table 4: Estimated range of overnight costs for full replacement of an SCCT

Most SCCTs have a capacity factor of less than 5 percent, meaning that they generate less than 5 percent of the electricity output that it is capable of generating. In addition, with the implementation of several New York State initiatives,[11] demand for these units should continue to decline so the entire SCCT fleet would likely not need to be replaced.

Owners and operators may opt to install after-market emission control devices such as water injection technology. While costs vary widely depending on location, operation and siting, it has been reported to DEC, anecdotally, that the cost of adding after-market water injection to these older sources is approximately $2,000,000. Other sources report costs of $10,000 - $15,000 per megawatt,[12] however, this data does not include installation and other associated costs.

Cost of Nonattainment:

This proposal is part of a suite of New York State efforts to bring the NYMA into attainment of the ozone NAAQS, in order to protect human health. EPA projected a wide array of benefits that would be realized on a national level, excluding California, if ozone attainment is achieved.[13] The human cost of nonattainment to New York State residents is presented in Table 5.

Attainment Provides Prevention of:

| | |
|---|---|
| Deaths from effects of ozone | 13 - 22 |
| Deaths from effects of PM2.5 | 31 - 70 |
| Nonfatal heart attacks | 4 - 36 |
| Hospital admissions & emergency room visits | 134 |
| Acute bronchitis events | 48 |
| Upper & lower respiratory symptom events | 1,540 |
| Exacerbated asthma events | 32,200 |
| Missed work & school days | 26,320 |
| Restricted activity days | 86,800 |

Table 5: Summary of Total Number of Annual Ozone and PM-Related Premature Mortalities and Premature Morbidity: 2025 National Benefits (adapted from RIA, 2015 RIA, p. ES-16)

LOCAL GOVERNMENT MANDATES
The proposed regulation does not contain a mandate on local governments.

PAPERWORK
This proposal will require each affected facility to submit a compliance plan to DEC. The compliance plan will state how each facility plans to comply with the new requirements.

Those facilities required to meet new emission limits will be required to submit permit applications to modify their Title V or State Facility permits to incorporate the newly applicable requirements by the May 1, 2023 compliance date.

Subject facilities that do not use a continuous emissions monitoring system (CEMS) will be required to perform an emissions test to assure compliance with the applicable NOx emission limits. Every subject facility will be required to submit test protocols and test reports to the Department for approval.

DUPLICATION
The proposed Subpart 227-3 does not duplicate or conflict with any other state or federal requirements.

ALTERNATIVES
DEC considered two alternatives in assessing this proposal, leave the emission rates as they are and just lowering emission rate requirements. The first option would leave New York open to CAA Section 126 petitions and if acted upon by EPA could require controls within three years. The second option does not allow for the compliance flexibility and reliability considerations included in the proposal that were developed during the stakeholder process.

FEDERAL STANDARDS
The proposed rule does not exceed any minimum federal standards.

COMPLIANCE SCHEDULE
March 2, 2020: All impacted sources must submit a compliance plan that must contain minimum data to demonstrate compliance will be achieved.

May 1, 2023: First phase of NOx emission limits set at 100 ppmvd[14] for all SCCTs.

May 1, 2025: Second phase of NOx emission limits set at 25 ppmvd for gaseous fuels and 42 ppmvd for liquid fuels.

[1] 73 FR 16436 (March 27, 2008), codified at 40 CFR section 50.15. Attainment of the 2008 ozone NAAQS is determined when the fourth highest daily maximum 8-hour average ambient air quality ozone concentration, averaged over three year, is less than or equal to 0.075 ppm.
[2] 80 FR 65292 (October 26, 2015).
[3] 84 FR 44238 (August 23, 2019).
[4] 83 FR 25776 (June 4, 2018).
[5] EPA Air Markets Program Data. https://ampd.epa.gov/ampd/.
[6] Percentages calculated from EPA Air Markets Program Data for days which exceeded the ozone NAAQS. https://ampd.epa.gov/ampd/.
[7] "New York State implementation plan for the 2008 ozone national ambient air quality standards." http://www.dec.ny.gov/chemical/110727.html.
[8] Parts per million on a dry volume basis at fifteen percent oxygen.
[9] EIA, Capital Cost Estimates for Utility Scale Electricity Generating Plants, November 2016.
[10] NYISO, Demand Curve Model – 2019-2020.xlsm. Retrieved (1/3/2019) from: https://www.nyiso.com/search?time=last-year&sortField=_score&resultsLayout=list&q=Demand%20Curve%20Model%202016.
[11] Including energy efficiency and energy storage targets, Reforming the Energy Vision and the Clean Energy Standard.

[12] The data provided only includes capital cost. "Gas Turbine Combustion." Lefebvre & Ballal. CRC Press, April 26, 2010.
[13] Regulatory Impact Analysis (RIA) for the 2015 ozone NAAQS.
[14] Parts per million on a dry volume basis at fifteen percent oxygen.

*Revised Regulatory Flexibility Analysis*
The New York State Department of Environmental Conservation (DEC) is proposing new 6 NYCRR Subpart 227-3, "Ozone Season Oxides of Nitrogen (NOx) Emission Limits for Simple Cycle and Regenerative Combustion Turbines." The primary goal of this proposal is to lower allowable NOx emission rates from simple cycle and regenerative combustion turbines (SCCTs) during the ozone season.

EFFECT OF RULE
DEC does not expect that the requirements of this proposal to adversely impact employment opportunities with small businesses. Businesses and local governments subject to this proposed rule generate electricity that is injected into the electrical grid and those facilities are required to maintain generation compliant with reliability rules at the federal and state level. The facilities subject to the proposed rule are mostly large businesses and corporations.

The proposed regulation does not contain a mandate on local governments. Local governments have no additional compliance obligations. There are two SCCTs that are owned by local governments that are listed in the table below. While these sources will be subject to the requirements of this proposal, they already comply with the lower NOx rates and so no changes will be required of the facilities. While the two sources will be required to submit compliance plans, as outlined below, their plan requirements are simplified because they already comply with the emissions limits.

| Facility | Local Government |
|---|---|
| Freeport | Village of Freeport |
| SA Carlson | Town of Jamestown |

Table 1: Local Governments Subject to the Proposed Rule
COMPLIANCE REQUIREMENTS
On or before March 2, 2020: All impacted sources must submit a compliance plan that must, at minimum, contain:
• Nameplate capacity;
• Ownership;
• A list of each emission source that includes identifying numbers such as facility number, source number and name;
• A schedule outlining how the owner or operator will comply with the requirements set forth in the rule;
• Which emission sources will install controls and what those controls will be; and
• Which emission sources will be replaced or repowered.
Effective May 1, 2023: The first phase of NOx emission limits will be implemented during the ozone season and SCCTs will be limited to averaging with other SCCTs, storage or renewable energy resources. The first phase of emission limits will be:

| By May 1, 2023 | NOx Emission Limit (ppmvd[1]) |
|---|---|
| All SCCTs | 100 |

Table 2: NOx emission limits for SCCTs beginning 5/1/2023
Effective May 1, 2025: The second and final phase of NOx emission limits will be implemented during the ozone season as follows:

| Beginning May 1, 2025 | |
|---|---|
| Fuel Type | NOx Emission Limit (ppmvd) |
| Gaseous fuels | 25 |
| Distillate oil or other liquid fuel | 42 |

Table 3: NOx emission limits for SCCTs beginning 5/1/2025
PROFESSIONAL SERVICES
It is not expected that small businesses or local governments are likely to need professional services to comply with this rule. If an affected source currently utilizes professional services, such as consulting engineers, to comply with 6 NYCRR Subpart 227-2, they may continue to use those services to comply with the requirements of this proposal.

COMPLIANCE COSTS
Compliance costs discussed below are expected to impact larger power generation businesses, not small businesses or local governments. Discussion on the compliance costs to large generation businesses follows.

DEC is proposing to require each source owner to develop a compli-

ance plan to demonstrate how they intend to comply with the proposed rule. The SCCTs installed prior to 1986 are typically not conducive to the addition of retrofit control technology. As a result, DEC expects that most impacted SCCT owners will choose to replace or shutdown the non-compliant SCCTs. To estimate replacement costs DEC looked to information provided by the NYISO and Department of Energy (DOE), Energy Information Administration (EIA).

The EIA describes overnight costs for electricity generating facilities as including[2]:

• Civil and structural costs: allowance for site preparation, drainage, installation of underground utilities, structural steel supply, and construction of buildings on the site;

• Mechanical equipment supply and installation: major equipment, including but not limited to, boilers, flue gas desulfurization scrubbers, cooling towers, steam turbine generators, condensers, photovoltaic modules, combustion turbines, and other auxiliary equipment;

• Electrical and instrumentation and control: electrical transformers, switchgear, motor control centers, switchyards, distributed control systems, and other electrical commodities;

• Project indirect costs: engineering, distributable labor and materials, craft labor overtime and incentives, scaffolding costs, construction management start up and commissioning, and contingency fees; and

• Owners costs: development costs, preliminary feasibility and engineering studies, environmental studies and permitting, legal fees, insurance costs, property taxes during construction, and the electrical interconnection costs, including a tie-in to a nearby electrical transmission system.[3]

Table 4 presents the full overnight costs developed by EIA and NYISO for full replacement of an SCCT.

| Source | Overnight Cost ($/kW) | Notes |
|---|---|---|
| EIA | $1,054 - $1,558[4] | Range is specific for the Long Island and New York City area and includes conventional and advanced combustion turbines. |
| NYISO | $1,314 - $1,357[5] | Range is specific for the Long Island and New York City area and represents replacement with a dual fuel peaking turbine. |

Table 4: Estimated range of overnight costs for full replacement of an SCCT

DEC believes that the entire capacity of generation will likely not need to be replaced. Most SCCTs have a capacity factor of less than 5 percent, meaning that they generate less than 5 percent of the electricity output that they are capable of generating. In addition, with the implementation of several New York State initiatives, including the State's recently announced energy efficiency and energy storage targets, Reforming the Energy Vision and the Clean Energy Standard, demand for these units should continue to decline. There are over 3,400 MW of SCCT capacity listed in the NYISO Gold Book[6] that are older, pre-1986 SCCTs.

Owners and operators may opt to install after-market emission control devices on sources that are unable to comply. Water injection technology is the after-market technology that a facility owner would likely consider for these older sources. The costs of adding after-market emission control devices varies widely depending on location, operation and land space availability. It has been reported to DEC, anecdotally, that the cost of adding after-market water injection to one of these older sources is approximately two million dollars. Other sources discuss a cost of $10,000 - $15,000 per megawatt,[7] and many of the sources that would be impacted are 15 to 20 megawatts each. However, this data does not include installation and other associated costs.

ECONOMIC AND TECHNOLOGICAL FEASIBILITY

It is not expected that small businesses will need to comply with this proposed rule. As noted above, the two local governments subject to the emission limits already comply. This is not a mandate on small businesses or local government.

MINIMIZING ADVERSE IMPACT

To minimize any adverse impacts DEC is proposing a phase-in of requirements as well as a reliability provision. The phase-in of requirements allows for power companies, with affected sources, to plan over a longer term. In addition, DEC is proposing several compliance options to offer compliance flexibility:

1) Owners and operators may elect an ozone season stop where it is recorded in their operating permit that the source may not operate during the ozone season.

2) Owners and operators may elect to adhere to an output-based NOx daily emission rate that includes electric storage and renewable energy under common control with the SCCTs with which they are averaging.

SMALL BUSINESS AND LOCAL GOVERNMENT PARTICIPATION

DEC participated in several stakeholder meetings including those for impacted facilities and local environmental justice groups over a period of eighteen months. In addition, DEC posted a stakeholder outline on the DEC website to encourage stakeholder participation and comment.[8] SCCTs, as applicable in this regulation, are electric generating sources and not considered small businesses. Sources identified to be government owned already comply with the proposed standard and had the opportunity to participate in the stakeholder process.

CURE PERIOD OR AMELIORATIVE ACTION

No additional cure period or other opportunity for ameliorative action is included in Subpart 227-3. This proposal will not result in immediate violations or impositions of penalties for existing facilities. To help reduce immediate impacts on affected sources, Subpart 227-3 requires a compliance plan due on March 2, 2020 followed by reduced NOx emission limits phased-in first on May 1, 2023 and later on May 1, 2025. This will allow owners and operators of affected sources time to comply with the proposed Subpart 227-3.

INITIAL REVIEW

The initial review of this rule shall occur no later than in the third calendar year after the year in which the rule is adopted.

---

1    Parts per million on a dry volume basis at fifteen percent oxygen.

2    Overnight costs include the costs for the physical power plant assuming it can be built overnight. As a result, interest on loans are not factored into the cost estimates.

3    EIA, Capital Cost Estimates for Utility Scale Electricity Generating Plants, November 2016.

4    EIA, Capital Cost Estimates for Utility Scale Electricity Generating Plants, November 2016.

5    NYISO, The New York Installed Capacity (ICAP) market Working Group. Available here: http://www.nyiso.com/public/markets_operations/market_data/icap/index.jsp.

6    NYISO, 2017 Load and Capacity Data.

7    The data provided only includes capital cost. "Gas Turbine Combustion." Lefebvre & Ballal. CRC Press, April 26, 2010.

8    https://www.dec.ny.gov/chemical/113887.html

*Initial Review of Rule*

As a rule that requires a RFA, RAFA or JIS, this rule will be initially reviewed in the calendar year 2022, which is no later than the 3rd year after the year in which this rule is being adopted.

*Assessment of Public Comment*

A total of thirteen comment letters were submitted by the public in response to the Department's revised proposed rule for regulating simple cycle and regenerative combustion turbines, often referred to as "peakers" (Subpart 227-3). This document summarizes these comments into eight sections and provides the Department's response.

General Comments

The Department received general comments in support of the regulation as well as urging the Department to keep the schedule as outlined in the regulation. The Department thanked those commenters and agrees that the schedule should not be delayed.

Black Start Resources

Four commenters asked for the Department to clarify that a "black start resource" may only operate when testing or bringing a facility from shutdown to operational without the reliance on external supplies or the electrical system. The Department believes that the definition, as written, conveys this intention. More specifically, one commenter asked if it was allowable for a black start resource to operate for testing and maintenance purposes and the Department replied that it was.

Energy Storage & Renewable Energy

There were several comments that focused on the energy storage and renewable energy provision of the regulation. Specifically, one commenter stated energy storage as a replacement for a particular simple cycle combustion turbine (SCCT) may be inadequate to meet reliability requirements in some locations. The Department has worked with the New York Independent System Operator (NYISO), the Department of Public Service (DPS) and the New York State Energy Research and Development Authority (NYSERDA) to develop a regulation that considers emissions reductions as well as reliability. As a result, the Department expects a variety of compliance solutions which may or may not include storage as a partial replacement.

Another commenter expressed concern with the NYISO Buyer-Side Mitigation (BSM) process impacts on allowing storage resources in to the market and requested that the regulation allow the Department to overrule a reliability determination. The Department believes that the current

language is adequate and will not overrule a reliability determination made by the NYISO or transmission/distribution utilities. The BSM process tests are in place to "… provide the means for the ISO to mitigate the market effects of conduct that would substantially distort competitive outcomes in the ISO Administered Markets, while avoiding unnecessary interference with competitive price signals.[1]" Based on consultation with the NYISO it is the Department's understanding that those SCCTs that are planned for retirement will not be included in the BSM test for storage projects.

Three commenters did not believe that energy storage or renewable energy resources should be required to be directly connected to the same substation or within a half-mile radius of the SCCT with which it is being averaged. The Department worked extensively with stakeholders to develop the language in the proposal and believes it to be the best balance of the issues discussed as to where to allow renewable and storage resources to be sited under this compliance option. Please see previous Assessment of Public Comment dated August 21, 2019 for more detail.

Emissions Averaging

A commenter stated that data from facilities that average emissions over a 24-hour period should be made publicly available so that interested members of the public may evaluate how facilities are utilizing the renewable energy and energy storage averaging compliance option. The Department does not plan on posting average emissions on the Department's website, however the Freedom of Information Law (FOIL) request process is available to all individuals seeking information from the Department.

There were questions regarding the calculation of average emission rates under different scenarios. The Department responded with direction to the formulas for calculating average emission rates which are set forth in paragraph 227-3.5(b) and averaging options defined in 227-3.5(a).

A commenter also asked if the emission limits in 227-3.4(a) are based on a one-hour average or a daily average when using CEMS? The Department responded that emission limits set in subdivision 227-3.4(a) are based on a one-hour average consistent with previous reporting requirements under subdivision 227-2.4(e).

Emissions during Startup and Shut down of SCCTs

One commenter stated that the rule should be revised to clarify that compliance with the emission limits will be at steady state operations and not include startup and shutdown.

The Department responded that compliance with Subpart 227-3 is consistent with the compliance requirements in Subpart 227-2 which SCCTs are already complying with. The testing methodology for stack tests requires the measurement of emissions at normal operating conditions (steady state).

Compliance Plans

A commenter asked for a defined process for how compliance plans are structured and processed. The Department responded that the requirements for compliance plans are presented in Section 227-3.3. The Department will make the compliance plans available to the NYISO to inform the 2020 Reliability Needs Assessment (RNA) once they have been received and processed. It is the Department's understanding that the NYISO, transmission/distribution owners and others will use the information in the compliance plans to inform their work on the RNA.

One commenter recommended that the Department post all of the filed compliance plans on the Department's website immediately upon receipt. The Department does not plan on posting filed compliance plans on the Department's website, however, pursuant to the FOIL anyone interested in this information may file a FOIL request with the Department.

To comply with the regulation, affected source owners must submit a compliance plan by March 2, 2020. The Department expects the NYISO to use these plans as inputs to their 2020 RNA. To ensure the RNA is based on accurate information, the Department requires that compliance plans not be amended after submittal. Some stakeholders asked if they compliance plans may be changed or updated based on designations or other activity. The March 2, 2020 date for submitting compliance plans corresponds with NYISO's 2020 RNA schedule. The Department will accept compliance plans through March 2, 2020 and expects that the NYISO will use these compliance plans in the development of the 2020 RNA.

Reliability

The regulation offers a reliability extension to ensure that the reliability of New York's electric grid is not adversely impacted by the rule. Some commenters asked that the Department revise the regulation to give the Department the authority to override the NYISO and transmission/distribution operator determination of reliability. The Department conducted a thorough stakeholder process and as a result of that process the Department will rely on the expertise of those responsible for reliability planning to determine if a source is a reliability resource. The regulation does not provide language allowing the Department to overrule a reliability determination made by the NYISO or transmission/distribution utilities.

One commenter stressed the importance of the Department recognizing the NYISO's finding that replacement generation resources are necessary and needed within the New York City Load pockets beginning in 2023. The Department understands that reliability is of concern and as a result provided several compliance options in this rulemaking to ensure that replacement of these high emitting sources may be removed and replaced with cleaner or non-emitting sources without adversely impacting grid reliability.

A commenter stated that with the advent of the Climate Leadership and Community Protection Act (CLCPA), the reliability provision alone will be insufficient without other mechanisms within the Department's control and working with the NYISO to support a market-based response to the reliability needs. The Department disagrees and believe that sufficient mechanisms are in place to maintain reliability while reducing NOx emissions. The Department worked extensively with the NYISO, DPS and NYSERDA to ensure that both emissions reductions are achieved and that system reliability is maintained.

Emission Limits

A commenter asked if the calculation for a source which would be able to meet the lb/MWh limitations using the equations provided and counting zero for MWhST and MWhRE, are the lb/MWh compliance options available for SCCTs at facilities which do not utilize electric storage or renewable energy resources? No, Subdivision 227-3.5(b) offers the lb/MWh calculation available to those sources which average with electric storage and/or renewable energy resources.

Beyond the Scope

One comment was received beyond the scope of the regulation where a commenter stated that because of CLCPA and other impacts on energy generation it will be necessary for the NYISO market to appropriately reflect the window in which a new peaking unit must recover its investment.

_____

[1]  NYISO. July 26, 2019 presentation: https://www.nyiso.com/documents/20142/7768815/BSM%20Information%20Session%20Slidedeck%20(final)%2020190726.pdf/a7c1271a-ce71-2d39-c0cd-ce3c361b6d8b

## NOTICE OF ADOPTION

**Regulate Volatile Organic Compounds (VOCs) in Architectural and Industrial Maintenance (AIM) Coatings**

**I.D. No.** ENV-10-19-00003-A

**Filing No.** 1144

**Filing Date:** 2019-12-12

**Effective Date:** 30 days after filing

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* Amendment of Parts 200 and 205 of Title 6 NYCRR.

*Statutory authority:* Environmental Conservation Law, sections 1-0101, 3-0301, 3-0303, 19-0103, 19-0105, 19-0107, 19-0301, 19-0302, 19-0303, 19-0305, 71-2103 and 71-2105

*Subject:* Regulate volatile organic compounds (VOCs) in architectural and industrial maintenance (AIM) coatings.

*Purpose:* To set new and lower VOC limits for certain coating categories. Update categories and methods.

*Substance of final rule:* Architectural and industrial maintenance (AIM) coatings, commonly referred to as paints, release volatile organic compounds (VOCs) into the atmosphere. VOC content is regulated in Part 205 for 52 coating categories. The major revisions to this proposal are to reduce the VOC limit on 12 coating categories, create VOC limits for 12 additional coating categories, eliminate 15 coating categories and eliminate the quart exemption. This proposal applies to any person who supplies, sells, offers for sale or manufactures architectural coatings for use in the State of New York.

Changes to Section 205.1, Applicability: The proposed revisions remove the exemption provided to coatings sold in one liter (1.057 quart) containers for floor coatings and also includes a language to prevent bundling of quart containers in a larger pail to be combined for use. This is often referred to as the "quart exemption."

Changes to Section 205.2, Definitions: Transitional language was added to all definitions which are proposed to be changed. The definitions contain language stating that categories eliminated on January 1, 2021 will be absorbed by another category.

The Department is also revising Section 205.2 by:
• The following categories were eliminated from Part 205: antenna

coatings, antifouling coatings, clear brushing lacquers, lacquers, sanding sealers, varnishes, clear fire retardant coatings, opaque fire retardant coatings, flow coatings, quick dry enamels, quick dry primers sealers and undercoaters, swimming pool repair and maintenance coatings, temperature indicator coatings, waterproofing sealers and waterproofing concrete/masonry sealers.

• The following categories were added to Part 205: aluminum roof, basement specialty coatings, concrete/masonry sealer, conjugated oil varnish, driveway sealer, reactive penetrating sealer, reactive penetrating carbonate stone sealer, stone consoldants, tub and tile refinish, waterproofing membranes, wood coatings, zinc-rich primers.

Changes to Section 205.3, Standards:

The current and proposed standards are shown in the table below.

| Coating Category | VOC Content Limit (grams per liter) Effective Until December 31, 2020 | VOC Content Limit (grams per liter) Effective January 1, 2021 |
|---|---|---|
| Flat Coatings | 100 | 50 |
| Nonflat Coatings | 150 | 100 |
| Nonflat – High Gloss Coatings | 250 | 150 |
| 'Specialty Coatings' | | |
| Aluminum Roof | N/A | 450 |
| Antenna Coatings | 530 | N/A |
| Antifouling Coatings | 400 | N/A |
| Basement Specialty Coatings | N/A | 400 |
| Bituminous Roof Coatings | 300 | 270 |
| Bituminous Roof Primers | 350 | 350 |
| Bond Breakers | 350 | 350 |
| Calcimine Recoaters | 475 | 475 |
| 'Clear Wood Coatings' | | |
| • Clear Brushing Lacquers | 680 | N/A |
| • Lacquers (including lacquer sanding sealers) | 550 | N/A |
| • Sanding Sealers (other than lacquer sanding sealers) | 350 | N/A |
| • Varnishes | 350 | N/A |
| Concrete Curing Compounds | 350 | 350 |
| Concrete/Masonry Sealer | N/A | 100 |
| Concrete Surface Retarders | 780 | 780 |
| Conjugated Oil Varnish | N/A | 450 |
| Conversion Varnish | 725 | 725 |
| Driveway Sealers | N/A | 50 |
| Dry Fog Coatings | 400 | 150 |
| Faux Finishing Coatings | 350 | 350 |
| Fire Resistive Coatings | 350 | 350 |
| 'Fire Retardant Coatings' | | |
| • Clear | 650 | N/A |
| • Opaque | 350 | N/A |
| Floor Coatings | 250 | 100 |
| Flow Coatings | 420 | N/A |
| Form Release Compounds | 250 | 250 |

| Coating Category | VOC Content Limit (grams per liter) Effective Until December 31, 2020 | VOC Content Limit (grams per liter) Effective January 1, 2021 |
|---|---|---|
| Graphic Arts Coatings (Sign Paints) | 500 | 500 |
| High Temperature Coatings | 420 | 420 |
| Impacted Immersion Coatings | 780 | 780 |
| Industrial Maintenance Coatings | 340 | 250 |
| Low Solids Coatings | 120 | 120 |
| Magnesite Cement Coatings | 450 | 450 |
| Mastic Texture Coatings | 300 | 100 |
| Metallic Pigmented Coatings | 500 | 500 |
| Multi Color Coatings | 250 | 250 |
| Nuclear Coatings | 450 | 450 |
| Pre-Treatment Wash Primers | 420 | 420 |
| Primers, Sealers, and Undercoaters | 200 | 100 |
| Quick Dry Enamels | 250 | N/A |
| Quick Dry Primers, Sealers and Undercoaters | 200 | N/A |
| Reactive Penetrating Sealer | N/A | 350 |
| Reactive Penetrating Carbonate Stone Sealer | N/A | 500 |
| Recycled Coatings | 250 | 250 |
| Roof Coatings | 250 | 250 |
| Rust Preventative Coatings | 400 | 250 |
| 'Shellacs' | | |
| • Clear | 730 | 550 |
| • Opaque | 730 | 550 |
| Specialty Primers, Sealers, and Undercoaters | 350 | 100 |
| Stains | 250 | 250 |
| Stone Consolidant | N/A | 450 |
| Swimming Pool Coatings | 340 | 340 |
| Swimming Pool Repair and Maintenance Coatings | 340 | N/A |
| Temperature-Indicator Safety Coatings | 550 | N/A |
| Thermoplastic Rubber Coatings and Mastics | 550 | 550 |
| Traffic Marking Coatings | 150 | 100 |
| Tub and Tile Refinish | N/A | 420 |
| Waterproofing Membranes | N/A | 250 |
| Waterproofing Sealers | 250 | N/A |
| Waterproofing Concrete/Masonry Sealers | 400 | N/A |

| Coating Category | VOC Content Limit (grams per liter) | VOC Content Limit (grams per liter) |
|---|---|---|
| | Effective Until December 31, 2020 | Effective January 1, 2021 |
| Wood Coatings | N/A | 275 |
| Wood Preservatives | 350 | 350 |
| Zinc-Rich Primer | N/A | 340 |

The most restrictive limit subdivision 205.3(b) was updated and subdivision 205.3(c) was added to reflect the new and removed categories.

Changes to Section 205.4, Container labeling requirements: The labeling requirements were updated to reflect the new and removed categories.

Changes to Section 205.5, Reporting requirements: The existing language was removed and replaced with language requiring manufacturers to preserve and provide certain information upon the request of the Director. The information proposed for retention includes facility information and product information to be maintained by a responsible official for a minimum of three years.

Changes to Section 205.6, Compliance provisions and test methods: The Department is adding the following text to subdivision 205.6(a); "If the manufacturer does not recommend thinning, the VOC Content must be calculated for the product as supplied. If the manufacturer recommends thinning, the VOC Content must be calculated including the maximum amount of thinning solvent recommended by the manufacturer. If the coating is a multi-component product, the container must display the VOC Content as mixed or catalyzed. If the coating contains silanes, siloxanes, or other ingredients that generate ethanol or other VOCs during the curing process, the VOC Content must include the VOCs emitted during curing."

In addition, new and updated test methods have been added.

Changes to Section 205.7, Limited exemption for small AIM coatings manufacturers: This Section has been removed.

Changes to Section 200.9 Referenced Material: This Section was updated to cite the changed and updated test methods referenced throughout Part 205.

***Final rule as compared with last published rule:*** Nonsubstantive changes were made in sections 200.9, 205.1(b)(1), (2), (3), (4), 205.2(o)(1), (v), (ap), (be), (bf)(1), (bg)(1), (bt)(1), (bv), (cc)(3), (4), (ck)(2), 205.3(c), (h), 205.4(a) and 205.6(a).

***Text of rule and any required statements and analyses may be obtained from:*** Ona Papageorgiou, Department of Environmental Conservation, Division of Air Resources, 625 Broadway, Albany, NY 12233-3251, (518) 402-8396, email: air.regs@dec.ny.gov

***Additional matter required by statute:*** Pursuant to Article 8 of the State Environmental Quality Review Act, a Short Environmental Assessment Form, a Negative Declaration and a Coastal Assessment Form have been prepared and are on file.

***Summary of Revised Regulatory Impact Statement***

INTRODUCTION

The Department of Environmental Conservation (DEC) proposes to adopt revisions to 6 NYCRR Part 205, "Architectural and Industrial Maintenance (AIM) Coatings," and Part 200, "General Provisions" (collectively, Part 205). AIM coatings, such as paint, are applied to stationary structures or their appurtenances at the site of installation, portable buildings at the site of installation, pavements, or curbs. The purpose of this rulemaking is to lower volatile organic compound (VOC) emissions by lowering VOC limits for some coating categories. DEC will be required to incorporate the revisions to Part 205 and the attendant revisions to Part 200 into New York's State Implementation Plan (SIP), and provide the revised SIP to the Environmental Protection Agency (EPA) for review and approval.

STATUTORY AUTHORITY

The statutory authority for the promulgation of 6 NYCRR Part 205 and the attendant revision to 6 NYCRR Part 200 is found in the New York State Environmental Conservation Law (ECL), Sections 1-0101, 3-0301, 3-0303, 19-0103, 19-0105, 19-0107, 19-0301, 19-0302, 19-0303, 19-0305, 71-2103, and 71-2105.

LEGISLATIVE OBJECTIVES

Article 19 of the ECL was enacted to safeguard the air resources of New York from pollution and ensure protection of the public health and welfare, the natural resources of the state, and physical property by integrating industrial development with sound environmental practices.

NEEDS AND BENEFITS

New York faces a significant public health challenge from ground-level ozone which causes health effects ranging from respiratory disease to death. In response to this public health concern, New York has enacted a series of regulations designed to control ozone and its chemical precur-

sors, including VOCs. In the course of establishing this regulatory framework, New York has promulgated regulations under 6 NYCRR Part 205 to limit the VOCs emitted from AIM coatings.

The Environmental Protection Agency (EPA) set the 8-hour ozone national ambient air quality standards (NAAQS) level at 0.075 parts per million (ppm) in 2008. In 2015, EPA reduced the 8-hour ozone NAAQS to a level of 0.070 ppm. Areas in New York are currently designated as nonattainment for the 2008 and 2015 ozone NAAQS.

Pursuant to the Clean Air Act, New York State is required to develop and implement enforceable strategies that will bring the entire state into attainment for the 2008 and 2015 8-hour ozone NAAQS. DEC is proposing to revise Part 205 to get further VOC reductions necessary to achieve compliance with the 2008 and 2015 ozone NAAQS.

The OTC estimated that the OTC Region's specific percent reductions in the architectural and industrial maintenance coating sector resulting from implementation of the rule are as follows[1]:

| Coating Category | Percent VOC reduction |
|---|---|
| Flat, Non Flat | 32.4 |
| Traffic Markings | 9.7 |
| Industrial Maintenance | 38 |
| Other Specialty Coatings | 34.3 |
| Overall AIM Coating Reduction | 33.7 |

Applying these categorical reductions to New York, DEC estimates the rule revisions will achieve VOC mass reductions of approximately 16 tons per day (TPD).

Summary of the proposed rule

DEC is revising Part 205 consistent with a model rule developed by the Ozone Transport Commission (OTC) in 2011. Key provisions of this proposal include:

- Eliminating 15 coating categories and sub-categories
- Adding 12 new coating categories
- Lowering VOC limits on 12 coating categories
- Broadening the scope of DEC's data collecting authority
- Adding transitional language
- Updating definitions and codes (revise section 200.9)
- Eliminating the quart exemption for floor coatings and including anti-bundling language (not included in the model rule)

Brief discussions of the DEC's proposed revisions to Part 205 are presented below.

Eliminate 15 coating categories and sub-categories

The coating categories proposed for elimination with the coating category it is proposed to be absorbed by:

| Eliminated Category | Absorbed By |
|---|---|
| Antenna Coatings (530 grams per liter (g/l)) | Industrial Maintenance (250 g/l) |
| Antifouling Coatings (400 g/l) | Industrial Maintenance (250 g/l) |
| Clear Wood Coatings | |
| • Clear Brushing Lacquers (680 g/l) | |
| • Lacquers (550 g/l) | Wood Coatings (275 g/l) |
| • Sanding Sealers (350 g/l) | |
| • Varnishes (350 g/l) | |
| Fire Retardant Coatings | |
| • Clear (650 g/l) | Industrial Maintenance (250 g/l) |
| • Opaque (350 g/l) | |
| Flow Coatings (420 g/l) | Industrial Maintenance (250 g/l) |
| | Flat (50 g/l) or |
| Quick Dry Enamels (250 g/l) | Nonflat (100 g/l) or |
| | Nonflat High Gloss (150 g/l) |
| Quick Dry Primers, Sealers & Undercoaters (200 g/l) | Specialty Primers, Sealers & Undercoaters (100 g/l) |
| Swimming Pool Repair & Maintenance Coatings (340 g/l) | Swimming Pool Coatings (340 g/l) |
| Temperature Indicator Coatings (550 g/l) | Industrial Maintenance (250 g/l) |
| | Concrete/Masonry Sealers (100 g/l) or |

| Eliminated Category | Absorbed By |
|---|---|
| Waterproofing Sealers (250 g/l) | Waterproofing Membranes (250 g/l) |
| | Basement Specialty Coatings (400 g/l) or |
| Waterproofing Concrete/Masonry Sealers (400 g/l) | Concrete/Masonry Sealers (100 g/l) or |
| | Waterproofing Membranes (250 g/l) |

Add 12 new coating categories

The coating categories proposed for addition are:

| New Category | Limit (g/l) |
|---|---|
| Aluminum Roof | 450 |
| Basement Specialty Coatings | 400 |
| Concrete/Masonry Sealer | 100 |
| Conjugated Oil Varnish | 450 |
| Driveway Sealer | 50 |
| Reactive Penetrating Sealer | 350 |
| Reactive Penetrating Carbonate Stone Sealer | 500 |
| Stone Consolidants | 450 |
| Tub and Tile Refinish | 420 |
| Waterproofing Membranes | 250 |
| Wood Coatings | 275 |
| Zinc-Rich Primer | 340 |

Lower VOC limits on 12 coating categories

The coating categories proposed for lowered VOC limits are:

| Category | Limit lowered (g/l) |
|---|---|
| Bituminous Roof Coatings | From 300 to 270 |
| Dry Fog Coatings | From 400 to 150 |
| Flat Coatings | From 100 to 50 |
| Floor Coatings | From 250 to 100 |
| Industrial Maintenance | From 340 to 250 |
| Mastic Texture Coatings | From 300 to 100 |
| Nonflat Coatings | From 150 to 100 |
| Nonflat-High Gloss | From 250 to 150 |
| Primers, Sealers & Undercoaters | From 200 to 100 |
| Rust Preventative | From 400 to 250 |
| Specialty Primers, Sealers & Undercoaters | From 350 to 100 |
| Traffic Marking | From 150 to 100 |

Add transitional language

At the request of stakeholders, DEC is revising sections 205.2 and 205.3 by adding transitional language to clarify definitions, including those related to the new coating categories, and explicitly identifying when certain categories will be phased out and new ones phased in under the revised rule.

Update definitions and codes as necessary

DEC is revising Section 205.2, "Definitions", to clarify and update specific definitions that are currently unclear or require updating to reflect the other program changes.

DEC is also revising subdivision 205.3(b), which is the "most restrictive VOC limit" provision of the rule to address the new and eliminated coating categories.

Section 205.6 will be updated to reflect the most up-to-date ASTM publications. As a result of these updates, Section 200.9 will also be updated.

Eliminate the quart exemption

Currently, Part 205 does not regulate coatings sold in containers with a volume of one liter (1.057 quart) or less. Manufacturers and suppliers could circumvent Part 205 by selling the coatings in bundles of quart containers inside a larger pail; a practice informally known as "bundling". Once sold,

contractors could empty the quart containers into the larger container and then apply the high VOC product. This results in greater than anticipated VOC emissions. To address this issue, the DEC originally proposed to eliminate the language of Part 205 exempting quart containers which is not consistent with the OTC AIM Model Rule. During the public comment period, DEC received many comments opposing the full elimination of the quart exemption. Commenters indicated that some coatings are minimally used for touch-up or other applications that rely on the quart exemption. The primary coating which DEC had received complaint about was floor coatings. As a result of public comments and review of certain product applications, DEC has revised the proposed rule to allow for the quart exemption except for floor coatings. The revision also includes language to prevent the sale of "bundling" of quart containers intended to be combined and applied, called "anti-bundling" language.

Broaden the scope of DEC's data collection authority

DEC is broadening the scope of its authority to collect information pursuant to the reporting requirements in Section 205.5 of the rule. This revision allows DEC to request more information than under the existing rule and gives manufacturers additional time to respond. Currently, DEC cannot request information on products manufactured for use outside of the state (which could then be sold back into the state) or sold in the state in containers of one liter or less. In the past, some manufacturers have voluntarily provided this information when requested, but others have not. The collection of this information is important in developing emission inventories and enforcing the rule.

COSTS

In 2007, CARB implemented the VOC limits being proposed in the revisions to Part 205. CARB conducted a thorough study of affected businesses to determine control costs that would be incurred. CARB estimated a per-limit cost-effectiveness ranging from a net savings to $13.90 per pound of VOC reduced, with an overall cost-effectiveness of $1.12 per pound of VOC reduced (in 2007 dollars). These values were based upon the assumption that companies will absorb all costs (i.e. none were passed down to consumers) and may therefore be slightly inflated. CARB computed an average 2.1 percent decline in return on owner's return on equity (ROE - calculated by dividing net profit by net worth), and used this to gauge economic impact. In its analysis, CARB concluded that the lower VOC limits should not significantly impact the profitability of most businesses, although it may have an impact on the smallest operations. Overall, business profitability and job opportunities would not be significantly affected.

PAPERWORK

The proposed changes to Part 205 broaden the scope of DEC's authority to collect information. Specifically, Section 205.5 requires that manufacturers keep specified data on file for three years. If DEC requests this information, the manufacturer's responsible official shall provide this information within 180 days of the written request.

LOCAL GOVERNMENT MANDATES

No recordkeeping, reporting, or other requirements will be imposed on local governments. The authority and responsibility for implementing and administering Part 205 resides solely with DEC. Requirements for record keeping, reporting, etc. are applicable only to the person(s) who manufactures, sells, supplies, or offers AIM coatings for sale.

DUPLICATION

The revisions to Part 205 regulate all of the architectural and industrial maintenance coatings regulated by the federal government under 40 CFR Part 59, National Volatile Organic Compound Emission Standards for Architectural Coatings. The federal rule was developed in 1998 and has not been revised since. The AIM coating sector has seen many technological advancements since 1998, and as a result, manufacturers have been able to formulate quality coatings with lower VOC content.

While the definitions in Part 205 are somewhat different than that in the federal rule, the VOC limits within Part 205 are at least as stringent, and more often more stringent, than those set in the federal rule. Part 205 contains all coatings listed in the federal rule. Therefore, with the exception of coatings that contain post consumer recycled content, a manufacturer need only comply with the limits in Part 205 to be in compliance with the architectural coatings VOC content limits for the New York State and the federal rule.

ALTERNATIVES

The following alternatives have been evaluated to address the goals set forth above:

1. No action taken;
2. Revising paragraph 205.1(b)(3); and
3. Removing paragraphs 205.3(b)(1)-(19).

FEDERAL STANDARDS

Both the current version of Part 205 (2003) and this proposed rule are more stringent than the current federal AIM coatings standard, 40 CFR Part 59, National Volatile Organic Compound Emission Standards for Architectural Coatings. The federal standard became effective in 1998 and AIM

coating technology has advanced to allow for quality products formulated with lower VOCs. The New York Metropolitan Area continues to be designated non-attainment for ozone and as a result, additional VOC emission reductions need to be achieved.

COMPLIANCE SCHEDULE

The proposed compliance date for the sale of products is January 1, 2021. The sell-through provision allows for product manufactured before January 1, 2021 to be sold through May 1, 2023.

_____
1    "Model Regulations for Nitrogen Oxides (NOx) and Photo-reactive Volatile Organic Compounds (VOCs) Technical Support Document" (Revised August, 2016)

*Revised Regulatory Flexibility Analysis*

The Department of Environmental Conservation (DEC) proposes to adopt revisions to 6 NYCRR Part 205, "Architectural and Industrial Maintenance (AIM) Coatings," and Part 200, "General Provisions" (collectively, Part 205). AIM coatings, such as paint, are applied to stationary structures or their appurtenances at the site of installation, portable buildings at the site of installation, pavements, or curbs. The purpose of this rulemaking is to reduce emissions from AIM coatings by reducing the volatile organic compound (VOC) content limits for some coating categories.

EFFECT OF RULE

Local governments are not expected to be directly affected by the proposed revisions to Part 205. The revisions to Part 205 may require small businesses to reformulate coatings to bring them into compliance with the new VOC limits as well as label accordingly. Small businesses may not have the level of research and development staff available as larger businesses, so this rulemaking may have a greater impact on small businesses. Since 2010, DEC staff have communicated with small businesses as well as coatings associations to prepare businesses for the proposed changes. According to the U.S. Census Bureau, County Business Patterns Report for 2015 show that New York State had 88 paint manufacturing facilities, of which, at least two were small businesses or manufacturers.

COMPLIANCE REQUIREMENTS

Local governments are not expected to be directly affected by the proposed revisions to Part 205. Small businesses that manufacture AIM coatings will need to comply with the proposed VOC content limits of Part 205. In addition, these small businesses will need to comply with the labeling requirements of Part 205 which requires manufactures to display specific information on the coating container or label. The label information required include:

• the date the coating was manufactured or the date code representing the date of manufacture
• the manufacturer's recommendations for thinning of the coating
• the maximum or actual VOC content of the coating
There are additional labeling requirements or specific instructions for:
• industrial maintenance coatings
• clear brushing lacquers
• faux finishing coatings
• rust preventive coatings
• quick dry enamels
• non-flat high gloss coatings
• specialty primers, sealers, and undercoaters
• quick dry enamels
• reactive penetrating sealers
• reactive penetrating carbonate stone sealers
• stone consolidants
• wood coatings
• zinc rich primers
Small businesses which manufacture AIM coatings will be expected to comply with the reporting requirements of Part 205. The proposed changes to Part 205 broaden the scope of the DEC's authority to collect information. Specifically, Section 205.5 requires that manufacturers keep the following data on file for three years:

(1) name and mailing address of the manufacturer;
(2) name, address and telephone number of a contact person;
(3) name of the coating product as it appears on the label and the application coating category;
(4) whether the product is marketed for interior or exterior use or both;
(5) number of gallons sold in New York State in containers greater than one liter (1.057 quart) and equal to or less than one liter (1.057 quart);
(6) VOC Actual content and the VOC Regulatory content in grams per liter;
(7) names and chemical abstract service (CAS) numbers of the VOC constituents of the product;
(8) names and CAS numbers of any compound in the product specifically exempted from the VOC definition, as listed in subdivisions 205.2 (cg) and (ch);

(9) whether the product is marketed as solventborne, waterborne, or 100 percent solids;
(10) description of resin or binder in the product;
(11) whether the coating is a single-component or multi-component product;
(12) density of the product in pounds per gallon;
(13) percent of weight of solids, all volatile materials, water, and any compounds in the product specifically exempted from the VOC definition, as listed in subdivisions 205.2 (cg) and (ch); and
(14) percent by volume of solids, water and any compounds in the product specifically exempted from the VOC definition, as listed in subdivisions 205.2 (cg) and (ch).

If requested, the manufacturer would be required to provide this information to the DEC within 180 days.

PROFESSIONAL SERVICES

The Department does not anticipate that small businesses that manufacture AIM coatings will need professional services to comply with the proposed revisions to Part 205. However, if a business does not want to reformulate in-house, they may choose to purchase a formulation outside of their business.

COMPLIANCE COSTS

The proposed revisions to Part 205 closely match the California Air Resources Board (CARB) 2007 Suggested Control Measure (SCM) for AIM coatings. CARB performed a cost analysis as part of the development of its SCM AIM report in 2007. Because the proposed revisions match so closely with CARB's measures, DEC utilized CARB's cost analysis for the purpose of estimating compliance costs for this rule making.

CARB conducted a thorough study of affected businesses to determine control costs that would be incurred. CARB estimated a per-limit cost-effectiveness ranging from a net savings to $13.90 per pound of VOC reduced, with an overall cost-effectiveness of $1.12 per pound of VOC reduced (in 2007 dollars). These values were based upon the assumption that companies will absorb all costs (i.e. none were passed down to consumers) and may therefore be slightly inflated. CARB computed an average 2.1 percent decline in return on owner's return on equity (ROE - calculated by dividing net profit by net worth),and used this to gauge economic impact. In its analysis, CARB concluded that the lower VOC limits should not significantly impact the profitability of most businesses, although it may have an impact on the smallest operations. Overall, business profitability and job opportunities would not be significantly affected. DEC staff note that these costs were estimated in 2007 and that formulations and research have improved. Staff have concluded that compliance costs should be lower as a result of these improvements. While the 2007 CARB report stated that there may be an impact on the smallest operations research and formulations experience since then should minimize this impact.

ECONOMIC AND TECHNOLOGICAL FEASIBILITY

Local governments are not expected to be directly affected by the proposed revisions to Part 205. The limits and requirements proposed in the revisions to Part 205 are technically feasible as they have been in effect in California since 2008. In addition, the coating categories which are not listed under the CARB rule were requested by industry stakeholders who also offered technically feasible limits associated with each category. DEC staff did not conduct independent cost analysis, rather depended on the CARB 2007 analysis to assess the economic feasibility. The CARB cost information does include information supplied by manufacturers who market AIM coatings nationally and therefore extend to New York State. In their 2007 SCM, CARB determined that most manufacturers or marketers of AIM coatings would absorb the cost of the proposed changes with no significant impacts on profitability. Nevertheless, to help minimize the potential impact on small businesses, the proposed changes to Part 205 include a sell through provision. This provision allows manufacturers to sell products compliant with the current standard (and manufactured prior to January 1, 2021) through May 1, 2023, two years and four months after the compliance date of the proposed rule and over three years after the promulgation of the rule.

MINIMIZING ADVERSE IMPACT

Local governments are not expected to be directly affected by the proposed revisions to Part 205. In recognition of the potential for adverse impacts on small businesses, DEC staff led a stakeholder process with manufacturers and coatings associations, including a stakeholder process with national and local manufacturers and coatings associations on May 12, 2010 in association with the Ozone Transport Commission. DEC staff also attended several coatings conferences and meetings with manufacturers, including the American Coatings Association (ACA) on May 14, 2013 and, the Metropolitan New York Coatings Association (MNYCA) on June 12, 2014.

The proposed VOC limits have been in effect in California since 2008 and products with these lower limits have already been available and sold in the marketplace. All manufacturers, including small businesses, have

had ample time to research, prepare and implement re-formulation strategies.

SMALL BUSINESS AND LOCAL GOVERNMENT PARTICIPATION

As stated above, local governments are not expected to be directly affected by the proposed revisions to Part 205. In recognition of the potential adverse impacts on small businesses, DEC staff met with many stakeholders, including national and local associations and manufacturers, and have given stakeholders several opportunities to participate in the development of the proposed rule. DEC staff also gave presentations at ACA and MNYCA meetings and provided educational outreach on the proposed rule. These outreach efforts, including meetings and communications with DEC staff, have been ongoing since 2012. This regulation was subject to public notice and comment in accordance with the State Administrative Procedures Act.

CURE PERIOD OR AMELIORATIVE ACTION

No additional cure period or other opportunity for ameliorative action is included in the revisions to Part 205. This proposal will not result in immediate violations or impositions of penalties for existing facilities. To help reduce impacts on affected sources, the revisions to Part 205 will not become effective immediately after promulgation and offers a sell-through provision.

INITIAL REVIEW

The initial review of this rule shall occur no later than in the third calendar year after the year in which the rule is adopted.

*Revised Rural Area Flexibility Analysis*

The Department of Environmental Conservation (DEC) proposes to adopt revisions to 6 NYCRR Part 205, "Architectural and Industrial Maintenance (AIM) Coatings," and Part 200, "General Provisions" (collectively, Part 205). AIM coatings, such as paint, are applied to stationary structures or their appurtenances at the site of installation, portable buildings at the site of installation, pavements, or curbs. The purpose of this rulemaking is to reduce emissions from AIM coatings by reducing the volatile organic compound (VOC) content limits for some coating categories.

TYPES AND ESTIMATED NUMBERS OF RURAL AREAS

The last survey conducted by DEC in 2005 resulted in a list of 121 manufacturers associated with coatings throughout New York State. The U.S. Census Bureau, County Business Patterns Report for 2015 shows that New York State had 88 paint manufacturing facilities. Part 205 will apply to manufacturers, sellers and advertisers statewide and, as a result, stores which sell AIM coatings in rural areas will be subject to the revised rule. The proposed revisions will not impact rural areas differently since the rule is applicable statewide.

REPORTING, RECORDKEEPING AND OTHER COMPLIANCE REQUIREMENTS; AND PROFESSIONAL SERVICES

On January 1, 2021, the new Part 205 VOC limits will apply to manufacturers, sellers and advertisers of AIM coatings. Manufacturers will be required to formulate and label coatings in compliance with the revisions to Part 205. Retailers and advertisers will be required to sell and advertise compliant coatings.

COSTS

In 2007, CARB implemented the VOC limits proposed in the revisions to Part 205 and conducted a thorough study of affected businesses to determine compliance costs that would be incurred. CARB estimated a per-limit cost-effectiveness ranging from a net savings to $13.90 per pound of VOC reduced, with an overall cost-effectiveness of $1.12 per pound of VOC reduced (in 2007 dollars). These values were based upon the assumption that companies will absorb all costs (i.e. none were passed down to consumers) and may therefore be slightly inflated. CARB computed an average 2.1 percent decline in return on owner's return on equity (ROE - calculated by dividing net profit by net worth),and used this to gauge economic impact. In its analysis, CARB concluded that the lower VOC limits should not significantly impact the profitability of most businesses, although it may have an impact on the smallest operations. Overall, business profitability and job opportunities would not be significantly affected. DEC staff note that these costs were estimated in 2007 and that formulations and research have improved. Staff concluded that compliance costs should be lower as a result of these improvements. Costs associated with the proposed revisions to Part 205 are not expected to be greater in rural areas.

MINIMIZING ADVERSE IMPACT

The revisions to Part 205 have statewide applicability and do not specifically affect rural areas. DEC conducted a stakeholder process with national and local manufacturers and coatings associations on May 12, 2010 in association with the Ozone Transport Commission. DEC staff also attended several coatings conferences and meetings with manufacturers, including the American Coatings Association (ACA) on May 14, 2013 and, the Metropolitan New York Coatings Association (MNYCA) on June 12, 2014. Outreach with individual manufacturers and interested parties was also conducted.

The proposed VOC limits have been in effect in California since 2008 and products with these lower limits have already been available and sold in the marketplace. All manufacturers, including those located in rural areas of the state, have had ample time to research, prepare and implement reformulation strategies.

RURAL AREA PARTICIPATION

The revisions to Part 205 have statewide applicability and do not specifically affect rural areas. As stated above, DEC staff met with many stakeholders, including national and local associations and manufacturers, and have given stakeholders several opportunities to participate in the development of the proposed rule. DEC staff also gave public presentations at ACA and MNYCA meetings, providing educational outreach on the proposed rule. These outreach efforts, including meetings and communications with DEC staff, have been ongoing since 2012. This regulation was subject to public notice and comment in accordance with the State Administrative Procedures Act.

INITIAL REVIEW

The initial review of this rule shall occur no later than in the third calendar year after the year in which the rule is adopted.

*Revised Job Impact Statement*

The Department of Environmental Conservation (Department) proposes to adopt revisions to 6 NYCRR Part 205, "Architectural and Industrial Maintenance (AIM) Coatings," and Part 200, "General Provisions" (collectively, Part 205). AIM coatings, such as paint, are applied to stationary structures or their appurtenances at the site of installation, portable buildings at the site of installation, pavements, or curbs. The purpose of this rulemaking is to reduce emissions from AIM coatings by reducing the volatile organic compound (VOC) content limits for some coating categories.

NATURE OF IMPACT

Part 205 may impact jobs and employment opportunities with manufacturers producing AIM coatings in New York State. The regulation, as proposed, will require lowered VOC limits which would likely require reformulation of any products which do not meet the new limits. The time and expertise required to reformulate AIM coatings may result in increased employment for consultation and testing. However, reformulation guidance has been made available through the American Coatings Association (ACA) and through raw material chemical distributors so the increase may be limited. Additionally, some manufactures may already be producing AIM coatings that are compliant due to requirements in other states that have adopted the model rule. In those cases, there may be little to no job or employment impacts, especially where consultation and testing has already been conducted and job assignments redirected.

The impact on the Department consists of time for rulemaking development and outreach. Department enforcement staff will continue to conduct enforcement activities to ensure compliance with the current Part 205, and the revised rule is not expected to require additional staff time to implement the rule.

CATEGORIES AND NUMBERS AFFECTED

Changes to Part 205 may impact coating and raw material manufacturers, distributors and stores that sell coatings. This would include companies that sell or manufacture coatings for New York State sales. In the last New York State survey in 2005 it was estimated that over 75 million gallons of AIM coatings were sold in New York State.

The revisions to Part 205 may lead to increased time and expertise spent reformulating impacted coating categories. Manufacturers that sell into California, Utah, Maryland and Delaware have already reformulated their coatings, so those companies should not be impacted. Those companies which need to reformulate will either need to spend more in house resources for reformulation or will need to hire outside help to reformulate.

REGIONS OF ADVERSE IMPACT

The paint and coatings industry sector which is impacted by this rule are distributed throughout the state. Manufacturers may be found both upstate and in the New York City metropolitan area. Since this is a statewide rulemaking, the Department does not expect it to have any region-specific adverse impacts.

MINIMIZING ADVERSE IMPACT

To minimize any adverse impacts Department staff conducted a stakeholder process with national and local manufacturers and coatings associations on May 12, 2010 in association with the Ozone Transport Commission. Department staff also attended several coatings conferences and meetings with manufacturers, including the American Coatings Association (ACA) on May 14, 2013 and, the Metropolitan New York Coatings Association (MNYCA) on June 12, 2014.

The proposed VOC limits have been in effect in California since 2008 and products with these lower limits have already been available and sold in the marketplace. All manufacturers, including small businesses, have had ample time to research, prepare and implement re-formulation strategies.

SELF-EMPLOYMENT OPPORTUNITIES

The adoption of revised Part 205 is not expected to result in negative impacts to self-employment opportunities.

INITIAL REVIEW

The initial review of this rule shall occur no later than in the third calendar year after the year in which the rule is adopted.

*Initial Review of Rule*

As a rule that requires a RFA, RAFA or JIS, this rule will be initially reviewed in the calendar year 2022, which is no later than the 3rd year after the year in which this rule is being adopted.

*Assessment of Public Comment*

A total of 56 distinct comments were submitted by the public in response to the Department's proposed revisions to the regulation for Architectural and Industrial Maintenance (AIM) Coatings (Part 205). This summary highlights key issues raised by the public and the Department's response to those comments.

1. General Comments

The Department received general comments in support of the regulation and responded by thanking those commenters for their support in lowering volatile organic compound (VOC) emissions from architectural and industrial maintenance coatings.

2. Public Health Concerns

The Department received several comments raising health-related concerns regarding one or more AIM categories. The health-related comments were primarily focused on floor coating products. The Department responded stating that New York State currently has nonattainment areas for ozone which has been shown to result in respiratory issues. The Department's intention in revising Part 205 is to lower the VOC content from AIM coatings resulting in reduced emissions of VOCs to address the creation of ozone across the state. Some commenters health concerns were focused on indoor air quality and while the intention of this regulation is to reduce ambient ozone concentrations, the Department understands that by lowering the VOCs and by eliminating some exemptions that an additional benefit from the regulation may be improved indoor air quality.

3. Two-Year Sell Through

The majority of comments received by the Department were regarding the two-year sell through and the quart exemption. Commenters stated that a two-year sell through did not allow enough time to get products off the shelves. The Department also received a few comments asking for no sell-through provision. After review of the comments in this category, the Department revised subdivision 205.3(h) to allow the sell-through of products through May 1, 2023. This will allow for the sell-through of product for two years and four months from the compliance date of January 1, 2021 for the revised VOC limits, which is over three years from the date of promulgation of this regulation.

4. Elimination of the Quart Exemption

The majority of comments in this category were opposed to eliminating the quart exemption. Commenters stated that it was not feasible and did not take into consideration the harsh winter weather New York State experiences. Some commenters discussed specific products associated with the arts or other industries which relied on the exemption. Some commenters stated that removal of the exemption would result in patchy surfaces and increased corrosion.

In response to comments the Department explained that the proposal was intended to address the practice of bundling and the potential for circumvention of the VOC limits. While many products are, in fact, used in small quantities, floor coatings are typically used in large quantities and therefore have the greatest potential to circumvent the VOC limits by bundling quarts. As stated on page 17 of the RIS, the Department considered the elimination of the quart exemption for floor coatings only, as an alternative to the full elimination of the exemption. The Department received the most complaints about floor coatings, and no comments indicated this category was needed in small containers.

Based on the Department's consideration of the comments, including those in favor of retaining the exemption for certain products and the reported misuse of quarts focused on floor coatings, the Department revised the proposed regulation to retain the quart exemption in subdivision 205.1(b) while eliminating the exemption for floor coatings only. The Department also revised the language of subdivision 205.1(b) to clarify the prohibition against the practice of bundling of quart containers intended to be combined and applied.

5. Compliance Schedule

A commenter stated that the new standards should take effect on January 1, 2020. The Department responded that it has determined that suppliers, sellers and manufacturers will need the time after the promulgation of this regulation to plan and prepare for the new standards. While the Department would like to see the environmental benefits of VOC reductions as soon as practicable, the effective date of January 1, 2021 is reasonable based on the comments received.

6. VOC Limits

Some commenters suggested different methods in reducing VOC emissions such as an overall ten percent reduction. In addition, some comment-

ers stated that the VOC limits may be difficult to attain. The Department responded that the lower VOC content limits are the best method for reducing VOC emissions while allowing manufacturers to develop a consistent product across regions. The VOC content limits in the regulation are appropriate and necessary to lower VOC emissions in New York from these products. Further, the proposed VOC content limits have been in effect in California since 2008, Maryland (2016), Delaware (2017) and Utah (2019). The technology to manufacture coatings that meet the new limits is currently available and has been available for years. Furthermore, DEC has worked with stakeholders for several years to discuss the proposed limits. The new VOC limits are consistent with the OTC model rule.

7. Cost of Compliance

A commenter stated that cost was not adequately assessed for the removal of the quart exemption. The Department responded that stakeholders have anecdotally indicated that products sold in quart containers are not used often and when used, they are used sparingly. In addition, the Department has received complaints about quart containers being used in large quantities which circumvents the reasoning behind the regulation, which is improved air quality and attaining the national ambient air quality standard for ozone. Since the proposed lower standards have been effective in California since 2008, manufacturers have had the time to develop and sell compliant product. Based on the Department's consideration of the comments, including those in favor of retaining the exemption for certain products and the reported misuse of quarts focused on floor coatings, the Department has revised the regulation to retain the quart exemption in subdivision 205.1(b) while eliminating the exemption for floor coatings only. The Department also revised the language of subdivision 205.1(b) to clarify the prohibition against the practice of bundling of quart containers intended to be combined and applied.

# PROPOSED RULE MAKING
## HEARING(S) SCHEDULED

**Certain Substances That Contain Hydrofluorocarbons, Highly-Potent Greenhouse Gases**

**I.D. No.** ENV-53-19-00016-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Addition of Part 494 to Title 6 NYCRR.

*Statutory authority:* Environmental Conservation Law, sections 1-0101, 1-0303, 3-0301, 19-0103, 19-0105, 19-0107, 19-0301, 19-0303, 19-0305, 71-2103 and 71-2105

*Subject:* Certain substances that contain hydrofluorocarbons, highly-potent greenhouse gases.

*Purpose:* Remove greenhouse gas emission sources that endanger public health and the environment.

*Public hearing(s) will be held at:* 12:30 p.m., March 4, 2020 at Department of Environmental Conservation, Public Assembly Rm. 129A/B, 625 Broadway, Albany, NY; 12:30 p.m., March 6, 2020 at Henrietta Public Library, Community Rm., 625 Calkins Rd., Rochester, NY; 12:30 p.m., March 9, 2020 at Department of Environmental Conservation, Region 2 Office, 8th Fl., Rm. 834A/834B, 47-40 21st St., Long Island City, NY.

*Interpreter Service:* Interpreter services will be made available to hearing impaired persons, at no charge, upon written request submitted within reasonable time prior to the scheduled public hearing. The written request must be addressed to the agency representative designated in the paragraph below.

*Accessibility:* All public hearings have been scheduled at places reasonably accessible to persons with a mobility impairment.

*Substance of proposed rule (Full text is posted at the following State website: https://www.dec.ny.gov/regulations/propregulations.html):* Part 494, Hydrofluorocarbon Standards And Reporting

The Department of Environmental Conservation (Department) proposes to create a new 6 NYCRR Part 494, Hydrofluorocarbon Standards and Reporting, adopting regulatory provisions previously promulgated by the United States Environmental Protection Agency (EPA), which were partially vacated in 2017. This proposal would prohibit certain hydrofluorocarbon substances in the specific end-uses identified by the EPA as having safe and available alternatives. The proposal would also require that certain manufacturers include a written disclosure statement and maintain specific records.

Section 494.1 Purpose

This section provides the purpose of the rulemaking, which includes mitigation of greenhouse gas pollution.

Section 494.2 Applicability

This section lists the regulated entities as persons who sell, offer for sale, enter into commerce, use, or install the substances in specific end-uses that would be prohibited pursuant to this Part.

Section 494.3 Definitions

This section lists the definitions to be used for this Part, which are primarily derived from EPA regulatory language or other related regulations.

Section 494.4 Prohibitions

This section lists the prohibitions on certain hydrofluorocarbon substances in specific end-uses.

Section 494.5 Exemptions

This section exempts certain hydrofluorocarbon substances in specific end-uses from the prohibitions listed in Section 494.4. Exemptions include medical, industrial, military, space, and aviation end-uses that may not have safe and available alternatives.

Section 494.6 Disclosure Requirements

This section mandates certain manufacturers to provide a label or written disclosure statement to buyers regarding the regulated substances and established prohibitions under this Part.

Section 494.7 Recordkeeping Requirements

This section requires certain manufacturers maintain specific records, including records pertaining to the sale and type of product or equipment containing regulated substances in the specific end-uses listed in Section 494.4.

Section 494.8 Severability

This section establishes that the sections of the rule are severable.

*Text of proposed rule and any required statements and analyses may be obtained from:* Suzanne Hagell, NYSDEC Office of Climate Change, 625 Broadway, Albany, NY 12233-3251, (518) 402-8448, email: suzanne.hagell@dec.ny.gov

*Data, views or arguments may be submitted to:* Same as above.

*Public comment will be received until:* Five days after the last scheduled public hearing.

*Additional matter required by statute:* Pursuant to Article 8 of the Environmental Conservation Law (the State Environmental Quality Review Act), a Short Environmental Assessment Form, a Negative Declaration and a Coastal Assessment Form have been prepared and are on file.

*Summary of Regulatory Impact Statement (Full text is posted at the following State website: https://www.dec.ny.gov/regulations/propregulations.html):*

A key source of greenhouse gases (GHGs) are hydrofluorocarbons (HFCs). Part 494 would adopt regulatory provisions similar to those promulgated by the United States Environmental Protection Agency (EPA) pursuant to the Clean Air Act and Significant New Alternatives Program (SNAP) but have since been partially vacated by the courts. Specifically, Part 494 would prohibit specific HFCs in certain refrigerants, aerosol propellants, and foam-blowing agents uses. In the absence of national policies and federal action, New York State has the opportunity to adopt an action that will have a significant impact on GHG emissions in the State while building off of the extensive analysis and public review that formed the basis of the EPA rulemakings.

1. Statutory Authority

The statutory authority to promulgate this rulemaking is derived from the Department's obligations set out in the Environmental Conservation Law (ECL) at Sections 1-0101, 1-0303, 3-0301, 19-0103, 19-0105, 19-0107, 19-0301, 19-0303, 19-0305, 71-2103, 71-2105.

ECL Section 1-0101. This section declares that it is a policy of New York State to conserve, improve and protect its natural resources and environment and control air pollution. This section further declares that the Department shall promote patterns of development and technology which minimize adverse impact on the environment. The proposed rulemaking prohibits HFCs in certain end-uses, which minimizes the adverse impact on the environment from HFC emissions, thereby protecting the State's natural resources and environment.

ECL Section 1-0303. This section defines the term "pollution" as "the presence in the environment of conditions and or contaminants in quantities of characteristics which are or may be injurious to human, plant or animal life or to property or which unreasonably interfere with the comfortable enjoyment of life and property throughout such areas of the state as shall be affected thereby." Part 494 will remove contaminants in the form of HFC emissions and associated atmospheric concentrations of GHGs from the environment which are injurious to human, plant and animal life or to property throughout the State.

ECL Section 3-0301. This section empowers the Department to carry out the environmental policy of New York State set forth in section 1-0101. Section 3-0301 specifically empowers the Department to, among other things: provide for the prevention and abatement of air pollution; monitor the environment to afford more effective and efficient control practices; identify changes in ecological systems and to warn of emergency conditions; and adopt such regulations as may be necessary, convenient or de-

sirable to effectuate the environmental policy of the State. The proposed rulemaking is necessary, convenient, and desirable to effectuate the State's policy of reducing GHG emissions.

ECL Section 19-0103. This section declares that it is the policy of New York State to maintain a reasonable degree of purity of air resources. In carrying out such policy, the Department is required to balance public health and welfare, the industrial development of the State, propagation and protection of flora and fauna, and the protection of personal property and other resources. To that end, the Department is required to use all available practical and reasonable methods to prevent and control air pollution in the State. The proposed rulemaking meets this requirement by preventing and controlling HFC emissions in the State, while also balancing interests through the establishment of specific exemptions.

ECL Section 19-0105. This section declares that it is the purpose of Article 19 of the ECL to safeguard the air resources of New York State under a program which is consistent with the policy expressed in section 19-0103 and in accordance with other provisions of Article 19. The proposed rulemaking serves to establish a regulatory program of limiting HFCs in certain end-uses, consistent with the policy expressed in Article 19 of preventing and controlling air pollution, including GHGs such as HFCs.

ECL Section 19-0107. "Air contaminant" is defined as "a dust, fume, gas, mist, odor, smoke, vapor, pollen, noise or any combination thereof." "Air pollution" is defined as "the presence in the outdoor atmosphere of one or more air contaminants in quantities, of characteristics and of a duration which are injurious to human, plant or animal life or to property or which unreasonably interfere with the comfortable enjoyment of life and property throughout the State or throughout such areas of the State as shall be affected thereby." HFC is an "air contaminant" that causes "air pollution" as defined in the ECL because it is a gas that is present in the atmosphere in quantities that engender climate change.

ECL Section 19-0301. This section declares that the Department has the power to promulgate regulations for preventing, controlling or prohibiting air pollution. This section provides authority for the Department to establish the proposed rulemaking because it furthers preventing and control of air pollution in the form of HFC emissions and associated atmospheric concentrations of GHGs.

ECL Section 19-0303 also establishes procedures for adopting any code, rule or regulation which contains a requirement that is more stringent than the Clean Air Act or regulations issued pursuant to the Act by the EPA. This requires the Department to include analysis in the Regulatory Impact Statement (RIS) explaining state regulatory requirements that are more stringent than those found in the Clean Air Act or its implementing regulations. The Federal Standards section, as well as elsewhere in this RIS, also explains how Part 494 would meet criteria in Section 19-0303(4), if it was applicable to this rulemaking. Further, the cost-effectiveness of the proposed revisions and whether reasonably available alternatives exist is discussed in the RIS.

ECL Section 19-0305. This section authorizes the Department to enforce the codes, rules and regulations established in accordance with Article 19.

Finally, Sections 71-2103 and 71-2105 set forth the civil and criminal penalty structures for violations of Article 19, as well as regulations promulgated thereunder.

2. Legislative Objectives

There is strong scientific evidence that the earth's climate is changing and that GHGs from HFCs and other human activities are the major contributor to this change. Climate change represents an enormous environmental challenge for the State because, unabated, it will have serious adverse impacts on the State's natural resources, public health, and infrastructure. HFCs are potent GHGs with up to 14,800 times the climate forcing ability of carbon dioxide.

Articles 1 and 3 of the ECL set out the overall state policy of protection of the environment and provide general authority to adopt and enforce measures to achieve this goal, including the regulation of air pollution originating from consumer products. Article 19 of the ECL was specifically adopted for the purpose of safeguarding the air resources of New York from pollution. Further, to meet the State's commitments regarding the reduction of GHG emissions, and consistent with existing legislative enactments in the Climate Leadership and Community Protection Act, Part 494 will control emissions of fluorinated greenhouse gases that contribute to climate change.

3. Needs and Benefits

Analyses conducted by the California Air Resources Board on behalf of the United State Climate Alliance suggests that the proposed action would result in annual emissions of HFCs in New York State that are 16% lower in 2030 compared to a Business As Usual scenario. Between 2020 and 2030, 17 million metric tons of CO2-equivalent emissions would be avoided by the proposed action.

Stakeholder Outreach

|

The Department conducted pre-proposal, stakeholder outreach throughout 2019, beginning with two public webinars held on November 14 and 18, 2018 to discuss the likely provisions of Part 494. The stakeholder groups consisted of the regulated community to be affected by the proposed regulation, consultants, and interested environmental advocacy groups.

4. Costs

The EPA estimated that the nationwide implementation of these prohibitions would result in a cumulative cost over the lifetime of affected equipment of up to $114.6 million[1]. New York State's share of these costs could be up to $6.9 million, as New York State makes up 6% of the U.S. population. However, this likely overestimates actual costs as: a) EPA's estimate of costs are primarily applied to manufacturers that are not located in New York State; b) the current proposal is more limited in scope than the EPA rules; and c) EPA rules began going into effect in 2016.

EPA determined that the majority of affected businesses would be retail food operations, but fewer than 0.1% of these businesses would incur any new costs, or costs greater than those already incurred as a result of other federal regulations. Instead, 79% of the total estimated cost from the EPA program would be incurred on manufacturers of stationary air-conditioning equipment ($63 million) and polystyrene foam products ($27.5 million), which represent fewer than 20 businesses nationwide.

For the largest set of businesses affected by this action, or retail food businesses, the EPA considered that there would be no new costs as these entities are also in the process of replacing the affected equipment pursuant to the phase-down of ozone-depleting substances. The affected businesses may choose to transition to other, more climate-friendly and energy-efficient alternatives that would involve new costs.

The proposed action could indirectly affect consumers and businesses as it may affect the availability of products and equipment on the market, but such costs are also limited. In the case of consumer products, the proposed action applies to the sale and use of products manufactured after an effective date, not the continued sale of previously-manufactured products already in the State. In the case of equipment, the proposed action would not affect systems already installed for their servicing.

This proposed action may also impose new administrative and record-keeping costs for certain manufacturers, however, the costs are limited. The Department may incur costs to issue and enforce the proposed action but can properly administer the regulation with the application of existing resources and current Department staff.

5. Paperwork

The proposed rule will impose minimal additional paperwork on certain manufacturers for recordkeeping and the creation and distribution of a written disclosure statement but is not expected to be unduly burdensome.

6. Local Government Mandates

Part 494 will not create any mandates for local governments as compared to other entities.

7. Duplication

This proposal does not duplicate, overlap, or conflict with any other existing federal or State regulations or statutes. As stated earlier, while Part 494 is based on regulations previously promulgated by EPA, such applicable regulatory provisions and HFC restrictions have since been vacated by courts and/or removed by the agency.

8. Alternatives

The Department considers the no action alternative infeasible because HFC emissions would further increase 36% in New York State by 2030, based on a Business as Usual scenario, reaching 10% of total allowable GHG emissions in the State. The proposed action and compliance schedule were primarily based on EPA's SNAP rules, which considered a rigorous evaluation of available alternatives as well as extensive public review. An alternative that relies on voluntary actions and incentives to achieve the same level of reduction would be cost-prohibitive at this scale.

9. Federal Standards

As discussed, there are no enforced federal rules or other restrictions for the provisions proposed in Part 494. Therefore, this proposal does not result in the imposition of requirements that exceed any minimum standards of the federal government for the same or similar subject areas.

10. Compliance Schedule

This regulation will adopt a compliance schedule that prohibits specific substances in certain equipment and products:

January 1, 2021: Aerosol propellants; supermarket systems, remote condensing units, stand-alone units; one-component spray foam sealant and high-pressure two-component spray foams; rigid polyurethane and polyisocyanurate laminated boardstock, rigid polyurethane slabstock and other, rigid polyurethane appliance foam, rigid polyurethane commercial refrigeration and sandwich panels, rigid polyurethane marine flotation foam, flexible polyurethane, integral skin polyurethane, polystyrene extruded sheet, phenolic insulation board and bunstock, and polyolefin; low-pressure, two-component spray foam; polystyrene extruded boardstock and billet (XPS); household refrigerators and freezers (compact),

vending machines, and refrigerated food processing and dispensing equipment.

January 1, 2022: Household refrigerators and freezers (other than built-in or compact).

January 1, 2023: Cold storage warehouses and household refrigerators and freezers (built-in).

January 1, 2024: Centrifugal chillers and positive displacement chillers.

---

[1] Supporting documents in EPA Docket ID Nos. EPA–HQ–OAR–2014–0198 and EPA–HQ–OAR–2015–0663

*Regulatory Flexibility Analysis*

1. Effect of Rule:

The New York State Department of Environmental Conservation is proposing to adopt prohibitions on the use of certain hydrofluorocarbon (HFC) substances in certain end-uses. The proposed rulemaking applies statewide. Part 494 would adopt provisions similar to those in rules promulgated by the United States Environmental Protection Agency (EPA) pursuant to the Clean Air Act and Significant New Alternatives Program (SNAP) in 2015 and 2016 but have since been partially vacated by the courts. The EPA analyzed the nationwide economic impacts of these rules in their rulemakings and found that there would be no significant costs to small businesses. Specifically, the majority of businesses, including small businesses, affected by the national rules were retail food operations that were not expected to incur a change in costs, for example because 'drop-in' alternatives would still be allowed. In total, 99% of the small business that EPA determined would be affected by their rule were found to have zero additional costs. Of the remaining 442 small businesses nationwide that would incur a cost, 69 were expected to have costs in excess of 3% of annual sales, i.e., fewer than 100 businesses nationwide and fewer than 20% of affected entities. Therefore, the Department believes that the effects are mitigated by the scope of the proposed rule, which only applies to newly-manufactured or installed products or equipment and to end-uses for which safe alternatives are already available on the market, as determined by the EPA. The proposed rule also provides flexibility based on safety and other considerations and includes the exemptions that accompanied these prohibitions when they were adopted in the EPA SNAP Program. Finally, in order to ensure compliance and provide for enforceability, the proposed rule requires disclosure and recordkeeping requirements on covered end-uses.

2. Compliance Requirements:

This is not a mandate on local governments. Local governments have no additional compliance obligations as compared to other subject entities. The proposed rulemaking establishes prohibitions on certain hydrofluorocarbon substances in specific end-uses, including equipment or products in air-conditioning, refrigeration, aerosol propellant, or foam-blowing. The proposed rulemaking further mandates recordkeeping and written disclosure statement requirements on certain manufacturers.

3. Professional Services:

There is no specific requirement or need for entities to contract for professional services in order to comply with the proposed rule., and the Department does not believe that regulated entities would need to acquire professional services to comply with Part 494.

4. Compliance Costs:

Based on the analysis of costs and economic impacts conducted by the EPA, compliance costs are expected to be insignificant.

5. Economic and Technological Feasibility:

Compliance with this rule is technologically feasible for all entities, including small businesses and local governments. The feasibility of this rule was determined in the EPA rulemaking processes, during which the specific end-uses included in the rules were determined to be those for which alternatives are available on the market.

6. Minimizing Adverse Impact:

The Department has considered the issues and determined that Part 494 will not have an adverse impact on small businesses or local governments. The ability to comply with Part 494 will not be influenced by whether the regulatory provisions apply to a local government or small business, as compared to some other entity. Additionally, most if not all of the small businesses directly affected by Part 494, i.e. retail food operations, are required under the federal phase-down of ozone-depleting substances to replace non-compliant equipment. These businesses will not be required under this proposal to make a full transition away from HFC-based refrigerants, but are allowed to continue to use many existing HFC refrigerants that are lower cost than the climate-friendly alternatives. Additionally, the national prohibitions on aerosol propellants went into effect in 2016. As such, this rulemaking should not have an adverse impact as the affected businesses, such as the retailers of consumer products, were already expected to be in compliance.

7. Small Business and Local Government Participation:

The Department conducted pre-proposal, stakeholder outreach through-

out 2019, beginning with two public webinars held on November 14 and 18, 2018 to discuss the likely provisions of Part 494. Additional meetings regarding specific sectors also occurred, such as a meeting with the equipment manufacturing sector on December 11, 2018 and the foam-blowing sector on February 26, 2019. The stakeholder groups consisted of the regulated community to be affected by the proposed regulation, consultants, and interested environmental advocacy groups. The Department will hold public hearings on Part 494 and small businesses and local governments will be able to comment on the proposed rule during the notice and comment period.

*Rural Area Flexibility Analysis*

1. Types and Estimated Numbers of Rural Areas:

The proposed rulemaking will apply statewide, and there are no requirements in the proposed rule that would apply only to rural areas.

2. Reporting, Recordkeeping and Other Compliance Requirements; and Professional Services:

The proposed rulemaking establishes prohibitions on certain hydrofluorocarbon substances in specific end-uses and mandates recordkeeping and written disclosure statement requirements on certain manufacturers. There are no specific prohibitions in the proposed regulation that apply exclusively to rural areas, and the compliance requirements apply regardless of whether the regulated entity is located in a rural area.

3. Costs:

Although the largest number of affected businesses are food stores, which may also be located in rural areas, the EPA analysis did not consider the regulatory provisions of Part 494 to incur new costs on those stores. This conclusion was found the EPA's nationwide economic impacts analysis conducted in its rulemakings promulgated pursuant to the Clean Air Act and Significant New Alternatives Program (SNAP) in 2015 and 2016 adopting similar provisions in Part 494 but have since been partially vacated by the courts.

4. Minimizing Adverse Impact:

The Department has considered the issues and determined that Part 494 will not have an adverse impact on rural areas.

5. Rural Area Participation:

The Department conducted pre-proposal, stakeholder outreach throughout 2019, beginning with two public webinars held on November 14 and 18, 2018 to discuss the likely provisions of Part 494. Additional meetings regarding specific sectors also occurred, such as a meeting with the equipment manufacturing sector on December 11, 2018 and the foam-blowing sector on February 26, 2019. The stakeholder groups consisted of the regulated community to be affected by the proposed rulemaking, consultants, and interested environmental advocacy groups. The Department will hold public hearings on Part 494 in upstate and other rural areas and will notify interested parties of this proposed rulemaking.

*Job Impact Statement*

1. Nature of Impact:

The New York State Department of Environmental Conservation is proposing to adopt prohibitions on the use of certain hydrofluorocarbon (HFC) substances in certain end-uses. This rulemaking would adopt provisions similar to those promulgated by the United States Environmental Protection Agency (EPA) pursuant to the Clean Air Act and Significant New Alternatives Program (SNAP) in 2015 and 2016 but have since been partially vacated by the courts. Specifically, Part 494 would adopt prohibitions of certain products and equipment that use certain hydrofluorocarbon substances, specifically those prohibitions on air-conditioning, refrigeration, aerosol propellant, and foam-blowing applications. These prohibitions apply to new or retrofitted equipment and new products only, the State is not proposing prohibitions on the sell-through of previously-manufactured products or equipment, or on the servicing of previously installed equipment. The proposed rulemaking applies statewide.

2. Categories and Numbers Affected:

To estimate the potential impacts on jobs and local communities, the Department relied on EPA's analysis conducted during the promulgation of the SNAP rules. Part 494 is not expected to impact jobs and employment opportunities in New York State. The Department believes that potential job impacts are mitigated by the scope of the proposed rule, which only applies to newly-manufactured or installed products and equipment and to end-uses for which safe alternatives are already available on the market, as determined by the EPA. The rule does not prohibit the sale of products or equipment manufactured prior to the effective year indicated in the proposed rule or to the continued maintenance of existing equipment.

3. Regions of Adverse Impact:

The proposed rulemaking applies statewide. There are no regions of the State where jobs or employment opportunities are expected to be adversely impacted by this rule.

4. Minimizing Adverse Impact:

As detailed above, this rule is not expected to have a significant adverse impact on jobs and employment.

# Department of Financial Services

## EMERGENCY/PROPOSED
## RULE MAKING
## NO HEARING(S) SCHEDULED

**Rules Governing the Procedures for Adjudicatory Proceedings Before the Department of Financial Services**

**I.D. No.** DFS-53-19-00013-EP

**Filing No.** 1153

**Filing Date:** 2019-12-17

**Effective Date:** 2019-12-17

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Proposed Action:* Repeal of Supervisory Procedure G 111 of Title 3 NYCRR; Part 4 of Title 11 NYCRR; and addition of Part 2 to Title 23 NYCRR.

*Statutory authority:* Financial Services Law, sections 202, 302; State Administrative Procedure Act, art. 3

*Finding of necessity for emergency rule:* Preservation of general welfare.

*Specific reasons underlying the finding of necessity:* The 2011 Laws of New York, Chapter 62 consolidated the former New York State Banking and Insurance Departments into the Department of Financial Services ("Department"), effective October 3, 2011, establishing one agency responsible for the regulation and oversight of banking, insurance, and other financial services industries. The legislation empowers the Superintendent of Financial Services ("Superintendent") with more expansive authority than that held by the heads of the individual Banking and Insurance Departments when those departments were separate agencies.

The Department's current administrative adjudication procedures, set forth in two separate sets of regulations promulgated under the Banking and Insurance Laws, are insufficient to meet the Superintendent's expanded statutory authority. Additionally, in creating the Department, the legislature also empowered it with new authority that only exists under the new Financial Services Law. At present, there are no rules governing adjudicatory proceedings under the Financial Services Law. The need to rectify this insufficiency is now urgent.

The Department is presently engaged in a number of critical investigations and enforcement activities for which it intends to hold hearings. Some of these matters present issues that may have an impact upon both the Banking and Insurance authority of the Department, and others that may have an impact upon authority contained solely in the Financial Services Law. As such, the Department finds that the present bifurcated rules contained in the separate Banking and Insurance regulations are inadequate for the purpose. Accordingly, this rulemaking repeals Supervisory Procedure G 111 of 3 NYCRR and Part 4 of 11 NYCRR, the Banking and Insurance rules governing administrative adjudicatory proceedings before the former individual departments, and replaces those rules with a new regulation, added to 23 NYCRR, to provide one set of unified rules governing the procedures for adjudicatory proceedings before the Department, under all of its authority. Without emergency adoption of this set of unified procedures, the Department's investigations would be unduly delayed, negatively impacting the ability of the Department to protect consumers and markets from unlawful behavior.

It is therefore imperative that this amendment be promulgated on an emergency basis for the public's general welfare.

*Subject:* Rules Governing the Procedures for Adjudicatory Proceedings Before the Department of Financial Services.

*Purpose:* To unify and clarify the procedures for adjudicatory proceedings before the Department of Financial Services.

*Text of emergency/proposed rule:* Part 4 of 11 NYCRR and Supervisory Procedure G 111 of 3 NYCRR are hereby repealed. A new Part 2 is added to 23 NYCRR.

New Part 2 is added to 23 NYCRR to read as follows:

*Rules Governing The Procedures For Adjudicatory Proceedings Before The Department Of Financial Services*

*§ 2.1 Applicability.*

*(a) This Part applies to The New York State Department of Financial Services ("Department") adjudicatory proceedings, as defined in State Administrative Procedure Act section 102.3, commenced on or after the effective date of this Part or an applicable amendment thereto, except it shall not apply to:*

(1) a rulemaking proceeding;

(2) an employee disciplinary action or other personnel action pursuant to Civil Service Law article 5;

(3) a public hearing for the purpose of acquiring information or evaluating an application or a transaction; or

(4) proceedings pursuant to Insurance Law section 4308, which shall be governed by the provisions of such section.

(b) Adjudicatory proceedings before the Department shall be conducted as provided by the Financial Services Law and the regulations promulgated there under and shall be in accordance and consistent with the procedures that apply under the State Administrative Procedure Act.

§ 2.2 Hearing officer.

(a) A hearing in an adjudicatory proceeding shall be conducted by a hearing officer chosen from among the following persons:

(1) the Superintendent of Financial Services;

(2) any Deputy Superintendent; or

(3) any designated salaried employee of the Department authorized by the Superintendent for such purpose.

(b) A hearing officer shall have the powers set forth in State Administrative Procedures Act section 304.

(c) No person who shall have previously dealt in a substantial way with the substance of the matter that is the subject of the adjudicatory proceeding, or who has an existing or potential conflict of interest, shall act as the hearing officer in such proceeding.

(d) A hearing officer shall be bound by the Department's code of ethics and the code of ethics as set forth in Public Officers Law section 74.

(e) An application to recuse a hearing officer may be made by any party on the hearing record. The hearing officer shall rule on such application in accordance with the above codes of ethics.

(f) In the event of a hearing officer's death, resignation, removal, recusal, termination of employment, disability, or other inability or failure to otherwise conclude a hearing or make a timely written report after the completion of the hearing, another duly designated hearing officer may be substituted to continue the hearing on the existing record or to render a written report on the completed record.

§ 2.3 Notice of adjudicatory proceeding and answer.

(a) Unless otherwise provided in the Banking Law, Insurance Law, or any other applicable law, an adjudicatory proceeding shall be commenced by service of a notice of action or proposed action as provided in Financial Services Law section 304. Unless otherwise provided in the Banking Law, Insurance Law, or any other applicable law, such notice shall be served on each party at least ten (10) days prior to the return date.

(b) Such notice shall contain the information set forth in State Administrative Procedures Act sections 301.2 and Financial Services Law section 304.

(c) Such notice may be amended or supplemented:

(1) prior to the commencement of the hearing, on at least ten (10) days written notice; or

(2) upon commencement of the hearing, as authorized by the hearing officer.

(d) A party may file a written answer to the notice of action or proposed action with the Department attorney who issued the notice thereof at least two (2) days prior to the return date.

§ 2.4 Representation.

(a) Any party to an adjudicatory proceeding may be represented by an attorney.

(b) Provided that such individual is not currently suspended or debarred from practice before the Department:

(1) An individual may appear on the individual's own behalf;

(2) A member of a partnership may represent the partnership; or

(3) A duly authorized officer of a corporation, trust or association may represent the corporation, trust or association.

(c) An attorney or individual representing a party shall file a notice of appearance on a form prescribed by the Superintendent pursuant to Executive Law sections 166 and 168.

§ 2.5 Subpoenas.

(a) Subpoenas in connection with an adjudicatory proceeding may be issued by:

(1) the Superintendent,

(2) a Deputy Superintendent,

(3) the hearing officer assigned to hear the matter, or

(4) any employee of the Department authorized by the Superintendent to issue a subpoena in their discretion at the request of any party to the proceeding.

(b) The party requesting the subpoena shall be responsible for serving the subpoena and payment of all required fees.

§ 2.6 Discovery.

Discovery is available to respondents and applicants to the extent permitted by the State Administrative Procedure Act sections 301.2, 305, and 401.4.

§ 2.7 Evidence.

(a) The rules of evidence for Department adjudicatory proceedings are set forth in State Administrative Procedure Act section 306.

(b) Each witness shall be sworn or shall give an affirmation.

§ 2.8 Adjournment of Hearings.

(a) Prior to commencement, a hearing may be adjourned upon written application by a party to the Department official who issued the notice or notice of proposed action. The application may be granted upon a showing of good cause at the discretion of the Department official who issued the notice or notice of proposed action.

(b) After commencement, a hearing may be adjourned at the discretion of the hearing officer for good cause shown upon request of any party or upon consent of all parties.

(c) The factors to be considered in determining good cause shown, as used in this section, shall include, but not be limited to, the following:

(1) illness of a party;

(2) temporary absence or illness of a witness;

(3) opportunity to obtain an attorney;

(4) illness of an attorney;

(5) actual engagement of an attorney in a court proceeding; and

(6) the number and nature of previous requests for adjournment.

(d) The party or attorney making an application for adjournment for good cause shown shall present documentary evidence as the hearing officer deems appropriate.

(e) A hearing officer may, in the hearing officer's sole discretion, adjourn a hearing.

§ 2.9 Failure to appear.

In the event a party fails to appear or to be represented without having obtained an adjournment at an adjudicatory proceeding initiated by the Department, such adjudication proceeding shall proceed on the existing record and a decision shall be rendered thereon. With respect to the application for a license, authorization, approval or permit, the Department in its sole discretion may deem said application withdrawn.

§ 2.10 Conduct of hearings.

All hearings shall be conducted in an impartial, efficient, timely, expert, and fair manner. The hearing officer shall be responsible for the conduct of a hearing.

§ 2.11 Order of hearings.

(a) The Department attorney shall present the Department's case-in-chief first, unless otherwise ordered by the hearing officer or unless otherwise expressly specified by law or regulation.

(b) The Department attorney shall be the first party to present an opening statement and a closing statement and may make a rebuttal statement after the respondent's or applicant's closing statement.

(c) If there are multiple respondents, respondents may agree among themselves as to their order of presentation of their cases, but if they do not agree, the hearing officer shall fix the order.

§ 2.12 Burden of proof.

(a) The burden of proof shall be on the party who initiated the proceeding as set forth in State Administrative Procedure Act section 306.1.

(b) The burden of proof is substantial evidence.

§ 2.13 Record of proceedings.

(a) A verbatim recording shall be made of the proceedings.

(b) A transcription of the record shall be made available to any party upon request and payment of the cost of the transcription.

§ 2.14 Hearings open to the public.

(a) Hearings shall be open to the public as provided in Financial Services Law section 305(c), unless:

(1) conducted concurrently pursuant to the Banking Law; or

(2) the Superintendent or the Superintendent's designee determines that a closed hearing would be in the public interest, in which case the hearing shall be closed to the public.

(b) The hearing officer may exclude from the hearing room any person engaging in improper conduct at the hearing or a testifying witness attending the hearing prior to such witness's testimony, but may not exclude a party or an attorney representing a party.

§ 2.15 Application to reopen.

(a) Upon written application made by a party, the hearing officer may reopen a hearing and may recommend to the Superintendent or the Superintendent's designee such further action as justice may require. Such application shall be determined in accordance with the following:

(1) Where the party failed to appear at the hearing, the party, in making the application to reopen, must establish that there were valid reasons for having failed to appear and that there is a meritorious case on behalf of such party.

(2) Where the party making such an application appeared at the hearing, the party must establish that there is newly discovered evidence, that despite due diligence by the party was not available at the time of the hearing, or other compelling reason for reopening.

(b) All such applications to reopen an adjudicatory proceeding shall be

*made within one-hundred and twenty (120) days from the effective date of the Superintendent's or the Superintendent's designee determination in the proceeding.*

*(c) The right of a party to seek judicial review pursuant to Financial Services Law section 308 and Civil Practice Law and Rules article 78 shall not be restricted, delayed or extended by the provisions of this section.*

*§ 2.16 Incomplete record.*

*Where a hearing record is incomplete or otherwise fails to provide the basis for an informed decision, the Superintendent, the Superintendent's designee, or the hearing officer may direct that the hearing be reopened.*

*§ 2.17 Hearing officer's report.*

*(a) Within ninety (90) days after the record of the hearing is closed in an adjudicatory proceeding, other than a hearing seeking relief from an order of summary suspension pursuant to Part 31 of Title 11, the hearing officer shall make a written report of findings and recommendations, if any, to the Superintendent or the Superintendent's designee of the action to be taken. The time herein provided for the hearing officer to make the report to the Superintendent shall confer no substantive rights on respondents.*

*(b) Prior to the close of the hearing, a party may request a copy of the report and an opportunity to comment thereon before the Superintendent or the Superintendent designee acts on such report.*

*(c) Where a request has been made pursuant to subsection (b) of this section, the hearing officer shall serve a copy of the report on each party.*

*(d) Within fourteen (14) days of such service or such other period specified by the hearing officer, a party shall have the opportunity to submit written comments to the Superintendent or the Superintendent's designee on the report.*

*(e) Within seven (7) days of service of written comment or such other period specified by the hearing officer, a party shall have the opportunity to submit written comments in reply to another party's written comment.*

*(f) The party submitting the comments shall simultaneously serve such comments on all parties.*

*§ 2.18 Health provider violations.*

*(a) When a complaint alleging patterns of overcharging by a health provider is received by the Department, either in accordance with section 68.9 of Title 11 or from any source, and the allegations, if true, would constitute a violation of Insurance Law section 5108 or Part 68 of Title 11, a hearing shall be conducted in accordance with this Part.*

*(b) If the Superintendent determines after a hearing that such violations have been demonstrated, the determination, which shall include a statement of facts and findings, shall be forwarded:*

*(1) in the case of physicians and physicians' assistants, to the director of the Office of Professional Medical Conduct, New York State Department of Health at the appropriate address; and*

*(2) in the case of other health providers, to the director of the Office of Professional Discipline, Education Department at the appropriate address.*

**This notice is intended:** to serve as both a notice of emergency adoption and a notice of proposed rule making. The emergency rule will expire March 15, 2020.

**Text of rule and any required statements and analyses may be obtained from:** Samantha Darche, Department of Financial Services, One State Street, New York, New York 10004, (212) 709-1695, email: Samantha.Darche@dfs.ny.gov

**Data, views or arguments may be submitted to:** Same as above.

**Public comment will be received until:** 60 days after publication of this notice.

**This rule was not under consideration at the time this agency submitted its Regulatory Agenda for publication in the Register.**

**Consolidated Regulatory Impact Statement**

1. Statutory authority: Financial Services Law Sections 202 and 302; State Administrative Procedure Act Section 301.

Financial Services Law Section 202 establishes the Office of the Superintendent of Financial Services ("Superintendent").

Financial Services Law Section 302 empowers the Superintendent to, among other things, prescribe, amend, or withdraw rules and regulations involving financial products and services consistent with the Banking Law, Insurance Law, Financial Services Law, and any other law in which the Superintendent is given authority, including but not limited to governance of the procedures to be followed in the practice of the department.

State Administrative Procedure Act ("SAPA") Article 3 governs adjudicatory proceedings. SAPA Section 301 directs all state agencies subject to SAPA to adopt rules governing the procedures on adjudicatory proceedings and appeals.

2. Legislative objectives: The 2011 Laws of New York, Chapter 62 consolidated the former New York State Banking and Insurance Departments into the Department of Financial Services ("Department"), effective

October 3, 2011, establishing one agency responsible for the regulation and oversight of banking, insurance, and other financial services industries. Accordingly, this rulemaking repeals the separate Banking and Insurance rules governing adjudicatory proceedings before the former individual departments, and replaces those rules with a new regulation, added to 23 NYCRR, that unifies the procedures for adjudicatory proceedings before the Department, ensuring greater clarity and the removal of any potential inconsistencies in the handling of adjudicatory proceedings before the Department.

3. Needs and benefits: The Financial Services Law empowers the Superintendent of Financial Services with more expansive authority than that held by the heads of the individual Banking and Insurance Departments when those departments were separate agencies. To that end, the rule making repeals Supervisory Procedure G 111 of 3 NYCRR and Part 4 of 11 NYCRR and adds a new Part 2 to 23 NYCRR to encompass all persons who may be subject to a Department adjudicatory proceeding. New Part 2 to 23 NYCRR continues to uphold the public policy of expeditious and impartial adjudicatory proceedings and comply with the requirements of Executive Order No. 131 (December 4, 1989), which remains in effect pursuant to Executive Order No. 2 (January 1, 2011).

4. Costs: The rule making will not impose any costs on any person who may be impacted by the rule making.

5. Local government mandates: This amendment does not impose any program, service, duty, or responsibility upon a county, city, town, village, school district, fire district, or other special district.

6. Paperwork: No additional paperwork should result from the rule making.

7. Duplication: The rule making does not duplicate, overlap, or conflict with any existing New York or federal laws, rules, or other legal requirements.

8. Alternatives: The alternative to this rule making would be for the Department to not promulgate this regulation; however, doing so would leave in place two separate regulations relating to adjudicatory proceedings before the Department, which are inadequate to address the Department's present need. The Department intends to hold hearings on investigations and enforcement activities that may have an impact upon both the Insurance and Banking authority of the Department, and others that may have an impact upon authority contained solely in the Financial Services Law. Thus, the option to not promulgate this rule making was rejected in favor of this unified regulation.

9. Federal standards: There are no minimum standards of the federal government for the same or similar subject areas.

10. Compliance schedule: The rule making will take effect immediately upon filing the notice of emergency adoption with the Secretary of State.

**Consolidated Regulatory Flexibility Analysis**

1. Effect of rule: The rule making has the potential to impact small businesses as defined by State Administrative Procedures Act ("SAPA") Section 102(8), which are defined as both independently owned and operated and have 100 or less employees. Licensees and non-licensees that are small businesses may become parties to Department of Financial Services ("Department") adjudicatory proceedings for having been charged with a violation of the Banking Law, Insurance Law, Financial Services Law, or any other law that authorizes the Superintendent of Financial Services to take action. The actual number of participants in adjudicatory proceedings in a given year may reach into the hundreds, based on prior history.

The rule making does not apply to any local government.

2. Compliance requirements: The rule making does not impose any recordkeeping, reporting or other affirmative acts upon any small business that may be impacted by this rule making, or any local government because the rule making does not apply to any local government.

3. Professional services: No small business impacted by the rule making will need to retain professional services to comply with the rule making, or any local government because the rule making does not apply to any local government.

4. Compliance costs: The rule making does not impose any compliance costs on any small business or local government.

5. Economic and technological feasibility: No small business impacted by the rule making should experience any economic or technological impact as a result of the rule making, or any local government because the rule making does not apply to any local government.

6. Minimizing adverse impact: The Department believes that no small business will be adversely affected by the rule making, or any local government because the rule making does not apply to any local government.

7. Small business and local government participation: The Department will comply with SAPA Section 202-b(6) by publishing the rule making in the State Register and posting the rule making on the Department's website.

**Consolidated Rural Area Flexibility Analysis**

The 2011 Laws of New York, Chapter 62 consolidated the former New York State Banking and Insurance Departments into the Department of

Financial Services ("Department"), effective October 3, 2011, establishing one agency responsible for the regulation and oversight of banking, insurance, and other financial services industries. The Department finds that this consolidated rule making, which repeals the separate Banking and Insurance rules governing adjudicatory proceedings before the former individual departments, and replaces those rules with a new regulation, added to 23 NYCRR, to unify the procedures for adjudicatory proceedings before the Department, does not impose any additional burdens on persons located in rural areas, and will not have an adverse impact on rural areas because it applies uniformly to all persons that are resident or do business in both rural and non-rural areas of New York State.

*Job Impact Statement*

The 2011 Laws of New York, Chapter 62 consolidated the former New York State Banking and Insurance Departments into the Department of Financial Services ("Department"), effective October 3, 2011, establishing one agency responsible for the regulation and oversight of banking, insurance, and other financial services industries. This rule making should not adversely impact job or employment opportunities in New York. This rulemaking repeals the separate Banking and Insurance rules governing adjudicatory proceedings before the former individual departments, and replaces those rules with a new regulation, added to 23 NYCRR, to unify the procedures for adjudicatory proceedings before the Department.

The Department has no reason to believe that the rulemaking will result in any adverse impact on job or employment, including self-employment, opportunities in New York.

## EMERGENCY/PROPOSED RULE MAKING NO HEARING(S) SCHEDULED

**Charges for Professional Health Services**

**I.D. No.** DFS-53-19-00014-EP

**Filing No.** 1154

**Filing Date:** 2019-12-17

**Effective Date:** 2019-12-17

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Proposed Action:* Amendment of Part 68 (Regulation 83) of Title 11 NYCRR.

*Statutory authority:* Financial Services Law, sections 202, 302; Insurance Law, sections 301, 2601, 5221 and art. 51

*Finding of necessity for emergency rule:* Preservation of general welfare.

*Specific reasons underlying the finding of necessity:* Chapter 892 of the Laws of 1977 recognized the need to establish schedules of maximum permissible charges for professional health services payable as no-fault insurance benefits to contain the costs of no-fault insurance. To that end, and in accordance with Insurance Law section 5108(b), the Superintendent of Financial Services ("Superintendent") adopted medical fee schedules promulgated by the Chairman of the Workers' Compensation Board (the "Chair"). In addition, the Superintendent, after consulting with the Chair and the Commissioner of Health, established fee schedules for those services for which the Chair has not prepared and established fee schedules.

The Chair's medical fee schedules initially adopted in 1977 underwent annual revisions until the mid-1990s to reflect inflationary increases and to incorporate other necessary enhancements. In turn, the Superintendent adopted those fee schedules through amendments to Insurance Regulation 83. However, in 2002, the Superintendent promulgated an amendment to Insurance Regulation 83 that prescribed that any changes the Chair made to the workers' compensation fee schedules would apply automatically to the no-fault system, and as such, no longer necessitated adoption of the workers' compensation fee schedules as changes were made to them.

In April 2019, Workers' Compensation Law Section 13-b was amended to permit licensed acupuncturists, nurse practitioners, and licensed clinical social workers to become authorized to treat injured workers, starting in 2020. In turn, on November 19, 2019, the Chair of the Workers' Compensation Board (the "Chair") adopted amendments to its fee schedules effective January 1, 2020 to add a new fee schedule for acupuncturists, physical therapists, and occupational therapists, as well as to establish fee schedules for self-employed nurse practitioners, physician assistants and licensed clinical social workers. Additionally, the Chair amended its chiropractic fee schedule to align with the fees of similar providers.

Although the recent amendments to the workers' compensation fee schedules may be necessary to maintain quality health services for the workers' compensation system, the immediate adoption of a new fee schedule that covers acupuncturists, physical therapists, and occupational therapists, coupled with the substantial increase in chiropractic fee schedule rates, will have a significant adverse impact on the no-fault system, to wit: insurers will not have an opportunity to study the cost impact from a substantial increase in chiropractic rates; insurers and providers will not be afforded sufficient time to change their internal bill processing systems to comport with the Chair's most recent significant amendments to the fee schedules; and the adoption of those fee schedules for use in the no-fault system beginning January 1, 2020, while other fee schedules have been delayed for use in the no-fault system until October 1, 2020, likely will result in inaccurate billing by providers and incorrect reimbursements from insurers. These issues ultimately will increase fee schedule disputes in arbitration and the courts.

In order to mitigate the problems to the no-fault system stemming from the immediate adoption of the Chair's most recent amendments to the workers' compensation fee schedules, the Superintendent deems it necessary to delay the adoption of the new fee schedules, as well as changes made to existing fee schedules that the Chair has prepared and established to take effect on January 1, 2020. Therefore, those fee schedules shall take effect on October 1, 2020 for use in the no-fault system pursuant to Insurance Law Section 5108, which will coincide with the workers' compensation fee schedules already scheduled to take effect on October 1, 2020.

For the reasons stated above, emergency action is necessary for the preservation of the general welfare.

*Subject:* Charges for Professional Health Services.

*Purpose:* To delay the effective date of the workers' compensation fee schedules for no-fault reimbursement.

*Text of emergency/proposed rule:* Subparagraph 68.1(a)(2)(i) is amended to read as follows:

§ 68.1 Adoption of certain workers' compensation schedules

(a)(2)(i) Notwithstanding paragraph (1) of this subdivision, and except as provided in subparagraph (ii) of this paragraph, the amendments to the fee schedules set forth in Parts 329, 333, 343, and 348 of Title 12 NYCRR that were promulgated by the chair of the Workers' Compensation Board on December 11, 2018, *and the amendments to the fee schedules set forth in Parts 329, 333, and 348 of Title 12 NYCRR that were adopted by the chair of the Workers' Compensation Board on November 19, 2019,* shall take effect for purposes of Insurance Law section 5108 on October 1, 2020, and shall only apply to all charges for health services performed on or after October 1, 2020.

*This notice is intended:* to serve as both a notice of emergency adoption and a notice of proposed rule making. The emergency rule will expire March 15, 2020.

*Text of rule and any required statements and analyses may be obtained from:* Camielle Barclay, Department of Financial Services, One State Street, New York, NY 10004, (212) 480-5299, email: Camielle.Barclay@dfs.ny.gov

*Data, views or arguments may be submitted to:* Same as above.

*Public comment will be received until:* 60 days after publication of this notice.

*This rule was not under consideration at the time this agency submitted its Regulatory Agenda for publication in the Register.*

*Regulatory Impact Statement*

1. Statutory authority: Financial Services Law Sections 202 and 302, and Insurance Law Sections 301, 5221, and Article 51.

Financial Services Law Section 202 establishes the office of the Superintendent of Financial Services ("Superintendent").

Financial Services Law Section 302 and Insurance Law Section 301, in material part, authorize the Superintendent to effectuate any power accorded to the Superintendent by the Financial Services Law, Insurance Law, or any other law, and to prescribe regulations interpreting the Insurance Law.

Insurance Law Section 2601 prohibits insurers from engaging in unfair claim settlement practices and requires insurers to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.

Insurance Law Section 5221 specifies the duties and obligations of the Motor Vehicle Accident Indemnification Corporation with respect to the payment of no-fault benefits to qualified persons.

Article 51 of the Insurance Law contains the provisions authorizing the establishment of a no-fault reparations system for persons injured in motor vehicle accidents. Section 5108(b) specifically authorizes the Superintendent to adopt the fee schedules prepared and established by the Chairman of the Workers' Compensation Board (the "Chair") or to promulgate fee schedules for health care benefits payable under the no-fault system for any services for which the Chair has not prepared and established; and subsection (c) prohibits a provider of health services, as defined in Article 51, from demanding or requesting any payment in addition to the amount authorized pursuant to Insurance Law Section 5108.

2. Legislative objectives: Chapter 892 of the Laws of 1977 recognized the need to establish schedules of maximum permissible charges for professional health services payable as no-fault insurance benefits to contain the costs of no-fault insurance. To that end, and pursuant to Insurance Law Section 5108(b), the Superintendent adopted those fee schedules promulgated by the Chair. In addition, the Superintendent, after consulting with the Chair and the Commissioner of Health, established fee schedules for those services for which the Chair has not prepared and established fee schedules.

Since 1977, the workers' compensation fee schedules underwent annual revisions until the mid-1990s to reflect inflationary increases and to incorporate other necessary enhancements. In turn, the Superintendent adopted those fee schedules through amendments to Insurance Regulation 83. However, in 2002, the Superintendent promulgated an amendment to Insurance Regulation 83 that prescribed that any changes the Chair made to the workers' compensation fee schedules would apply automatically to no-fault, and therefore, no longer necessitated the adoption of the workers' compensation fee schedules as changes were made to them.

3. Needs and benefits: In April 2019, Workers' Compensation Law Section 13-b was amended to permit licensed acupuncturists, nurse practitioners and licensed clinical social workers to become authorized to treat injured workers, starting in 2020. In turn, on November 19, 2019, the Chair adopted amendments to its fee schedules effective January 1, 2020 to add a new fee schedule for acupuncturists, physical therapists, and occupational therapists, as well as to establish fee schedules for self-employed nurse practitioners, physician assistants and licensed clinical social workers. Additionally, the Chair amended its chiropractic fee schedule to align with the fees of similar providers.

Although the recent amendments to the workers' compensation fee schedules may be necessary to maintain quality health services for the workers' compensation system, the immediate adoption of a new fee schedule that covers acupuncturists, physical therapists, and occupational therapists, coupled with the substantial increase in chiropractic fee schedule rates, will have a significant adverse impact on the no-fault system, to wit: insurers will not have an opportunity to study the cost impact from a substantial increase in chiropractic rates; insurers and providers will not be afforded sufficient time to change their internal bill processing systems to comport with the Chair's most recent significant amendments to the fee schedules; and the adoption of those fee schedules for use in no-fault beginning January 1, 2020, while other fee schedules have been delayed for use in no-fault until October 1, 2020, likely will result in inaccurate billing by providers and incorrect reimbursements from insurers. These issues ultimately will increase fee schedule disputes in arbitration and the courts.

In order to mitigate the problems to the no-fault system stemming from the immediate adoption of the Chair's most recent amendments to the workers' compensation fee schedules, the Superintendent deems it necessary to delay the adoption of the new fee schedules, as well as changes made to existing fee schedules that the Chair has prepared and established to take effect on January 1, 2020. Therefore, those fee schedules shall take effect on October 1, 2020 for use in no-fault pursuant to Insurance Law Section 5108, which will coincide with workers' compensation fee schedules already scheduled to take effect on October 1, 2020.

4. Costs: This amendment should have no compliance cost impact on applicants for no-fault benefits, insurers, self-insurers, or state and local governments. With respect to any cost impact to health service providers not regulated by the Department, participation in the no-fault system is optional, and the Department has imposed no preauthorization or reporting requirements on these applicants for no-fault benefits. Nevertheless, this rule only delays the adoption of changes that the Chair has made to the workers' compensation fee schedules, which the Department is required to adopt pursuant to Insurance Law Section 5108.

5. Local government mandates: This rule does not impose any requirement upon a city, town, village, school district, or fire district.

6. Paperwork: This rule does not impose any additional paperwork on any persons affected by the rule.

7. Duplication: This rule will not duplicate any existing state or federal rule.

8. Alternatives: The Superintendent carefully evaluated alternatives to a delay in adopting the workers' compensation medical fee schedules. The Superintendent determined that adopting the workers' compensation fee schedules for use in no-fault on January 1, 2020 will result in significant systems issues for both insurers and health service providers, from having to utilize separate fee schedules and apply different ground rules. The Superintendent also considered a shorter implementation delay period but determined, based on the Superintendent's expertise as insurance regulator, that a delay until October 1, 2020 was most appropriate to permit insurers sufficient time to study the cost impact of the fee schedule changes in order to determine when and how to adjust their rates. Furthermore, delaying the adoption of the fee schedules will result in parity among the

providers whose fee schedules are scheduled to take effect on October 1, 2020.

9. Federal standards: There are no minimum federal standards for the same or similar subject areas. The rule is consistent with federal standards or requirements.

10. Compliance schedule: This amendment shall take effect upon filing with the Department of State.

*Regulatory Flexibility Analysis*

1. Effect of rule: This rule affects no-fault insurers authorized to do business in New York State and self-insurers, none of which fall within the definition of "small business" as defined in State Administrative Procedure Act Section 102(8), because none are both independently owned and have less than one hundred employees. Self-insurers are typically large enough to have the financial ability to self-insure losses and the Department of Financial Services (the "Department") does not have any information to indicate that any self-insurer is a small business.

Local government units make independent determinations on the feasibility of becoming self-insured for no-fault benefits or having these benefits provided by authorized insurers. There are no requirements under the State's financial security laws requiring local governments to report to the Department or the Department of Motor Vehicles that they are self-insured. Therefore, the Department has no way of estimating how many local government units are self-insured for no-fault benefits.

The types of small businesses affected by this rule are applicants for no-fault benefits, who are typically health service providers. Their participation in the no-fault system, however, is optional and the Department has established no preauthorization or reporting requirements with respect to these small businesses. Further, because the Department does not maintain records of either the number of applicants licensed in this state or the number of applicants providing services to injured persons eligible for no-fault benefits, it cannot provide the number of these entities that will be affected by this rule. Nevertheless, this rule only delays the adoption of the most recent amendments to the workers' compensation fee schedules, which are required to be utilized in the no-fault system pursuant to Insurance Law Section 5108, until October 1, 2020. Although this amendment may have a temporary impact on certain small businesses, such as chiropractic offices, acupuncturists, physical therapists, and occupational therapists, in that they may not bill at the higher fee schedule rate for their services until October 1, 2020, such an impact is outweighed by the need to give no-fault insurers sufficient time to study the impact that the fee schedule changes will have on loss costs so that they may appropriately adjust premiums to cover those costs and change internal processing systems to comport with the Chair's most recent significant amendments to the fee schedules. Additionally, the adoption of the Chair's fee schedules for use in no-fault beginning January 1, 2020, while other fee schedules have been delayed for use in no-fault until October 1, 2020, likely will result in inaccurate billing by providers and incorrect reimbursements from insurers. These issues ultimately will increase fee schedule disputes in arbitration and the courts.

2. Compliance requirements: This amendment will not impose any additional reporting, recordkeeping or other compliance requirements on any small business or self-insured local government affected by this rule.

3. Professional services: This rule does not require the use of professional services.

4. Compliance costs: This amendment does not impose any additional compliance costs on small businesses or self-insured local governments.

5. Economic and technological feasibility: There should not be any issues pertaining to economic or technological feasibility because this rule only delays the adoption of the most recent amendments to the workers' compensation fee schedules for use in the no-fault system pursuant to Insurance Law Section 5108.

6. Minimizing adverse impact: This rule should have no adverse impact on small businesses or local governments affected by this amendment because the amendment only delays the adoption of the most recent amendments to the workers' compensation fee schedules for use in the no-fault system pursuant to Insurance Law Section 5108. The Department anticipates that no small business subject to the rule, if any, or self-insured local government will experience any cost increase because of this amendment.

7. Small business and local government participation: Interested parties, including small businesses and local governments, will be given an opportunity to review and comment on the rulemaking once it is published in the New York State Register and posted to the Department's website.

*Rural Area Flexibility Analysis*

1. Types and estimated numbers of rural areas: Health service providers, insurers, and self-insurers affected by this regulation do business in every county in this state, including rural areas as defined in State Administrative Procedure Act Section 102(10). Some government entities that are self-insurers for no-fault benefits may be located in rural areas.

2. Reporting, recordkeeping and other compliance requirements; and professional services: This amendment will not impose any additional reporting, recordkeeping or other compliance requirements on insurers, self-insurers, self-insured local governments, or health service providers affected by this rule.

Insurers, self-insurers, self-insured local governments, and health service providers affected by this rule should not need to retain professional services to comply with this rule. This rule only delays the adoption of the most recent amendments to the workers' compensation fee schedules, which are required to be utilized in the no-fault system pursuant to Insurance Law Section 5108, until October 1, 2020.

3. Costs: This amendment does not impose any additional costs on no-fault insurers, self-insurers, self-insured local governments, and health service providers, because this rule only delays the adoption of the most recent amendments to the workers' compensation fee schedules, which are required to be utilized in the no-fault system pursuant to Insurance Law Section 5108, until October 1, 2020.

4. Minimizing adverse impact: This rule uniformly affects insurers, self-insurers, self-insured local governments, and health service providers throughout New York State. Therefore, it does not impose any adverse impact on rural areas.

5. Rural area participation: Interested parties, including those located in rural areas, will be given an opportunity to review and comment on the rulemaking once it is published in the New York State Register and posted on the Department of Financial Services' website.

**Job Impact Statement**

This rule should not adversely impact jobs or employment opportunities in New York State. The amendment only delays until October 1, 2020 the adoption of workers' compensation fee schedules for use in the no-fault system pursuant to Insurance Law Section 5108.

# EMERGENCY/PROPOSED
# RULE MAKING
# NO HEARING(S) SCHEDULED

**Supplementary Uninsured/Underinsured Motorist Coverage**

**I.D. No.**  DFS-53-19-00015-EP

**Filing No.**  1155

**Filing Date:**  2019-12-17

**Effective Date:**  2019-12-17

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

**Proposed Action:** Amendment of Part 60-2 (Regulation 35-D) of Title 11 NYCRR.

**Statutory authority:** Financial Services Law, sections 202, 302; Insurance Law, sections 301, 3420(f); L. 2019, part 111, ch. 59

**Finding of necessity for emergency rule:** Preservation of general welfare.

**Specific reasons underlying the finding of necessity:** Chapter 59, Part III, Section 19 of the Laws of 2019, which takes effect on January 1, 2020 and applies to a policy issued, renewed, altered, or modified on or after that date, amended Insurance Law section 3420(f) to require that any policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance, and use of an altered motor vehicle or stretch limousine, having a seating capacity of eight or more passengers and used in the business of carrying or transporting passengers for hire, provide supplementary uninsured/underinsured motorist ("SUM") insurance for bodily injury in an amount of a combined single limit of $1,500,000 because of bodily injury or death of one or more persons in any one accident. Since insurers have already begun renewing insurance policies that will take effect January 1 or later, and need to know to which vehicle owners they must provide this SUM coverage, it is imperative that this rule be promulgated on an emergency basis for the public's general welfare.

**Subject:** Supplementary Uninsured/Underinsured Motorist Coverage.

**Purpose:** To comport with statutory amendments to chapter 59, part III of the Laws of 2019 and Insurance Law section 3420(f).

**Text of emergency/proposed rule:**

A new paragraph (3) is added to section 60-2.0(a) as follows:

*(3) This Subpart further implements section 19 of Part III of Chapter 59 of the Laws of 2019, which amended Insurance Law section 3420(f) to require that any policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance and use of an altered motor vehicle, commonly referred to as a "stretch limousine", having a seating*

*capacity of eight or more passengers used in the business of carrying or transporting passengers for hire, provide SUM coverage for bodily injury in an amount of a combined single limit of $1,500,000 because of bodily injury or death of one or more persons in any one accident for any policy issued, renewed, altered, or modified on or after January 1, 2020.*

Subdivision (g) of section 60-2.1 is amended as follows:

(g) Notwithstanding subdivisions (e) and (f) of this section[,]:

*(1)* an insurer providing coverage in satisfaction of the financial responsibility requirements of Vehicle and Traffic Law article 44-B:

[(1)] *(i)* shall provide SUM coverage, in the amount of $1,250,000 because of bodily injury to or death of one or more persons in any one accident, while the TNC driver is engaged in a TNC prearranged trip if the policy provides liability coverage as required by Vehicle and Traffic Law section 1693(3); and

[(2)] *(ii)* if the policy provides liability coverage as required by Vehicle and Traffic Law section 1693(2), shall:

[(i)] *(a)* offer SUM coverage as provided in subdivision (e) of this section, under an insurance policy other than an insurance policy described in subparagraph (ii) of this paragraph, while the driver is logged onto the TNC's digital network but is not engaged in a TNC prearranged trip; or

[(ii)] *(b)* provide SUM coverage as provided in subdivision (f) of this section, under an insurance policy originally entered into on or after June 16, 2018, other than a commercial risk insurance policy, while the driver is logged onto the TNC's digital network but is not engaged in a TNC prearranged trip[.]*; and*

*(2)* an insurer providing coverage insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance and use of an altered motor vehicle, commonly referred to as a "stretch limousine", having a seating capacity of eight or more passengers used in the business of carrying or transporting passengers for hire, shall provide SUM coverage in the amount of $1,500,000 because of bodily injury to or death of one or more persons in any one accident for any policy issued, renewed, altered, or modified on or after January 1, 2020. For the purposes of this paragraph, an "altered motor vehicle" or "stretch limousine" shall mean a vehicle altered so as to have an extended chassis, lengthened wheel base, or elongated seating area and in the case of a truck, has been modified to transport passengers in addition to having been altered.*

**This notice is intended:** to serve as both a notice of emergency adoption and a notice of proposed rule making. The emergency rule will expire March 15, 2020.

**Text of rule and any required statements and analyses may be obtained from:** Joana Lucashuk, New York State Department of Financial Services, One State Street, New York, NY 10004, (212) 480-2125, email: Joana.Lucashuk@dfs.ny.gov

**Data, views or arguments may be submitted to:** Same as above.

**Public comment will be received until:** 60 days after publication of this notice.

**This notice was not under consideration at the time this agency submitted its Regulatory Agenda for publication in the Register.**

**Regulatory Impact Statement**

1. Statutory authority: The authority of the Superintendent of Financial Services ("Superintendent") to promulgate this amendment derives from Financial Services Law sections 202 and 302, Insurance Law sections 301 and 3420(f), and Chapter 59, Part III, Section 19 of the Laws of 2019.

Financial Services Law section 202 establishes the office of the Superintendent and designates the Superintendent as the head of the Department of Financial Services ("Department").

Financial Services Law section 302 and Insurance Law section 301 authorize the Superintendent to effectuate any power accorded to the Superintendent by the Insurance Law, Banking Law, Financial Services Law, or any other law of this state and to prescribe regulations interpreting the Insurance Law, among other things.

Insurance Law section 3420 establishes the minimum provisions for liability insurance policies issued or delivered in New York. Insurance Law section 3420(f) requires a motor vehicle liability policy issued or delivered in New York to provide supplementary uninsured/underinsured motorist ("SUM") coverage.

Chapter 59, Part III, Section 19 of the Laws of 2019, which was signed into law on April 12, 2019 and will take effect on January 1, 2020, amended Insurance Law section 3420(f) to require that any policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance, and use of an altered motor vehicle or stretch limousine, having a seating capacity of eight or more passengers and used in the business of carrying or transporting passengers for hire, provide SUM insurance for bodily injury in an amount of a combined single limit of $1,500,000 because of bodily injury or death of one or more persons in any one accident.

2. Legislative objectives: Chapter 59, Part III, Section 19 of the Laws of 2019 amended Insurance Law section 3420(f) to require that a motor vehicle liability policy covering an altered motor vehicle or stretch limousine, having a seating capacity of eight or more passengers and used in the business of carrying or transporting passengers for hire, provide SUM insurance for bodily injury in an amount of a combined single limit of $1,500,000 because of bodily injury or death of one or more persons in any one accident.

This amendment to the rule accords with the public policy objectives that the Legislature sought to advance in Insurance Law section 3420(f) and Chapter 59, Part III, Section 19 of the Laws of 2019 by updating the rule to include the increased minimum SUM limits for altered motor vehicles or stretch limousines as set forth in Section 19 and adding a definition of "altered motor vehicle" or "stretch limousine" consistent with Department of Motor Vehicles regulation 15 NYCRR section 79.20(f)(2).

3. Needs and benefits: Chapter 59, Part III, Section 19 of the Laws of 2019 amended Insurance Law section 3420(f) to require that a motor vehicle liability policy covering an altered motor vehicle or stretch limousine, having a seating capacity of eight or more passengers and used in the business of carrying or transporting passengers for hire, provide SUM insurance for bodily injury in an amount of a combined single limit of $1,500,000 because of bodily injury or death of one or more persons in any one accident.

This amendment updates the preamble, definitions, and applicability section of the rule to describe the amendments made by Section 19 and amends the section regarding the basics of SUM coverage to include the increased minimum SUM limits for altered motor vehicles or stretch limousines and sets forth a definition of "altered motor vehicle" or "stretch limousine" consistent with Department of Motor Vehicles regulation 15 NYCRR section 79.20(f)(2).

4. Costs: Insurers may incur additional costs because they will need to submit new rate and form filings to the Department to reflect the increased minimum SUM limits for altered motor vehicles or stretch limousines. However, this is a consequence of Section 19 of Part III of Chapter 59 of the Laws of 2019, which requires a motor vehicle liability policy to provide increased minimum SUM limits for altered motor vehicles or stretch limousines.

The Department also may incur costs for the implementation and continuation of the amendment made to the rule, because the Department will need to review the rate and form filings. However, any additional costs incurred should be minimal and the Department should be able to absorb the costs in its ordinary budget.

This rule does not impose compliance costs on any local government.

5. Local government mandates: This amendment does not impose any program, service, duty, or responsibility upon a county, city, town, village, school district, fire district, or other special district.

6. Paperwork: Insurers may need to complete additional paperwork because they will need to submit new rate and form filings to the Department. However, this is a consequence of Section 19 of Part III of Chapter 59 of the Laws of 2019, rather than the amendment.

7. Duplication: This amendment does not duplicate, overlap, or conflict with any existing state or federal rules or other legal requirements.

8. Alternatives: No significant alternatives were considered.

9. Federal standards: The amendment does not exceed any minimum standards of the federal government for the same or similar subject areas.

10. Compliance schedule: All insurers must comply with this rule for policies issued, renewed, altered, or modified on or after January 1, 2020.

*Regulatory Flexibility Analysis*

1. Effect of rule: Chapter 59, Part III, Section 19 of the Laws of 2019 amended Insurance Law section 3420(f) to require that any policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance and use of an altered motor vehicle or stretch limousine, having a seating capacity of eight or more passengers and used in the business of carrying or transporting passengers for hire, provide supplementary uninsured/underinsured motorist ("SUM") coverage for bodily injury in an amount of a combined single limit of $1,500,000 because of bodily injury or death of one or more persons in any one accident.

This amendment reflects the amendments made by Section 19 and adds a definition of "altered motor vehicle" or "stretch limousine" consistent with Department of Motor Vehicles regulation 15 NYCRR section 79.20(f)(2).

Industry asserts that certain insurers subject to the amendment are small businesses. However, the law, rather than the amendment to the rule, requires that a motor vehicle liability policy provide increased minimum SUM limits for altered motor vehicles or stretch limousines. The rule cannot vary a requirement imposed by law.

2. Compliance requirements: No local government will have to undertake any reporting, recordkeeping, or other affirmative acts to comply with this amendment because the amendment does not apply to any local government.

An insurer that is a small business affected by this rule, if any, may be subject to reporting, recordkeeping, or other compliance requirements because the insurer will need to submit new rate and form filings to the Department of Financial Services ("Department") to comply with Chapter 59, Part III, Section 19 of the Laws of 2019. However, this is a consequence of Section 19, which requires a motor vehicle liability policy to provide increased minimum SUM limits for altered motor vehicles or stretch limousines.

3. Professional services: No local government will need professional services to comply with this amendment because the amendment does not apply to any local government. No insurer that is a small business affected by this amendment, if any, should need to retain professional services, such as lawyers or auditors, to comply with this amendment.

4. Compliance costs: No local government will incur any costs to comply with this amendment because the amendment does not apply to any local government. An insurer that is a small business affected by this amendment, if any, may incur additional compliance costs because the insurer will need to submit new rate and form filings to the Department to comply with Chapter 59, Part III, Section 19 of the Laws of 2019. However, this is a consequence of Section 19, which requires a motor vehicle liability policy to provide increased minimum SUM limits for altered motor vehicles or stretch limousines.

5. Economic and technological feasibility: This amendment does not apply to any local government; therefore, no local government should experience any economic or technological impact as a result of the amendment. No insurer that is a small business affected by this amendment, if any, should experience any economic or technological impact as a result of the amendment. Furthermore, this amendment merely implements Chapter 59, Part III, Section 19 of the Laws of 2019, which requires a motor vehicle liability policy to provide increased minimum SUM limits for altered motor vehicles or stretch limousines.

6. Minimizing adverse impact: There will not be an adverse impact on any local government because the amendment does not apply to any local government. This amendment should not have an adverse impact on an insurer that is a small business affected by the amendment, if any, because the amendment uniformly affects all insurers that are subject to it and merely implements Chapter 59, Part III, Section 19 of the Laws of 2019, which requires a motor vehicle liability policy to provide increased minimum SUM limits for altered motor vehicles or stretch limousines.

7. Small business and local government participation. The Department will comply with State Administrative Procedure Act section 202-b(6) by publishing the proposed amendment in the State Register and posting the proposed amendment on its website.

*Rural Area Flexibility Analysis*

1. Types and estimated numbers of rural areas: Insurers affected by this amendment operate in every county in this state, including rural areas as defined by State Administrative Procedure Act section 102(10).

2. Reporting, recordkeeping and other compliance requirements; and professional services: An insurer, including an insurer in a rural area, may be subject to additional reporting, recordkeeping, or other compliance requirements because the insurer will need to submit new rate and form filings to the Department of Financial Services ("Department") to comply with Chapter 59, Part III, Section 19 of the Laws of 2019. However, this is a consequence of Section 19, which requires a motor vehicle liability policy to provide increased minimum supplementary uninsured/underinsured motorists ("SUM") limits for altered motor vehicles or stretch limousines.

An insurer, including an insurer in a rural area, should not need to retain professional services, such as lawyers or auditors, to comply with this amendment.

3. Costs: An insurer, including an insurer in a rural area, may incur additional compliance costs because the insurer will need to submit new rate and form filings to the Department to comply with Chapter 59, Part III, Section 19 of the Laws of 2019. However, this is a consequence of Section 19, which requires a motor vehicle liability policy to provide increased minimum SUM limits for altered motor vehicles or stretch limousines.

4. Minimizing adverse impact: This amendment uniformly affects insurers that are located in both rural and non-rural areas of New York State. The amendment should not have an adverse impact on rural areas.

5. Rural area participation: Insurers, including insurers in rural areas, will have an opportunity to participate in the rule-making process when the amendment is published in the State Register and on the Department's website.

*Job Impact Statement*

This amendment should not adversely impact jobs or employment opportunities in New York State. The amendment merely implements Chapter 59, Part III, Section 19 of the Laws of 2019, which amended Insurance Law section 3420(f) to require that any policy insuring against loss resulting from liability imposed by law for bodily injury or death suf-

fered by any natural person arising out of the ownership, maintenance and use of an altered motor vehicle or stretch limousine, having a seating capacity of eight or more passengers and used in the business of carrying or transporting passengers for hire, provide supplementary uninsured/underinsured motorist ("SUM") coverage for bodily injury in an amount of a combined single limit of $1,500,000 because of bodily injury or death of one or more persons in any one accident. The amendment also adds a definition of "altered motor vehicle" or "stretch limousine" consistent with Department of Motor Vehicles regulation 15 NYCRR section 79.20(f)(2).

# Department of Health

## EMERGENCY
## RULE MAKING

**Required Signage Warning Against the Dangers of Illegal Products**

**I.D. No.**  HLT-40-19-00002-E

**Filing No.**  1142

**Filing Date:**  2019-12-11

**Effective Date:**  2019-12-11

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* Amendment of Part 9 of Title 10 NYCRR.

*Statutory authority:* Public Health Law, section 225

*Finding of necessity for emergency rule:* Preservation of public health.

*Specific reasons underlying the finding of necessity:* As of November 20, 2019, New York State has received 191 reported cases of vaping related pulmonary disease from all regions of the state. This includes 111 confirmed and probable cases, including 2 vaping-related deaths, and 75 reports which remain under investigation. As of November 20, 2019, 2,290 confirmed and probable cases of e-cigarette, or vaping, product use associated lung injury have been reported to the federal Centers for Disease Control (CDC) from 49 states (all except Alaska), the District of Columbia, and 2 U.S. territories (Puerto Rico and U.S. Virgin Islands). Additionally, 47 deaths have been confirmed in 25 states and the District of Columbia.

These emergency regulations are necessary to address the alarming number of people who have suffered injury or died from consuming illegal e-liquids and e-cigarette products, which can be adulterated with chemicals that are dangerous or deadly when inhaled. Currently, there is an outbreak of severe lung disease among persons who use illegal e-liquids and e-cigarettes, and the Department is engaged in an educational campaign to warn people against the use of these products. By requiring sellers of legitimate products to warn consumers against the dangers of illegitimate ones, the Department expects that consumers will become more educated and that consumption of illegal products will decrease.

*Subject:* Required Signage Warning Against the Dangers of Illegal Products.

*Purpose:* To require sellers of legal e-liquids and e-cigarette products to post warning signs regarding illegal products.

*Text of emergency rule:* The title of Part 9 is amended to read as follows:
Part 9 [Synthetic Phenethylamines and Synthetic Cannabinoids Prohibited] *Prohibited Substances*

A new Subpart 9-1, titled "Synthetic Phenethylamines and Synthetic Cannabinoids Prohibited" is added and section 9.1 through 9.6 are renumbered 9-1.1 through 9-1.6.

A new Subpart 9-2, titled "Required Signage", is added to read as follows:

*Section 9-2.1 Definitions.*

*As used in this Subpart, the following terms shall have the following meanings:*

*(a) The terms "electronic cigarette" and "e-cigarette" mean an electronic device that delivers vapor which is inhaled by an individual user, and shall include any refill, cartridge and any other component of such a device; provided, however, that "electronic cigarette" and "e-cigarette" shall not mean any product approved by the United States food and drug administration as a drug or medical device, or manufactured and dispensed pursuant to title five-A of article thirty-three of the public health law.*

*(b) The terms "electronic liquid" and "e-liquid" means the solution, substance or material used in an e-cigarette and heated to produce an aerosol or emission to be inhaled by the user, whether the liquid contains nicotine or not.*

*9-2.2 Required Signage Warning Against the Dangers of Illegal Products.*

*Any person operating a place of business wherein e-cigarettes or e-liquids are sold or offered for sale shall post in a conspicuous place a sign, to be published by the Department, that warns against the dangers of using illegal e-cigarette and e-liquid products.*

*Section 9-2.3 Penalties.*

*A violation of any provision of this Subpart is subject to all civil and criminal penalties as provided for by law. For purposes of civil penalties, each day that a place of business fails to post signage required by this Subpart shall constitute a separate violation under this Subpart.*

*Section 9-2.4 Severability.*

*If any provisions of this Subpart or the application thereof to any person or entity or circumstance is adjudged invalid by a court of competent jurisdiction, such judgment shall not affect or impair the validity of the other provisions of this Subpart or the application thereof to other persons, entities, and circumstances.*

**This notice is intended** to serve only as a notice of emergency adoption. This agency intends to adopt the provisions of this emergency rule as a permanent rule, having previously submitted to the Department of State a notice of proposed rule making, I.D. No. HLT-40-19-00002-P, Issue of October 2, 2019. The emergency rule will expire February 8, 2020.

**Text of rule and any required statements and analyses may be obtained from:** Katherine Ceroalo, DOH, Bureau of Program Counsel, Reg. Affairs Unit, Room 2438, ESP Tower Building, Albany, NY 12237, (518) 473-7488, email: regsqna@health.ny.gov

**Regulatory Impact Statement**

Statutory Authority:
The Public Health and Health Planning Council (PHHPC) is authorized by Section 225 of the Public Health Law (PHL) to establish, amend and repeal sanitary regulations to be known as the State Sanitary Code (SSC) subject to the approval of the Commissioner of Health. PHL Section 225(5)(a) provides that the SSC may deal with any matter affecting the security of life and health of the people of the State of New York.

Legislative Objectives:
PHL Section 225(4) authorizes PHHPC, in conjunction with the Commissioner of Health, to protect public health and safety by amending the SSC to address issues that jeopardize health and safety. This regulation furthers the legislative objective by requiring sellers of e-liquids and e-cigarettes to post signage that warns against consumption of illegal products.

Needs and Benefits:
Regulations are necessary to address the alarming number of people that have suffered injury or died from consuming illegal e-liquids and e-cigarette products, which can be adulterated with chemicals that are dangerous or deadly when inhaled. Currently, there is an outbreak of severe lung disease among persons who use illegal e-liquids and e-cigarettes, and the Department is engaged in an educational campaign to warn people against the use of these products. By requiring sellers of legitimate products to warn consumers against the dangers of illegitimate ones, the Department expects that consumers will become more educated and that consumption of illegal products will decrease.

Costs:
Costs to Private Regulated Parties:
Requiring retailers to post a sign, published by the Department, will impose only minimal costs.

Costs to State Government and Local Government:
State and local governments will incur costs for enforcement. Exact costs cannot be predicted at this time because the extent of the need for enforcement cannot be fully determined. Some of the cost may be offset by fines and penalties imposed pursuant to the Public Health Law as well as through utilizing State Aid funding.

In addition, the Department will be transmitting the sign electronically and posting a PDF of the poster on its website, and the Department may incur minimal costs of printing and making the sign available for order. Any such costs will be managed within existing resources.

Local Government Mandates:
The SSC establishes a minimum standard for regulation of health and sanitation. Local governments can, and often do, establish more restrictive requirements that are consistent with the SSC through a local sanitary code. Local governments have the power and duty to enforce the provisions of the State Sanitary Code, including 10 NYCRR Part 9, utilizing both civil and criminal options available.

Paperwork:
This regulation does not require any additional paperwork.

Duplication:

These regulations would not duplicate any State or federal regulations regarding e-cigarettes or e-liquids.

Alternatives:

The alternative to the regulation is to not exercise the Department's authority to require these notices to the public. That alternative was rejected.

Federal Standards:

There are no federal standards regarding signage for dangerous and illegal e-liquid and e-cigarette products.

Compliance Schedule:

The regulation will be effective upon filing with the Department of State.

*Regulatory Flexibility Analysis*

Effect of Rule:

The amendment will affect the small businesses that are engaged in selling e-liquids or e-cigarettes. The NYS Vapor Association (http://nysva.org/) claims there are at least 700 "vape shops" employing 2700 persons across the state.

Local governments will incur costs for enforcement. Exact costs cannot be predicted at this time because the extent of the need for enforcement cannot be fully determined. Some of the cost may be offset by fines and penalties imposed pursuant to the Public Health Law as well as through utilizing State Aid funding.

Compliance Requirements:

Small businesses must comply with the proposed regulation by posting signage published by the Department. Local governments must comply by enforcing the proposed regulations as they are part of the State Sanitary Code.

Professional Services:

Small businesses will need no additional professional services to comply.

Compliance Costs:

Costs to Private Regulated Parties:

Requiring retailers to post a sign, published by the Department, will impose only minimal costs.

Costs to State Government and Local Government:

State and local governments will incur costs for enforcement. Exact costs cannot be predicted at this time because the extent of the need for enforcement cannot be fully determined. Some of the cost may be offset by fines and penalties imposed pursuant to the Public Health Law as well as through utilizing State Aid funding. In addition, the Department will be transmitting the sign electronically and posting a PDF of the poster on its website, and the Department may incur minimal costs of printing and making the sign available for order. Any such costs will be managed within existing resources.

Economic and Technological Feasibility:

The rule does not impose any economic or technological compliance burdens.

Minimizing Adverse Impact:

The New York State Department of Health will assist local governments by providing consultation, coordination and information and updates on its website. The Department will assist small businesses by providing the required sign electronically.

Small Business and Local Government Participation:

Small business and local governments were not consulted during the creation of this proposed rule; however, small businesses and local governments will be able to submit public comments during the public comment period.

Cure Period:

Chapter 524 of the Laws of 2011 requires agencies to include a "cure period" or other opportunity for ameliorative action to prevent the imposition of penalties on a party subject to enforcement when developing a regulation or explain in the Regulatory Flexibility Analysis why one is not included. Given the public health emergency caused by the consumption of illegal e-liquids and e-cigarettes, no cure period was included.

*Rural Area Flexibility Analysis*

No Rural Area Flexibility Analysis is required pursuant to Section 202-bb(4)(a) of the State Administration Procedure Act (SAPA). It is apparent from the nature of the proposed regulation that it will not impose any adverse impact on rural areas, and the rule does not impose any new reporting, recordkeeping or other compliance requirements on public or private entities in rural areas.

*Job Impact Statement*

No job impact statement is required pursuant to Section 201-a(2)(a) of the State Administrative Procedure Act. It is apparent, from the nature of the proposed amendment, that it will not have an adverse impact on jobs and employment opportunities.

# EMERGENCY
# RULE MAKING

**Prohibition on the Sale of Electronic Liquids with Characterizing Flavors**

**I.D. No.**  HLT-53-19-00001-E

**Filing No.**  1148

**Filing Date:**  2019-12-16

**Effective Date:**  2019-12-16

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* Addition of Subpart 9-3 to Title 10 NYCRR.

*Statutory authority:* Public Health Law, section 225

*Finding of necessity for emergency rule:* Preservation of public health.

*Specific reasons underlying the finding of necessity:* Emergency regulations are necessary to address the alarming increase of e-cigarette use among New York's youth. New York State-specific surveillance data shows that youth e-cigarette use has risen at a dramatic rate over just the last four years, driven primarily by the abundance of e-liquid flavors. Swift interventions are needed to protect our youth from a lifetime addiction to nicotine. Therefore, restricting the availability of flavored e-liquids will deter youth from initiating e-cigarette use and reduce ongoing e-cigarette use.

According to the U.S. Food and Drug Administration (FDA), the use of e-cigarettes by youth has reached epidemic proportions nationally. Since the New York State Department of Health (Department) began tracking e-cigarette use in New York State (NYS) in 2014, use by youth in high school has increased 160 percent, from 10.5 percent in 2014, to 20.6 percent in 2016, to an astounding 27.4 percent in 2018. A review of youth risk behavior data since 1997 revealed that there has never before been such a dramatic increase, in such a short amount of time, of any substance use among youth. The rate for 2018 is equivalent to youth use of combustible cigarettes in 2000 prior to the dramatic decline in the use of combustible cigarettes among NYS youth. Currently, just 4.8 percent of NYS youth smoke a combustible cigarette, one of the lowest rates in the nation. However, the rate of smoking by youth is increasing, as the rate in 2016 was 4.3 percent. Schools across New York State are finding it especially challenging to address the alarming increase in e-cigarette use by adolescents. Enforcement of minimum age statute and prohibitions on school grounds are especially difficult given that most products are sleek and easy to conceal by youth users.

The recently published National Academy of Science, Engineering, and Medicine (NASEM) report on the Public Health Consequences of E-Cigarettes concluded that there is:

3) "…substantial evidence that e-cigarette use increases risk of ever using combustible tobacco cigarettes among youth and young adults," and

4) "…moderate evidence that e-cigarette use increases the frequency and intensity of subsequent combustible tobacco cigarette smoking" among youth and young adults.

Given the recent rise in combustible cigarette use by youth and the fact that e-cigarettes are now the most commonly used tobacco product by youth in NYS, evidence exists that use of e-cigarettes could reverse the long-standing decline in combustible cigarette use and reverse the public health benefits that NYS has achieved. A biennial survey of high school youth has shown that since 2014, openness to vaping has increased from 24% to 31%. After years of decline in openness to smoking, students in NY showed an uptick in openness to combustible smoking (decreased from 22% in 2010 to 17% in 2016, increased to 19% in 2018). Openness to smoking is a predictor of smoking experimentation among youth.

The flavorant chemicals used in e-cigarettes have been approved by the FDA for ingestion only; however, these chemicals have not been approved for inhalation. Because inhalation and ingestion are very different processes, nothing about the approval for ingestion should be interpreted to suggest that these products are safe for inhalation. Food products, chemicals and flavorings that are ingested are detoxified through the liver before entering the circulatory system. Aerosols that are inhaled have a direct impact on lung tissue and directly enter the circulatory system, and are not detoxified through the liver.

Some of the over 15,000 flavors now available include fruit flavors (apple, cherry, peach, melon, strawberry), dessert flavors (vanilla custard, peanut butter cup, cream cookie, milk 'n honey), candy flavors (cinnablaze, bubblerazz, mango burst, caramel), and menthol flavor, including mint and wintergreen. More recently, manufacturers have developed "concept flavors" that may be difficult to perceive as a single distinctive flavor and the product names reflect that (e.g., Jazz, First Flight, and

**Rule Making Activities**

Unicorn Milk) and simple color names (such as Blue and Yellow) that substitute for the names of flavors (Vanilla and Banana respectively). The list of flavors continues to grow. The commonality of all these flavors is that they are distinct from plain tobacco flavor or unflavored tobacco.

The dramatic increase in use of e-cigarettes by youth is driven in large part by flavored e-liquids, and flavors are a principal reason that youth initiate and maintain e-cigarette use. In a 2019 survey of adolescent e-cigarette users in NYS, 51.8 percent preferred fruit flavors, followed by mint/menthol (34.1%) and chocolate, candy or other sweets (8.8%). In that same survey, 19.8 percent of adolescent e-cigarette users say that flavors are the reason they currently use e-cigarettes, and for 11.5 percent of adolescent e-cigarette users, flavors were the primary reason for first use. Some flavors also confer misperceptions about the relative safety of e-cigarettes. The survey also found that adolescents are more likely to believe that sweet flavors like fruit, chocolate and candy and menthol/mint flavors are less harmful than traditional flavors like tobacco.

There is also concern regarding human exposure to nicotine. Users are often unaware of how much nicotine they are consuming. The newest and most popular e-cigarettes deliver high levels of nicotine, the addictive component in all tobacco products.

Nicotine is not a benign chemical. Nicotine has deleterious effects on the developing human brain – a process that continues through the mid-twenties. According to the US Surgeon General, these deleterious effects from nicotine can lead to lower impulse control and mood disorders; disrupt attention and learning among youth and young adults; and prime the developing brain for addiction to alcohol and other drugs.

Adult use of e-cigarettes differs by age category. Adults over age 24 use e-cigarettes at very low rates; just 4.2 percent in 2018. The rate of e-cigarette use among young adults 18 to 24 years of age is about 14 percent. A lower proportion of young adults (9%) use combustible cigarettes. Almost 40 percent of the young adult smokers are concurrently using e-cigarettes, known as dual use. The same health concerns described above apply to the use of e-cigarettes by adults aged 18 to 24.

The Department will continue to monitor the impact of new legislation that took effect on November 13, 2019 that raises the legal age for purchase of e-cigarettes and related products to 21 years to determine the impact that has on youth use rates. In addition, the Department routinely conducts surveys that ask youth, among other things, their preference and current use of flavored products and will monitor the trends with respect to use of menthol, mint and other broad flavoring categories.

In addition, although it is too soon to understand the long-term health effects of a lifetime of e-cigarette use, research is beginning to accumulate about certain health effects related to cardiovascular conditions and respiratory conditions. Some e-cigarette flavors contain diacetyl, the buttery-flavored chemical that is used in foods like popcorn and caramel. When inhaled, diacetyl can cause bronchiolitis obliterans, a scarring of the tiny air sacs in the lungs, which is a serious concern that has symptoms that are similar to chronic obstructive pulmonary disease.

The Department will continue to closely monitor the research literature for health impact related to e-cigarettes. Adult smokers who want to continue to use e-cigarettes will have the option of unflavored, menthol or tobacco flavored e-cigarettes.

*Subject:* Prohibition on the Sale of Electronic Liquids with Characterizing Flavors.

*Purpose:* To prohibit the sale of electronic liquids with characterizing flavors.

*Text of emergency rule:* A new Subpart 9-3, titled "Prohibition on the Sale of Electronic Liquids with Characterizing Flavors", is added to read as follows:

*Section 9-3.1 Definitions.*

*As used in this Subpart, the following terms shall have the following meanings:*

*(a) The terms "electronic cigarette," "e-cigarette", "electronic liquid," and "e-liquid" shall have the same meanings as established in Subpart 9-2.*

*(b) The term "flavored e-liquid" means any e-liquid with a distinguishable taste or aroma, other than the taste or aroma of tobacco or menthol, imparted either prior to or during consumption of an e-cigarette or a component part thereof, including but not limited to tastes or aromas relating to any fruit, chocolate, vanilla, honey, candy, cocoa, dessert, alcoholic beverage, mint, wintergreen, herb or spice, or any "concept flavor" that imparts a taste or aroma that is distinguishable from tobacco flavor but may not relate to any particular known flavor. An e-liquid shall be presumed to be a flavored e-liquid if a tobacco retailer, manufacturer, or a manufacturer's agent or employee has made a statement or claim directed to consumers or the public, whether expressed or implied, that the product or device has a distinguishable taste or aroma other than the taste or aroma of tobacco or menthol.*

*(c) The term "possession" means having physical possession or*

*otherwise exercising dominion or control over flavored e-liquids or a product containing the same. For purposes of this definition, among other circumstances not limited to these examples, the following individuals and/or entities shall be deemed to possess flavored e-liquids, or a product containing the same: (1) any individual or entity that has an ownership interest in a retail, distribution or manufacturing establishment that possesses, distributes, sells or offers for sale flavored e-liquids, or a product containing the same; and (2) any clerk, cashier or other employee or staff of a retail establishment, where the establishment possesses, distributes, sells or offers for sale a flavored e-liquids or a product containing the same, and who interacts with customers or other members of the public.*

*Section 9-3.2 Possession, Manufacture, Distribution, Sale or Offer of Sale of Flavored E-Liquid Prohibited.*

*It shall be unlawful for any individual or entity to possess, manufacture, distribute, sell or offer for sale any flavored e-liquid or product containing the same.*

*Section 9-3.3 Penalties.*

*A violation of any provision of this Subpart is subject to all civil and criminal penalties as provided for by law. For purposes of civil penalties, each individual container or other separate unit of flavored e-liquid, product containing the same, or any component part that imparts flavor to an e-cigarette, that is possessed, manufactured, distributed, sold, or offered for sale, shall constitute a separate violation under this Subpart.*

*Section 9-3.4 Severability.*

*If any provisions of this Subpart or the application thereof to any person or entity or circumstance is adjudged invalid by a court of competent jurisdiction, such judgment shall not affect or impair the validity of the other provisions of this Subpart or the application thereof to other persons, entities, and circumstances.*

*This rule is intended* to serve only as a notice of emergency adoption. This agency intends to adopt the provisions of this emergency rule as a permanent rule, having previously submitted to the Department of State a notice of proposed rule making, I.D. No. HLT-53-19-00001-P, Issue of December 31, 2019. The emergency rule will expire February 13, 2020.

*Text of rule and any required statements and analyses may be obtained from:* Katherine Ceroalo, DOH, Bureau of Program Counsel, Reg. Affairs Unit, Room 2438, ESP Tower Building, Albany, NY 12237, (518) 473-7488, email: regsqna@health.ny.gov

*Regulatory Impact Statement*

Statutory Authority:

The Public Health and Health Planning Council (PHHPC) is authorized by Section 225 of the Public Health Law (PHL) to establish, amend and repeal sanitary regulations to be known as the State Sanitary Code (SSC) subject to the approval of the Commissioner of Health. PHL Section 225(5)(a) provides that the SSC may deal with any matter affecting the security of life and health of the people of the State of New York.

Legislative Objectives:

PHL Section 225(4) authorizes PHHPC, in conjunction with the Commissioner of Health, to protect public health and safety by amending the SSC to address issues that jeopardize health and safety. This proposed regulation furthers this legislative objective by prohibiting the possession, manufacture, distribution, sale or offer for sale of flavored electronic liquids (e-liquids) to discourage youth electronic cigarette (e-cigarette) use.

Needs and Benefits:

Emergency regulations are necessary to address the alarming increase of e-cigarette use among New York's youth. New York State-specific surveillance data shows that youth e-cigarette use has risen at a dramatic rate over just the last four years, driven primarily by the abundance of e-liquid flavors. Swift interventions are needed to protect our youth from a lifetime addiction to nicotine. Therefore, restricting the availability of flavored e-liquids will deter youth from initiating e-cigarette use and reduce ongoing e-cigarette use.

According to the U.S. Food and Drug Administration (FDA), the use of e-cigarettes by youth has reached epidemic proportions nationally. Since the New York State Department of Health (Department) began tracking e-cigarette use in New York State (NYS) in 2014, use by youth in high school has increased 160 percent, from 10.5 percent in 2014, to 20.6 percent in 2016, to an astounding 27.4 percent in 2018. A review of youth risk behavior data since 1997 revealed that there has never before been such a dramatic increase, in such a short amount of time, of any substance use among youth. The rate for 2018 is equivalent to youth use of combustible cigarettes in 2000 prior to the dramatic decline in the use of combustible cigarettes among NYS youth. Currently, just 4.8 percent of NYS youth smoke a combustible cigarette, one of the lowest rates in the nation. However, the rate of smoking by youth is increasing, as the rate in 2016 was 4.3 percent. Schools across New York State are finding it especially challenging to address the alarming increase in e-cigarette use by adolescents. Enforcement of minimum age statute and prohibitions on

school grounds are especially difficult given that most products are sleek and easy to conceal by youth users.

The recently published National Academy of Science, Engineering, and Medicine (NASEM) report on the Public Health Consequences of E-Cigarettes concluded that there is:

1) "…substantial evidence that e-cigarette use increases risk of ever using combustible tobacco cigarettes among youth and young adults," and

2) "…moderate evidence that e-cigarette use increases the frequency and intensity of subsequent combustible tobacco cigarette smoking" among youth and young adults.

Given the recent rise in combustible cigarette use by youth and the fact that e-cigarettes are now the most commonly used tobacco product by youth in NYS, evidence exists that use of e-cigarettes could reverse the long-standing decline in combustible cigarette use and reverse the public health benefits that NYS has achieved. A biennial survey of high school youth has shown that since 2014, openness to vaping has increased from 24% to 31%. After years of decline in openness to smoking, students in NY showed an uptick in openness to combustible smoking (decreased from 22% in 2010 to 17% in 2016, increased to 19% in 2018). Openness to smoking is a predictor of smoking experimentation among youth.

The flavorant chemicals used in e-cigarettes have been approved by the FDA for ingestion only; however, these chemicals have not been approved for inhalation. Because inhalation and ingestion are very different processes, nothing about the approval for ingestion should be interpreted to suggest that these products are safe for inhalation. Food products, chemicals and flavorings that are ingested are detoxified through the liver before entering the circulatory system. Aerosols that are inhaled have a direct impact on lung tissue and directly enter the circulatory system, and are not detoxified through the liver.

Some of the over 15,000 flavors now available include fruit flavors (apple, cherry, peach, melon, strawberry), dessert flavors (vanilla custard, peanut butter cup, cream cookie, milk 'n honey), candy flavors (cinnablaze, bubblerazz, mango burst, caramel), and menthol flavor, including mint and wintergreen. More recently, manufacturers have developed "concept flavors" that may be difficult to perceive as a single distinctive flavor and the product names reflect that (e.g., Jazz, First Flight, and Unicorn Milk) and simple color names (such as Blue and Yellow) that substitute for the names of flavors (Vanilla and Banana respectively). The list of flavors continues to grow. The commonality of all these flavors is that they are distinct from plain tobacco flavor or unflavored tobacco.

The dramatic increase in use of e-cigarettes by youth is driven in large part by flavored e-liquids, and flavors are a principal reason that youth initiate and maintain e-cigarette use. In a 2019 survey of adolescent e-cigarette users in NYS, 51.8 percent preferred fruit flavors, followed by mint/menthol (34.1%) and chocolate, candy or other sweets (8.8%). In that same survey, 19.8 percent of adolescent e-cigarette users say that flavors are the reason they currently use e-cigarettes, and for 11.5 percent of adolescent e-cigarette users, flavors were the primary reason for first use. Some flavors also confer misperceptions about the relative safety of e-cigarettes. The survey also found that adolescents are more likely to believe that sweet flavors like fruit, chocolate and candy and menthol/mint flavors are less harmful than traditional flavors like tobacco.

There is also concern regarding human exposure to nicotine. Users are often unaware of how much nicotine they are consuming. The newest and most popular e-cigarettes deliver high levels of nicotine, the addictive component in all tobacco products.

Nicotine is not a benign chemical. Nicotine has deleterious effects on the developing human brain – a process that continues through the mid-twenties. According to the US Surgeon General, these deleterious effects from nicotine can lead to lower impulse control and mood disorders; disrupt attention and learning among youth and young adults; and prime the developing brain for addiction to alcohol and other drugs.

Adult use of e-cigarettes differs by age category. Adults over age 24 use e-cigarettes at very low rates; just 4.2 percent in 2018. The rate of e-cigarette use among young adults 18 to 24 years of age is about 14 percent. A lower proportion of young adults (9%) use combustible cigarettes. Almost 40 percent of the young adult smokers are concurrently using e-cigarettes, known as a dual use. The same health concerns described above apply to the use of e-cigarettes by adults aged 18 to 24.

The Department will continue to monitor the impact of new legislation that takes effect on November 13, 2019 that raises the legal age for purchase of e-cigarettes and related products to 21 years to determine the impact that has on youth use rates. In addition, the Department routinely conducts surveys that ask youth, among other things, their preference and current use of flavored products and will monitor the trends with respect to use of menthol, mint and other broad flavoring categories.

In addition, although it is too soon to understand the long-term health effects of a lifetime of e-cigarette use, research is beginning to accumulate about certain health effects related to cardiovascular conditions and respiratory conditions. Some e-cigarette flavors contain diacetyl, the buttery-flavored chemical that is used in foods like popcorn and caramel. When inhaled, diacetyl can cause bronchiolitis obliterans, a scarring of the tiny air sacs in the lungs, which is a serious concern that has symptoms that are similar to chronic obstructive pulmonary disease.

In a study performed at the Stanford University School of Medicine, scientists found that menthol and cinnamon flavored e-liquids, specifically, caused the most damage to endothelial cells (the cells that line the interior of blood vessels). Some of the effects of the e-liquid flavors were independent of the nicotine concentration. Researchers concluded that flavoring liquid used in e-cigarettes may increase the risk of heart disease. In a study at the Duke University School of Medicine, high levels of a carcinogenic oil banned in the U.S. as a food additive were found in samples of menthol-flavored e-cigarette liquids and smokeless tobacco products. Concentrations of the additive pulegone were 100 to more than 1,000 times higher than the concentrations considered safe for ingested food products by the FDA.

The Department will continue to closely monitor the research literature for health impact related to e-cigarettes. Adult smokers who want to continue to use e-cigarettes will have the option of unflavored or tobacco flavored e-cigarettes.

Costs:

Costs to Private Regulated Parties:

The regulation will impose costs, in terms of lost sales, for private regulated parties whose primary product line focuses on the sale of e-cigarettes, flavored e-liquids, and related products.

Costs to State Government and Local Government:

State and local governments will incur costs for enforcement. Exact costs cannot be predicted at this time because the extent of the need for enforcement cannot be fully determined. Some of the cost however may be offset by fines and penalties imposed pursuant to the Public Health Law as well as through utilizing State Aid funding.

Local Government Mandates:

The SSC establishes a minimum standard for regulation of health and sanitation. Local governments can, and often do, establish more restrictive requirements that are consistent with the SSC through a local sanitary code. Local governments have the power and duty to enforce the provisions of the State Sanitary Code, including 10 NYCRR Part 9, utilizing both civil and criminal options available.

Paperwork:

The regulation imposes an increase of administrative paperwork for program implementation in regard to developing adequate enforcement mechanisms, record-keeping of enforcement activities and compliance history, and complaint-driven enforcement actions.

Duplication:

There are currently no State or federal regulations regarding the possession, manufacture, distribution, sale or offer for sale of e-cigarettes with characterizing flavors.

Alternatives:

The alternative to the proposed regulation is to wait for the FDA to regulate in this area; however, due to the health concerns associated with increase e-cigarette use among youths, this alternative was rejected.

Federal Standards:

The FDA has not proposed any standards for e-cigarette devices or for the constituents used in the devices to create the aerosol, including characterizing flavors. FDA only requires that those purchasing e-cigarette products be at least 18 years old, that e-liquids carry a warning statement about the addictiveness of nicotine, and that e-liquids be in child-proof containers.

Compliance Schedule:

The regulation will be effective upon filing with the Department of State.

*Regulatory Flexibility Analysis*

Effect of Rule:

The amendment will affect the small businesses that are engaged in selling flavored e-liquids or e-cigarettes. The NYS Vapor Association (http://nysva.org/) claims there are at least 700 "vape shops" employing 2700 persons across the state, although the Department cannot confirm this information as no official registration mechanism for "vape shops" currently exists.

Compliance Requirements:

Small businesses must comply with the proposed regulation by not engaging in any possession, manufacturing, distribution, sale, or offer of sale of flavored e-liquids. Local governments must comply by enforcing the proposed regulations as they are part of the State Sanitary Code.

Professional Services:

Small businesses will need no additional professional services to comply.

Compliance Costs:

Costs to Private Regulated Parties:

The regulation will impose costs, in terms of lost sales, for private

regulated parties whose primary product line focuses on the sale of e-cigarettes, flavored e-liquids, and related products.

Costs to State Government and Local Government:

State and local governments will incur costs for enforcement. Exact costs cannot be predicted at this time because the extent of the need for enforcement cannot be fully determined. Some of the cost however may be offset by fines and penalties imposed pursuant to the Public Health Law as well as through utilizing State Aid funding.

Economic and Technological Feasibility:

The rule does not impose any economic or technological compliance burdens.

Minimizing Adverse Impact:

The New York State Department of Health will assist local governments by providing consultation, coordination and information and updates on its website.

Small Business and Local Government Participation:

Small business and local governments were not consulted during the creation of this proposed rule; however, small businesses and local governments will be able to submit public comments during the public comment period.

Cure Period:

Violations of this regulation can result in civil and criminal penalties. In light of the magnitude of the public health threat posed by flavored e-liquids, the risk that some small businesses will not comply with the regulations and continue to possess, manufacture, distribute, sell or offer for sale any flavored e-liquid or product containing the same justifies the absence of a cure period.

*Rural Area Flexibility Analysis*
Pursuant to Section 202-bb of the State Administrative Procedure Act (SAPA), a rural area flexibility analysis is not required. These provisions apply uniformly throughout New York State, including all rural areas. The proposed rule will not impose an adverse economic impact on rural areas, nor will it impose any additional reporting, record keeping or other compliance requirements on public or private entities in rural areas.

*Job Impact Statement*
Nature of Impact:

E-cigarettes and e-liquids are sold in many types of retail outlets. The impact on businesses where e-cigarette sales is not the focus of the business (e.g., convenience store) will have no job impact from this regulation as e-cigarettes make up only a small percentage of their sales. Some e-cigarette retailers focus the bulk of their business on e-cigarettes and e-liquids and these outlets will be affected by this regulation. Although they will still be able to sell e-cigarette devices and unflavored, menthol or tobacco flavored e-liquid, the prohibition on flavored e-liquids is likely to affect these businesses. The Department does not have an accurate estimate of the number of stores affected since the registration requirement for e-cigarette retailers will not be effective until December 1, 2019.

Categories and Numbers Affected:

The main category affected by this regulation is the store that focuses its primary business on the sale of e-cigarette devices and e-liquids. The NYS Vapor Association (http://nysva.org/) claims there are at least 700 of such "vape shops" employing 2700 persons across the state, although the Department cannot confirm this information as no official registration mechanism for "vape shops" currently exists. Because of the lack of data about the number of these stores, it is not possible to accurately estimate the number of jobs affected.

Regions of Adverse Impact:

The Department anticipates any jobs or employment impacts will occur equally throughout the regions of the state.

Minimizing Adverse Impact:

The Department will consider different types/levels of enforcement while retailers adapt to the new regulation.

## NOTICE OF ADOPTION

### School Immunization Requirements

**I.D. No.**  HLT-36-19-00005-A

**Filing No.**  1152

**Filing Date:**  2019-12-17

**Effective Date:**  2019-12-31

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:
*Action taken:* Amendment of Subpart 66-1 of Title 10 NYCRR.
*Statutory authority:* Public Health Law, sections 2164(10) and 2168(13)
*Subject:* School Immunization Requirements.

*Purpose:* To be consistent with national immunization regulations and guidelines and to define "may be detrimental to the child's health".
*Substance of final rule:* This regulation will amend Subpart 66-1 (School Immunization Requirements) to conform to recent amendments to Sections 2164 and 2168 of the Public Health Law (PHL). In addition, these amendments make the regulations consistent with national immunization recommendations and guidelines. The regulations also define the phrase "may be detrimental to the child's health" for purposes of medical exemptions to vaccination requirements. The regulations will be effective upon publication of a Notice of Adoption in the New York State Register.

Technical amendments throughout Section 66-1.1 update references to the "Advisory Committee on Immunization Practices" (ACIP) schedule to its current title, the "Advisory Committee on Immunization Practices Recommended Child and Adolescent Immunization Schedule for ages 18 years or younger." Technical amendments also clarify the grades covered by the varicella, poliomyelitis and vaccine interval requirements.

Amendments to subdivision (g) of section 66-1.1 clarify that positive serologic tests for all three serotypes of poliomyelitis performed prior to September 1, 2019 may be accepted as evidence of poliomyelitis immunity. However, serologic tests against poliomyelitis performed on or after September 1, 2019 may not be accepted in place of poliomyelitis vaccination, in accordance with current ACIP guidance. Similar amendments are made to section 66-1.6 to incorporate these changes into the certificate of immunization.

A new subdivision (k) of section 66-1.1 adds a definition of laboratory confirmation of measles, mumps, rubella and varicella infections, and amendments to subdivision (g) of that section expand the definition of immunity to include laboratory confirmation against these diseases. Laboratory confirmation of immunity means a positive culture or polymerase chain reaction test against measles, mumps, rubella or varicella, or a positive blood test for Immunoglobulin M against measles or rubella, where such positive laboratory test is not otherwise explained by recent vaccination. Amendments to section 66-1.6 add laboratory confirmation of measles, mumps, rubella and varicella to the certificate of immunization.

A new subdivision (l) of section 66-1.1 defines "may be detrimental to the child's health" to mean that a physician has determined that a child has a medical contraindication or precaution to a specific immunization consistent with ACIP guidance. Amendments to subparagraph (ii) of paragraph (4) of subdivision (c) of section 66-1.2 require that the reason why an immunization is detrimental to a child's health be documented in the New York State Immunization Information System. Additionally, amendments to subdivision (c) of section 66-1.3 require the use of medical exemption forms approved by the New York State Department of Health or New York City Department of Education; a written statement from a physician is no longer allowed.

Finally, subdivision (d) of section 66-1.3 is repealed, and amendments to section 66-1.10 remove references to subdivision (d) of section 66-1.3.

*Final rule as compared with last published rule:* Nonsubstantive changes were made in sections 66-1.1(g)(4), (h), (j)(2), (4) and 66-1.2(c)(4)(ii).

*Text of rule and any required statements and analyses may be obtained from:* Katherine Ceroalo, DOH, Bureau of Program Counsel, Reg. Affairs Unit, Room 2438, ESP Tower Building, Albany, NY 12237, (518) 473-7488, email: regsqna@health.ny.gov

*Revised Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement*
Changes made to the last published rule does not necessitate revision to the previously published Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement.

*Initial Review of Rule*
As a rule that requires a RFA, RAFA or JIS, this rule will be initially reviewed in the calendar year 2022, which is no later than the 3rd year after the year in which this rule is being adopted.

*Assessment of Public Comment*
The New York State Department of Health (Department) received comments from healthcare professional organizations, healthcare providers, schools and the general public regarding the proposed amendments to Subpart 66-1 of Title 10 of the New York Codes, Rules and Regulations, relating to school immunization requirements.

The NYS American Academy of Pediatrics, the NYS Academy of Family Physicians, the NYS Association of County Health Officials, the American Nurses' Association, the Medical Society of the State of New York, the NYS Society of Dermatology and Dermatologic Surgery, and private individuals all expressed support of the regulations.

Additional comments and the Department's responses are summarized below.

Comment: Under section 66 1.1(j)(2) in the proposed regulation, a child is in process when "a child is obtaining serologic tests within 14 days of notification of the parent/guardian that such testing is requested." Some commenters suggested that this language is unclear.

Response: The Department made a technical amendment to the final rule, in section 66-1.1(j)(2), to clarify that a child is "in process" if the "child has had blood drawn for a serologic test and is awaiting test results within 14 days after the blood draw."

Comment: Under section 66 1.1(j)(4) in the proposed regulation, a child is no longer "in process" and must be excluded from school "within 14 days of the missed dose" unless otherwise exempt. Some commenters stated that this language is unclear.

Response: The Department made a technical amendment to the final rule, in section 66-1.1(j)(4), to clarify that a child is no longer in process and must be excluded from school "within 14 days after the minimum interval identified by the ACIP catch-up schedule."

Comment: Some commenters argued that the repeal of non-medical exemptions to school immunization requirements infringes students' and their parents' rights to religious liberty.

Response: Non-medical exemptions to the requirements of Public Health Law (PHL) § 2164 were repealed by the enactment of Chapter 35 of the Laws of 2019. The Department respectfully disagrees that Chapter 35 of the Laws of 2019 unconstitutionally infringes religious freedom under either the United States or the New York State Constitution.

Comment: Commenters stated that the repeal of non-medical exemptions is causing financial and emotional distress.

Response: Families experiencing distress related to homeschooling may enroll their children in school provided that their children comply with PHL § 2164 and other requirements established by the New York State Education Department and any relevant school board or individual school policies.

Comment: Some commenters argue that the Department is incorrectly interpreting the ACIP schedule.

Response: The federal Centers for Disease Control and Prevention (CDC) has issued guidance stating that "[a]s a general rule, infants or children who are more than 1 month or 1 dose behind schedule should be on an accelerated schedule, which means the intervals between doses should be reduced to the minimum allowable."

Comment: Some commenters stated that the amended requirements for medical exemptions are too strict.

Response: The definition of "[m]ay be detrimental to the child's health" includes medical contraindications or precautions to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standard of care. The regulations do not remove a physician's ability to issue a medical exemption.

Comment: Some commenters asked that the Department provide additional time for children to be vaccinated before enforcing school immunization requirements.

Response: Non-medical exemptions to the requirements of PHL § 2164 were repealed by the enactment of Chapter 35 of the Laws of 2019, which went into effect immediately upon enactment of the law.

Comment: Some commenters argued that only religious exemptions to measles-containing vaccines should be repealed.

Response: The repeal of non-medical exemptions to the requirements of PHL § 2164, enacted in Chapter 35 of the Laws of 2019 applies to all school immunization requirements, not only measles immunizations.

Comment: Some commenters stated that unvaccinated children do not pose a risk to the public health and that the Department has not sufficiently documented vaccine preventable disease transmission from unvaccinated individuals to other people.

Response: An analysis of confirmed cases of measles in New York State outside of New York City found that 80% of confirmed cases occurred in children less than 18 years of age, and that 92% of the children with confirmed measles had no or unknown MMR vaccine status.

Comment: Several commenters questioned the safety of vaccines.

Response: The United States' long-standing vaccine safety system ensures vaccines are as safe as possible and that national vaccine recommendations are modified as appropriate when new vaccine effectiveness or safety data becomes available. The CDC, American Academy of Pediatrics, American Association of Family Physicians, American College of Physicians and other reliable healthcare and public health associations all agree that vaccines are a safe, effective and important preventive measure.

Comment: Some commenters questioned why children are required to be immune to types 2 or 3 poliovirus.

Response: The CDC and ACIP continue to recommend that children be immune to all three types of poliomyelitis.

Comment: One commenter noted that PHL § 2168 does not require reporting of the reasons for medical exemptions in the New York State Immunization Information System (NYSIIS).

Response: Regulations in place prior to the emergency adoption of these regulations in August 2019, already required that "[f]or individuals exempt from administration of vaccines, providers must submit patient information, including the reason for the exemption," to NYSIIS.

Comment: Some commenters noted that the regulations only require immunizations for students but not for teachers, staff and visitors to schools nor for students aged eighteen years or older.

Response: PHL § 2164 only requires immunizations for children between the ages of two months and eighteen years entering or attending public, private or parochial child caring center, day nursery, day care agency, nursery school, kindergarten, elementary, intermediate or secondary school.

# PROPOSED RULE MAKING
# NO HEARING(S) SCHEDULED

**Prohibition on the Sale of Electronic Liquids with Characterizing Flavors**

**I.D. No.**  HLT-53-19-00001-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Addition of Subpart 9-3 to Title 10 NYCRR.

*Statutory authority:* Public Health Law, section 225

*Subject:* Prohibition on the Sale of Electronic Liquids with Characterizing Flavors.

*Purpose:* To prohibit the sale of electronic liquids with characterizing flavors.

*Text of proposed rule:* A new Subpart 9-3, titled "Prohibition on the Sale of Electronic Liquids with Characterizing Flavors", is added to read as follows:

*Section 9-3.1 Definitions.*

*As used in this Subpart, the following terms shall have the following meanings:*

*(a) The terms "electronic cigarette," "e-cigarette", "electronic liquid," and "e-liquid" shall have the same meanings as established in Subpart 9-2.*

*(b) The term "flavored e-liquid" means any e-liquid with a distinguishable taste or aroma, other than the taste or aroma of tobacco, imparted either prior to or during consumption of an e-cigarette or a component part thereof, including but not limited to tastes or aromas relating to any fruit, chocolate, vanilla, honey, candy, cocoa, dessert, alcoholic beverage, mint, wintergreen, menthol, herb or spice, or any "concept flavor" that imparts a taste or aroma that is distinguishable from tobacco flavor but may not relate to any particular known flavor. An e-liquid shall be presumed to be a flavored e-liquid if a tobacco retailer, manufacturer, or a manufacturer's agent or employee has made a statement or claim directed to consumers or the public, whether expressed or implied, that the product or device has a distinguishable taste or aroma other than the taste or aroma of tobacco.*

*(c) The term "possession" means having physical possession or otherwise exercising dominion or control over flavored e-liquids or a product containing the same. For purposes of this definition, among other circumstances not limited to these examples, the following individuals and/or entities shall be deemed to possess flavored e-liquids, or a product containing the same: (1) any individual or entity that has an ownership interest in a retail, distribution or manufacturing establishment that possesses, distributes, sells or offers for sale flavored e-liquids, or a product containing the same, for purposes of retail sale in New York State; and (2) any clerk, cashier or other employee or staff of a retail establishment, where the establishment possesses, distributes, sells or offers for sale a flavored e-liquids or a product containing the same, and who interacts with customers or other members of the public.*

*Section 9-3.2 Possession, Manufacture, Distribution, Sale or Offer of Sale of Flavored E-Liquid Prohibited.*

*It shall be unlawful for any individual or entity to possess, manufacture, distribute, sell or offer for sale any flavored e-liquid or product containing the same, for purposes of retail sale in New York State.*

*Section 9-3.3 Exemptions. The provisions of this Subpart prohibiting the possession of any flavored e-liquid or product containing the same shall not apply to:*

*(a) individuals who are in possession of flavored e-liquids or products containing the same for personal use;*

*(b) public officers or their employees in the lawful performance of their official duties requiring possession of flavored e-liquids or products containing the same;*

*(c) temporary or incidental possession of flavored e-liquids or products containing the same by employees or agents of persons lawfully entitled to possession, or persons whose possession is for the purpose of aiding public officers in performing their official duties;*

*(d) a person in the employ of the United States government or of any state, territory, district, county, municipal or insular government, obtain-*

*ing or possessing flavored e-liquids or products containing the same, by reason of his or her official duties;*

*(e) common carriers or warehouse worker, while engaged in lawfully transporting or storing of flavored e-liquids or products containing the same, or to any employee of the same within the scope of his or her employment; and*

*(f) an accredited college or university, laboratory, hospital, medical center or other institution that is possessing flavored e-liquids or products containing the same for health, scientific or other research or experimental purposes.*

*Section 9-3.4 Penalties.*

*A violation of any provision of this Subpart is subject to all civil and criminal penalties as provided for by law. For purposes of civil penalties, each individual container or other separate unit of flavored e-liquid, product containing the same, or any component part that imparts flavor to an e-cigarette, that is possessed, manufactured, distributed, sold, or offered for sale, shall constitute a separate violation under this Subpart.*

*Section 9-3.5 Severability.*

*If any provisions of this Subpart or the application thereof to any person or entity or circumstance is adjudged invalid by a court of competent jurisdiction, such judgment shall not affect or impair the validity of the other provisions of this Subpart or the application thereof to other persons, entities, and circumstances.*

***Text of proposed rule and any required statements and analyses may be obtained from:*** Katherine Ceroalo, DOH, Bureau of Program Counsel, Reg. Affairs Unit, Room 2438, ESP Tower Building, Albany, NY 12237, (518) 473-7488, email: regsqna@health.ny.gov

***Data, views or arguments may be submitted to:*** Same as above.

***Public comment will be received until:*** 60 days after publication of this notice.

***This rule was not under consideration at the time this agency submitted its Regulatory Agenda for publication in the Register.***

**Regulatory Impact Statement**

Statutory Authority:

The Public Health and Health Planning Council (PHHPC) is authorized by Section 225 of the Public Health Law (PHL) to establish, amend and repeal sanitary regulations to be known as the State Sanitary Code (SSC) subject to the approval of the Commissioner of Health. PHL Section 225(5)(a) provides that the SSC may deal with any matter affecting the security of life and health of the people of the State of New York.

Legislative Objectives:

PHL Section 225(4) authorizes PHHPC, in conjunction with the Commissioner of Health, to protect public health and safety by amending the SSC to address issues that jeopardize health and safety. This proposed regulation furthers this legislative objective by prohibiting the possession, manufacture, distribution, sale or offer for sale of flavored electronic liquids (e-liquids) to discourage youth electronic cigarette (e-cigarette) use.

Needs and Benefits:

These regulations are necessary to address the alarming increase of e-cigarette use among New York's youth. New York State-specific surveillance data shows that youth e-cigarette use has risen at a dramatic rate over just the last four years, driven primarily by the abundance of e-liquid flavors. Swift interventions are needed to protect our youth from a lifetime addiction to nicotine. Therefore, restricting the availability of flavored e-liquids will deter youth from initiating e-cigarette use and reduce ongoing e-cigarette use.

According to the U.S. Food and Drug Administration (FDA), the use of e-cigarettes by youth has reached epidemic proportions nationally. Since the New York State Department of Health (Department) began tracking e-cigarette use in New York State (NYS) in 2014, use by youth in high school has increased 160 percent, from 10.5 percent in 2014, to 20.6 percent in 2016, to an astounding 27.4 percent in 2018. A review of youth risk behavior data since 1997 revealed that there has never before been such a dramatic increase, in such a short amount of time, of any substance use among youth. The rate for 2018 is equivalent to youth use of combustible cigarettes in 2000 prior to the dramatic decline in the use of combustible cigarettes among NYS youth. Currently, just 4.8 percent of NYS youth smoke a combustible cigarette, one of the lowest rates in the nation. However, the rate of smoking by youth is increasing, as the rate in 2016 was 4.3 percent. Schools across New York State are finding it especially challenging to address the alarming increase in e-cigarette use by adolescents. Enforcement of minimum age statute and prohibitions on school grounds are especially difficult given that most products are sleek and easy to conceal by youth users.

The recently published National Academy of Science, Engineering, and Medicine (NASEM) report on the Public Health Consequences of E-Cigarettes concluded that there is:

1) "…substantial evidence that e-cigarette use increases risk of ever using combustible tobacco cigarettes among youth and young adults," and

2) "…moderate evidence that e-cigarette use increases the frequency and intensity of subsequent combustible tobacco cigarette smoking" among youth and young adults.

Given the recent rise in combustible cigarette use by youth and the fact that e-cigarettes are now the most commonly used tobacco product by youth in NYS, evidence exists that use of e-cigarettes could reverse the long-standing decline in combustible cigarette use and reverse the public health benefits that NYS has achieved. A biennial survey of high school youth has shown that since 2014, openness to vaping has increased from 24% to 31%. After years of decline in openness to smoking, students in NY showed an uptick in openness to combustible smoking (decreased from 22% in 2010 to 17% in 2016, increased to 19% in 2018). Openness to smoking is a predictor of smoking experimentation among youth.

The flavorant chemicals used in e-cigarettes have been approved by the FDA for ingestion only; however, these chemicals have not been approved for inhalation. Because inhalation and ingestion are very different processes, nothing about the approval for ingestion should be interpreted to suggest that these products are safe for inhalation. Food products, chemicals and flavorings that are ingested are detoxified through the liver before entering the circulatory system. Aerosols that are inhaled have a direct impact on lung tissue and directly enter the circulatory system, and are not detoxified through the liver.

Some of the over 15,000 flavors now available include fruit flavors (apple, cherry, peach, melon, strawberry), dessert flavors (vanilla custard, peanut butter cup, cream cookie, milk 'n honey), candy flavors (cinnablaze, bubblerazz, mango burst, caramel), and menthol flavor, including mint and wintergreen. More recently, manufacturers have developed "concept flavors" that may be difficult to perceive as a single distinctive flavor and the product names reflect that (e.g., Jazz, First Flight, and Unicorn Milk) and simple color names (such as Blue and Yellow) that substitute for the names of flavors (Vanilla and Banana respectively). The list of flavors continues to grow. The commonality of all these flavors is that they are distinct from plain tobacco flavor or unflavored tobacco.

The dramatic increase in use of e-cigarettes by youth is driven in large part by flavored e-liquids, and flavors are a principal reason that youth initiate and maintain e-cigarette use. In a 2019 survey of adolescent e-cigarette users in NYS, 51.8 percent preferred fruit flavors, followed by mint/menthol (34.1%) and chocolate, candy or other sweets (8.8%). In that same survey, 19.8 percent of adolescent e-cigarette users say that flavors are the reason they currently use e-cigarettes, and for 11.5 percent of adolescent e-cigarette users, flavors were the primary reason for first use. Some flavors also confer misperceptions about the relative safety of e-cigarettes. The survey also found that adolescents are more likely to believe that sweet flavors like fruit, chocolate and candy and menthol/mint flavors are less harmful than traditional flavors like tobacco.

There is also concern regarding human exposure to nicotine. Users are often unaware of how much nicotine they are consuming. The newest and most popular e-cigarettes deliver high levels of nicotine, the addictive component in all tobacco products.

Nicotine is not a benign chemical. Nicotine has deleterious effects on the developing human brain – a process that continues through the mid-twenties. According to the US Surgeon General, these deleterious effects from nicotine can lead to lower impulse control and mood disorders; disrupt attention and learning among youth and young adults; and prime the developing brain for addiction to alcohol and other drugs.

Adult use of e-cigarettes differs by age category. Adults over age 24 use e-cigarettes at very low rates; just 4.2 percent in 2018. The rate of e-cigarette use among young adults 18 to 24 years of age is about 14 percent. A lower proportion of young adults (9%) use combustible cigarettes. Almost 40 percent of the young adult smokers are concurrently using e-cigarettes, known as dual use. The same health concerns described above apply to the use of e-cigarettes by adults aged 18 to 24.

The Department will continue to monitor the impact of new legislation that takes effect on November 13, 2019 that raises the legal age for purchase of e-cigarettes and related products to 21 years to determine the impact that has on youth use rates. In addition, the Department routinely conducts surveys that ask youth, among other things, their preference and current use of flavored products and will monitor the trends with respect to use of menthol, mint and other broad flavoring categories.

In addition, although it is too soon to understand the long-term health effects of a lifetime of e-cigarette use, research is beginning to accumulate about certain health effects related to cardiovascular conditions and respiratory conditions. Some e-cigarette flavors contain diacetyl, the buttery-flavored chemical that is used in foods like popcorn and caramel. When inhaled, diacetyl can cause bronchiolitis obliterans, a scarring of the tiny air sacs in the lungs, which is a serious concern that has symptoms that are similar to chronic obstructive pulmonary disease.

In a study performed at the Stanford University School of Medicine, scientists found that menthol and cinnamon flavored e-liquids, specifically, caused the most damage to endothelial cells (the cells that line the

interior of blood vessels). Some of the effects of the e-liquid flavors were independent of the nicotine concentration. Researchers concluded that flavoring liquid used in e-cigarettes may increase the risk of heart disease. In a study at the Duke University School of Medicine, high levels of a carcinogenic oil banned in the U.S. as a food additive were found in samples of menthol-flavored e-cigarette liquids and smokeless tobacco products. Concentrations of the additive pulegone were 100 to more than 1,000 times higher than the concentrations considered safe for ingested food products by the FDA.

The Department will continue to closely monitor the research literature for health impact related to e-cigarettes. Adult smokers who want to continue to use e-cigarettes will have the option of unflavored or tobacco flavored e-cigarettes.

Costs:

Costs to Private Regulated Parties:

The regulation will impose costs, in terms of lost sales, for private regulated parties whose primary product line focuses on the sale of e-cigarettes, flavored e-liquids, and related products.

Costs to State Government and Local Government:

State and local governments will incur costs for enforcement. Exact costs cannot be predicted at this time because the extent of the need for enforcement cannot be fully determined. Some of the cost however may be offset by fines and penalties imposed pursuant to the Public Health Law as well as through utilizing State Aid funding.

Local Government Mandates:

The SSC establishes a minimum standard for regulation of health and sanitation. Local governments can, and often do, establish more restrictive requirements that are consistent with the SSC through a local sanitary code. Local governments have the power and duty to enforce the provisions of the State Sanitary Code, including 10 NYCRR Part 9, utilizing both civil and criminal options available.

Paperwork:

The regulation imposes an increase of administrative paperwork for program implementation in regard to developing adequate enforcement mechanisms, record-keeping of enforcement activities and compliance history, and complaint-driven enforcement actions.

Duplication:

There are currently no State or federal regulations regarding the possession, manufacture, distribution, sale or offer for sale of e-cigarettes with characterizing flavors.

Alternatives:

The alternative to the proposed regulation is to wait for the FDA to regulate in this area; however, due to the health concerns associated with increase e-cigarette use among youths, this alternative was rejected.

Federal Standards:

The FDA has not proposed any standards for e-cigarette devices or for the constituents used in the devices to create the aerosol, including characterizing flavors. FDA only requires that those purchasing e-cigarette products be at least 18 years old, that e-liquids carry a warning statement about the addictiveness of nicotine, and that e-liquids be in child-proof containers.

Compliance Schedule:

The regulation will be effective upon publication of a Notice of Adoption in the New York State Register.

*Regulatory Flexibility Analysis*

Effect of Rule:

The amendment will affect the small businesses that are engaged in selling flavored e- liquids or e-cigarettes. The NYS Vapor Association (http://nysva.org/) claims there are at least 700 "vape shops" employing 2700 persons across the state, although the Department cannot confirm this information as no official registration mechanism for "vape shops" currently exists.

Compliance Requirements:

Small businesses must comply with the proposed regulation by not engaging in any possession, manufacturing, distribution, sale, or offer of sale of flavored e-liquids. Local governments must comply by enforcing the proposed regulations as they are part of the State Sanitary Code.

Professional Services:

Small businesses will need no additional professional services to comply.

Compliance Costs:

Costs to Private Regulated Parties:

The regulation will impose costs, in terms of lost sales, for private regulated parties whose primary product line focuses on the sale of e-cigarettes, flavored e-liquids, and related products.

Costs to State Government and Local Government:

State and local governments will incur costs for enforcement. Exact costs cannot be predicted at this time because the extent of the need for enforcement cannot be fully determined. Some of the cost however may be offset by fines and penalties imposed pursuant to the Public Health Law as well as through utilizing State Aid funding.

Economic and Technological Feasibility:

The rule does not impose any economic or technological compliance burdens.

Minimizing Adverse Impact:

The New York State Department of Health will assist local governments by providing consultation, coordination and information and updates on its website.

Small Business and Local Government Participation:

Small business and local governments were not consulted during the creation of this proposed rule; however, small businesses and local governments will be able to submit public comments during the public comment period.

Cure Period:

Violations of this regulation can result in civil and criminal penalties. In light of the magnitude of the public health threat posed by flavored e-liquids, the risk that some small businesses will not comply with the regulations and continue to possess, manufacture, distribute, sell or offer for sale any flavored e-liquid or product containing the same justifies the absence of a cure period.

*Rural Area Flexibility Analysis*

Pursuant to Section 202-bb of the State Administrative Procedure Act (SAPA), a rural area flexibility analysis is not required. These provisions apply uniformly throughout New York State, including all rural areas. The proposed rule will not impose an adverse economic impact on rural areas, nor will it impose any additional reporting, record keeping or other compliance requirements on public or private entities in rural areas.

*Job Impact Statement*

Nature of the Impact:

E-cigarettes and e-liquids are sold in many types of retail outlets. The impact on businesses where e-cigarette sales is not the focus of the business (e.g., convenience store) will have no job impact from this regulation as e-cigarettes make up only a small percentage of their sales. Some e-cigarette retailers focus the bulk of their business on e-cigarettes and e-liquids and these outlets will be affected by this regulation. Although they will still be able to sell e-cigarette devices and unflavored or tobacco flavored e-liquid, the prohibition on flavored e-liquids is likely to affect these businesses. The Department does not have an accurate estimate of the number of stores affected since the registration requirement for e-cigarette retailers will not be effective until December 1, 2019.

Categories and Numbers Affected:

The main category affected by this regulation is the store that focuses its primary business on the sale of e-cigarette devices and e-liquids. The NYS Vapor Association (http://nysva.org/) claims there are at least 700 of such "vape shops" employing 2700 persons across the state, although the Department cannot confirm this information as no official registration mechanism for "vape shops" currently exists. Because of the lack of data about the number of these stores, it is not possible to accurately estimate the number of jobs affected.

Regions of Adverse Impact:

The Department anticipates any jobs or employment impacts will occur equally throughout the regions of the state.

Minimizing Adverse Impact:

The Department will consider different types/levels of enforcement while retailers adapt to the new regulation.

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Cardiac Services**

**I.D. No.**  HLT-53-19-00011-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Amendment of section 709.14 of Title 10 NYCRR.

*Statutory authority:* Public Health Law, section 2803

*Subject:* Cardiac Services.

*Purpose:* To amend existing Certificate of Need requirements for approval of adult cardiac surgery centers.

*Text of proposed rule:* Paragraph (3) of subdivision (b) of section 709.14 is amended to read as follows:

(3) A facility proposing to initiate an adult cardiac surgery center must document a cardiac patient base and current cardiac interventional referrals sufficient to support a projected annual volume of at least [500] *300* cardiac surgery cases and a projected annual volume of at least 36 emergency PCI cases within two years of approval. The criteria for evaluating the need for additional adult cardiac surgery centers within the

planning area shall include consideration of appropriate access and utilization, and the ability of existing services within the planning area to provide such services. [Approval of additional adult cardiac surgery center services may be considered when each existing adult cardiac surgery center in the planning area is operating and expected to continue to operate at a level of at least 500 cardiac surgical procedures per year.] Waiver of this [planning area volume] requirement may be considered if:

(i) the HSA region's age adjusted, population based use rate is less than the statewide average use rate; and

(ii) existing adult cardiac surgery centers in the applicant facility's planning area do not have the capacity or cannot adequately address the need for additional cardiac surgical procedures, such determinations to be based on factors including but not necessarily limited to analyses of recent volume trends, analyses of Cardiac Reporting System data, and review by the area Health Systems Agency(s); and

(iii) existing cardiac surgical referral patterns within the planning area indicate that approval of an additional service at the applicant facility will not jeopardize the minimum volume required at other existing cardiac surgical programs.

***Text of proposed rule and any required statements and analyses may be obtained from:*** Katherine Ceroalo, DOH, Bureau of Program Counsel, Reg. Affairs Unit, Room 2438, ESP Tower Building, Albany, NY 12237, (518) 473-7488, email: regsqna@health.ny.gov

***Data, views or arguments may be submitted to:*** Same as above.

***Public comment will be received until:*** 60 days after publication of this notice.

*Regulatory Impact Statement*

Statutory Authority:

Public Health Law (PHL) § 2803(2) authorizes the Public Health and Health Planning Council (PHHPC) to adopt and amend rules and regulations, subject to the approval of the Commissioner, to implement the purposes and provisions of PHL Article 28, including the establishment of minimum standards governing the operation of health care facilities.

Legislative Objectives:

The legislative objectives of PHL Article 28 include the protection and promotion of the health of the residents of the State by requiring the efficient provision and proper utilization of health services, of the highest quality at a reasonable cost.

Needs and Benefits:

Section 709.14 of Title 10 of the New York Codes Rules and Regulations (10 NYCRR) provides standards to be used in evaluating certificate of need (CON) applications for cardiac catheterization laboratory and cardiac surgery services in NYS hospitals. When used in conjunction with 10 NYCRR § 709.1 they represent a set of planning principles and decision-making tools for directing the distribution of these services, with a goal of ensuring appropriate access to high quality services while avoiding the unnecessary duplication of resources.

The volume thresholds for determining Public Need for additional adult cardiac surgery centers were last updated in 1994. A Regulatory Modernization Initiative convened by the Department of Health (Department) in the Fall of 2017 with industry and stakeholder input considered advances in technology and medical practice, as well as data analysis conducted by the Department's Cardiac Services Program located at the University at Albany School of Public Health. The recommendations resulting from the Regulatory Modernization Initiative form the basis for these amendments.

Although there is a clear volume-outcome relationship in the field of cardiac surgery, the existence of high-performing programs with relatively low case volumes is well established. The data analysis conducted by the Cardiac Services Program supported retaining but lowering the volume thresholds for Cardiac Surgery Center approval, effectively allowing the consideration of additional programs that would not be permissible under the 1994 thresholds. Using data from the Cardiac Surgery Reporting System, which is the Department's clinical registry for cardiac surgery, this analysis found that risk-adjusted mortality was statistically significantly higher than the statewide average when program volume was less than 300 cases per year. The Department determined that this volume reflects the appropriate threshold for minimum volume requirements. The result of reducing the volume requirements for Cardiac Surgery Centers in accordance with this analysis will be increased access for consumers to safe, quality cardiac surgery services in local communities as part of regionally integrated delivery system models.

Costs:

Becoming a Cardiac Surgery Center is a voluntary choice for hospitals, not a mandate. There are approximately 39 hospitals that are currently Cardiac Surgery Centers out of 223 hospitals in New York State. The cost of implementation and compliance with these proposed regulations is expected to be minimal for the affected entities already caring for these patients. Hospitals that choose to provide such services, and that have not done so previously, will need to adhere to programmatic standards set

forth in 10 NYCRR §§ 405.29 and 711.4 and may incur costs to upgrade their services. Hospitals approved as Cardiac Surgery Centers will be required to provide data to the Cardiac Reporting System as those who already provide this care do already.

Cost to State and Local Government:

Any hospital in New York State that is operated by State or local government and that voluntarily chooses to become a cardiac surgery center will need to comply with these provisions. Costs for these hospitals will be the same as for any hospital providing these services in New York State.

Cost to the Department of Health:

The Department will need to monitor and provide surveillance and oversight for the system of care provided to these patients. The Department is not expected to incur any additional costs, as existing staff and resources will be utilized to conduct such surveillance and oversight.

Local Government Mandates:

This proposed regulation does not impose any new programs, services, duties or responsibilities on local government.

Paperwork:

Hospitals seeking to become a Cardiac Surgery Center will continue to be required to submit a Certificate of Need application to the Department and, once approved, will continue to be required to report data to the Department.

Duplication:

This regulation does not duplicate any other state or federal law or regulation.

Alternatives:

The Department considered a full range of cardiac surgery case volumes for approval of a new program. Although the Cardiac Surgery and PCI Services Health Care Regulatory Modernization Initiative workgroup recommended the elimination of the requirement for 500 cardiac surgery cases to become a Cardiac Surgery Center, the workgroup did not recommend an alternative number. The Department concluded that 300 cases was an appropriate number given medical advances in cardiac care since the requirement was last amended, as well as recent studies on the link between cardiac surgery volumes and quality outcomes.

Federal Standards:

This regulatory amendment does not exceed any minimum standards of the federal government for the same or similar subject areas.

Compliance Schedule:

This proposal will go into effect upon a Notice of Adoption in the New York State Register.

*Regulatory Flexibility Analysis*

Effect of Rule:

These proposed regulations would allow any facility defined as a general hospital pursuant to PHL § 2801(10), including those operated by a small business or local government, to initiate a Cardiac Surgery Center if they can demonstrate a patient base sufficient to support 300 cardiac surgery cases annually. Three hospitals that will be affected by this proposed regulation are small businesses (defined as 100 employees or less).

Compliance Requirements:

Becoming a Cardiac Surgery Center is a voluntary choice for hospitals, not a mandate. Hospitals, including hospitals that are small businesses, that choose to provide such services, and that have not done so previously, will need to adhere to programmatic standards set forth in 10 NYCRR §§ 405.29 and 711.4. Hospitals approved as Cardiac Surgery Centers will be required to provide data to the Cardiac Reporting System as those who already provide this care do already.

Professional Services:

This proposed regulation does not appreciably change the professional services required to provide Cardiac Surgery Center Services.

Compliance Costs:

The cost of implementation and compliance with these proposed regulations is expected to be minimal for the affected entities already caring for these patients. Hospitals that choose to provide Cardiac Surgery Center services, and that have not done so previously, may incur costs to upgrade their services.

Economic and Technological Feasibility:

This proposal is economically and technically feasible.

Minimizing Adverse Impact:

This amendment does not create any adverse effect on regulated parties.

Small Business and Local Government Participation:

Outreach to the affected parties was conducted through the recent Regulatory Modernization Initiate Process. Organizations who represent the affected parties and the public can obtain the agenda of the Codes and Regulations Committee of the Public Health and Health Planning Council (PHHPC) and a copy of the proposed regulation on the Department's website. The public, including any affected party, is invited to comment during the Codes and Regulations Committee meeting.

*Rural Area Flexibility Analysis*

Types and Estimated Numbers of Rural Areas:

This rule applies uniformly throughout the state, including rural areas.

Rural areas are defined as counties with a population less than 200,000 and counties with a population of 200,000 or greater that have towns with population densities of 150 persons or fewer per square mile. The following 43 counties have a population of less than 200,000 based upon the United States Census estimated county populations for 2010 (http://quickfacts.census.gov).

| | | |
|---|---|---|
| Allegany County | Greene County | Schoharie County |
| Cattaraugus County | Hamilton County | Schuyler County |
| Cayuga County | Herkimer County | Seneca County |
| Chautauqua County | Jefferson County | St. Lawrence County |
| Chemung County | Lewis County | Steuben County |
| Chenango County | Livingston County | Sullivan County |
| Clinton County | Madison County | Tioga County |
| Columbia County | Montgomery County | Tompkins County |
| Cortland County | Ontario County | Ulster County |
| Delaware County | Orleans County | Warren County |
| Essex County | Oswego County | Washington County |
| Franklin County | Otsego County | Wayne County |
| Fulton County | Putnam County | Wyoming County |
| Genesee County | Rensselaer County | Yates County |
| | Schenectady County | |

The following counties have a population of 200,000 or greater and towns with population densities of 150 persons or fewer per square mile. Data is based upon the United States Census estimated county populations for 2010.

| | | |
|---|---|---|
| Albany County | Monroe County | Orange County |
| Broome County | Niagara County | Saratoga County |
| Dutchess County | Oneida County | Suffolk County |
| Erie County | Onondaga County | |

Reporting, Recordkeeping and Other Compliance Requirements; and Professional Services:

Becoming a Cardiac Surgery Center is a voluntary choice for hospitals, not a mandate. Hospitals, including hospitals that are located in rural areas, that choose to provide such services, and that have not done so previously, will need to adhere to programmatic standards set forth in in 10 NYCRR §§ 405.29 and 711.4. Hospitals approved as Cardiac Surgery Centers will be required to provide data to the Cardiac Reporting System as those who already provide this care do already.

Costs:

The cost of implementation and compliance with these proposed regulations is expected to be minimal for the affected entities already caring for these patients. Hospitals that choose to provide Cardiac Surgery Center services, and that have not done so previously, may incur costs to upgrade their services.

Minimizing Adverse Impact:

This amendment does not create any adverse effect on regulated parties.

Rural Area Participation:

Outreach to the affected parties was conducted through the Regulatory Modernization Initiative. They include general hospitals, county health departments and emergency medical services. Organizations who represent the affected parties and the public can obtain the agenda of the Codes and Regulations Committee of the Public Health and Health Planning Council (PHHPC) and a copy of the proposed regulation on the Department's website. The public, including any affected party, is invited to comment during the Codes and Regulations Committee meeting.

*Job Impact Statement*

No Job Impact Statement is required pursuant to section 201-a(2)(a) of the State Administrative Procedure Act (SAPA). It is apparent, from the nature of the proposed amendment, that it will have no impact on jobs and employment opportunities.

# PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Consumer Directed Personal Assistance Program Reimbursement**

**I.D. No.** HLT-53-19-00012-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Amendment of section 505.28 of Title 18 NYCRR.

*Statutory authority:* Social Services Law, sections 363-a(2), 365-f; and Public Health Law, section 201(1)(v)

*Subject:* Consumer Directed Personal Assistance Program Reimbursement.

*Purpose:* To establish a program to pay home care services and establish a methodology framework for the payment of FI administrative costs.

*Text of proposed rule:* Subdivision (b) is amended by renumbering paragraphs (7)-(12) as (8)-(13) and adding new paragraph (7), to read as follows:

(7) *fiscal intermediary administrative costs means the allowable costs incurred by a fiscal intermediary for performance of fiscal intermediary services under section 365-f(4-a) of the Social Services Law and fiscal intermediary responsibilities under subdivision (i) of this section.*

Subdivision (j) is amended to read as follows:

(j) Payment.

(1) The department will pay fiscal intermediaries that are enrolled as Medicaid providers and have contracts with social services districts for the provision of consumer directed personal assistance services at rates that the department establishes and that the Director of the Division of the Budget approves[, except as provided in paragraph (2) of this subdivision].

[(2) A social services district may submit a written request to the department to use an alternative payment methodology. The request must describe the alternative payment methodology that the district will use to determine payments to fiscal intermediaries for consumer directed personal assistance services and include such other information as the department may require. The department may grant a district's exemption request when it determines that the alternative payment methodology is based on the fiscal intermediary's allowable costs of providing consumer directed personal assistance services and includes an adjustment for inflationary increases in the fiscal intermediary's costs of doing business.]

([3]2) No payment to the fiscal intermediary will be made for authorized services unless the fiscal intermediary's claim is supported by documentation of the time spent in provision of services for each consumer.

(3) *As authorized by paragraph (1) of this subdivision, the rates of reimbursement for fiscal intermediary administrative costs shall be made on a per consumer per month basis, with three tiers of payments. Each tier shall represent a range of utilization levels based on the number of direct care hours of consumer directed personal assistance services authorized for that consumer in a particular month and the differences in fiscal intermediary administrative costs associated with each tier of utilization. Effective on September 1, 2019, or the next earliest date permitted by law, the tiers shall be as follows:*

| Tier | Direct Care Hours Authorized Per Month | Monthly Rate by Consumer |
|---|---|---|
| *Tier 1* | 1-79<br>80-159 | $64 |
| *Tier 2* | 160-239<br>240-319<br>320-479 | $164 |
| *Tier 3* | 480-699<br>700+ | $522 |

(4) *Nothing in paragraph (3) of this subdivision shall impact wages or wage related requirements for personal care assistants nor impact the ability of Medicaid managed care organizations to reimburse fiscal intermediaries for fiscal intermediary administrative costs pursuant to their provider contracts.*

*Text of proposed rule and any required statements and analyses may be obtained from:* Katherine Ceroalo, DOH, Bureau of Program Counsel, Reg. Affairs Unit, Room 2438, ESP Tower Building, Albany, NY 12237, (518) 473-7488, email: regsqna@health.ny.gov

*Data, views or arguments may be submitted to:* Same as above.

*Public comment will be received until:* 60 days after publication of this notice.

NYS Register/December 31, 2019                                   **Rule Making Activities**

*This rule was not under consideration at the time this agency submitted its Regulatory Agenda for publication in the Register.*

**Regulatory Impact Statement**

Statutory Authority:

Social Services Law ("SSL") section 363-a and Public Health Law ("PHL") section 201(1)(v) provide that the Department is the single state agency responsible for supervising the administration of the State's medical assistance ("Medicaid") program and for adopting such regulations, not inconsistent with law, as may be necessary to implement the State's Medicaid program.

The State's Medicaid program includes the Consumer Directed Personal Assistance Program ("CDPAP") authorized by SSL section 365-f. All social services districts must assure access to CDPAP. SSL § 367-p(c).

The Department may promulgate regulations necessary to carry out the program's objectives, which includes the provision of and payment for home care services. SSL § 365-f(1) & (5)(b). The proposed amendment to the CDPAP regulation is within the Department's statutory rulemaking authority as it sets forth a required framework for the method of reimbursing Fiscal Intermediary ("FIs") for administrative costs associated with personal assistant services.

Legislative Objectives:

The Legislature's objective in enacting SSL § 365-f was to establish the CDPAP program to permit chronically ill and/or physically disabled individuals receiving home care services under the medical assistance program greater flexibility and freedom of choice in obtaining such services, while ensuring that Medicaid funds are appropriately spent. This regulation keeps in place all CDPAP eligibility rules and benefits, while adjusting the methodology for paying FIs.

Needs and Benefits:

Historically, the State has reimbursed FIs for administrative services based on the number of hours of CDPAP services the local social services district authorizes for each consumer receiving services. However, this methodology has led to inefficient allocation of resources, because the payment for administrative services is, in many instances, disproportionate to administrative costs.

Administrative costs include those associated with maintaining time records, health status records and processing wages and benefits. Although these costs increase to some degree for higher needs cases, the increase is not linear, and paying administrative costs in direct proportion to hours of care provided leads to FIs receiving administrative cost payments that in some cases far exceed actual administrative costs.

The Department's proposed rate methodology uses a per consumer per month payment structure with three tiers of monthly administrative rates that are associated with different levels of authorized service utilization (each, a "Tier" and collectively, the "Tiers"). For any particular case, the FI will be reimbursed for the Tier that is associated with the number of authorized direct care hours per consumer per month. To determine and evaluate the rates corresponding to each Tier, the Department relied, in part, on data submitted by managed long-term care plans as required under the Medicaid Managed Long Term Care Partial Capitation Contract. Based on these data submissions and other information furnished to the Department by FIs, the following cost parameters were used to help determined and evaluate the proposed rates and Tiers to reimburse FIs for their administrative costs:

- Statewide distribution of consumers by Tier (70% Tier 1, 20% Tier 2, and 10% Tier 3);
- Average number of personal care assistants required for CDPAP consumers receiving the number of authorized hours by each Tier;
  - o Tier 1 – one personal care assistant per consumer;
  - o Tier 2 – two and a half personal care assistants per consumer; and
  - o Tier 3 – five personal care assistants per consumer.
- The cost of processing payroll and performing payroll related administrative tasks (i.e., \$8.78 per month per personal assistant);
- Payment for approximately one-quarter of personal assistants who do not have health insurance to cover the cost of health status assessment and immunizations;
- One full-time equivalent FI staff worker per 40 CDPAP consumers to perform the FI's administrative duties, with the assumption that the FI staff worker is assumed to have salary costs at the current New York City prevailing wage amount, including a minimum base wage of \$15 plus fringe, payroll taxes, overtime, in-service training, etc.;
- Overhead costs for each FI (i.e., \$0.75 per month per personal assistant).

Based on this analysis and the stated need for this change in methodology, the Department intends to use the per consumer per month payment structure uniformly across CDPAP providers and FIs. Accordingly, the Department no longer requires the discretion to grant social services districts the ability to use alternative payment methodologies when determining payments to FIs under paragraph (2) of subdivision (j). As a result, the former paragraph (2) has been deleted from subdivision (j) and the remaining paragraphs have been renumbered.

Notice of the new payment methodology will be issued to local departments of social services soon through a GIS. This methodology will better align administrative costs and reimbursement.

Costs:

There will be no additional costs to private regulated parties as a result of the proposed regulation.

Costs to State Government:

There is no additional aggregate increase in Medicaid expenditures anticipated as a result of the proposed regulation. Costs should decrease as reimbursement is brought into better alignment with actual costs.

Costs to Local Government:

Local districts' share of Medicaid costs is statutorily capped; therefore, there will be no additional costs to local governments as a result of the proposed regulation.

Costs to the Department of Health:

There will be no additional costs to the Department of Health as a result of the proposed regulation.

Local Government Mandates:

The proposed regulation does not impose any new programs, services, duties or responsibilities upon any county, city, town, village, school district, fire district or other special district.

Paperwork:

The proposed regulations do not impose any reporting requirements on fiscal intermediaries or other entities.

Duplication:

The proposed regulations do not duplicate any existing federal, state or local regulations.

Alternatives:

As discussed in the needs and benefits section, above, the Department has determined, based on the information it received from managed long-term care plans and FIs, that the current reimbursement methodology for reimbursing FIs for administrative costs does not align with the actual costs incurred by FIs. For this reason, the Department has determined that it is neither necessary nor prudent to commit to a methodology framework that maintains the current rate setting method for payments to FIs.

Federal Standards:

The proposed regulations do not exceed any minimum federal standards.

Compliance Schedule:

There is no compliance schedule imposed by this amendment, which shall be effective upon publication of a notice of adoption.

**Regulatory Flexibility Analysis**

No regulatory flexibility analysis is required pursuant to section 202-b(3)(a) of the State Administrative Procedure Act. The proposed amendment does not impose an adverse economic impact on small businesses or local governments, and it does not impose reporting, record keeping or other compliance requirements on small businesses or local governments. The reimbursement methodology framework ensures that the reimbursement for administrative costs is made in the form of a capitation payment. But, as is the case under the current rule, the framework does not specify exactly how the Department must calculate the rate. The Department is simply limited to creating more than one rate tier and those tiers must account for differing administrative costs associated with different levels of service utilization. The Department therefore remains free to adjust the rates based on any number of other factors, unless otherwise not permitted.

**Rural Area Flexibility Analysis**

No rural area flexibility analysis is required pursuant to section 202-bb(4)(a) of the State Administrative Procedure Act. The proposed amendment does not impose an adverse impact on facilities in rural areas, and it does not impose reporting, recordkeeping or other compliance requirements on facilities in rural areas. The CDPAP places no additional reporting requirements on any agency or locality.

**Job Impact Statement**

A Job Impact Statement is not required pursuant to Section 201-a(2)(a) of the State Administrative Procedure Act. It is apparent, from the nature and purpose of the proposed rule, that it will not have a substantial adverse impact on jobs or employment opportunities. The proposed regulation has no implications for job opportunities.

# Metropolitan Transportation Agency

## EMERGENCY
## RULE MAKING

**Debarment of Contractors**

**I.D. No.** MTA-23-19-00006-E
**Filing No.** 1147
**Filing Date:** 2019-12-16
**Effective Date:** 2019-12-16

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* Addition of Part 1004 to Title 21 NYCRR.

*Statutory authority:* Public Authorities Law, sections 1265(5), 1266(4) and 1279-h

*Finding of necessity for emergency rule:* Preservation of general welfare.

*Specific reasons underlying the finding of necessity:* The emergency rule is necessary to immediately implement the recent amendment to the Public Authorities Law, enacted as part of the 2020 Budget, which added a new Section 1279-h. That new statutory provision, effective immediately on enactment on April 12, 2019 and applicable to all contracts in effect on or entered into after that date, requires the Metropolitan Transportation Authority to establish "pursuant to regulation" a process for debarment of contractors under certain circumstances specified in the statute.

*Subject:* Debarment of contractors.

*Purpose:* To comply with Public Authorities Law, section 1279-h, which requires the MTA to establish a debarment process for contractors.

*Text of emergency rule:* A new Part 1004 is added to read as follows:

*Section 1004.1 Purpose*

*(a)* This Part establishes rules and regulations governing the debarment of contractors by the Metropolitan Transportation Authority and its subsidiaries and affiliates, as required by Section 1279-h of the Public Authorities Law, which was enacted on and made effective immediately as of April 12, 2019. Once adopted, it shall apply to all contracts that were in effect on, or entered into after, April 12, 2019.

*(b)* Nothing in this Part shall preclude or otherwise limit the Authority, as defined below, from assessing the responsibility of any bidder, contractor, subcontractor, or supplier pursuant to its All-Agency Responsibility Guidelines or from prohibiting any bidder, contractor, subcontractor, or supplier found to be not responsible from responding to new and future contract solicitations or from being awarded new and future contracts or subcontracts.

*Section 1004.2 Definitions*

As used in this Part, the following terms shall have the following meanings unless otherwise specified:

*(a) Authority* means the Metropolitan Transportation Authority, the Long Island Rail Road Company, the Metro-North Commuter Railroad Company, the Staten Island Rapid Transit Operating Authority, MTA Bus Company, MTA Capital Construction Company, the New York City Transit Authority, the Manhattan and Bronx Surface Transit Operating Authority, or the Triborough Bridge and Tunnel Authority, or any combination thereof, as the case may be.

*(b) Contract* means an enforceable agreement including a task order entered into by a contractor and the Authority for goods or services, including without limitation construction services.

*(c) Contractor* means any person, partnership, firm, corporation, or association, including any consultant, supplier or vendor, with whom the Authority has entered into a construction, consultant, equipment, supply, or services contract, but shall not include the federal government, a state agency, any public authority or public benefit corporation, or any unit of local government.

*(d) Debar* or *debarment* means the prohibition of a contractor from responding to any contract solicitation of or entering into any contract with the Authority for five years from a final debarment determination as provided in section 1004.6 of this Part.

*(e) Contract Modification* means amendments, change orders, additional work orders, or modifications with respect to a contract that are executed in accordance with the terms and conditions of such contract.

*(f) Substantially Complete,* unless otherwise defined in the contract at issue, means the contractor's completion of the work as necessary for the Authority's beneficial use of the applicable project or improvements or the

Authority's acceptance of those goods or services required to be delivered by a deadline.

*(g) Total adjusted time frame* means (1) with respect to all work under a contract, the period of time that a contract provides for a contractor to substantially complete the work, as may have been extended or reduced by one or more contract modifications, and (2) with respect to contracts for goods or services, as to any portion of the goods or services that must be delivered by a deadline, the period of time that the contract provides for such delivery, as may have been extended or reduced by one or more contract modifications.

*(h) Total adjusted contract value* means the original awarded amount of the contract plus or minus the aggregate net amount of all contract modifications.

*Section 1004.3 Grounds for Debarment*

*(a)* The Authority, including all contracting personnel therein, must debar a contractor if it makes a final determination that the contractor has:

*(1)(i)* failed to substantially complete all the work within the total adjusted time frame by more than ten percent of the total adjusted time frame; or

*(ii)* failed to progress the work in a manner so that it will be substantially complete within ten percent of the total adjusted time frame and has refused or in the opinion of the Authority is unable to accelerate the work so that it will be substantially complete within ten percent of the total adjusted time frame, and such refusal or failure is an event of default under the contract; or

*(iii)* with respect to contracts for goods or services, as to any portion of the goods or services that must be delivered by a deadline, materially failed to deliver such goods or services by more than ten percent of the total adjusted time frame.

*(2)* asserted a claim or claims for payment of additional amounts beyond the total adjusted contract value and one or more of such claims are determined to be invalid under the contract's dispute resolution process or if no such process is specified in the contract in a final determination made by the chief engineer or otherwise by the Authority, and together the sum of any such invalid claims exceeds by ten percent or more the total adjusted contract value.

*(3)* The Authority, including all contracting personnel therein, must commence a debarment procedure where there is any evidence that any specific provision referenced in provision (a)(1) and (a)(2) have been violated, and the Authority and its contracting personnel have no discretion to excuse or justify violations of any provision referenced in provision (a)(1) and (a)(2).

*Section 1004.4 Notice of Intent to Debar and Written Response*

*(a)* Upon the occurrence of one or both of the circumstances set forth in section 1004.3 of this Part, the Authority shall provide a written notice of intent to debar to the contractor, advising the contractor that it will hold a hearing to make a final determination as to whether a ground for debarment exists. At a minimum, the notice of intent to debar shall:

*(1)* state the facts upon which the Authority made its preliminary finding that one or both statutory grounds for debarment exists, including the basis for determining as provided in section 1004.4 of this Part that the contractor failed to timely Substantially Complete or the Authority's calculation of costs arising from claims determined to be invalid; and

*(2)* provide the contractor 30 calendar days after the date of the notice of intent to debar to respond.

*(b)* A contractor's written response must address each of the factual statements made by the Authority in its notice of intent to debar and state in detail any defenses including but not limited to force majeure.

*(c)* After submission by the contractor of a written response within the time permitted, or after the failure by the contractor to submit a written response within such time, a debarment hearing will be held, as provided in section 1004.5 of this Part.

*(d)* Subject to section 1004.1(b) of this Part, a contractor who has received a notice of intent to debar may respond to other contract solicitations issued by the Authority pending the hearing and a final debarment determination, if any; provided, however, that if the Authority awards such contractor a new contract or contracts after having provided the contractor a notice of intent to debar, and such contractor is later debarred by the Authority pursuant to such notice, the Authority must view such debarment as cause for termination under such new contract or contracts and thereupon terminate any such new contracts for cause.

*Section 1004.5 Debarment Hearing*

*(a)* A debarment hearing shall be conducted within:

*(1)* 21 calendar days from the Authority's receipt of a contractor's written response to a notice of intent to debar or within such further reasonable time that the authority shall proscribe; or

*(2)* 14 calendar days after the date the contractor's response was due, if no response is received from the contractor within the deadline.

*(b)* A recording or transcript of the debarment hearing shall be made.

*(c) The debarment hearing shall be conducted by a panel of at least three managerial level employees of the MTA designated by majority vote of the Authority's board; provided that no employee who has taken part in the award of any Authority contract to such contractor or overseen such contractor's performance on any Authority contract may serve on a panel considering the debarment of such contractor.*

*(d) A contractor shall have the right to appear by and be represented by counsel at the debarment hearing and any hearings in connection with other proceedings conducted pursuant to this Part.*

*(e) A contractor at the debarment hearing may assert any and all defenses to debarment including without limitation force majeure.*

*(f) If a contractor fails to appear at a debarment hearing, the panel may proceed with the hearing on the basis of the record before it and reach a final determination without providing for any further appearance or submission by the contractor.*

*Section 1004.6 Final Debarment Determination*

*(a) After the hearing is completed, the panel shall determine if one or both of the grounds for debarment as set forth in section 1004.3 of this Part exists.*

*(b) The panel's determination shall be set forth in writing. If the final debarment determination is that one or both of the grounds for debarment exist, the contractor shall be debarred for five years from the date of the final debarment determination. The panel may, in its discretion, also debar any of (1) the contractor's parent(s), subsidiaries and affiliates; (2) any joint venture (including its individual members) and any other form of partnership (including its individual members) that includes a contractor or a contractor's parent(s), subsidiaries, or affiliates of a contractor, (3) a contractor's directors, officers, principals, managerial employees, and any person or entity with a ten percent or more interest in a contractor; (4) any legal entity controlled, or ten percent or more of which is owned or controlled, by a contractor, or by any director, officer, principal, managerial employee of contractor, or by any person or entity with a 10 percent or greater interest in contractor, including without limitation any new entity created after the date of the notice of intent to debar.*

*(c) The panel's determination shall be timely submitted to the board of the Authority for ratification. The board of the Authority shall review such determination and either: (i) ratify the determination or, (ii) remit the determination to the panel for further consideration of facts or circumstances identified in the remission. The facts or circumstances identified in the remission shall be reviewed by the panel who shall then, after reconsideration, make a determination. Such determination shall then be resubmitted to the Authority board for ratification or nullification. Upon initial Authority board ratification of a panel determination, or Authority board ratification or nullification of a panel determination made after reconsideration, such determination shall be deemed final.*

*(d) Timely and complete compliance with each and all of the requirements of this Part shall be a precondition to any legal challenge that the contractor may be permitted to bring arising out of its debarment pursuant to Section 1279-h of the Public Authorities Law.*

*(e) Pursuant to Executive Order 192, the Authority shall notify the New York State Office of General Services of any final debarment determination within five days of the date thereof.*

**This notice is intended** to serve only as a notice of emergency adoption. This agency intends to adopt the provisions of this emergency rule as a permanent rule, having previously submitted to the Department of State a notice of proposed rule making, I.D. No. MTA-23-19-00006-EP, Issue of June 5, 2019. The emergency rule will expire February 13, 2020.

**Text of rule and any required statements and analyses may be obtained from:** Peter Sistrom, Metropolitan Transportation Authority, Two Broadway, 9th Floor, New York, New York 10004, (212) 878-7176, email: psistrom@mtahq.org

**Regulatory Impact Statement**

Statutory Authority:

Section 1266(4) of the Public Authorities Law provides that the Metropolitan Transportation Authority (MTA) may establish rules and regulations as it may deem necessary, convenient, or desirable for the use and operation of any transportation facility and related services operated by the MTA. Newly enacted Section 1279-h of the Public Authorities Law, enacted on April 12, 2019 and effective immediately, directs the MTA to establish pursuant to regulation a debarment process for its contractors.

Legislative Objectives:

The Legislature enacted the new Section 1279-h of the Public Authorities Law as part of the 2020 Budget. It requires the MTA to establish a process that will debar for five years any contractor who either fails to substantially complete the work within the time frame set by the contract, or in any subsequent change order, by more than ten percent of the contract term, or whose disputed work exceeds ten percent or more of the total contract cost where claimed costs are deemed to be invalid pursuant to the contractual dispute resolution process. And the statute requires that the

debarment process ensures that contractors have notice and an opportunity to be heard including the opportunity to present as a defense acts such as force majeure. The proposed rule accords with this legislative objective by establishing a process for debarment of contractors.

Needs and Benefits:

The proposed rule is necessary to implement the newly enacted Section 1279-h of the Public Authorities Law, which expressly requires the MTA to establish a debarment process and specifies the circumstances under which MTA must debar a contractor. Contractors who are significantly late in performing their contractual work or in meeting contractual delivery dates or who assert substantial and unjustified claims for payment should not be allowed to compete to be awarded new contracts.

Costs:

(a) Regulated parties: This proposal does not impose new costs on contractors. It provides for process for determining whether factual circumstances exist, which the Legislature has determined require debarment. The proposed rule establishes a process to ensure that contractors are provided notice and an opportunity to be heard.

(b) Local government: The proposed rule will impose no costs on local governments.

(c) MTA: The MTA will use existing resources including its existing procurement and legal staff to undertake debarments of contractors.

Paperwork:

The proposed rule will require the MTA to develop a notice to inform contractors that they might be debarred.

Local Government Mandates:

The proposed rule does not impose any new programs, services, duties, or responsibilities on local government.

Duplication:

The proposed rule does not duplicate, overlap, or conflict with any State or Federal rule.

Alternatives:

The Legislature has expressly directed the MTA to establish by regulation a debarment process for its contractors, so MTA has not considered not doing so.

Federal Standards:

The proposed rule does not exceed any Federal minimum standards.

Compliance Schedule:

There is no compliance schedule imposed by this proposed rule. Once adopted, it will be effective immediately and will apply to contracts in effect on, or entered into after, the effective date of Section 1279-h of the Public Authorities Law, which was April 12, 2019.

**Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement**

A regulatory flexibility analysis for small business and local governments, a rural area flexibility analysis, and a job impact statement are not required for this rule making proposal because it will not adversely affect small businesses, local governments, rural areas, or jobs.

This proposed rule making will allow the Metropolitan Transportation Authority to debar a contractor under specified statutorily proscribed circumstances after giving such contractor notice and opportunity to be heard. Due to its narrow focus, this proposed rule will not impose an adverse economic impact or reporting, record keeping, or other compliance requirements on small businesses or local governments in rural or urban areas or on jobs and employment opportunities.

**Assessment of Public Comment**

On May 22, 2019, the MTA submitted to the Secretary of State a Notice of Emergency Adoption and Proposed Rulemaking; it was published in the New York State Register on June 5. The emergency rule, which was identical to the proposed rule and added a new Part 1004 to Title 21 of the Official Compilation of Codes, Rules and Regulations of the State of New York, became effective upon filing. The MTA re-adopted the same emergency rule on August 19, and has now re-adopted the same emergency rule on October 18.

Meanwhile, in the 60-day period for public comment following publication in the New York State Register, the MTA received nearly 50 separate comments totaling over 200 pages. Commenters included:

- 17 trade associations representing, among others, general contractors, sureties, electrical contractors, architectural and engineering consultants, and subcontractors

- 27 individual firms that have and continue to do construction-related work for the MTA including Bombardier, John G. Civetta & Sons, Schindler Elevator, Siemens Mobility, Skanska, STV Companies, Syska Hennessy, TC Electric, and Tutor Perini

- 5 other commenters, including the Citizens Budget Commission and the Partnership for New York City

Many of these commenters called debarment of contractors who are late or over budget an unduly harsh and punitive consequence. The MTA, they say, has effective contractual remedies and uses them, sometimes

unfairly. According to these commenters, debarment should be used only for fraud or criminal activity. Many predicted that few contractors will bid on MTA projects going forward and those who do will increase their bid prices.

Many commenters asserted that whatever new debarment procedure the MTA adopts should lawfully apply only to contracts entered after the debarment statute, Public Authorities Law § 1279-h, took effect in April 2019. Otherwise, they assert, their existing contracts would be impaired, which they asserted would be both unconstitutional and unfair because their bid prices did not consider the added risk of debarment.

Several commenters urged MTA to exclude participants in the MTA's Small Business Mentoring Program.

Other commenters objected to the proposed rule for being inflexible, asserting that it would give the MTA no discretion to consider what they said were "mitigating factors."

Some commenters objected that "invalid claim" is not defined in the proposed rule and so MTA has too much discretion to debar contractors for submitting in good faith payment claims that are denied by the MTA's dispute resolution process. Others suggested that it was unfair to hold contractors accountable for payment claims by their subcontractors that they are contractually obligated to forward to MTA whether they believe them valid.

Other commenters objected to the provision allowing a hearing panel to debar not only a contractor but affiliated entities and individuals.

MTA continues to evaluate these public comments but has not yet decided whether to adopt the proposed rule or to revise it and therefore is not ready, and is not required, to fully assess and respond to all the comments. Since the filing of the Notice of Emergency Adoption on October 18, 2019 (which was published in the New York State Register on November 6, 2019), the MTA has received no further public comments.

# Public Service Commission

## NOTICE OF ADOPTION

**Implementation of a Surcharge**

**I.D. No.** PSC-08-15-00009-A

**Filing Date:** 2019-12-13

**Effective Date:** 2019-12-13

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 12/12/19, the PSC adopted an order denying Emerald Green Lake Louise Marie Water Company, Inc.'s (EGLLM) petition for the implementation of a surcharge.

*Statutory authority:* Public Service Law, sections 89-b and 89-c

*Subject:* Implementation of a surcharge.

*Purpose:* To deny EGLLM's petition for the implementation of a surcharge.

*Substance of final rule:* The Commission, on December 12, 2019, adopted an order denying Emerald Green Lake Louise Marie Water Company, Inc.'s petition for the implementation of a surcharge to recover the costs associated with the rehabilitation of the Lake Louise Marie dam and spillway, subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*

An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(15-W-0037SA1)

## NOTICE OF ADOPTION

**Modifications to the Retail Access Energy Market**

**I.D. No.** PSC-23-17-00022-A

**Filing Date:** 2019-12-12

**Effective Date:** 2019-12-12

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 12/12/19, the PSC adopted an order adopting changes to the Retail Access Energy Market and established a further process.

*Statutory authority:* Public Service Law, sections 5(1), 65(1), (2), (3), 66(2), (3), (5), (8), (9) and (12)

*Subject:* Modifications to the Retail Access Energy Market.

*Purpose:* To adopt changes to the Retail Access Energy Market and establish a further process.

*Substance of final rule:* The Commission, on December 12, 2019, adopted an order adopting changes to the Retail Access Energy Market to strengthen protections for residential and small commercial customers (mass-market customers) and established a further process. The modifications include: (1) increasing energy service companies (ESCO) accountability by enhancing eligibility criteria and implementing other changes in the eligibility process; (2) empowering customers by improving transparency of ESCO product and pricing information, primarily through an on-bill comparison of ESCO to utility commodity prices and through required itemizing of ESCO charges; and (3) prohibiting ESCO product offerings that lack energy-service-based value by adopting restrictions on the types of products and services ESCOs are allowed to offer mass-market customers, subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*

An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(15-M-0127SA8)

## NOTICE OF ADOPTION

**Rate Increase in Annual Revenues**

**I.D. No.** PSC-40-18-00015-A

**Filing Date:** 2019-12-13

**Effective Date:** 2019-12-13

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 12/12/19, the PSC adopted an order authorizing Emerald Green Lake Louise Marie Water Company, Inc. (EGLLM) for an increase in its annual revenues by $73,471 or 14.6 percent, effective January 1, 2020.

*Statutory authority:* Public Service Law, sections 4(1), 5(1)(f), 89-c(1), (3), (10)(a), (b) and (f)

*Subject:* Rate increase in annual revenues.

*Purpose:* To authorize EGLLM for an increase in annual revenues.

*Substance of final rule:* The Commission, on December 12, 2019, adopted an order authorizing Emerald Green Lake Louise Marie Water Company, Inc. (EGLLM) for an increase in its annual revenues by $73,471 or 14.6%, effective January 1, 2020. EGLLM is directed to file, on not less than five days' notice to become effective January 1, 2020, a further revision to Leaf No. 12, consistent with the discussion in the body of this order and containing the rates shown in Appendix E. EGLLM is also directed to file, on not less than five days' notice to become effective January 1, 2020, a cancellation supplement cancelling the effective Leaf No. 13 and pending Leaf No. 13, subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social

**NYS Register/December 31, 2019**                                   **Rule Making Activities**

security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*
An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.
(18-W-0576SA1)

## NOTICE OF ADOPTION

**Transfer of Ownership Interest in Poles**

**I.D. No.** PSC-23-19-00003-A
**Filing Date:** 2019-12-12
**Effective Date:** 2019-12-12

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:
*Action taken:* On 12/12/19, the PSC adopted an order approving, with modifications, New York State Electric & Gas Corporation's (NYSEG) petition for authority to transfer ownership interest in poles, consistent with a Settlement Agreement between NYSEG and Verizon.
*Statutory authority:* Public Service Law, section 70
*Subject:* Transfer of ownership interest in poles.
*Purpose:* To approve, with modifications, NYSEG's petition to transfer ownership interest of poles to Verizon.
*Substance of final rule:* The Commission, on December 12, 2019, adopted an order approving New York State Electric & Gas Corporation's (NYSEG) petition for authority to transfer ownership interest in approximately 76,086 poles to Verizon New York Inc. (Verizon), consistent with a Settlement Agreement between NYSEG and Verizon, with modification to the accounting treatment of certain payments associated with prior period rental fees, subject to the terms and conditions set forth in the order.
*Final rule as compared with last published rule:* No changes.
*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.
*Assessment of Public Comment*
An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.
(19-E-0302SA1)

## NOTICE OF ADOPTION

**Consolidated Billing for Distributed Energy Resources**

**I.D. No.** PSC-27-19-00007-A
**Filing Date:** 2019-12-12
**Effective Date:** 2019-12-12

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:
*Action taken:* On 12/12/19, the PSC adopted an order adopting the net crediting model for consolidated billing proposed by the Joint Utilities.
*Statutory authority:* Public Service Law, sections 5(1)(b), (2), 65(1), (2), (3), 66(2) and (5)
*Subject:* Consolidated billing for distributed energy resources.
*Purpose:* To adopt the net crediting model for consolidated billing proposed by the Joint Utilities.
*Substance of final rule:* The Commission, on December 12, 2019, adopted an order adopting the net crediting model for the implementation of consolidated billing proposed by Central Hudson Gas & Electric Corporation, Consolidated Edison Company of New York, Inc., New York State Electric & Gas Corporation, Niagara Mohawk Power Corporation d/b/a National Grid, Orange and Rockland Utilities, Inc., and Rochester Gas and Electric Corporation (collectively, the Joint Utilities). The Joint Utilities are directed to file Implementation Plans by February 1, 2020 that include anticipated timelines for implementation of net crediting as well as cost estimates, subject to the terms and conditions set forth in the order.
*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.
*Assessment of Public Comment*
An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.
(19-M-0463SA1)

## NOTICE OF ADOPTION

**Transfer of Street Lighting Facilities**

**I.D. No.** PSC-33-19-00007-A
**Filing Date:** 2019-12-13
**Effective Date:** 2019-12-13

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:
*Action taken:* On 12/12/19, the PSC adopted an order approving Orange and Rockland Utilities, Inc.'s (O&R) petition for authority to transfer certain street lighting facilities in the Village of Florida to the Village of Florida.
*Statutory authority:* Public Service Law, section 70(1)
*Subject:* Transfer of street lighting facilities.
*Purpose:* To approve O&R's petition to transfer certain street lighting facilities to the Village of Florida.
*Substance of final rule:* The Commission, on December 12, 2019, adopted an order approving Orange and Rockland Utilities, Inc.'s petition for authority to transfer certain street lighting facilities in the Village of Florida to the Village of Florida, subject to the terms and conditions set forth in the order.
*Final rule as compared with last published rule:* No changes.
*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.
*Assessment of Public Comment*
An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.
(19-E-0505SA1)

## NOTICE OF ADOPTION

**Transfer of Street Lighting Facilities**

**I.D. No.** PSC-33-19-00009-A
**Filing Date:** 2019-12-13
**Effective Date:** 2019-12-13

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:
*Action taken:* On 12/12/19, the PSC adopted an order approving Orange and Rockland Utilities, Inc.'s (O&R) petition for authority to transfer certain street lighting facilities in the Village of South Nyack to the Village of South Nyack.
*Statutory authority:* Public Service Law, section 70(1)
*Subject:* Transfer of street lighting facilities.
*Purpose:* To approve O&R's petition to transfer certain street lighting facilities to the Village of South Nyack.
*Substance of final rule:* The Commission, on December 12, 2019, adopted an order approving Orange and Rockland Utilities, Inc.'s petition for authority to transfer certain street lighting facilities in the Village of South Nyack to the Village of South Nyack, subject to the terms and conditions set forth in the order.
*Final rule as compared with last published rule:* No changes.
*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*
An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.
(19-E-0506SA1)

## NOTICE OF ADOPTION

### Compensation of Distributed Energy Resources

**I.D. No.** PSC-35-19-00008-A
**Filing Date:** 2019-12-12
**Effective Date:** 2019-12-12

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:
*Action taken:* On 12/12/19, the PSC adopted an order adopting recommendations in the Staff Whitepaper, with modifications, including modifications related to the relief requested in the Joint Utilities' Petition.
*Statutory authority:* Public Service Law, sections 5(1)(b), (2), 65(1), (2), (3), 66(2), (5) and 66-p
*Subject:* Compensation of Distributed Energy Resources.
*Purpose:* To adopt recommendations in the Staff Whitepaper, with modifications.
*Substance of final rule:* The Commission, on December 12, 2019, adopted an order adopting recommendations in the August 13, 2019 Department of Public Service Staff Whitepaper, with modifications, including modifications related to the relief requested in Central Hudson Gas & Electric Corporation (Central Hudson), Consolidated Edison Company of New York, Inc. (Con Edison), New York State Electric and Gas Corporation (NYSEG), Niagara Mohawk Power Corporation d/b/a National Grid (National Grid), Orange and Rockland Utilities, Inc. (O&R), and Rochester Gas & Electric Corporation (RG&E) (collectively, the Joint Utilities') Petition, filed on May 10, 2019. The Joint Utilities' are directed to file, in conformance with the discussion in the body of the Order, tariff leaves implementing the modifications to the Value of Distributed Energy Resources policy and to the Value Stack in the Order, on not less than 20 days' notice to become effective on February 1, 2020, subject to the terms and conditions set forth in the order.
*Final rule as compared with last published rule:* No changes.
*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.
*Assessment of Public Comment*
An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.
(15-E-0751SA24)

## NOTICE OF ADOPTION

### SIR Modifications

**I.D. No.** PSC-39-19-00015-A
**Filing Date:** 2019-12-13
**Effective Date:** 2019-12-13

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:
*Action taken:* On 12/12/19, the PSC adopted an order approving modifications to the New York State Standardized Interconnection Requirements (SIR).
*Statutory authority:* Public Service Law, sections 65(1), (2), (3), 66(1), (2), (3), (5), (8) and (10)
*Subject:* SIR modifications.
*Purpose:* To approve modifications to the SIR.
*Substance of final rule:* The Commission, on December 12, 2019, adopted an order approving modifications to the New York State Standardized Interconnection Requirements (SIR), filed in a petition by Central Hudson Gas & Electric Corporation (Central Hudson), Consolidated Edison Company of New York, Inc. (Con Edison), New York State Electric & Gas Corporation (NYSEG), Niagara Mohawk Power Corporation d/b/a

National Grid (National Grid), Orange and Rockland Utilities, Inc. (O&R), Rochester Gas and Electric Corporation (RG&E), the New York Solar Energy Industries Association, New York Battery and Energy Storage Technology Consortium, BQ Energy, LLC, Clean Energy Collective, Monolith Solar Associates, Cypress Creek Renewables, Borrego Solar Systems, Inc., CleanChoice Energy, Oya Solar Inc., SunCommon, GreenSpark Solar, EnterSolar, Distributed Sun, LLC, Clearway Energy Group LLC, Safari Energy, LLC, Sol Systems, Omni Navitas, Ameresco, Nexamp, Inc., Blueprint Power, US Light Energy, Best Energy Power, Delaware River Solar, Dynamic Energy, EDF Renewables North America, and Sunrun Inc.; members of the Interconnection Policy Working Group (IPWG) and the Interconnection Technical Working Group (ITWG), Central Hudson, Con Edison, NYSEG, National Grid, O&R and RG&E are directed to make tariff filings to incorporate into their electric tariffs the revised SIR set forth in Appendix A, and to remove any inconsistent tariff provisions. These tariff amendments shall become effective on not less than one day's notice, to take effect on or before January 1, 2020, subject to the terms and conditions set forth in the order.
*Final rule as compared with last published rule:* No changes.
*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.
*Assessment of Public Comment*
An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.
(19-E-0566SA1)

## NOTICE OF ADOPTION

### Motion for Waiver of Article VII Application Regulations

**I.D. No.** PSC-39-19-00016-A
**Filing Date:** 2019-12-13
**Effective Date:** 2019-12-13

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:
*Action taken:* On 12/12/19, the PSC adopted an order granting LS Power Grid New York, LLC, et. al.'s (LS Power) August 20, 2019 motion to waiver certain Commission regulations relating to Public Service Law Article VII applications.
*Statutory authority:* Public Service Law, sections 4 and 122
*Subject:* Motion for waiver of Article VII application regulations.
*Purpose:* To grant LS Power, et. al.'s motion for waiver of Article VII application regulations.
*Substance of final rule:* The Commission, on December 12, 2019, adopted an order granting LS Power Grid New York, LLC, LS Power Grid New York Corporation I, and the New York Power Authority's August 20, 2019 motion to waiver certain of the Commission's regulations relating to Public Service Law Article VII applications, subject to the terms and conditions set forth in the order.
*Final rule as compared with last published rule:* No changes.
*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.
*Assessment of Public Comment*
An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.
(19-T-0549SA1)

## NOTICE OF ADOPTION

### Petition to Implement a CDG-P

**I.D. No.** PSC-40-19-00008-A
**Filing Date:** 2019-12-12
**Effective Date:** 2019-12-12

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 12/12/19, the PSC adopted an order denying Niagara Mohawk Power Corporation d/b/a National Grid's (National Grid) petition to implement a Community Distributed Generation Platform (CDG-P) to supplement the net crediting program.

*Statutory authority:* Public Service Law, sections 5(1)(b), (2), 65(1), (2), (3), 66(2) and (5)

*Subject:* Petition to implement a CDG-P.

*Purpose:* To deny National Grid's petition to implement a CDG-P to supplement the net crediting program.

*Substance of final rule:* The Commission, on December 12, 2019, adopted an order denying Niagara Mohawk Power Corporation d/b/a National Grid's (National Grid) petition to implement a Community Distributed Generation Platform (CDG-P) to supplement the net crediting program with a customer acquisition and turnover management program for CDG projects, subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*
An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-M-0463SA2)

## NOTICE OF ADOPTION

### Appointment of Temporary Operator

**I.D. No.** PSC-41-19-00001-A
**Filing Date:** 2019-12-16
**Effective Date:** 2019-12-16

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 12/12/19, the PSC adopted an order adopting the emergency rule as a permanent rule, appointing New York American Water Company, Inc. (NYAW) as the temporary operator of the Battisti Water Supply Corporation (Battisti).

*Statutory authority:* Public Service Law, sections 89-b, 89-c and 112-a

*Subject:* Appointment of temporary operator.

*Purpose:* To adopt the emergency rule as a permanent rule, appointing NYAW as temporary operator of Battisti.

*Substance of final rule:* The Commission, on December 12, 2019, adopted an order adopting the emergency rule as a permanent rule, appointing New York American Water Company, Inc. as the temporary operator of the Battisti Water Supply Corporation, subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*
An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-W-0546SA1)

## NOTICE OF ADOPTION

### Transfer of Cable Television Assets

**I.D. No.** PSC-41-19-00004-A
**Filing Date:** 2019-12-13
**Effective Date:** 2019-12-13

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* On 12/12/19, the PSC adopted an order approving the joint petition of Charter Communications, Inc. et. al. (Charter) to transfer cable television assets, including franchises of 27 municipalities to Spectrum Northeast, LLC (Spectrum NE).

*Statutory authority:* Public Service Law, section 222

*Subject:* Transfer of cable television assets.

*Purpose:* To approve Charter, et. al.'s joint petition to transfer cable television assets to Spectrum NE.

*Substance of final rule:* The Commission, on December 12, 2019, adopted an order approving the joint petition of Charter Communications, Inc. (Charter), Charter Communications Entertainment I, LLC (CCE-I) and Spectrum Northeast, LLC (Spectrum NE) to transfer CCE-I's cable television assets, including 27 franchises to provide cable television service in New York, to Spectrum NE. The transfer of certificates of confirmation to provide cable television service from CCE-I to Spectrum NE in the Towns of Ancram, Ausable, Austerlitz, Beekmantown, Berlin, Black Brook, Canaan, Chatham, Chesterfield, Copake, Dannemora, Elizabethtown, Ghent, Hillsdale, Jay, Lewis, New Lebanon, Peru, Petersburgh, Plattsburgh, Saranac, Schuyler Falls, Westport and Wilmington; the Villages of Chatham and Dannemora; and the City of Plattsburgh are approved, subject to the terms and conditions set forth in the order.

*Final rule as compared with last published rule:* No changes.

*Text of rule may be obtained from:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov An IRS employer ID no. or social security no. is required from firms or persons to be billed 25 cents per page. Please use tracking number found on last line of notice in requests.

*Assessment of Public Comment*
An assessment of public comment is not submitted with this notice because the rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-V-0599SA1)

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

### Technical Amendments of State Regulations and Administrative Corrections

**I.D. No.** PSC-53-19-00003-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* This is a consensus rule making to amend Part 262 of Title 16 NYCRR.

*Statutory authority:* Public Service Law, sections 65 and 66

*Subject:* Technical Amendments of State regulations and Administrative Corrections.

*Purpose:* To make the provision of natural gas service safer in New York State.

*Text of proposed rule:* Title 16 of the Official Compilation of Codes, Rules and Regulations of the State of New York is amending Chapter III, Gas Utilities, Subchapter C, Safety, Part 262, Drug and Alcohol Testing, by amending Sections 262.3(m); 262.105 (b); 262.119(a) & 262.119(b); 262.225(a)(1); 262.229(a) & 262.229(c), and adding Sections: 262.117(a)(5) and 262.227(b)(4) to read as follows:

§ 262.3 - Definitions.
As used in this Part:
(b) Administrator means the Administrator of the [Research and Special Programs Administration (RSPA)]*Pipeline and Hazardous Materials Safety Administration (PHMSA)* of the Federal Department of Transportation (DOT), or his or her delegate.

(m) Prohibited drug means any of the [following substances specified in Schedule I or Schedule II of the Controlled Substances Act 21 U.S.C. 801.812 (1981 & 1987) Cum. P.P.): marijuana, cocaine, opiates, amphetamines, and phencyclidine (PCP)] *substances specified in 49 CFR part 40.*

(o) [RSPA]*PHMSA* means the [Research and Special Programs]*Pipeline and Hazardous Materials Safety* Administration of the Federal Department of Transportation.

§ 262.105 - Drug tests required
(b) Post-accident testing. As soon as possible but no later than 32 hours after an accident, an operator [shall] *must* drug test each *surviving covered* employee whose performance *of a covered function* either contributed to the accident or cannot be completely discounted as a contributing factor to the accident. An operator may decide not to test under this paragraph but such a decision must be based on [the best] *specific* information [available immediately after the accident] that the *covered* employee's performance [could have not contributed to the accident or that, because of the time be-

tween that performance and the accident, it is not likely that a drug test would reveal whether the performance was affected by drug use.] *had no role in the cause(s) or severity of the accident. If a test required by this section is not administered within the 32 hours following the accident, the operator must prepare and maintain its decision stating the reasons why the test was not promptly administered. If a test required by paragraph (b) of this section is not administered within 32 hours following the accident, the operator must cease attempts to administer a drug test and must state in the record the reasons for not administering the test.*

§ 262.117 – Recordkeeping

(a)

(5) *Records of decisions not to administer post-accident employee drug tests must be kept for at least 3 years.*

§ 262.119 Reporting of anti-drug testing results

(a) Each large operator (having more than 50 covered employees) [shall] *must* submit an annual MIS report to RSPA of its anti-drug testing using the management information system (MIS) form and instructions as required by 49 CFR part 40 (at section 40.25 and appendix H to part 40), not later than March 15th of each year for the prior calendar year (January 1st through December 31st). The administrator [shall] *may* require by [written] *written in the PHMSA Portal (https://portal.phmsa.dot.gov/ phmsaportallanding)* that small operators (50 or fewer covered employees), not otherwise required to submit annual MIS reports, to prepare and submit such reports to [RSPA]*PHMSA*.

(b) Each report required under this section [shall] *must* be submitted [to the Office of Pipeline Safety, Research and Special Programs Administration, U.S. Department of Transportation, Room 7128, 400 Seventh Street, SW, Washington, DC 20590.] *electronically at http://damis.dot.gov. An operator may obtain the user name and password needed for electronic reporting from the PHMSA Portal (https://portal.phmsa.dot.gov/ phmsaportallanding). If electronic reporting imposes an undue burden and hardship, the operator may submit a written request for an alternative reporting method to the Information Resources Manager, Office of Pipeline Safety, Pipeline and Hazardous Materials Safety Administration, 1200 New Jersey Avenue SE., Washington, DC 20590. The request must describe the undue burden and hardship. PHMSA will review the request and may authorize, in writing, an alternative reporting method. An authorization will state the period for which it is valid, which may be indefinite. An operator must contact PHMSA at 202-366-8075, or electronically to informationresourcesmanager@dot.gov to make arrangements for submitting a report that is due after a request for alternative reporting is submitted but before an authorization or denial is received.*

§ 262.225 Alcohol tests required

(a) Post-accident

(1) As soon as practicable following an accident, each operator [shall] *must* test each surviving covered employee for alcohol if that employee' s performance of a covered function either contributed to the accident or cannot be completely discounted as a contributing factor to the accident. The decision not to administer a test under this section [shall] *must* be based [on the operator's determination, using the best available] *specific information [at the time of the determination], that the covered employee's performance [could not have contributed to] had no role in the* cause(s) or severity of the accident.

(b)

(4)

(i) If a test required by this section is not administered within two hours following the determination under paragraph (2) of this subdivision, the operator shall prepare and maintain on file a record stating the reasons the test was not promptly administered. If a test required by this section is not administered within eight hours following the determination under paragraph (2) of this subdivision, the operator shall cease attempts to administer an alcohol test and shall state in the record the reasons for not administering the test. Records shall be submitted to [RSPA]*PHMSA* upon request of the administrator.;

§ 262.227 Retention of records

(4) *Three years. Records of decisions not to administer post- accident employee alcohol tests must be kept for a minimum of three years.*

§ 262.229 Reporting of alcohol testing results

(a) Each large operator (having more than 50 covered employees) [shall] *must* submit an annual MIS report to RSPA of its alcohol testing results using the management information system (MIS) form and instructions as required by 49 CFR part 40 (at section 40.25 and appendix H to part 40), by March 15th of each year for the previous calendar year (January 1st though December 31st). The administrator may require by [written] *notice in the PHMSA Portal (https://portal.phmsa.dot.gov/phmsaportallanding)* that a small operator (50 or fewer covered employees), not otherwise required to submit annual MIS reports, submit such a report to [RSPA]*PHMSA*.

(c) Each report required under this section, [shall] *must* be submitted [to

the Office of Pipeline Safety (OPS), Research and Special Program Administration, Department of Transportation, Room 7128, 400 Seventh Street SW, Washington, DC 20590.] *electronically at http://damis.dot.gov. An operator may obtain the user name and password needed for electronic reporting from the PHMSA Portal (https://portal.phmsa.dot.gov/ phmsaportallanding). If electronic reporting imposes an undue burden and hardship, the operator may submit a written request for an alternative reporting method to the Information Resources Manager, Office of Pipeline Safety, Pipeline and Hazardous Materials Safety Administration, 1200 New Jersey Avenue SE., Washington, DC 20590. The request must describe the undue burden and hardship. PHMSA will review the request and may authorize, in writing, an alternative reporting method. An authorization will state the period for which it is valid, which may be indefinite. An operator must contact PHMSA at 202-366-8075, or electronically to informationresourcesmanager@dot.gov to make arrangements for submitting a report that is due after a request for alternative reporting is submitted but before an authorization or denial is received.* [RSPA]*PHMSA* will allow the operator the option of sending the report on the computer disk provided by [RSPA]*PHMSA*. If this option is used, a signature page attesting to the validity of the information on the computer disk must be sent to the address in this section.

*Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.state.ny.us/f96dir.htm. For questions, contact:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: John.Pitucci@dps.ny.gov

*Data, views or arguments may be submitted to:* Michelle L. Phillips, Acting Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6530, email: secretary@dps.ny.gov

*Public comment will be received until:* 60 days after publication of this notice.

*Consensus Rule Making Determination*

This rulemaking is being proposed to bring sections of Title 16 NYCRR related to pipeline safety into conformance with the minimum Federal regulations related to pipeline safety adopted in January 23, 2017. The proposed changes to Title 16 NYCRR, Part 262, Drug and Alcohol Testing are intended to bring this part into conformance with recent amendments to 49 CFR Part 199. The Commission proposes to update references to published engineering standards incorporated by reference, as required by the federal regulations, due to recent revisions to those standards. Consequently, no person is likely to object to the adoption of the rule as written.

*Job Impact Statement*

The Department of Public Service projects that there will be no adverse impact on jobs or employment opportunities in the State of New York (State) because of this proposed rule change. This proposed rule change is intended to bring Title 16 NYCRR Chapter III, Subchapter C, Part 262, Drug and Alcohol Testing, into conformance with recent amendments to Title 49, Code of Federal Regulations, Part 199, Drug and Alcohol Testing. Nothing in this proposed rule change will create any adverse impacts on jobs or employment opportunities in the State. No further steps were needed to ascertain these facts, and none were taken. As apparent from the nature and purpose of this proposed rule change, a full Job Impact Statement is not required and therefore one has not been prepared.

(19-G-01815P1)

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Technical Amendments of State Regulations and Administrative Corrections**

**I.D. No.** PSC-53-19-00004-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Amendment of Parts 10 and 255 of Title 16 NYCRR. This rule is proposed pursuant to SAPA section 207(3), 5-Year Review of Existing Rules.

*Statutory authority:* Public Service Law, sections 65 and 66

*Subject:* Technical Amendments of State regulations and Administrative Corrections.

*Purpose:* To make the provision of natural gas service safer in New York State.

*Substance of proposed rule (Full text is posted at the following State website: www.dps.ny.gov):* This rule is being proposed to bring sections of Title 16 NYCRR Part 10 (Part 10), Referenced Material, and Part 255,

Transmission and Distribution of Gas, (Part 255) related to pipeline safety into conformance with recent amendments to 49 CFR Part 192 related to pipeline safety. A new section and administrative changes are being proposed to ensure the safety of gas pipeline systems. The proposed changes to Title 16 NYCRR Parts 10 (Referenced Material) and Part 255 (Transmission and Distribution of Gas), are intended to bring this part into conformance with recent amendments to 49 CFR Part 192.

*Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.state.ny.us/f96dir.htm. For questions, contact:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: John.Pitucci@dps.ny.gov

*Data, views or arguments may be submitted to:* Michelle L. Phillips, Acting Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6530, email: secretary@dps.ny.gov

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement*
Statutory Authority:
Public Service Law (PSL) §§ 4, 5, 65 and 66 assign to the Public Service Commission (PSC, Commission) jurisdiction, supervision, powers, and duties over all gas corporations in the State and the conveying, transportation, and distribution of gas, which includes "all powers necessary or proper," to ensure that gas service is "safe and adequate and in all respects just and reasonable." The PSC has general supervision of all gas corporations (commonly referred to as local distribution companies, or LDCs) operating throughout the State and of all property owned, leased or operated by a gas company in connection with or to facilitate the conveying, transportation, distribution, or furnishing of gas for light, heat or power. See PSL §§ 4(1), 5(1)(b), 65(1) and 66(1). Pursuant to its statutory mandate to ensure safe and adequate gas service, in 1968 the Commission adopted gas safety regulations, found primarily in 16 NYCRR Part 255 (Part 255), which have been amended from time to time to further ensure the safety of New York's gas delivery system.

In 1994, the federal Natural Gas Pipeline Safety Act (the Act), 49 USC § 60101 et. seq., included intrastate gas pipelines within federal jurisdiction for safety purposes. The United States Department of Transportation (USDOT) adopted regulations that apply federal safety standards for gas "pipeline facilities," defined as "new and existing pipelines, rights-of-way, and any equipment, facility, or building used in the transportation of gas or in the treatment of gas during the course of transportation." 49 CFR § 192.3. USDOT also established minimum safety standards that apply to "owners and operators of pipeline facilities" [49 USC § 60102(a)(2)(A)]. 49 USC § 60102 (a)(2)(C), 49 CFR §§ 192.801-192.809. The USDOT's Pipeline and Hazardous Materials Safety Administration (PHMSA), acting through its Office of Pipeline Safety, administers and enforces the federal safety standards.

A State may, however, pursuant to 49 USC § 60105, assume oversight and enforcement authority over intrastate gas pipeline facilities if the State submits a certification to USDOT/PHMSA that the State has adopted each applicable federal standard. 49 USC § 60105(a). A State that has submitted a current certification under § 60105(a) may adopt additional or more stringent safety standards for intrastate pipeline facilities only if the standards are compatible with the minimum federal standards. 49 USC § 60104(c).

The Commission implements the gas safety program in New York State through 16 NYCRR Part 255. The Department of Public Service (DPS, Department) makes annual certifications to USDOT/PHMSA that the State has asserted appropriate regulatory jurisdiction and has adopted and is enforcing the applicable federal standards. Therefore, the Commission proposes this rule in furtherance of its gas service oversight responsibilities under the PSL and to amend portions of its gas safety regulations in conformance with federal standards.

Legislative Objectives:
The objective of both the State and federal statutes is to ensure the safe and adequate supply and delivery of natural gas. The proposed amendments to 16 NYCRR Part 255 meets these objectives because the amendments align state rules with already-approved and effective federal safety standards.

Needs and Benefits:
The proposed regulatory changes are necessary to align the Commission's gas safety regulations with the federal regulations to ensure that the Commission may continue to make its annual § 60105 certification to USDOT and remain eligible for federal funding to implement New York's gas safety program. Pursuant to 49 USC § 60107, the PSC receives federal funding, which pays for up to 80 percent of the Department's costs for carrying out its certified pipeline safety program.

In addition, we have included a new section, § 255.724, that requires, whenever an operator has access to a customer's premises for, among

other things, responding to an odor complaint or conducting inspections required under sections 255.481 or 255.723 of this Part, where the service line is installed below grade through the outer foundation wall of a building, the operator shall visually inspect the seal at the foundation wall and repair or install the seal, as needed.

Costs:
Costs to Private Regulated Parties:
Any increase in cost associated with the new proposed amendments would be recovered by LDCs through gas delivery rates.
Costs to Local Government:
There are no anticipated added costs to local governments.
Costs to the Public Service Commission or the Department of Public Service:
There are no anticipated added costs to local governments.
Costs to Other State Agencies:
There are no known or identifiable costs to other State agencies or offices of State government.
Local Government Mandates:
None.
Paperwork:
None.
Duplication:
The purpose of the new regulations is to align them with federal gas safety regulations. There are no relevant State regulations that duplicate, overlap, or conflict with the proposed revisions.
Alternatives:
There is a "No action alternative," but such an alternative is not preferable as it would result in the DPS being out of compliance with federal standards.
Federal Standards:
The proposed revisions are intended to implement regulations that are at least as stringent as similar standards of the Federal government, 49 CFR Part 192.
Compliance Schedule:
The proposed revisions would be effective upon publication of a Notice of Adoption filed in the New York State Register.

*Regulatory Flexibility Analysis*
1. Effect of rule: The proposed rule aligns New York State gas safety regulations with recently enacted (2018) Pipeline and Hazardous Materials Administration (PHMSA) regulation changes and makes two clarifications to avoid industry confusion.
2. Compliance requirements: There are no additional burdens on industry to increase reporting requirements resulting from the proposed rule.
3. Professional services: There are no professional services that a small business or local government is likely to need to comply with the changes associated with this rule.
4. Compliance costs: Costs to industry, local municipal gas companies and unions are not expected. Gas companies will recover any added costs associated with the new proposed section, § 255.724, that require, whenever an operator has access to a customer's premises for, among other things, responding to an odor complaint or conducting inspections required under sections 255.481 or 255.723 of this Part, where the service line is installed below grade through the outer foundation wall of a building, the operator shall visually inspect the seal at the foundation wall and repair or install the seal, as needed.
5. Economic and technological feasibility: The proposed rule does not require any specialized technology for compliance.
6. Minimizing adverse impact: No adverse impacts exist.
7. Small business and local government participation: Small businesses and local governments are not affected by the rule changes. However, the PSC will comply with the New York State Administrative Procedure Act (SAPA) section 202-b(6) by accepting public comments to the Notice of Proposed Rulemaking and will be summarizing comments and responding to comments that are received.
8. Cure period: No cure period is included in the proposed rule. Gas Safety Section Staff at the Department of Public Service typically offers utilities a thirty (30) day cure period to correct deficiencies in biannual audit findings and prior to recommending the pursuit of any enforcement.

*Rural Area Flexibility Analysis*
1. Types and estimated numbers of rural areas: This rule applies to the entire State and impacts all rural areas of the State.
2. Reporting, recordkeeping and other compliance requirements; and professional services: The rules apply only to gas and petroleum operators and will have no reporting, recordkeeping and other compliance requirements specific to rural areas.
3. Costs: The rules apply only to gas operators and will create no added costs specific to rural areas.
4. Minimizing adverse impact: No adverse impacts exist relative to the current amendments.

5. Rural area participation: Gas companies that operate in rural areas have participated in the stakeholder process.

Furthermore, the Public Service Commission will be accepting public comments to the Notice of Proposed Rulemaking and will be summarizing and responding to the comments that are received.

**Job Impact Statement**

The Department of Public Service projects that there will be no adverse impact on jobs or employment opportunities in the State of New York (State) because of this proposed rule change. This proposed rule change is intended to bring Title 16 NYCRR Part 10, Referenced Material (Part 10) and Part 255, Transmission and Distribution of Gas (Part 255), into conformance with recent amendments to 49 CFR Part 192. Additionally, a new section and revisions to two sections of Part 255 are being proposed. Nothing in this proposed rule change will create any adverse impacts on jobs or employment opportunities in the State. For the new requirement to add or replace a seal at the inside foundation wall, the same utility workers completing inside gas service line inspections will replace or install the seal and only when necessary. No further steps were needed to ascertain these facts, and none were taken. As apparent from the nature and purpose of this proposed rule change, a full Job Impact Statement is not required and therefore one has not been prepared.

(19-G-0182SP1)

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**To Amend the Terms to Which the Customer Must Abide When Discontinuing Gas Service**

**I.D. No.** PSC-53-19-00006-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

**Proposed Action:** The Commission is considering a proposal filed by National Fuel Gas Distribution Corporation to modify its gas tariff schedule, P.S.C. No. 9, regarding discontinuance of service by the customer.

**Statutory authority:** Public Service Law, sections 65 and 66

**Subject:** To amend the terms to which the customer must abide when discontinuing gas service.

**Purpose:** To ensure safe and adequate service at just and reasonable rates charged to customers without preferences.

**Substance of proposed rule:** The Commission is considering a proposed tariff amendment filed by National Fuel Gas Distribution Corporation (National Fuel) on December 5, 2019 to revise its gas tariff schedule, P.S.C. No. 9 – Gas.

National Fuel proposes to modify the aspect of General Information Section II.9. A. – Discontinuance of Service related to the discontinuance of service by the customer. Specifically, National Fuel proposes to add tariff language stating that customers who wish to discontinue gas service would also need to provide access to the meter and would remain liable for all gas that passes through the meter until notice and access is provided. The proposed amendment has an effective date of April 1, 2020.

The full text of the tariff amendment and the full record of the proceeding may be reviewed online at the Department of Public Service web page: www.dps.ny.gov. The Commission may adopt, reject or modify, in whole or in part, the action proposed and may resolve related matters.

**Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.ny.gov/f96dir.htm. For questions, contact:** John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov

**Data, views or arguments may be submitted to:** Michelle L. Phillips, Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6517, email: secretary@dps.ny.gov

**Public comment will be received until:** 60 days after publication of this notice.

**Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement**

Statements and analyses are not submitted with this notice because the proposed rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-G-0746SP1)

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Notice of Intent to Submeter Electricity**

**I.D. No.** PSC-53-19-00007-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

**Proposed Action:** The Commission is considering the notice of intent of MHANY Cortelyou LLC to submeter electricity at 1921 Cortelyou Road, Brooklyn, New York, 11226.

**Statutory authority:** Public Service Law, sections 2, 4(1), 30, 32-48, 52, 53, 65(1), 66(1), (2), (3), (4), (12) and (14)

**Subject:** Notice of intent to submeter electricity.

**Purpose:** To ensure adequate submetering equipment and consumer protections are in place.

**Substance of proposed rule:** The Commission is considering the notice of intent filed by MHANY Cortelyou LLC, on December 10, 2019, to submeter electricity at 1921 Cortelyou Road, Brooklyn, New York, 11226, located in the service territory of Consolidated Edison Company of New York, Inc. (Con Edison).

By stating its intent to submeter electricity, MHANY Cortelyou LLC requests authorization to take electric service from Con Edison and then distribute and meter that electricity to its tenants. Submetering of electricity to residential tenants is allowed so long as it complies with the protections and requirements of the Commission's regulations in 16 NYCRR Part 96.

The full text of the notice of intent and the full record of the proceeding may be reviewed online at the Department of Public Service web page: www.dps.ny.gov. The Commission may adopt, reject or modify, in whole or in part, the action proposed and may resolve related matters.

**Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.ny.gov/f96dir.htm. For questions, contact:** John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov

**Data, views or arguments may be submitted to:** Michelle L. Phillips, Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6530, email: secretary@dps.ny.gov

**Public comment will be received until:** 60 days after publication of this notice.

**Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement**

Statements and analyses are not submitted with this notice because the proposed rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.

(19-E-0762SP1)

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Extension of Time for Issuance of Securities and Other Forms of Indebtedness**

**I.D. No.** PSC-53-19-00008-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

**Proposed Action:** The Commission is considering a petition by Niagara Mohawk Power Corporation d/b/a National Grid requesting a twelve month extension of the authority to issue up to $2.07 billion of new long-term debt securities.

**Statutory authority:** Public Service Law, section 69

**Subject:** Extension of time for issuance of securities and other forms of indebtedness.

**Purpose:** To consider an additional twelve months for the issuance of securities and other forms of indebtedness.

**Substance of proposed rule:** The Commission is considering a petition filed on December 6, 2019 by Niagara Mohawk Power Corporation d/b/a National Grid (Niagara Mohawk) requesting a twelve month extension of the authority granted in an Order, dated May 19, 2016 and filed in Case 15-M-0509 (2016 Financing Order), to issue up to $2.07 billion of new long-term debt securities until March 31, 2021.

The 2016 Financing Order authorized Niagara Mohawk to issue up to $2.07 billion of long-term debt comprised of up to $1.94 billion of new long-term debt and up to $429.5 million of debt to refinance existing auction rate debt. Niagara Mohawk has utilized approximately $924 million of the financing authorization provided under the order through a new long-term issuance of $500 million and refinancing of $424 million. Thus, Niagara Mohawk has approximately $1.15 billion of authority available to it to issue long term securities under the 2016 Financing Order.

Niagara Mohawk projects that it will be more beneficial for it to issue new long-term debt in the second half of calendar year 2020. Niagara Mohawk also asserts that an extension of its financing authority will provide more time to assess market conditions and identify the optimal time to issue new long-term debt. However, the 2016 Financing Order authorizes the Company to issue this debt only until March 31, 2020. Therefore, the Company seeks authority from the Commission to issue the previously authorized $2.07 billion of new long-term debt securities until March 31, 2021.

The full text of the petition and the full record of the proceeding may be viewed online at the Department of Public Service web page: www.dps.ny.gov. The Commission may adopt, reject, or modify, in whole or in part, the action proposed and may resolve related matters.

*Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.ny.gov/f96dir.htm. For questions, contact:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov

*Data, views or arguments may be submitted to:* Michelle L. Phillips, Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6530, email: secretary@dps.ny.gov

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement*
Statements and analyses are not submitted with this notice because the proposed rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.
(15-M-0509SP2)

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Transfer of Street Lighting Facilities**

**I.D. No.**  PSC-53-19-00009-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* The Commission is considering a petition filed by Rochester Gas and Electric Corporation requesting the transfer of certain street lighting facilities to the Village of Sodus Point.

*Statutory authority:* Public Service Law, sections 65, 66 and 70

*Subject:* Transfer of street lighting facilities.

*Purpose:* To consider whether the transfer of certain street lighting facilities is in the public interest.

*Substance of proposed rule:* The Public Service Commission (Commission) is considering a petition filed by Rochester Gas and Electric Corporation, on November 25, 2019, requesting the transfer of certain street lighting facilities to the Village of Sodus Point.

The original cost of the facilities was approximately $297,242 and would be sold for $187,074, which represents the current fair market value of the facilities. The current net book value of the assets is $135,797.

The full text of the petition and the full record of the proceeding may be viewed online at the Department of Public Service web page: www.dps.ny.gov. The Commission may adopt, reject, or modify, in whole or in part, the action proposed and may resolve related matters.

*Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.ny.gov/f96dir.htm. For questions, contact:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov

*Data, views or arguments may be submitted to:* Michelle L. Phillips, Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6530, email: secretary@dps.ny.gov

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement*
Statements and analyses are not submitted with this notice because the proposed rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.
(19-E-0734SP1)

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**To Clarify the Term "Customer" Under Rule 28 — Special Services Performed by Company for Customer at a Charge**

**I.D. No.**  PSC-53-19-00010-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* The Commission is considering a proposal filed by Niagara Mohawk Power Corporation d/b/a National Grid to modify P.S.C. No. 220 — Electricity to clarify the applicability of the term "customer" under Rule 28.

*Statutory authority:* Public Service Law, sections 65 and 66

*Subject:* To clarify the term "customer" under Rule 28 — Special Services Performed by Company for Customer at a Charge.

*Purpose:* To ensure safe and adequate service at just and reasonable rates charged to customers without preferences.

*Substance of proposed rule:* The Commission is considering a proposed tariff amendment filed by Niagara Mohawk Power Corporation d/b/a National Grid (National Grid or the Company) on December 12, 2019 to amend its electric tariff schedule, P.S.C. No. 220 – Electricity.

National Grid proposes to modify Rule 28 – Special Services Performed by Company for Customer at a Charge to clarify language regarding who is included within the meaning of the term "customer" for entities and individuals requesting services under Rules 28.1-28.4. Rule 28 is applicable to services and facilities requested by entities and individuals that are beyond the Company's general service obligations, e.g., installation of additional facilities, performance of additional services and removal or relocation of existing facilities for customer-driven reasons. National Grid proposes to clarify that the term "customer" refers to any applicant, customer, or third party requesting the work, services and facilities performed and/or installed by the Company under Rule 28. Thus, for the purposes of Rule 28, the term customer would include those requesting special services whether or not the entity takes electric service from National Grid. The proposed amendment has an effective date of April 1, 2020.

The full text of the tariff amendment and the full record of the proceeding may be reviewed online at the Department of Public Service web page: www.dps.ny.gov. The Commission may adopt, reject or modify, in whole or in part, the action proposed and may resolve related matters.

*Text of proposed rule and any required statements and analyses may be obtained by filing a Document Request Form (F-96) located on our website http://www.dps.ny.gov/f96dir.htm. For questions, contact:* John Pitucci, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 486-2655, email: john.pitucci@dps.ny.gov

*Data, views or arguments may be submitted to:* Michelle L. Phillips, Secretary, Public Service Commission, 3 Empire State Plaza, Albany, New York 12223-1350, (518) 474-6517, email: secretary@dps.ny.gov

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement, Regulatory Flexibility Analysis, Rural Area Flexibility Analysis and Job Impact Statement*
Statements and analyses are not submitted with this notice because the proposed rule is within the definition contained in section 102(2)(a)(ii) of the State Administrative Procedure Act.
(19-E-0767SP1)

# State University of New York

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Proposed Amendments to the Traffic and Parking Regulations at State University of New York College at Old Westbury**

**I.D. No.** SUN-53-19-00002-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Amendment of Part 581 of Title 8 NYCRR.

*Statutory authority:* Education Law, section 360(1)

*Subject:* Proposed amendments to the traffic and parking regulations at State University of New York College at Old Westbury.

*Purpose:* Amend existing regulations to update traffic and parking regulations.

*Substance of proposed rule (Full text is posted at the following State website: https://system.suny.edu/proposed-regulations/):* The operation of a motor vehicle on the property of the State University College at Old Westbury is covered under section 360 of the Education Law, which authorizes the State University to adopt and make applicable to its campuses any and all provisions of the Vehicle and Traffic Law. The regulations have been developed and are enforced to provide for the safety and convenience of students, faculty, employees and visitors upon the State University College at Old Westbury campus. The proposed rule makes certain technical changes and amends existing regulations concerning registration, permits, penalties, parking lots, fee, fines and appeals.

*Text of proposed rule and any required statements and analyses may be obtained from:* Lisa Campo, State University of New York, System Administration, State University Plaza, S-313, Albany, NY 12246, (518) 320-1400, email: Lisa.Campo@SUNY.edu

*Data, views or arguments may be submitted to:* Same as above.

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement*
    1. Statutory authority: Education Law § 360(1) authorizes the State University Trustees to make rules and regulations relating to parking, vehicular and pedestrian traffic and safety on the State-operated campuses of the State University of New York.
    2. Legislative objectives: The present measure makes technical amendments to the parking and traffic regulations applicable to the State University of New York at Old Westbury.
    3. Needs and benefits: The amendments are necessary to update existing regulations as a result of changes.
    4. Costs: None.
    5. Local government mandates: None.
    6. Paperwork: None.
    7. Duplication: None.
    8. Alternatives: There are no viable alternatives.
    9. Federal standards: There are no related Federal standards.
    10. Compliance schedule: The College at Old Westbury will notify those affected as soon as the rule is effective. Compliance should be immediate.

*Regulatory Flexibility Analysis*
No regulatory flexibility analysis is submitted with this notice because this proposal does not impose any requirements on small businesses and local governments. This proposed rule making will not impose any adverse economic impact on small businesses and local governments or impose any reporting, recordkeeping or other compliance requirements on small businesses and local governments. The proposal addresses internal parking and traffic regulations on the campus of the State University of New York at Old Westbury.

*Rural Area Flexibility Analysis*
No rural area flexibility analysis is submitted with this notice because this proposal will not impose any adverse economic impact on rural areas or impose any reporting, recordkeeping or other compliance requirements on public or private entities in rural areas. The proposal addresses internal parking and traffic regulations on the campus of the State University of New York at Old Westbury.

*Job Impact Statement*
No job impact statement is submitted with this notice because this proposal does not impose any adverse economic impact on existing jobs or employment opportunities. The proposal addresses internal parking and traffic regulations on the College of Old Westbury of the State University of New York.

## PROPOSED RULE MAKING
## NO HEARING(S) SCHEDULED

**Proposed Amendments to the Traffic and Parking Regulations at State University Agricultural and Technical College at Morrisville**

**I.D. No.** SUN-53-19-00005-P

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

*Proposed Action:* Amendment of Part 580 of Title 8 NYCRR.

*Statutory authority:* Education Law, section 360(1)

*Subject:* Proposed amendments to the traffic and parking regulations at State University Agricultural and Technical College at Morrisville.

*Purpose:* Amend existing regulations to update traffic and parking regulations.

*Substance of proposed rule (Full text is posted at the following State website: https://system.suny.edu/proposed-regulations/ ):* The operation of a motor vehicle on the property of the State University Agricultural and Technical College at Morrisville is covered under section 360 of the Education Law, which authorizes the State University to adopt and make applicable to its campuses any and all provisions of the Vehicle and Traffic Law. The regulations have been developed and are enforced to provide for the safety and convenience of students, faculty, employees and visitors upon the State University Agricultural and Technical College at Morrisville campus. The proposed rule makes certain technical changes and amends existing regulations concerning registration, permits, penalties, parking lots, fines and appeals.

*Text of proposed rule and any required statements and analyses may be obtained from:* Lisa Campo, State University of New York, System Administration, State University Plaza, S-313, Albany, NY 12246, (518) 320-1400, email: Lisa.Campo@SUNY.edu

*Data, views or arguments may be submitted to:* Same as above.

*Public comment will be received until:* 60 days after publication of this notice.

*Regulatory Impact Statement*
    1. Statutory authority: Education Law § 360(1) authorizes the State University Trustees to make rules and regulations relating to parking, vehicular and pedestrian traffic and safety on the State-operated campuses of the State University of New York.
    2. Legislative objectives: The present measure makes technical amendments to the parking and traffic regulations applicable to the State University Agricultural and Technical College at Morrisville.
    3. Needs and benefits: The amendments are necessary to update existing regulations as a result of changes.
    4. Costs: None.
    5. Local government mandates: None.
    6. Paperwork: None.
    7. Duplication: None.
    8. Alternatives: There are no viable alternatives.
    9. Federal standards: There are no related Federal standards.
    10. Compliance schedule: The Agricultural and Technical College at Morrisville will notify those affected as soon as the rule is effective. Compliance should be immediate.

*Regulatory Flexibility Analysis*
No regulatory flexibility analysis is submitted with this notice because this proposal does not impose any requirements on small businesses and local governments. This proposed rule making will not impose any adverse economic impact on small businesses and local governments or impose any reporting, recordkeeping or other compliance requirements on small businesses and local governments. The proposal addresses internal parking and traffic regulations on the campus of the State University Agricultural and Technical College at Morrisville.

*Rural Area Flexibility Analysis*
No rural area flexibility analysis is submitted with this notice because this proposal will not impose any adverse economic impact on rural areas or impose any reporting, record keeping or other compliance requirements on public or private entities in rural areas. The proposal addresses internal parking and traffic regulations on the campus of the State University Agricultural and Technical College at Morrisville.

*Job Impact Statement*

No job impact statement is submitted with this notice because this proposal does not impose any adverse economic impact on existing jobs or employment opportunities. The proposal addresses internal parking and traffic regulations on the State University Agricultural and Technical College at Morrisville.

# Office of Victim Services

### NOTICE OF ADOPTION

**Limits on Administrative Expenses and Executive Compensation**

**I.D. No.** OVS-36-19-00007-A

**Filing No.** 1150

**Filing Date:** 2019-12-17

**Effective Date:** 2019-12-31

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* Repeal of section 525.24(d)(2); addition of new section 525.24(d)(2) to Title 9 NYCRR.

*Statutory authority:* Executive Law, section 623(3); Executive Order No. 38

*Subject:* Limits on administrative expenses and executive compensation.

*Purpose:* To codify the determination made in the Matter of Leading Age NY, Inc. v. Shah (2018), striking a portion of the rule.

*Text or summary was published* in the September 4, 2019 issue of the Register, I.D. No. OVS-36-19-00007-P.

*Final rule as compared with last published rule:* No changes.

*Text of rule and any required statements and analyses may be obtained from:* John Watson, Counsel, Office of Victim Services, 80 South Swan Street, 2nd Floor, Albany, NY 12210, (518) 457-8066, email: john.watson@ovs.ny.gov

*Initial Review of Rule*

As a rule that requires a RFA, RAFA or JIS, this rule will be initially reviewed in the calendar year 2022, which is no later than the 3rd year after the year in which this rule is being adopted.

*Assessment of Public Comment*

The agency received no public comment.

**Rule Making Activities**                                              **NYS Register/December 31, 2019**

# HEARINGS SCHEDULED
# FOR PROPOSED RULE MAKINGS

| Agency I.D. No. | Subject Matter | Location—Date—Time |
|---|---|---|
| **Environmental Conservation, Department of** | | |
| ENV-43-19-00006-P . . . . . . . . . . . . . . . . . . . . . . | Class I and Class SD waters | Department of Environmental Conservation, Region 2, 4740 21st St., Long Island City, NY—January 8, 2020, 2:00 p.m. |
| ENV-43-19-00010-P . . . . . . . . . . . . . . . . . . . . . . | Repeal and replace 6 NYCRR Part 622 and amend 6 NYCRR Parts 620, 621 and 624 | Department of Environmental Conservation, 625 Broadway, Albany, NY—January 7, 2020, 1:00 p.m. |
| ENV-48-19-00008-P . . . . . . . . . . . . . . . . . . . . . . | Plastic bag reduction, reuse and recycling | Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129A/B, Albany, NY—January 27, 2020, 1:00 p.m. |
| ENV-53-19-00016-P . . . . . . . . . . . . . . . . . . . . . . | Certain substances that contain hydrofluorocarbons, highly-potent greenhouse gases | Department of Environmental Conservation, 625 Broadway, Public Assembly Rm. 129A/B, Albany, NY—March 4, 2020, 12:30 p.m. |
| | | Henrietta Public Library, 625 Calkins Rd., Community Rm., Rochester, NY—March 6, 2020, 12:30 p.m. |
| | | Department of Environmental Conservation, Region 2 Office, 47-40 21st St., 8th Fl., Rm. 834A/834B, Long Island City, NY—March 9, 2020, 12:30 p.m. |

# ACTION PENDING
# INDEX

The action pending index is a list of all proposed rules which are currently being considered for adoption. A proposed rule is added to the index when the notice of proposed rule making is first published in the *Register*. A proposed rule is removed from the index when any of the following occur: (1) the proposal is adopted as a permanent rule; (2) the proposal is rejected and withdrawn from consideration; or (3) the proposal's notice expires.

Most notices expire in approximately 12 months if the agency does not adopt or reject the proposal within that time. The expiration date is printed in the second column of the action pending index. Some notices, however, never expire. Those notices are identified by the word "exempt" in the second column. Actions pending for one year or more are preceded by an asterisk(*).

For additional information concerning any of the proposals listed in the action pending index, use the identification number to locate the text of the original notice of proposed rule making. The identification number contains a code which identifies the agency, the issue of the *Register* in which the notice was printed, the year in which the notice was printed and the notice's serial number. The following diagram shows how to read identification number codes.

| Agency code | Issue number | Year published | Serial number | Action Code |
|---|---|---|---|---|
| **AAM** | **01** | **12** | **00001** | **P** |

Action codes: P — proposed rule making; EP — emergency and proposed rule making (expiration date refers to proposed rule); RP — revised rule making

---

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## AGING, OFFICE FOR THE

| AGE-34-19-00014-P | 08/20/20 | Limits on Administrative Expenses and Executive Compensation | To bring this rule into compliance with current law in New York State |

## AGRICULTURE AND MARKETS, DEPARTMENT OF

| AAM-21-19-00002-ERP | 05/21/20 | Control of the European Cherry Fruit Fly | To help control the spread of the European Cherry Fruit Fly (ECFF), which renders cherries unmarketable if they are infested. |
| AAM-33-19-00003-P | 08/13/20 | State aid to districts | To conform Part 363 to S&WCL Sec. 11-a statutory amendments and to make technical amendments. |
| AAM-43-19-00009-P | 10/22/20 | Control of the Asian Long Horned Beetle (ALB) | To lift approximately 58 square miles of Asian long horned beetle quarantine in Brooklyn and western Queens |
| AAM-47-19-00002-P | 11/19/20 | Golden Nematode (Globodera Rostochiensis) Quarantine | To lift the Golden Nematode quarantine in portions of the Towns of East Hampton and Riverhead in Suffolk County. |

## ALCOHOLISM AND SUBSTANCE ABUSE SERVICES, OFFICE OF

| ASA-44-19-00002-P | 10/29/20 | Limits on administrative expenses and executive compensation | To define limits on administrative expenses and executive compensation in accordance with state law and Executive Order 38 |

## AUDIT AND CONTROL, DEPARTMENT OF

| AAC-49-19-00002-P | 12/03/20 | Relates to interest rate of estimated earnings; filing of documents; maximum loan amount; and electronic signatures | Update and conform regulations relating to interest; filing of documents; maximum loan amount; and electronic signatures |

**Action Pending Index**                                            **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## CHILDREN AND FAMILY SERVICES, OFFICE OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *CFS-51-18-00010-P | 12/19/19 | Residential and non-residential services to victims of domestic violence | To conform the existing regulations to comply with state and federal laws regarding services to victims of domestic violence |
| CFS-36-19-00004-ERP | 09/03/20 | Removal of non-medical exemption from vaccination regulations for child day care programs | To remove the non-medical exemption from vaccination regulations for child day care programs |
| CFS-39-19-00005-EP | 09/24/20 | Implement federal statutory requirements to include enhanced background checks, annual inspections, annual training and safety. | Implement federal statutory requirements to include enhanced background checks, annual inspections, annual training and safety. |
| CFS-39-19-00007-EP | 09/24/20 | Implement statutory requirements to include enhanced background checks, annual inspections, annual training and safety. | Implement statutory requirements to include enhanced background checks, annual inspections, annual training and safety. |
| CFS-42-19-00002-P | 10/15/20 | Permissible disclosure of records maintained by OCFS. | To amend existing regulations regarding the permissible disclosure of records by OCFS. |
| CFS-46-19-00002-P | 11/12/20 | Behavioral health services, elimination of room isolation and authority to operate de-escalation rooms | To implement standards for behavioral health services and the operation of de-escalation rooms and to eliminate room isolation |
| CFS-49-19-00001-P | 12/03/20 | Limits on executive compensation | To remove the soft cap limit on executive compensation |

## CIVIL SERVICE, DEPARTMENT OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| CVS-06-19-00001-P | 02/06/20 | Jurisdictional Classification | To classify a position in the exempt class |
| CVS-25-19-00006-P | 06/18/20 | Jurisdictional Classification | To classify positions in the non-competitive class. |
| CVS-29-19-00013-P | 07/16/20 | Jurisdictional Classification | To classify positions in the exempt class and to delete positions from the non-competitive class |
| CVS-34-19-00011-P | 08/20/20 | Jurisdictional Classification | To delete positions from and classify positions in the non-competitive class |
| CVS-42-19-00009-P | 10/15/20 | Jurisdictional Classification | To classify positions in the exempt class |
| CVS-42-19-00010-P | 10/15/20 | Jurisdictional Classification | To classify positions in the exempt class |
| CVS-42-19-00011-P | 10/15/20 | Jurisdictional Classification | To classify a position in the exempt class |
| CVS-42-19-00012-P | 10/15/20 | Jurisdictional Classification | To delete positions from and classify positions in the non-competitive class |
| CVS-42-19-00013-P | 10/15/20 | Jurisdictional Classification | To delete positions from the non-competitive class |
| CVS-42-19-00014-P | 10/15/20 | Jurisdictional Classification | To classify a position in the exempt class |
| CVS-42-19-00015-P | 10/15/20 | Jurisdictional Classification | To classify a position in the exempt class |
| CVS-42-19-00016-P | 10/15/20 | Jurisdictional Classification | To classify a position in the exempt class |
| CVS-42-19-00017-P | 10/15/20 | Jurisdictional Classification | To delete a position from and classify a position in the exempt class |

**NYS Register/December 31, 2019**                                          Action Pending Index

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **CIVIL SERVICE, DEPARTMENT OF** | | | |
| CVS-42-19-00018-P | . . . . . . . . . . 10/15/20 | Jurisdictional Classification | To classify a position in the non-competitive class |
| CVS-42-19-00019-P | . . . . . . . . . . 10/15/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-42-19-00020-P | . . . . . . . . . . 10/15/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-42-19-00021-P | . . . . . . . . . . 10/15/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-42-19-00022-P | . . . . . . . . . . 10/15/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-42-19-00023-P | . . . . . . . . . . 10/15/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-42-19-00024-P | . . . . . . . . . . 10/15/20 | Jurisdictional Classification | To delete positions from and classify positions in the non-competitive class |
| CVS-42-19-00025-P | . . . . . . . . . . 10/15/20 | Jurisdictional Classification | To delete positions from and classify positions in the exempt and non-competitive classes |
| CVS-42-19-00026-P | . . . . . . . . . . 10/15/20 | Jurisdictional Classification | To classify positions in the exempt class and to delete a position from and classify positions in the non-competitive class |
| CVS-42-19-00027-P | . . . . . . . . . . 10/15/20 | Jurisdictional Classification | To classify positions in the exempt and non-competitive classes |
| CVS-45-19-00003-P | . . . . . . . . . . 11/05/20 | Jurisdictional Classification | To classify a position in the non-competitive class |
| CVS-45-19-00004-P | . . . . . . . . . . 11/05/20 | Jurisdictional Classification | To classify a position in the exempt class |
| CVS-45-19-00005-P | . . . . . . . . . . 11/05/20 | Jurisdictional Classification | To delete positions from and classify a position in the non-competitive class |
| CVS-45-19-00006-P | . . . . . . . . . . 11/05/20 | Jurisdictional Classification | To delete positions from the non-competitive class |
| CVS-45-19-00007-P | . . . . . . . . . . 11/05/20 | Jurisdictional Classification | To delete a position from and classify a position in the exempt class and to delete positions from the non-competitive class |
| CVS-45-19-00008-P | . . . . . . . . . . 11/05/20 | Jurisdictional Classification | To delete positions from and classify a position in the labor class |
| CVS-45-19-00009-P | . . . . . . . . . . 11/05/20 | Jurisdictional Classification | To delete a position from and classify a position in the exempt class |
| CVS-51-19-00002-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To delete positions from and classify positions in the non-competitive class |
| CVS-51-19-00003-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To classify a position in the exempt class |
| CVS-51-19-00004-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To classify positions in the exempt class |
| CVS-51-19-00005-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To classify positions in the exempt class |

**Action Pending Index**                                          **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **CIVIL SERVICE, DEPARTMENT OF** | | | |
| CVS-51-19-00006-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To classify positions in the exempt class |
| CVS-51-19-00007-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-51-19-00008-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-51-19-00009-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-51-19-00010-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To delete positions from the non-competitive class |
| CVS-51-19-00011-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To delete a position from and classify a position in the exempt class |
| CVS-51-19-00012-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-51-19-00013-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| CVS-51-19-00014-P | . . . . . . . . . . 12/17/20 | Jurisdictional Classification | To classify positions in the non-competitive class |
| **CORRECTION, STATE COMMISSION OF** | | | |
| CMC-35-19-00002-P | . . . . . . . . . . 08/27/20 | Disciplinary and administrative segregation of inmates in special housing. | Prohibit the segregation of vulnerable inmates, and to standardize allowable uses and duration of special housing segregation. |
| **CORRECTIONS AND COMMUNITY SUPERVISION, DEPARTMENT OF** | | | |
| CCS-05-19-00006-RP | . . . . . . . . . . 01/30/20 | Standard Conditions of Release Parole Revocation Dispositions | Establish standard conditions of release and provide a workable structure for applying appropriate parole revocation penalties |
| CCS-21-19-00014-P | . . . . . . . . . . 05/21/20 | Adolescent Offender Facilities | To reclassify two existing correctional facilities to adolescent offender facilities. |
| CCS-35-19-00001-P | . . . . . . . . . . 08/27/20 | Special Housing Units | Revisions have been made in order to be in compliance with new laws regarding special housing units and solitary confinement use |
| CCS-50-19-00002-P | . . . . . . . . . . 12/10/20 | Raise the Age | To update each correctional facility's regulation as a direct result of the Raise the Age legislation |
| **CRIMINAL JUSTICE SERVICES, DIVISION OF** | | | |
| CJS-20-19-00003-P | . . . . . . . . . . 05/14/20 | Certified Instructors and Course Directors | Establish/maintain effective procedures governing certified instructors and course directors who deliver MPTC-approved courses |
| CJS-30-19-00010-EP | . . . . . . . . . . 07/23/20 | Use of Force | Set forth use of force reporting and recordkeeping procedures |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **ECONOMIC DEVELOPMENT, DEPARTMENT OF** | | | |
| EDV-43-19-00001-P | . . . . . . . . . . 10/22/20 | Empire State Commercial Production Credit Program | Create administrative procedures for all components of the Empire State Commercial Production Credit Program |
| **EDUCATION DEPARTMENT** | | | |
| EDU-52-18-00005-P | . . . . . . . . . . 12/26/19 | Annual professional performance reviews. | To extend the transition period for an additional year (until 2019-2020). |
| EDU-05-19-00008-RP | . . . . . . . . . . 01/30/20 | Protecting Personally Identifiable Information | To implement the provisions of Education Law section 2-d |
| EDU-17-19-00008-P | . . . . . . . . . . 04/23/20 | To require study in language acquisition and literacy development of English language learners in certain teacher preparation | To ensure that newly certified teachers enter the workforce fully prepared to serve our ELL population |
| EDU-27-19-00010-P | . . . . . . . . . . 07/02/20 | Substantially Equivalent Instruction for Nonpublic School Students | Provide guidance to local school authorities to assist them in fulfilling their responsibilities under the Compulsory Ed Law |
| EDU-31-19-00009-EP | . . . . . . . . . . 07/30/20 | Instructional Time for State Aid purposes | To provide school districts with additional flexibility when establishing their school calendars |
| EDU-39-19-00008-ERP | . . . . . . . . . . 09/24/20 | The Education, Experience, Examination and Endorsement Requirements for Licensure as an Architect | To more closely align New York's requirements for architects with national standards and to streamline the endorsement process. |
| EDU-39-19-00009-P | . . . . . . . . . . 09/24/20 | Requirements for Licensure as an Architect | To more closely align the Commissioner's Regulations with national standards for licensure as an architect. |
| EDU-39-19-00012-P | . . . . . . . . . . 09/24/20 | Building Condition Surveys and Visual and Periodic Inspections of Public School Buildings | To align the Commissioner's Regulations with amendments made to Education Law sections 409-9d, 409-e, and 3641. |
| EDU-43-19-00011-P | . . . . . . . . . . 10/22/20 | Addition of Subject Ares to the Limited Extension and SOCE for Certain Teachers of Students with Disabilities | To enable more qualified teachers of students with disabilities to seek the limited extension and SOCE |
| EDU-43-19-00012-EP | . . . . . . . . . . 10/22/20 | Annual Professional Performance Reviews of Classroom Teachers and Building Principals | Necessary to implement part YYY of chapter 59 of the Laws of 2019 |
| EDU-43-19-00013-P | . . . . . . . . . . 10/22/20 | Requirements for Chiropractic Education Programs and Education Requirements for Licensure as a Chiropractor | To conform educational requirements for the profession of chiropractic to the national preprofessional education standards |
| EDU-47-19-00005-P | . . . . . . . . . . 11/19/20 | Physical Education Requirements for a Diploma and Transfer Credits for Students Earning Credit in an Educational Program. | To implement Raise the Age legislation pursuant to Part WWW of Chapter 59 of the Laws of 2017. |
| EDU-47-19-00006-EP | . . . . . . . . . . 11/19/20 | Permit physicians licensed in another state or territory to provide medical services to athletes and team personnel in New York | To align the Regulations of the Commissioner with chapter 519 of the Laws of 2018 and chapter 199 of the Laws of 2019 |
| EDU-47-19-00007-EP | . . . . . . . . . . 11/19/20 | Profession of Registered Dental Assisting. | To conform the Regulations of the Commissioner with Chapter 390 of the laws of 2019. |
| EDU-52-19-00007-P | . . . . . . . . . . 12/23/20 | Update Provisions Relating to Pupil Transportation | To update provisions of the Commissioner's Regulations relating to pupil transportation |

**Action Pending Index**                                              **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## EDUCATION DEPARTMENT

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| EDU-52-19-00008-EP | . . . . . . . . . . 12/23/20 | Restricted License for Clinical Laboratory Technologist | Implement Chapter 227 of 2019 by adding toxicology to the category of restricted licenses for clinical laboratory technologists |
| EDU-52-19-00009-EP | . . . . . . . . . . 12/23/20 | Continuing Education in the Profession of Public Accountancy | Implement the provisions of chapter 413 of the Laws of 2018 |
| EDU-52-19-00010-EP | . . . . . . . . . . 12/23/20 | Duties and responsibilities of the counsel of the State Education Department | To designate counsel as the deputy commissioner of education as specified in Education Law, section 101 |

## ELECTIONS, STATE BOARD OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| SBE-22-19-00003-EP | . . . . . . . . . . 05/28/20 | Process for Early Voting | Establishing Process for Early Voting |
| SBE-35-19-00003-EP | . . . . . . . . . . 08/27/20 | Ballot Accountability Practices | Establishes additional ballot accountability procedures |

## ENVIRONMENTAL CONSERVATION, DEPARTMENT OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| ENV-18-19-00006-EP | . . . . . . . . . . 04/30/20 | Regulations governing commercial fishing and harvest of scup. | To revise regulations concerning the commercial harvest of scup in New York State waters. |
| ENV-24-19-00002-P | . . . . . . . . . . 08/18/20 | Hazardous Waste Management Regulations (FedReg5) | To amend regulations pertaining to hazardous waste management |
| ENV-27-19-00003-P | . . . . . . . . . . 07/02/20 | Black Bear hunting. | Expand bear hunting opportunities in Wildlife Management Unit 4W to reduce bear abundance. |
| ENV-36-19-00001-P | . . . . . . . . . . 11/07/20 | Waste Fuels | Update permit references, rule citations, monitoring, record keeping, reporting requirements, and incorporate federal standards. |
| ENV-36-19-00002-P | . . . . . . . . . . 11/07/20 | New Aftermarket Catalytic Converter (AMCC) standards | Prohibit sale of federal AMCCs and update existing AMCC record keeping and reporting requirements |
| ENV-36-19-00003-P | . . . . . . . . . . 11/07/20 | Stationary Combustion Installations | Update permit references, rule citations, monitoring, record keeping, reporting requirements, and lower emission standards. |
| ENV-36-19-00014-P | . . . . . . . . . . 11/19/20 | Distributed generation sources located in New York City, Long Island and Westchester and Rockland counties | Establish emission control requirements for sources used in demand response programs or as price-responsive generation sources |
| ENV-37-19-00003-P | . . . . . . . . . . 09/10/20 | Clarifying determination of jurisdiction under the Endangered and Threatened Fish and Wildlife regulations | To improve the review of projects by removing some project types that are known not to cause harm from the review stream |
| ENV-38-19-00001-P | . . . . . . . . . . 09/17/20 | Animals dangerous to health or welfare | To expand the list of animals which pose a risk to health or welfare of the people of the state or indigenous fish and wildlife |
| ENV-39-19-00003-P | . . . . . . . . . . 12/05/20 | Part 219 applies to various types of incinerators and crematories operated in New York State. | This rule establishes emission limits and operating requirements for various types of incinerators. |

**Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## ENVIRONMENTAL CONSERVATION, DEPARTMENT OF

| | | | |
|---|---|---|---|
| ENV-42-19-00003-P | . . . . . . . . . . 10/15/20 | Amendments to Great Lakes sportfishery regulations in 6NYCRR Part 10 | Proposed amendments are intended to improve high quality sportfisheries and assciated economic benefits |
| ENV-43-19-00006-P | . . . . . . . . . . 01/07/21 | Class I and Class SD waters | To clarify best usages of Class I and SD waters were/are "secondary contact recreation and fishing" and "fishing," respectively |
| ENV-43-19-00010-P | . . . . . . . . . . 01/06/21 | Repeal and replace 6 NYCRR Part 622 and amend 6 NYCRR Part 624, Part 621 and Part 620 | To incorporate procedural and legal developments, develop consistency & reflect current practice in DEC hearings |
| ENV-48-19-00008-P | . . . . . . . . . . 01/26/21 | Plastic Bag Reduction, Reuse and Recycling | The objectives of this rulemaking are to provide clarity to Titles 27 and 28 so that they can both be effectively implemented |
| ENV-53-19-00016-P | . . . . . . . . . . 03/09/21 | Certain substances that contain hydrofluorocarbons, highly-potent greenhouse gases | Remove greenhouse gas emission sources that endanger public health and the environment |

## FINANCIAL SERVICES, DEPARTMENT OF

| | | | |
|---|---|---|---|
| *DFS-17-16-00003-P | . . . . . . . . . . exempt | Plan of Conversion by Commercial Travelers Mutual Insurance Company | To convert a mutual accident and health insurance company to a stock accident and health insurance company |
| *DFS-25-18-00006-P | . . . . . . . . . . exempt | Plan of Conversion by Medical Liabilty Mutual Insurance Company | To convert a mutual property and casualty insurance company to a stock property and casualty insurance company |
| DFS-33-19-00004-P | . . . . . . . . . . 08/13/20 | Minimum Standards for Form, Content, and Sale of Health Insurance, Including Standards for Full and Fair Disclosure | To set forth minimum standards for the content of health insurance identification cards. |
| DFS-43-19-00017-P | . . . . . . . . . . 10/22/20 | INDEPENDENT DISPUTE RESOLUTION FOR EMERGENCY SERVICES AND SURPRISE BILLS | To require notices and consumer disclosure information related to surprise bills and bills for emergency service to be provided |
| DFS-44-19-00010-P | . . . . . . . . . . 10/29/20 | Superintendent's Regulations: Basic Banking Accounts | To amend the requirements of basic banking accounts in conformity with Chapter 260 of the Laws of 2019 |
| DFS-44-19-00011-P | . . . . . . . . . . 10/29/20 | Principle-Based Reserving | To prescribe minimum principle-based valuation standards |
| DFS-47-19-00003-P | . . . . . . . . . . 11/19/20 | Banking Division Asssessments | Set forth the basis for allocating costs and expenses attributable to the operation of the Banking Division for FSL assessments |
| DFS-48-19-00002-P | . . . . . . . . . . 11/26/20 | SUPERINTENDENT'S REGULATIONS: INFORMATION SUBJECT TO CONFIDENTIAL TREATMENT | Provide rules concerning publication or disclosure of information subject to confidential treatment |
| DFS-51-19-00015-P | . . . . . . . . . . 12/17/20 | Minimum Standards for Form, Content and Sale of Health Insurance, Including Standards of Full and Fair Disclosure | Clarifying discriminatory activities prohibited by and coverages included within preventive care and screenings under the IL |
| DFS-53-19-00013-EP | . . . . . . . . . . 12/30/20 | Rules Governing the Procedures for Adjudicatory Proceedings Before the Department of Financial Services | To unify and clarify the procedures for adjudicatory proceedings before the Department of Financial Services |

**Action Pending Index**                                    **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **FINANCIAL SERVICES, DEPARTMENT OF** | | | |
| DFS-53-19-00014-EP | 12/30/20 | Charges for Professional Health Services | To delay the effective date of the workers' compensation fee schedules for no-fault reimbursement. |
| DFS-53-19-00015-EP | 12/30/20 | Supplementary Uninsured/Underinsured Motorist Coverage | To comport with statutory amendments to Chapter 59, Part III of the Laws of 2019 and Insurance Law Section 3420(f) |
| **GAMING COMMISSION, NEW YORK STATE** | | | |
| SGC-40-19-00011-P | 10/01/20 | Remove obsolete reference to safety vest weight | To promote the integrity of racing and derive a reasonable return for government |
| SGC-40-19-00012-P | 10/01/20 | Add racetrack operator to terms defined in Thoroughbred rules | To promote the integrity of racing and derive a reasonable return for government |
| SGC-42-19-00004-P | 10/15/20 | Add racetrack operator to terms defined in harness racing rules | To promote the integrity of racing and derive a reasonable return for government |
| **GENERAL SERVICES, OFFICE OF** | | | |
| GNS-40-19-00005-P | 10/01/20 | Facility Use | To add "plastic knuckles" and remove "gravity knife" from the definition of "deadly weapon" |
| **HEALTH, DEPARTMENT OF** | | | |
| *HLT-14-94-00006-P | exempt | Payment methodology for HIV/AIDS outpatient services | To expand the current payment to incorporate pricing for services |
| *HLT-51-18-00018-P | 12/19/19 | New requirements for Annual Registration of Licensed Home Care Services Agencies | To amend the regulations for licensed home care services agencies for the annual registration requirements of the agency |
| HLT-30-19-00006-P | 07/23/20 | Maximum Contaminant Levels (MCLs) | Incorporating MCLs for perfluorooctanoic acid (PFOA), perfluorooctanesulfonic acid (PFOS) and 1,4-dioxane. |
| HLT-36-19-00006-P | 09/03/20 | Limits on Executive Compensation | Removes "Soft Cap" prohibition on covered executive salaries. |
| HLT-40-19-00002-EP | 10/01/20 | Required Signage Warning Against the Dangers of Illegal Products | To require sellers of legal e-liquids and e-cigarette products to post warning signs regarding illegal products |
| HLT-40-19-00004-P | 10/01/20 | Drug Take Back | To implement the State's drug take back program to provide for the safe disposal of drugs |
| HLT-43-19-00005-P | 10/22/20 | Transitional Adult Home Admission Standards for Individuals with Serious Mental Illness | Delineate a clear pre-admissions process for determining whether a prospective resident is a person with serious mental illness |
| HLT-45-19-00001-P | 11/05/20 | Medical Use of Marihuana | To allow NYS hemp growers to sell hemp-derived cannabidiol to the Registered Organizations to reduce the cost of manufacturing. |
| HLT-45-19-00002-P | 11/05/20 | Licensed Home Care Services Agencies (LHCSAs) | To implement changes to public need & financial feasibility review for applications for HCSAs licensure & change of ownership. |

NYS Register/December 31, 2019                                    Action Pending Index

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **HEALTH, DEPARTMENT OF** | | | |
| HLT-46-19-00003-P | . . . . . . . . . . 11/12/20 | Tanning Facilities | To prohibit the use of indoor tanning facilities by individuals less than 18 years of age |
| HLT-47-19-00008-P | . . . . . . . . . . 11/19/20 | Hospital Medical Staff - Limited Permit Holders | To repeal extra years of training required for limited permit holders to work in New York State hospitals. |
| HLT-47-19-00009-P | . . . . . . . . . . 11/19/20 | Empire Clinical Research Investigator Program (ECRIP) | To expand the types of & change the time frames for past research grants that qualify staff to supervise the ECRIP project. |
| HLT-48-19-00003-EP | . . . . . . . . . . 11/26/20 | Secondary Syringe Exchange in New York State | To reduce the spread of blood-borne pathogens, to reduce or eliminate other harms associated with contaminated syringes |
| HLT-51-19-00001-P | . . . . . . . . . . 12/17/20 | Women, Infants and Children (WIC) Program | To support implementation of eWIC; clarify rules for violations, penalties & hearings & conform vendor authorization criteria. |
| HLT-53-19-00001-P | . . . . . . . . . . 12/30/20 | Prohibition on the Sale of Electronic Liquids with Characterizing Flavors | To prohibit the sale of electronic liquids with characterizing flavors |
| HLT-53-19-00011-P | . . . . . . . . . . 12/30/20 | Cardiac Services | To amend existing Certificate of Need requirements for approval of adult cardiac surgery centers. |
| HLT-53-19-00012-P | . . . . . . . . . . 12/30/20 | Consumer Directed Personal Assistance Program Reimbursement | To establish a program to pay home care services & establish a methodology framework for the payment of FI administrative costs. |
| **HOUSING AND COMMUNITY RENEWAL, DIVISION OF** | | | |
| HCR-21-19-00019-P | . . . . . . . . . . 07/21/20 | Low-Income Housing Qualified Allocation Plan | To amend definitions, threshold criteria and application scoring for the allocation o flow-income housing tax credits. |
| HCR-48-19-00001-P | . . . . . . . . . . 11/26/20 | The subject of these amendments is the change in the location of DHCR's Office Of Legal Affairs (OLA). | The purpose is to inform the public of the change in DHCR's Office of Legal Affairs' location. |
| **HOUSING FINANCE AGENCY** | | | |
| HFA-21-19-00020-P | . . . . . . . . . . 07/21/20 | Low-Income Housing Qualified Allocation Plan | To amend definitions, threshold criteria and application scoring for the allocation of low-income housing tax credits |
| **HUMAN RIGHTS, DIVISION OF** | | | |
| HRT-27-19-00002-P | . . . . . . . . . . 07/02/20 | Gender Identity or Expression Discrimination | To conform the Division's regulations with Executive Law as amended by Chapter 8 of the Laws of New York 2019. |
| **LABOR, DEPARTMENT OF** | | | |
| LAB-46-19-00004-P | . . . . . . . . . . 11/12/20 | NY State Public Employees Occupational Safety and Health Standards | To incorporate by reference updates to OSHA standards into the NY State Public Employee Occupational Safety and Health Standards |

**Action Pending Index**                                             **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## LONG ISLAND POWER AUTHORITY

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *LPA-08-01-00003-P | . . . . . . . . . . . exempt | Pole attachments and related matters | To approve revisions to the authority's tariff |
| *LPA-41-02-00005-P | . . . . . . . . . . . exempt | Tariff for electric service | To revise the tariff for electric service |
| *LPA-04-06-00007-P | . . . . . . . . . . . exempt | Tariff for electric service | To adopt provisions of a ratepayer protection plan |
| *LPA-03-10-00004-P | . . . . . . . . . . . exempt | Residential late payment charges | To extend the application of late payment charges to residential customers |
| *LPA-15-18-00013-P | . . . . . . . . . . . exempt | Outdoor area lighting | To add an option and pricing for efficient LED lamps to the Authority's outdoor area lighting |
| *LPA-37-18-00013-P | . . . . . . . . . . . exempt | The net energy metering provisions of the Authority's Tariff for Electric Service | To implement PSC guidance increasing eligibility for value stack compensation to larger projects |
| *LPA-37-18-00017-P | . . . . . . . . . . . exempt | The treatment of electric vehicle charging in the Authority's Tariff for Electric Service. | To effectuate the outcome of the Public Service Commission's proceeding on electric vehicle supply equipment. |
| *LPA-37-18-00018-P | . . . . . . . . . . . exempt | The treatment of energy storage in the Authority's Tariff for Electric Service. | To effectuate the outcome of the Public Service Commission's proceeding on the NY Energy Storage Roadmap. |
| LPA-37-19-00005-P | . . . . . . . . . . . exempt | The Authority's annual budget, as reflected in the rates and charges in the Tariff for Electric Service | To update the Tariff to implement the Authority's annual budget and corresponding rate adjustments |
| LPA-37-19-00006-P | . . . . . . . . . . . exempt | The modification of the SGIP to clarify and reflect updates to the State's Standardized Interconnection Requirements (SIR) | To be consistent with the State's SIR and related orders |
| LPA-37-19-00007-P | . . . . . . . . . . . exempt | The standard rates for pole attachments of the Authority's Tariff for Electric Service | To update the Authority's standard rates for pole attachments in accordance with recent Public Service Commission action |
| LPA-47-19-00017-P | . . . . . . . . . . . exempt | VDER, net metering, and community distributed generation | To update the Authority's tariff for consistency with the Public Service Commission, Department of Public Service, and CLCPA. |

## MENTAL HEALTH, OFFICE OF

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| OMH-43-19-00008-P | . . . . . . . . . . . 10/22/20 | Personalized Recovery Oriented Services (PROS) | To Allow PROS participants to receive Clinic Treatment from an Article 31 Clinic operated by the same agency |
| OMH-46-19-00005-P | . . . . . . . . . . . 11/12/20 | Definition of "Case record, clinical record, medical record or patient record" | To clarify that the agency does not consider the provision to apply to the definition of "record" as set forth in MHL 9.01 |
| OMH-47-19-00001-P | . . . . . . . . . . . 11/19/20 | Limits on Executive Compensation | To eliminate "soft cap" restrictions on compensation. |

## METROPOLITAN TRANSPORTATION AGENCY

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| MTA-23-19-00006-EP | . . . . . . . . . . . 06/04/20 | Debarment of contractors | To comply with Public Authorities Law, section 1279-h, which requires the MTA to establish a debarment process for contractors |

**NYS Register/December 31, 2019**                                      **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## NIAGARA FALLS WATER BOARD

| | | | |
|---|---|---|---|
| *NFW-04-13-00004-EP | . . . . . . . . . . . exempt | Adoption of Rates, Fees and Charges | To pay for the increased costs necessary to operate, maintain and manage the system, and to achieve covenants with bondholders |
| *NFW-13-14-00006-EP | . . . . . . . . . . . exempt | Adoption of Rates, Fees and Charges | To pay for increased costs necessary to operate, maintain and manage the system and to achieve covenants with the bondholders |
| NFW-01-19-00019-EP | . . . . . . . . . . . exempt | Adoption of Rates, Fees, and Charges | To pay for increased costs necessary to operate, maintain, and manage the system, and to meet covenants with the bondholders |

## OGDENSBURG BRIDGE AND PORT AUTHORITY

| | | | |
|---|---|---|---|
| *OBA-33-18-00019-P | . . . . . . . . . . . exempt | Increase in Bridge Toll Structure | To increase bridge toll revenue in order to become financially self-supporting. Our bridge operations are resulting in deficit. |
| OBA-07-19-00019-P | . . . . . . . . . . . exempt | Increase in Bridge Toll Structure | To increase bridge toll revenue in order to become financially self-supporting. Our bridge operations are resulting in deficit |

## POWER AUTHORITY OF THE STATE OF NEW YORK

| | | | |
|---|---|---|---|
| *PAS-01-10-00010-P | . . . . . . . . . . . exempt | Rates for the sale of power and energy | Update ECSB Programs customers' service tariffs to streamline them/include additional required information |
| PAS-42-19-00008-P | . . . . . . . . . . . exempt | Rates for the Sale of Power and Energy | To align rates and costs |

## PUBLIC SERVICE COMMISSION

| | | | |
|---|---|---|---|
| *PSC-09-99-00012-P | . . . . . . . . . . . exempt | Transfer of books and records by Citizens Utilities Company | To relocate Ogden Telephone Company's books and records out-of-state |
| *PSC-15-99-00011-P | . . . . . . . . . . . exempt | Electronic tariff by Woodcliff Park Corp. | To replace the company's current tariff with an electronic tariff |
| *PSC-12-00-00001-P | . . . . . . . . . . . exempt | Winter bundled sales service election date by Central Hudson Gas & Electric Corporation | To revise the date |
| *PSC-44-01-00005-P | . . . . . . . . . . . exempt | Annual reconciliation of gas costs by Corning Natural Gas Corporation | To authorize the company to include certain gas costs |
| *PSC-07-02-00032-P | . . . . . . . . . . . exempt | Uniform business practices | To consider modification |
| *PSC-36-03-00010-P | . . . . . . . . . . . exempt | Performance assurance plan by Verizon New York | To consider changes |
| *PSC-40-03-00015-P | . . . . . . . . . . . exempt | Receipt of payment of bills by St. Lawrence Gas Company | To revise the process |
| *PSC-41-03-00010-P | . . . . . . . . . . . exempt | Annual reconciliation of gas expenses and gas cost recoveries | To consider filings of various LDCs and municipalities |
| *PSC-41-03-00011-P | . . . . . . . . . . . exempt | Annual reconciliation of gas expenses and gas cost recoveries | To consider filings of various LDCs and municipalities |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-44-03-00009-P | . . . . . . . . . . . exempt | Retail access data between jurisdictional utilities | To accommodate changes in retail access market structure or commission mandates |
| *PSC-02-04-00008-P | . . . . . . . . . . . exempt | Delivery rates for Con Edison's customers in New York City and Westchester County by the City of New York | To rehear the Nov. 25, 2003 order |
| *PSC-06-04-00009-P | . . . . . . . . . . . exempt | Transfer of ownership interest by SCS Energy LLC and AE Investors LLC | To transfer interest in Steinway Creek Electric Generating Company LLC to AE Investors LLC |
| *PSC-10-04-00005-P | . . . . . . . . . . . exempt | Temporary protective order | To consider adopting a protective order |
| *PSC-10-04-00008-P | . . . . . . . . . . . exempt | Interconnection agreement between Verizon New York Inc. and VIC-RMTS-DC, L.L.C. d/b/a Verizon Avenue | To amend the agreement |
| *PSC-14-04-00008-P | . . . . . . . . . . . exempt | Submetering of natural gas service to industrial and commercial customers by Hamburg Fairgrounds | To submeter gas service to commercial customers located at the Buffalo Speedway |
| *PSC-15-04-00022-P | . . . . . . . . . . . exempt | Submetering of electricity by Glenn Gardens Associates, L.P. | To permit submetering at 175 W. 87th St., New York, NY |
| *PSC-21-04-00013-P | . . . . . . . . . . . exempt | Verizon performance assurance plan by Metropolitan Telecommunications | To clarify the appropriate performance level |
| *PSC-22-04-00010-P | . . . . . . . . . . . exempt | Approval of new types of electricity meters by Powell Power Electric Company | To permit the use of the PE-1250 electronic meter |
| *PSC-22-04-00013-P | . . . . . . . . . . . exempt | Major gas rate increase by Consolidated Edison Company of New York, Inc. | To increase annual gas revenues |
| *PSC-22-04-00016-P | . . . . . . . . . . . exempt | Master metering of water by South Liberty Corporation | To waive the requirement for installation of separate water meters |
| *PSC-25-04-00012-P | . . . . . . . . . . . exempt | Interconnection agreement between Frontier Communications of Ausable Valley, Inc., et al. and Sprint Communications Company, L.P. | To amend the agreement |
| *PSC-27-04-00008-P | . . . . . . . . . . . exempt | Interconnection agreement between Verizon New York Inc. and various Verizon wireless affiliates | To amend the agreement |
| *PSC-27-04-00009-P | . . . . . . . . . . . exempt | Interconnection agreement between Verizon New York Inc. and various Verizon wireless affiliates | To amend the agreement |
| *PSC-28-04-00006-P | . . . . . . . . . . . exempt | Approval of loans by Dunkirk & Fredonia Telephone Company and Cassadaga Telephone Corporation | To authorize participation in the parent corporation's line of credit |
| *PSC-31-04-00023-P | . . . . . . . . . . . exempt | Distributed generation service by Consolidated Edison Company of New York, Inc. | To provide an application form |
| *PSC-34-04-00031-P | . . . . . . . . . . . exempt | Flat rate residential service by Emerald Green Lake Louise Marie Water Company, Inc. | To set appropriate level of permanent rates |
| *PSC-35-04-00017-P | . . . . . . . . . . . exempt | Application form for distributed generation by Orange and Rockland Utilities, Inc. | To establish a new supplementary application form for customers |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-43-04-00016-P | . . . . . . . . . . . exempt | Accounts recievable by Rochester Gas and Electric Corporation | To include in its tariff provisions for the purchase of ESCO accounts recievable |
| *PSC-46-04-00012-P | . . . . . . . . . . . exempt | Service application form by Consolidated Edison Company of New York, Inc. | To revise the form and make housekeeping changes |
| *PSC-46-04-00013-P | . . . . . . . . . . . exempt | Rules and guidelines governing installation of metering equipment | To establish uniform statewide business practices |
| *PSC-02-05-00006-P | . . . . . . . . . . . exempt | Violation of the July 22, 2004 order by Dutchess Estates Water Company, Inc. | To consider imposing remedial actions against the company and its owners, officers and directors |
| *PSC-09-05-00009-P | . . . . . . . . . . . exempt | Submetering of natural gas service by Hamlet on Olde Oyster Bay | To consider submetering of natural gas to a commercial customer |
| *PSC-14-05-00006-P | . . . . . . . . . . . exempt | Request for deferred accounting authorization by Freeport Electric Inc. | To defer expenses beyond the end of the fiscal year |
| *PSC-18-05-00009-P | . . . . . . . . . . . exempt | Marketer Assignment Program by Consolidated Edison Company of New York, Inc. | To implement the program |
| *PSC-20-05-00028-P | . . . . . . . . . . . exempt | Delivery point aggregation fee by Allied Frozen Storage, Inc. | To review the calculation of the fee |
| *PSC-25-05-00011-P | . . . . . . . . . . . exempt | Metering, balancing and cashout provisions by Central Hudson Gas & Electric Corporation | To establish provisions for gas customers taking service under Service Classification Nos. 8, 9 and 11 |
| *PSC-27-05-00018-P | . . . . . . . . . . . exempt | Annual reconciliation of gas costs by New York State Electric & Gas Corporation | To consider the manner in which the gas cost incentive mechanism has been applied |
| *PSC-41-05-00013-P | . . . . . . . . . . . exempt | Annual reconciliation of gas expenses and gas cost recoveries by local distribution companies and municipalities | To consider the filings |
| *PSC-45-05-00011-P | . . . . . . . . . . . exempt | Treatment of lost and unaccounted gas costs by Corning Natural Gas Corporation | To defer certain costs |
| *PSC-46-05-00015-P | . . . . . . . . . . . exempt | Sale of real and personal property by the Brooklyn Union Gas Company d/b/a KeySpan Energy Delivery New York and Steel Arrow, LLC | To consider the sale |
| *PSC-47-05-00009-P | . . . . . . . . . . . exempt | Transferral of gas supplies by Corning Natural Gas Corporation | To approve the transfer |
| *PSC-50-05-00008-P | . . . . . . . . . . . exempt | Long-term debt by Saratoga Glen Hollow Water Supply Corp. | To obtain long-term debt |
| *PSC-04-06-00024-P | . . . . . . . . . . . exempt | Transfer of ownership interests by Mirant NY-Gen LLC and Orange and Rockland Utilities, Inc. | To approve of the transfer |
| *PSC-06-06-00015-P | . . . . . . . . . . . exempt | Gas curtailment policies and procedures | To examine the manner and extent to which gas curtailment policies and procedures should be modified and/or established |
| *PSC-07-06-00009-P | . . . . . . . . . . . exempt | Modification of the current Environmental Disclosure Program | To include an attributes accounting system |

**Action Pending Index**                                     **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-22-06-00019-P | . . . . . . . . . . exempt | Hourly pricing by National Grid | To assess the impacts |
| *PSC-22-06-00020-P | . . . . . . . . . . exempt | Hourly pricing by New York State Electric & Gas Corporation | To assess the impacts |
| *PSC-22-06-00021-P | . . . . . . . . . . exempt | Hourly pricing by Rochester Gas & Electric Corporation | To assess the impacts |
| *PSC-22-06-00022-P | . . . . . . . . . . exempt | Hourly pricing by Consolidated Edison Company of New York, Inc. | To assess the impacts |
| *PSC-22-06-00023-P | . . . . . . . . . . exempt | Hourly pricing by Orange and Rockland Utilities, Inc. | To assess the impacts |
| *PSC-24-06-00005-EP | . . . . . . . . . . exempt | Supplemental home energy assistance benefits | To extend the deadline to Central Hudson's low-income customers |
| *PSC-25-06-00017-P | . . . . . . . . . . exempt | Purchased power adjustment by Massena Electric Department | To revise the method of calculating the purchased power adjustment and update the factor of adjustment |
| *PSC-34-06-00009-P | . . . . . . . . . . exempt | Inter-carrier telephone service quality standards and metrics by the Carrier Working Group | To incorporate appropriate modifications |
| *PSC-37-06-00015-P | . . . . . . . . . . exempt | Procedures for estimation of customer bills by Rochester Gas and Electric Corporation | To consider estimation procedures |
| *PSC-37-06-00017-P | . . . . . . . . . . exempt | Procedures for estimation of customer bills by Rochester Gas and Electric Corporation | To consider estimation procedures |
| *PSC-43-06-00014-P | . . . . . . . . . . exempt | Electric delivery services by Strategic Power Management, Inc. | To determine the proper mechanism for the rate-recovery of costs |
| *PSC-04-07-00012-P | . . . . . . . . . . exempt | Petition for rehearing by Orange and Rockland Utilities, Inc. | To clarify the order |
| *PSC-06-07-00015-P | . . . . . . . . . . exempt | Meter reading and billing practices by Central Hudson Gas & Electric Corporation | To continue current meter reading and billing practices for electric service |
| *PSC-06-07-00020-P | . . . . . . . . . . exempt | Meter reading and billing practices by Central Hudson Gas & Electric Corporation | To continue current meter reading and billing practices for gas service |
| *PSC-11-07-00010-P | . . . . . . . . . . exempt | Investigation of the electric power outages by the Consolidated Edison Company of New York, Inc. | To implement the recommendations in the staff's investigation |
| *PSC-11-07-00011-P | . . . . . . . . . . exempt | Storm-related power outages by Consolidated Edison Company of New York, Inc. | To modify the company's response to power outages, the timing for any such changes and other related matters |
| *PSC-17-07-00008-P | . . . . . . . . . . exempt | Interconnection agreement between Verizon New York Inc. and BridgeCom International, Inc. | To amend the agreement |
| *PSC-18-07-00010-P | . . . . . . . . . . exempt | Existing electric generating stations by Independent Power Producers of New York, Inc. | To repower and upgrade existing electric generating stations owned by Rochester Gas and Electric Corporation |
| *PSC-20-07-00016-P | . . . . . . . . . . exempt | Tariff revisions and making rates permanent by New York State Electric & Gas Corporation | To seek rehearing |

NYS Register/December 31, 2019                                                      Action Pending Index

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-21-07-00007-P | . . . . . . . . . . . exempt | Natural Gas Supply and Acquisition Plan by Corning Natural Gas Corporation | To revise the rates, charges, rules and regulations for gas service |
| *PSC-22-07-00015-P | . . . . . . . . . . . exempt | Demand Side Management Program by Consolidated Edison Company of New York, Inc. | To recover incremental program costs and lost revenue |
| *PSC-23-07-00022-P | . . . . . . . . . . . exempt | Supplier, transportation, balancing and aggregation service by National Fuel Gas Distribution Corporation | To explicitly state in the company's tariff that the threshold level of elective upstream transmission capacity is a maximum of 112,600 Dth/day of marketer-provided upstream capacity |
| *PSC-24-07-00012-P | . . . . . . . . . . . exempt | Gas Efficiency Program by the City of New York | To consider rehearing a decision establishing a Gas Efficiency Program |
| *PSC-39-07-00017-P | . . . . . . . . . . . exempt | Gas bill issuance charge by New York State Electric & Gas Corporation | To create a gas bill issuance charge unbundled from delivery rates |
| *PSC-41-07-00009-P | . . . . . . . . . . . exempt | Submetering of electricity rehearing | To seek reversal |
| *PSC-42-07-00012-P | . . . . . . . . . . . exempt | Energy efficiency program by Orange and Rockland Utilities, Inc. | To consider any energy efficiency program for Orange and Rockland Utilities, Inc.'s electric service |
| *PSC-42-07-00013-P | . . . . . . . . . . . exempt | Revenue decoupling by Orange and Rockland Utilities, Inc. | To consider a revenue decoupling mechanism for Orange and Rockland Utilities, Inc. |
| *PSC-45-07-00005-P | . . . . . . . . . . . exempt | Customer incentive programs by Orange and Rockland Utilities, Inc. | To establish a tariff provision |
| *PSC-02-08-00006-P | . . . . . . . . . . . exempt | Additional central office codes in the 315 area code region | To consider options for making additional codes |
| *PSC-03-08-00006-P | . . . . . . . . . . . exempt | Rehearing of the accounting determinations | To grant or deny a petition for rehearing of the accounting determinations |
| *PSC-04-08-00010-P | . . . . . . . . . . . exempt | Granting of easement rights on utility property by Central Hudson Gas & Electric Corporation | To grant easement rights to Millennium Pipeline Company, L.L.C. |
| *PSC-04-08-00012-P | . . . . . . . . . . . exempt | Marketing practices of energy service companies by the Consumer Protection Board and New York City Department of Consumer Affairs | To consider modifying the commission's regulation over marketing practices of energy service companies |
| *PSC-08-08-00016-P | . . . . . . . . . . . exempt | Transfer of ownership by Entergy Nuclear Fitzpatrick LLC, et al. | To consider the transfer |
| *PSC-12-08-00019-P | . . . . . . . . . . . exempt | Extend the provisions of the existing electric rate plan by Rochester Gas and Electric Corporation | To consider the request |
| *PSC-12-08-00021-P | . . . . . . . . . . . exempt | Extend the provisions of the existing gas rate plan by Rochester Gas and Electric Corporation | To consider the request |
| *PSC-13-08-00011-P | . . . . . . . . . . . exempt | Waiver of commission policy and NYSEG tariff by Turner Engineering, PC | To grant or deny Turner's petition |
| *PSC-13-08-00012-P | . . . . . . . . . . . exempt | Voltage drops by New York State Electric & Gas Corporation | To grant or deny the petition |

**Action Pending Index**

**NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-23-08-00008-P | . . . . . . . . . . . exempt | Petition requesting rehearing and clarification of the commission's April 25, 2008 order denying petition of public utility law project | To consider whether to grant or deny, in whole or in part, the May 7, 2008 Public Utility Law Project (PULP) petition for rehearing and clarification of the commission's April 25, 2008 order denying petition of Public Utility Law Project |
| *PSC-25-08-00007-P | . . . . . . . . . . . exempt | Policies and procedures regarding the selection of regulatory proposals to meet reliability needs | To establish policies and procedures regarding the selection of regulatory proposals to meet reliability needs |
| *PSC-25-08-00008-P | . . . . . . . . . . . exempt | Report on Callable Load Opportunities | Rider U report assessing callable load opportunities in New York City and Westchester County during the next 10 years |
| *PSC-28-08-00004-P | . . . . . . . . . . . exempt | Con Edison's procedure for providing customers access to their account information | To consider Con Edison's implementation plan and timetable for providing customers access to their account information |
| *PSC-31-08-00025-P | . . . . . . . . . . . exempt | Recovery of reasonable DRS costs from the cost mitigation reserve (CMR) | To authorize recovery of the DRS costs from the CMR |
| *PSC-32-08-00009-P | . . . . . . . . . . . exempt | The ESCO referral program for KEDNY to be implemented by October 1, 2008 | To approve, reject or modify, in whole or in part, KEDNY's recommended ESCO referral program |
| *PSC-33-08-00008-P | . . . . . . . . . . . exempt | Noble Allegany's request for lightened regulation | To consider Noble Allegany's request for lightened regulation as an electric corporation |
| *PSC-36-08-00019-P | . . . . . . . . . . . exempt | Land Transfer in the Borough of Manhattan, New York | To consider petition for transfer of real property to NYPH |
| *PSC-39-08-00010-P | . . . . . . . . . . . exempt | RG&E's economic development plan and tariffs | Consideration of the approval of RG&E's economic development plan and tariffs |
| *PSC-40-08-00010-P | . . . . . . . . . . . exempt | Loans from regulated company to its parent | To determine if the cash management program resulting in loans to the parent should be approved |
| *PSC-41-08-00009-P | . . . . . . . . . . . exempt | Transfer of control of cable TV franchise | To determine if the transfer of control of Margaretville's cable TV subsidiary should be approved |
| *PSC-43-08-00014-P | . . . . . . . . . . . exempt | Annual Reconcilliation of Gas Expenses and Gas Cost Recoveries | The filings of various LDCs and municipalities regarding their Annual Reconciliation of Gas Expenses and Gas Cost Recoveries |
| *PSC-46-08-00008-P | . . . . . . . . . . . exempt | Property transfer in the Village of Avon, New York | To consider a petition for the transfer of street lighting and attached equipment to the Village of Avon, New York |
| *PSC-46-08-00010-P | . . . . . . . . . . . exempt | A transfer of indirect ownership interests in nuclear generation facilities | Consideration of approval of a transfer of indirect ownership interests in nuclear generation facilities |
| *PSC-46-08-00014-P | . . . . . . . . . . . exempt | The attachment of cellular antennae to an electric transmission tower | To approve, reject or modify the request for permission to attach cellular antennae to an electric transmission tower |
| *PSC-48-08-00005-P | . . . . . . . . . . . exempt | A National Grid high efficiency gas heating equipment rebate program | To expand eligibility to customers converting from oil to natural gas |

Action Pending Index

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

**PUBLIC SERVICE COMMISSION**

| | | | |
|---|---|---|---|
| *PSC-48-08-00008-P | . . . . . . . . . . . exempt | Petition for the master metering and submetering of electricity | To consider the request of Bay City Metering, to master meter & submeter electricity at 345 E. 81st St., New York, New York |
| *PSC-48-08-00009-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of PCV/ST to submeter electricity at Peter Cooper Village & Stuyvesant Town, New York, New York |
| *PSC-50-08-00018-P | . . . . . . . . . . . exempt | Market Supply Charge | A study on the implementation of a revised Market Supply Charge |
| *PSC-51-08-00006-P | . . . . . . . . . . . exempt | Commission's October 27, 2008 Order on Future of Retail Access Programs in Case 07-M-0458 | To consider a Petition for rehearing of the Commission's October 27, 2008 Order in Case 07-M-0458 |
| *PSC-51-08-00007-P | . . . . . . . . . . . exempt | Commission's October 27, 2008 Order in Cases 98-M-1343, 07-M-1514 and 08-G-0078 | To consider Petitions for rehearing of the Commission's October 27, 2008 Order in Cases 98-M-1343, 07-M-1514 and 08-G-0078 |
| *PSC-53-08-00011-P | . . . . . . . . . . . exempt | Use of deferred Rural Telephone Bank funds | To determine if the purchase of a softswitch by Hancock is an appropriate use of deferred Rural Telephone Bank funds |
| *PSC-53-08-00012-P | . . . . . . . . . . . exempt | Transfer of permanent and temporary easements at 549-555 North Little Tor Road, New City, NY | Transfer of permanent and temporary easements at 549-555 North Little Tor Road, New City, NY |
| *PSC-53-08-00013-P | . . . . . . . . . . . exempt | To transfer common stock and ownership | To consider transfer of common stock and ownership |
| *PSC-01-09-00015-P | . . . . . . . . . . . exempt | FCC decision to redefine service area of Citizens/Frontier | Review and consider FCC proposed redefinition of Citizens/Frontier service area |
| *PSC-02-09-00010-P | . . . . . . . . . . . exempt | Competitive classification of independent local exchange company, and regulatory relief appropriate thereto | To determine if Chazy & Westport Telephone Corporation more appropriately belongs in scenario 1 rather than scenario 2 |
| *PSC-05-09-00008-P | . . . . . . . . . . . exempt | Revenue allocation, rate design, performance metrics, and other non-revenue requirement issues | To consider any remaining non-revenue requirement issues related to the Company's May 9, 2008 tariff filing |
| *PSC-05-09-00009-P | . . . . . . . . . . . exempt | Numerous decisions involving the steam system including cost allocation, energy efficiency and capital projects | To consider the long term impacts on steam rates and on public policy of various options concerning the steam system |
| *PSC-06-09-00007-P | . . . . . . . . . . . exempt | Interconnection of the networks between Frontier Comm. and WVT Communications for local exchange service and exchange access | To review the terms and conditions of the negotiated agreement between Frontier Comm. and WVT Comm. |
| *PSC-07-09-00015-P | . . . . . . . . . . . exempt | Transfer certain utility assets located in the Town of Montgomery from plant held for future use to non-utility property | To consider the request to transfer certain utility assets located in the Town of Montgomery to non-utility assets |
| *PSC-07-09-00017-P | . . . . . . . . . . . exempt | Request for authorization to defer the incremental costs incurred in the restoration work resulting from the ice storm | To allow the company to defer the incremental costs incurred in the restoration work resulting from the ice storm |
| *PSC-07-09-00018-P | . . . . . . . . . . . exempt | Whether to permit the submetering of natural gas service to an industrial and commercial customer at Cooper Union, New York, NY | To consider the request of Cooper Union, to submeter natural gas at 41 Cooper Square, New York, New York |

**Action Pending Index**                                              NYS Register/December 31, 2019

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-12-09-00010-P | . . . . . . . . . . . exempt | Charges for commodity | To charge customers for commodity costs |
| *PSC-12-09-00012-P | . . . . . . . . . . . exempt | Charges for commodity | To charge customers for commodity costs |
| *PSC-13-09-00008-P | . . . . . . . . . . . exempt | Options for making additional central office codes available in the 718/347 numbering plan area | To consider options for making additional central office codes available in the 718/347 numbering plan area |
| *PSC-14-09-00014-P | . . . . . . . . . . . exempt | The regulation of revenue requirements for municipal utilities by the Public Service Commission | To determine whether the regulation of revenue requirements for municipal utilities should be modified |
| *PSC-16-09-00010-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of AMPS on behalf of Park Imperial to submeter electricity at 230 W. 56th Street, in New York, New York |
| *PSC-16-09-00020-P | . . . . . . . . . . . exempt | Whether SUNY's core accounts should be exempt from the mandatory assignment of local distribution company (LDC) capacity | Whether SUNY's core accounts should be exempt from the mandatory assignment of local distribution company (LDC) capacity |
| *PSC-17-09-00010-P | . . . . . . . . . . . exempt | Whether to permit the use of Elster REX2 solid state electric meter for use in residential and commerical accounts | To permit electric utilities in New York State to use the Elster REX2 |
| *PSC-17-09-00011-P | . . . . . . . . . . . exempt | Whether Brooklyn Navy Yard Cogeneration Partners, L.P. should be reimbursed by Con Edison for past and future use taxes | Whether Brooklyn Navy Yard Cogeneration Partners, L.P. should be reimbursed by Con Edison for past and future use taxes |
| *PSC-17-09-00012-P | . . . . . . . . . . . exempt | Petition for the submetering of gas at commercial property | To consider the request of Turner Construction, to submeter natural gas at 550 Short Ave., & 10 South St., Governors Island, NY |
| *PSC-17-09-00014-P | . . . . . . . . . . . exempt | Benefit-cost framework for evaluating AMI programs prepared by the DPS Staff | To consider a benefit-cost framework for evaluating AMI programs prepared by the DPS Staff |
| *PSC-17-09-00015-P | . . . . . . . . . . . exempt | The construction of a tower for wireless antennas on land owned by National Grid | To approve, reject or modify the petition to build a tower for wireless antennas in the Town of Onondaga |
| *PSC-18-09-00012-P | . . . . . . . . . . . exempt | Petition for rehearing of Order approving the submetering of electricity | To consider the request of Frank Signore to rehear petition to submeter electricity at One City Place in White Plains, New York |
| *PSC-18-09-00013-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of Living Opportunities of DePaul to submeter electricity at E. Main St. located in Batavia, New York |
| *PSC-18-09-00017-P | . . . . . . . . . . . exempt | Approval of an arrangement for attachment of wireless antennas to the utility's transmission facilities in the City of Yonkers | To approve, reject or modify the petition for the existing wireless antenna attachment to the utility's transmission tower |
| *PSC-20-09-00016-P | . . . . . . . . . . . exempt | The recovery of, and accounting for, costs associated with the Companies' advanced metering infrastructure (AMI) pilots etc | To consider a filing of the Companies as to the recovery of, and accounting for, costs associated with it's AMI pilots etc |
| *PSC-20-09-00017-P | . . . . . . . . . . . exempt | The recovery of, and accounting for, costs associated with CHG&E's AMI pilot program | To consider a filing of CHG&E as to the recovery of, and accounting for, costs associated with it's AMI pilot program |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-22-09-00011-P | . . . . . . . . . . . exempt | Cost allocation for Consolidated Edison's East River Repowering Project | To determine whether any changes are warranted in the cost allocation of Consolidated Edison's East River Repowering Project |
| *PSC-25-09-00005-P | . . . . . . . . . . . exempt | Whether to grant, deny, or modify, in whole or in part, the petition | Whether to grant, deny, or modify, in whole or in part, the petition |
| *PSC-25-09-00006-P | . . . . . . . . . . . exempt | Electric utility implementation plans for proposed web based SIR application process and project status database | To determine if the proposed web based SIR systems are adequate and meet requirements needed for implementation |
| *PSC-25-09-00007-P | . . . . . . . . . . . exempt | Electric rates for Consolidated Edison Company of New York, Inc | Consider a Petition for Rehearing filed by Consolidated Edison Company of New York, Inc |
| *PSC-27-09-00011-P | . . . . . . . . . . . exempt | Interconnection of the networks between Vernon and tw telecom of new york l.p. for local exchange service and exchange access. | To review the terms and conditions of the negotiated agreement between Vernon and tw telecom of new york l.p. |
| *PSC-27-09-00014-P | . . . . . . . . . . . exempt | Billing and payment for energy efficiency measures through utility bill | To promote energy conservation |
| *PSC-27-09-00015-P | . . . . . . . . . . . exempt | Interconnection of the networks between Oriskany and tw telecom of new york l.p. for local exchange service and exchange access | To review the terms and conditions of the negotiated agreement between Oriskany and tw telecom of new york l.p |
| *PSC-29-09-00011-P | . . . . . . . . . . . exempt | Consideration of utility compliance filings | Consideration of utility compliance filings |
| *PSC-32-09-00009-P | . . . . . . . . . . . exempt | Cost allocation for Consolidated Edison's East River Repowering Project | To determine whether any changes are warranted in the cost allocation of Consolidated Edison's East River Repowering Project |
| *PSC-34-09-00016-P | . . . . . . . . . . . exempt | Recommendations made in the Management Audit Final Report | To consider whether to take action or recommendations contained in the Management Audit Final Report |
| *PSC-34-09-00017-P | . . . . . . . . . . . exempt | To consider the transfer of control of Plattsburgh Cablevision, Inc. d/b/a Charter Communications to CH Communications, LLC | To allow the Plattsburgh Cablevision, Inc. to distribute its equity interest in CH Communications, LLC |
| *PSC-36-09-00008-P | . . . . . . . . . . . exempt | The increase in the non-bypassable charge implemented by RG&E on June 1, 2009 | Considering exemptions from the increase in the non-bypassable charge implemented by RG&E on June 1, 2009 |
| *PSC-37-09-00015-P | . . . . . . . . . . . exempt | Sale of customer-generated steam to the Con Edison steam system | To establish a mechanism for sale of customer-generated steam to the Con Edison steam system |
| *PSC-37-09-00016-P | . . . . . . . . . . . exempt | Applicability of electronic signatures to Deferred Payment Agreements | To determine whether electronic signatures can be accepted for Deferred Payment Agreements |
| *PSC-39-09-00015-P | . . . . . . . . . . . exempt | Modifications to the $5 Bill Credit Program | Consideration of petition of National Grid to modify the Low Income $5 Bill Credit Program |
| *PSC-39-09-00018-P | . . . . . . . . . . . exempt | The offset of deferral balances with Positive Benefit Adjustments | To consider a petition to offset deferral balances with Positive Benefit Adjustments |
| *PSC-40-09-00013-P | . . . . . . . . . . . exempt | Uniform System of Accounts - request for deferral and amortization of costs | To consider a petition to defer and amortize costs |

**Action Pending Index**                                    **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-51-09-00029-P | . . . . . . . . . . . exempt | Rules and guidelines for the exchange of retail access data between jurisdictional utilities and eligible ESCOs | To revise the uniform Electronic Data Interchange Standards and business practices to incorporate a contest period |
| *PSC-51-09-00030-P | . . . . . . . . . . . exempt | Waiver or modification of Capital Expenditure condition of merger | To allow the companies to expend less funds for capital improvement than required by the merger |
| *PSC-52-09-00006-P | . . . . . . . . . . . exempt | ACE's petition for rehearing for an order regarding generator-specific energy deliverability study methodology | To consider whether to change the Order Prescribing Study Methodology |
| *PSC-52-09-00008-P | . . . . . . . . . . . exempt | Approval for the New York Independent System Operator, Inc. to incur indebtedness and borrow up to $50,000,000 | To finance the renovation and construction of the New York Independent System Operator, Inc.'s power control center facilities |
| *PSC-05-10-00008-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of University Residences - Rochester, LLC to submeter electricity at 220 John Street, Henrietta, NY |
| *PSC-05-10-00015-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of 243 West End Avenue Owners Corp. to submeter electricity at 243 West End Avenue, New York, NY |
| *PSC-06-10-00022-P | . . . . . . . . . . . exempt | The Commission's Order of December 17, 2009 related to redevelopment of Consolidated Edison's Hudson Avenue generating facility | To reconsider the Commission's Order of December 17, 2009 related to redevelopment of the Hudson Avenue generating facility |
| *PSC-07-10-00009-P | . . . . . . . . . . . exempt | Petition to revise the Uniform Business Practices | To consider the RESA petition to allow rescission of a customer request to return to full utility service |
| *PSC-08-10-00007-P | . . . . . . . . . . . exempt | Whether to grant, deny, or modify , in whole or in part, the rehearing petition filed in Case 06-E-0847 | Whether to grant, deny, or modify , in whole or in part, the rehearing petition filed in Case 06-E-0847 |
| *PSC-08-10-00009-P | . . . . . . . . . . . exempt | Consolidated Edison of New York, Inc. energy efficiency programs | To modify approved energy efficiency programs |
| *PSC-12-10-00015-P | . . . . . . . . . . . exempt | Recommendations made by Staff intended to enhance the safety of Con Edison's gas operations | To require that Con Edison implement the Staff recommendations intended to enhance the safety of Con Edison's gas operations |
| *PSC-14-10-00010-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of 61 Jane Street Owners Corporation to submeter Electricity at 61 Jane Street, Manhattan, NY |
| *PSC-16-10-00005-P | . . . . . . . . . . . exempt | To consider adopting and expanding mobile stray voltage testing requirements | Adopt additional mobile stray voltage testing requirements |
| *PSC-16-10-00007-P | . . . . . . . . . . . exempt | Interconnection of the networks between TDS Telecom and PAETEC Communications for local exchange service and exchange access | To review the terms and conditions of the negotiated agreement between TDS Telecom and PAETEC Communications |
| *PSC-16-10-00015-P | . . . . . . . . . . . exempt | Interconnection of the networks between Frontier and Choice One Communications for local exchange service and exchange access | To review the terms and conditions of the negotiated agreement between Frontier and Choice One Communications |
| *PSC-18-10-00009-P | . . . . . . . . . . . exempt | Electric utility transmission right-of-way management practices | To consider electric utility transmission right-of-way management practices |

Action Pending Index

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

**PUBLIC SERVICE COMMISSION**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-19-10-00022-P | . . . . . . . . . . . exempt | Whether National Grid should be permitted to transfer a parcel of property located at 1 Eddy Street, Fort Edward, New York | To decide whether to approve National Grid's request to transfer a parcel of vacant property in Fort Edward, New York |
| *PSC-22-10-00006-P | . . . . . . . . . . . exempt | Requirement that Noble demonstrate that its affiliated electric corporations operating in New York are providing safe service | Consider requiring that Noble demonstrate that its affiliated electric corporations in New York are providing safe service |
| *PSC-22-10-00008-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of 48-52 Franklin Street to submeter electricity at 50 Franklin Street, New York, New York |
| *PSC-24-10-00009-P | . . . . . . . . . . . exempt | Verizon New York Inc. tariff regulations relating to voice messaging service | To remove tariff regulations relating to retail voice messaging service from Verizon New York Inc.'s tariff |
| *PSC-25-10-00012-P | . . . . . . . . . . . exempt | Reassignment of the 2-1-1 abbreviated dialing code | Consideration of petition to reassign the 2-1-1 abbreviated dialing code |
| *PSC-27-10-00016-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of 9271 Group, LLC to submeter electricity at 960 Busti Avenue, Buffalo, New York |
| *PSC-34-10-00003-P | . . . . . . . . . . . exempt | The modification of Central Hudson Gas & Electric Corporation's Enhanced Powerful Opportunities Program | The modification of Central Hudson Gas & Electric Corporation's Enhanced Powerful Opportunities Program |
| *PSC-34-10-00005-P | . . . . . . . . . . . exempt | Approval of a contract for $250,000 in tank repairs that may be a financing | To decide whether to approve a contract between the parties that may be a financing of $250,000 for tank repairs |
| *PSC-34-10-00006-P | . . . . . . . . . . . exempt | The modification of Central Hudson Gas & Electric Corporation's Enhanced Powerful Opportunities Program | The modification of Central Hudson Gas & Electric Corporation's Enhanced Powerful Opportunities Program |
| *PSC-36-10-00010-P | . . . . . . . . . . . exempt | Central Hudson's procedures, terms and conditions for an economic development plan | Consideration of Central Hudson's procedures, terms and conditions for an economic development plan |
| *PSC-40-10-00014-P | . . . . . . . . . . . exempt | Disposition of a state sales tax refund | To determine how much of a state sales tax refund should be retained by National Grid |
| *PSC-40-10-00021-P | . . . . . . . . . . . exempt | Whether to permit the submetering of natural gas service to a commercial customer at Quaker Crossing Mall | To permit the submetering of natural gas service to a commercial customer at Quaker Crossing Mall |
| *PSC-41-10-00018-P | . . . . . . . . . . . exempt | Amount of hourly interval data provided to Hourly Pricing customers who have not installed a phone line to read meter | Allow Central Hudson to provide less than a years worth of interval data and charge for manual meter reading for some customers |
| *PSC-41-10-00022-P | . . . . . . . . . . . exempt | Request for waiver of the individual living unit metering requirements at 5742 Route 5, Vernon, NY | Request for waiver of the individual living unit metering requirements at 5742 Route 5, Vernon, NY |
| *PSC-42-10-00011-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of 4858 Group, LLC to submeter electricity at 456 Main Street, Buffalo, New York |
| *PSC-43-10-00016-P | . . . . . . . . . . . exempt | Utility Access to Ducts, Conduit Facilities and Utility Poles | To review the complaint from Optical Communications Group |

**Action Pending Index**                                    **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-44-10-00003-P | . . . . . . . . . . . exempt | Third and fourth stage gas rate increase by Corning Natural Gas Corporation | To consider Corning Natural Gas Corporation's request for a third and fourth stage gas rate increase |
| *PSC-51-10-00018-P | . . . . . . . . . . . exempt | Commission proceeding concerning three-phase electric service by all major electric utilities | Investigate the consistency of the tariff provisions for three-phase electric service for all major electric utilities |
| *PSC-11-11-00003-P | . . . . . . . . . . . exempt | The proposed transfer of 55.42 acres of land and $1.4 million of revenues derived from the rendition of public service | The proposed transfer of 55.42 acres of land and $1.4 million of revenues derived from the rendition of public service |
| *PSC-13-11-00005-P | . . . . . . . . . . . exempt | Exclude the minimum monthly bill component from the earnings test calculation | Exclude the minimum monthly bill component from the earnings test calculation |
| *PSC-14-11-00009-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of 83-30 118th Street to submeter electricity at 83-30 118th Street, Kew Gardens, New York |
| *PSC-19-11-00007-P | . . . . . . . . . . . exempt | Utility price reporting requirements related to the Commission's "Power to Choose" website | Modify the Commission's utility electric commodity price reporting requirements related to the "Power to Choose" website |
| *PSC-20-11-00012-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of KMW Group LLC to submeter electricity at 122 West Street, Brooklyn, New York |
| *PSC-20-11-00013-P | . . . . . . . . . . . exempt | Determining the reasonableness of Niagara Mohawk Power Corporation d/b/a National Grid 's make ready charges | To determine if the make ready charges of Niagara Mohawk Power Corporation d/b/a National Grid are reasonable |
| *PSC-22-11-00004-P | . . . . . . . . . . . exempt | Whether to permit the use of the Sensus accWAVE for use in residential gas meter applications | To permit gas utilities in New York State to use the Sensus accWAVE diaphragm gas meter |
| *PSC-26-11-00007-P | . . . . . . . . . . . exempt | Water rates and charges | To approve an increase in annual revenues by about $25,266 or 50% |
| *PSC-26-11-00009-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity at commercial property | To consider the request of by Hoosick River Hardwoods, LLC to submeter electricity at 28 Taylor Avenue, in Berlin, New York |
| *PSC-26-11-00012-P | . . . . . . . . . . . exempt | Waiver of generation retirement notice requirements | Consideration of waiver of generation retirement notice requirements |
| *PSC-29-11-00011-P | . . . . . . . . . . . exempt | Petition requesting the Commssion reconsider its May 19, 2011 Order and conduct a hearing, and petition to stay said Order. | To consider whether to grant or deny, in whole or in part, Windstream New York's Petition For Reconsideration and Rehearing. |
| *PSC-35-11-00011-P | . . . . . . . . . . . exempt | Whether to permit Consolidated Edison a waiver to commission regulations Part 226.8 | Permit Consolidated Edison to conduct a inspection program in lieu of testing the accuracy of Category C meters |
| *PSC-36-11-00006-P | . . . . . . . . . . . exempt | To consider expanding mobile stray voltage testing requirements | Adopt additional mobile stray voltage testing requirements |
| *PSC-38-11-00002-P | . . . . . . . . . . . exempt | Operation and maintenance procedures pertaining to steam trap caps | Adopt modified steam operation and maintenance procedures |
| *PSC-38-11-00003-P | . . . . . . . . . . . exempt | Waiver of certain provisions of the electric service tariffs of Con Edison | Consideration of waiver of certain provisions of the electric service tariffs of Con Edison |

NYS Register/December 31, 2019                                                              Action Pending Index

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| | | | |
|---|---|---|---|
| *PSC-40-11-00010-P | . . . . . . . . . . . exempt | Participation of regulated local exchange carriers in the New York Data Exchange, Inc. (NYDE) | Whether to partially modify its order requiring regulated local exchange carriers' participation NYDE |
| *PSC-40-11-00012-P | . . . . . . . . . . . exempt | Granting of transfer of plant in-service to a regulatory asset | To approve transfer and recovery of unamortized plant investment |
| *PSC-42-11-00018-P | . . . . . . . . . . . exempt | Availability of telecommunications services in New York State at just and reasonable rates | Providing funding support to help ensure availability of affordable telecommunications service throughout New York |
| *PSC-43-11-00012-P | . . . . . . . . . . . exempt | Transfer of outstanding shares of stock | Transfer the issued outstanding shares of stock of The Meadows at Hyde Park Water-Works Corporation to HPWS, LLC |
| *PSC-47-11-00007-P | . . . . . . . . . . . exempt | Remedying miscalculations of delivered gas as between two customer classes | Consideration of Con Edison's proposal to address inter-class delivery imbalances resulting from past Company miscalculations |
| *PSC-48-11-00007-P | . . . . . . . . . . . exempt | Transfer of controlling interests in generation facilities from Dynegy to PSEG | Consideration of the transfer of controlling interests in electric generation facilities from Dynegy to PSEG |
| *PSC-48-11-00008-P | . . . . . . . . . . . exempt | Petition for the submetering of electricity | To consider the request of To Better Days, LLC to submeter electricity at 37 East 4th Street, New York, New York |
| *PSC-01-12-00007-P | . . . . . . . . . . . exempt | The New York State Reliability Council's revisions to its rules and measurements | To adopt revisions to various rules and measurements of the New York State Reliability Council |
| *PSC-01-12-00008-P | . . . . . . . . . . . exempt | Transfer of real property and easements from NMPNS to NMP3 | Consideration of the transfer of real property and easements from NMPNS to NMP3 |
| *PSC-01-12-00009-P | . . . . . . . . . . . exempt | Recovery of expenses related to the expansion of Con Edison's ESCO referral program, PowerMove | To determine how and to what extent expenses related to the Expansion of Con Edison's ESCO referral program should be recovered |
| *PSC-11-12-00002-P | . . . . . . . . . . . exempt | Whether to grant, deny or modify, in whole or part, Hegeman's petition for a waiver of Commission policy and Con Edison tariff | Whether to grant, deny or modify, in whole or part, Hegeman's petition for a waiver of Commission policy and Con Edison tariff |
| *PSC-11-12-00005-P | . . . . . . . . . . . exempt | Transfer of land and water supply assets | Transfer the land and associated water supply assets of Groman Shores, LLC to Robert Groman |
| *PSC-13-12-00005-P | . . . . . . . . . . . exempt | Authorization to transfer certain real property | To decide whether to approve the transfer of certain real property |
| *PSC-19-12-00023-P | . . . . . . . . . . . exempt | Petition for approval pursuant to Section 70 for the sale of goods with an original cost of less than $100,000 | To consider whether to grant, deny or modify, in whole or in part, the petition filed by Orange and Rockland Utilities, Inc. |
| *PSC-21-12-00006-P | . . . . . . . . . . . exempt | Tariff filing requirements and refunds | To determine if certain agreements should be filed pursuant to the Public Service Law and if refunds are warranted |
| *PSC-21-12-00011-P | . . . . . . . . . . . exempt | Whether to grant, deny or modify, in whole or part, the petition for waiver of tariff Rules 8.6 and 47 | Whether to grant, deny or modify, in whole or part, the petition for waiver of tariff Rules 8.6 and 47 |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-23-12-00007-P | . . . . . . . . . . . exempt | The approval of a financing upon a transfer to Alliance of upstream ownership interests in a generation facility | To consider the approval of a financing upon a transfer to Alliance of upstream ownership interests in a generation facility |
| *PSC-23-12-00009-P | . . . . . . . . . . . exempt | Over earnings sharing between rate payers and shareholders | To establish an Earnings Sharing Mechanism to be applied following the conclusion of Corning's rate plan |
| *PSC-27-12-00012-P | . . . . . . . . . . . exempt | Implementation of recommendations made in a Management Audit Report | To consider implementation of recommendations made in a Management Audit Report |
| *PSC-28-12-00013-P | . . . . . . . . . . . exempt | Exemption of reliability reporting statistics for the purpose of the 2012 Reliability Performance Mechanism | Consideration of Orange and Rockland Utilities request for exemption of the 2012 reliability reporting statistics |
| *PSC-29-12-00019-P | . . . . . . . . . . . exempt | Waiver of 16 NYCRR 894.1 through 894.4 | To allow the Town of Hamden to waive certain preliminary franchising procedures to expedite the franchising process. |
| *PSC-30-12-00010-P | . . . . . . . . . . . exempt | Waiver of 16 NYCRR 894.1 through 894.4 | To allow the Town of Andes to waive certain preliminary franchising procedures to expedite the franchising process |
| *PSC-33-12-00009-P | . . . . . . . . . . . exempt | Telecommunications companies ability to attach to utility company poles | Consideration of Tech Valley's ability to attach to Central Hudson poles |
| *PSC-37-12-00009-P | . . . . . . . . . . . exempt | Proposed modification by Con Edison of its procedures to calculate estimated bills to its customers | Proposed modification by Con Edison of its procedures to calculate estimated bills to its customers |
| *PSC-42-12-00009-P | . . . . . . . . . . . exempt | Regulation of Gipsy Trail Club, Inc.'s long-term financing agreements | To exempt Gipsy Trail Club, Inc. from Commission regulation of its financing agreements |
| *PSC-45-12-00008-P | . . . . . . . . . . . exempt | Whether to grant, deny or modify, in whole or part, ESHG's petition for a waiver of Commission policy and RG&E tariff | Whether to grant, deny or modify, in whole or part, ESHG's petition for a waiver of Commission policy and RG&E tariff |
| *PSC-45-12-00010-P | . . . . . . . . . . . exempt | Whether to grant, deny or modify, in whole or in part the petition of Con Edison to grant easements to Millwood Fire District | Whether to grant, deny or modify, in whole or in part the petition of Con Edison to grant easements to Millwood Fire District |
| *PSC-50-12-00003-P | . . . . . . . . . . . exempt | Affiliate standards for Corning Natural Gas Corporation | To resolve issues raised by Corning Natural Gas Corporation in its petition for rehearing |
| *PSC-04-13-00006-P | . . . . . . . . . . . exempt | Expansion of mandatory day ahead hourly pricing for customers of Orange and Rockland Utilities with demands above 100 kW | To consider the expansion of mandatory day ahead hourly pricing for customers with demands above 100 kW |
| *PSC-04-13-00007-P | . . . . . . . . . . . exempt | Authorization to transfer certain real property. | To decide whether to approve the transfer of certain real property. |
| *PSC-06-13-00008-P | . . . . . . . . . . . exempt | Verizon New York Inc.'s retail service quality | To investigate Verizon New York Inc.'s retail service quality |
| *PSC-08-13-00012-P | . . . . . . . . . . . exempt | Filing requirements for certain Article VII electric facilities | To ensure that applications for certain electric transmission facilities contain pertinent information |

NYS Register/December 31, 2019

Action Pending Index

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-08-13-00014-P | . . . . . . . . . . . exempt | Uniform System of Accounts - Request for Accounting Authorization | To allow the company to defer an item of expense or capital beyond the end of the year in which it was incurred |
| *PSC-12-13-00007-P | . . . . . . . . . . . exempt | Protecting company water mains | To allow the company to require certain customers to make changes to the electrical grounding system at their homes |
| *PSC-13-13-00008-P | . . . . . . . . . . . exempt | The potential waiver of 16 NYCRR 255.9221(d) completion of integrity assessments for certain gas transmission lines. | To determine whether a waiver of the timely completion of certain gas transmission line integrity assessments should be granted. |
| *PSC-18-13-00007-P | . . . . . . . . . . . exempt | Whether Demand Energy Networks energy storage systems should be designated technologies for standby rate eligibility purposes | Whether Demand Energy Networks energy storage systems should be designated technologies for standby rate eligibility purposes |
| *PSC-21-13-00003-P | . . . . . . . . . . . exempt | To consider policies that may impact consumer acceptance and use of electric vehicles | To consider and further develop policies that may impact consumer acceptance and use of electric vehicles |
| *PSC-21-13-00005-P | . . . . . . . . . . . exempt | To implement an abandonment of Windover's water system | To approve the implementation of abandonment of Windover's water system |
| *PSC-21-13-00008-P | . . . . . . . . . . . exempt | Rates of National Fuel Gas Distribution Corporation | To make the rates of National Fuel Gas Distribution Corporation temporary, subject to refund, if they are found to be excessive |
| *PSC-21-13-00009-P | . . . . . . . . . . . exempt | Reporting requirements for natural gas local distribution companies | To help ensure efficient and economic expansion of the natural gas system as appropriate |
| *PSC-22-13-00009-P | . . . . . . . . . . . exempt | On remand from New York State court litigation, determine the recovery of certain deferred amounts owed NFG by ratepayers | On remand, to determine the recovery of certain deferral amounts owed NFG from ratepayers |
| *PSC-23-13-00005-P | . . . . . . . . . . . exempt | Waiver of partial payment, directory database distribution, service quality reporting, and service termination regulations | Equalize regulatory treatment based on level of competition and practical considerations |
| *PSC-25-13-00008-P | . . . . . . . . . . . exempt | To deny, grant or modify, in whole or in part, Central Hudson's rehearing request. | To deny, grant or modify, in whole or in part, Central Hudson's rehearing request. |
| *PSC-25-13-00009-P | . . . . . . . . . . . exempt | Provision by utilities of natural gas main and service lines. | To help ensure efficient and economic expansion of the natural gas system as appropriate. |
| *PSC-25-13-00012-P | . . . . . . . . . . . exempt | To deny, grant or modify, in whole or in part, Central Hudson's rehearing request. | To deny, grant or modify, in whole or in part, Central Hudson's rehearing request. |
| *PSC-27-13-00014-P | . . . . . . . . . . . exempt | Columbia Gas Transmission Corporation Cost Refund | For approval for temporary waiver of tariff provisions regarding its Columbia Gas Transmission Corporation cost refund. |
| *PSC-28-13-00014-P | . . . . . . . . . . . exempt | Provision for the recovery and allocation of costs of transmission projects that reduce congestion on certain interfaces | To consider the recovery and allocation of costs of transmission projects that reduce congestion on certain interfaces |
| *PSC-28-13-00016-P | . . . . . . . . . . . exempt | The request of NGT for lightened regulation as a gas corporation. | To consider whether to approve, reject, or modify the request of Niagara gas transport of Lockport, NY LLC. |

**Action Pending Index**                    **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-28-13-00017-P | . . . . . . . . . . . exempt | The request by TE for waiver of regulations requiring that natural gas be odorized in certain gathering line segments | Consider the request by TE for waiver of regulations that gas be odorized in certain lines |
| *PSC-32-13-00009-P | . . . . . . . . . . . exempt | To consider the definition of "misleading or deceptive conduct" in the Commission's Uniform Business Practices | To consider the definition of "misleading or deceptive conduct" in the Commission's Uniform Business Practices |
| *PSC-32-13-00012-P | . . . . . . . . . . . exempt | To consider whether NYSEG should be required to undertake actions to protect its name and to minimize customer confusion | To consider whether NYSEG should be required to undertake actions to protect its name and to minimize customer confusion |
| *PSC-33-13-00027-P | . . . . . . . . . . . exempt | Waive underground facility requirements for new construction in residential subdivisions to allow for overhead electric lines. | Determine whether Chapin Lumberland, LLC subdivision will be allowed overhead electric distribution and service lines. |
| *PSC-33-13-00029-P | . . . . . . . . . . . exempt | Deferral of incremental costs associated with the restoration of steam service following Superstorm Sandy | To consider a petition by Con Edison to defer certain incremental steam system restoration costs relating to Superstorm Sandy. |
| *PSC-34-13-00004-P | . . . . . . . . . . . exempt | Escrow account and surcharge to fund extraordinary repairs | To approve the establishment of an escrow account and surcharge |
| *PSC-42-13-00013-P | . . . . . . . . . . . exempt | Failure to Provide Escrow Information | The closure of the Escrow Account |
| *PSC-42-13-00015-P | . . . . . . . . . . . exempt | Failure to Provide Escrow Information | The closure of the Escrow Account |
| *PSC-43-13-00015-P | . . . . . . . . . . . exempt | Petition for submetering of electricity | To consider the request of 2701 Kingsbridge Terrace L.P. to submeter electricity at 2701 Kingsbridge Terrace, Bronx, N.Y. |
| *PSC-45-13-00021-P | . . . . . . . . . . . exempt | Investigation into effect of bifurcation of gas and electric utility service on Long Island. | To consider a Petition for an investigation into effect of bifurcation of gas and electric utility service on Long Island. |
| *PSC-45-13-00022-P | . . . . . . . . . . . exempt | Waiver of PSC regulations, 16 NYCRR section 88.4(a)(4) | To consider a waiver of certain regulations relating to the content of an application for transmission line siting |
| *PSC-45-13-00023-P | . . . . . . . . . . . exempt | Waiver of PSC regulations, 16 NYCRR section 88.4(a)(4). | To consider a waiver of certain regulations relating to the content of an application for transmission line siting |
| *PSC-45-13-00024-P | . . . . . . . . . . . exempt | Waiver of PSC regulations, 16 NYCRR section 88.4(a)(4); waiver of filing deadlines. | To consider a waiver of certain regulations relating to the content of an application for transmission line siting |
| *PSC-45-13-00025-P | . . . . . . . . . . . exempt | Waiver of PSC regulations, 16 NYCRR section 88.4(a)(4). | To consider a waiver of certain regulations relating to the content of an application for transmission line siting |
| *PSC-47-13-00009-P | . . . . . . . . . . . exempt | Petition for submetering of electricity. | To consider the request of Hegeman Avenue Housing L.P. to submeter electricity at 39 Hegeman Avenue, Brooklyn, N.Y. |
| *PSC-47-13-00012-P | . . . . . . . . . . . exempt | Conditioning,restricting or prohibiting the purchase of services by NYSEG and RG&E from certain affiliates. | Consideration of conditioning,restricting or prohibiting the purchase of services by NYSEG and RG&E from certain affiliates. |
| *PSC-49-13-00008-P | . . . . . . . . . . . exempt | Authorization to transfer all of Crystal Water Supply Company, Inc. stocks to Essel Infra West Inc. | To allow Crystal Water Supply Company, Inc to transfer all of its issued and outstanding stocks to Essel Infra West Inc. |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
| --- | --- | --- | --- |
| *PSC-51-13-00009-P | . . . . . . . . . . . exempt | Consolidated Edison proposing to use data from a test period ending September 30, 2013 to support its next rate filing. | To ensure there is a reasonable basis for data submitted in support of a request for a change in rates. |
| *PSC-51-13-00010-P | . . . . . . . . . . . exempt | Consolidated Edison proposing to use data from a test period ending September 30, 2013 to support its next rate filing. | To ensure there is a reasonable basis for data submitted in support of a request for a change in rates. |
| *PSC-51-13-00011-P | . . . . . . . . . . . exempt | Consolidated Edison proposing to use data from a test period ending September 30, 2013 to support its next rate filing. | To ensure there is a reasonable basis for data submitted in support of a request for a change in rates. |
| *PSC-52-13-00012-P | . . . . . . . . . . . exempt | The development of reliability contingency plan(s) to address the potential retirement of Indian Point Energy Center (IPEC). | To address the petition for rehearing and reconsideration/motion for clarification of the IPEC reliability contingency plan(s). |
| *PSC-52-13-00015-P | . . . . . . . . . . . exempt | To enter into a loan agreement with the banks for up to an amount of $94,000. | To consider allowing Knolls Water Company to enter into a long-term loan agreement. |
| *PSC-05-14-00010-P | . . . . . . . . . . . exempt | The New York State Reliability Council's revisions to its rules and measurements | To adopt revisions to various rules and measurements of the New York State Reliability Council |
| *PSC-07-14-00008-P | . . . . . . . . . . . exempt | Petition for submetering of electricity | To consider the request of Greater Centennial Homes HDFC, Inc. to submeter electricity at 102, 103 and 106 W 5th Street, et al. |
| *PSC-07-14-00012-P | . . . . . . . . . . . exempt | Water rates and charges | Implementation of Long-Term Water Supply Surcharge to recover costs associated with the Haverstraw Water Supply Project |
| *PSC-08-14-00015-P | . . . . . . . . . . . exempt | Verizon New York Inc.'s service quality and Customer Trouble Report Rate (CTRR) levels at certain central office entities | To improve Verizon New York Inc.'s service quality and the Customer Trouble Report Rate levels at certain central office entities |
| *PSC-10-14-00006-P | . . . . . . . . . . . exempt | Actions to facilitate the availability of ESCO value-added offerings, ESCO eligibility and ESCO compliance | To facilitate ESCO value-added offerings and to make changes to ESCO eligibility and to ensure ESCO compliance |
| *PSC-11-14-00003-P | . . . . . . . . . . . exempt | Provision for the recovery and allocation of costs of transmission projects that reduce congestion on certain interfaces | To consider the recovery and allocation of costs of transmission projects that reduce congestion on certain interfaces |
| *PSC-16-14-00014-P | . . . . . . . . . . . exempt | Whether to order NYSEG to provide gas service to customers when an expanded CPCN is approved and impose PSL 25-a penalties. | To order gas service to customers in the Town of Plattsburgh after approval of a town wide CPCN and to impose penalties. |
| *PSC-16-14-00015-P | . . . . . . . . . . . exempt | Whether Central Hudson should be permitted to defer obligations of the Order issued on October 18, 2013 in Case 13-G-0336. | Consideration of the petition by Central Hudson to defer reporting obligations of the October 18, 2013 Order in Case 13-G-0336 |
| *PSC-17-14-00003-P | . . . . . . . . . . . exempt | Con Edison's Report on its 2013 performance under the Electric Service Reliability Performance Mechanism | Con Edison's Report on its 2013 performance under the Electric Service Reliability Performance Mechanism |
| *PSC-17-14-00004-P | . . . . . . . . . . . exempt | To consider certain portions of petitions for rehearing, reconsideration and/or clarification | To consider certain portions of petitions for rehearing, reconsideration and/or clarification |
| *PSC-17-14-00007-P | . . . . . . . . . . . exempt | To consider petitions for rehearing, reconsideration and/or clarification | To consider petitions for rehearing, reconsideration and/or clarification |

**PUBLIC SERVICE COMMISSION**

**Action Pending Index**

**NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-17-14-00008-P | . . . . . . . . . . . exempt | To consider certain portions of petitions for rehearing, reconsideration and/or clarification | To consider certain portions of petitions for rehearing, reconsideration and/or clarification |
| *PSC-19-14-00014-P | . . . . . . . . . . . exempt | Market Supply Charge | To make tariff revisions to the Market Supply Charge for capacity related costs |
| *PSC-19-14-00015-P | . . . . . . . . . . . exempt | Whether to permit the use of the Sensus accuWAVE for use in residential and commercial gas meter applications | To permit gas utilities in New York State to use the Sensus accuWAVE 415TC gas meter |
| *PSC-22-14-00013-P | . . . . . . . . . . . exempt | Petition to transfer and merge systems, franchises and assets. | To consider the Comcast and Time Warner Cable merger and transfer of systems, franchises and assets. |
| *PSC-23-14-00010-P | . . . . . . . . . . . exempt | Whether to permit the use of the GE Dresser Series B3-HPC 11M-1480 rotary gas met for use in industrial gas meter applications | To permit gas utilities in New York State to use the GE Dresser Series B3-HPC 11M-1480 rotary gas meter |
| *PSC-23-14-00014-P | . . . . . . . . . . . exempt | Waiver of the negative revenue adjustment associated with KEDLI's 2013 Customer Satisfaction Performance Metric | Consideration of KEDLI's waiver request pertaining to its 2013 performance under its Customer Satisfaction Metric |
| *PSC-24-14-00005-P | . . . . . . . . . . . exempt | To examine LDC's performance and performance measures. | To improve gas safety performance. |
| *PSC-26-14-00013-P | . . . . . . . . . . . exempt | Waiver of RG&E's tariffed definition of emergency generator. | To consider waiver of RG&E's tariffed definition of emergency generator. |
| *PSC-26-14-00020-P | . . . . . . . . . . . exempt | New electric utility backup service tariffs and standards for interconnection may be adopted. | To encourage development of microgrids that enhance the efficiency, safety, reliability and resiliency of the electric grid. |
| *PSC-26-14-00021-P | . . . . . . . . . . . exempt | Consumer protections, standards and protocols pertaining to access to customer data may be established. | To balance the need for the information necessary to support a robust market with customer privacy concerns. |
| *PSC-28-14-00014-P | . . . . . . . . . . . exempt | Petition to transfer systems, franchises and assets. | To consider the Comcast and Charter transfer of systems, franchise and assets. |
| *PSC-30-14-00023-P | . . . . . . . . . . . exempt | Whether to permit the use of the Sensus iPERL Fire Flow Meter. | Pursuant to 16 NYCRR Part 500.3 , it is necessary to permit the use of the Sensus iPERL Fire Flow Meter. |
| *PSC-30-14-00026-P | . . . . . . . . . . . exempt | Petition for a waiver to master meter electricity. | Considering the request of Renaissance Corporation of to master meter electricity at 100 Union Drive,Albany, NY. |
| *PSC-31-14-00004-P | . . . . . . . . . . . exempt | To transfer 100% of the issued and outstanding stock from Vincent Cross to Bonnie and Michael Cross | To transfer 100% of the issued and outstanding stock from Vincent Cross to Bonnie and Michael Cross |
| *PSC-32-14-00012-P | . . . . . . . . . . . exempt | Whether to grant or deny, in whole or in part, the Connect New York Coalition's petition | To consider the Connect New York Coalition's petition seeking a formal investigation and hearings |
| *PSC-35-14-00004-P | . . . . . . . . . . . exempt | Regulation of a proposed electricity generation facility located in the Town of Brookhaven, NY | To consider regulation of a proposed electricity generation facility located in the Town of Brookhaven, NY |
| *PSC-35-14-00005-P | . . . . . . . . . . . exempt | Whether to permit the use of the Sensus iConA electric meter | Pursuant to 16 NYCRR Parts 92 and 93, Commission approval is necessary to permit the use of the Sensus iConA electric meter |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-36-14-00009-P | . . . . . . . . . . . exempt | Modification to the Commission's Electric Safety Standards. | To consider revisions to the Commission's Electric Safety Standards. |
| *PSC-38-14-00003-P | . . . . . . . . . . . exempt | Whether to approve, reject or modify, in whole or in part a time-sensitive rate pilot program. | Whether to approve, reject or modify, in whole or in part a time-sensitive rate pilot program. |
| *PSC-38-14-00004-P | . . . . . . . . . . . exempt | The study and petition of Con Edison regarding use, accounting and ratemaking treatment for 11-23 and 2-28 Hudson Ave. Brooklyn. | The study and petition of Con Edison regarding use, accounting and ratemaking treatment for 11-23 and 2-28 Hudson Ave. Brooklyn. |
| *PSC-38-14-00005-P | . . . . . . . . . . . exempt | Action on the report and petition of Con Edison regarding the Storm Hardening and Resiliency Collaborative, Phase 2. | Action on the report and petition of Con Edison regarding the Storm Hardening and Resiliency Collaborative, Phase 2. |
| *PSC-38-14-00007-P | . . . . . . . . . . . exempt | Whether to expand Con Edison's low income program to include Medicaid recipients. | Whether to expand Con Edison's low income program to include Medicaid recipients. |
| *PSC-38-14-00008-P | . . . . . . . . . . . exempt | The study and petition of Con Edison regarding use, accounting and ratemaking treatment for 11-23 and 2-28 Hudson Ave. Brooklyn. | The study and petition of Con Edison regarding use, accounting and ratemaking treatment for 11-23 and 2-28 Hudson Ave. Brooklyn. |
| *PSC-38-14-00010-P | . . . . . . . . . . . exempt | Inter-carrier telephone service quality standard and metrics and administrative changes. | To review recommendations from the Carrier Working Group and incorporate appropriate modifications to the existing Guidelines. |
| *PSC-38-14-00012-P | . . . . . . . . . . . exempt | Action on the report and petition of Con Edison regarding the Storm Hardening and Resiliency Collaborative, Phase 2. | Action on the report and petition of Con Edison regarding the Storm Hardening and Resiliency Collaborative, Phase 2. |
| *PSC-39-14-00020-P | . . . . . . . . . . . exempt | Whether to permit the use of the Mueller Systems 400 Series and 500 Series of water meters | Pursuant to 16 NYCRR section 500.3, whether to permit the use of the Mueller Systems 400, and 500 Series of water meters |
| *PSC-40-14-00008-P | . . . . . . . . . . . exempt | To consider granting authorization for Buy Energy Direct to resume marketing to residential customers. | To consider granting authorization for Buy Energy Direct to resume marketing to residential customers. |
| *PSC-40-14-00009-P | . . . . . . . . . . . exempt | Whether to permit the use of the Itron Open Way Centron Meter with Hardware 3.1 for AMR and AMI functionality. | Pursuant to 16 NYCRR Parts 93, is necessary to permit the use of the Itron Open Way Centron Meter with Hardware 3.1. |
| *PSC-40-14-00011-P | . . . . . . . . . . . exempt | Late Payment Charge. | To modify Section 7.6 - Late Payment Charge to designate a specific time for when a late payment charge is due. |
| *PSC-40-14-00013-P | . . . . . . . . . . . exempt | Regulation of a proposed natural gas pipeline and related facilities located in the Town of Ticonderoga, NY. | To consider regulation of a proposed natural gas pipeline and related facilities located in the Town of Ticonderoga, NY. |
| *PSC-40-14-00014-P | . . . . . . . . . . . exempt | Waiver of 16 NYCRR Sections 894.1 through 894.4(b)(2) | To allow the Town of Goshen, NY, to waive certain preliminary franchising procedures to expedite the franchising process. |
| *PSC-40-14-00015-P | . . . . . . . . . . . exempt | Late Payment Charge. | To modify Section 6.6 - Late Payment Charge to designate a specific time for when a late payment charge is due. |
| *PSC-42-14-00003-P | . . . . . . . . . . . exempt | Annual Reconciliation of Gas Expenses and Gas Cost Recoveries | The filings of various LDCs and municipalities regarding their Annual Reconciliation of Gas Expenses and Gas Cost Recoveries |

**Action Pending Index**                                    **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-42-14-00004-P | . . . . . . . . . . . exempt | Winter Bundled Sales Service Option | To modify SC-11 to remove language relating to fixed storage charges in the determination of the Winter Bundled Sales charge |
| *PSC-48-14-00014-P | . . . . . . . . . . . exempt | Considering the recommendations contained in Staff's electric outage investigation report for MNRR, New Haven Line. | To consider the recommendations contained in Staff's electric outage investigation report for MNRR, New Haven Line. |
| *PSC-52-14-00019-P | . . . . . . . . . . . exempt | Petition for a waiver to master meter electricity. | Considering the request of 614 South Crouse Avenue, LLC to master meter electricity at 614 South Crouse Avenue, Syracuse, NY.. |
| *PSC-01-15-00014-P | . . . . . . . . . . . exempt | State Universal Service Fund Disbursements | To consider Edwards Telephone Company's request for State Universal Service Fund disbursements |
| *PSC-08-15-00010-P | . . . . . . . . . . . exempt | Request pertaining to the lawfulness of National Grid USA continuing its summary billing program. | To grant, deny, or modify URAC Rate Consultants' request that National Grid cease its summary billing program. |
| *PSC-10-15-00007-P | . . . . . . . . . . . exempt | Notification concerning tax refunds | To consider Verizon New York Inc.'s partial rehearing or reconsideration request regarding retention of property tax refunds |
| *PSC-10-15-00008-P | . . . . . . . . . . . exempt | Whether to waive Policy on Test Periods in Major Rate Proceedings and provide authority to file tariff changes | Whether to waive Policy on Test Periods in Major Rate Proceedings and provide authority to file tariff changes |
| *PSC-13-15-00024-P | . . . . . . . . . . . exempt | Whether Leatherstocking should be permitted to recover a shortfall in earnings | To decide whether to approve Leatherstocking's request to recover a shortfall in earnings |
| *PSC-13-15-00026-P | . . . . . . . . . . . exempt | Whether to permit the use of the Sensus Smart Point Gas AMR/AMI product | To permit the use of the Sensus Smart Point Gas AMR/AMI product |
| *PSC-13-15-00027-P | . . . . . . . . . . . exempt | Whether to permit the use of the Measurlogic DTS 310 electric submeter | To permit the use of the Measurlogic DTS 310 submeter |
| *PSC-13-15-00028-P | . . . . . . . . . . . exempt | Whether to permit the use of the SATEC EM920 electric meter | To permit necessary to permit the use of the SATEC EM920 electric meter |
| *PSC-13-15-00029-P | . . . . . . . . . . . exempt | Whether to permit the use the Triacta Power Technologies 6103, 6112, 6303, and 6312 electric submeters | To permit the use of the Triacta submeters |
| *PSC-17-15-00007-P | . . . . . . . . . . . exempt | To consider the petition of Leatherstocking Gas Company, LLC seeking authority to issue long-term debt of $2.75 million | To consider the petition of Leatherstocking Gas Company, LLC seeking authority to issue long-term debt of $2.75 million |
| *PSC-18-15-00005-P | . . . . . . . . . . . exempt | Con Edison's Report on its 2014 performance under the Electric Service Reliability Performance Mechanism | Con Edison's Report on its 2014 performance under the Electric Service Reliability Performance Mechanism |
| *PSC-19-15-00011-P | . . . . . . . . . . . exempt | Gas Safety Performance Measures and associated negative revenue adjustments | To update the performance measures applicable to KeySpan Gas East Corporation d/b/a National Grid |
| *PSC-22-15-00015-P | . . . . . . . . . . . exempt | To consider the request for waiver of the individual residential unit meter requirements and 16 NYCRR 96.1(a) | To consider the request for waiver of the individual residential unit meter requirements and 16 NYCRR 96.1(a) |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-23-15-00005-P | . . . . . . . . . . . exempt | The modification of New York American Water's current rate plan | Whether to adopt the terms of the Joint Proposal submitted by NYAW and DPS Staff |
| *PSC-23-15-00006-P | . . . . . . . . . . . exempt | The modification of New York American Water's current rate plan | Whether to adopt the terms of the Joint Proposal submitted by NYAW and DPS Staff |
| *PSC-25-15-00008-P | . . . . . . . . . . . exempt | Notice of Intent to Submeter electricity. | To consider the request of 165 E 66 Residences, LLC to submeter electricity at 165 East 66th Street, New York, New York. |
| *PSC-29-15-00025-P | . . . . . . . . . . . exempt | Joint Petition for authority to transfer real property located at 624 West 132nd Street, New York, NY | Whether to authorize the proposed transfer of real property located at 624 West 132nd Street, New York, NY |
| *PSC-32-15-00006-P | . . . . . . . . . . . exempt | Development of a Community Solar Demonstration Project. | To approve the development of a Community Solar Demonstration Project. |
| *PSC-33-15-00009-P | . . . . . . . . . . . exempt | Remote net metering of a demonstration community net metering program. | To consider approval of remote net metering of a demonstration community net metering program. |
| *PSC-33-15-00012-P | . . . . . . . . . . . exempt | Remote net metering of a Community Solar Demonstration Project. | To consider approval of remote net metering of a Community Solar Demonstration Project. |
| *PSC-34-15-00021-P | . . . . . . . . . . . exempt | Petition by NYCOM requesting assistance with obtaining information on CLECs and ESCOs | To consider the petition by NYCOM requesting assistance with obtaining information on CLECs and ESCOs |
| *PSC-35-15-00014-P | . . . . . . . . . . . exempt | Consideration of consequences against Light Power & Gas, LLC for violations of the UBP | To consider consequences against Light Power & Gas, LLC for violations of the UBP |
| *PSC-37-15-00007-P | . . . . . . . . . . . exempt | Submetered electricity | To consider the request of 89 Murray Street Ass. LLC, for clarification of the submetering order issued December 20, 2007 |
| *PSC-40-15-00014-P | . . . . . . . . . . . exempt | Whether to permit the use of the Open Way 3.5 with cellular communications | To consider the use of the Open Way 3.5 electric meter, pursuant to 16 NYCRR Parts 92 and 93 |
| *PSC-42-15-00006-P | . . . . . . . . . . . exempt | Deferral of incremental expenses associated with NERC's new Bulk Electric System (BES) compliance requirements approved by FERC. | Consideration of Central Hudson's request to defer incremental expenses associated with new BES compliance requirements. |
| *PSC-44-15-00028-P | . . . . . . . . . . . exempt | Deferral of incremental expenses associated with new compliance requirements | Consideration of Central Hudson's request to defer incremental expenses associated with new compliance requirements |
| *PSC-47-15-00013-P | . . . . . . . . . . . exempt | Whitepaper on Implementing Lightened Ratemaking Regulation. | Consider Whitepaper on Implementing Lightened Ratemaking Regulation. |
| *PSC-48-15-00011-P | . . . . . . . . . . . exempt | Proposal to retire Huntley Units 67 and 68 on March 1, 2016. | Consider the proposed retirement of Huntley Units 67 and 68. |
| *PSC-50-15-00006-P | . . . . . . . . . . . exempt | The reduction of rates. | To consider the reduction of rates charged by Independent Water Works, Inc. |
| *PSC-50-15-00009-P | . . . . . . . . . . . exempt | Notice of Intent to submeter electricity. | To consider the request to submeter electricity at 31-33 Lincoln Road and 510 Flatbush Avenue, Brooklyn, New York. |
| *PSC-51-15-00010-P | . . . . . . . . . . . exempt | Modification of the EDP | To consider modifying the EDP |

**Action Pending Index**                                                    **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-01-16-00005-P | exempt | Proposed amendment to Section 5, Attachment 1.A of the Uniform Business Practices | To consider amendment to Section 5, Attachment 1.A of the Uniform Business Practices |
| *PSC-04-16-00007-P | exempt | Whether Hamilton Municipal Utilities should be permitted to construct and operate a municipal gas distribution facility. | Consideration of the petition by Hamilton Municipal Utilities to construct and operate a municipal gas distribution facility. |
| *PSC-04-16-00012-P | exempt | Proposal to mothball three gas turbines located at the Astoria Gas Turbine Generating Station. | Consider the proposed mothball of three gas turbines located at the Astoria Gas Turbine Generating Station. |
| *PSC-04-16-00013-P | exempt | Proposal to find that three gas turbines located at the Astoria Gas Turbine Generating Station are uneconomic. | Consider whether three gas turbines located at the Astoria Gas Turbine Generating Station are uneconomic. |
| *PSC-06-16-00013-P | exempt | Continued deferral of approximately $16,000,000 in site investigation and remediation costs. | To consider the continued deferral of approximately $16,000,000 in site investigation and remediation costs. |
| *PSC-06-16-00014-P | exempt | MEGA's proposed demonstration CCA program. | To consider MEGA's proposed demonstration CCA program. |
| *PSC-14-16-00008-P | exempt | Resetting retail markets for ESCO mass market customers. | To ensure consumer protections with respect to residential and small non-residential ESCO customers. |
| *PSC-18-16-00013-P | exempt | Amendments to the Uniform Business Practices of ESCOs. | To ensure consumer protection for ESCO customers. |
| *PSC-18-16-00014-P | exempt | Amendments to the Uniform Business Practices of ESCOs. | To ensure consumer protection for ESCO customers. |
| *PSC-18-16-00015-P | exempt | Petitions for rehearing of the Order Resetting Retail Energy Markets and Establishing Further Process. | To ensure consumer protections for ESCO customers. |
| *PSC-18-16-00016-P | exempt | Amendments to the Uniform Business Practices of ESCOs. | To ensure consumer protection for ESCO customers. |
| *PSC-18-16-00018-P | exempt | Amendments to the Uniform Business Practices of ESCOs. | To ensure consumer protection for ESCO customers. |
| *PSC-20-16-00008-P | exempt | Consideration of consequences against Global Energy Group, LLC for violations of the Uniform Business Practices (UBP). | To consider consequences against Global Energy Group, LLC for violations of the Uniform Business Practices (UBP). |
| *PSC-20-16-00010-P | exempt | Deferral and recovery of incremental expense. | To consider deferring costs of conducting leak survey and repairs for subsequent recovery. |
| *PSC-20-16-00011-P | exempt | Enetics LD-1120 Non-Intrusive Load Monitoring Device in the Statewide Residential Appliance Metering Study. | To consider the use of the Enetics LD-1120 Non-Intrusive Load Monitoring Device. |
| *PSC-24-16-00009-P | exempt | Petition to submeter gas service. | To consider the Petition of New York City Economic Development Corp. to submeter gas at Pier 17, 89 South Street, New York, NY. |
| *PSC-25-16-00009-P | exempt | To delay Companies' third-party assessments of customer personally identifiable information until 2018. | To extend the time period between the Companies' third-party assessments of customer personally identifiable information. |

**NYS Register/December 31, 2019**                                        **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-25-16-00025-P | . . . . . . . . . . . exempt | Acquisition of all water supply assets of Woodbury Heights Estates Water Co., Inc. by the Village of Kiryas Joel. | To consider acquisition of all water supply assets of Woodbury Heights Estates Water Co., Inc. by the Village of Kiryas Joel. |
| *PSC-25-16-00026-P | . . . . . . . . . . . exempt | Use of the Badger E Series Ultrasonic Cold Water Stainless Steel Meter, in residential fire service applications. | To consider the use of the Badger E Series Ultrasonic Cold Water Stainless Steel Meter in fire service applications. |
| *PSC-28-16-00017-P | . . . . . . . . . . . exempt | A petition for rehearing of the Order Adopting a Ratemaking and Utility Revenue Model Policy Framework. | To determine appropriate rules for and calculation of the distributed generation reliability credit. |
| *PSC-29-16-00024-P | . . . . . . . . . . . exempt | Participation of NYPA customers in surcharge-funded clean energy programs. | To consider participation of NYPA customers in surcharge-funded clean energy programs. |
| *PSC-32-16-00012-P | . . . . . . . . . . . exempt | Benefit-Cost Analysis Handbooks. | To evaluate proposed methodologies of benefit-cost evaluation. |
| *PSC-33-16-00001-EP | . . . . . . . . . . . exempt | Use of escrow funds for repairs. | To authorize the use of escrow account funds for repairs. |
| *PSC-33-16-00005-P | . . . . . . . . . . . exempt | Exemption from certain charges for delivery of electricity to its Niagara Falls, New York facility. | Application of System Benefits Charges, Renewable Portfolio Standard charges and Clean Energy Fund surcharges. |
| *PSC-35-16-00015-P | . . . . . . . . . . . exempt | NYSRC's revisions to its rules and measurements | To consider revisions to various rules and measurements of the NYSRC |
| *PSC-36-16-00004-P | . . . . . . . . . . . exempt | Recovery of costs for installation of electric service. | To consider the recovery of costs for installation of electric service. |
| *PSC-40-16-00025-P | . . . . . . . . . . . exempt | Consequences pursuant to the Commission's Uniform Business Practices (UBP). | To consider whether to impose consequences on Smart One for its apparent non-compliance with Commission requirements. |
| *PSC-47-16-00009-P | . . . . . . . . . . . exempt | Petition to use commercial electric meters | To consider the petition of Itron, Inc. to use the Itron CP2SO and CP2SOA in commercial electric meter applications |
| *PSC-47-16-00010-P | . . . . . . . . . . . exempt | Standby Service rate design | To consider the report filed and the recommendations therein |
| *PSC-47-16-00013-P | . . . . . . . . . . . exempt | Standby Service rate design | To consider the report filed and the recommendations therein |
| *PSC-47-16-00014-P | . . . . . . . . . . . exempt | Standby Service rate design | To consider the report filed and the recommendations therein |
| *PSC-47-16-00016-P | . . . . . . . . . . . exempt | Standby Service rate design | To consider the report filed and the recommendations therein |
| *PSC-02-17-00010-P | . . . . . . . . . . . exempt | Implementation of the four EAMs. | To consider the implementation of EAMs for RG&E. |
| *PSC-02-17-00012-P | . . . . . . . . . . . exempt | Implementation of the four EAMs. | To consider the implementation of EAMs for NYSEG. |
| *PSC-14-17-00017-P | . . . . . . . . . . . exempt | Petition for Full-Scale Deployment of AMI and to Establish an AMI Surcharge. | To consider the petition for Full-Scale Deployment of AMI and to Establish an AMI Surcharge. |

**Action Pending Index**                                      **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-18-17-00024-P | . . . . . . . . . . . exempt | A petition for rehearing or reconsideration of the Order Addressing Public Policy Transmission Need for AC Transmission Upgrades | To determine whether Public Policy Transmission Need/Public Policy Requirements continue to exist. |
| *PSC-18-17-00026-P | . . . . . . . . . . . exempt | Revisions to the Dynamic Load Management surcharge. | To consider revisions to the Dynamic Load Management surcharge. |
| *PSC-19-17-00004-P | . . . . . . . . . . . exempt | NYAW's request to defer and amortize, for future rate recognition, pension settlement payout losses incurred in 2016. | Consideration of NYAW's petition to defer and amortize, for future rate recognition, pension payour losses incurred in 2016. |
| *PSC-20-17-00008-P | . . . . . . . . . . . exempt | Compressed natural gas as a motor fuel for diesel fueled vehicles. | To consider a report filed by National Grid NY regarding the potential for adoption of compressed natural gas as a motor fuel. |
| *PSC-20-17-00010-P | . . . . . . . . . . . exempt | Compressed natural gas as a motor fuel for diesel fueled vehicles. | To consider a report filed by National Grid regarding the potential for adoption of compressed natural gas as a motor fuel. |
| *PSC-21-17-00013-P | . . . . . . . . . . . exempt | The establishment and implementation of Earnings Adjustment Mechanisms. | To consider the establishment and implementation of Earnings Adjustment Mechanisms. |
| *PSC-21-17-00018-P | . . . . . . . . . . . exempt | Proposed agreement for the provision of water service by Saratoga Water Services, Inc. | To consider a waiver and approval of terms of a service agreement. |
| *PSC-22-17-00004-P | . . . . . . . . . . . exempt | Financial incentives to create customer savings and develop market-enabling tools, with a focus on outcomes and incentives | To consider the proposed Interconnection Survey Process and Earnings Adjustment Mechanisms |
| *PSC-24-17-00006-P | . . . . . . . . . . . exempt | Development of the Utility Energy Registry. | Improved data access. |
| *PSC-26-17-00005-P | . . . . . . . . . . . exempt | Notice of Intent to submeter electricity. | To consider the Notice of Intent to submeter electricity at 125 Waverly Street, Yonkers, New York. |
| *PSC-34-17-00011-P | . . . . . . . . . . . exempt | Waiver to permit Energy Cooperative of America to serve low-income customers | To consider the petition for a waiver |
| *PSC-37-17-00005-P | . . . . . . . . . . . exempt | Financial incentives to create customer savings and develop market-enabling tools, with a focus on outcomes and incentives. | To consider the revised Interconnection Survey Process and Earnings Adjustment Mechanisms. |
| *PSC-37-17-00006-P | . . . . . . . . . . . exempt | Petition to submeter electricity. | To consider the petition of ACC OP (Park Point SU) LLC to submeter electricity at 417 Comstock Avenue, Syracuse, New York. |
| *PSC-39-17-00011-P | . . . . . . . . . . . exempt | Whether to direct New York State Electric & Gas to complete electric facility upgrades at no charge to Hanehan. | To determine financial responsibility between NYSEG and Hanehan for the electric service upgrades to Hanehan. |
| *PSC-40-17-00006-P | . . . . . . . . . . . exempt | The aggregation of electric service for the Empire State Plaza and the Sheridan Avenue Steam Plant | To consider a waiver of National Grid's tariff provision requiring all electric delivery points to be on the same premises |
| *PSC-42-17-00010-P | . . . . . . . . . . . exempt | Petition for rehearing of negative revenue adjustment and contents of annual Performance Report. | To consider NFGD's petition for rehearing. |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| *PSC-48-17-00015-P | . . . . . . . . . . . exempt | Low Income customer options for affordable water bills. | To consider the Low Income Bill Discount and/or Energy Efficiency Rebate Programs. |
| *PSC-50-17-00017-P | . . . . . . . . . . . exempt | New Wave Energy Corp.'s petition for rehearing. | To consider the petition for rehearing filed by New Wave Energy Corp. |
| *PSC-50-17-00018-P | . . . . . . . . . . . exempt | Application of the Public Service Law to DER suppliers. | To determine the appropriate regulatory framework for DER suppliers. |
| *PSC-50-17-00019-P | . . . . . . . . . . . exempt | Transfer of utility property. | To consider the transfer of utility property. |
| *PSC-50-17-00021-P | . . . . . . . . . . . exempt | Disposition of tax refunds and other related matters. | To consider the disposition of tax refunds and other related matters. |
| *PSC-50-17-00022-P | . . . . . . . . . . . exempt | Data protection rules for DER suppliers. | To determine the appropriate regulatory framework for DER suppliers. |
| *PSC-51-17-00011-P | . . . . . . . . . . . exempt | Petition for recovery of certain costs related to the implementation of a Non-Wires Alternative Project. | To consider Con Edison's petition for the recovery of costs for implementing the JFK Project. |
| *PSC-04-18-00005-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To consider the notice of intent of Montante/ Morgan Gates Circle LLC to submeter electricity. |
| *PSC-05-18-00004-P | . . . . . . . . . . . exempt | Lexington Power's ZEC compliance obligation. | To promote and maintain renewable and zero-emission electric energy resources. |
| *PSC-06-18-00012-P | . . . . . . . . . . . exempt | To consider further proposed amendments to the original criteria to grandfathering established in the Transition Plan | To modify grandfathering criteria |
| *PSC-06-18-00017-P | . . . . . . . . . . . exempt | Merger of NYAW and Whitlock Farms Water Corp. | To consider the merger of NYAW and Whitlock Farms Water Company into a single corporate entity |
| *PSC-07-18-00015-P | . . . . . . . . . . . exempt | The accuracy and reasonableness of National Grid's billing for certain interconnection upgrades. | To consider AEC's petition requesting resolution of their billing dispute with National Grid. |
| *PSC-11-18-00004-P | . . . . . . . . . . . exempt | New York State Lifeline Program. | To consider TracFone's petition seeking approval to participate in Lifeline. |
| *PSC-13-18-00015-P | . . . . . . . . . . . exempt | Eligibility of an ESCO to market to and enroll residential customers. | To consider whether Astral should be allowed to market to and enroll residential customers following a suspension. |
| *PSC-13-18-00023-P | . . . . . . . . . . . exempt | Reconciliation of property taxes. | To consider NYAW's request to reconcile property taxes. |
| *PSC-14-18-00006-P | . . . . . . . . . . . exempt | Petition for abandonment | To consider the abandonment of Willsboro Bay Water Company's water system |
| *PSC-17-18-00010-P | . . . . . . . . . . . exempt | Petition for use of gas metering equipment. | To ensure that consumer bills are based on accurate measurements of gas usage. |
| *PSC-18-18-00009-P | . . . . . . . . . . . exempt | Transfer of control of Keene Valley Video Inc. | To ensure performance in accordance with applicable cable laws, regulations and standards and the public interest |

**Action Pending Index**                                NYS Register/December 31, 2019

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-23-18-00006-P | exempt | Whether to impose consequences on Aspirity for its non-compliance with Commission requirements. | To ensure the provision of safe and adequate energy service at just and reasonable rates. |
| *PSC-24-18-00013-P | exempt | Implementation of program rules for Renewable Energy Standard and ZEC requirements. | To promote and maintain renewable and zero-emission electric energy resources. |
| *PSC-28-18-00011-P | exempt | Storm Hardening Collaborative Report. | To ensure safe and adequate gas service. |
| *PSC-29-18-00008-P | exempt | Participation in Targeted Accessibility Fund | To encourage enhanced services for low-income consumers |
| *PSC-29-18-00009-P | exempt | Overvaluing real property tax expense recovery in water rates | To prevent unjust and unreasonable water rates |
| *PSC-34-18-00011-P | exempt | Compensation of distributed energy resources. | To ensure just and reasonable rates, including compensation, for distributed energy resources. |
| *PSC-34-18-00015-P | exempt | Petition to submeter electricity. | To ensure adequate submetering equipment and energy efficiency protections are in place. |
| *PSC-34-18-00016-P | exempt | Deferral of pre-staging and mobilization storm costs. | To ensure just and reasonable rates for ratepayers and utility recovery of unexpected, prudently incurred costs. |
| *PSC-35-18-00003-P | exempt | Con Edison's 2018 DSIP and BCA Handbook Update. | To continue Con Edison's transition to a modern utility serving as a Distributed System Platform Provider. |
| *PSC-35-18-00005-P | exempt | NYSEG and RG&E's 2018 DSIP and BCA Handbook Update. | To continue NYSEG and RG&E's transition to modern utilities acting as Distributed System Platform Providers. |
| *PSC-35-18-00006-P | exempt | National Grid's 2018 DSIP and BCA Handbook Update. | To continue National Grid's transition to a modern utility serving as a Distributed System Platform Provider. |
| *PSC-35-18-00008-P | exempt | Central Hudson's 2018 DSIP and BCA Handbook Update. | To continue Central Hudson's transition to a modern utility serving as a Distributed System Platform Provider. |
| *PSC-35-18-00010-P | exempt | O&R's 2018 DSIP and BCA Handbook Update. | To continue O&R's transition to a modern utility acting as a Distributed System Platform Provider. |
| *PSC-39-18-00005-P | exempt | Participation in New York State Lifeline Program. | To encourage enhanced services for low-income customers. |
| *PSC-40-18-00014-P | exempt | Annual Reconciliation of Gas Expenses and Gas Cost Recoveries. | To review the gas utilities' reconciliation of Gas Expenses and Gas Cost Recoveries for 2018. |
| *PSC-42-18-00011-P | exempt | Voluntary residential beneficial electrification rate design. | To provide efficient rate design for beneficial technologies in New York State that is equitable for all residential customers. |
| *PSC-42-18-00013-P | exempt | Petition for clarification and rehearing of the Smart Solutions Program Order. | To address the increased demand for natural gas in the Con Edison's service territory and the limited pipeline capacity. |

NYS Register/December 31, 2019

Action Pending Index

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| *PSC-44-18-00016-P | . . . . . . . . . . . exempt | Petition for approval of gas metering equipment. | To ensure that customer bills are based on accurate measurements of gas usage. |
| *PSC-45-18-00004-P | . . . . . . . . . . . exempt | Proposed transfer of two natural gas pipeline operating companies, and for lightened and incidental regulation | To consider transfer if there is no market power or ratepayer harm, incidental regulation, and continuing lightened regulation |
| *PSC-45-18-00005-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity and waiver of energy audit | To ensure adequate submetering equipment, consumer protections and energy efficiency protections are in place |
| *PSC-47-18-00008-P | . . . . . . . . . . . exempt | Proposed Public Policy Transmission Needs/ Public Policy Requirements, as defined under the NYISO tariff. | To identify any proposed Public Policy Transmission Needs/Public Policy Requirements for referral to the NYISO. |
| PSC-01-19-00004-P | . . . . . . . . . . . exempt | Advanced Metering Infrastructure. | To determine whether Niagara Mohawk Power Corporation d/b/a National Grid should implement advanced metering infrastructure. |
| PSC-01-19-00013-P | . . . . . . . . . . . exempt | Order of the Commission related to caller ID unblocking. | To require telephone companies to unblock caller ID on calls placed to the 311 municipal call center in Suffolk County. |
| PSC-01-19-00014-P | . . . . . . . . . . . exempt | To modify provisions for accepting new or additional gas service applications when there is inadequate supply or capacity. | To continue to provide safe and reliable service to existing customers. |
| PSC-01-19-00015-P | . . . . . . . . . . . exempt | To modify provisions for accepting new or additional gas service applications when there is inadequate supply or capacity. | To continue to provide safe and reliable service to existing customers. |
| PSC-01-19-00016-P | . . . . . . . . . . . exempt | To modify provisions for accepting new or additional gas service applications when there is inadequate supply or capacity. | To continue to provide safe and reliable service to existing customers. |
| PSC-02-19-00014-P | . . . . . . . . . . . exempt | Petition for use of electric metering equipment. | To ensure that consumer bills are based on accurate measurements of electric usage. |
| PSC-03-19-00002-P | . . . . . . . . . . . exempt | DPS Staff White Paper for who must be trained in 16 NYCRR Part 753 requirements and how the Commission will approve trainings. | To reduce damage to underground utility facilities by requiring certain training and approving training curricula. |
| PSC-04-19-00004-P | . . . . . . . . . . . exempt | Con Edison's petition for the Gas Innovation Program and associated budget. | To pursue programs that continue service reliability and meet customer energy needs while aiding greenhouse gas reduction goals. |
| PSC-04-19-00011-P | . . . . . . . . . . . exempt | Update of revenue targets. | To ensure NYAW's rates are just and reasonable and accurately reflect the needed revenues. |
| PSC-06-19-00005-P | . . . . . . . . . . . exempt | Consideration of the Joint Utilities' proposed BDP Program. | To to expand opportunities for low-income households to participate in Community Distributed Generation (CDG) projects. |
| PSC-07-19-00009-P | . . . . . . . . . . . exempt | Whether to impose consequences on AAA for its non-compliance with Commission requirements. | To insure the provision of safe and adequate energy service at just and reasonable rates. |
| PSC-07-19-00016-P | . . . . . . . . . . . exempt | Participation in New York State Lifeline Program. | To encourage enhanced services for low-income customers. |

**Action Pending Index**                                    **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| PSC-09-19-00009-P | . . . . . . . . . . . exempt | Amendments to the tariff of Con Edison pertaining to interruptible gas service customers. | To consider the appropriate tariff provisions for Con Edison interruptible gas service customers. |
| PSC-09-19-00010-P | . . . . . . . . . . . exempt | Non-pipeline alternatives report recommendations. | To consider the terms and conditions applicable to gas service. |
| PSC-10-19-00006-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-12-19-00004-P | . . . . . . . . . . . exempt | To test innovative pricing proposals on an opt-out basis. | To provide pricing structures that deliver benefits to customers and promote beneficial electrification technologies. |
| PSC-13-19-00010-P | . . . . . . . . . . . exempt | New Commission requirements for gas company operator qualification programs. | To make pipelines safer with improved training of workers who perform construction and repairs on natural gas facilities. |
| PSC-13-19-00012-P | . . . . . . . . . . . exempt | Paperless billing credit. | To provide just and reasonable rates. |
| PSC-16-19-00005-P | . . . . . . . . . . . exempt | Proposed major electric delivery revenue requirement increase of approximately $485 million (or 4.6% in total revenues). | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-16-19-00007-P | . . . . . . . . . . . exempt | Recommencement of the levelization surcharge, changes to the System Improvement Charge, and a one-year stay-out. | To address the issues in NYAW's petition dated February 25, 2019. |
| PSC-16-19-00008-P | . . . . . . . . . . . exempt | Proposed major rate increase in Con Edison's gas delivery revenues of approximately $210 million (or 9.1% in total revenues). | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-18-19-00010-P | . . . . . . . . . . . 04/30/20 | Energy efficiency programs, budgets, and targets for investor-owned utilities. | To encourage the delivery and procurement of energy efficiency by investor-owned utilities. |
| PSC-18-19-00011-P | . . . . . . . . . . . exempt | Policies, budgets and targets for support of heat pump deployment by investor-owned utilities. | To encourage the support for heat pump deployment by investor-owned utilities. |
| PSC-18-19-00012-P | . . . . . . . . . . . 04/30/20 | Policies, budgets and targets for support of energy effiency programs for low- and moderate-income customers. | To encourage the support of energy effiency programs for low- and moderate-income customers by investor-owned utilities. |
| PSC-18-19-00013-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-18-19-00015-P | . . . . . . . . . . . exempt | Minor rate filing. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-19-19-00013-P | . . . . . . . . . . . exempt | Proposed merger of three water utilities into one corporation. | To determine if the proposed merger is in the public interest. |
| PSC-19-19-00014-P | . . . . . . . . . . . exempt | Establishment of the regulatory regime applicable to an approximately 124 MW electric generating facility. | Consideration of a lightened regulatory regime for an approximately 124 MW electric generating facility. |
| PSC-19-19-00016-P | . . . . . . . . . . . exempt | Establishment of the regulatory regime applicable to an approximately 242 MW electric generating facility. | Consideration of a lightened regulatory regime for an approximately 242 MW electric generating facility. |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| PSC-20-19-00008-P | . . . . . . . . . . . exempt | Reporting on energy sources | To ensure accurate reporting and encourage clean energy purchases |
| PSC-20-19-00009-P | . . . . . . . . . . . exempt | Petition to submeter electricity | To ensure adequate submetering equipment and consumer protections are in place |
| PSC-20-19-00010-P | . . . . . . . . . . . exempt | Compensation policies for certain CHP projects | To consider appropriate rules for compensation of certain CHP resources |
| PSC-20-19-00015-P | . . . . . . . . . . . exempt | Establishment of the regulatory regime applicable to an approximately 105.8 MW electric generating facility | Consideration of a lightened regulatory regime for an approximately 105.8 MW electric generating facility |
| PSC-22-19-00013-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-23-19-00005-P | . . . . . . . . . . . exempt | Proposed major rate increase in SWNY's annual base revenues of approximately $31.5 million (or 19.8% in total revenues). | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-30-19-00007-P | . . . . . . . . . . . exempt | Use of electric metering equipment. | To ensure that consumer bills are based on accurate measurements of electric usage. |
| PSC-30-19-00009-P | . . . . . . . . . . . exempt | An Index REC procurement mechanism for Tier 1 REC procurements. | To provide a hedge against market volatility, and lower costs to both renewable generators and customers. |
| PSC-31-19-00011-P | . . . . . . . . . . . exempt | Electric metering equipment. | To ensure that consumer bills are based on accurate measurements of electric usage. |
| PSC-31-19-00013-P | . . . . . . . . . . . exempt | Implementation of Statewide Energy Benchmarking. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-31-19-00014-P | . . . . . . . . . . . exempt | Consideration of NYAW's Interim Implementation Plan. | To ensure NYAW improves its service to ratepayers. |
| PSC-31-19-00015-P | . . . . . . . . . . . exempt | Proposed major rate increase in KEDNY's gas delivery revenues by $236.8 million (13.6% increase in total revenues). | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-31-19-00016-P | . . . . . . . . . . . exempt | Proposed major rate increase in KEDLI's gas delivery revenues of approximately $49.4 million (or 4.1% in total revenues). | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-32-19-00008-P | . . . . . . . . . . . exempt | Compensation of distributed energy resources | To ensure just and reasonable rates, including compensation, for distributed energy resources |
| PSC-32-19-00009-P | . . . . . . . . . . . exempt | Petition to submeter electricity and waiver request | To ensure adequate submetering equipment, consumer protections and energy efficiency protections are in place |
| PSC-32-19-00010-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity | To ensure adequate submetering equipment and consumer protections are in place |
| PSC-32-19-00012-P | . . . . . . . . . . . exempt | Standby Service Rates and Buyback Service Rates | To ensure just and reasonable rates, including compensation, for distributed energy resources |
| PSC-32-19-00013-P | . . . . . . . . . . . exempt | Disposition of tax refunds received by New York American Water Company, Inc. | To determine the disposition of tax refunds and other related matters |

**Action Pending Index**             **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| PSC-33-19-00014-P | . . . . . . . . . . . exempt | Electric metering equipment. | To ensure that consumer bills are based on accurate measurements of electric usage. |
| PSC-34-19-00015-P | . . . . . . . . . . . exempt | Major electric rate filing. | To consider a proposed increase in RG&E's electric delivery revenues of approximately $31.7 million (or 4.1% in total revenues). |
| PSC-34-19-00016-P | . . . . . . . . . . . exempt | Major gas rate filing. | To consider a proposed increase in RG&E's gas delivery revenues of approximately $5.8 million (or 1.4% in total revenues). |
| PSC-34-19-00017-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-34-19-00018-P | . . . . . . . . . . . exempt | Major electric rate filing. | To consider a proposed increase in NYSEG's electric delivery revenues of approximately $156.7 million (10.4% in total revenues). |
| PSC-34-19-00020-P | . . . . . . . . . . . exempt | Major gas rate filing. | To consider a proposed increase in NYSEG's gas delivery revenues of approximately $6.3 million (or 1.4% in total revenues). |
| PSC-35-19-00006-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-36-19-00009-P | . . . . . . . . . . . exempt | Minor rate filing to increase annual electric revenues. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-36-19-00010-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity and waiver of energy audit. | To ensure adequate submetering equipment, consumer protections and energy efficiency protections are in place. |
| PSC-36-19-00011-P | . . . . . . . . . . . exempt | Minor electric rate filing to increase annual electric revenues. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-37-19-00004-P | . . . . . . . . . . . exempt | Proposed transfer of Hopewell's assets to the Town and dissolution of the company. | To determine if transfer of the water system to the Town of East Fishkill is in the public interest. |
| PSC-38-19-00002-P | . . . . . . . . . . . exempt | Petition to submeter electricity | To ensure adequate submetering equipment and consumer protections are in place |
| PSC-39-19-00013-P | . . . . . . . . . . . exempt | Proposed revisions to Consolidated Edison's Commercial Demand Response Programs. | To consider appropriate rules regarding Commercial Demand Response Programs. |
| PSC-39-19-00014-P | . . . . . . . . . . . exempt | Annual Reconciliation of Gas Expenses and Gas Cost Recoveries. | To review the gas utilities' reconciliation of Gas Expenses and Gas Cost Recoveries for the period ending August 31, 2019. |
| PSC-39-19-00017-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-39-19-00018-P | . . . . . . . . . . . exempt | Petition to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-39-19-00019-P | . . . . . . . . . . . exempt | Petition for the use of gas metering equipment. | To ensure that consumer bills are based on accurate measurements of gas usage. |

**Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| PSC-39-19-00020-P | . . . . . . . . . . . exempt | Initial Tariff Schedule, P.S.C. No. 1 - Water. | To ensure safe and adequate service at just and reasonable rates charged to customers without preferences. |
| PSC-40-19-00006-P | . . . . . . . . . . . exempt | Net energy metering and VDER crediting for eligible New York Power Authority customers. | To ensure safe and adequate service at just and reasonable rates charged to customers without preferences. |
| PSC-40-19-00007-P | . . . . . . . . . . . exempt | The sharing of ratepayer consumption data. | To allow for consumption based sewer billing and protect ratepayers' consumption data. |
| PSC-41-19-00003-P | . . . . . . . . . . . exempt | A voluntary residential three-part rate that would include fixed, usage and demand charges. | To provide qualifying residential customers with an optional three-part rate. |
| PSC-41-19-00005-P | . . . . . . . . . . . exempt | Tariff modifications to correct the calculation for the VDER Value Stack DRV. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-42-19-00006-P | . . . . . . . . . . . exempt | Waiver of the prohibition on service to low-income customers by ESCOs. | To consider the petition for an extension of the waiver of the prohibition on service to low-income customers by ESCOs. |
| PSC-42-19-00007-P | . . . . . . . . . . . exempt | Waiver of the prohibition on service to low-income customers by ESCOs. | To consider the petition for an extension of the waiver of the prohibition on service to low-income customers by ESCOs. |
| PSC-43-19-00014-P | . . . . . . . . . . . exempt | Petition for the use of electric metering equipment. | To ensure that consumer bills are based on accurate measurements of electric usage. |
| PSC-43-19-00015-P | . . . . . . . . . . . exempt | Modifications to the Gas Cost Factor and Daily Delivery Service Programs. | To consider a rehearing petition filed by Consolidated Edison Company of New York, Inc. and Orange and Rockland Utilities, Inc. |
| PSC-43-19-00016-P | . . . . . . . . . . . exempt | Proposed rate filing to increase its semi-annual flat rate. | To ensure safe and adequate service at just and reasonable rates charged to customers without undue preferences. |
| PSC-44-19-00003-P | . . . . . . . . . . . exempt | Proposed revisions to Standby Service Rates and Buyback Service Rates. | To ensure just and reasonable rates, including compensation, for distributed energy resources. |
| PSC-44-19-00004-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-44-19-00005-P | . . . . . . . . . . . exempt | Proposed revisions to Standby Service Rates and Buyback Service Rates. | To ensure just and reasonable rates, including compensation, for distributed energy resources. |
| PSC-44-19-00006-P | . . . . . . . . . . . exempt | Proposed revisions to Standby Service Rates and Buyback Service Rates. | To ensure just and reasonable rates, including compensation, for distributed energy resources. |
| PSC-44-19-00007-P | . . . . . . . . . . . exempt | Proposed revisions to Standby Service Rates and Buyback Service Rates. | To ensure just and reasonable rates, including compensation, for distributed energy resources. |
| PSC-44-19-00008-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-44-19-00009-P | . . . . . . . . . . . exempt | Proposed revisions to Standby Service Rates and Buyback Service Rates. | To ensure just and reasonable rates, including compensation, for distributed energy resources. |
| PSC-45-19-00011-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |

**Action Pending Index**                                    **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| PSC-45-19-00012-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-45-19-00013-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-46-19-00007-P | . . . . . . . . . . . exempt | PSC regulation 16 NYCRR 86.3(a)(1), (a)(2) and 88.4(a)(4). | To consider a waiver of certain regulations relating to the content of an application for transmission line siting. |
| PSC-46-19-00008-P | . . . . . . . . . . . exempt | Wappingers Falls Hydroelectric LLC's facility located in Wappingers Falls, New York. | To promote and maintain renewable electric energy resources. |
| PSC-46-19-00009-P | . . . . . . . . . . . exempt | Proposed transfer of certain company property to the Incorporated Village of Sea Cliff. | To determine if the transfer of certain Company property to the Incorporated Village of Sea Cliff is in the public interest. |
| PSC-46-19-00010-P | . . . . . . . . . . . exempt | To test innovative rate designs on an opt-out basis. | To implement alternative innovative rate designs intended to assess customer behaviors in response to price signals |
| PSC-47-19-00011-P | . . . . . . . . . . . exempt | Waiver of National Grid's code of conduct to allow for use of its name. | To determine if it is in the public interest to allow for the use of National Grid's name in the weatherization program. |
| PSC-47-19-00012-P | . . . . . . . . . . . exempt | Transfer of street lighting facilities to the Village of Cayuga Heights. | To consider whether the transfer of street lighting facilities to the Village of Cayuga Heights is in the public interest. |
| PSC-47-19-00013-P | . . . . . . . . . . . exempt | Compensation of distributed energy resources. | To ensure just and reasonable rates, including compensation, for distributed energy resources. |
| PSC-47-19-00014-P | . . . . . . . . . . . exempt | Whether a proposed agreement for the provision of water service by Saratoga Water Services, Inc. is in the public interest. | To consider whether a tariff waiver and the proposed terms of a service agreement are in the public interest. |
| PSC-47-19-00015-P | . . . . . . . . . . . exempt | Customer Consent to Contact. | To include a new provision establishing customer consent for the utility to contact them electronically about utility service. |
| PSC-47-19-00016-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-48-19-00004-P | . . . . . . . . . . . exempt | Recommencement of the levelization surcharge, changes to the System Improvement Charge, including AMI and a one-year stay-out. | To address the issues in the November 6, 2019 petition filed by NYAW. |
| PSC-48-19-00005-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-48-19-00006-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-48-19-00007-P | . . . . . . . . . . . exempt | Extension of the State Universal Service Fund. | To continue to provide universal service at a reasonable rate in certain service territories. |
| PSC-49-19-00004-P | . . . . . . . . . . . exempt | Transfer of street lighting facilities. | To determine whether to authorize the transfer street of lighting facilities and the proper accounting for the transaction. |

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

## PUBLIC SERVICE COMMISSION

| | | | |
|---|---|---|---|
| PSC-49-19-00005-P | . . . . . . . . . . . exempt | Sale of Street Lighting Facilities to the Town of Farmington. | To consider the transfer of street lighting facilities to the Town of Farmington. |
| PSC-49-19-00006-P | . . . . . . . . . . . exempt | Waiver of the prohibition on service to low-income customers by ESCOs. | To consider the petition for an extension of the waiver of the prohibition on service to low-income customers by ESCOs. |
| PSC-50-19-00004-P | . . . . . . . . . . . exempt | Petition to submeter electricity and waiver of energy audit. | To ensure adequate submetering equipment, consumer protections and energy efficiency protections are in place. |
| PSC-50-19-00005-P | . . . . . . . . . . . exempt | Modifications and clarifications to the DCFC Per-Plug Incentive Program. | To clarify certain elements of the DCFC Per-Plug Incentive Program and consider modifications to the Program. |
| PSC-50-19-00006-P | . . . . . . . . . . . exempt | Compensation of and incentives for distributed energy resources. | To encourage the development of and ensure just and reasonable rates for distributed energy resources. |
| PSC-50-19-00007-P | . . . . . . . . . . . exempt | Participation of customers served under P.S.C. No. 12 (PASNY) in CDG projects receiving Value Stack compensation. | To encourage the development of and ensure just and reasonable rates for distributed energy resources. |
| PSC-52-19-00001-P | . . . . . . . . . . . exempt | SUEZ Water New York Inc.'s acquisition of 100% of Heritage Hills Water Works Corporation's assets. | To determine if the proposed acquisition is in the public interest. |
| PSC-52-19-00002-P | . . . . . . . . . . . exempt | The New York State Reliability Council's establishment of an Installed Reserve Margin of 18.9% | To ensure adequate levels of Installed Capacity. |
| PSC-52-19-00003-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity and waiver of energy audit. | To ensure adequate submetering equipment, consumer protections and energy efficiency protections are in place. |
| PSC-52-19-00004-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-52-19-00005-P | . . . . . . . . . . . exempt | Compensation of and rates for distributed energy resources. | To encourage the development of and ensure just and reasonable rates for distributed energy resources. |
| PSC-52-19-00006-P | . . . . . . . . . . . exempt | Authorization to defer pension settlement losses. | To address the ratemaking related to the pension settlement losses. |
| PSC-53-19-00003-P | . . . . . . . . . . 12/30/20 | Technical Amendments of State regulations and Administrative Corrections | To make the provision of natural gas service safer in New York State |
| PSC-53-19-00004-P | . . . . . . . . . . 12/30/20 | Technical Amendments of State regulations and Administrative Corrections | To make the provision of natural gas service safer in New York State. |
| PSC-53-19-00006-P | . . . . . . . . . . . exempt | To amend the terms to which the customer must abide when discontinuing gas service. | To ensure safe and adequate service at just and reasonable rates charged to customers without preferences. |
| PSC-53-19-00007-P | . . . . . . . . . . . exempt | Notice of intent to submeter electricity. | To ensure adequate submetering equipment and consumer protections are in place. |
| PSC-53-19-00008-P | . . . . . . . . . . . exempt | Extension of time for issuance of securities and other forms of indebtedness. | To consider an additional twelve months for the issuance of securities and other forms of indebtedness. |

**Action Pending Index**                                           **NYS Register/December 31, 2019**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| **PUBLIC SERVICE COMMISSION** | | | |
| PSC-53-19-00009-P | . . . . . . . . . . . exempt | Transfer of street lighting facilities. | To consider whether the transfer of certain street lighting facilities is in the public interest. |
| PSC-53-19-00010-P | . . . . . . . . . . . exempt | To clarify the term "customer" under Rule 28 - Special Services Performed by Company for Customer at a Charge. | To ensure safe and adequate service at just and reasonable rates charged to customers without preferences. |
| **STATE, DEPARTMENT OF** | | | |
| DOS-27-19-00014-P | . . . . . . . . . . 09/04/20 | New York State Uniform Fire Prevention and Building Code (the Uniform Code) | To repeal the existing Uniform Code and adopt a new Uniform Code and to make conforming changes to 19 NYCRR Parts 1264 and 1265. |
| DOS-27-19-00015-P | . . . . . . . . . . 09/04/20 | The State Energy Conservation Construction Code (the "Energy Code"). | To repeal the existing Energy Code and to adopt a new, updated Energy Code. |
| DOS-42-19-00001-P | . . . . . . . . . . 10/15/20 | Real estate advertisements | To update current regulations concerning real estate advertisements |
| **STATE UNIVERSITY OF NEW YORK** | | | |
| SUN-50-19-00001-EP | . . . . . . . . . . 12/10/20 | Tuition, Fees and Charges | To authorize the waiver of admission application fees for military veterans and their spouses |
| SUN-53-19-00002-P | . . . . . . . . . . 12/30/20 | Proposed amendments to the traffic and parking regulations at State University of New York College at Old Westbury | Amend existing regulations to update traffic and parking regulations |
| SUN-53-19-00005-P | . . . . . . . . . . 12/30/20 | Proposed amendments to the traffic and parking regulations at State University Agricultural and Technical College at Morrisville | Amend existing regulations to update traffic and parking regulations |
| **TAXATION AND FINANCE, DEPARTMENT OF** | | | |
| TAF-47-19-00010-P | . . . . . . . . . . . exempt | Fuel use tax on motor fuel and diesel motor fuel and the art. 13-A carrier tax jointly administered therewith. | To set the sales tax component and the composite rate per gallon for the period January 1, 2020 through March 31, 2020. |
| TAF-50-19-00003-EP | . . . . . . . . . . 12/10/20 | Metropolitan Transportation Business Tax Surcharge | To provide metropolitan transportation business tax rate for tax year 2020 |
| **TEMPORARY AND DISABILITY ASSISTANCE, OFFICE OF** | | | |
| TDA-14-19-00007-P | . . . . . . . . . . 04/02/20 | Abandonment of requests for fair hearings | To require the issuance of letters to appellants who fail to appear at scheduled fair hearings involving Medical Assistance, also known as Medicaid, advising them how to request the rescheduling of such fair hearings |
| TDA-46-19-00006-P | . . . . . . . . . . 11/12/20 | Limits on executive compensation | To remove requirements related to private funding from the $199, 000 per annum limit on executive compensation and to make corresponding technical updates |
| TDA-49-19-00003-P | . . . . . . . . . . 12/03/20 | Annual service fee on persons receiving child support services and minimum annual collection requirement to impose such fee | To amend the existing State regulatory provisions regarding the annual service fee imposed on persons who receive child support services |

**NYS Register/December 31, 2019**                                   **Action Pending Index**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|

**VICTIM SERVICES, OFFICE OF**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| OVS-24-19-00001-ERP | 06/11/20 | Conduct contributing related to burial awards | Adopt rules necessary as the result of chapter 494 of the Laws of 2018, when considering the victim's own conduct |

**WORKERS' COMPENSATION BOARD**

| Agency I.D. No. | Expires | Subject Matter | Purpose of Action |
|---|---|---|---|
| WCB-31-19-00018-P | 07/30/20 | Medical Treatment Guidelines | Add guidelines for treatment of hip and groin, foot and ankle, elbow and occupational interstitial lung disease |
| WCB-32-19-00001-P | 08/06/20 | Updating the prescription drug formulary | To add drugs to the prescription drug formulary in response to continuous feedback |
| WCB-37-19-00002-P | 09/10/20 | Applications for Reopenings | Clarify the process for reopening a case that has been previously closed |
| WCB-45-19-00010-P | 11/05/20 | Resolution of medical billing disputes | Incorporate the 2019 changes to WCL 13-g into existing regulations. |
| WCB-47-19-00004-EP | 11/19/20 | Updating the prescription drug formulary | To update formulary and add special consideration guidance for drugs not included in the MTGs |

# REGULATORY
## AGENDA

### Workers' Compensation Board

Pursuant to section 202-d of the State Administrative Procedures Act, notice is hereby provided of the following rules which the Workers' Compensation Board (Board) is considering proposing but for which a rule making proceeding has not been commenced. All references are to Title 12 of the New York Code of Rules and Regulations unless otherwise noted. The Board's regulatory plans are subject to change, and the Board reserves the right to add, delete, or modify any item herein. The Board is not required to propose for adoption any rule summarized in this regulatory agenda. In addition, the Board may propose a rule for adoption that was not under consideration at the time that this regulatory agenda was submitted for publication.

This notice is also intended to provide small businesses, local governments, and public and private interests in rural areas with the opportunity to participate in the rule-making process, as provided for in sections 202-b and 202-bb of the State Administrative Procedures Act. All rules described below may require a Regulatory Flexibility Analysis for Small Businesses and Local Governments and a Rural Area Flexibility Analysis pursuant to sections 202-b and 202-bb of the State Administrative Procedures Act, respectively.

The public is welcome to send written comments on the Board's Regulatory Agenda to the contact person at the end of this list.

The Chair and/or the Board is considering proposing the rules described below:

• Amend section 325-1.3 to implement the transition to CMS-1500 as the Chair prescribed format for medical reporting, and provide for electronic submission of medical reports and narrative attachments.

• Amend the Durable Equipment Fee Schedule (Part 442) to include a more robust list of durable medical equipment for which there is a fee identified, provide for prior authorization for specified or unlisted items and include billing disputes procedures.

• Continue to add Medical Treatment Guidelines, including treatment for hand, wrist and forearm, as well as occupational asthma.

• Amend sections 300.22 and 300.23 as needed to implement EDI version 3.1 for eClaims transactions.

• Amend Part 302 to update the licensing regulations for third-party administrators and qualifying officers.

• The Board will continue to review its rules in an effort to provide for clearer and more accurate references to Board policies and procedures, while also eliminating typographical errors and obsolete forms/practices, etc.

*To obtain information about or submit written comments concerning any item in this Regulatory Agenda, contact*: Heather M. MacMaster, Deputy General Counsel, Workers' Compensation Board, 328 State Street, Schenectady, New York 12305-2318, (518) 486-9564, e-mail: regulations@wcb.ny.gov

# RULE
# REVIEW

## Department of Motor Vehicles

Five Year Review of Rules Adopted by the Department of Motor Vehicles in Calendar Years 2000, 2005, 2010 and 2015 Required to be Reviewed in Calendar Year 2020

As required by section 207 of the State Administrative Procedure Act, the following is a list of rules that were adopted by the Department of Motor Vehicles in calendar years 2000, 2005, 2010 and 2015 which must be reviewed in calendar year 2020. Public comment on the continuation or modification of these rules is invited and will be accepted for 45 days from the date of publication in the State Register. Comments may be directed to: The Department of Motor Vehicles, Counsel's Office, 6 ESP, Room 522A, Albany, NY 12228.

2015

MTV-48-14-00006 – Part 136 – Relicensing after Revocation.

Analysis of the need for the rule: The Commissioner's Regulations provides the Department of Motor Vehicles (DMV) the discretion to deny driver's license applications for those motorists with certain convictions on their lifetime driver's record. This rulemaking was promulgated to address those motorists with multiple convictions for drinking and/or drug related driving offenses, as well as those motorists found to have refused chemical blood alcohol tests and other serious driving offenses. This rulemaking expanded the use of the problem driver restriction, including the requirement of using an ignition interlock device (IID) for problem drivers. This rulemaking strikes a balance between protecting the public and allowing the motorist to engage in certain essential activities involving his or her employment, medical care, child care, and educational opportunities. This rulemaking further allows the Commissioner to issue a driver's license exception for those drivers who are permanently denied pursuant to Part 136.5 or VTL 1193 by allowing them to apply for that exception pursuant to unusual, extenuating, and compelling circumstances. Specifically, this amendment added language regarding the process of restoring a problem driver license or driving privilege. The amendment also placed additional sanctions on applicants with alcohol-related fatal crashes on their driving history. The amendment clarifies that when a driving record includes a chemical test refusal finding and a VTL § 1192 conviction related to the same incident, they shall not count twice in a Part 136 review. Further, the amendment created an additional 5-year or 2-year holding period for those drivers applying for an A2 problem driver restricted license, whose records indicate they were driving while revoked. This amendment also indicates that A2 problem driver restricted license drivers shall install an Ignition Interlock Device (IID) in their vehicles for the duration of the A2 restriction.

Legal basis for the rule: Vehicle and Traffic Law sections 215(a), 501(2)(c), 510(6), 1193(2)(b)(12), 1193(2)(c)(1), and 1194(2)(d)(1).

MTV-08-15-00004 – Part 32 – Electronic Insurance Identification Cards.

Analysis of the need for the rule: This amendment authorizes insurance companies to issue electronic insurance ID cards. In order to register a motor vehicle in New York State, the Vehicle and Traffic Law requires the applicant to submit proof of insurance. Previously, the only acceptable proof of insurance was the paper insurance ID cards. This amendment aligns with the legislative objective of requiring motor vehicle registrants to show proof of insurance by expanding the means of displaying such proof, either at a DMV office or to a law enforcement official, and is consistent with the transition to a paperless world.

Legal basis for the rule: Vehicle and Traffic Law section 215(a), 311(10) and 312(4)

MTV-13-15-00011 – Part 106 – Registration of Pick-up Trucks.

Analysis of the need for the rule: The primary purpose of this amendment was to allow the registration of pick-up trucks in the passenger class if such truck weighed no more than 6,000 pounds, was used exclusively for non-commercial purposes and had no business advertising. Previously, a vehicle weighing more than 5,500 pounds was required to be registered in the commercial class. This amendment was supported by the New York State Automobile Dealers Association (NYSADA) because many pick-up trucks exceeded the 5,500-pound threshold within different trim levels of the same pick-up truck or simply by adding popular accessories. Additionally, other heavy non-commercial motor vehicles, such as larger SUV's, often weigh more than 5,500 pounds and are registered as passenger vehicles. The registration class is important, because vehicles with commercial plates are not permitted to operate on many of New York's parkways. Since prohibitions against vehicles with commercial plates operating on parkways still exist, this regulation remains necessary to allow these pick-up trucks to operate on the State's parkways and other roadways.

Legal basis for the rule: Vehicle and Traffic Law sections 215(a), 401(7) and 401(15)

MTV-13-15-00012 – Part 78 – Off Premise Sales of Motor Vehicles.

Analysis of the need for the rule: This rule provides specific guidance for the conduct of off-premise sales in New York State. Prior to this rule being instituted, an increasing number of dealerships had exploited loopholes by using third-party promotional companies to sell vehicles, instead of the dealer's own employees, selling vehicles far from their relevant market area, and conducting almost constant off-premise sales, making it a part of their every-day business model, rather than a "special event" conducted periodically. This rule is still necessary since it provides the regulatory framework for the conduct of off-premise sales, while permitting such sales to continue, which benefits both the dealers who conduct such sales and the customers who purchase motor vehicles at such sales.

Legal basis for the rule: Vehicle and Traffic Law sections 215(a) and 415.

MTV-17-15-00012 – Part 101 – Designation of Authorized Motor Vehicles for Certain State Leaders

Analysis of the need for the rule: This regulation was adopted as an emergency measure to allow our State's leaders to quickly arrive at the scene of emergencies by classifying motor vehicles owned or operated by or on behalf of the Governor, Lieutenant Governor, Secretary to the Governor, Director of State Operations, and the Commissioners of Department of Homeland Security & Emergency Services, Depart-

ment of Transportation, and the Department of Transportation as emergency vehicles. Emergency vehicles may be equipped with and display red and white lights. The rules save State resources by minimizing the need for a law enforcement escort to the scene of an emergency, and it is often critical for state officials to be at the scene of an emergency in its early states so as to determine what resources are needed and to mobilize State resources in an efficient and timely manner for the public's benefit.

Legal basis for the rule: Vehicle and Traffic Law section 375(41)(2).

2010

MTV-51-09-00005 - Part 9 - Loss of Consciousness.

Analysis of the need for the rule: The Commissioner's Regulations provide that if the Department of Motor Vehicles (DMV) learns that a motorist has suffered a loss of consciousness, the motorist must present proof of his or her fitness to safely operate a motor vehicle. Since section 6902(3) of the Education Law provides that a nurse practitioner is authorized to perform diagnostic procedures, this rulemaking was promulgated to permit nurse practitioners to conduct the examination of the motorist to evaluate his or her ability to safely operate a motor vehicle. Previously, only a physician was permitted to conduct the examination. Since this section of Education Law is still in effect, the need for the regulation remains.

Legal basis for the rule: Vehicle and Traffic Law sections 215(a), 502(1) and 510(3)(b), and section 6902(3) of the Education Law.

MTV-43-10-00007 - Part 79 – Motor Vehicle Inspections - Elimination of the NYTEST Program in the New York Metropolitan Area.

Analysis of the need for the rule: This amendment eliminated the NYTEST emissions program in the New York Metropolitan Area. On January 1, 2011, the DMV transitioned from the NYTEST emissions program to the NYVIP program in order to comply with the federal Clean Air Act of 1990. The $35,000 dynamometer was replaced with the $2,500 NYVIP equipment. Since the NYTEST system remains unnecessary and obsolete, this rulemaking should remain in effect.

Legal basis for the rule: Vehicle and Traffic Law sections 215(a), 301(a),(c), (d)(1), 302(a), (e) and 303(d)(1).

2005

MTV-08-05-00012 - Part 79 - Motor vehicle inspections.

Analysis of the need for the rule: New York State was required to adopt an OBD II (on board diagnostic) emissions test in order to comply with the Federal Clean Air Act of 1990 and its accompanying regulations at 40 CFR 51.351. OBD refers to a system, with passenger cars and light trucks in 1996 and newer vehicles, which monitors system degradation as it relates to powertrain components and emission control devices. Since the OBD II system remains central to the State's compliance with the federal law, this rule remains necessary.

Legal basis for the rule: Vehicle and Traffic Law sections 215(a), 301(d)(1), (f) and 302(a) and (e).

MTV-17-05-00008 - Part 134 - Conditional license eligibility.

Analysis of the need for the rule: This regulation provides that a person found, pursuant to a DMV administrative hearing, to have violated the Zero Tolerance Law, may not enroll in the Drinking Driver Program if such person had a prior alcohol-related conviction in the preceding 5 years. In addition, such person would be subject to the same conditional license eligibility requirements as a person convicted of an alcohol-related conviction.

When the Zero Tolerance Law was enacted in 1996, DMV did not make conforming amendments to Part 134 in terms of DDP and conditional license eligibility. This rulemaking, which made such conforming amendments, remains necessary.

Legal basis for the rule: Vehicle and Traffic Law sections 215(a) and 1196(4) and (7).

2000

MTV-26-99-00007 - Part 106 - Registration of pick-up trucks.

Analysis of the need for the rule: This amendment provided that a pick-up truck, which is used exclusively for non-commercial purposes with an unladen weight of 5000 pounds or less, and with no business advertising could receive a passenger registration. Previously, such a vehicle was required to be registered in the commercial class.

However, with the increase in the sale of light trucks, which are substantially the same in size as some SUVs, and used for non-commercial purposes, it made sense to allow such vehicles to be registered in the passenger class. Such vehicles could then be operated on the State's parkways and other roadways, which prohibit the operation of "commercial" vehicles. In 2004, Part 106.6 was amended to raise the threshold to 5,500 pounds for the registration of non-commercial pick-up trucks in the passenger class, thus superseding this regulation.

Legal basis for the rule: Vehicle and Traffic Law sections 215(a), 401(7) and (15)

MTV-42-99-00009- Part 134 - Revocation of conditional license.

Analysis of the need for the rule: This regulation provided that if a person under the age of 21 was convicted of an alcohol-related offense and had his/her conditional license revoked, the time served in revoked/conditional status would be credited towards the one-year minimum mandatory revocation period if such person completed the DDP. Previously, if such person's conditional license was revoked, no time served in conditional status would be credited toward the one-year revocation period. Therefore, a person who served 11 months in conditional status prior to the revocation of the conditional, had to serve another one-year revocation period prior to license reinstatement. The justification for this rule remains necessary.

Legal basis for rule: Vehicle and Traffic Law sections 215(a) and 1196(7)(e).

MTV-12-00-00012 - Part 138 - Motor vehicle accident prevention course.

Analysis of the need for the rule: This regulation repealed Part 138 and established a new Part 138 governing the Motor Vehicle Accident Prevention Course, also known as the Point Insurance Reduction Course. The provisions set forth in Part 138 are still needed to regulate the providers of such courses.

Legal basis for rule: Vehicle and Traffic Law sections 215(a) and Article 12-B.

MTV-15-00-0004 - Part 139 - Chemical Test Refusals.

Analysis of the need for the rule: The amendments to Part 139 establish procedures for administrative hearings for the operators of snowmobiles who refuse to submit to a chemical test. These are consistent with hearings for motor vehicle operators who refuse to submit to a chemical test. The regulations remain necessary for the adjudication of refusals.

Legal basis for rule: Vehicle and Traffic Law sections 215(a) and section 25.24(6)(e) of the Parks, Recreation and Historic Preservation Law.

MTV-20-00-00010 – Part 34 – Motor Vehicle Liability Insurance.

Analysis of the need for the rule: This regulation established the Insurance Information and Enforcement System (IIES). IIES replaced the inefficient paper based system whereby insurance companies notified DMV of new insureds and the cancellation of policies. Under IIES, information is transmitted electronically in a timely and efficient manner. This has reduced the number of improper insurance lapse suspensions and incidence fraud. Therefore, the need for this regulation remains.

Legal basis for the rule: Vehicle and Traffic Law sections 215(a), 313(2)(c), 313(4) and 370.

MTV-37-00-00021 - Part 50 - Protective helmets for in-line skaters and bicyclists.

Analysis of the need for the rule: This amendment provided for the adoption of federal standards for helmets worn by in-line skaters and bicyclists. The regulation incorporated by reference 16 CFR 1203.1 and 1203.4 through 1203.17. The necessity remains for these scientifically based and nationally recognized standards.

Legal basis for the rule: Vehicle and Traffic Law sections 215(a) and 1238(2-a).

MTV-43-00-0004 – Part 79 - Change of location of inspection station.

Analysis of the need for the rule: This amendment required an inspection station which is changing location to notify to submit an

application for approval of such new location to DMV at least 30 days prior to moving. This gives DMV adequate time to inspect the new site and insure that it meets all space and dimension requirements set forth in Part 79. Therefore, the necessity for this rule remains.

   Legal basis for the rule: Vehicle and Traffic Law sections 215(a), 303(a)(1), 301(d)(1), 302(e), and 303(a)(2).

# ADVERTISEMENTS FOR BIDDERS/CONTRACTORS

## SEALED BIDS

### REPAIR
CONCRETE FLOOR
New York Psychiatric Institute
New York, New York County

Sealed bids for Project No. M3099-C, comprising a contract for Construction Work, Repair Concrete Floor, 11th Floor Mechanical Room, New York Psychiatric Institute, 1051 Riverside Dr, New York, (New York County), NY, will be received by the Office of General Services (OGS), Design & Construction Group (D&C), Division of Contract Management, 35th Fl., Corning Tower, Empire State Plaza, Albany, NY 12242, on behalf of the Office of Mental Health, until 2:00 p.m. on Wednesday, January 8th 2020, when they will be publicly opened and read. Each bid must be prepared and submitted in accordance with the Instructions to Bidders and must be accompanied by a certified check, bank check, or bid bond in the amount of $21,900 for C.

Further, Wicks Exempt Projects require a completed form BDC 59 (Wicks Exempt List of Contractors) be filled out and submitted (included in a separate, sealed envelope) in accordance with Document 002220, Supplemental Instructions to Bidders – Wicks Exempt. Failure to submit this form correctly will result in a disqualification of the bid.

All successful bidders will be required to furnish a Performance Bond and a Labor and Material Bond in the statutory form of public bonds required by Sections 136 and 137 of the State Finance Law, each for 100% of the amount of the Contract estimated to be between $300,000 and $400,000 for C.

Pursuant to State Finance Law §§ 139-j and 139-k, this solicitation includes and imposes certain restrictions on communications between OGS D&C and a bidder during the procurement process. A bidder is restricted from making contacts from the earliest posting, on the OGS website, in a newspaper of general circulation, or in the Contract Reporter of written notice, advertisement or solicitation of offers through final award and approval of the contract by OGS D&C and the Office of the State Comptroller ("Restricted Period") to other than designated staff unless it is a contact that is included among certain statutory exceptions set forth in State Finance Law § 139-j(3)(a). Designated staff are Jessica Hoffman, Carl Ruppert, and Pierre Alric in the Division of Contract Management, telephone (518) 474-0203, fax (518) 473-7862 and John Lewyckyj, Deputy Director, Design & Construction Group, telephone (518) 474-0201, fax (518) 486-1650. OGS D&C employees are also required to obtain certain information when contacted during the restricted period and make a determination of the responsibility of the bidder pursuant to these two statutes. Certain findings of non-responsibility can result in rejection for contract award and in the event of two findings within a four-year period, the bidder is debarred from obtaining governmental Procurement Contracts. Bidders responding to this Advertisement must familiarize themselves with the State Finance Law requirements and will be expected to affirm that they understand and agree to comply on the bid form. Further information about these requirements can be found within the project manual or at: http://www.ogs.ny.gov/aboutOGS/regulations/defaultAdvisoryCouncil.html

The substantial completion date for this project is 141 days after the Agreement is approved by the Comptroller.

The only time prospective bidders will be allowed to visit the job site to take field measurements and examine existing conditions of the project area will be at 11:00 a.m. on January 2, 2019 at New York Psychiatric Institute, Main Lobby, 1051 Riverside Drive, New York, NY. Prospective bidders are urged to visit the site at this time. Prospective bidders or their representatives attending the pre-bid site visit will not be admitted on facility grounds without proper photo identification. Note that parking restrictions and security provisions will apply and all vehicles will be subject to search.

Phone the office of Robin Griffiths (845-365-0730) a minimum of 48 hours in advance of the date to provide the names of those who will attend the pre-bid site visit.

Pursuant to New York State Executive Law Article 15-A and the rules and regulations promulgated thereunder, OGS is required to promote opportunities for the maximum feasible participation of New York State-certified Minority- and Women-owned Business Enterprises ("MWBEs") and the employment of minority group members and women in the performance of OGS contracts. All bidders are expected to cooperate in implementing this policy. OGS hereby establishes an overall goal of 30% for MWBE participation, 15% for Minority-Owned Business Enterprises ("MBE") participation and 15% for Women-Owned Business Enterprises ("WBE") participation (based on the current availability of qualified MBEs and WBEs). The total contract goal can be obtained by utilizing any combination of MBE and /or WBE participation for subcontracting and supplies acquired under this Contract.

The Office of General Services reserves the right to reject any or all bids.

The Bidding and Contract Documents for this Project are available on compact disc (CD) only, and may be obtained for an $8.00 deposit per set, plus a $2.00 per set shipping and handling fee. Contractors and other interested parties can order CD's on-line through a secure web interface available 24 hours a day, 7 days a week. Please use the following link for ordering and payment instructions: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

For questions about purchase of bid documents, please send an e-mail to DCPlans@ogs.ny.gov, or call (518) 474-0203.

For additional information on this project, please use the link below and then click on the project number: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

By *John D. Lewyckyj, Deputy Director*
OGS - Design & Construction Group

### REPLACE
HIGH VOLTAGE SWITCHGEAR/GENERATOR
Otisville Correctional Facility
Otisville, Orange County

Sealed bids for Project Nos. 44992-C, 44992-E, and 44992-H comprising separate contracts for Construction Work, Electric Work, and HVAC Work, Replace High Voltage Switchgear and Generator, Otisville Correctional Facility, 57 Sanitorium Road, Otisville (Orange County), NY, will be received by the Office of General Services (OGS), Design & Construction Group (D&C), Division of Contract

97

Management, 35th Fl., Corning Tower, Empire State Plaza, Albany, NY 12242, on behalf of the Department of Corrections, until 2:00 p.m. on Wednesday, January 8, 2020, when they will be publicly opened and read. Each bid must be prepared and submitted in accordance with the Instructions to Bidders and must be accompanied by a certified check, bank check, or bid bond in the amount of $35,500 for C, $24,000 for H, and $109,800 for E.

All successful bidders will be required to furnish a Performance Bond and a Labor and Material Bond in the statutory form of public bonds required by Sections 136 and 137 of the State Finance Law, each for 100% of the amount of the Contract estimated to be between $500,000 and $1,000,000 for C, between $250,000 and $500,000 for H, and between $4,000,000 and $5,000,000 for E.

Pursuant to State Finance Law §§ 139-j and 139-k, this solicitation includes and imposes certain restrictions on communications between OGS D&C and a bidder during the procurement process. A bidder is restricted from making contacts from the earliest posting, on the OGS website, in a newspaper of general circulation, or in the Contract Reporter of written notice, advertisement or solicitation of offers through final award and approval of the contract by OGS D&C and the Office of the State Comptroller ("Restricted Period") to other than designated staff unless it is a contact that is included among certain statutory exceptions set forth in State Finance Law § 139-j(3)(a). Designated staff are Jessica Hoffman, Carl Ruppert and Pierre Alric in the Division of Contract Management, telephone (518) 474-0203, fax (518) 473-7862 and John Lewyckyj, Deputy Director, Design & Construction Group, telephone (518) 474-0201, fax (518) 486-1650. OGS D&C employees are also required to obtain certain information when contacted during the restricted period and make a determination of the responsibility of the bidder pursuant to these two statutes. Certain findings of non-responsibility can result in rejection for contract award and in the event of two findings within a four-year period, the bidder is debarred from obtaining governmental Procurement Contracts. Bidders responding to this Advertisement must familiarize themselves with the State Finance Law requirements and will be expected to affirm that they understand and agree to comply on the bid form. Further information about these requirements can be found within the project manual or at: http://www.ogs.ny.gov/aboutOGS/regulations/defaultAdvisoryCouncil.html

The substantial completion date for this project is 587 days after the Agreement is approved by the Comptroller.

The only time prospective bidders will be allowed to visit the job site to take field measurements and examine existing conditions of the project area will be at 10:00 a.m. on December 20, 2019, at Otisville Correctional Facility 57 Sanatorium Avenue, Otisville, NY. Prospective bidders are urged to visit the site at this time. Prospective bidders or their representatives attending the pre-bid site visit will not be admitted on facility grounds without proper photo identification. Note that parking restrictions and security provisions will apply and all vehicles will be subject to search.

Phone the office of Robin Griffiths (845-365-0730) a minimum of 72 hours in advance of the date to provide the names of those who will attend the pre-bid site visit.

Pursuant to New York State Executive Law Article 15-A and the rules and regulations promulgated thereunder, OGS is required to promote opportunities for the maximum feasible participation of New York State-certified Minority- and Women-owned Business Enterprises ("MWBEs") and the employment of minority group members and women in the performance of OGS contracts. All bidders are expected to cooperate in implementing this policy. OGS hereby establishes an overall goal of 30% for MWBE participation, 15% for Minority-Owned Business Enterprises ("MBE") participation and 15% for Women-Owned Business Enterprises ("WBE") participation (based on the current availability of qualified MBEs and WBEs) for Construction Work and HVAC Work and an overall goal of 4% for MWBE participation, 2% for Minority-Owned Business Enterprises ("MBE") participation and 2% for Women-Owned Business Enterprises ("WBE") participation (based on the current availability of qualified MBEs and WBEs) for Electrical Work. The total contract goal can be obtained by utilizing any combination of MBE and /or

WBE participation for subcontracting and supplies acquired under this Contract.

The Office of General Services reserves the right to reject any or all bids.

The Bidding and Contract Documents for this Project are available on compact disc (CD) only, and may be obtained for an $8.00 deposit per set, plus a $2.00 per set shipping and handling fee. Contractors and other interested parties can order CD's on-line through a secure web interface available 24 hours a day, 7 days a week. Please use the following link at the OGS website for ordering and payment instructions: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

For questions about purchase of bid documents, please send an e-mail to DCPlans@ogs.ny.gov, or call (518) 474-0203.

For additional information on this project, please use the link below and then click on the project number: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

By *John D. Lewyckyj, Deputy Director*
OGS - Design & Construction Group

## REMOVE/REPLACE
### FUEL OIL TANKS
Fishkill Correctional Facility
Beacon, Dutchess County

Sealed bids for Project Nos. 45601-C, 45601-E and 45601-H, comprising separate contracts for Construction Work, Electrical Work, and HVAC Work, Remove / Replace Fuel Oil Tanks, Fishkill Correctional Facility, 18 Strack Drive, Beacon (Dutchess County), NY, will be received by the Office of General Services (OGS), Design & Construction Group (D&C), Division of Contract Management, 35th Fl., Corning Tower, Empire State Plaza, Albany, NY 12242, on behalf of the Department of Correctional Services, until 2:00 p.m. on Wednesday, January 8, 2019, when they will be publicly opened and read. Each bid must be prepared and submitted in accordance with the Instructions to Bidders and must be accompanied by a certified check, bank check, or bid bond in the amount of $65,700 for C, $59,000 for H, and $24,300 for E.

All successful bidders will be required to furnish a Performance Bond and a Labor and Material Bond in the statutory form of public bonds required by Sections 136 and 137 of the State Finance Law, each for 100% of the amount of the Contract estimated to be between $1,000,000 and $2,000,000 for C, between $1,000,000 and $2,000,000 for H, and between $500,000 and $1,000,000 for E.

Pursuant to State Finance Law §§ 139-j and 139-k, this solicitation includes and imposes certain restrictions on communications between OGS D&C and a bidder during the procurement process. A bidder is restricted from making contacts from the earliest posting, on the OGS website, in a newspaper of general circulation, or in the Contract Reporter of written notice, advertisement or solicitation of offers through final award and approval of the contract by OGS D&C and the Office of the State Comptroller ("Restricted Period") to other than designated staff unless it is a contact that is included among certain statutory exceptions set forth in State Finance Law § 139-j(3)(a). Designated staff are Jessica Hoffman, Carl Ruppert and Pierre Alric in the Division of Contract Management, telephone (518) 474-0203, fax (518) 473-7862 and John Lewyckyj, Deputy Director, Design & Construction Group, telephone (518) 474-0201, fax (518) 486-1650. OGS D&C employees are also required to obtain certain information when contacted during the restricted period and make a determination of the responsibility of the bidder pursuant to these two statutes. Certain findings of non-responsibility can result in rejection for contract award and in the event of two findings within a four-year period, the bidder is debarred from obtaining governmental Procurement Contracts. Bidders responding to this Advertisement must familiarize themselves with the State Finance Law requirements and will be expected to affirm that they understand and agree to comply on the bid form. Further information about these requirements can be found

|

within the project manual or at: http://www.ogs.ny.gov/aboutOGS/regulations/defaultAdvisoryCouncil.html

The substantial completion date for this project is 471 days after the Agreement is approved by the Comptroller.

The only time prospective bidders will be allowed to visit the job site to take field measurements and examine existing conditions of the project area will be at 10:00 a.m. on January 3rd, 2020 at OGS Field Office, 17 Duck Pond Road, Beacon, NY. Prospective bidders are urged to visit the site at this time. Prospective bidders or their representatives attending the pre-bid site visit will not be admitted on facility grounds without proper photo identification. Note that parking restrictions and security provisions will apply and all vehicles will be subject to search.

Phone the office of Lanit Osmani (845-765-7123) a minimum of 72 hours in advance of the date to provide the names of those who will attend the pre-bid site visit.

Pursuant to New York State Executive Law Article 15-A and the rules and regulations promulgated thereunder, OGS is required to promote opportunities for the maximum feasible participation of New York State-certified Minority- and Women-owned Business Enterprises ("MWBEs") and the employment of minority group members and women in the performance of OGS contracts. All bidders are expected to cooperate in implementing this policy. OGS hereby establishes an overall goal of 30% for MWBE participation, 15% for Minority-Owned Business Enterprises ("MBE") participation and 15% for Women-Owned Business Enterprises ("WBE") participation (based on the current availability of qualified MBEs and WBEs) for Construction Work and HVAC Work and an overall goal of 8% for MWBE participation, 4% for Minority-Owned Business Enterprises ("MBE") participation and 4% for Women-Owned Business Enterprises ("WBE") participation (based on the current availability of qualified MBEs and WBEs) for Electrical Work. The total contract goal can be obtained by utilizing any combination of MBE and /or WBE participation for subcontracting and supplies acquired under this Contract.

The Office of General Services reserves the right to reject any or all bids.

The Bidding and Contract Documents for this Project are available on compact disc (CD) only, and may be obtained for an $8.00 deposit per set, plus a $2.00 per set shipping and handling fee. Contractors and other interested parties can order CD's on-line through a secure web interface available 24 hours a day, 7 days a week. Please use the following link at the OGS website for ordering and payment instructions: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

For questions about purchase of bid documents, please send an e-mail to DCPlans@ogs.ny.gov, or call (518) 474-0203.

For additional information on this project, please use the link below and then click on the project number: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

By *John D. Lewyckyj, Deputy Director*
OGS - Design & Construction Group

## UPGRADE
### DOMESTIC WATER/SEWER SYSTEMS
Various Albany and Schenectady Locations
Albany and Schenectady Counties

Sealed bids for Project No. 45966-C, for Construction Work, Upgrade Domestic Water and Sewer Systems, Various Albany & Schenectady Locations, NY, will be received by the Office of General Services (OGS), Design & Construction Group (D&C), Division of Contract Management, 35th Fl., Corning Tower, Empire State Plaza, Albany, NY 12242, until 2:00 p.m. on Wednesday, January 8, 2020, when they will be publicly opened and read. Each bid must be prepared and submitted in accordance with the Instructions to Bidders and must be accompanied by a certified check, bank check, or bid bond in the amount of $65,000 for C.

All successful bidders will be required to furnish a Performance Bond and a Labor and Material Bond in the statutory form of public bonds required by Sections 136 and 137 of the State Finance Law, each for 100% of the amount of the Contract value of $2,000,000 for C.

Pursuant to State Finance Law §§ 139-j and 139-k, this solicitation includes and imposes certain restrictions on communications between OGS D&C and a bidder during the procurement process. A bidder is restricted from making contacts from the earliest posting, on the OGS website, in a newspaper of general circulation, or in the Contract Reporter of written notice, advertisement or solicitation of offers through final award and approval of the contract by OGS D&C and the Office of the State Comptroller ("Restricted Period") to other than designated staff unless it is a contact that is included among certain statutory exceptions set forth in State Finance Law § 139-j(3)(a). Designated staff are Jessica Hoffman, Carl Ruppert and Pierre Alric in the Division of Contract Management, telephone (518) 474-0203, fax (518) 473-7862 and John Lewyckyj, Deputy Director, Design & Construction Group, telephone (518) 474-0201, fax (518) 486-1650. OGS D&C employees are also required to obtain certain information when contacted during the restricted period and make a determination of the responsibility of the bidder pursuant to these two statutes. Certain findings of non-responsibility can result in rejection for contract award and in the event of two findings within a four-year period, the bidder is debarred from obtaining governmental Procurement Contracts. Bidders responding to this Advertisement must familiarize themselves with the State Finance Law requirements and will be expected to affirm that they understand and agree to comply on the bid form. Further information about these requirements can be found within the project manual or at: http://www.ogs.ny.gov/aboutOGS/regulations/defaultAdvisoryCouncil.html

The substantial completion date for this project is 1095 days after the Agreement is approved by the Comptroller.

The only time prospective bidders will be allowed to visit the job site to take field measurements and examine existing conditions of the project area will be at 9:00 a.m. on December 27th, 2019 at the State Office Building Campus, Building 4 – Field Office Trailer, 1220 Washington Avenue, Albany NY. Prospective bidders are urged to visit the site at this time. Prospective bidders or their representatives attending the pre-bid site visit will not be admitted on facility grounds without proper photo identification. Note that parking restrictions and security provisions will apply and all vehicles will be subject to search.

Phone the office of Aaron Cook (518-457-7895) a minimum of 48 hours in advance of the date to provide the names of those who will attend the pre-bid site visit.

Pursuant to New York State Executive Law Article 15-A and the rules and regulations promulgated thereunder, OGS is required to promote opportunities for the maximum feasible participation of New York State-certified Minority- and Women-owned Business Enterprises ("MWBEs") and the employment of minority group members and women in the performance of OGS contracts. All bidders are expected to cooperate in implementing this policy. OGS hereby establishes an overall goal of 30% for MWBE participation, 15% for Minority-Owned Business Enterprises ("MBE") participation and 15% for Women-Owned Business Enterprises ("WBE") participation (based on the current availability of qualified MBEs and WBEs). The total contract goal can be obtained by utilizing any combination of MBE and /or WBE participation for subcontracting and supplies acquired under this Contract.

The Office of General Services reserves the right to reject any or all bids.

The Bidding and Contract Documents for this Project are available on compact disc (CD) only, and may be obtained for an $8.00 deposit per set, plus a $2.00 per set shipping and handling fee. Contractors and other interested parties can order CD's on-line through a secure web interface available 24 hours a day, 7 days a week. Please use the following link at the OGS website for ordering and payment instructions: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

For questions about purchase of bid documents, please send an e-mail to DCPlans@ogs.ny.gov, or call (518) 474-0203.

**Advertisements for Bidders/Contractors**                    **NYS Register/December 31, 2019**

For additional information on this project, please use the link below and then click on the project number: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

By *John D. Lewyckyj, Deputy Director*
OGS - Design & Construction Group

## REMOVE/REPLACE
### ROOF
Department of Transportation Region 9
Hancock, Delaware County

Sealed bids for Project No. 45996-C, comprising a contract for Construction Work, Remove / Replace Roof, DOT Region 9, Delaware County, Sands Creek Road, Hancock (Delaware County), NY, will be received by the Office of General Services (OGS), Design & Construction Group (D&C), Division of Contract Management, 35th Fl., Corning Tower, Empire State Plaza, Albany, NY 12242, on behalf of the Department of Transportation, until 2:00 p.m. on Wednesday, January 15, 2020, when they will be publicly opened and read. Each bid must be prepared and submitted in accordance with the Instructions to Bidders and must be accompanied by a certified check, bank check, or bid bond in the amount of $16,900 for C.

Further, Wicks Exempt Projects require a completed form BDC 59 (Wicks Exempt List of Contractors) be filled out and submitted (included in a separate, sealed envelope) in accordance with Document 002220, Supplemental Instructions to Bidders – Wicks Exempt. Failure to submit this form correctly will result in a disqualification of the bid.

All successful bidders will be required to furnish a Performance Bond and a Labor and Material Bond in the statutory form of public bonds required by Sections 136 and 137 of the State Finance Law, each for 100% of the amount of the Contract estimated to be between $100,000 and $250,000 for C.

Pursuant to State Finance Law §§ 139-j and 139-k, this solicitation includes and imposes certain restrictions on communications between OGS D&C and a bidder during the procurement process. A bidder is restricted from making contacts from the earliest posting, on the OGS website, in a newspaper of general circulation, or in the Contract Reporter of written notice, advertisement or solicitation of offers through final award and approval of the contract by OGS D&C and the Office of the State Comptroller ("Restricted Period") to other than designated staff unless it is a contact that is included among certain statutory exceptions set forth in State Finance Law § 139-j(3)(a). Designated staff are Jessica Hoffman, Carl Ruppert, and Pierre Alric in the Division of Contract Management, telephone (518) 474-0203, fax (518) 473-7862 and John Lewyckyj, Deputy Director, Design & Construction Group, telephone (518) 474-0201, fax (518) 486-1650. OGS D&C employees are also required to obtain certain information when contacted during the restricted period and make a determination of the responsibility of the bidder pursuant to these two statutes. Certain findings of non-responsibility can result in rejection for contract award and in the event of two findings within a four-year period, the bidder is debarred from obtaining governmental Procurement Contracts. Bidders responding to this Advertisement must familiarize themselves with the State Finance Law requirements and will be expected to affirm that they understand and agree to comply on the bid form. Further information about these requirements can be found within the project manual or at: http://www.ogs.ny.gov/aboutOGS/regulations/defaultAdvisoryCouncil.html

The substantial completion date for this project is 191 days after the Agreement is approved by the Comptroller.

The only time prospective bidders will be allowed to visit the job site to take field measurements and examine existing conditions of the project area will be at 10:00 a.m. on January 7th, 2020, at Hancock DOT, Sands Creek Road, Hancock, NY. Prospective bidders are urged to visit the site at this time. Prospective bidders or their representatives attending the pre-bid site visit will not be admitted on facility grounds without proper photo identification. Note that parking restrictions and security provisions will apply and all vehicles will be subject to search.

Phone the office of Luanne Vaughn, (607-721-8716) a minimum of 48 hours in advance of the date to provide the names of those who will attend the pre-bid site visit.

Pursuant to New York State Executive Law Article 15-A and the rules and regulations promulgated thereunder, OGS is required to promote opportunities for the maximum feasible participation of New York State-certified Minority- and Women-owned Business Enterprises ("MWBEs") and the employment of minority group members and women in the performance of OGS contracts. All bidders are expected to cooperate in implementing this policy. OGS hereby establishes an overall goal of 30% for MWBE participation, 15% for Minority-Owned Business Enterprises ("MBE") participation and 15% for Women-Owned Business Enterprises ("WBE") participation (based on the current availability of qualified MBEs and WBEs). The total contract goal can be obtained by utilizing any combination of MBE and /or WBE participation for subcontracting and supplies acquired under this Contract.

The Office of General Services reserves the right to reject any or all bids.

The Bidding and Contract Documents for this Project are available on compact disc (CD) only, and may be obtained for an $8.00 deposit per set, plus a $2.00 per set shipping and handling fee. Contractors and other interested parties can order CD's on-line through a secure web interface available 24 hours a day, 7 days a week. Please use the following link for ordering and payment instructions: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

For questions about purchase of bid documents, please send an e-mail to DCPlans@ogs.ny.gov, or call (518) 474-0203.

For additional information on this project, please use the link below and then click on the project number: https://online.ogs.ny.gov/dnc/contractorConsultant/esb/ESBPlansAvailableIndex.asp

By *John D. Lewyckyj, Deputy Director*
OGS - Design & Construction Group

# MISCELLANEOUS
## NOTICES/HEARINGS

### Notice of Abandoned Property
### Received by the State Comptroller

Pursuant to provisions of the Abandoned Property Law and related laws, the Office of the State Comptroller receives unclaimed monies and other property deemed abandoned. A list of the names and last known addresses of the entitled owners of this abandoned property is maintained by the office in accordance with Section 1401 of the Abandoned Property Law. Interested parties may inquire if they appear on the Abandoned Property Listing by contacting the Office of Unclaimed Funds, Monday through Friday from 8:00 a.m. to 4:30 p.m., at:

1-800-221-9311
or visit our web site at:
www.osc.state.ny.us

Claims for abandoned property must be filed with the New York State Comptroller's Office of Unclaimed Funds as provided in Section 1406 of the Abandoned Property Law. For further information contact: Office of the State Comptroller, Office of Unclaimed Funds, 110 State St., Albany, NY 12236.

### PUBLIC NOTICE
#### Department of Health

Pursuant to 42 CFR Section 447.205, the Department of Health hereby gives public notice of the following:

The Department of Health proposes to amend the Title XIX (Medicaid) State Plan for institutional, non-institutional and long term care services to comply with proposed statutory provisions. The following changes are proposed:

All Services

Effective for dates of service on or after January 1, 2020, through March 31, 2020, and each State Fiscal Year thereafter, all non-exempt Department of Health state funds Medicaid payments will be uniformly reduced by 1.0%. Medicaid payments that will be exempted from the uniform reduction include:

Payments based on federal law prohibitions include, but are not limited to, the following:

- Federally Qualified Health Center services;
- Indian Health Services and services provided to Native Americans;
- Supplemental Medical Insurance – Part A and Part B;
- State Contribution for Prescription Drug Benefit (aka Medicare Part D payments);
- Any local share cap payment required by the Federal Medical Assistance Percentage (FMAP) increase legislation;
- Required payments related to the School Supportive Health Services Program and Preschool Supportive Health Services Program;
- Services provided to American citizen repatriates;
- Payments pursuant to the mental hygiene law;
- Court orders and judgments; and
- Hospice Services.

Payments funded exclusively with federal and/or local funds include, but are not limited to the following:

- Upper payment limit payments to non-state owned or operated governmental providers certified under Article 28 of the NYS Public Health Law;
- Certified public expenditure payments to the NYC Health and Hospital Corporation;
- Certain disproportionate share payments to non-state operated or owned governmental hospitals;
- Certain managed care payments pursuant to section 3-d of Part B of the Chapter 58 of the Laws of 2010; and
- Services provided to inmates of local correctional facilities.

Payments where applying the reduction would result in a lower FMAP as determined by the Commissioner of Health and the Director of the Budget will also be exempt.

The estimated annual net aggregate decrease in gross Medicaid expenditures attributable to this initiative contained in the budget for State Fiscal Year 2019-20 is ($124,000,000) and ($496,000,000) for each State Fiscal Year thereafter.

The public is invited to review and comment on this proposed State Plan Amendment, a copy of which will be available for public review on the Department's website at: http://www.health.ny.gov/regulations/state_plans/status. Individuals without Internet access may view the State Plan Amendments at any local (county) social services district.

For the New York City district, copies will be available at the following places:

New York County
250 Church Street
New York, New York 10018

Queens County, Queens Center
3220 Northern Boulevard
Long Island City, New York 11101

Kings County, Fulton Center
114 Willoughby Street
Brooklyn, New York 11201

Bronx County, Tremont Center
1916 Monterey Avenue
Bronx, New York 10457

Richmond County, Richmond Center
95 Central Avenue, St. George
Staten Island, New York 10301

*For further information and to review and comment, please contact*: Department of Health, Division of Finance and Rate Setting, 99 Washington Ave., One Commerce Plaza, Suite 1432, Albany, NY 12210, e-mail: spa_inquiries@health.ny.gov

### PUBLIC NOTICE
#### Department of Health

Pursuant to 42 CFR Section 447.205, the Department of Health hereby gives public notice of the following:

The Department of Health proposes to amend the Title XIX (Medicaid) State Plan for all qualifying Mental Hygiene services to comply with enacted statutory provisions. The following changes are proposed:

Long Term Care

Effective on or after January 1, 2020, the State will change the methods and standards for determining payment rates for all qualifying Mental Hygiene Services to provide funding to support a two percent increase in annual salary and salary-related fringe benefits to direct care staff and direct support professionals.

Effective on or after April 1, 2020, a new two percent increase in annual salary and salary-related fringe benefits will be applied to direct care staff, direct support professionals and clinical staff for all qualifying Mental Hygiene Services. For the purposes of the January 1 and April 1, 2020, funding increases, direct support professionals are individuals employed in consolidated fiscal reporting position title codes ranging from 100 to 199; direct care staff are individuals employed in consolidated fiscal reporting position title codes ranging from 200 to 299; and clinical staff are individuals employed in consolidated fiscal reporting position title codes ranging from 300 to 399.

The estimated annual net aggregate increase in gross Medicaid expenditure attributable to this initiative enacted into law as part of the budget for SFY 2019/2020 is $140 million.

The public is invited to review and comment on this proposed State Plan Amendment, a copy of which will be available for public review on the Department's website at http://www.health.ny.gov/regulations/state_plans/status. Individuals without Internet access may view the State Plan Amendments at any local (county) social services district.

For the New York City district, copies will be available at the following places:

New York County
250 Church Street
New York, New York 10018

Queens County, Queens Center
3220 Northern Boulevard
Long Island City, New York 11101

Kings County, Fulton Center
114 Willoughby Street
Brooklyn, New York 11201

Bronx County, Tremont Center
1916 Monterey Avenue
Bronx, New York 10457

Richmond County, Richmond Center
95 Central Avenue, St. George
Staten Island, New York 10301

*For further information and to review and comment, please contact*: Department of Health, Bureau of Federal Relations & Provider Assessments, 99 Washington Ave., One Commerce Plaza, Suite 1430, Albany, NY 12210, (518) 474-1673, Fax (518) 473-8825, spa_inquiries@health.state.ny.us

## PUBLIC NOTICE
### Department of Health

Pursuant to 42 CFR Section 447.205, the Department of Health hereby gives public notice of the following:

The Department of Health proposes to amend the Title XIX (Medicaid) State Plan for non-institutional services to revise provisions of the Ambulatory Patient Group (APG) reimbursement methodology and Independent Practitioner Services for Individuals with Developmental Disabilities (IPSIDD) fees. The following changes are proposed:

Non-Institutional

For the effective period January 1, 2020 through December 31, 2020, the Ambulatory Patient Group (APG) reimbursement methodology is extended.

The estimated annual net aggregate increase in gross Medicaid expenditures attributable to this initiative is $0.

Effective on or after January 1, 2020, the Ambulatory Patient Group (APG) reimbursement methodology is revised to include recalculated weight and component updates.

The estimated annual net aggregate increase in gross Medicaid expenditures attributable to this initiative is $3.87 million.

Effective on or after January 1, 2020, the Independent Practitioner Services for Individuals with Developmental Disabilities (IPSIDD) fees are revised.

The estimated annual net aggregate increase in gross Medicaid expenditures attributable to this initiative is $0.

The public is invited to review and comment on this proposed State Plan Amendment. Copies of which will be available for public review on the Department's website at http://www.health.ny.gov/regulations/state_plans/status.

Copies of the proposed State Plan Amendments will be on file in each local (county) social services district and available for public review.

For the New York City district, copies will be available at the following places:

New York County
250 Church Street
New York, New York 10018

Queens County, Queens Center
3220 Northern Boulevard
Long Island City, New York 11101

Kings County, Fulton Center
114 Willoughby Street
Brooklyn, New York 11201

Bronx County, Tremont Center
1916 Monterey Avenue
Bronx, New York 10457

Richmond County, Richmond Center
95 Central Avenue, St. George
Staten Island, New York 10301

*For further information and to review and comment, please contact*: Department of Health, Bureau of Federal Relations & Provider Assessments, 99 Washington Ave., One Commerce Plaza, Suite 1430, Albany, NY 12210, (518) 474-1673, Fax (518) 473-8825, spa_inquiries@health.state.ny.us

## PUBLIC NOTICE
### Nassau County

The Deferred Compensation Plan for Employees of Nassau Health Care Corporation (the "Plan"), a 457(b) plan created under the laws of the State of New York and pursuant to Section 457(b) of the Internal Revenue Code, is seeking proposals from qualified firms to:

Provide consulting services to the Plan regarding monitoring the performance of the current plan record keeper/administrative service agent, investment manager, and trustee, and overall plan investment performance.

Proposals will be accepted until 4:00 p.m. on Monday, February 10, 2020.

*A copy of the Request for Proposals may be obtained during normal business hours (9:00 a.m. to 5:00 p.m. – Weekdays) from*: Richard

Muser, Counsel to the Board of the Deferred Compensation Plan, Clifton Budd & Demaria, LLP, Empire State Bldg., 350 Fifth Ave., Suite 6110, New York, NY 10118 or by email request to: rkmuser@cbdm.com

## PUBLIC NOTICE
### Department of State
### Uniform Code Regional Boards of Review

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0738 Matter of MTA Metro-North Railroad, Hell Gate Line, for a variance concerning life safety issues. Involved are multiple station locations located in the borough of the Bronx, County of Bronx, State of New York.

## PUBLIC NOTICE
### Department of State
### Uniform Code Variance / Appeal Petitions

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0730 Matter of Robert E. Riekert, 23 Green St., Suite 209, Huntington, NY 11743, for a variance concerning safety requirements, including the required ceiling height. Involved is an existing one family dwelling located at 56 Cannon Court, Town of Huntington, NY 11743 County of Suffolk, State of New York.

2019-0731 Matter of Robert T Jones, P.O. Box 714, West Hampton, NY 11977, for a variance concerning safety requirements, including the required heights under a girder/soffit. Involved is an existing one family dwelling located at 73 Oak Street, Village of Westhampton Beach, NY 11978 County of Suffolk, State of New York.

2019-0732 Matter of SPK Long Island, Inc. d/b/a Huntigton Learning Ctr, Sean Kelly, 700 Koehler Avenue, Ronkonkoma, NY 11779, for a variance concerning safety requirements, including to allow a single unisex toilet room in lieu of the required two (2), one (1) for each sex. Involved is an B occupancy (business) alteration located at 275 Route 25A, Unit #6, Town of Brookhaven, NY 11764 County of Suffolk, State of New York.

## PUBLIC NOTICE
### Department of State
### Uniform Code Variance / Appeal Petitions

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0740 Matter of Lam Advocate & Paralegal Services, Lisa Miller, 270 Medford Ave. - Suite 1, Patchogue, NY 11772, for a variance concerning safety requirements, including the required heights under a girder/soffit. Involved is an existing one family dwelling located at 26 Gray Avenue, Town of Brookhaven, NY 11763 County of Suffolk, State of New York.

2019-0746 Matter of Elsasser Expediting Services, John Roy, 1134B, Route 25, Selden, NY 11784, for a variance concerning safety requirements, including the required heights under a girder/soffit. Involved is an existing one family dwelling located at 1700 Race Avenue, Town of Brookhaven, NY 11763 County of Suffolk, State of New York.

## PUBLIC NOTICE
### Department of State
### Uniform Code Variance / Appeal Petitions

Pursuant to 19 NYCRR Part 1205, the variance and appeal petitions below have been received by the Department of State. Unless otherwise indicated, they involve requests for relief from provisions of the New York State Uniform Fire Prevention and Building Code. Persons wishing to review any petitions, provide comments, or receive actual notices of any subsequent proceeding may contact Brian Tollisen or Neil Collier, Building Standards and Codes, Department of State, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231, (518) 474-4073 to make appropriate arrangements.

2019-0745 In the matter of Bradley N. Treat, 1041 Hanshaw Road, Ithaca, NY 14850, concerning safety requirements including a variance for reduction in required height of existing exterior front porch guardrails and interior handrails and guardrails.

Involved is the certificate of compliance inspection of an existing residential occupancy, two stories in height, located at 510 North Tioga Street, City of Ithaca, County of Tompkins, New York.

## PUBLIC NOTICE
### Susquehanna River Basin Commission

Projects Approved for Consumptive Uses of Water

SUMMARY: This notice lists the projects approved by rule by the Susquehanna River Basin Commission during the period set forth in "DATES."

DATES: October 1-31, 2019

ADDRESSES: Susquehanna River Basin Commission, 4423 North Front Street, Harrisburg, PA 17110-1788.

FOR FURTHER INFORMATION CONTACT: Jason E. Oyler, General Counsel and Secretary to the Commission, telephone: (717) 238-0423, ext. 1312; fax: (717) 238-2436; e-mail: joyler@srbc.net. Regular mail inquiries May be sent to the above address.

SUPPLEMENTARY INFORMATION: This notice lists the projects, described below, receiving approval for the consumptive use of water pursuant to the Commission's approval by rule process set forth in 18 CFR § 806.22 (f)(13) and 18 CFR § 806.22 (f) for the time period specified above:

Water Source Approval – Issued Under 18 CFR 806.22(f)(13):

1. Beech Resources, LLC, Montoursville Borough Water Works; NOI-2019-0330; Montoursville Borough, Lycoming County, Pa.; Obtain Up to 0.4000 mgd; Approval Date: October 30, 2019.

Approvals By Rule – Issued Under 18 CFR 806.22(f):

1. Repsol Oil & Gas USA, LLC; Pad ID: SHERMAN (03 144) M; ABR-201910001; Columbia Township, Bradford County, Pa.; Consumptive Use of Up to 6.0000 mgd; Approval Date: October 7, 2019.

2. EOG Resources, Inc.; Pad ID: Houseknecht 2H; ABR-20090419.R2; Springfield Township, Bradford County, Pa.; Consumptive Use of Up to 5.0000 mgd; Approval Date: October 10, 2019.

3. EOG Resources, Inc.; Pad ID: Ward M 1H; ABR-20090421.R2; Springfield Township, Bradford County, Pa.; Consumptive Use of Up to 5.0000 mgd; Approval Date: October 10, 2019.

4. EOG Resources, Inc.; Pad ID: Housknecht 3H; ABR-20090422.R2; Springfield Township, Bradford County, Pa.; Consumptive Use of Up to 5.0000 mgd; Approval Date: October 10, 2019.

5. EOG Resources, Inc.; Pad ID: Housknecht 1H; ABR-

20090423.R2; Springfield Township, Bradford County, Pa.; Consumptive Use of Up to 5.0000 mgd; Approval Date: October 10, 2019.

6. Repsol Oil & Gas USA, LLC; Pad ID: CLDC (02 178) M; ABR-201910002; Ward Township, Tioga County, Pa.; Consumptive Use of Up to 6.0000 mgd; Approval Date: October 14, 2019.

7. Cabot Oil & Gas Corporation; Pad ID: Pijanowski J P1; ABR-201404002.R1; Springville Township, Susquehanna County, Pa.; Consumptive Use of Up to 5.0000 mgd; Approval Date: October 21, 2019.

8. Cabot Oil & Gas Corporation; Pad ID: Plonski I P1; ABR-201405008.R1; Gibson Township, Susquehanna County, Pa.; Consumptive Use of Up to 5.0000 mgd; Approval Date: October 21, 2019.

9. Cabot Oil & Gas Corporation; Pad ID: Friedland Farms P1; ABR-201405009.R1; Lenox Township, Susquehanna County, Pa.; Consumptive Use of Up to 5.0000 mgd; Approval Date: October 21, 2019.

10. Chief Oil & Gas, LLC; Pad ID: Phelps B Drilling Pad; ABR-201409001.R1; Lathrop Township, Susquehanna County, Pa.; Consumptive Use of Up to 2.5000 mgd; Approval Date: October 21, 2019.

11. Cabot Oil & Gas Corporation; Pad ID: Gesford P1; ABR-20090547.R2; Dimock Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 21, 2019.

12. Cabot Oil & Gas Corporation; Pad ID: Greenwood; ABR-20090548.R2; Dimock Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 21, 2019.

13. Cabot Oil & Gas Corporation; Pad ID: Gesford P4; ABR-20090550.R2; Dimock Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 21, 2019.

14. Seneca Resources Company, LLC.; Pad ID: PHC 23H/24H; ABR-20090917.R2; Lawrence Township, Clearfield County, Pa.; Consumptive Use of Up to 3.0000 mgd; Approval Date: October 21, 2019.

15. Seneca Resources Company, LLC.; Pad ID: PHC 28H/29H; ABR-20090918.R2; Lawrence Township, Clearfield County, Pa.; Consumptive Use of Up to 3.0000 mgd; Approval Date: October 21, 2019.

16. Seneca Resources Company, LLC.; Pad ID: D. M. Pino Pad H; ABR-20090933.R2; Covington Township, Tioga County, Pa.; Consumptive Use of Up to 2.0000 mgd; Approval Date: October 21, 2019.

17. Cabot Oil & Gas Corporation; Pad ID: Heitsman P1; ABR-20090537.R2; Dimock Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 24, 2019.

18. Cabot Oil & Gas Corporation; Pad ID: Lathrop P1; ABR-20090538.R2; Springville Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 24, 2019.

19. Cabot Oil & Gas Corporation; Pad ID: Hubbard P1; ABR-20090545.R2; Dimock Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 24, 2019.

20. Cabot Oil & Gas Corporation; Pad ID: HeitsmanA P2; ABR-20090552.R2; Dimock Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 24, 2019.

21. Cabot Oil & Gas Corporation; Pad ID: SevercoolB P1; ABR-20090536.R2; Dimock Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 25, 2019.

22. Cabot Oil & Gas Corporation; Pad ID: Ratzel P1; ABR-20090539.R2; Dimock Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 25, 2019.

23. Cabot Oil & Gas Corporation; Pad ID: Smith P1; ABR-20090540.R2; Springville Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 25, 2019.

24. Cabot Oil & Gas Corporation; Pad ID: Rozanski P1; ABR-20090553.R2; Dimock Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 25, 2019.

25. Cabot Oil & Gas Corporation; Pad ID: Smith P3; ABR-20090554.R2; Springville Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: October 28, 2019.

Authority: Pub. L. 91-575, 84 Stat. 1509 et seq., 18 CFR Parts 806, 807, and 808.

Dated: December 10, 2019.

Jason E. Oyler,

General Counsel and Secretary to the Commission.

## PUBLIC NOTICE

### Susquehanna River Basin Commission

Projects Approved for Consumptive Uses of Water

SUMMARY: This notice lists the projects approved by rule by the Susquehanna River Basin Commission during the period set forth in "DATES."

DATES: November 1-30, 2019

ADDRESSES: Susquehanna River Basin Commission, 4423 North Front Street, Harrisburg, PA 17110-1788.

FOR FURTHER INFORMATION CONTACT: Jason E. Oyler, General Counsel and Secretary to the Commission, telephone: (717) 238-0423, ext. 1312; fax: (717) 238-2436; e-mail: joyler@srbc.net. Regular mail inquiries May be sent to the above address.

SUPPLEMENTARY INFORMATION: This notice lists the projects, described below, receiving approval for the consumptive use of water pursuant to the Commission's approval by rule process set forth in 18 CFR § 806.22 (f)(13) and 18 CFR § 806.22 (f) for the time period specified above:

Water Source Approval – Issued Under 18 CFR 806.22(f):

1. Cabot Oil & Gas Corporation; Pad ID: Teel P1; ABR-20090541.R2; Springville Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: November 12, 2019.

2. Cabot Oil & Gas Corporation; Pad ID: Teel P5; ABR-20090542.R2; Springville Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: November 12, 2019.

3. Cabot Oil & Gas Corporation; Pad ID: Teel P6; ABR-20090543.R2; Springville Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: November 12, 2019.

4. Cabot Oil & Gas Corporation; Pad ID: Ely P1; ABR-20090546.R2; Dimock Township, Susquehanna County, Pa.; Consumptive Use of Up to 3.5750 mgd; Approval Date: November 12, 2019.

5. Cabot Oil & Gas Corporation; Pad ID: ButlerL P1; ABR-201405010.R1; Lathrop Township, Susquehanna County, Pa.; Consumptive Use of Up to 5.0000 mgd; Approval Date: November 12, 2019.

6. Chief Oil & Gas, LLC; Pad ID: SGL-12 B Drilling Pad; ABR-201410005.R1; Overton Township, Bradford County, Pa.; Consumptive Use of Up to 2.5000 mgd; Approval Date: November 12, 2019.

7. Chesapeake Appalachia, L.L.C.; Pad ID: Jayne; ABR-20091021.R2; Auburn Township, Susquehanna County, Pa.; Consumptive Use of Up to 7.5000 mgd; Approval Date: November 18, 2019.

8. Chesapeake Appalachia, L.L.C.; Pad ID: Roundwood; ABR-201410001.R1; Braintrim Township, Wyoming County, Pa.; Consumptive Use of Up to 7.5000 mgd; Approval Date: November 18, 2019.

9. Chesapeake Appalachia, L.L.C.; Pad ID: James Smith; ABR-20091020.R2; Terry Township, Bradford County, Pa.; Consumptive Use of Up to 7.5000 mgd; Approval Date: November 21, 2019.

10. Chesapeake Appalachia, L.L.C.; Pad ID: Gowan; ABR-20091001.R2; Terry Township, Bradford County, Pa.; Consumptive Use of Up to 7.5000 mgd; Approval Date: November 25, 2019.

11. Chesapeake Appalachia, L.L.C.; Pad ID: Harry; ABR-20091017.R2; West Burlington Township, Bradford County, Pa.; Consumptive Use of Up to 7.5000 mgd; Approval Date: November 25, 2019.

12. Seneca Resources Company, LLC; Pad ID: DCNR 595 Pad D; ABR-20090827.R2; Bloss Township, Tioga County, Pa.; Consumptive Use of Up to 1.0001 mgd; Approval Date: November 25, 2019.

Authority: Pub. L. 91-575, 84 Stat. 1509 et seq., 18 CFR Parts 806, 807, and 808.

Dated: December 10, 2019.

Jason E. Oyler,

General Counsel and Secretary to the Commission.

## PUBLIC NOTICE
### Susquehanna River Basin Commission

Grandfathering (GF) Registration Notice

SUMMARY: This notice lists Grandfathering Registration for projects by the Susquehanna River Basin Commission during the period set forth in DATES.

DATES: October 1-31, 2019.

ADDRESSES: Susquehanna River Basin Commission, 4423 North Front Street, Harrisburg, PA 17110-1788.

FOR FURTHER INFORMATION CONTACT: Jason E. Oyler, General Counsel and Secretary to the Commission, telephone: (717) 238-0423, ext. 1312; fax: (717) 238-2436; e-mail: joyler@srbc.net. Regular mail inquiries May be sent to the above address.

SUPPLEMENTARY INFORMATION: This notice lists GF Registration for projects, described below, pursuant to 18 CFR 806, Subpart E for the time period specified above:

Grandfathering Registration Under 18 CFR part 806, Subpart E:

1. Fairview Golf Course, Inc., GF Certificate No. GF-201910049, West Cornwall Township, Lebanon County, Pa.; On-site Well; Issue Date: October 17, 2019.

2. Hegins-Hubley Authority – Public Water Supply System, GF Certificate No. GF-201910050, Hegins and Hubley Townships, Schuylkill County, Pa.; Wells 1, 2, and 3, and Spring 1; Issue Date: October 17, 2019.

3. T. A. & Son, LLC, GF Certificate No. GF-201910051, Pine Creek Township, Clinton County, Pa.; West Branch Susquehanna River and Pine Creek; Issue Date: October 17, 2019

Authority: Pub. L. 91-575, 84 Stat. 1509 et seq., 18 CFR parts 806 and 808.

Dated: December 10, 2019.

Jason E. Oyler,

General Counsel and Secretary to the Commission.

## PUBLIC NOTICE
### Susquehanna River Basin Commission

Grandfathering (GF) Registration Notice

SUMMARY: This notice lists Grandfathering Registration for projects by the Susquehanna River Basin Commission during the period set forth in DATES.

DATES: November 1-30, 2019.

ADDRESSES: Susquehanna River Basin Commission, 4423 North Front Street, Harrisburg, PA 17110-1788.

FOR FURTHER INFORMATION CONTACT: Jason E. Oyler, General Counsel and Secretary to the Commission, telephone: (717) 238-0423, ext. 1312; fax: (717) 238-2436; e-mail: joyler@srbc.net. Regular mail inquiries May be sent to the above address.

SUPPLEMENTARY INFORMATION: This notice lists GF Registration for projects, described below, pursuant to 18 CFR 806, Subpart E for the time period specified above:

Grandfathering Registration Under 18 CFR part 806, Subpart E:

1. Byler Golf Management, Inc. – Blue Mountain Golf Course, GF Certificate No. GF-201911052, Bethel Township, Lebanon County, Pa.; Well 1; Issue Date: November 13, 2019.

2. Crown Club LP – Colonial Golf & Tennis Club, GF Certificate No. GF-201911053, Lower Paxton Township, Dauphin County, Pa.; Paxton Creek and consumptive use; Issue Date: November 13, 2019.

3. Dover Township – Public Water Supply System, GF Certificate No. GF-201911054, Dover Township, York County, Pa.; Wells 2, 3, 4, 5, 6, and 7; Issue Date: November 13, 2019.

4. SUEZ Water Pennsylvania Inc. – Shavertown Operation, GF Certificate No. GF-201911055, Dallas and Kingston Townships, Luzerne County, Pa.; Hassold Well; Issue Date: November 13, 2019.

5. Towanda Country Club, GF Certificate No. GF-201911056, Wysox Township, Bradford County, Pa.; Well 1 and Ponds 1, 2, and 3; Issue Date: November 13, 2019.

6. Williamsburg Municipal Authority – Public Water Supply System, GF Certificate No. GF-201911057, Woodbury Township, Blair County, Pa.; Wells 1 and 2; Issue Date: November 13, 2019.

7. Village of Homer – Public Water Supply System, GF Certificate No. GF-201911058, Village of Homer, Cortland County, N.Y.; Wells 2 and 3; Issue Date: November 20, 2019.

8. Pennsylvania Fish & Boat Commission – Tylersville State Fish Hatchery, GF Certificate No. GF-201911059, Logan Township, Clinton County, Pa.; Tylersville Spring; Issue Date: November 20, 2019

Authority: Pub. L. 91-575, 84 Stat. 1509 et seq., 18 CFR parts 806 and 808.

Dated: December 10, 2019.

Jason E. Oyler,

General Counsel and Secretary to the Commission.

## PUBLIC NOTICE
### Susquehanna River Basin Commission

Actions Taken at December 5, 2019, Meeting

SUMMARY: As part of its regular business meeting held on December 5, 2019, in Harrisburg, Pennsylvania, the Commission approved the applications of certain water resources projects, and took additional actions, as set forth in the Supplementary Information below.

DATES: December 5, 2019.

ADDRESSES: Susquehanna River Basin Commission, 4423 N. Front Street, Harrisburg, PA 17110-1788.

FOR FURTHER INFORMATION CONTACT: Jason E. Oyler, General Counsel and Secretary, telephone: (717) 238-0423, ext. 1312; fax: (717) 238-2436; e-mail: joyler@srbc.net. Regular mail inquiries may be sent to the above address. See also Commission website at www.srbc.net.

SUPPLEMENTARY INFORMATION: In addition to the actions taken on projects identified in the summary above and the listings below, the following items were also presented or acted upon at the business meeting: (1) informational presentation on the Chiques Creek Watershed in Lancaster County, Pa.; (2) adoption of a Regulatory Fee Schedule to become effective January 1, 2020; (3) approval of three contractual agreements; (4) a report on a delegated settlement; (5) approval of a regulatory waiver request; and (6) approval of Regulatory Program projects.

Project Applications Approved:

The Commission approved the following project applications:

1. Project Sponsor and Facility: Cabot Oil & Gas Corporation (Tunkhannock Creek), Lenox Township, Susquehanna County, Pa. Application for renewal of surface water withdrawal of up to 1.500 mgd (peak day) (Docket No. 20151201).

2. Project Sponsor and Facility: Town of Cortlandville, Cortland County, N.Y. Application for groundwater withdrawal of up to 1.300 mgd (30-day average) from Lime Hollow Well 2.

3. Project Sponsor and Facility: Town of Cortlandville, Cortland County, N.Y. Application for groundwater withdrawal of up to 1.300 mgd (30-day average) from Lime Hollow Well 7.

4. Project Sponsor and Facility: Town of Cortlandville, Cortland County, N.Y. Application for groundwater withdrawal of up to 1.008 mgd (30-day average) from the Terrace Road Well.

5. Project Sponsor: Graymont (PA) Inc. Project Facility: Pleasant

Gap Facility, Spring Township, Centre County, Pa. Modification to increase consumptive use by an additional 0.098 mgd (30-day average), for a total consumptive use of up to 0.720 mgd (30 day average), and change limits from peak day to 30-day average (Docket No. 20050306).

6. Project Sponsor: Hazleton City Authority. Project Facility: Hazleton Division, Hazle Township, Luzerne County, Pa. Application for groundwater withdrawal of up to 0.354 mgd (30-day average) from Barnes Run Well 3.

7. Project Sponsor and Facility: Leola Sewer Authority (will be issued to Upper Leacock Township Municipal Authority), Upper Leacock Township, Lancaster County, Pa. Application for renewal of groundwater withdrawal of up to 0.263 mgd (30-day average) from Well 16 (Docket No. 19890702).

8. Project Sponsor and Facility: Pennsylvania State University, College Township, Centre County, Pa. Application for renewal of consumptive use of up to 2.622 mgd (peak day) (Docket No. 19890106).

9. Project Sponsor and Facility: Pennsylvania State University, College Township, Centre County, Pa. Application for renewal of groundwater withdrawal of up to 1.728 mgd (30-day average) from Well UN-33 (Docket No. 19890106).

10. Project Sponsor and Facility: Pennsylvania State University, College Township, Centre County, Pa. Application for renewal of groundwater withdrawal of up to 1.678 mgd (30-day average) from Well UN-34 (Docket No. 19890106).

11. Project Sponsor and Facility: Pennsylvania State University, College Township, Centre County, Pa. Application for renewal of groundwater withdrawal of up to 1.728 mgd (30-day average) from Well UN-35 (Docket No. 19890106).

12. Project Sponsor and Facility: Sugar Hollow Water Services LLC (Susquehanna River), Eaton Township, Wyoming County, Pa. Application for renewal of surface water withdrawal of up to 1.500 mgd (peak day) (Docket No. 20151204).

13. Project Sponsor and Facility: SWN Production Company, LLC (Susquehanna River), Great Bend Township, Susquehanna County, Pa. Application for renewal of surface water withdrawal of up to 2.000 mgd (peak day) (Docket No. 20151205).

Projects Approved Involving a Diversion

1. Project Sponsor and Facility: City of Aberdeen, Harford County, Md. Modifications to extend the approval term of the consumptive use, surface water withdrawal, and out-of-basin diversion approval (Docket No. 20021210) to allow additional time for evaluation of the continued use of the source for the Aberdeen Proving Ground-Aberdeen Area.

2. Project Sponsor and Facility: New York State Canal Corporation (Middle Branch Tioughnioga Creek), Towns of DeRuyter and Cazenovia, Madison County, and Town of Fabius, Onondaga County, N.Y. Applications for surface water withdrawal of up to 4.300 mgd (peak day), consumptive use of up to 4.300 mgd (peak day), and out-of-basin diversion of up to 4.300 mgd (peak day) from Middle Branch Tioughnioga Creek.

3. Project Sponsor: Seneca Resources Company, LLC. Project Facility: Impoundment 1, receiving groundwater from various sources, Sergeant and Norwich Townships, McKean County, Pa. Application for into-basin diversion from the Ohio River Basin of up to 2.517 mgd (peak day) (Docket No. 20141216).

Commission Initiated Project Approval Modifications

1. Project Sponsor and Facility: Bucknell University, East Buffalo Township, Union County, Pa. Conforming the grandfathering amount with the forthcoming determination for a groundwater withdrawal up to 0.046 mgd (30-day average) from Well 2 and up to 0.116 mgd (30-day average) from Wells 2 and 3 (Docket No. 20021008).

2. Project Sponsor and Facility: Manada Golf Club, Inc., East Hanover Township, Dauphin County, Pa. Conforming the grandfathered amount with the forthcoming determination for a withdrawal of up to 0.071 mgd (30-day average) from the 4th Tee Well, up to 0.036 mgd (30-day average) from the 5th Tee Well, and up to 0.036 mgd (30-day average) from the Barn Well (Docket No. 20020614).

3. Project Sponsor: Pennsylvania Fish & Boat Commission. Project Facility: Pleasant Gap State Fish Hatchery, Benner Township, Centre County, Pa. Conforming the grandfathering amount with the forthcoming determination for a withdrawal of up to 5.056 mgd (30-day average) from Blue and East Springs, up to 0.930 mgd (30-day average) from Hoy and Shugert Springs, and up to 1.000 mgd (30-day average) from Logan Branch (Docket No. 20000601).

Project Applications Tabled

1. Project Sponsor and Facility: Chester Water Authority, East Nottingham Township, Chester County, Pa. Application for an out-of-basin diversion of up to 60.000 mgd (peak day).

2. Project Sponsor and Facility: New Holland Borough Authority, New Holland Borough, Lancaster County, Pa. Application for groundwater withdrawal of up to 0.860 mgd (30-day average) from Well 5.

3. Project Sponsor: Pixelle Specialty Solutions LLC. Project Facility: Spring Grove Mill (Codorus Creek – New Filter Plant Intake), Spring Grove Borough, York County, Pa. Applications for consumptive use of up to 3.650 mgd (peak day) and surface water withdrawal of up to 19.800 mgd (peak day).

4. Project Sponsor: Pixelle Specialty Solutions LLC. Project Facility: Spring Grove Mill (Codorus Creek – Old Filter Plant Intake), Spring Grove Borough, York County, Pa. Application for surface water withdrawal of up to 6.000 mgd (peak day).

5. Project Sponsor: Pixelle Specialty Solutions LLC. Project Facility: Spring Grove Mill (unnamed tributary to Codorus Creek – Kessler Pond Intake), Spring Grove Borough, York County, Pa. Application for surface water withdrawal of up to 0.750 mgd (peak day).

6. Project Sponsor and Facility: Chester Water Authority, East Nottingham Township, Chester County, Pa. Application for an out-of-basin diversion of up to 60.000 mgd (peak day) from the Susquehanna River and Octoraro Reservoir.

AUTHORITY: Pub. L. 91-575, 84 Stat. 1509 et seq., 18 CFR Parts 806, 807, and 808.

Dated: December 10, 2019,

Jason E. Oyler,

General Counsel and Secretary to the Commission

## PUBLIC NOTICE
### Tompkins County

Pursuant to Section 120-w of the New York State General Municipal Law the Tompkins County hereby gives notice of the following:

The County of Tompkins hereby gives notice that on December 18, 2019 it is issuing a Draft Request for Proposals (DRFP) for operation of the County Recycling and Solid Waste Center on Commercial Avenue in Ithaca, NY. Interested companies may access the DRFP information on BidNetDirect by going to www.tomDkinscountv.aov/purchase and selecting "Open Solicitations."

*For further information, contact:* Barbara Eckstrom, County Recycling and Materials Management Office, 22 Commercial Ave., Ithaca, NY, (607) 273-6632, beckstrom@tompkins-co.org

# EXECUTIVE
## ORDERS

**Executive Order No. 168.31:  Continuing the Declaration of a Disaster Emergency in the Five Boroughs of New York City and the Counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk and Westchester that Incorporate the MTA Region in the State of New York.**

WHEREAS, pursuant to Executive Order No. 168, a disaster has heretofore been declared in the five boroughs of New York City and the Counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk and Westchester that incorporate the Metropolitan Transportation Authority (MTA) Region in the State of New York due to increasingly constant and continuing failures of the tracks, signals, switches and other transportation infrastructure throughout the system including at Pennsylvania Station located in the County of New York (Penn Station), that have resulted in various subway derailments, extensive track outages, and substantial service disruptions impacting the health and safety of hundreds of thousands of riders;

WHEREAS, the ongoing failures of the tracks, signals, switches and other transportation infrastructure throughout the MTA's rail and subway system continue to pose an imminent threat and have a vast and deleterious impact on the health, safety, and livelihood of commuters, tourists, resident New Yorkers, as well as business and commerce in the Metropolitan Commuter Transportation District (MCTD), which is the recognized economic engine of the State of New York, and thereby have adversely affected the New York State economy;

WHEREAS, the track outages and service disruption necessary to implement the Amtrak Repair Program, and other repairs necessary to fix tracks, signals, switches and other transportation infrastructure throughout the MTA's rail and subway system continue to be necessary to protect the public, health and safety of commuters, tourists, resident New Yorkers, and will continue to worsen the transportation disaster emergency that currently exists due to the condition of Penn Station and the MTA's rail and subway system as a whole; and,

WHEREAS, it continues to be necessary for the MTA and its subsidiaries and affiliates to take significant and immediate action to assist in the repair of the tracks, signals, switches and other transportation infrastructure and in the mediation of such track outages and service disruptions due to this disaster emergency;

NOW, THEREFORE, I, ANDREW M. CUOMO, Governor of the State of New York, by virtue of the authority vested in me by the Constitution and the Laws of the State of New York, do hereby extend the state disaster emergency declared pursuant to Executive Order No. 168 and extend all of the terms, conditions, and directives of Executive Order No. 168 and the terms, conditions, and directives for any extensions of the same for the period from the date that the disaster emergency was declared pursuant to Executive Order No. 168 until January 5, 2020; provided that the temporary suspension of any laws, rules, regulations or guidelines pursuant to this and any future extensions of Executive Order 168 shall apply to the extent the Chairman of the MTA or his designee, which shall only include the MTA's President or Managing Director, determines it necessary for the purposes of awarding any contracts, leases, licenses, permits or any other written agreement that may be entered into to mitigate such disaster emergency.

*BY THE GOVERNOR*
/S/ Andrew M. Cuomo
/s/ Melissa DeRosa
*Secretary to the Governor*

(L.S.)

GIVEN under my hand and the Privy Seal of the State in the City of Albany this sixth day of December in the year two thousand nineteen.

# COURT
## NOTICES

### AMENDMENT OF RULE
#### Practice Rules of the Appellate Division

The Departments of the Appellate Division of the Supreme Court of the State of New York, pursuant to the authority vested in them,

DO HEREBY, effective immediately, amend Part 1250 of Title 22 of the Official Compilation of Codes, Rules and Regulations of the State of New York, entitled "Practice Rules of the Appellate Division," by adding paragraph (i) to section 1250.11 thereof as follows:

Part 1250. Practice Rules of the Appellate Division

\* \* \*

*§ 1250.11 Additional Rules Relating to Criminal Appeals*

\* \* \*

*(i) Review of certain protective orders issued pursuant to CPL 245.70*

*Expedited review pursuant to CPL 245.70(6) of a protective order "relating to the name, address, contact information or statements of a person" (CPL 245.70[6][a]) shall be sought by application made by order to show cause in accordance with section 1250.4(b) of these rules and within two business days of the adverse or partially adverse ruling.*

# FINANCIAL
## REPORTS



**Depositories for the Funds of the State of New York**

**Month End: November 30, 2019**

Prepared by the Division of the Treasury
Investments, Cash Management and Accounting Operations

Michael R Schmidt
Commissioner

**ACCOUNTS HELD IN JOINT CUSTODY BY THE COMMISSIONER OF TAXATION  FINANCE AND THE NEW YORK STATE COMPTROLLER**

| | | |
|---|---|---|
| Unemployment Insurance Funding Account | Key Bank | 2,725,577.88 |
| Occupational Training Act Funding Account | Key Bank | 105,474.51 |
| Unemployment Insurance Exchange Account | Key Bank | 0.00 |
| PIT Special Refund Account | JPMorgan Chase Bank, N.A. | (430,323,140.07) |
| General Checking | Key Bank | (354,767,357.71) |
| Direct Deposit Account | Wells Fargo | 18,222.51 |
| **TOTAL** | | (449,697,997.86) |

**01000 - EXECUTIVE CHAMBER**

| | | |
|---|---|---|
| Executive Chamber Advance Account | Key Bank | No report received |

**01010 - DIVISION OF BUDGET**

| | | |
|---|---|---|
| Advance Account | Bank of America, N.A. | 4,954.66 |

**01030 - DIVISION OF ALCOHOLIC BEVERAGE CONTROL**

Albany

| | | |
|---|---|---|
| SLA Investigations Account | Key Bank | 2,095.75 |

**01050 - OFFICE OF GENERAL SERVICES**

| | | |
|---|---|---|
| Exec Mansion Official Function | Key Bank | 75.39 |
| NY ISO Account | Key Bank | 3,000,000.31 |
| OGS Binghamton Office Bldg | Key Bank | 500.00 |
| SNY Office of General Services | JPMorgan Chase Bank, N.A. | 5,371.44 |
| State of New York OGS Escrow II | Key Bank | 2,817,894.73 |
| State of New York OGS Petty Cash | Key Bank | 256,231.60 |
| State of New Your OGS Escrow | Key Bank | 106,125.61 |
| State of NY Office Of General Services | Key Bank | 4,992.15 |

**01060 - DIVISION OF STATE POLICE**

| | | |
|---|---|---|
| CNET Confidential Account | Key Bank | 0.00 |
| Div Headquarters - Petty Cash | Key Bank | 2,270.75 |
| Key Advantage Account | Key Bank | 82,933.87 |
| Manhattan Office-confidential | JPMorgan Chase Bank, N.A. | 500.00 |
| NYS Police Special Account | Key Bank | 519,360.95 |
| NYSP CTIU Confidential Fund | Key Bank | 3,700.00 |
| SIU Confidential Fund Account | Key Bank | 8,314.45 |
| Special Fund | Key Bank | 48,287.23 |
| State Police Receipts Account | Bank of America, N.A. | 366,673.43 |
| Troop A Batavia - Petty Cash | Bank of America, N.A. | 760.00 |
| Troop A Batavia-Confidential | Bank of America, N.A. | 3,371.03 |
| Troop B Confidential | Key Bank | 6,300.00 |
| Troop B Petty Cash | Community Bank | 1,000.00 |
| Troop C Confidential Fund | NBT Bank | 4,300.00 |
| Troop C Petty Cash | NBT Bank | 1,000.00 |
| Troop D Oneida - Confidential | Alliance Bank | 2,160.60 |
| Troop D Oneida Petty Cash | Alliance Bank | 1,000.00 |
| Troop E Canandaigua Confidential | Canandaigua National Bank | 2,000.00 |
| Troop E Petty Cash | Canandaigua National Bank | 1,000.00 |
| Troop F Confidential | JPMorgan Chase Bank, N.A. | 4,500.00 |
| Troop F Petty Cash | JPMorgan Chase Bank, N.A. | 1,000.00 |
| Troop G Loudonville Conf | Bank of America, N.A. | 7,398.15 |
| Troop G Petty Cash | Bank of America, N.A. | 1,000.00 |
| Troop K Petty Cash | Bank of Millbrook | 1,000.00 |
| Troop K Poughkeepsie-Confidential | Bank of Millbrook | 376.70 |
| Troop L Confidential Fund | Bank of America, N.A. | 7,500.00 |

**01070 - DIVISION OF MILITARY & NAVAL AFFAIRS**

| | | |
|---|---|---|
| Advance For Travel | Key Bank | 13,371.82 |
| SNY Camp Smith Billeting Fund | JPMorgan Chase Bank, N.A. | 9,891.84 |

**01077 - OFFICE OF HOMELAND SECURITY**

| | | |
|---|---|---|
| Academy Of Fire Science | Chemung Canal Trust | 145,930.54 |

**01080 - DIVISION OF HOUSING & COMMUNITY RENEWAL**

Albany Office Of Financial Administration

| | | |
|---|---|---|
| Maximum Base Rent Fee Account | JPMorgan Chase Bank, N.A. | 14,154.53 |
| Revenue Account | JPMorgan Chase Bank, N.A. | 2,847,328.14 |

**01090 - DIVISION OF HUMAN RIGHTS**

| | | |
|---|---|---|
| Petty Cash Fund Account | JPMorgan Chase Bank, N.A. | No report received |

**01150 - OFFICE OF EMPLOYEE RELATIONS**

| | | |
|---|---|---|
| GOER Panel Administration Escrow Account | Key Bank | 3,830.07 |
| NYS Flex Spending | Key Bank | 52,779.91 |
| State of New York LMC Petty Cash Account | Key Bank | 5,722.40 |

**01160 - JUSTICE CENTER FOR THE PROTECTION OF PEOPLE WITH SPECIAL NEEDS**

| | | |
|---|---|---|
| Agency Advance Account | Key Bank | 1,645.55 |

**01300 - ADIRONDACK PARK AGENCY**

**NYS Register/December 31, 2019**                                          **Financial Reports**

| | | |
|---|---|---:|
| General Fund | Community Bank | 172.50 |
| Petty Cash | Community Bank | 3,817.68 |
| **01400 - CRIME VICTIMS COMPENSATION BOARD** | | |
| Crime Victims | JPMorgan Chase Bank, N.A. | 58,106.60 |
| Emergency Award Account | M&T Bank | 0.00 |
| Emergency Claims | Key Bank | 9,972.05 |
| Petty Cash Account | Key Bank | 686.05 |
| REST/SUBROG Escrow Account | Key Bank | 389.66 |
| **01490 - DIVISION OF CRIMINAL JUSTICE SERVICES** | | |
| Advance Account | Bank of America, N.A. | 2,900.00 |
| FBI Fee Account | Bank of America, N.A. | 4,925.46 |
| Fingerprint Fee Account | Bank of America, N.A. | 86,852.60 |
| **01530 - STATE COMMISSION OF CORRECTION** | | |
| Advance Account | Bank of America, N.A. | 2,000.00 |
| **01540 - STATE BOARD OF ELECTIONS** | | |
| Revenue Account | Key Bank | No report received |
| **01620 - OFFICE FOR PREVENTION OF DOMESTIC VIOLENCE** | | |
| NYS Prevention Domestic Violence | Bank of America, N.A. | No report received |
| **02000 - OFFICE OF THE STATE COMPTROLLER** | | |
| Admissions | Bank of America, N.A. | 395,888.58 |
| Advance for Travel Account | Key Bank | No report received |
| Alcohol Beverage | Bank of America, N.A. | 1,046,491.72 |
| Alcoholic Bev Control License | Wells Fargo Bank | 260,934.11 |
| Alcoholic Beverage Control License | M&T Bank | 213,018.14 |
| Assessments Bulk | JPMorgan Chase Bank, N.A. | 100,632.35 |
| Assessments Receivable | JPMorgan Chase Bank, N.A. | 7,660,380.03 |
| Assessments Receivable (EFT) | Wells Fargo Bank | 262,281.69 |
| Boxing And Wrestling Tax | Bank of America, N.A. | 21,778.75 |
| Check 21 Corporation Tax | JPMorgan Chase Bank, N.A. | 149,928.94 |
| Check 21 Estate Tax | JPMorgan Chase Bank, N.A. | 0.00 |
| Check 21 Highway Use | JPMorgan Chase Bank, N.A. | 397,392.54 |
| Check 21 PIT | JPMorgan Chase Bank, N.A. | 314,452.30 |
| Check 21 Real Estate Transfer | JPMorgan Chase Bank, N.A. | 1,059,828.52 |
| Check Sales Tax | JPMorgan Chase Bank, N.A. | 606,724.38 |
| Cigarette Stamp Sales Tax | JPMorgan Chase Bank, N.A. | 316,940.00 |
| Cigarette Stamp Tax | JPMorgan Chase Bank, N.A. | 21,300.00 |
| Cigarette Stamp Tax (EFT) | Wells Fargo Bank | 1,862,203.44 |
| Cigarette Stamp Tax Split | JPMorgan Chase Bank, N.A. | 21,102.93 |
| Cigarette Tax Tobacco Products | Bank of America, N.A. | 34,301.81 |
| Congestion Surcharge | Wells Fargo Bank | 108,556.43 |
| Corporation Tax | Wells Fargo Bank | 884.79 |
| Corporation Tax - Coupon Acct. | JPMorgan Chase Bank, N.A. | 100,035.00 |
| Educational Chartable Account | Wells Fargo Bank | 0.00 |
| Employer Compensation Expense | Wells Fargo Bank | 4,566.13 |
| Encon Beverage Container Deposit/Bottle Bill (EFT) | Wells Fargo Bank | 232,305.02 |
| ERS Petty Cash Acct | Key Bank | No report received |
| Estate Tax | Bank of America, N.A. | 5,719,165.74 |
| Estimated Tax | JPMorgan Chase Bank, N.A. | 3,889,934.79 |
| Gift Tax | Bank of America, N.A. | 26,125.00 |
| Hazardous Waste | Key Bank | 35,020.96 |
| Health Charitable Account | Wells Fargo Bank | 0.00 |
| Highway Use - Permits & Reg. | Bank of America, N.A. | 57,888.88 |
| Highway Use Truck Mileage Tax (EFT) | Wells Fargo Bank | 504,148.45 |
| Hudson River-Black River | Bank of America, N.A. | (968,820.74) |
| Hudson River-Black River | Community Bank | 8,975.09 |
| Hut/Oscar Registrations & Renewals (EFT) | Wells Fargo Bank | 79,590.50 |
| IFTA Fuel Use Tax (EFT) | Wells Fargo Bank | 39,492.63 |
| IFTA/Oscar Renewals (EFT) | Wells Fargo Bank | 40,432.00 |
| IFTA-Decal/Permit Fee Acct. | Bank of America, N.A. | 78,942.50 |
| IFTA-Fuel Use | Bank of America, N.A. | 115,333.80 |
| Income Tax - LLC | JPMorgan Chase Bank, N.A. | 81,573.07 |
| Justice Court | Key Bank | 802,721.70 |
| MCTD Medallion Taxicab Trip | JPMorgan Chase Bank, N.A. | 2,662.00 |
| Medallion Taxicab Trip Tax (EFT) | Wells Fargo Bank | 151,074.60 |
| Medical Marijuana Tax Collections | Bank of America, N.A. | 1,506.78 |
| Metro Commuter Trans. Mobility | JPMorgan Chase Bank, N.A. | 67,856.63 |
| Ogdensburg Bridge & Port | Community Bank | (254,788.19) |
| Personal Income Tax | Wells Fargo Bank | 21,879.05 |
| Petroleum Business Tax (EFT) | Wells Fargo Bank | 301,862.07 |
| Petroleum Products Tax | Bank of America, N.A. | 3,025,690.91 |
| Petty Cash Account | Key Bank | No report received |
| PIT Bulk | JPMorgan Chase Bank, N.A. | 247,720.00 |
| Port Of Oswego | Key Bank | (23,582.64) |
| Promptax - MCTMT | Wells Fargo Bank | 1,172,904.76 |

**Financial Reports**                                                        *NYS Register/December 31, 2019*

| | | |
|---|---|---|
| Promptax - Petroleum Business Tax | Wells Fargo Bank | 201.80 |
| Promptax - Sales Tax/Sales Tax Prepaid Fuel | Wells Fargo Bank | 134.74 |
| Promptax - Withholding | Wells Fargo Bank | 3,319,090.14 |
| Promptax - Withholding Checks | JPMorgan Chase Bank, N.A. | 60,410.43 |
| Real Estate Transfer Tax | Key Bank | 52,296.64 |
| Revenue Holding | First Niagara Bank | 5,825,000.00 |
| Sales Tax | JPMorgan Chase Bank, N.A. | 0.00 |
| Sales Tax | Wells Fargo Bank | 2,699.31 |
| SUNY Concentration | First Niagara Bank | 269,000.00 |
| TNC Assessment (EFT) | Wells Fargo Bank | 1,073.64 |
| Troy Debt Service Reserve Fund | Bank of America, N.A. | 258,794.54 |
| Uncashed Winning Tickets | Bank of America, N.A. | 25,331.90 |
| Unclaimed Funds | JPMorgan Chase Bank, N.A. | 2,328,660.35 |
| Unclaimed Funds - 2 | JPMorgan Chase Bank, N.A. | 1,839.62 |
| Withholding | Wells Fargo Bank | 361.85 |
| Withholding Tax | JPMorgan Chase Bank, N.A. | 24,928,873.06 |
| Cash Advance Accounts | | |
| Advance For Travel Account | Key Bank | 0.00 |
| ERS Petty Cash Acct | Key Bank | 5,100.00 |
| Petty Cash Account | Key Bank | 3,700.00 |
| Common Retirement Fund | | |
| Common Retirement Fund - Depository | JPMorgan Chase Bank, N.A. | No report received |
| NYS Common Retirement Fund | JPMorgan Chase Bank, N.A. | No report received |
| Employees Retirement System | | |
| Employees Retirement System - EFT | JPMorgan Chase Bank, N.A. | No report received |
| Employees Retirement System - General | JPMorgan Chase Bank, N.A. | No report received |
| Employees Retirement System - Pension | JPMorgan Chase Bank, N.A. | No report received |
| Group Term Life | | |
| Group Term Life - General | JPMorgan Chase Bank, N.A. | No report received |
| Municipal Assistance Corporation Accounts | | |
| City Of Troy - MAC | JPMorgan Chase Bank, N.A. | 719,231.00 |
| Police and Fire | | |
| Retirement Police & Firemen's - EFT | JPMorgan Chase Bank, N.A. | No report received |
| Retirement Police & Firemen's - General | JPMorgan Chase Bank, N.A. | No report received |
| Retirement Police & Firemen's - Pension | JPMorgan Chase Bank, N.A. | No report received |
| **03000 - DEPARTMENT OF LAW** | | |
| Albany Filing Fees Account | Key Bank | No report received |
| Albany Petty Cash | Bank of America, N.A. | No report received |
| Albany Revenue Account | Key Bank | No report received |
| Assessment Account | JPMorgan Chase Bank, N.A. | No report received |
| Civil Recoveries Account | Key Bank | No report received |
| Dept Of Law Controlled Disb | M&T Bank | No report received |
| Marie Roberts | JPMorgan Chase Bank, N.A. | No report received |
| NYC Filing Fees Account | JPMorgan Chase Bank, N.A. | No report received |
| NYC Petty Cash Account | JPMorgan Chase Bank, N.A. | No report received |
| NYC Revenue Account | JPMorgan Chase Bank, N.A. | No report received |
| Restitution Account | M&T Bank | No report received |
| Special Account | Key Bank | No report received |
| US Justice Dept - Shared Forfeiture | Key Bank | No report received |
| US Treas Dept - Shared Forfeiture | Key Bank | No report received |
| **03010 - OFFICE OF THE ATTORNEY GENERAL** | | |
| OCTF - Confidential Fund Checking | JPMorgan Chase Bank, N.A. | No report received |
| OCTF - Confidential Fund Checking | JPMorgan Chase Bank, N.A. | No report received |
| **03020 - MEDICAID FRAUD CONTROL** | | |
| dept atty gen vs john doe | Key Bank | 7,811,596.88 |
| National Global Settlement | JPMorgan Chase Bank, N.A. | 5,186,100.40 |
| NYS Department Of Law Confidential Account | JPMorgan Chase Bank, N.A. | 39,150.00 |
| NYS Department of Law Petty Cash Account | JPMorgan Chase Bank, N.A. | 5,321.07 |
| **04020 - NYS ASSEMBLY** | | |
| Advance For Travel | Bank of America, N.A. | 3,470.00 |
| Petty Cash Account Dist Off | Bank of America, N.A. | 20,013.70 |
| Petty Cash New York City | JPMorgan Chase Bank, N.A. | 701.57 |
| Public Information Office | Key Bank | 0.25 |
| **04030 - ASSEMBLY WAYS & MEANS COMMITTEE** | | |
| Advance For Travel | Key Bank | No report received |
| Petty Cash | Key Bank | No report received |
| **04040 - LEGISLATIVE BILL DRAFTING COMMISSION** | | |
| NY LBDC - Legislative Computer Services Fund | Key Bank | 16,067.28 |
| NYS Leg Bill Drafting Comm-Petty Cash Acct | Key Bank | 1,974.25 |
| **04250 - REAPPORTIONMENT** | | |
| NYS Taskforce On Demo Res & Reapp | JPMorgan Chase Bank, N.A. | No report received |
| **05000 - OFFICE OF COURT ADMINISTRATION** | | |
| Attorney Registration Fees - Revenue | JPMorgan Chase Bank, N.A. | 704,625.00 |

**NYS Register/December 31, 2019**                                                    **Financial Reports**

| | | |
|---|---|---:|
| Criminal Records Search Acct - Revenue | JPMorgan Chase Bank, N.A. | 4,457,770.00 |
| Finger Print Account | JPMorgan Chase Bank, N.A. | 8,021.83 |
| Petty Cash Acct | JPMorgan Chase Bank, N.A. | 500.00 |
| **05005 - OCA OFFICE OF BUDGET & FINANCE** | | |
| Petty Cash Account | Key Bank | 2,500.00 |
| **05008 - LAWYERS FUND FOR CLIENT PROTECTION** | | |
| Client Security Fund - Bail | Key Bank | 1,760,128.38 |
| Lawyers Fund For Client Protection - Bail | Key Bank | 700.48 |
| Petty Cash | Key Bank | 2,870.15 |
| **05071 - COURT OF APPEALS** | | |
| Chief Judge Advance | Key Bank | 65.07 |
| Clerk Of The Court Of Appeals | Key Bank | 3,905.00 |
| **05072 - STATE BOARD OF LAW EXAMINERS** | | |
| State Board Of Law Examiners Fee | Key Bank | 2,245,055.00 |
| **05081 - APPELLATE DIVISION - 1ST JUDICIAL DEPARTMENT** | | |
| 1st Appellate Division Supreme Ct | JPMorgan Chase Bank, N.A. | 67,058.50 |
| **05082 - APPELLATE DIVISION - 2ND JUDICIAL DEPARTMENT** | | |
| Appellate Div 2nd Dept Revenue | JPMorgan Chase Bank, N.A. | No report received |
| **05083 - APPELLATE DIVISION - 3RD JUDICIAL DEPARTMENT** | | |
| Third Dept Civil Fees Acct - Revenue | Key Bank | 28,710.00 |
| **05084 - APPELLATE DIVISION - 4TH JUDICIAL DEPARTMENT** | | |
| 4th Dept Appellate Div Civil Fees - Revenue | JPMorgan Chase Bank, N.A. | 13,307.71 |
| **05090 - COURT OF CLAIMS** | | |
| Court Of Claims Revenue Account | Key Bank | 4,953.80 |
| **05111 - 10TH JUDICIAL DISTRICT NASSAU COUNTY ADMINISTRATION** | | |
| Glen Cove City Court | | |
| Glen Cove City Court Bail | Wells Fargo Bank | 10,155.87 |
| Glen Cove City Court Revenue | Wells Fargo Bank | 42,711.50 |
| Long Beach City Court | | |
| Long Beach City Court Revenue | Wells Fargo Bank | 75,014.60 |
| Long Beach Court Bail | Wells Fargo Bank | 86,225.44 |
| Nassau County Court | | |
| Nassau County Assessment | Wells Fargo Bank | 35,973.57 |
| Nassau District Court - Criminal | | |
| Nassau Dist Ct Criminal Revenue | Wells Fargo Bank | 275,292.65 |
| Nassau District Court-Civil | | |
| Nassau County Dist Ct- Civil Revenue | Wells Fargo Bank | 53,879.60 |
| Nassau Surrogate | | |
| Nassau County Surrogate Court-Revenue | Wells Fargo Bank | 101,729.00 |
| **05112 - 10TH JUDICIAL DISTRICT SUFFOLK COUNTY ADMINISTRATION** | | |
| 10th Judicial District Suffolk County Admin | | |
| Suffolk County Court -Court Fund | People's United Bank | No report received |
| Suffolk County Surrogate | | |
| Surrogate Court Of Suffolk County | People's United Bank | 59,319.00 |
| Suffolk District Court Civil Fees | | |
| Suffolk District Court Civil Fees | Citibank | No report received |
| Suffolk District Court Criminal Fines | | |
| Suffolk County District Court Criminal Fines | Citibank | No report received |
| Suffolk District Court Trust Acct | | |
| Suffolk County District Court Trust Account | Citibank | No report received |
| **05210 - NYC-CIVIL COURT** | | |
| Bronx Civil Court - Civil | | |
| Bronx Civil Court - Revenue | JPMorgan Chase Bank, N.A. | 11,494.10 |
| Harlem Community Justice Court | | |
| Harlem Community Justice - Revenue Account | JPMorgan Chase Bank, N.A. | 4,550.00 |
| Kings Civil Court- Civil | | |
| Kings Civil Court- Civil Revenue | JPMorgan Chase Bank, N.A. | 19,003.50 |
| New York Civil Court - Civil | | |
| New York Civil Court Revenue Acct | JPMorgan Chase Bank, N.A. | 106,764.20 |
| Queens Civil Court - Civil | | |
| Queens Civil - Revenue | JPMorgan Chase Bank, N.A. | 96,346.10 |
| Richmond Civil Court - Civil | | |
| Richmond Civil Ct Revenue Acct | JPMorgan Chase Bank, N.A. | 41,462.80 |
| **05215 - NYC-CRIMINAL COURT** | | |
| Bronx Criminal Court- Criminal  Court | | |
| Bronx Criminal Division- Criminal Bail | JPMorgan Chase Bank, N.A. | No report received |
| Bronx Criminal Court- Criminal Court | | |
| Bronx Criminal Division- Criminal Revenue | JPMorgan Chase Bank, N.A. | No report received |
| Kings County Criminal Court | | |
| Kings Criminal Court | Citibank | No report received |
| New York County Criminal Court | | |
| New York Criminal Court | JPMorgan Chase Bank, N.A. | No report received |
| New York Criminal Court- State Funds | JPMorgan Chase Bank, N.A. | No report received |
| Queens County Criminal Court | | |

**Financial Reports**                                                    *NYS Register/December 31, 2019*

| | | |
|---|---|---|
| Queens Criminal Court | | |
| Queens Criminal Court - State Funds | JPMorgan Chase Bank, N.A. | No report received |
| Richmond County Criminal Court | JPMorgan Chase Bank, N.A. | No report received |
| Richard Criminal Court-City Funds | JPMorgan Chase Bank, N.A. | No report received |
| Richmond Criminal Court-State Funds | JPMorgan Chase Bank, N.A. | No report received |
| **05231 - SUPREME COURT - BRONX COUNTY** | | |
| Bronx County Supreme - NYS OCA | JPMorgan Chase Bank, N.A. | 6,569.00 |
| **05235 - SUPREME COURT - KINGS COUNTY** | | |
| Kings Co Supreme | | |
| Supreme Court Kings County-Revenue | JPMorgan Chase Bank, N.A. | 9,946.09 |
| **05240 - SUPREME COURT - QUEENS COUNTY** | | |
| Queens Co Supreme | | |
| Queens County Supreme Court | JPMorgan Chase Bank, N.A. | 17,020.97 |
| Queens County Supreme Court | JPMorgan Chase Bank, N.A. | 0.00 |
| **05250 - NEW YORK COUNTY CLERK** | | |
| New York Co Clerk Revenue Account | JPMorgan Chase Bank, N.A. | 846,159.27 |
| **05255 - BRONX COUNTY CLERK** | | |
| Bronx County Clerk | | |
| Bronx Cnty Clerk Revenue Acct | JPMorgan Chase Bank, N.A. | 648,552.41 |
| **05260 - KINGS COUNTY CLERK** | | |
| Kings County Clerk | | |
| Kings County Clerk Revenue Account | Flushing Commercial Bank | 1,040,094.85 |
| **05265 - QUEENS COUNTY CLERK** | | |
| Queens County Clerk-Revenue Acct | Sterling Bank | 931,540.51 |
| **05270 - RICHMOND COUNTY CLERK** | | |
| Richmond Co Clerk State Fees Account | JPMorgan Chase Bank, N.A. | 4,877,205.86 |
| Richmond County Clerk DEC | JPMorgan Chase Bank, N.A. | 264.12 |
| **05275 - NEW YORK COUNTY SURROGATES COURT** | | |
| New York Surrogate | | |
| New York Surrogate Court | JPMorgan Chase Bank, N.A. | 49,494.00 |
| **05280 - BRONX COUNTY SURROGATES COURT** | | |
| Bronx Surrogate | | |
| Bronx Surrogate Court Revenue Acct | JPMorgan Chase Bank, N.A. | 13,300.30 |
| **05285 - KINGS COUNTY SURROGATES COURT** | | |
| Kings County Surrogate | | |
| Kings Co. Surrogate Revenue Acct | Bank of America, N.A. | 30,821.00 |
| **05290 - QUEENS COUNTY SURROGATES COURT** | | |
| Queens surrogate | | |
| Queens Co Revenue Acct Surrogate | Signature Bank | 34,866.75 |
| **05295 - RICHMOND COUNTY SURROGATES COURT** | | |
| Richmond County Surrogate Court Revenue Account | Victory State Bank | 10,138.00 |
| **05360 - 3RD JUDICIAL DISTRICT ADMINISTRATION** | | |
| Albany City Court - (Civil) | | |
| Albany City Civil - Revenue | Wells Fargo Bank | 16,082.25 |
| Albany City Court - (Crim-Bail) | | |
| Albany City Criminal - Bail | Wells Fargo Bank | 19,605.23 |
| Albany City Court - (Traffic) | | |
| Albany City Traffic-Revenue | Wells Fargo Bank | 113,334.18 |
| Albany Traffic Court - Bail | Bank of America, N.A. | 0.00 |
| Albany City Court - Civil Part | | |
| Albany City Court Civil - Revenue | Trustco Bank | 0.00 |
| Albany City Court - Crim | | |
| Albany City Court-Crim | Wells Fargo Bank | 7,870.60 |
| Albany City Court - Traffic-Bail | | |
| Albany City Traffic - Bail | Wells Fargo Bank | 1,300.17 |
| Albany County Surrogate | | |
| Albany Cty Surrogates Court - Revenue | Bank of America, N.A. | 5,966.75 |
| Albany Police Court | | |
| Albany Police Court Bail Account | Key Bank | 0.00 |
| Cohoes City Court | | |
| Cohoes City Court Bail | Key Bank | 23,031.10 |
| Cohoes City Court Fees/Fines Account | Key Bank | 13,384.50 |
| Columbia County Surrogate | | |
| Columbia Co Surrogate Ct Fees - Revenue | Key Bank | 12,727.00 |
| Greene Surrogate | | |
| Greene Surrogate-Revenue | Wells Fargo Bank | 5,771.75 |
| Hudson City Court | | |
| Hudson City Bail | Wells Fargo Bank | 26,221.77 |
| Hudson City Court Bail Acct | Trustco Bank | 0.00 |
| Hudson City Court Revenue Acct - Revenue | Trustco Bank | 0.00 |
| Hudson City Revenue | Wells Fargo Bank | 16,388.30 |
| Kingston City Court | | |
| Kingston City Court Bail | Wells Fargo Bank | 7,000.00 |
| Kingston City Court Revenue | Wells Fargo Bank | 30,140.78 |

**NYS Register/December 31, 2019**                                   **Financial Reports**

| | | |
|---|---|---:|
| Rensselaer City Court | | |
|     Rensselaer City Court - Revenue | Key Bank | 4,822.50 |
|     Rensselaer City Court Bail Acct | Key Bank | 3,810.00 |
| Rensselaer County Surrogate | | |
|     Rensselaer Co Surrogate Ct Fees - Revenue | Key Bank | 16,804.00 |
| Schoharie County Surrogate | | |
|     Schoharie Co Surrogates Court - Revenue | Bank of America, N.A. | 2,933.00 |
| Sullivan Surrogate | | |
|     Sullivan Surrogate-Revenue | Wells Fargo Bank | 5,760.00 |
| Troy City Court | | |
|     Troy City Court- Revenue Acct - Revenue | Bank of America, N.A. | 92,852.00 |
|     Troy Police Court Bail Account | Bank of America, N.A. | 31,159.90 |
| Ulster County Surrogate | | |
|     Ulster County Surrogate Court - Revenue | Key Bank | 15,385.25 |
| Watervliet City Court | | |
|     Watervliet Bail | Pioneer Savings Bank | 54,454.00 |
|     Watervliet Revenue | Pioneer Savings Bank | 37,697.80 |
| **05460 - 4TH JUDICIAL DISTRICT ADMINISTRATION** | | |
| Amsterdam City Court | | |
|     Amsterdam City Court - Bail | Key Bank | 83,570.29 |
|     Amsterdam City Court - Revenue | Key Bank | 24,224.63 |
| Clinton County Surrogates | | |
|     Clinton County Surrogates - Revenue | Key Bank | 5,589.00 |
| Essex County Surrogate | | |
|     Essex Co Surrogate Clerk - Revenue | Champlain National | 1,596.50 |
| Franklin County Surrogate | | |
|     Franklin Co Surrogate Court - Revenue | Key Bank | 1,583.00 |
| Fulton County Surrogate | | |
|     Fulton County Surrogate's Court | Key Bank | 1,915.50 |
| Glens Falls City Court | | |
|     Glens Falls City Court Account - Revenue | Glens Falls National | 12,799.20 |
|     Glens Falls City Court Bail Acct | Glens Falls National | 21,981.11 |
| Gloversville City Court | | |
|     Gloversville City Court Bail | NBT Bank | 31,550.00 |
|     Gloversville City Court Revenue | NBT Bank | 9,013.12 |
| Hamilton Surrogate | | |
|     Hamilton Surrogate - Revenue | Community Bank | 86.00 |
| Johnstown City Court | | |
|     City Of Johnstown Bail Account - Bail | Key Bank | 31,129.22 |
|     Johnstown City Court Fines/Fees - Revenue | Key Bank | 7,976.00 |
| Mechanicville City Court | | |
|     Mechanicville City Court Bail | TD Bank | 350.46 |
|     Mechanicville City Ct Revenue Acct | TD Bank | 6,125.50 |
| Montgomery County Surrogate | | |
|     Montgomery County Surrogates Court - Revenue | NBT Bank | 147.00 |
| Ogdensburg City Court | | |
|     Ogdensburg City Court Int Bail | Community Bank | 9,520.08 |
|     Ogdensburg City Court Revenue | Community Bank | 3,228.00 |
| Plattsburgh City Court | | |
|     Plattsburgh City Court - Bail | Glens Falls National | 42,807.02 |
|     State Of NY Plattsburgh City Court - Revenue | Glens Falls National | 13,090.50 |
| Saratoga County Surrogate | | |
|     Saratoga County Surrogate - Revenue | Ballston Spa National Bank | 5,706.75 |
| Saratoga Springs City Court | | |
|     Saratoga Springs Bail Account | The Adirondack Trust Company | 26,427.60 |
|     Saratoga Springs City Revenue Acct | The Adirondack Trust Company | 17,777.60 |
| Schenectady City Court | | |
|     Schenectady City Court- Bail | Bank of America, N.A. | 56,297.56 |
|     Schenectady City Court Revenue | Bank of America, N.A. | 48,046.30 |
| Schenectady Surrogate | | |
|     Schenectady Surrogate Court - Revenue | Key Bank | 4,203.25 |
| St. Lawrence Co Surrogate | | |
|     St. Lawrence County Surrogate - Revenue | Community Bank | 2,479.75 |
| Warren County Surrogate | | |
|     Warren County Surrogate Court - Revenue | TD Bank | 4,010.00 |
| Washington Surrogates | | |
|     Washington Surrogate Revenue | TD Bank | 684.75 |
| **05560 - 5TH JUDICIAL DISTRICT ADMINISTRATION** | | |
| Fulton City Court | | |
|     Fulton City Court Bail Acct | Key Bank | 7,256.39 |
|     Fulton City Court Revenue | Key Bank | 11,289.50 |
| Herkimer Surrogate | | |
|     Herkimer Surrogate - Revenue | Partners Trust | 727.00 |
| Jefferson Surrogates | | |

**Financial Reports**                                                    *NYS Register/December 31, 2019*

| | | |
|---|---|---:|
| Jefferson Co Surrogate Revenue | Key Bank | 6,434.50 |
| Lewis County | | |
| Lewis County Clerk | Community Bank | 13,286.00 |
| Lewis County Surrogates | | |
| Lewis County Surrogate Court - Revenue | Key Bank | 1,588.00 |
| Little Falls City Court | | |
| Little Falls City Court Bail | Bank of America, N.A. | 6,000.00 |
| Little Falls City Court Revenue | M&T Bank | 3,982.10 |
| Oneida County Combined | | |
| Oneida County Combined Court | Adirondack Bank | 9,097.11 |
| Oneida County Surrogates | | |
| Oneida County Surrogate Court Revenue | The Adirondack Trust Company | 13,366.75 |
| Onondaga County Surrogates | | |
| Onondaga Surrogate Court - Revenue | Alliance Bank | 11,082.00 |
| Oswego City Court | | |
| Oswego City Court Bail Acct | JPMorgan Chase Bank, N.A. | 18,607.77 |
| Oswego City Court Revenue | JPMorgan Chase Bank, N.A. | 19,108.45 |
| Oswego Surrogate Court | | |
| Oswego County Surrogate Court - Revenue | Key Bank | 1,325.50 |
| Rome City Court | | |
| City Court Of Rome Bail Account - Bail | Bank of America, N.A. | 17,886.25 |
| Rome City Court - Revenue | Bank of America, N.A. | 44,809.50 |
| Sherrill City Court | | |
| Sherrill City Court 5th Jud Dist - Bail | Alliance Bank | 0.00 |
| Sherrill City Court Fees - Revenue | Alliance Bank | 720.00 |
| Syracuse City Court | | |
| Syracuse City Court - Bail | Alliance Bank | 175,750.00 |
| Syracuse City Court - Fees - Revenue | Alliance Bank | 51,049.90 |
| Utica City Court | | |
| Utica City Court Criminal Bail | Bank of Utica | 50,250.50 |
| Utica City Court Revenue Account | Key Bank | 48,500.10 |
| Watertown City Court | | |
| Watertown City Court Bail | Key Bank | 64,697.00 |
| Watertown City Court Fees & Fines - Revenue | Key Bank | 16,440.65 |
| **05661 - 6TH JUDICIAL DISTRICT ADMINISTRATION** | | |
| Binghamton City Court | | |
| Binghamton City Court Bail | M&T Bank | 65,800.00 |
| Binghamton City Court Revenue | M&T Bank | 38,778.36 |
| Broome Surrogates | | |
| SNY UCS Broome County Surrogates Court | Wells Fargo Bank | 3,960.25 |
| Chemung County Surrogates | | |
| SNY UCS Chemung County Surrogates Court | Wells Fargo Bank | 2,205.25 |
| Chenango County Surrogates | | |
| SNY UCS Chenango County Surrogates Court | Wells Fargo Bank | 924.25 |
| Cortland City Court | | |
| Court City Court Bail | NBT Bank | 22,885.38 |
| Court City Court- Revenue | NBT Bank | 10,927.00 |
| Cortland County Surrogates | | |
| SNY UCS Cortland County Surrogates Court | Wells Fargo Bank | 1,249.00 |
| Delaware County Surrogates | | |
| Delaware County Surrogate - Revenue | Delaware National Bank | 2,657.25 |
| Elmira City Court | | |
| Elmira City Court - Revenue Account | Chemung Canal Trust | 20,520.07 |
| Elmira City Court Bail | Chemung Canal Trust | 30,115.74 |
| Ithaca City Court | | |
| Ithaca City Court | Tompkins County Trust | 10,270.00 |
| Ithaca City Court Revenue | Tompkins County Trust | 13,393.20 |
| Madison County Surrogates | | |
| SNY UCS Madison County Surrogates Court | Wells Fargo Bank | 362.00 |
| Norwich City Court | | |
| Norwich City Court Bail Acct | NBT Bank | 14,500.00 |
| Norwich City Court Revenue Acct | NBT Bank | 3,889.50 |
| Oneida City Court | | |
| Oneida City Court Bail Account | JPMorgan Chase Bank, N.A. | 8,995.00 |
| Oneida City Court Fee & Fine - Revenue | JPMorgan Chase Bank, N.A. | 14,865.50 |
| Oneonta City Court | | |
| Oneonta City Court - Revenue | Community Bank | 7,755.50 |
| Oneonta City Court Bail Account | Community Bank | 10,100.00 |
| Otsego County Surrogates | | |
| Otsego County Surrogates Court - Revenue | Key Bank | 1,554.00 |
| Schuyler County Surrogates | | |
| Schuyler County Surrogates Court | Community Bank | 836.00 |
| Tioga County Surrogates | | |
| Tioga Surrogates Court - Revenue | M&T Bank | 1,174.25 |

**NYS Register/December 31, 2019**                                    **Financial Reports**

| | | |
|---|---|---|
| Tompkins County Surrogates | | |
| SNY UCS Tompkins County Surrogates Court | Wells Fargo Bank | 1,720.00 |
| **05761 - 7TH JUDICIAL DISTRICT ADMINISTRATION** | | |
| Auburn City Court | | |
| Auburn City Court Bail Acct | Key Bank | 32,681.55 |
| Auburn City Court Fees & Fines - Revenue | Key Bank | 19,506.21 |
| Canandaigua City Court | | |
| Canandaigua City Court Bail Acct | Canandaigua National Bank | 39,323.05 |
| Canandaigua City Court Revenue | Canandaigua National Bank | 17,492.50 |
| Cayuga County Surrogates | | |
| Cayuga Surrogate Court | Wells Fargo Bank | 1,445.00 |
| Corning City Court | | |
| Corning City Court - Bail | Wells Fargo Bank | 8,716.12 |
| Corning City Court - Revenue | Wells Fargo Bank | 7,333.75 |
| Geneva City Court | | |
| Geneva City Court Bail Account | Wells Fargo Bank | 30,674.81 |
| Geneva City Court Revenue Account | Wells Fargo Bank | 19,648.50 |
| Hornell City Court | | |
| Hornell City Court Bail Account | Steuben Trust Co. | 14,911.14 |
| Hornell City Court Revenue | Steuben Trust Co. | 4,638.00 |
| Livingston County Surrogates | | |
| Livingston Surrogate Court | Wells Fargo Bank | 886.00 |
| Monroe County Surrogates | | |
| 7th District Monroe Surrogate | Wells Fargo Bank | 13,597.00 |
| Ontario County Surrogates | | |
| Ontario Surrogate Court | Wells Fargo Bank | 2,598.00 |
| Rochester City Court | | |
| Rochester City Court Bail Account | M&T Bank | 352,578.11 |
| Rochester City Revenue | M&T Bank | 36,537.55 |
| Seneca County Surrogates | | |
| Seneca Surrogate Court | Wells Fargo Bank | 317.00 |
| Steuben County Surrogates | | |
| 7th District Steuben Surrogate | Wells Fargo Bank | 4,401.00 |
| Wayne County Surrogates | | |
| Wayne Surrogate Court | Wells Fargo Bank | 767.00 |
| Yates County Surrogates | | |
| Yates Surrogate Court | Wells Fargo Bank | 1,477.00 |
| **05860 - 8TH JUDICIAL DISTRICT ADMINISTRATION** | | |
| Allegany County Surrogates Court | | |
| ST of NY Office of the State Comptroller State of New York Unified Courts Allegany Surrogate Court | Wells Fargo Bank | No report received |
| Batavia City Court | | |
| Batavia City Bail Account | M&T Bank | No report received |
| Batavia City Court Revenue | M&T Bank | No report received |
| Buffalo City Court | | |
| Buffalo City Bail Account | M&T Bank | No report received |
| ST of NY OFFICE OF THE STATE COMPTROLLER BUFFALO CITY COURT BAIL ACCOUNT | Wells Fargo Bank | No report received |
| ST of NY OFFICE OF THE STATE COMPTROLLER BUFFALO CITY COURT REVENUE ACCOUNT | Wells Fargo Bank | No report received |
| Cattaraugus County Surrogates | | |
| ST of NY Office of the State Comptroller State of New York Unified Courts Cattaraugus Surrogate Court | Wells Fargo Bank | No report received |
| Chautauqua County Surrogates Court | | |
| ST of NY Office of the State Comptroller State of New York Unified Courts Chautauqua Surrogate Court | Wells Fargo Bank | No report received |
| Dunkirk City Court | | |
| Dunkirk City - Revenue | Key Bank | No report received |
| ST of NY Office of The State Comptroller Dunkirk Bail Account | Wells Fargo Bank | No report received |
| ST of NY Office of The State Comptroller Dunkirk Revenue Account | Wells Fargo Bank | No report received |
| Erie - Buffalo County Law Library | | |
| Sur Ct Lib At Buffalo - Revenue | M&T Bank | No report received |
| Erie County Surrogates | | |
| ST of NY Office of the State Comptroller State of New York Unified Courts Erie Surrogate Court | Wells Fargo Bank | No report received |
| Genesee County Surrogates | | |
| ST of NY Office of the State Comptroller State of New York Unified Courts Genesee Surrogate Court | Wells Fargo Bank | No report received |
| Jamestown City Court | | |
| State of New York Office of Court Administration Jamestown City Court Bail | Key Bank | No report received |
| State of New York Office of Court Administration Jamestown City Court Revenue | Key Bank | No report received |
| Lackawanna City Court | | |
| Lackawanna City Court Bail Account | Key Bank | No report received |
| Lackawanna City Court Revenue Account | Key Bank | No report received |
| Lockport City Court | | |
| Lockport City - Bail | Key Bank | No report received |
| Lockport City HESC EFT Account - Revenue | Key Bank | No report received |
| Niagara City Court | | |
| Niagara Falls Bail Bond Account | M&T Bank | No report received |
| Niagara City Court - Criminal | | |
| City Court Of Niagara Falls Criminal - Revenue | M&T Bank | No report received |

**Financial Reports**                                        *NYS Register/December 31, 2019*

| | | |
|---|---|---|
| Niagara County Surrogates | | |
| ST of NY Office of the State Comptroller State of New York Unified Courts Niagara Surrogate Court | Wells Fargo Bank | No report received |
| Niagara Falls City Court | | |
| ST of NY OFFICE OF THE STATE COMPTROLLER NIAGARA FALLS BAIL ACCOUNT | Wells Fargo Bank | No report received |
| ST of NY OFFICE OF THE STATE COMPTROLLER NIAGARA FALLS REVENUE ACCOUNT | Wells Fargo Bank | No report received |
| No. Tonawanda City Court | | |
| N. Tonawanda City Court Bail | M&T Bank | No report received |
| N. Tonawanda City Court Revenue | M&T Bank | No report received |
| Olean City Court | | |
| Olean City Court Bail Account | Community Bank | No report received |
| Olean City Court Revenue Account | Community Bank | No report received |
| Orleans County Surrogates | | |
| ST of NY Office of The State Comptroller State of New York Unified Courts Orleans Surrogate Court | Wells Fargo Bank | No report received |
| Salamanca City Court | | |
| Salamanca City Court Bail | Community Bank | No report received |
| Salamanca City Court City Judge – Revenue | Community Bank | No report received |
| Tonawanda City Court | | |
| ST of NY Office of The State Comptroller Tonawanda City Court Bail | Wells Fargo Bank | No report received |
| ST of NY Office of The State Comptroller Tonawanda City Court Revenue | Wells Fargo Bank | No report received |
| Tonawanda City Court Bail | M&T Bank | No report received |
| Tonawanda City Court Revenue | M&T Bank | No report received |
| Wyoming County Surrogates | | |
| ST of NY Office of the State Comptroller State of New York Unified Courts Wyoming Surrogate Court | Wells Fargo Bank | No report received |
| **05960 - 9TH JUDICIAL DISTRICT ADMINISTRATION** | | |
| Beacon City Court | | |
| Beacon City Court Bail Account - Bail | JPMorgan Chase Bank, N.A. | 16,020.05 |
| Beacon City Fines Account - Revenue | JPMorgan Chase Bank, N.A. | 9,546.00 |
| Dutchess County Surrogates Court | | |
| Dutchess County Surrogate Court – Revenue | JPMorgan Chase Bank, N.A. | 43,219.00 |
| Middletown City Court | | |
| Middletown City Bail Escrow - Bail | JPMorgan Chase Bank, N.A. | 124,404.24 |
| Middletown City Court Revenue | JPMorgan Chase Bank, N.A. | 44,153.85 |
| Mt Vernon City Court | | |
| Mt Vernon City Court State Bail | Wells Fargo Bank | 155,424.92 |
| Mt Vernon City Court State Revenue | Wells Fargo Bank | 122,308.70 |
| New Rochelle City Court | | |
| New Rochelle City Court Bail | JPMorgan Chase Bank, N.A. | 305,732.78 |
| New Rochelle City Court Revenue | JPMorgan Chase Bank, N.A. | 82,019.68 |
| Newburgh City Court | | |
| Newburgh Bail Account | Wells Fargo Bank | 27,600.38 |
| Newburgh City Court Revenue | Wells Fargo Bank | 17,524.50 |
| Orange County Surrogates Court | | |
| Orange Co Surrogates Court - Revenue | JPMorgan Chase Bank, N.A. | 13,004.25 |
| Peekskill City  Court | | |
| Peekskill City Court Revenue | JPMorgan Chase Bank, N.A. | 58,951.54 |
| Peekskill City Court | | |
| Peekskill City Court - Bail | JPMorgan Chase Bank, N.A. | 17,808.53 |
| Port Jervis City Court | | |
| Port Jervis Bail Account - Bail | JPMorgan Chase Bank, N.A. | 94,586.54 |
| Port Jervis Revenue Account – Revenue | JPMorgan Chase Bank, N.A. | 13,407.45 |
| Poughkeepsie | | |
| Poughkeepsie City Court -Bail | Wells Fargo Bank | 124,937.98 |
| Poughkeepsie City Court -Revenue | Wells Fargo Bank | 83,658.31 |
| Putnam Co Surrogate's Court | | |
| Putnam Co Surrogates Court | Putnam County National Bank | 15,280.50 |
| Rockland County Surrogates Court | | |
| Rockland Co Surrogates Court - Revenue | JPMorgan Chase Bank, N.A. | 6,404.00 |
| Rye City Court | | |
| City Of Rye Bail Account | JPMorgan Chase Bank, N.A. | 8,371.59 |
| City Of Rye Fines And Fees - Revenue | JPMorgan Chase Bank, N.A. | 37,478.89 |
| Westchester County Surrogates Court | | |
| Westchester Co Surrogates Fees - Revenue | JPMorgan Chase Bank, N.A. | 87,778.25 |
| White Plains City Court | | |
| White Plains City Court Bail Account | Sterling Bank | 82,884.97 |
| White Plains City Court Vehicle And Traffic Acct – Revenue | Sterling Bank | 147,892.03 |
| Yonkers City Court | | |
| Yonkers City Bail Account - Bail | Wells Fargo Bank | 346,923.68 |
| Yonkers City Revenue Account – Revenue | Wells Fargo Bank | 101,495.25 |
| **06000 - AGRICULTURE & MARKETS** | | |
| Administration Account | Key Bank | 63,709.42 |
| Agency Advance Account | Key Bank | 10,000.00 |
| Agriculture Producers Sec Fund | Key Bank | 11,412.00 |
| Animal Population Control Account | Key Bank | 43,170.53 |
| Apple Marketing Order Fund | Key Bank | 0.00 |

**NYS Register/December 31, 2019**                                                            **Financial Reports**

| | | |
|---|---|---|
| Consumer Food Industry Account | Key Bank | 13,237.34 |
| Dairy Industry Services Account | Key Bank | 30,670.86 |
| Dairy Promotion Order Fund | Key Bank | 0.00 |
| Farm Products Grading | JPMorgan Chase Bank, N.A. | 0.00 |
| Milk Producers Security Fund | Key Bank | 1,344.76 |
| NYS Farmers Market Program | Key Bank | (98,723.88) |
| NYS WNY Milk Mktg Area Administration Fund | M&T Bank | 118.65 |
| NYS WNY Milk Mktg Area Equalization Fund | M&T Bank | 7,505.02 |
| NYS WNY Milk Mktg Area Equalization Fund Savings | M&T Bank | 319.15 |
| Onion Marketing Order | Key Bank | 0.00 |
| Plants Industry Account | Key Bank | 37,798.51 |
| Pride of NY | Key Bank | 6,266.98 |
| Sour Cherry Marketing Fund | Key Bank | 0.00 |
| State Fair Premium Award Account | Solvay Bank | 0.00 |
| Weights & Measures Account | Key Bank | 7,464.43 |
| NYS Dept Agriculture & Markets | | |
| Apple Marketing Order Fund | Key Bank | 0.00 |
| Dairy Promotion Order Fund | Key Bank | 0.00 |
| Farm Products | Key Bank | 1,109.65 |
| State Fair | | |
| NYS Fair Operating Account | Solvay Bank | 35,583.93 |
| NYS Fair Petty Cash/Travel | Solvay Bank | 1,415.52 |
| NYS Fair Special Account | Solvay Bank | 231.17 |
| State Fair Premium Award Account | Solvay Bank | 0.00 |
| **08000 - DEPARTMENT OF CIVIL SERVICE** | | |
| Agency Advance Account | Bank of America, N.A. | 3,000.00 |
| Examination Application Fees Account | Bank of America, N.A. | 8,863.00 |
| Examination Application Fees Account | Key Bank | 15,685.00 |
| NYS Affirmative Action Advisory Account | Bank of America, N.A. | 5,141.90 |
| NYS Department of Civil Service | US Bank | 68,314,581.00 |
| **08010 - PUBLIC EMPLOYEE RELATIONS BOARD** | | |
| Petty Cash And Travel Advance Account | Key Bank | 1,245.10 |
| **09000 - DEPARTMENT OF ENVIRONMENTAL CONSERVATION** | | |
| Albany | | |
| Asharoken Feasibility Study | JPMorgan Chase Bank, N.A. | 34,214.83 |
| Bayville Feasibility Study | JPMorgan Chase Bank, N.A. | 493,272.82 |
| Conservation Petty Cash Account | M&T Bank | 29,800.00 |
| DEC/Exchange Account | M&T Bank | 14,983.53 |
| ENCON License Issuing Office | M&T Bank | 1,080.50 |
| ENCON/Montauk Point Feasibility Study | JPMorgan Chase Bank, N.A. | 7,196.68 |
| ENCON/South Shore Of Staten Island | JPMorgan Chase Bank, N.A. | 22,893.21 |
| Harbor Drift Removal Proj | JPMorgan Chase Bank, N.A. | 1,560,323.82 |
| Hunting Trapping & Fishing Account | M&T Bank | 32,727.50 |
| Lake Montauk Harbor | JPMorgan Chase Bank, N.A. | 156,003.11 |
| Lockbox Account | Wells Fargo Bank | 80,478.92 |
| Mattituck Inlet | JPMorgan Chase Bank, N.A. | 1,327.55 |
| NY Conservationist | Bank of America, N.A. | 82,807.07 |
| Program Fee | JPMorgan Chase Bank, N.A. | 16,960.08 |
| Revenue Account | Bank of America, N.A. | 1,569,661.62 |
| Rockaway Beach Study & Project | JPMorgan Chase Bank, N.A. | 1,263,807.60 |
| State of New York | Key Bank | 115,152.35 |
| US Army Coe - Moriches Project | JPMorgan Chase Bank, N.A. | 11,154.19 |
| Region 1 | | |
| Marine Permit Account | Bank of Smithtown | 71,065.35 |
| Region 3 | | |
| Beaverkill & Mongaup Pond | Jeff Bank | 0.00 |
| Revenue Region 3 Account | Bank of America, N.A. | 0.00 |
| Region 4 | | |
| Bear Spring Revenue Account | National Bank of Delaware | 200.00 |
| Region 4 | Greene County Commercial Bank | 21,737.28 |
| Region 4 Camping | NBT Bank | 1,830.40 |
| Region 5 | | |
| Campsite Revenue Account | Glens Falls National | 56,931.81 |
| Land & Forest Region 5W | TD Bank | 30,135.04 |
| NYS Conservation | Glens Falls National | 1.00 |
| Recreation (Warrensburg) | City National Bank & Trust | 1,243.75 |
| Region 5 | Citizens Bank | 38.03 |
| Region 5 | NBT Bank | 70,019.02 |
| Tree Nursery | Bank of America, N.A. | 311.00 |
| Region 6 | | |
| Fish & Wildlife Watertown | Key Bank | 121.92 |
| Lands & Forest District #7 | Community Bank | 0.00 |
| Lands & Forests District #6 | Community Bank | 50.00 |
| Lands And Forests District 10 | M&T Bank | 21.20 |

**121**

**Financial Reports**                                    *NYS Register/December 31, 2019*

| | | |
|---|---|---:|
| SNY Dept Of Environmental Conserv | Community Bank | 14.04 |
| **10000 - ATTICA CORRECTIONAL FACILITY** | | |
| Agency Advance Account | Five Star Bank | 1,686.51 |
| CD Spendable | Five Star Bank | 220,000.00 |
| Employee Benefit Fund | Five Star Bank | 12,949.86 |
| General Cash Fund | Five Star Bank | 9,212.53 |
| Inmate Occupational Therapy Fund | Five Star Bank | 100,067.39 |
| Inmate Savings Account | Five Star Bank | 254,295.19 |
| Spendable Fund | Five Star Bank | 156,198.16 |
| **10010 - AUBURN CORRECTIONAL FACILITY** | | |
| Advance Account | Key Bank | 3,181.49 |
| Certificate of Deposit | Bank of America, N.A. | 90,000.00 |
| Certificate of Deposit | Bank of America, N.A. | 15,000.00 |
| Inmate Occupational Therapy Fund | Key Bank | 27,846.89 |
| Inmate Spendable Account | Bank of America, N.A. | 0.00 |
| Inmate Spendable Account | Key Bank | 101,759.80 |
| Inmate Spendable Savings CD | Key Bank | 252,443.84 |
| Misc Revenue | Key Bank | 44,518.97 |
| Money Market | Bank of America, N.A. | 0.19 |
| **10020 - CLINTON CORRECTIONAL FACILITY** | | |
| Advance Account | Key Bank | No report received |
| Employee Benefit Fund | Key Bank | No report received |
| General Fund | Key Bank | No report received |
| Inmate Funds | Key Bank | No report received |
| Inmate Funds Money Market Account | Key Bank | No report received |
| Inmate Occupational Therapy Acct | Key Bank | No report received |
| **10030 - WATERTOWN CORRECTIONAL FACILITY** | | |
| Agency Advance Account | Key Bank | 1,954.65 |
| Inmate Occupational Therapy Fund | Key Bank | 19,387.04 |
| Inmate Spendable Funds | Key Bank | 37,469.63 |
| Inmate Spendable Savings Account | Key Bank | 60,634.76 |
| Miscellaneous Receipts | Key Bank | 13,456.11 |
| **10040 - GREAT MEADOW CORRECTIONAL FACILITY** | | |
| Certificate of Deposit | Glens Falls National | 150,000.00 |
| Certificate of Deposit | Glens Falls National | 100,000.00 |
| Certificate of Deposit | Glens Falls National | 25,000.00 |
| Facility Advance | Key Bank | 4,638.27 |
| General Fund | Key Bank | 0.00 |
| Inmate Fund | Key Bank | 195,294.01 |
| Inmate Fund Savings Account | Glens Falls National | 52,500.00 |
| Miscellaneous Account | Key Bank | 16,616.31 |
| Occupational Therapy | Key Bank | 21,876.82 |
| **10050 - FISHKILL CORRECTIONAL FACILITY** | | |
| Agency Advance | M&T Bank | No report received |
| Employee Benefits | M&T Bank | No report received |
| Inmate Spending Account | M&T Bank | No report received |
| Inmates Account | M&T Bank | No report received |
| Inmates Benefit | M&T Bank | No report received |
| Misc Receipts | M&T Bank | No report received |
| Occupational Therapy Account | M&T Bank | No report received |
| **10060 - WALLKILL CORRECTIONAL FACILITY** | | |
| Advance Account | Key Bank | 1,413.89 |
| Employee Benefit | Key Bank | 964.27 |
| Inmate Occupational Therapy Fund | Key Bank | 43,817.70 |
| Inmate Savings Account | Key Bank | 88,119.43 |
| Inmates Fund Account | Key Bank | 111,960.90 |
| Misc. Receipts | Key Bank | 25,925.37 |
| **10070 - SING SING CORRECTIONAL FACILITY** | | |
| Cash Advance | JPMorgan Chase Bank, N.A. | No report received |
| Inmate Funds | JPMorgan Chase Bank, N.A. | No report received |
| Inmate Interest Funds | JPMorgan Chase Bank, N.A. | No report received |
| Misc Receipts | JPMorgan Chase Bank, N.A. | No report received |
| Occupational Therapy | JPMorgan Chase Bank, N.A. | No report received |
| Quality Work Life | JPMorgan Chase Bank, N.A. | No report received |
| **10080 - GREEN HAVEN CORRECTIONAL FACILITY** | | |
| Advance Account | Key Bank | 1,685.04 |
| General Fund | Key Bank | 15,673.98 |
| Inmates Money Market | Key Bank | 287,641.50 |
| Inmates Now Checking | Key Bank | 619,816.09 |
| Occupational Therapy Fund | Key Bank | 124,381.42 |
| **10090 - ALBION CORRECTIONAL FACILITY** | | |
| Albion Advance Account | Bank of America, N.A. | 4,348.21 |
| Employee Benefit Fund | Bank of America, N.A. | 11,302.68 |
| Inmate Funds | Bank of America, N.A. | 72,742.21 |

**NYS Register/December 31, 2019**                                          **Financial Reports**

|  |  |  |
|---|---|---|
| Inmate Funds Savings | Bank of America, N.A. | 153,994.72 |
| Misc Receipts | Bank of America, N.A. | 11,505.91 |
| Occupational Therapy | Bank of America, N.A. | 28,567.19 |
| **10100 - EASTERN NEW YORK CORRECTIONAL FACILITY** |  |  |
| Agency Advance Account | Sterling Bank | 247.71 |
| Employee Benefit Fund | Sterling Bank | 13,745.97 |
| ID Now 3 Month CD | M&T Bank | 50,102.55 |
| Inmate Deposit Now Account | Sterling Bank | 541,505.36 |
| Inmate Occupational Therapy Account | Sterling Bank | 29,573.25 |
| Misc. Receipts | Sterling Bank | 6,122.24 |
| **10110 - ELMIRA CORRECTIONAL & RECEPTION CENTER** |  |  |
| Agency Advance Account | Chemung Canal Trust | No report received |
| Employee Benefit Fund | Chemung Canal Trust | No report received |
| Inmate CD Account | M&T Bank | No report received |
| Inmates Fund | Chemung Canal Trust | No report received |
| Miscellaneous Receipts | Chemung Canal Trust | No report received |
| Occupational Therapy Fund | Chemung Canal Trust | No report received |
| **10120 - BEDFORD HILLS CORRECTIONAL FACILITY** |  |  |
| Advance Account | JPMorgan Chase Bank, N.A. | 4,715.95 |
| Employee Benefit Fund | JPMorgan Chase Bank, N.A. | 12,645.87 |
| Inmate Funds | JPMorgan Chase Bank, N.A. | 153,482.63 |
| Inmate Funds CD | JPMorgan Chase Bank, N.A. | 90,000.00 |
| Inmate Funds Money Market | JPMorgan Chase Bank, N.A. | 22,545.51 |
| Misc. Receipts | JPMorgan Chase Bank, N.A. | 1,567.62 |
| Occupational Therapy | JPMorgan Chase Bank, N.A. | 50,771.65 |
| **10130 - COXSACKIE CORRECTIONAL FACILITY** |  |  |
| Agency Advance Account | National Bank of Coxsackie | 874.97 |
| Employee Benefits Fund | National Bank of Coxsackie | 6,537.01 |
| Inmates Fund | National Bank of Coxsackie | 77,538.71 |
| Inmates Fund Savings Acct | National Bank of Coxsackie | 23,673.78 |
| Misc. Revenue | National Bank of Coxsackie | 5,867.76 |
| Money Market Acct | National Bank of Coxsackie | 160,748.64 |
| Occupational Therapy Acct | National Bank of Coxsackie | 13,652.90 |
| **10140 - WOODBOURNE CORRECTIONAL FACILITY** |  |  |
| CD - Inmate Funds | First National Bank of Jeffersonville | 50,000.00 |
| CD - Inmate Funds | First National Bank of Jeffersonville | 190,000.00 |
| WCF Agency Advance | Jeff Bank | 1,533.22 |
| WCF General Fund | Jeff Bank | 8,040.37 |
| WCF Inmate Fund | Jeff Bank | 156,213.27 |
| WCF Occupational Therapy Fund | Jeff Bank | 26,491.40 |
| **10160 - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION** |  |  |
| Agency Advance Account | Key Bank | 21,049.62 |
| Employee Benefit Fund | Key Bank | 22,854.12 |
| Inmate Escrow Account | Key Bank | 469,237.28 |
| Misc. Receipts Account | Key Bank | 29,199.67 |
| Special Account | Key Bank | 1,300.00 |
| **10170 - QUEENSBORO CORRECTIONAL FACILITY** |  |  |
| Agency Advance Account | JPMorgan Chase Bank, N.A. | 4,888.85 |
| Employee Benefit Fund | JPMorgan Chase Bank, N.A. | 7,789.85 |
| Inmate Fund& Account | JPMorgan Chase Bank, N.A. | 456,018.74 |
| Miscellaneous Receipts Account | JPMorgan Chase Bank, N.A. | 670.04 |
| Occupational Therapy Fund | JPMorgan Chase Bank, N.A. | 2,308.14 |
| Savings Account | JPMorgan Chase Bank, N.A. | 15,617.54 |
| **10230 - ADIRONDACK CORRECTIONAL FACILITY** |  |  |
| ADK QWL | Community Bank | 8,471.95 |
| Agency Advance | Community Bank | 790.00 |
| Diversity Management | Community Bank | 493.07 |
| Employee Benefit Fund | Community Bank | 5,542.39 |
| General Fund | Community Bank | 116.87 |
| Inmate Funds | Community Bank | 1,996.21 |
| Inmate Occupational Therapy Fund | Community Bank | 7,717.74 |
| Inmate Savings Money Market | Community Bank | 0.00 |
| Make A Difference Day | Community Bank | 0.00 |
| **10240 - DOWNSTATE CORRECTIONAL FACILITY** |  |  |
| Agency Advance | JPMorgan Chase Bank, N.A. | 1,601.41 |
| Employee Recreational Funds | JPMorgan Chase Bank, N.A. | 15,242.93 |
| Inmate Fund | JPMorgan Chase Bank, N.A. | 396,242.61 |
| Inmates Funds Savings | JPMorgan Chase Bank, N.A. | 80,334.75 |
| Misc. Receipts | JPMorgan Chase Bank, N.A. | 8,337.92 |
| Occupational Therapy | JPMorgan Chase Bank, N.A. | 100,492.99 |
| **10250 - TACONIC CORRECTIONAL FACILITY** |  |  |
| Inmate Funds | JPMorgan Chase Bank, N.A. | 109,177.01 |
| Misc. Revenue | JPMorgan Chase Bank, N.A. | 2,912.29 |
| Money Market | JPMorgan Chase Bank, N.A. | 30,941.12 |

**Financial Reports**                                        *NYS Register/December 31, 2019*

|  |  |  |
|---|---|---|
| Occupational Therapy Fund | JPMorgan Chase Bank, N.A. | 16,723.07 |
| Taconic Advance Account | JPMorgan Chase Bank, N.A. | 3,200.00 |
| **10270 - HUDSON CORRECTIONAL FACILITY** | | |
| Advance Account | Key Bank | 1,934.89 |
| Employee Benefit Fund Account | Key Bank | 11,044.86 |
| Inmate Funds Account | Key Bank | 117,901.49 |
| Inmate Key Advantage Account | Key Bank | 50,326.43 |
| Inmate Occupational Therapy Account | Key Bank | 9,223.06 |
| Miscellaneous Receipts Account | Key Bank | 3,781.62 |
| **10290 - OTISVILLE CORRECTIONAL FACILITY** | | |
| Cash Advance | Jeff Bank | 988.52 |
| General Fund | Jeff Bank | 2,270.88 |
| Inmate Funds | Jeff Bank | 166,034.14 |
| Inmate Occupational Therapy | Jeff Bank | 32,249.13 |
| Inmate Savings | Jeff Bank | 51,317.71 |
| Inmate Savings CD | Hometown Bank | 77,563.68 |
| **10300 - ROCHESTER CORRECTIONAL FACILITY** | | |
| Consolidated Advance Account | M&T Bank | 1,174.56 |
| Employee Recreation Fund | M&T Bank | 1,040.61 |
| Inmate Deposit Account | M&T Bank | 154,510.14 |
| Inmate Occupational Therapy | M&T Bank | 35.98 |
| Misc Fees | M&T Bank | 1,353.65 |
| Work Release Advance Account | M&T Bank | 5,767.00 |
| **10320 - EDGECOMBE CORRECTIONAL FACILITY** | | |
| Agency Advance | JPMorgan Chase Bank, N.A. | 128.98 |
| Employee Benefit Account | JPMorgan Chase Bank, N.A. | 1,974.56 |
| Inmate Cash Account | JPMorgan Chase Bank, N.A. | 71,485.32 |
| Misc. Receipts Account | JPMorgan Chase Bank, N.A. | 0.00 |
| Occupational Therapy Acct | JPMorgan Chase Bank, N.A. | 2,000.95 |
| Work Release Account | JPMorgan Chase Bank, N.A. | No report received |
| **10350 - OGDENSBURG CORRECTIONAL FACILITY** | | |
| Agency Advance Account | Community Bank | 3,000.00 |
| EBF | Community Bank | 8,316.13 |
| Inmate Fund | Community Bank | 62,939.73 |
| Inmate Savings | Community Bank | 45,224.99 |
| Misc. Receipts | Community Bank | 134.40 |
| Occupational Therapy | Community Bank | 16,880.35 |
| **10370 - FIVE POINTS CORRECTIONAL FACILITY** | | |
| Consolidated Advance | Five Star Bank | 1,050.41 |
| EBF Checking | Five Star Bank | 34,976.60 |
| EBF Savings | Five Star Bank | 31,757.56 |
| Inmate Savings | Five Star Bank | 257,892.42 |
| Inmate Spendable | Five Star Bank | 201,468.97 |
| Misc Receipts | Five Star Bank | 1,193.36 |
| Occupational Therapy | Five Star Bank | 28,395.43 |
| **10390 - MOHAWK CORRECTIONAL FACILITY** | | |
| Agency Advance | Key Bank | 2,649.76 |
| Employee Benefit Fund Checking | Bank of America, N.A. | 23,065.40 |
| Inmate Funds Checking | Key Bank | 392,937.53 |
| Inmate Funds Savings | Key Bank | 314,281.24 |
| Miscellaneous Revenue | Key Bank | 119.58 |
| Occupational Therapy | Key Bank | 26,857.33 |
| **10430 - WENDE CORRECTIONAL FACILITY** | | |
| Consolidated Advance | Alden State Bank | 3,850.00 |
| Employee Benefit Account | Alden State Bank | 34,145.21 |
| Inmate Savings | Alden State Bank | 196,682.81 |
| Inmates Funds | Alden State Bank | 114,678.76 |
| Misc. Receipts | Alden State Bank | 6,626.57 |
| Occupational Therapy | Alden State Bank | 57,926.80 |
| **10441 - DEPARTMENT OF CORRECTIONAL SERVICES-FOOD PRODUCTION CENTER** | | |
| Office of Nutritional Services | | |
| Miscellaneous Receipts | Key Bank | 12,546.12 |
| **10450 - GOWANDA CORRECTIONAL FACILITY** | | |
| Advance Account | Community Bank | 2,054.20 |
| Employee Benefit Fund | Community Bank | 15,293.85 |
| Inmate Funds | Community Bank | 120,720.51 |
| Inmate Funds Savings | Community Bank | 259,735.20 |
| Miscellaneous Revenue | Community Bank | 6,903.05 |
| Occupational Therapy | Community Bank | 21,771.26 |
| **10460 - GROVELAND CORRECTIONAL FACILITY** | | |
| Agency Advance Account | Five Star Bank | 1,705.21 |
| Employee Commission Account | Five Star Bank | 15,264.46 |
| Inmate Funds Account | Five Star Bank | 117,796.18 |
| Inmate Funds Account - Savings | Five Star Bank | 108,038.24 |

**NYS Register/December 31, 2019**                                                          **Financial Reports**

| | | |
|---|---|---:|
| Miscellaneous Receipts Account | Five Star Bank | 3,082.08 |
| Occupational Therapy Account | Five Star Bank | 23,045.86 |
| **10470 - COLLINS CORRECTIONAL FACILITY** | | |
| Agency Advance | Community Bank | 3,309.76 |
| Employee Activities | Community Bank | 49,421.40 |
| Inmate Fund Checking | Community Bank | 217,915.32 |
| Inmate Savings | Community Bank | 130,534.65 |
| Miscellaneous Revenue | Community Bank | 9,657.05 |
| Occupational Therapy | Community Bank | 19,185.33 |
| **10480 - MID-STATE CORRECTIONAL FACILITY** | | |
| Agency Advance | Key Bank | 945.58 |
| Employee Benefit Fund | Bank of America, N.A. | 28,921.44 |
| Inmate Funds | Key Bank | 286,819.02 |
| Inmate Savings | Key Bank | 198,625.46 |
| Misc. Revenue | Key Bank | 3,525.40 |
| Occupational Therapy | Key Bank | 51,870.99 |
| **10490 - MARCY CORRECTIONAL FACILITY** | | |
| Agency Advance Account | Key Bank | 3,606.22 |
| Employee Benefit Fund Account | Bank of America, N.A. | 8,205.90 |
| Inmate Fund Account | Key Bank | 177,314.43 |
| Misc receipts Acct | Key Bank | 2,293.33 |
| NYS DOCS Marcy CORR Facility | Key Bank | 206,684.51 |
| Occupational Therapy fund Acct | Key Bank | 45,585.25 |
| **10500 - NYC CENTRAL ADMINISTRATION** | | |
| Agency Advance Acct | JPMorgan Chase Bank, N.A. | 2,394.76 |
| Misc Receipts | JPMorgan Chase Bank, N.A. | 509.17 |
| **10501 - CENTRAL PHARMACY** | | |
| NYS Docs Central Pharmacy Advance Acct | Bank of America, N.A. | 1,000.00 |
| **10510 - MORIAH SHOCK INCARCERATION CORRECTIONAL FACILITY** | | |
| Moriah Shock Incarceration Advance Acct | Glens Falls National | 1,800.00 |
| Moriah Shock Incarceration Employee Benefit Fund | Glens Falls National | 3,925.30 |
| Moriah Shock Incarceration Occ Therapy | Glens Falls National | 2,983.72 |
| Moriah Shock Misc Receipts | Glens Falls National | 0.00 |
| NYS Moriah Shock Incarceration Inmate Checking | Glens Falls National | 54,302.71 |
| **10530 - FRANKLIN CORRECTIONAL FACILITY** | | |
| Advance Account | Key Bank | 4,695.02 |
| Employee Benefit Account | Key Bank | 14,667.90 |
| Inmate Funds | Key Bank | 124,246.00 |
| Inmate Occupational Therapy | Key Bank | 15,030.09 |
| Inmate Savings | Key Bank | 217,517.61 |
| Misc. Receipts | Key Bank | 4,141.49 |
| **10540 - ALTONA CORRECTIONAL FACILITY** | | |
| Cons Adv Travel Petty Cash | NBT Bank | 3,174.13 |
| Employees Vending Benefit | NBT Bank | 10,609.51 |
| Inmates Funds | NBT Bank | 128,089.88 |
| Misc Revenues General Fund | NBT Bank | 571.14 |
| Occupational Therapy | NBT Bank | 5,385.96 |
| **10550 - CAYUGA CORRECTIONAL FACILITY** | | |
| Agency Advance | First National Bank of Groton | 1,716.62 |
| Cert Of Deposit | First National Bank of Groton | 87,054.28 |
| Employee Benefit Fund | First National Bank of Groton | 5,923.66 |
| Inmate Occupational Therapy Account | First National Bank of Groton | 38,135.81 |
| Inmate Spendable | First National Bank of Groton | 241,849.19 |
| Misc Receipts | First National Bank of Groton | 2,539.40 |
| **10560 - BARE HILL CORRECTIONAL FACILITY** | | |
| Agency Advance | Key Bank | No report received |
| Employee Benefit Fund | Key Bank | No report received |
| Inmate Spendable Funds | Key Bank | No report received |
| Key Public Money Market Checking | Key Bank | No report received |
| Miscellaneous Receipts | Key Bank | No report received |
| Occupational Therapy | Key Bank | No report received |
| **10570 - RIVERVIEW CORRECTIONAL FACILITY** | | |
| Agency Advance Account | Key Bank | No report received |
| Inmate Accounts | Key Bank | No report received |
| Inmate Savings Account | Key Bank | No report received |
| Miscellaneous Receipts Account | Key Bank | No report received |
| Occupational Therapy | Key Bank | No report received |
| **10580 - CAPE VINCENT CORRECTIONAL FACILITY** | | |
| Advance Account | Community Bank | 1,901.31 |
| Employee Benefit Fund | Community Bank | 39,874.20 |
| Inmate Occupation Therapy Acct | Community Bank | 36,241.72 |
| Inmate Savings | Community Bank | 151,699.19 |
| Inmate Spendable Account | Community Bank | 122,983.25 |
| Miscellaneous Receipts Account | Community Bank | 3,167.34 |

**125**

**10600 - LAKEVIEW SHOCK INCARCERATION CORRECTIONAL FACILITY**

| | | |
|---|---|---:|
| Agency Advance | Community Bank | 3,700.00 |
| Employee Benefit Fund | Community Bank | 15,270.62 |
| Inmate Funds | Community Bank | 54,234.96 |
| Inmate Funds - Sav | Community Bank | 94,654.14 |
| Miscellaneous Revenue | Community Bank | 2,449.40 |
| Occupational Therapy | Community Bank | 1,475.47 |

**10610 - ULSTER CORRECTIONAL FACILITY**

| | | |
|---|---|---:|
| Agency Advance | Bank of America, N.A. | 0.00 |
| Agency Advance | M&T Bank | 1,575.08 |
| Employee Benefit Fund | Bank of America, N.A. | 0.00 |
| Employee Benefit Fund | M&T Bank | 6,621.42 |
| Inmate Fund | Bank of America, N.A. | 0.00 |
| Inmate Fund | M&T Bank | 164,941.29 |
| Inmate Funds Savings | Bank of America, N.A. | 0.00 |
| Inmate Funds Savings | M&T Bank | 12,300.02 |
| Misc Receipts | M&T Bank | 26.10 |
| Misc. Receipts | Bank of America, N.A. | 0.00 |
| Occupational Therapy | Bank of America, N.A. | 0.00 |
| Occupational Therapy | M&T Bank | 7,292.00 |

**10630 - SOUTHPORT CORRECTIONAL FACILITY**

| | | |
|---|---|---:|
| Advance Account | Chemung Canal Trust | 727.00 |
| Employee Benefit Fund | Chemung Canal Trust | 17,047.90 |
| Inmate Funds | Chemung Canal Trust | 81,703.92 |
| Inmate Funds Account | Chemung Canal Trust | 43,385.22 |
| Misc. Receipts Account | Chemung Canal Trust | 357.62 |
| Occupational Therapy Account | Chemung Canal Trust | 28,591.28 |

**10640 - ORLEANS CORRECTIONAL FACILITY**

| | | |
|---|---|---:|
| Agency Advance | Bank of America, N.A. | 1,026.88 |
| Employee Benefit Fund | Bank of America, N.A. | 12,788.74 |
| Inmate Funds | Bank of America, N.A. | 89,145.59 |
| Inmate Savings | Bank of America, N.A. | 108,036.62 |
| Miscellaneous Receipts | Bank of America, N.A. | 14,546.13 |
| Occupational Therapy | Bank of America, N.A. | 29,260.65 |

**10650 - WASHINGTON CORRECTIONAL FACILITY**

| | | |
|---|---|---:|
| Advance Account | Key Bank | 2,421.10 |
| General Account | Key Bank | 0.00 |
| Inmate Account | Key Bank | 83,680.44 |
| Inmate Funds Account Certificate Of Deposit | Glens Falls National | 78,793.61 |
| Inmate Savings Account | Key Bank | 14,360.15 |
| Occupational Therapy Account | Key Bank | 25,662.37 |

**10660 - WYOMING CORRECTIONAL FACILITY**

| | | |
|---|---|---:|
| Agency Advance | Five Star Bank | 5,366.24 |
| Employee Benefit Fund | Five Star Bank | 13,601.41 |
| Inmate Occupational Therapy | Five Star Bank | 53,726.28 |
| Inmate Savings - Certificate of Deposit | Five Star Bank | 25,000.00 |
| Inmate Savings - Certificate of Deposit | Five Star Bank | 25,000.00 |
| Inmate Savings Account | Five Star Bank | 51,676.09 |
| Inmate Savings-Certificate of Deposit | Five Star Bank | 25,000.00 |
| Inmate Spendable | Five Star Bank | 203,607.46 |
| Misc. Receipts Account | Five Star Bank | 8,600.24 |

**10670 - GREENE CORRECTIONAL FACILITY**

| | | |
|---|---|---:|
| Consolidated Advance | National Bank of Coxsackie | 1,624.59 |
| Inmate Accounts | National Bank of Coxsackie | 145,609.32 |
| Inmate Savings | National Bank of Coxsackie | 248,599.68 |
| Misc. Receipts | National Bank of Coxsackie | 881.54 |
| Occupational Therapy | National Bank of Coxsackie | 67,440.13 |

**10680 - SHAWANGUNK CORRECTIONAL FACILITY**

| | | |
|---|---|---:|
| Consolidated Advance Account | Key Bank | 1,179.49 |
| Inmate Funds | Key Bank | 150,310.48 |
| Inmates Funds Account | Key Bank | 39,686.35 |
| Misc. Receipts Account | Key Bank | 3,073.79 |
| Occupational Therapy Acct | Key Bank | 28,436.22 |

**10690 - SULLIVAN CORRECTIONAL FACILITY**

| | | |
|---|---|---:|
| Consolidated Advance | Key Bank | 2,139.99 |
| Inmate Checking | Key Bank | 97,754.55 |
| Inmate Savings | Key Bank | 100,436.47 |
| Miscellaneous | Key Bank | 13,420.82 |
| Occupational Therapy | Key Bank | 25,627.77 |

**10810 - GOUVERNEUR CORRECTIONAL FACILITY**

| | | |
|---|---|---:|
| Agency Advance | Community Bank | 1,430.00 |
| Inmate Occupational Therapy | Community Bank | 26,450.32 |
| Inmate Savings | Community Bank | 194,964.39 |
| Inmate Spendable Fund | Community Bank | 113,694.73 |

| | | |
|---|---|---|
| Misc Receipts | Community Bank | 13,394.27 |
| **10820 - WILLARD DRUG TREATMENT CENTER** | | |
| Consolidated Advance | Community Bank | 942.31 |
| Employee Benefit Fund | Community Bank | 17,041.23 |
| Inmate Funds | Community Bank | 72,539.67 |
| Inmate Occupational Therapy | Community Bank | 9,382.67 |
| Misc Receipts | Community Bank | 250.05 |
| **10840 - UPSTATE CORRECTIONAL FACILITY-AUDIT 1** | | |
| Advance Account | Key Bank | 1,900.00 |
| Facility Committees | Key Bank | 16,863.07 |
| Inmate Fund | Key Bank | 126,667.66 |
| Inmate Fund Savings | Key Bank | 0.00 |
| Inmate Occupational Therapy Fund | Key Bank | 5,771.79 |
| Miscellaneous Account | Key Bank | 262.63 |
| **10850 - HALE CREEK ASACTC** | | |
| Consolidated Advance | Key Bank | 665.36 |
| Employee Benefit Fund | Bank of America, N.A. | 8,614.62 |
| Inmate Funds | Key Bank | 85,160.56 |
| Inmate Interest Bearing Account | Key Bank | 15,003.76 |
| Misc Receipts | Key Bank | 0.00 |
| Occupational Therapy | Key Bank | 27,429.11 |
| **10890 - CORRECTIONS AND COMMUNITY SUPERVISION** | | |
| Asset Forfeiture Special Rev Acct | Bank of America, N.A. | 307,462.76 |
| Parole Supervision Fee | Wells Fargo Bank | 21,074.99 |
| **10916 - CENTRAL OFFICE - INDUSTRIES** | | |
| Div of Ind Petty Cash Acct | Key Bank | 4,000.00 |
| Div of Ind Revenue Acct | Key Bank | 134,512.06 |
| **11000 - EDUCATION DEPARTMENT** | | |
| Consolidated Advance Account | Key Bank | No report received |
| Consolidated Advance Account (Control Disbursement) | Key Bank | No report received |
| Revenue Account | Key Bank | No report received |
| **11100 - NYS HIGHER EDUCATION SERVICES CORPORATION** | | |
| NYS HESC-Federal Student Loan Suspense | Key Bank | 199,571.56 |
| Operating | Key Bank | 10,014,570.14 |
| Retail Lockbox | US Bank | 167,586.62 |
| TAP | Key Bank | 1,755.81 |
| Wholesale Lockbox | US Bank | 1,877,264.80 |
| **11260 - BATAVIA SCHOOL FOR THE BLIND** | | |
| Misc. Receipts | M&T Bank | 1,057.57 |
| Petty Cash | M&T Bank | 3,370.91 |
| Student Spending Account | Bank of America, N.A. | 11,170.11 |
| **11270 - ROME SCHOOL FOR THE DEAF** | | |
| Miscellaneous Receipts | NBT Bank | 6,754.37 |
| Petty Cash | NBT Bank | 2,070.00 |
| Student Activity Fund | NBT Bank | 14,611.86 |
| **11280 - ARCHIVES PARTNERSHIP TRUST** | | |
| Endowment | Janney Montgomery Scott LLC | 4,749,109.66 |
| Endowment - Special Account | Janney Montgomery Scott LLC | No report received |
| Trust's Board Project Account | Key Bank | 158,218.50 |
| **12000 - DEPARTMENT OF HEALTH CENTRAL ADMINISTRATION** | | |
| Conf Narcotic Investigation | M&T Bank | 4,794.01 |
| Consolidated Advance Acct | M&T Bank | 11,291.43 |
| CSA Rebate Account | Bank of America, N.A. | 0.00 |
| DOH EPIC Lockbox Acct | Wells Fargo Bank | 8,138.18 |
| Early Intervention - Municipal Deposits for Provider Pymts | Key Bank | 0.00 |
| Early Intervention - Provider Payments Escrow | Key Bank | 400,944.45 |
| Early Intervention - State Funds | Key Bank | 15,747.89 |
| EPIC Co Pay Account | Bank of America, N.A. | 0.00 |
| Epic Drug Manufacturer Rebate Account | Bank of America, N.A. | 1,431.25 |
| EPIC EFT Acct | Bank of America, N.A. | 0.00 |
| EPIC Master Funding Acct | Bank of America, N.A. | 550,721.96 |
| EPIC Provider Receipt Account | Bank of America, N.A. | 0.00 |
| EPIC Refund Acct | Bank of America, N.A. | 0.00 |
| eWIC | Wells Fargo Bank | 2,646.42 |
| General Account | M&T Bank | 152,212.27 |
| ICR Audit Fees Account | Bank of America, N.A. | 10,666.20 |
| Indian Health Disbursement Account | Bank of America, N.A. | 0.00 |
| Indian Health-Master Acct | Bank of America, N.A. | 47,061.33 |
| Medicaid | Key Bank | 425,259.66 |
| Medicaid Audit Recoveries Acct | Key Bank | 0.00 |
| Medicaid Insurance Recoveries Acct | Bank of America, N.A. | 354,810.98 |
| Nurses Aide Fees (Prometric) | Bank of America, N.A. | 56,705.96 |
| Nursing Home Fees Account | Bank of America, N.A. | 50,362.47 |
| NYS DOH CLEP Revenue | Key Bank | 38,054.70 |

**Financial Reports** NYS Register/December 31, 2019

| | | |
|---|---|---|
| NYS WIC Adjustment Account | Key Bank | 3,856.43 |
| OBRA Drug Rebate Program Acct | Bank of America, N.A. | 19,049.32 |
| SPARCS | Key Bank | 27,911.10 |
| WIC Program | Key Bank | 1,066.04 |
| **12010 – ROSWELL PARK MEMORIAL INSTITUTE** | | |
| Office Of Patient Accounts | M&T Bank | 6,266,884.78 |
| **12030 – HELEN HAYES HOSPITAL** | | |
| Misc. Receipts | JPMorgan Chase Bank, N.A. | 1,300,246.66 |
| Petty Cash Account | JPMorgan Chase Bank, N.A. | 12,254.53 |
| Rental Deposit Acct | JPMorgan Chase Bank, N.A. | 5,729.17 |
| **12120 – NYS VETERANS HOME-OXFORD** | | |
| Agency Advance | NBT Bank | 6,174.38 |
| Exchange Account | NBT Bank | 17,771.83 |
| Maintenance Fund | NBT Bank | 248,057.20 |
| NYS Veterans Home-Oxford (Resident Account, Custodial Account) | NBT Bank | 256,670.08 |
| Resident Custodial Account | NBT Bank | 2,590.10 |
| Resident Custodial Account | NBT Bank | 2,786.70 |
| Resident Custodial Account | NBT Bank | 8,893.08 |
| Resident Custodial Account | NBT Bank | 123.61 |
| Resident Custodial Account | NBT Bank | 4,141.25 |
| Resident Custodial Account | NBT Bank | 2,739.27 |
| Resident Custodial Account | NBT Bank | 1,440.00 |
| Resident Custodial Account | NBT Bank | 9,914.96 |
| Resident Custodial Account | NBT Bank | 8,547.14 |
| Resident Custodial Account | NBT Bank | 1,641.02 |
| Resident Custodial Account | NBT Bank | 5,045.38 |
| **12150 – NYS VETERANS HOME-ST ALBANS** | | |
| NYC Veteran Home Agency Advance | JPMorgan Chase Bank, N.A. | 23,750.52 |
| St Albans NYC Vet Home Resid Funds | JPMorgan Chase Bank, N.A. | 763,514.47 |
| St Albans Vet Home Maintenance Acct | NBT Bank | 1,927,179.09 |
| **12180 – WESTERN NEW YORK VETERANS HOME** | | |
| Advance Account | Bank of America, N.A. | 4,264.38 |
| Exchange Account | Bank of America, N.A. | 65,048.03 |
| Maintenance Account | NBT Bank | 213,278.40 |
| Resident Funds | Bank of America, N.A. | 64,936.10 |
| **12190 – VETERANS HOME AT MONTROSE** | | |
| Agency Advance Account | Bank of America, N.A. | 12,848.34 |
| Maintenance Acct | NBT Bank | 373,246.15 |
| Residence Account | Bank of America, N.A. | 671,833.18 |
| **12200 – OFFICE OF MEDICAID INSPECTOR GENERAL** | | |
| Albany Confidential Account | Key Bank | 254.59 |
| Albany Petty Cash Account | Key Bank | 500.00 |
| NYC Confidential Account | JPMorgan Chase Bank, N.A. | 166.00 |
| **14000 – DEPARTMENT OF LABOR** | | |
| Agency Advance Account | Key Bank | 27,985.00 |
| Exchange Account | Bank of America, N.A. | 13,558.39 |
| Fee And Permit Account | Key Bank | 1,182,425.80 |
| Min Wage & Claim Funding Acct | Key Bank | 148,213.64 |
| Minimum Wage & Wage Claim Acct | Key Bank | 1,182,574.90 |
| Misc Receipts | Bank of America, N.A. | 188,220.19 |
| U.I. Fund Clearing Account | JPMorgan Chase Bank, N.A. | 4,603,583.84 |
| UI Fund ACH Transactions | Wells Fargo Bank | 97,816.44 |
| **14010 – WORKERS COMPENSATION BOARD** | | |
| DTF/WCB MAC 14 | JPMorgan Chase Bank, N.A. | 168,475,386.28 |
| **16000 – PUBLIC SERVICE COMMISSION** | | |
| Cable Account | Key Bank | 6,658.42 |
| Petty Cash Account | Key Bank | 3,830.00 |
| Special Fee Account | Key Bank | 16,411.44 |
| **17000 – NYS DEPARTMENT OF TRANSPORTATION** | | |
| Contractors Bid And Guarantee | Key Bank | 142,040.65 |
| Driver Improvement Program (DIP) | Key Bank | 17,114.31 |
| Main Office Advance For Travel | Key Bank | 52,901.30 |
| PARTNERS DOT -HOOCS | Key Bank | 5,005,840.03 |
| Revenue Unit | Key Bank | 81,747.79 |
| Republic Airport, Long Island | | |
| Republic Airport Revenue Acct | JPMorgan Chase Bank, N.A. | 150,253.27 |
| **19000 – DEPARTMENT OF STATE** | | |
| Athletic | M&T Bank | No report received |
| Licensing Revenue Account | JPMorgan Chase Bank, N.A. | No report received |
| Main | M&T Bank | No report received |
| Petty Cash Account | Key Bank | No report received |
| Summons | M&T Bank | No report received |
| **19001 – TUG HILL COMMISSION** | | |
| Agency Advance Account | Key Bank | No report received |

**Financial Reports**

**19002 - LAKE GEORGE PARK COMMISSION**
| | | |
|---|---|---|
| Petty Cash Account | Glens Falls National | No report received |
| Revenue Transfer Account | Glens Falls National | No report received |

**19005 - COMMISSION ON PUBLIC INTEGRITY**
| | | |
|---|---|---|
| JCOPE Petty Cash Account | Bank of America, N.A. | No report received |
| JCOPE Revenue Account | Bank of America, N.A. | No report received |

**20000 - DEPARTMENT OF TAXATION & FINANCE**
| | | |
|---|---|---|
| IFTA Funding | JPMorgan Chase Bank, N.A. | 67,454.59 |
| Misc Tax Account - Exchange | Bank of America, N.A. | 76,204.04 |
| Petty Cash | Bank of America, N.A. | 15,000.00 |
| Tax Preparer Registration Fee (EFT) | Wells Fargo Bank | 53,200.00 |
| Waste Tire Fee (EFT) | Wells Fargo Bank | 10,930.55 |
| Waste Tire Tax | JPMorgan Chase Bank, N.A. | 12,824.79 |

**20020 - DEPARTMENT OF TAXATION & FINANCE**
| | | |
|---|---|---|
| Commercial Gaming Revenue Account | Key Bank | No report received |
| Commercial Gaming Revenue Account | Key Bank | No report received |

**20050 - NEW YORK STATE GAMING COMMISSION**
| | | |
|---|---|---|
| Charitable Gaming Account | Key Bank | 76,280.89 |
| Commercial Gaming Revenue Account | Key Bank | 0.00 |
| Custody Account | US Bank | 12,636.52 |
| Fingerprint Concentration Account | Key Bank | 15,473.06 |
| License Revenue Account | Bank of America, N.A. | 23,159.31 |
| Lottery Concentration Account | Key Bank | 268,743.86 |
| Lottery Prize Payment Account | Key Bank | 2,320.19 |
| Lottery Subscriptions Account | Key Bank | 673,144.90 |
| Petty Cash Account | Key Bank | 802.51 |
| Racing Refund Account | Key Bank | 1,305,179.23 |
| Video Gaming Revenue Account | Key Bank | 8,468,098.11 |

**21012 - WELFARE INSPECTOR GENERAL**
| | | |
|---|---|---|
| Confidential Fund | Bank of America, N.A. | 15,000.00 |
| Confidential Fund | JPMorgan Chase Bank, N.A. | No report received |
| Petty Cash | JPMorgan Chase Bank, N.A. | No report received |

**21110 - OFFICE OF REGULATORY REFORM**
| | | |
|---|---|---|
| Petty Cash | Key Bank | No report received |

**21290 - HUDSON RIVER-BLACK RIVER REGULATING DISTRICT**
| | | |
|---|---|---|
| Checking- General Fund Acct. | Community Bank | 2,458.36 |
| Checking- Petty Cash Fund | Community Bank | 5,000.00 |
| Hudson River General Acct | Bank of America, N.A. | 168,682.04 |
| Money Market | Bank of America, N.A. | 2.24 |
| Petty Cash Fund | Bank of America, N.A. | 6,500.00 |

**21700 - OFFICE OF THE STATE INSPECTOR GENERAL**
| | | |
|---|---|---|
| Office Of The State Inspector General Pass Thru Account | Key Bank | 56,204.23 |
| OSIG Petty Cash Account | Key Bank | 984.50 |
| Albany | | |
| Office of the Inspector General Confidential | Bank of America, N.A. | 28,900.00 |

**21820 - STATE COMMISSION ON JUDICIAL CONDUCT**
| | | |
|---|---|---|
| Petty Cash Account | JPMorgan Chase Bank, N.A. | 366.43 |
| Petty Cash Account | Key Bank | 462.69 |
| Petty Cash Fund | JPMorgan Chase Bank, N.A. | 305.92 |

**21940 - NYS FINANCIAL CONTROL BOARD**
| | | |
|---|---|---|
| Agency Advance Acct | JPMorgan Chase Bank, N.A. | No report received |

**23000 - DEPARTMENT OF MOTOR VEHICLES**
| | | |
|---|---|---|
| Albany Central Main Acct | | |
| Albany Central Main Acct | Wells Fargo Bank | No report received |
| Albany Central Main Exchange | | |
| Exchange | Wells Fargo Bank | No report received |
| Albany Central Office | | |
| Title Escrow Exchange (Albany Central Office) | Wells Fargo Bank | No report received |
| Albany TVB Sub (Albany Central Office) | | |
| Adjudication Account | Wells Fargo Bank | No report received |
| Administrative Adj | M&T Bank | No report received |
| Albany-Region 3 | | |
| Confidential Inv Subpoena - Albany | Key Bank | No report received |
| Allegany-Belmont | | |
| County Clerk Fee Allegany | Steuben Trust Co. | No report received |
| Andirondack Mountains | | |
| County Fee Account | JPMorgan Chase Bank, N.A. | No report received |
| Buffalo-Region 5 | | |
| MV- Buffalo Investigator & Subpoena | M&T Bank | No report received |
| Capital Saratoga Revenue | | |
| County Fee Account | JPMorgan Chase Bank, N.A. | No report received |
| Catskill Mountains | | |
| County Fee Account | JPMorgan Chase Bank, N.A. | No report received |
| Central Leatherstocking | | |

**Financial Reports**                                                                                          *NYS Register/December 31, 2019*

| | | |
|---|---|---|
| County Fee Account | JPMorgan Chase Bank, N.A. | No report received |
| Chautaqua-Steuben | | |
| County Fee Acct | JPMorgan Chase Bank, N.A. | No report received |
| Chautauqua County | | |
| Holding Acct-Chautauqua County | Community Bank | No report received |
| Holding Acct-Chautauqua County | Key Bank | No report received |
| Holding Acct-Chautauqua County | M&T Bank | No report received |
| Concentration (CTY)(OSC) | | |
| Concentration (CTY)(OSC) | Key Bank | No report received |
| Concentration (DO)(OSC) | | |
| Concentration (DO)(OSC) | Key Bank | No report received |
| Confidential Fund  (Albany Central Office) | | |
| Confidential Fund | Bank of America, N.A. | No report received |
| CTY Credit Card (Albany Central Office) | | |
| County Office Credit Card Account | JPMorgan Chase Bank, N.A. | No report received |
| Customer Service Counter (Albany) | | |
| NYS DMV CSC | Wells Fargo Bank | No report received |
| D.O. Credit Card (Albany Central Office) | | |
| District Office Credit Card Account | JPMorgan Chase Bank, N.A. | No report received |
| DMV Division Of Field Investigations - Albany Central Office | | |
| Field Investigation | M&T Bank | No report received |
| Downstate | | |
| Revenue Account - Downstate | Wells Fargo Bank | No report received |
| Erie County Revenue | | |
| County Fee Account | JPMorgan Chase Bank, N.A. | No report received |
| Finger Lakes First | | |
| County Fee Acct | JPMorgan Chase Bank, N.A. | No report received |
| Finger Lakes Second | | |
| County Fee Acct | JPMorgan Chase Bank, N.A. | No report received |
| Genesee County | | |
| Genesee County Clerk - DMV | Bank of Castile | No report received |
| Greene County | | |
| Fee Account - Greene | Greene County Commercial Bank | No report received |
| Hudson Valley | | |
| County Fee Acct | JPMorgan Chase Bank, N.A. | No report received |
| IRP (Albany Central Office) | | |
| International Registration | M&T Bank | No report received |
| International Registration | Wells Fargo Bank | No report received |
| IRP Exchange (Albany Central Office) | | |
| Irp Internet Office - Dept. MV | M&T Bank | No report received |
| Kiosk | | |
| Kiosk Account | JPMorgan Chase Bank, N.A. | No report received |
| Long Island/Staten Island DO | | |
| Long Island/Staten Island DO | Wells Fargo Bank | No report received |
| Long Island/Staten Island JP | | |
| Long Island/Staten Island (Mass/Med) | JPMorgan Chase Bank, N.A. | No report received |
| Nassau Region 1 | | |
| Div. of Vehicle Safety | Citibank | No report received |
| Niagara Frontier | | |
| County Fee Acct | JPMorgan Chase Bank, N.A. | No report received |
| Oneida County | | |
| DMV Oneida County Fee Account | Bank of Utica | No report received |
| Oneida County Fee Account | NBT Bank | No report received |
| Petty Cash  (Albany Central Office) | | |
| Petty Cash | Bank of America, N.A. | No report received |
| Queens-Region 6 | | |
| Confidential - Queens | JPMorgan Chase Bank, N.A. | No report received |
| Rockland/Westchester DO | | |
| Rockland/Westchester DO | Wells Fargo Bank | No report received |
| Search Exchange (Albany  Central Office) | | |
| MV Search | Key Bank | No report received |
| Search Exchange (Albany Central Office) | | |
| MV Search | Wells Fargo Bank | No report received |
| Syracuse-Region 4 | | |
| Confidential - Syracuse | Key Bank | No report received |
| Thousand Island Seaway | | |
| County Fee Acct | JPMorgan Chase Bank, N.A. | No report received |
| TLC/DOCCS | | |
| TLC/DOCCS | JPMorgan Chase Bank, N.A. | No report received |
| Travel Advance  (Albany Central Office) | | |
| Travel Advance | Bank of America, N.A. | No report received |
| TVB Acct | | |
| TVB Acct | Wells Fargo Bank | No report received |
| TVB Credit Card (Albany Central Office) | | |

**NYS Register/December 31, 2019**                                                                                            **Financial Reports**

| | | |
|---|---|---|
| TVB Credit Card Receipts | JPMorgan Chase Bank, N.A. | No report received |
| Upstate DO | | |
| Upstate District Offices (ALB, SYD, SYS, UTD) | Wells Fargo Bank | No report received |
| Utica D.O. | | |
| Exchange Account | Bank of Utica | No report received |
| Revenue Utica | Bank of Utica | No report received |
| Yonkers–Region 2 | | |
| Safety Sup Automotive FAC INSP | JPMorgan Chase Bank, N.A. | No report received |
| **25000 - OFFICE OF CHILDREN & FAMILY SERVICES** | | |
| Brentwood Resid Center Cash Advance | JPMorgan Chase Bank, N.A. | 950.00 |
| Brentwood Residents' Account | JPMorgan Chase Bank, N.A. | 353.95 |
| Brooklynn Aftercare Wraparound Account | JPMorgan Chase Bank, N.A. | 500.00 |
| Brookwood Cash Advance | Key Bank | 1,731.71 |
| Brookwood Resid Residential Cash | Key Bank | 11,859.21 |
| Check Exchange | Bank of America, N.A. | 414.15 |
| CO Independent Living Acct | Bank of America, N.A. | 2,000.00 |
| Co. Training Employment Dev (Youth Stipend) | Bank of America, N.A. | 25,000.00 |
| Columbia Girls Secure Center-Advance Acct | Key Bank | 700.00 |
| Columbia Girls Secure Center-Youth Savings | Key Bank | 1,621.44 |
| Finger Lakes Res Ctr Residents Cash | Tompkins County Trust | 5,490.56 |
| Fingerlakes Res Ctr Cash Advance | Tompkins County Trust | 3,300.00 |
| Goshen Cash Advance | Bank of America, N.A. | 2,540.00 |
| Goshen Residents Account | Bank of America, N.A. | 8,695.97 |
| Harriet Tubman Advance Account | Key Bank | 500.00 |
| Harriet Tubman Residents' Account | Key Bank | 263.48 |
| Highland Res Ctr Petty Cash Account | Bank of America, N.A. | 2,479.06 |
| Highland Res Ctr Residents Acct | Bank of America, N.A. | 4,073.25 |
| Home Office Care & Maintenance Account | Bank of America, N.A. | 0.00 |
| Industry Advance Account | JPMorgan Chase Bank, N.A. | 1,999.00 |
| Industry Res Account | JPMorgan Chase Bank, N.A. | 4,008.27 |
| Industry School Dug-Out | JPMorgan Chase Bank, N.A. | 0.00 |
| MacCormick Cash Advance | Tompkins County Trust | 1,941.00 |
| MacCormick Residents' Account | Tompkins County Trust | 4,020.79 |
| Medicaid Reimbursement Exchange | Bank of America, N.A. | 35,397.70 |
| NYS OCFS  Advance Acct (Travel & Misc P.C.) | Bank of America, N.A. | 15,500.00 |
| NYS OCFS Salary Advance Account | Bank of America, N.A. | 14,521.83 |
| Queens CMSO Cash Advance | Bank of America, N.A. | 400.00 |
| Queens-Long Island Aftercare | JPMorgan Chase Bank, N.A. | 500.00 |
| Red Hook Res Ctr Resident Cash | Key Bank | 379.88 |
| Red Hook Resid Ctr Cash Advance | Key Bank | 246.17 |
| SCR Credit Card Revenue Account | Bank of America, N.A. | 29,975.00 |
| State Central Register | Bank of America, N.A. | 67,842.60 |
| Taberg Cash Advance | NBT Bank | 758.85 |
| Taberg Residents Account | NBT Bank | 709.34 |
| Youth Leadership Academy | NBT Bank | 1,208.74 |
| Youth Leadership Cash Advance | NBT Bank | 750.00 |
| **27000 - OFFICE OF TEMPORARY & DISABILITY ASSISTANCE** | | |
| Exchange Account | Key Bank | 0.70 |
| Title IV D Of Social Security | Key Bank | 259,881.51 |
| Travel Advance | Key Bank | 10,000.00 |
| **28010 - SUNY ALBANY** | | |
| Fee Account | Key Bank | 1,383,415.52 |
| Loan Services Center Account | Key Bank | 51,598.30 |
| Petty Cash/Travel Advance | Key Bank | 0.00 |
| **28020 - SUNY BINGHAMTON** | | |
| SUNY Binghamton | M&T Bank | 130,753.62 |
| SUNY Binghamton - Controlled Disb | M&T Bank | 0.00 |
| **28030 - SUNY BUFFALO** | | |
| Controlled Disbursement Account | Bank of America, N.A. | 0.00 |
| General Revenue Account | Bank of America, N.A. | 0.00 |
| General Revenue Account | Key Bank | 293,516.44 |
| Imprest Account | Key Bank | 0.00 |
| **28050 - SUNY STONY BROOK** | | |
| Central Funding | JPMorgan Chase Bank, N.A. | 868,381.15 |
| Controlled Disbursement | JPMorgan Chase Bank, N.A. | 0.00 |
| Fees Depository | JPMorgan Chase Bank, N.A. | 2,260,736.51 |
| LISVH Fees Depository | JPMorgan Chase Bank, N.A. | 2,618,347.79 |
| LISVH Fees Depository | Sterling Bank | 495,415.23 |
| LISVH Residence Fund | Sterling Bank | 370,583.56 |
| Payroll Advance | JPMorgan Chase Bank, N.A. | 6,403.27 |
| SBU Student Refunds Cont Disb Acct | JPMorgan Chase Bank, N.A. | 0.00 |
| Student ACH Refunds Account | JPMorgan Chase Bank, N.A. | 0.00 |
| SUNY Eastern Long Island Hospital Depository | JPMorgan Chase Bank, N.A. | 2,149,922.77 |
| SUNY Southampton Depository | JPMorgan Chase Bank, N.A. | 1,635,785.13 |

**Financial Reports**                                                                 *NYS Register/December 31, 2019*

| | | |
|---|---|---:|
| University Hosp Fees Depository | JPMorgan Chase Bank, N.A. | 6,667,222.80 |
| University Hospital Petty Cash | JPMorgan Chase Bank, N.A. | 1,770.60 |
| **28100 - SUNY HEALTH SCIENCE CENTER AT BROOKLYN** | | |
| Center Revenue | JPMorgan Chase Bank, N.A. | 2,206,056.01 |
| EFT Federal Deposits Acct | JPMorgan Chase Bank, N.A. | 0.00 |
| Hospital Controlled Disbursement | JPMorgan Chase Bank, N.A. | 0.00 |
| Hospital Revenue | JPMorgan Chase Bank, N.A. | 1,542,645.07 |
| LICH Controlled Disbursement | JPMorgan Chase Bank, N.A. | 0.00 |
| LICH Depository | JPMorgan Chase Bank, N.A. | 25,824.28 |
| Petty Cash | JPMorgan Chase Bank, N.A. | 0.00 |
| Student Refunds | JPMorgan Chase Bank, N.A. | 0.00 |
| **28110 - SUNY HEALTH SCIENCE CENTER AT SYRACUSE** | | |
| College Revenue | Key Bank | 40,387.40 |
| Controlled Disbursement | Key Bank | 0.00 |
| Hospital Revenue | Key Bank | 2,795,466.97 |
| Parking | Key Bank | 13,362.81 |
| **28150 - SUNY BROCKPORT** | | |
| Brockport-REOC Account | M&T Bank | 21,411.12 |
| Concentration Acct | M&T Bank | 580,198.15 |
| Controlled Disb | M&T Bank | 0.00 |
| **28160 - SUNY BUFFALO STATE COLLEGE** | | |
| Controlled Disb | M&T Bank | 0.00 |
| Dept Public Safety | M&T Bank | 0.00 |
| Special Grant Account | M&T Bank | 2,923.14 |
| Students Acct Office | M&T Bank | 99,076.63 |
| **28170 - SUNY CORTLAND** | | |
| General Checking Account | Key Bank | 121,111.63 |
| **28180 - SUNY FREDONIA** | | |
| Controlled Disb | M&T Bank | 0.00 |
| Depository Account | M&T Bank | 60,112.47 |
| **28190 - SUNY GENESEO** | | |
| Controlled Disbursement Account | Key Bank | 0.00 |
| State Fees | Key Bank | 364,119.36 |
| **28200 - SUNY OLD WESTBURY** | | |
| Local Depository | JPMorgan Chase Bank, N.A. | 49,594.10 |
| **28210 - SUNY NEW PALTZ** | | |
| Disbursement Account | Key Bank | 0.00 |
| State Revenue | Key Bank | 105,396.46 |
| **28220 - SUNY ONEONTA** | | |
| Petty Cash Advance Account | NBT Bank | 0.00 |
| Revenue Account | NBT Bank | 1,201,850.58 |
| **28230 - SUNY OSWEGO** | | |
| Controlled Disbursement | Key Bank | 0.00 |
| General Revenue | Key Bank | 15,615.33 |
| Imprest Account | Key Bank | 0.00 |
| **28240 - SUNY PLATTSBURGH** | | |
| General Revenue | TD Bank | 3,781,902.20 |
| **28250 - SUNY POTSDAM** | | |
| Control Disbursement Account | Key Bank | 0.00 |
| State Fee Reconciliation Account | Key Bank | 93,484.83 |
| **28260 - SUNY PURCHASE** | | |
| General Income Fund | Key Bank | 514,476.75 |
| **28270 - SUNY INSTITUTE OF TECHNOLOGY UTICA/ROME** | | |
| Advance Account | Bank of America, N.A. | 0.00 |
| Controlled Disbursement Account | Bank of America, N.A. | 0.00 |
| Revenue | Bank of America, N.A. | 60,893.09 |
| **28280 - SUNY EMPIRE STATE COLLEGE** | | |
| Concentration Account | Key Bank | 180,425.96 |
| Distribution Center Account | Key Bank | 75,933.68 |
| Zero Balance Controlled Disbursement Account | Key Bank | 0.00 |
| **28350 - SUNY COLLEGE OF TECHNOLOGY AT ALFRED** | | |
| Fees Account | Community Bank | 1,714,087.28 |
| **28360 - SUNY COLLEGE OF TECHNOLOGY AT CANTON** | | |
| Community Cash Deposits | NBT Bank | 206,062.46 |
| Dental Hygiene | NBT Bank | 0.00 |
| Income Fund | Key Bank | 52,717.60 |
| International Program Account | Key Bank | 37,521.36 |
| **28370 - SUNY AGRICULTURAL & TECHNICAL COLLEGE AT COBLESKILL** | | |
| Income Fund | Key Bank | 49,586.50 |
| **28380 - SUNY COLLEGE OF TECHNOLOGY AT DELHI** | | |
| General Revenue | Delaware National Bank | 65,585.45 |
| Petty Cash Fund | Delaware National Bank | 0.00 |
| **28390 - SUNY COLLEGE OF TECHNOLOGY AT FARMINGDALE** | | |
| Income Fund | Citibank | 777,186.58 |

**NYS Register/December 31, 2019**  **Financial Reports**

| | | |
|---|---|---:|
| **28400 - SUNY AGRICULTURAL & TECHNICAL COLLEGE AT MORRISVILLE** | | |
| Income Fund | Key Bank | 1,871,633.53 |
| Revenue Account | NBT Bank | 11,007.67 |
| **28550 - SUNY COLLEGE OF ENVIRONMENTAL SCIENCE & FORESTRY** | | |
| Agency Advance | Key Bank | 0.00 |
| Controlled Disb | Key Bank | 0.00 |
| ESF/GSA | Key Bank | 0.00 |
| Forestry | Community Bank | 258.72 |
| Regular Account | Key Bank | 45,481.19 |
| Student Government | Key Bank | 0.00 |
| **28570 - SUNY MARITIME COLLEGE** | | |
| Controlled Disbursement Account | JPMorgan Chase Bank, N.A. | 0.00 |
| Cruise Account | JPMorgan Chase Bank, N.A. | 136,481.10 |
| Revenue Deposit Account | JPMorgan Chase Bank, N.A. | 63,932.06 |
| Revenue EFT Account | JPMorgan Chase Bank, N.A. | 12,395.16 |
| **28580 - SUNY COLLEGE OF OPTOMETRY** | | |
| General Revenue | JPMorgan Chase Bank, N.A. | 142,589.23 |
| Medical Transportation | JPMorgan Chase Bank, N.A. | 78.88 |
| **28650 - SUNY CENTRAL SYSTEM ADMINISTRATION** | | |
| ASC | Key Bank | 10,000.00 |
| NYS Iso | Key Bank | 2,572,686.97 |
| Revenue | Key Bank | 122,062.58 |
| **37000 - DEPARTMENT OF FINANCIAL SERVICES** | | |
| Confidential Investigations | JPMorgan Chase Bank, N.A. | 9,085.09 |
| Confidential Investigations | JPMorgan Chase Bank, N.A. | 7,691.66 |
| Fire Tax Account (Main) | Key Bank | 18,869.26 |
| Fire Tax Payment | Key Bank | 0.00 |
| General Assessment Account | JPMorgan Chase Bank, N.A. | 123,152.39 |
| General Fund | Key Bank | 71,441.07 |
| Market Stabilization Pool Account | JPMorgan Chase Bank, N.A. | 5,403,482.83 |
| Miscellaneous Account | JPMorgan Chase Bank, N.A. | 424,041.16 |
| Paid Family Leave | JPMorgan Chase Bank, N.A. | 0.00 |
| Petty Cash | Key Bank | 5,408.99 |
| Workers Comp Insurance Sec Fund Pymnt | JPMorgan Chase Bank, N.A. | 491,333.59 |
| **49010 - SARATOGA-CAPITAL DISTRICT STATE PARK COMMISSION** | | |
| Revenue (SA) | Glens Falls National | 45,228.91 |
| SARATOGA REGION CONTRACTORS BID ACCOUNT | Key Bank | 86,908.68 |
| **49020 - LONG ISLAND STATE PARK COMMISSION** | | |
| Contractors Bid (LI) | JPMorgan Chase Bank, N.A. | 64,367.93 |
| Regional Account (LI) | Bank of America, N.A. | 1.00 |
| Regional Account 2 (LI) | JPMorgan Chase Bank, N.A. | 509,914.36 |
| Revenue (LI) | People's United Bank | 30,591.73 |
| **49030 - GENESEE STATE PARK COMMISSION** | | |
| Contractors Bid (GE) | Bank of Castile | 54,912.47 |
| Revenue (GE) | Bank of Castile | 328,011.62 |
| **49040 - NIAGARA FRONTIER STATE PARK COMMISSION** | | |
| Contractors Bid (NIA) | Key Bank | 6,824.59 |
| Revenue (NIA) | Evans National Bank | 27,128.10 |
| **49050 - PALISADES INTERSTATE STATE PARK COMMISSION** | | |
| Contractors Bid (PA) | JPMorgan Chase Bank, N.A. | 8,720.74 |
| **49070 - OFFICE OF PARKS & RECREATION** | | |
| Main Office - Change Fund | Key Bank | 95,700.00 |
| Main Office Account (ALB) | Key Bank | 1,500.00 |
| OPRHP Concentration Account | Key Bank | 1,878,122.07 |
| Petty Cash (ALB) | Key Bank | 29,913.20 |
| Revenue (NI, GE, AL, CE, TA) | M&T Bank | 74,247.58 |
| Revenue (NYC, CE, LI, PA, TA) | JPMorgan Chase Bank, N.A. | 27,387.49 |
| Revenue (SA, LI, GE, NI, CE, TA) | Bank of America, N.A. | 6,701.69 |
| Revenue (SA, NI, PA, CE, TA, TI) | Key Bank | 13,613.98 |
| Revenue (various) | Wells Fargo Bank | 1,835,804.60 |
| Statewide Campsite/Cabin Revenue | JPMorgan Chase Bank, N.A. | 1,333.87 |
| Statewide Credit Card Revenue, Revenue (ALB, FL, LI, PA, TI) | Key Bank | 277,588.45 |
| Statewide Housing Security Deposits | Key Bank | 131,694.58 |
| **49090 - FINGER LAKES STATE PARK COMMISSION** | | |
| Contractors Bid (FL) | Tompkins County Trust | 19,867.78 |
| Revenue (FL) | Savannah Bank | 37,401.12 |
| Revenue (FL-Multi) | Community Bank | 3,380.91 |
| Revenue (FL-Multi-Facilities) | Tompkins County Trust | 142,185.42 |
| **49100 - ALLEGANY STATE PARK COMMISSION** | | |
| Contractors Bid (AL) | Five Star Bank | 868.00 |
| Regional Account (AL) | Five Star Bank | 105,872.22 |
| Revenue (AL) | Five Star Bank | 82,650.51 |
| **49120 - CENTRAL NEW YORK STATE PARK COMMISSION** | | |
| Contractors Bid (CE) | JPMorgan Chase Bank, N.A. | 20,721.27 |

**Financial Reports** | *NYS Register/December 31, 2019*

| | | |
|---|---|---:|
| Revenue (CE, SA, TI) | NBT Bank | 34,638.29 |
| **49130 - TACONIC STATE PARK COMMISSION** | | |
| Contractors Bid (TA) | M&T Bank | 1,121.32 |
| **49140 - THOUSAND ISLANDS STATE PARK COMMISSION** | | |
| Revenue (TI) | Citizens Bank | 48,764.56 |
| Revenue (TI-Multi) | Community Bank | 1,484.41 |
| **50000 - OFFICE OF MENTAL HEALTH** | | |
| Consolidated Advance | Bank of America, N.A. | 4,338.57 |
| Iterim Assistance Agreement | Bank of America, N.A. | 0.00 |
| OMH Medication Grant Program Acct | Bank of America, N.A. | 7,928.27 |
| Reimbursement Account | Bank of America, N.A. | 760,670.52 |
| **50010 - GREATER BINGHAMTON HEALTH CENTER** | | |
| Agency Advance Account | JPMorgan Chase Bank, N.A. | 13,701.46 |
| Facility Holding Account | JPMorgan Chase Bank, N.A. | 5,629.47 |
| Patient Cash Funds | JPMorgan Chase Bank, N.A. | 450,226.95 |
| Patients Cash Account | JPMorgan Chase Bank, N.A. | 223,676.31 |
| Security Deposit | JPMorgan Chase Bank, N.A. | 2,976.73 |
| **50020 - KINGSBORO PSYCHIATRIC CENTER** | | |
| Advance Account | Banco Popular | 20,401.53 |
| Family Care | Banco Popular | 14,290.87 |
| Holding Account | Banco Popular | 206,519.24 |
| Medicaid Outpatient Travel | Banco Popular | 213.09 |
| Patient Cash Acct (MM) | Banco Popular | 159,178.68 |
| Patient Checking Account | Citibank | 41,762.82 |
| Patient Savings Account | Banco Popular | 334,413.06 |
| Security Deposit | Banco Popular | 2,489.01 |
| Urban Oasis/EBT | Banco Popular | 51,839.32 |
| **50030 - BUFFALO PSYCHIATRIC CENTER** | | |
| Advance Account | Key Bank | 62,146.82 |
| Facity Holding | Key Bank | 13,351.60 |
| Patient Cash Checking | Key Bank | 99,915.13 |
| **50060 - HUDSON RIVER PSYCHIATRIC CENTER** | | |
| Patients Cash | JPMorgan Chase Bank, N.A. | 0.00 |
| **50080 - MANHATTAN PSYCHIATRIC CENTER** | | |
| Advance Account | Sterling Bank | 9,017.90 |
| CD | Hudson Valley National Bank | 425,038.94 |
| General Fund Checking | Hudson Valley National Bank | 8,904.37 |
| Patient Cash Checking | Hudson Valley National Bank | 747,504.51 |
| Patients Money Market | Hudson Valley National Bank | 72,838.86 |
| Social Service Tokens | Hudson Valley National Bank | 33,936.30 |
| **50110 - ROCHESTER PSYCHIATRIC CENTER** | | |
| Agency Advance | Key Bank | 36,072.63 |
| Facility Holding | Key Bank | 58,696.25 |
| Patients Cash Account | Key Bank | 134,248.65 |
| Patients Fund Savings | Key Bank | 215,373.37 |
| **50120 - ST LAWRENCE PSYCHIATRIC CENTER** | | |
| Facility Advance Account | Community Bank | 16,536.43 |
| Facility Holding Account | Community Bank | 15,782.11 |
| Patients Cash Account | Community Bank | 26,361.61 |
| Patients Cash Savings | Community Bank | 221,164.28 |
| **50150 - CREEDMOOR PSYCHIATRIC CENTER** | | |
| Advance Account | HSBC | 47,660.21 |
| Certificate Of Deposit | HSBC | 150,000.00 |
| Certificate Of Deposit | HSBC | 250,000.00 |
| Holding Account | HSBC | 22,138.29 |
| Medicaid Travel Account | HSBC | 0.00 |
| Money Management Account | HSBC | 621,635.33 |
| Patient Cash Account | HSBC | 78,448.16 |
| Rent Holding Account | HSBC | 4,444.00 |
| **50170 - ROCKLAND PSYCHIATRIC CENTER** | | |
| Advance Account | JPMorgan Chase Bank, N.A. | 50,141.43 |
| Exchange | JPMorgan Chase Bank, N.A. | 121,220.64 |
| Holding Account | JPMorgan Chase Bank, N.A. | 30,445.17 |
| INVESTMENT CD A | Sterling Bank | 100,000.00 |
| Investment CD B | Sterling Bank | 100,000.00 |
| INVESTMENT CD C | Sterling Bank | 100,000.00 |
| INVESTMENT CD D | Sterling Bank | 100,000.00 |
| INVESTMENT CD G | Sterling Bank | 100,000.00 |
| INVESTMENT CD I | Sterling Bank | 100,000.00 |
| Patient Cash Account | JPMorgan Chase Bank, N.A. | 50,000.00 |
| Patient Cash Checking Account | JPMorgan Chase Bank, N.A. | 160,264.38 |
| Patient Cash Savings Account | JPMorgan Chase Bank, N.A. | 1,095,774.75 |
| **50180 - NYS PSYCHIATRIC INSTITUTE** | | |
| Donation & Gift Acct/Patient Fund Acct | JPMorgan Chase Bank, N.A. | 4,524.21 |

**NYS Register/December 31, 2019**                                                 **Financial Reports**

| Account | Bank | Amount |
|---|---|---|
| General | JPMorgan Chase Bank, N.A. | 55,499.23 |
| Petty Cash | JPMorgan Chase Bank, N.A. | 1,767.90 |
| **50190 - RICHARD H HUTCHINGS PSYCHIATRIC CENTER** | | |
| Advance Account | Key Bank | 8,730.21 |
| Clients Count | Key Bank | 118,660.71 |
| Holding Account | Key Bank | 17,192.25 |
| **50200 - PILGRIM PSYCHIATRIC CENTER** | | |
| Facility Advance Account | JPMorgan Chase Bank, N.A. | 8,560.13 |
| Facility Holding Acct | JPMorgan Chase Bank, N.A. | 140,405.24 |
| Patient Cash | JPMorgan Chase Bank, N.A. | 663,235.64 |
| **50210 - MOHAWK VALLEY PSYCHIATRIC CENTER** | | |
| Advance Fund | Key Bank | 14,371.64 |
| Facility Holding | Key Bank | 1,953.97 |
| Patient Cash Checking | Key Bank | 14,924.02 |
| Patient Cash Savings | Key Bank | 28,911.99 |
| Security Deposit | Key Bank | 8,517.62 |
| **50310 - BRONX PSYCHIATRIC CENTER** | | |
| CD | JPMorgan Chase Bank, N.A. | 250,000.00 |
| Consolidated Advance | JPMorgan Chase Bank, N.A. | 14,848.64 |
| Misc. Receipts | JPMorgan Chase Bank, N.A. | 27,009.74 |
| Patients Cash MM | JPMorgan Chase Bank, N.A. | 87,651.86 |
| Patients Checking Acct | JPMorgan Chase Bank, N.A. | 566,746.75 |
| **50340 - NATHAN KLINE INSTITUTE** | | |
| Petty Cash Account | JPMorgan Chase Bank, N.A. | 1,300.00 |
| **50350 - KIRBY FORENSIC PSYCHIATRIC CENTER** | | |
| Consolidated Advance Account | Hudson Valley National Bank | 7,407.68 |
| Holding Account | Hudson Valley National Bank | 34,163.40 |
| Patient Cash Account | Hudson Valley National Bank | 110,056.17 |
| **50390 - CENTRAL NY PSYCHIATRIC CENTER** | | |
| Agency Advance Account | Key Bank | 9,729.65 |
| General Fund | Key Bank | 8,491.52 |
| Patient Checking | Key Bank | 76,682.29 |
| Patient Savings | Key Bank | 176,372.20 |
| Security Deposit | Key Bank | 3,818.30 |
| **50440 - MID-HUDSON FORENSIC PSYCHIATRIC CENTER** | | |
| Facility Advance Account | Key Bank | 9,911.14 |
| Facility Holding Account | Key Bank | 810.50 |
| Patients Account | Key Bank | 170,690.35 |
| **50520 - BROOKLYN CHILDRENS PSYCHIATRIC CENTER** | | |
| Petty Cash Advance Account | Banco Popular | 4,965.00 |
| **50790 - SOUTH BEACH PSYCHIATRIC CENTER** | | |
| Agency Advance Checking | JPMorgan Chase Bank, N.A. | 9,266.10 |
| Facility Holding Checking | JPMorgan Chase Bank, N.A. | 10,356.00 |
| Family Care Checking | JPMorgan Chase Bank, N.A. | 454,754.74 |
| Patients Cash Checking | JPMorgan Chase Bank, N.A. | No report received |
| **50800 - BRONX CHILDRENS PSYCHIATRIC CENTER** | | |
| General Fund | JPMorgan Chase Bank, N.A. | 12,912.40 |
| **50810 - WESTERN NY CHILDRENS PSYCHIATRIC CENTER** | | |
| Agency Advance | Key Bank | 618.01 |
| Exchange Account | Key Bank | 0.00 |
| Patient Cash | Key Bank | 375.00 |
| **50850 - SAGAMORE CHILDRENS PSYCHIATRIC CENTER** | | |
| Sagamore Patient Personal Acct | JPMorgan Chase Bank, N.A. | 49,059.23 |
| Sagamore Petty Cash Account | JPMorgan Chase Bank, N.A. | 4,904.39 |
| **50860 - ROCKLAND CHILDRENS PSYCHIATRIC CENTER** | | |
| Advance Account | JPMorgan Chase Bank, N.A. | 16,757.88 |
| **50870 - QUEENS CHILDRENS PSYCHIATRIC CENTER** | | |
| Money Management Account | HSBC | 3,561.89 |
| Queens Adv Acct | HSBC | 11,230.97 |
| Queens Childrens Account | HSBC | 6,861.69 |
| **50920 - ELMIRA PSYCHIATRIC CENTER** | | |
| Certificate of Deposit | Chemung Canal Trust | 100,000.00 |
| Certificate of Deposit | Chemung Canal Trust | 100,000.00 |
| Certificate of Deposit | Chemung Canal Trust | 100,000.00 |
| Facility Advance Account | Chemung Canal Trust | 10,583.63 |
| General Fund Account | Chemung Canal Trust | 4,639.00 |
| IMMA | Chemung Canal Trust | 45,958.99 |
| Patients Fund Account | Chemung Canal Trust | 237,224.42 |
| **50980 - CAPITAL DISTRICT PSYCHIATRIC CENTER** | | |
| Facility Advance Account | Key Bank | 14,065.33 |
| Facility Holding Account | Key Bank | 142,444.73 |
| Parking Garage Account | Key Bank | 197,515.35 |
| Patients Cash Checking Account | Key Bank | 222,127.74 |
| Patients Cash Savings Account | Key Bank | 396,951.00 |

**Financial Reports**                                                                 **NYS Register/December 31, 2019**

| | | |
|---|---|---|
| **51000 - NYS OFFICE FOR PEOPLE WITH DEVELOPMENTAL DISABILITIES** | | |
| Petty Cash Acct | Bank of America, N.A. | No report received |
| Revenue Account | Bank of America, N.A. | 5,869,781.69 |
| **51210 - HUDSON VALLEY DDSO** | | |
| EBT Checking | JPMorgan Chase Bank, N.A. | No report received |
| Exchange Account | JPMorgan Chase Bank, N.A. | No report received |
| General Fund | JPMorgan Chase Bank, N.A. | No report received |
| Investor's Choice Savings | JPMorgan Chase Bank, N.A. | No report received |
| Petty Cash | JPMorgan Chase Bank, N.A. | No report received |
| PTS Cash Checking | JPMorgan Chase Bank, N.A. | No report received |
| **51240 - CENTRAL NY DDSO** | | |
| Advance Accounts | Key Bank | 37,884.76 |
| Clients Account | Key Bank | 559,179.64 |
| Consumer Cash - Savings | Adirondack Bank | 306,338.01 |
| Consumer Cash - Savings | Key Bank | 3,414,428.86 |
| **51250 - TACONIC DDSO** | | |
| Agency Advance Account | M&T Bank | 42,913.79 |
| General Fund | M&T Bank | 12,894.36 |
| Patients Cash Checking | M&T Bank | 2,048,018.20 |
| 500 Balltown Rd Schenectady, NY | | |
| TDDSO Representative Payee Savings Acct | The Adirondack Trust Company | 698,353.93 |
| **51270 - STATEN ISLAND DDSO** | | |
| Clients Cash Account | JPMorgan Chase Bank, N.A. | No report received |
| General Fund Account | JPMorgan Chase Bank, N.A. | No report received |
| Money Market Account | JPMorgan Chase Bank, N.A. | No report received |
| Petty Cash Account | JPMorgan Chase Bank, N.A. | No report received |
| **51290 - CAPITAL DISTRICT DDSO** | | |
| Agency Advance Account | Key Bank | No report received |
| Agency Advance Account | The Adirondack Trust Company | No report received |
| Consumer EBT Fund / Fiduciary Account | Key Bank | No report received |
| Consumers Fund / Fiduciary Account | Key Bank | No report received |
| Patients Account Direct Deposit / Fiduciary Acct | The Adirondack Trust Company | No report received |
| Patients Fund Operating Acct / Fiduciary Acct | The Adirondack Trust Company | No report received |
| Summer Camp - Fiduciary Acct | The Adirondack Trust Company | No report received |
| **51330 - WESTERN NY DDSO** | | |
| Agency Advance Account | M&T Bank | No report received |
| CD-Patient Property Funds | Key Bank | No report received |
| Exchange Account | M&T Bank | No report received |
| General Account | Community Bank | No report received |
| Patient Property Funds | Adirondack Bank | No report received |
| Patient Property Funds | M&T Bank | No report received |
| **51350 - LONG ISLAND DDSO** | | |
| Consolidated Advance | JPMorgan Chase Bank, N.A. | No report received |
| EBT Checking Account | JPMorgan Chase Bank, N.A. | No report received |
| General Fund | JPMorgan Chase Bank, N.A. | No report received |
| Patient Cash | JPMorgan Chase Bank, N.A. | No report received |
| **51380 - BROOKLYN DDSO** | | |
| CD | Banco Popular | No report received |
| Consumers Fund | JPMorgan Chase Bank, N.A. | 420,969.64 |
| Consumers Money Management | JPMorgan Chase Bank, N.A. | 686,189.11 |
| Miscellaneous Receipts | JPMorgan Chase Bank, N.A. | 217,647.97 |
| Petty Cash - Mental Hygiene Brooklyn | JPMorgan Chase Bank, N.A. | 22,307.11 |
| Thomas Shirtz Community Service | JPMorgan Chase Bank, N.A. | 6,417.35 |
| **51420 - SUNMOUNT DDSO** | | |
| Certificate of Deposit | Community Bank | No report received |
| Community Store Fund | Community Bank | No report received |
| Exchange Fund | Community Bank | No report received |
| Residents Fund | Community Bank | No report received |
| Sunmount Advance Account | Community Bank | No report received |
| Sunmount EBT Checking Account | Community Bank | No report received |
| **51430 - INSTITUTE FOR BASIC RESEARCH IN DEVELOPMENTAL DISABILITIES** | | |
| Petty Cash | JPMorgan Chase Bank, N.A. | 3,000.00 |
| **51450 - METRO NY DDSO** | | |
| Consolidated Acct | JPMorgan Chase Bank, N.A. | 24,160.03 |
| Manhattan DDSO Client Cash | JPMorgan Chase Bank, N.A. | 29,782.50 |
| Metro NY DDSO Food Stamp Acct | JPMorgan Chase Bank, N.A. | 0.00 |
| Metro NY DDSOO REP PAYEE ACCOUNT | JPMorgan Chase Bank, N.A. | 543,377.60 |
| Patients Cash Account | JPMorgan Chase Bank, N.A. | 18,798.32 |
| Patients Money Market Account | JPMorgan Chase Bank, N.A. | 0.10 |
| Petty Cash | JPMorgan Chase Bank, N.A. | 0.00 |
| **51470 - BERNARD M FINESON DDSO** | | |
| Bernard Fineson DDSO Food Stamp Acct | JPMorgan Chase Bank, N.A. | No report received |
| Money Market Account | JPMorgan Chase Bank, N.A. | No report received |
| Patient Fund Account | JPMorgan Chase Bank, N.A. | No report received |

**NYS Register/December 31, 2019**  **Financial Reports**

| | | |
|---|---|---|
| Petty Cash Fund | JPMorgan Chase Bank, N.A. | No report received |
| **51780 - FINGER LAKES DDSO** | | |
| Advance Account | JPMorgan Chase Bank, N.A. | No report received |
| F.L. Newark Resident Checking | Community Bank | No report received |
| Finger Lakes Resident Checking | JPMorgan Chase Bank, N.A. | No report received |
| FL Vending Machine Account | Community Bank | No report received |
| General Account | JPMorgan Chase Bank, N.A. | No report received |
| Geneseo Client Cash | Bank of America, N.A. | No report received |
| Kelsey Trust Fund | Bank of America, N.A. | No report received |
| Mary Moore Trust Fund | Bank of America, N.A. | No report received |
| Monroe Resident Checking | JPMorgan Chase Bank, N.A. | No report received |
| Monroe Resident Savings | JPMorgan Chase Bank, N.A. | No report received |
| Patient Food Stamp Account | JPMorgan Chase Bank, N.A. | No report received |
| **51940 - BROOME DDSO** | | |
| Broome DDSO | M&T Bank | No report received |
| Broome DDSO - Advance Account | M&T Bank | No report received |
| Broome DDSO - General Fund | M&T Bank | No report received |
| Disabled Individuals Savings | Key Bank | No report received |
| Disabled Individuals Savings | M&T Bank | No report received |
| OMRDD Broome DDSO EBT Checking | M&T Bank | No report received |
| **53000 - OFFICE OF ALCOHOLISM & SUBSTANCE ABUSE SERVICES** | | |
| Agency Advance Acct | Key Bank | No report received |
| Patient Fees | Bank of America, N.A. | No report received |
| Revenue Account | Bank of America, N.A. | No report received |
| **53020 - KINGSBORO ALCOHOLISM TREATMENT CENTER** | | |
| Petty Cash Advance Account | Bank of America, N.A. | 576.90 |
| **70000 - CUNY UNIVERSITY MANAGEMENT & PROGRAM BOARD OF HIGHER EDUCATION** | | |
| CUNY Admin Imprest Cash Account | Citibank | 9,921.44 |
| **70030 - CUNY HUNTER COLLEGE** | | |
| Travel Petty Cash Account | Citibank | 46,020.00 |
| **70060 - CUNY JOHN JAY COLLEGE** | | |
| CUNY JOHN JAY COLLEGE IMPREST FUND | Citibank | 16,553.71 |
| **70070 - CUNY LEHMAN COLLEGE** | | |
| Lehman College | Citibank | 4,345.50 |
| **70080 - CUNY YORK COLLEGE** | | |
| York College Imprest Funds | Citibank | 11,228.64 |
| York College Travel Advance Fund | Citibank | 817.00 |
| **70100 - CUNY COLLEGE OF STATEN ISLAND** | | |
| CSI Imprest Cash | TD Bank | 4,909.63 |
| **70120 - CUNY NYC COLLEGE OF TECHNOLOGY** | | |
| NY City College Of Technology Technical College Imprest Fund | Popular Community Bank | 5,000.00 |
| **70150 - CUNY SCHOOL OF LAW** | | |
| CUNY School Of Law | TD Bank | 27,731.17 |

The above balances represent funds deposited in various banking institutions as reported by the State department and agencies, and published in accordance with Section 107 of the State Finance Law.

*Division of the Treasury, Department of Taxation and Finance*
**Christopher Curtis** *Deputy Commissioner and State Treasurer*

**Financial Reports**                                                          NYS Register/December 31, 2019

FUNDS OF THE DIVISION OF THE TREASURY OF WHICH THE COMMISSIONER OF TAXATION AND FINANCE
IS THE SOLE CUSTODIAN WITH BALANCES AS OF 11/30/2019

| ACCOUNT DESCRIPTION | | DEPOSITORY | BALANCE AS OF 11/30/2019 |
|---|---|---|---|
| **COMMUNITY COLLEGE TUITION AND INSTRUCTIONAL INCOME FUND** | | | |
| 0231 | Upstate Community Colleges, Series 2005A | Key Bank | 0.00 |
| 0232 | Upstate Community Colleges, Series 2005B | Key Bank | 511,070.87 |
| **DORMITORY AUTHORITY OF THE STATE OF NEW YORK** | | | |
| 0039 | Mental Hygiene Facilities Improvement Fund Income Account | Bank of America, N.A. | 2,280.49 |
| 0070 | Hospital and Nursing Home Project Operating Fund | Key Bank | 0.00 |
| 0104 | Lincoln Medical and Mental Health Center Project Construction Account | Key Bank | 18,560.11 |
| 0105 | Greenpoint Medical and Mental Health Center Project Construction Account | Key Bank | 304,974.73 |
| 0149 | State Advances Repayment Account | Bank of America, N.A. | 0.00 |
| 1202 | DA DRFR MAC #1202 Binghamton | Key Bank | 617.99 |
| 1203 | DA DRFR MAC #1203 Oneonta | Key Bank | 98.63 |
| 1205 | DA DRFR MAC #1205 Delhi | Key Bank | 291.92 |
| 1206 | DA DRFR MAC #1206 Buffalo Univ | Key Bank | 890.56 |
| 1207 | DA DRFR MAC #1207 Buffalo College | Key Bank | 933,600.76 |
| 1208 | DA DRFR MAC #1208 Alfred | Key Bank | 398,549.11 |
| 1209 | DA DRFR MAC #1209 Fredonia | Key Bank | 428.02 |
| 1211 | DA DRFR Mac #1211 Upstate Medical | Key Bank | 1,021.19 |
| 1212 | DA DRFR Mac #1212 Oswego | Key Bank | 543.78 |
| 1214 | DA DRFR Mac #1214 Cortland | Key Bank | 639.10 |
| 1215 | DA DRFR MAC #1215 Stony Brook | Key Bank | 3,134,090.16 |
| 1216 | DA DRFR MAC #1216 Old Westbury | Key Bank | 32,469.26 |
| 1217 | DA DRFR MAC #1217 Farmingdale | Key Bank | 630.97 |
| 1218 | DA DRFR MAC #1218 Downstate Med | Key Bank | 458,323.19 |
| 1219 | DA DRFR MAC #1219 Maritime | Key Bank | 740.31 |
| 1221 | DA DRFR MAC #1221 Brockport | Key Bank | 781,534.48 |
| 1222 | DA DRFR MAC #1222 Geneseo | Key Bank | 237,276.53 |
| 1223 | DA DRFR MAC #1223 Purchase | Key Bank | 634.73 |
| 1224 | DA DRFR MAC #1224 New Paltz | Key Bank | 98.02 |
| 1225 | DA DRFR MAC #1225 Canton | Key Bank | 838.18 |
| 1226 | DA DRFR MAC #1226 Plattsburgh | Key Bank | 1,000.76 |
| 1227 | DA DRFR MAC #1227 Potsdam | Key Bank | 1,000.63 |
| 1228 | DA DRFR MAC #1228 Morrisville | Key Bank | 442.19 |
| 1229 | DA DRFR MAC #1229 SUNYIT | Key Bank | 155,262.11 |
| 1230 | DA DRFR MAC #1230 Cobleskill | Key Bank | 44.94 |
| 1239 | DA DRFR MAC #1239 Albany | Key Bank | 3,545,485.86 |
| 1240 | Dormitory Authority Collection Account - Mac 1240 | Key Bank | 0.00 |
| 2202 | DA OMRR MAC #2202 Binghamton | Key Bank | 1,173.25 |
| 2203 | DA OMRR MAC #2203 Oneonta | Key Bank | 1,172.67 |
| 2205 | DA OMRR MAC #2205 Delhi | Key Bank | 1,016.13 |
| 2206 | DA OMRR MAC #2206 Buffalo Univ | Key Bank | 1,054.00 |
| 2207 | DA OMRR MAC #2207 Buffalo College | Key Bank | 197.91 |
| 2208 | DA OMRR MAC #2208 Alfred | Key Bank | 303.23 |
| 2209 | DA OMRR MAC #2209 Fredonia | Key Bank | 1,127.58 |
| 2211 | DA OMRR MAC #2211 Upstate Medical | Key Bank | 1,027.74 |
| 2212 | DA OMRR MAC #2212 Oswego | Key Bank | 705.14 |
| 2214 | DA OMRR MAC #2214 Cortland | Key Bank | 1,590.50 |
| 2215 | DA OMRR MAC #2215 Stony Brook | Key Bank | 341.23 |
| 2216 | DA OMRR MAC #2216 Old Westbury | Key Bank | 1,234.22 |
| 2217 | DA OMRR MAC #2217 Farmingdale | Key Bank | 1,018.24 |
| 2218 | DA OMRR MAC #2218 Downstate Med | Key Bank | 1,024.55 |
| 2219 | DA OMRR MAC #2219 Maritime | Key Bank | 1,218.22 |
| 2221 | DA OMRR MAC #2221 Brockport | Key Bank | 130.71 |
| 2222 | DA OMRR MAC #2222 Geneseo | Key Bank | 1,143.20 |
| 2223 | DA OMRR MAC #2223 Purchase | Key Bank | 169.22 |
| 2224 | DA OMRR MAC #2224 New Paltz | Key Bank | 269.40 |
| 2225 | DA OMRR MAC #2225 Canton | Key Bank | 68.24 |
| 2226 | DA OMRR MAC #2226 Plattsburgh | Key Bank | 1,007.69 |
| 2227 | DA OMRR MAC #2227 Potsdam | Key Bank | 1,213.13 |
| 2228 | DA OMRR MAC #2228 Morrisville | Key Bank | 73.16 |
| 2229 | DA OMRR MAC #2229 SUNYIT | Key Bank | 93.05 |
| 2230 | DA OMRR MAC #2230 Cobleskill | Key Bank | 1,197.05 |
| 2239 | DA OMRR MAC #2239 Albany | Key Bank | 1,065.91 |
| 2240 | DA UNALLOCATED FD MAC #2240 System Admin | Key Bank | 1,012.71 |
| **HOMELESS HOUSING ASSISTANCE CORPORATION** | | | |
| 0320 | Social Services Homeless Housing and Assistance Corporation Operating Account | Key Bank | 5,741,833.43 |

**NELSON A. ROCKEFELLER EMPIRE STATE PLAZA PERFORMING ARTS CENTER CORPORATION**

**NYS Register/December 31, 2019**                                                    **Financial Reports**

| 0315 | The Egg | Key Bank | 176,715.85 |
|---|---|---|---|

**NEW YORK CONVENTION CENTER**

| 0300 | Operating Fund | JPMorgan Chase Bank, N.A. | 6,413,105.88 |
|---|---|---|---|

**NEW YORK JOB DEVELOPMENT AUTHORITY**

| 0036 | Special Purpose Fund | Bank of America, N.A. | 3,013,112.13 |
|---|---|---|---|
| 0371 | Series H Commercial Paper | Bank of America, N.A. | 1,231,039.61 |
| 0389 | Daily Demand Special Purpose Bonds Series 1992A-B | JPMorgan Chase Bank, N.A. | 325,814.10 |
| 0423 | Escrow Account for USA Industries Inc. | Key Bank | 37,274.67 |
| 0424 | Escrow Account for Pluritec USA Inc. | Key Bank | 19,782.38 |
| 0426 | Agriculture Loan Program | Key Bank | 12,861.12 |

**NYS AFFORDABLE HOUSING CORPORATION**

| 0491 | Disbursement Account | JPMorgan Chase Bank, N.A. | 475,011.30 |
|---|---|---|---|
| 0520 | Development Account | Key Bank | 12,573,438.58 |
| 0521 | Development Account II | Key Bank | 0.00 |
| 0522 | Repayment Account | Key Bank | 1,204,875.46 |
| 0523 | Recapture Account | Key Bank | 82,387.21 |
| 0880 | Payroll Account | JPMorgan Chase Bank, N.A. | (0.03) |

**NYS DEPARTMENT OF TAXATION AND FINANCE**

| 0510 | Excelsior Linked Deposit Fund | Key Bank | 0.00 |
|---|---|---|---|
| 0600 | World Trade Center Memorial Foundation Fund Account | Bank of America, N.A. | 84,149.50 |
| 0625 | Advance Acct/Imprest Confidential Fund | Bank of America, N.A. | 29,634.93 |
| 0626 | Criminal Investigation Division | Key Bank | 345,571.25 |
| 0778 | PIT/STAR Rebate Exchange Account | JPMorgan Chase Bank, N.A. | 0.00 |
| 0800 | NYS IRS PIT offset account | Key Bank | 2,813,425.81 |
| 0827 | Stock Transfer Incentive Fund | Key Bank | 1,287,768.38 |
| 0847 | Pari-Mutuel Revenue Transfer Account | Key Bank | 0.00 |
| 0848 | Off-Track Bet Tax Revenue Transfer Account | Key Bank | 0.00 |

**NYS ENERGY RESEARCH & DEVELOPMENT AUTHORITY**

| 0028 | Green Jobs - Green New York Fund | Bank of America, N.A. | 0.00 |
|---|---|---|---|
| 0030 | NYS Energy Research and Development Authority | Bank of America, N.A. | (15,872,597.83) |

**NYS HOUSING FINANCE AGENCY**

| 0032 | Operating Fund | Key Bank | 0.00 |
|---|---|---|---|
| 0252 | Energy Conservation/Tenant Health & Safety Improvement Account | JPMorgan Chase Bank, N.A. | 203,111.75 |
| 0254 | Agency Assisted Housing Operation Fund | JPMorgan Chase Bank, N.A. | 1,937,868.44 |
| 0255 | Residual Indebtedness Program Operating Fund | JPMorgan Chase Bank, N.A. | 0.00 |
| 0266 | Community Related Programs Operating Account | Key Bank | 0.00 |
| 0267 | Neighborhood Stabilization Program - Round 1 | JPMorgan Chase Bank, N.A. | 62,646.12 |
| 0270 | Claims Repayment Account | Key Bank | 0.00 |
| 0271 | Pre-Bond Revenue Account | Key Bank | 0.00 |
| 0274 | NYSHFA Special Reserve Fund | JPMorgan Chase Bank, N.A. | 701,582.66 |
| 0277 | Amalgamated Warbasse Houses Construction Defect Repair Fund | JPMorgan Chase Bank, N.A. | 0.00 |
| 0283 | Small Owner's Assistance Program Account | Key Bank | 74,031.52 |
| 0285 | Public Purpose Account | Key Bank | 493,015.36 |
| 0286 | Disbursement Account | Key Bank | 2,899,296.30 |
| 0287 | Infrastructure Development Fund | Key Bank | 197,817.52 |
| 0288 | Mobile Home Cooperative Fund | Key Bank | 23,302.18 |
| 0290 | Low Rent Lease Account | Key Bank | 0.00 |
| 0292 | Homeless Housing Initiatives | Key Bank | 198,761.96 |
| 0294 | Housing Plan Fund | Key Bank | 9,072,621.33 |
| 0301 | HFA - Subsidy Repayment Account | Key Bank | 148,065.03 |
| 0305 | HPD Disbursement Fund | Key Bank | 1,171,022.38 |
| 0879 | Payroll Account | JPMorgan Chase Bank, N.A. | 125,999.24 |

**NYS HOUSING TRUST FUND CORPORATION**

| 0458 | Section 8 Housing Assistance Payment Account | JPMorgan Chase Bank, N.A. | 707,151.60 |
|---|---|---|---|
| 0460 | Escrow Account | M&T Bank | 2,345,428.54 |
| 0461 | Housing Modernization Account | M&T Bank | 1,359,930.94 |
| 0462 | General Custodial Account | M&T Bank | 67,075,658.38 |
| 0463 | General Administrative Account | M&T Bank | 0.00 |
| 0464 | Turnkey Account | M&T Bank | 0.00 |
| 0465 | Home Program Account | M&T Bank | 8,079,123.20 |
| 0466 | Homes for Working Families Account | M&T Bank | 2,274,444.13 |
| 0467 | Section 8 Administrative Account | M&T Bank | 8,728,014.66 |
| 0468 | Small Cities Administrative Account | M&T Bank | 0.00 |
| 0469 | OCR Community Miscellaneous Programs Account | M&T Bank | 11,475,168.87 |
| 0470 | HCV Main Account | Bank of America, N.A. | 14,411,414.93 |
| 0471 | Empire State Relief Fund | M&T Bank | 569,238.45 |
| 0472 | Master Escrow Account | Bank of America, N.A. | 0.00 |
| 0473 | Family Self-Sufficiency Account | Bank of America, N.A. | 3,940,044.96 |
| 0474 | Moderate Rehabilitation Account | Bank of America, N.A. | 0.00 |

**Financial Reports**                                              *NYS Register/December 31, 2019*

| | | | |
|---|---|---|---:|
| 0475 | Reserve Account | Bank of America, N.A. | 1,023,583.99 |
| 0476 | Voucher Fee Account | Bank of America, N.A. | 0.00 |
| 0477 | Five-Year Mainstream Account | Bank of America, N.A. | 0.00 |
| 0480 | OHP Miscellaneous Programs Account | Bank of America, N.A. | 1,867,234.80 |
| 0891 | Small Cities Community Development Block Grant Program | M&T Bank | 796,556.25 |
| 0892 | Disaster Recovery Initiative Account | M&T Bank | 117,996.26 |
| 0893 | Payroll Account for Small Cities CDBG Program | M&T Bank | 158.69 |
| 0895 | HTFC Storm Recovery Payment | M&T Bank | 1,253,976.45 |
| 0899 | HTFC Storm Recovery Lockbox | US Bank | 37,825.83 |

**NYS INSURANCE DEPARTMENT**

| | | | |
|---|---|---|---:|
| 0001 | Property/Casualty Insurance Security Fund | Key Bank | 132,776.29 |
| 0002 | Public Motor Vehicle Security Fund | JPMorgan Chase Bank, N.A. | 503,250.36 |
| 0003 | Workers' Compensation Security Fund | JPMorgan Chase Bank, N.A. | 439,599.13 |
| 0004 | Medical Indemnity Fund | JPMorgan Chase Bank, N.A. | (579,661.64) |

**NYS TEACHERS RETIREMENT SYSTEM**

| | | | |
|---|---|---|---:|
| 00S2 | Master Funding Account | State Street Bank & Trust Co. | 0.00 |
| 0052 | Main Account | JPMorgan Chase Bank, N.A. | 1,370,571.99 |
| 0853 | Excess Benefit Fund | JPMorgan Chase Bank, N.A. | 3,511,751.00 |
| 0854 | NYSTRS Electronic Value Transfer System | JPMorgan Chase Bank, N.A. | 0.00 |

**STATE INSURANCE FUND**

| | | | |
|---|---|---|---:|
| 0053 | State Insurance Fund | Bank of America, N.A. | 42,638,747.18 |
| 0054 | State Insurance Fund | Bank of America, N.A. | 2,112,041.25 |
| 0055 | State Insurance Fund | Bank of America, N.A. | 1,766,736.83 |
| 0861 | Disability Benefits Fund Tax Escrow Account | Bank of America, N.A. | 27,020.83 |

**STATE UNIVERSITY CONSTRUCTION FUND**

| | | | |
|---|---|---|---:|
| 0034 | Income Fund | Key Bank | 941,183.26 |
| 0075 | Educational Facilities Revenue Bonds Debt Service Account | Key Bank | 31,705.96 |
| 0870 | Deductions Account | Key Bank | 261,780.72 |
| 0871 | Bio-Tech Incubator at Farmingdale | Key Bank | 0.00 |

**WORKERS COMPENSATION BOARD**

| | | | |
|---|---|---|---:|
| 0006 | Fund for Reopened Cases | Bank of America, N.A. | 0.00 |
| 0012 | WCB Asset Transfer Account | Bank of America, N.A. | 0.00 |
| 0013 | WCB Assessment Revenue Clearing | Bank of America, N.A. | 0.00 |
| 008K | Special Fund for Disability Benefits | Key Bank | 42,429.43 |

The above balances represent funds deposited in various banking institutions per the records of the Department of Taxation and Finance, Division of Treasury, and published in accordance with Section 107 of the State Finance Law.

*Division of the Treasury, Department of Taxation and Finance*

**Christopher Curtis** *Deputy Commissioner and State Treasurer*





STATE OF NEW YORK
OFFICE OF OPERATIONS

DIVISION OF PAYROLL, ACCOUNTING AND REVENUE SERVICES
BUREAU OF FINANCIAL REPORTING AND OIL SPILL REMEDIATION

THOMAS P. DINAPOLI
STATE COMPTROLLER

---

COMPTROLLER'S MONTHLY REPORT TO THE LEGISLATURE ON STATE FUNDS - CASH BASIS OF ACCOUNTING

November 30, 2019

## TABLE OF CONTENTS

**Combined Statements of Cash Receipts, Disbursements and Changes in Fund Balances**

| | |
|---|---|
| Exhibit A  Governmental Funds | 2 |
| Exhibit A Supplemental  Governmental Funds - State Operating | 3 |
| Exhibit A Notes  Governmental Funds Footnotes | 4 |
| Exhibit B  Proprietary Funds | 6 |
| Exhibit C  Trust Funds | 7 |
| Exhibit D Governmental  Governmental Funds - Budgetary Basis - Financial Plan and Actual - Governmental | 8 |
| Exhibit D State Operating  Governmental Funds - Budgetary Basis - Financial Plan and Actual - State Operating | 9 |
| Exhibit D General Fund  Governmental Funds - Budgetary Basis - Financial Plan and Actual - General Fund | 10 |
| Exhibit D Special Revenue  Governmental Funds - Budgetary Basis - Financial Plan and Actual - Special Revenue | 11 |
| Exhibit D Special Revenue State/Federal  Governmental Funds - Budgetary Basis - Financial Plan and Actual - Special Revenue State and Federal | 12 |
| Exhibit D Debt  Governmental Funds - Budgetary Basis - Financial Plan and Actual - Debt Service | 13 |
| Exhibit D Capital Projects  Governmental Funds - Budgetary Basis - Financial Plan and Actual - Capital Projects | 14 |
| Exhibit D Capital Projects State/Federal  Governmental Funds - Budgetary Basis - Financial Plan and Actual - Capital Projects State and Federal | 15 |
| Exhibit E  Comparative Schedule of Tax Receipts | 16 |
| Cash Flow - Governmental  Governmental Funds - Governmental | 17 |
| Cash Flow - State Operating  Governmental Funds - State Operating | 19 |

**Combining Statements of Cash Receipts, Disbursements and Changes in Fund Balances**

| | |
|---|---|
| Exhibit F  General Fund - Statement of Cash Flow | 21 |
| Exhibit G  Special Revenue Funds Combined - Statement of Cash Flow | 23 |
| Exhibit G State  Special Revenue Funds State - Statement of Cash Flow | 25 |
| Exhibit G Federal  Special Revenue Funds Federal - Statement of Cash Flow | 27 |
| Exhibit H  Debt Service Funds - Statement of Cash Flow | 29 |
| Exhibit I  Capital Projects Funds Combined - Statement of Cash Flow | 30 |
| Exhibit I State  Capital Projects Funds State - Statement of Cash Flow | 32 |
| Exhibit I Federal  Capital Projects Funds Federal - Statement of Cash Flow | 34 |
| Exhibit J  Enterprise Funds - Statement of Cash Flow | 35 |
| Exhibit K  Internal Service Funds - Statement of Cash Flow | 36 |
| Exhibit L  Pension Trust Funds - Statement of Cash Flow | 37 |
| Exhibit M  Private Purpose Trust Funds - Statement of Cash Flow | 38 |

**Supplementary Schedules**

| | |
|---|---|
| Schedule 1  Governmental Funds - Summary of Cash Receipts, Disbursements and Changes in Fund Balances | 39 |
| Schedule 2  Proprietary Funds - Summary of Cash Receipts, Disbursements and Changes in Fund Balances | 42 |
| Schedule 3  Fiduciary Funds - Summary of Cash Receipts, Disbursements and Changes in Fund Balances | 43 |
| Schedule 4  Sole Custody and Investment Accounts - Statement of Cash Receipts and Disbursements | 44 |
| Schedule 5  Debt Service Funds - Statement of Direct State Debt Activity | 45 |
| Schedule 5a  Debt Service Funds - Financing Agreements | 46 |
| Schedule 6  Summary of the Operating Fund Investments | 47 |
| Appendix A  HCRA Resources Fund - Statement of Receipts and Disbursements by Account | 48 |
| Appendix B  HCRA Resources Fund - Statement of Program Disbursements | 49 |
| Appendix C  HCRA Public Goods Pool - Statement of Cash Flow | 50 |
| Appendix D  HCRA Medical Disproportionate Share - Statement of Cash Flow | 51 |
| Appendix E  Summary of Off-Budget Spending Report | 52 |
| Appendix F  Schedule of Month-End Temporary Loans Outstanding | 53 |
| Appendix G  Dedicated Infrastructure Investment Fund - Statement of Receipts and Disbursements | 57 |

NYS Register/December 31, 2019     Financial Reports

EXHIBIT A

**STATE OF NEW YORK**
**GOVERNMENTAL FUNDS**
**COMBINED STATEMENT OF CASH RECEIPTS, DISBURSEMENTS AND CHANGES IN FUND BALANCES**
(amounts in millions)

| | GENERAL Month of Nov 2019 | GENERAL 8 Mos Ended Nov 30, 2019 | SPECIAL REVENUE Month of Nov 2019 | SPECIAL REVENUE 8 Mos Ended Nov 30, 2019 | DEBT SERVICE Month of Nov 2019 | DEBT SERVICE 8 Mos Ended Nov 30, 2019 | CAPITAL PROJECTS Month of Nov 2019 | CAPITAL PROJECTS 8 Mos Ended Nov 30, 2019 | TOTAL Month of Nov 2019 | TOTAL 8 Mos Ended Nov 30, 2019 | TOTAL Month of Nov 2018 | TOTAL 8 Mos Ended Nov 30, 2018 | Year Over Year $ Increase (Decrease) | Year Over Year % Increase/Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS:** | | | | | | | | | | | | | | |
| Personal Income Tax (7) | 1,231.7 | 16,511.4 | 3.0 | 3.2 | 1,234.7 | 16,514.6 | | | 2,469.4 | 33,029.2 | 2,188.5 | 28,424.9 | 4,604.3 | 16.2% |
| Consumption/Use Taxes (4) | 635.3 | 5,321.2 | 149.1 | 1,319.0 | 584.0 | 4,917.0 | 43.9 | 426.3 | 1,412.3 | 11,983.5 | 1,351.1 | 11,518.2 | 465.3 | 4.0% |
| Business Taxes | 56.8 | 3,058.6 | 75.7 | 1,111.6 | | | 52.3 | 660.6 | 184.8 | 4,630.8 | 98.5 | 4,012.2 | 618.6 | 15.4% |
| Other Taxes (3) | 89.0 | 683.5 | | | 87.8 | 700.1 | 11.9 | 71.5 | 188.7 | 1,455.1 | 219.4 | 1,504.6 | (49.5) | -3.3% |
| Miscellaneous Receipts (4) | 330.5 | 2,289.6 | 1,252.8 | 12,299.6 | 25.2 | 322.4 | 128.8 | 3,468.4 | 1,737.3 | 18,359.0 | 2,699.4 | 18,793.3 | (394.3) | -2.1% |
| Federal Receipts | 0.1 | 0.5 | 5,209.9 | 41,749.9 | | 36.6 | 184.3 | 1,347.4 | 5,394.3 | 43,129.8 | 4,978.0 | 40,613.6 | 2,516.0 | 6.2% |
| Total Receipts | 2,343.4 | 27,864.8 | 6,690.5 | 56,477.3 | 1,931.7 | 22,490.9 | 421.2 | 5,784.2 | 11,388.8 | 112,627.2 | 11,534.9 | 104,866.8 | 7,760.4 | 7.4% |
| **DISBURSEMENTS (3,4)** | | | | | | | | | | | | | | |
| Local Assistance Grants: | | | | | | | | | | | | | | |
| Education | 1,741.4 | 14,543.8 | 378.6 | 5,484.1 | | | 18.2 | 120.4 | 2,138.2 | 20,158.3 | 1,895.0 | 19,298.0 | 860.3 | 4.5% |
| Environment and Recreation | 0.1 | 2.1 | 0.2 | 1.7 | | | 11.9 | 134.0 | 12.2 | 137.8 | 7.6 | 116.3 | 21.5 | 18.5% |
| General Government | 30.9 | 738.3 | 22.6 | 169.5 | | | 18.6 | 565.3 | 72.1 | 1,473.1 | 173.9 | 1,549.4 | (76.3) | -4.9% |
| Public Health: | | | | | | | | | | | | | | |
| Medicaid | 1,933.4 | 13,564.8 | 4,013.7 | 30,956.4 | | | | | 5,947.1 | 44,521.2 | 5,208.7 | 41,793.1 | 2,728.1 | 6.5% |
| Other Public Health | 101.5 | 1,471.4 | 455.4 | 4,716.9 | | | 34.3 | 313.7 | 591.2 | 6,502.0 | 722.3 | 6,813.4 | (310.4) | -4.6% |
| Public Safety | 10.2 | 115.1 | 182.2 | 630.8 | | | 14.8 | 37.6 | 207.2 | 783.5 | 260.5 | 870.6 | (87.1) | -3.2% |
| Public Welfare | 459.7 | 1,716.2 | 514.8 | 3,118.3 | | | 83.1 | 241.2 | 1,057.6 | 5,075.7 | 414.4 | 4,918.8 | 158.9 | 3.2% |
| Support and Regulate Business | 7.1 | 97.8 | 15.8 | 46.0 | | | 43.8 | 597.1 | 66.7 | 740.9 | 34.4 | 677.0 | 63.9 | 9.4% |
| Transportation | 24.1 | 88.1 | 479.5 | 2,789.6 | | | 36.8 | 1,076.0 | 540.4 | 3,953.7 | 560.7 | 4,109.3 | (155.6) | -14.0% |
| Total Local Assistance Grants | 4,308.4 | 32,335.6 | 6,072.8 | 47,925.3 | | | 261.5 | 3,085.3 | 10,642.7 | 83,346.2 | 9,277.5 | 80,151.9 | 3,194.3 | 4.0% |
| Departmental Operations: | | | | | | | | | | | | | | |
| Personal Service | 684.6 | 6,155.9 | 445.2 | 3,958.6 | | | | | 1,129.8 | 10,114.5 | 1,140.3 | 9,751.0 | 363.5 | 3.7% |
| Non-Personal Service | 147.6 | 1,632.3 | 384.6 | 2,786.5 | | | | | 514.4 | 4,418.8 | 478.6 | 4,378.4 | 40.4 | 0.9% |
| General State Charges | 409.8 | 5,710.0 | 155.9 | 865.1 | | | | | 565.7 | 6,575.1 | 575.8 | 6,521.2 | 53.9 | 0.8% |
| Debt Service, Including Payments on Financing Agreements | | | 2.2 | 25.3 | 74.9 | 1,100.0 | | | 77.1 | 1,125.3 | 47.8 | 1,429.5 | (304.2) | -21.7% |
| Capital Projects (1) | | | | | | | 705.0 | 4,848.0 | 705.0 | 4,848.0 | 678.8 | 4,877.6 | (29.6) | -0.6% |
| Total Disbursements | 5,560.4 | 45,833.8 | 7,038.5 | 55,510.2 | 77.1 | 1,125.3 | 986.5 | 7,933.3 | 13,632.5 | 110,402.6 | 12,198.3 | 107,084.3 | 3,318.3 | 3.1% |
| Excess (Deficiency) of Receipts over Disbursements | (3,207.0) | (17,968.0) | (348.0) | 967.1 | 1,854.6 | 21,365.6 | (545.3) | (2,139.1) | (2,245.7) | 2,224.6 | (663.4) | (2,217.5) | 4,442.1 | 200.3% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | |
| Bond Proceeds (net) | | | | | | | | | | | | | | 0.0% |
| Transfers from Other Funds (2) | 1,604.6 | 22,252.9 | 171.1 | 1,895.5 | 93.5 | 1,683.0 | 494.6 | 2,840.5 | 2,363.8 | 28,651.9 | 2,524.7 | 25,356.3 | 3,295.6 | 13.0% |
| Transfers to Other Funds (2) | (641.4) | (4,918.2) | (90.2) | (1,105.5) | (1,590.2) | (22,131.1) | (45.4) | (605.6) | (2,367.2) | (28,760.6) | (2,528.7) | (25,372.1) | 3,388.5 | 13.4% |
| Total Other Financing Sources (Uses) | 963.2 | 17,334.7 | 80.9 | 799.0 | (1,496.7) | (20,448.1) | 449.2 | 2,234.7 | (3.4) | (108.7) | (2.0) | (15.8) | (92.9) | -588.0% |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | (2,243.8) | (634.3) | (267.1) | 1,757.1 | 357.9 | 897.5 | (96.1) | 95.6 | (2,248.1) | 2,115.9 | (665.4) | (2,233.1) | 4,349.2 | 194.7% |
| Beginning Fund Balances (Deficits) | 8,815.2 | 7,205.7 | 5,866.6 | 3,842.4 | 604.4 | 64.8 | (946.2) | (1,137.0) | 14,340.0 | 9,975.0 | 11,181.1 | 12,749.0 | (2,774.0) | -21.8% |
| Ending Fund Balances (Deficits) | 6,571.4 | 6,571.4 | 5,599.5 | 5,599.5 | 962.3 | 962.3 | (1,042.3) | (1,042.3) | 12,090.9 | 12,090.9 | 10,515.7 | 10,515.7 | 1,575.2 | 15.0% |

2

**Financial Reports**  NYS Register/December 31, 2019

EXHIBIT A
SUPPLEMENTAL

STATE OF NEW YORK
GOVERNMENTAL FUNDS-STATE OPERATING (*)
COMBINED STATEMENT OF CASH RECEIPTS, DISBURSEMENTS AND CHANGES IN FUND BALANCES
(amounts in millions)

| | GENERAL | | STATE SPECIAL REVENUE (**) | | DEBT SERVICE | | TOTAL STATE OPERATING FUNDS | | | | $ Increase/ (Decrease) | % Increase/ Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | MONTH OF NOV 2019 | 8 MOS. ENDED NOV 30, 2019 | MONTH OF NOV 2019 | 8 MOS. ENDED NOV 30, 2019 | MONTH OF NOV 2019 | 8 MOS. ENDED NOV 30, 2019 | MONTH OF NOV 2019 | 8 MOS. ENDED NOV 30, 2019 | MONTH OF NOV 2018 | 8 MOS. ENDED NOV 30, 2018 | | |
| **RECEIPTS:** | | | | | | | | | | | | |
| Personal Income Tax (7) | $ 1,231.7 | $ 16,511.4 | $ 3.0 | $ 3.2 | $ - | $ 16,514.6 | $ 2,469.4 | $ 33,029.2 | $ 2,188.5 | $ 28,424.9 | $ 4,604.3 | 16.2% |
| ConsumptionUse Taxes (4) | 635.3 | 5,321.2 | 149.1 | 1,319.0 | 584.0 | 4,917.0 | 1,368.4 | 11,557.2 | 1,303.1 | 11,085.3 | 471.9 | 4.3% |
| Business Taxes | 56.8 | 3,058.6 | 75.7 | 1,111.6 | - | - | 132.5 | 4,170.2 | 43.1 | 3,567.0 | 603.2 | 16.9% |
| Other Taxes (3) | 89.0 | 683.5 | - | - | 87.8 | 700.1 | 176.8 | 1,383.6 | 207.5 | 1,433.1 | (49.5) | -3.5% |
| Miscellaneous Receipts (4) | 330.5 | 2,289.6 | 1,233.7 | 12,140.6 | 25.2 | 322.4 | 1,589.4 | 14,752.6 | 2,591.5 | 16,052.3 | (1,299.7) | -8.1% |
| Federal Receipts | 0.1 | 0.5 | 0.1 | 17.7 | - | 36.8 | 0.2 | 55.0 | 0.1 | 34.4 | 20.6 | 59.9% |
| Total Receipts | 2,343.4 | 27,864.8 | 1,461.6 | 14,592.1 | 1,931.7 | 22,490.9 | 5,736.7 | 64,947.8 | 6,333.8 | 60,597.0 | 4,350.8 | 7.2% |
| **DISBURSEMENTS:** | | | | | | | | | | | | |
| Local Assistance Grants: (3,4) | | | | | | | | | | | | |
| Education | 1,741.4 | 14,543.8 | 149.4 | 3,160.4 | - | - | 1,890.8 | 17,704.2 | 1,715.7 | 16,676.3 | 1,027.9 | 6.2% |
| Environment and Recreation | 0.1 | 2.1 | 0.2 | 1.0 | - | - | 0.3 | 3.1 | 0.1 | 2.3 | 0.8 | 34.8% |
| General Government | 30.9 | 738.3 | 20.2 | 135.8 | - | - | 51.1 | 874.1 | 25.6 | 845.1 | 29.0 | 3.4% |
| Public Health: | | | | | | | | | | | | |
| Medicaid | 1,933.4 | 13,564.8 | 408.1 | 4,000.4 | - | - | 2,341.5 | 17,565.2 | 2,061.9 | 15,831.6 | 1,733.6 | 11.0% |
| Other Public Health | 101.5 | 1,471.4 | 41.6 | 558.2 | - | - | 143.1 | 2,029.6 | 156.8 | 2,184.0 | (154.4) | -7.1% |
| Public Safety | 10.2 | 115.1 | 12.3 | 125.8 | - | - | 22.5 | 240.9 | 19.5 | 224.2 | 16.7 | 7.4% |
| Public Welfare | 459.7 | 1,716.2 | 1.2 | 4.5 | - | - | 460.9 | 1,720.7 | 132.6 | 1,531.2 | 189.5 | 12.4% |
| Support and Regulate Business | 7.1 | 97.8 | 13.9 | 38.1 | - | - | 21.0 | 135.9 | 25.1 | 137.6 | (1.7) | -1.2% |
| Transportation | 24.1 | 86.1 | 474.8 | 2,456.7 | - | - | 498.9 | 2,542.8 | 464.4 | 2,805.5 | (262.7) | -9.3% |
| Total Local Assistance Grants | 4,308.4 | 32,335.6 | 1,121.7 | 10,480.9 | - | - | 5,430.1 | 42,816.5 | 4,601.7 | 40,235.8 | 2,580.7 | 6.4% |
| Departmental Operations: | | | | | | | | | | | | |
| Personal Service | 684.6 | 6,155.9 | 398.5 | 3,523.0 | - | - | 1,083.1 | 9,678.9 | 1,092.5 | 9,306.5 | 372.4 | 4.0% |
| Non-Personal Service | 147.6 | 1,832.3 | 281.8 | 1,929.0 | 2.2 | 25.3 | 431.6 | 3,586.6 | 405.8 | 3,551.6 | 35.0 | 1.0% |
| General State Charges | 409.8 | 5,710.0 | 129.7 | 648.8 | - | - | 539.5 | 6,358.8 | 549.7 | 6,218.4 | 140.4 | 2.3% |
| Debt Service, Including Payments on Financing Agreements | - | - | - | - | 74.9 | 1,100.0 | 74.9 | 1,100.0 | 47.8 | 1,404.2 | (304.2) | -21.7% |
| Capital Projects | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Total Disbursements | 5,550.4 | 45,833.8 | 1,931.7 | 16,581.7 | 77.1 | 1,125.3 | 7,559.2 | 63,540.8 | 6,697.5 | 60,716.5 | 2,824.3 | 4.7% |
| Excess (Deficiency) of Receipts over Disbursements | (3,207.0) | (17,969.0) | (470.1) | (1,989.6) | 1,854.6 | 21,365.6 | (1,822.5) | 1,407.0 | (363.7) | (119.5) | 1,526.5 | -1,277.4% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | |
| Transfers from Other Funds (2) | 1,604.6 | 22,252.9 | 185.7 | 2,309.5 | 93.5 | 1,663.0 | 1,883.8 | 26,225.4 | 2,009.2 | 23,061.8 | 3,163.6 | 13.7% |
| Transfers to Other Funds (2) | (641.4) | (4,918.2) | (4.8) | (349.4) | (1,590.2) | (22,131.1) | (2,236.4) | (27,398.7) | (2,276.9) | (24,106.2) | 3,292.5 | 13.7% |
| Total Other Financing Sources (Uses) | 963.2 | 17,334.7 | 180.9 | 1,960.1 | (1,496.7) | (20,468.1) | (352.6) | (1,173.3) | (267.7) | (1,044.4) | (128.9) | -12.3% |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | (2,243.8) | (634.3) | (289.2) | (29.5) | 357.9 | 897.5 | (2,175.1) | 233.7 | (631.4) | (1,163.9) | 1,397.6 | 120.1% |
| Beginning Fund Balances (Deficits) | 8,815.2 | 7,205.7 | 5,350.5 | 5,090.8 | 604.4 | 64.8 | 14,770.1 | 12,361.3 | 13,074.1 | 13,606.6 | (1,245.3) | -9.2% |
| Ending Fund Balances (Deficits) | $ 6,571.4 | $ 6,571.4 | $ 5,061.3 | $ 5,061.3 | $ 962.3 | $ 962.3 | $ 12,595.0 | $ 12,595.0 | $ 12,442.7 | $ 12,442.7 | $ 152.3 | 1.2% |

(*) State Operating Funds are comprised of the General Fund, State Special Revenue Funds supported by activities from dedicated revenue sources (including operating transfers from Federal Funds) and Debt Service Funds.
(**) Eliminations between Special Revenue – State and Federal Funds are not included.

3

EXHIBIT A NOTES
November 2019

**GOVERNMENTAL FUNDS FOOTNOTES**

1. Certain disbursements from Capital Projects funds are financed by operating transfers from other funds, proceeds of State bonds and notes, and reimbursements received from Public Authorities and the Federal Government. The amounts shown below represent disbursements to be reimbursed in future months from the sources indicated:

| | |
|---|---|
| Urban Development Corporation (Correctional Facilities) | $256.4 million |
| Urban Development Corporation (Youth Facilities) | 14.5 |
| Housing Finance Agency (HFA) | 84.8 |
| Housing Assistance Fund | 12.9 |
| Dormitory Authority (Mental Hygiene) | 385.2 |
| Dormitory Authority and State University Income Fund | 612.6 |
| Federal Capital Projects | 551.2 |
| State bond and note proceeds | 100.4 |

2. Operating Transfers constitute legally authorized transfers from a fund receiving revenues to a fund through which disbursements will ultimately be made. The more significant transfers include:

**General Fund** "Transfers to Other Funds" are as follows:

| | |
|---|---|
| State Capital Projects Fund | $1,822.5 million |
| General Debt Service Fund | 335.4 |
| Banking Services Account | 25.0 |
| Building Administration Account | 8.0 |
| Business Service Center Account | 8.1 |
| Centralized Tech Services Account | 11.5 |
| Court Facilities Incentive Aid Fund | 65.3 |
| Dedicated Highway & Bridge Trust Fund | 33.0 |
| Dedicated Infrastructure Investment Fund | 840.0 |
| Dedicated Mass Transportation - Railroad Account | 4.4 |
| Dedicated Mass Transportation - Transit Authority Account | 24.4 |
| Dedicated Mass Transportation - (Non-MTA) | 2.5 |
| Environmental Protection Fund | 28.0 |
| Housing Debt Service Fund | 2.7 |
| MTA Financial Assistance Fund | 244.3 |
| MTA Operating Assistance Fund | 31.6 |
| NY Central Business District Trust | 62.5 |
| NYC County Courts Operating Account | 3.2 |
| Recruitment Incentive Fund | 2.1 |
| SUNY - Income Fund | 1,104.5 |

Also included in the General Fund are transfers representing payments for patients residing in State-operated Health, Mental Hygiene and State University facilities to Debt Service funds ($5.6m), and the State University Income Fund ($253.3m).

$72/4(b)0 was added to the State Finance Law in 2010 to permit the State's General Debt Service Fund to maintain a cash reserve for the payment of debt service, and related expenses, during the current fiscal quarter. As of November 30, 2019 - pursuant to a certification of the Budget Director - the reserve amount is ($80.0m), which was funded by a transfer from the General Fund.

**Special Revenue Funds** "Transfers To Other Funds" includes transfers to Mental Health Services Fund and Department of Health Income Fund ($722.1m) representing the federal share of Medicaid payments for patients residing in State-operated Health and Mental Hygiene facilities, the General Debt Services Fund ($88.9m), Medicaid Management Information System Escrow Fund ($57.3m), SUNY Capital Projects Fund ($48.9m), State Capital Projects Fund ($1.1m) and All Other Capital Projects Fund ($95.6m).

Also included in Special Revenue funds are transfers to the General Fund from the following:

| | |
|---|---|
| Chemical Dependence Service Fund | $101.3 million |
| Federal Dept. of Health & Human Services Fund | 11.6 |
| Federal Education Fund | 1.3 |
| Federal Employment & Training Grants | 1.2 |
| NYC Assessment Account | 22.9 |
| SUNY Income Fund | 34.3 |
| Training and Education Program on OSHA | 1.4 |
| Unemployment Insurance Administration Fund | 19.5 |
| Unemployment Insurance, Interest & Penalty | 11.6 |

**Debt Service Funds** "Transfers To Other Funds" includes transfers to the General Fund from the following:

| | |
|---|---|
| Revenue Bond Tax Fund | $16,406.0 million |
| Local Government Assistance Tax Fund | 2,438.5 |
| Sales Tax Revenue Bond Tax Fund | 1,881.3 |
| Clean Water/Clean Air Fund | 662.5 |
| Mental Health Services Fund | 648.0 |

Also included in Debt Service funds are transfers to Special Revenue funds representing receipts in excess of lease-purchase obligations that are used to finance a portion of the operating expenses for the Department of Health ($96.9m).

**Capital Projects Funds** "Transfers To Other Funds" includes transfers to the General Fund ($15.9m), the General Debt Service Fund - Lease Purchase ($376.6m), and the Revenue Bond Tax ($213.4m).

3. Part UU of Section 11 of Chapter 59 of the Laws of 2018 amended section 80(b) of the tax law, whereby the receipts from the metropolitan commuter transportation mobility tax will be paid into the metropolitan transportation authority finance fund pursuant to statute but without appropriation. The result is that neither the mobility tax receipts nor the related grant disbursements to the MTA are recorded in the State funds. The MTA mobility tax activity is now reported in Schedule 4 as part of the MTA State Assistance fund group.

4. Part FF of Chapter 58 of the Laws of 2019 amended paragraphs (b-1) and (c-3) of subdivision two of section 503 of the vehicle and traffic law, article 29-a of the tax law, article 17-c of the vehicle and traffic law and section 1166-a of the tax law, whereby the receipts from the various taxes and fees will be paid into the metropolitan transportation authority special assistance fund pursuant to statute but without appropriation. The activity is now reported in Schedule 4 as part of the MTA State Assistance fund group.

5. Part NNN of Chapter 59 of the Laws of 2018 added Tax Law Article 29-C on April 1, 2018 with collection of the for-hire congestion surcharge scheduled to begin on January 1, 2019. Amounts collected will be paid into the NYC transportation fund pursuant to statute but without appropriation. The result is that neither the surcharge nor the related disbursements to MTA are recorded in State Funds. The for-hire congestion surcharge activity is reported in Schedule 4 as part of the MTA State Assistance fund group.

6. Part OOO of Chapter 59 of the Laws of 2019 added to and amended Tax Law Article 31. Section 1402-b added an additional real estate transfer tax to residential property over $2 million, in cities with a population of over 1 million. Section 1421(b) of the tax law was amended directing these taxes be remitted to the MTA pursuant to statute but without appropriation. This activity is reported in Schedule 4 as part of the MTA State Assistance fund group.

4

**EXHIBIT A NOTES**
November 2019

5

**GOVERNMENTAL FUNDS FOOTNOTES.**

7. A portion of Personal Income Tax receipts is transferred to the State Special Revenue School Tax Relief (STAR) Fund to be used to reimburse school districts for the STAR property tax exemptions for homeowners and payments to homeowners for the STAR Property Rebate Program.  School Tax Relief payments were ($3.2m) as of November 30, 2019.

**Financial Reports**

EXHIBIT B

STATE OF NEW YORK
PROPRIETARY FUNDS
COMBINED STATEMENT OF CASH RECEIPTS, DISBURSEMENTS AND CHANGES IN FUND BALANCES
(amounts in millions)

| | ENTERPRISE | | INTERNAL SERVICE | | TOTAL PROPRIETARY FUNDS | | | | YEAR OVER YEAR | |
|---|---|---|---|---|---|---|---|---|---|---|
| | MONTH OF NOV. 2019 | 8 MOS. ENDED NOV. 30, 2019 | MONTH OF NOV. 2019 | 8 MOS. ENDED NOV. 30, 2019 | MONTH OF NOV. 2019 | 8 MOS. ENDED NOV. 30, 2019 | MONTH OF NOV. 2018 | 8 MOS. ENDED NOV. 30, 2018 | $ Increase/ (Decrease) | % Increase/ Decrease |
| **RECEIPTS:** | | | | | | | | | | |
| Miscellaneous Receipts | $ 5.7 | $ 61.0 | $ 57.0 | $ 364.6 | $ 62.7 | $ 425.6 | $ 40.6 | $ 367.8 | $ 57.8 | 15.7% |
| Federal Receipts | 1.0 | 7.8 | - | - | 1.0 | 7.8 | 1.0 | 8.2 | (0.4) | -4.9% |
| Unemployment Taxes | 151.2 | 1,256.7 | - | - | 151.2 | 1,256.7 | 141.4 | 1,239.6 | 17.1 | 1.4% |
| Total Receipts | 157.9 | 1,325.5 | 57.0 | 364.6 | 214.9 | 1,690.1 | 183.0 | 1,615.6 | 74.5 | 4.6% |
| **DISBURSEMENTS:** | | | | | | | | | | |
| Departmental Operations: | | | | | | | | | | |
| Personal Service | 2.5 | 13.0 | 9.6 | 86.1 | 12.1 | 99.1 | 8.2 | 76.3 | 22.8 | 29.9% |
| Non-Personal Service | 4.8 | 41.7 | 48.1 | 281.7 | 52.9 | 323.4 | 33.5 | 322.7 | 0.7 | 0.2% |
| General State Charges | 0.7 | 1.1 | 4.7 | 36.3 | 5.4 | 37.4 | 5.1 | 56.0 | (18.6) | -33.2% |
| Unemployment Benefits | 152.2 | 1,265.2 | | | 152.2 | 1,265.2 | 142.3 | 1,247.7 | 17.5 | 1.4% |
| Total Disbursements | 160.2 | 1,321.0 | 62.4 | 404.1 | 222.6 | 1,725.1 | 189.1 | 1,702.7 | 22.4 | 1.3% |
| Excess (Deficiency) of Receipts Over Disbursements | (2.3) | 4.5 | (5.4) | (39.5) | (7.7) | (35.0) | (6.1) | (87.1) | 52.1 | 59.8% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | |
| Transfers from Other Funds | - | - | 3.6 | 52.6 | 3.6 | 52.6 | 2.1 | 46.7 | 5.9 | 12.6% |
| Transfers to Other Funds | - | - | (0.2) | (1.1) | (0.2) | (1.1) | (0.2) | (7.2) | (6.1) | -84.7% |
| Total Other Financing Sources (Uses) | - | - | 3.4 | 51.5 | 3.4 | 51.5 | 1.9 | 39.5 | 12.0 | 30.4% |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | (2.3) | 4.5 | (2.0) | 12.0 | (4.3) | 16.5 | (4.2) | (47.6) | 64.1 | 134.7% |
| Beginning Fund Balances (Deficits) | 33.4 | 26.6 | (288.7) | (302.7) | (255.3) | (276.1) | (288.0) | (244.6) | (31.5) | -12.9% |
| Ending Fund Balances (Deficits) | $ 31.1 | $ 31.1 | $ (290.7) | $ (290.7) | $ (259.6) | $ (259.6) | $ (292.2) | $ (292.2) | $ 32.6 | 11.2% |

6

147

EXHIBIT C

**STATE OF NEW YORK**
**TRUST FUNDS**
**COMBINED STATEMENT OF CASH RECEIPTS, DISBURSEMENTS AND CHANGES IN FUND BALANCES**
(amounts in millions)

| | PENSION | | PRIVATE PURPOSE | | TOTAL TRUST FUNDS | | | | YEAR OVER YEAR | |
|---|---|---|---|---|---|---|---|---|---|---|
| | MONTH OF NOV. 2019 | 8 MOS. ENDED NOV. 30, 2019 | MONTH OF NOV. 2019 | 8 MOS. ENDED NOV. 30, 2019 | MONTH OF NOV. 2019 | 8 MOS. ENDED NOV. 30, 2019 | MONTH OF NOV. 2018 | 8 MOS. ENDED NOV. 30, 2018 | $ Increase/ (Decrease) | % Increase/ Decrease |
| **RECEIPTS:** | | | | | | | | | | |
| Miscellaneous Receipts | $ 5.3 | $ 76.5 | $ 0.1 | $ 1.0 | $ 5.4 | $ 77.5 | $ 5.4 | $ 80.3 | $ (2.8) | -3.5% |
| Total Receipts | 5.3 | 76.5 | 0.1 | 1.0 | 5.4 | 77.5 | 5.4 | 80.3 | (2.8) | -3.5% |
| **DISBURSEMENTS:** | | | | | | | | | | |
| Departmental Operations: | | | | | | | | | | |
| Personal Service | 5.3 | 46.8 | - | 0.1 | 5.3 | 46.9 | 5.3 | 46.7 | 0.2 | 0.4% |
| Non-Personal Service | 1.5 | 9.8 | - | - | 1.5 | 9.8 | 1.1 | 9.1 | 0.7 | 7.7% |
| General State Charges | 3.3 | 24.9 | - | 0.1 | 3.3 | 25.0 | 3.2 | 35.6 | (10.6) | -29.8% |
| Total Disbursements | 10.1 | 81.5 | - | 0.2 | 10.1 | 81.7 | 9.6 | 91.4 | (9.7) | -10.6% |
| Excess (Deficiency) of Receipts Over Disbursements | (4.8) | (5.0) | 0.1 | 0.8 | (4.7) | (4.2) | (4.2) | (11.1) | 6.9 | 62.2% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | |
| Transfers from Other Funds | - | - | - | - | - | - | - | - | - | 0.0% |
| Transfers to Other Funds | - | - | - | - | - | - | - | - | - | 0.0% |
| Total Other Financing Sources (Uses) | - | - | - | - | - | - | - | - | - | 0.0% |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | (4.8) | (5.0) | 0.1 | 0.8 | (4.7) | (4.2) | (4.2) | (11.1) | 6.9 | 62.2% |
| Beginning Fund Balances (Deficits) | (3.2) | (3.0) | 13.9 | 13.2 | 10.7 | 10.2 | 3.0 | 9.9 | 0.3 | 3.0% |
| Ending Fund Balances (Deficits) | $ (8.0) | $ (8.0) | $ 14.0 | $ 14.0 | $ 6.0 | $ 6.0 | $ (1.2) | $ (1.2) | $ 7.2 | 600.0% |

7

EXHIBIT D

STATE OF NEW YORK
BUDGETARY BASIS - FINANCIAL PLAN AND ACTUAL
FISCAL YEAR 2019-2020
FOR EIGHT MONTHS ENDED NOVEMBER 30, 2019
(amounts in millions)

| | | ALL GOVERNMENTAL FUNDS | | | |
| | Enacted Financial Plan (*) | Updated Financial Plan (**) | Actual | Actual Over/(Under) Enacted Financial Plan | Actual Over/(Under) Updated Financial Plan |
|---|---|---|---|---|---|
| **RECEIPTS:** | | | | | |
| Taxes: | | | | | |
| Personal Income | $ 31,591.0 | $ 32,200.0 | $ 33,029.2 | $ 1,438.2 | $ 829.2 |
| Consumption/Use | 12,136.0 | 12,007.0 | 11,983.5 | (152.5) | (23.5) |
| Business | 4,342.0 | 4,624.0 | 4,630.8 | 288.8 | 6.8 |
| Other | 1,553.0 | 1,475.0 | 1,455.1 | (77.9) | (19.9) |
| Miscellaneous Receipts | 18,224.0 | 18,586.0 | 18,399.0 | 175.0 | (187.0) |
| Federal Receipts | 43,281.0 | 42,663.0 | 43,129.6 | (151.4) | 466.6 |
| **Total Receipts** | 111,107.0 | 111,555.0 | 112,627.2 | 1,520.2 | 1,072.2 |
| **DISBURSEMENTS:** | | | | | |
| Local Assistance Grants | 83,122.0 | 83,243.0 | 83,346.2 | 224.2 | 103.2 |
| Departmental Operations | 14,713.0 | 14,651.0 | 14,533.3 | (179.7) | (117.7) |
| General State Charges | 6,658.0 | 6,582.0 | 6,575.1 | (82.9) | (6.9) |
| Debt Service | 1,103.0 | 1,114.0 | 1,100.0 | (3.0) | (14.0) |
| Capital Projects | 5,832.0 | 4,800.0 | 4,848.0 | (984.0) | 48.0 |
| **Total Disbursements** | 111,428.0 | 110,390.0 | 110,402.6 | (1,025.4) | 12.6 |
| Excess (Deficiency) of Receipts over Disbursements | (321.0) | 1,165.0 | 2,224.6 | 2,545.6 | 1,059.6 |
| **OTHER FINANCING SOURCES (USES):** | | | | | |
| Bond and Note Proceeds, net | - | - | - | - | - |
| Transfers from Other Funds | 28,821.0 | 28,364.0 | 28,651.9 | (169.1) | 287.9 |
| Transfers to Other Funds | (28,879.0) | (28,477.0) | (28,760.6) | (118.4) | (283.6) |
| **Total Other Financing Sources (Uses)** | (58.0) | (113.0) | (108.7) | (50.7) | 4.3 |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | (379.0) | 1,052.0 | 2,115.9 | 2,494.9 | 1,063.9 |
| Fund Balances (Deficits) at April 1 | 9,975.0 | 9,975.0 | 9,975.0 | - | - |
| Fund Balances (Deficits) at November 30, 2019 | $ 9,596.0 | $ 11,027.0 | $ 12,090.9 | $ 2,494.9 | $ 1,063.9 |

(*)   Source: 2019-20 Enacted Financial Plan dated May 13, 2019.
(**)  Source: 2019-20 Mid-Year Update dated November 22, 2019.

8

**Financial Reports**

EXHIBIT D

**STATE OF NEW YORK**
**BUDGETARY BASIS - FINANCIAL PLAN AND ACTUAL**
**FISCAL YEAR 2019-2020**
**FOR EIGHT MONTHS ENDED NOVEMBER 30, 2019**
(amounts in millions)

STATE OPERATING FUNDS (***)

| | Enacted Financial Plan (*) | Updated Financial Plan (**) | Actual | Actual Over/(Under) Enacted Financial Plan | Actual Over/(Under) Updated Financial Plan |
|---|---|---|---|---|---|
| **RECEIPTS:** | | | | | |
| Taxes: | | | | | |
| Personal Income | $ 31,591.0 | $ 32,200.0 | $ 33,029.2 | $ 1,438.2 | $ 829.2 |
| Consumption/Use | 11,711.0 | 11,575.0 | 11,557.2 | (153.8) | (17.8) |
| Business | 3,894.0 | 4,170.0 | 4,170.2 | 276.2 | 0.2 |
| Other | 1,461.0 | 1,404.0 | 1,383.6 | (77.4) | (20.4) |
| Miscellaneous Receipts | 14,438.0 | 14,715.0 | 14,752.6 | 314.6 | 37.6 |
| Federal Receipts | 37.0 | 54.0 | 55.0 | 18.0 | 1.0 |
| Total Receipts | 63,132.0 | 64,118.0 | 64,947.8 | 1,815.8 | 829.8 |
| **DISBURSEMENTS:** | | | | | |
| Local Assistance Grants | 41,535.0 | 42,855.0 | 42,816.5 | 1,281.5 | (38.5) |
| Departmental Operations | 13,325.0 | 13,334.0 | 13,265.5 | (59.5) | (68.5) |
| General State Charges | 6,439.0 | 6,368.0 | 6,358.8 | (80.2) | (9.2) |
| Debt Service | 1,103.0 | 1,114.0 | 1,100.0 | (3.0) | (14.0) |
| Capital Projects | - | - | - | - | - |
| Total Disbursements | 62,402.0 | 63,671.0 | 63,540.8 | 1,138.8 | (130.2) |
| Excess (Deficiency) of Receipts over Disbursements | 730.0 | 447.0 | 1,407.0 | 677.0 | 960.0 |
| **OTHER FINANCING SOURCES (USES):** | | | | | |
| Transfers from Other Funds | 25,670.0 | 26,190.0 | 26,225.4 (****) | 555.4 | 35.4 |
| Transfers to Other Funds | (27,089.0) | (26,582.0) | (27,398.7) (****) | 309.7 | 816.7 |
| Total Other Financing Sources (Uses) | (1,419.0) | (392.0) | (1,173.3) | 245.7 | (781.3) |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | (689.0) | 55.0 | 233.7 | 922.7 | 178.7 |
| Fund Balances (Deficits) at April 1 | 12,362.0 | 12,362.0 | 12,361.3 | (0.7) | (0.7) |
| Fund Balances (Deficits) at November 30, 2019 | $ 11,673.0 | $ 12,417.0 | $ 12,595.0 | $ 922.0 | $ 178.0 |

(*)   Source: 2019-20 Enacted Financial Plan dated May 13, 2019.
(**)   Source: 2019-20 Mid-Year Update dated November 22, 2019.
(***)   State Operating Funds are comprised of the General Fund, State Special Revenue Funds supported by activities from dedicated revenue sources (including operating transfers from Federal Funds) and Debt Service Funds.
(****)   Eliminations between Special Revenue - State and Federal Funds are not included.

9

EXHIBIT D

STATE OF NEW YORK
BUDGETARY BASIS - FINANCIAL PLAN AND ACTUAL
FISCAL YEAR 2019-2020
FOR EIGHT MONTHS ENDED NOVEMBER 30, 2019
(amounts in millions)

GENERAL FUND

| | Enacted Financial Plan (*) | Updated Financial Plan (**) | Actual | Actual Over/(Under) Enacted Financial Plan | Actual Over/(Under) Updated Financial Plan |
|---|---|---|---|---|---|
| **RECEIPTS:** | | | | | |
| Taxes: | | | | | |
| Personal Income | $ 15,787.0 | $ 16,092.0 | $ 16,511.4 | $ 724.4 | $ 419.4 |
| Consumption/Use | 5,427.0 | 5,329.0 | 5,321.2 | (105.8) | (7.8) |
| Business | 2,879.0 | 3,083.0 | 3,058.6 | 179.6 | (24.4) |
| Other | 743.0 | 702.0 | 683.5 | (59.5) | (18.5) |
| Miscellaneous Receipts | 2,002.0 | 2,156.0 | 2,289.6 | 287.6 | 133.6 |
| Federal Receipts | - | - | 0.5 | 0.5 | 0.5 |
| Transfers From: | | | | | |
| PIT / ECET in excess of Revenue Bond Debt Service | 15,705.0 | 15,990.0 | 16,406.0 | 701.0 | 416.0 |
| Sales Tax in excess of LGAC / STRBF Debt Service | 4,389.0 | 4,331.0 | 4,317.8 | (71.2) | (13.2) |
| Real Estate Taxes in excess of CW/CA Debt Service | 686.0 | 663.0 | 662.5 | (23.5) | (0.5) |
| All Other | 1,000.0 | 1,141.0 | 866.6 | (133.4) | (274.4) |
| **Total Receipts and Other Financing Sources** | 48,618.0 | 49,487.0 | 50,117.7 | 1,499.7 | 630.7 |
| **DISBURSEMENTS:** | | | | | |
| Local Assistance Grants | 31,399.0 | 32,288.0 | 32,335.6 | 936.6 | 47.6 |
| Departmental Operations | 7,951.0 | 7,910.0 | 7,788.2 | (162.8) | (121.8) |
| General State Charges | 5,779.0 | 5,736.0 | 5,710.0 | (69.0) | (26.0) |
| Transfers To: | | | | | |
| Debt Service | 349.0 | 350.0 | 335.4 | (13.6) | (14.6) |
| Capital Projects | 3,125.0 | 2,053.0 | 2,723.5 | (401.5) | 670.5 |
| State Share Medicaid | - | - | 258.9 | 258.9 | 258.9 |
| SUNY Operations | 1,110.0 | 1,086.0 | 258.9 (***) | 258.9 | 258.9 |
| Other Purposes | 702.0 | 792.0 | 495.9 | (206.1) | (296.1) |
| **Total Disbursements and Other Financing Uses** | 50,415.0 | 50,215.0 | 50,752.0 | 337.0 | 537.0 |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | (1,797.0) | (728.0) | (634.3) | 1,162.7 | 93.7 |
| Fund Balances (Deficits) at April 1 | 7,206.0 | 7,206.0 | 7,205.7 | (0.3) | (0.3) |
| Fund Balances (Deficits) at November 30, 2019 | $ 5,409.0 | $ 6,478.0 | $ 6,571.4 | $ 1,162.4 | $ 93.4 |

(*)    Source: 2019-20 Enacted Financial Plan dated May 13, 2019.
(**)   Source: 2019-20 Mid-Year Update dated November 22, 2019.
(***)  Includes transfers to the Department of Health Income Fund and the State University Income Fund representing payments for patients residing in State-Operated Health and State University facilities.

10

EXHIBIT D

STATE OF NEW YORK
BUDGETARY BASIS - FINANCIAL PLAN AND ACTUAL
FISCAL YEAR 2019-2020
FOR EIGHT MONTHS ENDED NOVEMBER 30, 2019
(amounts in millions)

SPECIAL REVENUE FUNDS

| | Enacted Financial Plan (*) | Updated Financial Plan (**) | Actual | Eliminations | Total | Actual Over/(Under) Enacted Financial Plan | Actual Over/(Under) Updated Financial Plan |
|---|---|---|---|---|---|---|---|
| **RECEIPTS:** | | | | | | | |
| Taxes: | | | | | | | |
| Personal Income | $ 9.0 | $ 8.0 | $ 3.2 | $ - | $ 3.2 | $ (5.8) | $ (4.8) |
| Consumption/Use | 1,292.0 | 1,316.0 | 1,319.0 | - | 1,319.0 | 27.0 | 3.0 |
| Business | 1,015.0 | 1,087.0 | 1,111.6 | - | 1,111.6 | 96.6 | 24.6 |
| Miscellaneous Receipts | 12,274.0 | 12,359.0 | 12,298.6 | - | 12,298.6 | 24.6 | (60.4) |
| Federal Receipts | 41,937.0 | 41,227.0 | 41,744.9 | - | 41,744.9 | (192.1) | 517.9 |
| Transfers from Other Funds (***) | 2,091.0 | 2,320.0 | 2,309.5 | (414.0) | 1,895.5 | (195.5) | (424.5) |
| Total Receipts and Other Financing Sources | 58,618.0 | 58,317.0 | 58,786.8 | (414.0) | 58,372.8 | (245.2) | 55.8 |
| **DISBURSEMENTS:** | | | | | | | |
| Local Assistance Grants | 48,608.0 | 47,633.0 | 47,925.3 | - | 47,925.3 | (682.7) | 292.3 |
| Departmental Operations | 6,735.0 | 6,715.0 | 6,719.8 | - | 6,719.8 | (15.2) | 4.8 |
| General State Charges | 879.0 | 846.0 | 865.1 | - | 865.1 | (13.9) | 19.1 |
| Capital Projects | - | - | - | - | - | - | - |
| Transfers to Other Funds (***) | 1,383.0 | 1,658.0 | 1,519.5 | (414.0) | 1,105.5 | (277.5) | (552.5) |
| Total Disbursements and Other Financing Uses | 57,605.0 | 56,852.0 | 57,029.7 | (414.0) | 56,615.7 | (989.3) | (236.3) |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | 1,013.0 | 1,465.0 | 1,757.1 | - | 1,757.1 | 744.1 | 292.1 |
| Fund Balances (Deficits) at April 1 | 3,842.0 | 3,842.0 | 3,842.4 | - | 3,842.4 | 0.4 | 0.4 |
| Fund Balances (Deficits) at November 30, 2019 | $ 4,855.0 | $ 5,307.0 | $ 5,599.5 | $ - | $ 5,599.5 | $ 744.5 | $ 292.5 |

(*)   Source: 2019-20 Enacted Financial Plan dated May 13, 2019.
(**)  Source: 2019-20 Mid-Year Update dated November 22, 2019.
(***) Actual reported transfer amounts include eliminations between Special Revenue - State and Federal Funds.

11

**NYS Register/December 31, 2019**                                                    **Financial Reports**

EXHIBIT D

STATE OF NEW YORK
BUDGETARY BASIS - FINANCIAL PLAN AND ACTUAL
FISCAL YEAR 2019-2020
FOR EIGHT MONTHS ENDED NOVEMBER 30, 2019
(amounts in millions)

| | STATE SPECIAL REVENUE FUNDS | | | | | FEDERAL SPECIAL REVENUE FUNDS | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Enacted Financial Plan (*) | Updated Financial Plan (**) | Actual | Actual Over/(Under) Enacted Financial Plan | Actual Over/(Under) Updated Financial Plan | Enacted Financial Plan (*) | Updated Financial Plan (**) | Actual | Actual Over/(Under) Enacted Financial Plan | Actual Over/(Under) Updated Financial Plan |
| **RECEIPTS:** | | | | | | | | | | |
| Taxes | | | | | | | | | | |
| Personal Income | $ 9.0 | $ 8.0 | $ 3.2 | $ (5.8) | $ (4.8) | $ - | $ - | $ - | $ - | $ - |
| Consumption/Use | 1,292.0 | 1,316.0 | 1,319.0 | 27.0 | 3.0 | - | - | - | - | - |
| Business | 1,015.0 | 1,087.0 | 1,111.6 | 96.6 | 24.6 | - | - | - | - | - |
| Miscellaneous Receipts | 12,226.0 | 12,233.0 | 12,140.6 | (85.4) | (92.4) | 48.0 | 126.0 | 158.0 | 110.0 | 32.0 |
| Federal Receipts | - | 18.0 | 17.7 | 17.7 | (0.3) | 41,937.0 | 41,209.0 | 41,727.2 | (209.8) | 518.2 |
| Transfers from Other Funds | 2,091.0 | 2,320.0 | 2,309.5 | 218.5 | (10.5) | - | - | - | - | - |
| Total Receipts and Other Financing Sources | 16,633.0 | 16,982.0 | 16,901.6 | 268.6 | (80.4) | 41,985.0 | 41,335.0 | 41,885.2 | (99.8) | 550.2 |
| **DISBURSEMENTS:** | | | | | | | | | | |
| Local Assistance Grants | 10,136.0 | 10,567.0 | 10,480.9 | 344.9 | (86.1) | 38,472.0 | 37,066.0 | 37,444.4 | (1,027.6) | 378.4 |
| Departmental Operations | 5,347.0 | 5,398.0 | 5,452.0 | 105.0 | 54.0 | 1,388.0 | 1,317.0 | 1,267.8 | (120.2) | (49.2) |
| General State Charges | 660.0 | 632.0 | 648.8 | (11.2) | 16.8 | 219.0 | 214.0 | 216.3 | (2.7) | 2.3 |
| Capital Projects | - | - | - | - | - | - | - | - | - | - |
| Transfers to Other Funds | 190.0 | 368.0 | 349.4 | 159.4 | (18.6) | 1,193.0 | 1,290.0 | 1,170.1 | (22.9) | (119.9) |
| Total Disbursements and Other Financing Uses | 16,333.0 | 16,965.0 | 16,931.1 | 598.1 | (33.9) | 41,272.0 | 39,887.0 | 40,098.6 | (1,173.4) | 211.6 |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | 300.0 | 17.0 | (29.5) | (329.5) | (46.5) | 713.0 | 1,448.0 | 1,786.6 | 1,073.6 | 338.6 |
| Fund Balances (Deficits) at April 1 | 5,091.0 | 5,091.0 | 5,090.8 | (0.2) | (0.2) | (1,249.0) | (1,249.0) | (1,248.4) | 0.6 | 0.6 |
| Fund Balances (Deficits) at November 30, 2019 | $ 5,391.0 | $ 5,108.0 | $ 5,061.3 | $ (329.7) | $ (46.7) | $ (536.0) | $ 199.0 | $ 538.2 | $ 1,074.2 | $ 339.2 |

(*)  Source: 2019-20 Enacted Financial Plan dated May 13, 2019
(**) Source: 2019-20 Mid-Year Update dated November 22, 2019

12

EXHIBIT D

**STATE OF NEW YORK**
**BUDGETARY BASIS - FINANCIAL PLAN AND ACTUAL**
**FISCAL YEAR 2019-2020**
**FOR EIGHT MONTHS ENDED NOVEMBER 30, 2019**
(amounts in millions)

**DEBT SERVICE FUNDS**

| | Enacted Financial Plan (*) | Updated Financial Plan (**) | Actual | Actual Over/(Under) Enacted Financial Plan | Actual Over/(Under) Updated Financial Plan |
|---|---|---|---|---|---|
| **RECEIPTS:** | | | | | |
| Taxes: | | | | | |
| Personal Income | $ 15,795.0 | $ 16,100.0 | $ 16,514.6 | $ 719.6 | $ 414.6 |
| Consumption/Use | 4,992.0 | 4,930.0 | 4,917.0 | (75.0) | (13.0) |
| Other | 718.0 | 702.0 | 700.1 | (17.9) | (1.9) |
| Miscellaneous Receipts | 210.0 | 326.0 | 322.4 | 112.4 | (3.6) |
| Federal Receipts | 37.0 | 36.0 | 36.8 | (0.2) | 0.8 |
| Transfers from Other Funds | 1,799.0 | 1,745.0 | 1,663.0 | (136.0) | (82.0) |
| Total Receipts and Other Financing Sources | 23,551.0 | 23,839.0 | 24,153.9 | 602.9 | 314.9 |
| **DISBURSEMENTS:** | | | | | |
| Departmental Operations | 27.0 | 26.0 | 25.3 | (1.7) | (0.7) |
| Debt Service | 1,103.0 | 1,114.0 | 1,100.0 | (3.0) | (14.0) |
| Transfers to Other Funds | 21,613.0 | 21,933.0 | 22,131.1 | 518.1 | 198.1 |
| Total Disbursements and Other Financing Uses | 22,743.0 | 23,073.0 | 23,256.4 | 513.4 | 183.4 |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | 808.0 | 766.0 | 897.5 | 89.5 | 131.5 |
| Fund Balances (Deficits) at April 1 | 65.0 | 65.0 | 64.8 | (0.2) | (0.2) |
| Fund Balances (Deficits) at November 30, 2019 | $ 873.0 | $ 831.0 | $ 962.3 | $ 89.3 | $ 131.3 |

(*)   Source: 2019-20 Enacted Financial Plan dated May 13, 2019.
(**) Source: 2019-20 Mid-Year Update dated November 22, 2019.

13

EXHIBIT D

STATE OF NEW YORK
BUDGETARY BASIS - FINANCIAL PLAN AND ACTUAL
FISCAL YEAR 2019-2020
FOR EIGHT MONTHS ENDED NOVEMBER 30, 2019
(amounts in millions)

CAPITAL PROJECTS FUNDS

| | Enacted Financial Plan (*) | Updated Financial Plan (**) | Actual | Eliminations | Total | Actual Over/(Under) Enacted Financial Plan | Actual Over/(Under) Updated Financial Plan |
|---|---|---|---|---|---|---|---|
| **RECEIPTS:** | | | | | | | |
| Taxes: | | | | | | | |
| Consumption/Use | $ 425.0 | $ 432.0 | $ 426.3 | - | $ 426.3 | $ 1.3 | $ (5.7) |
| Business | 448.0 | 454.0 | 460.6 | - | 460.6 | 12.6 | 6.6 |
| Other | 72.0 | 71.0 | 71.5 | - | 71.5 | (0.5) | 0.5 |
| Miscellaneous Receipts | 3,738.0 | 3,745.0 | 3,488.4 | - | 3,488.4 | (249.6) | (256.6) |
| Federal Receipts | 1,307.0 | 1,400.0 | 1,347.4 | - | 1,347.4 | 40.4 | (52.6) |
| Bond and Note Proceeds, net | - | - | - | | - | | |
| Transfers from Other Funds | 3,151.0 | 2,174.0 | 3,016.4 | (175.9) | 2,840.5 | (310.5) | 666.5 |
| **Total Receipts and Other Financing Sources** | 9,141.0 | 8,276.0 | 8,810.6 | (175.9) | 8,634.7 | (506.3) | 358.7 |
| **DISBURSEMENTS:** | | | | | | | |
| Local Assistance Grants | 3,115.0 | 3,322.0 | 3,085.3 | - | 3,085.3 | (29.7) | (236.7) |
| Capital Projects | 5,832.0 | 4,800.0 | 4,848.0 | - | 4,848.0 | (984.0) | 48.0 |
| Transfers to Other Funds | 597.0 | 605.0 | 781.7 | (175.9) | 605.8 | 8.8 | 0.8 |
| **Total Disbursements and Other Financing Uses** | 9,544.0 | 8,727.0 | 8,715.0 | (175.9) | 8,539.1 | (1,004.9) | (187.9) |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | (403.0) | (451.0) | 95.6 | - | 95.6 | 488.6 | 546.6 |
| Fund Balances (Deficits) at April 1 | (1,138.0) | (1,138.0) | (1,137.9) | | (1,137.9) | 0.1 | |
| Fund Balances (Deficits) at November 30, 2019 | $ (1,541.0) | $ (1,589.0) | $ (1,042.3) | $ - | $ (1,042.3) | $ 498.7 | $ 546.7 |

(*) Source: 2019-20 Enacted Financial Plan dated May 13, 2019.
(**) Source: 2019-20 Mid-Year Update dated November 22, 2019.

14

**Financial Reports**                                                                      **NYS Register/December 31, 2019**

EXHIBIT D

STATE OF NEW YORK
BUDGETARY BASIS - FINANCIAL PLAN AND ACTUAL
FISCAL YEAR 2019-2020
FOR EIGHT MONTHS ENDED NOVEMBER 30, 2019
(amounts in millions)

| | STATE CAPITAL PROJECTS FUNDS | | | | | FEDERAL CAPITAL PROJECTS FUNDS | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Enacted Financial Plan (*) | Updated Financial Plan (**) | Actual | Actual Over/(Under) Enacted Financial Plan | Actual Over/(Under) Updated Financial Plan | Enacted Financial Plan (*) | Updated Financial Plan (**) | Actual | Actual Over/(Under) Enacted Financial Plan | Actual Over/(Under) Updated Financial Plan |
| **RECEIPTS:** | | | | | | | | | | |
| Taxes: | | | | | | | | | | |
| Consumption/Use | $ 425.0 | $ 432.0 | $ 426.3 | $ 1.3 | $ (5.7) | $ - | $ - | $ - | $ - | $ - |
| Business | 448.0 | 454.0 | 460.6 | 12.6 | 6.6 | - | - | - | - | - |
| Other | 72.0 | 71.0 | 71.5 | (0.5) | 0.5 | - | - | - | - | - |
| Miscellaneous Receipts | 3,758.0 | 3,745.0 | 3,487.8 | (250.2) | (257.2) | - | - | 0.6 | 0.6 | 0.6 |
| Federal Receipts | - | 2.0 | 2.3 | 2.3 | 0.3 | 1,307.0 | 1,368.0 | 1,345.1 | 38.1 | (52.9) |
| Bond and Note Proceeds, net | | | | | | | | | | |
| Transfers from Other Funds | 3,331.0 | 2,349.0 | 3,016.4 | (314.6) | 667.4 | (180.0) | (175.0) | - | (180.0) | 175.0 |
| **Total Receipts and Other Financing Sources** | 8,014.0 | 7,053.0 | 7,464.9 | (549.1) | 411.9 | 1,127.0 | 1,223.0 | 1,345.7 | 218.7 | 122.7 |
| **DISBURSEMENTS:** | | | | | | | | | | |
| Local Assistance Grants | 2,746.0 | 2,966.0 | 2,700.4 | (45.6) | (265.6) | 369.0 | 356.0 | 384.9 | 15.9 | 28.9 |
| Capital Projects | 5,063.0 | 3,994.0 | 4,016.5 | (1,046.5) | 22.5 | 769.0 | 806.0 | 831.5 | 62.5 | 25.5 |
| Transfers to Other Funds | 597.0 | 605.0 | 605.8 | 8.8 | 0.8 | - | - | 175.9 | 175.9 | 175.9 |
| **Total Disbursements and Other Financing Uses** | 8,406.0 | 7,565.0 | 7,322.7 | (1,083.3) | (242.3) | 1,138.0 | 1,162.0 | 1,392.3 | 254.3 | 230.3 |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | (392.0) | (512.0) | 142.2 | 534.2 | 654.2 | (11.0) | 61.0 | (46.6) | (35.6) | (107.6) |
| Fund Balances (Deficits) at April 1 | (633.0) | (633.0) | (633.0) | (0.2) | (0.2) | (505.0) | (505.0) | (504.7) | 0.3 | 0.3 |
| Fund Balances (Deficits) at November 30, 2019 | $ (1,025.0) | $ (1,145.0) | $ (491.0) | $ 534.0 | $ 654.0 | $ (516.0) | $ (444.0) | $ (551.3) | $ (35.3) | $ (107.3) |

(*)  Source: 2019-20 Enacted Financial Plan dated May 13, 2019
(**) Source: 2019-20 Mid-Year Update dated November 22, 2019

15

EXHIBIT E

STATE OF NEW YORK
GOVERNMENTAL FUNDS
COMPARATIVE SCHEDULE OF TAX RECEIPTS
(amounts in millions)

| | GENERAL MONTH OF NOV 2019 | GENERAL 8 MOS ENDED NOV 30, 2019 | SPECIAL REVENUE MONTH OF NOV 2019 | SPECIAL REVENUE 8 MOS ENDED NOV 30, 2019 | DEBT SERVICE MONTH OF NOV 2019 | DEBT SERVICE 8 MOS ENDED NOV 30, 2019 | CAPITAL PROJECTS MONTH OF NOV 2019 | CAPITAL PROJECTS 8 MOS ENDED NOV 30, 2019 | TOTAL GOV FUNDS MONTH OF NOV 2019 | TOTAL GOV FUNDS 8 MOS ENDED NOV 30, 2019 | TOTAL GOV FUNDS MONTH OF NOV 2018 | TOTAL GOV FUNDS 8 MOS ENDED NOV 30, 2018 | YOY $ Increase (Decrease) | YOY % Increase/Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **PERSONAL INCOME TAX** | | | | | | | | | | | | | | |
| Withholding | $ 2,661.8 | $ 24,782.5 | $ | $ | $ | $ | $ | $ | $ 2,661.8 | $ 24,782.5 | $ 2,667.5 | $ 23,618.3 | $ 1,164.2 | 4.9% |
| Estimated Payments | 93.5 | 12,576.0 | | | | | | | 93.5 | 12,576.0 | 104.4 | 9,846.8 | 2,729.2 | 27.7% |
| Returns | 42.5 | 3,174.2 | | | | | | | 42.5 | 3,174.2 | 35.3 | 2,392.6 | 781.6 | 32.7% |
| State/City Offsets | (59.5) | (677.9) | | | | | | | (59.5) | (677.9) | (157.6) | (1,000.9) | (23.0) | -2.3% |
| Other (Assessments/LLC) | 121.6 | 874.3 | | | | | | | 121.6 | 874.3 | 109.9 | 814.5 | 59.8 | 7.3% |
| Gross Receipts | 3,179.9 | 40,429.1 | | | | | | | 3,179.9 | 40,429.1 | 2,959.5 | 35,674.3 | 4,754.8 | 13.3% |
| Transfers to School Tax Relief Fund | | (3.2) | 3.0 | 3.2 | | | | | | | | | | 0.0% |
| Transfers to Revenue Bond Tax Fund | (1,234.7) | (16,514.6) | | | 1,234.7 | 16,514.6 | | | | | | | | 0.0% |
| Less: Refunds Issued | (710.5) | (7,390.0) | | | | | | | (710.5) | (7,390.0) | (771.0) | (7,249.4) | 150.5 | 2.1% |
| **Total** | 1,231.7 | 16,511.4 | 3.0 | 3.2 | 1,234.7 | 16,514.6 | | | 2,469.4 | 33,029.2 | 2,188.5 | 28,424.9 | 4,604.3 | 16.2% |
| **CONSUMPTION/USE TAXES** | | | | | | | | | | | | | | |
| Sales and Use | 584.5 | 4,921.2 | 82.1 | 730.6 | 584.0 | 4,917.0 | | | 1,250.6 | 10,568.8 | 1,176.7 | 9,980.3 | 588.5 | 5.9% |
| Auto Rental | | | 0.1 | 57.3 | | | | | 0.1 | 57.3 | | 75.0 | (17.7) | -23.6% |
| Cigarette/Tobacco Products | 26.3 | 220.9 | 57.8 | 501.9 | | | | | 84.1 | 722.8 | 92.3 | 786.8 | (63.0) | -8.0% |
| Medical Marihuana | | | 0.5 | 3.7 | | | | | 0.5 | 3.7 | 0.3 | 2.3 | 1.4 | 60.9% |
| Motor Fuel | | | 8.6 | 25.5 | | | 32.9 | 329.9 | 41.5 | 355.4 | 45.8 | 358.4 | (3.0) | -0.8% |
| Alcoholic Beverage | 24.5 | 179.1 | | | | | | | 24.5 | 179.1 | 23.2 | 177.0 | 2.1 | 1.2% |
| Highway Use | | | | | | | 11.0 | 96.4 | 11.0 | 96.4 | 12.4 | 100.7 | (4.3) | -4.3% |
| Metropolitan Commuter Trans. Taxicab Trip | | | | | | | | | | | 0.4 | 38.7 | (38.7) | -100.0% |
| **Total** | 635.3 | 5,321.2 | 149.1 | 1,319.0 | 584.0 | 4,917.0 | 43.9 | 426.3 | 1,412.3 | 11,983.5 | 1,351.1 | 11,518.2 | 465.3 | 4.0% |
| **BUSINESS TAXES** | | | | | | | | | | | | | | |
| Corporation Franchise | 69.7 | 1,945.4 | 39.2 | 558.8 | | | | | 108.9 | 2,504.2 | (17.6) | 2,145.7 | 358.5 | 16.7% |
| Corporation and Utilities | (1.9) | 207.2 | 1.2 | 80.1 | | | 0.1 | 8.4 | (0.6) | 295.7 | 4.6 | 288.5 | 7.2 | 2.5% |
| Insurance | 25.6 | 947.8 | (0.3) | 121.0 | | | | | 25.3 | 1,068.8 | 16.0 | 776.4 | 292.4 | 37.7% |
| Bank | (36.6) | (46.6) | (5.2) | 2.9 | | | | | (41.8) | (43.7) | (3.4) | 23.2 | (66.9) | -288.4% |
| Petroleum Business | 0.6 | 1.9 | 40.8 | 303.6 | | | 52.2 | 452.2 | 93.0 | 805.8 | 98.9 | 778.4 | 27.4 | 3.5% |
| **Total** | 56.8 | 3,056.6 | 75.7 | 1,111.6 | | | 52.3 | 460.6 | 184.8 | 4,630.8 | 98.5 | 4,012.2 | 618.6 | 15.4% |
| **OTHER TAXES** | | | | | | | | | | | | | | |
| Real Property Gains | | | | | | | | | | | | | | 0.0% |
| Estate and Gift | 87.2 | 669.9 | | | | | | | 87.2 | 669.9 | 126.3 | 714.6 | (44.7) | -6.3% |
| Pari-Mutuel | 1.1 | 11.2 | | | | | | | 1.1 | 11.2 | 1.1 | 11.7 | (0.5) | -4.3% |
| Real Estate Transfer | | | | | 87.8 | 698.6 | 11.9 | 71.5 | 99.7 | 771.1 | 91.7 | 776.3 | (5.2) | -0.7% |
| Racing and Exhibitions | 0.6 | 1.9 | | | | | | | 0.6 | 1.9 | 0.4 | 2.0 | (0.1) | -5.0% |
| Metropolitan Commuter Trans. Mobility | | | | | | | | | | | | | | 0.0% |
| Employer Compensation Expense Tax | 0.1 | 0.5 | | | | | | | 0.1 | 0.5 | | | 1.0 | 100.0% |
| **Total** | 89.0 | 683.5 | | | 87.8 | 698.6 | 11.9 | 71.5 | 188.7 | 1,455.1 | 219.4 | 1,504.6 | (49.5) | -3.3% |
| **Total Tax Receipts** | $ 2,012.8 | $ 25,574.7 | $ 227.8 | $ 2,433.8 | $ 1,906.5 | $ 22,131.7 | $ 108.1 | $ 958.4 | $ 4,255.2 | $ 51,098.6 | $ 3,857.5 | $ 45,459.9 | $ 5,638.7 | 12.4% |

16

**Financial Reports**   NYS Register/December 31, 2019

**STATE OF NEW YORK**
**GOVERNMENTAL FUNDS (*)**
**STATEMENT OF CASH FLOW**
**FISCAL YEAR 2019-2020**
(amounts in millions)

| | 2019 APRIL | 2019 MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended Nov 30 2019 | 2018 | $ Increase/(Decrease) | % Increase/Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Fund Balance** | $ 9,875.9 | $ 16,267.7 | $ 10,925.1 | $ 13,728.6 | $ 12,775.1 | $ 13,740.6 | $ 14,319.2 | $ 14,340.0 | | | | | $ 9,875.9 | $ 12,749.0 | $ (2,774.9) | -21.8% |
| **RECEIPTS:** | | | | | | | | | | | | | | | | |
| **Taxes:** | | | | | | | | | | | | | | | | |
| Personal Income Tax: | | | | | | | | | | | | | | | | |
| Withholdings | 3,237.1 | 3,220.1 | 2,922.3 | 3,365.8 | 2,833.7 | 2,861.1 | 3,270.6 | 2,981.8 | | | | | 24,792.5 | 23,618.3 | 1,164.2 | 4.9% |
| Estimated Payments | 6,843.2 | 112.6 | 2,396.4 | 98.7 | 2,742.0 | 2,742.0 | 170.9 | 93.5 | | | | | 12,576.0 | 9,849.8 | 2,726.2 | 27.7% |
| Refunds | 2,285.9 | (31.1) | 9.4 | 40.8 | 41.1 | (65.6) | 564.2 | 42.5 | | | | | 3,174.2 | 2,352.0 | 781.1 | 33.2% |
| State/City Offsets | (296.9) | (31.1) | (25.9) | (21.0) | (20.9) | (47.2) | (475.4) | (59.5) | | | | | (977.9) | (1,000.0) | (23.0) | -2.3% |
| Other (Assessments/LLC) | 170.3 | 100.7 | 98.2 | 69.3 | 86.7 | 97.1 | 124.1 | 121.6 | | | | | 912.3 | 824.1 | 88.2 | 7.3% |
| **Gross Receipts** | 12,240.6 | 3,431.9 | 5,443.1 | 3,953.6 | 3,152.3 | 3,700.1 | 3,654.6 | 3,179.9 | | | | | 40,426.1 | 35,674.3 | 4,754.8 | 13.3% |
| Transfers to School Tax Relief Fund | | | | | | | | | | | | | | | | 0.0% |
| Transfers to Revenue Bond Tax Fund | (3,025.2) | (997.3) | (233.2) | (282.0) | (343.8) | (871.7) | (1,056.2) | (710.5) | | | | | (7,359.9) | (7,249.4) | 150.5 | 2.1% |
| Refunds Issued | 9,215.4 | 2,434.6 | 5,209.9 | 3,331.6 | 2,908.5 | 4,571.4 | 2,574.4 | 2,469.4 | | | | | 33,036.2 | 28,424.9 | 4,904.3 | 16.2% |
| **Total Personal Income Tax** | 9,215.4 | 2,434.6 | 5,209.9 | 3,331.6 | 2,908.5 | 4,571.4 | 2,574.4 | 2,469.4 | | | | | 33,036.2 | 28,424.9 | 4,904.3 | 16.2% |
| Consumption/Use Taxes: | | | | | | | | | | | | | | | | |
| Sales and Use | 1,201.6 | 1,178.8 | 861.2 | 1,238.2 | 1,243.6 | 1,629.2 | 1,238.3 | 1,250.6 | | | | | 10,598.8 | 9,990.3 | 588.5 | 5.9% |
| Auto Rental | 3.5 | 0.3 | 0.9 | 0.4 | 0.4 | (1.7) | (1.7) | (0.6) | | | | | 6.3 | 7.7 | (1.7) | -22.5% |
| Cigarette/Tobacco Products | 69.2 | 85.2 | 83.8 | 106.8 | 82.2 | 87.7 | 93.8 | 84.1 | | | | | 722.9 | 786.8 | (63.0) | -8.0% |
| Medical Marijuana | 0.5 | 0.4 | 0.5 | 0.5 | 0.4 | 0.5 | 1.4 | 0.1 | | | | | 3.7 | 3.3 | 0.4 | 60.6% |
| Motor Fuel | 46.0 | 44.2 | 46.1 | 39.2 | 47.9 | 43.2 | 47.3 | 41.5 | | | | | 355.4 | 356.4 | (3.0) | -0.8% |
| Alcoholic Beverage | 20.0 | 20.9 | 25.6 | 25.6 | 19.8 | 23.5 | 19.1 | 24.5 | | | | | 178.1 | 177.0 | 2.1 | 1.2% |
| Highway Use | 14.2 | 10.7 | 9.9 | 14.5 | 10.7 | 11.1 | 14.3 | 11.0 | | | | | 96.4 | 100.7 | (4.3) | -4.3% |
| Metropolitan Commuter Trans. Tax/Auth Trip | | | | | | | | | | | | | | | (38.7) | -100.0% |
| **Total Consumption/Use Taxes** | 1,373.0 | 1,340.5 | 1,775.3 | 1,626.9 | 1,414.4 | 1,855.2 | 1,605.9 | 1,412.3 | | | | | 11,963.5 | 11,518.2 | 445.3 | 4.0% |
| Business Taxes: | | | | | | | | | | | | | | | | |
| Corporation Franchise | 376.7 | (68.0) | 601.2 | 146.3 | | 941.3 | 98.6 | 108.9 | | | | | 2,504.2 | 2,145.7 | 358.5 | 16.7% |
| Corporation and Utilities | -43.0 | 3.3 | 109.6 | 0.4 | 14.0 | 14.0 | 2.9 | (0.6) | | | | | 285.2 | 280.7 | 2.5 | 2.5% |
| Insurance | 141.8 | 5.0 | 403.2 | 56.8 | (1.5) | 436.8 | 1.4 | 25.3 | | | | | 1,069.8 | 778.4 | 292.4 | 37.7% |
| Banks | 146.3 | (121.1) | (21.1) | (0.2) | (0.3) | (1.4) | (3.1) | (41.8) | | | | | (43.7) | 22.2 | (65.9) | -296.4% |
| Petroleum Business | 100.4 | 98.7 | 103.8 | 93.8 | 107.0 | 100.7 | 107.4 | 93.0 | | | | | 805.8 | 778.4 | 27.4 | 3.5% |
| **Total Business Taxes** | 807.2 | (86.2) | 1,066.6 | 297.1 | 303.5 | 1,618.4 | 207.4 | 184.8 | | | | | 4,630.8 | 4,012.2 | 616.6 | 15.4% |
| Other Taxes: | | | | | | | | | | | | | | | | |
| Real Property Gains | | | | | | | | | | | | | | | | 0.0% |
| Estate and Gift | 79.7 | 57.3 | 62.2 | 124.7 | 41.8 | 53.8 | 163.2 | 87.2 | | | | | 669.9 | 714.6 | (44.7) | -6.3% |
| Pari-Mutuel | 0.9 | 1.1 | 1.6 | 1.2 | 2.2 | 2.1 | 1.0 | 1.1 | | | | | 11.2 | 11.7 | (0.5) | -4.3% |
| Real Estate Transfer | 82.9 | 86.0 | 98.6 | 130.8 | 90.7 | 97.2 | 85.2 | 99.7 | | | | | 771.1 | 776.3 | (5.2) | -0.7% |
| Racing and Exhibitions | 0.2 | 0.1 | 0.3 | 0.4 | 0.1 | 0.4 | 0.4 | 0.6 | | | | | 1.9 | 1.6 | 0.3 | 15.5% |
| Metropolitan Commuter Trans. Mobility | | | | | | | | | | | | | | | | 0.0% |
| Employment/Personal Expense Tax | | | | | | 0.2 | 0.2 | | | | | | 1.0 | 1.0 | 1.0 | |
| **Total Other Taxes** | 163.8 | 144.6 | 162.7 | 257.1 | 135.0 | 153.2 | 250.0 | 188.7 | | | | | 1,455.1 | 1,504.6 | (49.5) | -3.3% |
| **Total Taxes** | 11,561.4 | 3,885.5 | 8,044.5 | 5,710.7 | 4,561.4 | 8,638.2 | 4,441.7 | 4,255.2 | | | | | 51,086.6 | 45,459.9 | 5,639.7 | 12.4% |
| **Miscellaneous Receipts:** | | | | | | | | | | | | | | | | |
| Abandoned Property: | | | | | | | | | | | | | | | | |
| Abandoned Property | 2.0 | 1.2 | 0.9 | 1.2 | 5.6 | 31.0 | 36.2 | 215.9 | | | | | 294.0 | 314.2 | (20.2) | -6.4% |
| Bottle Bill | 0.2 | 0.3 | 31.2 | 0.3 | 0.1 | 38.1 | 0.3 | 0.3 | | | | | 73.8 | 75.9 | (2.2) | -4.2% |
| Assessments: | | | | | | | | | | | | | | | | |
| Business | 81.0 | 82.0 | 103.1 | 60.2 | 63.2 | 76.8 | 79.7 | 43.3 | | | | | 588.3 | 586.4 | 2.9 | 0.5% |
| Medical Care | 625.7 | 523.9 | 509.0 | 571.3 | 518.5 | 544.1 | 531.2 | 472.5 | | | | | 4,296.2 | 4,137.4 | 158.8 | 3.8% |
| Public Utilities | 5.1 | | 0.7 | | 0.9 | 44.2 | (6.0) | (1.7) | | | | | 43.2 | 38.3 | 4.9 | 12.8% |
| Other | | 0.2 | 0.1 | | 0.2 | | | 1.9 | | | | | 0.6 | 1.2 | (1.2) | -66.7% |
| Fees, Licenses and Permits | | | | | | | | | | | | | | | | |
| Alcohol Beverage Control Licensing | 5.7 | 6.0 | 5.4 | 6.0 | 6.9 | 7.0 | 7.4 | 7.2 | | | | | 51.6 | 47.5 | 4.1 | 8.6% |
| Audit Fees | | 0.5 | 1.5 | | 0.1 | 0.2 | | | | | | | 2.6 | 2.1 | 0.5 | 23.8% |
| Business/Professional | 60.5 | 60.6 | 131.5 | 65.0 | 49.9 | 132.0 | 60.9 | 71.8 | | | | | 649.2 | 598.4 | 50.9 | 8.5% |
| Civil | 28.6 | 19.0 | 22.9 | 22.6 | 17.8 | 34.3 | 35.0 | 22.2 | | | | | 221.4 | 203.1 | 18.3 | 9.0% |
| Criminal | 0.5 | 0.5 | 1.2 | 0.2 | 0.6 | 1.3 | 0.5 | 0.4 | | | | | 6.2 | 7.9 | (0.7) | -34.2% |
| Motor Vehicle | 128.2 | 130.8 | 105.7 | 119.8 | 118.5 | 116.5 | 116.6 | 107.8 | | | | | 964.3 | 1,030.0 | (65.7) | -6.4% |
| Recreational/Consumer | 55.4 | 47.2 | 67.3 | 67.5 | 66.4 | 134.3 | 70.7 | 71.4 | | | | | 609.2 | 556.1 | 53.1 | 9.5% |
| Fines, Penalties and Forfeitures | 628.7 | 224.6 | 196.0 | 50.8 | 31.9 | 39.2 | 98.2 | 37.8 | | | | | 1,237.2 | 1,251.9 | (14.7) | -1.2% |
| Miscellaneous: | | | | | | | | | | | | | | | | |
| Gaming | | | | | | | | | | | | | | | | |
| Casino | 31.4 | 18.8 | 19.7 | 37.7 | 16.3 | 20.0 | 38.8 | 13.3 | | | | | 193.0 | 173.5 | 19.5 | 11.2% |
| Lottery | 219.4 | 262.0 | 202.3 | 225.7 | 170.2 | 178.2 | 200.1 | 177.8 | | | | | 1,652.6 | 1,720.3 | (67.6) | -3.9% |
| Video Lottery | 76.6 | 88.5 | 63.2 | 89.5 | 76.5 | 77.5 | 94.6 | 72.7 | | | | | 639.1 | 628.1 | 10.0 | 1.6% |
| Interest Earnings | 44.0 | 38.8 | 44.9 | 36.0 | 39.4 | 35.8 | 36.9 | 34.2 | | | | | 310.0 | 207.4 | 102.6 | 49.5% |
| Receipts from Public Authorities: | | | | | | | | | | | | | | | | |
| Bond Proceeds | 200.9 | 2.8 | 148.4 | 150.3 | 79.2 | 498.1 | 1,588.2 | 23.6 | | | | | 2,695.4 | 1,848.9 | 846.5 | 45.8% |
| Cost Recovery Assessments | | | | 5.1 | | 28.1 | 13.5 | | | | | | 46.7 | 45.5 | 1.2 | 2.6% |
| Issuance Fees | 2.0 | 1.0 | 15.1 | 7.0 | 0.8 | 0.8 | 14.8 | 3.5 | | | | | 44.2 | 58.3 | (14.1) | -24.2% |
| Non-Bond Related | 4.2 | 4.8 | 4.7 | 13.4 | | 26.7 | 24.9 | 25.3 | | | | | 104.0 | 69.5 | 34.5 | 49.6% |
| Receipts from Municipalities | 29.4 | 3.2 | 6.8 | 4.4 | 2.6 | 6.1 | 4.6 | 2.3 | | | | | 59.8 | 215.8 | (154.6) | -73.2% |

17

**Financial Reports**

**STATE OF NEW YORK**
**GOVERNMENTAL FUNDS (*)**
**STATEMENT OF CASH FLOW**
**FISCAL YEAR 2019-2020**
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended Nov 30 — 2019 | 2018 | $ Increase (Decrease) | % Increase Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenues of State Departments:** | | | | | | | | | | | | | | | | |
| Rentals | 40.2 | 29.1 | 9.1 | 30.2 | 2.6 | 1.4 | 66.4 | 24.9 | - | - | - | - | 203.9 | 245.6 | (41.7) | -17.0% |
| Administrative Recoveries | 1.9 | 2.8 | 24.7 | 17.7 | 4.6 | 21.9 | 26.7 | 27.6 | - | - | - | - | 127.9 | 80.7 | 47.2 | 58.5% |
| Commissions | 0.6 | 0.6 | 0.6 | 0.2 | 0.2 | 0.8 | 0.7 | 0.8 | - | - | - | - | 4.9 | 4.6 | 0.3 | 6.5% |
| Commissions Asset Conversion | - | - | - | - | - | - | - | - | - | - | - | - | - | 1,000.0 | (1,000.0) | -100.0% |
| Gifts, Grants and Donations | 10.9 | 1.5 | 3.1 | 0.9 | 0.9 | 0.3 | 3.7 | 2.0 | - | - | - | - | 23.3 | 106.3 | (83.0) | -78.1% |
| Indirect Cost Recoveries | 6.6 | 5.2 | 8.7 | 8.3 | 5.8 | 5.8 | 7.0 | 6.2 | - | - | - | - | 54.0 | 63.0 | (9.0) | -14.3% |
| Patient/Client Care Reimbursement | 299.4 | 184.9 | 188.1 | 240.8 | 290.3 | 264.5 | 209.1 | 185.5 | - | - | - | - | 1,737.6 | 1,688.9 | 48.7 | 2.9% |
| Rebates | 12.3 | 11.5 | 14.7 | 22.1 | 11.7 | 12.1 | 17.7 | 14.5 | - | - | - | - | 116.6 | 107.9 | 8.7 | 8.1% |
| Restitution and Settlements | 7.8 | 1.4 | 17.4 | 1.1 | 14.1 | 0.6 | 3.0 | 3.9 | - | - | - | - | 35.6 | 192.7 | (157.1) | -81.5% |
| Student Loans | 7.5 | 3.1 | 8.5 | 7.5 | 1.7 | 10.9 | 2.3 | 2.2 | - | - | - | - | 43.7 | 59.3 | (15.6) | -26.3% |
| All Other | 52.9 | 56.0 | 47.1 | 57.8 | 56.7 | 82.5 | 60.9 | 44.2 | - | - | - | - | 458.0 | 367.7 | 90.3 | 24.6% |
| Sales | 5.2 | 0.8 | 1.2 | 2.7 | 1.7 | 2.5 | 0.9 | 1.7 | - | - | - | - | 16.7 | 19.9 | (3.2) | -16.1% |
| Tuition | 52.0 | 48.1 | 34.9 | 45.0 | 240.0 | 309.9 | 137.5 | 37.5 | - | - | - | - | 904.9 | 1,058.3 | (153.4) | -14.5% |
| **Total Miscellaneous Receipts** | 497.3 | 345.0 | 358.1 | 434.3 | 630.3 | 713.2 | 535.9 | 351.0 | - | - | - | - | 3,727.1 | 4,994.9 | (1,267.8) | -25.4% |
| **Federal Receipts** | 6,242.0 | 4,959.2 | 5,603.8 | 3,275.4 | 6,092.3 | 5,693.9 | 5,709.8 | 5,394.3 | - | - | - | - | 43,129.6 | 40,613.6 | 2,516.0 | 6.2% |
| **Total Receipts** | 20,483.1 | 10,716.9 | 16,418.8 | 10,554.7 | 12,478.1 | 16,853.9 | 13,744.8 | 11,288.8 | - | - | - | - | 112,637.2 | 104,866.8 | 7,766.4 | 7.4% |
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| **Local Assistance Grants:** | | | | | | | | | | | | | | | | |
| Education | 1,263.9 | 4,574.0 | 2,811.5 | 1,910.2 | 925.1 | 5,084.1 | 1,451.3 | 2,158.2 | - | - | - | - | 20,198.3 | 19,298.0 | 900.3 | 4.6% |
| Environment and Recreation | 25.4 | 33.7 | 2.7 | 14.9 | 14.4 | 18.9 | 15.6 | 12.2 | - | - | - | - | 137.8 | 116.3 | 21.5 | 18.5% |
| General Government | 60.3 | 159.7 | 734.4 | 63.0 | 87.5 | 132.4 | 163.7 | 72.1 | - | - | - | - | 1,473.1 | 1,549.4 | (76.3) | -4.9% |
| **Public Health:** | | | | | | | | | | | | | | | | |
| Medicaid | 6,412.0 | 6,151.7 | 4,857.9 | 4,505.7 | 5,506.5 | 5,065.5 | 5,679.8 | 5,947.1 | - | - | - | - | 44,521.2 | 41,793.1 | 2,728.1 | 6.5% |
| Other Public Health | 724.4 | 882.4 | 1,162.1 | 802.3 | 782.4 | 954.2 | 803.0 | 591.2 | - | - | - | - | 6,522.0 | 6,836.4 | (314.4) | -4.6% |
| Public Safety | 156.9 | 178.2 | 70.6 | 87.9 | 99.6 | 103.7 | 169.4 | 217.2 | - | - | - | - | 1,083.5 | 1,180.6 | (97.1) | -8.2% |
| Public Welfare | 240.1 | 215.9 | 537.8 | 482.8 | 324.1 | 708.5 | 1,491.0 | 1,057.6 | - | - | - | - | 5,075.7 | 4,919.8 | 155.9 | 3.2% |
| Support and Regulate Business | 34.1 | 164.8 | 204.6 | 67.8 | 67.7 | 74.4 | 60.9 | 66.7 | - | - | - | - | 740.9 | 677.0 | 63.9 | 9.4% |
| Transportation | 300.0 | 467.1 | 364.6 | 335.4 | 438.0 | 839.1 | 364.1 | 542.4 | - | - | - | - | 3,550.3 | 3,906.3 | (356.0) | -9.1% |
| **Total Local Assistance Grants** | 9,217.1 | 12,827.4 | 10,746.2 | 8,345.0 | 8,245.3 | 12,973.8 | 10,198.8 | 10,664.7 | - | - | - | - | 83,346.2 | 80,511.0 | 2,835.2 | 3.5% |
| **Departmental Operations:** | | | | | | | | | | | | | | | | |
| Personal Service | 1,159.8 | 1,717.6 | 1,227.7 | 1,191.0 | 1,253.3 | 1,115.1 | 1,440.2 | 1,129.8 | - | - | - | - | 10,144.5 | 9,751.0 | 393.5 | 3.7% |
| Non-Personal Service | 474.1 | 578.3 | 515.9 | 519.5 | 578.2 | 593.0 | 647.4 | 514.4 | - | - | - | - | 4,418.9 | 4,378.4 | 40.4 | 0.9% |
| General State Charges | 813.6 | 2,460.6 | 454.6 | 498.0 | 543.0 | 572.7 | 666.9 | 565.7 | - | - | - | - | 6,575.1 | 6,521.2 | 53.9 | 0.8% |
| Debt Service, Including Payments on Financing Agreements | 72.4 | 121.1 | 230.3 | 45.1 | 74.5 | 433.2 | 48.5 | 74.9 | - | - | - | - | 1,100.0 | 1,404.2 | (304.2) | -21.7% |
| Capital Projects | 424.1 | 528.1 | 536.5 | 600.7 | 750.3 | 582.6 | 710.7 | 705.0 | - | - | - | - | 4,948.0 | 4,977.6 | (29.6) | -0.6% |
| **Total Disbursements** | 12,156.1 | 10,041.1 | 13,061.2 | 11,495.3 | 11,484.6 | 16,270.4 | 13,711.4 | 13,632.5 | - | - | - | - | 110,402.6 | 107,084.3 | 3,318.3 | 3.1% |
| **Excess (Deficiency) of Receipts over Disbursements** | 8,307.0 | (235.1) | 3,357.6 | (940.6) | 993.5 | 583.5 | 33.6 | (2,343.7) | - | - | - | - | 2,234.6 | (2,217.5) | 4,452.1 | 200.7% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | | | |
| Bond Proceeds (net) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Transfers from Other Funds | 6,203.8 | 2,691.3 | 4,839.5 | 3,298.8 | 2,912.1 | 4,741.3 | 1,641.5 | 2,363.9 | - | - | - | - | 28,651.9 | 25,386.3 | 3,265.6 | 13.0% |
| Transfers to Other Funds | (6,317.9) | (2,088.9) | (4,864.0) | (3,281.7) | (2,930.1) | (4,785.2) | (1,645.1) | (2,087.6) | - | - | - | - | (28,760.6) | (25,372.1) | (3,388.5) | 13.4% |
| **Total Other Financing Sources (Uses)** | (114.3) | (17.6) | (15.1) | (12.9) | (18.0) | (23.9) | (3.6) | (3.4) | - | - | - | - | (108.7) | (19.8) | (88.9) | -888.0% |
| **Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses** | 8,292.7 | (252.7) | 2,803.5 | (953.5) | 965.5 | 569.6 | 29.8 | (2,249.1) | - | - | - | - | 2,115.9 | (2,233.3) | 4,349.2 | 194.7% |
| **Ending Fund Balance** | 18,267.7 | 18,025.1 | 13,728.6 | 12,775.1 | 13,740.6 | 14,310.2 | 14,340.0 | 12,090.9 | - | - | - | - | 12,090.9 | 10,515.7 | 1,575.2 | 15.0% |

(*) Governmental Funds includes General Fund, Special Revenue, Debt Service and Capital Projects Funds combined.

18

**Financial Reports**

**NYS Register/December 31, 2019**

STATE OF NEW YORK
GOVERNMENTAL FUNDS
STATEMENT OF CASH FLOW - STATE OPERATING (*)
FISCAL YEAR 2019-2020
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 9 Months Ended November 30 2019 | 2018 | $ Increase (Decrease) | % Increase Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Fund Balance | $ 12,361.3 | 18,718.2 | 12,243.5 | 14,048.7 | 14,566.1 | 14,735.4 | 14,633.6 | 14,770.1 | | | | | $ 12,361.3 | $ 13,606.6 | (1,245.3) | -9.2% |
| **RECEIPTS:** | | | | | | | | | | | | | | | | |
| **Taxes:** | | | | | | | | | | | | | | | | |
| Personal Income Tax: | | | | | | | | | | | | | | | | |
| Withholdings | 3,257.1 | 3,220.1 | 2,922.3 | 3,365.8 | 2,933.7 | 2,881.1 | 3,270.6 | 2,981.8 | | | | | 24,782.5 | 23,618.9 | 1,164.2 | 4.9% |
| Estimated Payments | 8,847.2 | 118.7 | 2,384.4 | 16.1 | 82.7 | 2,342.0 | 153.4 | 25.5 | | | | | 12,570.8 | 9,849.8 | 2,721.0 | 27.6% |
| Returns | 2,386.9 | 75.1 | 54.1 | 40.0 | 45.1 | 65.6 | 564.2 | 42.5 | | | | | 3,174.2 | 2,392.6 | 781.6 | 32.7% |
| Delinquency Offsets | (38.8) | (31.1) | (25.9) | (21.0) | (20.9) | (47.2) | (475.4) | (59.0) | | | | | (977.9) | (1,000.6) | (22.6) | -2.3% |
| Other (Assessments/LLC) | 170.3 | 105.2 | 98.2 | 89.3 | 96.7 | 91.7 | 104.5 | 121.8 | | | | | 874.3 | 814.5 | 59.8 | 7.3% |
| Gross Receipts | 12,316.9 | 3,631.9 | 5,433.1 | 3,503.0 | 3,132.5 | 5,703.1 | 3,604.0 | 3,174.9 | | | | | 40,424.1 | 36,076.1 | 4,703.3 | 12.2% |
| Transfers to School Tax Relief Fund | | | | | | | | | | | | | | | | |
| Transfers to Revenue Bond Tax Fund | (3,035.2) | (997.3) | (233.2) | (262.0) | (243.8) | (871.7) | (1,056.2) | (710.5) | | | | | (7,399.9) | (7,249.4) | 150.5 | 2.1% |
| Refunds Issued | 9,215.4 | 2,484.6 | 5,306.9 | 3,331.6 | 2,968.5 | 4,831.4 | 2,578.4 | 2,484.4 | | | | | 33,029.2 | 28,024.6 | 4,604.3 | 16.2% |
| **Total Personal Income Tax** | 9,215.4 | 2,484.6 | 5,306.9 | 3,331.6 | 2,968.5 | 4,831.4 | 2,578.4 | 2,484.4 | | | | | 33,029.2 | 28,024.6 | 4,604.3 | 16.2% |
| Consumption/Use Taxes: | | | | | | | | | | | | | | | | |
| Sales and Use | 1,201.6 | 1,178.9 | 1,589.5 | 1,238.2 | 1,243.6 | 1,628.2 | 1,238.3 | 1,250.6 | | | | | 10,568.8 | 9,980.3 | 588.5 | 5.9% |
| Auto Rental | | 1.3 | 0.4 | | | 7.3 | | | | | | | 7.3 | 28.2 | (20.9) | -74.1% |
| Cigarette/Tobacco Products | 89.2 | 85.2 | 83.8 | 108.8 | 82.2 | 87.7 | 93.8 | 84.1 | | | | | 722.8 | 786.8 | (63.0) | -8.0% |
| Medical Marijuana | 0.5 | 0.4 | 0.5 | 0.5 | 0.4 | 0.5 | 0.4 | 0.5 | | | | | 3.7 | 3.7 | | 0.0% |
| Motor Fuel | 9.6 | 9.4 | 9.5 | 9.8 | 10.1 | 9.1 | 10.0 | 8.6 | | | | | 75.1 | 75.1 | | 0.0% |
| Alcoholic Beverage | 20.0 | 20.9 | 20.0 | 25.6 | 19.5 | 23.5 | 23.5 | 24.5 | | | | | 177.0 | 177.0 | | 0.0% |
| Highway Use | | 0.1 | 0.1 | | | 0.1 | | 0.1 | | | | | 0.4 | 2.1 | (2.1) | 119.0% |
| Metropolitan Commuter Trans. Taxicab Trip | | | | | | | | | | | | | | 0.2 | (0.2) | -100.0% |
| **Total Consumption/Use Taxes** | 1,320.9 | 1,296.2 | 1,709.4 | 1,376.9 | 1,363.5 | 1,756.4 | 1,361.6 | 1,368.4 | | | | | 11,557.2 | 11,052.3 | 419.6 | 4.3% |
| Business Taxes: | | | | | | | | | | | | | | | | |
| Corporation Franchise | 278.7 | (69.0) | 901.2 | 146.3 | (1.7) | 941.3 | 98.8 | 108.9 | | | | | 2,604.2 | 2,145.7 | 358.5 | 16.7% |
| Corporation and Utilities | 39.7 | 1.3 | 107.6 | 0.4 | (15.6) | 137.9 | 2.8 | (0.7) | | | | | 287.3 | 280.2 | 7.1 | 2.5% |
| Insurance | 141.8 | 5.0 | 409.2 | 54.9 | (3.0) | 436.9 | 1.4 | 25.3 | | | | | 1,089.0 | 778.4 | 290.4 | 37.7% |
| Bank | 145.3 | (121.1) | (121.1) | (0.2) | (0.3) | (1.4) | (3.1) | (41.6) | | | | | (43.7) | 23.2 | (66.9) | -288.4% |
| Petroleum Business | 44.1 | 43.9 | 45.4 | 41.3 | 42.0 | 43.9 | 47.2 | 40.8 | | | | | 348.5 | 341.5 | 7.1 | 3.5% |
| **Total Business Taxes** | 74.0 | 74.0 | 244.8 | 244.8 | 43.5 | 155.5 | 147.1 | 132.5 | | | | | 4,170.2 | 3,569.0 | 601.2 | 16.8% |
| Other Taxes: | | | | | | | | | | | | | | | | |
| Real Property Gains | | | | | | | | | | | | | | 11.7 | (11.7) | 0.0% |
| Estate and Gift | 79.7 | 57.3 | 62.2 | 124.7 | 41.8 | 53.8 | 163.2 | 87.2 | | | | | 669.9 | 714.6 | (44.7) | -6.3% |
| Pari-Mutuel | 0.9 | 1.1 | 1.6 | 1.2 | 2.2 | 2.1 | 1.0 | 1.1 | | | | | 11.2 | 11.7 | (0.5) | -4.3% |
| Real Estate Transfer | 82.9 | 86.0 | 88.7 | 118.9 | 78.8 | 86.3 | 73.2 | 87.8 | | | | | 698.6 | 704.8 | (6.2) | -0.7% |
| Racing and Exhibitions | 0.2 | 0.1 | 0.3 | 0.2 | 0.1 | | 0.4 | 0.6 | | | | | 1.9 | 2.0 | (0.1) | -5.0% |
| Metropolitan Commuter Trans. Mobility | | | | | | | | | | | | | | 1.0 | (1.0) | 100.0% |
| Employer Compensation Expense Tax | 0.1 | 0.1 | | 0.2 | 0.2 | 0.2 | | | | | | | 1.0 | (44.8) | (45.8) | -3.5% |
| **Total Other Taxes** | 163.8 | 144.6 | 155.4 | 245.2 | 123.1 | 142.5 | 238.4 | 176.5 | | | | | 1,382.6 | 1,433.1 | | |
| **Total Taxes** | 11,447.7 | 3,784.1 | 5,966.4 | 5,201.3 | 4,440.9 | 8,287.6 | 4,325.1 | 4,147.1 | | | | | 50,140.2 | 44,510.3 | 5,629.9 | 12.6% |
| **Miscellaneous Receipts:** | | | | | | | | | | | | | | | | |
| Abandoned Property | 2.0 | 1.2 | 0.9 | 1.2 | 5.6 | 31.0 | 38.2 | 215.9 | | | | | 294.0 | 314.2 | (20.2) | -6.4% |
| Abandoned Property | 0.2 | 0.5 | 0.1 | | 0.1 | 38.1 | 0.3 | 0.3 | | | | | 48.8 | 53.0 | (4.2) | -7.8% |
| Estate Bill | | | | | | | | | | | | | | | | |
| Assessments: | | | | | | | | | | | | | | | | |
| Business | 66.4 | 33.6 | 94.2 | 48.2 | 43.9 | 68.3 | 68.1 | 28.8 | | | | | 452.5 | 446.2 | 6.3 | 1.4% |
| Medical Care | 635.7 | 523.9 | 509.0 | 571.5 | 518.5 | 544.1 | 531.2 | 472.5 | | | | | 4,298.2 | 4,157.4 | 158.8 | 3.8% |
| Public Utilities | 5.1 | | 0.7 | 0.7 | 0.9 | 44.2 | (6.0) | (1.7) | | | | | 46.2 | 48.3 | (1.9) | -3.9% |
| Other | | 0.2 | 0.1 | | 0.2 | | | 0.1 | | | | | 0.6 | 1.8 | (1.2) | -66.7% |
| Fees, Licenses and Permits | | | | | | | | | | | | | | | | |
| Alcoholic Beverage Control Licensing | 5.7 | 6.0 | 5.4 | 6.0 | 6.9 | 7.0 | 7.4 | 7.2 | | | | | 51.6 | 47.5 | 4.1 | 8.6% |
| Audit Fees | | 0.8 | 0.6 | 1.2 | 0.1 | 0.2 | | | | | | | 2.6 | 2.1 | 0.5 | 23.8% |
| Business/Professional | 59.7 | 18.0 | 127.8 | 82.5 | 36.2 | 130.7 | 79.7 | 69.8 | | | | | 623.2 | 565.6 | 59.6 | 10.5% |
| Civil | 28.6 | 18.0 | 22.9 | 22.6 | 17.8 | 34.5 | 20.5 | 69.8 | | | | | 187.1 | 203.1 | (16.0) | -7.9% |
| Criminal | 0.4 | 0.5 | 1.2 | 0.6 | 0.6 | 0.5 | 0.5 | 0.4 | | | | | 22.9 | 22.4 | 0.4 | 2.0% |
| Motor Vehicle | 59.3 | 61.5 | 40.3 | 59.0 | 52.7 | 34.2 | 59.1 | 36.9 | | | | | 451.9 | 480.4 | (81.5) | -16.0% |
| Recreational/Consumer | 89.2 | 37.0 | 67.0 | 67.5 | 86.4 | 131.3 | 57.9 | 59.4 | | | | | 607.2 | 656.1 | (67.6) | -8.7% |
| Fines, Penalties and Forfeitures | 635.7 | 221.8 | 133.2 | 48.7 | 29.5 | 38.5 | 85.9 | 32.3 | | | | | 1,218.9 | 1,206.5 | (16.9) | -1.4% |
| Gaming: | | | | | | | | | | | | | | | | |
| Casino | 31.4 | 19.7 | 29.7 | 37.7 | 15.3 | 20.0 | 36.8 | 13.3 | | | | | 193.0 | 173.5 | 19.5 | 11.2% |
| Lottery | 218.4 | 202.3 | 225.7 | 170.2 | 170.2 | 220.1 | 225.1 | 118.9 | | | | | 1,652.9 | 1,720.3 | (67.5) | -3.9% |
| Video Lottery | 76.6 | 86.3 | 63.2 | 88.5 | 78.5 | 77.5 | 94.6 | 72.7 | | | | | 628.1 | 659.1 | | -4.7% |
| Interest Earnings | 41.4 | 35.0 | 41.6 | 32.9 | 35.3 | 32.2 | 33.8 | 30.4 | | | | | 282.6 | 188.6 | 94.0 | 49.8% |
| Receipts from Public Authorities | | | | | | | | | | | | | | | | |
| Bond Proceeds | | | | | | | | | | | | | | | | 0.0% |

19

**NYS Register/December 31, 2019**                                   **Financial Reports**

STATE OF NEW YORK
GOVERNMENTAL FUNDS
STATEMENT OF CASH FLOW - STATE OPERATING (*)
FISCAL YEAR 2019-2020
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30 2019 | 2018 | % Increase/ (Decrease) | $ Increase (Decrease) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cost Recovery Assessments | 2.0 | 1.0 | 15.1 | 7.0 | 5.1 | 28.1 | 13.6 | 3.5 | | | | | 48.7 | 40.5 | 15.3% | 8.2 |
| Issuance Fees | 0.7 | 4.7 | 4.3 | 13.5 | | 0.9 | 14.8 | | | | | | 44.2 | 58.3 | -24.2% | (14.1) |
| Non Bond Related | 25.1 | 3.2 | 6.3 | 4.4 | 2.5 | 28.7 | 4.5 | | | | | | 54.4 | 65.2 | -16.6% | (10.9) |
| Receipts from Municipalities | 39.3 | 28.3 | 8.6 | 29.6 | 1.0 | 5.9 | 4.4 | 1.9 | | | | | 54.5 | 210.0 | -26.2% | (155.5) |
| Rentals | | | | | 0.7 | 0.7 | 65.7 | 24.1 | | | | | 197.3 | 238.5 | -17.3% | (41.2) |
| Revenues of State Departments: | | | | | | | | | | | | | | | | |
| Administrative Recoveries | 1.9 | 2.8 | 24.7 | 17.7 | 4.6 | 21.9 | 26.7 | 27.6 | | | | | 127.9 | 80.7 | 58.5% | 47.2 |
| Commissions | 0.6 | 0.6 | 0.6 | 0.6 | 0.2 | 0.8 | 0.7 | 0.8 | | | | | 4.9 | 4.6 | 6.5% | 0.3 |
| Commissions - Asset Conversion | | | | | | | | | | | | | | 1,000.0 | -100.0% | (1,000.0) |
| Gifts, Grants and Donations | 0.8 | 1.0 | 2.8 | 0.3 | 0.6 | 5.8 | 0.3 | 0.3 | | | | | 8.1 | 50.3 | -84.2% | (39.2) |
| Indirect Cost Recoveries | 6.5 | 6.5 | 8.7 | 8.3 | 7.2 | 6.6 | 7.7 | 6.2 | | | | | 54.9 | 63.0 | -12.6% | (8.1) |
| Patient/Client Care Reimbursement | 239.4 | 194.9 | 257.9 | 240.8 | 208.5 | 204.5 | 208.1 | 183.5 | | | | | 1,737.6 | 1,689.9 | 2.9% | 48.7 |
| Rebates | 4.6 | 2.7 | 6.1 | 13.4 | 3.8 | 3.5 | 9.9 | 6.4 | | | | | 50.2 | 30.7 | 29.9% | 11.5 |
| Restitution and Settlements | 7.6 | 1.2 | 1.0 | 1.0 | 5.9 | 0.5 | 0.5 | 3.6 | | | | | 21.3 | 178.0 | -87.9% | (154.7) |
| Student Loans | 7.5 | -3.1 | 18.6 | 7.5 | 1.7 | 10.9 | 2.6 | 2.2 | | | | | 42.7 | 59.3 | -28.3% | (15.6) |
| All Other | 49.0 | 55.2 | 45.8 | 43.3 | 44.3 | 77.6 | 56.3 | 38.8 | | | | | 413.3 | 332.2 | 18.6% | 68.1 |
| Sales | 1.0 | 0.8 | 1.2 | 2.7 | 2.5 | 2.5 | 0.8 | 1.5 | | | | | 12.2 | 17.7 | -31.1% | (5.5) |
| Tuition | 52.0 | 48.1 | 34.9 | 45.0 | 240.0 | 309.9 | 137.5 | 37.5 | | | | | 904.9 | 1,058.3 | -14.5% | (153.4) |
| **Total Miscellaneous Receipts** | **2,945.6** | **5,711.1** | **10,211.7** | **6,912.4** | **6,126.7** | **10,456.7** | **6,204.0** | **5,736.7** | | | | | **84,947.8** | **90,597.0** | **-6.1%** | **(1,296.7)** |
| Federal Receipts | 13,783.5 | | | 1.7 | 53.6 | 0.3 | 0.1 | 0.2 | | | | | 55.0 | 54.4 | 59.9% | 20.6 |
| **Total Receipts** | **13,783.5** | **5,711.1** | **10,211.7** | **6,912.4** | **6,126.7** | **10,456.7** | **6,204.0** | **5,736.7** | | | | | **84,947.8** | **90,597.0** | **7.2%** | **4,350.8** |
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| Local Assistance Grants: | | | | | | | | | | | | | | | | |
| Education | 917.2 | 3,990.2 | 2,539.1 | 1,611.6 | 660.8 | 4,854.3 | 1,250.2 | 1,890.0 | | | | | 17,704.2 | 16,676.3 | 6.2% | 1,027.9 |
| Environment and Recreation | 0.2 | 0.1 | 0.6 | (0.1) | 0.3 | 1.0 | 0.7 | 0.3 | | | | | 3.1 | 2.3 | 34.8% | 0.8 |
| General Government | 27.1 | 34.4 | 576.7 | 22.4 | 58.0 | 71.2 | 33.2 | 5.1 | | | | | 874.1 | 845.1 | 3.4% | 29.0 |
| Public Health: | | | | | | | | | | | | | | | | |
| Medicaid | 3,395.6 | 2,470.6 | 1,759.2 | 1,503.0 | 1,758.5 | 1,918.8 | 2,120.2 | 2,341.5 | | | | | 17,566.2 | 15,833.6 | 11.0% | 1,733.6 |
| Other Public Health | 313.3 | 150.0 | 446.7 | 361.2 | 279.9 | 257.2 | 272.6 | 175.1 | | | | | 2,029.6 | 2,194.0 | -7.5% | (164.4) |
| Public Safety | 30.7 | 27.8 | 28.6 | 28.0 | 33.0 | 28.5 | 23.5 | 22.5 | | | | | 240.9 | 224.2 | 7.4% | 16.7 |
| Public Welfare | 88.7 | 86.7 | 181.0 | 128.9 | 180.7 | 170.0 | 424.8 | 460.9 | | | | | 1,722.7 | 1,535.2 | 12.2% | 187.5 |
| Support and Regulate Business | 7.1 | 14.4 | 7.0 | 27.8 | 24.5 | 11.7 | 22.4 | 21.0 | | | | | 135.9 | 137.6 | -1.2% | (1.7) |
| Transportation | 9.3 | -26.0 | 238.4 | 354.5 | 389.4 | 327.1 | 279.8 | 448.0 | | | | | 2,020.0 | 2,220.7 | -9.0% | (200.7) |
| **Total Local Assistance Grants** | **4,845.1** | **7,192.7** | **5,812.3** | **4,257.1** | **3,492.1** | **7,666.1** | **4,417.0** | **5,436.1** | | | | | **42,816.5** | **40,235.8** | **6.4%** | **2,580.7** |
| Departmental Operations: | | | | | | | | | | | | | | | | |
| Personal Service | 1,060.5 | 1,651.8 | 1,072.6 | 1,146.7 | 1,205.6 | 1,064.2 | 1,364.4 | 1,083.1 | | | | | 9,678.9 | 9,306.5 | 4.0% | 372.4 |
| Non-Personal Service | 404.0 | 500.6 | 419.6 | 437.9 | 472.7 | 406.6 | 514.3 | 431.6 | | | | | 3,588.6 | 3,551.6 | 1.0% | 35.0 |
| General State Charges | 782.2 | 2,436.5 | 429.6 | 484.4 | 518.5 | 548.2 | 639.9 | 539.5 | | | | | 6,568.9 | 6,218.4 | 2.3% | 148.4 |
| Debt Service, Including Payments on Financing Agreements | 72.4 | 121.1 | 290.3 | 45.1 | 74.5 | 433.2 | 48.5 | 74.9 | | | | | 1,100.0 | 1,404.2 | -21.7% | (304.2) |
| Capital Projects | | | 0.1 | | (0.1) | | | | | | | | | | -7% | |
| **Total Disbursements** | **7,064.2** | **11,902.1** | **7,955.4** | **6,356.2** | **5,673.3** | **10,112.3** | **6,984.1** | **7,559.2** | | | | | **63,549.8** | **60,716.5** | **4.7%** | **2,824.3** |
| **Excess (Deficiency) of Receipts over Disbursements** | **6,704.3** | **(6,381.0)** | **2,256.3** | **562.2** | **453.4** | **344.4** | **(788.1)** | **(1,822.5)** | | | | | **1,407.0** | **(119.5)** | **1,277.6%** | **1,526.5** |
| OTHER FINANCING SOURCES (USES): | | | | | | | | | | | | | | | | |
| Transfers from Other Funds (*) | 5,736.6 | 2,417.0 | 4,298.6 | 3,019.8 | 2,555.3 | 4,021.1 | 2,373.2 | 1,893.8 | | | | | 26,235.4 | 23,061.8 | 13.7% | 3,163.6 |
| Transfers to Other Funds (*) | (6,134.0) | (500.2) | (4,748.7) | (3,125.8) | (2,729.4) | (4,467.3) | (1,456.6) | (2,126.4) | | | | | (27,398.7) | (24,106.2) | 13.7% | 3,292.5 |
| **Total Other Financing Sources (Uses)** | **(427.4)** | **(83.2)** | **(450.1)** | **(106.0)** | **(224.1)** | **(446.2)** | **916.6** | **(232.6)** | | | | | **(1,173.3)** | **(1,044.4)** | **12.3%** | **(128.9)** |
| **Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses** | **6,356.9** | **(6,474.7)** | **1,806.2** | **456.4** | **226.3** | **(191.8)** | **138.5** | **(2,175.1)** | | | | | **233.7** | **(1,163.9)** | **120.1%** | **1,397.6** |
| **Ending Fund Balance** | **$ 18,718.2** | **$ 12,243.5** | **$ 14,049.7** | **$ 14,506.1** | **$ 14,732.4** | **$ 14,540.6** | **$ 14,679.1** | **$ 12,504.0** | **$ -** | **$ -** | **$ -** | **$ -** | **$ 12,504.0** | **$ 12,412.7** | **1.2%** | **$ 152.3** |

(*)  State Operating Funds are comprised of the General Fund, State Special Revenue Funds supported by activities from dedicated revenue sources (including operating transfers from Federal funds) and Debt Service Funds.
(**) Eliminations between State and Federal Special Revenue Funds are not included.

20

EXHIBIT F

STATE OF NEW YORK
GENERAL FUND
STATEMENT OF CASH FLOW
FISCAL YEAR 2019-2020
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 9 Months Ended November 30 2019 | 2018 | Increase/(Decrease) | % Increase/Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Fund Balance** | $ 7,205.7 | $ 11,958.7 | $ 5,221.6 | $ 6,593.0 | $ 6,614.3 | $ 6,886.4 | $ 9,048.8 | $ 8,815.2 | | | | | $ 7,205.7 | $ 9,445.0 | $ (2,239.3) | -23.7% |
| **RECEIPTS:** | | | | | | | | | | | | | | | | |
| **Taxes:** | | | | | | | | | | | | | | | | |
| **Personal Income Tax:** | | | | | | | | | | | | | | | | |
| Withholdings | 3,237.1 | 3,220.1 | 2,922.3 | 3,368.8 | 2,933.7 | 2,851.1 | 3,270.6 | 2,981.8 | | | | | 24,782.5 | 23,618.3 | 1,164.2 | 4.9% |
| Estimated Payments | 6,843.2 | 112.6 | 2,368.4 | 118.7 | 98.7 | 2,742.0 | 112.9 | 93.5 | | | | | 12,976.0 | 9,848.8 | 2,728.2 | 27.7% |
| Returns | 2,298.9 | 75.1 | 54.1 | 40.8 | 45.1 | 65.5 | 564.2 | 42.5 | | | | | 3,174.2 | 2,392.6 | 781.6 | 32.7% |
| State/City Offsets | (208.9) | (31.1) | (25.9) | (21.0) | (20.9) | (47.2) | (475.4) | | | | | | (877.9) | (1,000.0) | (23.0) | -2.5% |
| Other (Assessments/LLC) | 170.3 | 105.2 | 98.2 | 89.3 | 95.7 | 91.7 | 104.3 | 121.0 | | | | | 874.5 | 814.5 | 59.8 | 7.3% |
| **Total Personal Income Tax** | 12,330.6 | 3,481.9 | 5,417.1 | 3,596.6 | 3,152.3 | 5,703.1 | 3,576.6 | 3,176.3 | | | | | 40,491.4 | 47,544.3 | (4,313.4) | -57.3% |
| Transfers to School Tax Relief Fund | (4,607.7) | (1,242.3) | (1,666.8) | | (1,454.3) | (2,415.7) | | (3.0) | | | | | (16,514.6) | (14,212.4) | (4.3) | -87.3% |
| Transfers to Revenue Bond Tax Fund | (203.0) | (687.2) | (2,604.9) | (1,665.8) | (245.5) | (81.7) | (1,289.2) | (1,234.7) | | | | | (7,390.2) | (2,302.2) | (14,212.4) | 16.2% |
| Refunds | 4,607.7 | 1,242.3 | 1,665.9 | 1,665.5 | 1,454.2 | 2,415.7 | 1,289.8 | 1,291.7 | | | | | 16,514.4 | 14,205.0 | 2,306.4 | 16.2% |
| **Total Consumption/Use Tax** | 585.3 | 568.1 | 796.0 | 636.6 | 629.6 | 813.7 | 626.4 | 635.3 | | | | | 5,321.2 | 5,070.5 | 250.7 | 4.9% |
| **Total Business Taxes** | 543.2 | (181.5) | 1,143.1 | 160.2 | (20.1) | 1,283.6 | 73.3 | 56.8 | | | | | 3,058.6 | 2,571.6 | 487.0 | 18.9% |
| **Total Taxes** | 5,817.1 | 1,717.4 | 4,692.2 | 2,580.0 | 2,197.9 | 4,560.9 | 2,153.4 | 2,012.8 | | | | | 25,574.7 | 22,574.4 | 2,999.3 | 13.3% |

**NYS Register/December 31, 2019**                               **Financial Reports**

EXHIBIT F

**STATE OF NEW YORK**
**GENERAL FUND**
**STATEMENT OF CASH FLOW**
**FISCAL YEAR 2019-2020**
(amounts in millions)

| | 2019 | | | | | | | | | 2020 | | | 8 Months Ended November 30 | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | JANUARY | FEBRUARY | MARCH | 2019 | 2018 | $ Increase/(Decrease) | % Increase/Decrease |
| Restitution and Settlements | - | 0.2 | 0.2 | - | - | 0.1 | 0.1 | 0.1 | | | | | 0.6 | 110.7 | (110.1) | -99.5% |
| Student Loans | 8.1 | 18.3 | (11.6) | 4.1 | 0.6 | 10.1 | 19.5 | 7.5 | | | | | 56.6 | 29.7 | 26.9 | 90.6% |
| All Other | 0.1 | - | - | - | 0.1 | 0.2 | - | - | | | | | 0.2 | 0.2 | - | 0.0% |
| Sales | 740.9 | 261.0 | 170.2 | 83.3 | 167.4 | 268.3 | 225.9 | 382.9 | | | | | 2,232.8 | 2,385.2 | (152.4) | -6.4% |
| **Total Miscellaneous Receipts** | 749.1 | 279.5 | 158.8 | 87.4 | 168.1 | 278.7 | 245.5 | 390.5 | | | | | 2,289.6 | 2,525.8 | (236.2) | -9.4% |
| Federal Receipts | - | - | - | - | 0.1 | 0.2 | - | 0.1 | | | | | 0.5 | 0.1 | 0.4 | 400.0% |
| **Total Receipts** | 6,558.1 | 1,996.7 | 4,767.0 | 2,676.4 | 2,276.1 | 4,847.8 | 2,399.3 | 2,343.4 | | | | | 27,864.8 | 25,191.3 | 2,763.5 | 11.0% |
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| Local Assistance Grants: | | | | | | | | | | | | | | | | |
| Education | 917.0 | 3,979.7 | 2,189.8 | 1,611.4 | 679.3 | 2,342.9 | 1,082.3 | 1,741.4 | | | | | 14,543.8 | 13,981.1 | 562.7 | 4.0% |
| Environment and Recreation | 0.1 | 0.1 | 0.1 | - | 0.2 | 0.8 | 0.7 | 0.1 | | | | | 2.1 | 1.8 | 0.3 | 16.7% |
| General Government | 1.7 | 15.7 | 574.9 | 2.2 | 45.5 | 48.3 | 19.1 | 30.9 | | | | | 738.3 | 745.5 | (7.2) | -1.0% |
| Public Health: | | | | | | | | | | | | | | | | |
| Medicaid | 3,296.6 | 1,588.6 | 1,363.9 | 1,320.2 | 1,073.3 | 1,308.3 | 1,650.5 | 1,933.4 | | | | | 13,564.8 | 12,106.6 | 1,458.2 | 12.0% |
| Other Public Health | 150.2 | 120.3 | 336.0 | 217.7 | 111.8 | 213.0 | 220.9 | 101.5 | | | | | 1,471.4 | 1,599.4 | (128.0) | -8.0% |
| Public Safety | 10.8 | 13.4 | 12.5 | 18.5 | 12.9 | 24.8 | 12.2 | 10.2 | | | | | 115.1 | 122.3 | (7.2) | -5.9% |
| Public Welfare | 87.8 | 84.9 | 180.5 | 128.4 | 179.8 | 170.7 | 424.4 | 459.7 | | | | | 1,716.2 | 1,526.9 | 189.3 | 12.4% |
| Support and Regulate Business | 6.0 | 7.7 | 5.7 | 22.0 | 21.1 | 7.3 | 20.9 | 7.1 | | | | | 97.8 | 94.5 | 3.3 | 3.5% |
| Transportation | - | 23.9 | 14.1 | 0.2 | 23.9 | (0.1) | - | 24.1 | | | | | 88.1 | 279.5 | (191.4) | -68.5% |
| **Total Local Assistance Grants** | 4,070.0 | 5,834.3 | 4,707.5 | 3,320.6 | 2,147.8 | 4,116.0 | 3,431.0 | 4,368.4 | | | | | 32,335.6 | 30,457.6 | 1,878.0 | 6.2% |
| Departmental Operations: | | | | | | | | | | | | | | | | |
| Personal Service | 688.8 | 1,071.8 | 678.0 | 697.3 | 853.2 | 676.0 | 805.2 | 684.6 | | | | | 6,155.9 | 5,912.0 | 243.9 | 4.1% |
| Non-Personal Service | 159.0 | 248.2 | 218.9 | 289.9 | 211.3 | 189.9 | 296.5 | 147.6 | | | | | 1,832.3 | 1,894.0 | (61.7) | -3.6% |
| General State Charges | 728.2 | 2,340.3 | 384.9 | 384.8 | 422.6 | 477.0 | 573.4 | 459.8 | | | | | 5,710.0 | 5,486.5 | 223.5 | 4.1% |
| **Total Disbursements** | 6,046.0 | 9,504.6 | 5,970.3 | 4,603.6 | 3,634.9 | 5,457.9 | 5,066.1 | 5,550.4 | | | | | 45,833.8 | 43,550.1 | 2,283.7 | 5.2% |
| **Excess (Deficiency) of Receipts over Disbursements** | 512.1 | (7,507.9) | (1,203.3) | (1,927.2) | (1,358.8) | (610.1) | (2,666.8) | (3,207.0) | | | | | (17,969.0) | (18,448.8) | 479.8 | 2.6% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | | | |
| Transfers from Revenue Bond Tax Fund | 4,607.3 | 1,128.2 | 2,606.0 | 1,658.3 | 1,476.3 | 2,882.8 | 1,288.8 | 960.3 | | | | | 16,406.0 | 13,840.1 | 2,565.9 | 18.5% |
| Transfers from LGAC / STBIETF | 452.0 | 302.7 | 835.6 | 501.5 | 480.2 | 747.8 | 493.9 | 484.1 | | | | | 4,317.8 | 4,018.5 | 299.3 | 7.4% |
| Transfers from COVIDA Fund | 70.1 | 66.0 | 85.4 | 114.3 | 74.1 | 80.7 | 68.6 | 83.1 | | | | | 662.5 | 665.0 | (2.5) | -0.4% |
| Transfers from Other Funds | 49.4 | 110.2 | 118.6 | 248.4 | 118.4 | 70.3 | 84.2 | 67.1 | | | | | 866.6 | 731.7 | 134.9 | 18.4% |
| Transfers to State Capital Projects | (248.8) | (405.9) | (303.8) | (205.8) | (402.8) | (596.9) | (812.1) | (904.2) | | | | | (1,822.5) | (1,746.0) | (76.5) | -4.4% |
| Transfers to All Other Capital Projects | (250.0) | (70.0) | (218.6) | (50.0) | (70.0) | (118.5) | (100.0) | (98.0) | | | | | (901.0) | (933.0) | 32.0 | 3.4% |
| Transfers to General Debt Service | (134.7) | (10.7) | (7.0) | (132.1) | (18.6) | (28.2) | (129.9) | (20.2) | | | | | (335.4) | (505.3) | 169.9 | 33.6% |
| Transfers to All Other State Funds | (294.6) | (447.3) | (467.0) | (190.1) | (71.9) | (152.9) | (85.5) | (169.4) | | | | | (1,859.3) | (1,656.1) | (203.2) | -12.3% |
| **Total Other Financing Sources (Uses)** | 4,250.9 | 768.8 | 2,574.7 | 1,948.5 | 1,639.9 | 2,773.5 | 2,432.2 | 983.2 | | | | | 17,334.7 | 14,435.4 | 2,899.3 | 20.1% |
| **Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses** | 4,763.0 | (6,747.5) | 1,371.4 | 21.3 | 272.1 | 2,163.4 | (234.6) | 8,815.2 | | | | | (634.3) | (4,013.4) | 3,379.1 | 84.2% |
| **Ending Fund Balance** | $ 11,988.7 | $ 5,221.6 | $ 6,593.0 | $ 6,614.3 | $ 6,886.4 | $ 9,049.8 | $ 8,815.2 | $ 6,571.4 | | | | | $ 6,574.4 | $ 5,431.6 | $ 1,139.8 | 21.0% |

22

163

**Financial Reports**

EXHIBIT G

STATE OF NEW YORK
SPECIAL REVENUE FUNDS - COMBINED
STATEMENT OF CASH FLOW
FISCAL YEAR 2019-2020
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | Intra-Fund Transfer Eliminations (1) | 8 Months Ended November 30 2019 | 2018 | $ Increase (Decrease) | % Increase/ Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Fund Balance | $ 3,842.4 | $ 7,002.4 | $ 6,208.9 | $ 7,988.6 | $ 6,889.8 | $ 7,461.3 | $ 6,541.5 | $ 5,866.6 | | | | | $ | $ 3,842.4 | $ 4,362.1 | (4.3) | -60.7% |

RECEIPTS:

Taxes:

Miscellaneous Receipts:
- Abandoned Property
- Assessments:
- Business
- Public Utilities
- Other
- Fees, Licenses and Permits:
- Audit Fees
- Business/Professional
- Civil
- Criminal
- Motor Vehicle
- Recreation/Consumer
- Fines, Penalties and Forfeitures
- Gaming:
- Casino
- Lottery
- Video Lottery
- Interest Earnings
- Receipts from Public Authorities:
- Bond Proceeds
- Cost Recovery Assessments
- Insurance Fees
- Non Bond Related
- Receipts from Municipalities
- Rentals
- Revenues of State Departments:
- Administrative Recoveries
- Commissions - Asset Conversion
- Gifts, Grants and Donations
- Indirect Cost Recoveries
- Patient/Client Care Reimbursement
- Rebates
- Restitutions and Settlements
- Student Loans
- All Other
- Sales
- Tuition
- **Total Miscellaneous Receipts**
- **Federal Receipts**
- **Total Receipts**

EXHIBIT G

**STATE OF NEW YORK**
**SPECIAL REVENUE FUNDS - COMBINED**
**STATEMENT OF CASH FLOW**
**FISCAL YEAR 2019-2020**
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | Intra-Fund Transfer Eliminations (1) | 2019 8 Months Ended November 30 | 2018 | $ Increase (Decrease) | % Increase/ Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | | |
| **Local Assistance Grants:** | | | | | | | | | | | | | | | | | |
| Education | 307.7 | 591.1 | 611.4 | 298.1 | 233.8 | 2,684.8 | 364.6 | 378.6 | - | - | - | - | - | 5,484.1 | 5,198.1 | 286.0 | 5.7% |
| Environment and Recreation | 0.2 | 0.1 | 0.5 | (0.1) | 0.2 | 0.5 | 0.1 | 0.2 | - | - | - | - | - | 1.7 | 2.0 | (0.3) | -15.0% |
| General Government | 27.4 | 22.2 | 10.5 | 21.4 | 24.2 | 25.0 | 16.2 | 22.6 | - | - | - | - | - | 169.5 | 144.4 | 25.1 | 17.4% |
| Public Health | | | | | | | | | | | | | | | | | |
| Medicaid | 3,115.4 | 4,563.1 | 3,484.0 | 3,585.5 | 4,433.2 | 3,752.2 | 4,029.3 | 4,013.7 | - | - | - | - | - | 27,956.4 | 26,686.5 | 1,269.9 | 4.3% |
| Other Public Health | 545.4 | 520.5 | 850.5 | 508.9 | 602.9 | 721.0 | 508.6 | 456.4 | - | - | - | - | - | 4,714.9 | 5,009.4 | (397.5) | -5.7% |
| Public Safety | 136.3 | 154.9 | 98.8 | 69.3 | 86.4 | 66.9 | 156.0 | 192.2 | - | - | - | - | - | 960.9 | 1,023.3 | (92.5) | -9.0% |
| Public Welfare | 152.3 | 120.0 | 271.2 | 318.4 | 185.2 | 480.0 | 1,063.4 | 614.6 | - | - | - | - | - | 3,118.3 | 3,178.7 | (58.4) | -1.8% |
| Support and Regulate Business | 1.4 | 7.9 | 1.5 | 6.6 | 5.7 | 5.2 | 1.9 | 15.8 | - | - | - | - | - | 44.0 | 46.6 | (2.6) | -5.5% |
| Transportation | 72.3 | 408.5 | 260.7 | 278.1 | 369.0 | 330.5 | 264.0 | 473.6 | - | - | - | - | - | 2,491.6 | 2,562.8 | (71.2) | -2.8% |
| **Total Local Assistance Grants** | 4,386.4 | 6,398.3 | 5,495.1 | 5,075.9 | 5,660.6 | 8,900.1 | 5,415.1 | 6,972.3 | - | - | - | - | - | 47,925.3 | 46,848.8 | 1,076.5 | 2.3% |
| **Departmental Operations:** | | | | | | | | | | | | | | | | | |
| Personal Service | 451.0 | 645.8 | 448.7 | 493.7 | 400.1 | 438.1 | 630.0 | 445.2 | - | - | - | - | - | 3,958.6 | 3,839.0 | 119.6 | 3.1% |
| Non-Personal Service | 319.4 | 324.8 | 294.4 | 310.0 | 360.1 | 402.6 | 580.3 | 364.8 | - | - | - | - | - | 2,761.2 | 2,658.0 | 103.2 | 3.9% |
| General State Charges | 86.4 | 111.3 | 89.7 | 114.2 | 120.4 | 96.7 | 92.5 | 156.9 | - | - | - | - | - | 865.1 | 1,034.7 | (169.6) | -16.4% |
| Capital Projects | - | - | (0.1) | - | (0.1) | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| **Total Disbursements** | 5,237.2 | 7,480.2 | 6,326.0 | 5,993.8 | 6,671.1 | 9,009.5 | 7,523.8 | 7,938.5 | - | - | - | - | - | 55,510.2 | 54,378.5 | 1,131.7 | 2.1% |
| **Excess (Deficiency) of Receipts over Disbursements** | 2,949.2 | (1,014.0) | 1,330.3 | (1,801.7) | 944.7 | (1,264.7) | (318.7) | (348.9) | - | - | - | - | - | 967.1 | 503.1 | 464.0 | 92.2% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | | | | |
| Transfers from Other Funds | 308.3 | 585.3 | 566.5 | 215.4 | 160.2 | 189.8 | 119.5 | 185.7 | - | - | - | - | (414.0) | 1,905.5 | 1,690.3 | 215.2 | 12.8% |
| Transfers to Other Funds | (89.5) | (304.8) | (179.1) | (299.7) | (244.2) | (193.7) | (174.7) | (154.8) | - | - | - | - | 414.0 | (1,106.5) | (938.2) | (168.3) | 17.9% |
| **Total Other Financing Sources (Uses)** | 218.8 | 280.5 | 387.4 | (84.3) | (84.0) | (15.1) | (55.2) | 30.9 | - | - | - | - | - | 799.0 | 742.1 | 56.9 | 8.5% |
| **Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses** | 3,168.0 | (733.5) | 1,717.7 | (1,886.0) | 860.7 | (1,279.8) | (374.0) | (287.1) | - | - | - | - | - | 1,757.1 | 1,245.2 | 511.9 | 41.1% |
| **Ending Fund Balance** | $ 7,602.4 | $ 6,268.9 | $ 7,986.6 | $ 6,930.6 | $ 7,461.3 | $ 6,241.5 | $ 5,886.6 | $ 5,599.5 | $ - | $ - | $ - | $ - | $ - | $ 5,599.5 | $ 5,547.3 | $ 52.2 | 0.9% |

(1)   Intra-Fund transfer eliminations represent transfers between Special Revenue-State and Federal Funds.

24

**Financial Reports**                                                       **NYS Register/December 31, 2019**

EXHIBIT G

STATE OF NEW YORK
SPECIAL REVENUE FUNDS - STATE
STATEMENT OF CASH FLOW
FISCAL YEAR 2019-2020
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 2019 | 2018 | $ Increase (Decrease) | % Increase Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | 8 Months Ended November 30 | | | |
| Beginning Fund Balance | $ 5,000.8 | $ 6,434.7 | $ 6,338.1 | $ 7,095.2 | $ 7,277.1 | $ 7,084.7 | $ 5,278.8 | $ 5,356.5 | | | | | $ 5,000.8 | $ 4,088.5 | $ (4.3) | -57.3% |
| **RECEIPTS:** | | | | | | | | | | | | | | | | |
| **Taxes:** | | | | | | | | | | | | | | | | |
| Personal Income Tax | 124.1 | 76.4 | 102.8 | 79.1 | 80.3 | 104.8 | 81.0 | 82.1 | | | | | 730.6 | 670.5 | 60.1 | 9.0% |
| **Consumption/Use Taxes:** | | | | | | | | | | | | | | | | |
| Sales and Use | | 33.6 | | | | | | 0.2 | 3.0 | | | | 28.2 | 28.2 | (20.9) | -74.1% |
| Auto Rental | | | | | | | | | | | | | 50.9 | 50.0 | 1.4 | 60.6% |
| Cigarette/Tobacco Products | 63.2 | 59.4 | 57.3 | 75.4 | 63.9 | 59.4 | 65.5 | 57.8 | | | | | 501.9 | 550.0 | 1.4 | 60.6% |
| Medical Marijuana | 0.5 | 0.4 | 0.5 | 0.5 | 0.4 | 0.5 | 0.4 | 0.5 | | | | | 3.7 | 2.3 | | 0.0% |
| Motor Fuel | 9.8 | 9.4 | 8.8 | 8.8 | 10.1 | 8.8 | 10.0 | 8.6 | | | | | 75.1 | 75.1 | | 0.0% |
| Alcoholic Beverage | | | | | | | | | | | | | | | (0.1) | -100.0% |
| Highway Use | 0.4 | 0.1 | | | 0.1 | | | 0.1 | | | | | 0.4 | 2.6 | (38.7) | 119.0% |
| Metropolitan Commuter Trans. Taxicab Trip | | | | | | | | | | | | | | (2.1) | (38.7) | -100.0% |
| **Total Consumption/Use Taxes** | 197.4 | 145.7 | 170.2 | 163.8 | 154.7 | 181.2 | 156.9 | 149.1 | | | | | 1,319.0 | 1,365.7 | (46.7) | -3.4% |
| **Business Taxes:** | | | | | | | | | | | | | | | | |
| Corporation Franchise | 102.6 | 6.0 | 175.4 | 36.9 | 21.4 | 150.0 | 27.3 | 39.2 | | | | | 558.8 | 487.9 | 70.9 | 14.5% |
| Corporation and Utilities | 23.4 | (0.5) | 23.5 | 0.2 | (0.9) | 32.4 | 0.8 | 0.8 | | | | | 86.1 | 76.5 | 9.6 | 12.5% |
| Insurance | 14.4 | 8.6 | 48.5 | 5.9 | (3.8) | 49.0 | (1.3) | (0.3) | | | | | 121.0 | 94.6 | 26.4 | 27.9% |
| Bank | 19.9 | (18.4) | 0.4 | 0.1 | (0.1) | (0.4) | (0.2) | (5.2) | | | | | (1.9) | (3.1) | 1.2 | 38.7% |
| Petroleum Business | 44.1 | 43.9 | 45.4 | 41.3 | 47.0 | 43.9 | 47.2 | 47.2 | | | | | 353.6 | 340.6 | 12.9 | 3.8% |
| **Total Business Taxes** | 204.4 | 41.6 | 293.2 | 84.4 | 63.6 | 274.9 | 73.8 | 75.7 | | | | | 1,111.6 | 995.4 | 116.2 | 11.7% |
| **Total Taxes** | 401.8 | 187.3 | 463.4 | 248.2 | 218.3 | 456.1 | 230.9 | 227.8 | | | | | 2,433.8 | 2,366.8 | 65.2 | 2.8% |
| **Miscellaneous Receipts:** | | | | | | | | | | | | | | | | |
| Abandoned Property | 1.1 | 1.1 | 0.9 | 0.9 | 0.8 | 0.8 | 1.2 | 0.9 | | | | | 7.7 | 7.4 | 0.3 | 4.1% |
| **Assessments:** | | | | | | | | | | | | | | | | |
| Business Fees | 66.4 | 33.6 | 84.2 | 49.2 | 43.9 | 68.3 | 68.1 | 28.8 | | | | | 452.5 | 442.2 | 8.3 | 1.4% |
| Medical Care | 635.7 | 519.7 | 504.7 | 567.5 | 515.9 | 542.2 | 538.7 | 469.1 | | | | | 4,273.5 | 4,106.2 | 167.3 | 4.1% |
| Public Utilities | 5.1 | | 0.7 | | | 44.2 | | (1.7) | | | | | 43.2 | 38.3 | 4.9 | 12.8% |
| Other | | 0.1 | | 0.1 | 0.1 | | (6.0) | (6.0) | | | | | 0.2 | 1.3 | (1.1) | -84.6% |
| **Fees, Licenses and Permits:** | | | | | | | | | | | | | | | | |
| Business/Professional | 48.6 | 36.9 | 1.5 | 47.5 | 32.8 | 0.2 | 49.4 | 53.6 | | | | | 2.6 | 2.1 | 0.5 | 23.8% |
| Civil | 3.6 | 4.6 | 98.0 | 4.2 | 2.7 | 85.6 | 4.8 | 5.1 | | | | | 462.4 | 424.0 | 38.4 | 9.1% |
| Criminal | 0.3 | 0.4 | 5.1 | | 7.8 | 7.8 | 0.4 | 0.3 | | | | | 4.1 | 37.9 | (27.) | -39.7% |
| Motor Vehicle | 26.0 | 25.6 | 28.7 | 23.5 | 28.3 | 10.0 | 25.3 | 25.8 | | | | | 194.2 | 341.8 | (147.6) | -43.2% |
| Revenue/Consumer | 54.0 | 45.6 | 65.4 | 65.9 | 84.0 | 129.2 | 56.6 | 71.1 | | | | | 589.8 | 53.0 | (44.8) | -43.3% |
| Fines, Penalties and Forfeitures | 7.6 | 67.2 | 106.7 | 4.8 | 9.8 | 7.8 | 13.9 | 8.1 | | | | | 225.9 | 124.9 | 101.0 | 80.9% |
| **Gaming:** | | | | | | | | | | | | | | | | |
| Casino | 31.4 | 18.8 | 19.7 | 37.7 | 15.3 | 20.0 | 36.8 | 13.3 | | | | | 193.0 | 173.5 | 19.5 | 11.2% |
| Lottery | 218.4 | 262.0 | 202.3 | 225.7 | 170.2 | 178.3 | 220.1 | 177.8 | | | | | 1,652.8 | 1,720.3 | (67.5) | -3.9% |
| Video Lottery | 78.6 | 88.5 | 63.2 | 89.5 | 78.5 | 77.5 | 84.8 | 72.7 | | | | | 633.1 | 625.1 | 8.0 | 1.3% |
| Interest Earnings | 19.4 | 18.2 | 21.5 | 19.7 | 20.9 | 19.2 | 19.8 | 17.6 | | | | | 156.3 | 107.2 | 49.1 | 45.8% |
| **Receipts from Public Authorities:** | | | | | | | | | | | | | | | | |
| Bond Proceeds | | | | | | | | | | | | | | | | 0.0% |
| Cost Recovery Assessments | 2.0 | 1.0 | 4.3 | 13.5 | | 23.1 | 5.6 | | | | | | 28.7 | 20.4 | 8.3 | 40.7% |
| Insurance Fees | 0.6 | 4.7 | 4.3 | 3.6 | | 1.7 | 4.4 | | | | | | 7.2 | 7.2 | | 0.0% |
| Non Bond Related | 5.2 | 3.1 | 6.3 | 29.3 | 2.3 | 5.9 | 2.9 | 1.8 | | | | | 29.2 | 42.2 | (13.0) | -30.8% |
| Receipts from Municipalities | 8.4 | 28.2 | 8.4 | | 0.9 | 0.5 | 65.5 | 24.5 | | | | | 36.9 | 73.8 | (37.9) | -30.6% |
| Rentals | 39.0 | | | | | | | | | | | | 196.3 | 233.6 | (37.3) | -16.0% |
| **Revenues of State Departments:** | | | | | | | | | | | | | | | | |
| Administrative Recoveries | 1.4 | 1.8 | 4.6 | 17.6 | 4.3 | 3.7 | 26.2 | 27.3 | | | | | 86.9 | 44.2 | 42.7 | 96.6% |
| Commissions | 0.5 | 0.6 | 0.6 | 0.4 | 0.8 | 0.8 | 0.7 | 0.7 | | | | | 4.5 | 4.6 | (0.1) | -2.2% |
| Commissions - Asset Conversion | | | | | | | | | | | | | | 1,000.0 | (1,000.0) | -100.0% |
| Gifts, Grants and Donations | 0.8 | 1.0 | 2.8 | 0.3 | 0.6 | | 0.3 | 0.3 | | | | | 6.1 | 100.2 | (89.1) | -84.2% |
| Indirect Cost Recoveries | 0.9 | | | | | | | | | | | | 0.9 | | 0.9 | 100.0% |
| Patient/Client Care Reimbursement | 204.3 | 156.2 | 154.9 | 222.3 | 106.2 | 243.2 | 193.8 | 155.9 | | | | | 1,436.8 | 1,467.7 | (30.9) | -2.1% |
| Rebates | 5.2 | 1.0 | 6.7 | 13.6 | 1.1 | 3.8 | 9.6 | 3.8 | | | | | 44.8 | 39.1 | 5.7 | 14.6% |
| Restitutions and Settlements | 7.6 | 8.5 | 0.8 | 5.9 | 5.9 | 10.9 | 0.4 | 3.4 | | | | | 43.4 | 59.0 | (15.6) | -26.3% |
| Student Loans | 7.5 | 3.1 | 7.5 | 7.5 | 1.7 | 2.3 | 2.2 | 2.2 | | | | | 43.7 | 59.3 | (15.6) | -26.3% |
| All Other | 40.9 | 36.9 | 57.4 | 38.3 | 43.7 | 67.5 | 36.7 | 32.3 | | | | | 354.6 | 324.4 | 32.2 | 10.0% |
| Sales | 0.9 | | 2.9 | 2.5 | 2.9 | 2.0 | 1.8 | 1.5 | | | | | 12.3 | 10.8 | 1.5 | 13.8% |
| Tuition | 52.0 | 48.1 | 34.9 | | 45.0 | 240.0 | 137.5 | 37.5 | | | | | 904.9 | 1,058.3 | (153.4) | -14.5% |
| **Total Miscellaneous Receipts** | 1,557.2 | 1,566.0 | 1,569.6 | 1,531.9 | 1,421.4 | 1,824.2 | 1,601.4 | 1,239.7 | | | | | 12,168.8 | 13,298.2 | (1,129.4) | -8.5% |
| Federal Grants | | | | | 18.3 | | | 0.1 | | | | | 17.7 | (2.4) | 20.1 | 837.5% |
| **Total Receipts** | 1,959.0 | 1,588.5 | 1,972.1 | 1,780.2 | 1,658.0 | 2,308.4 | 1,832.3 | 1,481.6 | | | | | 14,592.1 | 15,939.9 | (1,038.8) | -6.6% |

25

**NYS Register/December 31, 2019**　　　　　　　　　　**Financial Reports**

EXHIBIT G

STATE OF NEW YORK
SPECIAL REVENUE FUNDS - STATE
STATEMENT OF CASH FLOW
FISCAL YEAR 2019-2020
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 2019 | 2018 | $ Increase/ (Decrease) | % Increase/ Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **8 Months Ended November 30** | | | | | | | | | | | | | | | | |
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| Local Assistance Grants: | | | | | | | | | | | | | | | | |
| Education | 0.2 | 0.5 | 349.3 | 0.2 | 1.5 | 2,511.4 | 147.9 | 149.4 | - | - | - | - | 3,160.4 | 2,695.2 | 465.2 | 17.3% |
| Environment and Recreation | 0.1 | - | 0.5 | (0.1) | 0.1 | 0.2 | - | 0.2 | - | - | - | - | 1.0 | 0.5 | 0.5 | 100.0% |
| General Government | 25.4 | 18.7 | 1.8 | 20.2 | 12.5 | 22.9 | 14.1 | 20.2 | - | - | - | - | 135.8 | 99.6 | 36.2 | 36.3% |
| Public Health: | | | | | | | | | | | | | | | | |
| Medicaid | (1.1) | 881.9 | 365.3 | 582.8 | 686.2 | 607.5 | 469.7 | 408.1 | - | - | - | - | 4,000.4 | 3,725.0 | 275.4 | 7.4% |
| Other Public Health | 60.1 | 32.7 | 104.7 | 43.5 | 165.1 | 54.2 | 56.3 | 41.6 | - | - | - | - | 558.2 | 584.6 | (26.4) | -4.5% |
| Public Safety | 20.1 | 14.4 | 16.1 | 9.5 | 20.1 | 17.0 | 18.3 | 12.3 | - | - | - | - | 128.8 | 101.9 | 26.9 | 23.5% |
| Public Welfare | 0.9 | 0.8 | 0.5 | 0.8 | 0.9 | (0.7) | 0.4 | 1.2 | - | - | - | - | 4.5 | 4.3 | 0.2 | 4.7% |
| Support and Regulate Business | 1.1 | 8.7 | 1.3 | 5.8 | 3.4 | 4.4 | 1.5 | 13.9 | - | - | - | - | 38.1 | 43.1 | (5.0) | -11.6% |
| Transportation | 69.3 | 402.7 | 265.3 | 274.1 | 364.5 | 327.2 | 279.8 | 474.8 | - | - | - | - | 2,456.7 | 2,524.0 | (67.3) | -2.7% |
| **Total Local Assistance Grants** | 175.1 | 1,538.4 | 1,104.8 | 936.5 | 1,254.3 | 3,544.1 | 868.0 | 1,071.7 | - | - | - | - | 10,489.9 | 10,778.0 | (288.1) | -2.7% |
| Departmental Operations: | | | | | | | | | | | | | | | | |
| Personal Service | 401.7 | 580.0 | 383.6 | 449.4 | 352.4 | 388.2 | 559.2 | 398.5 | - | - | - | - | 3,523.0 | 3,394.5 | 128.5 | 3.8% |
| Non-Personal Service | 244.3 | 248.5 | 198.0 | 228.4 | 254.6 | 216.2 | 257.2 | 281.8 | - | - | - | - | 1,929.0 | 1,831.2 | 97.8 | 5.3% |
| General State Charges | 64.0 | 87.2 | 55.7 | 78.6 | 95.9 | 71.2 | 66.5 | 129.7 | - | - | - | - | 648.8 | 731.9 | (83.1) | -11.4% |
| Capital Projects | - | - | 0.1 | - | (0.1) | - | - | - | - | - | - | - | - | - | - | 0.0% |
| **Total Disbursements** | 885.1 | 2,274.1 | 1,752.2 | 1,692.9 | 1,957.1 | 4,219.7 | 1,888.9 | 1,931.7 | - | - | - | - | 16,591.7 | 15,735.8 | 845.9 | 5.4% |
| **Excess (Deficiency) of Receipts over Disbursements** | 1,073.9 | (675.6) | 219.9 | 87.3 | (299.1) | (1,888.3) | (96.6) | (470.1) | - | - | - | - | (1,689.6) | (104.9) | (1,584.7) | -1,796.7% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | | | |
| Transfers from Other Funds | 308.3 | 585.3 | 568.5 | 215.4 | 160.2 | 188.6 | 119.5 | 185.7 | - | - | - | - | 2,309.5 | 2,107.7 | 201.8 | 9.6% |
| Transfers to Other Funds | (38.3) | (6.3) | (29.3) | (120.8) | (33.5) | (107.2) | (9.2) | (4.8) | - | - | - | - | (344.4) | (102.3) | (242.1) | 241.5% |
| **Total Other Financing Sources (Uses)** | 270.0 | 579.0 | 537.2 | 94.6 | 126.7 | 81.4 | 110.3 | 180.9 | - | - | - | - | 1,965.1 | 2,005.4 | (40.3) | -2.0% |
| **Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses** | 1,343.9 | (96.6) | 757.1 | 181.9 | (172.4) | (1,827.9) | 73.7 | (289.2) | - | - | - | - | (276.5) | 1,900.5 | (1,930.0) | -101.6% |
| **Ending Fund Balance** | $ 6,434.7 | $ 6,338.1 | $ 7,095.2 | $ 7,277.1 | $ 7,104.7 | $ 5,276.8 | $ 5,350.5 | $ 5,061.3 | $ - | $ - | $ - | $ - | $ 5,061.3 | $ 5,900.0 | $ (847.7) | -14.3% |

26

**Financial Reports**

**NYS Register/December 31, 2019**

EXHIBIT G

STATE OF NEW YORK
SPECIAL REVENUE FUNDS - FEDERAL
STATEMENT OF CASH FLOW
FISCAL YEAR 2019-2020
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30 2019 | 2018 | $ Increase/(Decrease) | % Increase/Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Fund Balance** | $ (1,248.4) | $ 567.7 | $ (69.2) | $ 891.4 | $ (398.5) | $ 356.6 | $ 964.7 | $ 516.1 | | | | | $ (1,248.4) | $ 293.6 | $ (1,542.0) | -525.2% |
| **RECEIPTS:** | | | | | | | | | | | | | | | | |
| **Miscellaneous Receipts:** | | | | | | | | | | | | | | | | |
| Abandoned Property | | | | | | | | | | | | | | | | |
| Abandoned Property | | | | | | | | | | | | | | | - | 0.0% |
| **Assessments:** | | | | | | | | | | | | | | | | |
| Business | 4.5 | 38.1 | 0.2 | 2.8 | 10.7 | 0.2 | 2.3 | 6.5 | | | | | 68.3 | 63.0 | 3.3 | 5.2% |
| Medical Care | | | | | | | | | | | | | | | | 0.0% |
| Public Utilities | | | | | | | | | | | | | | | | 0.0% |
| Other | | | | | | | | | | | | | | | | 0.0% |
| **Fees, Licenses and Permits:** | | | | | | | | | | | | | | | | |
| Business/Professional | | | | | | | | | | | | | | | | 0.0% |
| Civil | | | | | | | | | | | | | | | | 0.0% |
| Criminal | | | | | | | | | | | | | | | | 0.0% |
| Motor Vehicle | | | | | | | | | | | | | | | | 0.0% |
| Recreational/Consumer | 0.7 | 0.6 | 0.5 | 0.4 | 0.7 | | 0.4 | 0.4 | | | | | 4.3 | 5.4 | (1.1) | -20.4% |
| Fines, Penalties and Forfeitures | 1.5 | 2.8 | 2.3 | 2.0 | 3.1 | 2.6 | 2.1 | 2.9 | | | | | 19.3 | 11.8 | 7.5 | 63.6% |
| Interest Earnings | | | | | | | | | | | | | | | | 0.0% |
| **Receipts from Public Authorities:** | | | | | | | | | | | | | | | | |
| Bond Proceeds | | | | | | | | | | | | | | | | 0.0% |
| Cost Recovery Assessments | | | | | | | | | | | | | | | | 0.0% |
| Insurance Fees | | | | | | | | | | | | | | | | 0.0% |
| Non Bond Related | | | | | | | | | | | | | | | | 0.0% |
| Receipts from Municipalities | | | | | | | | | | | | | | | | 0.0% |
| Rentals | | | | | | | | | | | | | | | | 0.0% |
| **Revenues of State Departments:** | | | | | | | | | | | | | | | | |
| Administrative Recoveries | | | | | | | | | | | | | | | | 0.0% |
| Commissions | | | | | | | | | | | | | | | | 0.0% |
| Gifts, Grants and Donations | | | | | | | | | | | | | | | | 0.0% |
| Indirect Cost Recoveries | | | | | | | | | | | | | | | | 0.0% |
| Patient/Client Care Reimbursement | 7.7 | 8.7 | 8.5 | 8.7 | 8.1 | 8.3 | 8.1 | 8.1 | | | | | 69.2 | 68.9 | (2.7) | -3.9% |
| Rebates | | | | | | | | | | | | | | | | 0.0% |
| Restitution and Settlements | | | | | | | | | | | | | | | | 0.0% |
| Student Loans | | | 0.2 | | 0.1 | | 0.1 | 1.2 | | | | | 1.9 | 1.9 | | 0.0% |
| All Other | 0.3 | | | | | | | | | | | | | 0.1 | (0.1) | -100.0% |
| Sales | | | | | | | | | | | | | | | | 0.0% |
| Tuition | | | | | | | | | | | | | | | | 0.0% |
| **Total Miscellaneous Receipts** | 14.7 | 51.4 | 11.7 | 13.9 | 22.7 | 11.5 | 13.0 | 19.1 | | | | | 158.0 | 151.1 | 6.9 | 4.6% |
| Federal Receipts | 6,203.7 | 4,816.3 | 5,672.5 | 3,118.0 | 5,855.1 | 5,483.9 | 5,367.9 | 5,209.8 | | | | | 41,727.2 | 39,099.6 | 2,627.6 | 6.7% |
| **Total Receipts** | 6,218.4 | 4,867.7 | 5,684.2 | 3,131.9 | 5,877.8 | 5,495.4 | 5,380.9 | 5,228.9 | | | | | 41,885.2 | 39,250.7 | 2,634.5 | 6.7% |

EXHIBIT G

STATE OF NEW YORK
SPECIAL REVENUE FUNDS - FEDERAL
STATEMENT OF CASH FLOW
FISCAL YEAR 2019-2020
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30 2019 | 2018 | $ Increase (Decrease) | % Increase/ Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| **Local Assistance Grants:** | | | | | | | | | | | | | | | | |
| Education | 337.5 | 590.6 | 262.1 | 287.9 | 232.3 | 187.4 | 206.7 | 229.2 | - | - | - | - | 2,333.7 | 2,502.9 | (169.2) | -6.8% |
| Environment and Recreation | 0.1 | 0.1 | - | - | 0.1 | 0.3 | 0.1 | 0.1 | - | - | - | - | 0.7 | 1.5 | (0.8) | -53.3% |
| General Government | 2.0 | 3.5 | 8.7 | 1.2 | 11.7 | 2.1 | 2.1 | 2.4 | - | - | - | - | 33.7 | 44.8 | (11.1) | -24.8% |
| Public Health: | | | | | | | | | | | | | | | | |
| Medicaid | 3,115.6 | 3,681.2 | 3,068.7 | 3,002.7 | 3,747.0 | 3,144.7 | 3,559.6 | 3,605.6 | - | - | - | - | 26,956.0 | 25,961.5 | 994.5 | 3.8% |
| Other Public Health | 483.3 | 700.8 | 427.7 | 485.1 | 465.1 | 696.6 | 453.3 | 413.8 | - | - | - | - | 4,158.7 | 4,410.8 | (261.1) | -5.9% |
| Public Safety | 116.2 | 155.5 | 58.6 | 58.6 | 66.3 | 49.9 | 139.7 | 179.0 | - | - | - | - | 805.0 | 921.4 | (116.4) | -12.6% |
| Public Welfare | 151.4 | 119.2 | 270.7 | 317.9 | 184.3 | 463.7 | 1,083.0 | 513.6 | - | - | - | - | 3,113.6 | 3,172.4 | (58.6) | -1.8% |
| Support and Regulate Business | 0.3 | 1.2 | 0.2 | 0.6 | 2.3 | 0.8 | 0.4 | 0.4 | - | - | - | - | 7.9 | 5.5 | 2.4 | 43.6% |
| Transportation | 4.0 | 5.8 | 4.4 | 4.0 | 4.5 | 3.3 | 4.2 | 4.7 | - | - | - | - | 34.9 | 38.8 | (3.9) | -10.1% |
| Total Local Assistance Grants | 4,215.3 | 5,039.9 | 4,388.3 | 4,139.4 | 4,736.3 | 4,549.0 | 5,429.1 | 4,951.1 | - | - | - | - | 37,444.4 | 37,058.6 | 375.8 | 1.0% |
| **Departmental Operations:** | | | | | | | | | | | | | | | | |
| Personal Service | 48.3 | 65.8 | 55.1 | 44.3 | 47.7 | 50.9 | 75.8 | 46.7 | - | - | - | - | 435.6 | 444.5 | (8.9) | -2.0% |
| Non-Personal Service | 70.1 | 70.3 | 96.4 | 81.6 | 105.5 | 166.4 | 133.1 | 82.8 | - | - | - | - | 832.2 | 826.6 | 5.4 | 0.7% |
| General State Charges | 21.4 | 24.1 | 34.0 | 35.6 | 24.5 | 24.5 | 26.0 | 26.2 | - | - | - | - | 216.3 | 302.6 | (86.5) | -28.6% |
| Capital Projects | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| **Total Disbursements** | 4,352.1 | 5,206.1 | 4,573.8 | 4,300.9 | 4,914.0 | 4,810.8 | 5,664.0 | 5,106.8 | - | - | - | - | 38,928.5 | 38,642.7 | 285.8 | 0.7% |
| Excess (Deficiency) of Receipts over Disbursements | 1,866.3 | (338.4) | 1,110.4 | (1,169.0) | 963.8 | 684.6 | (283.1) | 122.1 | - | - | - | - | 2,956.7 | 608.0 | 2,348.7 | 386.3% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | | | |
| Transfers from Other Funds | (50.2) | (298.5) | (149.8) | (118.9) | (210.7) | (76.5) | (165.5) | (100.0) | - | - | - | - | (1,170.1) | (1,263.3) | 93.2 | -7.4% |
| Transfers to Other Funds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Total Other Financing Sources (Uses) | (50.2) | (298.5) | (149.8) | (118.9) | (210.7) | (76.5) | (165.5) | (100.0) | - | - | - | - | (1,170.1) | (1,263.3) | 93.2 | -7.4% |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | 1,816.1 | (636.9) | 960.6 | (1,287.9) | 753.1 | 608.1 | (448.6) | 22.1 | - | - | - | - | 1,786.6 | (655.3) | 2,441.9 | 372.6% |
| **Ending Fund Balance** | $ 567.7 | $ (69.2) | $ 891.4 | $ (386.5) | $ 356.6 | $ 964.7 | $ 516.1 | $ 538.2 | $ - | $ - | $ - | $ - | $ 538.2 | $ (361.7) | $ 899.9 | 248.8% |

28

169

**Financial Reports**  

**NYS Register/December 31, 2019**

EXHIBIT H

**STATE OF NEW YORK**
**DEBT SERVICE FUNDS**
**STATEMENT OF CASH FLOW**
**FISCAL YEAR 2019-2020**
**(amounts in millions)**

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30 2019 | 2018 | $ Increase (Decrease) | % Increase/ Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Fund Balance | $ 64.8 | $ 314.8 | $ 683.8 | $ 361.5 | $ 614.7 | $ 744.3 | $ 307.0 | $ 604.4 | | | | | $ 64.8 | $ 153.1 | $ (88.3) | -57.7% |
| **RECEIPTS:** | | | | | | | | | | | | | | | | |
| **Taxes:** | | | | | | | | | | | | | | | | |
| Personal Income Tax | 4,607.7 | 1,242.3 | 2,604.9 | 1,665.8 | 1,454.3 | 2,415.7 | 1,289.2 | 1,234.7 | | | | | 16,514.6 | 14,212.4 | 2,302.2 | 16.2% |
| Consumption/Use Taxes | | | | | | | | | | | | | | | | |
| Sales and Use | 538.2 | 551.0 | 743.2 | 579.3 | 581.5 | 761.5 | 578.3 | 584.0 | | | | | 4,917.0 | 4,649.1 | 267.9 | 5.8% |
| Total Consumption/Use Taxes | 538.2 | 551.0 | 743.2 | 579.3 | 581.5 | 761.5 | 578.3 | 584.0 | | | | | 4,917.0 | 4,649.1 | 267.9 | 5.8% |
| Other Taxes: | | | | | | | | | | | | | | | | |
| Real Estate Transfer | 82.9 | 86.0 | 86.7 | 118.9 | 78.8 | 85.3 | 73.2 | 87.8 | | | | | 699.6 | 704.8 | (5.2) | -0.7% |
| Employer Compensation Expense Tax | | 0.1 | | 0.1 | 0.1 | 0.1 | 0.1 | | | | | | 0.5 | | 0.5 | 100.0% |
| Total Other Taxes | 82.9 | 86.1 | 86.7 | 119.0 | 78.9 | 85.4 | 73.3 | 87.8 | | | | | 700.1 | 704.8 | (4.7) | -0.7% |
| **Total Taxes** | 5,228.8 | 1,879.4 | 3,434.8 | 2,364.1 | 2,114.7 | 3,262.6 | 1,940.8 | 1,906.6 | | | | | 22,131.7 | 19,566.3 | 2,565.4 | 13.1% |
| **Miscellaneous Receipts:** | | | | | | | | | | | | | | | | |
| Assessments | - | - | - | - | - | - | - | - | | | | | - | | | |
| Medical Care | - | - | - | - | - | - | - | - | | | | | - | | | 0.0% |
| Fees, Licenses and Permits | - | - | - | - | - | - | - | - | | | | | - | | | 0.0% |
| Alcohol Beverage Control Licensing | - | - | - | - | - | - | - | - | | | | | - | | | 0.0% |
| Business/Professional | - | - | - | - | - | - | - | - | | | | | - | | | 0.0% |
| Civil | - | - | - | - | - | - | - | - | | | | | - | | | 0.0% |
| Criminal | - | - | - | - | - | - | - | - | | | | | - | | | 0.0% |
| Motor Vehicle | - | - | - | - | - | - | - | - | | | | | - | | | 0.0% |
| Recreational/Consumer | - | - | - | - | - | - | - | - | | | | | - | | | 0.0% |
| Interest Earnings | 0.2 | | 0.3 | 0.1 | | 0.2 | | 0.2 | | | | | 1.5 | 1.1 | 0.4 | 36.4% |
| Receipts from Municipalities | | 0.5 | 0.5 | 0.8 | 0.5 | | 0.4 | 0.1 | | | | | 1.8 | 2.8 | (1.0) | -35.7% |
| Rentals | - | - | - | - | - | - | - | - | | | | | - | | | 0.0% |
| Revenues of State Departments | | | | | | | | | | | | | | | | |
| Patient/Client Care Reimbursement | 42.4 | 36.0 | 37.5 | 89.2 | 42.2 | 15.7 | 31.1 | 24.9 | | | | | 319.0 | 257.7 | 61.3 | 23.8% |
| All Other | | | | | | | 0.1 | 0.1 | | | | | 0.1 | 0.1 | | 0.0% |
| Sales | - | - | - | - | - | - | - | - | | | | | - | (0.1) | (0.1) | -100.0% |
| **Total Miscellaneous Receipts** | 42.6 | 36.5 | 37.8 | 90.1 | 42.7 | 15.9 | 31.6 | 25.2 | | | | | 322.4 | 261.8 | 60.6 | 23.1% |
| Federal Receipts | | | 1.6 | | 35.2 | | | | | | | | 36.8 | 36.7 | 0.1 | 0.3% |
| **Total Receipts** | 5,271.4 | 1,915.9 | 3,472.6 | 2,455.8 | 2,192.6 | 3,278.5 | 1,972.4 | 1,931.7 | | | | | 22,490.9 | 19,864.8 | 2,626.1 | 13.2% |
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| Departmental Operations: | | | | | | | | | | | | | | | | |
| Non-Personal Service | 0.7 | 2.3 | 2.6 | 8.6 | 6.8 | 1.5 | 0.6 | 2.2 | | | | | 25.3 | 26.4 | (1.1) | -4.2% |
| Debt Service, Including Payments on Financing Agreements | 72.4 | 121.1 | 230.3 | 45.1 | 74.5 | 433.2 | 48.5 | 74.9 | | | | | 1,100.0 | 1,404.2 | (304.2) | -21.7% |
| **Total Disbursements** | 73.1 | 123.4 | 232.9 | 53.7 | 81.3 | 434.7 | 49.1 | 77.1 | | | | | 1,125.3 | 1,430.6 | (305.3) | -21.3% |
| **Excess (Deficiency) of Receipts over Disbursements** | 5,198.3 | 1,792.5 | 3,239.7 | 2,402.1 | 2,111.3 | 2,843.8 | 1,923.3 | 1,854.6 | | | | | 21,365.6 | 18,434.2 | 2,931.4 | 15.9% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | | | |
| Transfers from Other Funds | 219.3 | 206.6 | 86.5 | 281.9 | 186.1 | 270.9 | 318.2 | 93.5 | | | | | 1,663.0 | 1,698.3 | (35.3) | -2.1% |
| Transfers to Other Funds | (5,167.6) | (1,630.1) | (3,648.5) | (2,430.8) | (2,167.8) | (3,552.0) | (1,944.1) | (1,590.2) | | | | | (23,131.1) | (19,183.5) | 2,947.6 | 15.4% |
| **Total Other Financing Sources (Uses)** | (4,948.3) | (1,423.5) | (3,562.0) | (2,148.9) | (1,981.7) | (3,281.1) | (1,625.9) | (1,496.7) | | | | | (20,468.1) | (17,485.2) | (2,982.9) | -17.1% |
| **Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses** | 250.0 | 369.0 | (322.3) | 253.2 | 129.6 | (437.3) | 297.4 | 357.9 | | | | | 897.5 | 949.0 | (51.5) | -5.4% |
| **Ending Fund Balance** | $ 314.8 | $ 683.8 | $ 361.5 | $ 614.7 | $ 744.3 | $ 307.0 | $ 604.4 | $ 962.3 | $ - | $ - | $ - | $ - | $ 962.3 | $ 1,102.1 | $ (139.8) | -12.7% |

29

EXHIBIT I

**STATE OF NEW YORK**
**CAPITAL PROJECTS FUNDS - COMBINED**
**STATEMENT OF CASH FLOW**
**FISCAL YEAR 2019-2020**
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | Intra-Fund Transfer Eliminations (*) | 8 Months Ended November 30 2019 | 2018 | $ Increase (Decrease) | % Increase/ Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Fund Balance | $ (1,137.9) | $ (1,018.2) | $ (1,248.2) | $ (1,212.5) | $ (1,334.5) | $ (1,351.4) | $ (1,288.1) | $ (946.2) | | | | | | $ (1,137.9) | $ (1,151.2) | 13.3 | 1.2% |
| **RECEIPTS:** | | | | | | | | | | | | | | | | | |
| **Taxes:** | | | | | | | | | | | | | | | | | |
| Consumption/Use Taxes: | | | | | | | | | | | | | | | | | |
| Auto Rental | 3.5 | 0.3 | 19.5 | 0.1 | 0.1 | 33.7 | (7.3) | 0.1 | | | | | | 50.0 | 46.8 | 3.2 | 6.8% |
| Motor Fuel | 36.4 | 34.8 | 38.6 | 30.4 | 37.8 | 34.1 | 37.3 | 32.0 | | | | | | 280.3 | 283.3 | (3.0) | -1.1% |
| Highway Use | 14.2 | 10.6 | 9.8 | 14.5 | 10.7 | 11.0 | 14.3 | 10.9 | | | | | | 96.0 | 102.8 | (6.8) | -6.6% |
| Total Consumption/Use Taxes | 54.1 | 45.7 | 65.9 | 45.0 | 48.6 | 78.8 | 44.3 | 43.9 | | | | | | 426.3 | 432.9 | (6.6) | -1.5% |
| Business Taxes: | | | | | | | | | | | | | | | | | |
| Corporation Franchise | - | (0.1) | 1.9 | - | - | 3.1 | - | 0.1 | | | | | | 8.4 | 8.3 | 0.1 | 1.2% |
| Corporation and Utilities | 3.3 | - | - | - | - | - | - | - | | | | | | - | - | - | 0.0% |
| Petroleum Business | 56.3 | 55.8 | 58.4 | 52.5 | 60.0 | 56.8 | 60.2 | 52.2 | | | | | | 452.2 | 436.9 | 15.3 | 3.5% |
| Total Business Taxes | 59.6 | 55.7 | 60.3 | 52.5 | 60.0 | 59.9 | 60.3 | 52.3 | | | | | | 460.6 | 445.2 | 15.4 | 3.5% |
| Other Taxes: | | | | | | | | | | | | | | | | | |
| Real Estate Transfer | - | - | 11.9 | 11.9 | 11.9 | 11.9 | 12.0 | 11.9 | | | | | | 71.5 | 71.5 | - | 0.0% |
| Total Other Taxes | - | - | 11.9 | 11.9 | 11.9 | 11.9 | 12.0 | 11.9 | | | | | | 71.5 | 71.5 | - | 0.0% |
| **Total Taxes** | 113.7 | 101.4 | 138.1 | 109.4 | 120.5 | 150.6 | 116.6 | 108.1 | | | | | | 958.4 | 949.6 | 8.8 | 0.9% |
| **Miscellaneous Receipts:** | | | | | | | | | | | | | | | | | |
| Abandoned Property: | | | | | | | | | | | | | | | | | |
| Bottle Bill | - | - | 23.0 | - | - | - | - | - | | | | | | 23.0 | 23.0 | - | 0.0% |
| Assessments: | | | | | | | | | | | | | | | | | |
| Business | 10.1 | 9.3 | 8.7 | 8.2 | 8.6 | 8.3 | 8.3 | 8.0 | | | | | | 69.5 | 76.2 | (6.7) | -8.8% |
| Fees, Licenses and Permits: | | | | | | | | | | | | | | | | | |
| Business/Professional | 0.8 | 5.6 | 3.7 | 2.5 | 10.7 | 1.3 | 1.2 | 2.0 | | | | | | 27.8 | 28.9 | (1.1) | -3.8% |
| Civil | - | - | - | - | - | - | - | - | | | | | | - | - | - | 0.0% |
| Motor Vehicle | 67.0 | 69.3 | 65.4 | 60.8 | 63.6 | 60.4 | 57.4 | 58.5 | | | | | | 502.4 | 546.6 | (44.2) | -8.1% |
| Recreational/Consumer | 0.2 | 0.1 | - | - | - | 3.0 | 12.8 | (1.2) | | | | | | 14.9 | 7.4 | 7.5 | 101.4% |
| Fines, Penalties and Forfeitures | 2.3 | 2.0 | 2.3 | 1.7 | 1.7 | 2.3 | 1.9 | 5.1 | | | | | | 19.3 | 16.0 | 3.3 | 20.6% |
| Interest Earnings | 1.0 | 1.0 | 1.0 | 1.1 | 1.0 | 1.0 | 1.0 | 0.9 | | | | | | 8.1 | 7.0 | 1.1 | 15.7% |
| Receipts from Public Authorities: | | | | | | | | | | | | | | | | | |
| Bond Proceeds | 200.8 | 2.8 | 146.4 | 155.3 | 79.2 | 499.1 | 1,588.2 | 23.6 | | | | | | 2,695.4 | 1,848.9 | 846.5 | 45.8% |
| Insurance Fees | - | - | - | - | - | - | - | - | | | | | | - | - | - | 0.0% |
| Non Bond Related | 3.5 | 0.1 | 0.4 | 0.1 | 0.3 | - | 20.4 | 25.3 | | | | | | 49.6 | 4.3 | 45.3 | 1,053.5% |
| Receipts from Municipalities | 0.3 | - | 0.3 | - | - | 0.2 | 0.2 | 0.4 | | | | | | 1.7 | 0.8 | 0.9 | 112.5% |
| Rentals | 0.9 | 0.8 | 0.8 | 0.6 | 0.6 | 0.7 | 0.7 | 0.7 | | | | | | 6.6 | 7.1 | (0.5) | -7.0% |
| Revenues of State Departments: | | | | | | | | | | | | | | | | | |
| Administrative Recoveries | - | - | - | - | - | - | - | - | | | | | | - | - | - | 0.0% |
| Gifts, Grants and Donations | 10.1 | 0.5 | 0.3 | 0.6 | 0.3 | 0.3 | 3.4 | 1.7 | | | | | | 17.2 | 1.0 | 16.2 | 1,620.0% |
| Indirect Cost Recoveries | (0.9) | - | - | - | - | - | - | - | | | | | | (0.9) | - | (0.9) | -100.0% |
| Rebates | 0.2 | 0.1 | 0.1 | 0.1 | 0.2 | 0.1 | - | 0.3 | | | | | | 0.2 | 0.3 | (0.1) | -33.3% |
| Restitution and Settlements | 3.6 | 0.5 | 0.4 | 0.1 | 0.2 | - | 2.5 | 3.2 | | | | | | 4.3 | 6.7 | (2.4) | -35.8% |
| All Other | 4.2 | 0.8 | 1.1 | 14.5 | 12.3 | 4.9 | 4.4 | 0.2 | | | | | | 44.8 | 13.6 | 31.2 | 229.4% |
| Sales | - | - | - | - | - | - | 0.1 | 0.2 | | | | | | 4.5 | 2.1 | 2.4 | 114.3% |
| **Total Miscellaneous Receipts** | 384.2 | 92.9 | 253.6 | 245.3 | 179.5 | 581.6 | 1,702.5 | 128.8 | | | | | | 3,488.4 | 2,589.9 | 898.5 | 34.7% |
| **Federal Receipts** | 38.3 | 142.9 | 132.2 | 155.7 | 173.6 | 179.6 | 340.6 | 184.3 | | | | | | 1,347.4 | 1,479.6 | (132.2) | -8.9% |
| **Total Receipts** | 466.2 | 337.2 | 523.9 | 510.4 | 473.6 | 911.8 | 2,159.9 | 421.2 | | | | | | 5,794.2 | 5,019.1 | 775.1 | 15.4% |

30

**Financial Reports**

**NYS Register/December 31, 2019**

EXHIBIT I

STATE OF NEW YORK
CAPITAL PROJECTS FUNDS - COMBINED
STATEMENT OF CASH FLOW
FISCAL YEAR 2019-2020
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | Intra-Fund Transfer Eliminations (*) | 2019 | 2018 | 8 Months Ended November 30 $ Increase/ (Decrease) | % Increase/ Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | | |
| Local Assistance Grants: | | | | | | | | | | | | | | | | | |
| Education | 9.2 | 3.2 | 10.3 | 10.7 | 12.0 | 42.4 | 14.4 | 18.2 | - | - | - | - | - | 120.4 | 118.8 | 1.6 | 1.3% |
| Environment and Recreation | 25.1 | 33.5 | 2.1 | 15.0 | 14.0 | 17.6 | 14.8 | 11.9 | - | - | - | - | - | 134.0 | 112.5 | 21.5 | 19.1% |
| General Government | 31.2 | 121.8 | 149.0 | 39.4 | 17.8 | 59.1 | 128.4 | 18.6 | - | - | - | - | - | 565.3 | 659.5 | (94.2) | -14.3% |
| Public Health: | | | | | | | | | | | | | | | | | |
| Medicaid | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Other Public Health | 30.8 | 41.6 | 20.6 | 76.0 | 17.7 | 20.2 | 72.5 | 34.3 | - | - | - | - | - | 313.7 | 208.6 | 105.1 | 50.4% |
| Public Safety | 10.0 | (0.1) | (0.7) | 0.1 | 0.3 | 12.0 | 1.2 | 14.8 | - | - | - | - | - | 37.6 | 35.0 | 2.6 | 7.4% |
| Public Welfare | - | 10.9 | 86.1 | 6.0 | 9.1 | 3.2 | 38.0 | 83.1 | - | - | - | - | - | 241.2 | 215.2 | 26.0 | 12.1% |
| Support and Regulate Business | 26.7 | 140.2 | 197.4 | 39.2 | 40.9 | 61.9 | 85.1 | 43.8 | - | - | - | - | - | 597.1 | 533.9 | 63.2 | 11.8% |
| Transportation | 232.7 | 44.7 | 70.8 | 57.1 | 45.1 | 508.7 | 36.8 | - | - | - | - | - | - | 1,078.0 | 964.0 | 112.0 | 11.6% |
| **Total Local Assistance Grants** | **365.7** | **404.8** | **535.6** | **243.5** | **156.9** | **764.7** | **352.8** | **265.5** | - | - | - | - | - | **3,085.3** | **2,847.5** | **237.8** | **8.4%** |
| Departmental Operations: | | | | | | | | | | | | | | | | | |
| Personal Service | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Non-Personal Service | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| General State Charges | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Capital Projects | 434.1 | 528.1 | 536.4 | 600.7 | 750.4 | 582.6 | 710.7 | 705.0 | - | - | - | - | - | 4,848.0 | 4,877.6 | (29.6) | -0.6% |
| **Total Disbursements** | **799.8** | **932.9** | **1,072.0** | **844.2** | **907.3** | **1,347.3** | **1,063.3** | **966.5** | - | - | - | - | - | **7,933.3** | **7,725.1** | **208.2** | **2.7%** |
| **Excess (Deficiency) of Receipts over Disbursements** | (343.6) | (595.7) | (548.1) | (333.8) | (433.7) | (435.5) | 1,066.6 | (545.3) | - | - | - | - | - | (2,139.1) | (2,706.0) | 566.9 | 20.9% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | | | | |
| Bond Proceeds (net) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Transfers from Other Funds | 509.2 | 412.4 | 633.5 | 260.6 | 486.3 | 752.3 | (532.5) | 494.6 | - | - | - | - | (175.9) | 2,840.5 | 2,721.9 | 118.6 | 4.4% |
| Transfers to Other Funds | (45.9) | (47.7) | (48.7) | (48.8) | (69.5) | (253.5) | (222.2) | (45.4) | - | - | - | - | 175.9 | (605.8) | (430.0) | (175.9) | 40.9% |
| **Total Other Financing Sources (Uses)** | **463.3** | **364.7** | **584.8** | **211.8** | **416.8** | **498.8** | **(754.7)** | **449.2** | - | - | - | - | - | **2,234.7** | **2,291.9** | **(57.2)** | **-2.5%** |
| **Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses** | 119.7 | (231.0) | 36.7 | (122.0) | (16.9) | 63.3 | 341.9 | (96.1) | - | - | - | - | - | 95.6 | (414.1) | 509.7 | 123.1% |
| **Ending Fund Balance** | $ (1,018.2) | $ (1,249.2) | $ (1,212.5) | $ (1,334.5) | $ (1,351.4) | $ (1,288.1) | $ (946.2) | $ (1,042.3) | $ - | $ - | $ - | $ - | $ - | $ (1,042.3) | $ (1,565.3) | $ 523.0 | 33.4% |

(*) Intra-Fund transfer eliminations represent transfers from Capital Projects-State and Federal Funds.

31

172

EXHIBIT I

**STATE OF NEW YORK**
**CAPITAL PROJECTS FUNDS - STATE**
**STATEMENT OF CASH FLOW**
**FISCAL YEAR 2019-2020**
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | 2019 | 2018 | $ Increase (Decrease) | % Increase Decrease |
| Beginning Fund Balance | $ (633.2) | (445.5) | (699.4) | (636.7) | (771.8) | (804.6) | (758.6) | $ (373.3) | | | | | $ (633.2) | (588.4) | (64.8) | -11.4% |
| **RECEIPTS:** | | | | | | | | | | | | | | | | |
| **Taxes:** | | | | | | | | | | | | | | | | |
| Consumption/Use Taxes | | | | | | | | | | | | | | | | |
| Auto Rental | 3.5 | 0.3 | 19.5 | 0.1 | 0.1 | 33.7 | (7.3) | 0.1 | | | | | 50.0 | 46.8 | 3.2 | 6.8% |
| Motor Fuel | 36.4 | 34.8 | 36.6 | 30.4 | 37.8 | 34.1 | 37.3 | 32.9 | | | | | 280.3 | 283.3 | (3.0) | -1.1% |
| Highway Use | 14.2 | 10.6 | 9.8 | 14.5 | 10.7 | 11.0 | 14.3 | 10.9 | | | | | 96.0 | 102.8 | (6.8) | -6.6% |
| Total Consumption/Use Taxes | 54.1 | 45.7 | 65.9 | 45.0 | 48.6 | 78.8 | 44.3 | 43.9 | | | | | 426.3 | 432.9 | (6.6) | -1.5% |
| Business Taxes | | | | | | | | | | | | | | | | |
| Corporation Franchise | 3.3 | (0.1) | 1.9 | - | - | 3.1 | 0.1 | 0.1 | | | | | 8.4 | 8.3 | 0.1 | 1.2% |
| Corporation and Utilities | - | - | - | - | - | - | - | - | | | | | - | - | - | 0.0% |
| Petroleum Business | 56.3 | 55.8 | 58.4 | 52.5 | 60.0 | 55.8 | 60.2 | 52.2 | | | | | 452.2 | 436.9 | 15.3 | 3.5% |
| Total Business Taxes | 59.6 | 55.7 | 60.3 | 52.5 | 60.0 | 58.9 | 60.3 | 52.3 | | | | | 460.6 | 445.2 | 15.4 | 3.5% |
| Other Taxes | | | | | | | | | | | | | | | | |
| Real Estate Transfer | - | - | 11.9 | 11.9 | 11.9 | 11.9 | 12.0 | 11.9 | | | | | 71.5 | 71.5 | - | 0.0% |
| Total Other Taxes | - | - | 11.9 | 11.9 | 11.9 | 11.9 | 12.0 | 11.9 | | | | | 71.5 | 71.5 | - | 0.0% |
| **Total Taxes** | 113.7 | 101.4 | 138.1 | 109.4 | 120.5 | 150.6 | 116.6 | 108.1 | | | | | 958.4 | 949.6 | 8.8 | 0.9% |
| **Miscellaneous Receipts:** | | | | | | | | | | | | | | | | |
| Abandoned Property: | | | | | | | | | | | | | | | | |
| Bottle Bill | - | - | 23.0 | - | - | - | - | - | | | | | 23.0 | 23.0 | - | 0.0% |
| Assessments: | | | | | | | | | | | | | | | | |
| Business | 10.1 | 9.3 | 8.7 | 8.2 | 8.6 | 8.3 | 8.3 | 8.0 | | | | | 69.5 | 76.2 | (6.7) | -8.8% |
| Fees, Licenses and Permits: | | | | | | | | | | | | | | | | |
| Business/Professional | 0.8 | 5.6 | 3.7 | 2.5 | 10.7 | 1.3 | 1.2 | 2.0 | | | | | 27.8 | 28.9 | (1.1) | -3.8% |
| Civil | - | - | - | - | - | - | - | - | | | | | - | - | - | 0.0% |
| Motor Vehicle | 67.0 | 69.3 | 65.4 | 60.8 | 63.6 | 60.4 | 57.4 | 58.5 | | | | | 502.4 | 546.6 | (44.2) | -8.1% |
| Recreational/Consumer | 0.2 | 0.1 | - | - | - | 3.0 | 12.6 | (1.2) | | | | | 14.9 | 7.4 | 7.5 | 101.4% |
| Fines, Penalties and Forfeitures | 2.3 | 2.0 | 2.3 | 1.7 | 1.7 | 2.3 | 1.9 | 5.1 | | | | | 19.3 | 16.0 | 3.3 | 20.8% |
| Interest Earnings | 1.1 | 1.0 | 1.0 | 1.1 | 1.0 | 1.0 | 1.0 | 0.9 | | | | | 8.1 | 7.0 | 1.1 | 15.7% |
| Receipts from Public Authorities: | | | | | | | | | | | | | | | | |
| Bond Proceeds | 200.8 | 2.8 | 146.4 | 155.3 | 79.2 | 499.1 | 1,588.2 | 23.6 | | | | | 2,695.4 | 1,848.9 | 846.5 | 45.8% |
| Issuance Fees | - | - | - | - | - | - | - | - | | | | | - | - | - | 0.0% |
| Non Bond Related | 0.3 | 0.4 | 0.3 | (0.1) | 0.3 | - | 20.4 | 25.3 | | | | | 49.6 | 4.3 | 45.3 | 1,053.5% |
| Receipts from Municipalities | 0.3 | 0.4 | 0.3 | (0.1) | 0.3 | 0.2 | 0.2 | 0.4 | | | | | 1.7 | 0.8 | 0.9 | 112.5% |
| Rentals | 0.8 | 0.8 | 0.4 | 0.5 | 1.6 | 0.6 | 0.6 | 0.7 | | | | | 6.0 | 6.7 | (0.7) | -10.4% |
| Revenues of State Departments: | | | | | | | | | | | | | | | | |
| Administrative Recoveries | - | - | - | - | - | - | - | - | | | | | - | - | - | 0.0% |
| Gifts, Grants and Donations | 10.1 | 0.5 | 0.3 | 0.6 | 0.3 | 0.3 | 3.4 | 1.7 | | | | | 17.2 | 1.0 | 16.2 | 1,620.0% |
| Indirect Cost Recoveries | (0.9) | - | - | - | - | - | - | - | | | | | (0.9) | (0.9) | - | -100.0% |
| Rebates | 0.2 | - | - | - | - | - | - | - | | | | | 0.2 | 0.3 | (0.1) | -33.3% |
| Restitution and Settlements | 0.2 | 0.5 | 0.4 | 0.1 | 0.2 | 0.1 | 2.5 | 0.3 | | | | | 4.3 | 6.7 | (2.4) | -35.8% |
| All Other | 3.6 | 0.8 | 1.1 | 14.5 | 12.3 | 4.9 | 4.4 | 3.2 | | | | | 44.8 | 13.6 | 31.2 | 229.4% |
| Sales | 4.2 | - | - | - | - | - | 0.1 | 0.2 | | | | | 4.5 | 2.0 | 2.5 | 125.0% |
| **Total Miscellaneous Receipts** | 304.1 | 92.9 | 253.5 | 245.2 | 179.5 | 581.5 | 1,702.4 | 128.7 | | | | | 3,487.8 | 2,589.4 | 898.4 | 34.7% |
| Federal Receipts | - | - | - | - | - | 2.3 | - | - | | | | | 2.3 | 2.5 | (0.2) | -8.0% |
| **Total Receipts** | 417.8 | 194.3 | 391.6 | 354.6 | 300.0 | 734.4 | 1,819.0 | 236.8 | | | | | 4,448.5 | 3,541.5 | 907.0 | 25.6% |

32

**Financial Reports**                                                                 **NYS Register/December 31, 2019**

EXHIBIT I

STATE OF NEW YORK
CAPITAL PROJECTS FUNDS - STATE
STATEMENT OF CASH FLOW
FISCAL YEAR 2019-2020
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 9 Months Ended November 30 2019 | 2018 | $ Increase (Decrease) | % Increase/ Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| **Local Assistance Grants:** | | | | | | | | | | | | | | | | |
| Education | 9.2 | 3.2 | 10.3 | 10.7 | 12.0 | 42.4 | 14.4 | 18.2 | | | | | 120.4 | 118.8 | 1.6 | 1.3% |
| Environment and Recreation | 25.1 | 33.5 | 2.1 | 15.0 | 14.0 | 17.6 | 14.8 | 11.9 | | | | | 134.0 | 112.5 | 21.5 | 19.1% |
| General Government | 31.2 | 121.8 | 149.0 | 39.4 | 17.8 | 59.1 | 128.4 | 18.6 | | | | | 565.3 | 659.5 | (94.2) | -14.3% |
| Public Health | | | | | | | | | | | | | | | | 0.0% |
| Medicaid | | | | | | | | | | | | | | | | |
| Other Public Health | 30.8 | 41.6 | 20.6 | 75.6 | 17.7 | 19.4 | 34.8 | 34.1 | | | | | 274.6 | 205.8 | 68.8 | 33.4% |
| Public Safety | 10.0 | (0.1) | (10.6) | | 0.3 | 2.0 | 1.2 | 6.4 | | | | | 9.0 | 17.5 | (8.5) | -48.6% |
| Public Welfare | | 10.9 | 66.1 | 6.0 | 9.1 | 42.8 | 3.2 | 83.1 | | | | | 241.2 | 215.2 | 26.0 | 12.1% |
| Support and Regulate Business | 26.7 | 148.2 | 197.4 | 39.2 | 40.9 | 61.9 | 38.0 | 43.8 | | | | | 597.1 | 533.9 | 63.2 | 11.8% |
| Transportation | 192.7 | 7.1 | 23.2 | 19.3 | 5.8 | 476.3 | 29.6 | 4.6 | | | | | 758.8 | 688.8 | 70.0 | 10.2% |
| **Total Local Assistance Grants** | 325.7 | 367.2 | 477.9 | 205.2 | 117.6 | 721.5 | 264.4 | 220.9 | - | - | - | - | 2,700.4 | 2,552.0 | 148.4 | 5.8% |
| **Departmental Operations:** | | | | | | | | | | | | | | | | |
| Personal Service | - | - | - | - | - | - | - | - | | | | | | | | 0.0% |
| Non-Personal Service | - | - | - | - | - | - | - | - | | | | | | | | 0.0% |
| General State Charges | - | - | - | - | - | - | - | - | | | | | | | | 0.0% |
| Capital Projects | 368.7 | 444.7 | 435.8 | 496.3 | 632.0 | 465.7 | 590.5 | 582.8 | | | | | 4,016.5 | 3,953.5 | 63.0 | 1.6% |
| **Total Disbursements** | 694.4 | 811.9 | 913.7 | 701.5 | 749.6 | 1,187.2 | 854.9 | 803.7 | - | - | - | - | 6,716.9 | 6,505.5 | 211.4 | 3.2% |
| **Excess (Deficiency) of Receipts over Disbursements** | (276.6) | (617.6) | (522.1) | (346.9) | (448.6) | (452.8) | (864.1) | (566.9) | - | - | - | - | (2,288.4) | (2,984.0) | 695.6 | 23.5% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | | | |
| Bond Proceeds (net) | | | | | | | | | | | | | | | | 0.0% |
| Transfers from Other Funds | 509.2 | 412.4 | 633.5 | 260.6 | 486.3 | 752.3 | (532.5) | 484.6 | | | | | 3,016.4 | 2,906.1 | 110.3 | 3.8% |
| Transfers to Other Funds | (45.9) | (47.7) | (48.7) | (48.8) | (69.5) | (253.5) | (46.3) | (45.4) | | | | | (605.8) | (429.9) | (175.9) | 40.9% |
| **Total Other Financing Sources (Uses)** | 463.3 | 364.7 | 584.8 | 211.8 | 416.8 | 498.8 | (578.8) | 439.2 | - | - | - | - | 2,410.6 | 2,476.2 | (65.6) | -2.6% |
| **Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses** | 186.7 | (252.9) | 62.7 | (135.1) | (32.8) | 46.0 | (173.3) | (117.7) | - | - | - | - | 142.2 | (487.8) | 630.0 | 129.2% |
| **Ending Fund Balance** | $ (446.5) | $ (699.4) | $ (636.7) | $ (771.8) | $ (804.6) | $ (758.6) | $ (931.9) | $ (491.0) | $ - | $ - | $ - | $ - | $ (491.0) | $ (1,056.2) | $ 565.2 | 53.5% |

33

EXHIBIT I

**STATE OF NEW YORK**
**CAPITAL PROJECTS FUNDS - FEDERAL**
**STATEMENT OF CASH FLOW**
**FISCAL YEAR 2019-2020**
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30 2019 | 2018 | $ Increase/(Decrease) | % Increase/Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Fund Balance | $ (504.7) | $ (571.7) | $ (548.8) | $ (575.8) | $ (562.7) | $ (548.8) | $ (529.5) | $ (572.9) | $ (572.9) | | | | $ (504.7) | $ (582.8) | $ 78.1 | 13.4% |
| **RECEIPTS:** | | | | | | | | | | | | | | | | |
| Miscellaneous Receipts: | | | | | | | | | | | | | | | | |
| Abandoned Property | | | | | | | | | | | | | | | | |
| Estate Bill | | | | | | | | | | | | | | | | |
| Assessments | | | | | | | | | | | | | | | | |
| Business | | | | | | | | | | | | | | | | 0.0% |
| Fees, Licenses and Permits | | | | | | | | | | | | | | | | |
| Business/Professional | | | | | | | | | | | | | | | | 0.0% |
| Civil | | | | | | | | | | | | | | | | 0.0% |
| Motor Vehicle | | | | | | | | | | | | | | | | 0.0% |
| Recreational/Consumer | | | | | | | | | | | | | | | | 0.0% |
| Fines, Penalties and Forfeitures | | | | | | | | | | | | | | | | 0.0% |
| Interest Earnings | | | | | | | | | | | | | | | | |
| Receipts from Public Authorities | | | | | | | | | | | | | | | | |
| Bond Proceeds | | | | | | | | | | | | | | | | 0.0% |
| Insurance Fees | | | | | | | | | | | | | | | | 0.0% |
| Non Bond Related | | | | | | | | | | | | | | | | 0.0% |
| Receipts from Municipalities | | | | | | | | | | | | | | | | 0.0% |
| Rentals | 0.1 | | 0.1 | 0.1 | | 0.1 | 0.1 | 0.1 | | | | | 0.6 | 0.4 | 0.2 | 50.0% |
| Revenues of State Departments | | | | | | | | | | | | | | | | |
| Administrative Recoveries | | | | | | | | | | | | | | | | 0.0% |
| Gifts, Grants and Donations | | | | | | | | | | | | | | | | 0.0% |
| Indirect Cost Recoveries | | | | | | | | | | | | | | | | 0.0% |
| Restitution and Settlements | | | | | | | | | | | | | | | | 0.0% |
| All Other | | | | | | | | | | | | | | 0.1 | (0.1) | -100.0% |
| Sales | | | | | | | | | | | | | | | | 20.0% |
| Total Miscellaneous Receipts | 0.1 | | 0.1 | 0.1 | | 0.1 | 0.1 | 0.1 | | | | | 0.6 | 0.5 | 0.1 | 20.0% |
| Federal Receipts | 38.3 | 142.9 | 132.2 | 155.7 | 173.6 | 177.3 | 340.8 | 184.3 | | | | | 1,345.1 | 1,477.1 | (132.0) | -8.9% |
| Total Receipts | 38.4 | 142.9 | 132.3 | 155.8 | 173.6 | 177.4 | 340.9 | 184.4 | | | | | 1,345.7 | 1,477.6 | (131.9) | -8.9% |
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| Local Assistance Grants: | | | | | | | | | | | | | | | | |
| Education | | | | | | | | | | | | | | | | 0.0% |
| Environment and Recreation | | | | | | | | | | | | | | | | 0.0% |
| General Government | | | | | | | | | | | | | | | | 0.0% |
| Public Health: | | | | | | | | | | | | | | | | |
| Medicaid | | | | | | | | | | | | | | | | |
| Other Public Health | | | | 0.4 | | 0.8 | 37.7 | 0.2 | | | | | 39.1 | 2.8 | 36.3 | 1,296.4% |
| Public Safety | | | 10.1 | 0.1 | | 10.0 | | 8.4 | | | | | 28.6 | 17.5 | 11.1 | 63.4% |
| Public Welfare | | | | | | | | | | | | | | | | 0.0% |
| Support and Regulate Business | | | | | | | | | | | | | | | | 0.0% |
| Transportation | 40.0 | 37.6 | 47.6 | 37.8 | 39.3 | 32.4 | 50.5 | 32.0 | | | | | 317.2 | 275.2 | 42.0 | 15.3% |
| Total Local Assistance Grants | 40.0 | 37.6 | 57.7 | 38.3 | 39.3 | 43.2 | 88.2 | 40.6 | | | | | 384.9 | 295.5 | 89.4 | 30.3% |
| Departmental Operations: | | | | | | | | | | | | | | | | |
| Personal Service | | | | | | | | | | | | | | | | 0.0% |
| Non-Personal Service | | | | | | | | | | | | | | | | 0.0% |
| General State Charges | | | | | | | | | | | | | | | | 0.0% |
| Capital Projects | 65.4 | 83.4 | 100.6 | 104.4 | 118.4 | 116.9 | 120.2 | 122.2 | | | | | 831.5 | 924.1 | (92.6) | -10.0% |
| Total Disbursements | 105.4 | 121.0 | 158.3 | 142.7 | 157.7 | 160.1 | 208.4 | 162.8 | | | | | 1,216.4 | 1,219.6 | (3.2) | -0.3% |
| Excess (Deficiency) of Receipts over Disbursements | (67.0) | 21.9 | (26.0) | 13.1 | 15.9 | 17.3 | 132.5 | 21.6 | | | | | 129.3 | 258.0 | (128.7) | -49.9% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | | | |
| Transfers from Other Funds | | | | | | | (175.9) | | | | | | (175.9) | (184.3) | (8.4) | -4.6% |
| Transfers to Other Funds | | | | | | | | | | | | | | | | |
| Total Other Financing Sources (Uses) | | | | | | | (175.9) | | | | | | (175.9) | (184.3) | (8.4) | -4.6% |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | (67.0) | 21.9 | (26.0) | 13.1 | 15.9 | 17.3 | (43.4) | 21.6 | | | | | (46.6) | 73.7 | (120.3) | -163.2% |
| Ending Fund Balance | $ (571.7) | $ (548.8) | $ (575.8) | $ (562.7) | $ (548.8) | $ (529.5) | $ (572.9) | $ (551.3) | $ | $ | $ | $ | $ (551.3) | $ (509.1) | $ (42.2) | -8.3% |

34

EXHIBIT J

**STATE OF NEW YORK**
**ENTERPRISE FUNDS**
**STATEMENT OF CASH FLOW**
**FISCAL YEAR 2019-2020**
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30 2019 | 2018 | $ Increase (Decrease) | % Increase Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Fund Balance | $ 26.6 | $ 26.6 | $ 26.9 | $ 27.3 | $ 27.8 | $ 27.1 | $ 39.3 | $ 33.4 | - | - | - | - | $ 26.6 | $ 24.6 | $ 2.0 | 8.1% |
| RECEIPTS: | | | | | | | | | | | | | | | | |
| Miscellaneous Receipts | 4.8 | 6.1 | 5.1 | 5.5 | 6.7 | 17.2 | 9.9 | 5.7 | | | | | 61.0 | 43.2 | 17.8 | 41.2% |
| Federal Receipts | 1.1 | 1.0 | 1.0 | 1.0 | 0.9 | 0.9 | 1.0 | 1.0 | | | | | 7.8 | 8.2 | (0.4) | -4.9% |
| Unemployment Taxes | 187.5 | 139.2 | 134.9 | 186.0 | 160.6 | 150.3 | 147.0 | 151.2 | | | | | 1,256.7 | 1,239.6 | 17.1 | 1.4% |
| Total Receipts | 193.4 | 146.3 | 140.9 | 192.5 | 168.2 | 168.4 | 157.9 | 157.9 | - | - | - | - | 1,325.5 | 1,291.0 | 34.5 | 2.7% |
| DISBURSEMENTS: | | | | | | | | | | | | | | | | |
| Departmental Operations: | | | | | | | | | | | | | | | | |
| Personal Service | 0.3 | 0.6 | 0.3 | 0.3 | 0.4 | 0.4 | 8.2 | 2.5 | | | | | 13.0 | 5.0 | 8.0 | 160.0% |
| Non-Personal Service | 3.6 | 5.1 | 4.5 | 4.4 | 7.2 | 4.3 | 7.8 | 4.8 | | | | | 41.7 | 37.0 | 4.7 | 12.7% |
| General State Charges | 0.1 | - | 0.1 | 0.1 | - | 0.1 | - | 0.7 | | | | | 1.1 | 0.7 | 0.4 | 57.1% |
| Unemployment Benefits | 189.4 | 140.3 | 135.6 | 187.2 | 161.3 | 151.4 | 147.8 | 152.2 | | | | | 1,265.2 | 1,247.7 | 17.5 | 1.4% |
| Total Disbursements | 193.4 | 146.0 | 140.5 | 192.0 | 168.9 | 156.2 | 163.8 | 160.2 | - | - | - | - | 1,321.0 | 1,290.4 | 30.6 | 2.4% |
| Excess (Deficiency) of Receipts over Disbursements | - | 0.3 | 0.4 | 0.5 | (0.7) | 12.2 | (5.9) | (2.3) | - | - | - | - | 4.5 | 0.6 | 3.9 | 650.0% |
| OTHER FINANCING SOURCES (USES): | | | | | | | | | | | | | | | | |
| Transfers from Other Funds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Transfers to Other Funds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Total Other Financing Sources (Uses) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Excess (Deficiency) of Receipts and Other Financing Sources Over Disbursements and Other Financing Uses | - | 0.3 | 0.4 | 0.5 | (0.7) | 12.2 | (5.9) | (2.3) | - | - | - | - | 4.5 | 0.6 | 3.9 | 650.0% |
| Ending Fund Balance | $ 26.6 | $ 26.9 | $ 27.3 | $ 27.8 | $ 27.1 | $ 39.3 | $ 33.4 | $ 31.1 | $ - | $ - | $ - | $ - | $ 31.1 | $ 25.2 | $ 5.9 | 23.4% |

35

EXHIBIT K

STATE OF NEW YORK
INTERNAL SERVICE FUNDS
STATEMENT OF CASH FLOW
FISCAL YEAR 2019-2020
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30 2019 | 2018 | $ Increase (Decrease) | % Increase Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Fund Balance | $ (302.7) | $ (293.4) | $ (318.6) | $ (293.7) | $ (284.4) | $ (296.5) | $ (278.3) | $ (288.7) | | | | | $ (302.7) | $ (269.2) | $ (33.5) | -12.4% |
| RECEIPTS: | | | | | | | | | | | | | | | | |
| Miscellaneous Receipts | 33.2 | 32.5 | 42.3 | 56.6 | 37.9 | 61.7 | 43.4 | 57.0 | | | | | 364.6 | 324.6 | 40.0 | 12.3% |
| Total Receipts | 33.2 | 32.5 | 42.3 | 56.6 | 37.9 | 61.7 | 43.4 | 57.0 | - | - | - | - | 364.6 | 324.6 | 40.0 | 12.3% |
| DISBURSEMENTS: | | | | | | | | | | | | | | | | |
| Departmental Operations: | | | | | | | | | | | | | | | | |
| Personal Service | 9.7 | 14.0 | 9.6 | 9.7 | 9.9 | 9.6 | 14.0 | 9.6 | | | | | 86.1 | 71.3 | 14.8 | 20.8% |
| Non-Personal Service | 24.4 | 55.3 | 5.9 | 34.7 | 38.4 | 34.1 | 41.8 | 48.1 | | | | | 281.7 | 285.7 | (4.0) | -1.4% |
| General State Charges | 4.1 | 4.9 | 6.6 | 5.2 | 4.6 | 4.6 | 1.6 | 4.7 | | | | | 36.3 | 55.3 | (19.0) | -34.4% |
| Total Disbursements | 38.2 | 75.2 | 22.1 | 49.6 | 50.9 | 48.3 | 57.4 | 62.4 | - | - | - | - | 404.1 | 412.3 | (8.2) | -2.0% |
| Excess (Deficiency) of Receipts over Disbursements | (5.0) | (42.7) | 20.2 | 7.0 | (13.0) | 13.4 | (14.0) | (5.4) | - | - | - | - | (39.5) | (87.7) | 48.2 | 55.0% |
| OTHER FINANCING SOURCES (USES): | | | | | | | | | | | | | | | | |
| Transfers from Other Funds | 14.3 | 17.5 | 4.7 | 2.3 | 1.3 | 5.3 | 3.6 | 3.6 | | | | | 52.6 | 46.7 | 5.9 | 12.6% |
| Transfers to Other Funds | - | - | - | - | (0.4) | (0.5) | - | (0.2) | | | | | (1.1) | (7.2) | (6.1) | -84.7% |
| Total Other Financing Sources (Uses) | 14.3 | 17.5 | 4.7 | 2.3 | 0.9 | 4.8 | 3.6 | 3.4 | - | - | - | - | 51.5 | 39.5 | 12.0 | 30.4% |
| Excess (Deficiency) of Receipts and Other Financing Sources Over Disbursements and Other Financing Uses | 9.3 | (25.2) | 24.9 | 9.3 | (12.1) | 18.2 | (10.4) | (2.0) | - | - | - | - | 12.0 | (48.2) | 60.2 | 124.9% |
| Ending Fund Balance | $ (293.4) | $ (318.6) | $ (293.7) | $ (284.4) | $ (296.5) | $ (278.3) | $ (288.7) | $ (290.7) | $ - | $ - | $ - | $ - | $ (290.7) | $ (317.4) | $ 26.7 | 8.4% |

**Financial Reports**

EXHIBIT L

**STATE OF NEW YORK**
**PENSION TRUST FUNDS**
**STATEMENT OF CASH FLOW**
**FISCAL YEAR 2019-2020**
(amounts in millions)

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30 2019 | 2018 | $ Increase (Decrease) | % Increase/Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Fund Balance | $ (3.0) | $ (7.4) | $ (11.8) | $ (16.5) | $ (22.6) | $ (2.0) | $ (7.0) | $ (3.2) | - | - | - | - | $ (3.0) | $ (2.0) | $ (1.0) | -50.0% |
| **RECEIPTS:** | | | | | | | | | | | | | | | | |
| Miscellaneous Receipts | 5.3 | 7.8 | 5.1 | 5.1 | 30.0 | 5.2 | 12.7 | 5.3 | - | - | - | - | 76.5 | 79.4 | (2.9) | -3.7% |
| Total Receipts | 5.3 | 7.8 | 5.1 | 5.1 | 30.0 | 5.2 | 12.7 | 5.3 | - | - | - | - | 76.5 | 79.4 | (2.9) | -3.7% |
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| Departmental Operations: | | | | | | | | | | | | | | | | |
| Personal Service | 5.3 | 7.7 | 5.4 | 5.0 | 5.1 | 5.3 | 7.7 | 5.3 | - | - | - | - | 46.8 | 46.6 | 0.2 | 0.4% |
| Non-Personal Service | 1.1 | 1.1 | 1.1 | 1.3 | 1.1 | 1.6 | 1.0 | 1.5 | - | - | - | - | 9.8 | 9.1 | 0.7 | 7.7% |
| General State Charges | 3.3 | 3.4 | 3.3 | 4.9 | 3.2 | 3.3 | 0.2 | 3.3 | - | - | - | - | 24.9 | 35.6 | (10.7) | -30.1% |
| Total Disbursements | 9.7 | 12.2 | 9.8 | 11.2 | 9.4 | 10.2 | 8.9 | 10.1 | - | - | - | - | 81.5 | 91.3 | (9.8) | -10.7% |
| Excess (Deficiency) of Receipts over Disbursements | (4.4) | (4.4) | (4.7) | (6.1) | 20.6 | (5.0) | 3.8 | (4.8) | - | - | - | - | (5.0) | (11.9) | 6.9 | 58.0% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | | | |
| Transfers from Other Funds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Transfers to Other Funds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Total Other Financing Sources (Uses) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Excess (Deficiency) of Receipts and Other Financing Sources Over Disbursements and Other Financing Uses | (4.4) | (4.4) | (4.7) | (6.1) | 20.6 | (5.0) | 3.8 | (4.8) | - | - | - | - | (5.0) | (11.9) | 6.9 | 58.0% |
| Ending Fund Balance | $ (7.4) | $ (11.8) | $ (16.5) | $ (22.6) | $ (2.0) | $ (7.0) | $ (3.2) | $ (8.0) | - | - | - | - | $ (8.0) | $ (13.9) | 5.9 | 42.4% |

37

**NYS Register/December 31, 2019**  **Financial Reports**

STATE OF NEW YORK
PRIVATE PURPOSE TRUST FUNDS
STATEMENT OF CASH FLOW
FISCAL YEAR 2019-2020
(amounts in millions)

EXHIBIT M

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30 2019 | 2018 | $ Increase/ (Decrease) | % Increase/ Decrease |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Fund Balance | $ 13.2 | $ 13.4 | $ 13.5 | $ 13.6 | $ 13.7 | $ 13.8 | $ 13.8 | $ 13.9 | | | | | $ 13.2 | $ 11.9 | $ 1.3 | 10.9% |
| **RECEIPTS:** | | | | | | | | | | | | | | | | |
| Miscellaneous Receipts | 0.2 | 0.1 | 0.1 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | - | - | - | - | 1.0 | 0.9 | 0.1 | 11.1% |
| Total Receipts | 0.2 | 0.1 | 0.1 | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | - | - | - | - | 1.0 | 0.9 | 0.1 | 11.1% |
| **DISBURSEMENTS:** | | | | | | | | | | | | | | | | |
| Departmental Operations: | | | | | | | | | | | | | | | | |
| Personal Service | - | - | - | 0.1 | - | - | - | - | - | - | - | - | 0.1 | 0.1 | - | 0.0% |
| Non-Personal Service | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| General State Charges | - | - | - | - | 0.1 | 0.1 | - | - | - | - | - | - | 0.1 | - | 0.1 | 100.0% |
| Total Disbursements | - | - | - | 0.1 | 0.1 | 0.1 | - | - | - | - | - | - | 0.2 | 0.1 | 0.1 | 100.0% |
| Excess (Deficiency) of Receipts over Disbursements | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | - | 0.1 | 0.1 | - | - | - | - | 0.8 | 0.8 | - | 0.0% |
| **OTHER FINANCING SOURCES (USES):** | | | | | | | | | | | | | | | | |
| Transfers from Other Funds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Transfers to Other Funds | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Total Other Financing Sources (Uses) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Excess (Deficiency) of Receipts and Other Financing Sources Over Disbursements and Other Financing Uses | 0.2 | 0.1 | 0.1 | 0.1 | 0.1 | - | 0.1 | 0.1 | - | - | - | - | 0.8 | 0.8 | - | 0.0% |
| Ending Fund Balance | $ 13.4 | $ 13.5 | $ 13.6 | $ 13.7 | $ 13.8 | $ 13.8 | $ 13.9 | $ 14.0 | $ - | $ - | $ - | $ - | $ 14.0 | $ 12.7 | $ 1.3 | 10.2% |

38

**Financial Reports**

**NYS Register/December 31, 2019**

SCHEDULE 1

STATE OF NEW YORK
GOVERNMENTAL FUNDS
SUMMARY OF CASH RECEIPTS, DISBURSEMENTS AND
CHANGES IN FUND BALANCES
FISCAL YEAR 2019-2020
FOR THE MONTH OF NOVEMBER 2019
(amounts in millions)

| | BALANCE NOVEMBER 1, 2019 | RECEIPTS | DISBURSEMENTS | OTHER FINANCING SOURCES (USES) | BALANCE NOVEMBER 30, 2019 |
|---|---|---|---|---|---|
| **GENERAL FUND** | | | | | |
| 10000-10049-Local Assistance Account | $ | $ 0.133 | $ 4,308.236 | $ 4,308.103 | $ |
| 10050-10099-State Operations Account | 8,782.299 | 2,343.370 | 1,242.067 | (3,344.914) | 6,538.688 |
| 10100-10149-Tax Stabilization Reserve | - | - | - | - | 0.829 |
| 10150-10199-Contingency Reserve | - | - | - | - | 68.714 |
| 10200-10249-Universal Pre-K Reserve | - | - | - | - | 90.168 |
| 10250-10299-Community Projects | - | - | 0.200 | - | 0.078 |
| 10300-10349-Rainy Day Reserve Fund | - | - | - | - | 0.216 |
| 10400-10449-Refund Reserve Account | 32.894 | - | - | - | 32.694 |
| 10500-10549-Fringe Benefits Escrow | - | - | - | - | 8.009 |
| 10550-10599-Tobacco Revenue Guarantee | - | - | - | - | |
| **TOTAL GENERAL FUND** | 8,815.193 | 2,343.503 | 5,550.503 | 963.189 | 6,571.382 |
| **SPECIAL REVENUE FUNDS-STATE** | | | | | |
| 20000-20099-Mental Health Gifts and Donations | 0.833 | 0.001 | 0.005 | - | 0.829 |
| 20100-20299-Combined Expendable Trust | 68.662 | 0.554 | 0.502 | - | 68.714 |
| 20300-20349-New York Interest on Lawyer Account | 86.144 | 4.929 | 0.905 | - | 90.168 |
| 20350-20399-NYS Archives Partnership Trust | 0.129 | - | 0.043 | (0.008) | 0.078 |
| 20400-20449-Child Performer's Protection | 0.262 | 0.006 | 0.043 | (0.009) | 0.216 |
| 20450-20499-Tuition Reimbursement | 8.275 | 0.014 | 0.230 | (0.050) | 8.009 |
| 20500-20549-New York State Local Government Records Management Improvement | 2.818 | 0.780 | 0.332 | (0.055) | 3.211 |
| 20550-20599-School Tax Relief | 0.024 | 3.000 | 2.912 | - | 0.112 |
| 20600-20649-Charter Schools Stimulus | 1.241 | 0.002 | - | - | 1.243 |
| 20650-20899-Not-For-Profit Short Term Revolving Loan | - | - | - | - | - |
| 20800-20849-HCRA Resources | 150.028 | 453.382 | 373.609 | (7.893) | 223.908 |
| 20850-20899-Dedicated Mass Transportation Trust | 77.965 | 50.457 | 65.157 | - | 63.265 |
| 20900-20949-State Lottery | (568.051) | 251.102 | 150.203 | - | (467.152) |
| 20950-20999-Combined Student Loan | 41.498 | 2.211 | 0.223 | - | 43.486 |
| 21000-21049-Sewage Treatment Program Mgmt. & Administration | (3.837) | - | 0.064 | - | (3.901) |
| 21050-21149-Encon Special Revenue | 1.281 | 7.525 | 7.182 | 4.000 | 5.624 |
| 21150-21199-Conservation | 86.334 | 6.479 | 3.400 | - | 89.413 |
| 21200-21249-Environmental Protection and Oil Spill Compensation | 31.577 | 2.944 | 1.582 | (5.866) | 27.073 |
| 21250-21299-Training and Education Program on OSHA | 16.268 | 0.016 | 3.338 | (1.161) | 11.785 |
| 21300-21349-Lawyers Fund for Client Protection | 7.356 | 0.362 | 2.668 | - | 5.250 |
| 21350-21399-Equipment Loan for the Disabled | 0.544 | 0.003 | - | - | 0.547 |
| 21400-21449-Mass Transportation Operating Assistance | 243.481 | 128.208 | 361.178 | (0.089) | 10.422 |
| 21450-21499-Clean Air | (29.334) | 0.169 | 2.701 | - | (31.866) |
| 21500-21549-New York State Infrastructure Trust | 0.070 | - | - | - | 0.070 |
| 21550-21599-Legislative Computer Services | 11.729 | 0.197 | 0.125 | - | 11.801 |
| 21600-21649-Biodiversity Stewardship and Research | - | - | - | - | - |
| 21650-21699-Combined Non-Expendable Trust | 0.465 | - | - | - | 0.465 |
| 21700-21749-Winter Sports Education Trust | - | - | - | - | - |
| 21750-21799-Muscial Instrument Revolving | 0.001 | - | - | - | 0.001 |
| 21850-21899-Arts Capital | 0.971 | 0.002 | - | - | 0.973 |
| 21900-22499-Miscellaneous State Special Revenue | 1,414.201 | 203.841 | 259.501 | 35.332 | 1,393.973 |
| 22500-22549-Court Facilities Incentive Aid | 40.795 | 0.071 | 13.893 | - | 26.973 |

39

SCHEDULE 1

**STATE OF NEW YORK**
**GOVERNMENTAL FUNDS**
**SUMMARY OF CASH RECEIPTS, DISBURSEMENTS AND CHANGES IN FUND BALANCES**
**FISCAL YEAR 2019-2020**
**FOR THE MONTH OF NOVEMBER 2019**
(amounts in millions)

| | BALANCE NOVEMBER 1, 2019 | RECEIPTS | DISBURSEMENTS | OTHER FINANCING SOURCES (USES) | BALANCE NOVEMBER 30, 2019 |
|---|---|---|---|---|---|
| **SPECIAL REVENUE FUNDS-STATE (CONTINUED)** | | | | | |
| 22550-22599-Employment Training | 0.052 | - | - | - | 0.052 |
| 22650-22699-State University Income | 1,916.972 | 260.164 | 604.977 | 118.874 | 1,691.033 |
| 22700-22749-Chemical Dependence Service | 13.385 | 0.209 | 0.032 | - | 13.562 |
| 22750-22799-Lake George Park Trust | 0.478 | 0.001 | 0.116 | - | 0.363 |
| 22800-22849-State Police Motor Vehicle Law Enforcement and Motor Vehicle Theft and Insurance Fraud Prevention | 87.860 | 10.566 | 0.791 | - | 97.635 |
| 22850-22899-New York Great Lakes Protection | 0.437 | 0.001 | 0.011 | - | 0.427 |
| 22900-22949-Federal Revenue Maximization | 0.024 | - | - | - | 0.024 |
| 22950-22999-Housing Development | 9.253 | 0.016 | 0.540 | - | 8.729 |
| 23000-23049-NYS/DOT Highway Safety Program | (14.237) | 0.110 | 0.252 | - | (14.379) |
| 23050-23099-Vocational Rehabilitation | 0.034 | 0.004 | - | - | 0.038 |
| 23100-23149-Drinking Water Program Management and Administration | (5.351) | - | - | - | (5.351) |
| 23150-23199-NYC County Clerks' Operations Offset | (48.601) | - | 2.361 | - | (50.962) |
| 23200-23249-Judiciary Data Processing Offset | 42.313 | 4.360 | 2.465 | - | 44.208 |
| 23250-23449-IFR/CUTRA | 197.464 | 6.864 | 5.686 | - | 198.642 |
| 23500-23549-USOC Lake Placid Training | 0.266 | 0.007 | - | - | 0.273 |
| 23550-23599-Indigent Legal Services | 401.599 | 19.514 | 14.977 | - | 406.136 |
| 23600-23649-Unemployment Insurance Interest and Penalty | 28.918 | 1.013 | (0.032) | (0.265) | 29.698 |
| 23650-23699-MTA Financial Assistance Fund | 100.556 | 0.098 | 48.850 | 61.350 | 113.154 |
| 23700-23749-New York State Commercial Gaming Fund | 69.910 | 13.284 | 0.424 | - | 82.770 |
| 23750-23799-Medical Marihuana Trust Fund | 8.991 | 0.509 | 0.400 | - | 9.100 |
| 23800-23899-Dedicated Miscellaneous State Special Revenue | 2.733 | 0.146 | 0.032 | (0.005) | 2.842 |
| 24850-24899-Health Care Reform Act | 532.708 | 0.910 | - | - | 533.708 |
| 24900-24949-Charitable Gifts Trust Fund | 94.923 | 0.163 | - | - | 95.086 |
| 24950-24999-Interactive Fantasy Sports | 16.417 | 0.717 | 0.020 | - | 17.114 |
| 40350-40399-State University Dormitory Income | 199.642 | 26.348 | - | (23.273) | 202.717 |
| **TOTAL SPECIAL REVENUE FUNDS-STATE** | 5,350.566 | 1,461.559 | 1,931.698 | 180.882 | 5,061.309 |
| **SPECIAL REVENUE FUNDS-FEDERAL** | | | | | |
| 25000-25099-Federal USDA/Food and Consumer Services | (5.601) | 186.261 | 198.091 | (0.137) | (17.568) |
| 25100-25199-Federal Health and Human Services | 693.037 | 4,594.662 | 4,502.490 | (82.216) | 702.993 |
| 25200-25249-Federal Education | (34.984) | 159.749 | 159.269 | (1.030) | (35.534) |
| 25300-25889-Federal Miscellaneous Operating Grants | (285.916) | 240.115 | 208.119 | (0.246) | (254.166) |
| 25900-25949-Unemployment Insurance Administration | 152.226 | 38.965 | 27.219 | (15.350) | 148.622 |
| 25950-25999-Unemployment Insurance Occupational Training | (0.388) | 0.329 | 0.341 | - | (0.401) |
| 26000-26049-Federal Employment and Training Grants | (2.301) | 8.740 | 11.220 | (0.992) | (5.773) |
| **TOTAL SPECIAL REVENUE FUNDS-FEDERAL** | 516.072 | 5,228.821 | 5,106.749 | (99.971) | 538.173 |
| **TOTAL SPECIAL REVENUE FUNDS** | 5,866.638 | 6,690.380 | 7,038.447 | 80.911 | 5,599.482 |
| **DEBT SERVICE FUNDS** | | | | | |
| 40000-40049-Debt Reduction Reserve | 176.728 | 25.724 | - | 21.102 | 223.554 |
| 40100-40149-Mental Health Services | 376.185 | 1,526.792 | 62.927 | (1,138.142) | 701.908 |
| 40150-40199-General Debt Service | - | 0.023 | - | (0.023) | - |
| 40250-40299-State Housing Debt Service | 39.604 | (0.599) | 14.119 | (4.509) | 20.377 |
| 40300-40349-Department of Health Income | 11.864 | 87.707 | - | (83.068) | 16.503 |
| 40400-40449-Clean Water/Clean Air | - | - | - | - | - |
| 40450-40499-Local Government Assistance Tax | - | 291.973 | - | (291.973) | - |
| **TOTAL DEBT SERVICE FUNDS** | 604.381 | 1,931.620 | 77.046 | (1,496.613) | 962.342 |

**STATE OF NEW YORK**
**GOVERNMENTAL FUNDS**
**SUMMARY OF CASH RECEIPTS, DISBURSEMENTS AND CHANGES IN FUND BALANCES**
**FISCAL YEAR 2019-2020**
**FOR THE MONTH OF NOVEMBER 2019**
(amounts in millions)

SCHEDULE 1

| | BALANCE NOVEMBER 1, 2019 | RECEIPTS | DISBURSEMENTS | OTHER FINANCING SOURCES (USES) | BALANCE NOVEMBER 30, 2019 |
|---|---|---|---|---|---|
| **CAPITAL PROJECTS FUNDS** | | | | | |
| 30000-30049-State Capital Projects | (35.713) | 0.546 | 394.836 | 394.290 | (35.713) |
| 30050-30099-Dedicated Highway and Bridge Trust | 142.154 | 190.703 | 162.611 | (44.585) | 125.661 |
| 30200-30299-SUNY Residence Halls Rehabilitation and Repair | 12.862 | 0.246 | 5.880 | 0.900 | 8.128 |
| 30300-30349-New York State Canal System Development | (83.932) | 0.022 | 10.099 | - | (94.009) |
| 30350-30399-Parks Infrastructure | 0.015 | 0.008 | - | - | 0.023 |
| 30400-30449-Passenger Facility Charge | - | - | - | - | - |
| 30450-30499-Environmental Protection | 85.044 | 13.237 | 25.264 | 28.000 | 101.017 |
| 30500-30549-Clean Water/Clean Air Implementation | - | - | - | - | - |
| 30600-30609-Energy Conservation Thru Improved Transportation Bond | 0.164 | - | - | - | 0.164 |
| 30610-30619-Park and Recreation Land Acquisition Bond | - | - | - | - | - |
| 30620-30629-Pure Waters Bond | 0.668 | - | - | - | 0.668 |
| 30630-30639-Transportation Capital Facilities Bond | 3.328 | - | - | - | 3.328 |
| 30640-30649-Environmental Quality Protection Bond | 1.419 | - | - | - | 1.419 |
| 30650-30659-Rebuild and Renew New York Transportation Bond | 18.334 | - | - | - | 18.334 |
| 30660-30669-Transportation Infrastructure Renewal Bond | - | - | - | - | - |
| 30670-30679-1986 Environmental Quality Bond Act | 4.255 | - | - | - | 4.255 |
| 30680-30689-Accelerated Capacity and Transportation Improvement Bond | 5.551 | - | - | - | 5.551 |
| 30690-30699-Clean Water/Clean Air Bond | - | - | - | - | - |
| 30700-30709-State Housing Bond | 2.778 | - | - | - | 2.778 |
| 30710-30719-Smart Schools Bond | 1.428 | - | - | - | 1.428 |
| 30750-30799-Outdoor Recreation Development Bond | - | - | - | - | - |
| 30800-30849-Rail Preservation and Development Bond | - | - | - | - | - |
| 31350-31449-Federal Capital Projects | (572.867) | 184.373 | 162.751 | - | (551.245) |
| 31450-31499-Forest Preserve Expansion | 1.071 | 0.002 | - | - | 1.073 |
| 31500-31549-Hazardous Waste Remedial | (122.385) | 3.424 | 7.790 | (0.211) | (126.962) |
| 31650-31699-Suburban Transportation | 0.534 | 0.001 | - | - | 0.535 |
| 31700-31749-Division for Youth Facilities Improvement | (13.790) | - | 0.747 | - | (14.537) |
| 31800-31849-Housing Assistance | (12.942) | - | - | - | (12.942) |
| 31850-31899-Housing Program | (80.320) | - | 4.458 | - | (84.778) |
| 31900-31949-Natural Resource Damage | 17.451 | 0.030 | 0.077 | - | 17.404 |
| 31950-31999-DOT Engineering Services | (12.290) | - | (0.028) | - | (12.262) |
| 32200-32249-Miscellaneous Capital Projects | 101.787 | 3.737 | 2.805 | 1.252 | 103.971 |
| 32250-32299-CUNY Capital Projects | 0.011 | - | - | - | 0.011 |
| 32300-32349-Mental Hygiene Facilities Capital Improvement | (381.761) | 23.583 | 27.057 | - | (385.235) |
| 32350-32399-Correction Facilities Capital Improvement | (212.126) | - | 44.232 | - | (256.358) |
| 32400-32999-State University Capital Projects | 154.532 | 1.266 | 7.257 | (0.512) | 148.029 |
| 33000-33049-NYS Storm Recovery Fund | (49.501) | - | 2.062 | - | (51.563) |
| 33050-33099-Dedicated Infrastructure Investment Fund | 78.081 | - | 108.522 | 70.000 | 39.559 |
| **TOTAL CAPITAL PROJECTS FUNDS** | (946.160) | 421.178 | 966.420 | 449.136 | (1,042.266) |
| **TOTAL GOVERNMENTAL FUNDS** | $ 14,340.052 | $ 11,386.681 | $ 13,632.416 | $ (3.377) | $ 12,090.940 |

41

**NYS Register/December 31, 2019**  **Financial Reports**

SCHEDULE 2

STATE OF NEW YORK
PROPRIETARY FUNDS
SUMMARY OF CASH RECEIPTS, DISBURSEMENTS AND
CHANGES IN FUND BALANCES
FISCAL YEAR 2019-2020
FOR THE MONTH OF NOVEMBER 2019
(amounts in millions)

| FUND TYPE | BALANCE NOVEMBER 1, 2019 | RECEIPTS | DISBURSEMENTS | OTHER FINANCING SOURCES (USES) | BALANCE NOVEMBER 30, 2019 |
|---|---|---|---|---|---|
| **ENTERPRISE FUNDS** | | | | | |
| 50000-50049-Youth Commissary | $ 0.104 | $ 0.002 | $ 0.003 | $ - | $ 0.103 |
| 50050-50099-State Exposition Special | 2.067 | 0.560 | 1.610 | - | 1.017 |
| 50100-50299-Correctional Services Commissary | 3.158 | 3.218 | 3.060 | - | 3.316 |
| 50300-50399-Agencies Enterprise | 10.538 | 1.742 | 3.074 | - | 9.206 |
| 50400-50449-Sheltered Workshop | 2.177 | 0.034 | 0.012 | - | 2.199 |
| 50450-50499-Patient Workshop | 1.827 | 0.009 | 0.065 | - | 1.771 |
| 50500-50599-Mental Hygiene Community Stores | 4.861 | 0.092 | 0.132 | - | 4.821 |
| 50650-50699-Unemployment Insurance Benefit | 8.611 | 152.214 | 152.200 | - | 8.625 |
| **TOTAL ENTERPRISE FUNDS** | 33.343 | 157.871 | 160.156 | - | 31.058 |
| **INTERNAL SERVICE FUNDS** | | | | | |
| 55000-55049-Centralized Services | (84.308) | 39.187 | 45.391 | 1.128 | (89.384) |
| 55050-55099-Agency Internal Service | (114.705) | 13.664 | 8.432 | 2.415 | (107.058) |
| 55100-55149-Mental Hygiene Revolving | 0.035 | 0.104 | 0.108 | - | 0.031 |
| 55150-55199-Youth Vocational Education | 0.076 | 0.001 | 0.002 | - | 0.075 |
| 55200-55249-Joint Labor and Management Administration | 0.233 | 0.001 | 0.072 | - | 0.162 |
| 55250-55299-Audit and Control Revolving | (40.590) | - | 2.734 | (0.008) | (43.332) |
| 55300-55349-Health Insurance Revolving | (16.579) | 0.543 | 1.054 | (0.158) | (17.248) |
| 55350-55399-Correctional Industries Revolving | (32.866) | 3.465 | 4.573 | - | (33.974) |
| **TOTAL INTERNAL SERVICE FUNDS** | (288.704) | 56.965 | 62.366 | 3.377 | (290.728) |
| **TOTAL PROPRIETARY FUNDS** | $ (255.361) | $ 214.836 | $ 222.522 | $ 3.377 | $ (259.670) |

42

SCHEDULE 3

STATE OF NEW YORK
FIDUCIARY FUNDS
SUMMARY OF CASH RECEIPTS, DISBURSEMENTS AND CHANGES IN FUND BALANCES
FISCAL YEAR 2019-2020
FOR THE MONTH OF NOVEMBER 2019
(amounts in millions)

| FUND TYPE | BALANCE NOVEMBER 1, 2019 | RECEIPTS | DISBURSEMENTS | OTHER FINANCING SOURCES (USES) | BALANCE NOVEMBER 30, 2019 |
|---|---|---|---|---|---|
| **PENSION TRUST FUNDS** | | | | | |
| 65000-65049-Common Retirement Administration | $ (3,244) | $ 5,278 | $ 10,008 | $ - | $ (7,974) |
| **TOTAL PENSION TRUST FUNDS** | (3,244) | 5,278 | 10,008 | - | (7,974) |
| **PRIVATE PURPOSE TRUST FUNDS** | | | | | |
| 66000-66049-Agriculture Producers' Security | 2,988 | 0.006 | 0.017 | - | 2,977 |
| 66050-66099-Milk Producers' Security | 10,939 | 0.075 | 0.010 | - | 11,004 |
| **TOTAL PRIVATE PURPOSE TRUST FUNDS** | 13,927 | 0.081 | 0.027 | - | 13,981 |
| **AGENCY FUNDS** | | | | | |
| 60050-60149-School Capital Facilities Financing Reserve | 25,088 | 0.194 | 1,549 | | 23,733 |
| 60150-60199-Child Performer's Holding | 0.524 | 0.007 | 0.001 | | 0.530 |
| 60200-60249-Employees Health Insurance | 1,079,219 | 981,811 | 886,991 | | 1,174,039 |
| 60250-60299-Social Security Contribution | 15,080 | 91,755 | 91,784 | | 15,051 |
| 60300-60399-Employee Payroll Withholding | 65,516 | 348,233 | 373,762 | | 39,987 |
| 60400-60449-Employees Dental Insurance | 26,891 | 6,354 | 5,416 | | 27,829 |
| 60450-60499-Management Confidential Group Insurance | 0.650 | 0.845 | 0.712 | | 0.783 |
| 60500-60549-Lottery Prize | 607,737 | 131,841 | 126,294 | | 613,284 |
| 60550-60599-Health Insurance Reserve Receipts | 0.144 | | | | 0.144 |
| 60600-60799-Miscellaneous New York State Agency | 989,801 | 254,179 | 260,024 | | 983,956 |
| 60800-60849-Elderly Pharmaceutical Insurance Coverage (EPIC), Escrow | 27,268 | 3,351 | 3,355 | | 27,264 |
| 60850-60899-CUNY Senior College Operating | 74,078 | 240,499 | 203,794 | | 110,783 |
| 60900-60949-Medicaid Management Information System (MMIS) Escrow | 131,811 | 6,734,327 | 6,670,620 | | 195,518 |
| 60950-60999-Special Education | - | - | - | | - |
| 61000-61099-State University of New York Revenue Collection | 126,756 | (32,300) | | | 94,456 |
| 61100-61999-State University Federal Direct Lending Program | (4,345) | 17,485 | 16,220 | | (3,080) |
| 62000-62049-SSI SSP Payment Escrow | | | | | - |
| **TOTAL AGENCY FUNDS** | 3,166,218 | 8,778,581 | 8,640,522 | - | 3,304,277 |
| **TOTAL FIDUCIARY FUNDS** | $ 3,176,901 | $ 8,783,940 | $ 8,650,557 | $ - | $ 3,310,284 |

43

**NYS Register/December 31, 2019**                                                              **Financial Reports**

SCHEDULE 4

STATE OF NEW YORK
SOLE CUSTODY AND INVESTMENT ACCOUNTS
STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS
FISCAL YEAR 2019-2020
FOR THE MONTH OF NOVEMBER 2019
(amounts in millions)

| FUND TYPE | BALANCE NOVEMBER 1, 2019 | RECEIPTS | DISBURSEMENTS | BALANCE NOVEMBER 30, 2019 |
|---|---|---|---|---|
| **ACCOUNTS** | | | | |
| 70000-70049-Tobacco Settlement | $ 2,859 | $ 0.005 | $ - | $ 2,864 |
| 70093, 70095, 70300-70301-MTA State Assistance (*) | 241.410 | 178.418 | 167.686 | 252.142 |
| 70050-70149-Sole Custody Investment (**) | 2,681.929 | 5,514.537 | 5,496.648 | 2,699.818 |
| 70200-Comptroller's Refund Account | - | 168.443 | 168.443 | - |
| **TOTAL ACCOUNTS** | $ 2,926.198 | $ 5,861.403 | $ 5,832.777 | $ 2,954.824 |

(*) See Footnotes

(**) Includes Public Asset Fund resources:

Chapter 1 of the Laws of 2002 authorized the conversion of Empire Health Choice, d/b/a Empire Blue Cross and Blue Shield from a not-for-profit corporation to a for-profit corporation. Chapter 1 requires, in part, that upon such conversion, assets representing 95 percent of the fair market value of the not-for-profit corporation be transferred to a fund designated as the "Public Asset Fund" and 5 percent transferred to a Charitable Foundation - as set forth in Section 7317 of the Insurance Law. On December 28, 2005, WellChoice, Inc. (previously known as Empire Blue Cross, Blue Shield) approved a takeover by WellPoint, Inc. This conversion was also subject to the same Chapter 1 requirements of assigning assets representing 95 percent of the fair market value of the not-for-profit corporation be transferred to the "Public Asset Fund".

As of November 30, 2019, $9,461,838.57 (representing the remaining balance of the State's 95 percent share of the fair market value of the not-for-profit corporation plus interest) is on deposit in the sole custody account titled Public Asset Fund. In accordance with Section 43010(j)(4)(F) and (O) of the Insurance Law and at the direction of the Director of the Budget, these funds are available for transfer to HCRA Resources Fund (20800-20848).

44

185

**STATE OF NEW YORK**
**DEBT SERVICE FUNDS**
**STATEMENT OF DIRECT STATE DEBT ACTIVITY**
**FISCAL YEAR 2019-2020**

SCHEDULE 5

| PURPOSE | DEBT OUTSTANDING APRIL 1, 2019 | DEBT ISSUED (*) MONTH OF NOVEMBER | DEBT ISSUED (*) 8 MONTHS ENDED NOVEMBER 30, 2019 | DEBT MATURED MONTH OF NOVEMBER | DEBT MATURED 8 MONTHS ENDED NOVEMBER 30, 2019 | DEBT OUTSTANDING NOVEMBER 30, 2019 | INTEREST DISBURSED MONTH OF NOVEMBER | INTEREST DISBURSED 8 MONTHS ENDED NOVEMBER 30, 2019 |
|---|---|---|---|---|---|---|---|---|
| **GENERAL OBLIGATION BONDED DEBT:** | | | | | | | | |
| Accelerated Capacity and Transportation Improvements | $ 16,747,925 | $ - | $ 155,155 | $ - | $ 688,854 | $ 16,214,226 | $ - | $ 486,583 |
| Clean Water/Clean Air: | | | | | | | | |
| Air Quality | - | - | - | - | - | - | - | - |
| Safe Drinking Water | 2,465,600 | - | (12,617) | - | 162,677 | 2,290,306 | - | 40,811 |
| Clean Water | 321,372,381 | - | 2,863,627 | - | 8,471,194 | 315,764,814 | - | 8,169,307 |
| Solid Waste | 22,144,792 | - | 33,541 | - | 2,033,357 | 20,144,976 | - | 559,882 |
| Environmental Restoration | 46,724,919 | - | (27,114) | - | 210,000 | 46,487,805 | - | 961,950 |
| Energy Conservation Through Improved Transportation: | | | | | | | | |
| Rapid Transit and Rail Freight | 1,352,815 | - | - | - | 154,061 | 1,198,754 | - | 55,667 |
| Environmental Quality (1972): | | | | | | | | |
| Air | 6,247 | - | - | - | - | 6,247 | - | 125 |
| Land and Wetlands | 5,870,169 | - | (795) | - | 25,000 | 5,844,374 | - | 135,855 |
| Water | 10,826,301 | - | 109,856 | - | 4,418,953 | 6,517,204 | - | 286,440 |
| Environmental Quality (1986): | | | | | | | | |
| Land Acquisition/Development/Restoration/Forests | 6,831,632 | - | 9,798 | - | 738,107 | 6,103,323 | - | 183,313 |
| Solid Waste Management | 107,613,085 | - | 287,704 | - | 7,019,746 | 100,881,043 | - | 3,294,351 |
| Housing: | | | | | | | | |
| Low Income | 8,500,000 | - | - | - | 1,860,000 | 6,640,000 | - | 243,000 |
| Middle Income | 6,225,000 | - | - | - | 2,190,000 | 4,035,000 | - | 120,138 |
| Park and Recreation Land Acquisition | - | - | - | - | - | - | - | - |
| Pure Waters | 17,772,576 | - | 367,188 | - | 2,374,401 | 15,765,363 | - | 518,732 |
| Rail Preservation Development | - | - | - | - | - | - | - | - |
| Rebuild and Renew New York Transportation: | | | | | | | | |
| Highway Facilities | 641,322,676 | - | 6,303,945 | - | - | 647,626,621 | - | 14,423,811 |
| Canals and Waterways | 11,884,363 | - | - | - | - | 11,884,363 | - | 241,632 |
| Aviation | 42,044,726 | - | 1,372,382 | - | - | 43,417,108 | - | 895,796 |
| Rail and Port | 94,745,141 | - | 3,009,919 | - | - | 97,755,060 | - | 1,983,245 |
| Mass Transit - Dept. of Transportation | 13,915,297 | - | (39,774) | - | - | 13,875,523 | - | 309,013 |
| Mass Transit - Metropolitan Transportation Authority | 721,891,399 | - | 11,348,989 | - | - | 733,240,388 | - | 16,180,692 |
| Rebuild New York-Transportation Infrastructure Renewal: | | | | | | | | |
| Highways, Parkways, and Bridges | 741,418 | - | (1,804) | - | - | 739,614 | - | 17,695 |
| Rapid Transit, Rail and Aviation | 2,597,617 | - | - | - | 555,054 | 2,042,563 | - | 112,617 |
| Smart Schools Bond Act | 179,020,225 | - | - | - | - | 179,020,225 | - | 4,227,135 |
| Transportation Capital Facilities: | | | | | | | | |
| Aviation | 3,018,695 | - | - | - | 928,596 | 2,090,099 | - | 113,589 |
| Mass Transportation | - | - | - | - | - | - | - | - |
| **Total General Obligation Bonded Debt** | $ 2,285,634,999 | $ - | $ 25,780,000 | $ - | $ 31,830,000 | $ 2,279,584,999 | $ - | $ 53,561,377 |

(*) Includes the net effect of the October 2019 refunding transaction of $914,300,000, which was used to refund $888,520,000 of previously issued general obligation bonds.

45

SCHEDULE 5a

STATE OF NEW YORK
DEBT SERVICE FUNDS
FINANCING AGREEMENTS
FOR THE EIGHT MONTHS ENDED NOVEMBER 30, 2019

| Special Contractual Financing Obligations: | DEBT REDUCTION RESERVE (40000-40049) | GENERAL DEBT SERVICE (40151) | DEPARTMENT OF HEALTH INCOME (40200-40349) | LOCAL GOVERNMENT ASSISTANCE TAX (40450-40499) | MENTAL HEALTH SERVICES (40100-40149) | REVENUE BOND TAX (40152) | SALES TAX REVENUE BOND TAX (40154) | COMBINED TOTALS 8 MONTHS ENDED NOVEMBER 30 — 2019 | COMBINED TOTALS 8 MONTHS ENDED NOVEMBER 30 — 2018 | $ INCREASE/(DECREASE) |
|---|---|---|---|---|---|---|---|---|---|---|
| **Payments to Public Authorities:** | $ - | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| City University Construction | | 71,889,337 | | | | | | 71,889,337 | 108,554,226 | (34,664,889) |
| **Dormitory Authority** | | | | | | | | | | |
| Consolidated Service Contract Refunding | | 54,430,525 | | | | | | 54,430,525 | 57,690,325 | (3,259,800) |
| DASNY Revenue Bond | | - | | | | 135,572,179 | 239,836,331 | 375,408,510 | 406,272,467 | (29,963,957) |
| Department of Health Facilities | | - | 26,157,902 | | | | | 26,157,902 | 26,132,003 | 25,899 |
| Mental Health Facilities | | - | | | 7,064,797 | | | 7,064,797 | 53,484,242 | (46,419,445) |
| Secured Hospital Program | | 3,839,093 | | | | | | 3,839,093 | 603,759 | 3,225,534 |
| SUNY Community Colleges | | 5,928,700 | | | | | | 5,928,700 | 4,586,528 | 1,342,172 |
| SUNY Educational Facilities | | 18,022,938 | | | | | | 18,022,938 | 17,145,625 | 877,313 |
| Environmental Facilities Corporation | | - | | | | 838,869 | | 838,869 | 1,671,969 | (832,010) |
| Housing Finance Agency | | 15,734,765 | | | | 1,907,968 | | 17,642,733 | 17,216,183 | 423,550 |
| Local Government Assistance Corporation | | - | | 21,302,971 | | | | 21,302,971 | 26,216,083 | (4,913,112) |
| **Metropolitan Transportation Authority** | | | | | | | | | | |
| Transit and Commuter Rail Projects | | - | | | | - | | - | 35,457,621 | (35,457,621) |
| **Thruway Authority** | | | | | | | | | | |
| Dedicated Highway and Bridge | | 353,106,261 | | | | | | 353,106,261 | 159,680,864 | 193,425,397 |
| Local Highway and Bridge | | 21,772,000 | | | | | | 21,772,000 | 36,892,075 | (15,120,075) |
| Transportation | | - | | | | 27,330,113 | | 27,330,113 | 30,877,100 | (3,556,987) |
| **Urban Development Corporation:** | | | | | | | | | | |
| Clarkson University | | 26,675 | | | | | | 26,675 | 51,975 | (25,300) |
| Columbia Univer. Telecommunications Center | | - | | | | | | - | 2,777,000 | (2,777,000) |
| Consolidated Service Contract Refunding | | 4,100,254 | | | | | | 4,100,254 | 27,121,943 | (23,021,689) |
| Cornell Univer. Supercomputer Center | | - | | | | | | - | 362,000 | (362,000) |
| Correctional Facilities | | 555,750 | | | | | | 555,750 | 1,081,433 | (525,683) |
| Debt Reduction Reserve | | - | | | | | | - | - | - |
| UDC Revenue Bond | | - | | | | 5,105,575 | | 5,105,575 | 295,089,574 | (289,983,999) |
| University Facilities Grant 95 Refunding | | 60,072 | | | | | | 60,072 | - | 60,072 |
| **Total Disbursements for Special Contractual Financing Obligations** | $ - | $ 549,456,370 | $ 26,157,902 | $ 21,302,971 | $ 7,064,797 | $ 170,745,694 | $ 239,836,331 | $ 1,014,562,085 | $ 1,305,967,905 | $ (291,403,820) |

46

STATE OF NEW YORK
SUMMARY OF THE OPERATING FUND INVESTMENTS
FOR THE MONTH OF NOVEMBER 2019
AS REQUIRED OF THE STATE COMPTROLLER
(amounts in millions)

SCHEDULE 6

|  | MONTH OF NOVEMBER 2019 | FISCAL YEAR TO DATE | PRIOR FISCAL YEAR TO DATE |
|---|---|---|---|

**SHORT TERM INVESTMENT POOL (*)**

| | MONTH OF NOVEMBER 2019 | FISCAL YEAR TO DATE | PRIOR FISCAL YEAR TO DATE |
|---|---|---|---|
| AVERAGE DAILY INVESTMENT BALANCE (**) | $ 19,508.9 | $ 18,905.0 | $ 16,479.9 |
| AVERAGE YIELD (**) | 1.846% | 2.262% | 2.061% |
| TOTAL INVESTMENT EARNINGS | $ 28.748 | $ 294.102 | $ 219.158 |

**Month-End Portfolio Balances**

| DESCRIPTION | NOVEMBER 2019 PAR AMOUNT | NOVEMBER 2018 PAR AMOUNT |
|---|---|---|
| GOVT. AGENCY BILLS/NOTES | $ 3,040.1 | $ 600.0 |
| REPURCHASE AGREEMENTS | 76.0 | 27.0 |
| COMMERCIAL PAPER | 12,144.8 | 12,068.8 |
| CERTIFICATES OF DEPOSIT/SAVINGS | 2,950.3 | 2,957.4 |
| 0% COMPENSATING BALANCE CDs | 8.0 | 175.0 |
| | $ 18,219.2 | $ 15,828.2 |

(*) Pursuant to §98 of the State Finance Law, the State Comptroller is authorized to invest and keep invested all moneys, in any fund, held by the State.  The Short Term Investment Pool (STIP) represents an accounting mechanism that allows for the separate accounting of individual funds (on deposit in the State's General Checking account) for the purpose of making short term investments.  Pursuant to State Finance Law §4(5) the STIP is authorized to temporarily loan to the General Fund-State Operations Account (10050) funds for a period of four months or the end of the fiscal year, whichever is shorter.  However, it must be noted that certain funds are invested as part of STIP, but are held by the State Comptroller in a fiduciary capacity.  Fiduciary fund balances are restricted and may not be used for any State purposes since moneys in such funds are held by the State in a trustee (or fiduciary) capacity or as an agent for individuals, private organizations, or non-State governmental units (e.g. local governments and public authorities). Therefore, Fiduciary fund balances are not available to be temporarily loaned to the General Fund-State Operations Account. Fiduciary fund balances are presented in Schedules 3 and 4 of this report.

(**) Does not include 0% Compensating Balance CDs.

47

**NYS Register/December 31, 2019**                                          **Financial Reports**

STATE OF NEW YORK
HCRA RESOURCES FUND
STATEMENT OF RECEIPTS AND DISBURSEMENTS BY ACCOUNT
FISCAL YEAR 2019-2020

APPENDIX A

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30, 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OPENING CASH BALANCE | - | 543,148,525 | 283,562,198 | 300,393,092 | 426,298,155 | 136,965,831 | 79,883,323 | 152,028,064 | - | - | - | - | - |
| **RECEIPTS:** | | | | | | | | | | | | | |
| Cigarette Tax | 63,203,656 | 59,370,044 | 57,339,173 | 75,425,457 | 63,846,255 | 59,381,304 | 65,507,143 | 57,797,138 | | | | | 501,870,719 |
| State Share of NYC Cigarette Tax | 2,069,000 | 2,175,000 | 1,928,000 | 1,929,000 | 2,141,000 | 1,887,000 | 2,218,000 | 1,782,000 | | | | | 16,129,000 |
| STIP Interest | 469,440 | 1,583,166 | 1,015,794 | 1,015,784 | 1,230,923 | 1,065,269 | 821,677 | 676,684 | | | | | 7,848,766 |
| Public Asset Transfers | | | | | | | | | | | | | |
| Assessments | 533,124,983 | 443,523,673 | 423,216,328 | 494,280,029 | 436,562,470 | 465,018,162 | 453,744,940 | 389,283,657 | | | | | 3,638,974,142 |
| Fees | 400,000 | 903,000 | 2,574,000 | 312,000 | 94,000 | 987,000 | 280,000 | 47,000 | | | | | 5,601,000 |
| Rebates | 4,761,434 | 362,419 | 6,001,122 | 13,400,488 | 1,044,971 | 3,626,158 | 9,624,921 | 3,786,088 | | | | | 42,607,591 |
| Restitution and Settlements | | | | | | | | | | | | | |
| Miscellaneous | | | | | | | | | | | | | |
| **Total Receipts** | 604,232,352 | 507,129,579 | 492,641,789 | 586,362,738 | 504,939,619 | 531,944,893 | 532,197,681 | 453,382,567 | | | | | 4,712,822,218 |
| **DISBURSEMENTS:** | | | | | | | | | | | | | |
| Grants | 57,388,500 | 753,490,762 | 467,314,025 | 461,209,200 | 773,350,315 | 580,722,220 | 440,489,176 | 368,204,270 | | | | | 3,911,168,468 |
| Interest - Late Payments | 1,007 | 72 | 16 | 1,854 | 331 | 105 | 1,003 | 55 | | | | | 4,243 |
| Personal Service | 541,446 | 1,589,857 | 1,742,462 | 1,042,316 | 944,621 | 1,008,723 | 1,635,676 | 1,037,444 | | | | | 9,540,545 |
| Non-Personal Service | 1,746,620 | 3,414,743 | 4,043,565 | 3,156,138 | 2,726,729 | 2,156,664 | 7,461,050 | 3,537,859 | | | | | 28,243,398 |
| Employee Benefits/Indirect Costs | 345,719 | 445,042 | 1,682,906 | 662,367 | 602,434 | 591,118 | 630,960 | 826,183 | | | | | 5,789,729 |
| **Total Disbursements** | 60,023,292 | 758,940,476 | 474,783,064 | 466,071,675 | 777,624,430 | 584,476,830 | 459,217,865 | 373,608,811 | | | | | 3,954,746,383 |
| **OPERATING TRANSFERS:** | | | | | | | | | | | | | |
| Transfers to Capital Projects Fund | | | | | | | | | | | | | |
| Transfers to General Fund | | | 26,998 | | | | | | | | | | 26,998 |
| Transfers to Revenue Bond Tax Fund | | | | | 3,027,025 | 3,754,806 | | | | | | | 6,781,831 |
| Transfers to Miscellaneous Special Revenue Fund | | | | | | | | | | | | | |
| Administration Program Account | | 350,000 | | 386,000 | | | | 385,000 | | | | | 1,121,000 |
| Empire State Stem Cell Trust Account | | 6,661,750 | | | 6,661,750 | | | 6,661,750 | | | | | 19,985,250 |
| Transfers to SUNY Income Fund | 1,088,535 | 746,680 | 1,000,923 | | 958,738 | 815,785 | 815,075 | 846,680 | | | | | 6,252,396 |
| **Total Operating Transfers** | 1,088,535 | 7,758,430 | 1,027,891 | 386,000 | 10,647,513 | 4,570,571 | 815,075 | 7,893,430 | | | | | 34,167,445 |
| **Total Disbursements and Transfers** | 61,091,827 | 766,698,906 | 475,810,955 | 466,457,675 | 788,271,943 | 589,047,401 | 460,032,940 | 381,502,241 | | | | | 3,988,913,828 |
| CLOSING CASH BALANCE | 543,148,525 | 283,562,198 | 300,393,092 | 426,298,155 | 136,965,831 | 79,883,323 | 152,028,064 | 223,908,390 | - | - | - | - | 223,908,390 |

48

**Financial Reports**  NYS Register/December 31, 2019

APPENDIX B

STATE OF NEW YORK
HCRA RESOURCES FUND
STATEMENT OF PROGRAM DISBURSEMENTS
FISCAL YEAR 2019-20

| Program/Purpose | Appropriation Amount (*) | November | 6 Months Ended November 30, 2019 (**) |
|---|---|---|---|
| CENTER FOR COMMUNITY HEALTH PROGRAM | $ 8,752,000.00 | $ 219,928.58 | $ 2,104,752.41 |
| CENTER FOR COMMUNITY HLTH | 8,752,000.00 | 219,928.98 | 2,104,752.41 |
| CHILD HEALTH INSURANCE PROGRAM | 1,478,844,000.00 | 2,547,055.79 | 196,065,650.36 |
| CHILD HEALTH INSURANCE | 1,478,844,000.00 | 2,547,055.79 | 196,065,650.36 |
| COMMUNITY SUPPORT PROGRAM | 180,000.00 | - | 30,000.00 |
| COMMUNITY SUPPORT | 180,000.00 | - | 30,000.00 |
| ELDERLY PHARMACEUTICAL INS COVERAGE PRG | 426,154,811.52 | 6,495,910.11 | 70,352,283.81 |
| ELDERLY PHARMACEUTICAL INSURANCE COVERAGE | 426,154,811.52 | 6,495,910.11 | 70,352,283.81 |
| HEALTH CARE REFORM ACT PROGRAM | 2,160,773,305.03 | 31,717,763.38 | 292,382,526.07 |
| AIDS DRUG ASSISTANCE | 205,250,000.00 | - | 20,000,000.00 |
| AMBULATORY CARE TRAINING | 13,520,000.00 | 291,794.46 | 971,886.30 |
| AREA HEALTH EDUCATION CENTER | 7,063,000.00 | 101,653.18 | 860,494.62 |
| COMMISSIONER EMERGENCY DISTRIBUTIONS | 24,700,000.00 | 34,847.76 | 216,097.76 |
| DIAGNOSTIC AND TREATMENT CTR UNCOMPENSATED CARE | 272,000,000.00 | 23,453,228.00 | 27,500,023.00 |
| DIVERSITY IN MEDICINE | 5,232,000.00 | - | 404,039.00 |
| EMPIRE CLINIC RESEARCH INVESTIGATOR (ECRIP) | 13,780,000.00 | - | 3,444,896.86 |
| HCRA PAYOR / PROVIDER AUDITS | 9,440,000.00 | - | 3,698,201.26 |
| HEALTH FACILITY RESTRUCTURING DASNY | 39,200,000.00 | - | 19,600,000.00 |
| HEALTH WORKFORCE RETRAINING | 210,010,000.00 | 1,136,251.33 | 3,148,370.51 |
| INFERTILITY SERVICES GRANTS | 24,761,748.00 | 193,503.34 | 495,683.41 |
| MEDICAL INDEMNITY FUND | 208,000,000.00 | - | 52,000,000.00 |
| PART 405.4 HOSPITAL AUDITS NYCRR | 2,200,000.00 | 101,192.01 | 414,985.48 |
| PHYSICIAN EXCESS MEDICAL MALPRACTICE | 382,200,000.00 | - | 105,100,000.00 |
| PHYSICIAN LOAN REPAYMENT | 34,465,000.00 | - | 4,665,694.76 |
| PHYSICIAN LOAN REPAYMENT AND PRACTICE SUPPORT | 1,000,000.00 | - | - |
| PHYSICIAN PRACTICE SUPPORT | 27,825,000.00 | - | 155,000.00 |
| PHYSICIAN WORKFORCE STUDIES | 3,584,000.00 | - | - |
| POISON CONTROL CENTERS | 8,440,000.00 | 1,642,909.72 | 1,642,909.72 |
| POOL ADMINISTRATION | 5,300,000.00 | - | 622,498.06 |
| ROSWELL PARK CANCER INSTITUTE | 102,606,000.00 | - | 38,477,250.00 |
| ROSWELL PARK COMPREHENSIVE CANCER CENTER | - | - | - |
| RURAL HEALTH CARE ACCESS | 34,550,000.00 | 744,277.08 | 3,312,644.88 |
| RURAL HEALTH NETWORK | 22,990,000.00 | 981,611.00 | 3,164,840.31 |
| SCHOOL BASED HEALTH CENTERS | 4,200,000.00 | 1,886,941.00 | 1,886,941.00 |
| SCHOOL BASED HEALTH CLINICS-POOL ADMIN | 8,460,000.00 | - | - |
| TRANSITION ACCT - PRIOR YEAR ALLOCATION | 489,926,059.03 | - | - |
| MEDICAL ASSISTANCE PROGRAM | 28,338,830,000.00 | 330,000,000.00 | 3,372,693,345.28 |
| HOME HEALTH RATE ENHANCE | 300,000,000.00 | - | - |
| MEDICAID INDIGENT CARE | 5,349,000,000.00 | - | 601,093,345.28 |
| MEDICAL ASSISTANCE | 21,806,630,000.00 | 330,000,000.00 | 2,771,000,000.00 |
| PSNL CRE WRKR RECR & RETEN NYC (***) | 816,000,000.00 | - | - |
| PSNL CRE WRKR RECR & RETEN ROS (****) | 67,200,000.00 | - | - |
| NEW YORK STATE OF HEALTH | 53,398,000.00 | 2,114,701.40 | 15,482,367.42 |
| NEW YORK STATE OF HEALTH ADMINISTRATION | 53,398,000.00 | 2,114,701.40 | 15,482,367.42 |
| OFFICE OF HEALTH INSURANCE PROGRAM | 1,834,000.00 | - | - |
| OFFICE OF HEALTH INSURANCE | 1,834,000.00 | - | - |
| OFFICE OF HEALTH SYSTEMS MANAGEMENT | 60,490,924.85 | 987,713.31 | 9,786,513.50 |
| OFFICE HEALTH SYSTEMS MANAGEMENT | 60,490,924.85 | 987,713.31 | 9,786,513.50 |
| OFFICE OF LONG TERM CARE | 2,477,800.00 | - | - |
| ADULT HOME INITIATIVE | 2,477,800.00 | - | - |
| REVENUE, PROCESSING & RECONCILIATION | 8,190,000.00 | 370,936.28 | 2,704,685.45 |
| REVENUE, PROCESSING & RECONCILIATION | 8,190,000.00 | 370,936.28 | 2,704,685.45 |
| TOTAL REPORTED AMOUNT | $ 32,539,724,841.40 | $ 373,608,810.97 | $ 3,954,746,383.44 |
| Reclass of SUNY Hospital Disprop Share to Transfer | | | 374,054,066.65 |
| Reclass of SUNY Hospital Poison Control Centers to Transfer | | | (846,680.12) |
| Reclass of SUNY Empire Clinical Research Investigator Program to Transfer | | | 1,481.24 |
| Reconciling Adjustment (F-Card and T-Card) | | | (6,252,396.34) |
| | | | (3,244.52) |
| | | | 3,961,002,024.70 |

(*) Includes amounts appropriated in SFY 2019-20, as well as prior year appropriations that were reappropriated.
(**) Disbursements from the HCRA Resources Fund includes direct grant payments to program beneficiaries, services and expenses for administration of grant programs, and transfers to the Public Goods Pool to finance payments made by the State's fiscal agent.
(***) Full title is: NYC Personal Care Workforce Recruitment and Retention Rates Grants.
(****) Full title is: Personal Care Workforce Recruitment and Retention Rates Grants.

49

**NYS Register/December 31, 2019**  **Financial Reports**

APPENDIX C

**STATE OF NEW YORK**
**STATEMENT OF CASH FLOW - PUBLIC GOODS POOL**
**FISCAL YEAR 2019-20**

| | 1st Quarter APRIL - JUNE | 2nd Quarter JULY - SEPTEMBER | 2019 OCTOBER | 2019 NOVEMBER | 2019-20 |
|---|---|---|---|---|---|
| OPENING CASH BALANCE | $ 284,899,772.70 | $ 217,136,341.70 | $ 349,275,252.28 | $ 308,305,439.98 | $ 284,899,772.70 |
| **RECEIPTS:** | | | | | |
| Patient Services | 901,482,254.94 | 1,104,138,349.72 | 287,061,937.50 | 206,465,580.61 | 2,499,145,722.77 |
| Covered Lives | 257,819,074.40 | 303,187,529.45 | 86,213,931.59 | 51,760,824.84 | 698,981,360.28 |
| Provider Assessments | 33,710,660.47 | 38,718,319.01 | 9,875,810.74 | 5,684,071.04 | 87,988,861.26 |
| 1% Assessments | 101,375,334.00 | 108,247,260.00 | 36,089,468.00 | 33,250,463.00 | 278,962,525.00 |
| DASNY - MOE/Recast receivables | | | | | |
| Interest Income | 214,148.16 | 222,300.29 | 45,907.12 | 34,495.74 | 516,851.31 |
| Unassigned | 25,420,354.00 | (25,438,913.00) | 2,983,526.00 | (2,855,162.94) | 109,804.06 |
| Total Receipts | 1,320,021,825.97 | 1,529,072,845.47 | 422,269,980.95 | 294,340,272.29 | 3,565,704,924.68 |
| **PROGRAM DISBURSEMENTS:** | | | | | |
| Poison Control Centers | | | | (2,400,000.00) | (2,400,000.00) |
| School Based Health Center Grants | | | | | |
| ECRIP Distributions | | | (3,444,996.00) | | (3,444,996.00) |
| Total Program Disbursements | | | (3,444,996.00) | (2,400,000.00) | (6,844,996.00) |
| Excess (Deficiency) of Receipts over Disbursements | 1,320,021,825.97 | 1,529,072,845.47 | 418,824,984.95 | 291,940,272.29 | 3,559,859,928.68 |
| **OTHER FINANCING SOURCES (USES):** | | | | | |
| **Transfers From Other Pools:** | | | | | |
| Medicaid Disproportionate Share | | | | | |
| Health Facility Assessment Fund - Hospital Quality Contribution | 12,273,811.00 | 12,910,960.00 | 4,376,089.00 | 4,461,972.00 | 34,022,832.00 |
| **Transfers From State Funds:** | | | | | |
| HCRA Resources Fund | | | 3,444,996.00 | 2,400,000.00 | 5,844,996.00 |
| Total Other Financing Sources | 12,273,811.00 | 12,910,960.00 | 7,821,085.00 | 6,861,972.00 | 39,867,828.00 |
| **Transfers To Other Pools:** | | | | | |
| Medicaid Disproportionate Share | | | | | |
| Health Facility Assessment Fund | | | | | |
| **Transfers To State Funds:** | | | | | |
| HCRA Resources Fund | (1,211,212,716.72) | (1,061,871,734.43) | (403,657,248.14) | (389,139,743.32) | (3,065,881,442.61) |
| Indigent Care Fund - Matched | (189,777,239.46) | (325,895,043.33) | (63,992,967.38) | | (579,665,250.17) |
| Indigent Care Fund - Unmatched | 930,888.21 | (22,078,117.13) | 34,333.27 | | (21,112,895.65) |
| Total Other Financing Uses | (1,400,059,067.97) | (1,409,844,894.89) | (467,615,882.25) | (389,139,743.32) | (3,666,659,588.43) |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | (67,763,431.00) | 132,138,910.68 | (40,969,812.30) | (90,337,499.03) | (66,931,831.75) |
| CLOSING CASH BALANCE | $ 217,136,341.70 | $ 349,275,252.28 | $ 308,305,439.98 | $ 217,967,940.95 | $ 217,967,940.95 |

Source: HCRA - Office of Pool Administration

50

**Financial Reports**

**NYS Register/December 31, 2019**

APPENDIX D

STATE OF NEW YORK
STATEMENT OF CASH FLOW - MEDICAID DISPROPORTIONATE SHARE
FISCAL YEAR 2019-20

| | | 1st Quarter APRIL - JUNE | 2nd Quarter JULY - SEPTEMBER | 2019 OCTOBER | 2019 NOVEMBER | 2019-20 |
|---|---|---|---|---|---|---|
| OPENING CASH BALANCE | $ | 2,224.49 | $ 1,198.39 | $ 9,008.14 | $ 781.92 | $ 2,224.49 |
| **RECEIPTS:** | | | | | | |
| Interest Income | | 4,789.67 | 11,549.28 | 781.92 | - | 17,120.87 |
| Total Receipts | | 4,789.67 | 11,549.28 | 781.92 | - | 17,120.87 |
| **PROGRAM DISBURSEMENTS:** | | | | | | |
| Indigent Care | | (189,777,239.46) | (223,008,636.27) | (64,167,030.38) | - | (476,952,906.11) |
| High Need Indigent Care | | - | - | - | - | - |
| Other | | 945,583.86 | (120,704,277.72) | 977,753.27 | - | (118,780,940.59) |
| Total Program Disbursements | | (188,831,655.60) | (343,712,913.99) | (63,189,277.11) | - | (595,733,846.70) |
| Excess (Deficiency) of Receipts over Disbursements | | (188,826,865.93) | (343,701,364.71) | (63,188,495.19) | - | (595,716,725.83) |
| **OTHER FINANCING SOURCES (USES):** | | | | | | |
| **Transfers From Other Pools:** | | | | | | |
| Public Goods Pool | | - | - | - | - | - |
| Health Facility Assessment Fund | | - | - | - | - | - |
| **Transfers From State Funds:** | | | | | | |
| HCRA Resources Indigent Care - Matched | | 94,888,619.73 | 162,947,521.68 | 31,996,483.69 | - | 289,832,625.10 |
| HCRA Resources Indigent Care - Unmatched | | (930,888.21) | 20,125,941.66 | (34,333.27) | - | 19,160,720.18 |
| HCRA Resources Indigent Care - ATB | | - | - | - | - | - |
| Federal DHHS Fund | | 94,888,619.73 | 162,947,521.65 | 31,996,483.69 | - | 289,832,625.07 |
| Other | | - | - | - | - | - |
| Total Other Financing Sources | | 188,846,351.25 | 346,020,984.99 | 63,958,634.11 | - | 598,825,970.35 |
| **Transfers To Other Pools:** | | | | | | |
| Public Goods Pool | | - | - | - | - | - |
| Health Facility Assessment Fund | | - | - | - | - | - |
| **Transfers To State Funds:** | | | | | | |
| HCRA Resources Fund Indigent Care Acct | | (20,511.42) | (2,311,810.53) | (778,365.14) | (781.92) | (3,111,469.01) |
| Total Other Financing Uses | | (20,511.42) | (2,311,810.53) | (778,365.14) | (781.92) | (3,111,469.01) |
| Excess (Deficiency) of Receipts and Other Financing Sources over Disbursements and Other Financing Uses | | (1,026.10) | 7,809.75 | (8,226.22) | (781.92) | (2,224.49) |
| CLOSING CASH BALANCE | $ | 1,198.39 | $ 9,008.14 | $ 781.92 | $ - | $ - |

Source: HCRA - Office of Pool Administration

51

APPENDIX E

**STATE OF NEW YORK**
**SUMMARY OF OFF-BUDGET SPENDING REPORT**
**FISCAL YEAR 2019-2020**
(amounts in thousands)

| | 2019 APRIL | 2019 MAY | 2019 JUNE | 2019 JULY | 2019 AUGUST | 2019 SEPTEMBER | 2019 OCTOBER | 2019 NOVEMBER | 2019 DECEMBER | 2020 JANUARY | 2020 FEBRUARY | 2020 MARCH | 2019-2020 TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **DORMITORY AUTHORITY:** | | | | | | | | | | | | | |
| Education - All Other | $ - | $ 21 | $ - | $ 25 | $ 1 | $ - | $ 12 | $ - | $ - | $ - | $ - | $ - | $ 59 |
| Education - EXCEL | - | 2,109 | 221 | 2,703 | 2,354 | 1,566 | 789 | - | - | - | - | - | 9,742 |
| Department of Health - All Other | - | - | - | - | 51 | 3 | - | - | - | - | - | - | 54 |
| Community Enhancement Facilities Assistance Program (CEFAP) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Regional Development | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Community Capital Assistance Program (CCAP)/RESTORE | 647 | 1,183 | 11 | 788 | 309 | 590 | 242 | 368 | - | - | - | - | 4,138 |
| Multi-modal | 37 | - | - | - | - | - | - | - | - | - | - | - | 37 |
| GenNY/sis | - | - | - | - | - | - | - | - | - | - | - | - | - |
| CUNY Senior Colleges | 19,134 | 18,022 | 14,341 | 23,762 | 10,916 | 28,143 | 20,932 | 9,312 | - | - | - | - | 144,562 |
| CUNY Community Colleges | 2,965 | 2,554 | 975 | 5,101 | 780 | 5,980 | 4,606 | 3,607 | - | - | - | - | 26,568 |
| SUNY Dormitories | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Upstate Community Colleges | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Mental Health | 9,238 | 13,563 | 4,697 | 25,605 | 5,907 | 28,243 | 14,194 | 4,498 | - | - | - | - | 105,945 |
| Developmental Disabilities | 1,109 | 1,614 | 462 | 2,044 | 682 | 2,065 | 1,870 | 1,865 | - | - | - | - | 11,711 |
| Alcoholism and Substance Abuse | 158 | 274 | 190 | 302 | 304 | 671 | 162 | 233 | - | - | - | - | 2,294 |
| Brooklyn Court Officers Training Academy | 23 | 36 | - | 192 | - | 780 | 39 | 2 | - | - | - | - | 1,072 |
| **TOTAL DORMITORY AUTHORITY** | 33,311 | 39,376 | 20,897 | 60,522 | 21,304 | 68,041 | 42,846 | 19,885 | - | - | - | - | 306,182 |
| | | | | | | | | | | | | | |
| **EMPIRE STATE DEVELOPMENT CORP:** | | | | | | | | | | | | | |
| Regional Development | | | | | | | | | | | | | |
| Centers of Excellence | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Community Capital Assistance Program (CCAP) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Empire Opportunity | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Community Enhancement Facilities Assistance Program (CEFAP) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| State Facilities and Equipment | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **TOTAL EMPIRE STATE DEVELOPMENT CORP** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| | | | | | | | | | | | | | |
| **TOTAL OFF-BUDGET** | $ 33,311 | $ 39,376 | $ 20,897 | $ 60,522 | $ 21,304 | $ 68,041 | $ 42,846 | $ 19,885 | $ - | $ - | $ - | $ - | $ 306,182 |

The Division of the Budget (DOB) is responsible for organizing and presenting the above schedule of "Off-Budget Spending". Such reported disbursements are drawn from unaudited financial data provided by public authorities. Although the Office of the State Comptroller (OSC) has no reason to believe this information to be unreliable, it is important to note that these program disbursements are financed with public authority bond proceeds deposited directly into public authority accounts and all disbursements are made without any oversight by the OSC. Therefore, and pursuant to the provisions of Chapter 60, §16, of the Laws of 2006, this schedule is provided for information only.

52

**Financial Reports**

**NYS Register/December 31, 2019**

STATE OF NEW YORK
SCHEDULE OF MONTH-END TEMPORARY LOANS OUTSTANDING(*)

APPENDIX F

| SFS Fund | ACCOUNT TITLE | August 31, 2019 | September 30, 2019 | October 31, 2019 | Change | November 30, 2019 (***) |
|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ |
| 10050 | HOUSING PROGRAM FUND | | | | | |
| | **GENERAL FUND** | | | | | |
| | STATE OPERATIONS AND LOCAL ASSISTANCE | | | | | |
| | **TOTAL GENERAL FUND** | | | | | |
| | **CAPITAL PROJECT AND BOND REIMBURSABLE FUNDS** | | | | | |
| 30051 | HIGHWAY AID BRIDGE CAPITAL | 196,665,951.78 | 246,467,651.24 | 96,164,503.22 | 20,738,110.85 | 116,902,614.07 |
| 30053 | AVIATION PURPOSE ACCOUNT | | | | | |
| 30101 | REHAB&REPAIR MARITIME | | | | | |
| 30102 | D21RIVE-MARITIME | | | | | |
| 30103 | D36RIVE-CENTRAL ADMIN | | | | | |
| 30104 | RESIDENCE HALL CAMPUS LET BOND PROCEEDS | | | | | |
| 30105 | REHAB&REPAIR ALBANY | | | | | |
| 30106 | D01RIVE-ALBANY | | | | | |
| 30107 | REHAB&REPAIR BINGHAMTON | | | | | |
| 30108 | D07RIVE-BINGHAMTON | | | | | |
| 30109 | REHAB&REPAIR BUFFALO UNIVERSITY | | | | | |
| 30110 | D28RIVE-SUNY BUFFALO | | | | | |
| 30111 | REHAB&REPAIR STONYBROOK | | | | | |
| 30112 | D13RIVE-STONYBROOK | | | | | |
| 30113 | REHAB&REPAIR BROOKLYN | | | | | |
| 30114 | D14RIVE-HSC BROOKLYN | | | | | |
| 30115 | REHAB&REPAIR SYRACUSE | | | | | |
| 30116 | D15RIVE-HSC SYRACUSE | | | | | |
| 30117 | REHAB&REPAIR BROCKPORT | | | | | |
| 30118 | D20RIVE-BROCKPORT | | | | | |
| 30119 | REHAB&REPAIR BUFFALO COLLEGE | | | | | |
| 30120 | D08RIVE-SUB BUFFALO | | | | | |
| 30121 | REHAB&REPAIR CORTLAND | | | | | |
| 30122 | D04RIVE-CORTLAND | | | | | |
| 30123 | REHAB&REPAIR FREDONIA | | | | | |
| 30124 | D06RIVE-FREDONIA | | | | | |
| 30125 | REHAB&REPAIR GENESEO | | | | | |
| 30126 | D06RIVE-GENESEO | | | | | |
| 30127 | REHAB&REPAIR OLD WESTBURY | | | | | |
| 30128 | D31RIVE-OLD WESTBURY | | | | | |
| 30129 | REHAB&REPAIR NEW PALTZ | | | | | |
| 30130 | D08RIVE-NEW PALTZ | | | | | |
| 30131 | REHAB&REPAIR ONEONTA | | | | | |
| 30132 | D09RIVE-ONEONTA | | | | | |
| 30133 | REHAB&REPAIR OSWEGO | | | | | |
| 30134 | D10RIVE-OSWEGO | 18,778.22 | | 145,547.19 | 145,547.19 | 145,547.19 |
| 30135 | REHAB&REPAIR PLATTSBURGH | | | | | |
| 30136 | D11RIVE-PLATTSBURGH | | | | | |
| 30137 | REHAB&REPAIR POTSDAM | | | | | |
| 30138 | D12RIVE-POTSDAM | | | | | |
| 30139 | REHAB&REPAIR PURCHASE | | | | | |
| 30140 | D26RIVE-PURCHASE | | | | | |
| 30141 | REHAB&REPAIR FOR UTICA/ROME | | | | | |
| 30142 | D27RIVE-CAMPUS RESERVE | | | | | |
| 30143 | REHAB&REPAIR ALFRED | | | | | |
| 30144 | D22RIVE-ALFRED | | | | | |
| 30145 | REHAB&REPAIR CANTON | | | | | |
| 30146 | D23RIVE-CANTON | | | | | |
| 30147 | REHAB&REPAIR COBLESKILL | | | | | |
| 30148 | D24RIVE-COBLESKILL | | | | | |
| 30149 | REHAB&REPAIR DELHI | | | | | |
| 30150 | D25RIVE-DELHI | | | | | |
| 30151 | REHAB&REPAIR FARMINGDALE | | | | | |
| 30152 | D29RIVE-FARMINGDALE | | | | | |
| 30153 | REHAB&REPAIR MORRISVILLE | | | | | |
| 30154 | D27RIVE-MORRISVILLE | | | | | |
| 30351 | STATE PARK INFRASTRUCTURE | 79,311,976.07 | 84,939,002.69 | 83,931,487.20 | 10,091,883.87 | 94,023,371.07 |
| 30601 | CWICA IMPLEMENTATION DEC | | | | | |
| 30602 | CWICA IMPLEMENTATION STATE | | | | | |
| 30603 | CWICA IMPLEMENTATION ERDA | | | | | |
| 31506 | HAZARDOUS WASTE CLEAN UP | 145,687,134.65 | 152,839,377.84 | 160,394,842.12 | 4,403,650.86 | 164,798,490.98 |
| 31701 | YOUTH FACILITIES IMPROVEMENT | 23,426,987.41 | 24,561,924.14 | 13,789,727.98 | 747,165.36 | 14,536,893.34 |
| 31801 | HOUSING ASSISTANCE | 12,941,967.06 | 12,941,967.06 | 12,941,967.06 | | 12,941,967.06 |
| 31851 | HOUSING PROG FD-HSG TR FD CORP | 51,109,640.79 | 52,730,658.79 | | | |
| 31852 | HOUSING PROG FD AFFORD HSG CORP | 56,780,924.15 | 56,780,924.15 | 56,780,924.15 | | 56,780,924.15 |
| 31853 | HOUSING PROG FD-DEPT OF SOCIAL SERVICES | 119,908,911.98 | 135,658,911.98 | 135,658,911.98 | | 135,658,911.98 |
| 31854 | HOUSING PROG-OHFA | | | | | |
| 31951 | HIGHWAY FAC PURPOSE | 12,294,449.24 | 12,290,173.24 | 12,290,173.24 | (27,857.25) | 12,262,315.99 |

**NYS Register/December 31, 2019** | **Financial Reports**

APPENDIX F

STATE OF NEW YORK
SCHEDULE OF MONTH-END TEMPORARY LOANS OUTSTANDING(*)

| SFS Fund | ACCOUNT TITLE | August 31, 2019 | September 30, 2019 | October 31, 2019 | Change | November 30, 2019 |
|---|---|---|---|---|---|---|
| 32213 | NY RACING ACCOUNT | 153,750.00 | 153,750.00 | 153,750.00 | - | 153,750.00 |
| 32214 | CAPITAL PROJECT MISC GIFTS | | | | | |
| 32215 | IT CAPITAL FINANCING ACCT | | | | | |
| 32219 | NY ENVIRONMENTAL PROTECTION & SPILL REMEDATION | | | | | |
| 33201 | OPWDD-STATE FACILITIES PRE T299 | | | | | |
| 33202 | DSAS-COMMUNITY FACILITIES | | | | | |
| 33203 | OMH-COMMUNITY FACILITIES | 134,757,988.44 | 136,758,845.01 | 132,556,937.83 | (9,584,229.41) | 122,972,708.42 |
| 33205 | OASAS-COMMUNITY FACILITIES | 199,987,437.85 | 199,987,437.85 | 197,078,193.90 | (1,563,850.16) | 195,514,343.74 |
| 33206 | DASNY - OMH ADMIN | | | | | |
| 33207 | DASNY - OPWDD ADMIN | 2,359,597.75 | 2,359,597.75 | 2,359,597.75 | 535,741.74 | 2,895,339.49 |
| 33208 | DASNY - OASAS ADMIN | 458,493.08 | 458,493.08 | 1,295,493.08 | (411,901.68) | 883,591.20 |
| 33209 | OMH - STATE FACILITIES | 111,279,036.26 | 56,724,161.57 | 67,881,643.87 | 8,556,612.12 | 76,418,255.99 |
| 33210 | OPWDD - STATE FACILITIES | 4,549,163.38 | 4,549,163.38 | 5,575,843.38 | - | 5,575,843.38 |
| 33211 | OASAS - STATE FACILITIES | 1,025,531.74 | 0.38 | 0.38 | - | 0.38 |
| 32351 | CORR. FACILITIES CAPITAL IMPROVEMENT | | | | | |
| 32352 | DOCS-REHABILITATION PROJECTS | | | | | |
| 32353 | CORR. FACILITIES CAPITAL CLOSURE | 335,247,074.51 | 365,966,742.42 | 212,125,611.96 | 44,231,660.53 | 256,357,272.49 |
| 33001 | STORM RECOVERY ACCOUNT | 84,799,128.45 | 63,069,863.04 | 49,501,244.83 | 2,061,916.07 | 51,563,160.90 |
| | **TOTAL CAPITAL AND BOND REIMBURSABLE FUNDS** | **1,551,773,238.81** | **1,608,767,645.61** | **1,740,460,851.93** | **79,924,449.89** | **1,320,385,301.82** |
| | **STATE SPECIAL REVENUE FUNDS** | | | | | |
| 20401 | DOI-CHILD PERFORMER PROTECTION ACCOUNT | | | | | |
| 20452 | VOCATIONAL SCHOOL SUPERVISION | | | | | |
| 20501 | LOCAL GOVERNMENT RECORDS MGMT | | | | | |
| 20810 | CHILD HEALTH INSURANCE | 26,505,154.47 | 67,593,961.38 | 3,518,174.10 | 2,547,476.26 | 6,065,650.36 |
| 20816 | EPIC PREMIUM ACCOUNT | 1,527,589.70 | 7,170,180.45 | 1,186,420,072.59 | (157,702,281.68) | 1,028,717,790.91 |
| 20904 | LOTTERY EDUCATION | | 1,380,191,261.75 | | | |
| 21001 | VLT EDUCATION | | | | | |
| 21002 | ENVIR FAC CORP ADM ACCT | 3,700,045.82 | 3,752,358.56 | 3,836,597.46 | 64,463.58 | 3,901,061.04 |
| 20961 | ENCON ADM ACCT | | | | | |
| 21061 | HAZARDOUS BULK STORAGE | | | | | |
| 21084 | UTILITY ENVIRONMENTAL REGULATORY ACCOUNT | 1,672,200.00 | 1,672,200.00 | 1,672,200.00 | - | 1,672,200.00 |
| 21065 | FEDERAL GRANTS INDIRECT COST RECOVERY ACCOUNT | 2,932,029.76 | 259,790.76 | 1,171,008.63 | 621,655.15 | 1,792,364.08 |
| 21066 | ENCON-LOW LEVEL RADIOACTIVE WASTE. SITING | 3,696,016.14 | 3,828,024.49 | 4,052,537.06 | (319,765.13) | 3,732,771.93 |
| 21067 | ENCON-RECREATION | | | | | |
| 21077 | PUBLIC SAFETY RECOVERY ACCOUNT | | | | | |
| 21082 | ENVIRONMENTAL REGULATORY | 56,050,661.51 | 58,491,726.19 | 54,527,480.90 | (2,393,737.71) | 52,133,743.19 |
| 21082 | NATURAL RESOURCES ACCOUNT | 13,127,626.00 | 12,880,444.32 | 12,884,519.19 | 164,114.25 | 13,046,633.44 |
| 21084 | MINED LAND RECLAMATION ACCT | | | | | |
| 21089 | GREAT LAKES RESTORATION INITIATIVE | | | | | |
| 21201 | AUDIT AND CONTROL OIL SPILL | | | 68.64 | | |
| 21202 | HEALTH DEPT OIL SPILL | 457.93 | | | 15,602.59 | 15,971.23 |
| 21203 | DEPT OF ENVIRONMENTAL CONSERVATION OIL SPILL | | 96.00 | | 3,545.60 | 3,545.60 |
| 21204 | OIL SPILL COMPENSATION | | | | 435,038.87 | 435,038.87 |
| 21205 | LICENSE FEE SURCHARGES | | | | | |
| 21450 | PUBLIC TRANSPORTATION SYSTEMS | 30,629,345.74 | 30,334,012.87 | 24,893,143.96 | 131,520,653.70 | 131,523,653.70 |
| 21451 | METROPOLITAN MASS TRANSPORTATION | | 4,339,988.21 | 4,440,996.10 | 3,536,627.30 | 28,429,771.26 |
| 21452 | OPERATING PERMIT PROGRAM | | | | (1,004,325.65) | 3,436,670.45 |
| 21454 | MOBILE SOURCE | | | | | |
| 21902 | HEALTH-HAPS | | | | | |
| 21905 | THRUWAY AUTHORITY ACCT | 11,103,420.41 | 11,590,323.15 | 8,045,774.92 | 4,316,690.56 | 12,364,465.48 |
| 21907 | MENTAL HYGIENE PROGRAM | | | | | |
| 21910 | MENTAL HYGIENE PATIENT INCOME ACCOUNT | 548,158.80 | 686,002.30 | 234,523.16 | 233,684.29 | 468,407.45 |
| 21911 | FINANCIAL CONTROL BOARD | 1,826,882.24 | 1,149,544.34 | 1,819,601.98 | 479,014.58 | 2,298,616.56 |
| 21912 | RACING REGULATION ACCOUNT | | | | | |
| 21913 | NY METROPOLITAN TRANSPORTATION COUNCIL | | | | | |
| 21937 | SU DORM INCOME REIMBURSE | 483,279.38 | 47,765.20 | 165,757.35 | 23,943.70 | 209,701.05 |
| 21945 | CRIMINAL JUSTICE IMPROVEMENT | | | | | |
| 21959 | ENV LAB FEE | | | | | |
| 21961 | TRAINING, MANAGEMENT AND EVALUATION ACCOUNT | | | | | |
| 21962 | CLINICAL LAB FEE | 253,662.62 | 403,825.51 | 567,885.41 | (69,272.86) | 498,612.55 |
| 21978 | INDIRECT COST RECOVERY | 10,936,896.75 | 11,107,514.67 | 9,457,941.62 | 837,667.20 | 10,295,608.82 |
| 21979 | HIGH SCHOOL EQUIVALENCY PROGRAM | 2,913,105.60 | | | | |
| 21989 | MULTI - AGENCY TRAINING ACCOUNT | | | | | |
| 22003 | BELL JAR COLLECTION ACCOUNT | | | | | |
| 22004 | INDUSTRY AND UTILITY SERVICE | | | | | |
| 22006 | REAL PROPERTY DISPOSITION | | | | | |
| 22009 | PARKING ACCOUNT | | | | | |
| 22003 | COURTS SPECIAL GRANTS | | | | | |
| 22009 | ASBESTOS SAFETY TRAINING | 21,410.53 | 16,353.19 | | | |
| 22017 | CAMP SMITH BILLETING ACCOUNT | 15,664.15 | | | 1,599.03 | 1,599.03 |
| 22032 | BATAVIA SCHOOL FOR THE BLIND | 10,667,975.36 | 12,114,628.14 | 12,876,861.42 | 993,226.05 | 13,870,087.47 |
| 22034 | INVESTMENT SERVICES | | | | | |

54

**Financial Reports**  NYS Register/December 31, 2019

APPENDIX F

## STATE OF NEW YORK
### SCHEDULE OF MONTH-END TEMPORARY LOANS OUTSTANDING(*)

| SFS Fund | ACCOUNT TITLE | August 31, 2019 | September 30, 2019 | October 31, 2019 | Change | November 30, 2019 (**) |
|---|---|---|---|---|---|---|
| 22038 | SURPLUS PROPERTY ACCOUNT | 589,657.40 | 871,855.38 | 351,556.01 | 266,791.28 | 618,347.29 |
| 22039 | FINANCIAL OVERSIGHT | 84,431,331.99 | 83,896,282.10 | 85,360,969.11 | 1,391,979.24 | 86,752,888.35 |
| 22046 | REGULATION INDIAN GAMING | 3,137,352.92 | 4,099,848.07 | 4,618,525.58 | 794,754.51 | 5,413,280.09 |
| 22053 | ROME SCHOOL FOR THE DEAF | 3,103,098.50 | 3,024,220.92 | 2,896,560.49 | (819,998.22) | 2,076,562.27 |
| 22054 | DSF-SEIZED ASSETS | 19,836,577.83 | 22,870,564.08 | 23,552,984.95 | (374,701.71) | 23,178,283.24 |
| 22055 | ADMINISTRATIVE ADJUDICATION | 881,677.31 | 1,007,783.91 | 1,159,446.58 | 220,811.73 | 1,380,258.31 |
| 22056 | FEDERAL SALARY SHARING | - | - | - | - | - |
| 22062 | NYC ASSESSMENT ACCT | 6,876,207.49 | 6,452,098.82 | 6,539,092.69 | 258,564.55 | 6,797,657.24 |
| 22063 | CULTURAL EDUCATION ACCOUNT | 15,035,221.45 | 15,200,349.81 | 15,583,211.17 | 166,796.61 | 15,750,007.78 |
| 22078 | LOCAL SERVICE ACCOUNT | - | - | - | - | - |
| 22085 | DHCR MORTGAGE SERVICING | 6,349,815.14 | 6,856,688.40 | 7,607,717.18 | 216,983.07 | 7,824,700.25 |
| 22086 | HOUSING INDIRECT COST RECOVERY | - | - | - | - | - |
| 22100 | DHCR-HOUSING CREDIT AGENCY APPLY FEE | - | - | - | - | - |
| 22130 | LOW INCOME HOUSING CREDIT MONITORING | - | - | - | - | - |
| 22135 | EFC-CORPORATION ADMINISTRATION | 170,390.02 | 423,546.55 | - | 227,840.84 | 227,840.84 |
| 22144 | MONTROSE VETERANS HOME | 72,308.80 | 130,193.47 | 198,335.89 | (125,543.29) | 72,792.90 |
| 22151 | DEFERRED COMPENSATION ADMIN | 5,118,243.39 | 8,392,107.17 | - | - | - |
| 22156 | FEDERAL REVENUE OTHER - NYC | - | - | - | - | - |
| 22158 | RENT REVENUE | - | - | - | - | - |
| 22158 | TAX REVENUE ARREARAGE ACCOUNT | 6,648.93 | 30,701.35 | 77,716.83 | 76,296.53 | 154,015.36 |
| 22240 | NYS MEDICAL INDEMNITY FUND ACCOUNT | 20,382,045.21 | 20,422,454.72 | 20,460,053.90 | 34,908.72 | 20,494,962.62 |
| 22854 | SIU NON-RESIDENT REV. OFFSET | - | - | - | - | - |
| 22751 | LAKE GEORGE PARK TRUST FUND | - | - | - | - | - |
| 22801 | STATE POLICE MV ENFORCE | - | - | - | - | - |
| 22801 | DOT - HIGHWAY SAFETY PRGM | 13,651,747.04 | 13,935,792.51 | 14,236,534.72 | 142,191.87 | 14,378,726.59 |
| 23102 | DOH DRINKING WATER PROGRAM | 5,350,949.70 | 5,350,949.70 | 5,350,949.70 | - | 5,350,949.70 |
| 23151 | NYCOG OPERATING OFFSET | - | - | - | - | - |
| 22701 | COMMERCIAL GAMING REVENUE | 42,558,652.02 | 45,011,285.29 | 48,600,615.64 | 2,361,409.19 | 50,962,024.43 |
| 23702 | COMMERCIAL GAMING REGULATION | 15,372,223.34 | 15,670,129.90 | 16,062,100.53 | 423,351.63 | 16,485,452.16 |
| 23800 | INTERSTATE RECIPROCITY FOR POST SEC DIST ED | - | - | - | - | - |
| 23801 | HIGHWAY USE TAX ADMIN | - | - | - | - | - |
| 23806 | NYS SECURE CHOICE ADMIN | - | - | - | - | - |
| 24951 | FANTASY SPORTS ADMINISTRATION | - | - | - | - | - |
| | **TOTAL STATE SPECIAL REVENUE FUNDS** | **421,706,751.36** | **1,861,286,893.05** | **1,583,256,047.76** | **(10,420,433.77)** | **1,572,835,613.99** |
| | **FEDERAL FUNDS** | | | | | |
| 25000-25099 | FEDERAL USDA FOOD AND NUTRITION SERVICES FUND | 12,865,286.82 | 14,469,282.49 | 11,174,513.06 | 10,863,734.28 | 22,139,247.34 |
| 25100-25199 | FEDERAL HEALTH AND HUMAN SERVICES FUND | 263,272,303.41 | 454,714,190.56 | 531,299,498.93 | (319,962,586.71) | 211,308,004.22 |
| 25200-25249 | FEDERAL EDUCATION GRANTS FUND | 33,268,518.43 | 36,449,057.51 | 38,252,988.95 | 675,892.09 | 38,928,881.04 |
| 25250-25299 | FEDERAL DHHS BLOCK GRANTS | 442,973,970.08 | 441,785,088.97 | 451,777,499.59 | (33,666,372.36) | 418,091,127.23 |
| 25300-25899 | FEDERAL OPERATING GRANTS FUND | 8,756,991.66 | 8,756,991.66 | 8,756,991.66 | - | 8,756,991.66 |
| 31351 | MILITARY AND NAVAL AFFAIRS | 440,347,441.47 | 421,863,466.66 | 506,738,467.47 | (23,832,841.68) | 484,905,655.79 |
| 31354 | DEPARTMENT OF TRANSPORTATION | 127,963,624.40 | 126,754,402.18 | 85,325,393.37 | (23,734,950.69) | 61,590,442.68 |
| 31935-31949 | FEDERAL CAPITAL PROJECTS FUND (ALL OTHER) | 11,521,293.40 | 7,767,661.06 | 13,659,237.32 | (1,422,769.41) | 12,236,467.91 |
| 25500-25949 | UNEMPLOYMENT INSURANCE ADMINISTRATION | 402,586.51 | 487,090.49 | 360,610.99 | (42,124.60) | 318,486.99 |
| 25950 | FEDERAL UNEMPLOYMENT INS OCCUPATIONAL TRAINING | - | - | - | 3,471,101.79 | - |
| 26001-26049 | FEDERAL EMPLOYMENT AND TRAINING GRANTS | 2,942,301.41 | 2,441,537.72 | 2,301,124.68 | | 573,397.22 |
| | **TOTAL FEDERAL FUNDS** | **1,343,842,587.59** | **1,517,490,825.30** | **1,651,572,955.62** | **(361,307,978.15)** | **1,290,264,977.47** |
| | **AGENCY FUNDS** | | | | | |
| 60201 | EMPLOYEES HEALTH INSURANCE ACCT | - | - | - | - | - |
| 60901 | MMIS - STATE AND FEDERAL | - | - | - | - | - |
| | **TOTAL AGENCY FUNDS** | | | | | |
| | **ENTERPRISE FUND** | | | | | |
| 50318 | OGS CONVENTION CENTER ACCOUNT | 379,061.04 | 384,808.82 | 370,140.91 | (24,919.12) | 345,221.79 |
| 50327 | EMPIRE PLAZA GIFT SHOP | 246,132.52 | 235,078.44 | 281,160.31 | 23,838.13 | 304,988.44 |
| | **TOTAL ENTERPRISE FUND** | **625,193.56** | **618,487.26** | **651,301.22** | **(1,080.99)** | **650,210.23** |
| | **INTERNAL SERVICE FUNDS** | | | | | |
| 55001 | CENTRALIZED SERVICES-FLEET MGMT | - | - | - | - | - |
| 55002 | CENTRALIZED SERVICES-DATA PROCESSING | 1,446,245.67 | 1,389,170.05 | 1,386,750.47 | (61,931.45) | 1,324,819.02 |
| 55003 | CENTRALIZED SERVICES-PRINTING | - | - | - | - | - |
| 55004 | CENTRALIZED SERVICES-REAL PROPERTY-LABOR | - | - | - | - | - |
| 55005 | CENTRALIZED SERVICES-DONATED FOODS | - | - | - | - | - |
| 55006 | CENTRALIZED SERVICES-PERSONAL PROPERTY | - | - | - | - | - |
| 55007 | CENTRALIZED SERVICES-CONSTRUCTION SERVICES | 2,783,124.27 | 3,082,386.03 | 3,187,134.90 | 329,378.40 | 3,516,513.30 |
| 55008 | CENTRALIZED SERVICES-PASNY | 10,307,985.54 | 10,601,662.24 | 10,548,852.67 | 2,039,704.69 | 12,588,557.36 |
| 55009 | CENTRALIZED SERVICES-ADMIN SUPPORT | 11,418,997.31 | 12,341,112.22 | 16,288,388.26 | (4,016,339.21) | 12,271,049.05 |
| 55010 | CENTRALIZED SERVICES-DESIGN AND CONSTR | 4,966,690.09 | 4,715,716.82 | 2,296,083.91 | (2,296,083.91) | - |
| 55011 | CENTRALIZED SERVICES-INSURANCE | - | - | - | - | - |
| 55012 | CENTRALIZED SERVICES-SECURITY CARD ACCESS | 147,038.27 | 176,773.30 | 173,250.30 | (15,259.00) | 157,991.30 |
| 55013 | CENTRALIZED SERVICES-COPS | - | - | - | - | - |

55

**NYS Register/December 31, 2019** | **Financial Reports**

APPENDIX F

STATE OF NEW YORK
SCHEDULE OF MONTH-END TEMPORARY LOANS OUTSTANDING(*)

| SFS Fund | ACCOUNT TITLE | August 31, 2019 | September 30, 2019 | October 31, 2019 | Change | November 30, 2019 |
|---|---|---|---|---|---|---|
| 55014 | CENTRALIZED SERVICES-FOOD SERVICES | | | | | |
| 55015 | CENTRALIZED SERVICES-HOMER FOLKS | | | | | |
| 55016 | CENTRALIZED SERVICES-MMICS | 1,492,621.11 | 1,734,559.73 | 1,608,643.92 | (42,724.13) | 1,565,919.79 |
| 55017 | DOWNSTATE WAREHOUSE | 346,737.96 | 424,911.57 | 393,527.51 | (144,889.06) | 248,638.45 |
| 55018 | BUILDING ADMINISTRATION | | | | 3,954,819.15 | 3,954,819.15 |
| 55019 | LEASE SPACE INITIATIVE | | | | | |
| 55020 | OGS ENTERPRISE CONTRACTING ACCT | 53,860,027.83 | 55,408,261.05 | 56,697,173.04 | 4,363,906.67 | 61,261,079.71 |
| 55021 | NYS MEDIA CENTER | 6,558,111.51 | 6,760,906.74 | 7,146,143.73 | (168,503.38) | 6,977,640.35 |
| 55022 | BUSINESS SERVICES CENTER | 11,130,490.59 | 13,129,843.36 | 16,002,866.11 | 1,915,627.94 | 17,918,524.05 |
| 55052 | ARCHIVES RECORD MGMT I.S. | | | | | |
| 55053 | FEDERAL SINGLE AUDIT | | | | | |
| 55056 | CIVIL SERVICE EHS OCCUP HEALTH PROG | | | | | |
| 55057 | BANKING SERVICES ACCOUNT | 7,959.96 | 78,721.59 | 127,926.02 | (116,879.63) | 11,046.39 |
| 55058 | CULTURAL RESOURCE SURVEY | 1,784,918.30 | 2,118,430.68 | 1,590,562.74 | 210,310.71 | 1,800,873.45 |
| 55059 | NEIGHBOR WORK PROJECT | 11,121,992.25 | 11,131,337.10 | 11,170,968.49 | (212,569.85) | 10,958,347.64 |
| 55060 | AUTOMATOPRINT CHARGEBACKS | 3,246,884.37 | 470,917.46 | 2,187,094.16 | 1,191,657.01 | 3,378,751.17 |
| 55061 | OPT NYT ACCT | 2,317,678.02 | 2,260,055.47 | 2,239,823.23 | | 2,239,820.23 |
| 55062 | DATA CENTER ACCOUNT | 45,381,789.50 | 45,381,789.50 | 45,381,789.50 | (433,821.73) | 44,947,967.77 |
| 55066 | CYBER SECURITY INTRUSION ACCT | 1,261,584.27 | 1,261,584.27 | 1,261,584.27 | | 1,261,584.27 |
| 55067 | DOMESTIC VIOLENCE GRANT | 189,607.57 | 94,639.50 | 113,628.58 | (20,035.66) | 93,592.92 |
| 55069 | CENTRALIZED TECHNOLOGY SERVICES | 54,759,262.89 | 53,848,609.23 | 58,830,619.65 | (4,920,616.27) | 53,910,003.38 |
| 55071 | LABOR CONTACT CENTER ACCT | 536,194.48 | 152,368.24 | 358,012.60 | 280,372.99 | 638,385.59 |
| 55072 | HUMAN SERVICES CONTACT CNTR ACCT | | 666,689.36 | 1,082,430.62 | (1,082,430.62) | |
| 55073 | TAX CONTACT CENTER ACCT | | | | | |
| 55074 | CIVIL RECOVERIES ACCT | | | | | |
| 55251 | EXECUTIVE DIRECTION INTERNAL AUDIT | 15,221,387.23 | 11,146,308.44 | 11,591,737.73 | 235,070.46 | 11,826,808.19 |
| 55252 | CIO INFORMATION TECHNOLOGY CENTRALIZED SERVICES | 10,755,776.25 | 40,222,262.84 | 28,998,668.41 | 2,506,704.53 | 31,505,372.94 |
| 55300 | HEALTH INSURANCE INTERNAL SERVICE | 37,616,947.48 | 14,776,570.77 | 15,525,716.40 | 558,552.09 | 15,884,268.49 |
| 55301 | CIVIL SERVICE EMPLOYEE BENEFITS DIV ADM | 14,481,302.58 | 1,078,644.74 | 1,253,352.12 | 109,749.28 | 1,363,101.40 |
| 55350 | CORR INDUSTRIES INTERNAL SERVICE | 930,837.40 | 31,299,237.49 | 32,886,060.68 | 1,107,994.70 | 33,974,055.38 |
| | | 29,668,490.42 | | | | |
| | **TOTAL INTERNAL SERVICE FUNDS** | **333,736,083.72** | **325,615,478.79** | **330,280,635.02** | **5,296,803.92** | **335,576,836.94** |

| | | August 31, 2019 | September 30, 2019 | October 31, 2019 | Change | November 30, 2019 |
|---|---|---|---|---|---|---|
| | **GRAND TOTAL—TEMPORARY LOANS OUTSTANDING:** | $ 3,651,678,456.64 | $ 5,313,979,320.61 | $ 4,806,221,791.55 | $ (286,506,149.10) | $ 4,519,715,642.45 |

(*) Temporary Loans are authorized pursuant to Subdivision 5 of Section 4 of the State Finance Law and Chapter 59, Part TTT, Section 1, of the Laws of 2019-20.
The loans represent authorizations made by the Legislature to allow certain funds/accounts to make appropriated payments regardless of the fund (cash) balance.
Such loans vary from time to time. The State's Short-Term Investment Pool (STIP) and are intended to satisfy temporary cash shortfalls whenever scheduled disbursements
exceed available revenues during the fiscal year.  Generally, temporary loans are repaid from the first cash receipts of the fund or account; however, in some cases actual
revenues are not sufficient to repay all loans made to the fund or account and a transfer from the General Fund "Repayment of Receivables" appropriation is approved by the Budget Director.
The balances reported are the actual fund balances as of the last day of the reporting month and do not include post-closing adjustments.
Please refer to Schedule 1 for a detailed analysis of the "reported" cash balances of the fund group.

(**) Temporary loans to federal funds are typically reimbursed within 2-3 days.  Such loans are made pursuant to federal regulations which require the State to disburse funds prior to
making a reimbursement claim from the U.S. Treasury.

(***) Per Section 72 of the State Finance Law, the General Fund includes the Local Assistance Fund (10000) and State Purpose Fund (10050).

56

**Financial Reports**                                                   **NYS Register/December 31, 2019**

APPENDIX G

STATE OF NEW YORK
DEDICATED INFRASTRUCTURE INVESTMENT FUND(*)
STATEMENT OF RECEIPTS AND DISBURSEMENTS
FISCAL YEAR 2019-2020

| | 2019 APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | 2020 JANUARY | FEBRUARY | MARCH | 8 Months Ended November 30, 2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **OPENING CASH BALANCE** | $ 16,298,833 | $ 228,595,088 | $ 67,983,418 | $ 126,634,302 | $ 99,294,725 | $ 98,280,268 | $ 131,509,913 | $ 78,080,573 | - | - | - | - | $ 16,298,833 |
| **RECEIPTS:** | | | | | | | | | | | | | |
| Transfers from General Fund (**) | 250,000,000 | - | 200,000,000 | 50,000,000 | 70,000,000 | 100,000,000 | 100,000,000 | 70,000,000 | - | - | - | - | 840,000,000 |
| **Total Receipts** | 250,000,000 | - | 200,000,000 | 50,000,000 | 70,000,000 | 100,000,000 | 100,000,000 | 70,000,000 | - | - | - | - | 840,000,000 |
| **DISBURSEMENTS:** | | | | | | | | | | | | | |
| Affordable and Homeless Housing | - | 1,460,000 | 18,258,060 | - | 1,574,403 | 25,407,411 | 1,811,458 | 78,588,285 | - | - | - | - | 127,099,647 |
| Broadband Initiative | 1,906,857 | 22,713,440 | 5,454,209 | 12,367,387 | 1,906,302 | 6,084,561 | 13,381,338 | 770,343 | - | - | - | - | 64,583,435 |
| Downtown Revitalization | - | - | 518,406 | 151,311 | 191,511 | 65,445 | 192,519 | 377,898 | - | - | - | - | 1,464,878 |
| Health Care / Hospital Initiatives (***) | 1,378,741 | 66,900,227 | 2,205,139 | 5,379,040 | 1,033,462 | 2,833,386 | 2,108,372 | (26,687,855) | - | - | - | - | 55,207,562 |
| Empire State Poverty Reduction Initiatives | 1,174,678 | 643,317 | 1,630,974 | 1,884,546 | 638,637 | 2,373,357 | 1,747,976 | 968,069 | - | - | - | - | 11,091,554 |
| Information Technology/Infrastructure for Behavioral Sciences | - | - | - | - | - | - | - | - | - | - | - | - | 1,762,505 |
| Infrastructure Improvements | - | 298,303 | 597,554 | 604,723 | 62,372 | 3,874 | 215,879 | - | - | - | - | - | 1,782,705 |
| Jacob Javits Center Expansion | - | - | 87,959,899 | - | - | - | 77,053,217 | - | - | - | - | - | 165,013,116 |
| Life Sciences Initiative | - | - | - | - | 500,000 | 4,420 | - | - | - | - | - | - | 504,420 |
| Municipal Restructuring / Consolidation Competition | 1,257,796 | 1,322,544 | 884,297 | 584,983 | 1,230,887 | 68,306 | 161,331 | 1,527,320 | - | - | - | - | 7,037,479 |
| Penn Station Access | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Resiliency, Mitigation, Security and Emergency Response | 32,703 | 4,101,595 | 100,755 | 8,723 | (963) | - | (14,140) | 4,191 | - | - | - | - | 4,228,683 |
| Southern Tier / Hudson Valley Farm Initiative | 10,000 | 73,340 | 4,871 | 20,000 | 173,311 | - | 1,277,455 | - | - | - | - | - | 1,565,168 |
| Thruway Stabilization Program | 15,698,205 | 29,132,867 | 20,930,846 | 42,056,113 | 40,057,748 | 25,685,242 | 42,024,591 | 40,225,996 | - | - | - | - | 294,412,808 |
| Transformative Economic Development Projects | 5,122,887 | 8,707,914 | 1,701 | 4,462,613 | 2,754,194 | 2,500,000 | 1,104 | 3,107,627 | - | - | - | - | 20,668,050 |
| Transportation Capital Plan | - | - | - | (3,826) | - | - | - | - | - | - | - | - | (3,826) |
| Upstate Revitalization Program | 10,533,868 | 25,249,723 | 3,102,625 | 9,791,754 | 11,923,583 | 1,728,351 | 13,468,442 | 9,600,000 | - | - | - | - | 85,696,275 |
| **Total Disbursements** | 37,703,745 | 160,611,670 | 141,349,116 | 77,339,577 | 71,014,457 | 66,770,355 | 153,429,340 | 108,521,712 | - | - | - | - | 816,739,972 |
| **OPERATING TRANSFERS:** | | | | | | | | | | | | | |
| Transfers to General Fund | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Transfers** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Disbursements and Transfers** | 37,703,745 | 160,611,670 | 141,349,116 | 77,339,577 | 71,014,457 | 66,770,355 | 153,429,340 | 108,521,712 | - | - | - | - | 816,739,972 |
| **CLOSING CASH BALANCE** | $ 228,595,088 | $ 67,983,418 | $ 126,634,302 | $ 99,294,725 | $ 98,280,268 | $ 131,509,913 | $ 78,080,573 | $ 39,558,861 | $ - | $ - | $ - | $ - | $ 39,558,861 |

(*)   Fund created pursuant to Chapter 60, Laws of 2015-16, Part H and SFL § 93-a

(**)   Pursuant to Section 93(b) of the State Finance Law

(***)   November disbursement amount includes a partial repayment of loan pursuant to Public Health Law § 2815.

57