UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE on behalf of herself and her minor child; JANE BOE, Sr. on behalf of herself and her minor child; JOHN COE, Sr. and JANE COE, Sr. on behalf of themselves and their minor children; JOHN FOE, Sr. on behalf of himself and his minor child; JANE GOE, Sr. on behalf of herself and her minor child; JANE LOE on behalf of herself and her medically fragile child; JANE JOE on behalf of herself and her medically fragile child; CHILDRENS HEALTH DEFENSE, and all others similarly situated, | Docket No.    20-CV-0840 (BKS) (CFH) |

Plaintiffs,

-against-

HOWARD ZUCKER, in his official capacity as Commissioner of Health for the State of New York; ELIZABETH RAUSCH-PHUNG, M.D., in her official capacity as Director of the Bureau of Immunizations at the New York State Department of Health; the NEW YORK STATE DEPARTMENT OF HEALTH; THREE VILLAGE CENTRAL SCHOOL DISTRICT; CHERYL PEDISICH, acting in her official capacity as Superintendent, Three Village Central School District; CORINNE KEANE, acting in her official capacity as Principal Paul J. Gelinas Jr. High School, Three Village Central School District; LANSING CENTRAL SCHOOL DISTRICT; CHRIS PETTOGRASSO, acting in her official capacity as Superintendent, Lansing Central School District; CHRISTINE REBERA, acting in her offical capacity as Principal, Lansing Middle School, Lansing Central School District; LORRI WHITEMAN, acting in her official capacity as Principal, Lansing Elementary School, Lansing Central School District; PENFIELD CENTRAL SCHOOL DISTRICT; DR. THOMAS PUTNAM, acting in his official capacity as Superintendent, Penfield Central School District; SOUTH HUNTINGTON SCHOOL DISTRICT; DR. DAVID P. BENNARDO, acting in his official capacity as Superintendent, South Huntington School District; BR. DAVID MIGLIORINO, acting in his official capacity as Principal, St. Anthony's High School, South Huntington

School District; ITHACA CITY SCHOOL DISTRICT; DR.
LUVELLE BROWN, acting in his official capacity as
Superintendent, Ithaca City School District; SUSAN
ESCHBACH, acting in her official capacity as Principal,
Beverly J. Martin Elementary School, Ithaca City School
Distrcit; SHENENDEHOWA CENTRAL SCHOOL
DISTRICT; DR L. OLIVER ROBINSON, acting in his
official capacity as Superintendent, Shenedehowa Central
School District; SEAN GNAT, acting in his official capacity
as Principal, Koda Middle School, Shenendehowa Central
School District; ANDREW HILLS, acting in his official
capacity as Principal, Arongen Elementary School,
Shenendehowa Central School District; COXSACKIE-
ATHENS SCHOOL DISTRICT; RANDALL SQUIER,
Superintendent, acting in his official capacity as
Superintendent, Coxsackie-Athens School District; FREYA
MERCER, acting in her official capacity as Principal,
Coxsackie Athens High School, Coxsackie-Athens School
District; ALBANY CITY SCHOOL DISTRICT;
KAWEEDA G. ADAMS, acting in her official capacity as
Superintendent, Albany City School District; MICHAEL
PAOLINO, acting in his official capacity as Principal,
William S. Hackett Middle School, Albany City School
District; and all others similarly situated,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**SOKOLOFF STERN LLP**
ADAM I. KLEINBERG
CHELSEA WEISBORD (pending admission)
*Attorneys for Defendants*
*South Huntington Union Free School District*
*s/h/a South Huntington School District, David*
*P. Bennardo, Three Village Central School*
*District, Cheryl Pedisich, Corinne Keane,*
*Ithaca City School District, Dr. Luvelle Brown,*
*Susan Eschbach, Albany City School District,*
*Kaweeda G. Adams, and Michael Paolino*

ii

179 Westbury Avenue
Carle Place, NY 11514
(516) 334-4500

-and-

**JOHNSON & LAWS, LLC**
GREGG T. JOHNSON
APRIL LAWS
LORAINE JELINEK
646 Plank Road, Suite 205
Clifton Park, NY 12065
(518) 490-6428

iii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................................1

STATEMENT OF FACTS ...............................................................................................................2

ARGUMENT ................................................................................................................................7

    POINT I
    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS .................7

    POINT II
    PLAINTIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES ...................................9

    POINT III
    PLAINTIFFS CANNOT SUSTAIN A SUBSTANTIVE DUE PROCESS CLAIM.......................................14

    POINT IV
    PLAINTIFFS CANNOT STATE A PARENTAL RIGHTS CLAIM .........................................16

    POINT V
    PLAINTIFFS CANNOT STATE AN INFORMED CONSENT CLAIM....................................18

    POINT VI
    PLAINTIFFS CANNOT STATE A RIGHT TO A FREE PUBLIC EDUCATION CLAIM ...........................20

    POINT VII
    PLAINTIFFS' SECTION 504 CLAIMS FAIL AS A MATTER OF LAW .................................21

    POINT VIII
    CHD LACKS STANDING TO STATE A CLAIM ...........................................................22

    POINT IX
    THE COURT SHOULD SEVER ANY REMAINING CLAIMS AGAINST THE MOVING
    DEFENDANTS AND TRANSFER VENUE TO THE EASTERN DISTRICT OF NEW YORK
    FOR THOSE REMAINING AGAINST THREE VILLAGE AND SOUTH HUNTINGTON ..........................22

        A.  SEVERANCE OF CLAIMS IS PROPER ................................................................22

        B.  TRANSFER OF VENUE IS PROPER .....................................................................23

CONCLUSION ...........................................................................................................................25

i

# TABLE OF AUTHORITIES

CASES

*American Mining Congress v. EPA*,
   907 F.2d 1179 (D.C. Cir. 1990) .................................................................................................19

*Bano v. Union Carbide Corp.*,
   361 F.3d 696 (2d Cir. 2004) ......................................................................................................22

*Barmore v. Aidala*,
   419 F. Supp. 2d 193 (N.D.N.Y. 2005) .........................................................................................8

*Booker v. Board of Education, Baldwinsville Cent. Sch. Dist.*,
   238 F. Supp. 2d 469 (N.D.N.Y. 2002) ......................................................................................7, 8

*Boone v. Boozman*,
   217 F.Supp.2d 938 (E.D.Ark. 2002) .........................................................................................17

*Bullock v. Cooley*,
   225 N.Y. 566 (1919) .................................................................................................................10

*Castanza v. Town of Brookhaven*,
   700 F.Supp.2d 277 (E.D.N.Y. 2010) ...........................................................................................8

*Caviezel v. Great Neck Pub. Sch.*,
   500 F. App'x 16 (2d Cir. 2012) .................................................................................................15

*Cnty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998) .................................................................................................................15

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) .................................................................................................................14

*Cox v. Warwick Valley Cent. Sch. Dist.*,
   654 F.3d 267 (2d Cir. 2011) ......................................................................................................16

*Cruzan v. Dir., Mo. Dep't of Health*,
   497 U.S. 261 (1990) .............................................................................................................18, 19

*D.A.B. v. N.Y.C. Dept. of Educ.*,
   45 F.Supp.3d 400 (S.D.N.Y. 2014) ...........................................................................................21

*Donohue v. Copiague Union Free Sch. Dist.*,
   47 N.Y.2d 440, 418 N.Y.S.2d 375 (1979) ................................................................................9, 10

