UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
JANE DOE on behalf of herself and her minor child;
JANE BOE, Sr. on behalf of herself and her minor
child; JOHN COE, Sr. and JANE COE, SR. on
behalf of themselves and their minor children; JOHN
FROE, Sr. on behalf of himself and his minor child;
JANE GOE, Sr. on behalf of herself and her minor
child; JANE LOE on behalf of herself and her
medically fragile child; JANE JOE on behalf of
herself and her medically fragile child;
CHILDRENS HEALTH DEFENSE, and all others
similarly situated,

       Plaintiffs,                           Case No.
                                            1:20-cv-00840-BKS-CFH

          -against-

HOWARD ZUCKER, in his official capacity
As Commissioner of Health for the State of New
York; ELIZABETH RAUSCH-PHUNG, M.D., in
her official capacity as Director of the Bureau of
Immunizations at the New York State Department of
Health; the NEW YORK STATE DEPARTMENT
OF HEALTH; THREE VILLAGE CENTRAL
SCHOOL DISTRICT; CHERYL PEDISCH, acting
in Official capacity as Superintendent, Three Village
Central School District; CORINNE KEANE, acting
in her official capacity as Principal, Paul J. Gelinas
Jr. High School, Three Village Central School
District; LANSING CENTRAL SCHOOL
DISTRICT; CHRIS PETTOGRASSO, acting in her
capacity as Superintendent, Lansing Central School
District; CHRISTINE REBERA, acting in her
official capacity as Principal, Lansing Middle
School, Lansing Central School District; LORRI
WHITEMAN, acting in her official capacity as
Principal, Lansing Elementary School, Lansing
Central School District; PENFIELD CENTRAL
SCHOOL DISTRICT; DR. THOMAS PUTNAM,
acting in his official capacity as Superintendent,
Penfield Central School District; SOUTH
HUNTINGTON SCHOOL DISTRICT; DR. DAVID
P. BENNARDO, acting in his official Capacity as
Superintendent, South Huntington School District;

BR. DAVID MIGLIORINO, acting in his official
capacity as Principal, St. Anthony's High School,
South Huntington School District; ITHACA CITY
SCHOOL DISTRICT; DR. LUVELLE BROWN,
acting in his official capacity as Superintendent,
Ithaca City School District; SUSAN ESCHBACH,
acting in her official capacity as Principal, Beverly J.
Martin Elementary School, Ithaca City School
District;        SHENENDEHOWA        CENTRAL
SCHOOL      DISTRICT;    DR.    L.    OLIVER
ROBINSON, acting in his official capacity as
Superintendent, Shenendehowa Central School
District; SEAN GNAT, acting in his official capacity
as Principal, Koda Middle School, Shenendehowa
Central School District; ANDREW HILLS, acting in
his     official   capacity    as    Principal,    Aronge
Elementary School, Shenendehowa Central School
District;      COXSACKIE-ATHENS        SCHOOL
DISTRICT; RANDALL SQUIER, Superintendent,
acting in his official capacity as Superintendent,
Coxsackie-Athens    School    District,   Coxsackie-
Athens School District; FREYA MERCER, acting in
her official capacity as Principal, Coxsackie-Athens
High School, Coxsackie-Athens School District;
ALBANY      CITY    SCHOOL      DISTRICT;
KAWEEDA G. ADAMS, acting in her official
capacity as Superintendent, Albany City School
District; MICHAEL PAOLINO, acting in his official
capacity as Principal, William S Hackett Middle
School, Albany City School District; and all others
similarly situated

Defendants.

-----------------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

James G. Ryan, Esq. (514300)
*Attorneys for Defendants*
*Coxsackie-Athens School District,*
*Randall Squier, Freya Mercer,*
*Shenendehowa Central School*
*District, Dr. L. Oliver Robinson,*

*Sean Gnat, Andrew Hills, Penfield Central School District, Dr. Thomas Putnam, Lansing Central School District, Chris Pettograsso, Christine Rebera, and Lorri Whiteman*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
Phone: (516) 357-3750

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................0

STATEMENT OF FACTS ...................................................................................... 3

    A.  New York State Public Health Law § 2164 And Its Implemented Regulations ........... 3

    B.  Procedural Background.................................................................................... 4

    C.  Plaintiff John Doe ......................................................................................... 5

    D.  Plaintiffs Jane Coe and John Coe ................................................................... 5

    E.  Plaintiff Jane Goe .......................................................................................... 6

    F.  Plaintiffs Jane Koe, John Koe and Janie Koe ................................................... 6

LEGAL STANDARD............................................................................................... 7

ARGUMENT .......................................................................................................... 8

POINT I ................................................................................................................. 8

    PLAINTIFFS' REQUESTED RELIEF IS OVERLYBROAD............................................ 8

POINT II ............................................................................................................... 10

    ANY IRREPARABLE HARM THAT PLAINTIFFS FACE HAS BEEN CAUSED BY
    THEIR OWN DELAY .......................................................................................... 10

POINT III .............................................................................................................. 12

PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS ......................................... 12

    A.  Plaintiffs Are Not Likely To Succeed On The Merits Of Their Claims Because
    School Districts Are Not Required To Accept A Medical Exemption Without Question 12

    B.  Plaintiff Jane Goe's Claims Against Penfield Central School District Are Not Likely
    To Succeed Because They Are Moot ................................................................... 14

    C.  The Koe Plaintiffs' Claims Are Not Likely To Succeed On The Merits Since They
    Are Not Ripe For Adjudication ........................................................................... 15

    D.  Plaintiffs Are Not Likely to Succeed on the Merits of Their First, Second, Third, or
    Fourth Claims for Relief because Defendants are Not Municipally Liable ................. 16

i.   Plaintiffs fail to show that a district employee was acting pursuant to an expressly adopted official policy.......................................................................................................19

ii.   Plaintiffs fail to show that a district employee was acting pursuant to a longstanding practice or custom ...................................................................................20

iii.  Plaintiffs fail to show that a district employee was acting as a final policymaker 21

E.   Plaintiffs Are Not Likely to Succeed on the Merits Regarding the Fifth or Sixth Claims for Relief as a Matter of Law ....................................................................................23

F.   Plaintiffs Are Not Likely to Succeed on the Merits Because They Have Failed to Exhaust Their Administrative Remedies ..............................................................................24

G.  Plaintiffs Are Not Likely to Succeed on the Merits For the Reasons Stated in the State Defendants' Memorandum of Law in Support of Their Motion to Dismiss and the Co-Defendants' Memoranda of Law in Support of Their Motions to Dismiss ........................25

CONCLUSION...................................................................................................................... 25

## TABLE OF AUTHORITIES

*Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 104 (2d Cir. 2014) ............................................ 16

*Benacquista v. Spratt*, 217 F.Supp.3d 588, 599 (N.D.N.Y. 2016)............................. 17, 18, 21, 22

*Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 425–26 (E.D.N.Y. 2010), *aff'd,* 500 F. App'x 16 (2d Cir. 2012) ............................................................................... 7, 8, 14, 18

*Check v. New York City Dep't of Educ.*, 2013 WL 1211367 at *1, *3 (E.D.N.Y. 2013)................ 8

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-124 (1988) ............................................. 17, 22

*Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d. Cir 1985)................................................... 10

*D.A.B. v. New York City Dep't of Educ.*, 45 F. Supp. 3d 400, 407 (S.D.N.Y. 2014)................... 23

*Farina v. Metropolitan Transportation Authority*, 409 F.Supp.3d 173, 194 (S.D.N.Y. 2019) .... 15

*Griffin v. Doe*, 71 F. Supp. 3d 306, 319 (N.D.N.Y. 2014) (citation omitted)............................... 23

*Hello I Am Elliot, Inc. v. Sine*, 2020 WL 3619505, at *15 (S.D.N.Y. 2020)................................ 10

*Henneberger v. County of Nassau*, 465 F.Supp.2d 176, 197 (E.D.N.Y. 2006)............................ 25

*Hornig v. Trustees of Columbia Univ.*, 2018 WL 5800801, at *7 (S.D.N.Y. 2018) .................... 10

*Hurdle v Board of Educ. of City of New York*, 113 Fed.Appx. 423, 424-425 (2d Cir. 2004) 18, 19, 20, 21

*Jeffes v. Barnes*, 208 F.3d 49, 57–58 (2d Cir. 2000) ................................................................. 18

*Lynch v. Clarkstown Cent. School Dist.*, 155 Misc.2d 846, 847-48 (Sup. Ct. Rockland Cnty. 1992)........................................................................................................................ 13

*Matter of Defend H2O v. Town Board of the Town of East Hampton*, 147 F.Supp.3d 80 (E.D.N.Y. 2015) ............................................................................................... 10

*Maus v. Wappingers Cent. Sch. Dist.*, 688 F. Supp. 2d 282, 302 (S.D.N.Y. 2010)..................... 24

*McCormick v. Annucci*, 2020 WL 1935608, at *3 (N.D.N.Y. 2020) ......................................... 15

*Mirenberg v. Lynbrook Union Free School Dist. Bd. of Educ.*, 63 A.D.943, 943-44 (2d Dep't 2009)........................................................................................................................ 25

*Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 663 (1978) ................ 17, 18, 20

*Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011)................................................................. 17

*National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) .............. 15

*Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) ................................... 20

*NM v. Hebrew Academy Long Beach*, 155 F.Supp.3d 247, 257-59 (E.D.N.Y. 2016)................. 13

*Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007)........................................................... 17

*Rodriguez v. DeBuono,* 175 F.3d 227, 233 (2d Cir. 1999) ......................................................... 7

*Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).......................................................... 17

*Sanders v. Air Line Pilots Ass'n, Int'l*, 473 F.2d 244, 247 (2d Cir. 1972) ...................................... 8

*Schwartz v. Zucker*, Index No. 20195117 at 17 (Sup. Ct. Yates Cnty. 2020).......................... 9, 13

*Sharif by Salahuddin v. New York State Educ. Dep't*, 709 F. Supp. 345, 359 (S.D.N.Y. 1989) .... 8

*Stern v. Shulkin*, 2019 WL 6895417, at *5 (N.D.N.Y. 2019)..................................................... 10

*Vives v City of New York*, 524 F.3d 346, 354 (2d. Cir. 2008)...................................................... 20

*Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 151 (2d Cir. 2002).......................... 24

*Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000) ................................................................. 7

*Zachary v. Clinton Cty., N.Y.*, 2003 WL 24197685, at *2 (N.D.N.Y. 2003), *aff'd,* 86 F. App'x 451 (2d Cir. 2004) ................................................................................................................... 17

## PRELIMINARY STATEMENT

This action arises out of separate but similar decisions by the Lansing Central School District, Coxsackie-Athens School District, Penfield Central School District, Shenendehowa Central School District, and their respective administrators (collectively referred to as "Defendants" or the "School Districts") to reject plaintiffs John Doe, Jane Coe, John Coe, Jane Goe, Jane Koe, John Koe and Janie Koe's (collectively referred to as "Plaintiffs")[1] certifications seeking medical exemptions from mandatory immunizations required for all children attending schools pursuant to New York State Public Health Law ("Public Health Law") § 2164. While Plaintiffs raise a number of constitutional issues within their purported Class Action Complaint filed on July 23, 2020 (the "Complaint") and their Order to Show Cause for Preliminary Injunction and Temporary Restraining Order filed on August 25, 2020 (the "Motion"), when distilled to their essence, Plaintiffs are actually seeking a reversal of the School Districts' decision rejecting their medical exemptions – which is purely a matter of state law.

As part of Plaintiffs' Motion, they seek a preliminary injunction:

1) Stay[ing] the new regulations pertaining to the medical exemption from school immunization requirements codified in 10 NYCRR §66-1;
2) Enjoin[ing] defendants from excluding children from school due to lack of immunization if such child has presented a certification from a licensed physician advising against such immunization; and
3) Order[ing] the Defendants to provide notice to schools, districts, and families that Plaintiffs and similarly situated children may attend school and access federally protected programs[.]

Plaintiffs' Memorandum of Law in Support of Temporary Restraining Order and Preliminary Injunction ("Plaintiffs' Memo."), 1, ECF 41-1. Notably, Plaintiffs are seeking relief

---

[1] The School Districts are only opposing the allegations directed at them because no class has been certified at this time. Since the above-named Plaintiffs were the only children who attended schools within the School Districts, this opposition will only address their allegations.

1

on a class basis including "similarly situated children." *See id.* However, Plaintiffs' request is impermissibly broad. Plaintiffs also fail to meet the high threshold for preliminary injunctive relief.

Plaintiffs' request for a preliminary injunction should be denied because of their own extensive delay in seeking this relief. Here, some Plaintiffs have admitted to waiting more than ten months after they were excluded from classes to seek this relief. Such an inordinate delay in seeking relief is grounds in and of itself for the denial of a preliminary injunction. Further, Plaintiffs are not likely to succeed on the merits of their claims for a number of reasons. First, Plaintiffs' argument that, where a difference in opinion exists between a child's physician and a school district's physician about vaccinations, deference should be afforded to the child's physician is unfounded and against precedent. Courts in New York have consistently held that after a licensed physician submits a medical exemption on behalf of a student, a school is not required to accept this certification at face value and can investigate the claim. Second, the claims that Plaintiffs have asserted against the School Districts cannot stand because Plaintiffs have failed to demonstrate that the School Districts are subject to municipal liability for any 42 U.S.C. § 1983 claims and their claims pursuant to the Rehabilitation Act fail as a matter of law. Additionally, Plaintiffs have failed to exhaust their administrative remedies.

