UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JANE DOE, *et al.*,

                                        *Plaintiffs*,

                -against-                                1:20-CV-0840
                                                          (BKS)(CFH)

HOWARD ZUCKER, in his official capacity as
Commissioner of the New York State Department of
Health, *et al.*,

                                        *Defendants*.


**STATE DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**


                        LETITIA JAMES
                        Attorney General of the State of New York
                         *Attorney for Defendants Howard Zucker, M.D.,
                        J.D., Elizabeth Rausch-Phung, M.D., and the
                        N.Y.S. Department of Health*
                        The Capitol
                        Albany, NY 12224

MICHAEL G. McCARTIN
Assistant Attorney General
        *Of Counsel*
Bar Roll No. 511158
Telephone: (518) 776-2620

ANDREW W. KOSTER
Assistant Attorney General
        *Of Counsel*
Bar Roll No. 701106
Telephone: (518) 776-2609

September 4, 2020

Table of Contents

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

     A..............................................................Mandatory Vaccination Laws in New York State
............................................................................................................................................. 2

     B.........................................................DOH Emergency Medical Exemption Regulations
............................................................................................................................................. 4

STANDARD OF REVIEW ..................................................................................................... 5

ARGUMENT .......................................................................................................................... 6

     POINT I. PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY ARE LIKLEY TO
     SUCCEED ON THE MERITS .......................................................................................... 6

          A.Plaintiffs cannot prevail on their constitutional claims...................................... 6

          B.Plaintiffs cannot prevail on their Rehabilitation Act claims ............................ 13

     POINT II. PLAINTIFFS HAVE NOT ESTABLISHED IRREPARABLE HARM ........ 14

     POINT III. THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST FAVOR
     DOH.................................................................................................................................. 16

Conclusion ............................................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*5464 Route 212, LLC v. N.Y. State DOT,*
   No. 1:19-cv-01510, 2020 U.S. Dist. LEXIS 66905 (N.D.N.Y. Apr. 16, 2020) ................................. 10

*Abrams v. Waters,*
   2018 U.S. Dist. LEXIS 49206 (D. Conn. Mar. 26, 2018) ................................................... 17

*Altman v. Cty. of Santa Clara,*
   2020 U.S. Dist. LEXIS 97535 (N.D. Cal. June 2, 2020) ................................................... 12

*Angstadt v. Midd-West Sch. Dist.,*
   377 F.3d 338 (3d Cir. 2004) ............................................................................ 11

*Arbitron Co. v. Phx. Broad. Corp.,*
   1997 U.S. Dist. LEXIS 11516 (S.D.N.Y. Aug. 6, 1997) ................................................... 10

*Boone v. Boozman,*
   217 F. Supp. 2d 938 (E.D. Ark. 2002) ............................................................... 11-12

*Browning-Ferris Indus. of S. Jersey, Inc. v. Muszynski,*
   899 F.2d 151 (2d Cir. 1990) ............................................................................ 15

*Bryant v. N.Y. State Educ. Dep't,*
   692 F.3d 202 (2d Cir. 2012) ............................................................................ 18

*Chemical Waste Management, Inc. v. United States Environmental Protection Agency,*
   56 F.3d 1434 (D.C. Ct. App. 1995) ..................................................................... 16

*CSI Entm't v. Anthem Media Grp., Inc.,*
   2016 U.S. Dist. LEXIS 180749 (E.D.N.Y. Dec. 30, 2016) ................................................. 19

*D.A.B. v. NYC Dep't of Educ.,*
   45 F. Supp.3d 400 (S.D.N.Y. 2014), aff'd 630 Fed. Appx. 73 (2d Cir. 2015) ............................... 17

*DiMartile v. Cuomo,*
   2020 U.S. Dist. LEXIS 141384 (N.D.N.Y. Aug. 7, 2020) (Suddaby, C.J.) ................................. 11

*Doe v. Perille,*
   2018 U.S. Dist. LEXIS 189409 (D. Mass. Nov. 6, 2018) ................................................. 20

*Donohue v. Mangano,*
   886 F. Supp. 2d 126 (E.D.N.Y. 2012) ................................................................... 18

*F.F. v. State,*
   65 Misc. 3d 616 (Sup. Ct. Albany Cty. Aug. 23, 2019) ............................................... 7, 22

*F.F. v. State,*
   66 Misc. 3d 467 (Sup. Ct. Albany Co. Dec. 3, 2019) ..................................................... 7

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009) ................................................................................ 18

*Garcia v. N.Y.C. Dep't of Health & Mental Hygiene*,
    31 N.Y.3d 601 (2018)......................................................................................... 15

*Givens v. Newsom*,
    2020 U.S. Dist. LEXIS 81760 (E.D. Cal. May 8, 2020) ................................... 15

*Golden Krust Patties, Inc. v. Bullock*,
    957 F. Supp. 2d 186 (E.D.N.Y. 2013)............................................................... 21

*Hanson Trust PLC v. ML SCM Acquisition Inc.*,
    781 F.2d 264 (2d Cir. 1986) ................................................................................ 9

*Hornig v. Trustees of Columbia Univ. in City of New York*,
    2018 U.S. Dist. LEXIS 189268 (S.D.N.Y. Nov. 5, 2018)................................. 19

*Huls Am. v. Browner*,
    83 F.3d 445 (D.C. Cir. 1996)............................................................................. 15

*Jacobson v. Commonwealth of Massachusetts*,
    197 U.S. 11 (1905) ................................................................................... 6, 11, 14

*League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*,
    2020 U.S. App. LEXIS 19691 (6th Cir. June 24, 2020).............................. 11, 15

*Levola v. Fischer*,
    403 F. App'x 564 (2d Cir. Dec. 14, 2010) ........................................................ 19

