UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JANE DOE on behalf of herself and her minor child; et al., ,

Plaintiffs,

-against-

HOWARD ZUCKER, in his official capacity as Commissioner
of Health for the State of New York; et al.,

Defendants.

**Civil Case No.: 1:20-cv-840
(BKS-CFH)**

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

---

JOHNSON & LAWS, LLC
Attorneys for Defendants
Office and P.O. Address
646 Plank Road, Suite 205
Clifton Park, New York 12065
Tel:    518-490-6428

SOKOLOFF STERN LLP
Attorneys for Defendants
Office and P.O. Address
179 Westbury Avenue
Carle Place, New York 11514
Tel:    516-334-4500

On behalf of Defendants
*Three Village CSD, Pedisich, and Keane; S.
Huntington SD and Bennardo; Ithaca City
SD, Brown, and Eschbach; and Albany City
S.D., Adams and Paolino;*

Of Counsel:

Gregg T. Johnson, Esq.
Adam I. Kleinberg, Esq.
Loraine C. Jelinek, Esq.

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ...........................................................................................1

STANDARD OF REVIEW ..........................................................................................19

LEGAL ARGUMENT..................................................................................................22

POINT I       PLAINTIFFS' EXCESSIVE DELAY IN SEEKING AN
              INJUNCTION DEMONSTRATES THE LACK OF IRREPARABLE
              HARM............................................................................................22

POINT II      PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN ON
              EVERY ELEMENT IN THEIR PRELIMINARY INJUNCTION
              MOTION.........................................................................................25

              A.    Plaintiffs have failed to show a likelihood of success on the merits ......25
              B.    Plaintiffs have failed to show irreparable harm ....................................31
              C.    Plaintiffs have failed to demonstrate that the balance of hardships
                    decisively tips in their favor.................................................................34
              D.    The public interest is best served by protecting the health and safety
                    of students from vaccine-preventable diseases ......................................36

POINT III     THIS COURT SHOULD ABSTAIN FROM EXERCISING
              JURISDICTION OVER PLAINTIFFS' CLAIMS AND
              CERTAINLY SHOULD DENY THE EXTRAORDINARY
              REMEDY OF A PRELIMINARY INJUNCTION.........................................37

CONCLUSION..............................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*199 Delaware Ave., Inc. v. Lake Effect Artisan Ice Cream,*
  No. 1:19-CV-00224 EAW, 2019 WL 1723588 (W.D.N.Y. Apr. 18, 2019)............................23

*Allstate Ins., Co. v. Elzanaty,*
  916 F.Supp.2d 273 (E.D.N.Y. 2013) ...................................................................................39

*Amaker v. Fischer,*
  2012 U.S. Dist. LEXIS 188013 (W.D.N.Y. 2012) ..............................................................19

*Amoco Prod. Co. v. Vill. of Gambell,*
  480 U.S. 531 [1987]............................................................................................................20

*Bell & Howard: Mamiya Co. v. Masel Supply Co. Corp.,*
  719 F.2d 42 (2d Cir. 1993)..................................................................................................22

*Bery v. City of New York,*
  97 F.3d 689 (2d Cir. 1996)..................................................................................................21

*Brown v. Middaugh,*
  1998 WL 566791 (N.D.N.Y. Sept. 3, 1998) ........................................................................22

*Burford v. Sun Oil Co.,*
  319 U.S. 315 (1943)............................................................................................................37

*Cacchillo v. Insmed, Inc.,*
  638 F.3d 401 [2d Cir. 2011]................................................................................................20

*CERCPAC v. Health & Hosps. Corp.,*
  920 F. Supp. 488 (S.D.N.Y. 1996) ......................................................................................31

*Citibank, N.A. v. Citytrust,*
  756 F.2d 273 (2d Cir.1985).................................................................................................23

*Colorado River Water Conservation Dist. v. United States,*
  424 U.S. 800, 96 S. Ct. 1236 (1976)...................................................................................37

*Cty. of Nassau v. Leavitt,*
  524 F.3d 408 (2d Cir. 2008)................................................................................................20

*Doe v. New York University,*
  666 F.2d 761 [2d Cir. 1981]................................................................................................31

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009)................................................................................31

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*,
    25 F.3d 119 (2d Cir. 1994)............................................................................23, 24

*Forest City Daly Housing, Inc. v. Town of North Hempstead*,
    175 F.3d 144 [2d Cir. 1999].................................................................................31

*Gillette Co. v. Ed Pinaud, Inc.*,
    178 F. Supp. 618 (S.D.N.Y. 1959) .....................................................................23

*Habitat for Horses v. Salazar*,
    745 F. Supp. 2d 438 (S.D.N.Y. 2010).................................................................22

*Hachamovitch v. DeBuono*,
    159 F.3d 687, 697 (2d Cir. 1998)........................................................................39

*Hoblock v. Albany County Bd. of Elections*,
    422 F.3d 77 (2d Cir. 2005)..................................................................................21

*Hornig v. Trustees of Columbia Univ.*,
    No. 17-CV-3602, 2018 WL 5800801 (S.D.N.Y. Nov. 5, 2018).............................23

*Impax Media Inc. v. Northeast Adver. Corp.*,
    2018 U.S. Dist. LEXIS 4940 (S.D.N.Y. 2018).....................................................31

*Jackson v. Onondaga Cty.*,
    No. 05-CV-1393 (TJM)(GHL), 2006 WL 2950355 (N.D.N.Y. Oct. 16, 2006) .....................22

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905).................................................................................. *passim*

*Jones on behalf of Michele v. Board of Education*,
    632 F. Supp. 1319 (E.D.N.Y. 1986) ...................................................................29

*Kadant, Inc. v. Seeley Mach., Inc.*,
    244 F. Supp. 2d 19 (N.D.N.Y. 2003)..................................................................24

*Kadrmas v. Dickinson Pub. Sch.*,
    487 U.S. 450 [1988].............................................................................................36

*KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*,
    No. 12-CV-2200, ER, 2012 WL 1521060, at *5 (S.D.N.Y. Apr. 30, 2012) .....................24

*Lasher v. Dagostino*,
    No. 9:16-CV-0198, 2016 WL 1717205 (N.D.N.Y. Apr. 28, 2016) (BKS) .....................20

*Life Tech. Corp. v. AB Sciex Pte. Ltd.*,
No. 11 Civ. 325 (RJH), 2011 WL 1419612 (S.D.N.Y. Apr. 11, 2011) ...................................23

*Lynch v. City of New York*,
589 F.3d 94 (2d Cir. 2009)..................................................................................................20

*Magnet Commc'ns, L.L.C. v. Magnet Commc'ns, Inc.*,
No. 00 Civ. 5746 (RO), 2001 WL 1097865 (S.D.N.Y. Sept. 19, 2001)................................24

*Mair v. Good*
325 F. Supp. 1268 (N.D.N.Y. 1971) ................................................................................37, 38

*Mastrovincenzo v. City of N.Y.*,
435 F.3d 78 (2d Cir. 2006)..................................................................................................20

*Metro. Taxicab Bd. of Trade v. City of N.Y.*,
615 F.3d 152 (2d Cir. 2010)................................................................................................20

*Monserrate v. N.Y. State Senate*,
599 F.3d 148 (2d Cir. 2010)...................................................................................19, 20, 36

*Monserrate v. N.Y. State Senate*,
695 F. Supp. 2d 80 (S.D.N.Y. 2010).....................................................................................21

*N. Am. Soccer League, LLC v. United States Soccer Fed., Inc.*,
883 F.3d 32 [2d Cir. 2018]..................................................................................................19

*New York State Asso. for Retarded Children, Inc. v. Rockefeller*,
357 F. Supp. 752 (E.D.N.Y. 1973) .......................................................................................29

*NuClimate Air Quality Sys. v. M&I Heat Transfer Prods.*,
2008 U.S. Dist. LEXIS 56708 (N.D.N.Y. 2008) ...........................................................19, 25

*Jones on behalf of Michele v. Board of Education*,
632 F. Supp. 1319 (E.D.N.Y. 1986) .....................................................................................29

*Oliver v. New York State Police*,
No. 115-CV-00444 (BKS)(DJS), 2019 WL 2009182 (N.D.N.Y. May 6, 2019)....................23

*Patton v. Dole*,
806 F.2d 24 (2d Cir. 1986)..................................................................................................19

*People v. Pierson*,
176 N.Y. 201 [1903] ...........................................................................................................30

*Perry v. Fischer*,
No. 907-CV-1245 GLS DRH, 2008 WL 203011 (N.D.N.Y. Jan. 23, 2008)..........................22

*Phillips v. City of New York*
 775 F.3d 538, 542 (2d Cir. 2015)................................................................27, 28

*Prince v. Massachusetts,*
 321 U.S. 158 (1944)..........................................................................................30

*Reebok Int'l, Ltd. v. J. Baker, Inc.,*
 32 F.3d 1552 [Fed. Cir. 1994]...........................................................................25

*Reuters Ltd. v. United Press Int'l, Inc.,*
 903 F.2d 904 (2d Cir. 1990)..............................................................................22

*Rizzo v. Goode,*
 423 U.S. 362 (1976)..........................................................................................22

*Rodriguez v. DeBuono,*
 175 F.3d 227 (2d Cir. 1999)........................................................................22, 31

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
 411 U.S. 1 (1973).........................................................................................29, 35

*SEC v. Unifund SAL.,*
 910 F.2d 1028 (2d Cir. 1990)............................................................................21

*Stern v. Shulkin,*
 No.18-CV-71 (MAD)(TWD), 2019 WL 6895417 (N.D.N.Y. Dec. 18, 2019).......................23

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.,*
 60 F.3d 27 (2d Cir. 1995)..................................................................................20

*Toplolowski v. Wrobleski,*
 2013, U.S. Dist. LEXIS 148671 (N.D.N.Y. 2013) ................................................19

*Tough Traveler, Ltd. v. Outbound Prods.,*
 60 F.3d 964 (2d Cir.1995).............................................................................22, 24

*Tri-State Video Corp. v. Town of Stephentown,*
 1998 U.S. Dist. LEXIS 1899 (N.D.N.Y. 1998) ....................................................21

*Turley v. Sauquoit Valley Sch. Dist.,*
 307 F. Supp. 2d 403 (N.D.N.Y. 2003) ...............................................................35

*V.D. v. New York,*
 403 F. Supp. 3d 76 (E.D.N.Y. 2019) ......................................................19, 21, 28

*Ward v. LeClaire,*
 2007 U.S. Dist. LEXIS 38031 (N.D.N.Y. 2007) ..................................................31

*Whitlow v. Cal. Dep't of Educ.*,
   203 F. Supp. 3d 1079 (S.D. Cal. 2016)................................................................28

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)..............................................................................................19, 20

*Workman v. Mingo County Bd. of Educ.*,
   419 Fed. Appx. 348 (4th Cir. 2011).................................................................29

*Worldwide Sport Nutritional Supplements, Inc. v. Five Star Brands, LLC*,
   80 F. Supp. 2d 25 (N.D.N.Y. 1999)................................................................23

*Zucht v. King*,
   260 U.S. 174 (1922)......................................................................................27, 30

**Federal Statutes**

Rehabilitation Act Section 504 ................................................................................25

**State Authorities**

N.Y. Education Law, McKinney's Consol. Laws, c. 16, §§ 310, 311............................38

N.Y. Education Law § 310 .......................................................................................18, 25

New York State's Public Health Law § 2164 ...........................................26, 27, 28, 29

CPLR Article 78 ........................................................................................................25

10 N.Y.C.R.R. § 66-1.1 ......................................................................................*passim*

10 NYCRR 66-1.1(l).................................................................................................4, 39

10 NYCRR 66-1.3 ....................................................................................................39

## PRELIMINARY STATEMENT

"Responding Districts"[1] by and through their counsel (*Johnson & Laws, LLC* and *Sokoloff Stern, LLP*) submit this Memorandum of Law and the accompanying testimonial and documentary evidence in opposition to Plaintiff's pending motion for a preliminary injunction. As highlighted by the Responding Districts' motion to dismiss the complaint (Dkt. No. 54), as well as the State Defendants' motion to dismiss the complaint (Dkt. No. 28), Plaintiffs are not entitled to any relief in this action, much less the extraordinarily broad, statewide preliminary injunction relief they currently seek from this Court.

