# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, et al. | Civil Action No.: 1:20 – CV – 0840 (BKS/CFH) |
| Plaintiffs, | |
| vs. | **MEMORANDUM OF LAW** |
| HOWARD ZUCKER, et al. | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO SCHOOL DEFENDANTS' MOTION TO DISMISS

Sujata S. Gibson, Esq., Lead Counsel
The Gibson Law Firm, PLLC
407 N. Cayuga Street, Suite 201
Ithaca, NY 14850
Tel: (607) 327-4125
Email: sujata@gibsonfirm.law
Bar Roll No. 517834

Michael Sussman, Esq., *Lead Counsel*
**Sussman & Associates**
1 Railroad Ave, Suite 3, PO Box 1005
Goshen, NY 10924
Bar Roll No. 123324

*Of Counsel*
Robert F. Kennedy Jr., Esq., *pending admission*
Mary Holland, Esq., *pending admission*

September 28, 2020

## TABLE OF CONTENTS

Table of Contents ...................................................................................................i

Table of Authorities ............................................................................................iii

Preliminary Statement ......................................................................................... 1

Statement of Facts ............................................................................................... 3

Standard of Review.............................................................................................. 5

Legal Argument ................................................................................................... 6

I.     **POINT ONE: THE CONSTITUTIONAL CLAIMS ARE FACIALLY SUFFICIENT TO WITHSTAND DISMISSAL**............................................6

    a.    **The right to a medical exemption where a child may be at risk of harm is a fundamental right and requires strict scrutiny** ...................................7

    b.    **The regulations and policies at issue place an undue burden on the fundamental right to a medical exemption for vulnerable children** ........9

    c.    **The challenged policies and procedures are not narrowly tailored to uphold a compelling state interest sufficient to outweigh the Plaintiffs' right to a medical exemption**...................................................................16

    d.    **The challenged restrictions burden many additional fundamental constitutional rights** ....................................................................................17

    e.    **Deference Does Not Apply to Analysis of Fundamental Rights Infringements** .......................................................................................19

II.    **POINT TWO: THE REHABILITATION CLAIMS ARE FACIALLY SUFFICIENT TO WITHSTAND DISMISSAL**........................................20

III.    **EXHAUSTION OF REMEDIES IS NOT REQUIRED** ............................22

IV.    **CLAIMS AGAINST INDIVIDUAL DEFENDANTS NEED TO BE AMENDED**........................................................................................................22

V.    **SEVEREANCE OF CLAIMS AND CHANGE OF VENUE ARE UNWARRANTED** .........................................................................................23

i

**VI.     CHD HAS STANDING TO SUE**........................................................................24

CONCLUSION.................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Adams & Boyle, P.C. v. Slatery,*
    956 F.3d 913 (6th Cir. 2020) ............................................................................ 16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 5

*Ayotte v. Planned Parenthood of N. New England,*
    546 U.S. 320 (2006) ..................................................................... 2,8,9,10,11,12,13

*B.C. v. Mount Vernon Sch. Dist.,*
    837 F.3d 152 (2d Cir. 2016) ........................................................................ 20, 21

*D.A.B. v. N.Y.C. Dept of Educ.,*
    45 F. Supp.3d 400 (S.D.N.Y. 2014) ................................................................ 21

*Doe v. Bolton,*
  410 U.S. 179 (1973) ...................................................................................... 2,13,14,15

*Easton v. Sundram,*
    947 F.2d 1011 (2d Cir. 1991) ............................................................................ 6

*Griswold v. Connecticut,*
    381 U.S. 479 (1965) ........................................................................................... 6

*Gonzales v. Carhart,*
    550 U.S. 124 (2007) ..................................................................................... 19,20

*Hachamovitch v. DeBuono,*
    159 F.3d 687 (2d Cir. 1998) ............................................................................ 22

*Hayden v. County of Nassau,*
    180 F.3d 42 (2d Cir.1999) ................................................................................. 5

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905) .................................................................................. 1,2,3,7,8,20

*King v. Simpson,*
    189 F.3d 284 (2d Cir.1999) .............................................................................. 6

*Matter of Hofbauer,*

47 N.Y.2d 648 (1979) ........................................................................... 15,18,19

*McElwee v. Cnty. of Orange,*
    700 F.3d 635 (2d Cir. 2012).............................................................. 20

*Monell v. Department of Social Services of the City of New York,*
    436 U.S. 658 (1978) ......................................................................... 23

*Neitzke v. Williams,*
    490 U.S. 319 (1989)............................................................................ 5

*Nettis v. Levitt,*
    241 F.3d 186 (2d Cir.2001)................................................................ 6

*New York by Schneiderman v. Utica City Sch. Dist.,*
    177 F. Supp. 3d 739 (N.D.N.Y. 2016) .............................................. 23

*Obergefell v. Hodges,*
    576 U.S. 644 (2015)........................................................................ 6,7

*Open Soc'y Int'l, Inc.,*
    651 F.3d 218 (2d Cir. 2011).............................................................. 19

*Parham v. J.R.,*
    442 U.S. 584 (1979).......................................................................... 17

*Patsy v. Bd. of Regents of State of Fla.,*
    457 U.S. 496 (1982) .......................................................................... 21

*Planned Parenthood of Southeastern Pa. v. Casey,*
    505 U.S. 833 (1992)...................................................................... 2,9,10

*Reno v. Flores,*
    507 U.S. 292 (1993)............................................................................ 6

*Robinson v. Attorney General*
    957 F.3d 1171 (11th Cir. 2020) ........................................................ 15

*Stenberg v. Carhart,*
    530 U.S. 914 (2000)............................................................ 2,9,10,12,13

