UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JANE DOE, *et al*.,

            *Plaintiffs*,

  -against-

HOWARD ZUCKER, in his official capacity as
Commissioner of the New York State Department of
Health, *et al*.,

            1:20-CV-0840
            (BKS)(CFH)

            *Defendants*.

## STATE DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

         LETITIA JAMES
         Attorney General of the State of New York
         *Attorney for Defendants Howard Zucker, M.D.,*
         *J.D., Elizabeth Rausch-Phung, M.D., and the*
         *N.Y.S. Department of Health*
         The Capitol
         Albany, NY 12224

MICHAEL G. McCARTIN
Assistant Attorney General
 *Of Counsel*
Bar Roll No. 511158
Telephone: (518) 776-2620

ANDREW W. KOSTER
Assistant Attorney General
 *Of Counsel*
Bar Roll No. 701106
Telephone: (518) 776-2609

October 5, 2020

Table of Contents

PRELIMINARY STATEMENT…………………………………………………………………….1

ARGUMENT…………………………………………………………………………………..1

    POINT I. PLAINTIFFS HAVE FAILED TO STATE A VIABLE CAUSE OF ACTION
…………………………………………………………………………………………………..1

        A. Plaintiffs cannot prevail on their constitutional claims....................................... 1

        B. Plaintiffs also cannot prevail on their Rehabilitation Act claims........................ 6

    POINT II. CHILDREN'S HEALTH DEFENSE LACKS STANDING TO PURSUE ITS CLAIMS
…………………………………………………………………………………………..7

CONCLUSION................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                           **Page(s)**

*Angstadt v. Midd-West Sch. Dist.*,
   377 F.3d 338 (3d Cir. 2004) ................................................................................................ 3

*Ayotte v. Planned Parenthood of N. New England*,
   546 U.S. 320 (2006) ............................................................................................................. 2

*Bano v. Union Carbide Corp.*,
   361 F.3d 696 (2d Cir. 2004) ................................................................................................. 9

*Boone v. Boozman*,
   217 F. Supp. 2d 938 (E.D. Ark. 2002) ................................................................................. 3

*Browning-Ferris Indus. of S. Jersey, Inc. v. Muszynski*,
   899 F.2d 151 (2d Cir. 1990) ................................................................................................. 4

*Bryant v. N.Y. State Educ. Dep't*,
   692 F.3d 202 (2d Cir. 2012) ............................................................................................. 2-3

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
   868 F.3d 104 (2d Cir. 2017) ................................................................................................. 8

*D.A.B. v. N.Y.C. Dep't of Educ.*,
   45 F. Supp. 3d 400 (S.D.N.Y. 2014) ................................................................................... 7

*DiMartile v. Cuomo*,
   2020 U.S. Dist. LEXIS 141384 (N.D.N.Y. Aug. 7, 2020) (Suddaby, C.J.) ......................... 3

*Givens v. Newsom*,
   2020 U.S. Dist. LEXIS 81760 (E.D. Cal. May 8, 2020) ..................................................... 4

*Huls Am. v. Browner*,
   83 F.3d 445 (D.C. Cir. 1996) ............................................................................................... 4

*Hunt v. Washington State Apple Advertising Comm'n*,
   432 U.S. 333 (1977) ............................................................................................................. 9

*Jacobson v. Commonwealth of Massachusetts*,
   197 U.S. 11 (1905) ............................................................................................................... 1

*Knife Rights, Inc. v. Vance*,
   802 F.3d 377 ......................................................................................................................... 8

*League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*,
   2020 U.S. App. LEXIS 19691 (6th Cir. June 24, 2020) ...................................................... 3

*Mehmeti v. N.Y. Bd. of Educ.*,
   2020 U.S. Dist. LEXIS 134505 (E.D.N.Y. July 29, 2020) .................................................. 2

*Nat'l Ass'n of Theatre Owners v. Murphy*,
 2020 U.S. Dist. LEXIS 148902 (D.N.J. Aug. 18, 2020) ....................................................... 4

*Nnebe v. Daus*,
 644 F.3d 147 (2d Cir. 2011) ................................................................................................. 8

*Phillips v. City of N.Y.*,
 775 F.3d 538 (2d Cir. 2015) ............................................................................................ 1, 6

*Planned Parenthood of Southeastern Pa. v. Casey*,
 505 U.S. 833 (1992) ............................................................................................................ 2

