**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE, et al. | Civil Action No.: 1:20 – CV – 0840 (BKS/CFH) |
| Plaintiffs, | |
| vs. | **MEMORANDUM OF LAW** |
| HOWARD ZUCKER, et al. | |
| Defendants. | |

**PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION**
**RESPONSE TO OPPOSITION OF DEFENDANT MIGLIORINO**

Sujata S. Gibson, Esq., Lead Counsel
**The Gibson Law Firm, PLLC**
407 N. Cayuga Street, Suite 201
Ithaca, NY 14850
Tel: (607) 327-4125
 Email: sujata@gibsonfirm.law
Bar Roll No. 517834

Michael Sussman, Esq., *Lead Counsel*
**Sussman & Associates**
1 Railroad Ave, Suite 3, PO Box 1005
Goshen, NY 10924
Bar Roll No. 123324

*Of Counsel*
Robert F. Kennedy Jr., Esq., *pending admission*
Mary Holland, Esq., *pending admission*

October 5, 2020

Plaintiffs hereby reply to the Memoranda of Law submitted by counsel for Defendant

Migliorino dated 9/28/2020 in opposition to plaintiffs' motion for a preliminary injunction.

## <u>TABLE OF CONTENTS</u>

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Preliminary Statement ........................................................................................ 1

Statement of Facts .............................................................................................. 2

Standard of Review ............................................................................................ 6

Legal Argument ................................................................................................. 7

**I.    POINT ONE: PLAINTIFFS HAVE DEMONSTRATED A LIKILIHOOD OF SUCCESS ON THE MERITS** ................................................................. 8

    **a.  The right to a medical exemption where a child may be at risk of harm is a fundamental right and requires strict scrutiny** ................................ 8

    **b.  The regulations and policies at issue place an undue burden on the fundamental right to a medical exemption for vulnerable children** ........ 9

    **c.  The challenged policies and procedures are not narrowly tailored to uphold a compelling state interest sufficient to outweigh the Plaintiffs' right to a medical exemption** ................................................................. 15

    **d.  The state cannot substitute its judgment for the that of fit parents** ....... 16

    **e.  Deference Does Not Apply to Analysis of Fundamental Rights Infringements** ..................................................................................... 17

    **f.  Exhaustion is not required for these claims** ............................................ 18

**II.   POINT TWO: PLAINTIFFS REQUIRE A PRELIMINARY INJUNCTION TO AVOID ONGOING IRREPARABLE HARM** ............. 19

**III.  POINT THREE: THE BALANCE OF HARDSHIPS DECISIVELY TIPS IN PLAINTIFFS' FAVOR** ............................................................... 23

**IV.   A PRELIMINARY INJUNCTION SERVES THE PUBLIC INTEREST** .. 25

Conclusion ...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Airbnb, Inc. v. City of New York,*
    373 F. Supp. 3d 467 (S.D.N.Y. 2019) ............................................... 21

*Amarin Pharma., Inc. v. FDA,*
    119 F.Supp.3d 196 (S.D.N.Y. 2015) ................................................ 25

*Ayotte v. Planned Parenthood of N. New England,*
    546 U.S. 320 (2006)................................................................2,9,10,11,12

*Brenntag Int'l Chems., Inc. v. Bank of India,*
    175 F.3d 245 (2d Cir. 1999) ......................................................... 19

*Caviezel v. Great Neck Public Schools,*
    701 F.Supp.2d, 414 (E.D.N.Y. 2010) ............................................. 20

*Deferio v. City of Syracuse,*
    193 F. Supp. 3d 119 (N.D.N.Y. 2016) ............................................ 25

*Doe v. Bolton,*
    410 U.S. 179 (1973) ................................................... 1,2,10,12,13,14

*Gonzales v. Carhart,*
    550 U.S. 124 (2007)................................................................... 18

*Eng v. Smith,*
    849 F.2d 80 (2d Cir. 1988) ........................................................... 8

*Faiveley Transportation Malmo AB v. Wabtec Corp.,*
    559 F.3d 110 (2d Cir. 2009) ......................................................... 19

*Hachamovitch v. DeBuono,*
    159 F.3d 687 (2d Cir. 1998) .......................................................... 7

*Hardy v. Fischer,*
    701 F.Supp.2d 614 (S.D.N.Y. 2010) ............................................. 21

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905)....................................................... 1,2,3,8,9,10,18

*Jolly v. Coughlin,*

     76 F.3d 468 (2d Cir.1996) ................................................................ 7

*Kuklachev v. Gelfman,*
     361 F. App'x 161 (2d Cir. 2009) ................................................ 23

*Lewis v. Sobol,*
     710 F. Sup. 506 (S.D.N.Y. 1989) ................................................ 20

*Ligon v. City of New York,*
     925 F.Supp.2d 478 (S.D.N.Y. 2013) ................................. 21,22, 25

*Matter of Hofbauer,*
     47 N.Y.2d 648 (1979) ........................................................... 14,17

*Mitchell v. Cuomo,*
     748 F.2d 804 (2d Cir. 1984) ..................................................... 20

*Mullins v. City of New York,*
     626 F.3d 47 (2d Cir. 2010) ...................................................... 19

*Parham v. J.R.,*
     442 U.S. 584 (1979) ................................................................ 16

*Patsy v. Bd. of Regents of State of Fla.,*
     457 U.S. 496 (1982) ................................................................ 18

*Planned Parenthood of Southeastern Pa. v. Casey,*
     505 U.S. 833 (1992).......................................................... 10,11

*Red Earth LLC v. United States,*
     657 F.3d 138 (2d Cir.2011) ....................................................... 7

*Robinson v. Attorney General*
     957 F.3d 1171 (11th Cir. 2020) ................................................ 15

*Salinger v. Colting,*
     607 F.3d 68 (2d Cir. 2010) ...................................................... 23

