UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------x
JANE DOE on behalf of herself and her minor child;
JANE BOE, Sr. on behalf of herself and her minor child;
JOHN COE, Sr. and JANE COE, Sr. on behalf of themselves
and their minor children; JOHN FOE, Sr. on behalf of himself
and his minor child; JANE GOE, Sr. on behalf of herself and
her minor child; JANE LOE on behalf of herself and her
medically fragile child; JANE JOE on behalf of herself and her
medically fragile child; CHILDRENS HEALTH DEFENSE,
and all others similarly situated,

                                            Plaintiffs,

          -against-

HOWARD ZUCKER, in his official capacity as Commissioner
of Health for the State of New York; ELIZABETH
RAUSCH-PHUNG, M.D., in her official capacity as Director of
the Bureau of Immunizations at the New York State Department
of Health; the NEW YORK STATE DEPARTMENT OF HEALTH;
THREE VILLAGE CENTRAL SCHOOL DISTRICT; CHERYL
PEDISICH, acting in her official capacity as Superintendent, Three
Village Central School District; CORINNE KEANE, acting in her
official capacity as Principal Paul J. Gelinas Jr. High School, Three
Village Central School District; LANSING CENTRAL SCHOOL
DISTRICT; CHRIS PETTOGRASSO, acting in her official capacity
as Superintendent, Lansing Central School District; CHRISTINE
REBERA, acting in her official capacity as Principal, Lansing Middle
School, Lansing Central School District; LORRI WHITEMAN, acting
in her official capacity as Principal, Lansing Elementary School,
Lansing Central School District; PENFIELD CENTRAL SCHOOL
DISTRICT; DR. THOMAS PUTNAM, acting in his official capacity
as Superintendent, Penfield Central School District; SOUTH
HUNTINGTON SCHOOL DISTRICT; DR. DAVID P. BENNARDO,
acting in his official capacity as Superintendent, South Huntington
School District; BR. DAVID MIGLIORINO, acting in his official
capacity as Principal, St. Anthony's High School, South Huntington
School District; ITHACA CITY SCHOOL DISTRICT; DR. LUVELLE
BROWN, acting in his official capacity as Superintendent, Ithaca City
School District; SUSAN ESCHBACH, acting in her official capacity
as Principal, Beverly J. Martin Elementary School, Ithaca City School
District; COXSACKIE-ATHENS SCHOOL
DISTRICT; RANDALL SQUIER, Superintendent, acting in his
official capacity as Superintendent, Coxsackie-Athens School District;

Docket No.
1:20-cv-840
(BKS/CFH)

**NOTICE
OF APPEAL**

1

FREYA MERCER, acting in her official capacity as Principal,
Coxsackie Athens High School, Coxsackie-Athens School District;
ALBANY CITY SCHOOL DISTRICT; KAWEEDA G. ADAMS,
acting in her official capacity as Superintendent, Albany City School
District; MICHAEL PAOLINO, acting in his official capacity as
Principal, William S. Hackett Middle School, Albany City School
District; and all others similarly situated,

                                Defendants.
-------------------------------------------------------------------------------x

     NOTICE IS HEREBY GIVEN that JANE DOE on behalf of herself and her minor child;

JANE BOE, Sr. on behalf of herself and her minor child; JOHN COE, Sr. and JANE COE, Sr. on

behalf of themselves and their minor children; JOHN FOE, Sr. on behalf of himself and his minor

child; JANE JOE on behalf of herself and her medically fragile child; JANE LOE on behalf of

herself and her medically fragile child; CHILDRENS HEALTH DEFENSE, and all others

similarly situated, the plaintiffs in the above-captioned matter, hereby appeal to the United States

Court of Appeals for the Second Circuit from the annexed Order of the District Court for the

Northern District of New York, entered on October 22, 2020, which denied plaintiffs' motion for

preliminary injunctive relief, and from each and every part thereof.

Dated: Goshen, New York
     November 13, 2020

          Respectfully submitted,

          SUSSMAN AND ASSOCIATES
          *Co-Counsel for Plaintiffs*

          By: _____
            Michael H. Sussman (103324)
            1 Railroad Avenue, Suite 3
            P.O. Box 1005
            Goshen, New York 10924
            (845) 294-3991 [Tel]
            (845) 294-1623 [Fax]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JANE DOE on behalf of herself and her minor child; JANE BOE, Sr.
on behalf of herself and her minor child; JOHN COE, Sr. and JANE
COE, Sr. on behalf of themselves and their minor children; JOHN
FOE, Sr. on behalf of himself and his minor child; JANE GOE, Sr. on
behalf of herself and her minor child; JANE LOE on behalf of herself
and her medically fragile child; JANE JOE on behalf of herself and her
medically fragile child; CHILDRENS HEALTH DEFENSE, and all
others similarly situated,

                                          Plaintiffs,

v.                                                              1:20-cv-840 (BKS/CFH)

