**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

JANE DOE, et al.

        Plaintiffs,

           vs.

HOWARD ZUCKER, et al.

        Defendants.

Civil Action No.: 1:20 – CV – 0840 (BKS/CFH)

**DECLARATION OF**


**PLAINTIFFS MOTION FOR INJUNCTION PENDING APPEAL, OR, ALTERNATIVELY, A TEMPORARY INJUNCTION PENDING ADJUDICATION OF AN EMERGENCY MOTION TO THE COURT OF APPEALS FOR AN INJUNCTION PENDING APPEAL**

Sujata S. Gibson, Esq., *Lead Counsel*
**The Gibson Law Firm, PLLC**
407 N. Cayuga Street, Suite 201
Ithaca, NY 14850
Tel: (607) 327-4125
Email: sujata@gibsonfirm.law
Bar Roll No. 517834

Michael Sussman, Esq., *Lead Counsel*
**Sussman & Associates**
1 Railroad Ave, Suite 3, PO Box 1005
Goshen, NY 10924
Bar Roll No. 123324

*Of Counsel*
Robert F. Kennedy Jr., Esq., *pending admission*
Mary Holland, Esq., *pending admission*

November 17, 2020

## <u>TABLE OF CONTENTS</u>

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Preliminary Statement .................................................................................................. 1

Statement of Facts ........................................................................................................ 2

Standard of Review ....................................................................................................... 5

Legal Argument ............................................................................................................. 6

**I.      POINT ONE: PLAINTIFFS WILL BE IRREPARABLY HARMED IF THEY DO NOT RECEIVE THIS INJUNCTION** ......................................... 6

**II.     POINT TWO: PLAINTIFFS HAVE SHOWN SUFFICIENT LIKELIHOOD OF SUCCESS ON THE MERITS** ...................................... 7

    **A. The right to a medical exemption where a child may be at risk of harm is a fundamental right and requires strict scrutiny** .................................. 7

    **B. The challenged policies and procedures are not narrowly tailored to uphold a compelling state interest sufficient to outweigh the Plaintiffs' right to a medical exemption** ................................................................. 17

    **C. The Unconstitutional Conditions Doctrine Bars the Court from Avoiding Strict Scrutiny Review** ........................................................................... 19

**III.    POINT THREE –THE REMAINDER OF THE FACTORS STRONGLY FAVOR ALLOWING THESE CHILDREN TO PARTICIPATE IN REMOTE LEARNING PENDING OUTCOME OF THIS APPEAL** .......... 22

CONCLUSION ........................................................................................................... 23

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,*
    570 U.S. 205 (2013) .................................................................20,21

*Alliance for Open Society International, Inc. v. U.S. Agency for International Development,*
    651 F.3d 218 (2d Cir. 2011) .......................................................20,21

*Ayotte v. Planned Parenthood of N. New England,*
    546 U.S. 320 (2006)............................................................8,11,12,13

*Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kan.,*
    347 U.S. 483 (1954) ........................................................................6,7

*Cayuga Indian Nation of New York v. Pataki,*
    88 F. Supp. 2d 223, 253 (N.D.N.Y. 2002) ...............................7,22,23

*Cooper v. U.S. Postal Serv.,*
    577 F.3d 479 (2d Cir. 2009) ...............................................................6

*Doe v. Bolton,*
    410 U.S. 179 (1973) ...............................................................14,16,17

*Faively Transp. Malmo AB v. Wabtec Corp.,*
    559 F.3d 110 (2d Cir. 2009) ...............................................................6

*Gonzales v Carhart,*
    550 U.S. 124, 165 (2007) .................................................................18

*In re World Trade Ctr. Disaster Site Litig.,*
    503 F.3d 167 (2d Cir.2007) ................................................................6

*Jacobson v. Massachusetts,*
    197 U.S. 11 (1905).............................................................8,9,10,19

*Koontz v. St. Johns River Water Mgmt. Dist.,*
    570 U.S. 595, 604 (2013) .................................................................20

*LaRouche v. Kezer,*
    20 F.3d 68 (2d Cir.1994). ..............................................................5,6

*Matter of Hofbauer,*

ii

47 N.Y.2d 648 (1979) ................................................................ 16

*Mohammed v. Reno,*
    309 F.3d 95 (2d Cir.2002) .................................................... 5

*Morgan Guar. Trust Co. of N.Y. v. Republic of Palau,*
    702 F.Supp. 60, 65–66 (S.D.N.Y.1988) ................................. 5

*Perry v. Sinderman,*
    408 U.S. 593 (1972) .......................................................... 20

*Protect Our Water v. Flowers,*
    377 F.Supp. 2d 882 (E.D.Cal. 2004) ..................................... 5

*Reno v. Flores,*
    507 U.S. 292 (1993) ............................................................ 6

*Robinson v. Attorney General,*
    957 F.3d 1171 (11th Cir. 2020) ............................................ 16

*Seneca Nation v. Paterson,*
    No. 10–CV–687A, 2010 WL 4027795, at *1 (W.D.N.Y. Oct. 14, 2010) ....................... 6

*Stenberg v. Carhart,*
    530 U.S. 914 (2000) ...................................................... 10,14

*Whalen v. Roe,*
    429 U.S. 589 (1977) ........................................................... 16

*Whole Woman's Health v. Hellerstedt,*
    136 S. Ct. 2292, 2298 (2016), <u>as revised</u> (June 27, 2016) ........................ 18,19

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 62 ................................................................... 1,5

Plaintiffs respectfully submit this Memorandum of Law in support of their motion for emergency injunctive relief pending appeal. Pursuant Federal Rule of Civil Procedure 62(d), plaintiffs jointly move for an order which will allow their children and all those similarly situated to attend online and remote school pending the outcome of the appeal. In the alternative, plaintiffs move the same order to be issued on a more temporary basis, long enough to permit the Second Circuit to consider whether to grant an emergency injunction pending appellate review.

