# THE GIBSON LAW FIRM, PLLC

SUJATA S. GIBSON, ESQ.
407 N Cayuga Street, Suite 201
Ithaca, New York 14850

---

January 4, 2021

Writer Direct: (607) 327-4125

<u>VIA ECF</u>
Hon. Judge Brenda K. Sannes
United States District Court Judge
Northern District of New York

      Re:    Jane Doe et al. vs. Howard Zucker, et al., Case No.: 1:20-CV-0840 (BKS/CFH)
              Response to Qualified Immunity Arguments

Dear Judge Sannes:

As directed by the Court, plaintiffs submit this letter brief in response to defendants' arguments that amending the complaint to name individual defendants would be futile because the individual defendants are entitled to qualified immunity. Dkt. 108, at 4, and Dkt 111, at 2-4.

## **Standard of Review**

As a threshold matter, qualified immunity is only relevant to the individual capacity suits against school administrators insofar as it relates to the claims for money damages. There is no qualified immunity for claims for injunctive relief, nor can an entity or city raise a qualified immunity defense. *Morse v. Frederick*, 127 S. Ct. 2618, 2642 (2007).

Qualified immunity is an affirmative defense, and as such, is normally asserted in an answer. *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982); Fed.R.Civ.P. 12(b). Although the Second Circuit has noted that "*[u]sually,* the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted," *Green v. Maraio,*722 F.2d 1013, 1018 (2d Cir.1983) (emphasis added), it can be considered at this stage if the defense appears on the face of the complaint itself. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

In such cases, defendants have a stringent burden. "Defendants advancing a qualified-immunity defense at the motion to dismiss stage face a formidable hurdle. On such a motion, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Neary v. Wu*, 753 F. App'x 82, 84 (2d Cir. 2019) citing *McKenna v. Wright*, 386 F.3d 432, 434-436 (2d Cir. 2004)(internal quotation marks omitted).

With the benefit of those inferences, the inquiry rests on "whether the plaintiff has pled facts alleging (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Neary* 753 F. App'x at 84 citing *Ganek v. Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017). To the extent that the determination requires resolution of facts in dispute, or development of the factual record to raise the defense that the defendant was not personally involved, qualified immunity claims must be denied. *McKenna v. Wright*, 386 F.3d 432, 434-436 (2d Cir. 2004)(denying prison officials qualified immunity defense at the motion to dismiss stage of a claim involving a medical determination).

To determine if a right is clearly established, the Second Circuit "looks to whether (1) [the right] was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991).

### The Right at Issue is Clearly Established by the Supreme Court

The fundamental right to a medical exemption if a person is at risk of harm has been recognized for over a hundred and fifteen years. *Jacobson v. Massachusetts* 197 U.S. 11 (1905)(to protect against contagious disease, the state may override personal liberty interests but may not

override the constitutional right to a medical exemption if the person is at risk of harm from the vaccine).

Medical exemptions derive from the right to life and the Supreme Court has fiercely protected them. Fifty years ago, the Supreme Court held that physicians cannot be constrained in their determination of whether a medical exemption is necessary. They must be able to use their clinical judgment to consider any factor they find relevant to the health of the patient. *Doe v. Bolton,* 410 U.S. 179 (1973)*.* Moreover, the Supreme Court unequivocally held that the treating physician's medical exemption determination cannot be subject to review nor can the state impose corroboration requirements. "If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment." *Id.* at 199.

Defendants cannot sidestep the Supreme Court's clear guidance by claiming it only applies in the context of abortion related medical exemptions. In *Whalen v. Roe,* the Supreme Court expressly clarified *Doe* applies to all medical decision-making, not just in the abortion context. 429 U.S. 589 (1977). In *Whalen*, plaintiffs challenged NYSDOH regulations allowing the state to collect data on narcotics prescriptions. Though the Court found the data collection permissible, they noted that pursuant to *Doe*, it would be impermissible for the state to condition the patient's access to the prescriptions "on the consent of any state official or third party" pursuant to its decision in *Doe v. Bolton*.