*Escobar v. City of New York*,
 No. 05-cv-3030-ENV-CLP, 2007 WL 1827414 (E.D.N.Y. 2007) ...................................8

*Federico v. Bd. of Educ. of Pub. Schs. of Tarrytown*,
 955 F. Supp. 194 (S.D.N.Y. 1997) ....................................................................12

*Frank v. Relin*,
 1 F.3d 1317 (2d Cir. 1993) ...............................................................................8

*Garcia v. N.Y.C. Dep't of Health & Mental Hygiene*,
 31 N.Y.3d 601 (2018).......................................................................................21

*Garcia v. San Antonio Metropolitan Transit Authority*,
 469 U.S. 528 (1985) ........................................................................................19

*Hachamovitch v. DeBuono*,
 159 F.3d 687 (2d Cir. 1998) .............................................................................13

*Hafer v. Melo*,
 112 S. Ct. 358 [1991]........................................................................................8

*Hightower v. Veitch*,
 2020 WL 397818) (N.D.N.Y. 2020) ..................................................................8

*Hoffman v. Bd. of Educ. of City of N.Y.*,
 49 N.Y.2d 121, 424 N.Y.S.2d 376 (1979)....................................................11, 12

*Hulett v. City of Syracuse*,
 253 F. Supp. 3d 462 (N.D.N.Y. 2017).................................................................7

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
 419 F.Supp.2d 395 (S.D.N.Y. 2005) .................................................................25

*Jeffes v. Barnes*,
 20 F.Supp.2d 404 (N.D.N.Y. 1998).....................................................................7

*Kentucky v. Graham*,
 473 U.S. 159 (1985) ..........................................................................................7

*Laurel Hill Cemetery v. San Francisco*,
 216 U.S. 358 (1910) ........................................................................................14

*Liberman v. Van de Carr*,
 199 U.S. 552 (1905) ........................................................................................14

iii

*Liberty Mut. Ins. Co. v. Hurlbut*,
  585 F.3d 639 (2d Cir. 2009) ........................................................................................................13

*Lynch v. Clarkstown Cent. Sch. Dist.*,
  155 Misc.2d 846 (Sup. Ct., Rockland Cty. 1992) ........................................................................18

*Mair v. Good*,
  325 F. Supp. 1268 (N.D.N.Y. 1971)............................................................................................14

*Manza v. Newhard*,
  No. 11–2256–cv, 2012 WL 917286 (2d Cir. 2012)......................................................................12

*Marshall v. United States*,
  414 U.S. 417 (1974) .....................................................................................................................19

*Maus v. Wappingers Cent. Sch. Dist.*,
  688 F.Supp.2d 302(S.D.N.Y. 2010) ..............................................................................................8

*McCartney v. Austin*,
  31 A.D.2d 370, 298 N.Y.S.2d 26 (3d Dept. 1969) .......................................................................15

*Monell v. New York City Dept. of Social Services*,
  436 U.S. 658 (1978) ...................................................................................................................7, 8

*N.Y. State Citizens' Coal. For Children v. Velez*,
  629 F.App'x 92 (2d Cir. 2015).....................................................................................................22

*Natale v. Town of Ridgefield*,
  170 F.3d 258 (2d Cir. 1999) .........................................................................................................15

*New York City School Bds. Assn. v Board of Educ.*,
  39 N.Y.2d 111, 383 N.Y.S.2d 208 (1976)....................................................................................11

*Nnebe v. Daus*,
  644 F.3d 147 (2d Cir. 2011) .........................................................................................................22

*Ocean Hill-Brownsville Governing Bd. v. Board of Educ.*,
  23 N.Y.2d 483, 297 N.Y.S.2d 568 (1969)....................................................................................12

*Oram v. SoulCycle LLC*,
  979 F.Supp.2d 498 (S.D.N.Y. 2013) ............................................................................................23

*Pena v. DePrisco*,
  432 F.3d 98 (2d Cir. 2005) ...........................................................................................................15

iv

*Perros v. County of Nassau*,
  238 F.Supp.3d 395, 402 (E.D.N.Y. 2017) ......................................................................8

*Phillips v. City of New York*,
  775 F.3d 538 (2d Cir. 2015) ...............................................................................14, 15, 20

*Prince v. Massachusetts*,
  321 U.S. 158 (1944) ......................................................................................................16

*Rindfleisch v. Gentiva Health Sys., Inc.*,
  752 F.Supp.2d 246 (E.D.N.Y. 2010) ...........................................................................24

*Rodriguez v. Winski*,
  2020 WL 1188462 (S.D.N.Y. 2020) .............................................................................22

*Rubeor v. Town of Wright*,
  191 F.Supp.3d 198 (N.D.N.Y. 2016).............................................................................7

*S.C. v. Monroe Woodbury Central School District*,
  No. 11–CV–1672 (CS), 2012 WL 2940020 (S.D.N.Y. 2012) .....................................12

*Santosky v. Kramer*,
  455 U.S. 745 (1982) ......................................................................................................16

*Sedor v. Frank*,
  42 F.3d 741 (2d Cir. 1994.) ..........................................................................................21

*Smith v. Potter*,
  187 F.Supp.2d 93 (S.D.N.Y. 2001) ..............................................................................19

*Soundview Associates v. Town of Riverhead*,
  725 F.Supp.2d 320 (E.D.N.Y. 2010) ...........................................................................15

*South Bay United Pentecostal Church v. Newsom*,
  140 S.Ct. 161, 1614 (2020) (2020) ..............................................................................19

*Speigel v. Schulmann*,
  604 F.3d 72 (2d Cir. 2010) .............................................................................................8

*Spence v. Shah*,
  136 A.D.3d 1242, 26 N.Y.S.3d 613 (3d Dept. 2016) ...................................................12

*Surlock v. Delaney*,
  No. 11-cv-1121, 2016 WL 3200273 (N.D.N.Y. 2016) .................................................23

*Taylor v. Brentwood Union Free Sch. Dist.*,
   908 F. Supp. 1165 (E.D.N.Y. 1995) ................................................................12

*Tolman v. Doe*,
   988 F.Supp. 582 (E.D.Va. 1997) ....................................................................19

*V.D. v. State*,
   403 F.Supp.3d 76 (E.D.N.Y. 2019) ...........................................................6, 20

*Vandor, Inc. v. Militello*,
   301 F.3d 37 (2d Cir. 2002) ............................................................................12

*Vetere v. Allen*,
   15 N.Y.2d 259, 258 N.Y.S.2d 77 (1965)........................................................10

*Wallikas v. Harder*,
   67 F.Supp.2d 82 (N.D.N.Y. 1999)....................................................................7

*Ward v. Stewart*,
   133 F.Supp.3d 455 (N.D.N.Y. 2015)...............................................................24

*Warth v. Seldin*,
   422 U.S. 490 (1975) .......................................................................................22

*Weiser v. Koch*,
   632 F. Supp. 1369 (S.D.N.Y. 1986) ...............................................................14

*Wilson v. DirectBuy, Inc.*,
   821 F.Supp.2d 510 (D. Conn. 2011)................................................................24

*Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*,
   466 F.3d 232 (2d Cir. 2006) .............................................................................9

*Workman v. Mingo Cnty. Bd. of Educ.*,
   419 F. App'x 348 (4th Cir. 2011)....................................................................17