Further, Plaintiff Jane Goe's action is moot as she graduated from high school; the Koe plaintiffs' action is not yet ripe since they never properly sought a medical exemption. Further, for the reasons discussed in the State Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("State's Memo."), ECF 28-1, and in the Memorandum of Law in Support of Defendants' [South Huntington, Ithaca City, Three Village Central and Albany City School Districts and corresponding officials] Motion to Dismiss ("Co-Defendants' Memo."), ECF 54-14, and which the School Districts adopt herein, Plaintiffs are unlikely to succeed on the merits.

## STATEMENT OF FACTS

### A.  New York State Public Health Law § 2164 And Its Implemented Regulations

Pursuant to Public Health Law § 2164, all children in New York between the ages of two months and eighteen years are required to have certain immunizations prior to attending any "public, private or parochial . . . elementary, intermediate or secondary school." *See* Public Health Law §§ 2164(1)(a)-(b), 2164(7)(a). This statute however provides an exception. "If any physician licensed to practice medicine in this state certifies that such immunization may be detrimental to a child's health, the requirements of this section shall be inapplicable until such immunization is found no longer to be detrimental to the child's health." *See* Public Health Law § 2164(8).

On August 16, 2019, the Department of Health issued emergency regulations, which were later adopted and made permanent, that changed the definition of "may be detrimental to the child's health." Under these regulations, "may be detrimental to the child's health means that a physician has determined that a child has a medical contraindication or precaution to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standard of care." 10 NYCRR § 66-1.1(l). Further, 10 NYCRR § 66-1.3(c) was amended and now states that a "principal or person in charge of a school" is prohibited from admitting a child unless they are provided with "[a] signed, completed medical exemption form approved by the NYSDOH or NYC Department of Education from a physician licensed to practice medicine in New York State certifying that immunization may be detrimental to the child's health, containing sufficient information to identify a medical contraindication to a specific immunization and specifying the length of time the immunization is medically contraindicated." Medical exemptions must be "reissued annually" and "***[t]he principal or person in charge of the school may require additional information supporting the exemption***." *Id.* (emphasis added). Accordingly, this regulation

3

permits a principal or other person in charge of a school to further investigate whether a student has submitted an acceptable medical exemption under Public Health Law § 2164(8).

Plaintiffs take issue with (i) the new definition of "may be detrimental to the child's health," and (ii) a "principal or other person in charge of a school['s]" ability to "require additional information supporting" a child's medical exemption.

## B. Procedural Background

Plaintiffs commenced the instant action by filing the Complaint on July 23, 2020. *See* ECF 1. The Complaint asserts six claims against the School Districts: (i) violations of substantive due process rights; (ii) violation of 14th Amendment by burdening liberty interest in parenting; (iii) violation of 14th Amendment by burdening liberty interest in informed consent; (iv) violation of 14th Amendment by burdening minor's right to free public education; and (v) two claims regarding violations of Rehabilitation Act of 1973. *See* Compl. These claims arise out of the School Districts' respective decisions to reject each of the Plaintiffs' medical exemption certificates. *See* Compl. at ¶¶ 1-2, ECF 1.

More than a month after the Complaint was filed, on August 25, 2020, Plaintiffs moved by order to show cause for a preliminary injunction and temporary restraining order "[s]taying the new regulations pertaining to the medical exemption from school immunization requirements codified in 10 NYCRR §66-1" and "[e]njoining defendants from excluding children from school due to lack of immunization if such child has presented a certification from a licensed physician advising against such immunization . . . ." *See* ECF 41 at 1. On August 26, 2020, this Court (Sannes, J.) denied Plaintiffs' request for a temporary restraining order and granted an order to show cause with an expedited briefing schedule regarding the motion for preliminary injunction. *See* ECF 46.

### C.  Plaintiff John Doe

John Doe is a fifteen-year-old student within the Coxsackie-Athens School District. *See* Compl. at ¶ 42. On August 16, 2019, John Doe's parents submitted a medical exemption from his pediatrician to his school district. *See* Affidavit of Randall Squier, Superintendent of Coxsackie-Athens School District, sworn to September 4, 2020, in opposition to Plaintiffs' Motion for a Preliminary Injunction ("Squier Affidavit") at ¶ 4. On September 16, 2019, the Coxsackie-Athens School District denied his medical exemption based upon the opinion of Dr. Stephen G. Hassett, a medical consultant to the school district. *See id.* at ¶ 5 and Exhibit B attached thereto. John Doe's parents submitted a second medical exemption on October 4, 2019, which was also denied. *See* Squier Affidavit at ¶¶ 7-8. As a result, John Doe has been excluded from classes since October 8, 2019. *See id.* at ¶ 10. John Doe's family hired an attorney to file an appeal with the Commissioner of Education on or about November 5, 2019. *See* Jane Doe Declaration. at ¶ 26. On July 30, 2020, the Commissioner of Education denied John Doe's appeal. *See* Squier Affidavit at ¶ 9. Jane Doe then waited more than ten months after her son was excluded from the Coxsackie-Athens School District before seeking injunctive relief.

### D.  Plaintiffs Jane Coe and John Coe

Plaintiffs John Coe and Jane Coe are students living with their parents in the Lansing Central School District. *See* Compl. at ¶ 137. On August 11, 2019, their parents submitted a medical exemption to the school district. *See* Affidavit of Chris Pettograsso, Superintendent of Lansing Central School District, sworn to September 4, 2020, in opposition to Plaintiffs' Motion for a Preliminary Injunction ("Pettograsso Affidavit") at ¶ 4. After reviewing the medical exemptions in consultation with medical staff as well as the New York State Department of Health, on January 21, 2020, the school district informed the Coes that it denied the medical exemptions

*See id.* at ¶ 5. John and Jane Coe have been excluded from their school district since January 27, 2020. *See id*. at ¶ 8. Plaintiffs Jane Coe, Sr. and John Coe, Sr. waited more than six months after their children were excluded from the Lansing Central School District before seeking injunctive relief.

### E.  Plaintiff Jane Goe

Plaintiff Jane Goe is a seventeen-year old who resides with her parents in the Penfield Central School District. *See* Compl. at ¶ 181. No declaration has been submitted on her behalf in connection with the instant motion. On or about August 18, 2019, Jane Goe's physician submitted a medical exemption on her behalf to the Penfield Central School District. *See* Compl. at ¶ 187. While Jane Goe's medical exemption was initially denied on September 11, 2019 and she was temporarily removed from school, she was later readmitted and allowed to attend classes through the end of her senior year of high school. *See* Compl. at ¶¶ 190, 195-202. Jane Goe graduated from Penfield High School and has not enrolled in the Penfield Central School District for the upcoming year. *See* Affidavit of Daniel Driffill, Assistant Superintendent for Business of Penfield Central School District, sworn to September 4, 2020, in opposition to Plaintiffs' Motion for a Preliminary Injunction ("Driffill Affidavit") at ¶¶ 4-5. As such, this case is moot as to plaintiff Jane Goe.