*Livery Round Table, Inc. v. New York City FHV & Limousine Comm'n*,
    2018 U.S. Dist. LEXIS 65524 (S.D.N.Y. Apr. 18, 2018) ................................ 19

*Lore v. City of Syracuse*,
    No 00 CV 1833, 2001 WL 263051 (N.D.N.Y. Mar. 9, 2001)........................... 18

*Main St. Baseball, LLC v. Binghamton Mets Baseball Club, Inc.*,
    103 F. Supp. 3d 244 (N.D.N.Y. 2015) .............................................................. 20

*Matter of Viemeister*,
    179 N.Y. 235 (1904)............................................................................................ 6

*Mehmeti v. N.Y. Bd. of Educ.*,
    2020 U.S. Dist. LEXIS 134505 (E.D.N.Y. July 29, 2020)............................... 18

*Mermigis v. Cuomo*,
    Index No. 608729/2019 ....................................................................................... 7

*Middleton v. Pan*,
    2017 U.S. Dist. LEXIS 216203 (C.D. Cal. Dec. 18, 2017) .............................. 14

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
  883 F.3d 32 (2d Cir. 2018) ................................................................................. 10

*N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.*,
  684 F.3d 286 (2d Cir. 2012) ............................................................................... 10

*Nat'l Ass'n of Theatre Owners v. Murphy*,
  2020 U.S. Dist. LEXIS 148902 (D.N.J. Aug. 18, 2020) ..................................... 12

*New York ex rel. Schneiderman v. Actavis PLC*,
  787 F.3d 638 (2d Cir. 2015) ............................................................................... 18

*Oliver v. N.Y. State Police*,
  No. 1:15-cv-00444, 2019 U.S. Dist. LEXIS 76272 (N.D.N.Y. May 6, 2019) (Sannes,
  J.) ........................................................................................................................ 19

*Phillips v. City of N.Y.*,
  775 F.3d 538 (2d Cir. 2015) ......................................................................... 11, 14

*Salinger v. Colting*,
  607 F.3d 68 (2d Cir. 2010) ................................................................................. 21

*South Bay United Pentecostal Church v. Newsom*,
  140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) ............................................ 13

*Stoltzfus v. Cuomo*,
  Index No. 20190311 ............................................................................................. 7

*Sullivan-Knapp v. Cuomo*,
  Index No. E2019-1338CV ...................................................................................... 7

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,
  60 F.3d 27 (2d Cir. 1995) ................................................................................... 10

*Turley v. Giuliani*,
  86 F. Supp. 2d 291 (S.D.N.Y. 2000) .................................................................. 18

*United States v. Salerno*,
  481 U.S. 739 (1987) ............................................................................................ 16

*V.D. v. State*,
  403 F. Supp. 3d 76 (E.D.N.Y. 2019) ............................................................... 7, 20

*Wash. State Grange v. Wash. State Republican Party*,
  552 U.S. 442 (2008) ........................................................................................ 15-16

*Whitlow v. Cal. Dep't of Educ.*,
  203 F. Supp. 3d 1079 (S.D. Cal. 2016) .............................................................. 11

*Workman v. Mingo Cty. Bd. of Educ.*,
  419 F. App'x 348 (4th Cir. 2011) ....................................................................... 13

*Wren v. Midwestern State Univ.*,
  2019 U.S. Dist. LEXIS 118143 (N.D. Tex. June 25, 2019) ................................................. 17

*Zucht v. King*,
  260 U.S. 174 (1922) ................................................................................................... 6, 11

**CONSTITUTIONS**

14th Amendment .................................................................................................................... 13

**STATE STATUTES**

Mandatory Vaccination Laws ................................................................................................. 6

New York Public Health Law
  § 2164 ........................................................................................................................... 6, 8

Plaintiffs' Rehabilitation Act ................................................................................................. 17

Public Health Law
  § 2164(1)(a) ...................................................................................................................... 6
  § 2164(2) ......................................................................................................................... 20
  § 2164(3) ......................................................................................................................... 20
  § 2164(8) ........................................................................................................................... 9
  § 2164(10) ......................................................................................................................... 8
  §§ 2164 and 2168 ............................................................................................................. 8

Rehabilitation Act ................................................................................................................. 17

State Defendants under the Rehabilitation Act ..................................................................... 17

**STATE REGULATIONS**

10 N.Y.C.R.R.
  § 66-1-1 ............................................................................................................................ 21
  § 66-1.1(l) ............................................................................................................... 9, 14-16
  § 66-1.3(c) ......................................................................................................................... 8
  § 66.1.3 .............................................................................................................................. 9

10 N.Y.C.R.R. Subpart 66-1 ................................................................................................. 8

10 N.Y.C.R.R. Subpart 66-1.1(j) .......................................................................................... 6

10 NYCRR
  § 66-1.1(m) ...................................................................................................................... 20
  § 66-1.3 ........................................................................................................................... 20
  § 66-1.4 ........................................................................................................................... 20

Sponsor Memo, S2994A ........................................................................................................ 7

**RULES**

Federal Rules of Civil Procedure
    Rule 65 ......................................................................................................................................... 9

Defendants Howard Zucker, M.D., J.D., the Commissioner of the New York State Department of Health ("DOH" or "the Department"); Elizabeth Rausch-Phung, M.D., the Director of the Bureau of Immunizations for DOH; and DOH (hereafter, the "State Defendants"), respectfully submit this memorandum of law, the accompanying Declaration of Dr. Rausch-Phung, and all attached exhibits, in opposition to Plaintiffs' motion for a preliminary injunction in this purported class action lawsuit. *See* Dkt. No. 41.