Plaintiffs filed a motion for a Temporary Restraining Order ("TRO") and a Preliminary Injunction on August 25, 2020 (Dkt. No. 40). Following a Court Conference with all counsel, this Court denied Plaintiffs' request for the TRO on August 26, 2020. For the following reasons fully set forth below, this Court should likewise deny Plaintiffs' Preliminary Injunction Motion ("PI Motion") as a matter of law, based upon Plaintiffs' demonstrated failure to show their entitlement to injunctive relief.

## STATEMENT OF FACTS

The evidentiary submissions on behalf of the Responding School Districts demonstrate that the central allegations and contentions Plaintiffs have presented before this Court are, in fact, completely erroneous. Contrary to Plaintiffs' Complaint, the Responding Districts: (a) timely advised Plaintiffs and other parents of the State's abolition of the religious exemption option; (b) accurately reviewed the initial exemption request by each Plaintiff to ensure that it satisfied the

---

[1] Three Village Central School District ("Three Village CSD"), Cheryl Pedisich, and Corrine Keane; South Huntington Union Free School District s/h/a South Huntington School District ("SHUFSD") and Dr. David P. Bennardo; Ithaca City School District ("ICSD"), Dr. Luvelle Brown, and Susan Esbasch; and Albany City School District ("ACSD"), Kaweeda G. Adams, and Michael Paolino.

basic facial and form requirements (e.g., properly executed and accompanied by a certification by a New York Licensed Physician) under state law; (c) promptly consulted with the District's local Medical Director whom is a licensed New York Physician with relevant medical experience and expertise; (d) engaged with the parents and/or the applicant's private medical provider to obtain further clarifying information or medical substantiation where appropriate as part of its review process; (e) when necessary, engaged with state and local health experts and/or state and federal resources to evaluate the individualized and unique exemption claims by each Plaintiff as part of their review process; and (f) issued their ultimate denial of any decisions (or partial denial in the case of the Ithaca CSD) only after a thorough and thoughtful review and analysis of those medical opinions that were informed and/or supported by health experts at the local, state and/or federal levels.

The evidentiary submissions by the Responding Districts not only expose the infirmity of Plaintiff's PI Motion, but arguably provide a basis for an accelerated judgment dismissing the Complaint.   However, for the purposes of this action in its current procedural posture, the Responding Districts most certainly have demonstrated by their submissions that there is no likelihood that Plaintiffs will succeed on the claims and theories they have plead before this Court. Moreover, consideration of each District's submissions reveals that Plaintiffs cannot establish an entitlement to the extraordinary relief of a preliminary injunction.

Remarkably, while Plaintiffs presently seek such a massively broad and substantially influential injunction—which would prevent school districts across New York State from enforcing mandatory vaccination laws which States have had the authority to do for over one-hundred years—Plaintiffs fail to provide the Court with any evidence documenting: 1) their immunization exemption request forms; 2) the correspondence between Plaintiffs and their

respective school districts regarding those exemption requests; 3) the school districts' substantial efforts in reviewing and analyzing Plaintiffs' requests for medical exemptions and consulting the appropriate medical expert guidelines to ensure compliance with the laws; and 4) the communications between the school districts' physicians/medical directors and other health experts, including but not limited to the New York State Department of Health ("NYS DOH") and the Centers for Disease Control and Prevention ("CDC"). In fact, as the record before this Court reveals, Plaintiffs have failed to provide any evidence regarding the many steps each school district took before making a determination that a particular Plaintiff was not entitled to a medical exemption for a particular State-mandated vaccine. And given these reasonable steps, Plaintiff simply cannot establish their entitlement to a preliminary injunction. Stated simply, Plaintiffs ask this Court to enjoin NYS's ability to ensure school children and the public are protected from vaccine-preventable diseases solely based upon Plaintiffs' unsubstantiated allegations concerning their disagreement with the Districts' decisions on their exemption requests. To such end, the circumstances surrounding each Districts' processing of the exemption requests they received from Plaintiffs, as fully-described below, reveals that Plaintiffs' claims before this Court are entirely erroneous.

***The Three Village CSD's Review of Jane Boe's Medical Exemption Request.*** The Three Village CSD is a public-school district located in Suffolk County, New York (Mason Aff., ¶ 3). It consists of five elementary schools, two junior high schools, one high school, and Three Village Academy, which provides students with a non-traditional, alternative educational environment. (*Id.*)

The District has a procedure for reviewing student requests for a medical exemption. School nurses determine if a student is lacking State-mandated immunizations and communicate with parents and guardians to advise which vaccinations are outstanding. (*Id.*) Parents and

guardians who seek a medical exemption must submit a *Request for Medical Exemption to Immunization Form*, a form created by the State. (*Id.*, ¶ 6.) If a parent or guardian submits such a form, the school nurse will forward it to Dr. Howard Sussman (the District Medical Director) for review. (*Id.*; Sussman Aff., ¶ 4.) The District's Board of Education has determined that it is the District Medical Director's responsibility to make a medical determination as to whether a student should receive a medical exemption. (Mason Aff., ¶ 7; TV-Ex. I.) The reasoning behind this policy is that school administrators lack the medical knowledge to make such a determination. (*Id.*)

When the District provides a medical exemption request, Dr. Sussman refers to the ACIP's *General Best Practice Guidelines for Immunization* (which is available at https://www.cdc.gov/vaccines/hcp/acip-recs/general-recs/downloads/general-recs.pdf) to determine if the student's purported illness constitutes a contraindication or precaution. (Sussman Aff., ¶ 6.) Specially, he refers to Tables 4-1 and 4-2 of the ACIP guidelines. Table 4-1 sets forth the contraindications and precautions to commonly used vaccines. Table 4-2 sets forth conditions that are often incorrectly perceived as contraindications or precautions to vaccination. (*Id.*) Dr. Sussman's reliance on the ACIP guidelines to determine if a student has a recognized contraindication or precaution to a particular vaccine is consistent with 10 NYCRR 66-1.1(l), which explicitly advises school districts to refer to the ACIP guidelines. (*Id.*) If any portion of a student's medical exemption request requires clarification, Dr. Sussman will obtain additional information from the treating physician who signed the medical exemption request form. (*Id.*, ¶ 7.) He will speak to the treating physician over the phone when necessary, so long as the parent agrees to sign a HIPAA release. (*Id.*)

If a parent disagrees with Dr. Sussman's determination, the District will refer the matter to the DOH for review and will allow a student to remain in school pending a decision from the DOH.

(Mason Aff., ¶ 8.) (*Id.*) Where Dr. Sussman and the DOH both recommend against providing a medical exemption to a student, the District will exclude that student from school if they do not obtain all mandatory vaccinations. (*Id.*, ¶ 9.)

Plaintiff Jane Boe, Sr. is the mother of Jane Boe, a former District student. (Mason Aff., ¶ 10; Sussman Aff., ¶ 8.) On September 26, 2016, Jane Boe, Sr. sought a religious exemption for her daughter Jane Boe, who was in 6th grade at the time, and her son, who was in 11th grade. (Ex. TV-A at pp. 1-2; Mason Aff, ¶ 10.) This was Boe Sr.'s first time seeking an exemption from the mandatory vaccination requirements for any of her children. (Mason Aff., ¶ 10.) Jane Boe, Sr. submitted a *Request for Religious Exemption to Immunization Form*, along with a lengthy statement that detailed the journey that led her to request a religious exemption from mandatory vaccinations for her children. (Ex. TV-A; Mason Aff, ¶ 11.) Her children's purported medical issues were not one of them. (Id.) The District granted Jane Boe's request for a religious exemption on September 27, 2016. (Ex. TV-B; Mason Aff., ¶ 11.)

After the New York Legislature repealed the religious exemption to mandatory vaccination requirements on June 13, 2019, Dawn Mason (the District's Executive Director of Pupil Personnel Services) sent a letter to all parents and guardians within the District notifying them of this new legislation. (Ex. TV-C; Mason Aff., ¶ 12.)  And on June 26, 2019, the District sent Jane Boe, Sr. a letter reiterating that, as of June 13, 2019, there was no longer a religious exemption to the mandatory vaccine requirements and advising that Jane Boe was missing mandatory vaccines for Tdap and Meningitis. (Ex. TV-D; Mason Aff., ¶ 13) At this time, Jane Boe was attending P.J. Gelinas Junior High School, one of the District's two junior high schools. (Mason Aff., ¶ 14.)

On August 29, 2019, Jane Boe, Sr. sought to convert Jane Boe's religious exemption to a medical exemption. (Mason Aff., ¶ 15; Sussman Aff., ¶ 8.) She submitted a medical exemption

signed by Dr. Laura Bennett, a New York State licensed physician. (Ex. TV-E at p. 2; Mason Aff., ¶ 15.) In this form, Dr. Bennett listed the following contraindications or precautions that purportedly would exempt Jane Boe from mandatory vaccinations: chronic and severe Lyme, bartonella and autoimmune encephalitis, and POTS/Dysautonmia. (Ex. TV-E at p. 2; Mason Aff., ¶ 15; Sussman Aff., ¶ 9.) The form also provided that Jane Boe's "[b]rother had same administration of menactra [which] eventually led to his death." (*Id.*)

The District sent the medical exemption request to Dr. Sussman for review. (Sussman Aff., ¶ 9; Mason Aff, ¶ 16.) Dr. Sussman consulted the ACIP guidelines to determine if any of Jane Boe's purported illnesses constitute a recognized contraindication or precaution to the meningitis vaccine. (Sussman Aff., ¶ 10.) As per Tables 4-1 and 4-2 of the ACIP guidelines, they did not. (*Id.*) On September 5, 2019, Dr. Sussman spoke with Dr. Bennett (Jane Boe's treating physician) to seek clarification on the status of Jane Boe's purported encephalopathy, specifically, whether it was stable or unstable. (Sussman Aff., ¶ 13; TV-F.) After the call ended, Dr. Sussman notified the District of his determination in an email. Based on his review of the documentation provided by Jane Boe, Sr. and his direct communications with Dr. Bennett (which he detailed at length in his email), Dr. Sussman wrote that he "must reject Dr. Bennett's written request for medical exemption as invalid" and Jane Boe should be required to obtain a meningococcal vaccine. (Ex. TV-F; Sussman Aff., ¶¶ 11-15; Mason Aff., ¶ 18.) Based on Dr. Sussman's determination, the District notified Jane Boe, Sr. that her request for an exemption was denied. (Mason Aff., ¶ 20.)