*Sarmiento v. U.S.,*
    678 F.3d 147 (2d Cir.2012)................................................................. 5

iv

*Troxel v. Granville*,
    530 U.S. 57 (2000) ............................................................................................ 17

*Washington v. Glucksberg*,
    521 U.S. (1997) ................................................................................................. 6

*Wallis v. Spencer*,
    202 F.3d 1126 (9th Cir. 2000) ......................................................................... 18

*Whalen v. Roe,*
    429 U.S. 589 (1977) .......................................................................................... 15

*Whole Woman's Health v. Hellerstedt*
    136 S. Ct. 2292, 2298 (2016), <u>as revised</u> (June 27, 2016) ............................... 20

## **<u>Statutes</u>**

N.Y. P.H.L. §2164[8] ............................................................................................. 4,15

29 U.S.C. § 794(a)(Section 504) ........................................................................... 20

## **<u>Federal Rules of Civil Procedure</u>**

Fed. R. Civ. P. 65 ..................................................................................................... 5

## **<u>Other Authorities</u>**

LAWRENCE 0. GOSTIN, PUBLIC HEALTH LAW: POWER, DUTY, RESTRAINT 126-28
(2d ed.2008) ........................................................................................................... 8

v

Plaintiffs respectfully submit this memorandum of law in opposition to school district Defendants' motion to dismiss dated September 03, 2020, *See* Dkt. No. 54.

## PRELIMINARY STATEMENT

This suit challenges policies and practices which violate fundamental constitutional rights of medically fragile children and their parents by placing arbitrary and undue burdens upon the availability of a medical exemption from school vaccine mandates. As a result of new policies allowing school principals to overrule treating physicians, hundreds of medically fragile children were removed from school last year even though New York licensed physicians certified that these children are at risk of harm from the vaccine at issue. Expulsion is imminent for many more this year.

The challenged policies and practices unconstitutionally burden all families seeking a medical exemption, whether their child is ultimately removed from school or not. The challenged actions are arbitrary, capricious, and unjustified to further any legitimate state interest. New regulations dangerously predefine "what may cause harm," disallowing treating physicians from using their best medical judgment and limiting them to the consideration of a small fraction of the known serious adverse reactions to vaccinations. School principals are vested with authority to review and overrule treating physicians and individual districts place additional burdens and roadblocks on the medical exemption process which impermissibly burden families of medically fragile kids and interfere with their fundamental rights.

The challenged policies will likely not withstand judicial review. A sufficient medical exemption has been recognized as a prerequisite to any constitutionally-sound vaccine mandate for a hundred and fifteen years. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). Controlling precedent from the U.S. Supreme Court expressly forbids burdens on medical exemptions which subordinate the professional judgment of treating physicians. *Doe v.*

1

*Bolton,* 410 U.S. 179, 199-200 (1973)(striking down restrictions on a medical exemption substantially similar to the ones at issue, holding that the patient's chosen medical provider must have discretion in decisions about what may constitute harm: "**[I]f a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment").** *Doe* held that even requirements that a physician obtain corroboration from another licensed physician were unconstitutional. Certainly, allowing a school principal to overrule the parents' chosen physician is unlawful under this binding precedent.

Medical exemptions are given strict scrutiny, and even where the possibility for harm alleged is only hypothetical and unlikely, the Supreme Court has deemed the exemption constitutionally insufficient. *Stenberg v. Carhart.* 530 U.S. 914, 937 (2000); *Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320, 325 (2006).

The allegations in this case establish violations of other fundamental rights requiring strict scrutiny analysis as well – including the rights of parents to make medical decisions for their children in accordance with licensed physicians of their choice, the right to refuse medical treatment that could cause the child harm, and the right to be free from unconstitutional conditions requiring parents to forego fundamental constitutional rights if they want their child to receive an education at any private or public school in the state.

Rather than address the clear constitutional issues alleged, Defendants engage in classic strawman tactics. Their central argument is that Plaintiffs cannot prevail because the Supreme Court already decided that states may impose vaccine mandates in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). However, that is not the issue before the Court.

Plaintiffs do not challenge *Jacobson* or its holding that the state police power is broad enough to include vaccine mandates within limits. On the contrary, Plaintiffs <u>rely</u> on *Jacobson,* which expressly held that a sufficient medical exemption is a

2

constitutional prerequisite to the state's use of its police power to impose mandates, which determinations deserve the courts' strict scrutiny.

Defendants further fail to assert evidence of necessity for their draconian measures, arguing that *Jacobson* allows them *carte blanche* to operate without any scrutiny of tailoring whenever vaccines are involved.

School district Defendants attempt to sidestep responsibility, claiming that the state Defendants are solely responsible for these policies and practices, and they are simply administering the law. However, under the new regulations, school principals and individual districts are empowered to overrule physicians but *are not required to do so.* So long as a child has a medical exemption certified by a licensed physician, the school does not have to go further and attempt to contravene the good-faith medical determinations of licensed doctors chosen by the fit parents of medically fragile students in their schools. Nor do they have to ask families to seek corroborating opinions from multiple specialists, or "ensure" the treating doctor got it right or ask for additional documentation. The named districts have chosen to do so, often in outrageous and conscience shocking degrees.

Besides fundamentally misconstruing the issues, Defendants cite to inapposite cases that do not extend state authority or judicial discretion nearly as far as they assert. Plaintiffs' complaint establishes multiple viable causes of action and should not be dismissed.

## **STATEMENT OF FACTS**

Plaintiffs incorporate by reference their statement of facts set forth in Plaintiffs memorandum of law in response to the state Defendants' motion to dismiss the complaint (*see* Dkt. 74).