*South Bay United Pentecostal Church v. Newsom*,
 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) ............................................................. 5

*Stenberg v. Carhart*,
 530 U.S. 914 (2000) ............................................................................................................ 2

*Tester v. City of N.Y.*,
 1997 U.S. Dist. LEXIS 1937 (S.D.N.Y. Feb. 21, 1997) ..................................................... 2

*United States v. Salerno*,
 481 U.S. 739 (1987) ............................................................................................................ 6

*Warth v. Seldin*,
 422 U.S. 490 (1975) ............................................................................................................ 8

*Wash. State Grange v. Wash. State Republican Party*,
 552 U.S. 442 (2008) ............................................................................................................ 6

*Whitlow v. Cal. Dep't of Educ.*,
 203 F. Supp. 3d 1079 (S.D. Cal. 2016) ............................................................................... 3

*Zucht v. King*,
 260 U.S. 174 (1922) ............................................................................................................ 1

**FEDERAL STATUTES**

42 U.S.C.
 § 1983 ............................................................................................................................. 7-8

**STATE STATUTES**

Rehabilitation Act ....................................................................................................................... 6-8

Section 1983 and the Rehabilitation Act ...................................................................................... 8

**STATE REGULATIONS**

10 N.Y.C.R.R.
 § 66-1.1(1) ...................................................................................................................... 2, 7
 § 66-1.1(l) ........................................................................................................................... 6

Defendants Howard Zucker, M.D., J.D., the Commissioner of the New York State Department of Health ("DOH" or "the Department"); Elizabeth Rausch-Phung, M.D., the Director of the Bureau of Immunizations for DOH; and DOH (hereafter, the "State Defendants"), respectfully submit this Reply Memorandum of Law in further support of the State Defendants' Motion to Dismiss this purported class action lawsuit. *See* Dkt. No. 28.

## PRELIMINARY STATEMENT

As demonstrated in Defendants' opening brief, Plaintiffs' claims all fail on the merits and Plaintiff Children's Health Defense ("CHD") lacks standing. In opposition Plaintiffs offer no viable arguments to support their constitutional and statutory challenge and CHD's attempt to manufacture standing is unavailing. For all of the reasons stated in the State Defendants' opening papers, and for all of the reasons stated below, the State Defendants' Motion to Dismiss should be granted.

## ARGUMENT

### POINT I

**PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION**

**A.   Plaintiffs cannot prevail on their constitutional claims**

As the State Defendants established in their Motion to Dismiss, each of Plaintiffs' four constitutional claims fail under century-old Supreme Court precedent – namely, that of *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905) and *Zucht v. King*, 260 U.S. 174 (1922) – as well as the more recent Second Circuit decision in *Phillips v. City of N.Y.*, 775 F.3d 538 (2d Cir. 2015), which applied those two Supreme Court decisions to constitutional claims that are similar to those asserted here, dismissing those claims outright. Plaintiffs attempt to convince this Court to apply a "strict scrutiny" test here, and thereby essentially disregard the Supreme Court's

1

precedent in *Jacobson* and *Zucht*, should be summarily rejected.

First, addressing Plaintiffs' argument that "strict scrutiny" must be applied here, Plaintiffs assert that they are being denied a "fundamental right", and they cite numerous abortion-rights cases to advance this argument. For instance, Plaintiffs cite cases like *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992); *Stenberg v. Carhart*, 530 U.S. 914 (2000); and *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 325 (2006), and they argue that if a "fundamental right" is at stake, then "strict scrutiny" must be applied. Dkt. No. 74 at 7-9. This is a false analogy. There is no "fundamental right" at stake here because this is not an instance in which Plaintiffs are actually being forced to be immunized. Rather, in order to attend school, Plaintiffs here must be either immunized *or* they must show that a physician determines that the child has a medical contraindication consistent with the CDC's guidance or other nationally recognized evidence-based standards of care. *See* 10 N.Y.C.R.R. § 66-1.1(1). Stated differently, there is simply no "fundamental right" not to be required to conform to CDC's guidance or other nationally recognized evidence-based standards of care when it comes to immunization.