*Stenberg v. Carhart,*
     530 U.S. 914 (2000).......................................................... 2,10

*Troxel v. Granville,*
     530 U.S. 57 (2000).................................................................. 16

iii

*Wallis v. Spencer*,
202 F.3d 1126 (9th Cir. 2000)................................................................................. 17

*Whalen v. Roe,*
429 U.S. 589 (1977)............................................................................................... 14

*Whole Woman's Health v. Hellerstedt*
136 S. Ct. 2292, 2298 (2016), <u>as revised</u> (June 27, 2016) .............................. 18

*Winter v. Nat. Res. Def. Council, Inc.,*
555 U.S. 7 (2008)................................................................................................ 7,19

iv

## PRELIMINARY STATEMENT

Plaintiffs seek a preliminary injunction to prevent defendants from continuing to violate their constitutional rights by imposing arbitrary and dangerous burdens on the availability of a medical exemption from mandatory school vaccines.

Since the enactment of mandatory school vaccine laws, New York has had a simple, straightforward medical exemption. By statute, if *any* physician licensed to practice in New York certifies that a vaccine may cause a child harm, that child should be exempt from the requirement. Public Health Law §2164(8).

This suit does not challenge the statutory medical exemption, but rather takes issue with additional policies, practices and regulations adopted by defendants that place unconstitutional burdens on the medical exemption. Specifically, new regulations promulgated in 2019 empower school principals to review and reject the recommendations of licensed physicians, forcing hundreds of medically fragile children to either contravene trusted doctors' medical advice about what is safe or lose the right to go to school. The same regulations dangerously predefine "what may cause harm," disallowing treating physicians from using their best medical judgment and limiting them to the consideration of only a small fraction of the known serious adverse reactions to vaccinations or potential contraindications.

The plaintiffs are likely to prevail, as the challenged practices are prohibited by long-standing and controlling protections in Supreme Court holdings. A sufficient medical exemption has been recognized as a prerequisite to any constitutionally-sound vaccine mandate for a hundred and fifteen years. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). Fifty years ago, the Supreme Court specifically held that medical exemptions cannot be subject to the types of burdens at issue here. *Doe v. Bolton,* 410 U.S. 179, 199-200 (1973)(holding that the patient's chosen medical provider must have discretion in decisions about what may

constitute harm: "[I]f a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment"). *Id.* at 200. Under *Doe,* chosen medical providers cannot be constrained in their professional judgment about what may constitute harm. Similarly, they cannot be required to submit their medical necessity determinations to review by outside committees or practitioners, nor can they be required to obtain "corroboration" about the validity of their medical exemption determinations. Certainly, allowing a school principal to overrule the parents' chosen physician is unlawful under this binding precedent, even if the principal consults with a non-treating medical professional who has a different opinion.

The challenged policies are placing hundreds of children at serious risk. The Supreme Court reaffirmed many times over that medical exemptions must receive strict scrutiny, and even where the possibility for harm alleged is only hypothetical or unlikely, the Supreme Court has deemed the exemption constitutionally insufficient. *Stenberg v. Carhart.* 530 U.S. 914, 937 (2000); *Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320, 325 (2006). In this case, plaintiffs can establish that the harm is not only possible, but imminent – licensed physicians certified that these children <u>are</u> at risk of serious harm, and yet they are being denied relief.

Rather than address the constitutional issues, defendants engage in classic strawman tactics. Their central argument is that plaintiffs cannot prevail because the Supreme Court already decided that states may impose vaccine mandates. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905). That is not the issue before the Court, however.

Plaintiffs do not challenge that under *Jacobson*, the state police power is broad enough to include vaccine mandates within certain limits. On the contrary, plaintiffs <u>rely </u>on *Jacobson,* which expressly held that a sufficient medical exemption is a constitutional prerequisite to the

state's use of its police power to impose vaccine mandates, which determinations deserve strict judicial scrutiny.

Defendants fail to acknowledge or address the serious harm that occurs when medically fragile children are forced to choose between the right to an education at any public or private school and the right to follow the advice of their licensed treating physician. Defendants do not even assert evidence of necessity for their draconian measures, arguing that *Jacobson* allows them *carte blanche* to operate without any scrutiny of tailoring whenever vaccines are involved.

Plaintiffs have established all the elements required for a preliminary injunction and ask the Court to stay defendants' unlawful practices so that children who submit a medical exemption certified by a physician licensed in New York can attend school during the pendency of this litigation.

## STATEMENT OF FACTS

The New York legislature reached the limits of permissible infringements on the medical exemption in enacting Public Health Law §2164(8), which requires a medical exemption if *any* physician licensed in the state of New York certifies the immunization may cause harm to the child.

Last year, the DOH adopted, and defendants began widely implementing, additional regulations that arbitrarily remove the determination of what may cause harm from the treating physician, substituting instead a narrow set of circumstances, predefined by the CDC's "ACIP guidelines." The Advisory Committee on Immunization Practices (ACIP) guidelines are not exhaustive and cannot substitute for the clinical judgment of a trusted physician.

Under the new regulations, school principals have authority to decide whether to accept the medical exemption submitted by a licensed physician. Though they are not required to do more than verify that a treating physician signed the exemption and put it on the correct form,

all of the defendants in this suit elected to adopt additional burdensome policies and practices to "review" the medical exemptions with outside non-treating consultants. If the consultant had a different opinion, defendants denied the treating physician's exemption.

Children who had medical exemptions for years were suddenly and arbitrarily expelled from school during the fall and spring semesters last year. More children whose exemptions were recognized last year continue to be suddenly and arbitrarily expelled this year. Many denied children have multiple specialists certifying that they are at risk of serious harm. Many have already experienced serious harm from one or more documented adverse reactions to vaccines. The reviewing doctors have never treated the children, and typically have no expertise in the child's particular health challenges.