HOWARD ZUCKER, in his official capacity as Commissioner of
Health for the State of New York; ELIZABETH RAUSCH-PHUNG,
M.D., in her official capacity as Director of the Bureau of
Immunizations at the New York State Department of Health; the NEW
YORK STATE DEPARTMENT OF HEALTH; THREE VILLAGE
CENTRAL SCHOOL DISTRICT; CHERYL PEDISICH, acting in her
official capacity as Superintendent, Three Village Central School
District; CORINNE KEANE, acting in her official capacity as Principal
Paul J. Gelinas Jr. High School, Three Village Central School District;
LANSING CENTRAL SCHOOL DISTRICT; CHRIS
PETTOGRASSO, acting in her official capacity as Superintendent,
Lansing Central School District; CHRISTINE REBERA, acting in her
official capacity as Principal, Lansing Middle School, Lansing Central
School District; LORRI WHITEMAN, acting in her official capacity as
Principal, Lansing Elementary School, Lansing Central School District;
PENFIELD CENTRAL SCHOOL DISTRICT; DR. THOMAS
PUTNAM, acting in his official capacity as Superintendent, Penfield
Central School District; SOUTH HUNTINGTON SCHOOL
DISTRICT; DR. DAVID P. BENNARDO, acting in his official
capacity as Superintendent, South Huntington School District; BR.
DAVID MIGLIORINO, acting in his official capacity as Principal, St.
Anthony's High School, South Huntington School District; ITHACA
CITY SCHOOL DISTRICT; DR. LUVELLE BROWN, acting in his
official capacity as Superintendent, Ithaca City School District;
SUSAN ESCHBACH, acting in her official capacity as Principal,
Beverly J. Martin Elementary School, Ithaca City School District;
SHENENDEHOWA CENTRAL SCHOOL DISTRICT; DR L.
OLIVER ROBINSON, acting in his official capacity as Superintendent,
Shenedehowa Central School District; SEAN GNAT, acting in his
official capacity as Principal, Koda Middle School, Shenendehowa

Central School District; ANDREW HILLS, acting in his official
capacity as Principal, Arongen Elementary School, Shenendehowa
Central School District; COXSACKIE-ATHENS SCHOOL
DISTRICT; RANDALL SQUIER, Superintendent, acting in his official
capacity as Superintendent, Coxsackie-Athens School District; FREYA
MERCER, acting in her official capacity as Principal, Coxsackie
Athens High School, Coxsackie-Athens School District; ALBANY
CITY SCHOOL DISTRICT; KAWEEDA G. ADAMS, acting in her
official capacity as Superintendent, Albany City School District;
MICHAEL PAOLINO, acting in his official capacity as Principal,
William S. Hackett Middle School, Albany City School District; and all
others similarly situated,

                                          Defendants.

**Appearances:**

*For Plaintiffs:*
Sujata S. Gibson
The Gibson Law Firm, PLLC
407 N. Cayuga Street, Suite 201
Ithaca, NY 14850

Michael Sussman
Sussman & Associates
1 Railroad Ave, Suite 3, P.O. Box 1005
Goshen, NY 10924

*For Defendants New York State Department of Health, Zucker, and Rausch-Phung:*
Letitia James
Attorney General of the State of New York
Michael G. McCartin
Assistant Attorney General
Andrew W. Koster
Assistant Attorney General
The Capitol
Albany, New York 12224

*For Defendants Albany City School District, Adams, Paolino; Three Village Central School
District, Pedisich, Keane; South Huntington Central School District, Bernnardo; and Ithaca City
School District, Brown and Eschbach:*
Gregg T. Johnson
Loraine C. Jelinek
Johnson & Laws, LLC
646 Plank Road, Suite 205
Clifton Park, NY 12065

Adam I. Kleinberg
Sokoloff Stern LLP
179 Westbury Ave.
Carle Place, NY 11514

*For Defendants Coxsackie-Athens School District, Squire, Mercer; Shenendehowa Central
School District, Robinson, Gnat, Hills; Penfield Central School District, Putnam; Lansing
Central School District, Pettograsso, Rebera, and Whiteman:*
James G. Ryan
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530

*For Defendant Br. David Anthony Migliorino:*
Joseph Kim
Elaine Nancy Chou
Biedermann Hoenig Semprevivo a Professional Corporation
One Grand Central Place
60 East 42nd Street, 36th Floor
New York, NY 10165

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On July 23, 2020, Plaintiffs, on behalf of their minor children, filed this proposed class

action under 42 U.S.C. § 1983 challenging the constitutionality of New York's allegedly

burdensome medical exemptions to mandatory school immunization requirements. (Dkt. No. 1).

Plaintiffs allege that Defendants, including the New York State Department of Health ("DOH"),

New York Commissioner of Health Howard Zucker, DOH Director of the Bureau of

Immunizations Elizabeth Rausch-Phung, M.D., eight school districts and their administrators,

and Principal of St. Anthony's High School Br. David Anthony Migliorino, have violated their

Fourteenth Amendment substantive due process rights, liberty interest in parenting and informed

consent, and right to free public education, as well as § 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 794(a). (*Id.*). On August 25, 2020, Plaintiffs filed a motion for a temporary restraining

3

order and preliminary injunction under Federal Rule of Civil Procedure 65, seeking an order restraining the implementation and enforcement of the applicable regulations.[1] (Dkt. No. 41). Defendants oppose Plaintiffs' motion. (Dkt. Nos. 61–66, 81–82). The Court held oral argument on October 15, 2020. Having carefully considered the parties' submissions and oral argument, the Court denies Plaintiffs' motion. The following constitutes the Court's findings of fact and conclusions of law in accordance with Rule 52(a)(2).