## PRELIMINARY STATEMENT

On October 22, 20202, this Court denied plaintiffs motion for a broader preliminary injunction seeking to re-admit qualified medically fragile children to school pending outcome of the litigation and stay several new provisions of the DOH regulations impacting Public Health Law §2164(8). Plaintiffs have appealed this decision and now seek a narrower injunction pending appeal – simply, that the impacted children and all others similarly situated be allowed to at least access remote learning offered by their schools pending interlocutory appeal.

Unless the Court acts, medically fragile children across the state will continue to be irreparably and daily harmed and will not even be able to keep up with their peers through online education and vital online services. Many of these families are desperately trying to cobble together some semblance of an education while juggling work and their children's medical needs and psychological trauma from the exclusion. Many of these children also have special needs and require special services that their parents cannot provide on their own. Each day of exclusion causes further harm. If plaintiffs can at least attend school online, at least some of these devastating effects can be mitigated while the appeal is pending. All school districts across the state currently offer an entirely remote option for education and have figured out ways to help many students with special needs remotely as well. The state can advance no valid interest, even under rational basis review, to justify depriving these medically fragile children of remote access

to vital educational resources.

As more fully discussed below, plaintiffs have established enough of a likelihood of success on the merits to grant them this temporary relief pending appeal, particularly given the serious irreparable harm that will be done to them if they are denied access even to online services.

## STATEMENT OF FACTS

The Court and parties are familiar with the underlying facts. Some of the facts merit further consideration.

First, the childhood vaccination requirements apply to all children, whether or not the child attends school. *See, e.g.,* P.H.L. §2164(2): "[e]very person in parental relation to a child in this state shall have administered to such child an adequate dose or doses of an immunizing agent" against a number of specified vaccines in age-specific doses. Thus, restrictions on P.H.L. §2164(8), the medical exemption, impact all children and are not solely related to children who want to attend school. Pursuant to statute, school is implicated only because school principals or persons in charge of any school or daycare, public or private, have been conscripted to help in these efforts and are obligated to ensure that every child submits either a certification of immunization or a certification of medical exemption. P.H.L. §2164(7) within fourteen days of the start of school.

Second, the New York State Legislature expressly declined to amend or modify the broad statutory medical exemption last year after the measles outbreak. They made no findings implicating the medical exemption in the measles outbreak nor did they express any concern that an increase in medical exemptions could jeopardize herd immunity (it is unrefuted that the number of children who obtain a certification from a physician is so small that even if they tripled there could be no impact on herd immunity). To the contrary, the repeal of the religious exemption was in large part advanced to protect the medically fragile who could not be

2

vaccinated safely. Nonetheless, without any support or direction from the legislature to amend the medical exemption protecting these children, in August 2019, the DOH defendants promulgated regulations to eviscerate the Public Health Law's medical exemption protection.

Third, the new definition of "what may be detrimental to a child's health" is expressly challenged both as written and <u>also</u> as applied. As the complaint and declarations from the plaintiffs and other similarly situated children detail, schools and the DOH defendants are applying 10 N.Y.C.R.R. §66.1-1 even more narrowly than written so that only a very restrictive reading of the ACIP guidelines is typically considered "sufficient" reason to uphold a doctor's exemption determination and "other nationally recognized evidence-based standards of care" are not considered. Each of the responding school districts in this action submitted declarations and factual submissions in opposition to the preliminary injunction motion which confirm and state that they *only* consider the ACIP guidelines in reviewing medical exemptions. None suggested that they will look more broadly at "other nationally recognized evidence-based standards of care". Moreover, the DOH defendants expressly acknowledged that to the extent they recognize anything outside of the ACIP guidelines, they only would add consideration of two other guidelines that do not materially expand ACIP or cover the hundreds of conditions ACIP doesn't address.

Fourth, as noted in the complaint and declarations with the motion, the ACIP guidelines are not exhaustive and were never meant to govern medical exemptions. Inflexible adherence to these guidelines eliminates hundreds of known adverse reactions and conditions that may give rise to the need for medical exemptions. These reasons are widely known and accepted. Most of the serious adverse reactions that the federal government compensates through the Vaccine Injury Compensation Program do not suffice under a strict reading of the ACIP precautions and contraindications. The ACIP Committee itself acknowledges that these guidelines were never

meant to define the limits of a valid medical exemption or to substitute for a treating physician's judgment: "The ACIP guidelines were never meant to be a population-based concept…The CDC does not determine medical exemptions. We define contraindications. It is the medical provider's prerogative to determine whether this list of conditions can be broader to define medical exemptions." Email from Dr. Kroger, author of the most recent CDC guidelines, to Jane Doe sent December 28, 2019. Dkt 1 (complaint) ¶265; Dkt 41-12 (Doe Decl) ¶47.