New York cases have also recognized that *Doe* clearly applies outside of the abortion context. For example, in *Matter of Hofbauer*, the New York Court of Appeals rejected the state's claim that parents neglected their child, who suffered from Hodgkin's disease, by entrusting his care to a licensed physician who advocated for treatment not widely embraced by the medical community. *Matter of Hofbauer*, 47 N.Y.2d 648 (1979). In the decision, the court cited *Doe v.*

*Bolton* and *Roe v. Wade* to find that it would violate the family's privacy interests and medical rights for the state to interfere in medical treatment decisions supported by a licensed physician even where the state's physicians strongly disagreed with the choice.

Thus, according to well-settled Supreme Court law, medical exemption determinations made by a state licensed physician cannot be subjected to review by state employees or third parties and cannot be overturned because a state employee or outside consultant has a difference of opinion. This is a clear violation of the right to make medical decisions in accordance with the best medical judgment of one's chosen licensed physician.

Defendants claim they are not subject to this clear constitutional prohibition on state interference in medical exemption decisions because they are not physically forcing children to be vaccinated against medical advice, only withholding access to an education if they do not waive their right to follow their doctor's advice about what is safe. Defendants reason that since an education is not necessarily a fundamental right, that any condition on the right to continue to attend is permissible even if it violates other well-established fundamental rights.

This argument violates the unconstitutional conditions doctrine. Under this doctrine, it is irrelevant whether access to an education is a fundamental right. The government cannot condition receipt of a benefit, fundamental or not, on the waiver or infringement of a constitutional protection. "[E]ven though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests...." *Perry v. Sinderman*, 408 U.S. 593, 597 (1972).

The unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).

In essence, the government is not allowed to do indirectly what it cannot do directly in conditioning a government benefit.  In *Alliance for Open Society,* plaintiffs brought a successful facial challenge to the application of a 2003 law that required a statement against prostitution as a condition of eligibility for a discretionary grant to help stop the spread of HIV.  651 F.3d 218 (2d Cir. 2011), aff'd sub nom. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,* 570 U.S. 205 (2013). The government argued that since the grants were entirely discretionary, and NGOs are not entitled to such grants, the statement against prostitution was a proper condition designed to advance compelling government interests which only incidentally burdened free speech rights. Congressional findings supported the condition on the grounds that prostitution increased the spread of HIV/AIDS (which the grant was issued to stop). The CDC and HHS, who were named defendants, enforced the condition and advocated that it was necessary to protect public health. Nonetheless, the Second Circuit and then the Supreme Court each held that the requirement was an unconstitutional condition even though plaintiffs had no fundamental right or entitlement to the discretionary grants and even though defendants asserted many reasons for why the condition was necessary.

Here, the attempt at coercion is much more direct than it was even in *Agency for Int'l Development*. If state actors cannot constitutionally subject medical exemptions written by a person's chosen state licensed physicians to third party review or demand that parents vaccinate their children against the advice of such chosen state licensed physicians, then neither can they condition access to online or in person education on parents' waiver of these rights.

Moreover, fundamental right or not, these children do have a recognized property interest in an education that far surpasses the NGOs entitlement to a discretionary grant. And, they are all disabled children under the Rehabilitation Act of 1973, which guarantees them a free and appropriate education. As the Supreme Court held in *Brown v. Board of Education,* "today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society…In these days, it is doubtful that any child may reasonably be able to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, must be made available to all on equal terms." 347 U.S. 483 (1954). To deny a family the right to send their child to school has significant coercive power which must be examined carefully against the right infringed to ensure it is not a back door to state infringement of constitutional protections.

In sum, the children's right to a medical exemption where they are at risk of harm has been well-established for over one hundred years. Even if the case law stopped there, each individual denial would have to be reviewed to ensure that the children's right to this exemption was not improperly denied. Second, the children have a constitutionally protected right to be free of discrimination based on their disability. Each has alleged that they are unable to get vaccinated as a direct result of their disability, as supported by the certification of a state licensed physician. It is a factual determination to decide if their expulsion from school without reasonable accommodation violated their equal protection rights. Third, and most importantly, the right to be free of state or third-party review or corroboration requirements regarding medical exemptions written by a state-licensed physician is well-established. Defendants each violated this clearly-established right merely by participating in the decision to subject the exemptions to substantive

review at all. This alone is grounds for individual liability and infringes well-established parental rights, medical rights, privacy rights and bodily autonomy rights as well as the fundamental right to life itself along with clear guidance from the Supreme Court.