*Zachary v. Clinton Cty.*,
   2003 U.S. Dist. LEXIS 26596, at *5 (N.D.N.Y. 2003) .....................................7

*Zucht v. King*,
   260 U.S. 174 (1922) ................................................................................14, 22

vi

S<small>TATUTES</small>

NY Educ. Law § 101 .................................................................................................................2

NY Educ. Law § 305 .................................................................................................................2

N.Y. Educ. Law § 310 ...............................................................................................................9

N.Y. Pub. Health Law § 2164 ........................................................................................... *passim*

N.Y. Pub. Health Law § 2805 .................................................................................................20

NY Const, art. XI, § 2 .............................................................................................................11

NY Const, art. V, § 4 ..............................................................................................................11

28 U.S.C. § 1404 ..............................................................................................................22, 24

R<small>ULES</small>

Fed. R. Civ. P. 21 .............................................................................................................22, 23

N.Y. CPLR § 7803 ...................................................................................................................12

R<small>EGULATIONS</small>

8 NYCRR 276.1 .......................................................................................................................11

10 NYCRR 66-1 .........................................................................................................2, 3, 10, 13

## PRELIMINARY STATEMENT

In 2019, New York State changed the regulations for the mandatory vaccination of public school students. The changes saw the elimination of the religious exemption. Well publicized legal challenges followed on that issue and failed.

The State did not similarly do away with the medical exemption. However, it tightened up the process and gave specific definitions and procedures for exemption qualifications. This lawsuit is a challenge to the medical exemption law and process. This legal challenge should also fail.

As set forth in the State Defendants' motion to dismiss, the Legislature enacted regulations as a lawful exercise of its power and in response to public health concerns. (*See* Dkt. Entry No. 28-1 at pp. 4-8.) The New York State Department of Health ("DOH") incorporated the Centers for Disease Control and Prevention ("CDC") schedules and guidelines in directing school districts on the examination of medical exemption requests and the issuance of determinations.

Plaintiffs in this case all have different alleged medical conditions. They were seen by different physicians and live far apart from one another in various areas of New York State, stretching from the Finger Lakes to Long Island. They join together here to challenge the constitutionality of the law. They do this against not just the State, which enacted the law, but against 8 individual school districts and their administrators whose role is not to set the law, but simply to abide by it. As set forth in the State Defendants' motion to dismiss and below, the law is a valid and proper exercise of the legislative function and the challenge to the legislation should be dismissed.

The school districts application of the law also does not give rise to the federal claims asserted. Preliminarily, the challenges to the application should be before the Commissioner of Education and the state courts in an Article 78 petition. The Court should refrain and abstain from deciding this matter. Nonetheless, as set forth below, the allegations to do not meet the exacting standard to set

forth a substantive due process claim. Nor can plaintiffs set forth a viable claim for parental rights, informed consent, or failure to provide a free public education claim. Even at this early stage, such claims are precluded by long-standing United States Supreme Court decisions and the procedures set by the State which afford districts the right to have school administrators and medical professionals, and even the DOH, examine, question, and even reject the reasons provided for the exemption request based on the stated guidelines and definitions. All claims against the individually named school administrators are duplicative of those asserted against the employers (the school districts themselves), and thus are barred. For all of the reasons set forth below, the Court should dismiss the entire complaint against the moving defendants.

## STATEMENT OF FACTS

So as not to burden the Court with a duplicative recitation of facts, we incorporate by reference the statement of facts and exhibits in the State Defendants' motion to dismiss the complaint (*See* Dkt. Entry No. 28-1). The State Defendants have set forth the basis for the change in the compulsory vaccination law and the valid exercise of legislative power to address a public health issue. It is up to the State to establish the law. The individual school districts must then abide by it. (*See e.g.* N.Y. Educ. Law §§ 101, 305.)

Under 10 NYCRR 66-1.3, students must meet certain requirements to obtain a medical exemption to the mandatory vaccination laws. Students seeking a medical exemption must submit a medical form signed by a N.Y. State licensed physician. *See* 10 NYCRR 66-1.3. And that form must: (1) certify that immunization may be detrimental to the child's health; (2) contain sufficient information to identify a medical contraindication to a specific immunization; and (3) specify the length of time the immunization is medically contraindicated. *Id.* These requirements are not new. What is new to the exemption process is the definition of what "may be detrimental to the child's

2

health." *See* 10 NYCRR 66-1.1(l). As the State Defendants explained in their motion to dismiss, the new regulations require a physician to determine "that a child has a medical contraindication or precaution to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standards of care." (*See* Dkt. Entry No. 28-1 (citing 10 NYCRR 66-1.1(l)).

The CDC, a federal agency operating under the U.S. Department of Health and Human Services, recommends routine vaccines to fight against 17 vaccine-preventable diseases. (Ex. B at p. 2.) The CDC specifically recommends vaccines for younger people because they are more at risk of developing certain vaccine-preventable diseases. (Ex. B at p. 11.) The Advisory Committee on Immunization Practices General Recommendations Work Group ("ACIP") releases updated "best practice guidelines" every three to five years. (Ex. B at p. 5.) This group is comprised of a diverse group of health care providers and public health officials. (*Id.*) In preparing the best practice guidelines, the ACIP reviews and analyzes available scientific evidence while also relying on their own expert opinions. (*Id.*) The New York State Legislature reasonably deferred to this group of experts in amending the regulations for mandatory vaccinations. *See* 10 NYCRR 66-1.1(l).

The ACIP set forth a recommended vaccination schedule that vaccination providers "should adhere to." (Ex. B at pp. 12, 28-32.) It also indicates that "persons who administer vaccines should screen patients for contraindications and precautions to the vaccine before each dose of vaccine is administered." (Ex. B at p. 49.)

The ACIP defines "contraindications" as "conditions in a recipient that increases the risk for a serious adverse reaction." (*Id.* at p. 49.) Although the ACIP does not recommend vaccination when a contraindication is present, it states, "Because the majority of contraindications are temporary, vaccinations often can be administered later when the condition leading to a contraindication no

longer exists." (*Id.*) The ACIP also cautions that "certain conditions are commonly misperceived as contraindications (i.e., are not valid reasons to defer vaccination)." (*Id.*)

The ACIP defines a "precaution" as "a condition in a recipient that might increase the risk for a serious adverse reaction, might cause diagnostic confusion, or might compromise the ability of the vaccine to produce immunity." (Ex. B at p. 50.) An "adverse reaction" is defined as an "undesirable medical condition that has been demonstrated to be caused by a vaccine." (*Id.* at p. 191.) The ACIP recommends that when a precaution is present a vaccine should be deferred unless "the benefit of protection from the vaccine outweighs the risk for an adverse reaction." (*Id.* at p. 50.) And once the acute illness has improved, a person should be vaccinated, assuming they have already been screened for contraindications. (*Id.*) When it comes to children, the ACIP cautions, "Studies indicate that failure to vaccinate children with minor illnesses can impede vaccination efforts." (*Id.* at p. 51.)

The ACIP also points out that physicians and other health care providers "might misperceive certain conditions or circumstances as valid contraindications or precautions to vaccination when they actually do not preclude vaccination" and that "[t]hese misperceptions result in missed opportunities to administer recommended vaccines." (Ex. B at p. 52.) The ACIP includes tables of contraindications and precautions to commonly used vaccines, (*Id.* at p. 53-59), as well as conditions that are often incorrectly perceived as contraindications or precautions to vaccination, (*Id.* at p. 60-61).