### F.  Plaintiffs Jane Koe, John Koe and Janie Koe

Plaintiffs Jane Koe, John Koe and Janie Koe are all students residing with their parents within the Shenendehowa Central School District. *See* Compl. at ¶ 215. No declaration has been submitted on their behalf in connection with the instant motion. According to the Complaint, before the start of school in 2019, these students had a nurse practitioner submit a medical exemption on their behalf which was rejected by the school district. *See id.* at ¶¶ 224-26. Shenendehowa Central School District has no record of medical exemption applications submitted

on behalf of the Koes. *See* Affidavit of Rebecca Carman, Director of Policy & Community Development and Records Officer of Shenendehowa Central School District, sworn to September 4, 2020, in opposition to Plaintiffs' Motion for a Preliminary Injunction ("Carman Affidavit") at ¶ 4. Regardless, the parties agree that Plaintiffs did not submit a medical exemption from a licensed physician to the Shenendehowa School District. *See* Compl. at ¶ 226; Carman Affidavit at ¶ 7. On September 26, 2019, the Koes' mother "advised the District that her children would not be returning to the District." *Id.* at ¶ 6. Jane Koe, John Koe and Janie Koe stopped attending school on or about October 3, 2019. *See id.* at ¶ 8. Since Plaintiffs Koe never even properly sought an exemption, they have not been injured and as such, their action is not ripe for adjudication.

## LEGAL STANDARD

In order to obtain a preliminary injunction "a plaintiff . . . must generally show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 425–26 (E.D.N.Y. 2010), *aff'd*, 500 F. App'x 16 (2d Cir. 2012) (citation omitted). However, if the preliminary injunction "'will affect 'government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard [under (2)(a), above].'"" *Id.* at 426 (quoting *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000). Further, "when the injunction sought 'will alter rather than maintain the status quo' the movant must show 'clear' or 'substantial' likelihood of success." *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000) (quoting *Rodriguez v. DeBuono,* 175 F.3d 227, 233 (2d Cir. 1999)).

In the present case, the nature of the preliminary injunction sought by Plaintiffs would affect "government action taken in the public interest pursuant to a statutory or regulatory scheme."

*See Check v. New York City Dep't of Educ.*, 2013 WL 1211367 at *1, *3 (E.D.N.Y. 2013) (internal quotation marks and citations omitted). Additionally, the preliminary injunction would "alter rather than maintain the status quo." *See id.* at *3 (internal quotation marks and citation omitted). The students have not been enrolled in their respective schools for quite some time; John Doe has not attended the Coxsackie-Athens School District since October 8, 2019, Jane and John Coe have not attended the Lansing Central School District since January 27, 2020, Jane Goe graduated and is no longer enrolled in the Penfield Central School District, and Jane, John, and Janie Koe have not attended Shenendehowa Central School District since on or about October 3, 2019. *See* Squier Affidavit at ¶ 10; Pettograsso Affidavit at ¶ 8; Driffill Affidavit at ¶ 4; Carman Affidavit at ¶ 8.

Therefore, to obtain the preliminary injunction they seek, Plaintiffs "must show that (1) they face irreparable harm if the injunction does not issue, and (2) there is a clear or substantial likelihood that they will succeed on the merits of their case." *Caviezel*, 701 F. Supp. 2d at 416, 425-26. Plaintiffs do not meet their burden in either respect, and therefore, just like their request for a temporary restraining order, Plaintiffs' request for a preliminary injunction should be denied.

## ARGUMENT

### POINT I

### PLAINTIFFS' REQUESTED RELIEF IS OVERLYBROAD

For a preliminary injunction, "[t]he normal standard of specificity is that the party enjoined must be able to ascertain from the four corners of the order precisely what acts are forbidden." *Sanders v. Air Line Pilots Ass'n, Int'l*, 473 F.2d 244, 247 (2d Cir. 1972) (citation omitted). Preliminary injunctions can be issued prior to class certification. *See Sharif by Salahuddin v. New York State Educ. Dep't*, 709 F. Supp. 345, 359 (S.D.N.Y. 1989). However, in the present case, the Court should not do so for the reasons set forth below.

8

Here, Plaintiffs' sought relief is overly broad in that they are seeking relief on a class basis, including for "similarly situated children," *see* Plaintiffs' Memo. 1, ECF 41-1, prior to a class certification that clearly defines what this would mean. Plaintiffs' proposed class includes "parents of medically fragile children residing in New York State whose licensed medical providers have . . . submitted a medical exemption to a school in New York State and faced unreasonable burdens or denial as a result of the challenged actions of the defendants, their agents and assigns." Compl. at ¶ 32. Plaintiffs' requested relief includes "[o]rder[ing] the Defendants to provide notice to schools, districts, and families that Plaintiffs and similarly situated children may attend school and access federally protected programs[.]" *See* Plaintiffs' Memo. 1. The phrase "faced unreasonable burdens" is too broad to allow the School Districts to determine who is similarly situated to Plaintiffs and therefore comply with the preliminary injunction as requested.

Additionally, if Plaintiffs' sought relief were to be granted, all schools in New York State would need to accept unvaccinated students who "presented a certification from a licensed physician advising against immunization." *See* Plaintiffs' Memo. 1. However, as discussed in further detail in Section III(A), the Legislature specifically granted schools discretion to accept proffered medical exemptions under Public Health Law § 2164(8). *See Schwartz v. Zucker*, Index No. 20195117 at 17 (Sup. Ct. Yates Cnty. 2020). Plaintiffs' requested relief would remove this discretion from schools across the state in contravention of the legislative directive. *See* Compl. at ¶ 82 ("Plaintiffs seek to certify a defendant class of school principals, superintendents, and school districts which have implemented the challenged policies and practices against one or more of the plaintiff class"). This is especially egregious as Plaintiffs' relief seeks not to maintain the status quo, but to change it by requiring schools to admit students, who may pose a health risk to others,

that they had previously been required to exclude. *See* 10 NYCRR 66.1-3. Because Plaintiffs' requested relief is overly broad, the preliminary injunction should be denied.

## POINT II

### ANY IRREPARABLE HARM THAT PLAINTIFFS FACE HAS BEEN CAUSED BY THEIR OWN DELAY

As stated, Plaintiffs' extensive delay in bringing this action undermines their assertion of a threat of immediate irreparable harm. "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Matter of Defend H2O v. Town Board of the Town of East Hampton*, 147 F.Supp.3d 80 (E.D.N.Y. 2015) (citation omitted). A significant factor in assessing whether a plaintiff has shown irreparable harm is delay in seeking injunctive relief. *Hello I Am Elliot, Inc. v. Sine*, 2020 WL 3619505, at *15 (S.D.N.Y. 2020) (citation omitted). This is because "'preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights" and "[d]elay in seeking enforcement of those rights . . . tends to indicate at least a reduced need for such drastic remedy.'" *Stern v. Shulkin*, 2019 WL 6895417, at *5 (N.D.N.Y. 2019) (citing *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d. Cir 1985)).