## PRELIMINARY STATEMENT

Plaintiffs,[1] seven families with children who are alleged to be medically unable to receive required immunizations for school admission, seek a mandatory preliminary injunction to stay the DOH regulation that sets forth the standards for a medical exemption from school immunization requirements. Plaintiffs also seek a preliminary injunction enjoining all defendants from excluding them from a school due to their lack of immunization. *See* Dkt. No. 41-2.

Plaintiffs do not satisfy the elements necessary to obtain the extraordinary relief of a mandatory injunction. First, Plaintiffs cannot demonstrate a likelihood of success on the merits because Plaintiffs fail to state a viable cause of action for all of the reasons spelled out in detail in the State Defendants' Motion to Dismiss. *See* Dkt. No. 28-1, Points I and II. Second, they cannot show irreparable harm, especially since they waited more than a year to challenge the 2019 regulations at issue here. Further, the fact that Plaintiffs would be homeschooled – unvaccinated – while this Court decides the merits of this case does not constitute irreparable harm. Third, Plaintiffs cannot show that the balance of hardships tips in their favor or that the proposed

---

[1] The Children's Health Defense ("CHD") is also a Plaintiff in this action; however, for the reasons stated in the State Defendants' memorandum of law supporting their Motion to Dismiss, CHD lacks standing to participate in this lawsuit. *See* Dkt. No. 28-1, Point III.

injunction is in the public interest.  In sum, just as this Court denied Plaintiffs' request for a temporary restraining order in this case, *see* Docket No. 46, this Court should likewise deny Plaintiffs' request for a preliminary injunction.

## STATEMENT OF FACTS

### A.    Mandatory Vaccination Laws in New York State

Vaccination laws requiring immunizations prior to attending school protect the health and safety of children and the general public, and they have been upheld by the U.S. Supreme Court and by state courts across the country for more than a century.  *See, e.g., Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905); *Zucht v. King*, 260 U.S. 174 (1922); *Matter of Viemeister*, 179 N.Y. 235 (1904).  Specifically, New York Public Health Law § 2164 requires children aged two months to eighteen years to be immunized from certain communicable diseases before they can attend "any public, private or parochial child caring center, day nursery, day care agency, nursery school, kindergarten, elementary, intermediate or secondary school."  Public Health Law § 2164(1)(a).  Children are required to be immunized against poliomyelitis, mumps, measles, diphtheria, rubella, varicella, hepatitis B, pertussis, tetanus, and where applicable, Haemophilus influenzae type b and pneumococcal disease.  *Id.* at § 2164(7).  Schools cannot permit any child to be admitted to or attend school in excess of fourteen days without either a certificate or some other acceptable evidence showing that the child was immunized, or documentation that the child is "in process" of complying their immunization series pursuant to 10 N.Y.C.R.R. Subpart 66-1.1(j).  *Id.*

Public Health Law § 2164 initially provided for two exemptions to the vaccination requirements: a medical exemption requiring a physician's certification that the physician had determined that the vaccination would be detrimental to the child's health, and a non-medical exemption that required only a statement by the parent indicating that they objected to vaccination

on religious grounds.  *See F.F. v. State*, 66 Misc. 3d 467, 470 (Sup. Ct. Albany Co. Dec. 3, 2019) (*citing* Pub. Health Law §§ 2164(8) and (9)).  In 2018 and 2019, however, New York State faced a growing outbreak of measles, which prompted the New York State Legislature to reevaluate both of these exemptions.  Sponsor Memo, S2994A (Dkt. No. 28-3).  Specifically, the Legislature took note that, between October 2018 and May 2019, there were at least 810 confirmed measles cases in New York State.  *Id*.  At that time, the Legislature also found that the State faced declining vaccination rates.  N.Y. Reg. Sept. 4, 2019 at 23 (Dkt. No. 28-4).  For instance, from 2017-2018, there were 280 New York schools with vaccination rates of only 85 percent, and, alarmingly, 211 of those 280 schools had vaccination rates as low as 70 percent, which jeopardized "herd immunity," posing a significant public health risk.  N.Y. Reg. Sept. 4, 2019 at 23 (Dkt. No. 28-4).

With the aim of controlling the outbreak of measles in New York, preventing future outbreaks, and increasing vaccinations rates generally to ensure proper "herd immunity," on June 13, 2019, the Legislature repealed the religious exemption to mandatory vaccination requirements.  L. 2019, c. 35 §§ 1 and 2; Sponsor Memo, S2994A (Dkt. No. 28-3); *F.F. v. State*, 65 Misc. 3d 616, 631 (Sup. Ct. Albany Cty. Aug. 23, 2019) ("[t]he repeal was enacted on the heels of the most serious outbreak of measles in New York in 25 years, which was concentrated in areas of low vaccination rates").

Since then, numerous lawsuits have been brought challenging that legislative repeal and requesting injunctive relief, none of which have been successful.  *See F.F. v. State*, 66 Misc. 3d 467 (Sup. Ct. Albany Cty.); *V.D. v. State*, 403 F. Supp. 3d 76 (E.D.N.Y. 2019); *Stoltzfus v. Cuomo*, Index No. 20190311, NYSCEF Doc. No. 56 (Sup. Ct. Seneca Cty. Nov. 4, 2019); *Sullivan-Knapp v. Cuomo*, Index No. E2019-1338CV, NYSCEF Doc. No. 41 (Sup. Ct. Steuben Cty. Oct. 9, 2019); *Mermigis v. Cuomo*, Index No. 608729/2019, NYSCEF Doc. No. 15 (Sup. Ct. Nassau Cty. June 29, 2019).

**B.      DOH Emergency Medical Exemption Regulations**

Following the legislative repeal, DOH determined that it was necessary to update its regulations governing mandatory vaccinations in order to conform the then existing regulations with Public Health Law § 2164.  N.Y. Reg. Sept. 4, 2019 at 22-24 (Dkt. No. 28-4); N.Y. Reg. Dec. 31, 2019 at 25 (Dkt. No. 28-5).  The Commissioner of Health is authorized to "adopt and amend rules and regulations to effectuate the provisions and purposes of [Public Health Law § 2164]."  Public Health Law § 2164(10).  Pursuant to that authority, DOH promulgates regulations to govern vaccinations.  *See* 10 N.Y.C.R.R. Subpart 66-1.