On September 18, 2019, Jane Boe, Sr. submitted another medical exemption request to the District and asked, to the extent Dr. Sussman reached the same conclusion as before, that he seek guidance and clarification from the DOH before issuing a final determination. (Ex. TV-G at pp. 2-8; Mason Aff, ¶ 21; Sussman Aff., ¶ 18.) Dr. Sussman again consulted Tables 4-1 and 4-2 of the

ACIP guidelines to determine whether Jane Boe's purported illnesses constitute recognized contraindications or precautions to the meningitis vaccine. (Sussman Aff., ¶ 19.) He determined, again, that they did not. (Ex. TV-G at p. 1; Sussman Aff., ¶ 20.) Dr. Sussman suggested that the District refer the matter to the DOH to obtain a definitive opinion. (*Id.*) His email also indicated that Jane Boe "shall not be excluded while the appeal to the DOH is ongoing," (*Id*), which is consistent with the District's policy. The District notified Jane Boe, Sr. of Dr. Sussman's determination. (Ex. TV-H; Mason Aff., ¶ 23.)

On October 29, 2019, Mason submitted Jane Boe's medical exemption request to the DOH for review. (Ex. TV-J; Mason Aff., ¶ 25.) And on November 22, 2019, the DOH provided the District with its determination. (Ex. TV-K.) The DOH recommended "against accepting [Boe's] medical exemption" and explained the reasoning behind its determination (TV-K; Sussman Aff., ¶¶ 21-22.) In accordance with the DOH's recommendation against granting Jane Boe a medical exemption, which was consistent with Dr. Sussman's determination, the District denied Jane Boe's request for a medical exemption. (Mason Aff., ¶ 27; Sussman Aff., ¶ 23; Ex. TV-L.)

On December 19, 2020, Jane Boe, Sr.'s then-attorney Aaron Siri (of Siri & Glimstad LLP) sent Principal Keane a letter on Jane Boe Sr.'s behalf. In the letter, Boe, Sr. asked Principal Keane to ignore the determinations by the DOH and Dr. Sussman and approve Jane Boe's medical exemption request. (Ex. TV-N; Mason Aff., ¶ 29.) Notably, Jane Boe, Sr. took the stance that that Principal Keane, as the "principal or person in charge" of P.J. Gelinas Junior High School, is the person vested with the authority to make a final determination as to whether to accept or reject Boe's medical exemption. (Ex. TV-N at p. 2; Mason Aff., ¶ 29.) Boe Sr. even requested that Principal Keane review the medical exemption form and apply the ACIP guidelines to make her own determination. (*Id.*) This contradicts the allegations in the federal complaint. (*See e.g.*

Complaint, ¶ 305.) In any event, Principal Keane did not take it upon herself to ignore the medical determinations of the District's Medical Director and the DOH itself, as that would have been against District policy. Instead, she deferred the matter to the District's general counsel. (Ex. TV-O; Mason Aff., 30.)

On December 20 2019, Jane Boe Sr.'s attorney provided the District with a third request for a medical exemption. (Ex. TV-O at p. 4; Mason Aff., ¶ 31.) This time, the medical exemption statement was signed by Dr. Caroline Hartridge, not Dr. Bennett. (Ex. TV-O at p. 4; Mason Aff., ¶ 31; Sussman Aff., ¶ 24.) On this form, Dr. Hartridge listed the following contraindications/ precautions: acute moderate to severe illness with or without fever, Lyme disease, autoimmune encephalitis, and toxic mold." (*Id.*) Dr. Hartridge—Jane Boe's own doctor—recommended that Boe's immune status be revaluated after treatment. (*Id.*)

After reviewing the third medical request, Dr. Sussman recommended that the District refer the matter to the DOH for review, (Sussman Aff., ¶ 25; Mason Aff., ¶ 33), and it did. (Mason Aff., ¶ 33; Ex. TV-P). In the interim, Jane Boe, Sr.'s attorney, Jessica Wallace, emailed the District's general counsel on January 7, 2020 asking for an update regarding the status of Jane Boe's medical exemption. (Ex. TV-Q; Mason Aff., ¶ 34.) Ms. Wallace's email also stated, "I appreciate you allowing [Jane Boe] to remain in school while the medical exemption is being reviewed, however, because we were not in contact until after the beginning of winter break, [Jane Boe] was unaware that she was able to remain in school and said all of her goodbyes. … [S]o her parents are hesitant to send her back to school until there has been a final determination by the school on the medical exemption." (*Id.*) The next day, Principal Keane emailed Jane Boe, Sr. directly to remind her that Jane Boe was not excluded from school until the District makes a final determination. (Ex. TV-R;

Mason Aff, ¶ 35.) Despite being allowed to remain in school, Jane Boe opted to remain out of school; Jane Boe, Sr. submitted a notice of intent to homeschool. (Ex. TV-S; Mason Aff., ¶ 36.)

On March 2, 2020, the DOH provided the District with its recommendation as to Boe's December 2019 medical exemption request. (Ex. TV-U; Sussman Aff., ¶ 26; Mason Aff., ¶ 38.) In its decision, the DOH noted, "The CDC's Advisory Committee on Immunization Practices (ACIP) recognizes acute moderate to severe illness with or without fever as a temporary precaution to administration of all vaccines." (*Id.*) The DOH opined that given Boe's acute illness, vaccination should be delayed and her medical status and eligibility for meningococcal vaccine should be reassessed in one month. (*Id.*) Mason provided Jane Boe, Sr. with the DOH's recommendation on March 4, 2020. (A copy of Mason's email to Jane Boe, Sr. is attached as Exhibit TV-V.)

Unsure about when the DOH's recommended one-month delay began and ended, Mason consulted Dr. Sussman and asked him to provide clarity regarding the DOH's determination. (Mason Aff., ¶ 39.) Dr. Sussman explained that it was his understanding that the DOH granted Jane Boe a one-month extension from the date of her medical exemption request (December 18, 2019) which indicated she was being treated for an acute illness. (Sussman Aff., ¶ 27; Mason Aff., ¶ 39.) Since the one-month period had long passed by the time the DOH issued a determination, Dr. Sussman indicated that Jane Boe should be required to obtain a meningitis vaccine or face exclusion from school. (Id.) After receiving the DOH's March 2, 2020 determination, the District notified Jane Boe, Sr. that her request for a medical exemption was denied. (Mason Aff., ¶ 40; Sussman Aff., ¶ 28.)

In July 2020, Jane Boe Sr. sent another notice of intent to home school for the upcoming 2020-21 school year, and the District provided her with the requisite forms. (Ex. TV-W; Ex. TV-X; Mason Aff., ¶ 41.) However, on August 26, 2020, Jane Boe Sr. notified the District that she

intended to withdraw Jane Boe from home schooling because Jane Boe was accepted to The Stony Brook School, a New York private school. (Ex. TV-Y; Mason Aff., ¶ 42.)

***The South Huntington UFSD's Review of John Loe's Medical Exemption Request.*** The South Huntington Union Free School District (the "District") is a public-school district located in the western part of Suffolk County, New York. (Poprilo Aff., ¶ 3.) It consists of two primary centers, two intermediate schools, a sixth-grade center, a middle school, and Walt Whitman High School. (*Id.*) St. Anthony's High School is a Roman Catholic high school located in Melville, New York, within the boundaries of the District. (Poprilo Aff, ¶ 4.)  It is chartered by New York State and accredited by the Middle States Association of Colleges and Schools. (*Id.*)

The District does not own or operate St. Anthony's. (*Id.*) But due to the large number of District residents that attend St. Anthony's, the District employs two full-time nurses and one part-time nurse to work within the school: Kathleen Barnosky, Ann DeMarco, and Sally Cappy. (Poprilo Aff., ¶ 5; *see also* Geffken Aff., ¶ 3.).[2]

Plaintiff John Loe is a high school student at St. Anthony's (Poprilo Aff., ¶ 7; Geffken Aff., ¶ 5.) who started school on September 5, 2019 without providing proof of the required: 1) Tdap vaccination and; 2) meningitis vaccination. (*Id.*).  On September 6, 2019, Nurse Barnosky emailed John Loe's mother, Jane Loe, to remind her that a medical exemption request form was due and such requests had to be received within 14 days of a student's first day of school. (Ex. SH-A; Poprilo Aff., ¶ 8; Geffken Aff., ¶ 6.) In this September 6, 2019 email, Nurse Barnosky further advised that two exemption forms were needed, one for the Tdap vaccine and one for the meningitis vaccine, as New York no longer permitted one form for multiple vaccines. If the forms

---

[2] Brother David Migliorino, O.S.F., on the other hand, is the St. Anthony's Principal and is not a District employee. (Poprilo Aff., ¶ 5.).

were not received by September 19, 2019, John Loe would be excluded from school the next day. (Ex. SH-A; Poprilo Aff., ¶ 9; Geffken Aff., ¶ 7.)

On September 13, 2019, John Loe's parent submitted a medical exemption form that had been signed in August 2019. (*See* August 21, 2020 Jane Loe Declaration, ¶ 10; *see also* Ex. SH-B; Poprilo Aff., ¶ 10; Geffken Aff., ¶ 8.) That same day, Nurse Barnosky sent Loe's request form to Dr. Geffken advising that the Loes were seeking a medical exemption to all vaccines, which was contrary to the directive given to the Loes that the State mandates a separate form for each vaccine request. (Ex. SH-C; Poprilo Aff., ¶ 12; Geffken Aff., ¶ 9.) Dr. Jack Geffken, DO has been the District's Chief Medical Officer since July 1, 2015. (Geffken Aff., ¶ 1; Poprilo Aff., ¶ 11.)