The New York legislature reached the limits of permissible infringements on the medical exemption in enacting Public Health Law §2164(8), which allows exemption if *any* physician licensed in the state of New York certifies the immunization may cause harm to the child. The Defendants' application and adoption of the following policies and practices are the primary concerns in this suit: (1) pre-defining "what may cause harm" and thereby disallowing  the treating physician  to use her best medical judgment based on any range of factors she believes is important to the determination; (2) subjecting the treating physician's determination to review by school districts; (3) documentation burdens requiring "impossible specificity" about all of the reasons  for  the  clinical  recommendation;  (4)  overruling  licensed  treating  physicians determinations based on lack of "corroborating opinions" from non-treating physicians.

Each of these practices is prohibited by controlling long-standing protections in Supreme Court holdings.

The long, detailed complaint provides specific facts about each of the named Defendants and school districts and how each violated Plaintiffs' constitutional rights through the egregious application of these policies to specific students. Each Plaintiff experienced one or more of the practices above; each student challenges the constitutionality of being subjected to these infringements as well as the manner in which the policies were applied. Defendants do not address specific situations in their motion. Rather, they assert that the school district Defendants are merely applying the law and do not have discretion. This is a contested fact. Plaintiffs assert (and even Defendants' own statement of facts tends to confirm) that the districts are under no obligation to review a licensed treating physician's determination. Therefore, the decisions to do so are fair ground for imposing individual or municipal liability, or both.

Plaintiffs bring this suit as a putative class action lawsuit. The named Plaintiffs asserting claims against these school district Defendants are (1) the family of *Jane Boe*, addressing

unconstitutional policies and procedures of the Three Villages School District, Superintendent Cheryl Pedisich and Principal Corinne Keane (*see* Dkt 1 (complaint) Par. 110-136); (2) the family of *John Foe,* addressing unconstitutional policies and procedures of the Albany City School District, Superintendent Kaweeda G. Adams and Principal Michael Paulino (*Id.* par. 161-180); (3) the mother of *John Joe*, addressing claims against the Ithaca City School District, Superintendent Dr. Luvelle Brown and Principal Susan Eschbach (*Id.* par. 204-214); and (4) the family of *John Loe*, addressing claims against the South Huntington Union Free School District, and Superintendent David P. Bennardo (*Id.* par. 230-261).

## STANDARD OF REVIEW

**Failure to State a Claim:** "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sarmiento v. U.S.,* 678 F.3d 147 (2d Cir.2012)(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), "the Court must accept all factual allegations of the complaint as true, and draw all reasonable inferences in favor of the nonmoving party." *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999); *Sarmiento v. United States,* 678 F.3d 147, 152 (2d Cir. 2012). In resolving a motion to dismiss, the Court cannot consider Defendants' voluminous "factual" submissions where they conflict with Plaintiffs' asserted facts.

The Court may not dismiss the complaint unless it is certain that Plaintiffs can prove no set of facts that would entitle them to relief. *Neitzke v. Williams,* 490 U.S. 319, 326-27 (1989);

*Nettis v. Levitt,* 241 F.3d 186, 191 (2d Cir.2001). Therefore, the issue before the Court on such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). This caution against dismissal applies with even greater force where plaintiffs allege civil rights violations. *Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir. 1991).

## **LEGAL ARGUMENT**

### I. **THE CONSTITUTIONAL CLAIMS ARE FACIALLY SUFFICIENT TO WITHSTAND DISMISSAL**

Defendants' actions unduly burden many fundamental constitutional rights, and this Court should not dismiss the claims without judicial scrutiny of the facts.

Under the Due Process Clause of the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property without due process of law." The Fifth and Fourteenth Amendments guarantee of "Due Process of law" includes "a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 293, 299 (1993); *Griswold v. Connecticut,* 381 U.S. 479, 484–486, (1965); *Obergefell v. Hodges*, 576 U.S. 644, 663 (2015).

The first step in a substantive due process analysis is to carefully identify the right Plaintiffs allege to be infringed. *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997). The standard of review of the substantive due process claim arises from the nature of the infringed right. Defendants' proposed standard of review is not applicable to fundamental rights.

The identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution, but that responsibility cannot be reduced to a formula. Rather, it requires that courts "exercise reasoned judgment identifying interests of the person so

fundamental that the State must accord them its respect." *Obergefell*, 576 U.S. at 664 (quoting *Poe v. Ullman,* 367 U.S. 497, 542 (1961)). If the right is fundamental, the Court must strictly scrutinize state infringement, ensuring that the state action is narrowly tailored to serve its compelling interests that outweigh the infringement. *Id.* at 663. The rights at issue are all fundamental and, thus their infringement triggers strict scrutiny.

### a. The right to a medical exemption where a child may be at risk of harm is a fundamental right and requires strict scrutiny

The right to a medical exemption is itself an independent fundamental constitutional right requiring strict scrutiny analysis. This has been recognized by the Supreme Court for over 115 years. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27, 36-39 (1905)(holding that the police powers of a state are broad enough to impose vaccine mandates to protect the community at large within limits, but stressing the necessity of judicial review if a person is vulnerable to harm from the mandated vaccine).

In *Jacobson*, decided decades before fundamental liberty protections were extended to medical decision making, the Supreme Court held that deference was due to lawmakers to decide general public health policies. The decision expressly warns, however, that courts must not abandon rigorous judicial scrutiny of medical exemption claims. *Id.* Indeed, the Court stated that mandating a person submit to a vaccine that may cause harm is "cruel and inhuman in the last degree":

> Before closing this opinion we deem it appropriate, in order to prevent misapprehension as to our views, to observe—perhaps to repeat a thought already sufficiently expressed, namely—that the police power of a state, whether exercised directly by the legislature, or by a local body acting under its authority, may be exerted in such circumstances, or by regulations so arbitrary and oppressive in particular cases, as to justify the interference of the courts to prevent wrong and oppression. Extreme cases can be readily suggested. Ordinarily such cases are not safe guides in the administration of the law. **It is**

**easy, for instance, to suppose the case of an adult[1] who is embraced by the mere words of the act, but yet to subject whom to vaccination in a particular condition of his health or body would be cruel and inhuman in the last degree.”** *Id* at 38–39 (emphasis added).