Furthermore, the consequence of not complying with the immunization regulation at issue is simply that the child must be homeschooled, instead of attending school. But such a result does not constitute the denial of a "fundamental right" because the case law is clear that there is not a "fundamental right" to an education. *See Mehmeti v. N.Y. Bd. of Educ.*, 2020 U.S. Dist. LEXIS 134505, at *4 (E.D.N.Y. July 29, 2020) (collecting cases); *see also Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012) (noting that there is no fundamental or substantive due process right to public education). Because there is no "fundamental right" at stake here, and because the governmental action clearly does not implicate a "suspect classification", "strict scrutiny" simply does not apply. *See Tester v. City of N.Y.*, 1997 U.S. Dist. LEXIS 1937, at *16-*17 (S.D.N.Y. Feb. 21, 1997) ("where a statute or policy targets a 'suspect classification' such as

2

race, alienage or national origin, or burdens a 'fundamental right', the governmental action in question will be examined under strict scrutiny" – otherwise the "rational basis" test applies).

Indeed, the correct test to apply here is undeniably the "rational basis" test of *Jacobson* and *Zucht*. *See, e.g., League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 2020 U.S. App. LEXIS 19691 (6th Cir. June 24, 2020) (applying the "rational basis" test to its *Jacobson* analysis); *Whitlow v. Cal. Dep't of Educ.*, 203 F. Supp. 3d 1079, 1088 (S.D. Cal. 2016) (applying the "rational basis" test while citing *Zucht*); *DiMartile v. Cuomo*, 2020 U.S. Dist. LEXIS 141384, at *27 (N.D.N.Y. Aug. 7, 2020) ("[W]hen reviewing the facts of a case under the *Jacobson* standard, the Court analyzes a plaintiff's claims under the rational basis standard of review.") (Suddaby, C.J.). Thus, the Court should apply the "rational basis" test to the challenged 2019 amendments to the regulation at issue.

Furthermore, the "rational basis" test is easily met here because federal courts have properly held that, "from a century of the nation's experience", it is clear on its face that "requiring school children to be immunized *rationally* furthers the public health and safety." *Boone v. Boozman*, 217 F. Supp. 2d 938, 957 (E.D. Ark. 2002) (emphasis added). A statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld as long as "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 219 (2d Cir. 2012) (citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). *See also Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 345 (3d Cir. 2004) (under the "rational basis" test, a regulation is valid "if there is *any reasonably conceivable state of facts* that could provide a rational basis for the classification") (emphasis added). Here, the 2018 emergency outbreak of measles among schoolchildren in New York State – as is conclusively established in the State Defendants' opening papers – ultimately caused the enactment of the 2019 amendments to the regulation, and those

3

amendments were plainly justified for a "plausible policy reason" – namely, to confront the 2018 emergency outbreak, by addressing the unacceptably low rates of vaccination across New York State communities, and by limiting the medical exception only to those who have a legitimate medical need for it. *See Nat'l Ass'n of Theatre Owners v. Murphy*, 2020 U.S. Dist. LEXIS 148902, at *39 (D.N.J. Aug. 18, 2020) ("[A] regulation will pass muster under a rational basis review if there is a 'plausible policy reason' for the justification, based on the science available at the time – whether or not that science or those reasons ultimately turn out to be incorrect."). Thus, not only must the "rational basis" test be applied to the case at bar, it is certainly satisfied here.

Additionally, in determining whether there is a "plausible policy reason" that is supported by science, it is indeed proper to defer to the State Defendants. In fact, as public health officials who run an agency with clear scientific expertise in the area of maintaining the health of the people of New York State, the State Defendants are entitled to considerable deference from this Court regarding their scientific judgements as to how to properly control the outbreak of serious, infectious diseases by deciding what criteria must be met before one is permitted to attend school without vaccinations. *See, e.g., Browning-Ferris Indus. of S. Jersey, Inc. v. Muszynski*, 899 F.2d 151, 160 (2d Cir. 1990) ("Courts should be particularly reluctant to second-guess agency choices involving scientific disputes that are in the agency's province of expertise."); *Huls Am. v. Browner*, 83 F.3d 445, 452 (D.C. Cir. 1996) ("[W]e will give an extreme degree of deference to the agency when it is evaluating scientific data within its technical expertise."); *Givens v. Newsom*, 2020 U.S. Dist. LEXIS 81760, at *12 (E.D. Cal. May 8, 2020) ("[I]n the context of [a] public health crisis, the judiciary must afford more deference to officials' informed efforts to protect all their citizens[.]"). Because the State Defendants are science-based public health experts running a professional and specialized public health agency, this Court should properly defer to them on medical and public health issues within their scientific expertise.