Even those families who are not yet denied report that their medical relationships are jeopardized by these aggressive review policies and their families are being subjected to enormous burden and stress. As more fully set forth in the complaint and the dozens of declarations submitted with this motion, the trauma to the children and families is ongoing and severe. Rather than attempt any accommodation, just before this motion was submitted, defendants decided to adopt formal punitive policies preventing these children from even participating in entirely remote online learning.

Plaintiffs seek a preliminary injunction staying the new regulations and barring schools from overruling or burdening any medical exemption certifications written by licensed physicians during the pendency of this suit. This reply responds to the papers submitted by Defendant Br. David Anthony Migliorino, OSF ("Defendant Migliorino"), who joins the other named defendants in objecting to the requested relief.

Defendant Migliorino, who is the principal at a private catholic college preparatory school, denied three exemption requests, written by two renowned treating specialists, submitted by the

4

family of named plaintiff John Loe. *See* Dkt 1-1 (complaint) par. 230-261. As more fully set forth in the complaint and in his mother's declaration accompanying this motion, Dkt 41-17 (Decl. of Loe), John Loe is a medically fragile fifteen-year-old boy who has had a medical exemption since he was seven. From age seven until last year, he was under the care of the same pediatric neurologist, whose medical exemptions were accepted each year without issue. Last year, Defendant Migliorino arbitrarily denied John's exemption on the advice of a school district consultant who has never met John and has no expertise in his serious medical conditions. The consultant recommended denial, claiming John was "no longer a patient" at his specialist's office by the time school started (which is not a requirement). The circumstances suggest that the consultant harassed and frightened John's long-time doctor into dropping him as a patient, which occurred just after the call with the consultant. John thus lost not only the right to attend school, but also lost his trusted physician who had helped him so much over the years with his serious medical needs.

Over the next months, John's parents searched for a new doctor, and by a miracle, got an appointment with a second specialist with expertise in John's serious health conditions. This specialist agreed that John could not receive the fifth Tdap booster or the meningococcal vaccine safely (John is fully up to date otherwise). Again, Defendant Migliorino denied this exemption, claiming erroneously that the law required that the specialist provide two separate forms (the regulations do not require this). The second specialist reported also being called by the Department of Health and "encouraged" to deny any further exemptions, even for children who require them. He expressed fear of retaliation when he signed the third set of forms. The third set were then denied after months of delay on the grounds that John's second specialist couldn't "sufficiently defend" the medical exemption over the phone, according to the consultant. John is

scared he will now lose a second, much needed treating specialist if he subjects his doctor to this process again this year.

John and his family have suffered irreparable, ongoing harm as a result of these events. It was a huge achievement for John to get accepted to St. Anthony's School, and it meant everything to him. Because of his condition, he struggles socially, physically, and mentally. He was just starting to feel accepted, to make friends, to find a place for himself and gain some fragile sense of confidence, destroyed after all these years of serious illness. For the first time, he felt he had a future, and he was eagerly trying to pursue it.

The developmental impacts of ostracism and expulsion have devastated him. John has fallen into a deep and serious depression. He was not even allowed to attend the PSAT prep course or test and fell behind. He lost the will to try.

John feels bewildered and betrayed, as do his parents, who are only trying to follow the advice of two treating specialists, each of whom certified that John could be at serious risk of injury if he takes the Tdap booster or the meningococcal vaccine. John took all the other required vaccines, including four doses of the components of Tdap. No component of the Tdap or the meningococcal vaccine can protect anyone other than the recipient, thus there is no possibility of negatively impacting herd immunity by having John in the school. As certified by two treating specialists, the risks for John are too great for any purported personal benefit.

John has a chance, with the commencement of a new school year, to make a fresh start and to regain some of his confidence and engagement with life and school again. He desperately wants to return to St. Anthony's School. His parents, like the other parents in this suit, seek this injunction on behalf of their child, and all similarly situated children, to stop this ongoing and devastating harm from continuing to affect families and children pending the outcome of this case.

**STANDARD OF REVIEW**

In general, to obtain a preliminary injunction, the moving party must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities and hardships tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)(citations omitted).

The Second Circuit provides that the moving party may be entitled to a preliminary injunction even if the party is unable to establish a likelihood of success on the merits, provided that the party demonstrates " 'a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'" *Red Earth LLC v. United States,* 657 F.3d 138, 143 (2d Cir.2011). However, when the moving party seeks a "mandatory" as opposed to "prohibitive" injunction, this lower standard is not applicable. *Rodriguez v. DeBuono,* 175 F.3d 227, 233 (2d Cir.1999) (quoting *Jolly v. Coughlin,* 76 F.3d 468, 473–74 (2d Cir.1996)).

Plaintiffs should qualify for review under the lower standard, as they do not seek to mandate action. Essentially, they seek to return to the status quo before the imposition of these challenged policies – they don't ask the schools to *do* anything, but rather to refrain from engaging in review of treating physicians' determinations during this suit (which is a discretionary activity schools have adopted). There are arguments on both sides of this issue. The Second Circuit recognizes that "[t]he distinction between mandatory and prohibitory injunctions is not without ambiguities or critics, and that in a close case an injunction can be framed in mandatory or prohibitory terms." *Jolly,* 76 F.3d at 474 (quotation marks and citations omitted). In this case, however, the distinction is not particularly important to parse. Plaintiffs are likely to succeed on the merits and thus can meet either the normal or lower standard.

## **LEGAL ARGUMENT**

All parties agree that this motion turns on the likelihood of success on the merits and plaintiffs' ability to establish that without temporary relief, they will be irreparably harmed. Both factors strongly counsel in favor of issuing injunctive relief.