## II.    FINDINGS OF FACT[2]

### A.    New York School Vaccination Laws

New York Public Health Law § 2164 (the "school vaccination law") requires children aged two months to eighteen years to be immunized from certain diseases before they can attend "any public, private or parochial . . . kindergarten, elementary, intermediate or secondary school." N.Y. Pub. Health Law § 2164(1)(a). The school vaccination law requires children to be immunized against poliomyelitis, mumps, measles, diphtheria, rubella, varicella, hepatitis B, pertussis, tetanus, and where applicable, Haemophilus influenzae type b (Hib), meningococcal disease, and pneumococcal disease. N.Y. Pub. Health Law § 2164(7). A child may not attend school in excess of fourteen days without documentation showing that the child was immunized or in the process of complying with the immunization series. N.Y. Pub. Health Law § 2164(7); 10 N.Y.C.R.R. § 66-1.3(a), (b).

---

[1] Following a telephone conference on August 26, 2020, the Court issued an Order to Show Cause denying Plaintiffs' motion for a temporary restraining order but directing expedited briefing on their motion for a preliminary injunction. (Dkt. No. 46).

[2] The facts are taken from the affidavits and attached exhibits submitted in support of, and opposition to, this motion. *See J.S.R. ex rel. J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 738 (D. Conn. 2018) ("In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence."); *Fisher v. Goord*, 981 F. Supp. 140, 173 n.38 (W.D.N.Y. 1997) (noting that a "court has discretion on a preliminary injunction motion to consider affidavits as well as live testimony, given the necessity of a prompt decision"). The "findings are provisional in the sense that they are not binding on a motion for summary judgment or at trial and are subject to change as the litigation progresses." *trueEX, LLC v. MarkitSERV Ltd.*, 266 F. Supp. 3d 705, 721 (S.D.N.Y. 2017); *accord Fair Hous. in Huntington Comm. Inc. v. Town of Huntington*, 316 F.3d 357, 364 (2d Cir. 2003).

The school vaccination law initially contained two exemptions to the vaccination requirements: a medical exemption requiring a physician's certification that the physician had determined that the vaccination may be detrimental to the child's health, N.Y. Pub. Health Law § 2164(8), and a non-medical exemption that required a statement by the parent or guardian indicating that they objected to vaccination on religious grounds, N.Y. Pub. Health Law § 2164(9), *repealed by* L.2019, c. 35, § 1, eff. June 13, 2019. In 2019, the New York Legislature repealed the religious exemption after finding that "[o]utbreaks in New York have been the primary driver" of the United States' "worst outbreak of measles since 1994," with 810 of the 880 cases confirmed nationwide in 2019. (Dkt. No. 28-3, at 6 (Sponsor Memo, S2994A)). The Legislature further found that:

> According to the Centers for Disease Control, sustaining a high vaccination rate among school children is vital to the prevention of disease outbreaks, including the reestablishment of diseases that have been largely eradicated in the United States, such as measles. According to State data from 2013-2014, there are at least 285 schools in New York with an immunization rate below 85%, including 170 schools below 70%, far below the CDC's goal of at least a 95% vaccination rate to maintain herd immunity. This bill would repeal exemptions currently found in the law for children whose parents have non-medical objections to immunizations.

2019 New York Assembly Bill No. 2371, New York Two Hundred Forty-Second Legislative Session (May 22, 2019).

On August 16, 2019, following the repeal of the religious exemption, the New York Commissioner of Health issued "emergency regulations," amending the regulations governing the school vaccination law "to conform to recent amendments to Section[] 2164" and to "make the regulations consistent with national immunization recommendations and guidelines." (Dkt. No. 61, ¶ 6; Dkt. No. 61-1, at 1 (Summary of Express Terms of Emergency Regulations Aug. 16,

2019 ("Summary"))).[3] The Summary noted that when California removed non-medical

exemptions to school immunization requirements in 2015 "without taking steps to strengthen the

rules governing medical exemptions," the use of medical exemptions to school immunization

requirements more than tripled. (Dkt. No. 61-1, at 16). The Summary further noted that "[b]y

providing clear, evidence-based guidance to physicians, th[e] emergency regulation will help

prevent medical exemptions being issued for non-medical reasons." (*Id.* at 16–17).

These emergency regulations were renewed, effective November 14, 2019, and after a

public comment period, permanently adopted as of December 31, 2019. (Dkt. No. 61, ¶ 7).

Specifically, the Commissioner added a new subdivision defining "may be detrimental to the

child's health," as used in § 2164 of the school vaccination law, to mean "that a physician has

determined that a medical contraindication or precaution to a specific immunization consistent

with ACIP [the CDC Advisory Committee on Immunization Practices] guidance or other

nationally recognized evidence-based standard of care." 10 N.Y.C.R.R. § 66-1.1(l); (Dkt. No.

61-1, at 2). The amendments also required "the use of exemption forms approved by the New

York State Department of Health" and no longer allowed "a written statement from a physician."

(Dkt. No. 61-1, at 2); 10 N.Y.C.R.R. § 66-1.3(c). Subdivision (c) of 10 N.Y.C.R.R. § 66-1.3, was

otherwise unchanged, however, and continued (i) to require that the "physician certifying that

immunization may be detrimental to the child's health, contain[] sufficient information to

identify a medical contraindication to a specific immunization and specify the length of time the

immunization is medically contraindicated," (ii) to require that the medical exemption "be

---

[3] The school vaccination law authorizes the Commissioner of Health to "adopt and amend rules and regulations to effectuate the provisions and purposes of [§ 2164]." N.Y. Pub. Health Law § 2164(10). The Commissioner is also required, under the Public Health Law, to "establish and operate such adult and child immunization programs as are necessary to prevent or minimize the spread of disease and to protect the public health," and is authorized to "promulgate such regulations" governing vaccinations. N.Y. Pub. Health Law § 206(1)(l).

reissued annually," and (iii) to provide that "[t]he principal or person in charge of the school may require additional information supporting the exemption." *Compare* 10 N.Y.C.R.R. § 66-1.3(c), *with* 2014 N.Y. Reg. Text 336024 (NS) (Notices of Adoption 10 N.Y.C.R.R. § 66-1.3).