Fifth, under the regulatory scheme, schools are not required to do more than ensure that the physician is licensed and that the certification is on the correct form. However, many school districts, with encouragement from the DOH, adopted additional draconian policies and procedures to burden and deny medical exemptions to medically fragile children who need them. This harm is ongoing and widespread. Since the original order to show cause was filed in August, many more children, including some who submitted declarations for the motion noting the harm these policies caused them even though their exemption was accepted, were subsequently denied and excluded. Every week, more children are excluded. And every day that the children are excluded causes more harm. The need for protection from ongoing harm is imminent, ongoing and urgent.

Sixth, school principals do not merely have the initial determination of whether to accept a licensed treating physician's opinion about exemption. They have the final say, pursuant to regulation and pursuant to all of the guiding documents from the DOH, including letters from Defendant Rausch-Phung in which she stresses that her opinions about the sufficiency of a determination are not binding and the principal must have the final authority to decide.

## **STANDARD OF REVIEW**

Rule 62(d) permits this court to enter an injunction pending appeal of an order granting or denying a preliminary injunction. See Fed. Civ. P. 62(d) ("While an appeal is pending from an

interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.").

A court considering entering such an injunction pending interlocutory appeal must consider whether: (1) the movant will suffer irreparably injury absent the stay; (2) a party will suffer substantial injury if a stay is issued; (3) the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; and (4) public interests may be affected. *Nation v. Tanner*, 108 F. Supp. 3d 29, 34 (N.D.N.Y. 2015) citing *LaRouche v. Kezer,* 20 F.3d 68, 72 (2d Cir.1994).

A denial of a preliminary injunction pending resolution of the underlying litigation does not necessarily indicate that an injunction pending appeal should be denied. In determining whether to grant relief pending appeal, "the 'success on the merits factor cannot be rigidly applied,' because if it were 'the district court would have to conclude that it was probably incorrect in its determination on the merits.'" *Protect Our Water v. Flowers*, 377 F.Supp. 2d 882, 884 (E.D.Cal. 2004) (citations omitted). Or, put another way, the court is put in the odd position of whether to overrule itself. *Morgan Guar. Trust Co. of N.Y. v. Republic of Palau,* 702 F.Supp. 60, 65–66 (S.D.N.Y.1988) ("By definition, of course, the effort has been made to achieve a result that is just and supported by the authorities and that therefore will be supported upon review. To conclude otherwise would require the judgment to be set aside.")

In approaching the standard to apply to likelihood of success on an injunction pending appeal, the Second Circuit finds "considerable merit in the approach expressed by the District of Columbia Circuit: 'The necessary "level" or "degree" of possibility of success will vary according to the court's assessment of the other [stay] factors.' " *Cooper v. U.S. Postal Serv.,* 246 F.R.D. 415, 418 (D. Conn. 2007) citing *Mohammed v. Reno,* 309 F.3d 95, 101 (2d

Cir.2002)(quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977)). Thus, "[a]s the standard makes clear, a grant of injunctive relief pending appeal does not depend solely or even primarily on a consideration of the merits." *LaRouche,* 20 F.3d at 72. Indeed, "the degree to which [any one] factor must be present varies with the strength of the other factors, meaning that 'more of one [factor] excuses less of the other.' " *In re World Trade Ctr. Disaster Site Litig.,* 503 F.3d 167, 170 (2d Cir.2007) (quoting *Thapa v. Gonzales,* 460 F.3d 323, 334 (2d Cir.2006)). Accordingly, "the factors are viewed on a sliding scale, and [t]he necessary level or degree of possibility of success will vary according to the court's assessment of the other stay factors." *Seneca Nation v. Paterson,* No. 10–CV–687A, 2010 WL 4027795, at *1 (W.D.N.Y. Oct. 14, 2010) (citation and internal quotation marks omitted). *Id.*

## **LEGAL ARGUMENT**

### I.    **POINT ONE: PLAINTIFFS WILL BE IRREPARABLY HARMED IF THEY DO NOT RECEIVE THIS INJUNCTION**

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." Dkt. 92 (Decision and Order) p. 8 of 20, quoting *Faively Transp. Malmo AB v. Wabtec Corp.,* 559 F.3d 110,118 (2d Cir. 2009).

Here, as this Court properly held, irreparable harm is a presumption where children are excluded from school. "Courts considering this issue routinely assume that a child prevented from attending school would suffer irreparable harm" Dkt. 92 (Decision and Order) at p. 9 of 20 (citing cases).

Whether or not there is a "right" to an education, there is no serious question that the deprivation of an education causes irreparable injury. In *Brown v. Board of Education,* the Supreme Court held that the right to an education is so fundamental to a child's well-being that

6

"in these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education." 347 U.S. 483 (1954).