### No Extraordinary Circumstances Allow Individual Actors to Escape Liability

In *Harlow*, the Supreme Court indicated there may be some cases where, although the constitutional right was clearly established, "if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained." *Harlow*, 457 U.S. at 819. Typically, this is extended under narrow circumstances, for example, if there is a presumptively constitutionally valid statute that the defendant is relying on which mandates their behavior.

As a starting point, despite some defendants' contentions, nothing in the statute or the DOH regulations require school administrators to violate children's rights by subjecting medical exemptions to substantive review. The only statutory or regulatory responsibility that school administrators have (specifically school principals) is to ensure that families seeking an exemption submit a medical exemption signed by state licensed physician on the correct form.

The statute provides that the vaccine requirements simply do not apply if "any" New York licensed physician certifies that the child may be at risk of harm. §2164(8). The legislature expressly declined to narrow the medical exemption further. This should be a red flag against further encroachment since the statute exactly tracks the holding of *Doe v. Bolton* for what the state can permissibly require from medical exemptions. It is a factual determination whether DOH regulations which conflict with the plain language of the statute and with Supreme Court holdings are "presumptively constitutional." However, even the regulations do not require school principals to engage in substantive review. Under the regulations, school principals may request additional

information, but nothing says they must do so or that they should substantively review the medical determination and overrule medical decisions about what is safe for medically fragile children. Defendants have not and cannot point to any provision in the statute or the regulations that requires them to subject these exemptions to such substantive review. To the extent that there is any dispute about this fact, that must be decided in favor of the plaintiffs at this stage.

Each of the superintendents and principals individually named in this suit violated clearly established precedent by subjecting medical exemptions written by licensed treating physicians to substantive review, recklessly substituting their unqualified judgment for that of the parents and the treating physicians, and infringing the plaintiffs' rights to make medical decisions in accordance with their physician's best medical judgment free from interference or coercion from state employees or third parties acting under color of state law.

Moreover, the individual facts show a shocking disregard for the medical safety of the children, in addition to the violation of their well-established constitutional rights, as further discussed below.

## **Personal Involvement**

Defendants argue that the proposed amended complaint (Dkt 99-2 "PAC") does not allege the individual actors were personally involved in the alleged constitutional violations. "In order to hold an individual liable for damages in a section 1983 action, plaintiff must allege that the individual was "personally involved" in the constitutional violation of which he complains. *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006); *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986).

In *Williams,* the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation. 781 F.2d at 323–24. A supervisory official

is said to have been personally involved if that official directly participated in the infraction. *Id.* Personal involvement may be shown if: (1) after learning of a violation through a report or appeal, the supervisory official failed to remedy the wrong; (2) the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; (3) the individual was grossly negligent in managing subordinates who caused the unlawful condition or event. *Charles v. New York State Dep't of Corr. Servs.*, No. 9:07-CV-1274, 2009 WL 890548, at *5 (N.D.N.Y. Mar. 31, 2009)(citing *Williams,* 781 F.2d at 323-. These are factual determinations that are generally not resolved at the motion to dismiss stage of pleadings. *Farrell,* 449 F.3d at 484.

Defendants' primary assertion, that they cannot be liable if they "relied on" medical advice from a third party under their supervision or control cannot lie under the standards above.

First, plaintiffs alleged that each of the individually named superintendents and school principals were involved with the decision to subject the exemptions to substantive review. Pursuant to *Doe v. Bolton*, this policy alone is a constitutional violation, whether the denial is ultimately found to have been reasonable (or not).

Second, the complaint alleges that the superintendents and principals supervised the consulting physicians and were grossly negligent in that supervision. For example, all of the consulting physicians are alleged to have written emails and communications copying the building principals and superintendents which indicate that they were narrowing the criteria for deciding what "may constitute harm" to exclude all but a narrow reading of ACIP. As detailed below, some of the superintendents also received communications from law firms concerned about the legality of this narrow substitution of criteria and ignored them. They also knew, or can be inferred to have known, that overruling treating physicians on the cursory advice of a non-treating physician who

has no depth of experience in the child's particular conditions or history would subject the child to a risk of serious harm as well as to constitutional violations, and that school administrators are not qualified to assess licensed physicians or to decide between competing medical opinions.