The ACIP also distinguishes between four different types of "adverse events." An adverse event is an "untoward event that occurs after a vaccination that might be caused by the vaccine produce or vaccination process." (*Id.* at p. 191.) The first type of "adverse event" is vaccine induced; this means the adverse event was "caused by the intrinsic characteristic of the vaccine preparation and the individual response of the vaccine." (*Id.*) A vaccine induced adverse event "would not have occurred without vaccination." (*Id.*) The second type of "adverse event' is vaccine potentiated; this

4

means the adverse event "would have occurred anyway but were precipitated by the vaccination." (*Id.*) The third type of "adverse event" is programmatic error; this means "the event was caused by technical errors in vaccine preparation, handling, or administration." (*Id.*) The fourth type of "adverse event" is "coincidental." (*Id.*) That means, "the event was associated temporally with vaccination by chance or caused by underlying illness." (*Id.*) The ACIP opines that special studies are required to determine whether an adverse event is a reaction to the vaccine or result of another cause. (*Id.*)

The DOH's regulatory guidance incorporates the CDC's schedules and guidelines for medical exemptions. *See e.g.* June 14, 2019 DOH Statement on Legislation Removing Non-Medical Exemptions from School Vaccination Requirements. (Ex. K.) The DOH issued a set of procedures for districts to utilize when reviewing requests for medical exemptions. (Ex. L.) Plaintiffs' own allegations confirm the defendant districts acted in accordance with these procedures.

The DOH explained the first step is the parent/guardian's submission of a medical exemption statement from the student's physician, who must be licensed to practice medicine in the State of New York. *Id*. Next, the principal or other school designee reviews the submission for compliance with the New York Public Health Law. The school may request additional documentation from the parent/guardian. "In making a determination on a medical exemption request, the school should seek the appropriate medical consultation (e.g., the school's medical director.)" *Id*. at p. 1, ¶ "3." If needed, the school may forward the request to the DOH's Bureau of Immunization for a recommendation. *Id*. Schools may, but are not required to, contact the DOH. *Id*.

Under the new regulations, which took effect on June 30, 2020, if a school determines a student is not exempt from a mandatory vaccine, and that student refuses to obtain a mandatory vaccine, the school has no choice but to exclude that unvaccinated student from school. *See* N.Y. Pub. Health Law § 2164(7), 8(a). New York's Public Health law does not merely require schools to

5

prohibit an unvaccinated student from attending school, but it also prohibits an unvaccinated student from being admitted to a school altogether. *See* N.Y. Pub. Health Law § 2164(7) (prohibits any principal, teacher, owner or person in charge of a school to permit "any [unvaccinated] child to be admitted to such school or to attend such school" beyond 14-day grace period). While a school district can extend the 14-day grace period and allow a student 30 days to comply with mandatory vaccination requirements, school districts have no authority to extend the deadline beyond 30 days. *Id.* ("fourteen day period may be extended to not more than thirty days for an individual student").

In allowing an unvaccinated child to attend school, a district would be in violation of Public Health Law § 2164(7). Guidance on the DOH website states that "Each student who is permitted to attend school in violation of the requirement of Section 2164(7)(a) constitutes the basis for a separate violation of the Public Health Law for which a civil penalty may be imposed" (https://www.health.ny.gov/prevention/immunization/schools/public_health_law_section_2164_letter.htm). Public Health Law § 12-B (2) sets the civil penalty for willful violations of public health laws at $2,000 per violation.

Because unvaccinated and non-exempted children are not eligible to attend public or private schools, parents must provide homeschooling for those children. *See V.D. v. State*, 403 F.Supp.3d 76, 89 (E.D.N.Y. 2019) (recognizing that parents objecting to a mandatory vaccination requirement will thus be required to homeschool their children).

6

## ARGUMENT

**POINT I**       **THE COURT SHOULD DISMISS ALL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS**

Plaintiffs have named defendants David Bennardo (Superintendent for South Huntington UFSD), Cheryl Pedisich (Superintendent for Three Village CSD), Corinne Keane (High School Principal for Three Village UFSD), Dr. Luvelle Brown (Superintendent for Ithaca CSD), Susan Eschbach (Elementary School Principal for Ithaca CSD), Kaweeda Adams (Superintendent for Albany CSD), and Michael Paolino (Middle School Principal for Albany CSD) in their official capacities only. *See* Complaint at ¶¶ 40, 59, 60, 68, 71, 72, 80, 81. Plaintiffs assert the same legal claims against those school officials and their employers, the defendant school districts. The Court should dismiss all claims against the school officials as a matter of law as duplicative of those asserted against the school districts.

It is well-settled that "[c]laims against individual defendants in their official capacities 'are really just claims against the municipality and, thus, are redundant when the municipality is also named as a defendant.'" *Rubeor v. Town of Wright*, 191 F.Supp.3d 198, 208 (N.D.N.Y. 2016) (quoting *Zachary v. Clinton Cty.*, 2003 U.S. Dist. LEXIS 26596, at *5 (N.D.N.Y. 2003)); *Wallikas v. Harder*, 67 F.Supp.2d 82, 83 (N.D.N.Y. 1999); *Jeffes v. Barnes*, 20 F.Supp.2d 404, 410 (N.D.N.Y. 1998). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (*citing Monell v. New York City Dept. of Social Services*, 436 U.S. 658, n.55 690 (1978)); *see also Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 498–99 (N.D.N.Y. 2017) (holding that "district courts have regularly dismissed official capacity claims against individuals as redundant or unnecessary where *Monell* claims are asserted against an entity.") (quoting *Booker v. Board of Education, Baldwinsville Cent. Sch. Dist.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002)).

"The real party in interest in an official-capacity suit is the governmental entity and not the named official." *See e.g.*, *Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) (quoting *Hafer v. Melo*, 112 S. Ct. 358, 361 [1991]). "Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Castanza v. Town of Brookhaven*, 700 F.Supp.2d 277 (E.D.N.Y. 2010) (*citing Monell v. Department of Soc. Servs. of City of New York,* 436 U.S. 658, 691 1978); *see also Hightower v. Veitch*, 2020 WL 397818 (N.D.N.Y. 2020). "Based upon the understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources." *Escobar v. City of New York,* No. 1:05-cv-3030-ENV-CLP, 2007 WL 1827414, at *3 (E.D.N.Y. 2007) (citations and quotations omitted).

This principle applies in the public school context and warrants dismissal of official-capacity claims against school administrators. *See e.g. Booker v. Board of Education, Baldwinsville Central School District, et al.,* 238 F.Supp.2d 469, 475 (N.D.N.Y. 2002) (dismissing official capacity claims against school officials as "redundant to the claims against the district"); *Barmore v. Aidala*, 419 F. Supp. 2d 193, 202 (N.D.N.Y. 2005) (holding official capacity claims against school board president was "unnecessarily redundant and must be dismissed" because the school district was already named as a defendant in the case).

Last, there is no individual liability under the Rehabilitation Act even if the claims are asserted against someone in their official capacity. *See Perros v. County of Nassau*, 238 F.Supp.3d 395, 402, n. 3 (E.D.N.Y. 2017) (*citing Speigel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010) (*Maus v. Wappingers Cent. Sch. Dist.*, 688 F.Supp.2d 302, n. 10 (S.D.N.Y. 2010)).