Where – as here – a plaintiff delays in making a motion for a preliminary injunction, courts have found that such a delay weighs heavily against a finding of irreparable harm. *See e.g., Hornig v. Trustees of Columbia Univ.*, 2018 WL 5800801, at *7 (S.D.N.Y. 2018) (finding that plaintiff's two-and-a-half month delay in bringing a motion for preliminary injunction undermined any irreparable harm); *Defend H2O*, 147 F.Supp.3d at 80 (determining that a delay of five months in making a motion for preliminary injunction weighs against a finding of irreparable harm); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) (finding that a ten week delay in seeking a preliminary injunction undermined a claim for irreparable harm).

Here, certain plaintiffs decided to wait several months after their children were excluded from school before seeking injunctive relief. For example, John Doe – a student in the Coxsackie-Athens School District – was excluded from his school district since October 8, 2019. *See* Squier Affidavit at ¶ 10. This is more than a ten-month gap between the time he was alleged to have been excluded from school to his mother's decision to seek the instant injunctive relief. Jane Doe also states that she hired an attorney on November 5, 2019 to file an appeal with the Commissioner of Education and did not receive a response to it until "[t]hree days after filing the complaint." *See* Jane Doe Declaration at ¶¶ 26-29. The fact that she hired an attorney at that time demonstrates she could have sought a preliminary injunction well before this Motion was filed.

Similarly, John Coe and Jane Coe – students in the Lansing Central School District – were excluded from their schools on January 27, 2020. *See* Pettograsso Affidavit at ¶ 8. This is a gap of almost seven months between when these children were removed from classes to when this Motion was filed. Further, as of January 27, 2020 the Coe family had also retained an attorney in connection with their children's removal from classes. *See id.* at ¶ 6 and Exhibit C attached thereto. Just as Jane Doe had the ability to do so, John Coe Sr. and Jane Coe Sr. could have sought a preliminary injunction months ago, well before this Motion was filed.

Jane Koe, John Koe and Janie Koe – students residing within the Shenendehowa Central School District – have not attended school since on or about October 3, 2019. *See* Carman Affidavit at ¶ 8. Thus, these individual plaintiffs waited over ten months before seeking injunctive relief. Moreover, Plaintiffs Koe may not have had to resort to any legal means in order to be enrolled within the Shenendehowa Central School District because a medical exemption issued by a licensed physician on their behalf – which is required under Public Health Law § 2164(8) – could have potentially resolved their issues. The Koes' failure to submit the proper medical exemption

certificate also indicates that the immediate irreparable harm they allegedly face is caused by their own failure to comply with the clear language of Public Health Law § 2164(8). In fact, until they comply with the statute and are denied an exemption, they have not suffered an injury capable of redress by this Court.

As for Jane Goe, she graduated from Penfield Central High School and is no longer enrolled in the Penfield Central School District. *See* Driffill Affidavit at ¶¶ 4-5. As a result, she does not face any harm whatsoever warranting injunctive relief.

Moreover, the timing between the filing of the Complaint and the instant motion also undermines any finding of immediate harm. Plaintiffs filed their Complaint on July 23, 2020 and subsequently filed this Motion more than a month later on August 25, 2020. Plaintiffs deliberately chose to wait until right before the school year began to seek injunctive relief. Plaintiffs' self-created need for injunctive relief should not be rewarded. Accordingly, their motion for a preliminary injunction should be denied.

## POINT III

## PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

### A. Plaintiffs Are Not Likely To Succeed On The Merits Of Their Claims Because School Districts Are Not Required To Accept A Medical Exemption Without Question

The basis of Plaintiffs' claims is that when a student provides a certification from a licensed physician stating that immunizations are "detrimental to a child's health," a school district should defer to the physician's submitted certification about the risk of immunization. This argument is unfounded and is contradicted by the language of 10 NYCRR § 66-1.3(c), which expressly permits a "principal or other person in charge" to "require additional information supporting the exemption." Further, similar arguments have been rejected by courts in New York.

For example, in *Lynch v. Clarkstown Cent. School Dist.*, parents brought an Article 78 proceeding against their daughter's school district after it rejected a medical exemption certification submitted by her physician. 155 Misc.2d 846, 847-48 (Sup. Ct. Rockland Cnty. 1992). The court rejected the parents' argument that "in applying section 2164 the District may look no further than the face of Dr. Yutsis' 'certificate,' since he is a physician licensed to practice in the state of New York." *Id.* at 849-50. Instead, the court determined that the school district did not act in an arbitrary or capricious manner when it referred the medical exemption in question to its chief medical officer for further investigation. *Id.* at 850-51. The court ultimately upheld the school district's decision to remove the student from classes until she complied with the vaccination requirements of Public Health Law § 2164. *Id.* at 856. Similarly, in *Schwartz v. Zucker*, the court held that, pursuant to Public Health Law § 2164, a school does not need to simply accept a medical exemption certification without further inquiry. *See Schwartz v. Zucker*, Index No. 20195117 (Sup. Ct. Yates Cnty. 2020). In *Schwartz*, the court specifically stated that "Public Health Law § 2164(8) does not create a ministerial duty for a school principal to accept a certification without challenge" and that "the school was not required to accept a certification without investigation." *Id.* at 17.

Prior cases involving the now repealed religious exemption to immunizations provided by Public Health Law § 2164(9) also demonstrates that schools are not required to take an exemption to vaccinations without question and may investigate into whether a student truly needs one. *See e.g., NM v. Hebrew Academy Long Beach*, 155 F.Supp.3d 247, 257-59 (E.D.N.Y. 2016) (denying preliminary injunction to admit student in school during pendency of lawsuit after the school had rejected the student's religious exemption to vaccinations because the student's parents failed to demonstrate a "genuine and sincere religious belief" as required by statute); *Caviezel v. Great Neck Public Schools*, 701 F.Supp.2d 414, 429-30 (E.D.N.Y. 2010) *aff'd* 500 Fed. Appx 16 (2d Cir.

2012) (denying plaintiff's preliminary injunction to compel school district to register child without being vaccinated due to a religious exemption because the child's parents failed to prove that their objections were "religious in nature").

Here, the School Districts were permitted to investigate and determine whether it was medically necessary for Plaintiffs to be exempt from the mandatory immunization requirements pursuant to Public Health Law § 2164. In fact, licensed physicians reviewed each student's medical exemption and determined that they were not warranted. For example, John Doe's medical exemption was denied after it was reviewed by Dr. Stephen G. Hassett, a medical consultant for the Coxsackie-Athens Central School District. *See* Squier Affidavit at ¶¶ 5-8 and Exhibit B attached thereto. Similarly, Jane Coe and John Coe's medical exemptions were denied upon their review by the New York State Department of Health. *See* Pettograsso Affidavit at ¶ 5.