On August 16, 2019, DOH and the New York State Office of Children and Family Services jointly issued emergency regulations designed to strengthen and clarify the process by which physicians can grant medical exemptions to vaccination requirements ("Emergency Regulations").  Dr. Rausch-Phung Decl., ¶ 6.  The Emergency Regulations conformed Subpart 66-1 to the text and intent of the legislative amendments to Public Health Law §§ 2164 and 2168 by removing references to the non-medical exemptions to vaccination requirements and strengthening and clarifying the remaining medical exemption requirements to prevent inappropriate use of that exemption.  *Id.*, Exhibit A.  Notably, the Emergency Regulations did not change the requirement that the relevant document signed by the physician certify that immunization may be detrimental to the child's health, contain sufficient information to identify a medical contraindication to a specific immunization, and specify the length of time the immunization is medically contraindicated.  *See* 10 N.Y.C.R.R. § 66-1.3(c).  The requirement that such a certification must be completed annually also was unchanged.[2]  Dr. Rausch-Phung Decl.,, ¶ 14.  In addition, the

---

[2] Although Plaintiffs incorrectly assert that the new 2019 regulations changed the requirement for annual certification, that annual certification requirement was already part of the regulations even before the 2019 amendments.  *See* 10 N.Y.C.R.R. § 66.1.3.

Emergency Regulations defined the term "may be detrimental to the child's health," as used in Public Health Law § 2164(8). *See* 10 N.Y.C.R.R. § 66-1.1(l). Specifically, the new regulations now provide that a physician must determine "that a child has a medical contraindication or precaution to a specific immunization consistent with [the CDC Advisory Committee on Immunization Practices] guidance *or other nationally recognized evidence-based standard of care.*" *Id.* (emphasis added); *see also* N.Y. Reg., Sept. 4, 2019 at 23 (Dkt. No. 28-4). Thus, these regulatory changes conform the regulations with the current guidance from the CDC's Advisory Committee on Immunization Practices ("ACIP"). Dr. Rausch-Phung Decl., ¶ 12. Importantly, the CDC maintains schedules and guidelines for when immunization may be detrimental to a child's health due to a medical contraindication or precaution to a specific immunization, which is a nationally recognized scientific-based standard of care. *Id*.

By November 2019, the measles emergency was still present, with the number of confirmed cases in New York having risen to approximately 1,075. Dr. Rausch-Phung Decl., ¶ 29. Thus, on November 14, 2019, the Emergency Regulations were renewed. Final regulations were filed on December 17, 2019, and were made permanent on December 31, 2019. *See* N.Y. Reg., Dec. 31, 2019 at 25 (Dkt. No. 28-5).

## STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions. As "one of the most drastic tools in the arsenal of judicial remedies," injunctive relief "must be used with great care." *Hanson Trust PLC v. ML SCM Acquisition Inc*., 781 F.2d 264, 273 (2d Cir. 1986). A party seeking a preliminary injunction generally must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc*., 883 F.3d 32, 37 (2d Cir. 2018).

*See also 5464 Route 212, LLC v. N.Y. State DOT*, No. 1:19-cv-01510 (BKS/DJS), 2020 U.S. Dist. LEXIS 66905, at *11 (N.D.N.Y. Apr. 16, 2020).

Where, as here, a plaintiff seeks a mandatory injunction – one that "alter[s] the status quo by commanding some positive act" – a higher standard applies. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). Plaintiffs requesting a mandatory injunction must show "a clear or substantial likelihood of success on the merits." *N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 294 (2d Cir. 2012). Since Plaintiffs are seeking imposition of a mandatory preliminary injunction here, they are thus subject to a heightened standard. For the reasons set forth below, however, Plaintiffs fail to meet this heightened burden.

## ARGUMENT

### POINT I

### PLAINTIFFS HAVE NOT ESTABLISHED THAT THEY ARE LIKLEY TO SUCCEED ON THE MERITS

Plaintiffs cannot show that they have any likelihood of succeeding on the merits of this case. Indeed, for all of the reasons that were carefully set forth in the State Defendants' Motion to Dismiss that are incorporated herein, *see* Docket No. 28-1, Points I and II, Plaintiffs' entire Complaint must be dismissed, so no injunctive relief should be granted. *See, e.g., Arbitron Co. v. Phx. Broad. Corp.*, 1997 U.S. Dist. LEXIS 11516, at *17-18 (S.D.N.Y. Aug. 6, 1997) (a case that is "insufficient to withstand a motion to dismiss, . . . *a fortiori* [cannot] establish likelihood of success on the merits or serious questions going to the merits").

#### A.      Plaintiffs cannot prevail on their constitutional claims

To begin, each of Plaintiffs' four constitutional claims fail under century-old Supreme Court precedent – namely, that of *Jacobson*, 197 U.S. 11 and *Zucht*, 260 U.S. 174 – as well as the more recent Second Circuit decision in *Phillips v. City of N.Y.*, 775 F.3d 538 (2d Cir. 2015), which

6

applied those two Supreme Court decisions to constitutional claims that are like those asserted here, dismissing those claims outright.  Although Plaintiffs attempt to get this Court to apply a "strict scrutiny" test and disregard the Supreme Court's precedent in *Jacobson* and *Zucht* as being too out of date because they are "*Lochner* era" cases, Plaintiffs' feeble arguments on these points should be summarily rejected.