On September 16, 2019, Nurse Barnosky wrote to Jane Loe to advise that Dr. Geffken had been in contact with John Loe's doctor, Rosario Trifiletti, M.D. (Ex. SH-D; Geffken Aff., ¶ 10; Poprilo Aff., ¶ 13.) In this email, Nurse Barnosky explained that Dr. Trifiletti reported that John Loe was no longer a patient and that the form requesting a medical exemption for the Tdap and meningitis vaccines had been signed in error. (Ex. SH-D; Geffken Aff., ¶ 11; Poprilo Aff., ¶ 14.) As such, Dr. Geffken denied the medical exemption request. (*Id.*) Jane Loe responded by email that same day, September 16, 2019, and indicated that the medical exemption from June 2018 was a 2-year exemption and would not expire until June 2020. (Ex. SH-D; Poprilo Aff., ¶ 15; Geffken Aff., ¶ 12.) Jane Loe also wrote in her email that she was experiencing problems because a member of Dr. Trifiletti's staff did not like her.  (Ex. SH-D; Poprilo Aff., ¶ 15; Geffken Aff., ¶ 13.) Mrs. Loe attributed any confusion about the medical exemption to that staff member. (*Id.*) And she urged the District to grant a medical exemption based on the June 2018 and August 2019 exemption form submissions. (*Id.*)

Dr. Geffken responded that medical exemption requests must be submitted annually, thereby invalidating the June 2018 submission. (Ex. SH-D; Geffken Aff., ¶ 14; Poprilo Aff., ¶ 17.) Further, the 2018 medical exemption request would have been issued before the enactment of the 2019 regulations requiring the meningococcal vaccination. (*Id.*) As to the August 2019 submission, Dr. Geffken required the medical exemption form to be submitted from a currently treating physician. (Ex. SH-D; Geffken Aff., ¶ 15; Poprilo Aff., ¶ 18.) Dr. Geffken responded that the form had been invalidated by the submitting physician and the family could either withdraw the student until they could obtain a medical exemption or provide the vaccines to the student. (Ex. SH-D; Geffken Aff., ¶ 16; Poprilo Aff., ¶ 19.).   On September 21, 2019, Dr. Geffken wrote to April Poprilo, the District Assistant Superintendent for Student Services, and explained he had been asked to review an immunization exemption form filled out by Dr. Trifiletti on August 27, 2019. (Geffken Aff., ¶ 17; Poprilo Aff., ¶ 21.) The form indicated John Loe had an autoimmune encephalopathy from a thyroid issue and was receiving sporadic steroids. (Ex. SH-E; Geffken Aff., ¶ 17; Poprilo Aff., ¶ 20.) Dr. Geffken explained that he called Dr. Trifiletti on September 13, 2019 and was told that John Loe was no longer in his care and that he retracted the form. (Ex. SH-E; Geffken Aff., ¶ 18; Poprilo Aff., ¶ 21.) As a result, Dr. Geffken advised the school nurse by email on September 16, 2019 that an update exemption form needed to be submitted with appropriate documentation. (Ex. SH-E; Geffken Aff., ¶ 18; Poprilo Aff., ¶ 21.)

In a September 21, 2019 letter, Dr. Geffken noted that steroids can be a short-term reason to delay immunization but would not satisfy the exemption requirement. (Ex. SH-E; Geffken Aff., ¶ 19; Poprilo Aff., ¶ 22.) He indicated he could not recommend approval of the medical exemption. (Ex. SH-E; Geffken Aff., ¶ 19; Poprilo Aff., ¶ 22.)

On November 14, 2019, another physician, Dr. Bouboulis, signed immunization exemption request forms for Tdap and meningitis, which John Loe's parents provided to the District on November 20, 2019. (Ex. SH-F; Geffken Aff., ¶ 20; Poprilo Aff., ¶ 23.) And on December 10, 2019, Nurse Barnosky advised Jane Loe that this exemption request did not fall within the parameters set by New York State; this was based on Dr. Geffken's determination. (Ex. SH-G; Geffken Aff., ¶ 21; Poprilo Aff., ¶ 24.) Nurse Barnosky also advised the Loes they needed to execute a release so Dr. Geffken could speak directly with the physician; the Loes promptly returned a release. (Ex. SH-G; Geffken Aff., ¶¶ 21-22; Poprilo Aff., ¶¶ 24-25.)

On December 11, 2019, Dr. Geffken called Dr. Bouboulis and left a detailed voicemail message. (Geffken Aff., ¶ 23; Poprilo Aff., ¶ 26.) On December 13, 2019, Nurse Barnosky encouraged Jane Loe to contact Dr. Bouboulis and have him respond to Dr. Geffken. (*Id.*; Ex. SH-H.) Dr. Geffken called again on December 16, 2019 and spoke with Dr. Bouboulis' office staff. (Geffken Aff., ¶ 24; Poprilo Aff. ¶ 27.) During this phone call, Dr. Geffken explained that the exemption request did not match the child's prior reaction and he required clarification on the immune system issues cited. (Geffken Aff., ¶ 24; Poprilo Aff., ¶ 27.) Dr. Geffken indicated he could not recommend approval of the request unless he heard back from Dr. Bouboulis. (*Id.*) Dr. Bouboulis did not call him back. (Ex. SH-I; Geffken Aff., ¶ 24; Poprilo Aff., ¶ 27.)

Dr. Geffken found that immune deficient people should usually abstain from live vaccines. Here, neither the Tdap nor meningitis vaccine is a live one. Also, Tdap is contraindicated in unstable seizures and that did not apply here. (Ex. SH-I; Geffken Aff., ¶ 25; Poprilo Aff., ¶ 28.). On December 21, 2019, Dr. Geffken rejected the exemption request. (Geffken Aff., ¶ 26; Poprilo Aff., ¶ 29.) The exemption form provided that John Loe has an autoimmune encephalopathy and

had a reaction to H1N1 in the past. The prior doctor's note attributed the autoimmune encephalopathy to a thyroid issue. (Ex. SH-I; Geffken Aff., ¶ 26; Poprilo Aff., ¶ 29.)

On January 6, 2020, Dr. Geffken informed Poprilo that he had had finally spoken to Dr. Bouboulis. The doctors reviewed the case and discussed the student's prior reaction to H1N1 and that the student had other vaccinations. (Ex. SH-J; Geffken Aff., ¶ 27; Poprilo Aff., ¶ 30.) Dr. Geffken advised that Dr. Bouboulis could not argue against vaccinating the student with Tdap or Menactra and Dr. Geffken could not recommend approval of the exemption. (*Id.*)

It is the District's understanding John Loe's last day of attendance at St. Anthony's was September 19, 2019 and he was withdrawn on January 7, 2020. (Poprilo Aff., ¶ 31; Geffken Aff., ¶ 29.) The District has abided by the law and followed DOH guidelines in examining the exemption request (Poprilo Aff., ¶ 31; Geffken Aff., ¶ 30.) relying upon the findings and advice of its medical officer, Dr. Geffken. (*Id.*)

***The Ithaca City School District's Review of "John Joe's" Medical Exemption Request.***  With regard to the Ithaca CSD and Plaintiff-John Joe, Plaintiff-John Joe similarly attended Ithaca CSD with a religious exemption to the mandatory vaccination laws until the NYS Legislature's repeal of same in June 2019 (Johnson Dec. at Ex. A).  Following the repeal of the religious exemption, John-Joe's parents submitted their first ever medical exemption application to Ithaca CSD on July 1, 2019, requesting that John-Joe be exempt from all of NYS's mandatory vaccinations (*see id.*). The July 1, 2019 exemption request submitted by John-Joe's parents indicated nothing more than the single sentence that "[John-Joe] had a very high fever and difficulty breathing after Hepatitis B vaccination" (*see id.*).  Moreover, the exemption request was further defective as it was signed by a nurse practitioner, rather than by a NYS licensed physician as is required by 10 N.Y.C.R.R. 66-1.1 (*see id.*).  In response to Ithaca CSD's request for a revised medical exemption application

that was in compliance with NYS laws, John-Joe's parents submitted a revised (or second) application on August 5, 2019 (*see id.*).  While the revised August 5, 2019 application contained a signature from a physician (Dr. Jessica Casey), the revised application contained no further medical information and/or description of any contraindication or precaution apart from the single sentence (referencing the Hepatitis B immunization) that appeared in John-Joe's initial July 1, 2019 exemption application (*see id.*).

Upon Ithaca CSD's Superintendent, Dr. Luvelle Brown, receiving John-Joe's revised exemption request, Dr. Brown promptly forwarded the exemption request to Doctor Melissa Dhundale, the Medical Director for the Ithaca CSD (*see id.*).  Upon reviewing and analyzing the application and the official guidance issued by the NYS DOH regarding medical exemption applications (in compliance with NYS laws), Dr. Dhundale then conferred directly with Doctor Elizabeth Rausch-Phung, Director of the Bureau of Immunizations at the NYS DOH (*see id.*).  On October 18, 2019, Dr. Rausch-Phung formally advised the Ithaca CSD that, after completing her review of John-Joe's exemption application, she determined that John-Joe's application did not contain any evidence of a contraindication or precaution with respect to any of NYS's mandatory vaccinations (*see id.*).  Accordingly, in light of the complete lack of evidence of any contraindication or precaution in John-Joe's August 5, 2019 application, Dr. Rausch-Phung recommended that Ithaca CSD deny the exemption request in its entirety (*see id.*).

Despite the NYS DOH's recommendations that John-Joe's exemption request be denied in its entirety, Dr. Dhundale advised the Ithaca CSD that, out of an abundance of caution, she recommended that John-Joe's application be granted with respect to the Hepatitis B vaccine (*see id.*).  Thus, on November 21, 2019, the Ithaca CSD officially granted John-Joe an exemption from the mandatory Hepatitis B vaccine, in accordance with the professional opinion of its Medical

Director after extensive review of applicable guidelines and consultation with the NYS DOH (*see id.*). As such, Ithaca CSD's decision was even more favorable to John Joe than what was recommended by the NYS DOH (i.e., a complete denial of John Joe's exemption request, including the request for an exemption as to the Hepatitis B vaccine) (*see id.*). Nonetheless, despite receiving an exemption from NYS's mandatory Hepatitis B vaccine, John Joe's parents decided not to send her to Ithaca CSD, electing instead to homeschool their daughter as a result of their dissatisfaction with anything other than a complete exemption from all NYS mandatory vaccinations (*see id.*; Dkt. No. 41-16 at ¶¶ 10, 12). On December 18, 2019, John Joe's parents submitted an appeal to the State Commissioner of Education ("Commissioner"), in accordance with applicable state law, challenging the Ithaca CSD's decision denying John Joe's August 5, 2019 exemption request. John Joe's parents' December 18, 2019 appeal is currently pending before the Commissioner simultaneously with John Joe's parents' instant action before this Court seeking a preliminary injunction.