The *Jacobson* Court clarified that where a person alleges they are “*not at the time a fit subject of vaccination, or [for whom] vaccination by reason of his then condition would seriously impair his health*,” the Judiciary is not only competent to strictly review the appropriate tailoring of the medical exemption, but <u>must do so</u>:

> We are not to be understood as holding that the statute was intended to be applied to such a case, or, if it was so intended, that the judiciary would not be **competent to interfere and protect the health and life of the individual concerned**. *Id.* (emphasis added)

Public health law scholars acknowledge this principle of harm avoidance as part of the foundational holding of *Jacobson. See, e.g.*, LAWRENCE O. GOSTIN, PUBLIC HEALTH LAW: POWER, DUTY, RESTRAINT 126-28 (2d ed.2008)(per *Jacobson,* public health regulations require five elements to be constitutional: (1) public health necessity, (2) reasonable means, (3) proportionality, (4) harm avoidance, and (5) fairness).

The Court continues to recognize a sufficient medical exemption as an independent fundamental right in today’s jurisprudence. *See, e.g., Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320, 325 (2006)(identifying a specific and independent fundamental constitutional requirement that an abortion regulation must contain an exception for the preservation of the pregnant woman’s health). One would be hard pressed to imagine how courts

---

[1] “There being obvious reasons for such exception”, children were exempt from the smallpox mandate. “*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 30 (1905)(“there are obviously reasons why regulations may be appropriate for adults which could not be safely applied to persons of tender years”).

would not strictly review state medical exemption cases, as the rights at issue – self-defense, right to informed consent, right to bodily autonomy – are so fundamental. A medical exemption is not just a liberty interest – it goes to the very right to life itself.

### b. The regulations and policies at issue place an undue burden on the fundamental right to a medical exemption for vulnerable children

It is not surprising, then, that courts give far less leeway to infringements on medical exemption than to infringements on other types of fundamental rights, even when the state has established a compelling interest. Two clear lines have emerged in the case law: harm avoidance, and a bar against infringement on the chosen licensed provider's "best medical judgment."

### *Harm Avoidance*

As a floor, the Supreme Court has repeatedly held that if a medical exemption is narrow enough to risk harming even a few people, it is unconstitutional. *Ayotte* 546 U.S. 320, 325-27 (acknowledging that any regulation that does not contain a sufficient medical exemption would be unconstitutional, whether the regulation burdened the right to a medical exemption facially or as applied.)

In *Stenberg v. Carhart,* the Supreme Court struck down an entire law on the hypothetical possibility that the medical exemption was not sufficient to include all cases where a woman might be at risk of harm. 530 U.S. 914, 937 (2000). The question was whether a ban on partial birth abortions (which the Court held was an otherwise permissible regulation on post-viability abortion) had a sufficiently broad medical exemption where it exempted only cases in which the mother's life was in danger. The issue turned on what the phrase "necessary, in appropriate medical judgment, for the preservation of the life or health of the mother" means pursuant to *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833 (1992). The *Stenberg* Court acknowledged that little science existed that could provide certainty that a woman would ever

even "need" to use the regulated method of abortion over other arguably safe methods that remained available to protect her health. In fact, though some hypothetical advantages of the banned procedure were advanced, no expert was able to provide even one clear example where the lack of availability of the banned regulation might seriously impact any woman's health (the case was a pre-enforcement facial challenge with no impacted plaintiffs alleging actual harm). Even though the Supreme Court acknowledged there was little evidence to support a strict reading of "necessity," it held the law unconstitutional for failure to provide a robust medical exemption. The Court's analysis is instructive:

> The word "necessary" in *Casey's* phrase "necessary, in appropriate medical judgment, for the preservation of the life or health of the mother," …cannot refer to an absolute necessity or to absolute proof. Medical treatments and procedures are often considered appropriate (or inappropriate) in light of estimated comparative health risks (and health benefits) in particular cases. Neither can that phrase require unanimity of medical opinion. Doctors often differ in their estimation of comparative health risks and appropriate treatment. And *Casey's* words **"appropriate medical judgment" must embody the judicial need to tolerate responsible differences of medical opinion."** *Id.* at 937. (emphasis added)

Medical exemption cases in the abortion context are illustrative of how strictly courts will scrutinize medical exemptions even against other important fundamental rights. To prevail on an abortion claim, a plaintiff alleging a facial challenge to an abortion regulation must demonstrate that "in a large fraction of cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Casey*, 505 U.S. at 895. When it comes to analysis of the constitutionality of the *medical exemption* to an otherwise permissible abortion regulation, however, the Supreme Court clarifies that even where the risk of harm could only occur in "some very small percentage" of cases, the exemption is too narrow and therefore unconstitutional. *Ayotte*, 546 U.S. at 328.

In *Ayotte*, the Supreme Court addressed a facial challenge to a New Hampshire abortion act requiring advanced parental notification. The law required that a provider notify a minor's parents 48 hours before performing the abortion. The Court acknowledged the parents' fundamental right to such notification as a compelling interest. The issue was whether the medical exemption was unconstitutional because it was too narrow to protect all young women whose health might be placed in jeopardy during the 48-hour waiting period. The state did not vigorously oppose the factual issue that in some very small percentage of cases, pregnant minors, like adult women, would need immediate abortions to avert serious damage to their health. *Id.* at 328. Thus, the Supreme Court held that the medical exemption was unconstitutionally narrow and remanded the case to determine if any portion of the act outside of the unconstitutional medical exemption could stand.