Indeed, as noted in the State Defendants' Motion to Dismiss, and should be noted a final time in reply here, Chief Justice John Roberts favorably cited *Jacobson* on May 29, 2020, and he firmly asserted that federal courts should absolutely avoid disputes precisely like this one:

> Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." *Jacobson v. Massachusetts*, 197 U. S. 11, 38, 25 S. Ct. 358, 49 L. Ed. 643 (1905). When those officials "undertake[ ] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Marshall v. United States*, 414 U. S. 417, 427, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U. S. 528, 545, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985).

*South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (2020) (Roberts, C.J., concurring). In their opposition papers, and indeed in the gravamen of their entire Complaint, Plaintiffs have simply ignored the Chief Justice's admonition; in fact, they do not account for it at all in their entire 25-page brief.

It is also noteworthy that, in 2015, the Second Circuit cited *Jacobson* in *Phillips* without addressing the specific principles of "public health necessity," "reasonable means," "proportionality," "harm avoidance," and "fairness", the principles that Plaintiffs claim are so vital here. *See* Dkt. No. 74 at 14. Instead, in that case, without any hesitation, the Second Circuit straight-forwardly applied *Jacobson* to New York State's mandatory vaccination program for schoolchildren, and the court upheld it in the face of a substantive due process claim similar to the one that Plaintiffs present here:

> This argument is foreclosed by the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts* … The Supreme Court held that mandatory vaccination was within the State's police power. … The Court rejected the claim that the individual liberty guaranteed by the Constitution overcame the State's judgment that mandatory vaccination was in the interest of the population as a whole. … Plaintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as *Jacobson* made clear,

5

> that is a determination for the legislature, not the individual objectors. …
> Plaintiffs' substantive due process challenge to the mandatory vaccination regime is therefore no more compelling than Jacobson's was more than a century ago.

*Phillips*, 775 F.3d at 542-43.

Before concluding, one other point must be underscored regarding Plaintiffs' constitutional claims: Plaintiffs bring *only a facial challenge* against the State Defendants and their 2019 amendments to 10 N.Y.C.R.R. § 66-1.1(l).  This is crucial because to succeed on a facial challenge, Plaintiffs must demonstrate that "no set of circumstances exists under which the [regulation] would be valid, *i.e.*, that the law is unconstitutional in *all* of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (emphasis added).  Because this is "the most difficult challenge to mount successfully," *United States v. Salerno*, 481 U.S. 739, 745 (1987), and because the regulation at issue is clearly not "unconstitutional in *all* of its applications," this facial challenge fails.  The regulation has "a plainly legitimate sweep." *Wash. State Grange*, 552 U.S. at 449.  Plaintiffs argue that the 2019 regulatory amendments are facially invalid and unconstitutional because they theoretically allow for non-medically-trained local school officials to overturn the opinions and recommendation of Plaintiffs' physicians.  However, as long as the Court can conceive of *any potential circumstance* in which a local school official could possibly make such a determination correctly – and therefore constitutionally – then Plaintiffs' *facial challenge* to this aspect of the regulation also fails.

Consequently, Plaintiffs' four constitutional claims should be dismissed because they fail to state a viable legal claim.

### B.     Plaintiffs also cannot prevail on their Rehabilitation Act claims

In their opening memorandum of law, the State Defendants argued that the Rehabilitation Act claims fail because Plaintiffs were not discriminated against "solely" by reason of their alleged

6

disabilities. *See* Dkt. No. 28-1 at 27. In response, Plaintiffs argue that the State Defendants' reliance upon *D.A.B. v. N.Y.C. Dep't of Educ.*, 45 F. Supp. 3d 400 (S.D.N.Y. 2014) is misplaced. It is Plaintiffs, though, who misconstrue that important decision. The court in *D.A.B.* expressly rejected the argument that a school district would have violated the Rehabilitation Act by refusing admission to an autistic child who failed to comply with the vaccination requirement. *Id*. at 407 ("No reasonable factfinder could conclude that D.B. was prevented from attending school because of his autism. Even under the plaintiffs' hypothetical assumptions, D.B. would not have been allowed to attend his designated school because he did not have the required vaccinations."). The court also drew a distinction between rules that "involve sweeping automatic exclusions of all children with a certain disease" and vaccination requirements which "allow[] the possibility of exemptions," are "generally applicable," and "intended to limit the spread of contagious disease." *D.A.B.*, 45 F. Supp.3d at 407. The rule at issue here is analogous to the latter situation: it does in fact allow for medical exemptions where a physician determines that a child has a medical contraindication consistent with guidance from the CDC or other nationally recognized evidence-based standards of care. 10 N.Y.C.R.R. § 66-1.1(1). It is also generally applicable and does not include sweeping automatic exclusions of children with certain diseases. *Id*. And finally, it is certainly intended to limit the spread of contagious disease. The court's reasoning in *D.A.B.* is therefore applicable here and the Rehabilitation Act claims must be dismissed.