## I.   POINT ONE: PLAINTIFFS HAVE DEMONSTRATED A LIKILIHOOD OF SUCCESS ON THE MERITS

To establish a likelihood of success, plaintiffs "need not show that success is an absolute certainty. [They] need only make a showing that the probability of [their] prevailing is better than fifty percent." *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988). Defendants' actions unduly burden many fundamental constitutional rights, and the plaintiffs will likely succeed on the merits of their claims.

### a.   The right to a medical exemption where a child may be at risk of harm is a fundamental right and requires strict scrutiny

The right to a medical exemption is itself an independent fundamental constitutional right requiring strict scrutiny analysis. This Supreme Court recognized this right over 115 years ago. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27, 36-39 (1905)(holding that the police powers of a state are broad enough to impose vaccine mandates to protect the community at large, but stressing the necessity of strict judicial review if a person is vulnerable to personal harm from the mandated vaccine).

In *Jacobson*, the Court held that requiring a person to submit to a vaccine that may cause harm is unconstitutional and "cruel and inhuman in the last degree":

> Before closing this opinion we deem it appropriate, in order to prevent misapprehension as to our views, to observe—perhaps to repeat a thought already sufficiently expressed, namely—that the police power of a state, whether exercised directly by the legislature, or by a local body acting under its authority, may be exerted in such circumstances, or by regulations so arbitrary and oppressive in particular cases, as to justify the interference of the courts to prevent wrong and oppression. Extreme cases can be readily suggested. Ordinarily such cases are not safe guides in the administration of the law. **It is**

8

**easy, for instance, to suppose the case of an adult[1] who is embraced by the mere words of the act, but yet to subject whom to vaccination in a particular condition of his health or body would be cruel and inhuman in the last degree.**" *Id* at 38–39 (emphasis added).

Though the Court recognized the police powers of a state could infringe on personal liberties, it drew the line on any regulation that could infringe on an individual's right to opt out if he was at risk of serious harm. The *Jacobson* Court clarified that where a person alleges he is "*not at the time a fit subject of vaccination, or [for whom] vaccination by reason of his then condition would seriously impair his health*," a court is not only competent to strictly review the appropriate tailoring of the medical exemption, but <u>must do so</u>:

> We are not to be understood as holding that the statute was intended to be applied to such a case, or, if it was so intended, that the judiciary would not be **competent to interfere and protect the health and life of the individual concerned**. *Id.* (emphasis added)

The Supreme Court continues to recognize a medical exemption as an independent fundamental right in today's jurisprudence. *See, e.g., Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320, 325 (2006)(identifying a specific and independent fundamental constitutional requirement that an abortion regulation must contain an exception for the preservation of the pregnant woman's health).

**b. The regulations and policies at issue place an undue burden on the fundamental right to a medical exemption for vulnerable children**

The highest levels of scrutiny are typically afforded to medical exemption cases, as the rights at issue – self-defense, right to informed consent, right to bodily autonomy – are so fundamental. Moreover, a medical exemption is not just a liberty interest – it goes to the very

---

[1] "There being obvious reasons for such exception", children were exempt from the smallpox mandate. "*Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 30 (1905)("there are obviously reasons why regulations may be appropriate for adults which could not be safely applied to persons of tender years").

right to life itself. As it did in *Jacobson,* the Supreme Court continues to give far less leeway to infringements on medical exemption than to infringements on other types of fundamental rights, even when the state has established a compelling interest. Two clear lines have emerged in the case law which cannot be infringed: harm avoidance and subordination of the chosen licensed provider's "best medical judgment."

### *Harm Avoidance*

As a floor, the Supreme Court has repeatedly held that if a medical exemption is narrow enough to exclude even a few people who might need it to prevent harm, it is unconstitutional. *Ayotte* 546 U.S. 320, 325-27 (acknowledging that any regulation that does not contain a sufficient medical exemption would be unconstitutional, whether the regulation burdened the right to a medical exemption facially or as applied.)

Medical exemption cases in the abortion context are illustrative of how courts will scrutinize medical exemptions even more strictly than other important fundamental rights. To prevail on an abortion claim, a plaintiff alleging a facial challenge to an abortion regulation must demonstrate that "in a large fraction of cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Casey*, 505 U.S. at 895. When it comes to analysis of the constitutionality of a *medical exemption* to an otherwise permissible abortion regulation, however, the Supreme Court clarifies that even where the risk of harm could only occur in "some very small percentage" of cases, the exemption is too narrow and therefore unconstitutional. *Ayotte*, 546 U.S. at 328.

In *Stenberg v. Carhart,* the Supreme Court held that the hypothetical possibility that a woman would not be covered by a statute's narrow medical exemption rendered the entire law unconstitutional. 530 U.S. 914, 937 (2000). The Court's analysis is instructive:

The word "necessary" in *Casey's* phrase "necessary, in appropriate medical judgment, for the preservation of the life or health of the mother," …cannot refer to an absolute necessity or to absolute proof. Medical treatments and procedures are often considered appropriate (or inappropriate) in light of estimated comparative health risks (and health benefits) in particular cases. Neither can that phrase require unanimity of medical opinion. Doctors often differ in their estimation of comparative health risks and appropriate treatment. And *Casey's* words **"appropriate medical judgment" must embody the judicial need to tolerate responsible differences of medical opinion."** *Id.* at 937. (emphasis added)

In *Ayotte*, the Supreme Court addressed another facial challenge to an abortion regulation's medical exemption. The challenged law required that a provider notify a minor's parents 48 hours before performing the abortion. The Court acknowledged the parents' fundamental right to such notification as a compelling interest. The issue was whether the medical exemption was unconstitutional because it was too narrow to protect all young women whose health but not life might be placed in jeopardy during the 48-hour waiting period. No individual plaintiffs came forth alleging actual harm. However, the state acknowledged that in some very small percentage of cases, pregnant minors, like adult women, might need immediate abortions to avert serious damage to their health. *Id.* at 328. Thus, the Supreme Court held that the medical exemption was unconstitutionally narrow.