### B.    Plaintiffs

Plaintiffs include at least seven families[4] with children who applied to the Defendant school districts for "medical exemptions" to vaccinations for the 2019–2020 school year. (Dkt. No. 41-12, ¶ 8; Dkt. No. 41-13, ¶ 9; Dkt. No. 41-14, ¶ 9; Dkt. No. 41-15, ¶ 8; Dkt. No. 62-1, at 34; Dkt. No. 41-17, ¶ 10; Dkt. No. 1, ¶ 187). Plaintiffs sought exemptions "from one or more mandatory immunization requirement for school attendance in New York State based on the advice of their treating physicians that such immunization poses unacceptable risks to their children's health." (Dkt. No. 11, ¶ 41). The medical exemptions were denied and the Plaintiff children have been excluded from school since the 2019–2020 school year—in some cases, since September 2019. (Dkt. No. 41-17, ¶ 13 (Loe last day of school in September 2019); Dkt. No. 41-12, ¶ 23 (Doe last day of school in October 2019); Dkt. No. 41-13, ¶ 8 (Boe last day of school in December 2019); Dkt. No. 57, ¶ 8 (Coe last day of school in January 2020); Dkt. No. 41-15, ¶ 12 (Foe last day of school in September 2019); Dkt. No. 58, at 3 (Goe graduated in 2020); Dkt. No. 41-16, ¶ 10 (Joe last day of school in November 2019)).

### III.    STANDARD OF REVIEW

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions. A party seeking a preliminary injunction must establish that: (1) it is likely to suffer irreparable harm in the absence of preliminary relief; (2) either (a) it is likely to succeed on the merits, or (b) there

---

[4] The Complaint names seven families in the caption, but discusses an eighth family, the Koe family, in the body of the Complaint. (Dkt. No. 1, at 37).

are sufficiently serious questions going to the merits of its claims to make them fair ground for litigation; (3) the balance of hardships tips decidedly in its favor; and (4) a preliminary injunction is in the public interest. *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011); *accord N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018). However, "[w]hen, as here, the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood of success standard." *Donohue v. Mangano*, 886 F. Supp. 2d 126, 149 (N.D.N.Y. 2012) (quoting *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010)); *see also Ass'n of Jewish Camp Operators v. Cuomo*, No. 20-cv-687, 2020 WL 3766496, at *6, 2020 U.S. Dist. LEXIS 117765, at *12 (N.D.N.Y. July 6, 2020).[5]

## IV.    ANALYSIS

### A.    Irreparable Harm

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "Irreparable harm is 'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'" *New York ex rel. Schneiderman v. Actavis PLC*,

---

[5] The parties dispute whether the injunction sought is a prohibitory injunction, which preserves the status quo, or a mandatory injunction, which changes the status quo and is subject to a heightened standard. *See N. Am. Soccer League, LLC*, 883 F.3d at 37. The "status quo . . . is, 'the last actual, peaceable uncontested status which preceded the pending controversy.'" *Id.* (quoting *Mastrio v. Sebelius*, 768 F.3d 116, 120 (2d Cir. 2014)). Although Plaintiffs assert that they are seeking to preserve the status quo—"adherence to the plain language of N.Y. Public Health Law 2164(8), without the additional burdens the state defendants' new regulations [contained in NYCRR § 66-1] imposed" in 2019, some of the regulatory provisions Plaintiffs seek to enjoin have been in effect since 2014 and Plaintiffs also seek an order directing the Defendants to provide notice that similarly situated children may attend school. (Dkt. No. 41-1, at 15, 31). In any event, since Plaintiffs fail to meet the likelihood of success standard, the Court need not decide whether a heightened standard applies.

787 F.3d 638, 660 (2d Cir. 2015) (quoting *Forest City Daly Hous., Inc. v. Town of North Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999)). "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010) (internal footnote omitted).

"[C]ourts considering this issue routinely assume that a child prevented from attending school would suffer irreparable harm" and, accordingly, find that the child's application "turns on [the] likelihood of success on the merits." *Check ex rel. MC v. New York City Dep't of Educ.*, No. 13-cv-791, 2013 WL 2181045, at *9, 2013 U.S. Dist. LEXIS 71223, at *16 (E.D.N.Y. Mar. 22, 2013) (citing *Lewis v. Sobol*, 710 F. Supp. 506, 507 (S.D.N.Y. 1989) (noting that "it was clear that [plaintiff's daughter] would suffer irreparable harm if barred from attending school"), *report & recommendation adopted*, 2013 WL 2181045, 2013 U.S. Dist. LEXIS 71124 (E.D.N.Y. May 20, 2013); *Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 426 (E.D.N.Y. 2010) ("[The Court] is satisfied that there would be irreparable harm to this child entering school after [the start of the school year]."), *aff'd* 500 F. App'x 16 (2d Cir. 2012). Thus, the exclusion of Plaintiffs' minor children from school supports a strong showing of irreparable harm.[6]