The harm is even greater for these medically fragile children, many of whom require special education services that their parents cannot provide at home. Many children have been deeply psychologically scarred by their humiliating exclusion from school and by being ostracized by the community for a condition completely beyond their control. Excluding them even from online school participation and remote special education services is cruel, inhuman and can serve only punitive purposes, effectively convicting these children of the status crime of being medically fragile.

The defendants have not advanced any credible argument that anyone will be harmed by allowing these children to participate in online education and remote services and opportunities. Whether or not they are able to access online programming, these children are not able to safely get vaccinated, so will pose the same level of risk to the community. The state and the individual school districts are already providing online and remote learning opportunities; adding these children is a marginal change. Yet depriving them of the opportunity to attend any schooling is a grave disservice both to them and to the public interest. The exclusion of these children even from online education pending the outcome of this litigation cannot survive even rational basis review.

## II.    POINT TWO: PLAINTIFFS HAVE SHOWN SUFFICIENT LIKELIHOOD OF SUCCESS ON THE MERITS

### a.  The right to a medical exemption where a child may be at risk of harm is a fundamental right and requires strict scrutiny

Plaintiffs legal arguments have substantial support in Supreme Court holdings. Particularly regarding the exclusion of children from online and remote education, which can serve no permissible state interest, plaintiffs have met their burden and should qualify for an injunction pending appeal.

A sufficient medical exemption has remained an explicit constitutional prerequisite to any vaccine mandate for one hundred and fifteen years. *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27, 36-39 (1905)(holding that the state's interest in mandating vaccines to protect the public at large from communicable disease can override personal liberty interests in opting out but cannot be required in cases where a person could be at risk of harm).

The Supreme Court continues to recognize a medical exemption to otherwise permissible health regulations as an independent fundamental right in modern jurisprudence. *See, e.g., Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320, 325 (2006)(recognizing that a woman has an independent right to a medical exemption even from otherwise permissible health regulations in cases where her life or health could be at risk). Though much of the modern case law arises in the context of abortion related claims, the Court repeatedly acknowledges that the right to a medical exemption is separate – thus even if an abortion regulation is otherwise lawful and allowable, it may become unlawful if there is an insufficient medical exemption. That situation is what arises here – school vaccine requirements, like many abortion regulations, are typically found to be a lawful exercise of state power, even if they infringe on fundamental rights. However, if the school vaccine requirement is too narrow to sufficiently protect those who need it from risk of harm or death, then it is unconstitutional.

The highest level of scrutiny is typically afforded in medical exemption cases as the rights at issue – informed consent, bodily autonomy, privacy, the right of a patient to make medical decisions in accordance with their licensed physician's good faith medical judgment – are fundamental. Moreover, a medical exemption is not just a liberty interest – it is a self-defense right and primarily derived from the Fourteenth Amendment's protection of the inalienable right to protect one's life.

It is not surprising, then, that *Jacobson,* which generally counseled deference to public health determinations, expressly carved out medical exemptions as an area requiring courts to engage in independent judicial review.  *Jacobson* 197 U.S. 11 at 36-39. The *Jacobson* Court clarified that where a person alleges he is "not at the time a fit subject of vaccination, or [for whom] vaccination by reason of his then condition would seriously impair his health," the judiciary is not only competent to strictly review the appropriate tailoring of the medical exemption, but <u>must do so</u>:

> We are not to be understood as holding that… the judiciary would not be **competent to interfere and protect the health and life of the individual concerned**. *Id.* at 39 (emphasis added).

In *Jacobson,* the Court held that it would not only be unconstitutional to force a person to be vaccinated in a case where she would be at risk of harm, it would be "cruel and inhuman in the last degree". *Id. Jacobson* substantially predates the application of the Bill of Rights and substantive due process liberty interest analysis to review of state action. Nonetheless, even in 1905, the Court *de facto* recognized the Fourteenth Amendment's protection of the right to life as requiring strict and independent judicial scrutiny. No subsequent holdings have undercut this strict carve-out. The Court must strictly scrutinize medical exemption cases and the deference given to other types of vaccine cases simply does not apply to medical exemption cases.

Since *Jacobson,* the Supreme Court today continues to give far less leeway to infringements on access to medical exemptions than to infringements of other fundamental rights derived only from liberty interests. Even where the state has a compelling interest, the Court has drawn a bright line against infringements on the medical exemption.

Two clear doctrines have emerged in Supreme Court holdings involving medical exemptions: (1) the need for harm avoidance, and (2) a bar against infringement on the licensed

provider's "best medical judgment." The challenged regulations and policies violate both bright line rules and likely will be found unconstitutional.

### Harm Avoidance

*Jacobson's* harm avoidance principal – that is, that it would be unconstitutional, as well as "cruel and inhuman" to make a person to submit to an otherwise permissible health regulation that could cause them serious harm - continues to be strictly upheld today. Since *Jacobson,* the Supreme Court has several times held that if a medical exemption is narrow enough to exclude someone who might need it to prevent harm, it is unconstitutional on its face.