Without rehashing the entire eighty-seven page PAC, highlights of a few representative stories are provided below illustrating the personal involvement of the named defendants.

### *Defendant Thomas Putnam*

Thomas Putnam ("Defendant Putnam") is the superintendent of the Penfield Central School District and has been alleged to have violated the constitutional rights of plaintiff Jane Goe ("Jane") and her family.

Jane is disabled and suffers from multiple severe autoimmune conditions. Her diagnoses including Type I Diabetes, Celiac Disease, Hashimoto's Thyroiditis, Alopecia Areata and Polycystic Ovarian Syndrome. PAC ¶206. Jane's disabilities significantly impair multiple major life functions, including but not limited to functions of her immune system. PAC ¶209. Jane's Type I Diabetes was triggered by the H1N1 vaccine in third grade. In rapid succession, her health continued to devolve after that event and she developed four additional serious autoimmune diagnoses, losing half of her hair, suffering chronic additional health issues, and missing significant time in school when she was too sick to attend. PAC ¶ 210. Jane has a family history of serious autoimmune disease. Her genetic testing shows significant vulnerabilities including the rare HLA genotype, which places her at a high risk of developing Guillain-Barre syndrome (an acknowledged potential adverse reaction to the meningococcal vaccine). ¶211.

Jane submitted a medical exemption from a duly licensed New York State physician who has been treating Jane since the sixth grade and has been practicing medicine for over twenty years. ¶213. She has significant expertise and experience in Jane's serious debilitating conditions.

Defendant Putnam, who is not a medical professional and is not qualified to make medical decisions or assessments, elected to deny Jane's exemption even though it was written by a New York licensed physician and on the correct form. He alleges to have based his decision on the recommendation of Dr. Tuite, a sports medicine doctor that he consulted with, who has never examined Jane, has no expertise in her serious health conditions, and has not been approved by the parents as a trusted medical provider. PAC ¶¶217-220. Defendant Putnam's decision to allow Dr. Tuite to review and overrule Jane's treating physician on a medical exemption determination is alone a violation of *Doe v. Bolton* and gives rise to individual liability.

Even worse, Defendant Putnam was on notice that Dr. Tuite was recklessly putting Jane's health and safety at risk and far exceeding any allowable limitation contemplated by the DOH but he still decided to follow his advice. In his initial denial letter, Dr. Tuite said that Jane would have to suffer from Guillain-Barre syndrome to get an exemption not just face a high risk of developing it. Guillain-Barre Syndrome is extremely serious. It can lead to paralysis and death. The statute guarantees an exemption for any child whose physician certifies they "may be at risk" of harm, not just those who have already suffered the severe harm or death.

Moreover, Dr. Tuite announced that he would not accept the certification from a licensed physician, but instead required the exemption to be from a specialist, which was a clear departure from the statutory requirement that an exemption must be granted if "any physician licensed in New York" certifies the patient may be at risk of harm. Despite the clear indications that Dr. Tuite was making unconstitutional recommendations, violating the plain language of the statute and making arbitrary medical recommendations which put Jane's health at risk, Defendant Putnam told Jane she had to either get a corroborating opinion from a specialist or get vaccinated against medical advice if she wanted to attend school and denied her first exemption.

With great difficulty, Jane's mother was able to get an appointment with Dr. Craig Orlowski ("Dr. Orlowski"), who has been practicing medicine for nearly forty years, serves as an Associate Professor of Clinical Pediatrics at the University of Rochester Medical School, is Chief of Pediatric Endocrinology the University of Rochester Golisano Children's Hospital, is a specialist and physician duly licensed in the state of New York and has published widely on many of the autoimmune conditions that Jane suffers from. Dr. Orlowski agreed that it would be unsafe for Jane to be vaccinated with the two missing vaccines (neither of which is able to stop asymptomatic transmission and only protects the individual who receives it). He wrote a second medical exemption for Jane in accordance with evidence-based medical standards. PAC ¶218.