The Court should dismiss the claims against the individual defendants as a matter of law and remove their names from the caption of this action.

**POINT II        PLAINTIFFS FAILED TO EXHAUST ADMINISTRATIVE REMEDIES**

Plaintiffs simultaneously challenge the Constitutionality of the vaccination law enacted by the State and the application of it by public school districts required to adhere to the law. We submit that the challenge to the legality of the law should be dismissed as a matter of law, as discussed *infra*, and as addressed in the State Defendants' motion to dismiss. The challenge to any application of the law should also be dismissed as it should be before the New York State Commissioner of Education (the "Commissioner"), as also set forth in the State Defendants' motion to dismiss. *See* State Defendants' Memo of Law at pp. 2-3.

Before bringing their claims to federal court, plaintiffs should have availed themselves of N.Y. Educ. Law § 310, which provides that an aggrieved party may appeal to the Commissioner of Education "any . . . official act or decision of any officer, school authorities, or meetings concerning any other matter under [the New York Education Law], or any other act pertaining to common schools." N.Y. Educ. Law § 310(7). This provision provides the Commissioner with "broad discretion" to review a "wide range of actions." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 248 (2d Cir. 2006); *see also Donohue v. Copiague Union Free Sch. Dist.*, 47 N.Y.2d 440, 418 N.Y.S.2d 375 (1979) (in dismissing a claim of "educational malpractice," citing, under New York Education Law § 310(7), "the right of students presently enrolled in public schools, and their parents, to take advantage of the administrative processes provided by statute to enlist the aid of the Commissioner of Education in ensuring that such students receive a proper education").

The broad powers afforded are meant "to make all matters pertaining to the general school system of the state within the authority and control of the department of education and to remove the

same so far as practicable and possible from controversies in the courts." *Donohue*, 47 N.Y.2d at 444, 418 N.Y.S.2d at 378 (*quoting Bullock v. Cooley*, 225 N.Y. 566, 576-77 (1919); *Matter of Vetere v. Allen*, 15 N.Y.2d 259, 258 N.Y.S.2d 77 (1965), *cert. denied*, 382 U.S. 825 (1965)).

A school district's response to a medical exemption request falls squarely within the range of actions that the Commissioner reviews. New York Public Health Law § 2164 (7)(b) provides:

> A parent, a guardian or any other person in parental relationship to a child denied school entrance or attendance may appeal by petition to the commissioner of education in accordance with the provisions of section three hundred ten of the education law.

New York Public Health Law § 2164 (7)(b). It follows that the Commissioner has examined the denial of exemption requests made following the 2019 amendments to the vaccination laws. *See e.g., Appeal of E.Y.*, 60 Educ. Dep't Rep., Decision No. 17,891 (July 30, 2020) (Ex. C); *Appeal of S.G.*, 60 Educ. Dep't Rep., Decision No. 17,830 (April 13, 2020) (Ex. D).

For instance, in *Appeal of E.Y.*, the Commissioner upheld a decision to deny a medical exemption where petitioner did not offer evidence "containing sufficient information to identify that the student currently has a precaution or a contraindication to any of the eight required vaccinations" and instead relied primarily on "general information concerning vaccines [that] does not address the student's unique circumstances." And in *Appeal of S.G.*, the Commissioner upheld the decision to deny a medical exemption where "petitioner has not provided any proof to establish that the student has a 'contraindication or precaution' to each of the required immunizations 'consistent with ACIP guidance or other nationally recognized evidence-based standard of care' (10 NYCRR §66-1.1[l])."

While the *E.Y.* and *S.G.* decisions were decided in favor of the respective school districts, the Commissioner examined another challenge to a medical exemption denial and found in the student and parent's favor, reversing the rejection of the exemption request. *See Appeal of a Student with a Disability*, 59 Educ. Dep't Rep., Decision No. 17,822 (March 16, 2020) (Ex. E) ("On this record, I

10

find that respondent's decision to deny the student a medical exemption from the MMR and varicella vaccines was arbitrary and capricious" and "IT IS ORDERED that respondent grant the student a medical exemption from administration of the MMR and varicella vaccinations, or any combination thereof.")

In fact, by their litigation behavior some of the students seeking admission to the "movant Districts" have exercised their right to pursue a Commissioner appeal. As demonstrated by the movants' September 4, 2020 opposition to plaintiffs' preliminary injunction motion, plaintiff John Joe challenged the determination by the Ithaca C.S.D. via an appeal to the Commissioner. Thus, plaintiffs have effectively admitted that a Commissioner appeal constitutes an administrative remedy before commencing this action.

Plaintiffs cannot claim the requested relief is outside the authority of the Commissioner or even impossible to obtain upon the appropriate evidentiary showing. Further, the Commissioner is empowered to grant a stay while an administrative appeal is pending. *See* 8 NYCRR 276.1.

To the extent plaintiffs will argue that the Constitutionality of the legislation is outside the scope of the Commissioner's review, we acknowledge such recent decisions. *See Appeal of W.G and C.A.*, 59 Educ. Dep't Rep., Decision No. 17,839 (May 5, 2020) (Ex. F); *Appeal of C.H.*, 59 Educ. Dep't Rep., Decision No. 17,832 (April 21, 2020) (Ex. G). However, plaintiffs' decision to take the kitchen sink approach in this federal action should not prevent challenges to individual exemption requests from being heard in the appropriate forum, that being before the Commissioner.

The New York State Court of Appeals has long recognized that "[C]ontrol and management of educational affairs is vested in the Board of Regents and the Commissioner of Education." *Hoffman v. Bd. of Educ. of City of N.Y.*, 49 N.Y.2d 121, 125, 424 N.Y.S.2d 376 (1979) (*citing* NY Const, art. V, § 4; art. XI, § 2; N.Y. Educ. Law §§ 207, 305; *Matter of New York City School Bds. Assn. v Board*

*of Educ.,* 39 N.Y.2d 111, 116, 383 N.Y.S.2d 208 (1976); *Matter of Ocean Hill-Brownsville Governing Bd. v. Board of Educ.*, 23 N.Y.2d 483, 485, 297 N.Y.S.2d 568 (1969)). It is well settled that courts may not substitute their judgment for the professional judgment of educators and government officials actually engaged in the complex and often delicate process of educating children. *Id.* at 125-26.

Additionally, aggrieved families may institute an Article 78 proceeding in state court to review a decision by the Commissioner. *See e.g. S.C. v. Monroe Woodbury Central School District*, No. 11–CV–1672 (CS), 2012 WL 2940020, * 10 (S.D.N.Y. 2012) (*citing Federico v. Bd. of Educ. of Pub. Schs. of Tarrytown*, 955 F. Supp. 194, 202 (S.D.N.Y. 1997); *Taylor v. Brentwood Union Free Sch. Dist.*, 908 F. Supp. 1165, 1176 (E.D.N.Y. 1995)). As the Second Circuit has long recognized, Article 78 of New York's CPLR provides an adequate state law remedy for alleged failures by public officials to take allegedly required or mandated action. *See Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002). New York's Article 78 reads, in pertinent part, that: "[t]he . . . questions that may be raised in a proceeding under this article are . . . whether the body or officer failed to perform a duty enjoined upon it by law." N.Y. CPLR § 7803 (1). "The Article 78 proceeding, itself, a sufficient post-deprivation remedy, is also adequate process." *See S.C.*, 2012 WL at 10 (internal citations omitted) (*citing Manza v. Newhard*, No. 11–2256–cv, 2012 WL 917286, * 2 (2d Cir. 2012)); *see also Spence v. Shah*, 136 A.D.3d 1242, 26 N.Y.S.3d 613 (3d Dept. 2016) (the Appellate Division decided an Article 78 proceeding seeking review of regulations governing unvaccinated health care personnel.)