As noted, Shenendehowa Central School District has no record of medical exemption applications submitted on behalf of the Koes. *See* Carman Affidavit at ¶ 4. However, even if a nurse practitioner submitted a medical exemption on behalf of Jane Koe, John Koe and Janie Koe, *see* Compl. at ¶¶ 224-25, this is improper under Public Health Law § 2164(8). The statute specifically requires that a "physician licensed to practice in" New York submit a certification, not a nurse practitioner. *See* Public Health Law § 2164(8). Accordingly, even if such an exemption request was submitted, their facially invalid certificates of exemption would be properly denied.

Since it is clear that Defendants were not required to simply accept the medical exemptions submitted by Plaintiffs and could investigate them further to determine if an exemption was actually medically necessary, Plaintiffs' claims fail and are not likely to succeed on their merits.

**B. Plaintiff Jane Goe's Claims Against Penfield Central School District Are Not Likely To Succeed Because They Are Moot**

Article III, § 2 of the United States Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. *McCormick v. Annucci*, 2020 WL 1935608, at *3 (N.D.N.Y. 2020). "This means that, throughout the litigation, the petitioner must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (internal quotation marks and citation omitted). "Thus, a case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* (same).

Here, it is clear that plaintiff Jane Goe's claims are moot. She graduated from Penfield High School on July 30, 2020 and is no longer enrolled in the Penfield Central School District. *See* Driffill Affidavit at ¶¶ 4-5. Since Jane Goe graduated from this school district, she no longer faces any harm and the injunctive relief that Plaintiffs seek will not benefit her. Accordingly, Jane Goe's claims are moot and not likely to succeed.

**C. The Koe Plaintiffs' Claims Are Not Likely To Succeed On The Merits Since They Are Not Ripe For Adjudication**

"To be justiciable, a cause of action must be ripe – it must present a real, substantial controversy, not a mere hypothetical question." *National Organization for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (internal quotation marks and citations omitted). "Ripeness is peculiarly a question of timing." *Id.*(same). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Farina v. Metropolitan Transportation Authority*, 409 F.Supp.3d 173, 194 (S.D.N.Y. 2019) (internal quotation marks and citations omitted). "The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *National Organization for Marriage, Inc.*, 714 F.3d at 687 (internal quotation marks and citations omitted). "In considering whether a claim is ripe, a federal court must consider

15

(1) the fitness of the issues for judicial decision; and (2) the hardship to the parties of withholding court consideration." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 104 (2d Cir. 2014) (internal citations and quotation marks omitted).

Here, it is clear that the Koe plaintiffs' claims are not yet fit for adjudication. Shenendehowa Central School District has no record of medical exemption applications submitted on behalf of the Koes. *See* Carman Affidavit at ¶ 4.  Per the Complaint, the Koe plaintiffs had a nurse practitioner submit a medical exemption certificate on their behalf. *See* Compl. at ¶¶ 224-25. This is not in compliance with Public Health Law § 2164(8), which requires that a "physician licensed to practice medicine" submit a medical exemption certifying that immunizations are detrimental to a child's health. Thus, the School District would be required to reject such a medical exemption if it was submitted.  As a result, there has been no violation of this statute or any constitutional right that this Court can address.

Furthermore, there is no hardship to the Koe plaintiffs if this Court refuses to consider their claims. If this Court chooses not to hear these plaintiffs' claims, they can still be admitted in their School District if they submit a medical exemption by a licensed physician and it is approved. Even if their medical exemption is denied, they still have multiple avenues to appeal the rejection. As a result, the Koe plaintiffs face no hardship severe enough to warrant this Court's consideration.

### D. Plaintiffs Are Not Likely to Succeed on the Merits of Their First, Second, Third, or Fourth Claims for Relief because Defendants are Not Municipally Liable

Plaintiffs do not have a clear or substantial likelihood that they will succeed on their First, Second, Third, or Fourth Claims for Relief because they have not shown that the School Districts and corresponding individual defendants, all of whom are sued only in their official capacities, can be held liable under 42 U.S.C. § 1983. Plaintiffs' first four Claims for Relief are brought under the Fourteenth Amendment to the United States Constitution "as made actionable pursuant to 42

U.S.C. sec. 1983." *See* Compl., ¶¶ 28, 359, 362, 366, 371.  "Municipal entities, including school districts, are 'persons' within the meaning of § 1983 and therefore subject to suit under that provision." *Nagle v. Marron*, 663 F.3d 100, 116 (2d Cir. 2011) (citing *Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 663 (1978). However, municipalities are only held liable in certain circumstances; these circumstances were discussed by the Supreme Court in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978) ("*Monell*"), and its progeny. *See, e.g., City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-124 (1988) (citations omitted). Notably "*Monell* draws no distinction between injunctive and other forms of relief and, by its own terms, requires attribution of misconduct to a municipal policy or custom in suits seeking monetary, declaratory or injunctive relief." *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) (citations omitted).

In municipal liability cases*,* "[a]n official capacity suit against a public servant is treated as one against the governmental entity itself." *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) (citations omitted). Thus, "[c]laims against individual defendants in their official capacities . . . are redundant when the municipality is also named as a defendant." *Zachary v. Clinton Cty., N.Y.*, 2003 WL 24197685, at *2 (N.D.N.Y. 2003), *aff'd,* 86 F. App'x 451 (2d Cir. 2004) (internal quotation marks and citation omitted). All non-school district Defendants here are sued in their official capacities. *See* Compl. at ¶¶ 62-64, 66, 74-76, 78. Thus, the claims against them will not succeed because they should be dismissed as redundant. *See Zachary,* 2003 WL 24197685, at *2.

Ultimately, when bringing a 42 U.S.C. § 1983 ("§ 1983") claim against a municipality, Plaintiffs must demonstrate, among other things, that "'an official policy of the municipality caused the constitutional injury.'" *See Benacquista v. Spratt*, 217 F.Supp.3d 588, 599 (N.D.N.Y. 2016) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)).

17

> [A] plaintiff may satisfy this . . . element with evidence of: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Id.* at 599-600 (internal quotation marks and citation omitted). In other words, "[a] school district's liability under *Monell* may be premised on" a district employee acting (1) "pursuant to an expressly adopted official policy;" (2) "pursuant to a longstanding practice or custom;" or (3) "as a 'final policymaker.'" *Hurdle v Board of Educ. of City of New York*, 113 Fed.Appx. 423, 424-425 (2d Cir. 2004) (citations omitted).