Addressing Plaintiffs' "strict scrutiny" argument first, the correct test to apply is undeniably the "rational basis" test of *Jacobson* and *Zucht*.  *See, e.g., League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 2020 U.S. App. LEXIS 19691 (6th Cir. June 24, 2020) (applying the "rational basis" test to its *Jacobson* analysis); *Whitlow v. Cal. Dep't of Educ.*, 203 F. Supp. 3d 1079, 1088 (S.D. Cal. 2016) (applying the "rational basis" test while citing *Zucht*); *DiMartile v. Cuomo*, 2020 U.S. Dist. LEXIS 141384, at *27 (N.D.N.Y. Aug. 7, 2020) ("[W]hen reviewing the facts of a case under the *Jacobson* standard, the Court analyzes a plaintiff's claims under the rational basis standard of review.") (Suddaby, C.J.).  Thus, the Court should apply the "rational basis" test to the challenged 2019 amendments to the regulation.

Furthermore, the "rational basis" test is easily met here because federal courts have properly held that, "from a century of the nation's experience," it is clear on its face that "requiring school children to be immunized *rationally* furthers the public health and safety."  *Boone v. Boozman*, 217 F. Supp. 2d 938, 957 (E.D. Ark. 2002) (emphasis added).  But even setting *Boone* aside, the "rational basis" test is also met for all of the reasons that are detailed in Dr. Rausch-Phung's Declaration, which extensively explains why the challenged regulation was enacted by DOH.  *See Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 345 (3d Cir. 2004) (under the "rational basis" test, a regulation is valid "if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification") (emphasis added).  Here, the 2018 emergency outbreak of measles among schoolchildren in New York State ultimately caused the enactment of

7

the 2019 amendments to the regulation, and those amendments were plainly justified for a "plausible policy reason" – namely, to confront the emergency outbreak by limiting the medical exception only to those who have *a legitimate medical need for it*. *See* Dr. Rausch-Phung Decl., ¶ 44. ("By ensuring that medical exemptions are only given to those with legitimate medical contraindications or precautions, future outbreaks will be prevented by safeguarding that communities build and maintain high vaccination rates, *i.e.* strengthening herd immunity."). *See also Nat'l Ass'n of Theatre Owners v. Murphy*, 2020 U.S. Dist. LEXIS 148902, at *39 (D.N.J. Aug. 18, 2020) ("[A] regulation will pass muster under a rational basis review if there is a 'plausible policy reason' for the justification, based on the science available at the time – whether or not that science or those reasons ultimately turn out to be incorrect."). Thus, not only must the "rational basis" test be applied to the case at bar, it is certainly satisfied here.

Next, despite Plaintiffs' assertion to the contrary, *Jacobson* and *Zucht* are still good law. *See, e.g., Ass'n of Jewish Camp Operators*, 2020 U.S. Dist. LEXIS 117765, at *21 (applying the "rational basis" test, Chief Judge Suddaby held that "'*Jacobson* instructs that *all* constitutional rights may be reasonably restricted to combat a public health emergency.'") (Suddaby, C.J.) (quoting *In re Abbott*, 954 F.3d 772, 786 (5th Cir. 2020) (emphasis in original)). Other district court cases have held likewise, even more explicitly rejecting claims like those advanced by Plaintiffs here. *See, e.g., Altman v. Cty. of Santa Clara*, 2020 U.S. Dist. LEXIS 97535, at *20 (N.D. Cal. June 2, 2020) ("Although Plaintiffs attempt to dismiss *Jacobson* as 'arcane constitutional jurisprudence,' … the case remains alive and well …", noting that "[t]wo circuits have recently held that district courts erred by not using *Jacobson* to evaluate pandemic-related restrictions on constitutional rights.") (collecting cases); *Boone*, 217 F. Supp. 2d at 956 ("Plaintiff complains that '*Jacobson* and *Zucht* are utterly archaic in 14th Amendment substantive due process terms, and worthless as precedent in light of the extensive jurisprudence of the 20th

8

Century.'  It is the responsibility of this Court, however, until the Supreme Court says otherwise, to give effect to immunization cases like *Jacobson* and *Zucht*."); *Workman v. Mingo Cty. Bd. of Educ.*, 419 F. App'x 348, 353 (4th Cir. 2011) ("[W]e reject Workman's request that we overrule *Jacobson* because we are bound by the precedents of our Supreme Court.").

Indeed, as noted in the State Defendants' Motion to Dismiss, Chief Justice John Roberts favorably cited *Jacobson* on May 29, 2020, and he then firmly asserted that federal courts should avoid disputes like the one in which Plaintiffs embroiled the State Defendants:

> Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect."  *Jacobson v. Massachusetts*, 197 U. S. 11, 38, 25 S. Ct. 358, 49 L. Ed. 643 (1905).  When those officials "undertake[ ] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad."  *Marshall v. United States*, 414 U. S. 417, 427, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974).  Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people.  *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U. S. 528, 545, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985).

*South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020) (Roberts, C.J., concurring).

Likewise, in 2015, the Second Circuit cited *Jacobson* in *Phillips* without any of the qualms about the "*Lochner*-era" case that Plaintiffs present in their argument, and without addressing the specific principles of "public health necessity," "reasonable means," "proportionality," and "harm avoidance," the principles that Plaintiffs claim are so vital here.  *See* Dkt. No. 41-1 (Plaintiffs' Memorandum of Law), p. 24 of 31.  Instead, in that case, without any misgivings, the Second Circuit straight-forwardly applied *Jacobson* to New York State's mandatory vaccination program for schoolchildren, and the court upheld it in the face of a substantive due process claim like the one that Plaintiffs present here:

> This argument is foreclosed by the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts* … The Supreme Court held that mandatory vaccination was within the State's police power. … The Court rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population as a whole. … Plaintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as *Jacobson* made clear, that is a determination for the legislature, not the individual objectors. … Plaintiffs' substantive due process challenge to the mandatory vaccination regime is therefore no more compelling than Jacobson's was more than a century ago.