***The Albany City School District's Review of "John Foe's" Medical Exemption Request.*** With regard to Albany CSD and Plaintiff-John Foe, similar to the other Plaintiffs described above, Plaintiff-John Foe attended Albany-CSD with a religious exemption until the repeal of such exemption by the NYS Legislature in June 2019 (*see* McKenna Dec. at ¶ 4). As indicated by John Foe's attorney in an October 1, 2019 letter to Albany CSD, John Foe's parents submitted their first ever medical exemption request on or about September 9, 2019 (*id.* at ¶ 5). This medical exemption request contained no medical information and/or description of any contraindication or precaution other than the statement "MTHFR" (also known as methylenetetrahydrofolate reductase) (*id.* at Ex. A). Upon the Albany CSD receiving John Foe's September 9, 2019 exemption request, the Albany CSD immediately consulted with various school medical

professionals, including Doctor Laura Staff, who serves as Albany CSD's Medical Director (*see* McKenna Dec. at ¶ 6).

Dr. Staff reviewed John Foe's initial exemption application on or about September 23, 2019 (*id.* at ¶ 6). In evaluating John Foe's exemption application, not only did Dr. Staff confer with multiple medical professionals from the NYS DOH, Dr. Staff confirmed her research and findings (i.e., that the information provided in John Foe's exemption application had not set forth either a medical contraindication or precaution to any mandatory vaccinations) with additional medical professionals at the CDC (*id.* at ¶¶ 6, 11). Dr. Staff, together with the professional medical opinions from the NYS DOH and the CDC, collectively determined that John Foe's September 9, 2019 exemption request should be denied (*see id.*).

As further reflected in John Foe's Attorney's October 1, 2019 letter, John Foe's parents indicated to the Albany CSD that they would "obtain a more detailed explanation of [John Foe's] condition that warrants a medical exemption" (id. at Ex. A p. 2). However, on October 7, 2019, Albany CSD Superintendent, Kaweeda Adams, received a request from John Foe's father to homeschool John Foe and his two other siblings (whom did not submit medical exemption requests) (*id.* at ¶ 10). In response to John Foe's father's October 7, 2020 request, the Albany CSD staff promptly developed and finalized an Individualized Home Instruction Plan ("IHIP") for John Foe and his siblings (who are not Plaintiffs in this action and did not submit medical exemption requests) by November 14, 2019 (*see id.*).

On December 5, 2019, approximately three months after the Albany CSD received John Foe's initial exemption application and about a month after developing John Foe's (and his siblings') IHIP, John Foe's parents submitted a second medical exemption application primarily consisting of various medical literature—not medical records regarding John Foe (*id.* at Ex. C).

Upon receiving this second exemption request, the Albany CSD promptly forwarded same to Dr. Staff, whom thoroughly reviewed such request and again consulted with various medical experts and applicable guidelines from both the NYS DOH and the CDC (*id.* at ¶ 11). Because John Foe's parents' second exemption request was devoid of the necessary information regarding contraindications or precautions under NYS law, Dr. Staff advised the Albany CSD to request additional lab and testing results from John Foe's parents, in order for Dr. Staff to be able to thoroughly analyze John Foe's parents' second exemption application (*see id.*). On December 18, 2019, Dr. Staff received a print-out from John Foe's parents regarding the requested lab/testing results but, rather than reference any NYS licensed physician, the print-out listed a "Cynthia L. Smith" as the source of such information (*see id.*). Dr. Staff's research revealed Ms. Smith to not be a physician, but a former attorney who claims to study certain "Chinese Medicine" (*see id.*).

Nevertheless, Dr. Staff again consulted with various medical professionals at the CDC regarding the December 18, 2019 "lab information" provided from Ms. Smith to the Albany CSD (*see id.*). Dr. Staff, again, confirmed her research and findings with the medical physicians from the CDC, whom collectively verified that there existed no medical data or peer-reviewed studies which indicated that the MTHFR condition relied upon by John Foe's parents was contraindicated to any mandatory vaccines (*see id.*). Based upon the thoroughly reviewed and analyzed findings of Medical Director Dr. Staff, the Albany CSD denied John Foe's December 5, 2019 exemption request on January 3, 2020 (*id.* at Ex. C).

It is undisputed that John Foe's parents never appealed the Albany CSD's decisions on either of their exemption applications to the State Commissioner of Education, despite the letters from Albany CSD repeatedly reiterating John Foe's parents' rights to do so under N.Y. Education Law § 310 (*id.* at ¶ 12). Further, throughout the time period that John Foe's exemption applications

were being processed and reviewed by the Albany CSD medical professionals, John Foe was being homeschooled by his parents.  In fact, John Foe's parents ultimately enrolled him in private school, which John Foe has been attending since March 2020 (Dkt. No. 41-15 at ¶ 20).

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Monserrate v. N.Y. State Senate*, 599 F.3d 148, 154 (2d Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)); *see also Toplolowski v. Wrobleski*, 2013, U.S. Dist. LEXIS 148671, 4 (N.D.N.Y. 2013) (holding that a preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion."); *Amaker v. Fischer*, 2012 U.S. Dist. LEXIS 188013, 3 (W.D.N.Y. 2012) (quoting *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986).

Approximately one month after Plaintiffs commenced this action on July 23, 2020 (Dkt. No. 1"), this Court considered, and denied, Plaintiff's motion for a similarly far-reaching Temporary Restraining Order on August 27, 2020 (Dkt. No. 46).  As demonstrated herein, Plaintiffs' voluminous motion papers utterly fail to meet the rigorous requirements for a preliminary injunction.  In the Second Circuit, a party seeking a preliminary injunction must prove: 1) the movants' likelihood of success on the merits; (2) irreparable harm if a preliminary injunction is not granted; (3) the balance of hardships decisively tips in the movants' favor; and (4) that a preliminary injunction is in the public interest.  *See e.g.*, *NuClimate Air Quality Sys. v. M&I Heat Transfer Prods.*, 2008 U.S. Dist. LEXIS 56708 *16 (N.D.N.Y. 2008); *Winter*, 555 U.S. at 24; *V.D. v. New York*, 403 F. Supp. 3d 76, 85 (E.D.N.Y. 2019) (quoting *N. Am. Soccer League, LLC v. United States Soccer Fed., Inc.*, 883 F.3d 32, 37 [2d Cir. 2018]).  "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting

or withholding of the requested relief.'" *See e.g.*, *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 [1987]).

Generally, to obtain a preliminary injunction seeking to maintain the status quo, that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, a plaintiff must establish irreparable harm and a likelihood of success on the merits. *See Monserrate*, 599 F.3d at 154 (citing *Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009)); *Metro. Taxicab Bd. of Trade v. City of N.Y.*, 615 F.3d 152, 156 (2d Cir. 2010) (*quoting Cty. of Nassau v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008)). "A mandatory injunction, in contrast, is said to alter the status quo *by commanding some positive act* . . . [and] thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success." *Mastrovincenzo v. City of N.Y.*, 435 F.3d 78, 89 (2d Cir. 2006) (emphasis in original) (citation omitted). "[A] district court may enter a *mandatory* preliminary injunction against the government only if it determines that, in addition to demonstrating irreparable harm, the moving party has shown a 'clear' or 'substantial' likelihood of success on the merits." *Mastrovincenzo*, 435 F.3d 78, 89 (emphasis in original). This Court has held:

> [W]hen the moving party seeks a mandatory injunction that alters the status quo by commanding a positive act, the burden is even higher. A mandatory preliminary injunction, should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.

*Lasher v. Dagostino*, No. 9:16-CV-0198, 2016 WL 1717205, at *8 (N.D.N.Y. Apr. 28, 2016) (BKS) ("[W]hen the moving party seeks a 'mandatory injunction that alters the status quo by commanding a positive act,' the burden is even higher") (quoting *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 [2d Cir. 2011]). As mandatory injunctions can often be stated in seemingly prohibitory terms, *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995),

"courts in this Circuit impose the heightened 'substantial likelihood of success' standard where, '[t]hough the order is prohibitory in form, rather than mandatory, it accomplishes significantly more than preservation of the status quo.'" *Monserrate v. N.Y. State Senate*, 695 F. Supp. 2d 80, 89 (S.D.N.Y. 2010), *aff'd*, 599 F.3d 148 (2d Cir. 2010) (*quoting SEC v. Unifund SAL.*, 910 F.2d 1028, 1040 (2d Cir. 1990)).

Plaintiffs in this action seek to change the law that has been in place for over a year and ask the Court to grant a preliminary injunction that would allow students—who have been excluded from school for many months—to be readmitted to school without having to comply with State-mandated vaccination requirements. "This would not preserve the status quo. On the contrary, it would fundamentally change the positions of the parties as [they] existed prior to the grant of the injunction and therefore is squarely in the nature of mandatory injunctive relief." *Id.* Contrary to Plaintiffs' misguided contentions, the heightened standard for mandatory injunctions against the government applies here, not the standard for preliminary injunctions seeking to maintain the status quo.

Even if the heightened standard for a mandatory injunction somehow does not apply, Plaintiffs still must demonstrate a likelihood of success on the merits. *See V.D.*, 403 F. Supp. 3d at 85; *see also Bery v. City of New York*, 97 F.3d 689, 6954 (2d Cir. 1996) ("Because plaintiffs seek to enjoin legislation or regulations developed through presumptively reasoned democratic processes, they must meet the heightened standard of a likelihood of success on the merits."); *see also Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 96-97 (2d Cir. 2005); *Tri-State Video Corp. v. Town of Stephentown,* 1998 U.S. Dist. LEXIS 1899, 6 (N.D.N.Y. 1998). Plaintiffs concede this (Dkt. No. 41-1 at 15-16). And to enjoin the activity of a government agency, Plaintiffs must also "contend with the well-established rule that the Government has traditionally been

granted the widest latitude in the dispatch of its own affairs." *See e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 378-9 (1976).  As set forth below, this Court should deny Plaintiffs' preliminary injunction motion because Plaintiffs have failed to show their entitlement to injunctive relief under any standard.

## LEGAL ARGUMENT

### POINT I

### PLAINTIFFS' EXCESSIVE DELAY IN SEEKING AN INJUNCTION DEMONSTRATES THE LACK OF IRREPARABLE HARM

The Court should deny Plaintiffs' motion because they cannot demonstrate irreparable harm.  "Irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'"  *Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999) (*quoting Bell & Howard: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1993)); *Jackson v. Onondaga Cty.*, No. 05-CV-1393 (TJM)(GHL), 2006 WL 2950355, at *1 (N.D.N.Y. Oct. 16, 2006) (quoting *Brown v. Middaugh*, 1998 WL 566791, *1 (N.D.N.Y. Sept. 3, 1998)). Accordingly, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."  *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990).  "In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied."  *Rodriguez*, 175 F.3d at 234; *Perry v. Fischer*, No. 907-CV-1245 GLS DRH, 2008 WL 203011, at *1 (N.D.N.Y. Jan. 23, 2008).