In the cases above, even the hypothetical possibility of harm was enough to render a medical exemption unconstitutional. In this case, the medical exemption cannot survive where the risk of harm is present, clear, and serious, as illustrated by many specific examples certified by licensed physicians.

The complaint lists hundreds of additional evidence-based reasons that exist beyond the narrow ACIP guideposts that could put some children at substantial risk of harm or death.  In short, Defendants' limiting definition is irrational and reckless. Guidelines are not meant to replace treating physicians' clinical judgments or serve as an exhaustive list of contraindications and precautions. Even the CDC admits that ACIP guidelines cannot define the limits of a valid medical exemption and should not be used for that purpose.

The complaint contains lengthy factual discussion of the risks that these policies pose to the medically fragile children who are named Plaintiffs here. Some of these children have the same identified risk factors that led to their sibling's death from adverse vaccine reactions. Even

though treating physicians have certified that these children are at risk of severe injury or death, current regulations deny them exemptions. It shocks the conscience that the death of a sibling, even if recognized as occurring because of an adverse vaccine reaction, is an insufficient reason for a medical exemption according to Defendant *Rausch-Phung*. *See* Dkt 1 (complaint) Par. 129 and 153. The school district Defendants cannot absolve themselves of liability by relying on such shocking medical advice. *Dr. Rausch-Phung* explicitly writes in her medical opinion letters to schools that the school principal holds final authority and that they are not obligated to follow her advice.

Many of these children suffered serious adverse reactions to one or more vaccines; licensed medical professionals have documented them. Some of these children have produced corroborating certifications from multiple licensed physicians and even *specialists* that they are at risk of serious harm from one or more mandatory vaccines and still are denied a medical exemption. Such denials put these children at risk of injury and even death.

The harm avoidance principle is unwavering. Though a state actor may have compelling reasons to limit medically unnecessary abortions to protect viable fetuses, or to limit medically unnecessary exemptions to protect the community from contagion, the Supreme Court has repeatedly clarified that subjecting a person to risk of serious personal harm is not an acceptable casualty.

If the Supreme Court in *Stenberg* and *Ayotte* struck regulations that *might* cause risk of harm in hypothetical cases, despite the presence of compelling state interests, certainly Plaintiffs here, with proven records of actual harm in addition to verified risk, should prevail.  On this ground alone, the Court should deny Defendants' motion.

### *Infringement on Chosen Physician's Good Faith Medical Judgment*

In addition to the harm avoidance principle, the Supreme Court's decisions in *Ayotte* held that the law was unconstitutional because it required physicians to certify with impossible precision that an emergency abortion was "necessary" and because it impermissibly failed to protect doctors' good faith medical judgment. *Id.* at 325. Such infringements are squarely unconstitutional under controlling Supreme Court precedent.

Fifty years ago, in *Doe v. Bolton,* decided concurrently with *Roe v. Wade,* the Supreme Court examined medical exemption infringements very similar to the ones at issue in this case and squarely held them unconstitutional. 410 U.S. 179, 199-200 (1973).

First, the Court held that physicians must be able to consider a broad range of factors relevant to her clinical determination about whether a medical exemption is "necessary." "We agree with the District Court that the medical judgment may be exercised in the light of all factors—physical, emotional, psychological, familial, and the woman's age—relevant to the well-being of the patient. All these factors may relate to health. This allows the attending physician the room he needs to make his best medical judgment." *Stenberg* articulated the same principle. *See, also*, *Stenberg*, 530 U.S. at 937.

Thus, the Supreme Court clarified that a physician's determination of what may cause harm needs to rest on any factor the physician finds relevant to a woman's health in her clinical judgment. Under this standard, the challenged requirement that a physician limit her determination of "what may cause harm" to the narrow ACIP guidelines alone would surely be unconstitutional.

Second, the Supreme Court held it unconstitutional to require a hospital committee to review the treating doctor's determination of medical necessity before allowing the abortion to occur at that hospital. *Id.* at 199-200. The Court discussed at length why a hospital, which has an independent interest in ensuring that it is complying with law and standards of care, would

want to review the grounds of the medical exemption. Nonetheless, the Court held that such review violated the patient's constitutional rights:

> Saying all this, however, does not settle the issue of the constitutional propriety of the committee requirement. Viewing the Georgia statute as a whole, we see no constitutionally justifiable pertinence in the structure for the advance approval by the abortion committee…**The woman's right to receive medical care in accordance with her licensed physician's best judgment and the physician's right to administer it are substantially limited by this statutorily imposed overview**." *Id.* at 192. "**We conclude that the interposition of the hospital abortion committee is unduly restrictive of the patient's rights and needs that, at this point, have already been medically delineated and substantiated by her personal physician.** To ask more serves neither the hospital nor the State. *Id.* at 197. *Emphasis added.*

For the same reasons the Court found it unlawful for the hospital committee to review medical exemptions in *Doe,* schools cannot be permitted to review the determinations of the parents chosen licensed physicians in this case.

Lastly, the Court held that it was unconstitutional to require corroborating opinions from other state-licensed physicians. The Court's discussion of corroborating opinions is particularly apposite to this case:

> The reasons for the presence of the confirmation step in the statute are perhaps apparent, but they are insufficient to withstand constitutional challenge. Again, no other voluntary medical or surgical procedure for which Georgia requires confirmation by two other physicians has been cited to us. **If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment**. If he fails in this, professional censure and deprivation of his license are available remedies. Required acquiescence by co-practitioners has no rational connection with a patient's needs and unduly infringes on the physician's right to practice. The attending physician will know when a consultation is advisable—the doubtful situation, the need for assurance when the medical decision is a delicate one, and the like. Physicians have followed this routine historically and know its usefulness and benefit for all concerned**. It is still true today that '(r)eliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he (the physician) possesses the requisite qualifications.'** *Dent v. West Virginia*, 129 U.S. 114, 122—123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889). *See United States v. Vuitch*, 402 U.S., at 71, 91 S.Ct. at 1298. *Id.* at 199-200. (emphasis added.)