## POINT II

**CHILDREN'S HEALTH DEFENSE LACKS STANDING TO PURSUE ITS CLAIMS**

In their moving papers, the State Defendants argued that CHD lacks both associational and organizational standing to assert claims pursuant to 42 U.S.C. § 1983 and the Rehabilitation Act. *See* Dkt. No. 28-1 at 21-25. In response, Plaintiffs argue that CHD "has standing to bring suit on behalf of its members." Dkt. No. 74 at 28. This, however, is an associational standing claim, and

although the law governing standing under Section 1983 and the Rehabilitation Act are different, Plaintiffs fail to differentiate between these two types of claims.[1]

In any event, "[i]t is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015 (quoting *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011). The Second Circuit has repeatedly upheld this rule despite arguments that it should be abandoned. *Nnebe*, 664 F.3d at 156 n.5 (stating that the Second Circuit is "bound by the implicit determination of prior panels that the rule survives *Warth v. Seldin*, 422 U.S. 490 (1975) until such time as our prior decisions are overruled either by an *en banc* panel of our Court or by the Supreme Court") (internal quotation marks and brackets omitted). *See also Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 122-24 (2d Cir. 2017) (Jacobs, J., dissenting) (acknowledging that the Second Circuit continues to adhere to the rule prohibiting associational standing in Section 1983 claims even after Supreme Court cases like *Warth* and *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333 (1977)); *National Rifle Association v. Cuomo*, 1:20-cv-385 (MAD/DJS), 2020 U.S. Dist. LEXIS 146279, at *9 (N.D.N.Y. Aug. 14, 2020) (D'Agostino, J.) ("The Court agrees with Defendants that Plaintiffs cannot succeed in asserting associational standing."). The rule remains good law in the Second Circuit.

The associational standing theory also cannot support the Rehabilitation Act claims because those claims require the participation of the individual members in the lawsuit. Dkt. No. 28-1 at 25. Plaintiffs argue in response that "the suit does not require participation of the individual members of CHD because the requested relief is prospective injunctive relief." Dkt. No. 74 at 28. This argument incorrectly assumes that standing exists whenever prospective relief (rather than

---

[1] Plaintiffs do not address the argument that they lack organizational standing and have therefore waived any argument to the contrary.

8

damages) are sought. In fact, the Second Circuit has rejected this argument. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) (reasoning that under *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 344 (1977), an association does not "automatically satisf[y] the third prong of the *Hunt* test simply by requesting equitable relief rather than damages"). Indeed, the Complaint clearly shows that member participation would be necessary here insofar as the Complaint is filled with allegations concerning specific families, children, and medical professionals. *See* Compl. ¶ 51 (CHD members include parents of children named in lawsuit and those eligible for class membership). For these reasons, CHD clearly lacks standing.

## **CONCLUSION**

Based upon the State Defendants' opening papers, and based upon the above stated arguments in this Reply Memorandum of Law, the State Defendants' Motion to Dismiss (Dkt. No. 28) should be granted in its entirety.

Dated: Albany, New York
October 5, 2020

                                         LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants Howard Zucker, M.D., J.D., Elizabeth Rausch-Phung, M.D., and the N.Y.S. Department of Health*
The Capitol
Albany, New York 12224

By: *Michael McCartin*

Michael G. McCartin
Assistant Attorney General, Of Counsel
Bar Roll No. 511158
Tel.: (518) 776-2620
michael.mccartin@ag.ny.gov

*Andrew Koster*

Andrew W. Koster
Assistant Attorney General, Of Counsel
Bar Roll No. 701106
Tel.: (518) 776-2609
andrew.koster@ag.ny.gov

TO:     All Attorneys of Record (*via* CM/ECF)