In the cases above, even the hypothetical possibility of harm was enough to render a medical exemption unconstitutional. In this case, the medical exemption cannot survive where the risk of harm is present, clear, and serious, as illustrated by many specific examples certified by licensed physicians.

These risks are known. The complaint and moving papers list hundreds of additional evidence-based reasons that exist beyond the narrow ACIP guideposts that could put some children at substantial risk of harm or death. In short, defendants' limiting definition is irrational and reckless. Guidelines are not meant to replace treating physicians' clinical judgments or serve

as an exhaustive list of contraindications and precautions. Even the CDC admits that ACIP guidelines cannot define the limits of a valid medical exemption and should not be used for that purpose. *See* Dkt 41-12 (Decl. of Doe) ¶ 27.

No one denies that though vaccines may be safe for most people, they are not safe for some, and even defendants acknowledge at least some of these school principals will be and have been wrong in denying the treating physician's certified exemption. On this ground alone, the Court should grant the injunction.

The harm avoidance principle is unwavering. Though a state actor may have compelling reasons to limit medically unnecessary abortions to protect viable fetuses, or to limit medically unnecessary exemptions from school vaccines to protect the community from contagion, the Supreme Court has repeatedly clarified that forcing a person to submit to risk of serious personal harm is not an acceptable casualty in service of those needs. Any exemption that is narrow enough to exclude even a few deserving children is unconstitutional.

### Infringement on A Chosen Physician's Good Faith Medical Judgment

In addition to the harm avoidance principle, the Supreme Court's decisions in *Ayotte* held that the law was also unconstitutional because it required physicians to certify with impossible precision that an emergency abortion was "necessary" and because it impermissibly failed to protect doctors' good faith medical judgment. *Id.* at 325.

Subordinating a chosen provider's medical judgment has long been established as unconstitutional. Fifty years ago, in *Doe v. Bolton,* decided concurrently with *Roe v. Wade,* the Supreme Court examined medical exemption infringements very similar to the ones at issue in this case and squarely held them unconstitutional. 410 U.S. 179, 199-200 (1973).

First, the Court affirmed that physicians must be able to consider a broad range of factors relevant to their clinical determination about whether a medical exemption is "necessary." "*We*

*agree with the District Court that the medical judgment may be exercised in the light of all factors—physical, emotional, psychological, familial, and the woman's age—relevant to the well-being of the patient. All these factors may relate to health. This allows the attending physician the room he needs to make his best medical judgment.*"

Thus, the Supreme Court clarified that a physician's determination of what may cause harm needs to rest on any factor the physician finds relevant to a woman's health in her clinical judgment. Under this standard, the challenged requirement that a physician limit her determination of "what may cause harm" to exclude any reason that falls outside of the narrow articulated ACIP guidelines would surely be unconstitutional.

Second, the Supreme Court held it unconstitutional to require a hospital committee to review the treating doctor's determination of medical necessity before allowing the abortion to occur at that hospital. *Id.* at 199-200. The Court discussed at length why a hospital, which has an independent interest in ensuring that it is complying with law and standards of care, would want to review the grounds of the medical exemption. Nonetheless, the Court held that such review violated the patient's constitutional rights:

> Saying all this, however, does not settle the issue of the constitutional propriety of the committee requirement. Viewing the Georgia statute as a whole, we see no constitutionally justifiable pertinence in the structure for the advance approval by the abortion committee…**The woman's right to receive medical care in accordance with her licensed physician's best judgment and the physician's right to administer it are substantially limited by this statutorily imposed overview.**" *Id.* at 192. "**We conclude that the interposition of the hospital abortion committee is unduly restrictive of the patient's rights and needs that, at this point, have already been medically delineated and substantiated by her personal physician.** To ask more serves neither the hospital nor the State. *Id.* at 197. *Emphasis added.*

For the same reasons that the Supreme Court held it was unconstitutional for the hospitals to subject medical exemptions to review before a patient is admitted, schools cannot subject medical exemptions to review before a student is admitted.

13

Last, the Court held that it was unconstitutional to require corroborating opinions from other state-licensed physicians. The Court's discussion of corroborating opinions is particularly apposite to this case:

> The reasons for the presence of the confirmation step in the statute are perhaps apparent, but they are insufficient to withstand constitutional challenge. Again, no other voluntary medical or surgical procedure for which Georgia requires confirmation by two other physicians has been cited to us. **If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment**. If he fails in this, professional censure and deprivation of his license are available remedies. Required acquiescence by co-practitioners has no rational connection with a patient's needs and unduly infringes on the physician's right to practice. The attending physician will know when a consultation is advisable—the doubtful situation, the need for assurance when the medical decision is a delicate one, and the like. Physicians have followed this routine historically and know its usefulness and benefit for all concerned. **It is still true today that '(r)eliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he (the physician) possesses the requisite qualifications.**' *Dent v. West Virginia*, 129 U.S. 114, 122—123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889). *See United States v. Vuitch*, 402 U.S., at 71, 91 S.Ct. at 1298. *Id.* at 199-200. (emphasis added.)

Under this standard, defendants' arguments must fail. They cannot justify the denials based on a lack of corroborating opinion from consultants they hire. *Doe* clarified that corroborating opinions (or lack thereof) cannot be required for a medical exemption.

Under *Doe*, the fact that a physician licensed to practice in New York must certify the exemption is not merely sufficient; further regulation is unconstitutional. "If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment." *Doe* 410 U.S. at 200.

The Supreme Court reaffirmed *Doe* outside the abortion context in *Whalen v. Roe,* 429 U.S. 589, 603 (1977)(affirming that under *Doe* it would be impermissible if access to controlled medications were "conditioned on the consent of any state official or third party" beyond the chosen licensed provider). Courts continue to affirm this holding. *See, e.g., Matter of Hofbauer,* 47 N.Y.2d 648, 655–56, (1979)(citing *Doe* in denying a neglect proceeding against parents who chose to forego chemotherapy and holding that a parent must be able to follow any course of

treatment "which is recommended by their physician and which has not been totally rejected by all responsible medical authority.")