---

[6] Defendants argue that even assuming Plaintiffs can establish irreparable harm, their delay in seeking an injunction undermines any assertion of irreparable harm. (Dkt. No. 61-24). "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). The Second Circuit has explained that a party's "failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Id.* at 277 (quoting *Le Sportsac, Inc. v. Dockside Rsch., Inc.*, 478 F. Supp. 602, 609 (S.D.N.Y. 1979)). Here, the regulation providing the impetus for this action—10 N.Y.C.R.R. 66-1-1.1(l)—has been in effect since August 2019, (Dkt. No. 61-1), and the minor Plaintiffs had been excluded from school for at least six months, and many for longer, before filing this action. (*See, e.g.*, Dkt. No. 1 (Complaint filed July 23, 2020); Dkt. No. 41-13, ¶ 8 (Boe excluded since December 2019); Dkt. No. 41-12, ¶ 23 (Doe excluded since October 2019)). Plaintiffs argue that the delay in this case, which involves multiple plaintiffs and a proposed class action complaint, should not undercut a finding of irreparable injury. Because Plaintiffs fail to establish likelihood of success, the Court need not consider whether a delay in seeking relief would undermine Plaintiffs' irreparable harm contention.

**B.    Likelihood of Success**

Plaintiffs argue that the new regulations are "overbroad" and "unduly burden fundamental rights and the ability of medically fragile children to obtain a medical exemption."[7] (Dkt. No. 41-1, at 18). In their briefing on this motion Plaintiffs have not advanced any "as applied" arguments regarding the circumstances of the Defendant school district's respective denials of their requests for a medical exemption. Plaintiffs advance a facial challenge to the regulations. (Dkt. No. 41-1, at 31). They seek a stay of the "new regulations," codified in 10 N.Y.C.R.R. § 66-1, an injunction prohibiting Defendants from "excluding children from school due to a lack of immunization if that child has presented a certification from a licensed physician advising against such immunization," and an order directing Defendants "to provide notice to schools, districts, and families that Plaintiffs and similarly situated children may attend school." (Dkt. No. 41-1, at 31).

"[T]o succeed on a facial challenge, the challenger must establish that no set of circumstances exists under which the [regulation] would be valid." *Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts, Appellate Div. of the Supreme Court of New York*, 852 F.3d 178, 184 (2d Cir. 2017) (quoting *N.Y.S. Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 265 (2d Cir. 2015)). "As a result, a facial challenge to a legislative enactment is the most difficult challenge to mount successfully." *Id.* (quoting *N.Y.S. Rifle & Pistol Ass'n*, 849 F.3d at 265). Here, Plaintiffs claim that the regulations violate their Fourteenth

---

[7] At oral argument, Plaintiffs argued that the medical exemption regulations posed an "unconstitutional condition" on the benefit of a public or private education. "[T]he unconstitutional conditions doctrine . . . vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). As Plaintiffs raised this argument at oral argument and have not provided any authority for considering this doctrine in the context of this case, the Court does not consider it.

10

Amendment substantive due process rights, liberty interest in parenting, liberty interest in informed consent, and right to a free public education.[8] (Dkt. No. 1; Dkt. No. 41-1).

Plaintiffs are unlikely to succeed on their claim that the challenged regulations violate the Fourteenth Amendment. In *Jacobson v. Massachusetts*, the Supreme Court explained that "the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint." 197 U.S. 11, 26 (1905). "There are manifold restraints to which every person is necessarily subject for the common good." *Id.* "The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community." *Id.* (quoting *Crowley v. Christensen*, 137 U.S. 86, 89 (1890)).

It is well-settled, as Plaintiffs acknowledge, (Dkt. No. 41-1, at 18), that New York's mandatory school vaccination law does not violate substantive due process. *See Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) (rejecting the plaintiffs' argument that "New York's mandatory vaccination requirement" for school children violates substantive due process, explaining that "[t]his argument is foreclosed by the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts*"). In this case, Plaintiffs do not challenge the school vaccination law itself. Plaintiffs challenge the regulations defining "may be detrimental to a

---

[8] To be clear about the grounds on which Plaintiffs seek injunctive relief, the Court notes the following: first, although Plaintiffs' Complaint alleges a violation of the right to free public education, they also challenge the application of the regulations to private schools, (Dkt. No. 1, at 39–44, 69–70). *See* N.Y. Pub. Health Law § 2164(1)(a) (requiring enumerated vaccinations before a child can attend "any public, private or parochial . . . kindergarten, elementary, intermediate or secondary school").

Second, Plaintiffs' motion for preliminary injunctive relief is based upon their constitutional challenges, not the Rehabilitation Act claims alleged in the Complaint.

Third, while Plaintiffs argue in terms of "informed consent" in the Complaint, (Dkt. No. 1, at 69), in their motion papers they articulate this as the parental right "to make critical health decisions" (Dkt. No. 89, at 22), and to "exercise the right of informed consent on behalf of their minor children." (Dkt. No. 41-1, at 20).

child's health" and giving school districts the authority to reject, or require additional

documentation supporting, a doctor's medical exemption statement ("the medical exemption

regulations") as violative of their Fourteenth Amendment rights. (Dkt. No. 41-1, at 16).