In *Stenberg v. Carhart,* the Supreme Court held that the hypothetical possibility that a woman would not be covered by a statute's narrow medical exemption rendered the law unconstitutional. 530 U.S. at 937. The case involved a partial birth abortion ban. Though there were many other abortion methods a woman could exercise if her health were in danger, the Court held that the vague possibility that the partial-birth abortion would be the preferable method to serve her health was enough to strike down the statute. The Court's analysis is instructive:

> The word "necessary" in *Casey's* phrase "necessary, in appropriate medical judgment, for the preservation of the life or health of the mother," …cannot refer to an absolute necessity or to absolute proof…*Casey's* words **"appropriate medical judgment" must embody the judicial need to tolerate responsible differences of medical opinion."** *Id.* at 937. (emphasis added)

In *Ayotte*, the Supreme Court addressed another facial challenge to an abortion regulation's medical exemption and also struck it down as unconstitutionally narrow. *Ayotte* 546 U.S. at 320. The challenged law required that a provider notify a minor young woman's parents 48 hours before performing an abortion unless her life was in danger. The Supreme Court held that the medical exemption was unconstitutional because "in some very small percentage of cases" a young woman's health, but not life, might be endangered by waiting 48 hours to perform

an abortion. In so holding, the Court affirmed that any medical exemption provision narrow enough to potentially exclude even a "some very small percentage" of those who might be harmed is facially unconstitutional, even when balanced against a compelling government purpose. *Ayotte,* 546 U.S. at 320. It is worth noting that *Ayotte* is the only unanimous abortion related case, and that is because it is not about abortion – it is about medical exemptions, which is a far more settled area of law. In *Ayotte,* the abortion regulation itself was held constitutional. The Court had little trouble finding though that the medical exemption portion was not, because it was acknowledged, as it is acknowledged here, that at least a very few young women might not be covered by the exemption as written.

*Ayotte* illustrates how much stricter the scrutiny is for medical exemptions compared to other fundamental rights, such as abortion. A plaintiff alleging a facial challenge to an otherwise permissible abortion regulation has to establish that "in a large fraction of cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Casey,* 505 U.S. at 895. However, in analyzing a facial challenge to a *medical exemption,* the Supreme Court held that even where the risk of harm could only occur in "some very small percentage" of cases that were not covered by the existing exemption, the law was too narrow and therefore unconstitutional. *Ayotte,* 546 U.S. at 328.

In the cases above, even the hypothetical possibility of harm was enough to render a medical exemption unconstitutional. In this case, the state's constricted regulation on medical exemptions cannot survive where the risk of harm is present, clear, and serious, as illustrated by many specific examples that licensed physicians have certified. The complaint and moving papers also contain lengthy factual discussion of the risks that these policies pose to the medically fragile children named in the suit and the declarants who support of the motion. Some plaintiffs have already lost one or more sibling to proven death from vaccine adverse reaction. It shocks

11

the conscience that the death of a sibling, even if proven to have occurred because of an adverse vaccine reaction, and even with a certification from a licensed physician that the sibling is at risk of the same fate, is an insufficient reason for a medical exemption according to DOH defendant *Rausch-Phung*. *See* Dkt 1 (complaint) ¶129 and ¶153.

These risks are well-established. The complaint and moving papers provide evidence of hundreds of additional evidence-based reasons that exist beyond the narrow ACIP guideposts that put some children at substantial risk of harm or death. Manufacturers, the United States Government, and the Institutes of Medicine, among others, have acknowledged these risks. In short, defendants' limiting definition is irrational and reckless.

Respectfully, this Court erred by holding that the addition of "other nationally recognized evidence-based standards of care" to the regulation's definition saves the statute from unconstitutionality.

This case was brought both as a facial challenge and as applied. Plaintiffs allege that in practice defendants do not allow any meaningful expansion of review for factors outside of a narrow reading of the CDC's ACIP guidelines. This is not contested. The defendants themselves each admitted that they only consider the ACIP guidelines, or a very narrow deviation from them, in practice and do not acknowledge any interpretation sufficient to include the hundreds of other conditions that require a medical exemption for some children.

Nor is it contested that the defendants' rejection of any reason outside of a strict reading of the CDC's ACIP guidelines will result in the denial of at least some medical exemptions that are necessary to protect children from risk of harm. The record contains uncontested factual submissions establishing that the CDC itself has stated their guidelines are never meant to replace a treating physician's clinical judgment or serve as an exhaustive list of contraindications and precautions. The defendants did not provide any evidence sufficient to refute the clear guidance

12

from the CDC on this point. An evidentiary hearing would have been necessary to attempt to refute this uncontested factual assertion. Moreover, defendants did not contest that there are hundreds of additional reasons, well established and even compensated by the US government as known serious vaccine complications, that do not fall under ACIP.

Pursuant to *Ayotte,* a medical exemption is facially invalid if it excludes even a very few who need its protection on a facial reading or as applied. The harm avoidance principle is unwavering. Though a state actor may have compelling reasons to limit medically unnecessary abortions to protect viable fetuses, or to limit medically unnecessary exemptions to protect the community from contagion, the Supreme Court has repeatedly clarified that forcing a person to submit to risk of serious personal harm is unacceptable in service of those goals and where a medical exemption is written narrowly enough to place children at risk, the exemption cannot survive constitutional review. Because the uncontested facts in this case establish that at least some children will be harmed by the narrow definition of "what may cause harm" employed by defendants in this case, plaintiffs are likely to succeed on the merits.