Nonetheless, Defendant Putnam denied this second request as well, again on the advice of Dr. Tuite, the sports medicine doctor he consulted with, who has never examined Jane and has nowhere near the level of expertise in her conditions that Dr. Orlowski has. This time Dr. Tuite was even more outrageous. Despite his lack of comparative qualifications or specific objection, he said he thought Dr. Orlowski was "out of his depth" and that he would only accept the recommendation of one of two named specialists in the state who "he trusts" to make a recommendation otherwise he'd recommend denying Dr. Orlowski's exemption too. Defendant Putnam unreasonably decided to take this advice and denied Dr. Orlowski's exemption, traumatically and publicly expelling Jane from school during an event open to the general public and causing her great trauma and embarrassment.

Jane miraculously did get an exemption from one of the two only specialists in New York who Dr. Tuite said he would "trust." Defendant Putnam eventually reluctantly allowed Jane back into school with a temporary exemption but threatened that she'd have to repeat the whole process in a few months. In addition to the trauma and stress that Defendant Putnam caused to Jane and

her family, the Goes had to incur enormous expense, missing time from work and school, engaging an attorney, and having to pay for several unnecessary and emergency visits to specialists. Nothing in the regulations allow (leave aside require) school administrators to force families to obtain recommendations from multiple doctors or a very narrow lists of specialists or require that a child suffer death or permanent serious paralysis before they can get an exemption. Defendant Putnam cannot claim that his actions were mandated by statute. The statute expressly states that if *any* physician licensed in the state certifies a child is at risk of harm than the child is exempt §2164(8). Defendant Putnam grossly violated the statutory protection by changing the standard so that Jane either had to have already suffered Guillain-Barre Syndrome or had to submit a corroboration from one of two "trusted" specialists in the world to get her exemption accepted.

### *Defendants Cheryl Pedisich and Corinne Keane*

Defendant Cheryl Pedisich (Defendant Pedisich) is the Superintendent of the Three Villages School District. Defendant Corinne Keane is the Principal of Paul J. Galinas Jr. High School.

Jane Boe ("Jane") is a fifteen-year-old girl with multiple diagnosed autoimmune syndromes and health challenges, including autoimmune encephalitis, which causes progressive neurological injury and attacks the brain. Jane's disabilities significantly impair multiple major life functions, including but not limited to the functions of her immune system. PAC ¶126. Jane is up to date on all immunizations aside from her second dose of meningococcal vaccine, a vaccine which only offers protection from symptoms but cannot protect others from asymptomatic transmission. Her health began to seriously deteriorate after her last set of immunizations at age twelve. Her older brother, who suffered from the same conditions, died as a result of complications from the meningococcal vaccination, which he took against medical advice in order to attend

university. Genetic testing reveals the Boe children are particularly vulnerable to serious vaccine injury. PAC ¶ 132.

Jane's physicians determined that the risk of injury and harm far outweighs any potential benefit for Jane from this vaccine. Her treating physician, duly licensed in New York, submitted a medical exemption in accordance with ACIP and other nationally recognized evidence-based standards of care, noting Jane's risk factors and that her brother died from complications related to a serious adverse vaccine reaction.

Defendants Pedisich and Keane violated Jane and her family's constitutional rights by subjecting Jane's exemptions to review and then denying three different medical exemptions, written by three different treating licensed physicians one after the other. Neither Defendant Pedisich nor Keane is qualified to make medical decisions. They purport to have made their denial decisions in accordance with the advice of a non-treating consultant in the first denial, and upon the advice of defendant Dr. Rausch-Phung in the second and third denials. On the third denial, Dr. Rausch-Phung had actually accepted the exemption though she unreasonably recommended that Jane should have to go back and get a new exemption form "in thirty days." Because the school defendants couldn't figure out if Dr. Rausch-Phung meant thirty-days from the original exemption form submitted in December 2019, or from the recommendation from Dr. Rausch-Phung, received in March, 2020, they arbitrarily made the decision to simply deny Jane's third exemption as well without any further follow-up and against the advice of even Dr. Rausch-Phung in March 2020. In both her recommendations, Dr. Rausch-Phung noted that she was not to be the final decision maker, and that the building principal could accept or deny an exemption regardless of what she recommended. Whether or not the defendants based their final determinations on the advice of non-treating consultants, however, is irrelevant. Just as they are not qualified to assess the three

treating physicians' determinations, they are not qualified to determine which recommendation among competing medical opinions is the best course of action for Jane's fragile health.