The Commissioner of Education should have been afforded the opportunity to resolve any challenges to decisions by school districts on medical exemption requests. These requests were by their very nature premised on different students, with varying conditions, doctors, and treatment, as well as varying responses by varying school officials, with varying communication and proffered

basis for decisions. Plaintiffs should not be permitted to decide for themselves whether they should be required to seek administrative review.

Further, the Court should apply the doctrine of abstention and decline to review these federal claims. There are "three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009). Those factors are: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998).

These factors all warrant abstention in the present case. The recent amendments to Public Health Law and the implementing regulations (i.e. 10 NYCRR 66-1.3) are specific. In fact, it is the increased specificity which plaintiffs challenge. The precise meaning of what does, and what does not, constitute a *"medical contraindication or precaution to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standards of care."* (*See 10 NYCRR 66-1.1(l)*) are at the heart of the dispute. This new framework, developed by the State Legislature and the Department of Health obviously and legitimately seeks to strike a balance between the safety and security of millions of public school students across the state on the one hand, and the small percentage of students' whose parents seek to exempt them from a well-established vaccination program that protects students from preventable life threatening diseases. Further, the manner in which public school districts across the State apply the vaccination program, review and evaluate exemption requests, and promote the safety and security of children in their public schools are matters of fundamentally state and local concerns.

13

Thus, abstention is appropriate. *See e.g. Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 815 (1976); *Mair v. Good*, 325 F. Supp. 1268 (N.D.N.Y. 1971) (abstention from deciding constitutional issues implicated by prior religious exemption; *Weiser v. Koch*, 632 F. Supp. 1369, 1384 (S.D.N.Y. 1986). The as applied claims should be dismissed as a matter of law and the entire complaint dismissed against the school districts and their administrators.

### POINT III      PLAINTIFFS CANNOT SUSTAIN A SUBSTANTIVE DUE PROCESS CLAIM

Plaintiffs allege the vaccination requirement violates substantive due process. Over 100 years ago, the United States Supreme Court rejected such a theory.

In *Jacobson v. Commonwealth of Massachusetts*, a plaintiff unsuccessfully challenged a compulsory vaccination requirement by claiming it violated substantive due process rights. 197 U.S. 11 (1905). "The Court rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population as a whole." *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) (*citing Jacobsen*, 197 U.S. at 37-38.) Determinations about the alleged harm caused by vaccines was "a determination for the legislature, not the individual objectors." *Id*.

Seventeen years later, in 1922, the U.S. Supreme Court relied on its holdings in *Jacobsen* in rejecting another challenge to mandatory vaccination requirements for public school students. *See Zucht v. King*, 260 U.S. 174 (1922). In *Zucht*, the Supreme Court reiterated that "a state may, consistently with the federal Constitution, delegate to a municipality authority to determine under what conditions health regulations shall become operative." *Zucht*, 260 U.S. at 176 (*citing Laurel Hill Cemetery v. San Francisco*, 216 U.S. 358 (1910)). The Supreme Court further held "the municipality may vest in its officials broad discretion in matters affecting the application and enforcement of a health law." *Id*. (*citing Liberman v. Van de Carr*, 199 U.S. 552 (1905)).

14

It follows that in 2015, the Second Circuit reiterated the Supreme Court's holdings in *Jacobsen* when rejecting a challenge to New York's mandatory vaccination requirement for public school students. In *Phillips v. City of New York*, the Second Circuit held "Plaintiffs' substantive due process challenge to the mandatory vaccination regime is therefore no more compelling than Jacobsen's was more than a century ago." *Phillips*, 775 F.3d at 542; *see also Caviezel v. Great Neck Pub. Sch.*, 500 F. App'x 16, 19 (2d Cir. 2012), *cert. denied* 133 S. Ct. 1997 (2013), (rejecting a challenge to § 2164 and holding plaintiffs "substantive due process challenge to New York's immunization requirement is defeated by *Jacobson v. Massachusetts*") (*see also McCartney v. Austin*, 31 A.D.2d 370, 371, 298 N.Y.S.2d 26, 27 (3d Dept. 1969) ("That statutes of this nature, and section 2164 in particular, are within the police power and thus constitutional generally is too well established to require discussion." (citing *Jacobson*))."

The Fourteenth Amendment "does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005). "Instead, the scope of substantive due process is very limited." *Soundview Associates v. Town of Riverhead*, 725 F.Supp.2d 320, 333 (E.D.N.Y. 2010). "Substantive due process is an outer limit on the legitimacy of governmental action." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). Only "the most egregious official conduct" can be construed to violate the principles of substantive due process. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. *Natale*, 170 F.3d at 263. Rather, "substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Id*. Plaintiffs cannot meet that exacting standard.

Here, plaintiffs challenge the law in general and then challenge the ability of school districts to abide by the law by examining the exemption submissions to ensure compliance with the law. Plaintiffs' claims are premised on a fundamental belief that school districts do not and should not have the right to come to a contrary conclusion on an exemption request and should simply rubber stamp them as if they are a note to excuse Johnny from missing first period because he woke up with a headache. While plaintiffs seek to portray the law as improperly empowering a bunch of bumbling school principals without medical degrees (*see* Complaint at ¶¶ 11-12), plaintiffs also acknowledge the school administrators in this case relied on their own district-approved medical professionals, and even the New York State Department of Health, who came to different conclusions than the student's physicians. (*see e.g.* Complaint at ¶¶ 124-132 for Three Village; ¶¶ 167-169 for Albany; ¶¶ 243-254 for South Huntington). A disagreement between the findings of medical professionals cannot manufacture a substantive due process claim. The Court should dismiss the first cause of action as a matter of law.

## POINT IV      PLAINTIFFS CANNOT STATE A PARENTAL RIGHTS CLAIM

Parents have a fundamental liberty interest in the general upbringing of their children, including their care, custody, and management. *See e.g. Cox v. Warwick Valley Cent. Sch. Dist.,* 654 F.3d 267, 275 (2d Cir. 2011) (quoting *Santosky v. Kramer,* 455 U.S. 745, 753 (1982)). These parental rights, however, are not absolute.

In *Prince v. Massachusetts*, 321 U.S. 158 (1944), the U.S. Supreme Court held "the state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare." *Id*. at 167. Here, plaintiffs' claim is based on a fundamental belief of a right to forego vaccinating their children against deadly diseases. This is an incorrect assumption.

In *Boone v. Boozman*, an Arkansas federal district court examined a case challenging

compulsory vaccination requirements. The district court traced the history of the U.S. Supreme

Court's decisions in *Zucht, Jacobsen*, and *Prince*, echoing that the Supreme Court has held:

> 1)   The State may enact reasonable regulations to protect the public health and the public safety;
>
> 2)   It cannot be questioned that compulsory immunization of public school students is a permissible exercise of the State's police power; and
>
> 3)   Parental rights are subordinated to society's interest in protecting against the spread of disease.