Plaintiffs have the burden of proof to show that a municipality is liable. *See Benacquista,* F.Supp.3d at 599-600; *see also Jeffes v. Barnes*, 208 F.3d 49, 57–58 (2d Cir. 2000). In the Complaint, Plaintiffs state that each of the School Districts is "a municipal corporation" that "may sue and be sued." *See* Compl. at ¶¶ 61, 65, 73, 77. However, despite conceding that the School Districts are municipal in nature, Plaintiffs make no allegations or arguments specifically directed at demonstrating municipal liability pursuant to *Monell* for either the School Districts or their officials. *See* Compl.; Plaintiffs' Memo.; Sujata S. Gibson Declaration; Jane Doe Declaration; John Coe Declaration (collectively, "Plaintiffs' filings"). Any incidentally applicable allegations are too conclusory or general to meet Plaintiffs' burden, *see e.g.* Compl. at ¶ 21 (referencing "adoption of the procedures and policies prompted by the NYSDOH Regulations"), and therefore Plaintiffs have not shown "a clear or substantial likelihood that they will succeed on the merits of their case," *see Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 425–26 (E.D.N.Y. 2010), *aff'd,* 500 F. App'x 16 (2d Cir. 2012), with regards to the first four claims for relief.

18

i.  **Plaintiffs fail to show that a district employee was acting pursuant to an expressly adopted official policy**

The first theory involves "acting pursuant to an expressly adopted official policy." *See Hurdle*, 113 Fed.Appx. at 424-425 (citations omitted). Though Plaintiffs make references to Defendants' "policies" and "procedures" throughout Plaintiffs' filings, *see e.g.* Compl. at ¶ 1, 83, 263; Plaintiffs' Memo. 12, there is no identification of an explicit policy adopted by the School Districts. In Plaintiffs' filings, the only explicit rules identified, other than the Public Health Law, are those in 10 NYCRR § 66-1, which are, as Plaintiffs concede, regulations implemented by the New York State Department of Health. *See* Compl. at ¶ 21; *see also* Plaintiffs' Memo. at 2.

If Plaintiffs intend to argue that Defendants are subject to municipal liability because, by following the regulations, Defendants' have adopted the provisions of 10 NYCRR § 66.1 – a mandatory regulation implemented by the New York State Department of Health – or the following of these provisions as an explicit policy, they will be unsuccessful. The School Districts are required to follow Public Health Law § 2164(7) and 10 NYCRR § 66-1. Specifically, Public Health Law § 2164(7)(a) states "[n]o principal, teacher, owner or person in charge of a school shall permit any child to be admitted to such school, or to attend such school in excess of fourteen days, without the certificate [of immunization] or some other acceptable evidence of the child's immunization . . . ." Public Health Law § 2164(7)(a). Similarly, 10 NYCRR § 66-1.3 states that "[a] principal or person in charge of a school shall not admit a child to school unless a person in parental relation to the child has furnished the school with" one of three options, including "[a] signed, completed medical exemption form approved by the NYSDOH or NYC Department of Education from a physician licensed to practice medicine in New York State certifying that immunization may be detrimental to the child's health" and which meets other requirements

contained in the statute. 10 NYCRR § 66-1.3. Using the definition for "may be detrimental to the child's health" as provided for in 10 NYCRR § 66-1.1 is therefore also mandatory.

Further, there are penalties for non-compliance. The New York State Department of Health sent a letter to schools stating, in part

> that findings of violations of the Public Health Law may result in the imposition of a civil penalty of up to $2,000 per violation. Each student who is permitted to attend school in violation of the requirement of Section 2164(7)(a) constitutes the basis for a separate violation of the Public Health Law for which a civil penalty may be imposed.

*Dear Superintendent/Principal/School Nurse Regarding Public Health Law 2164(7)(a),* N.Y. Dep't of Health, (Revised August 2019, last visited September 2, 2020), available at https://www.health.ny.gov/prevention/immunization/schools/public_health_law_section_2164_1 etter.htm. The described penalty matches Public Health Law § 12. *See* Public Health Law § 12(a).

The Second Circuit has held that in order for a municipality to be liable under *Monell*, there must have been a "conscious choice" in adopting the policy at issue. *See Vives v City of New York*, 524 F.3d 346, 354 (2d. Cir. 2008). When "state laws mandat[e] enforcement[,] . . . a municipality's decision to honor this obligation is not a conscious *choice*." *Id.* (emphasis in original). "As a result, the municipality cannot be liable under *Monell* in this circumstance." *Id.* Thus, to the extent that Plaintiffs want to hold Defendants municipally liable for following the law, they cannot do so.

### ii. Plaintiffs fail to show that a district employee was acting pursuant to a longstanding practice or custom

Plaintiffs are also unlikely to prevail under the second theory of municipal liability for "longstanding practice or custom*." See Hurdle v Board of Educ. of City of New York*, 113 Fed.Appx. 423, 424-425 (2d Cir. 2004) (citations omitted). "[A] custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee." *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008) (citation omitted). Here, Plaintiffs have

only indicated one instance per School District regarding the application of Public Health Law §
2164 and 10 NYCRR § 66-1.3. *See* Plaintiffs' filings. This is insufficient to establish a custom as
required by *Monell* and thus the School Districts are not municipally liable under this theory.

> ### iii.    Plaintiffs fail to show that a district employee was acting as a final policymaker

The third theory involves "a district employee . . . acting as a 'final policymaker.'"  *See
Hurdle*, 113 Fed.Appx. at 424-425 (citations omitted). This theory covers "actions taken by
government officials responsible for establishing the municipal policies that caused the particular
deprivation in question" and "a failure by policymakers to provide adequate training or supervision
. . . ." *See Benacquista v. Spratt*, 217 F.Supp.3d 588, 599 (N.D.N.Y. 2016) (citation and internal
quotation marks omitted). If no School Districts officials were acting as final policymakers, then
any failure by policymakers to train or supervise is not attributable to the School Districts.

"The authority to make municipal policy is necessarily the authority to make *final* policy."
*Id.* at 127 (citation omitted). Thus,

> [w]hen an official's discretionary decisions are constrained by policies not of that
> official's making, those policies, rather than the subordinate's departures from them,
> are the act of the municipality. Similarly, when a subordinate's decision is subject
> to review by the municipality's authorized policymakers, they have retained the
> authority to measure the official's conduct for conformance with *their* policies.

*Id.* An official need not be "a municipal policymaker for all purposes," but "must be responsible
under state law for making policy *in that area* of the [municipality's] business, or must have the
power to make official policy *on a particular issue,* or must possess[ ] final authority to establish
municipal policy *with respect to the action ordered." Hurdle*, 113 Fed.Appx. at 425 (internal
quotation marks and citations omitted) (emphasis and alterations in original). Notably, being a
final decisionmaker is not the same as being a final policymaker. *See id.* at 426 (citations omitted).