*Phillips*, 775 F.3d at 542-43.  *See also Middleton v. Pan*, 2017 U.S. Dist. LEXIS 216203, at *15 (C.D. Cal. Dec. 18, 2017) ("Mandatory vaccination laws are within the scope of a state's police power.").

Despite the Second Circuit's forthright application of *Jacobson* to the vaccination of New York's schoolchildren, Plaintiffs still challenge that program here because, as they assert, the 2019 amendments to the regulation no longer account for the principle of "harm avoidance," a principle that Plaintiffs argue is fundamental to this case, since, as they claim, they should not be subject to a vaccination program that poses "a health risk to its subject."  Dkt. No. 41-1 (Plaintiffs' Memorandum of Law), p. 24 of 31.  The principle of "harm avoidance" in Plaintiffs' argument is based upon the Supreme Court's hypothetical statement in *Jacobson* dicta that to subject certain individuals to vaccination when they have "a particular condition of [their] health or body" would be "cruel and inhuman in the last degree."  *Jacobson*, 197 U.S. at 38-39.

In 2019, confronting a serious health emergency, the State Defendants used their medical expertise in public health and enacted a regulation that required the application of the gold-standard CDC guidelines, or "other nationally recognized evidence-based standard[s] of care," to the issue of who is entitled to a medical exemption under 10 N.Y.C.R.R. § 66-1.1(l).  As public health officials who run an agency with clear scientific expertise in the area of maintaining the health of the people of New York State, the State Defendants are entitled to *considerable deference* from

this Court regarding their scientific judgements as to how to properly control the outbreak of contagious diseases by deciding what criteria must be met before one is permitted to attend school without vaccinations. *See, e.g., Browning-Ferris Indus. of S. Jersey, Inc. v. Muszynski*, 899 F.2d 151, 160 (2d Cir. 1990) ("Courts should be particularly reluctant to second-guess agency choices involving scientific disputes that are in the agency's province of expertise."); *Huls Am. v. Browner*, 83 F.3d 445, 452 (D.C. Cir. 1996) ("[W]e will give an extreme degree of deference to the agency when it is evaluating scientific data within its technical expertise."); *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 2020 U.S. App. LEXIS 19691, at *9 (6th Cir. June 24, 2020) ("Shaping the precise contours of public health measures entails some difficult line-drawing. Our Constitution wisely leaves that task to officials directly accountable to the people."); *Givens v. Newsom*, 2020 U.S. Dist. LEXIS 81760, at *12 (E.D. Cal. May 8, 2020) ("in the context of [a] public health crisis, the judiciary must afford more deference to officials' informed efforts to protect all their citizens"); *Garcia v. N.Y.C. Dep't of Health & Mental Hygiene*, 31 N.Y.3d 601, 616 (2018) (citing with approval the New York City Board of Health's reliance on the CDC's ACIP recommendations). So, since the State Defendants are science-based public health experts running a professional and specialized public health agency, this Court should properly defer to them on medical issues within their scientific bailiwick.

Now, with regard to another fulcrum point upon which this case is hinged, it must also be underscored that Plaintiffs bring *only a facial challenge* against the State Defendants and their 2019 amendments to 10 N.Y.C.R.R. § 66-1.1(l). This is crucial because, to succeed on this facial challenge, Plaintiffs must demonstrate that "no set of circumstances exists under which the [regulation] would be valid, *i.e.*, that the law is unconstitutional in *all* of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (emphasis added). Because this is "the most difficult challenge to mount successfully," *United States v. Salerno*, 481

U.S. 739, 745 (1987), and because the regulation at issue is clearly not "unconstitutional in *all* of its applications," this facial challenge fails – especially since, for all of the reasons detailed in Dr. Rausch-Phung's Declaration, the regulation obviously has "a plainly legitimate sweep." *Wash. State Grange*, 552 U.S. at 449.  While Plaintiffs argue that the 2019 regulatory amendments are facially invalid and unconstitutional because they theoretically allow for non-medically-trained local school officials to overturn the opinions and recommendation of Plaintiffs' physicians, as long as the Court can conceive of *any potential circumstance* in which a local school official could possibly make such a determination correctly – and therefore constitutionally – then Plaintiffs' *facial challenge* to this aspect of the regulation also fails.  Such a scenario would undoubtedly exist if a schoolchild's physician were to submit documentation on a letter (not on the required DOH form), make no reference to the CDC's ACIP or any other national evidence-based guidelines, and simply state: "Based upon my examination of this child, she should be medically exempt from New York State's mandatory vaccination requirements."  Because a non-medically-trained local school official could easily reject such a recommendation of a trained physician as being out of compliance with the DOH regulation, that means that 10 N.Y.C.R.R. § 66-1.1(l) is not "unconstitutional in *all* of its applications."  *Id.*; *see, e.g., Chemical Waste Management, Inc. v. United States Environmental Protection Agency*, 56 F.3d 1434, 1437 (D.C. Ct. App. 1995) ("We discern at least one scenario where the … rule would be procedurally valid. … While this hypothetical scenario may not be common, it is sufficient to establish that petitioners' facial challenge must fail.").  That is also the case here.

Consequently, Plaintiffs' four constitutional claims have no likelihood of success on the merits.  *See* State Defendants' Motion to Dismiss, Docket No. 28-1, Point I.