"Delay in seeking preliminary injunctive relief alone can justify denial of a preliminary injunction because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."  *Habitat for Horses v. Salazar*, 745 F. Supp. 2d 438, 449 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d

Cir.1995)); *Worldwide Sport Nutritional Supplements, Inc. v. Five Star Brands, LLC*, 80 F. Supp. 2d 25, 34 (N.D.N.Y. 1999) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276–77 (2d Cir.1985)); *see also Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir. 1994) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights, and a delay in enforcement tends to indicate at least a reduced need for such drastic, speedy action.") (internal quotation marks omitted) (citing *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)).

Courts in this Circuit generally decline to grant preliminary injunctions where there are unexplained delays of more than two months. *See Stern v. Shulkin*, No.18-CV-71 (MAD)(TWD), 2019 WL 6895417, at *5 (N.D.N.Y. Dec. 18, 2019) (quoting *Hornig v. Trustees of Columbia Univ.*, No. 17-CV-3602, 2018 WL 5800801, *7 (S.D.N.Y. Nov. 5, 2018)); *Gillette Co. v. Ed Pinaud, Inc.*, 178 F. Supp. 618, 622 (S.D.N.Y. 1959) ("[b]y sleeping on its rights a plaintiff demonstrates the lack of need for speedy action and cannot complain of the delay involved pending any final relief to which it may be entitled after a trial of all the issues"); *see also Oliver v. New York State Police*, No. 115-CV-00444 (BKS)(DJS), 2019 WL 2009182, at *6 (N.D.N.Y. May 6, 2019) (denying plaintiffs' motion for a preliminary injunction because plaintiffs did not adequately demonstrate irreparable harm due to their four month unexplained delay in seeking relief), *aff'd*, 812 F. App'x 61 (2d Cir. 2020); *199 Delaware Ave., Inc. v. Lake Effect Artisan Ice Cream*, No. 1:19-CV-00224 EAW, 2019 WL 1723588, at *6 (W.D.N.Y. Apr. 18, 2019) (denying preliminary injunction motion due to three month delay in seeking relief); *Life Tech. Corp. v. AB Sciex Pte. Ltd.*, No. 11 Civ. 325 (RJH), 2011 WL 1419612, at *7 (S.D.N.Y. Apr. 11, 2011) (denying plaintiffs' motion for a preliminary injunction due to three-month unexplained delay in seeking relief) (citation omitted). In fact, "any presumption of irreparable harm is inoperative if

the plaintiff has delayed either in bringing suit or in moving for preliminary injunction." *Magnet Commc'ns, L.L.C. v. Magnet Commc'ns, Inc.*, No. 00 Civ. 5746 (RO), 2001 WL 1097865, at *1 (S.D.N.Y. Sept. 19, 2001) (citation omitted); *Kadant, Inc. v. Seeley Mach., Inc.*, 244 F. Supp. 2d 19, 33 (N.D.N.Y. 2003) (citing *Tough Traveler, Ltd. v. Outbound Prods.,* 60 F.3d 964, 967 (2d Cir.1995)).

The law at issue was effective on August 16, 2019. *See* 10 N.Y.C.R.R. § 66-1.1 (indicating emergency rulemaking took effect on August 16, 2019). By the end of 2019, Plaintiffs Jane Boe, John Joe, and John Loe had all been notified by their respective school districts that their medical exemption requests had been denied. (Mason Aff., ¶ 20; Geffken Aff., ¶ 26; Poprilo Aff., ¶ 29; McKenna Dec. at ¶ 10; Johnson Dec. at Ex. A).[3] By early 2020, every one of these Plaintiffs were no longer admitted to school and were instead being homeschooled. (Mason Aff., ¶ 40; Sussman Aff., ¶ 28; Poprilo Aff., ¶ 31; Geffken Aff., ¶ 29; Johnson Dec. at Ex. A). Nevertheless, Plaintiffs waited until July 27, 2020 to file suit and until August 25, 2020 to seek a preliminary injunction. Plaintiffs' significant delay in commencing a lawsuit and subsequently seeking an injunction "discredits Plaintiffs' notion that a preliminary injunction is necessary to prevent an irreparable harm" and thus requires dismissal of their motion. *See KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist.*, No. 12-CV-2200 ER, 2012 WL 1521060, at *5 (S.D.N.Y. Apr. 30, 2012) (citing *Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.,* 25 F.3d 119, 124 (2d Cir.1994) ("Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights, and a delay in enforcement tends to indicate at least a reduced need for such drastic, speedy action.").

---

[3] Plaintiff John Foe's last exemption application was denied on January 3, 2020 (*see* McKenna Dec. at Ex. C).

## POINT II

## PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN ON EVERY ELEMENT IN THEIR PRELIMINARY INJUNCTION MOTION

*A.    Plaintiffs have failed to show a likelihood of success on the merits.*

As an initial matter, for all of the reasons argued in Defendants' motion to dismiss (Dkt. No. 54), as well as the State Defendants' motion to dismiss (Dkt. No. 28), which Defendants incorporate herein by reference, Plaintiffs clearly cannot show a likelihood of success on the merits and should not be granted the broad injunctive relief they presently seek. *See NuClimate*, 2008 U.S. Dist. LEXIS 56708 at 16 (holding a plaintiff's failure to demonstrate either a likelihood of success or irreputable harm requires the denial of the motion for a preliminary injunction) (quoting *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 [Fed. Cir. 1994]).  Defendants' motion to dismiss thoroughly analyzes the numerous reasons why Plaintiffs cannot prevail on their claims. Specifically, Plaintiffs cannot succeed on the merits because: 1) all claims against the individual Defendants are duplicative of those asserted against the school districts (Dkt. No. 54-14 at 7-9); 2) Plaintiffs failed to exhaust their administrative remedies under N.Y. Educ. Law § 310 and/or CPLR Article 78 which warrants abstention in this case (*id.* at pp. 9-14); 3) Plaintiffs' have no valid claims for parental rights, informed consent, or failure to provide a free public education because such claims are precluded by long-standing United States Supreme Court decisions and procedures set forth by the State (*id.* at pp. 16-21); 4) Plaintiffs have no claim under Section 504 of the Rehabilitation Act because they cannot show they were excluded from school solely because of a disability nor can they establish a causal connection between a disability and the adverse determination on their medical exemption requests (*id.* at p. 21); and 5) Plaintiff Children Health Defense lacks standing to assert any claims against Defendants (*id.* at p. 22).  These arguments

alone—which are fully explained in Defendants' motion to dismiss (Dkt. Nos. 28 and 54)—are fatal to Plaintiffs' PI Motion and compel the denial of same as a matter of law.

The fact that the circumstances surrounding each plaintiff's medical exemption request, and each review and determination of that request, differs from school district to school district, precludes the type of sweeping state-wide injunction Plaintiffs seek. Perhaps the best example of the "disconnect" between the relief sought and the circumstances surrounding Responding Districts' determinations can be found in the Ithaca CSD ("John Foe") case where John Foe's parents submitted a series of medical exemption requests which only included material about a single type of vaccination (Hepatitis B) (*see* Johnson Dec. at Ex. A). Plaintiffs admit in their submissions (Dkt. No. 41-16 at 2) that the Ithaca CSD granted John Foe's medical exemption application from the Hepatitis B vaccine, even where it was recommended by medical experts at the NYS DOH that such application should be denied. Nonetheless, Plaintiffs' Complaint and their pending application for a preliminary injunction (Dkt. Nos. 1 p. 72 and 41-2 p. 2) would result in compelling the Ithaca CSD to grant John Foe's exemption application as to <u>all</u> vaccines without a scintilla of evidence that any vaccine other than Hepatitis B could be harmful to John Foe. On its face, such relief bears no legal, logical, medical, or scientific relationship to the actual facts surrounding the decision-making process of the Ithaca CSD.

In addition, Plaintiffs own legal arguments and factual admissions demonstrate that Plaintiffs' are not entitled to such broad injunctive relief. To such end, Plaintiffs rely heavily on the U.S. Supreme Court decision of *Jacobson v. Massachusetts*, 197 U.S. 11 (1905) in an attempt to establish the element of likelihood of success on the merits (Dkt. No. 41-1 at 16-28). However, Plaintiffs' reliance on *Jacobson* is fundamentally misguided, as *Jacobson* actually affirms the constitutionality of N.Y. P.H.L. § 2164 and 10 N.Y.C.R.R. § 66-1.1. In *Jacobson*—which is the

governing legal standard in the present action—the plaintiff unsuccessfully challenged the State's compulsory vaccination laws under a Fourteenth Amendment claim. *Jacobson*, 197 U.S. at 29. In upholding the State's compulsory vaccination laws, the U.S. Supreme Court in *Jacobson* applied a rational basis test and determined that the law in question served the State's legitimate concerns in protecting the public's health and safety from vaccine-preventable diseases. *Id.* at 15. The *Jacobson* Court made clear that: "[i]t is within the police power of a State to enact a compulsory vaccination law, and it is for the legislature, and not for the courts, to determine in the first instance whether vaccination is or is not the best mode for the . . . protection of the public health. . . . The legislature is the <u>only</u> body which has power to determine whether the anti-vaccinationists or the majority of the medical profession are in the right." *Id.* at 2–3, 16 (emphasis added). The *Jacobson* court further held that schools may properly deny admission to students until they present verification that they have been vaccinated in accordance with state laws. *Id.* at 34. As Plaintiffs concede, *Jacobson* establishes the mandatory precedent in this case (Dkt. No. 41-1 at 17, 18, 23-28) and thus compels the denial of Plaintiffs' PI Motion.

The U.S. Supreme Court reaffirmed its opinion in *Jacobson* when it, again, rejected another plaintiff's challenge to States' compulsory vaccination laws in the case of *Zucht v. King*, 260 U.S. 174, 177 (1922). The *Zucht* Court opined that "a State may, consistently with the Federal Constitution, delegate to a municipality authority to determine under what conditions health regulations shall become operative. The municipality may vest in its officials broad discretion in matters affecting the application and enforcement of a health law." *Zucht*, 260 U.S. at 176. The States' police powers to enact compulsory vaccination laws was also recently reiterated by the Second Circuit in *Phillips v. City of New York* with specific regard to New York State's Public Health Law § 2164. *Phillips*, 775 F.3d 538, 542 (2d Cir. 2015). Relying on *Jacobson* in upholding

P.H.L. § 2164, the Second Circuit in *Phillips* made clear that "New York could constitutionally require that all children be vaccinated in order to attend public school. New York law goes <u>beyond</u> what the United States Constitution requires by allowing an exemption for parents . . ." *Id.* at 543 (emphasis added); *V.D.*, 403 F. Supp. 3d at 85–86. This principle was echoed recently by the U.S. Eastern District Court where, again relying on the opinion in *Jacobson*, the court concluded that "[t]he case law clearly establishes that 'conditioning school enrollment on vaccination has long been accepted by the courts as a permissible way for States to inoculate large numbers of young people and prevent the spread of contagious diseases.'" *V.D.*, 403 F. Supp. 3d at 87 (quoting *Whitlow v. Cal. Dep't of Educ.*, 203 F. Supp. 3d 1079, 1091 (S.D. Cal. 2016).