Under this standard, Defendants' argument must fail that a school principal may overrule a treating physician because the district consulting doctor does not corroborate it.

14

In this case, by enacting Public Health Law §2164(8), the New York State legislature reached the limit of permissible restriction on medical exemptions. Under *Doe*, the fact that a physician licensed to practice in New York must certify the exemption is not merely sufficient; further regulation is unconstitutional. "If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment." *Doe* 410 U.S. at 200.

The Supreme Court reaffirmed *Doe* outside of the abortion context in *Whalen v. Roe*, 429 U.S. 589, 603 (1977)(under *Doe* it would be impermissible if access to controlled medications were "conditioned on the consent of any state official or third party" beyond the chosen licensed provider). Courts continue to affirm this holding. *See, e.g., Matter of Hofbauer*, 47 N.Y.2d 648, 655–56, (1979)(citing *Doe* in denying a neglect proceeding against parents who chose to forego chemotherapy and holding that a parent must be able to follow any course of treatment "which is recommended by their physician and which has not been totally rejected by all responsible medical authority.")

A recent case from the Eleventh Circuit held that it is unconstitutional for a state to even suggest it might remove discretion from the treating physician in determinations about the need for a medical exemption despite the state's reliance on a public health emergency. *Robinson v. Attorney General* 957 F.3d 1171 (11th Cir. 2020)(upholding a TRO staying emergency regulations restricting elective medical procedures due to *Covid-19*). Conflicting directives were given about whether providers or the state would have "final say" over what qualified for a medical exemption under the state's emergency regulations banning elective procedures. The court deemed unconstitutional the mere possibility that a treating provider could be overruled in the determination of medical necessity, even though defendants argued that it was unlikely that the state would ever choose to overrule a treating physician's medical determination of necessity. *Id.* at 1180. Nonetheless, that mere possibility led the Eleventh Circuit to uphold injunctive relief.

15

### c. The challenged policies and procedures are not narrowly tailored to uphold a compelling state interest sufficient to outweigh the Plaintiffs' right to a medical exemption

The risks to children here are the more unconscionable because Defendants cannot justify the restrictions as necessary to achieving any compelling state interest. Taking the Plaintiffs' factual allegations as true and affording them all reasonable inferences, the Defendants' purpose cannot even survive a rational basis review, let alone the higher bar of strict scrutiny that medical exemption cases require.

The challenged policies bear no real and substantial relation to legitimate public health needs. *See Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913 (6th Cir. 2020)(striking down *Covid-19* executive orders that burdened women's access to abortion where they lacked a real and substantial relationship to the pandemic).

Defendants admit explicitly and implicitly that the goal of their onerous and humiliating policies and procedures is to burden the medical exemption process and limit the number given.

But limiting the number of children who can obtain a medical exemption at the potential expense of their health is not a constitutional purpose. Here, Defendants pursue their goal by arbitrarily exposing deserving children to harm or expelling them. Defendants thereby defeat the state's compelling interest to protect life and instead cause irreparable harm.

To the extent that Defendants assert the need to protect the community from contagious disease, the challenged policies, regulations, and procedures are not narrowly tailored to that end. The half of one percent of children seeking medical exemptions cannot threaten herd immunity. This number of medical exemptions is far too small to impact herd immunity for any relevant diseases. When Defendants enacted the regulations, there had been no new measles cases for over six weeks. When they proposed it as permanent law, the measles outbreak had been declared over, and there were no measles cases in New York. Furthermore, the legislature never

16

established that any of the 1,000 people who contracted measles in 2019 had a medical exemption, let alone showed that the medical exemption had anything to do with the outbreak.

While not to be discounted, the risk of measles is objectively low compared to the risk of harm the medical providers of these medically fragile children assert. In the last few decades, including during the latest outbreak, there have been no measles deaths in New York even though there have been frequent outbreaks.

On the other hand, medically fragile children, if denied medical exemptions, are at substantial risk of harm. In addition to the deaths of some of the named Plaintiffs' siblings, there are verified deaths from adverse vaccine reactions that occur each year, not to mention thousands of injuries. Vaccines may be safe and effective for most, but not for all.

And, the challenged regulations apply to all vaccines, not just measles vaccines, and even to vaccines that are not designed to protect against contagion. As detailed in the complaint, many of the vaccines on the mandatory schedule cannot provide protection to anyone except the recipient and thus cannot impact herd immunity at all. This is not contested science. Many of these children are only missing vaccines in this latter category. The state will be hard-pressed to advance even a rational purpose for medical exemption restrictions on these vaccines.

### d. The challenged restrictions burden many additional fundamental constitutional rights

In addition to violating the constitutionally-protected right to a medical exemption, Defendants have infringed other Constitutionally-protected fundamental rights.

Parents have a fundamental right to direct the care and upbringing of their children, and medical decisions fall squarely within that liberty interest. *See Troxel v. Granville*, 530 U.S. 57, 58 (2000)("There is a presumption that fit parents act in their children's best interests" and thus "there is normally no reason for the State to inject itself into the private realm of the family to

further question fit parents' ability to make the best decisions regarding their children."); *see also Parham v. J.R.*, 442 U.S. 584, 604 (1979)("Simply because the decision of the parent…involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state. The same characterizations can be made for a tonsillectomy, appendectomy, or other medical procedure…Parents can and must make those judgments.")