A recent Eleventh Circuit case held that it is unconstitutional for a state to even suggest it might remove discretion from the treating physician in determining the need for a medical exemption even in the face of compelling state interests in protecting the public from the *Covid-19* public health emergency. *Robinson v. Attorney General* 957 F.3d 1171 (11th Cir. 2020)(upholding a TRO staying emergency regulations restricting elective medical procedures due to *Covid-19* where the law was ambiguous about who had final authority about what constituted a medical exemption). In *Robinson,* defendants argued that it was unlikely that the state would ever choose to overrule a treating physician's medical determination of necessity. *Id.* at 1180. Nonetheless, that mere possibility led the court to uphold injunctive relief.

    c. **The challenged policies and procedures are not narrowly tailored to uphold a compelling state interest sufficient to outweigh the plaintiffs' right to a medical exemption**

The risks to children here are the more unconscionable because defendants cannot justify the policies as necessary to achieving any compelling state interest.

Defendants admit explicitly and implicitly that the goal of their onerous and humiliating policies and procedures is to burden the medical exemption process and limit the number given. But limiting the number of children who can obtain a medical exemption at the potential expense of their health is not a constitutional purpose. Here, defendants pursue their goal by arbitrarily exposing deserving children to harm or expelling them. Defendants thereby defeat the state's compelling interest to protect life and instead cause irreparable harm.

To the extent that defendants assert the need to protect the community from contagious disease, the challenged policies, regulations, and procedures are not narrowly tailored to that end or even substantially related. There was no medical emergency at the time these policies were

15

enacted – rather, when they were proposed the measles "epidemic" had been declared over and there were no measles cases in New York. Medical exemptions played no part in the measles outbreak of 2019. The defendants assert that herd immunity needs to be at 85-94% for measles, which is the highest level required for any vaccine. The half of one percent of children seeking medical exemptions cannot threaten herd immunity.

Additionally, the challenged burdens on the medical exemption were applied across the board – even to vaccines that cannot create herd immunity. All of the vaccines that John Loe is missing, for example, are in the category that can only provide personal protection. Even if it were permissible to force a child to be vaccinated against medical advice and risk serious harm for the greater good (which the case law suggests is not the case), forcing John Loe to contravene the advice of his treating professionals cannot even impact anyone's health but his own.

### d.  The state cannot substitute its judgment for the judgment of fit parents

Neither can the defendants assert that their compelling interest in this matter is to protect the individual children. Parents have a fundamental right to direct the care and upbringing of their children, and medical decisions fall squarely within that liberty interest. *See Troxel v. Granville*, 530 U.S. 57, 58 (2000)("There is a presumption that fit parents act in their children's best interests" and thus "there is normally no reason for the State to inject itself into the private realm of the family to further question fit parents' ability to make the best decisions regarding their children."); *see also Parham v. J.R.*, 442 U.S. 584, 604 (1979)("Simply because the decision of the parent…involves risks does not automatically transfer the power to make that decision from the parents to some agency or officer of the state. The same characterizations can be made for a tonsillectomy, appendectomy, or other medical procedure…Parents can and must make those judgments.")

It is constitutionally impermissible for defendants to usurp these decisions because of a disagreement between the treating physician and the school district consultant, a person who has never examined the child and who is thus inherently less qualified to make critical health decisions. Such a regime is also against the child's best interest.  Advised by their physicians, parents are in the best position to determine a course of action where there are differing medical opinions to protect their medically fragile child's health.

These rights adhere not only to the parent but to the child as well. "The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000).

"While this right is not absolute inasmuch as the State, as *parens patriae*, may intervene to ensure that a child's health or welfare is not being seriously jeopardized by a parent's fault or omission, great deference must be accorded a parent's choice as to the mode of medical treatment to be undertaken and the physician selected to administer the same." *Matter of Hofbauer,* 47 N.Y.2d 648, 655–56 (1979)(a parent and child's constitutional rights demand parents be able to make medical treatment decisions in cases where there is a conflict of medical opinion, so long as the parent has sought the advice of licensed professionals and follows a plan "which is recommended by their physician and which has not been totally rejected by all responsible medical authority.")

### e.  Deference Does Not Apply to Analysis of Fundamental Rights Infringements

Defendants suggest that principles of deference require this Court to abstain from any scrutiny of the facts regarding plaintiffs' harms or burdens against the state's needs. But deference does not govern review of medical exemptions. In fact, quite the opposite is true.

In *Gonzales v Carhart,* the Supreme Court clarified that whether a medical exemption restriction might cause harm is a factual determination, and the Court should not merely defer to legislative or agency determinations:

> The Attorney General urges us to uphold the Act on the basis of the congressional findings alone… Although we review congressional factfinding under a deferential standard, we do not in the circumstances here place dispositive weight on Congress' findings. **The Court retains an independent constitutional duty to review factual findings where constitutional rights are at stake.** 550 U.S. 124, 165 (2007). (emphasis added)

In *Whole Woman's Health v. Hellerstedt,* the Supreme Court clarified when addressing medical need or burden that deference of the kind the defendants suggest is not appropriate.

> The Fifth Circuit's test also mistakenly equates the judicial review applicable to the regulation of a constitutionally protected personal liberty with the less strict review applicable to, *e.g.,* economic legislation. **And the court's requirement that legislatures resolve questions of medical uncertainty is inconsistent with this Court's case law, which has placed considerable weight upon evidence and argument presented in judicial proceedings when determining the constitutionality of laws regulating abortion procedures**." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2298 (2016), as revised (June 27, 2016) (emphasis added).