It is equally well-settled, however, that a state may establish regulations implementing

mandatory vaccine laws and vesting local officials with enforcement authority. *Jacobson*, 197

U.S. at 25 (observing that "[i]t is equally true that the state may invest local bodies called into

existence for purposes of local administration with authority in some appropriate way to

safeguard the public health and the public safety"); *see also Zucht v. King*, 260 U.S. 174, 176

(1922) (explaining that *Jacobson* and other cases, have "settled that a state may, consistently

with the federal Constitution, delegate to a municipality authority to determine under what

conditions health regulations shall become operative" and that "the municipality may vest in its

officials broad discretion in matters affecting the application and enforcement of a health law"

(citing *Laurel Hill Cemetery v. San Francisco*, 216 U.S. 358 (1910); *Lieberman v. Van de Carr*,

199 U.S. 552 (1902)).

In *Jacobson*, the Supreme Court instructed that a court must not invalidate such a law or

regulation unless it lacks a "real or substantial relation [to public health]" or is "beyond all

question, a plain, palpable invasion of rights[.]" 197 U.S. at 31. The Supreme Court further

observed that there may be incidences where "the police power of a state, whether exercised

directly by the legislature, or by a local body acting under its authority, may be exerted in such

circumstances, or by regulations so arbitrary and oppressive in particular cases, as to justify the

interference of the courts to prevent wrong and oppression." *Id.* at 38. The Court noted that the

judiciary could interfere, for example, in an "extreme case" of an individual who was not "a fit

subject of vaccination" or for whom "vaccination by reason of his then condition, would

seriously impair him health, or probably cause his death," "to protect the health and life of the
individual concerned." *Id.* at 38–39.

The parties dispute how *Jacobson* applies here. Plaintiffs argue that strict scrutiny is
warranted because the medical exemption regulations burden their fundamental rights, including
their right to substantive due process, their liberty interest in parenting, their right to refuse
unwanted medical procedures, and their right to a public education. (Dkt. No. 41-1, at 16).[9]
Defendants respond that "the correct test to apply is undeniably" the "test of *Jacobson* and
*Zucht,*" which Defendants characterize as a rational basis test. (Dkt. No. 61-24, at 14). The Court
notes that the *Jacobson* framework has been "nearly uniformly relied on" to analyze
constitutional challenges to "emergency public health measures put in place to curb the spread of
coronavirus." *Page v. Cuomo*, No. 20-cv-732, 2020 WL 4589329, at *8, 2020 U.S. Dist. LEXIS
183769, at *19 (N.D.N.Y. Aug. 11, 2020), and that Plaintiffs have not cited any support for the
application of strict scrutiny to school immunization regulations. *See Phillips*, 775 F.3d at 542
n.5 (noting that "no court appears ever to have held" that "*Jacobson* requires that strict scrutiny
be applied to immunization mandates").

In any event, whether the Court applies the *Jacobson* framework or the traditional
constitutional analysis for state action alleged to burden constitutional rights, Plaintiffs have not
shown a likelihood of success. State action that infringes upon a fundamental right is ordinarily
analyzed under the test of strict scrutiny. *See, e.g., Leebaert v. Harrington*, 332 F.3d 134, 140
(2d Cir. 2003) (observing that "[w]here the right infringed is fundamental, strict scrutiny is
applied to the challenged governmental regulation" ). Under that test, the challenged action

---

[9] Plaintiffs have also argued that the regulations burden their fundamental constitutional right to a medical exemption,
but have not cited any support for such a right. *See infra* note 11.

"must be narrowly tailored to promote a compelling Government interest," and "must use the least restrictive means to achieve its ends." *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 246 (2d Cir. 2014) (citation omitted). Under *Jacobson*, the Court considers whether the regulations lack a "real or substantial relation" to the public health and public safety, whether the regulations are "beyond all question, a plain palpable invasion of rights secured by fundamental law" and whether the regulations are so arbitrary and oppressive as to warrant judicial interference. 197 U.S. at 31–39.

The right and liberty interest in parenting and the right to refuse unwanted medical procedures are fundamental rights. *Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."); *Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990) (finding a "constitutionally protected liberty interest in refusing unwanted medical treatment"). Plaintiffs, however, are unlikely to succeed in showing that the medical exemption regulations directly infringe on either of these fundamental rights, as they do not force parents to consent to vaccination of their children. Rather, the regulations condition children's right to attend school on vaccination. Thus, the right that is being burdened is the right to attend school at a public or private institution instead of being homeschooled. And, the Second Circuit has made clear, "[t]he right to public education is not fundamental." *Bryant v. N.Y.S. Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012).[10]

Thus, education regulations that have an incidental effect of burdening parental rights or right to refuse medical care, have been upheld following rational basis review. *See Immediato*,

---

[10] For this reason, Plaintiffs' claim that the regulations violate their Fourteenth Amendment right to a free public education, (Dkt. No. 1, at 69–70), is unlikely to succeed. *See Phillips*, 775 F.3d at 542 n. 5 (noting that "[b]ecause 'there is no substantive due process right to a public education' plaintiffs' substantive due process claim fails even under" a strict scrutiny test (citing *Bryant*, 692 F.3d at 217)) (citation omitted).

73 F.3d at 462 ("[W]hile parents have definite rights over their children's education, 'they have

no constitutional right to provide their children with . . . education unfettered by *reasonable*

government regulation.*" (emphasis in original) (quoting *Runyon v. McCrary*, 427 U.S. 160, 178

(1976))); *see, e.g., Phillips*, 775 F.3d at 543 (applying rational basis review to the plaintiffs'

argument that exclusion from school based on lack of vaccination burdened fundamental right of

free exercise of religion and explaining that "a law that is neutral and of general applicability

need not be justified by a compelling governmental interest even if the law has the incidental

effect of burdening a particular religious practice" (quoting *Church of the Lukumi Babalu Aye,

Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993)). Accordingly, even if the minor Plaintiffs were

unable to receive an education at a public or private institution because they cannot receive

vaccinations, the school vaccination law and its implementing regulations "would still comport

with due process if [they were] reasonably related to a legitimate government objective." *Bryant*,

692 F.3d at 218.[11] Thus, to succeed, Plaintiffs must show that the medical exemption regulations

lack a "real or substantial relation" to the public health and public safety or are arbitrary and

oppressive. *Jacobson*, 197 U.S. at 38.