### *Infringement on a Chosen Physician's Good Faith Medical Judgment*

In addition to violating the harm avoidance principle, defendants' actions also violate clear Supreme Court limits on reviewability of a medical exemption and interference with the doctor patient relationship.

Fifty years ago, in *Doe v. Bolton,* a decision concurrent with *Roe v. Wade,* the Supreme Court examined medical exemption infringements similar to the ones in this case and squarely held them unconstitutional. 410 U.S. 179, 199-200 (1973).

First, the Court held that a physician must be able to consider a broad range of factors to clinically determine whether a medical exemption is "necessary." "We agree with the District Court that the medical judgment may be exercised in the light of all factors—physical, emotional,

psychological, familial, and the woman's age—relevant to the well-being of the patient. All these factors may relate to health. This allows the attending physician the room he needs to make his best medical judgment." The Supreme Court more recently affirmed the same principle in *Stenberg v. Carhart,* 530 U.S. 914, 937 (2000):

> Medical treatments and procedures are often considered appropriate (or inappropriate) in light of estimated comparative health risks (and health benefits) in particular cases. Neither can that phrase require unanimity of medical opinion. Doctors often differ in their estimation of comparative health risks and appropriate treatment.

Thus, a physician's determination of what may cause harm needs to rest on any factor the physician finds relevant to a patient's health in her clinical judgment, and differences of medical opinion cannot be the basis to deny the treating physician's recommendation. Under this standard, the challenged requirement that a physician limit her determination of "what may cause harm" to the narrow ACIP guidelines or any other pre-defined set of criteria is unlawful.

 Second, the Supreme Court held it is unconstitutional to allow a hospital committee to review the treating doctor's determination of medical necessity. *Id.* at 199-200. The Court discussed at length why a hospital, which has an independent interest in ensuring that its doctors comply with law and standards of care at their facility, would want to review the grounds of the medical exemption. Nonetheless, the Court held that such review violated the patient's superseding constitutional rights:

> Saying all this, however, does not settle the issue of the constitutional propriety of the committee requirement. Viewing the Georgia statute as a whole, we see no constitutionally justifiable pertinence in the structure for the advance approval by the abortion committee…**The woman's right to receive medical care in accordance with her licensed physician's best judgment and the physician's right to administer it are substantially limited by this statutorily imposed overview**." *Id.* at 192 (emphasis added).

For the same reasons the Court found it unlawful for the hospital committee to subject medical exemptions to review before a patient is admitted, likewise, schools cannot subject medical

14

exemptions to non-clinical review before a student is admitted. In other words, while a woman might not have a right to have an abortion at a particular hospital, just as a student might not have a fundamental right to an education at a particular school, no hospital or school has the right to substantively review and deny a licensed physician's medical determination of the need for a medical exemption. That is between a patient and her doctor, so long as the state has licensed that doctor to practice.

Lastly, the Court held that it was unconstitutional to require corroborating opinions from other state-licensed physicians. The Court's discussion of corroborating opinions is particularly apposite to this case:

> The reasons for the presence of the confirmation step in the statute are perhaps apparent, but they are insufficient to withstand constitutional challenge…**If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment**…**It is still true today that '(r)eliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications.'** *Id.* (emphasis added).

Under this controlling precedent, defendants' arguments must fail. They cannot justify rejection of a treating physician's certification based on a difference of medical opinion by non-treating consultants. *Doe* clarified that institutions may not require corroborating opinions for a medical exemption.

By enacting Public Health Law §2164(8), the New York State legislature reached the constitutional limit of permissible restriction on medical exemptions. Under *Doe*, a physician licensed to practice in New York must certify the exemption, and further regulation is unconstitutional. "If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment." *Doe* 410 U.S. at 200.

Arguments that these cases don't apply outside of the abortion context contradict the Supreme Court's own reasoning. As we argued in our motion papers, the Supreme Court has not

only expressly held that the medical exemption is an independent fundamental right, separate from the right to an abortion, but the Court reaffirmed *Doe* applies outside the abortion context in *Whalen v. Roe,* 429 U.S. 589, 603 (1977)(stating that under *Doe* it would be impermissible if access to controlled medications were "conditioned on the consent of any state official or third party" beyond the chosen licensed provider).

Courts continue to reaffirm *Doe's* holding. In *Matter of Hofbauer,* for example, the New York Court of Appeals cited *Doe* in denying a neglect proceeding against parents who chose to forego chemotherapy and held that a parent must be able to make medical decisions in accordance with their chosen licensed physician's good faith medical determinations even in cases where there is a difference of medical opinion. 47 N.Y.2d 648, 655–56, (1979).

Likewise, a recent Eleventh Circuit case reaffirmed that it is unconstitutional for a state to even suggest it might remove discretion from a treating physician in determining the need for a medical exemption despite a state public health emergency. *Robinson v. Attorney General*, 957 F.3d 1171 (11th Cir. 2020)(upholding a TRO staying emergency regulations to restrict elective medical procedures due to *Covid-19* in large part because the state reserved the right to overrule a treating physician on whether a procedure was actually medically necessary).