In deciding to review and deny the medical opinions of treating physicians based on the existence of conflicting medical opinions by non-treating physicians, both defendant Pedisich and Keane have violated the clear prohibition in *Doe v. Bolton.* As repeatedly pointed out by Dr. Rausch-Phung, Defendant Keane as building principal ultimately had the choice to disregard the recommendation of the non-treating physicians and refuse to participate in violating the family's constitutional rights and the child's medical safety by interfering in medical decisions. She did not exercise that right but instead participated in unconstitutionally denying the exemption with superintendent Pedisich.

### *Defendants Pettograsso, Rebera and Whitman*

Defendant Chris Pettograsso (Defendant Pettograsso) is the Superintendent of the Lansing Central School District. Defendants Christine Rebera (Defendant Rebera) and Lorri Whiteman (Defendant Whiteman) are the principals of two schools in the Lansing Central School District.

The Coe family has two medically vulnerable children in the Lansing Central School District. They have lost two children in the family to documented and government compensated serious adverse reactions to vaccines resulting in death. Multiple other family members suffered severe though non-fatal vaccine reactions.

The Coe family submitted medical exemptions for their surviving children written by a licensed New York physician and supported by a letter from the family genetic counselor, which detailed the serious adverse family history and the genetic vulnerabilities that show the children are at serious risk and cannot be safely vaccinated.

In violation of *Doe v. Bolton,* the defendants elected to subject the medical exemptions to substantive review. On or about January 21, 2020, Defendant Pettograsso informed the Coe family that she was removing the children from school unless they received over a dozen immunizations within a week against medical advice. She asserted that the building principals had made the decision to overrule the children's licensed physician "independently" but attached a recommendation from Dr. Rausch-Phung in support of the denial. Dr. Rausch-Phung's recommendation stated that the adverse reactions of family members (including in this case two deaths) are not "contraindications" under ACIP and concluded that she didn't have enough information or knowledge to understand if the genetic vulnerabilities were grounds for contraindication. She recommended a second opinion from a pediatric genetic specialist but stressed that her recommendation was not binding. PAC ¶175.

The Coe family attorney wrote to Defendant Pettograsso, noting the serious legal concerns with the denials, and asking that she consider, at the very least, allowing the children to remain in school for a short period while the family attempted to expedite getting an appointment with a pediatric genetic specialist (the waiting list for the two known such specialists being over a year at that point). The Coe family attorney pointed out the Constitutional concerns and also the fact that Dr. Rausch-Phung had only considered ACIP and neglected to consider the other nationally recognized evidence-based standards of care in recommending denial.

Defendant Pettograsso responded through counsel that the building principals had "made the determinations independently" and had not based their decisions to deny the exemptions on the advice of Dr. Rausch-Phung. Either way, as Superintendent, Defendant Pettograsso acted with gross disregard for the safety and constitutional rights of the Coe children in allowing these denials to occur and carrying them out. Either way, the building principals also acted with gross disregard

for the safety and constitutional rights of the Coe children in arbitrarily denying their valid and necessary medical exemptions written by a New York licensed physician.

These stories represent a few of the examples detailed in the PAC. Each individually named defendant is similarly alleged to have had personal involvement with making the unconstitutional policy decision to allow the unconstitutional reviews to occur, exercising gross negligence in reviewing and supervising the consultants they hired to help them, and failing to exercise their role in ensuring that plaintiffs received medical exemptions in accordance with PHL §2164(8) when their licensed physicians certified they were at risk of harm. In the interests of efficiency, plaintiffs will limit discussion in this letter brief to the analysis of these three stories. Ultimately, plaintiffs contend that the defense of lack of personal involvement is fact intensive and is premature on this motion to dismiss.

<u>**Conclusion**</u>

For the foregoing reasons, the Court should deny defendants' qualified immunity claims or reserve the question as premature at this stage given that all facts and inferences must be resolved in plaintiffs' favor.

Respectfully Submitted,

*s/Sujata S. Gibson*
Sujata Gibson
**The Gibson Law Firm, PLLC**
*Attorneys for the Plaintiff*
Bar Roll No. 517834
sujata@gibsonfirm.law

CC:    All attorneys of record via ECF