*Boone v. Boozman,* 217 F.Supp.2d 938, 954 (E.D.Ark. 2002). The court, in *Boone*, also held:

> The question presented in this case is not, as plaintiff suggests, simply whether a parent has a fundamental right to decide whether her child should undergo a medical procedure such as immunization. Carefully formulated, the question presented by the facts of this case is whether the special protection of the Due Process Clause includes a parent's right to refuse to have her child immunized before attending public or private school where immunization is a precondition to attending school. The Nation's history, legal traditions, and practices answer with a resounding "no."

*Boone,* 217 F.Supp.2d at 952-53, 956 (footnote omitted); *see also Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 355-56 (4th Cir. 2011) *cert. denied*, 132 S.Ct. 590 (2011) (holding no fundamental right to exemption to school immunization requirement).

    Again, plaintiffs challenge to both the law and the ability and requirement of school districts to ensure compliance with the law does not create a cause of action. The law does not give plaintiffs or any family an automatic exemption simply because they provide a doctor's note.

    As set forth in the Statement of Facts section, the DOH procedure explains school officials are to seek additional information and consult with their medical officers, and may contact the DOH, where there is a concern over the basis for the exemption request. The process is consistent with the Commissioner's findings on the review of exemption requests. The Commissioner has found a district

is not "required to accept a doctor's note at face value, without further investigation. *See Appeal of a Student with a Disability*, 54 Educ. Dep't Rep., Decision No. 16,667 (September 5, 2014) (Ex. H), (*citing Lynch v. Clarkstown Cent. Sch. Dist.*, 155 Misc.2d 846, 855-56 (Sup. Ct., Rockland Cty. 1992).

The Commissioner has held that where a certificate supporting a medical exemption is suspect, a school district should request additional medical information from the parent and provider regarding the claimed contraindication. *See Appeal of McGann*, 32 Educ. Dep't Rep. 187, Decision No. 12,800 (September 8, 1992) (Ex. I). Additionally, a school district may rely upon the advice of its own medical officer and the DOH. *See Appeal of McGann* (holding the school was within its rights to seek guidance from DOH, to demand additional information, and to deny an exemption when no additional information was forthcoming); *See Appeal of D.F.*, 50 Educ. Dep't Rep., Decision No. 16,132 (August 20, 2010) (Ex. J) (district acted properly when it obtained medical opinions and guidance "through repeated consultation with DOH and its own school physician").

As set forth above, plaintiffs acknowledge the school administrators in this case relied on their own district-approved medical professionals and the DOH in denying the requested exemptions. The Court should dismiss the second cause of action as a matter of law.

### POINT V          PLAINTIFFS CANNOT STATE AN INFORMED CONSENT CLAIM

"[T]he common law doctrine of informed consent is viewed as generally encompassing the right of a competent individual to refuse medical treatment." *See Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 277 (1990). The U.S. Supreme Court has examined the issue in the context of vaccination and found a constitutionally protected liberty interest in refusing unwanted medical treatment. *Id*. at 278 (*citing Jacobsen*, 197 U.S. at 24-30.). In *Jacobsen*, the Supreme Court balanced the individual's liberty interest in refusing a mandatory smallpox vaccine with the State's interest in preventing disease. *Id*. The Supreme Court rejected the individual's claim and found in favor of

upholding the mandatory vaccination laws designed by public officials to protect the public health and welfare. *Id*.

As pointed out by the State Defendants in their motion papers, the Supreme Court continues to cite *Jacobsen's* holdings and, as recently as May 29, 2020, reiterated that the Constitution entrusts State officials faced with a public health crisis with the responsibility of safeguarding the health and safety of their residents and "their latitude 'must be especially broad.'" *See South Bay United Pentecostal Church v. Newsom*, 140 S.Ct. 161, 1614 (2020) *(citing Marshall v. United States*, 414 U.S. 417, 427 (1974)). Where those broad limits are not exceeded, they should not be subject to second-guessing by the federal courts. *Id*. (*citing Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 (1985).

Here, the DOH's regulatory guidance incorporates the CDC's schedules and guidelines for medical exemptions. *See e.g.* June 14, 2019 DOH Statement on Legislation Removing Non-Medical Exemptions from School Vaccination Requirements. https://www.health.ny.gov/publications/2170/docs/new_legislation_joint_statement.pdf; October 2019 DOH Medical Exemption Review Procedures for Schools Outside New York City and for Non-public Schools in New York City https://www.health.ny.gov/professionals/doctors/conduct/docs/medical_exemption_review_procedures_for_schools.pdf. Federal courts afford great deference to the role and findings of the CDC. *See Smith v. Potter*, 187 F.Supp.2d 93, 97 (S.D.N.Y. 2001) (*citing Mazur v. Merck & Co.*, 964 F.2d 13498, 1350, n. 1 (3d Cir. 1992); *American Mining Congress v. EPA*, 907 F.2d 1179, 1187 (D.C. Cir. 1990); *Tolman v. Doe*, 988 F.Supp. 582, 586 (E.D.Va. 1997).

Additionally, as set forth by the State Defendants, there is no dispute plaintiffs have been informed about the vaccinations and consulted with their own medical professionals regarding same. N.Y. Pub. Health Law § 2805-d defines a lack of informed consent as:

> Lack of informed consent means the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical, dental or podiatric practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation.

N.Y. Pub. Health Law § 2805-d(1). Plaintiffs cannot sustain such a claim against the school districts and their officials. The Court should dismiss the third cause of action.

**POINT VI       PLAINTIFFS CANNOT STATE A RIGHT TO A FREE PUBLIC EDUCATION CLAIM**

The enactment of mandatory vaccination requirements is within the State's powers to protect the health and safety of its residents. In *V.D. v. New York*, the Eastern District found that compulsory vaccination laws need not bow and cede to a student's right to a free public education. *See V.D.*, 403 F.Supp.3d 76 (E.D.N.Y. 2019).

In *V.D.*, the plaintiff parents challenged NY Public Health Law § 2164's requirements by claiming the statute violated their children's right to an education and related services pursuant to the Individuals with Disabilities Education Act ("IDEA"). After the parents lost their ability to claim a religious exemption from the vaccination requirements due to the change in the law, they challenged the statute's validity. The court rejected the challenge and cited the Second Circuit's 2015 decision in *Phillips*, which upheld the constitutionality of New York's vaccination law mandating vaccinations as a condition for school attendance. *Id*. at 86 (*citing Phillips*, 775 F.3d at 543) ("New York could constitutionally require that all children be vaccinated in order to attend public school.")

As set forth in the prior section, broad latitude should be afforded to the public health officials that define what constitutes a valid medical exemption under the Public Health Law. *See Garcia v. N.Y.C. Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 616 (2018) (approving the NYC Board of Health's reliance on the CDC's ACIP recommendations). And as set forth in Section II, *supra*, Public Health Law § 2164 empowers the Commissioner to oversee the appeal process. *See* Public Health

Law 2164(7)(b). The Court should dismiss the fourth cause of action.

## POINT VII    PLAINTIFFS' SECTION 504 CLAIMS FAIL AS A MATTER OF LAW

As discussed in the State Defendants' motion, plaintiffs cannot show they were denied from attending school solely because of a disability. Plaintiffs also cannot show a causal connection between a disability and the adverse determination on their medical exemption requests and that the disability was the only cause of the decision. *See Sedor v. Frank*, 42 F.3d 741, 746 (2d Cir. 1994.)