Policymaking authority can come from legislation or be delegated by an official with authority to do so. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988). Determining who qualifies as a policymaker is a matter of state law. *See id.* "[A] federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Id.* Here, the applicable law, Public Health Law § 2164, states that "[t]he commissioner [of health of the state of New York] may adopt and amend rules and regulations to effectuate the provisions and purposes of this section." Public Health Law § 2164(10). Additionally, though the directive regarding exclusion of unvaccinated children is addressed to a "principal, teacher, owner or person in charge of a school," "[a] parent, a guardian or any other person in parental relationship to a child denied school entrance or attendance may appeal by petition to the commissioner of education." Public Health Law §§ 2164(7)(a)-(b). Thus, the law is putting the authority for municipal policy making on this subject in the hands of the Commissioner of Health or the Commissioner of Education, not the School Districts or their officials. The Commissioner of Health is the one authorized by statute to make official rules and regulations on this topic, and the School Districts are required to follow Public Health Law § 2164 and the regulations issued pursuant to it, including 10 NYCRR §§ 66-1.3 and 66-1.1. *See* Public Health Law §§ 2164(7)(b) and 2164(10); 10 NYCRR § 66-1.3. These regulations lay out the requirements for medical exemptions to vaccinations, *see* 10 NYCRR § 66-1.3, and, unless the exemptions meet these requirements, School Districts cannot accept them by law.

Ultimately, Plaintiffs cannot demonstrate that "an official policy of the municipality caused the constitutional injury." *See Benacquista v. Spratt*, 217 F.Supp.3d 588, 599 (N.D.N.Y. 2016) (internal quotation marks and citation omitted). Thus, there is no municipal liability for Defendants

22

and Plaintiffs are unlikely to succeed on the merits of their first four claims of relief. Thus, Plaintiffs' request for a preliminary injunction should be denied.

**E. Plaintiffs Are Not Likely to Succeed on the Merits Regarding the Fifth or Sixth Claims for Relief as a Matter of Law**

Plaintiffs also do not have a clear or substantial likelihood that they will succeed on their Fifth or Sixth Claims for Relief, both of which are brought pursuant to the Rehabilitation Act of 1973.[2] "In order to state a claim under section 504 of the Rehabilitation Act," Plaintiffs must demonstrate four elements, including that "she was denied the benefit solely because of her disability." *See Griffin v. Doe*, 71 F. Supp. 3d 306, 319 (N.D.N.Y. 2014) (citation omitted). Plaintiffs are not likely, let alone clearly or substantially likely, to succeed on the merits of these claims because, even if the other elements were satisfied, the students were not precluded from attending school because of their disabilities; they were excluded because they were not vaccinated and were deemed not to qualify for a medical exemption. Plaintiffs essentially concede as much. *See, e.g.,* Compl. at ¶ 44 ("Jane and John have been excluded from school since January 2020 after the medical exemption submitted . . . was denied."); Compl. at ¶ 31 (describing the Plaintiffs to "include families of medically fragile children whose medical exemption has been denied or subjected to overburdensome harmful requirements").

Courts have previously rejected the attenuated argument Plaintiffs make, namely that because a disability precludes a vaccination, the disability is the ultimate cause of the exclusion, not the lack of either a required vaccination or demonstrated exemption from vaccination. *See D.A.B. v. New York City Dep't of Educ.*, 45 F. Supp. 3d 400, 407 (S.D.N.Y. 2014). Plaintiffs' claims should likewise be rejected. Also, the claims against the individual Defendants fail as a matter of law

---

[2] Though only the Fifth Claim for Relief refers to a specific section – section 504 – Defendants presume that both Claims for Relief are brought pursuant to this section.

because "individuals cannot be named as defendants in . . . Rehabilitation Act suits in their official

. . . capacities." *Maus v. Wappingers Cent. Sch. Dist.*, 688 F. Supp. 2d 282, 302 (S.D.N.Y. 2010)

(internal quotation marks and citation omitted).

Violations of Section 504 of the Rehabilitation Act can be the basis for § 1983 claims. *See*

*Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 151 (2d Cir. 2002). To the extent that

Plaintiffs are bringing § 1983 claims based on the alleged violations of the Rehabilitation Act, they

will be unsuccessful because Plaintiffs have not demonstrated that there is municipal liability for

any of the Defendants under § 1983 for the reasons discussed above in subsection B. Therefore,

Plaintiffs are unlikely to succeed on the merits of their fifth and sixth claims of relief and Plaintiffs'

request for a preliminary injunction should be denied.

F.   **Plaintiffs Are Not Likely to Succeed on the Merits Because They Have Failed to Exhaust Their Administrative Remedies**

As discussed in both the State Defendants' and Co-Defendants' motions to dismiss, and

adopted herein, the constitutional challenges to the legality of regulations issued under Public

Health Law § 2164 should be dismissed as a matter of law. To the extent that Plaintiffs are

challenging the application of this statute and regulations, these claims will not succeed on their

merits because Plaintiffs have failed to exhaust the administrative remedies available to them.

New York law provides two routes to appeal a school's rejection of a medical exemption:

(i) an appeal by petition to the Commissioner of Education pursuant to Public Health Law §

2164(7)(b); and (ii) an Article 78 proceeding. Prior to commencing this class action, with the

exception of John Doe, Plaintiffs should have used one of these avenues of appeal, or a

combination of both. This is because courts in New York require individuals challenging

administrative determinations to exhaust administrative remedies prior to seeking relief from a

court. *See e.g., Mirenberg v. Lynbrook Union Free School Dist. Bd. of Educ.*, 63 A.D.943, 943-44

(2d Dep't 2009); *Henneberger v. County of Nassau*, 465 F.Supp.2d 176, 197 (E.D.N.Y. 2006) (holding that the New York administration exhaustion requirement applies to state law claims in federal court). Here, since none of the Plaintiffs exhausted their administrative remedies by either (i) appealing to the Commissioner of Education, and then initiating an Article 78 proceeding if they didn't receive a favorable decision; or (ii) initially commencing an Article 78 proceeding, they are unlikely to succeed on the merits of their claims.

### G. Plaintiffs Are Not Likely to Succeed on the Merits For the Reasons Stated in the State Defendants' Memorandum of Law in Support of Their Motion to Dismiss and the Co-Defendants' Memoranda of Law in Support of Their Motions to Dismiss

In order to avoid needless repetition and additional work for this Court, Defendants adopt the applicable arguments in the State's Memo. and Co-Defendants' Memo. Specifically, Defendants adopt the arguments in the State's Memo. set forth in Point I, Point II, and Point III. *See* State's Memo. 9-23. Defendants also adopt the arguments set forth in Points I-VIII in the Co-Defendants' Memo. *See* Co-Defendants' Memo. 7-22. For the reasons set forth in those arguments, Plaintiffs are unlikely to succeed on the merits of any of their claims.

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion in its entirety and award such other relief as the Court deems appropriate.

Respectfully submitted,

CULLEN AND DYKMAN LLP

By:   s/ *James G. Ryan*

James G. Ryan (514300)
*Attorneys for Defendants*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
Phone: (516) 357-3750
Email: jryan@cullenllp.com