**B.     Plaintiffs cannot prevail on their Rehabilitation Act claims**

To start, it should be noted that Plaintiffs' Memorandum of Law in support of their motion for preliminary injunctive relief does not attempt to assert that Plaintiffs have a likelihood of success on the merits of their Rehabilitation Act claims. *See generally* Dkt. No. 41-1. Perhaps that is understandable in light of the fact that Plaintiffs' Rehabilitation Act claims fail as a matter of law, because this Court cannot conclude that DOH discriminated against Plaintiffs "solely" because of Plaintiffs' disability. *See, e.g., D.A.B. v. NYC Dep't of Educ.*, 45 F. Supp.3d 400 (S.D.N.Y. 2014), *aff'd* 630 Fed. Appx. 73 (2d Cir. 2015) (rejecting a Rehabilitation Act claim where the plaintiff was unable to attend school because a medical condition allegedly precluded him from receiving a vaccine)); *Wren v. Midwestern State Univ.*, 2019 U.S. Dist. LEXIS 118143, at *28 (N.D. Tex. June 25, 2019) ("It appears that Defendants' alleged 'harassment and discrimination' consisted of attempting to verify [Plaintiff's] exemption from compliance with Texas' immunization requirements. Thus, [Plaintiff's] alleged disability is not the only cause for Defendants' conduct."). Thus, there is no valid claim against the State Defendants under the Rehabilitation Act. *See* State Defendants' Motion to Dismiss, Docket No. 28-1, Point II.

Since Plaintiffs cannot establish any likelihood of success on the merits of any of their six claims, Plaintiffs' request for preliminary relief must be denied. *See Abrams v. Waters*, 2018 U.S. Dist. LEXIS 49206, at *23-24 (D. Conn. Mar. 26, 2018) ("'[N]ot only must the movant demonstrate irreparable harm, he 'must make a clear or substantial showing of a likelihood of success' on the merits, . . . a standard especially appropriate when a preliminary injunction is sought against government.") (quoting *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006)).

## POINT II

## PLAINTIFFS HAVE NOT ESTABLISHED IRREPARABLE HARM

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "Irreparable harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (quoting *Forest City Daly Hous., Inc. v. Town of North Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)). Thus, when a plaintiff seeks injunctive relief based on an alleged constitutional deprivation, "the two prongs of the preliminary injunction threshold merge into one ... [and] in order to show irreparable injury, plaintiff must show a likelihood of success on the merits." *Turley v. Giuliani*, 86 F. Supp. 2d 291, 295 (S.D.N.Y. 2000).

First, Plaintiffs' have wrongly assumed that the mere allegation of a violation of a fundamental right is sufficient to satisfy the irreparable harm prong. Pls.' Mem. at 28. "[T]he mere allegation of a constitutional infringement itself does not constitute irreparable harm." *Lore v. City of Syracuse*, No 00 CV 1833, 2001 WL 263051, at *6 (N.D.N.Y. Mar. 9, 2001). *See also Donohue v. Mangano*, 886 F. Supp. 2d 126, 150 (E.D.N.Y. 2012) ("T]he assertion of constitutional injury is insufficient to automatically trigger a finding of irreparable harm."). Although Plaintiffs argue that irreparable harm should be presumed because they allege a violation of a fundamental right, Plaintiffs do not enjoy a presumption of irreparable harm since education is not a fundamental right. *Mehmeti v. N.Y. Bd. of Educ.*, 2020 U.S. Dist. LEXIS 134505, at *4 (E.D.N.Y. July 29, 2020); *see also Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012) (noting that there is no fundamental or substantive due process right to public education).

14

Second, as is noted above, the 2019 regulations went into effect on an emergency basis on August 16, 2019 and on a permanent basis on December 31, 2019.  That means that Plaintiffs waited more than one year before seeking this preliminary injunction.  Under the case law in this Circuit, that is simply too long of a wait to obtain a preliminary injunction.  *See, e.g., Levola v. Fischer*, 403 F. App'x 564, 565 (2d Cir. Dec. 14, 2010) (affirming the district court's finding that the plaintiff failed to demonstrate "that he faced an immediate danger of irreparable harm," in light of his delay in seeking injunctive relief); *Oliver v. N.Y. State Police*, No. 1:15-cv-00444 (BKS/DJS), 2019 U.S. Dist. LEXIS 76272, at *16-*17 (N.D.N.Y. May 6, 2019) ("'Though such delay may not warrant the denial of ultimate relief, it may, 'standing alone, . . . preclude the granting of preliminary injunctive relief.'") (Sannes, J.) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (quoting *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985))); *CSI Entm't v. Anthem Media Grp., Inc.*, 2016 U.S. Dist. LEXIS 180749, at *14 (E.D.N.Y. Dec. 30, 2016) ("Because an application for a preliminary injunction now requires a movant to make an actual showing of imminent irreparable injury in the absence of an injunction, delay is an important factor that the Court must consider."); *Hornig v. Trustees of Columbia Univ. in City of New York*, 2018 U.S. Dist. LEXIS 189268 (S.D.N.Y. Nov. 5, 2018) (holding that the plaintiff's two and a half month delay in seeking injunctive relief undermined a finding of irreparable injury); *Livery Round Table, Inc. v. New York City FHV & Limousine Comm'n*, 2018 U.S. Dist. LEXIS 65524, at *24 (S.D.N.Y. Apr. 18, 2018) ("A delay of about three months undercuts a showing of immediate and irreparable injury.").  Plaintiffs' year-long delay here completely defeats their claim for a preliminary injunction.

Third, the "irreparable harm" that is really at issue here is that the Plaintiffs, if they remain

unvaccinated, would be homeschooled[3] while this Court decides this case on the merits.  This is insufficient under the holding in *V.D. v. New York*, 403 F. Supp. 3d 76, 89 (E.D.N.Y. 2019), another decision that denied injunctive relief in the context of the repeal of the religious exemption:

> The fact that a parent objects to a mandatory vaccination requirement and will thus be required to homeschool her children – with or without district-provided special education services – does not mean that the policy is invalid.  And while plaintiffs allege that they do not have the skills or expertise to provide services to their children at home, … they, like all parents, can send their children to public, private, or parochial schools as long as they comply with the state's vaccination requirements.  The plaintiffs' status as the parents of children with disabilities does not in any way alter their ability to comply with § 2164.