Plaintiffs' PI Motion misconstrues the controlling standard of review developed in *Jacobson*—which is, as Plaintiffs admit, the law that governs this case. While Plaintiffs acknowledge that "*Jacobson* remains precedent that mandatory vaccination is within the state's police powers as a compelling state interest" (Dkt. No. 41-1 at 18), Plaintiffs erroneously analyze their challenge to NYS's mandatory immunization laws and regulations under a strict scrutiny level of review (*Id.* at 18-28). The Second Circuit in *Phillips* has already rejected this argument, finding that "no court appears ever to have held" that *Jacobson* requires strict scrutiny to be applied to immunization mandates. *See Phillips*, 775 F.3d at 542 n.5. On the contrary, it is axiomatic that P.H.L. § 2164 and 10 N.Y.C.R.R. § 66-1.1 meet the governing standard (i.e., rational basis) established in *Jacobson*—as the NYS laws and regulations are indisputably rationally related to serving NYS's <u>compelling</u> interests in protecting school children from vaccine-preventable diseases. *Jacobson*, 197 U.S. at 15. In fact, as fully analyzed below, the NYS laws and regulations in question meet any level of scrutiny applied; further compelling the denial of Plaintiff's PI Motion.

Plaintiffs' attempt to employ strict scrutiny in this case is demonstrably misguided. Plaintiffs' claims do not involve the infringement of Plaintiffs' fundamental constitutional rights, as Plaintiffs incorrectly suggest. (*see* Defs'. Motion to Dismiss); *see also Workman v. Mingo County Bd. of Educ.*, 419 Fed. Appx. 348, 355 (4th Cir. 2011) (holding there is no fundamental right to exemption from school immunization requirements). While Plaintiffs devote significant efforts in attempting to manufacture claims involving fundamental rights, it is evident that no such claims are present in this case. Contrary to the arguments alleged in Plaintiffs' PI Motion, the gravamen of Plaintiffs' arguments against Defendants are that: 1) the NYS laws and regulations permit unqualified school principals to arbitrarily deny exemption requests; and 2) Defendants should automatically grant all exemption requests – no matter how broad and lacking in medical support and enroll all unvaccinated students in school solely because an exemption request is accompanied by a doctor's letter. These allegations simply do not involve infringements on Plaintiffs' fundamental constitutional rights, and a strict scrutiny analysis is therefore inapplicable as a matter of law. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, *58–59 (1973) (holding the U.S. Constitution neither explicitly nor implicitly guarantees the right to an education); *New York State Asso. for Retarded Children, Inc. v. Rockefeller*, 357 F. Supp. 752, 762 (E.D.N.Y. 1973) (holding the alleged denial of a public education does not infringe a fundamental right); *Jones on behalf of Michele v. Board of Education*, 632 F. Supp. 1319, 1324–25 (E.D.N.Y. 1986) (holding same). Stated another way, the medical exemption review process prescribed by the current law/regulations does not violate Plaintiffs' fundamental rights because such process prescribes a meaningful review of the medical or scientific basis for each exemption request.

Finally, regardless of what level of review is applied to this case, Plaintiffs' challenge to P.H.L. § 2164 and 10 N.Y.C.R.R. § 66-1.1 fails under *Jacobson* and its progeny. Even assuming

*arguendo* that strict scrutiny applied in this case (which it does not), Plaintiffs motion for a preliminary injunction still fails as a matter of law.

First, as previously indicated, the U.S. Supreme Court has consistently found that States' compulsory immunization laws are a proper exercise of their police powers. *Zucht*, 260 U.S. at 176. Second, Plaintiffs (correctly) admit that States' mandatory vaccination laws serve compelling state interests in protecting children from vaccine-preventable diseases (Dkt. No. 41-1 at 18-19). Third, Plaintiffs fail to provide any legitimate argument with respect to narrow tailoring. Instead, Plaintiffs merely suggest that because an outbreak of disease has already spread throughout schools, children who are unvaccinated should just stay home (Dkt. No. 41-1 at 26). Certainly, Plaintiffs' "alternative" here is not a viable option for school districts, since the objective of mandatory vaccination laws is to prevent outbreaks of diseases <u>before</u> such outbreaks occur. Merely having thousands of unvaccinated children stay home <u>after</u> these unvaccinated children have already contracted and transmitted diseases to other children, and/or have already been exposed to an outbreak of diseases <u>after</u> it is discovered that such diseases has spread throughout schools, is an obviously uncompelling alternative that must fail. *See Jacobson*, 197 U.S. at 37 (holding that a select few individuals may not "defy the will of [the government's] constituted authorities, acting in good faith for all, under the legislative sanction of the State."); *see also Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944) (holding parents' rights in raising their children "do[] not include liberty to expose the community or the child to communicable disease. . .") (citing *People v. Pierson*, 176 N.Y. 201, 210–11 [1903]). Accordingly, for the numerous reasons indicated above, Plaintiffs have failed to show a likelihood of success on the merits, and their PI Motion must therefore be denied.

**B.      *Plaintiffs have failed to show irreparable harm.*[4]**

While Plaintiffs' PI Motion must be denied due to their failure to prove a likelihood of success on the merits, injunctive relief also cannot be granted based upon Plaintiffs' failure to demonstrate irreparable harm.  The Second Circuit has made clear that irreparable harm is the single most important element to prove on a motion for a preliminary injunction.  *See e.g., Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citing *Rodriguez v. DeBuono*, 175 F.3d 227, 234 [2d Cir. 1999]).  "To meet the irreparable harm requirement, a plaintiff must show an injury that is neither remote nor speculative, but actual and imminent."  *Ward v. LeClaire*, 2007 U.S. Dist. LEXIS 38031, *3 (N.D.N.Y. 2007) (quoting *Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144, 153 [2d Cir. 1999]).  Where mandatory injunctive relief is sought, as in the instant case, the Second Circuit "requires a strong showing of irreparable injury."  *CERCPAC v. Health & Hosps. Corp.*, 920 F. Supp. 488, 494 (S.D.N.Y. 1996) (citing *Doe v. New York University*, 666 F.2d 761, 773 [2d Cir. 1981]).  "Likelihood sets, of course, a higher standard than "possibility."  *Impax Media Inc. v. Northeast Adver. Corp.*, 2018 U.S. Dist. LEXIS 4940, *10 (S.D.N.Y. 2018).

In this case, Plaintiffs have failed to prove irreparable harm for numerous reasons.  First, any allegation of irreparable harm is belied by Plaintiffs' excessive delay in seeking preliminary relief. (*See supra* POINT I.)  This fact alone bars a preliminary injunction. (*Id.*).  Second, Plaintiffs PI Motion solely consists of Plaintiffs' reliance upon their purported "fundamental rights" claims (Dkt. No. 41-1 at 28).  This argument can easily be dismissed since, as argued above, Plaintiffs' claims simply do not involve the infringement of Plaintiffs' fundamental constitutional rights but, rather, only involve Plaintiffs' disagreement with the findings of the school districts' medical

---

[4] This subsection further pertains to POINT I above (*see supra* p. 22).

professionals and Plaintiffs' enrollment in school (*see supra* POINT I (A); Defs'. Motion to Dismiss). Plaintiffs' failure to provide any evidence in support of their allegations of irreparable harm—apart from their misguided reliance on their alleged fundamental rights—is fatal to Plaintiffs' motion for injunctive relief (Dkt. No. 41-1 at 28).

Third, Plaintiffs Jane Boe, John Foe, John Joe, and Jane Loe, have asserted nothing more than speculative allegations consisting of differing medical opinions from Plaintiffs' doctors—as opposed to the professional opinions of Defendants' Medical Physicians and Directors, the NYS DOH, and the CDC—regarding what Plaintiffs allege to be <u>possible</u> responses to receiving certain vaccinations. Not one of the Plaintiffs has demonstrated that they suffered any <u>actual</u> injury due to a State-mandated vaccine. Rather, Plaintiffs' parents have admittedly refused to comply with mandatory vaccination laws—thereby conceding that Plaintiffs have not suffered irreparable harm.

Fourth, Plaintiffs Jane Boe, John Foe, John Joe, and Jane Loe have not been deprived of an education since they have all made alternative arrangements for their continued education—electing home school options and/or enrolling their children in private school. Notably, in the Albany CSD case, the parents of John Foe elected to home school all three of their children—two of which never submitted a medical exemption—which voluntary election makes abundantly clear that home school instruction is clearly not "irreparable harm." Moreover, Jane Boe Sr., opted to pull her daughter out of the Three Village CSD prematurely, months before the District made a final determination and excluded her from school. (Ex. TV-S; Mason Aff., ¶ 36.). As for John Loe, he stopped showing up to school months before the South Huntington UFSD made a final determination as to his exemption request (Poprilo Aff., ¶ 31; Geffken Aff., ¶ 29.)

In addition to the above, Plaintiffs' PI Motion should also be denied since Defendants' mere implementation of NYS laws and regulations cannot constitute irreputable harm on the part

of the Plaintiffs.  Contrary to the allegations in Plaintiffs' Complaint, the evidence before this Court confirms that all of Defendants' actions regarding the decisions on Plaintiffs' medical exemption applications were proper, made in good faith, and taken to ensure compliance with NYS law (*see supra* Statement of Facts).  As fully described in the Districts' Statement of Facts above, Plaintiffs' theory that decisions on exemption requests were solely being made by school principals is completely false (*see id.*).  Rather, the evidence before this Court clearly shows that each District deferred to its physicians/Medical Directors to make any necessary medical determinations (*see id.*).  The Districts' medical professionals would then consult appropriate guidelines and conduct an extensive review and analysis of all exemption requests, in accordance with NYS law (*see id.*).  Moreover, whenever it was necessary, the Districts' physicians and/or Medical Directors would confer with various local, state, and federal agencies, which included the additional professional medical opinions from experts at the NYS DOH and CDC, in order to make a collective determination on exemption applications (*see id.*).  Due to vast insufficiencies in the Plaintiffs' exemption requests, Districts' decisions regarding Plaintiffs' exemption requests were completely legitimate pursuant to the NYS laws and regulations and were anything but arbitrary or capricious. Thus, Plaintiffs' are not entitled to the extraordinary relief they seek from this Court simply because they disagree with the professional judgment of the above-noted medical professionals.

Nor have Plaintiffs demonstrated they were irreparably harmed by Defendants' actions. Plaintiffs' inherent theory—that school districts (even where those school districts have consulted with the advice of the NYS DOH and CDC) do not and should not have differing medical opinions regarding what constitutes medical contraindications or precautions under the NYS laws and regulations—simply cannot establish irreparable harm warranting the issuance of injunctive relief against Defendants.  In fact, this argument was already rejected in *Jacobson*, where the U.S.