It is constitutionally impermissible for Defendants to usurp these decisions because of a disagreement between the treating physician and the school district consultant, a person who has never examined the child and  who is thus inherently less qualified to make critical health decisions. Such a regime is also against the child's best interest.  Advised by their physicians, parents are in the best position to determine a course of action where there are differing medical opinions to protect their medically fragile child's health. Parents of medically fragile children typically spend years working with providers, diving deep into the literature, and gaining first-hand experience with their particular child's reactions to various medical interventions and triggers. They love their children and are best equipped to ask the appropriate questions, evaluate, and make the final determination in the child's best interests.

These rights adhere not only to the parent but to the child as well. "The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000).

"While this right is not absolute inasmuch as the State, as *parens patriae*, may intervene to ensure that a child's health or welfare is not being seriously jeopardized by a parent's fault or omission, great deference must be accorded a parent's choice as to the mode of medical treatment to be undertaken and the physician selected to administer the same." *Matter of Hofbauer,* 47

N.Y.2d 648, 655–56, (1979)(a parent and child's constitutional rights demand parents be able to make medical treatment decisions in cases where there is a conflict of medical opinion, so long as the parent has sought the advice of licensed professionals and follows a plan "which is recommended by their physician and which has not been totally rejected by all responsible medical authority.")

Plaintiffs also assert here the fundamental rights to refuse medical treatment and to exercise informed consent. Infringement of these fundamental rights requires factual review with strict scrutiny analysis.

Defendants misconstrue Plaintiffs' claim regarding education. There may well be an independent constitutional right to an education, particularly where Defendants preclude not only a free public education but the right to go to school at all, public or private.  But either way, it violates the "unconstitutional conditions doctrine" for the government to place a burden on a benefit or subsidy that infringes on the recipient's constitutionally protected rights, even if the government has no obligation to offer the benefit in the first instance. *Open Soc'y Int'l, Inc.,* 651 F.3d 218 (2d Cir. 2011). Courts review unconstitutional conditions under strict scrutiny analysis regardless of whether the benefit on its own is a "fundamental right." *Id.*

### e.   Deference Does Not Apply to Analysis of Fundamental Rights Infringements

 Defendants suggest that principles of deference require this Court to abstain from any scrutiny of the facts regarding Plaintiffs' harms or burdens against the state's needs. But deference does not govern review of medical exemptions. In fact, quite the opposite is true.

In *Gonzales v Carhart,* the Supreme Court clarified that whether a medical exemption restriction might cause harm is a factual determination, and the Court should not merely defer to legislative or agency determinations:

The Attorney General urges us to uphold the Act on the basis of the congressional findings alone… Although we review congressional factfinding under a deferential standard, we do not in the circumstances here place dispositive weight on Congress' findings. **The Court retains an independent constitutional duty to review factual findings where constitutional rights are at stake.** 550 U.S. 124, 165 (2007). (emphasis added)

In *Whole Woman's Health v. Hellerstedt,* the Supreme Court clarified when addressing medical need or burden that deference of the kind the Defendants suggest is not appropriate.

The Fifth Circuit's test also mistakenly equates the judicial review applicable to the regulation of a constitutionally protected personal liberty with the less strict review applicable to, *e.g.,* economic legislation. **And the court's requirement that legislatures resolve questions of medical uncertainty is inconsistent with this Court's case law, which has placed considerable weight upon evidence and argument presented in judicial proceedings when determining the constitutionality of laws regulating abortion procedures**." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2298 (2016), <u>as revised</u> (June 27, 2016) (emphasis added).

As discussed in detail above, *Jacobson* itself clarified that deference does not apply to review of medical exemptions. *Jacobson* 197 U.S. 11, 36-39 (1905).

## II.   THE REHABILITATION CLAIMS ARE FACIALLY SUFFICIENT TO WITHSTAND DISMISSAL

Plaintiffs sufficiently pleaded viable claims under the Rehabilitation Act.

The ADA and Section 504 both protect "qualified individual[s] with a disability" from discriminatory denial of benefits. *See* 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794(a)(Section 504); *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016)."Because the standards adopted by the two statutes are nearly identical, [courts] consider the merits of these claims together." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The standard outside of employment discrimination is not whether there are "any other reasons" than discrimination due to disability that caused the harm. As the Second Circuit explained in *B.C. v. Mount Vernon School District*: "To establish a prima facie case of discrimination under either the ADA or <u>Section 504</u>, a plaintiff must show the following: (1)

plaintiff is a "qualified individual with a disability;" (2) plaintiff was "excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by [the] public entity;" an (3) "such exclusion or discrimination was due to [plaintiff's] disability." *B.C.*, 837 F.3d at 158 (citations omitted). In connection with the second prong: "(e)xclusion or discrimination may take the form of disparate treatment, disparate impact, or failure to make a reasonable accommodation." *Id.*

Plaintiffs make two claims: (1) due to their disabilities,  Defendant districts have excluded them from participation in services that they are otherwise entitled to receive, and (2) that they were discriminated against under theories of disparate treatment, disparate impact and failure to make a reasonable accommodation.

Defendants argue that the Plaintiffs cannot prevail because they cannot show that they are excluded from participation in benefits due to their disabilities. Defendants rely on *D.A.B. v. N.Y.C. Dept of Educ.*, 45 F. Supp.3d 400 (S.D.N.Y. 2014) for the proposition that vaccination requirements cannot constitute discrimination based on disability. However, *D.A.B.* specifically relied upon the availability of sufficient exemptions, including a medical exemption, to conclude that the challenged regime would not likely be deemed discriminatory.

In *D.A.B.,* the court did not decide the issue of whether the vaccine requirement constituted discrimination in that case (the child had not applied to or been rejected by the school but elected for other reasons – particularly dissatisfaction with the services offered – to attend private school). However, in dicta, the court speculated that the vaccine requirement was unlikely to be found discriminatory as there was a medical exemption available if the child could not safely take the vaccine due to his disability. *D.A.B.,* 45 F. Supp. 3d at 407.