As discussed in detail above, *Jacobson* itself clarified that deference does not apply to review of medical exemptions. *Jacobson* 197 U.S. 11, 36-39 (1905).

### f. Exhaustion is not required for these claims

It is well settled law that exhaustion is not required in §1983 cases of this nature. *Patsy v. Bd. of Regents of State of Fla.,* 457 U.S. 496, 500 (1982)(Federal claims premised on § 1983 do not require exhaustion of state judicial or administrative remedies, in recognition of the paramount role Congress has assigned to the federal courts in protecting constitutional rights.)

Defendants misapply their arguments for exhaustion. They assert that this Court should bar the suit because some (though not all) members of the putative class have not availed themselves of Article 78 actions or appealed to the Commissioner of Education. Yet,

constitutional challenges are outside the scope of review in either Article 78 proceedings or appeals to the Commissioner. Reliance on cases establishing that state law claims need to be exhausted is improper– this case is about the constitutionality of the infringements themselves, regardless of what process those proceedings might have afforded or whether the schools complied with state laws in denying any of the individually named plaintiffs.

## II.   POINT TWO: PLAINTIFFS REQUIRE A PRELIMINARY INJUNCTION TO AVOID ONGOING IRREPARABLE HARM

Plaintiffs and defendants agree that a showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transportation Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir. 2009). A preliminary injunction will issue only if plaintiffs show that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 (2008). Plaintiffs make such a showing if, "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). A plaintiff need only show a "*threat* of irreparable harm, not that irreparable harm already occurred." *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010).

There is no question that plaintiffs are and will continue to suffer irreparable ongoing harm sufficient to meet this prong. Medically fragile children across the state are being subjected to dangerous, reckless burdens on their right to receive a medical exemption in accordance with their licensed physicians' recommendations. Some are unable to obtain needed medical exemptions because the new policies have become so burdensome that doctors are wary about subjecting themselves to the process or have been intimidated from writing medical exemptions that they acknowledge the child needs. Those families that have obtained medical exemptions

from their physicians are asked to seek corroboration after corroboration, forced to provide burdensome and invasive detail, and many exemptions are denied, or at risk of imminent denial. Hundreds of children were removed from school and denied an education and services last academic year. During the pendency of this motion, many more were removed from school and their passwords disabled so that they can no longer join their class in online education.

The plaintiffs here make several arguments why they are likely to suffer irreparable harm absent an injunction. First, as discussed above, the review processes and other burdens imposed on the medical exemption are themselves unconstitutional. It is well established that "[w]hen an alleged deprivation of a constitutional right is involved ... no further showing of injury is necessary" to obtain a preliminary injunction. *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) (internal quotation marks omitted).

Second, there is no serious question that depriving these children of the right to go to any school or receive needed services will irreparably harm them. In *Brown v. Board of Education,* the Supreme Court held that the right to an education is so fundamental to a child's well-being that "in these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education." 347 U.S. 483 (1954).

Federal courts in New York routinely afford a presumption of irreparable harm where a child is excluded from school, even on a temporary basis. *See, e.g., Lewis v. Sobol,* 710 F. Sup. 506,507 (S.D.N.Y. 1989)(presuming it was clear the plaintiff's daughter would suffer irreparable harm if barred from attending school); *see also Caviezel v. Great Neck Public Schools,* 701 F.Supp.2d, 414, 426 (E.D.N.Y. 2010), aff'd, 500 F. App'x 16 (2d Cir. 2012)(the court is satisfied that there would be irreparable harm to a child from entering school after the start of the school year).

Defendant Migliorino does not explain why John Loe or the other named plaintiffs and

similarly situated class members are somehow exempt from this presumption of harm when denied an education. Instead, defendants allege that the "delay" of several months between exclusion from school and filing of this suit should lead to a presumption that there is no irreparable harm. Delay in bringing a class action is not relevant to harm in this case.

Most importantly, delay is not relevant in cases challenging ongoing or prospective constitutional violations, such as exist here. *See, e.g., Hardy v. Fischer*, 701 F.Supp.2d 614, 619 (S.D.N.Y. 2010) ("[A]n ongoing constitutional violation more closely resembles irreparable injury than does a constitutional violation that was suffered in the past and which can be remedied only by money damages."); *see, also, Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 499 (S.D.N.Y. 2019), *appeal withdrawn*, No. 19-288, 2019 WL 3492425 (2d Cir. May 9, 2019)("Because the threatened, continuous violation of a constitutional right constitutes irreparable harm for purposes of a preliminary injunction motion, plaintiffs have carried their burden of showing that they likely will suffer irreparable harm.").

Medical exemptions are required to be submitted each year. Even as this motion has pended, dozens more New York children (or more) had medical exemptions denied by school district personnel who are not qualified or capable of making these judgments. Some of these children had their exemptions accepted last year but were suddenly denied this year. Most of the named plaintiffs who were denied last year have reapplied this year and are in various stages of review. By filing this suit during the summer, when school was not in session, plaintiffs sought proactive relief from having their medical exemption burdened unconstitutionally and likely overruled again this year.

Plaintiffs and potential plaintiffs in a suit not yet certified as a class may show irreparable harm by showing that they are "threatened with imminent violations of their constitutional rights in the absence of preliminary relief." *Ligon v. City of New York*, 925 F.Supp.2d 478, 539

21

(S.D.N.Y. 2013)(granting a preliminary injunction to plaintiffs and all similar situated persons against long-standing though likely unconstitutional NYPD "stop and frisk" practices).