---

[11] Citing, inter alia, *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 895 (1992), and
*Stenberg v. Carhart*, 530 U.S. 914, 937 (2000), Plaintiffs argue that "[m]edical exemption cases in the abortion context
are illustrative of how courts should scrutinize medical exemptions even more strictly than other important
fundamental rights" and that under *Casey* and *Stenberg*, the regulation's narrow definition of what is "detrimental" to
a child's health and reliance on ACIP guidance, 10 N.Y.C.R.R. § 66-1.1(l), instead of the "clinical judgment" of the
child's treating physician, is unconstitutional. (Dkt. No. 89, at 15–16 (citing *Stenberg*, 530 U.S. at 937 ("Doctors often
differ in their estimation of comparative health risks and appropriate treatment. And *Casey's* words 'appropriate
medical judgment' must embody the judicial need to tolerate responsible differences of medical opinion.")). Plaintiffs,
however, fail to cite any caselaw applying the standards utilized in *Casey* and *Stenberg*, inter alia, concerning the right
recognized in *Roe v. Wade*, 410 U.S. 113 (1973), to cases where, as here, the right being burdened is not a fundamental
right. Further, unlike the medical exemption cases involving abortion, where the life or health of the mother is at stake,
if the medical exemption at issue here is denied the parent may forgo vaccination and elect to homeschool their child.

Plaintiffs argue this medical exemption caselaw has been applied outside of the abortion context, citing to *Whalen v.
Roe*, 429 U.S. 589 (1977). Specifically, Plaintiffs cite to the Supreme Court's observation that the record-keeping law
at issue in *Whalen* did not condition a patient's access to drugs "on the consent of any state official or other third
party." 429 U.S. at 603. This passage does not support the Plaintiffs' claim here, which is founded on an inability to
pursue an education, not state interference in medical care.

Plaintiffs argue that the new definition of "detrimental to the child's health" arbitrarily limits medical exemptions to children with medical contraindications or precautions that "fit[] within the narrow confines" of ACIP guidance, and removes discretion from treating physicians to determine whether or not their patient requires a medical exemption. (Dkt. No. 41-1, at 10 (citing 10 N.Y.C.R.R. § 66-1.1(l))). The regulations, however, are broader than Plaintiffs' characterization; they allow exemptions for "medical contraindication or precaution to a specific vaccination *consistent with* ACIP guidance *or other nationally recognized evidence-based standard of care.*" 10 N.Y.C.R.R. § 66-1.1(l ) (emphasis added). In an affidavit, Elizabeth Rausch-Phung, MD, MPH, the Director of the Bureau of Immunization for the New York State Department of Health, explains that the definition was added to "conform the regulations with current guidance from the U.S. Centers for Disease Control," which "maintains immunization schedules and guidelines for when immunization may be detrimental to a child's health due to a contraindication or a precaution to a specific immunization—a nationally recognized evidence-based standard of care." (Dkt. No. 61, ¶ 12; Dkt. No. 61-4 (CDC contraindications and precautions)). According to Dr. Rausch-Phung, "[t]he ACIP includes medical and public health experts, including vaccine experts, scientists, doctors and public health professionals, who meet 3 times every year to discuss vaccine recommendations." (Dkt. No. 61, ¶ 12). Further, during the public comment period for the regulations, the "NYS American Academy of Pediatrics, the NYS Academy of Family Physicians . . . the American Nurses' Association, [and] the Medical Society of the State of New York," among others, "expressed support of the regulations." (Dkt. No. 28-5, at 31). Thus, the Court concludes that Plaintiffs are unlikely to succeed in showing that the regulation's definition of "detrimental to the child's health" and reference to ACIP guidance or "other nationally recognized evidence-based standard of care" as appropriate resources for a

determination of whether a medical exemption is warranted, lacks a "real or substantial relation" to the public health and public safety or is arbitrary and oppressive.

Next, Plaintiffs argue that the regulations improperly give school principals the authority to overrule the judgment of treating physicians and do not require the principals to consult medical professionals. (Dkt. No. 41-1, at 11 (citing 10 N.Y.C.R.R. § 66-1.3(c) ("The principal or person in charge of the school may require additional information supporting the exemption."))).[12] Dr. Rausch-Phung acknowledged that while a principal or person in charge of the school has the responsibility for making the determination at the outset, "schools have the option of requesting that the Bureau of Immunization Medical Director consult on these requests." (Dkt. No. 61, ¶ 18). The State's Medical Exemption Review Procedures advise that "[i]n making a determination on a medical exemption request, the school should seek the appropriate medical consultation (e.g., the school's medical director)." (Dkt. No. 54-13, at 2). As states may vest officials with broad discretion in matters of application of health laws, Plaintiffs are unlikely to succeed in showing that it is irrational or arbitrary to assign review, at the first level, to the principal of the school the child seeks to attend. *See Zucht*, 260 U.S. at 176 (explaining that "the municipality may vest in its officials broad discretion in matters affecting the application and enforcement of a health law" (citing *Lieberman*, 199 U.S. 552)).