Respectfully, this Court erred in holding that the Supreme Court's protection of the doctor patient relationship should not apply here because "this case is about an inability to pursue an education, not state interference in medical care." This case is entirely about state interference in medical care, and what can be tolerated. Public Health Law §2164 applies to all children and thus the restrictions on it apply to all children, whether they attend school or not. An unconstitutional interference in the doctor-patient relationship is not saved just because the state has empowered school principals to interfere, just as it wasn't saved when a state empowered private hospitals to interfere in *Doe*. The result – state sanctioned denial or burden on the right to make medical

16

decisions in accordance with one's licensed physician's best medical judgment about what may cause harm – is the same, whoever the state may deputize to do its' work.

      **b. The challenged policies and procedures are not narrowly tailored to uphold a compelling state interest sufficient to outweigh the Plaintiffs' right to a medical exemption**

The risks to children here are the more unconscionable because defendants did not justify the restrictions as necessary to achieve any compelling state interest. The defendants' stated purpose cannot even survive a rational basis review, let alone the higher bar of strict scrutiny that a medical exemption requires.

To the extent that defendants assert the need to protect the community from contagious disease, the challenged policies, regulations, and procedures are not narrowly tailored to that end or even substantially related. The unrefuted evidence – submitted by defendants themselves – show there was no medical emergency at the time these policies were adopted. *See, e.g.,* Dkt 61-15. Rather, when DOH enacted the new regulations, it had declared the measles epidemic over as there were no cases in New York. Dkt 61-17. Moreover, there is no evidence that medical exemptions played any part in the 2019 outbreak. The defendant's reliance on the statement that the legislature removed the religious exemption to combat the measles epidemic proves this point. It is uncontested that the legislature also expressly declined to alter the medical exemption in any way, deeming it necessary only to remove the religious exemption. In fact, the legislature's justification for removal of the religious exemption was to protect the medically fragile children who cannot be safely vaccinated. It is uncontested that the small number of children who receive a medical exemption certification – currently about 0.2% per year, cannot impact herd immunity even if the number tripled as is alleged to have occurred in California. The legislature was well aware of this and declined to narrow the medical exemption.

Moreover, defendants do not even attempt to justify forcing children to get vaccines that cannot create herd immunity. This includes half the vaccines on the childhood vaccine schedule, which can only provide personal protection. There is no rational relation between excluding children who are only missing these vaccines with a goal of stopping spread of contagious disease to other children in school. Nor do defendants justify any valid reason for barring children from online education or socially distanced education on the grounds of public health. These questions need to be independently examined by the Court.

The Supreme Court has repeatedly clarified that "deference" does not mean that the state can avoid independent judicial review. In *Gonzales v Carhart,* the Supreme Court clarified that whether a medical exemption restriction might cause harm is a factual determination, and the Court should not merely defer to legislative or agency determinations:

> The Attorney General urges us to uphold the Act on the basis of the congressional findings alone… **The Court retains an independent constitutional duty to review factual findings where constitutional rights are at stake.** 550 U.S. 124, 165 (2007). (emphasis added)

In *Whole Woman's Health v. Hellerstedt,* the Supreme Court clarified that judicial review of health regulations which impact constitutionally protected liberty interests are not to be given deference:

> The Fifth Circuit's test also mistakenly equates the judicial review applicable to the regulation of a constitutionally protected personal liberty with the less strict review applicable to, *e.g.,* economic legislation. **And the court's requirement that legislatures resolve questions of medical uncertainty is inconsistent with this Court's case law, which has placed considerable weight upon evidence and argument presented in judicial proceedings when determining the constitutionality of laws regulating abortion procedures**." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2298 (2016), <u>as revised</u> (June 27, 2016) (emphasis added).

As discussed in detail above, *Jacobson* itself clarified that deference does not apply to review of medical exemptions. *Jacobson* 197 U.S. 11, 36-39 (1905).

18

Even affording deference, which *Jacobson* holds is not appropriate in medical exemption cases, and even if the case was somehow analyzed under a lower standard than strict scrutiny, there still has to be some real and substantial relationship between the goal and the infringements on the multiple fundamental rights at stake here. Particularly for online education and cases where the vaccine at issue is not in the category that can impact herd immunity, there is no substantial relationship alleged.

The plaintiffs have shown a likelihood of success sufficient to receive the limited narrow relief they are looking for pending appeal.

c. **The Unconstitutional Conditions Doctrine Bars the Court from Avoiding Strict Scrutiny Review**

As this Court acknowledged, multiple fundamental rights have been burdened in this case. In addition to the right to a medical exemption, plaintiffs articulated violations of the right to self-defense, fundamental rights inherent in the doctor-patient relationship, privacy rights, rights to informed consent, to refuse medical treatment and to bodily autonomy, parental rights, and equal protection rights. These are not incidentally burdened by the restrictions on §2164 – they directly burden parents and children from exercising these rights.