A decisionmaker need only show that the decision was motivated at least in part by a factor other than disability. *Id*. Upon such a showing, the Rehabilitation Act claims must be dismissed. *Id*.

Plaintiffs cannot show the school district defendants acted solely by reason of any disabilities. The sole reason for the denials were the failure to meet the State standards for a medical exemption. Courts have rejected Rehabilitation Act claims where an alleged medical condition was the alleged basis for an inability to receive vaccination. *See D.A.B. v. N.Y.C. Dept. of Educ.*, 45 F.Supp.3d 400, 407 (S.D.N.Y. 2014) (generally applicable vaccination requirements intended to limit the spread of contagious diseases do not constitute discrimination under the Rehabilitation Act); *Wren v. Midwestern State University*, 2019 WL3099408, * 10 (N.D. Texas 2019) (rejecting a Rehabilitation Act claim of discrimination where the school attempted to verify exemption from compliance with state immunization requirements and, thus, an alleged disability was not the only cause for the challenged conduct).

The Court should dismiss the fifth and sixth causes of action.[1]

---

[1] To the extent plaintiffs' sixth cause of action asserts an equal protection claim, it should also be dismissed for the reasons set forth above and as the statute applies to all students in the State. *See Zucht*, 260 U.S. at 176-77 (dismissing an equal protection claim regarding the vaccination of students.)

**POINT VIII     CHD LACKS STANDING TO STATE A CLAIM**

As fully set forth in the State Defendants' motion, plaintiff Childrens Health Defense ("CHD") lacks standing to assert claims against these moving defendants. (*See* Dkt. Entry No. 28-1 at pp. 19-23.) CHD cannot assert associational standing to bring § 1983 claims on behalf of its members. *See N.Y. State Citizens' Coal. For Children v. Velez*, 629 F.App'x 92, 93 (2d Cir. 2015); *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). Nor can it assert associational standing for the Rehabilitation Act claims as the relief sought would require the participation of individual members to determine whether the challenged statute and actions violated any individual's constitutional rights. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 713 (2d Cir. 2004). CHD also cannot assert organizational standing as its actions were consistent with its mission and usual activities. *See Rodriguez v. Winski*, 2020 WL 1188462, * 2 (S.D.N.Y. 2020) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). The Court should dismiss all of CHD's claims.

**POINT IX     THE COURT SHOULD SEVER ANY REMAINING CLAIMS AGAINST THE MOVING DEFENDANTS AND TRANSFER VENUE TO THE EASTERN DISTRICT OF NEW YORK FOR THOSE REMAINING AGAINST THREE VILLAGE AND SOUTH HUNTINGTON**

If any claim against the moving defendants or their respective officials withstands this motion to dismiss, the Court should sever the claim(s) under Fed. R. Civ. P. 21 and transfer venue of those remaining claims against Three Village and South Huntington to the Eastern District of New York under 28 U.S.C. § 1404.

**A.     SEVERANCE OF CLAIMS IS PROPER**

Rule 21 of the Federal Rules of Civil Procedure provides, "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." "The Court has broad discretion to sever claims under Rule 21." *Surlock v. Delaney*, No. 11-cv-1121, 2016 WL 3200273, 54 (N.D.N.Y. 2016); *see also Oram v. SoulCycle LLC*, 979 F.Supp.2d

498, 502 (S.D.N.Y. 2013). In determining if severance is appropriate courts will consider: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Id.* "Severance requires the presence of only one of these conditions." *Oram, 979 F.Supp.2d* at 503.

Several are present in this case, warranting severance as to the moving defendants. The claims by each individual plaintiff against their respective districts of residence for their response to a medical exemption request have absolutely no relation to those brought by any other plaintiff against any other school district defendant. Nor do any as applied claims present common questions of law and fact as they each involve an individual student's particular medical condition, presumably an individual analysis by a treating physician, and then an individual review of the requests by school districts which do not share resources. Whether any rights of the individual plaintiffs were violated based on their own claim for a medical exemption is unique to each plaintiff, in fact and law, and requires different witnesses and documentary proof. Because severance "requires the presence of only one of these conditions," and several are apparent here, the Court should sever any remaining claims against the moving defendants.

### B.    TRANSFER OF VENUE IS PROPER

28 U.S.C.A. § 1404 provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In determining whether transferring venue is appropriate courts assess: "(1) whether an action 'might have been brought' in the proposed transferee forum, and if so, (2) whether the transfer promotes convenience

and justice." *Ward v. Stewart*, 133 F.Supp.3d 455 (N.D.N.Y. 2015) (*citing Wilson v. DirectBuy, Inc.*, 821 F.Supp.2d 510, 515 (D. Conn. 2011).

Here, the first part of the test is satisfied as plaintiffs Boe and Loe reside in Suffolk County and their districts of residence are located a few miles from the Eastern District's Central Islip courthouse. There should be no doubt plaintiffs Boe and Loe could have brought these claims there.

The second part of the test is also satisfied. "Section 1404(a) is intended to prevent waste of time, energy, and money and to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense." *Ward*, 133 F.Supp.3d at 460 (*citing Rindfleisch v. Gentiva Health Sys., Inc.*, 752 F.Supp.2d 246, 250 (E.D.N.Y. 2010) (alteration in original)). The Court will consider: "(1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of the operative facts; (6) the availability of process to compel attendance of unwilling witnesses; (7) the relative means of the parties; (8) the proposed forum's familiarity with the governing law; and (9) trial efficiency and the interest of justice, based on a totality of the circumstances." Ward, 133 F.Supp.3d at 461.

Here, the convenience of witnesses, location of documents and parties, and locus of operative facts regarding the Boe and Loe plaintiffs and the Three Village and South Huntington defendants weigh strongly in transferring venue to the Eastern District of New York. All parties reside or have their principal place of business in that District. To send Suffolk County educators to the Northern District would result in a colossal waste of public resources, especially in a year where public school districts are facing unprecedented challenges in response to the COVID-19 virus. And although plaintiffs chose the Northern District, "[w]here there is no material connection between the district and the operative facts, … the interests of justice require the transfer of [the] action." *See Indian*

24

*Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F.Supp.2d 395, 405 (S.D.N.Y. 2005). An attempt to challenge the law enacted by the State can proceed independently from an applied challenge against individual school districts in which neither the parent, student, nor district of residence are within 250 miles of Your Honor's Courtroom. Should the Court sever any remaining claims against Three Village or South Huntington, there is no connection, material or otherwise, between the operative facts and the Northern District. Transfer of venue to the Eastern District is warranted.

## CONCLUSION

This Court should dismiss the Complaint in its entirety, together with such other and further relief as this Court may deem just, equitable, and proper. Should any portion of the Complaint against either Three Village/its officials or South Huntington/its officials survive, the Court should sever those claims and transfer venue to the Eastern District of New York.

Dated:  Carle Place, NY
September 3, 2020

SOKOLOFF STERN LLP
*Attorneys for the Moving Defendants*

_____

By:     Adam I. Kleinberg
        Chelsea Weisbord (pending admission)

        -and-

        JOHNSON & LAWS, LLC
By:     ___/s/_____
        Gregg T. Johnson
        April Laws
        Loraine Jelinek