*V.D. v. New York*, 403 F. Supp. 3d 76, 89 (E.D.N.Y. 2019).

In sum, being required to be homeschooled – unvaccinated – while this case is heard by this Court does not create an "irreparable injury" to Plaintiffs.  *See, e.g., Doe v. Perille*, 2018 U.S. Dist. LEXIS 189409, at *24 (D. Mass. Nov. 6, 2018) ("there is no indication that the choice of continued homeschooling will have a negative impact on Doe's educational opportunities").

## POINT III

## THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST FAVOR DOH

"When confronted with a motion for a preliminary injunction, a court 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"  *Main St. Baseball, LLC v. Binghamton Mets Baseball Club,*

---

3 Plaintiffs would have to be "homeschooled" rather than be allowed to attend school "remotely" because, under 10 NYCRR §66-1.3 and 10 NYCRR §66-1.4, immunization is required to attend or be admitted to K-12 school, even for remote learning.  DOH has consistently taken the position that students remote learning, are still "attending" or "admitted" to school for purposes of the vaccination requirement, with no exceptions.  *See* 10 NYCRR §66-1.1(m) ("Attend or admit means enrolled in, or admitted to, a school for the purpose of participating in or receiving services at such school, including but not limited to special education or related services, participating in intra-scholastic or interscholastic sports, or other school-sponsored events or activities; or being transported on a school bus or vehicle with other school children; except where such services, transportation, events, or activities are open to the general public."); *see also* Public Health Law §2164(2) and Public Health Law §2164(3) (requiring that parents must immunize their children in order for them to attend school).

*Inc.*, 103 F. Supp. 3d 244, 262 (N.D.N.Y. 2015) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008)).  Thus, even if the Court had found that Plaintiffs were likely to succeed on the merits, it "must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor."  *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010).  Additionally, "when a court orders injunctive relief, it should ensure that the injunction does not cause harm to the public interest."  *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 200 (E.D.N.Y. 2013) (quoting *United States SEC v. Citigroup Global Mkts., Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012)).  *See also Ass'n of Jewish Camp Operators*, 2020 U.S. Dist. LEXIS 117765, at *11-*12 ("With regard to the third element, the 'public interest' is defined as '[t]he general welfare of the public that warrants recognition and protection,' and/or '[s]omething in which the public as a whole has a stake[,] esp[ecially], an interest that justifies governmental regulation.'") (quoting Public Interest, *Black's Law Dictionary* (9th ed. 2009)).

First, as noted in the Declaration of Dr. Rausch-Phung, during the public comment period prior to permanent adoption, the 2019 amendments to the regulations that Plaintiffs challenge were supported by: (1) the New York State American Academy of Pediatrics, (2) the New York State Academy of Family Physicians, (3) the New York State Association of County Health Officials, (4) the American Nurses' Association, (5) the Medical Society of the State of New York, and (6) the New York State Society of Dermatology and Dermatologic Surgery.  Dr. Rausch-Phung Decl., ¶ 43.  This surely demonstrates that the 2019 amendments to the regulations that are being challenged here are actually serving the public interest, contrary to Plaintiffs' contentions.

As is also established in Dr. Rausch-Phung's Declaration, the amendments to 10 N.Y.C.R.R. § 66-1-1 made sure that medical exemptions are only given to those with "legitimate medical needs" which will safeguard that "future outbreaks [of disease] will be prevented by

safeguarding that communities build and maintain high vaccination rates, *i.e.* strengthening herd immunity."  Dr. Rausch-Phung Decl., ¶ 44.  Dr. Blog continues: "As demonstrated by a similar situation in California in 2015, removing non-medical exemptions to school immunization requirements alone, without taking steps to strengthen medical exemptions, can result in the explosion in the use of medical exemptions.  In 2015, after California removed non-medical exemptions, over the next three years the use of medical exemptions more than tripled.  By strengthening medical exemption requirements, and providing clear evidence-based guidance to physicians, this will prevent medical exemptions being issued for non-medical reasons."  *Id.*, ¶ 45. *See also F.F. v. State of N.Y.*, 65 Misc. 3d 616, 625 (Sup. Ct. Alb. Cty. 2019) ("Mandatory vaccination programs permitting only minimal exemptions unquestionably would reduce the[] exposure and risk of severe illness.").  In other words, the challenged regulations serve the public interest, they do not undermine it.

Consequently, Plaintiffs cannot meet the third element required to obtain preliminary relief, as the balance of hardships clearly tips in favor of the State Defendants who are diligently serving the State's public health interest, and trying to prevent another deadly outbreak, especially during a time when the State is faced with an international pandemic and the State's public health resources are already strained.  Dr. Rausch-Phung Decl., ¶ 58.

## Conclusion

Based upon the above, Plaintiffs' motion for a preliminary injunction should be denied in its entirety.

Dated:  Albany, New York
          September 4, 2020

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants Howard Zucker,*
*M.D., J.D., Elizabeth Rausch-Phung, M.D.,*
*and the N.Y.S. Department of Health*
The Capitol
Albany, New York 12224

By:  *Michael McCartin*

Michael G. McCartin
Assistant Attorney General, Of Counsel
Bar Roll No. 511158
Tel.: (518) 776-2620
michael.mccartin@ag.ny.gov

*Andrew Koster*

Andrew W. Koster
Assistant Attorney General, Of Counsel
Bar Roll No. 701106
Tel.: (518) 776-2609
andrew.koster@ag.ny.gov

TO:     All Attorneys of Record (*via* CM/ECF)