Supreme Court held that such theory, if permitted to stand, "would practically strip the legislative department of its function to care for the public health and the public safety when endangered by epidemics of disease." *See*, *Jacobson*, 197 U.S. at 37.

Finally, as fully delineated in the Districts' Statement of Facts above, Plaintiffs' parents' actions in electing to either homeschool or enroll their children in private school further confirms that Plaintiffs have not been irreparably harmed. For instance, with regard to Albany CSD and Plaintiff-John Foe, Plaintiffs' parents elected to not only homeschool John Foe, but to homeschool John Foe's other two siblings who did not submit or need medical exemptions. These facts clearly demonstrate that John Foe has not been "irreparably harmed" by allegedly not attending public school, since John Foe's parents have conceded by their actions (in electing to homeschool all three of their children) that John Foe is receiving an adequate education through homeschooling (Dkt. No. 41-15 at ¶ 20). Likewise, with respect to Ithaca CSD and Plaintiff-John Joe, John Joe's parents admitted that they elected to homeschool John Joe throughout the period that his exemption request was pending, and they continued to do so even after the Ithaca CSD granted John Joe an exemption to the Hepatitis B vaccine. Jane Boe, Sr. similarly pulled her daughter out of school months before the Three Village CSD made its final determination. Thus, in light of Plaintiffs actions, it is clear that they have not been irreparably harmed.

## C. *Plaintiffs have failed to demonstrate that the balance of hardships decisively tips in their favor.*

Plaintiffs have likewise failed to show that the balance of hardships decisively tips in their favor as opposed to the multitude of substantial hardships that Defendants would unquestionably sustain if Defendants were: 1) compelled to accept and approve all students' medical exemption applications that were accompanied by a physician's note and enroll these unvaccinated students in school; and 2) prohibited from complying with the NYS laws and regulations regarding school

immunization mandates.   Notably, Plaintiffs' deficient argument regarding the balance of hardships is contradicted by Plaintiffs' own admissions, as Plaintiffs initially describe the threats imposed by the thousands of unvaccinated students to other school children to be "low," but later surmise that such threats are "impossible" to occur (Dkt. No. 41-1 at 26, 29).   This demonstrated uncertainty regarding when outbreaks of diseases may spread throughout schools further bolsters the importance of the States' mandatory vaccination laws.   Moreover, Plaintiffs ignore the broader public health risks associated with older citizens who have not gone through the modern-day vaccine requirement – who could be infected and seriously injured by the unknown contagion spreads associated with increased unvaccinated students.

Additionally, while Plaintiffs focus solely on their abilities to attend a particular school, they fail to show how their ability to attend school without mandatory vaccinations outweighs the immense hardships to school districts to protect the health and safety of its students from vaccine-preventable diseases (*id.* at 28-29).   The law could not be clearer on this issue where it is well-settled that the school districts' interests prevail (*see supra* POINT I (A)).   Mandatory vaccination laws serve compelling state interests that have been recognized for over one-hundred years.   *See supra* POINT I (A)); *see also Jacobson*, 197 U.S. at 2-3, 16.   In fact, even had Plaintiffs attempted to prove that the balance of hardships decisively tipped in their favor (which Plaintiffs failed to do), as a matter of law, Defendants' compelling interests in protecting its students from vaccine-preventable diseases supersedes Plaintiffs' rights to attend school without first providing a valid medical exemption.   *See Jacobson*, 197 U.S. at 2-3, 16, 29; *cf. San Antonio Indep. Sch. Dist.*, 411 U.S. at *58–59 (holding the U.S. Constitution neither explicitly nor implicitly guarantees the right to an education); *Turley v. Sauquoit Valley Sch. Dist.*, 307 F. Supp. 2d 403, 407 (N.D.N.Y. 2003) ("The Supreme Court has repeatedly held that the right to an education is neither explicitly nor

implicitly guaranteed in the Constitution, and as such, cannot be considered 'fundamental.'")
(citing *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 459 [1988]).  Finally, as Plaintiffs concede,
this case involves the interests of approximately 0.5 percent of school children's attendance in
school in comparison to the school districts' interests in protecting the other 99%+ of the public
school population and the general public (Dkt. No. 41-1 at 8, 14).  In light of the above, Plaintiffs
have failed to show that the balance of hardships decisively tips in their favor, and their PI Motion
must therefore be denied.

**D.      *The public interest is best served by protecting the health and safety of students from
            vaccine-preventable diseases.***

          Plaintiffs' motion offers no actual argument with respect to the public interest element that
must be considered on a preliminary injunction (*see* Dkt. No. 41-1 at 29-30); *see Monserrate*, 599
F.3d at 154.  For one, Plaintiffs cannot why their alleged interests supersede the interests of the
overwhelming majority of the general public (*see id.*).  Importantly, when considering the interests
of the less than 0.5% of school children who parents refuse to comply with NYS's immunization
laws and regulations, versus the admittedly compelling interests of NYS in protecting the other
99%+ of school children (and these children's families) from vaccine preventable diseases, the
public interest question is easily answered in this case.  To that end, enjoining the NYS laws and
regulations and thereby permitting these unvaccinated children to attend school would pose
substantial risks not only to the other 99%+ of school children who these unvaccinated students
would interact with, but also to the school districts' entire staff and administration (whom likely
have not all received the now-mandatory list of NYS vaccines and are thus much more susceptible
to contracting diseases from unvaccinated school children).   In light of the compelling
governmental interests served by mandatory immunization laws, Plaintiffs cannot meet this
element on their motion for a preliminary injunction.

**POINT III**

**THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER PLAINTIFF'S CLAIMS AND CERTAINLY SHOULD DENY THE EXTRAORDINARY REMEDY OF A PRELIMINARY INJUNCTION**

Since Plaintiffs' motion for a preliminary injunction seeks to have this Court not only exercise jurisdiction over a state public policy issue, but affirmatively suspend a statewide public health policy designed to protect millions of public school children and the broader public at the pleadings stage, Plaintiffs are essentially asking this Court to directly interfere with, and suspend, the local administration of a public health procedures established by the state and implemented by local public schools.  Not only is such extraordinary relief not supported by Plaintiffs' motion or the record before this Court, but this Court should abstain from dismantling the state's legitimate public school vaccination plan.  As the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 815, 96 S. Ct. 1236, 47 L.Ed.2d 483 (1976) held:

> Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcend the result in the case then at bar… In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. In Burford v. Sun Oil Co., 319 U.S. 315 (1943), for example, the Court held that a suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil wells should have been dismissed by the District Court. The reasonableness of the permit in that case was not of transcendent importance, but review of reasonableness by the federal courts in that and future cases, where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those field…

*Id.*, at pp. 1244-45. In an analogous case, this Court in *Mair v. Good* (325 F. Supp. 1268 (N.D.N.Y. 1971)) abstained from deciding constitutional issues implicated by New York's prior religious exemption- where the Plaintiff father failed to pursue an appeal to the Commissioner, reasoning:

> While abstention in cases involving civil rights is not encouraged, it is proper in "narrowly limited" special circumstances. In this case, plaintiffs challenge the religious exemption on the grounds of under-inclusiveness. We believe that the New York statute is susceptible to "a construction by the state courts that would avoid or modify the constitutional question." Id. at 249, 88 S. Ct. at 396. The statute is a relatively new one, enacted in 1966, and its application on facts similar to those in this case has not been ruled upon by the New York courts. Therefore, it is not clear whether the school's requirement . . . was authorized under the statute or the applicable regulation. Nor, if a certificate is not required, is it clear that Maier's affidavit … is not sufficient to satisfy the statute and the regulation… These are questions of state law and, if decided in plaintiffs' favor, would avoid the constitutional issues entirely.
>
> Moreover, plaintiffs have not attempted to exhaust their available state administrative remedies and we abstain for this reason as well. New York law provides that [the] principal … decision is reviewable on petition to the State Commissioner of Education. N.Y. Education Law, McKinney's Consol. Laws, c. 16, §§ 310, 311. . . . Accordingly, we abstain from deciding the constitutional issues presented here.

*Id.* at pp. 1270-71. Similarly, the Complaint in this action makes clear that these Plaintiffs are challenging the means by which the state has defined medical exemptions and the processes by which local school districts apply such exemptions and validate the claimed medical bases articulated by parents and their private medical providers. This new framework, developed by the state legislature and the Department of Health, obviously and legitimately seeks to strike a balance between the safety and security of millions of public school students and citizens across the state on the one hand, and the small percentage of students' whose parents seek to exempt them from a well-established vaccination program that protects students from preventable life threatening diseases.

Moreover, the fact that some of the Plaintiffs in this action have pursued appeals before the New York State Commissioner (Johnson Decl. and Attachments thereto) further support this Court's abstention in this case- particularly as to the issuance of a positive injunction that fundamentally alters the status quo of the parties. More recently, the District Court for the Eastern District described the application of the Buford abstention doctrine as follows:

This doctrine instructs a federal court to abstain, as follows:[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

The Burford abstention doctrine is applied in order to avoid needless conflict with administration by a state of its own affairs.  Therefore, if the purpose of Colorado River abstention is to ease the congestion of the federal court docket when a similar action is pending in state court, the goal of Burford abstention is to avoid needless disruption of state efforts to establish a coherent policy in an area of comprehensive state regulation."[I]t has long been established that a federal court has the authority to decline to exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity. . . .'"

There are "three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public." Liberty Mut. Ins. Co. v. Hurlbut, 585 F.3d 639, 650 (2d Cir. 2009). Those factors are as follows: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." Hachamovitch v. DeBuono, 159 F.3d 687, 697 (2d Cir. 1998).

*Allstate Ins., Co. v. Elzanaty*, 916 F.Supp.2d 273, 289-90 (E.D.N.Y. 2013). In the present case, the recent amendments to Public Health Law and the implementing regulations (i.e. 10 NYCRR 66-1.3) are specific, in fact; it is the increased specificity resulting from the update regulations which Plaintiff's challenge. Additionally, the precise meaning of what does, and what does not, constitute a "medical contraindication or precaution to a specific immunization consistent with ACIP guidance or other nationally recognized evidence-based standards of care" (See 10 NYCRR 66-1.1(I)) are at the heart of the dispute framed by Plaintiffs' Complaint.   Finally, and most importantly, the manner in which public school districts across the state:  apply the vaccination program, review and evaluate exemption requests, and promote the safety and security of children in their public schools are matters of fundamentally state and local concerns.  Thus, this Court

should abstain from exercising jurisdiction over Plaintiffs' claim and most certainly should deny the request for extraordinary relief (i.e., preliminary injunction) Plaintiffs currently seek.

## **CONCLUSION**

WHEREFORE, it is respectfully requested that this Court: (a) deny Plaintiffs' motion for a preliminary injunction; and (b) grant such other and further relief in the Responding Districts' favor as this Court deems just and proper.

Dated: September 4, 2020

Respectfully submitted,

JOHNSON & LAWS, LLC

Gregg T. Johnson (Bar No. 50644