Here, Plaintiffs allege that the new regulations narrow medical exemptions so much that most acknowledged harms are no longer covered. Thus, those with disabilities that fall outside

of the non-exhaustive ACIP contraindications are discriminated against and denied benefits to which they are otherwise entitled. Plaintiffs have made a *prima facie* case that the restrictions are overly narrow and plausibly unlawful. If that is so, then the restrictions also discriminate and disparately impact medically fragile children with certain disabilities.

## III.   EXHAUSTION OF REMEDIES IS NOT REQUIRED

It is beyond debate that exhaustion is not required in §1983 cases of this nature. *Patsy v. Bd. of Regents of State of Fla.,* 457 U.S. 496, 500 (1982)(Federal claims premised on § 1983 do not require exhaustion of state judicial or administrative remedies, in recognition of the paramount role Congress has assigned to the federal courts in protecting constitutional rights.)

Defendants' misapply their arguments for exhaustion. They assert that this Court should bar the suit because some members of the putative class have not availed themselves of Article 78 actions or appealed to the Commissioner of Education. Yet, as Defendants acknowledge, these constitutional challenges are outside the scope of Article 78 proceedings and appeals to the Commissioner. Reliance on procedural due process law about the adequacy of post-deprivation administrative remedies is misplaced – this case is about the constitutionality of the infringements themselves, regardless of what process those proceedings might have afforded.

The Defendants also mistakenly argue that the Court should exercise *Burford* abstention. The *Burford* abstention does not confer a right on the state to pass regulations in violation of the federal Constitution. *See, e.g., Hachamovitch v. DeBuono*, 159 F.3d 687 (2d Cir. 1998)(*Burford* abstention was not warranted in physician's § 1983 action; state's substantial interest in disciplining and licensing of physicians did not confer a right to pass regulations in violation of the federal Constitution).

## IV.   CLAIMS AGAINST INDIVIDUAL DEFENDANTS NEED TO BE AMENDED

Defendants rightly point out that claims against individually named Defendants in their official capacity are duplicative where the municipality is named. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 691 (1978). A school district's liability under *Monell* may be premised on any of three theories: (1) that the district employee was acting pursuant to expressly adopted official policy; (2) that the district employee was acting pursuant to longstanding practice or custom; or (3) that the district employee was acting as a final policymaker. 42 U.S.C.A. § 1983. *New York by Schneiderman v. Utica City Sch. Dist.*, 177 F. Supp. 3d 739 (N.D.N.Y. 2016).

Defendants appear to acknowledge that all the challenged actions result from school district policies. The extent to which any of the unconstitutional actions fall within school district policy, practice or municipal act is a factual determination. As school principals have final authority to decide medical exemption cases, and superintendents are also final policy makers, liability for official acts lies with the school districts.

Individual capacity claims against the named school district Defendants are necessary, but Plaintiffs will amend the complaint so that the individuals are named in their personal capacities.

## V. SEVEREANCE OF CLAIMS AND CHANGE OF VENUE ARE UNWARRANTED

This case was brought as a putative class action suit. As will be more fully addressed in the forthcoming motion for class certification, the predominant issues represent common questions of law and fact. The challenged policies -- removing the clinical determination from treating physicians of what may cause harm, allowing schools to second guess and overrule treating physicians, and parents' rights to rely on the "good faith medical determinations" of their chosen physician free of further state infringement -- are common to all cases.

Whether these common policies and practices violate the Constitution overrides all individual circumstances. Defendants' assertion that a particular child's treating physician is "wrong" about the medical exemption is irrelevant to the undue burden put upon these families. Plaintiffs assert that the policies and practices themselves violate their constitutional rights and place medically fragile children at risk of serious harm, regardless of whether the exemption is ultimately "granted" or restored in individual cases.

As addressed at length in controlling case law, it is unlawful for Defendants to interfere with licensed physicians' good faith medical determinations in the first place. Severing the putative class action would not serve justice or judicial economy and would doubtless lead to confusion and unequal application of justice.

Venue is proper as the state Defendants are properly sued in the Northern District, and many individual Plaintiffs reside in the Northern District of New York.

## VI.    CHD HAS STANDING TO SUE

Defendants challenge the standing of Children's Health Defense (CHD) to appear as a Plaintiff.  An association has standing to bring suit on behalf of its members when (1) at least one of the association's members would otherwise have standing to sue in its own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested require the participation of individual members in the lawsuit, such as when the policies themselves are unconstitutional *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218 (2d Cir. 2011), aff'd sub nom. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,* 570 U.S. 205 (2013).

CHD asserts that many of its members have standing, that the interests – protecting children from harm and challenging unconstitutional regulations that will place them at risk of harm – are germane to its purpose, and that the suit does not require participation of individual

24

members, as the requested relief is prospective injunctive relief against unconstitutional policies and practices that impact all families seeking medical exemptions.  Thus CHD has standing.

## **CONCLUSION**

Wherefore, Plaintiffs respectfully request that this Court deny the Defendants' motion to dismiss.

Respectfully submitted,

s/*Sujata S. Gibson*

Sujata S. Gibson, Esq., *Lead Counsel*
The Gibson Law Firm, PLLC
407 N. Cayuga Street, Suite 201
Ithaca, NY 14850
Tel: (607) 327-4125
 Email: sujata@gibsonfirm.law
Bar Roll No. 517834


Michael Sussman, Esq., *Lead Counsel*
**Sussman & Associates**
1 Railroad Ave, Suite 3, PO Box 1005
Goshen, NY 10924
Bar Roll No. 123324

*Of Counsel*
Robert F. Kennedy Jr., Esq., *pending admission*
Mary Holland, Esq., *pending admission*