Second, though the fact that plaintiffs seek to prevent ongoing constitutional violations is enough to rebut delay, the alleged delay is not "unexplained." Plaintiffs were removed at various times throughout the school year last year. Some of them were removed in the fall, some throughout the spring semester. Many of the declarants had not been removed at all when this motion was filed but some have since been removed. All of the plaintiffs whose children were removed from school have been fighting just to be able to stabilize their lives after the sudden and traumatic loss of school. Most of these parents work full time and many of these children require special services and attention. As these families struggled just to try to figure out what their options were, the *Covid-19* pandemic occurred. Relief in Court was paused. Schools were shut down for everyone from March through September and livelihoods were thrown into uncertainty and chaos.

This past year was, for many families, even those whose children weren't removed from school, mostly a matter of survival. Nonetheless, all of the named plaintiffs challenged and objected to what happened to them at the time and continued to fight the ongoing harms. Some of the named plaintiffs filed appeals to the Commissioner, but the Commissioner will not review constitutional issues, so this relief was not seen as worth the substantial cost to most plaintiffs. Plaintiffs tried to organize. They contacted the media. They reached out to members of the legislature, who wrote letters on their behalf. They searched for and obtained corroborating opinions from new doctors and tried to get their school districts to reconsider. And they tried to identify lawyers and rallied support to be able to afford a collective class action suit.

A lawsuit like this is out of reach for most individual families. It is enormously expensive, and it takes time to assemble enough financial resources, identify the appropriate attorneys and

for attorneys to clear enough space in their schedules to take it on responsibly. The fact that any individual plaintiff did not immediately have the ability to file an individual federal suit in the midst of a world-shattering pandemic cannot sustain an inference that they do not take their harm seriously. The Second Circuit has held that practical hurdles are sufficient to rebut any such inferences arising from delay. *Kuklachev v. Gelfman*, 361 F. App'x 161, 163 (2d Cir. 2009)(We hold that the District Court did not err in finding that plaintiffs' delay was excusable based, in part, on "the need to investigate the nature of the infringement and to explore what legal recourse was possible" and further because of "the difficulty of locating suitable attorneys in the United States and also by the absence of immediate threat of harm, given that there were no shows scheduled after January 2008.")

### III.   POINT THREE: THE BALANCE OF HARDSHIPS DECISIVELY TIPS IN PLAINTIFFS' FAVOR

In considering whether to preliminarily enjoin the Ordinance, the Court also "must balance the hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010).

As discussed above, plaintiffs are suffering irreparable ongoing harm, both from the ongoing Constitutional violations of their rights, and the serious resulting harm of being forced to either inject their child with a pharmaceutical product that their doctor certifies will put them at risk of serious harm, or allow their child to be expelled from school and lose their relationship to their peers, their sense of identity, their needed services, and their education.

Some of these families have already lost one or more child from proven death due to adverse reactions to these vaccines. Some of these families have already watched their children suffer serious and irreversible harm due to documented adverse reactions to these vaccines. Some

of these families have letters from three different physicians and specialists detailing that the vaccine puts the child at risk of serious harm. It is "cruel and inhuman to the last degree" to be forced to face such a Hobson's choice. Even those families who are not yet rejected face ongoing harm from being subjected to dangerous burdens on their right to receive care according to their physician's best medical judgment.

If the injunction is granted, the defendants lose nothing. Schools are not qualified to review or decide which medical exemptions should be granted and gain nothing from being put in the position to have to do so. Schools will be saved the substantial expense and time spent scrutinizing medical exemption records with outside consultants and attorneys and defending the continuous lawsuits that arise from their arbitrary denials.

There is no reasonable risk to the other students from the relief sought. Students will still need to provide a certification from a licensed physician to obtain a medical exemption. Less than half of a percent of the students in this state obtain and submit such exemption requests. This is far too low to impact herd immunity for any vaccine preventable disease. Moreover, many of these children are only missing vaccines that cannot contribute to herd immunity, such as the Tdap, or the meningococcal vaccine.

This year, all schools in New York are either entirely online, or have adopted rigorous protocols to protect against *Covid-19* which make it nearly impossible that anyone would be at risk from the injunction. Children have to take their temperature before entering the building, stay home if they or anyone in their families have any symptom of a virus, wear masks, and stay six feet apart. Classroom sizes are dramatically reduced. Children are outdoors a good part of the day. Expensive ventilation systems have been installed which are said to kill viruses and surfaces are sanitized regularly, sometimes hourly. In such an environment, it is not reasonable to suggest there is a real risk that any of the children protected by the preliminary injunction could catch,

leave aside pass on, any vaccine-preventable disease, particularly since all of their classmates will be vaccinated and are presumably protected.

## IV.    A PRELIMINARY INJUNCTION IS IN THE PUBLIC INTEREST

Finally, the issuance of a preliminary injunction serves the public interest. Enjoining an unconstitutional regulatory schemes and practices "serves the public interest ... because the Government does not have an interest in the unconstitutional enforcement of a law." *Amarin Pharma., Inc. v. FDA*, 119 F.Supp.3d 196, 237 (S.D.N.Y. 2015); *see also Ligon*, 925 F.Supp.2d at 541 (finding that the public had strong interest "in liberty and dignity under the Fourth Amendment"); *Deferio v. City of Syracuse*, 193 F. Supp. 3d 119, 131 (N.D.N.Y. 2016). Moreover, particularly now, when schools are already so short on needed resources to educate children, it is against the public interest for them to continue to waste money and time on these reviews.

## CONCLUSION

Wherefore, plaintiffs respectfully request that this Court deny the defendants' motion to dismiss.

Respectfully submitted,

s/ *Sujata S. Gibson*

Sujata S. Gibson, Esq., *Lead Counsel*
**The Gibson Law Firm, PLLC**
407 N. Cayuga Street, Suite 201
Ithaca, NY 14850
Tel: (607) 327-4125
 Email: sujata@gibsonfirm.law
Bar Roll No. 517834

Michael Sussman, Esq., *Lead Counsel*
**Sussman & Associates**
1 Railroad Ave, Suite 3, PO Box 1005
Goshen, NY 10924
Bar Roll No. 123324