Plaintiffs further assert that the required medical exemption forms are burdensome. (Dkt. No. 41-1, at 12 (citing 10 N.Y.C.R.R. § 66-1.3(c) (requiring submission of "[a] signed, completed medical exemption form approved by the NYSDOH or NYC Department of Education from a physician licensed to practice medicine in New York State certifying that

---

[12] This provision has been in effect since 2014. *Compare* 10 N.Y.C.R.R. § 66-1.3(c), *with* 2014 N.Y. Reg. Text 336024 (NS) (Notices of Adoption 10 N.Y.C.R.R. § 66-1.3).

immunization may be detrimental to the child's health, containing sufficient information to identify a medical contraindication to a specific immunization and specifying the length of time the immunization is medically contraindicated")). The form Plaintiffs refer to, however, is a "simple, one-page form," that requires "the patient's name, date of birth, address, school, . . . a description of the patient's contraindications/precautions to a specific vaccination, . . . the date the medical exemption ends," and a physician's signature, medical license number, address, and telephone number." (Dkt. No. 61, ¶ 9; *see, e.g.*, Dkt. No. 63-7, at 7). The information requested in the form clearly relates to the grounds on which a medical exemption may be granted, and is clearly intended to assist a school district determining whether a student should be granted such an exemption. Thus, Plaintiffs are unlikely to be able to show that the required form lacks a rational basis or is arbitrary.

Finally, Plaintiffs argue that the requirement that the medical exemption be "reissued" annually is also burdensome, (Dkt. No. 41-1, at 13 (citing 10 N.Y.C.R.R. § 66-1.3 (c))). Dr. Rausch-Phung explains that the regulatory amendments "did not change the pre-existing requirement that the medical exemption must be reissued annually." (Dkt. No. 61, ¶ 14). Indeed, this provision has been in effect since 2014. *Compare* 10 N.Y.C.R.R. § 66-1.3(c), *with* 2014 N.Y. Reg. Text 336024 (NS) (Notices of Adoption 10 N.Y.C.R.R. § 66-1.3). Dr. Rausch-Phung further explains that permanent exemptions were never "an option" because, "as indicated by the CDC, 'the majority of contraindications are temporary,'" and "may change over a child's lifetime" and "vaccines can often be administered when the contraindication no longer exists." (Dkt. No. 61, ¶ 14). Based on this explanation, Plaintiffs are unlikely to succeed in showing that the annual medical-exemption requirement is irrational or arbitrary.

18

Thus, the Court concludes that the public health concerns in maintaining high immunization rates for vaccine-preventable diseases and in avoiding outbreaks of communicable diseases provide ample basis for the newly enacted regulations.[13] And the regulations are not "beyond all question a plain, palpable invasion of rights secured by the fundamental law," or, on their face, arbitrary and oppressive. *Jacobson*, 197 U.S. at 31. The Court does not here consider whether Plaintiffs may be able to show that the regulations are "so arbitrary and oppressive" in a particular case, so as to justify judicial interference, *Jacobson*, 197 U.S. at 38; it concludes only that Plaintiffs failed to establish a likelihood of success on their facial challenge to the regulations.[14]

## C.    Balance of the Hardships

"[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) (alteration in original) (quoting *Tradescape.com v. Shivaram*, 77 F. Supp. 2d 408, 411 (S.D.N.Y. 1999)). Even assuming that Plaintiffs, being unable to send their children to school, have shown that the

---

[13] To the extent Plaintiffs take issue with the specific vaccines required for school admission, (*see, e.g.*, Dkt. No. 41-1 (arguing that "tetanus is not a contagious disease, meaning that vaccines offer only personal protection"), "that is a determination for the legislature, not the individual objectors." *Phillips*, 775 F.3d at 542.

[14] Plaintiffs request an evidentiary hearing "to clarify the underlying facts of this case," (Dkt. No. 68, at 7), including to resolve particular factual disputes with respect to each named Plaintiff's case, and to establish facts that show that, in practice, the defendants apply the regulations more narrowly than they are written. (*Id.* at 8). However, Plaintiffs seek to enjoin the regulations in toto. (Dkt. No. 41-1, at 7). Neither their briefing nor their requested relief contemplates any "as-applied" challenge to the regulations. Thus, as discussed *supra*, the Court's review is limited to the constitutionality of the law and regulations, as written. As Plaintiffs have "not shown that an evidentiary hearing would resolve any material factual issues," *Amaker v. Fischer*, 453 F. App'x 59, 64 (2d Cir. 2011), the Court, in its discretion, concludes that it may "dispose of the motion on the papers before it." *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.*, 107 F.3d 979, 984 (2d Cir. 1997) (quoting *Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2d Cir. 1989)); *see Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998) ("An evidentiary hearing is not required when the relevant facts either are not in dispute or have been clearly demonstrated at prior stages of the case, or when the disputed facts are amenable to complete resolution on a paper record.") (internal citations omitted).

balance of the hardships tips in Plaintiffs' favor, without a showing of a likelihood of success on the merits, this factor, alone, is insufficient to warrant injunctive relief.[15]

**V.      CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for a preliminary injunction (Dkt. No. 41) is **DENIED.**

**IT IS SO ORDERED.**

Dated: October 22, 2020
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[15] Since a preliminary injunction shall not issue in this case, the Court need not consider whether the issuance of an injunction would harm the public interest. *U.S. S.E.C. v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012) ("[W]hen a court orders injunctive relief, it should ensure that injunction does not cause harm to the public interest.").