The defendants cannot get around these direct infringements by suggesting that if children wish to avoid them, they can simply educate themselves, because there is no right to an education. Whether or not the state has a responsibility to provide a public education to children is irrelevant to this case. The unconstitutional conditions doctrine has long held that the government cannot condition receipt of a benefit on the waiver of constitutional protections. "[E]ven though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. **It may not deny a benefit to a person on a basis that**

**infringes** **his constitutionally protected interests**....” *Perry v. Sinderman*, 408 U.S. 593, 597 (1972)(emphasis added).

The unconstitutional conditions doctrine “vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up.” *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).

The simplest statement of the doctrine is that the government must not be allowed to do indirectly what it cannot do directly in conditioning the receipt of a government benefit.

The Second Circuit was recently affirmed by the Supreme Court in a decision which explicates this doctrine well. In *Alliance for Open Society International, Inc. v. U.S. Agency for International Development,* plaintiffs brought a successful facial challenge to the application of a 2003 law which limited eligibility for a discretionary grant related to public health from sexually transmitted diseases to applicants who maintained a statement disavowing prostitution. 651 F.3d 218 (2d Cir. 2011), aff'd sub nom. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,* 570 U.S. 205 (2013). The government argued that since the grants were entirely discretionary, and the NGOs were not entitled to such grants, that this was a proper condition designed to advance proper government interests against prostitution. Congressional findings that prostitution increased the spread of HIV/AIDS (which the grant was issued to stop) were cited by the regulations. The CDC and HHS were not only supportive of the requirement as necessary, they were named defendants in the lawsuit. Nonetheless, the Second Circuit, and later the Supreme Court, held that the requirement unconstitutionally burdened the NGO’s First Amendment rights and was an unconstitutional condition. Both the Supreme Court and the Second Circuit held that if the government could not require the NGOs to make statements against prostitution otherwise, which the Court held they could not, they cannot require waiver of this first amendment right in order to be eligible for the grant.

20

Similarly here, if the government cannot demand that parents vaccinate their children against the advice of licensed physicians who have certified that the children are at risk of harm or death from the vaccine generally, then government agents are similarly unable to condition a benefit, such as the right to attend school, on waiver of the right to lawfully refuse a vaccination based on a licensed physician's recommendation. The argument that the state can coerce otherwise unconstitutional behavior, i.e. forcing families to forego lawful medical exemptions, in order for their children to attend school, cannot stand.

Moreover, an argument that the burden on medical decision making here is incidental is substantially likely to be overruled.

First, the challenged regulations do not only apply only to school children. P.H.L. 2164 applies to *all* children, regardless of whether they attend school. This is a direct burden on the medical rights of all children in the state.

Second, to the extent that the state has deputized schools to be able to interfere on its behalf in medical decision making, this doesn't render the burden on the doctor patient relationship or the fundamental right to a medical exemption from otherwise permissible health regulations incidental. Again, it is quite similar to the *Doe* regulation, which deputized individual private hospitals to interfere in medical decision making about whether an abortion was necessary to protect health. The Court did not in that case state that the burden on a woman was incidental – that is, if she didn't like the hospital committee's decision, she could simply seek an abortion at another hospital or in another state, and thus was only incidentally burdened. Rather, the Court held it is unconstitutional to allow these types of invasions into the medical exemption decision-making process. The same is true here. The fact that a family may be able to move and try again at another school if a deputized school principal makes a bad decision or can home school their child does not render the serious infringement on the fundamental rights at stake "incidental".

### III.   POINT THREE –THE REMAINDER OF THE FACTORS STRONGLY FAVOR ALLOWING THESE CHILDREN TO PARTICIPATE IN REMOTE LEARNING PENDING OUTCOME OF THIS APPEAL

The balance of equities is clearly in favor of keeping kids educated pending the outcome of this appeal. If the children are deprived of these educational resources, many of them will be irreparably harmed and fall behind. As a society, this impacts all of us. The state cannot advance any credible argument that depriving children of access to online education and services serves any non-punitive purpose.

The question of whether the state can burden medical exemptions to immunization in the manner challenged here has not been litigated in this circuit. At the very least, the novel and difficult questions of law implicated in this case, and the irreparable harm that will be caused to the children and to society as a whole if the children cannot maintain the status quo and keep up to date through participation in online education and services counsel in favor of granting narrow injunctive relief pending appellate review. *Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp. 2d 223, 253 (N.D.N.Y. 2002).

### CONCLUSION

Pending resolution of this appeal, the Court should enjoin defendants from excluding children from online and remote educational opportunities if they have presented exemption certificates from licensed physicians. Alternatively, the Court should grant an injunction to allow the children to participate in remote learning pending the Court of Appeal's review of an emergency injunction motion pending appeal made in the Second Circuit.

Respectfully submitted,

s/*Sujata S. Gibson*

Sujata S. Gibson, Esq., *Lead Counsel*
The Gibson Law Firm, PLLC

22

407 N. Cayuga Street, Suite 201
Ithaca, NY 14850
Tel: (607) 327-4125
 Email: sujata@gibsonfirm.law
Bar Roll No. 517834

Michael Sussman, Esq., *Lead Counsel*
**Sussman & Associates**
1 Railroad Ave, Suite 3, PO Box 1005
Goshen, NY 10924
Bar Roll No. 123324

*Of Counsel*