UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------x

JANE DOE on behalf of herself and her minor child;
JANE BOE, Sr. on behalf of herself and her minor child;
JOHN COE, Sr. on and JANE COE, Sr. on behalf of themselves
and their minor children; JOHN FOE, Sr. on behalf of himself
and his minor child; JANE GOE, Sr. on behalf of herself and
her minor child; JANE LOE on behalf of herself and her
medically fragile child; JANE JOE on behalf of herself and her
medically fragile child; CHILDRENS HEALTH DEFENSE,
and all others similarly situated,

                          Plaintiffs,

    -against-

HOWARD ZUCKER, in his official capacity as Commissioner
of Health for the State of New York; ELIZABETH
RAUSCH-PHUNG, M.D., in her official capacity as Director of
the Bureau of Immunizations at the New York State Department
of Health; the NEW YORK STATE DEPARTMENT OF HEALTH;
THREE VILLAGE CENTRAL SCHOOL DISTRICT; CHERYL
PEDISICH, acting in her official capacity as Superintendent, Three
Village Central School District; CORINNE KEANE, acting in her
official capacity as Principal Paul J. Gelinas Jr. High School, Three
Village Central School District; LANSING CENTRAL SCHOOL
DISTRICT; CHRIS PETTOGRASSO, acting in her official capacity
as Superintendent, Lansing Central School District; CHRISTINE
REBERA, acting in her official capacity as Principal, Lansing Middle
School, Lansing Central School District; LORRI WHITEMAN, acting
in her official capacity as Principal, Lansing Elementary School,
Lansing Central School District; PENFIELD CENTRAL SCHOOL
DISTRICT; DR. THOMAS PUTNAM, acting in his official capacity
as Superintendent, Penfield Central School District; SOUTH
HUNTINGTON SCHOOL DISTRICT; DR. DAVID P. BENNARDO,
acting in his official capacity as Superintendent, South Huntington
School District; BR. DAVID MIGLIORINO, acting in his official
capacity as Principal, St. Anthony's High School, South Huntington
School District; ITHACA CITY SCHOOL DISTRICT; DR. LUVELLE
BROWN, acting in his official capacity as Superintendent, Ithaca City
School District; SUSAN ESCHBACH, acting in her official capacity
as Principal, Beverly J. Martin Elementary School, Ithaca City School
District; COXSACKIE-ATHENS SCHOOL
DISTRICT; RANDALL SQUIER, Superintendent, acting in his
official capacity as Superintendent, Coxsackie-Athens School District;

Docket No.
1:20-cv-840
(BKS/CFH)

**NOTICE
OF APPEAL**

1

FREYA MERCER, acting in her official capacity as Principal,
Coxsackie Athens High School, Coxsackie-Athens School District;
ALBANY CITY SCHOOL DISTRICT; KAWEEDA G. ADAMS,
acting in her official capacity as Superintendent, Albany City School
District; MICHAEL PAOLINO, acting in his official capacity as
Principal, William S. Hackett Middle School, Albany City School
District; and all others similarly situated,

Defendants.

----------------------------------------------------------------------------------x

NOTICE IS HEREBY GIVEN that JANE DOE on behalf of herself and her minor child;

JANE BOE, Sr. on behalf of herself and her minor child; JOHN COE, Sr. and JANE COE, Sr. on

behalf of themselves and their minor children; JOHN FOE, Sr. on behalf of himself and his minor

child; JANE GOE, Sr. on behalf of herself and her minor child; JANE LOE on behalf of herself

and her medically fragile child; JANE JOE on behalf of herself and her medically fragile child;

CHILDRENS HEALTH DEFENSE, and all others similarly situated, the plaintiffs in the above-

captioned matter, hereby appeal to the United States Court of Appeals for the Second Circuit from

the annexed Judgment of the District Court for the Northern District of New York, entered on

February 17, 2021, which granted defendants' motions to dismiss, denied plaintiffs' motion to

amend the complaint, and dismissed the complaint in its entirety, and from each and every part

thereof, including without limitation the annexed Memorandum-Decision and Order of the

Northern District of New York, entered on February 17, 2021, upon which the Judgment is based.

Dated: Goshen, New York
      March 1, 2021

                                   Respectfully submitted,

                                   SUSSMAN AND ASSOCIATES
                                   Attorneys for Plaintiffs

                                   By: _____
                                       Michael H. Sussman
                                       Bar Roll No. 103324
                                       1 Railroad Avenue, Suite 3
                                       P.O. Box 1005

Goshen, New York, 10924
(845) 294-3991 [Tel]
(845) 294-1623 [Fax]
Sussman1@sussmna.law

Sujata S. Gibson, Esq., *Lead Counsel*
The Gibson Law Firm, PLLC
407 N. Cayuga Street, Suite 201
Ithaca, NY 14850
Tel: (607) 327-4125
Email: sujata@gibsonfirm.law
Bar Roll No. 517834

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

## <u>JUDGMENT IN A CIVIL CASE</u>

**JANE DOE on behalf of herself and her minor child; JANE BOE, Sr. on behalf of herself and her minor child; JOHN COE, Sr. and JANE COE, Sr. on behalf of themselves and their minor children; JOHN FOE, Sr. on behalf of himself and his minor child; JANE GOE, Sr. on behalf of herself and her minor child; JANE LOE on behalf of herself and her medically fragile child; JANE JOE on behalf of herself and her medically fragile child; CHILDREN'S HEALTH DEFENSE, and all others similarly situated,**

**Plaintiffs,**

vs.                                    **CASE NUMBER: 1:20-CV-0840 (BKS/CFH)**

**HOWARD ZUCKER, in his official capacity as Commissioner of Health for the State of New York; ELIZABETH RAUSCH-PHUNG, M.D., in her official capacity as Director of the Bureau of Immunizations at the New York State Department of Health; the NEW YORK STATE DEPARTMENT OF HEALTH; THREE VILLAGE CENTRAL SCHOOL DISTRICT; CHERYL PEDISICH, acting in her official capacity as Superintendent, Three Village Central School District; CORINNE KEANE, acting in her official capacity as Principal Paul J. Gelinas Jr. High School, Three Village Central School District; LANSING CENTRAL SCHOOL DISTRICT; CHRIS PETTOGRASSO, acting in her official capacity as Superintendent, Lansing Central School District; CHRISTINE REBERA, acting in her official capacity as Principal, Lansing Middle School, Lansing Central School District; LORRI WHITEMAN, acting in her official capacity as Principal, Lansing Elementary School, Lansing Central School District; PENFIELD CENTRAL SCHOOL DISTRICT; DR. THOMAS PUTNAM, acting in his official capacity as Superintendent, Penfield Central School District; SOUTH HUNTINGTON SCHOOL DISTRICT; DR. DAVID P. BENNARDO, acting in his official capacity as Superintendent, South Huntington School District; BR. DAVID MIGLIORINO, acting in his official capacity as Principal, St. Anthony's High School, South Huntington School District; ITHACA CITY SCHOOL DISTRICT; DR. LUVELLE BROWN, acting in his official capacity as Superintendent, Ithaca City School District; SUSAN ESCHBACH, acting in her official capacity as Principal, Beverly J. Martin Elementary School, Ithaca City School District; COXSACKIE-ATHENS SCHOOL DISTRICT; RANDALL SQUIER, Superintendent, acting in his official capacity as Superintendent, Coxsackie-Athens School District; FREYA MERCER, acting in her official capacity as Principal, Coxsackie Athens**

**High School, Coxsackie-Athens School District; ALBANY CITY
SCHOOL DISTRICT; KAWEEDA G. ADAMS, acting in her official
capacity as Superintendent, Albany City School District; MICHAEL PAOLINO,
acting in his official capacity as Principal, William S. Hackett
Middle School, Albany City School District; and all others similarly
situated,**

<strong>Defendants.</strong>

**Decision by Court.**  This action came to trial or hearing before the Court.  The issues
have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED** that Defendants' Motions to Dismiss are
**GRANTED,** Plaintiffs' motion to amend is **DENIED** as futile and Defendants' request for
transfer of venue is **DENIED** as moot. Plaintiffs' Complaint is **DISMISSED.**

All of the above in accordance with the Order of the Honorable Brenda K. Sannes
dated February 17, 2021.

Dated: February 17, 2021

Clerk of Court

Renata Hohl
Deputy Clerk

# Federal Rules of Appellate Procedure
## Rule 4. Appeal as of Right

### (a) Appeal in a Civil Case.

1. (1) *Time for Filing a Notice of Appeal.*

(A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i) the United States;
(ii) a United States agency;
(iii) a United States officer or employee sued in an official capacity; or
(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf — including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

(2) *Filing Before Entry of Judgment.* A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

(3) *Multiple Appeals.* If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) *Effect of a Motion on a Notice of Appeal.*

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice

of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(5) *Motion for Extension of Time.*

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) *Reopening the Time to File an Appeal.* The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) *Entry Defined.*

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58 (a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79 (a); or

(ii) if Federal Rule of Civil Procedure 58 (a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

• the judgment or order is set forth on a separate document, or

• 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JANE DOE on behalf of herself and her minor child; JANE BOE, Sr. on
behalf of herself and her minor child; JOHN COE, Sr. and JANE COE, Sr.
on behalf of themselves and their minor children; JOHN FOE, Sr. on behalf
of himself and his minor child; JANE GOE, Sr. on behalf of herself and her
minor child; JANE LOE on behalf of herself and her medically fragile child;
JANE JOE on behalf of herself and her medically fragile child;
CHILDREN'S HEALTH DEFENSE, and all others similarly situated,

                                               Plaintiffs,

v.                                                     1:20-cv-840 (BKS/CFH)

HOWARD ZUCKER, in his official capacity as Commissioner of Health
for the State of New York; ELIZABETH RAUSCH-PHUNG, M.D., in her
official capacity as Director of the Bureau of Immunizations at the New
York State Department of Health; the NEW YORK STATE
DEPARTMENT OF HEALTH; THREE VILLAGE CENTRAL SCHOOL
DISTRICT; CHERYL PEDISICH, acting in her official capacity as
Superintendent, Three Village Central School District; CORINNE KEANE,
acting in her official capacity as Principal Paul J. Gelinas Jr. High School,
Three Village Central School District; LANSING CENTRAL SCHOOL
DISTRICT; CHRIS PETTOGRASSO, acting in her official capacity as
Superintendent, Lansing Central School District; CHRISTINE REBERA,
acting in her official capacity as Principal, Lansing Middle School, Lansing
Central School District; LORRI WHITEMAN, acting in her official
capacity as Principal, Lansing Elementary School, Lansing Central School
District; PENFIELD CENTRAL SCHOOL DISTRICT; DR. THOMAS
PUTNAM, acting in his official capacity as Superintendent, Penfield
Central School District; SOUTH HUNTINGTON SCHOOL DISTRICT;
DR. DAVID P. BENNARDO, acting in his official capacity as
Superintendent, South Huntington School District; BR. DAVID
MIGLIORINO, acting in his official capacity as Principal, St. Anthony's
High School, South Huntington School District; ITHACA CITY SCHOOL
DISTRICT; DR. LUVELLE BROWN, acting in his official capacity as
Superintendent, Ithaca City School District; SUSAN ESCHBACH, acting
in her official capacity as Principal, Beverly J. Martin Elementary School,
Ithaca City School District; COXSACKIE-ATHENS SCHOOL
DISTRICT; RANDALL SQUIER, Superintendent, acting in his official
capacity as Superintendent, Coxsackie-Athens School District; FREYA
MERCER, acting in her official capacity as Principal, Coxsackie Athens
High School, Coxsackie-Athens School District; ALBANY CITY
SCHOOL DISTRICT; KAWEEDA G. ADAMS, acting in her official
capacity as Superintendent, Albany City School District; MICHAEL

PAOLINO, acting in his official capacity as Principal, William S. Hackett Middle School, Albany City School District; and all others similarly situated,

                                                        Defendants.[1]

_____

**Appearances:**

*For Plaintiffs:*
Sujata S. Gibson
The Gibson Law Firm, PLLC
407 N. Cayuga Street, Suite 201
Ithaca, NY 14850

Michael Sussman
Sussman & Associates
1 Railroad Ave, Suite 3, P.O. Box 1005
Goshen, NY 10924

*For Defendants New York State Department of Health, Zucker, and Rausch-Phung:*
Letitia James
Attorney General of the State of New York
Michael G. McCartin, Assistant Attorney General
Andrew W. Koster, Assistant Attorney General
The Capitol
Albany, New York 12224

*For Defendants Albany City School District, Adams, Paolino; Three Village Central School District, Pedisich, Keane; South Huntington Central School District, Bennardo; and Ithaca City School District, Brown and Eschbach:*
Gregg T. Johnson
Loraine C. Jelinek
Johnson & Laws, LLC
646 Plank Road, Suite 205
Clifton Park, NY 12065

Adam I. Kleinberg
Chelsea Weisbord
Sokoloff Stern LLP
179 Westbury Ave.
Carle Place, NY  11514

---

[1] The Court Clerk is respectfully requested to change the name of Plaintiff Childrens Health Defense on the docket to Children's Health Defense, as it is spelled in the body of the proposed First Amended Complaint. (*See, e.g.*, Dkt. No. 99-2, ¶ 57).

*For Defendants Coxsackie-Athens School District, Squier, Mercer; Penfield Central School District, Putnam; Lansing Central School District, Pettograsso, Rebera, and Whiteman:*
James G. Ryan
Roxanne L. Tashjian
Cullen and Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530

*For Defendant Br. David Anthony Migliorino:*
Joseph Kim
Elaine Nancy Chou
Meishin Riccardulli
Biedermann Hoenig Semprevivo a Professional Corporation
One Grand Central Place
60 East 42nd Street, 36th Floor
New York, NY 10165

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

Plaintiffs, seven families on behalf of their minor children who are "medically fragile" with impairments in the functioning of their immune systems, and the Children's Health Defense ("CHD"), filed this proposed class action challenging New York's allegedly burdensome and narrow medical exemptions to mandatory school immunization requirements. (Dkt. No. 1). Plaintiffs allege that Defendants, including the New York State Department of Health ("DOH"), New York Commissioner of Health Howard Zucker, the DOH Director of the Bureau of Immunizations Elizabeth Rausch-Phung, M.D., seven school districts and their administrators (collectively the "School District Defendants"), and the Principal of St. Anthony's High School Brother David Anthony Migliorino, have violated their Fourteenth Amendment substantive due process and equal protection rights, liberty interest in parenting and informed consent, and right to free public education under 42 U.S.C. § 1983, as well as § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). (*Id.*). Presently before the Court are: Defendants' motions to dismiss

3

the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6); a request by the

Three Village, South Huntington, and Brother Migliorino Defendants to transfer venue to the

Eastern District of New York; and Plaintiffs' motion to amend the Complaint, (Dkt. Nos. 28, 54,

78, 91, 93).[2] The parties have briefed these motions fully and on January 6, 2021, the Court held

oral argument. For the reasons that follow, Defendants' motions to dismiss are granted, the

motion to transfer venue is denied as moot, and Plaintiffs' motion to amend is denied.

## II.    MOTION TO AMEND

With their motion to amend, (Dkt. No. 93), Plaintiffs have submitted a proposed First

Amended Complaint. (Dkt. Nos. 93-1, 99-2).[3] Plaintiffs assert that under Rule 15(a)(1)(B), they

may file an amended pleading as to Defendant Migliorino as a matter of course because they

filed their motion to amend within 21 days of his motion to dismiss. (Dkt. No. 93, at 1). Plaintiffs

seek the Court's leave under Fed. R. Civ. P. 15(a)(2) to file the First Amended Complaint with

respect to all other Defendants. (*Id.*). Defendants oppose Plaintiffs' motion to amend in its

entirety on the ground that amendment is futile. (Dkt. Nos. 108 to 111).

Federal Rule of Civil Procedure 15(a)(1) provides that: "A party may amend its pleading

once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to

which a responsive pleading is required, 21 days after service of a responsive pleading or 21

---

[2] On August 25, 2020, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction under Federal Rule of Civil Procedure 65, seeking an order restraining the implementation and enforcement of the applicable regulations. (Dkt. No. 41). After briefing and oral argument, the Court denied Plaintiffs' motion. (Dkt. No. 46 (denying motion for temporary restraining order)); *Doe v. Zucker*, No. 20-cv-840, 2020 WL 6196148, 2020 U.S. Dist. LEXIS 196279 (N.D.N.Y. Oct. 22, 2020) (denying motion for preliminary injunction). Plaintiffs appealed the Court's denial of their motion for a preliminary injunction and moved for an emergency injunction pending appeal. *Doe v. Zucker*, No. 20-3915 (2d Cir.). The Second Circuit denied their motion for an emergency injunction, *Doe v. Zucker*, No. 20-3915 (2d Cir. Jan. 6, 2021), and the Supreme Court denied their emergency application for an injunction, *Doe v. Zucker*, No. 20A135 (Sotomayor, Circuit Justice, Jan. 29, 2021). Plaintiffs' appeal of this Court's denial of their motion for a preliminary injunction is pending.

[3] The Court has cited to the most recent, revised proposed First Amended Complaint, which updates the originally-filed version by omitting defendants that Plaintiffs have voluntarily dismissed. (Dkt. Nos. 99-2, 104).

days after service of a motion under Rule 12(b) . . . whichever is earlier." Plaintiffs filed their

proposed First Amended Complaint on October 22, 2020, six days after Defendant Migliorino

filed his motion to dismiss, (Dkt. No. 93 (motion to amend filed Oct. 22, 2020); Dkt. No. 91

(Defendant Migliorino's motion to dismiss filed Oct. 16, 2020)), and thus may amend as to

Defendant Migliorino as a matter of course. As to the remaining Defendants, however, Plaintiffs

"may amend [their] pleading only with the . . . court's leave." Fed. R. Civ. P. 15(a)(2).

In general, leave to amend should be freely given "when justice so requires." Fed. R. Civ.

P. 15(a)(2). "Where plaintiffs seek to amend their complaint while a motion to dismiss is

pending, a court 'has a variety of ways in which it may deal with the pending motion to dismiss,

from denying the motion as moot to considering the merits of the motion in light of the amended

complaint.'" *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (quoting

*Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn.

2008)); *see also Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020)

(adopting the rule that "when a plaintiff properly amends her complaint after a defendant has

filed a motion to dismiss that is still pending, the district court has the option of either denying

the pending motion as moot or evaluating the motion in light of the facts alleged in the amended

complaint," explaining that "[t]his is a sound approach that promotes judicial economy by

obviating the need for multiple rounds of briefing addressing complaints that are legally

insufficient").

Since Defendants have had an opportunity to respond to the proposed amendments, and

argue that the amendments are futile, the Court considers the merits of the motions to dismiss in

light of the proposed First Amended Complaint. If the claims in the proposed First Amended

Complaint cannot survive the motions to dismiss, then Plaintiffs' motion to amend will be denied

as futile. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d

Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a

motion to dismiss pursuant to Rule 12(b)(6).").

## III.   MATERIALS OUTSIDE THE COMPLAINT

Because Defendants have submitted exhibits in support of their motions to dismiss, (*see*

*generally* Dkt. Nos. 28, 54, 78, 91), before setting forth the facts, the Court must determine

which exhibits, if any, it may consider in deciding their motions. "Generally, consideration of a

motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."

*Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the

complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include

any written instrument attached to it as an exhibit or any statements or documents incorporated

in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not

incorporated by reference, the court may nevertheless consider it where the complaint relies

heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.*

(quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation

marks omitted)). Even where a document is deemed "'integral' to the complaint, it must be clear

on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.*

(quoting *DiFolco*, 622 F.3d at 111). "It must also be clear that there exist no material disputed

issues of fact regarding the relevance of the document." *Id.* (quoting *Faulkner*, 463 F.3d at 134).

"This principle is driven by a concern that a plaintiff may lack notice that the material will be

considered to resolve factual matters." *Id.* Thus, "if material is not integral to or otherwise

incorporated in the complaint, it may not be considered unless the motion to dismiss is converted

to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Id.* (quoting Fed. R. Civ. P. 12(d)).

State Defendants' Exhibits 1, 2, and 3 contain the legislative history of New York Public Health Law § 2164. (Dkt. Nos. 28-3 to 28-5). State Defendants' Exhibits 4 and 6 are the Emergency Regulations dated August 16, 2019 and Final Regulations, respectively. (Dkt. No. 28-6, - 8). The legislative history of a bill is, of course, proper ground for judicial notice. *See, e.g.*, *Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226 (1959) (taking judicial notice of the legislative history of bill at issue).

State Defendants' Exhibit 5 is the Center for Disease Control and Prevention's ("CDC") "Best Practices Guidance of the Advisory Committee on Immunization Practices" ("ACIP"). (Dkt. No. 28-7). The proposed First Amended Complaint relies on the contents of the ACIP guidance. (*See, e.g.*, Dkt. No. 99-2, ¶ 11 ("[T]the ACIP guidance is not comprehensive and was never intended to serve as a basis for granting or denying medical exemption. The CDC itself has clearly stated that the ACIP guidance is not meant to replace the clinical judgment of a treating physician."); Dkt. No. 99-2, ¶ 109 ("ACIP's 'catch-up guidance' requires John to receive twenty-four doses of vaccines for ten separate diseases within twelve months.")). The Court therefore considers this document.

State Defendants' Exhibit 7 is the 2013 Infectious Diseases Society of America ("IDSA") "Clinical Practice Guideline for Vaccination of the Immunocompromised Host." (Dkt. No. 28-9). State Defendants' Exhibits 8 and 9 are vaccine recommendations by the American Academy of Pediatrics ("AAP") and the American Academy of Family Physicians ("AAFP"), respectively. (Dkt. Nos. 28-10, -11). The State Defendants cite these documents as "[e]xamples of other nationally-recognized evidence-based standards of care." (Dkt. No. 28-1, at 9 n.1). As these

documents are not referenced in the proposed First Amended Complaint and the State

Defendants have cited no legal authority for the Court's reliance on them at this stage, the Court

declines to consider Exhibits 7, 8, or 9.

In addition to documents already discussed, the Albany, Ithaca, South Huntington, and

Three Village Defendants attach administrative decisions by the Commissioner of Education.

(Dkt. Nos. 54-4 to -11). The Albany Defendants appear to rely on these administrative decisions

in support of their argument that Plaintiffs must exhaust their administrative remedies by seeking

review by the Commissioner before proceeding in federal court. (*See* Dkt. No. 54-14, at 20

(citing administrative decisions as examples of the Commissioner's consideration of medical

exemption requests)). One of the Commissioner's decisions—the decision dismissing John

Doe's appeal—is described in several paragraphs, and quoted, in the proposed First Amended

Complaint. (Dkt. No. 99-2, ¶¶ 117–21; Dkt. No. 54-4).[4] The Court may therefore consider that

decision as incorporated into the complaint. Alternatively, the Court may take judicial notice of

that decision, as well as the other administrative decisions, "though [the] factual findings may

not be taken as true for purposes of the motion to dismiss." *Zynger v. Dep't of Homeland Sec.*,

615 F. Supp. 2d 50, 61 (E.D.N.Y. 2009), *aff'd*, 370 F. App'x 253 (2d Cir. 2010); *see Colon v.

Holdridge*, No. 9:13–cv–1546, 2015 WL 1730240, at *4, 2015 U.S. Dist. LEXIS 48528, at *10

(N.D.N.Y. Apr. 14, 2015) ("[T]he court may consider matters of which judicial notice may be

taken, such as public filings and administrative decisions") (citing *Kavowras v. N.Y. Times Co.*,

328 F.3d 50, 57 (2d Cir. 2003)).

---

[4] Plaintiffs' counsel acknowledged at oral argument that Dkt. 54-4 is the Commissioner's decision concerning John Doe.

The Albany Defendants' last exhibit, Exhibit L, is a copy of "the procedures issued by the New York State Department of Health for the review of requests for medical exemptions which can be found at:

https://www.health.ny.gov/professionals/doctors/conduct/docs/medical_exemption_review_proc edures_for_schools.pdf." (Dkt. No. 54-1, ¶ 15; Dkt. No. 54-13). Exhibit L is dated October 2019. The link to the website leads to procedures dated October 2020. While the documents appear identical, because no party has addressed whether there are differences or which, of the two, the Court should consider, the Court does not consider this document at this stage in the litigation.

The Coxsackie-Athens, Penfield, and Lansing Defendants have submitted an affidavit by Daniel Driffill, Assistant Superintendent for Business of Penfield Central School District, in support of their motion to dismiss. (Dkt. Nos. 78-2 to -3). There is no assertion that the affidavit is integral to the Complaint or proposed First Amended Complaint and the Court declines to treat these Defendants' motion as one for summary judgment. Accordingly, the Court does not consider the affidavit in determining these Defendants' motion to dismiss. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016) (observing that if a district court wishes "to take account" of "materials outside the pleadings" that are not integral to the complaint "at the motion-to-dismiss stage" it must treat the motion as one for summary judgment and concluding that the district court erred in relying on, among other things, the plaintiff's affidavit in deciding the defendants' motions to dismiss (citing Fed. R. Civ. P. 12(d))).

Defendant Migliorino filed a declaration in support of his motion to dismiss. (Dkt. No. 91-2). For the same reasons it declined to consider the Driffill affidavit, the Court declines to consider this declaration.

Throughout the proposed First Amended Complaint, Plaintiffs refer to the State-required medical exemption form. (Dkt. No. 99-2, ¶ 267 (comparing the State medical exemption form to the New York City DOH form); *see also id.* ¶¶ 15, 102, 103, 105, 119, 144, 150, 285, 288–89). The Medical Exemption Form is available on New York's DOH website: https://www.health.ny.gov/forms/doh-5077.pdf (last visited Feb. 17, 2021). As it is a governmental form, referred to in the regulations and integral to the pleading in this case, the Court takes judicial notice of it. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (finding it "clearly proper" to take judicial notice of documents retrieved from official government websites); *see also, e.g.*, *Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 131–32 (D. Conn. 2007) ("XL's SEC documents, specifically SEC Forms . . . are referenced in the [complaint] and therefore are properly incorporated by reference."), *aff'd*, 312 F. App'x 400 (2d Cir. 2009).

Accordingly, the Court has drawn the facts that follow from the proposed First Amended Complaint, the exhibits incorporated by reference in the proposed First Amended Complaint, and documents of which it is proper to take judicial notice under Fed. R. Evid. 201. (Dkt. No. 25). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

## IV.    FACTS

### A.    New York's Mandatory Vaccination Law

New York Public Health Law § 2164 (the "mandatory vaccination law" or "mandatory vaccination requirement") requires children aged two months to eighteen years to be immunized from certain diseases before they can attend "any public, private or parochial . . . kindergarten, elementary, intermediate or secondary school." N.Y. Pub. Health Law § 2164(1)(a). The mandatory vaccination law requires children to be immunized against poliomyelitis, mumps,

measles, diphtheria, rubella, varicella, hepatitis B, pertussis, tetanus, and, where applicable, Haemophilus influenzae type b (Hib), meningococcal disease, and pneumococcal disease. N.Y. Pub. Health Law § 2164(7). A child may not attend school in excess of fourteen days without documentation showing that the child was immunized or is in the process of complying with the immunization series. N.Y. Pub. Health Law § 2164(7); 10 N.Y.C.R.R. § 66-1.3(a), (b).

The mandatory vaccination law initially contained two exemptions: a medical exemption requiring a physician's certification that the physician had determined that the vaccination may be detrimental to the child's health, N.Y. Pub. Health Law § 2164(8); and a non-medical exemption that required a statement by the parent or guardian indicating that they objected to vaccination on religious grounds, N.Y. Pub. Health Law § 2164(9), *repealed by* L.2019, c. 35, § 1, eff. June 13, 2019. In 2019, the New York Legislature repealed the religious exemption after finding that "[o]utbreaks in New York have been the primary driver" of the United States' "worst outbreak of measles since 1994," with 810 of the 880 cases confirmed nationwide in 2019. (Dkt. No. 28-3, at 6 (Sponsor Memo, S2994A)). The Legislature further found that:

> According to the Centers for Disease Control, sustaining a high vaccination rate among school children is vital to the prevention of disease outbreaks, including the reestablishment of diseases that have been largely eradicated in the United States, such as measles. According to State data from 2013-2014, there are at least 285 schools in New York with an immunization rate below 85%, including 170 schools below 70%, far below the CDC's goal of at least a 95% vaccination rate to maintain herd immunity. This bill would repeal exemptions currently found in the law for children whose parents have non-medical objections to immunizations.

2019 New York Assembly Bill No. 2371, New York Two Hundred Forty-Second Legislative Session (May 22, 2019).

On August 16, 2019, following the repeal of the religious exemption, the New York Commissioner of Health issued "emergency regulations," amending the regulations governing

the mandatory vaccination law "to conform to recent amendments to Section[] 2164" and to "make the regulations consistent with national immunization recommendations and guidelines." (Dkt. No. 28-6, at 1 (Summary of Express Terms of Emergency Regulations Aug. 16, 2019 (the "Summary"))).[5] The Summary noted that when California removed non-medical exemptions to school immunization requirements in 2015 "without taking steps to strengthen the rules governing medical exemptions," the use of medical exemptions to school immunization requirements more than tripled. (Dkt. No. 28-6, at 16). The Summary further noted that "[b]y providing clear, evidence-based guidance to physicians, th[e] emergency regulation will help prevent medical exemptions being issued for non-medical reasons." (*Id.* at 16–17).

Specifically, the Commissioner added a new subdivision defining "may be detrimental to the child's health," as used in § 2164 of the school vaccination law, to mean "that a physician has determined that a child has a medical contraindication[6] or precaution[7] to a specific immunization consistent with ACIP [the CDC Advisory Committee on Immunization Practices] guidance or other nationally recognized evidence-based standard of care." 10 N.Y.C.R.R. § 66-1.1(l). The amendments also required "the use of exemption forms approved by the New York State Department of Health" and no longer allowed only "a written statement from a physician." N.Y.C.R.R. § 66-1.3(c). Subdivision (c) of 10 N.Y.C.R.R. § 66-1.3, was otherwise unchanged,

---

[5] The mandatory vaccination law authorizes the Commissioner of Health to "adopt and amend rules and regulations to effectuate the provisions and purposes of [§ 2164]." N.Y. Pub. Health Law § 2164(10). The Commissioner is also required, under the Public Health Law, to "establish and operate such adult and child immunization programs as are necessary to prevent or minimize the spread of disease and to protect the public health," and is authorized to "promulgate such regulations" governing vaccinations. N.Y. Pub. Health Law § 206(1)(l).

[6] "Contraindications (conditions in a recipient that increases the risk for a serious adverse reaction) to vaccination are conditions under which vaccines should not be administered." (Dkt. No. 28-7 at 49 (ACIP General Best Practices Guidelines for Immunization)).

[7] "A precaution is a condition in a recipient that might increase the risk for a serious adverse reaction, might cause diagnostic confusion, or might compromise the ability of the vaccine to produce immunity. . . The presence of a moderate or severe acute illness with or without a fever is a precaution to administration of all vaccines." (Dkt. No. 28-7 at 50 (ACIP General Best Practices Guidelines for Immunization)).

however, and continued: (i) to require that the "physician certifying that immunization may be detrimental to the child's health, contain[] sufficient information to identify a medical contraindication to a specific immunization and specify the length of time the immunization is medically contraindicated," (ii) to require that the medical exemption "be reissued annually," and (iii) to provide that "[t]he principal or person in charge of the school may require additional information supporting the exemption." *Compare* 10 N.Y.C.R.R. § 66-1.3(c), *with* 2014 N.Y. Reg. Text 336024 (NS) (Notices of Adoption 10 N.Y.C.R.R. § 66-1.3).

During a public comment period, (Dkt. No. 28-4, at 8), the NYS American Academy of Pediatrics, the NYS Academy of Family Physicians, the NYS Association of County Health Officials, the American Nurses' Association, the Medical Society of the State of New York, and the NYS Society of Dermatology and Dermatologic Surgery "expressed support of the regulations." (Dkt. No. 28-5, at 31). The regulations were adopted permanently as of December 31, 2019. (*Id*. at 31–32).

### B.  Plaintiffs

#### 1.  John Doe – Coxsackie-Athens School District

##### a.  Medical History

John Doe, age fifteen, has "multiple auto-immune and progressive neurological disease diagnoses," including

> mitochondrial disorder, hypoglycemia, genetic mutations, environmentally induced porphyria, metabolic and hormonal imbalances, eczema, food and environmental allergies, candida infection, amino acid disorder, heavy metal toxicity, and several autoimmune disorders—including Pediatric Autoimmune Neurological Disorder Associated with Streptococcus ("PANDAS"), Irritable Bowel Syndrome ("IBS"), thyroid disease, and Gluten-Sensitive Enteropathy.

13

(Dkt. No. 99-2, ¶¶  50, 92). Doe's "conditions are chronic, incurable and at times completely

debilitating." (*Id.* ¶ 93). Doe's "disabilities significantly impair multiple major life functions,

including but [not] limited to the functions of his immune system." (*Id.*). Since the age of four,

Doe has seen "a specialist in Massachusetts known to help children with PANDAS." (*Id.* ¶ 94).

"Through years of hard work and vigilant routines by his parents and providers, [Doe] has begun

to stabilize and regain some measure of health and normalcy." (*Id.*). "Avoiding triggers,

including certain foods, chemicals, and immunizations, has been critical to prevent regression of

one or more of [Doe's] auto-immune diseases and in managing his disorders." (*Id.* ¶ 95).

"Following the advice of multiple treating physicians, [Doe] has not received any

immunizations." (*Id.* ¶ 96).

### b.      First Medical Exemption Request

On August 23, 2019, Doe's parents submitted a "medical exemption from [Doe's]

pediatrician, Dr. Peter Forman, a licensed New York physician who has been [Doe's] primary

care physician for more than ten years." (*Id.* ¶ 97). In support of the medical exemption, Dr.

Forman included "a supplemental letter from Dr. Papanicolau," Doe's "treating physician at the

Massachusetts clinic he has attended for eleven years." (*Id.*). Drs. Forman and Papanicolau have

observed Doe "regress into debilitating flare ups of his underling medical conditions when faced

with immune triggers" and "concurred it was unsafe for [Doe] to receive any immunization

given his multiple chronic and serious conditions and the risk that immunization could trigger a

regression." (*Id.* ¶ 98).

On September 16, 2019, Defendant Randall Squier, Superintendent of the Coxsackie-

Athens School District, denied Doe's request for a medical exemption after consulting Dr.

Stephen G. Hassett, an emergency medicine physician. (*Id.* ¶ 99). Dr. Hassett is a "paid

consultant to the Coxackie-Athens Central School District" and acts under Superintendent

Squier's supervision. (*Id.*). Dr. Hassett recommended denying Doe's request for a medical exemption "based on his opinion that" the letters from Drs. Forman and Papanicolau "did not specify how the exemption request qualified under the ACIP contraindications or precautions." (*Id.* ¶ 100). Doe's mother requested that Dr. Hassett "speak to [Doe's] pediatrician or review supplementary materials to clarify why the two treating physicians believed that he needed a medical exemption." (*Id.* ¶ 102). Dr. Hassett refused. (*Id.*). Superintendent Squier "was made aware of these failures." (*Id.*). Following the denial, Dr. Forman called Dr. Hassett, who "indicated that he had no discretion to hear any supplemental information or support for the exemption and was obligated to follow the strict guidelines set forth by ACIP based only on the information he received on the form." (*Id.* ¶ 103).

### c.     Second Medical Exemption Request

On October 5, 2019, the Doe family "submitted a second medical exemption letter in which Dr. Forman detailed for each vaccine how [Doe's] conditions qualified under the ACIP guidance as a precaution or contraindication." (*Id.* ¶ 104). "Within twenty-four hours of receiving the second certification form, Defendant Squier again denied the application, again on the recommendation of Dr. Hassett, who said the second certification was 'not supported,'" without specifying why. (*Id.* ¶ 105).

Doe's mother called Dr. Hassett, who "conceded that the exemption letter submitted the second time followed the ACIP guidelines verbatim" but told Ms. Doe that "he would not 'debate' with [her] or provide her with any explanation about his denial and ended the call." (*Id.* ¶¶ 106–07). "Defendant Squier was made aware of these actions." (*Id.*). To attend school without a medical exemption, Doe would have "to receive twenty-four doses of vaccines for ten separate diseases within twelve months," nineteen of which he "would have to receive . . . within

a four-week timeline. (*Id.* ¶ 109–10). Doe has been "excluded from participation in classes, in person or online since October 7, 2019." (*Id.* ¶ 113).

### d.  Appeal to the Commissioner of Education

On November 5, 2019, the Doe family appealed the denial to the Commissioner of Education. (*Id.* ¶ 116). "Two members of the New York State Legislature sent correspondence to the Commissioner of education supporting Doe's appeal on or about December 20, 2019." (*Id.*). "The letters stated that the New York State Legislature did not intend for school districts to have unilateral power to overrule treating physicians." (*Id.*).

On July 30, 2020, the Commissioner issued a decision finding that Coxsackie-Athens' determination was not "arbitrary or capricious" and dismissing the appeal. (Dkt. No. 54-4, at 10; Dkt. No. 99-2, ¶ 117). The Commissioner noted that the Does' first request for a medical exemption was supported by Doe's physician, who had opined that an exemption "to all eight required vaccinations" "was appropriate" because "there [was] an increased risk of adverse events" given Doe's medical history, which included "multiple food allergies, Gluten Enteropathy, abnormal thyroid function, mitochondrial dysfunction and induced porphyria due to lead and mercury exposure," "behavioral issues," and "PANDA[S]." (Dkt. No. 54-4, at 2). The Commissioner noted that the Does' second medical exemption request also sought an exemption "to all eight required immunizations" and that Doe's physician "provided an identical justification for the student's exemption from each of the eight required vaccinations." The Commissioner observed that Doe's physician wrote that "[t]he immunization may be detrimental to [Doe's] health," and noted Doe's physician's opinion that Doe met the definition of precaution because his medical conditions—those listed in the first medical exemption request—were "moderate or severe illnesses [that] may be episodic with acute onset" and "[t]his precaution avoids causing diagnostic confusion." (*Id.* at 2–3).

16

The Commissioner found that the Does failed to prove that Coxsackie-Athens' "determination was arbitrary or capricious," explaining that the evidence submitted "consists primarily of printouts of DOH and Centers for Disease Control (CDC) websites about certain immunizations and diseases, including PANDAS," which constituted "general information concerning vaccines" that "does not address the student's unique circumstances."[8] (*Id.* at 5). The Commissioner noted that the Does offered "no evidence such as an affidavit from the student's physician, containing sufficient information to identify that the student has a precaution or contraindication to any of the eight required vaccinations." (*Id.*). The Commissioner further found that even if Doe's episodic "moderate or severe illness" constituted a precaution, under the ACIP Guidelines, "the precaution to vaccination only exists until such acute episode resolves." (*Id.*). The Commissioner also rejected the Does' argument that Coxsackie-Athens acted arbitrarily in denying the request "without further inquiry," explaining that although the school was not required to obtain additional information, Superintendent Squier had, "in fact, sought and obtained additional information from the school physician." (*Id.* at 6).

### 2.    Jane Boe – Three Village Central School District

### a.    Medical History

Jane Boe, age fifteen, has "multiple diagnosed autoimmune syndromes . . . including autoimmune encephalitis, which causes progressive neurological injury and attacks the brain." (Dkt. No. 99-2, ¶ 51). Boe has also been diagnosed with "Postural Orthostatic Tachycardia

---

[8] Plaintiffs allege that this is improper, asserting that the "Commissioner acknowledged that the second medical exemption submitted by the licensed physician had many pages attached which show CDC guidance on immunization in light of John's conditions, but deemed this too general even though John has these very conditions." (Dkt. No. 99-2, ¶ 120). Plaintiffs also claim that the Commissioner made this determination "without any hearing or testimony from medical professionals about what did and did not fall within those boundaries." (*Id.*). They further assert that the Commissioner only determined whether Doe's "conditions were easily identifiable as contraindications specifically enumerated in the ACIP guidelines which they interpreted without" guidance from medical professionals. (*Id.*).

Syndrome ("POTS"), dysautonomia, and chronic/severe Lyme disease and bartonella." (*Id.* ¶ 127). Boe's "disabilities significantly impair multiple major life functions, including but not limited to the functions of her immune system." (*Id.* ¶ 125). Boe "and her siblings have all had severe adverse reactions to immunization." (*Id.* ¶ 51). Boe's two "brothers developed autoimmune encephalitis and acute neurological neuropsychiatric conditions that were significantly exacerbated by immunization." (*Id.* ¶ 129). Boe's "middle brother became so ill that he was forced to take a medical leave from middle school to receive medical treatment and homebound instruction" and required "several years of continuous treatment . . . to regain his health." (*Id.* ¶ 130). In 2016, Boe's oldest brother, then age eighteen, received "the Meningococcal vaccine against medical advice prior to attending his freshman year in college." (*Id.* ¶ 131). "This, coupled with a flu vaccine and other immune assaults, are believed to have triggered an acute cascade of neurological and other health symptoms that ended with [Boe's] brother committing suicide in June 2018." (*Id.*). "Genetic testing shows vulnerabilities that may explain why all three children have developed chronic health conditions after immunization." (Dkt. No. ¶ 132).

Boe's "health began to deteriorate significantly after her last set of immunizations at age twelve." (*Id.* ¶ 128). In July 2017, Boe "received the TDaP immunization to attend sleepaway camp" and "[a]fter this immunization, [Boe's] health began to deteriorate again." (*Id.* ¶ 133). To date, Boe "has received all the mandatory immunizations required of her except for the meningococcal vaccine and booster" as Boe's "physicians determined that the risks of getting this vaccine far outweighed any potential benefit." (*Id.* ¶¶ 134, 137).

### b.    First Medical Exemption Request

In August 2019, Boe's "family submitted a medical exemption from her treating physician Dr. Laura Bennett." (Dkt. No. 99-2, ¶ 138). Dr. Howard Sussman, Three Village's

consulting doctor, contacted Dr. Bennett "to discuss the impending denial of the medical exemption as written" and stated that he "'wouldn't give this child the vaccine either,' but the medical exemption wasn't written sufficiently." (*Id.* ¶ 143). Dr. Sussman "recommended [that Dr. Bennett] write a new one with 'more specific' language." (*Id.* ¶¶ 139, 143). Following this conversation, on Dr. Sussman's advice, Three Village, through its "agents defendant [Superintendent] Cheryl Pedisch and defendant [Principal] Corinne Keane, denied [Boe's] medical exemption." (*Id.*).

According to Plaintiffs, Dr. Sussman "reviews only . . . whether a medical exemption is easily understood by him as falling under the ACIP contraindications" and "does not consider any other 'nationally recognized evidence-based' reasons for a medical exemption and has made this clear to all the defendants." (*Id.* ¶ 142).

### c.   Second Medical Exemption Request

On September 17, 2019, Boe's family "submitted a second more detailed medical exemption form signed by Dr. Bennett." (*Id.* ¶ 144). Dr. Bennett supplemented the exemption form with "a letter detailing that the reasons for exemption were in line with CDC criteria" and "a letter from Dr. Nancy O'Hara, a licensed physician and specialist [Boe] sees in Connecticut." (*Id.*). "Both physicians noted that [Boe] was undergoing active treatment and agreed that further immunization could put [Boe] at risk of serious harm." (*Id.*). "The school sent the second exemption packet directly to the [DOH] for review." (*Id.* ¶ 145).

In November 2019, Dr. Rausch-Phung, the DOH Director of Immunizations, "recommended the school deny the exemption," writing that it was in Boe's "'best interest' to be immunized with meningococcal vaccine despite the medical concerns and history." (*Id.* ¶¶ 146–47). Regarding the death of Boe's sibling, Dr. Rausch-Phung stated that "even if it was from an adverse reaction to the vaccine, [it] was not a sufficient reason to grant an exemption." (*Id.* ¶

147). Following this recommendation from Dr. Rausch-Phung, Three Village "denied the second exemption and indicated that Jane needed to leave school if she was not immunized" by December 20, 2019. (*Id.*).

### d.   Third Medical Exemption Request

In December 2019, Boe's "family submitted a third medical exemption from a third treating physician, Dr. Caroline Hartridge . . . a physician licensed to practice medicine in New York." (*Id.* ¶ 148). "Dr. Hartridge's exemption letter stated that [Boe] suffered from acute illness, pointing out that acute illness is a listed precaution under the ACIP guidelines concerning meningococcal vaccine and recommending that Jane avoid immunization until her illness was no longer acute." (*Id.*). Three Village sent Dr. Hartridge's letter to the DOH for review. (*Id.* ¶ 149).

"On March 2, 2020, Dr. Rausch-Phung sent a letter allowing a 'one month' exemption upon which she asked that the family submit an additional medical exemption for which she would review." (*Id.* ¶ 150). "The school could not specify whether the month ran from the date of submission of the third exemption letter (December 2019) or the date they received a response from Dr. Rausch-Phung (March 2020)." (*Id.*). Boe's family hired "an attorney to attempt to negotiate with the school for clarity." (*Id.* ¶ 151). Three Village "refused to consider allowing their principal or superintendent to approve the follow up requests and was unable to provide clarity on whether the exemption in place had to be renewed immediately or in April, and how long it might take to get an answer on the follow up request." (*Id.*).

Dr. Sussman "opined" that the one-month exemption "ran from December and so the one month expired two months before the school received the letter back from the DOH or notified the family." (*Id.* ¶ 152). As a result, the school "expelled [Boe] in March 2020." (*Id.*). The school "demanded that Jane Boe be immunized" and did not ask Boe's family "to submit the follow up exemption letter first even though the DOH determination had said her exemption did qualify,

though it was to be resubmitted in a month." (*Id.*). "Having already lost one child after giving him the meningococcal vaccine against medical advice, the family was unwilling to risk [Boe's] health by going against their three treating doctors' advice." (*Id.* ¶ 153). Boe has been "unable to attend school since January 2020" and her family has "been forced to homeschool [Boe] and have had to spend enormous amounts of money on online programs to try to provide their daughter with an education." (*Id.* ¶ 154).

### 3.    Jane and John Coe – Lansing School District

#### a.    Medical History

Jane Coe, age twelve, and John Coe, age ten, have "a family history of severe reaction to immunization, including two deaths, along with subsequent genetic testing that reveals genetic vulnerability to injury," and have "never been vaccinated." (Dkt. No. 99-2, ¶ 52). Jane and John Coe's uncle (their father's brother) "died from an adverse reaction to his two-month vaccines." (*Id.* ¶ 158). "The cause of death was documented on the death certificate as having been from immunization and, after a hearing, his estate received compensation from the National Vaccine Injury Compensation Program." (*Id.*). Jane and John Coe's father, aunt, and grandmother have all had "severe reaction[s]" to immunization, and their father's cousin "died after administration of her childhood vaccines." (*Id.* ¶ 160). Jane and John Coe's father "and his surviving siblings had medical exemptions from immunization throughout the rest of their childhoods." (*Id.* ¶ 161). "Upon the advice of medical professionals and considering the family history, John and Jane [Coe] have never been vaccinated and have had exemptions since they were born." (*Id.* ¶ 162). "Both children have multiple food, environmental and drug allergies, and precarious health." (*Id.* ¶ 163). "The family sees a genetic counselor who has identified several genetic mutations and markers that could explain the significant family pattern of adverse reactions and the children's predisposition towards health issues." (*Id.* ¶ 164). "[T]here is a family history of numerous

autoimmune and other conditions consistent with the genetic profile of the children." (*Id.* ¶ 165). Jane and John Coe's "disabilities significantly impair multiple major life functions, including . . . functions of their immune systems." (*Id.* ¶ 166).

>   **b.     Medical Exemption Request**

In August 2019, Jane and John Coe's "parents submitted applications for medical exemptions explaining the family history and the children's medical history signed by . . . Dr. Christopher Scianna, who is licensed to practice in New York." (*Id.* ¶ 167). "Dr. Scianna concluded that it was unsafe for either child to be vaccinated due to their current states of vulnerable health and their genetic analysis and family history of significant adverse vaccine reactions, including two deaths." (*Id.* ¶ 168). A letter from the Coes' genetic counselor was attached to the exemption application. (*Id.* ¶ 169).

Jane and John Coe "began school as usual in fall 2019." (*Id.* ¶ 170). On January 21, 2020, the Coes "received correspondence from Chris Pettograsso, Superintendent of the Lansing School District, stating that 'the building principals' (Christine Rebera and Lorri Whiteman) had rejected the medical exemptions for both children." (*Id.* ¶ 171). "The family was given one week to get eleven different vaccines for each child to return to school." (*Id.*). Superintendent Pettograsso "noted that the school had received a recommendation from the NYDOH and by unspecified members" of a local "medical team" but "that the building principals [Rebera and Whiteman] each ultimately made the decision to reject the medical exemptions 'independently.'" (*Id.* ¶ 172). Attached to Superintendent Pettograsso's correspondence was a letter dated December 5, 2019 by Dr. Rausch-Phung, who wrote that "the adverse reactions of family members (including death) are not contraindications for immunization under ACIP and concluded that she didn't have enough information or knowledge to understand if the genetic vulnerabilities were a ground for contraindication." (*Id.* ¶¶ 174–75). She wrote further that:

> There is not sufficient information included regarding the genetic testing performed to conclude that vaccines required for school attendance would be contraindicated in a child with [the reported] variations . . . . The specific source of the genetic tests, the results of these tests, and review and recommendations of this child's genetic findings by a medical genetics specialist would be needed to determine if these results preclude this student from being vaccinated.

(*Id.* ¶ 175). Neither the school nor Dr. Rausch-Phung contacted the Coe family or Dr. Scianna or requested "to consult with the treating physician or geneticist." (*Id.* ¶ 176).

On January 27, 2020, the Coe family submitted a letter from "an attorney and the genetic counselor explaining that the only pediatric genetic specialist in the region had a waiting list for new patients of more than one year." (*Id.* ¶ 177). The attorney: (1) requested a meeting with the school to discuss "a few months [sic] extension to try to expedite an appointment" with the pediatric geneticist, and (2) questioned the legality of the denial and the process leading up to it, asserting that there were "constitutional issues here involving the fundamental rights of the family to refuse medical treatment especially where the treating physicians and providers concur that it could be dangerous to the children's health." (*Id.* ¶ 178). In a January 29, 2020 email Lansing's attorney responded, denying the requests for a meeting or extension. (*Id.* ¶ 179).

The "medical exemption was permanently denied in January 2020, and there is no appeal pending." (*Id.* ¶ 180). Despite this, on May 4, 2020, the DOH wrote Dr. Scianna "seeking all of the children's medical records and noting that they were entitled to the full medical records of the children whether or not the family consented." (*Id.*). The letter from the DOH "vaguely references investigations." (*Id.* ¶ 181). Jane and John Coe "have been excluded from school since January 29, 2020," and their parents have tried to homeschool them since then, while working; the family has suffered "significant economic and emotional damage." (*Id.* ¶ 182).

### 4.      John Foe – Albany City School District

#### a.      Medical History

John Foe is "an eleven-year-old boy with special needs who suffers from Hirschsprung's Disease, a rare and serious genetic condition" "which prevents connections between the brain and gastrointestinal system from forming." (Dkt. No. 99-2, ¶¶ 53, 184). "As an infant, [Foe] had to undergo major gastrointestinal surgery during which surgeons removed a section of his intestine and then reattached the system back together. He must use a prosthetic colon system that needs to be inserted every night to keep him socially continent." (*Id.* ¶ 185). As "[m]ore than 70% of the immune system is in the gastrointestinal system," the "surgery profoundly affected [Foe's] immune system." (*Id.* ¶ 186). Foe suffers from "severe allergies," and is "so sensitive to chemicals and metals that he cannot wear sunscreen or even drink tap water." (*Id.* ¶ 188). If the water Foe drinks is "not filtered correctly, he has cramping diarrhea, and bleeding rash around his rectum." (*Id.*). Dairy, fruit, "and most antibiotics" trigger similar reactions. (*Id.*). When Foe requires antibiotics, he must be hospitalized and medicated "to manage his adverse symptoms of vomiting, diarrhea and dehydration." (*Id.*).

At age three, Foe "had a severe reaction to immunization." (*Id.* ¶ 189). On the advice of his pediatrician, Dr. Kari Bovenzi, Foe has not received any immunizations since age three. (*Id.* ¶ 190). Dr. Bovenzi determined that Foe "was at substantial risk of having even more severe reactions to subsequent immunization" and advised against immunization based on Foe's "serious reaction to immunization," his medical history, and "his family medical history"—Foe's mother "suffered paralysis after receiving the DTaP shot." (*Id.*).

#### b.      First Medical Exemption Request

On August 23, 2019, Foe's family "submitted a properly certified medical exemption" from Dr. Bovenzi, who is licensed to practice medicine in New York, "detailing why [Foe]

should be exempt from further immunization requirements." (*Id.* ¶ 191). Foe's "parents spoke to the school nurses and were told that all their paperwork was in order." (*Id.*). However, on September 23, 2019, Foe's mother received a call from the Albany school transportation department "letting her know that since [Foe's] medical exemption was denied, he would not be able to take the bus the next day." (*Id.* ¶ 192). After speaking to Principal Michael Paolino, several school nurses, and Assistant Superintendent Lori McKenna, Foe's family learned from Assistant Superintendent McKenna that "the medical exemption was being denied on the advice of the district physician, Dr. Laura Staff," and that Foe was no longer allowed to attend school. (*Id.* ¶ 192–93). Because Foe's "family would not immunize their son against medical advice," the "school district expelled [Foe] the same day," and he "has been unable to attend public school since September 23, 2019." (*Id.* ¶ 194).

Prior to Foe's "expulsion from school," he had "qualified for and received critical services under a 504 plan at school" based on his special needs. (*Id.* ¶ 196). "[T]he district refused to provide [Foe] with these services at home." (*Id.* ¶ 197). Foe "developed serious depression and was angry, confused and humiliated by his exclusion" from school. (*Id.* ¶ 198).

### c.     Second Medical Exemption Request

Following the denial of his first request for a medical exemption, Foe underwent "extensive genetic testing," which revealed that he "carries the MTHFR gene mutation from his maternal side and [he] has several other genetic vulnerabilities that reveal why immunization is particularly dangerous for him." (*Id.* ¶ 199). Dr. Bovenzi "prepared a forty-page medical exemption, providing extensive detail about why [Foe] was at risk of harm from further immunization." (*Id.*). The Foe family submitted "[t]he exemption . . . shortly before Thanksgiving 2019." (*Id.*).

On January 3, 2020, the Foe family received a letter from the school indicating that the school had sent Foe's exemption letter "'to the CDC' for review" and that it had been "determined" that the request "did not meet the criteria laid out in the ACIP guidelines and was therefore again denied." (*Id.* ¶ 200). The letter contained no information "about who reviewed" the exemption letter "or what their specific recommendations were based on." (*Id.*). Foe "has been attending . . . private school since March 2020" but has not been "receiving the services that he would be able to receive in public school, and his family can ill afford to keep sending him there." (*Id.* ¶ 202–03).

### 5. Jane Goe – Penfield Central School District

#### a. Medical History

Jane Goe, age seventeen, suffers from "multiple severe diagnosed autoimmune conditions," (Dkt. No. 99-2, ¶ 54), including type I diabetes, celiac disease, Hashimoto's thyroiditis, Alopecia Areata, and polycystic ovarian syndrome. (*Id.* ¶ 206). Goe's "disabilities significantly impair multiple major life functions, including but not limited to functions of her immune system." (*Id.* ¶ 208). Goe's "Type I Diabetes was triggered by the H1N1 vaccine in third grade." (*Id.* ¶ 209). Goe rapidly "devolve[d] after that event and developed four additional autoimmune diagnoses, losing half of her hair, suffering chronic additional health issues, and missing significant time in school when she was too sick to attend." (*Id.*). Goe has "a family history of serious autoimmune disease" and "genetic testing shows significant vulnerabilities including the rare HLA genotype, which places her at a high risk of developing Guillain-Barre syndrome (an acknowledged potential adverse reaction to the meningococcal vaccine)." (*Id.* ¶ 210). Goe is "sensitive to chemicals" and "has had serious adverse reactions to chlorine and many other environmental exposures." (*Id.*).

26

Dr. Pamela Grover, who is licensed to practice medicine in New York and "well-regarded for her expertise in autoimmune conditions," is Goe's treating physician and has helped Goe, since sixth grade, to "regain and maintain a reasonable level of health." (99-2 ¶ 211-12). Goe "avoids environmental triggers, must follow a restricted diet, and is undergoing multiple therapies." (*Id.* ¶ 212). Goe has not "received additional vaccines since her adverse reaction in third grade." (*Id.*).

### b.      First Medical Exemption Request

On "August 18, 2019, Dr. Grover submitted a duly certified medical exemption from immunization," noting that Goe "was suffering from a flare up of her acute autoimmune conditions and could not safely be immunized for at least one year or until her autoimmune conditions were under control." (*Id.* ¶ 213). The exemption request noted that Goe has "had all her immunizations except for the meningococcal vaccine and a fifth does of the tetanus, pertussis and diptheria containing vaccine." (*Id.* ¶ 214).

"On September 11, 2019, Assistant Superintendent Mark Sansouci emailed Goe's mother advising that the medical exemption . . . was being denied on the advice of the School District's [paid] consulting doctor, Dr. Robert J. Tuite," who is a pediatrician and under the supervision of Superintendent Thomas Putnam. (*Id.* ¶ 216). Assistant Superintendent Sansouci forwarded Dr. Tuite's email, which stated that Goe "would have had to have *suffered* Guillian-Barre Syndrome (which causes paralysis) within six weeks of getting a vaccine [in order to be eligible for an exemption,] and that 'it is up to the parents and/or physician to contact pediatric infectious disease/immunology or the DOH department of immunizations to get [a] specialist's input' for the exemption to be considered." (*Id.* ¶ 217). Dr. Tuite advised that if Goe "did not submit a letter from a specialist within fourteen days, she would be excluded from school." (*Id.*).

### c.      Second Medical Exemption Request

Goe's mother scheduled an appointment for her with Dr. Craig Orlowski, a physician licensed in New York, who has practiced "for nearly forty years," and "serves as an Associate Professor of Clinical Pediatrics at the University of Rochester Medical School, is Chief of Pediatric Endocrinology at the University of Rochester Golisano Children's Hospital . . . and has published widely on many of the autoimmune conditions that [Goe] suffers from." (*Id.* ¶ 218). "Dr. Orlowski agreed that it would be unsafe for [Goe] to receive immunizations at that time and wrote a letter supporting an exemption through April of 2020." (*Id.*).

On September 18, 2019, "Dr. Orlowski's exemption [request] was submitted." (*Id.* ¶ 219). Later that day, Superintendent Putnam forwarded "another denial from Dr. Tuite." (*Id.*). Dr. Tuite, a pediatrician specializing in sports medicine, wrote that although he admired Dr. Orlowski as a pediatric endocrinologist, he felt Dr. Orlowski was "out of his scope of practice/expertise within this area of immunization issues." (*Id.* ¶¶ 218–219). Dr. Tuite further wrote that he felt "strongly that this request does not meet the CDC contraindication or even a precaution from getting this specific vaccines" and that he would "recommend a referral" to a "pediatric infectious disease/immunology specialist such as Dr. Geoffrey Weinberg" or to immunologist Dr. Syed Mustafa, either of whom would "have a wealth of experience and expertise in this area of immunization appropriateness." (*Id.* ¶ 219). Dr. Tuite further stated that he would "honor and trust their opinion and abide by their advice in these kind of complicated situations." (*Id.*). On September 19, 2019, Goe "was removed from school as the fourteen days from the original notice of denial had run." (*Id.* ¶ 221). "It was homecoming that day" and "[t]he exclusion was public." (*Id.*). Goe "was humiliated and felt that her privacy had been seriously violated." (*Id.*).

Goe's mother "showed Dr. Tuite's email to Dr. Orlowski, who was so outraged that he walked across the hall and presented it to his colleague Dr. Geoffrey Weinberg . . . one of the two doctors that Dr. Tuite suggested were the only specialists that he would consider fit to submit a medical exemption application." (*Id.* ¶ 222). On September 20, 2020, Dr. Weinberg submitted a letter to Dr. Tuite "affirming . . . Dr. Orlowski's medical exemption request and recommending that Dr. Tuite accept the medical exemption for [Goe] at least through the fall given that she was having a flare of symptoms and was at risk of exacerbating her condition." (*Id.* ¶ 223). Goe "was allowed to attend her senior year of high school through the fall, but Dr Tuite indicated that she would need to be immunized by January 28, 2020 or she would be removed from school." (*Id.* ¶ 224).

### d.       Third Medical Exemption Request

In January 2020, Goe's family "submitted a follow up medical exemption request, written by Dr. Grover, which documented how the request fit into the ACIP guidelines." (*Id.* ¶ 226). "The request was sent on to the [DOH] for further review" and Goe, who was "set to graduate on July 30, 2020," had not heard back by the time this action was filed. (*Id.* ¶ 227–28).

### 6.       John Joe – Ithaca City School District

### a.       Medical History

John Joe, age six, "suffered severe anaphylaxis to his hepatitis B vaccine as a baby." (Dkt. No. 99-2, ¶ 56). Joe "has special needs," including "severe autism, obsessive compulsive disorder, and a range of neurological and other health problems." (*Id.* ¶ 232). "Medical tests show mercury poisoning, lead poisoning and aluminum poisoning and an inability to process heavy metals." (*Id.*). Joe's mother "has worked extensively with medical professionals and with rigorous dietary and environmental protocols, which have greatly improved her son's quality of life and health over the years." (*Id.*). Joe's health, however, "is fragile, and setbacks are

29

common." (*Id.*). Joe's "disabilities significantly impair multiple major life functions, including but not limited to functions of his immune system." (*Id.* ¶ 234).

In the fall of 2018, Joe's mother submitted a medical exemption to the school from Dr. Jessica Casey, Joe's treating pediatrician, who is licensed to practice medicine in New York. (*Id.* ¶¶ 235–36). Joe "completed that school year without issue." (*Id.* ¶ 236). Joe's mother submitted a renewed medical exemption from Dr. Casey in the summer of 2019. (*Id.* ¶ 237). Joe "attended his summer programming for children with special needs and began his first-grade year in elementary school in the fall." (*Id.*).

### b.      Medical Exemption Request

In November 2019, Superintendent Luvelle Brown sent a letter to Joe's mother "letting her know that her medical exemption request was partially denied, and she had to get her son immunized within a week or her son would be expelled from school." (*Id.* ¶ 238). Joe's mother met with Superintendent Brown "to beg him to reconsider, explaining that her son had always had a medical exemption to all further immunization and that multiple physicians had indicated that further immunization would be unsafe for him." (*Id.* ¶ 239). Superintendent Brown responded "that it was out of his hands, and that as far as he understood, [Joe] would need to have an anaphylactic reaction to each [required] vaccine in order to be exempt" from those vaccines. (*Id.* ¶ 240).

Joe "was removed from school in November of 2019" and his "mother has had to quit her job, go on public assistance, and now attempts to attend to all her son's needs on her own." (*Id.* ¶ 241). Joe "had an Individualized Education Plan, which entitled him to extensive needed services, such as speech therapy five days a week, occupational therapy three times a week, music therapy and play therapy." (*Id.* ¶ 242). The school "has refused to provide any of these services at home as they do for other special needs children who are homeschooling." (*Id.*).Joe

"has a pending appeal to the Commissioner of Education which as of yet still has not been decided." (*Id.* ¶ 243).

### 7.   John Loe – South Huntington School District

#### a.   Medical History

John Loe, now fifteen, received diagnoses at age seven from pediatric neurologist Rosario Tifiletti of two forms of autoimmune encephalitis: Pediatric Acute-Onset Neuropsychiatric Syndrome ("P.A.N.S.") and later (August 2013) . . . a dual diagnosis of Hashimoto's Encephalopathy." (Dkt. No. 99-2, ¶ 245). Loe "suffers from disabilities which significantly impair multiple major life functions, including but not limited to functions of his immune system." (*Id.* ¶ 246). Loe attends a "Catholic college preparatory school in the neighboring South Huntington School District." (*Id.* ¶ 247).

Loe "was vaccinated in strict accordance with pediatric directives" and New York mandates during the first "several years" of his life. (*Id.* ¶ 248). He also received all influenza and H1N1 flu vaccines. (*Id.*). "Through the years, [Loe] suffered unexplained 'phases' of odd behavioral and health issues . . . Later review of the medical file revealed that these phases closely tracked his immunizations." (*Id.*; *see, e.g.*, *id.* ¶ 249 (in 2009, Loe "decompensate[d]" after receiving DTaP, flu, and H1N1 vaccines at age five); *id.* ¶ 250 (in 2010, Loe's "symptoms heightened" after receiving flu vaccine at age six); *id.* ¶ 271 (in 2011, Loe experienced "debilitating tics and compulsions," including clapping his hands next to his ear causing hearing damage and banging his head and panic attacks and anxiety; developed obsessive compulsive disorder; and lost penmanship, math, reading, writing, and toileting skills after flu vaccine at age 7)). Loe "became nearly anorexic" and suffered "grave depression." (*Id.* ¶ 252).

In 2012, Loe was seen by pediatric neurologist Dr. Trifiletti, who diagnosed Loe with "P.A.N.S./P.A.N.D.A.S. a form of autoimmune encephalopathy, which was confirmed upon his

analysis of comprehensive bloodwork reports." (*Id.* ¶¶ 253–54). Dr. Trifiletti recommended

"immune modulating treatments" and within "24 to 48 hours," Loe "began eating again, his

hallucinations stopped" and "many other symptoms improved." (*Id.* ¶ 254). "Dr. Trifiletti was

able to stabilize [Loe's] neurological and autoimmune condition slowly with the medications,

ongoing monitoring and testing, and avoidance of known triggers, such as exposure allergens,

toxins, and vaccines." (*Id.* ¶ 255). Loe "fared relatively well" under Dr. Trifiletti's treatment,

though he "never made it back to baseline symptoms-wise." (*Id.* ¶ 256).

In 2015, when Loe was entering sixth grade, "the school nurse advised that the Tdap was

required to remain in school." (*Id.* ¶ 258). "Dr. Trifiletti, advised that a medical exemption was

medically indicated for [Loe] as to 'all vaccines.'" (*Id.*). "The exemption was accepted without

issue." (*Id.*). Loe received medical exemptions for seventh, eighth, and ninth grades. (*Id.*).

### b.   Medical Exemption Request

In September 2019, Loe's parents submitted "an updated medical exemption" from Dr.

Trifiletti to the school. (*Id.* ¶ 259). "Shortly thereafter," the school nurse informed Loe's parents

that the "'school's chief doctor,' Dr. Jack Geffken . . . rejected Dr. Trifiletti's exemption after

speaking with him on the phone." (*Id.* ¶ 260).

"After this phone call, Dr. Trifiletti, who had been treating [Loe] since he was seven

years old," informed Loe's parents that he could no longer treat Loe. (*Id.* ¶ 261). Months later,

Dr. Trifiletti sent Loe's parents a "stiff letter that made no sense, given that [Loe] was no longer

a patient, indicating the benefits of vaccines and contradicting years of documented medical

advice about the risks they pose to [Loe] specifically." (*Id.*).

Loe "was removed from school on September 20, 2019 and has not been able to return

since." (*Id.* ¶ 262). In November 2019, Loe saw "Dr. Denis Bouboulis, an immunologist licensed

to practice in New York, who is experienced . . . in the PANS/Autoimmune Encephalitis

community." (*Id.* ¶ 264). On November 14, 2019, Dr. Bouboulis, who "concurred that it would

be unsafe for [Loe] to receive the TDaP or meningococcal vaccines," "provided two written

medical exemptions." (*Id.* ¶ 265). The school rejected the forms as they were New York City

forms rather than New York State form and in December 2019, Dr. Bouboulis prepared new

forms.[9] (*Id.* ¶¶ 267–69).

On January 7, 2020, Loe's parents "received an email from the principal stating that due

to information contained in an attached letter recommending a denial of the exemption from [the

school's doctor,] Dr. Geffken, [Loe] would be unable to continue as a student there." (*Id.* ¶ 270).

Plaintiffs assert that "Dr. Geffken will not consider anything other than the ACIP

contraindications and has narrowed the criteria for medical exemptions substantially beyond

even what the state defendants promulgated in the new regulations." (*Id.* ¶ 271). Loe "has all his

immunizations except for a final booster dose of the Tdap vaccine (tetanus, diptheria, and

pertussis) and the meningococcal vaccine." (*Id.* ¶ 272). Loe, who had been doing well in school

prior to "expulsion" "has become very depressed and is not able to keep up with his home

studies." (*Id.* ¶ 276).

## V.   STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim

to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d

129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Although a complaint need not contain detailed factual allegations, it may not rest on mere

---

[9] During this time period, Loe's parents were told by Dr. Bouboulis's staff that Dr. Bouboulis "had received a call from the NYSDOH, directing that he could not write any further New York medical exemptions 'unless he was the doctor who administered the vaccinations,' and that therefore, he would not be signing any more." (Dkt. No. 99-2, ¶ 268). Dr. Bouboulis agreed to prepare the forms, however, after Loe's parents showed him the "legal analysis" from their attorney and the "text of the statute contradicting the NYSDOH erroneous information." (*Id.* ¶ 269).

labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## VI.   DISCUSSION[10]

### A.   Abstention

The Albany, Ithaca, South Huntington, and Three Village Defendants argue that "the Court should apply the doctrine of abstention and decline to review" Plaintiffs' claims. (Dkt. No. 54-14, at 23).   In *New Orleans Public Service, Inc. v. Council of New Orleans*, the Supreme Court explained the *Burford*[11] abstention doctrine[12] as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are

---

[10] Defendants argue that CHD does not have standing. "For federal courts to have jurisdiction over" a party's asserted claims, however, "only one named plaintiff need have standing with respect to each claim." *Comer v. Cisneros*, 37 F.3d 775, 788 (2d Cir. 1994); *see Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) ("It is well settled that where, as here, multiple parties seek the same relief, 'the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.'") (citation omitted). It is undisputed that the individual plaintiffs have standing with respect to each claim. The Court, accordingly, need not address the issue of CHD's standing here. *See New York State Rifle & Pistol Ass'n, Inc. v. Beach*, 354 F. Supp. 3d 143, 147 (N.D.N.Y. 2018), *aff'd*, 818 F. App'x 99 (2d Cir. 2020); *State v. United States Dep't of Commerce*, 315 F. Supp. 3d 766, 790 (S.D.N.Y. 2018).

[11] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

[12] The Albany Defendants cite cases outlining factors relevant to the *Burford* abstention doctrine, (Dkt. No. 54-14, at 23–24), and as this doctrine appears to be best fit, the Court has not considered the *Colorado River* or *Younger* abstention doctrines. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976); *Younger v. Harris*, 401 U.S. 37 (1971).

> "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

491 U.S. 350, 361 (1989) (quoting *Colorado River Water Conservation Dist.*, 424 U.S. at 814). However, "[a]bstention is the exception, exercise of jurisdiction the rule." *United Fence & Guard Rail Corp. v. Cuomo*, 878 F.2d 588, 593 (2d Cir. 1989). Further, the Supreme Court has "described the federal courts' obligation to adjudicate claims within their jurisdiction as 'virtually unflagging.'" *New Orleans Pub. Serv.*, 491 U.S. at 359 (quoting *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988)).

The Second Circuit has "identified three factors to consider in connection with the determination of whether federal court review would work a disruption of a state's purpose to establish a coherent public policy on a matter involving substantial concern to the public," specifically: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 650 (2d Cir. 2009) (quoting *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998)). Defendants argue that "at least the first and third *Burford* factors militate in favor of abstention." (Dkt. No. 8-2, at 10). The Court considers each factor below.

### 1.      Specificity of State Regulatory Scheme

Defendants argue that the "amendments to Public Health Law and the implementing regulations (i.e. 10 NYCRR 66-1.3) are specific." (Dkt. No. 54-14, at 23). Section 2164 of the New York Public Health Law and the corresponding regulations governing the mandatory school vaccine law certainly contain a level of specificity. *See generally*, N.Y. Pub. Health Law § 2164;

10 N.Y.C.R.R. §§ 66-1.1 to 1.3. This does not, however, end the inquiry because, this "factor focuses more on the extent to which the federal claim requires the federal court to *meddle* in a complex state scheme." *Hachamovitch*, 159 F.3d at 697.

Here, Plaintiffs complain that the medical exemption provisions and the Defendant schools' implementation of those exemptions violate their Fourteenth Amendment rights and that the medical exemption provisions violate the Rehabilitation Act by discriminating against disabled children. None of Plaintiffs' claims require the Court to consider whether Defendants' determination with respect to Plaintiffs' requests for medical exemptions to vaccination was correct under the applicable statute and regulations—rather, the Court is evaluating the constitutionality of Defendants' conduct. Thus, this factor does not favor abstention. *See id.* ("Because Dr. Hachamovitch's due process complaint concerns the absence of a provision for reopening of a proceeding rather than the considerations, values and procedures that should shape its outcome, this . . . factor probably does not favor abstention."); *see also Toyota Lease Tr. v. A-1 Grand Autobody, Inc.*, No. 18-cv-3098, 2019 WL 2571154, at *3, 2019 U.S. Dist. LEXIS 103574, at *7 (E.D.N.Y. June 20, 2019) (concluding that the first factor weighed against abstention where the plaintiff's claims pertained "to whether the lien levied on its vehicle, deprived Plaintiff of a property interest without notice or an opportunity to be heard," explaining that, "[a]s alleged in the Complaint, these claims relate to the constitutionality of Defendants' conduct and thus there is no state law inquiry or analysis embedded within that claim").

### 2.     Interpretation of State Statute

The second factor, "the necessity of discretionary interpretation of state statutes," *Bethpage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1243 (2d Cir. 1992), does not weigh in favor of abstention. Defendants argue that "the precise meaning of what does, and what does not, constitute a 'medical contraindication or precaution' . . . are at the heart of the dispute."

36

(Dkt. No. 54-14, at 23). The facts concerning Plaintiffs' requests for medical exemptions to vaccination and the Defendant school district's denials, including whether Plaintiffs' medical conditions constitute "medical contraindications or precautions," are certainly relevant to the inquiry of whether the denial constituted a deprivation of substantive due process or violated the Rehabilitation Act. However, no party has asserted that Plaintiff's claims involve the "need to give one or another debatable construction to" the mandatory school vaccine law, the medical exemption, or the governing regulations, nor does there appear to be any such need. *Hachamovitch*, 159 F.3d at 697; *see also Bethphage*, 965 F.2d at 1243 ("[T]he aim of *Burford* abstention is to avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration." (internal citation omitted)); *Cty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1308 (2d Cir. 1990) ("The fact that here *only* a federal claim was present raises the level of justification [needed for abstention] even more.").

### 3.     State Concern

There is no question that the subject-matter of this litigation—the vaccination of children and ensuring public health and safety—is "traditionally one of state concern," or that the administration of the mandatory school vaccine law and issuance of medical exemptions is of "paramount importance" to the state. *Hachamovitch*, 159 F.3d at 698; *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905)*; see also Bethphage*, 965 F.2d at 1244 (concluding "the subject matter of this case—reimbursement rates under the Medicaid Act—is an area of legitimate state interest," noting that "the Medicaid Act itself requires the creation of a state administrative framework to establish methods and procedures for the procurement of and payment for care and services consistent with efficiency, economy, and quality of care" signaling

Congress' recognition "that the establishment and review of reimbursement rates is a legitimate

state concern"). This factor therefore weighs in favor of abstention

Having considered the relevant factors, the Court concludes that, on balance, this is not

the "extraordinary case[]" that requires abstention. *Hachamovitch*, 159 F.3d at 693.  "[T]here is

little or no discretion to abstain in a case which does not meet traditional abstention

requirements." *Bethpage*, 965 F.2d at 1245 (2d Cir. 1992) (quoting *Mobil Oil Corp. v. City of

Long Beach*, 772 F.2d 534, 540 (9th Cir. 1985)). In this case, while the administration of the

mandatory school vaccine law and issuance of medical exemptions are matters of legitimate

concern to the state, it does not appear that interference with the state's administrative scheme or

the interpretation of any regulatory provisions is embedded in the determination of whether due

process was satisfied—a determination "[t]he federal courts are well-placed to undertake."

*Hachamovitch*, 159 F.3d at 698; *see also Orozco by Arroyo v. Sobol*, 703 F. Supp. 1113, 1120

(S.D.N.Y. 1989) (citing *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 601 (2d Cir. 1988)

(holding *Burford* abstention unwarranted in case involving due process attack on State's medical

malpractice insurance scheme)). Accordingly, the Albany Defendants' motion to dismiss based

on *Burford* abstention is denied. *See New Orleans Pub. Serv.*, 491 U.S. at 362 ("While *Burford* is

concerned with protecting complex state administrative processes from undue federal

interference, it does not require abstention whenever there exists such a process, or even in all

cases where there is a 'potential for conflict' with state regulatory law or policy." (quoting

*Colorado River*, 424 U.S. at 815–16)).

### B.    Exhaustion of Administrative Remedies

The School District Defendants seek dismissal on the ground that Plaintiffs failed to

exhaust the administrative remedies available to them prior to bringing this action. (Dkt. No. 54-

14, at 19–24; Dkt. No. 78-4, at 29–30). Plaintiffs respond that exhaustion of administrative

remedies is not a prerequisite to a constitutional claim. (Dkt. No. 83, at 28).

Defendants argue that "plaintiffs should have availed themselves of N.Y. Educ. Law 310,

which provides that an aggrieved party may appeal to the Commissioner of Education 'any . . .

official act or decision of any officers, school authorities, or meetings concerning any other

matter under [the New York Education Law], or any other act pertaining to common schools.'"[13]

(Dkt. No. 54-14, at 19 (quoting N.Y. Educ. Law § 310 (7))). Defendants also note that

"aggrieved families may institute an Article 78 proceeding in state court to review a decision by

the Commissioner." (Dkt. No. 54-14, at 22). Plaintiffs do not dispute that these avenues for

review are available to them. The Doe Family (Coxsackie-Athens), appealed the medical

exemption denial to the Commissioner of Education in November 2019, and the appeal was

subsequently denied. (Dkt. No. 99-2, ¶ 116–17; Dkt. No. 54-4). The Joe Family (Ithaca) likewise

filed an appeal with the Commissioner, which remains pending. (Dkt. No. 99-2, ¶ 243). There is

no indication that any named Plaintiff has filed an Article 78 proceeding. (*See generally id.*).

There is caselaw suggesting that exhaustion of administrative remedies is a prerequisite

to a state law claim. *See Watkins-El v. Dep't of Educ.*, No. 16-cv-2256, 2016 WL 5867048, at *3,

2016 U.S. Dist. LEXIS 139860, at *7–8 (E.D.N.Y. Oct. 7, 2016) (finding the plaintiff failed to

show a likelihood of success on state law claim that the defendant Office of Student Health

improperly denied the request for a vaccination exemption, on religious grounds, under Public

Health Law § 2164 because the plaintiff "did not appeal the determination . . . thereby failing to

exhaust his administrative remedies." (citing *Watergate II Apts. v. Buffalo Sewer Auth.*, 46

---

[13] The Albany, Ithaca, South Huntington and Three Village Defendants and Plaintiff agree, however, that "the Constitutionality of the legislation [at issue] is outside the scope of the Commissioner's review." (Dkt. No. 54-14, at 21; Dkt. No. 83, at 28). The remaining School District Defendants have not addressed this particular issue.

N.Y.2d 52, 57 (1978) ("[O]ne who objects to the act of an administrative agency must exhaust available remedies before being permitted to proceed to litigate in a court of law[.]"))). Plaintiffs, however, do not bring any state law claims. Further, exhaustion of state administrative remedies is not a prerequisite to bringing a federal claim under 42 U.S.C. § 1983. *See Patsy v. Bd. of Regents of Florida*, 457 U.S. 496, 516 (1982) ("[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."); *see also Caviezel v. Great Neck Pub. Sch.*, 701 F. Supp. 2d 414, 425 (E.D.N.Y. 2010) ("While a failure to exhaust state administrative remedies does not generally bar federal civil rights claims, the Court is aware of no authority providing that this state law claim may be pursued in federal court [without exhausting state administrative remedies]."), *aff'd*, 500 F. App'x 16 (2d Cir. 2012).

Defendants cite *S.C. v. Monroe Woodbury Central School District*, No. 11-cv-1672, 2012 WL 2940020, at *10, 2012 U.S. Dist. LEXIS 100622, at *39–40 (S.D.N.Y. July 18, 2012), in support of their argument that exhaustion of administrative remedies is required. (Dkt. No. 54-14, at 22). However, unlike the Plaintiffs in this case, who bring substantive due process claims, in *S.C.*, the court discussed administrative remedies in the context of a *procedural* due process claim. 2012 WL 2940020, at *10, 2012 U.S. Dist. LEXIS 100622, at *39–40. Moreover, in *S.C.*, the court granted the defendant's motion to dismiss the procedural due process claim, not because the plaintiff failed to exhaust administrative remedies, but on the merits—concluding that the availability of an appeal to the Commissioner and an Article 78 proceeding was a "sufficient post-deprivation remedy" that constituted "adequate process." *Id.*, 2012 U.S. Dist. LEXIS 100622, at *40.

Defendants also cite *Vandor, Inc. v. Militello*, 301 F.3d 37, 39 (2d Cir. 2002), for the proposition that "Article 78 of New York's CPLR provides an adequate state law remedy for

alleged failures by public officials to take allegedly required or mandated action." (Dkt. No. 54-14, at 22). In *Vandor*, the plaintiff alleged a property taking in violation of its substantive due process rights. 301 F.3d at 38. The Second Circuit affirmed dismissal of the complaint on the ground that the takings claim was unripe because, despite the expiration of the statute of limitations, there was a potential avenue for state court relief under Article 78. *Id.* at 39. *Vandor* is inapplicable here. Takings cases are unique and prior to 2019, under relevant Supreme Court law, a takings claim was not ripe for federal review until "the state regulatory entity has rendered a 'final decision' on the matter." *Dougherty*, 282 F.3d at 88 (2d Cir. 2002) (quoting *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194–94 (1985), *overruled in part by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019)). Defendants cite no caselaw supporting a conclusion that such a requirement is applicable here. In any event, in 2019, the Supreme Court overruled *Williamson County's* "state-litigation requirement." *Knick*, 139 S. Ct. at 2167. Thus, *Vandor* does not allow a conclusion that Plaintiffs were required to exhaust administrative remedies prior to bringing their federal suit. For these reasons, Defendants' exhaustion of administrative remedies argument does not provide a basis for dismissal of Plaintiffs' federal claims.

### C.    Section 1983 Constitutional Claims

#### 1.    Substantive Due Process – Facial Challenge

Defendants argue that Plaintiffs' Fourteenth Amendment substantive due process claim fails as a matter of law because Plaintiffs fail to allege the infringement of a fundamental right or that the mandatory vaccination requirement and medical exemption lack a reasonable relationship to the state's legitimate objective, the public health and safety of society. (Dkt. No. 28-1, at 11–19; Dkt. No. 54-14, at 24–31; Dkt. No. 78-4, at 16–18; Dkt. No. 91-1, at 13–18). Plaintiffs oppose dismissal, arguing that New York's narrow and burdensome medical exemption

to its mandatory vaccination requirements infringe "multiple fundamental rights," in violation of their right to substantive due process and equal protection under[14] the Fourteenth Amendment. (Dkt. No. 74, at 6). Specifically, Plaintiffs assert, the alleged narrow and burdensome nature of the medical exemption violates "the right to life, the right to informed consent, the right to refuse medical treatment, fundamental parental and educational rights, equal protection rights, [] privacy rights . . . [and] the . . . right to protection from infringement on the doctor-patient relationship"—all of which are embodied in the fundamental "right to a medical exemption from any [vaccination] . . . that a licensed physician has certified may cause a person harm or death." (Dkt. No. 112, at 20–21).

"[T]he Due process Clause of the Fourteenth Amendment embodies a substantive component that protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). But "'substantive due process,' . . . does not stand as a bar to all governmental regulations that may in some sense implicate a plaintiff's 'liberty.'" *Id.* "Rather, the level of scrutiny" to which a governmental regulation is subject "turns on the nature of the right at issue." *Id.* "Where the right infringed is fundamental, strict scrutiny is applied," *Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003), and to survive review, the "challenged regulation must be narrowly tailored to promote a compelling Government interest" and "must use the least restrictive means to achieve its ends."

---

[14] The Sixth Claim for Relief is subtitled "Violation of Rehabilitation Act of 1973" but, as Defendants observe, (Dkt. No. 38-1, at 20 n.1; Dkt. No. 54-14, at 31 n.1; Dkt. No. 78-4, at 28–29), it alleges that that "Defendants have violated the rights of medically fragile children to receive equal protection of the law by enacting and promulgating regulations which disparately impact medically fragile children." (Dkt. No. 9-2, ¶¶ 406–14). As Plaintiffs have not corrected Defendants' observation and have referred to Defendants' alleged violation of equal protection throughout their substantive due process briefing and in arguing for rational basis review, the Court has also considered, in Section VI.C.3., whether Plaintiffs have alleged a plausible equal protection claim.

*Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 246 (2d Cir. 2014) (citation omitted).

In contrast, "[w]here the claimed right is not fundamental," rational basis review is applied, and

"the governmental regulation need only be reasonably related to a legitimate state objective."

*Immediato*, 73 F.3d at 461 (citing *Reno v. Flores*, 507 U.S. 292, 303–06 (1993)).

The parties disagree about the level of review applicable to the medical exemption.

Plaintiffs contend that because the medical exemption burdens fundamental rights, it is subject to

strict scrutiny. (Dkt. No. 74, at 12). Defendants respond that because the consequence of "not

complying with the immunization" is that the child cannot attend school, the only infringement is

on the right to education—which is not a fundamental right—and the medical exemption need

only satisfy rational basis review. (Dkt. No. 87, at 6).

### a.        Whether Plaintiffs Have Asserted a Fundamental Right

"In assessing whether a government regulation impinges on a substantive due process

right, the first step is to determine whether the asserted right is 'fundamental.'" *Leebaert*, 332

F.3d at 140. "Rights are fundamental when they are implicit in the concept of ordered liberty, or

deeply rooted in this Nation's history and tradition." *Immediato*, 73 F.3d at 460–61. Therefore, a

"[s]ubstantive 'due process' analysis must begin with a careful description of the asserted right,

for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we

are asked to break new ground in this field.'" *Flores*, 507 U.S. at 302 (quoting *Collins v. Harker

Heights*, 503 U.S. 115, 125 (1992)).

At the outset, the Court addresses Plaintiffs' assertion that the mandatory vaccination law

and medical exemption, which applies to public and private schools, "unconstitutionally

burden[s] minors' right to pursue an education at any public or private school in New York."

(Dkt. No. 99-2, at 83). It is well-established that there is no fundamental right to education, and

thus the deprivation of a "right to pursue an education," by itself, does not trigger strict scrutiny.

*Plyler v. Doe*, 457 U.S. 202, 223 (1982) ("Nor is education a fundamental right"); *see Phillips v. City of New York,* 775 F.3d 538, 542 n.5 (2d Cir. 2015) (holding that New York's mandatory school vaccination requirement was within the State's police power and that, in any event, substantive due process challenge to mandatory vaccination law would fail under traditional constitutional analysis because "there is no substantive due process right to public education") (quoting *Bryant v. N.Y.S. Educ. Dep't*, 692 F.3d 202, 217 (2d Cir. 2012).[15]. Accordingly, the Court turns to Plaintiffs' remaining arguments.

Plaintiffs correctly assert that, as a general proposition, they have liberty interests in parenting. In *Troxel v. Granville*, the Supreme Court held that "[t]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." 530 U.S. 57, 66 (2000); *see also Immediato*, 73 F.3d at 461 ("Parents, of course, have a liberty interest, properly cognizable under the Fourteenth Amendment, in the upbringing of their children."). The Second Circuit, however, has held that "rational basis review is appropriate" when a parental right is invoked against state regulation. *Immediato*, 73 F.3d at 461.

Plaintiffs also cite to their liberty interest in refusing unwanted medical treatment, and more specifically, to informed consent as part of that right. In *Cruzan v. Director, Missouri Department of Health*, the Supreme Court explained that a "person has a constitutionally

---

[15] While the Supreme Court in *Plyler* recognized that education is not a fundamental right, the Court also considered the "well-settled principles" regarding the importance of education and of literacy in our democracy, in evaluating a State's decision "to deny to undocumented school-age children the free public education that it provides to children who are citizens of the United States or legally admitted aliens." 457 U.S. at 205, 222-24. Considering all of these factors, the Court applied a "heightened level of equal protection scrutiny," in *Plyler* and found that the State had failed to show that its denial of public education advanced a substantial state interest. *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 459 (1988) (citing *Plyler*, 457 U.S. at 217-18 & n.16); *see Ramos v. Town of Vernon*, 353 F.3d 171, 175 (2003). The Supreme Court has since noted that it has not extended the holding in *Plyler* "beyond 'the unique circumstances' . . that provoked its 'unique confluence of theories and rationales.'" *Kadrmas*, 487 U.S. at 459 (citations omitted). Plaintiffs have not argued that *Plyler* applies here.

44

protected liberty interest in refusing unwanted medical treatment," 497 U.S. 261, 278 (1990), and as the Second Circuit has explained, "an individual cannot exercise his established right to refuse medical treatment in a meaningful and intelligent fashion unless he has sufficient information about proposed treatment." *Pabon v. Wright*, 459 F.3d 241, 249–50 (2d Cir. 2006). Therefore, "there exists a liberty interest in receiving such information as a reasonable patient would require in order to make an informed decision as to whether to accept or reject proposed medical treatment." *Id.* The medical exemption regulations, however, do not directly infringe on any such right because they do not force parents to consent to vaccination of their children.

Plaintiffs argue that they have a fundamental right to a medical exemption to the state's vaccination requirement upon submission of a state-certified physician's opinion that vaccination would be harmful to the child. (Dkt. No. 74, at 9). Plaintiffs further argue that schools—and school principals, in particular—should have no discretion to "overrule treating physicians" with respect to their judgment about whether vaccination is in a child's best interest. (*Id.*). Underlying this argument is Plaintiffs' belief that the regulations "arbitrarily narrow the definition of 'what may cause harm,'" which, they believe "exclude[s] hundreds of medically fragile children whose health and life may be at risk of serious harm" if they are vaccinated. (Dkt. No. 99-2, ¶ 383).

The Court does not find a basis for Plaintiffs' asserted fundamental right. In this country there is a long history of disagreements—scientific and otherwise—regarding vaccinations and their risk of harm, and courts have repeatedly found that it is for the legislature, "in the light of all the information it had," to "choose between" "opposing theories" within medical and scientific communities in determining the most "effective . . . way in which to meet and suppress" public health threats. *Jacobson*, 197 U.S. at 30–31 (discussing Jacobson's offer of proof from "medical profession[als] who attach little or no value to vaccination as a means of

preventing the spread of smallpox, or who think that vaccination causes other diseases of the body";  explaining that the Court assumed that "the legislature . . . was not unaware of these opposing theories, and was compelled of necessity, to choose between them"; and holding that it is "no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for the protection of the public against disease"); *Viemeister v. White*, 179 N.Y. 235, 239, 242 (1904) (observing that "some laymen, both learned and unlearned, and some physicians of great skill and repute, do not believe that vaccination is a preventive of smallpox" but explaining that "[t]he possibility that the belief may be wrong, and that science may yet show it to be wrong, is not conclusive; for the Legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases"); *Phillips*, 775 F.3d at 542–43 (2d Cir. 2015) (noting that the "Plaintiffs argue that a growing body of scientific evidence demonstrates that vaccines cause more harm to society than good, but as *Jacobson* made clear, that is a determination for the legislature, not the individual objectors"); *Middleton v. Pan*, No. 16-cv-5224, 2016 WL 11518596, at *7, 2016 U.S. Dist. LEXIS 197627, at *20–21 (C.D. Cal. Dec. 15, 2016) (finding the plaintiffs' allegation that the vaccine at issue "requires them to submit to 'unwanted injections of poisons' that constitute 'felony assault with intent to do serious harm, including but not limited to maiming and or killing the individual' without due process of law," in violation of their "right of self defense" and due process "foreclosed by *Zucht*." (citing *Zucht v. King*, 260 U.S. 174, 176 (1922))), *report & recommendation adopted*, 2017 WL 10543984, 2017 U.S. Dist. LEXIS 225573 (C.D. Cal. July 13, 2017). More generally, Justice Roberts has noted that "federal courts owe significant deference to politically accountable officials with the 'background, competence, and expertise to

assess public health." *S. Bay United Pentecostal Church v. Newsom*, No. 20A136, 2021 WL 406258, at *1 (Feb. 5, 2021) (Roberts, J., concurring).

It is well-settled that it is within a state's police power to establish regulations implementing mandatory vaccine laws and vest local officials with enforcement authority. *Jacobson*, 197 U.S. at 25 (observing that "[i]t is equally true that the state may invest local bodies called into existence for purposes of local administration with authority in some appropriate way to safeguard the public health and the public safety"); *see also Zucht*, 260 U.S. at 176 (explaining that *Jacobson* and other cases, have "settled that a state may, consistently with the federal Constitution, delegate to a municipality authority to determine under what conditions health regulations shall become operative" and that "the municipality may vest in its officials broad discretion in matters affecting the application and enforcement of a health law" (citing *Laurel Hill Cemetery v. San Francisco*, 216 U.S. 358 (1910); *Lieberman v. Van de Carr*, 199 U.S. 552 (1902))).

The Court therefore concludes that it is within the legislature's authority to pass regulations defining the conditions under which a medical exemption to school vaccination requirements is to be issued, and placing the discretion for deciding medical exemptions in the hands of state and local officials, including school principals. It follows that Plaintiffs have failed to allege that in seeking access to education, they have a fundamental right to make, or have their own doctors make, decisions about medical exemptions to vaccination on behalf of their children.

Plaintiffs argue that "[m]edical exemption cases in the abortion context are illustrative of how courts should scrutinize medical exemptions even more strictly than other important fundamental rights." They assert that under *Planned Parenthood v. Casey*, 505 U.S. 833 (1992)

and *Stenberg v. Carhart*, 530 U.S. 914 (2000), the regulation's narrow definition of what is "detrimental" to a child's health and reliance on ACIP guidance, 10 N.Y.C.R.R. § 66-1.1(l), instead of the "clinical judgment" of the child's treating physician, is unconstitutional. (Dkt. No. 89, at 15–16 (citing *Stenberg*, 530 U.S. at 937 ("Doctors often differ in their estimation of comparative health risks and appropriate treatment. And *Casey's* words 'appropriate medical judgment' must embody the judicial need to tolerate responsible differences of medical opinion."))). However, *Casey, Stenberg,* and their progeny involved a right the Supreme Court recognized as "fundamental" in *Roe v. Wade*, 410 U.S. 113 (1973): the right to an abortion. Plaintiffs fail to cite any caselaw applying the standards utilized in the abortion context to vaccine requirement exemptions, or to any other context where, as here, the right being burdened is not a recognized fundamental right. Further, unlike the medical exemption cases involving abortion, where the denial of an exemption may endanger the life or health of the mother, here, if a medical exemption is denied and the parent continues to believe that vaccinating the child will endanger his or her health, the parent may forgo vaccination and homeschool their child. Therefore, the medical exemption at issue here does not directly implicate the same "unnecessary risk of tragic health consequences" that drives the abortion medical exemption jurisprudence. *Cf. Stenberg*, 530 U.S. at 937 (explaining that in view of division of medical opinion about banned abortion procedure, which "a significant body of medical opinion" believed  provided "greater safety for some patients," statute must contain health exception allowing the procedure because "the absence of a health exception will place women at an unnecessary risk of tragic health consequences").

　　　Citing *Whalen v. Roe*, 429 U.S. 589 (1977), Plaintiffs argue that the right or liberty "interest in independence in making certain kinds of important decisions" identified in the above

caselaw has been applied outside of the abortion context. (Dkt. No. 74, at 19). Yet applying *Whalen* in this case works against Plaintiffs—it supports a conclusion that the regulations at issue *do not* infringe Plaintiffs' rights. In *Whalen*, the plaintiffs argued, among other things, that the patient-identification requirements in the record-keeping law governing Schedule II drugs "threaten[ed] to impair . . . their interest in making important decisions independently." 429 U.S. at 600. The Court observed that, although the record supported the conclusion that "some use of Schedule II drugs has been discouraged by" concern of disclosure, it could not "be said that any individual has been deprived of the right to decide independently, with the advice of his physician, to acquire and to use needed medication," as it was undisputed that "the decision to prescribe, or to use, [Schedule II drugs], is left entirely to the physician and the patient." *Id.* at 603. Here, as in *Whalen*, if a school denies a parent's request for a medical exemption to vaccination for a child, the child is barred from attending school, but the decision whether to vaccinate remains with the child's physician and the parent. *See Whalen*, 429 U.S. at 603 ("This case is therefore unlike those in which the Court held that a *total prohibition* of certain conduct was a deprivation of liberty.") (emphasis added).

Thus, after considering a "careful description" of the rights Plaintiffs assert, the Court finds that Plaintiffs have failed to allege the infringement of "fundamental rights" that would trigger strict scrutiny. Accordingly, rational basis review applies, and the Court must determine whether the "the governmental regulation [is] reasonably related to a legitimate state objective." *Immediato*, 73 F.3d at 461 (citing *Flores*, 507 U.S. at 303–06); *see also Molinari v. Bloomberg*, 564 F.3d 587, 606 (2d Cir. 2009) ("The law in this Circuit is clear that where, as here, a statute neither interferes with a fundamental right nor singles out a suspect classification, we will invalidate that statute on substantive due process grounds only when a plaintiff can demonstrate

that there is no rational relationship between the legislation and a legitimate legislative purpose.") (citations, internal quotation marks, and brackets omitted).

### b.      Application of the Rational Basis Test

Under rational basis scrutiny, laws are "accorded a strong presumption of validity" and must be upheld "if there is any conceivable state of facts that could provide a rational basis" for the law. *Heller v. Doe*, 509 U.S. 312, 319-20 (1993). "[I]t is not the state that must carry the burden to establish the public need for the law being challenged; it is up to those who attack the law to demonstrate that there is no rational connection between the challenged ordinance and the promotion of public health safety or welfare." *Beatie v. City of New York*, 123 F.3d 707, 712 (2d Cir. 1997).

It is well-settled, as Plaintiffs acknowledge, (Dkt. No. 74, at 7), that New York's mandatory vaccination law does not violate substantive due process. *See Phillips*, 775 F.3d at 542 (rejecting the plaintiffs' argument that "New York's mandatory vaccination requirement" for school children violates substantive due process, explaining that "[t]his argument is foreclosed by the Supreme Court's decision in *Jacobson v. Commonwealth of Massachusetts*"). The issue here is Plaintiffs' substantive due process challenge to medical exemption regulations that: (1) define what "[m]ay be detrimental to the child's health" to warrant a medical exemption; and (2) enable schools, and more specifically, school principals, rather than the child's doctor, to decide whether to grant a medical exemption to vaccination.

### i.      Definition of "May be Detrimental to the Child's Health

Plaintiffs argue that the state "arbitrarily narrowed the allowable reasons to obtain a medical exemption" by "substituting a narrow set of circumstances, predefined by the CDC's 'ACIP guidelines'" as "the only basis to grant a medical exemption," which excludes "hundreds of additional conditions that vaccine manufacturers acknowledge as potential adverse events."

(Dkt. No. 74, at 8–9). As a preliminary matter, the Court notes that this argument ignores the full

text of the definition. The regulation defines "[m]ay be detrimental to the child's health" to mean

that "a physician has determined that a child has a medical contraindication or precaution to a

specific immunization *consistent with* ACIP guidance *or other nationally recognized evidence-*

*based standard of care*."[16] 10 N.Y.C.R.R. § 66-1.1(l).

      In seeking to repeal the religious exemption and strengthen and clarify the medical

exemption, state legislators explained that the amendments were made "[t]o be consistent with

national immunization regulations and guidelines," and "to conform with current guidance from

the CDC's Advisory Committee on Immunization Practices (ACIP)." (Dkt. No. 28-4, at 28–29).

"The legislative objective of PHL § 2164 includes the protection of the health of residents of the

state by assuring that children are immunized according to current recommendations before

attending . . . school, to prevent the transmission of vaccine preventable disease and

accompanying morbidity and mortality. (Dkt. No. 28-6, at 14). Legislators determined that these

amendments were necessary because: (1) "[t]he United States is currently experiencing the worst

outbreak of measles since 1994," (Dkt. No. 28-3, at 6); (2) "[o]utbreaks in New York," where

some communities have immunization rates "as low as 70 percent" "have been the primary

driver of this epidemic," (*id.*); (3) California's "vaccination rates improved demonstrably" after it

repealed its non-medical exemptions, (*id.*); (4) "[a]ccording to the Centers for Disease Control

(CDC), sustaining a high vaccination rate among school children is vital to the prevention of

disease outbreaks, including the reestablishment of diseases that have been largely eradicated in

the United States," (Dkt. No. 28-6, at 15); (5) "there are at least 280 schools in New York with

---

[16] Plaintiffs argue that, in practice, Defendants limited their consideration of the medical exemption requests to whether the child's contraindication or precaution fell within the four corners of the ACIP guidance and did not consider "other nationally recognized evidence-based standard of care." (Dkt. No. 74, at 9). This issue, however, is best addressed in the context of Plaintiffs' individual claims.

an immunization rate below 85%, including 211 schools below 70%, far below the CDC's goal of at least a 95% vaccination rate to maintain herd immunity," (*id.*); (6) "[b]y increasing the number of children immunized against vaccine-preventable diseases like measles, this legislation will prevent outbreaks and protect both the immunized children and those members of the community who cannot be vaccinated for medical reasons," (*id.* at 16); (7) when California removed non-medical exemptions "without taking steps to strengthen the rules governing medical exemptions," "the use of medical exemptions to school immunization requirements more than tripled," (*id.*); and (8) by clarifying that "a child may only receive a medical exemption from vaccination requirements when there is a medical contraindication or precaution to a specific immunization consistent with ACIP guidance," and "[b]y providing clear, evidence-based guidance to physicians," the state can help "prevent medical exemptions being issued for non-medical reasons," (*id.* at 16–17). These findings demonstrate a rational basis for the state's decision to: (1) require that a student demonstrate an evidence-based medical contraindication or precaution in order to qualify for a medical exemption, and (2) select the particular standard that would be used to determine whether a student's reasons for an exemption qualify as evidence-based medical contraindications or precautions. Five healthcare professional organizations, including the NYS American Academy of Pediatrics, expressed support of the regulation during a public comment period. (Dkt. No. 28-5, at 31).

Plaintiffs allege that "[t]he CDC itself has clearly stated that the ACIP guidance is not meant to replace the clinical judgment of a treating physician." (Dkt. No. 99-2, ¶ 11). Plaintiffs further allege that in a reply to an email "from plaintiff Jane Doe asking for clarification on the ACIP guidelines and their role in defining medical exemptions," "Dr. Andrew Kroger from CDC's Immunization Services Division" stated that: "The ACIP guidelines were never meant to

be a population-based concept . . . . The CDC does not determine medical exemptions. We define contraindications. It is the medical providers' prerogative to determine whether this list of conditions can be broader to define medical exemptions." (*Id.* ¶ 283). Plaintiffs further allege that "[h]undreds of additional reasons exist which could put some children at substantial risk of harm," citing "the long list of precautions and known adverse reactions listed in manufacturers' inserts," as well as "the long list of injuries and conditions compensated by the Vaccine Injury Compensation Program." (*Id.* ¶ 12). Plaintiffs also cite the "Institute of Medicine reports that clearly and expressly acknowledge subpopulations who have a pre-existing susceptibility to serious adverse reaction." (*Id.*).

As noted above, however, the definition of "may be detrimental to the child's health" is broader than medical contraindications and precautions defined in the ACIP guidance. "May be detrimental to the child's health means that a physician has determined that a child has a medical contraindication or precaution to a specific immunization *consistent with* the ACIP guidance *or other nationally recognized evidence-based standard of care.*" 10 N.Y.C.R.R. § 66-1.1(l). The medical exemption form itself refers to guidance beyond the ACIP recommendations. It states that "[g]uidance for medical exemptions for vaccination can be obtained from the contraindications, indications and precautions described in the vaccine manufacturers' package insert and by the most recent recommendations of the [ACIP]." https://www.health.ny.gov/forms/doh-5077.pdf (last visited Feb. 17, 2021). Because, on its face, the regulation allows for a broader range of medical exemptions than the ACIP guidance alone would, Plaintiffs' arguments regarding the narrowness or inappropriateness of the ACIP guidance do not support their argument that the regulation is facially unconstitutional.

Moreover, even accepting all of the Plaintiffs' allegations as true, the Legislature's decision to refer to the ACIP guidance in the regulation to provide clarity to physicians regarding grounds for medical exemptions and to ensure that medical exemptions are limited to individuals that can demonstrate genuine, evidence-based medical contraindications or precautions is not so arbitrary or irrational as to fail the rational basis test.

The ACIP "General Best Practices Guidelines for Immunization," states that the guidance is "intended for clinicians and other health care providers who vaccinate patients in varied settings, including hospitals, provider offices, pharmacies, schools, community health centers, and public health clinics." (Dkt. No. 28-7, at 2). The ACIP Guidelines are the product of the ACIP General Recommendations Work Group, which is a "diverse group of health care providers and public health officials," and "includes professionals from academic medicine (pediatrics, family practice, and pharmacy); international (Canada), federal, and state public health professionals." (*Id.* at 5). The revisions to the current ACIP Guidelines "involved consensus-building based on new evidence from the published literature and opinion from subgroups of subject matter experts consulted on specific topics." (*Id.*). The ACIP Guidelines define contraindication and precaution and provide a table delineating contraindications and precautions for each vaccine. (*Id.* at 49–52). "Severe allergic reaction (e.g. anaphylaxis) after a previous dose or to a vaccine component," is identified as a contraindication for every vaccine. (*Id.* at 53–56).

While Plaintiffs argue that the ACIP guidance is too narrow in view of their allegations regarding the numerous adverse reactions for which it fails to account, it cannot be said that the Legislature's use of the ACIP guidance, in furtherance of its objective of strengthening medical exemptions and ensuring they are not issued for non-medical reasons, was irrational. *See*

*Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284–85 (2d Cir. 2015) ("While Sensational Smiles disputes this evidence, it is not the role of the courts to second-guess the wisdom or logic of the State's decision to credit one form of disputed evidence over another.").

### ii.    Authority of School Principals

Plaintiffs argue that the regulations improperly give school principals the authority to overrule the judgment of treating physicians and do not require the principals to consult medical professionals. (Dkt. No. 41-1, at 11). In support of their argument, Plaintiffs allege that "[t]wo members of the New York State Legislature sent correspondence to the Commissioner of Education supporting the Doe's appeal on or about December 20, 2019," and indicated in their letters "that the New York State Legislature did not intend for school districts to have unilateral power to overrule treating physicians." (Dkt. No. 99-2, ¶ 116).

Under the mandatory vaccination law "[n]o principal, teacher, owner or person in charge of a school shall permit any child to be admitted to such school, or to attend such school . . . without proof of immunization," N.Y. Public Health Law § 2164(7)(a), or a "medical exemption form approved by the NYSDOH . . . from a physician licensed to practice medicine in New York State certifying that immunization may be detrimental to the child's health." 10 N.Y.C.R.R. § 66-1.3(c). The Legislature unequivocally delegated authority to DOH to enforce the mandatory vaccination law and its medical exemption. In carrying out this mandate, in addition to establishing regulations implementing mandatory vaccine laws (as discussed above), it is beyond question that state agencies like DOH may vest local officials with the authority to use appropriate discretion in enforcing these regulations. In *Zucht*, the Supreme Court explained that *Jacobson* and other cases, have "settled that a state may, consistently with the federal Constitution, delegate to a municipality authority to determine under what conditions health regulations shall become operative" and that "the municipality may vest in its officials broad

discretion in matters affecting the application and enforcement of a health law." 260 U.S. 174 at 176 (citing *Laurel Hill Cemetery*, 216 U.S. 358; *Lieberman*, 199 U.S. 552).

As the Second Circuit previously recognized, in the context of the mandatory school vaccine law, "the Commissioner clearly has a rational basis for allowing individual school districts the autonomy to determine how to implement the regulations in light of the varying populations that live within different districts and the consequential variations in local health concerns." *Friedman v. Clarkstown Cent. Sch. Dist.*, 75 F. App'x 815, 819 (2d Cir. 2003) (rejecting the plaintiffs' argument that "the lack of standards in the regulation allowing unfettered discretion to the individual districts has resulted in unequal treatment of religious beliefs in different school districts" with respect to religious exemptions to vaccines (citing *Catlin v. Sobol*, 93 F.3d 1112, 1120 (2d Cir. 1996) ("we will uphold the statute [on rational basis review] as long as it is rationally related to a legitimate state interest"))). Thus, Plaintiffs have failed to allege "that there is no rational connection" between the delegation of authority to the local school districts, where the Plaintiff children reside, to decide requests for medical exemptions and "the promotion of public health, safety or welfare."[17] *Beatie v*, 123 F.3d at 712; *see also Sensational Smiles*, 793 F.3d at 284 ("[W]e are required to uphold the [legislative decision] 'if there is any reasonably conceivable state of facts that could provide a rational basis for the [decision].'" (quoting *Heller*, 509 U.S. at 320).

Accordingly, the Court concludes that Defendants are entitled to dismissal of Plaintiffs' facial substantive due process claim.

---

[17] Plaintiffs' allegation that two legislators did not intend the amendments to give schools unilateral power to overrule treating physicians does not change this outcome. This allegation does not allow a plausible inference that the Legislature *lacked* a rational basis for placing discretion in the hands of local school districts.

2.      **Substantive Due Process – Individual Claims**

In the proposed First Amended Complaint, Plaintiffs name the superintendent and

principal School District Defendants individually so as "to more clearly state that [they] seek

damages as well as equitable relief from individually named school district defendants" in

connection with their Fourteenth Amendment substantive due process claims. (Dkt. No. 93, at 2).

These Defendants oppose amendment on the ground that any "personal capacity claims against

the individual Defendants would be futile." (Dkt. No. 108, at 3; Dkt. No. 111, at 1–2; Dkt. No.

110, at 2–3).

Plaintiffs allege that by denying their requests for medical exemptions to vaccination and

refusing to allow the minor Plaintiffs to attend school without vaccination, the individual School

District Defendants violated their Fourteenth Amendment substantive due process rights (First

Claim for Relief), liberty interest in parenting (Second Claim for Relief), and liberty interest in

informed consent (Third Claim for Relief), as well as the Plaintiff "minors' right to pursue an

education at any public or private school in New York" (Fourth Claim for Relief). (Dkt. No. 99-

2, at 78–83). Because none of these claims can "be analyzed under [a] more specific

constitutional provision," the Court "must assess them in terms of the Fourteenth Amendment's

substantive due-process guarantee." *Kia v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000)

(evaluating liberty interest in parenting claim under substantive due process); *see Blouin ex rel.*

*Estate of Pouliot v. Spitzer*, 356 F.3d 348, 359 (2d Cir. 2004) (addressing asserted violation of

liberty interest in the right to bodily integrity and issues concerning the right to refuse consent to

medical treatment under Fourteenth Amendment).

To allege a violation of substantive due process against a state actor, a plaintiff must

allege a deprivation of a fundamental liberty interest," *Cox v. Warwick Valley Cent. Sch. Dist.*,

654 F.3d 267, 275 (2d Cir. 2011), or "a valid 'property interest' in a constitutionally-protected

benefit," *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). Further, "[f]or a

substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege

governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the

contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *Cnty. of

Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). A plaintiff must show that the

government's alleged acts were "arbitrary," "conscience-shocking," or "oppressive in the

constitutional sense," not merely "incorrect or ill-advised." *Lowrance v. C.O. S. Achtyl*, 20 F.3d

529, 537 (2d Cir. 1994). Finally, the Second Circuit has instructed that "[i]n situations in which

time for deliberation is available to the official, [courts] apply a 'deliberate indifference'

standard, which requires demonstration of a 'willful disregard' of the 'obvious risks,' 'serious

implications,' and 'likelihood' of harm." *Spring v. Allegany-Limestone Cent. Sch. Dist.*, 655 F.

App'x 25, 28 (2d Cir. 2016) (quoting *Okin v. Vill. of Cornwall–on–Hudson Police Dep't*, 577

F.3d 415, 432 (2d Cir. 2009)).

  As discussed at length above, Plaintiffs have failed to allege the infringement of any

fundamental right. *See Votta ex rel. R.V. & J.V. v. Castellani*, 600 F. App'x 16, 18 (2d Cir.

2015). While the right to education does not rise to the level of a fundamental right, New York

law "does appear to create a property interest in education protected by the Fourteenth

Amendment." *Handberry v. Thompson*, 446 F.3d 335, 352-53 (2d Cir. 2006) (citing New York

Education Law § 3202(1)); *see also Goss v. Lopez*, 419 U.S. 565, 573-77 (1975) (holding that

"on the basis of [Ohio] law, appellees plainly had legitimate claims of entitlement to a public

education," and that it is a property interest protected by the Due Process Clause). Courts have

thus found the deprivation of education to be a valid basis for a substantive due process claim by

a student expelled from school. *See, e.g, DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d

71, 82 (2d Cir. 2010) (explaining "a student's substantive due process rights [may be implicated] upon a showing that an administrator's decision to expel the student was 'arbitrary or irrational or motivated by bad faith.'" (quoting *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989)); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 525 (S.D.N.Y. 2013) (same). At the same time, Plaintiffs' right to an education under New York State law is limited by the New York's mandatory school vaccination requirement, and "[t]he case law clearly establishes that "[c]onditioning school enrollment on vaccination has long been accepted by courts as a permissible way for States to inoculate large numbers of young people and prevent the spread of contagious diseases." *V.D. v. State of New York*, 403 F.Supp.3d 76, 87 (S.D.N.Y. 2019).

Here, the Plaintiffs' exclusion from school ultimately resulted from their decisions not to comply with a condition for school enrollment permissibly set by the state; the fact that Plaintiffs felt that their serious medical issues compelled them not to comply with that condition does not change that. Assuming, however, for the purpose of this decision, that Plaintiffs can raise a substantive due process challenge to the School District Defendants' application of the medical exemption, the Court has considered their allegations.

### a. John Doe – Coxsackie-Athens School District

The Does assert their substantive due process claim against Defendants Randall Squier, Superintendent of Coxsackie-Athens School District, and Freya Mercer, High School Principal. Doe suffers "chronic, incurable, and at times completely debilitating" medical conditions and has never been vaccinated. His physicians have advised that he not receive immunizations because they "trigger" "regression of one or more auto-immune diseases and disorders." (Dkt. No. 99-2, ¶¶ 95–96). Superintendent Squier twice denied Doe's parents' request for a medical exemption to vaccination for Doe. His first denial, in August 2019, was based on the opinion of the Coxsackie-Athens' "paid consultant," an emergency medical physician. (*Id.* ¶ 99). The

consultant evaluated the letters from two of Doe's treating physicians, both of whom had

indicated that immunization was "unsafe" for Doe "given his multiple chronic and serious

conditions and the risk that immunization could trigger a regression." (*Id.* ¶ 98). Ultimately, on

the consultant's recommendation, Squier denied the Does' request because the treating

physicians' letters failed to specify how the exemption request qualified under the ACIP

contraindications or precautions. (*Id.* ¶ 99–100). Superintendent Squier denied the Does' second

request, in which Doe's pediatrician "detailed for each vaccine how the child's conditions

qualified under the ACIP guidance as a precaution or contraindication," on the ground that the

consulting doctor found the request "was 'not supported.'" (*Id.* ¶ 104–05). When Doe's mother

called about the second denial, the consulting doctor "conceded" that the second request

"followed the ACIP guidelines verbatim" but declined to "debate" with Doe's mother or provide

additional information. (*Id.* ¶¶ 106–07). Plaintiff alleges that Superintendent Squier "was made

aware of these actions." (*Id.* ¶ 107).

Doe appealed the denial to the Commissioner of Education, who concluded that

Coxsackie-Athens' determination was not arbitrary or capricious, and dismissed the appeal. (*Id.*

¶ 117; Dkt. No. 54-4). The Commissioner ruled, inter alia, that Does offered "no evidence such

as an affidavit from the student's physician, containing sufficient information to identify that the

student has a precaution or contraindication to any of the eight required vaccinations," and that

even if Doe's episodic "moderate or severe illness" constituted a precaution, under the ACIP

Guidelines, "the precaution to vaccination only exists until such acute episode resolves." (Dkt.

No. 54-4, at 5).

The allegations that Superintendent Squier denied the Does' request for a medical

exemption twice based on the recommendation of the consulting doctor do not allow a plausible

60

inference of conscience-shocking conduct. The fact that Superintendent Squier "was made aware" of the consulting physician's admission to Jane Doe, following the second denial, that Doe's second request "followed the ACIP guidelines verbatim" does not, standing alone, render Squier's decision to deny that request arbitrary. (Dkt. No. 99-2, ¶ 106). And even if the decision denying Doe's second request could be deemed arbitrary, this decision to follow the consulting doctor's recommendation does not rise to the level of conscience-shocking conduct, or even deliberate indifference. There are no allegations that Superintendent Squier acted outside the scope of authority, harbored personal animus, or was motivated by bad faith. *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 789 (2d Cir. 2007) (explaining that town board's amendment of the plaintiff's special use permit was "ultra vires and, as a result, sufficiently arbitrary to amount to a substantive due process violation"); *Velez*, 401 F.3d at 94 (explaining that the "intentional[ ] and malicious[ ] fabricat[ion] and disseminat[ion][of] falsehoods in a common effort to deprive the plaintiff of her job . . . might well be sufficiently 'arbitrary' and 'outrageous,' in a constitutional sense, to make out a valid substantive due process claim" (citing *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999)); *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir. 1989) (dismissing substantive due process claim, observing that there was no evidence that school board's decision regarding disciplinary action "was arbitrary or irrational or motivated by bad faith"). Without such allegations, the allegation that Superintendent Squier's decision was contrary to state law is not sufficient to establish a constitutional claim against him. *See, e.g.*, *Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010) (concluding allegations that state officials allegedly imposed "arbitrary requirements contrary to state law" in connection with the plaintiff's renewal of his pistol permit did not "'shock[] the conscience' or suggest[] a 'gross abuse of governmental authority,'" explaining "substantive due process does not entitle federal

courts to examine every alleged violation of state law," "especially" because plaintiff had

"recourse to state forums to challenge the merits of the [state officials'] decisions"). To the

contrary, to the extent Superintendent Squier's denial was "arbitrary," it was the type of state

action that is "correctable in a state court lawsuit seeking review of administrative action"; it did

not rise to the level of egregious official conduct that violates substantive due process standards.

*Natale*, 170 F.3d at 263.

Further, there are no allegations that Principal Mercer had any knowledge or involvement

in the denial of the Does' requests for medical exemptions. In fact, Plaintiffs allege Principal

Mercer "exercised absolutely no oversight or input into the process." (Dkt. No. 99-2, ¶ 122). The

Second Circuit recently clarified that "there is no special rule for supervisory liability" and

explained that "a plaintiff must plead and prove 'that each Government-official defendant,

through the official's own individual actions, has violated the Constitution.'" *Tangreti v.

Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676

(2009)). As there are no allegations regarding Principal Mercer's individual actions with respect

to Doe, there is no basis for liability against her under § 1983.

The Does assert that the regulation assigns the duty of making the determination on

medical exemptions to the "principal or person in charge of the school," and that this gives

Mercer ultimate responsibility for Doe's request for a medical exemption. 10 N.Y.C.R.R. § 66-

1.3(c). However, based on the Does' own allegations, the person who made the decision on

Doe's medical exemption was Superintendent Squier, and there is no allegation that, as

Superintendent, Squier was not a "person in charge of the school" who was authorized by

regulation to make a final decision on Doe's request.

Thus, the Court concludes that the proposed First Amended Complaint fails to state a claim for relief against either Superintendent Squier or Principal Mercer and the proposed amendment to include individual substantive due process claims against them is denied as futile.

### b.      Jane Boe – Three Village Central School District

The Boes assert their substantive due process claims against Defendants Cheryl Pedisich, Superintendent of the Three Village Central School District, and Corinne Keane, High School Principal. Jane Boe, age fifteen, has received all mandatory immunizations except the meningococcal vaccine and booster, for which she sought a medical exemption. (Dkt. No. 99-2, ¶ 134). Boe sought a medical exemption based on (1) her "multiple diagnosed autoimmune syndromes and health challenges," including the deterioration in her health following vaccinations, (2) the exacerbation of her siblings' autoimmune, neurological, and neuropsychiatric conditions following immunization, and (3) the death of her eighteen-year-old brother, who committed suicide after receiving the meningococcal vaccine against medical advice—the vaccine was "believed to have triggered an acute cascade of neurological and other health symptoms that ended with . . . suicide." (*Id.* ¶¶ 125, 129, 131). Boe alleges that her "physicians determined the risks of getting [the meningococcal vaccine] far outweighed any potential benefit" and in August 2019, Boe's family "submitted a medical exemption from her treating physician."[18] (*Id.* ¶¶ 137–38).

Three Village, through Superintendent Pedisch and Principal Keane, denied Boe's medical exemption on the advice of the school district's consulting doctor. (*Id.* ¶ 139). Even assuming Superintendent Pedisich and Principal Keane were aware that in recommending denial

---

[18] The proposed First Amended Complaint does not provide any facts regarding the contents of the first request for a medical exemption.

of the Boes' August 2019 request, Three Village's consulting doctor had not considered "other 'nationally recognized evidence-based' reasons" beyond the ACIP contraindications and that the consulting doctor had told Boe's doctor that he would not vaccinate Boe either, (*id*. ¶¶ 142–43), the consulting doctor also found that the exemption request required specific information beyond what the Boes had provided. (*Id.* ¶¶ 139, 143–44). The regulations state that a medical exemption request must "contain[] sufficient information to identify a medical contraindication to a specific immunization," and allow "[t]he principal or person in charge of the school to require additional information supporting the exemption." 10 N.Y.C.R.R. § 66-1.3(c). Because, based on the Boes' own allegations, the denial of Boe's request for a medical exemption by Superintendent Pedisich and Principal Keane was consistent with the plain requirements of the regulations, the Boes fail to allege Superintendent Pedisich or Principal Keane's conduct was arbitrary or conscience-shocking. *See, e.g.*, *Kuck*, 600 F.3d at 167 ("Whether authorized or not, the fact that state officials required Kuck to produce proof of citizenship or legal residency in connection with his permit renewal application is hardly outrageous or shocking.").

Further, Superintendent Pedisich and Principal Keane were well within their authority to send Boe's second request for a medical exemption to the DOH for review. The school denied that request based upon the recommendation of Dr. Rausch-Phung. (Dkt. No. 99-2, ¶¶ 146–47). Dr. Rausch-Phung wrote that the death of Boe's sibling, "even if it was from an adverse reaction to the vaccine, was not a sufficient reason to grant an exemption." (*Id.* ¶ 146). The school officials' decision to accept the recommendation of the Director of the Bureau of Immunizations at DOJ over that of Boe's treating physicians, and their consequent denial of the request, cannot be called outrageous or conscience shocking.

64

Boe's December 2019 medical exemption request based on "acute illness" was granted—though not until March 2020 and only for a period of one month. (*Id.* ¶¶ 148, 150). However, there is nothing irrational about Three Village's determination, in reliance on the opinion of its consulting physician, that the one-month exemption began in December, when Boe was experiencing and acute illness, and not March, when Dr. Rausch-Phung issued her letter. (*Id.*; *see also* Dkt. No. 28-7, at 50 (ACIP Guidelines: "The presence of a moderate or severe acute illness with or without a fever is a precaution to administration of all vaccines . . . persons with moderate or severe acute illness should be vaccinated as soon as the acute illness has improved")). Moreover, there is no allegation that Superintendent Pedisich or Principal Keane excluded Boe from school at any point prior to Dr. Rausch-Phung's letter; thus, Boe was effectively provided with a three-month exemption. The Boes allege that Three Village "was unable to provide clarity on whether the exemption in place had to be renewed immediately or in April, and how long it might take to get an answer on the follow up request" and "refused to consider allowing their principal or superintendent to approve the follow up requests," but do not allege that they submitted any follow up requests—alleging instead that "defendants did not . . . bother to ask [Boe's] family to submit the follow up exemption letter." (Dkt. No. 99-2, ¶¶ 151–52). The Boes do not attribute this conduct to Superintendent Pedisich or Principal Keane, but even if they did, these Defendants' purported failure to "provide clarity" regarding the renewal process does not shock the conscience. Nor was it irrational for Superintendent Pedisich or Principal Keane not to ask the Boes for additional medical exemption requests, as it is the responsibility of the "person in parental relation to the child" to "furnish[] the school" with the "medical exemption form," 10 N.Y.C.R.R. § 66.1-3(c), with or without being asked by school officials.

65

There are two additional allegations the Court must address. First, the Boes allege that upon expiration of the one-month exemption, "the school demanded Jane Boe be immunized with the same immunization that killed her brother." (Dkt. No. 99-2, ¶ 152). As they do not characterize this as a statement or attribute it to either individual Defendant, it does not allow a plausible inference of personal animus by either Defendant.[19] Second, the Boes label Jane Boe's March 2020 exclusion from school as expulsion. (*See id.* ("The school *expelled* Jane in March 2020.")) (emphasis added). Expelling a student for not being vaccinated, as opposed to merely barring her from attending school while she remained unvaccinated, might rise to the level of conscience-shocking if there were "no rational relationship between the punishment and the offense." *Rosa R.*, 889 F.2d at 439. There are, however, no accompanying factual allegations that would allow a plausible inference that Three Village subjected Jane Boe to punishment for not being vaccinated, as opposed to merely barring her from attending school while she remained unvaccinated.[20] *See Lawtone-Bowles*, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 ("Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)).

For these reasons, considered as a whole, the Court concludes that the first proposed Amended Complaint fails to allege that Superintendent Pedisich or Principal Keane engaged in conduct that violated substantive due process standards. Accordingly, the proposed amendment

---

[19] The Court further notes that, according to Dr. Rausch-Phung, this was not a basis for a medical exemption. Plaintiff has not alleged that a sibling's adverse reaction to a vaccine is a medical contraindication or precaution consistent with any nationally recognized evidence-based standard of care.

[20] Doe, Foe and Joe make similar allegations of being expelled. (Dkt. No. 99-2, ¶¶ 112, 194, 238). These allegations fail for the same reason.

to include individual substantive due process claims against Superintendent Pedisich or Principal Keane is denied as futile.

### c.      John and Jane Coe – Lansing Central School District

The Coes assert their substantive due process claim against Defendants Chris Pettograsso, Superintendent of Lansing Central School District; Christine Rebera, Middle School Principal; and Lorri Whiteman, Elementary School Principal. John and Jane Coe, ages twelve and ten, respectively, "have multiple food, environmental and drug allergies, and precarious health," and have never been vaccinated "[u]pon the advice of medical professionals and considering the family history" on their father's side, including the death of an uncle following immunization and their aunt, grandmother, and father's adverse reactions to vaccination. (Dkt. No. 99-2, ¶¶ 158, 160, 162–63).

In January 2020, Superintendent Pettograsso and Principals Rebera and Whiteman denied the Coes' August 2019 request for a medical exemption from Dr. Christopher Scianna, who concluded that vaccination was unsafe "due to their current states of vulnerable health and their genetic analysis and family history of significant adverse vaccine reactions, including two deaths." (*id.* ¶¶ 167–68, 171). The Defendants denied the medical exemption request after receiving a letter from Dr. Rausch-Phung stating that "adverse reactions of family members (including death) are not contraindications from immunization under ACIP" and that there was "not sufficient information included regarding the genetic testing performed to conclude that vaccines required for school attendance would be contraindicated."(*Id.* ¶ 175).[21]

---

[21] Plaintiffs have not alleged that John or Jane Coe's medical conditions or family history constitute a contraindication or precaution consistent with the ACIP Guidelines or other nationally recognized evidence-based standard of care.

These Defendants' decision to accept the medical opinion of Dr. Rausch-Phung and deny the Coes' request does not allow a plausible inference of arbitrary conduct sufficient to violate substantive due process. To the extent the Coes argue that the timeline Lansing set for vaccination—one week—shocks the conscience because it is inconsistent with New York Public Health Law § 2164(7)(a), which states that no "principal . . . person in charge of a school shall permit any child to be admitted to such school, or to attend such school, in excess of fourteen days, without" the required immunization or is inconsistent with the scheduling recommendations outlined in the ACIP Guidelines, *see, e.g.*, N.Y. Pub. Health Law § 2164(2)(c); (Dkt. No. 28-7), such allegations allow an inference of violation of state law but do not suggest conduct that is "sufficiently 'arbitrary' and 'outrageous,' in a constitutional sense, to make out a valid substantive due process claim." *Velez*, 401 F.3d at 94. Accordingly, the proposed amendment to include individual substantive due process claims against Superintendent Pettograsso, Principals Rebera, and Whiteman is denied as futile.

### d.      John Foe – Albany City School District

The Foes assert their substantive due process claims against Defendants Kaweeda Adams, Superintendent of the Albany City School District, and Michael Paolino, Principal of William S. Hackett Middle School. Foe, age eleven, has longstanding medical issues, severe allergies, and sensitivities to chemicals and metals, and must be hospitalized when antibiotics are necessary. (Dkt. No. 99-2, ¶ 53). Foe has received no immunization since age three on the advice of his pediatrician. (*Id.* ¶ 189). When their August 2019 request for a medical exemption was denied in September 2019, Assistant Superintendent Lori McKenna informed the Foes that the request had been denied on the advice of Albany's physician. (*Id.* ¶ 193). Albany "expelled" Foe on September 23, 2019. (*Id.* ¶ 194).

In November 2019, Foe's pediatrician submitted a "forty-page medical exemption" request "providing extensive detail about why" Foe, who had undergone extensive genetic testing that revealed he carries "the MTHFR gene" and has "other genetic vulnerabilities." (*Id.* ¶ 199). Albany denied the second request on January 3, 2020; in a letter to the Foe family, "the school"[22] indicated that it had sent the request "to the CDC" and "had determined that it did not meet the criterial laid out in the ACIP guidelines" but provided no further detail. (*Id.* ¶ 200).

As there are no allegations of personal knowledge or involvement by Superintendent Adams or Principal Paolino, the Foes have failed to allege actionable claims against them under § 1983. Accordingly, the proposed amendment to include individual substantive due process claims against Superintendent Adams or Principal Paolino is denied as futile.

### e.      Jane Goe – Penfield Central School District[23]

The Goes bring their substantive due process claim against Defendant Dr. Thomas Putnam, Superintendent of the Penfield Central School District. The proposed First Amended Complaint contains one specific factual allegation regarding Superintendent Putnam: that on September 18, 2019, he forwarded a denial of the Goes' request for a medical exemption from Penfield's consulting physician. (Dkt. No. 99-2, ¶ 219). Even inferring from this allegation that it was Superintendent Putnam who denied the request based on the doctor's statement that he felt "strongly that this request does not meet the CDC contraindication or even a precaution from getting these specific vaccines," there is no plausible inference that Superintendent Putnam's

---

[22] The proposed First Amended Complaint does not identify who sent the letter or engaged in the alleged conduct.

[23] The Penfield Defendants seek dismissal of Goe's claims on the ground that her claims are moot because she graduated in July 2020. (Dkt. No. 78-4, at 12–13). Plaintiffs respond that even if Goe's injunctive relief claims are moot, her claims for compensatory damages, (*see* Dkt. No. 99-2, at 86 (seeking an award of "general, compensatory, nominal and/or punitive damages"), remain viable. The Court agrees. *See Beyah v. Coughlin*, 789 F.2d 986, 988–89 (2d Cir. 1986) (concluding that although the prisoner's transfer mooted claims for declaratory and injunctive relief, it did moot his claims for compensatory and punitive damages).

conduct was "arbitrary" or "outrageous." *Velez*, 401 F.3d at 94. Accordingly, the proposed

amendment to include and individual substantive due process claims against Superintendent

Putnam is denied as futile.

###### f.   John Loe – South Huntington School District

The Loes bring their substantive due process claim against Defendant Dr. David

Bennardo, Superintendent of the South Huntington School District and Brother David

Migliorino, Principal of St. Anthony's High School. The proposed First Amended Complaint

contains no factual allegations of personal involvement by Superintendent Bennardo.[24]

Accordingly, the § 1983 claims against Superintendent Bennardo are dismissed.

The only allegation against Principal Migliorino is that on January 7, 2020, he emailed

Loe's parents "stating that due to information contained in an attached letter recommending

denial of the exemption from Dr. Geffken [the school district doctor]," Loe "would be unable to

continue as a student" at St. Anthony's High School. (Dkt. No. 99-2, ¶ 270). Not only is the

proposed First Amended Complaint devoid of allegations that Brother Migliorino, as the

principal of a private school was a "state actor,"[25] there is no plausible inference that his decision

that Loe could not continue as a student in view of the recommended denial of the request by

---

[24] The only reference to Superintendent Bennardo is in an allegation that South Huntington adopted "discretionary policies" that burdened Loe and his family and that "by policy and custom of the district, defendant Bennardo" was a "final decision maker for medical exemptions." (Dkt. No. 99-2, ¶ 279). This conclusory allegation, however, is devoid of factual detail that would allow a plausible inference of liability or personal involvement.

[25] "Under 42 U.S.C. § 1983, constitutional torts are only actionable against state actors or private parties acting 'under the color of' state law." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (quoting *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002)). While there is "no single test to identify state actions and state actors," "[t]he fundamental question . . . is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (first quoting *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009)); then quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982)). Given that the sole allegation in the proposed First Amended Complaint regarding Brother Migliorino is that he emailed Loe's parents stating that due to South Huntington's denial of the request for a medical exemption, Loe would be "unable to continue as a student" at St. Anthony's High School, (Dkt. No. 99-2, ¶ 270), there is no plausible inference that Brother Migliorino's conduct is attributable to the state.

South Huntington's consulting doctor, even if the recommendation was erroneous, was "arbitrary" or "outrageous." *Velez*, 401 F.3d at 94. Accordingly, the proposed amendment to include individual substantive due process claims against Superintendent Bennardo or Brother Migliorino is denied as futile.

> **g.      John Joe – Ithaca City School District**

The Joes bring their substantive due process claim against Defendants Dr. Luvelle Brown, Superintendent of Ithaca City School District and Susan Eschbach, Principal of Beverly J. Martin Elementary School. Joe, who had "a severe, life-threatening anaphylactic reaction to his hepatitis B vaccine given at birth," submitted a medical exemption request from his pediatrician in the summer of 2019 seeking exemption to "all immunization on a permanent basis." (Dkt. No. 99-2, ¶¶ 231, 235). According to the proposed First Amended Complaint, in November 2019, Superintendent Brown (1) "partially denied" the medical exemption request Joe's mother had submitted from Joe's pediatrician; (2) informed her that "she had to get her son immunized within a week or her son would be expelled from school"; and (3) in response to Joe's mother's explanation that Joe "had always had a medical exemption to all further immunization and that multiple physicians had indicated that further immunization would be unsafe for him," stated that, "as far as he understood, [Joe] would need to have an anaphylactic reaction to each vaccine in order to be exempt from the additional mandates." (*Id.* ¶¶ 238–40).

Crediting these allegations, the Court finds they fail to allow a plausible inference that Superintendent Brown's conduct in partially denying the Joes' medical exemption request on the ground that it did not assert Joe had an anaphylactic reaction to each vaccine was arbitrary or irrational. The regulations require that any request for exemption "contain[] sufficient information to identify a medical contraindication to a specific immunization." 10 N.Y.C.R.R. § 66-1.3(c). And even if Superintendent Brown knew about and failed to consider Joe's other

conditions—he is autistic, has a range of health problems, and a history of mercury, lead, and aluminum poisoning, (Dkt. No. 99-2, ¶ 232)—there is no allegation that Superintendent Brown did anything other than follow the regulation. There is no allegation that Joe had medical contraindications or precautions consistent with nationally recognized evidence-based standards of care that Superintendent Brown ignored. The Court cannot infer from these allegations a plausible claim of egregious government action in violation of substantive due process. *Cf. Velez*, 401 F.3d at 94 (explaining that the "intentional[ ] and malicious[ ] fabricat[ion] and disseminat[ion][of] falsehoods in a common effort to deprive the plaintiff of her job . . . might well be sufficiently 'arbitrary' and 'outrageous,' in a constitutional sense, to make out a valid substantive due process claim" (citing *Natale*, 170 F.3d at 262)).

To the extent the Joes argue that the timeline Lansing set for vaccination—one week— shocks the conscience because it is inconsistent with New York Public Health Law § 2164(7)(a), which states that no "person in charge of a school shall permit any child to be admitted to such school, or to attend such school, in excess of fourteen days, without" the required immunization or is inconsistent with the scheduling recommendations outlined in the ACIP Guidelines, *see, e.g.*, N.Y. Pub. Health Law § 2164(2)(c); (Dkt. No. 28-7), as the Court explained with respect to the Coes, such allegations allow an inference of violation of state law but do not suggest conduct that is "sufficiently 'arbitrary' and 'outrageous,' in a constitutional sense, to make out a valid substantive due process claim." *Velez*, 401 F.3d at 94.

Although the proposed First Amended Complaint names Principal Eschbach individually, there are no allegations that she had any involvement in the handling of the Joes' medical exemption request. It alleges only that "Defendant Susan Esbasch [sic], the principal of the school who is by statute supposed to make this decision, did not contact the mother or the

doctor." (Dkt. No. 99-2, ¶ 240). As the Court explained with respect to the Does' claim against Principal Mercer, an analysis that applies equally here, *see supra* Section VI.C.2.a., this is insufficient to allege that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). Accordingly, the proposed amendment to include individual substantive due process claims against Superintendent Brown and Principal Eschbach is denied as futile.

### 3. Equal Protection

Plaintiffs contend that "due to their disabilities, which prevent them from being able to be safely immunized per the certifications of their licensed physicians," Defendants have "denied their equal protection rights." (Dkt. No. 100, at 47; Dkt. No. 112, at 23). Plaintiffs allege that "[m]edically fragile sub-populations . . . have not been adequately studied, and there is significant divergence of thought within the medical and scientific community about the risk that is posed to medically fragile subpopulations." (Dkt. No. 99-2, ¶ 409). They further allege that "[t]here is no rational basis for discriminating against children who suffer from hundreds of recognized harms that do not fall on the ACIP contraindications and precautions list." (*Id.* ¶ 411). Defendants assert that dismissal of Plaintiffs' equal protection claim is required for the same reasons their substantive due process claims must be dismissed: the mandatory vaccination requirement and medical exemption survive rational basis review. (Dkt. No. 28-1, at 20 n.3; Dkt. No. 54-14, at 31 n.1; Dkt. No. 78-4, at 28–29)

The Equal Protection Clause of the Fourteenth Amendment "requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). It is well settled that "[l]aws that discriminate on the basis of disability are subject to rational-basis review and upheld so long as there is a 'rational relationship between the disparity

of treatment and some legitimate governmental purpose.'" *Bryant*, 692 F.3d at 219 (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 109 (2d Cir. 2001)). As the Court explained above, there is a rational basis to support the legislature's selection of the ACIP guidance and other "nationally recognized evidence-based" reasons as the framework against which to assess the propriety of medical exemptions.

Plaintiffs argue that there is no rational basis for restricting the provision of medical exemptions to those students with contraindications or precautions identified in the ACIP Guidelines when there is an entire "sub-population" of medically fragile children whose conditions fall outside the listed contraindications and precautions and about whom there is "divergence of thought in the medical and scientific community." (Dkt. No. 99-2, ¶ 409). However, to the extent the medical exemption allows classification between students with medical conditions that constitute a contraindication or precaution within the ACIP Guidelines, and students whose medical conditions do not, it does not violate principles of equal protection as there is no suspect classification at issue, *see Bryant*, 692 F.3d at 219 (explaining that classification of students with disabilities who had education plans authorizing aversives and classification of students with disabilities who did not have education plans permitting aversives was "a non-suspect classification subject to rational basis review"), and "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* Here the state's framework for evaluating medical exemption requests was selected in order to provide "clear, evidence-based guidance to physicians" and "prevent medical exemptions being issued for non-medical reasons." (Dkt. No. 28-6, at 16–17). There were, therefore, rational grounds for Defendants' restriction of medical exemptions to contraindications or precautions consistent with the ACIP guidance or "other

nationally recognized evidence-based standard of care." 10 N.Y.C.R.R. § 66-1.1(l). Accordingly,

Plaintiffs' equal protection claims are dismissed.[26]

### 4.    Unconstitutional Conditions

In their Fourth Claim for Relief, Plaintiffs appear to advance an unconstitutional

conditions claim: Violation of the Fourteenth Amendment by unconstitutionally burdening

minors' right to pursue an education at any public or private school in New York. (Dkt. No. 99-

2, at 83–84). They allege that: "Defendants' practice of conditioning children's right to pursue an

education at any school in New York—even private school or daycare—on the parents' waiver

of fundamental rights including the right to exercise informed consent in furtherance of the best

interests of their child based on the advice of licensed physicians violates the doctrine of

unconstitutional conditioning." (*Id.*).

The "unconstitutional conditions doctrine" reflects "an overarching principle . . . that

vindicates the Constitution's enumerated rights by preventing the government from coercing

people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604

(2013). "Pursuant to this 'unconstitutional conditions' doctrine, as it has come to be known, the

government may not place a condition on the receipt of a benefit or subsidy that infringes upon

the recipient's constitutionally protected rights, even if the government has no obligation to offer

the benefit in the first instance." *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651

---

[26] Even assuming Plaintiffs intend to allege individual equal protection claims against the School District Defendants under a "class of one" or "selective enforcement" theory, such claims would fail as Plaintiffs allege no comparators. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (explaining that to state a "class-of-one" equal protection claim, a plaintiff must plausibly allege that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"); *Harlen Assocs.*, 273 F.3d at 499 (explaining that to state an equal protection claim under a selective enforcement theory, a plaintiff must allege: (i) that they were "treated differently from other similarly situated individuals"; and (ii) "that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.") (internal quotation marks omitted).

F.3d 218, 231 (2d Cir. 2011) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)), *aff'd sub nom. Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013).

Here, as discussed, the proposed First Amended Complaint fails to allege that conditioning admission to school on compliance with the mandatory school vaccination law infringes any constitutional rights. Therefore, there can be no corresponding "unconstitutional conditions" claim.

### 5.   Qualified Immunity

Because amendment of Plaintiffs' constitutional claims against the individual Defendants has been denied as futile, the Court need not address whether any or all of the individual Defendants would be entitled to qualified immunity as defense to those claims.

### 6.   Municipal Liability Claims

Plaintiffs allege that the Defendant School Districts adopted the allegedly unconstitutional policies and practices outlined in the mandatory vaccine law and medical exemption and "officially decided" to give the school principals or school physicians the discretion to "overrule" the opinion of children's treating physicians, and follow a narrow reading of the ACIP guidance in evaluating requests for medical exemptions. (*See, e.g.*, Dkt. No. 100, at 49–50).

The municipal liability allegations Plaintiffs assert against the Defendant School Districts fail to state a plausible claim for relief. It is well-established that a municipality may not be held liable under § 1983 on the basis of respondeat superior. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694-95 (1978). Rather, municipalities are responsible only for "their own illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986), and are not vicariously liable for civil rights violations perpetrated by their employees, *see Monell*, 436 U.S. at 691. A municipality may be liable under Section 1983 only if "its 'policy or custom . . . made by . . .

those whose edicts or acts may fairly be said to represent official policy, inflicts the [complained of] injury.'" *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 128 (2d Cir. 2004) (quoting *Monell*, 436 U.S. at 694). In order to sustain a § 1983 claim for municipal liability, a plaintiff must show that he suffered a constitutional violation, and that the violation resulted from an identified municipal policy or custom. *Id.* at 694–95; *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.").

Here, the proposed First Amended Complaint fails to allege that any of the individual Defendants' conduct was so arbitrary, conscience-shocking or oppressive as to implicate substantive due process. Nor are there any allegations that would allow a plausible inference that any Plaintiff suffered a constitutional violation. Accordingly, the Defendant School Districts are entitled to dismissal of the municipal liability claims against them. *See, e.g.*, *Segal*, 459 F.3d at 219 ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

### D.    Rehabilitation Act

#### 1.    Individual Capacity Claims

Section 504 "of the Rehabilitation Act [does not] provide[] for individual capacity suits against state officials." *Garcia*, 280 F.3d at 107. Thus, to the extent Plaintiffs seek to assert Rehabilitation Act claims against the individual Defendants in their personal capacities, their motion to amend is denied as futile. Plaintiffs may, however, proceed against the individual Defendants in their official capacities to the extent they seek prospective injunctive relief. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Rehabilitation Act suits for prospective

injunctive relief may, under the doctrine established by *Ex parte Young*, 209 U.S. 123 (1908),

proceed against individual officers in their official capacity."). Accordingly, all Rehabilitation

Act claims against the individual School District Defendants[27] in their personal capacities are

dismissed.

### 2.   Discrimination Claims Against the DOH, Three Village, Lansing, Penfield, South Huntington, Ithaca, Coxsackie-Athens, and Albany

In their Fifth Claim for Relief, Plaintiffs allege that the Plaintiff children are "disabled . . .

in that each of them suffers from a limitation in the performance of one or more major life

activity" and that the Plaintiff children's exclusion from "participation in . . . schooling" "[b]y

dint of [Defendants'] manner of administering the medical exemption" violates section 504 of

the Rehabilitation Act.[28] (Dkt. No. 99-2, ¶¶ 402–05). Defendants argue they are entitled to

dismissal of Plaintiffs' Rehabilitation Act claims on the grounds that the Plaintiff children were

denied access to school "because they failed to comply with the vaccination requirements" and

thus fail to allege "that they were denied a benefit—namely, attending school—*solely by reason*

*of their disabilities*." (Dkt. No. 28-1, at 20; Dkt. No. 54-14, at 31; Dkt. No. 78-4, at 28; Dkt. No.

91-1, at 18).

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual

with a disability . . . shall, solely by reason of her or his disability, be excluded from the

participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity" receiving federal financial support. 29 U.S.C. § 794(a). "Exclusion or discrimination

[under Section 504] may take the form of disparate treatment, disparate impact, or failure to

---

[27] As Defendants Zucker and Rausch-Phung are named in their official capacities only, there are no individual capacity claims to dismiss as to them.

[28] The proposed First Amendment Complaint contains two claims for relief under the Rehabilitation Act. (Dkt. No. 99-2, ¶¶ 402–14 (Fifth and Sixth Claims for Relief)). As discussed, Plaintiffs appear to have mislabeled their equal protection claim as a claim under the Rehabilitation Act. *See supra* note 14.

make a reasonable accommodation." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016).

"In order to establish a violation of § 504 [of the Rehabilitation Act], Plaintiffs must show that: (1) they are 'qualified individuals' with a disability; (2) Defendants are subject to the Rehabilitation Act; and (3) Plaintiffs 'were denied the opportunity to participate in or benefit from [the government ] services, programs, or activities, or were otherwise discriminated against by [D]efendants, by reason of [their] disabilities.'" *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (internal quotation marks omitted); *see also C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840-41 (2d Cir. 2014).

According to the proposed First Amended Complaint, the Plaintiff children suffer multiple medical conditions and their "disabilities significantly impair multiple major life functions, including . . . functions of [their] immune system[s]," (Dkt. No. 99-2, ¶¶ 93, 125, 166, 187, 208, 234, 246); *see* 42 U.S.C. § 12102(2)(B) ("[A] major life activity . . . includes the operation of a major bodily function, including but not limited to, functions of the immune system[.]"); *Grabin v. Marymount Manhattan Coll.*, No. 12-cv-3591, 2015 WL 4040823, at *10– 14, 2015 U.S. Dist. LEXIS 86646, at *32–34 (S.D.N.Y. July 2, 2015) (discussing whether the plaintiff established disability under the Rehabilitation Act where the "major life activity that [the plaintiff] allege[d] to be limited [was] the functioning of her immune system" (citing 42 U.S.C. § 12102(2)(B)), *aff'd*, 659 F. App'x 7 (2d Cir. 2016)). Plaintiffs also allege that Defendants are recipients of "federal financial assistance." (Dkt. No. 99-2, ¶ 405). For purposes of this motion, Defendants do not challenge the sufficiency of Plaintiffs' allegations as to the first two elements of a Rehabilitation Act claim.

As to the third element, Plaintiffs argue that "the new regulations narrow the medical exemption so that most of the acknowledged potential harms are no longer covered" and that, as a result, those "with disabilities that fall outside of the non-exhaustive ACIP contraindications are discriminated against" and denied access to school.[29] (Dkt. No. 74, at 28). The proposed First Amended Complaint, however, fails to allege disability discrimination. The parties' arguments center on *D.A.B. v. New York City Department of Education*, 45 F. Supp. 3d 400, 407 (S.D.N.Y. 2014). In *D.A.B.*, D.B.'s parents, the plaintiffs, sought a medical exemption from the mandatory vaccination requirements from the New York City Department of Education ("Department") by submitting a letter from D.B.'s pediatrician stating "that D.B. has a 'history of adverse reactions' to vaccinations." *Id.* The Department "denied the request because it found no medical basis for the exemption." *Id.* at 403. In a June 2010 letter to the Department, D.B.'s mother "stated that the principal had told her that D.B. would require vaccination [to attend the public school], which she stated would be 'contrary to the advice of his physicians.'" *Id.* "Prior to the 2010-2011 school year, D.B. still had not received the necessary vaccinations and the plaintiffs did not request an exemption." *Id.* The plaintiffs did not enroll D.B. in public school, but placed him in "a non-public center." *Id.*

The plaintiffs sued the Department, and asserted, along with their claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, that D.B.'s autism "prevent[ed] him from obtaining the required vaccinations"; that "D.B. had been excluded from the proposed placement based on his lack of vaccination"; and that "therefore the enforcement of the [vaccination] requirement constitutes discrimination" under the

---

[29] Goe, who attended school in Penfield Central School District, fails to allege she was denied access to education: she asserts that despite Penfield's handling of her medical exemption requests, she completed her senior year of high school at Penfield and was "set to graduate." (Dkt. No. 99-2, ¶ 228).

Rehabilitation Act. *Id.* at 404, 407. The court dismissed based upon the plaintiffs' failure to

exhaust administrative remedies, as required by the IDEA, and noted that it was "unclear"

whether the plaintiffs could show that D.B. "was excluded from school at all" because they had

rejected the proposed public school placement and enrolled D.B. elsewhere, but concluded that

in any event the Rehabilitation Act claim was "without merit" because the plaintiffs could not

"show that D.B. was excluded from school 'solely by reason' of his disability." *Id.* at 405–07

(quoting 29 U.S.C. § 794(a)).

In rejecting the Rehabilitation Act claim, the court observed that the "vaccination

requirement, which allows the possibility of exemptions, is a . . . limited, generally applicable

law intended to limit the spread of contagious disease." *Id.* at 407 (citing N.Y. Pub. Health Law §

2164; *New York State Ass'n for Retarded Children v. Carey*, 466 F. Supp. 479, 486 (E.D.N.Y.

1978) (stating that in contrast to complete exclusion, Section 504 allows "prophylactic

measures" to limit the "risk of contagion")). And because of its limited and generally applicable

nature, the court found the mandatory vaccination requirement, and medical exemption, did not

fall within the category of cases where the conduct, which was found to be discriminatory in

violation of the Rehabilitation Act, involved "sweeping, automatic exclusions of all children with

a certain disease" *Id.* at 407 (citing *Carey*, 466 F. Supp. at 486 (holding that the exclusion of all

mentally disabled children with Hepatitis B violated Section 504); *Dist. 27 Cmty. Sch. Bd. by

Granirer v. Bd. of Educ. of City of New York*, 502 N.Y.S.2d 325, 335 (Sup. Ct. 1986) (holding

that the automatic exclusion of all children with AIDS would violate the Rehabilitation Act)).

The court therefore concluded that the plaintiffs failed to show that D.B. "was . . . excluded from

public school solely because of his autism." *Id.* at 407. The Second Circuit agreed: in its decision

affirming the district court, the Second Circuit noted that "for the reasons well stated by the

district court, no reasonable juror could conclude that [the Department of Education]
discriminated against [the plaintiff] because of his disability." *D.A.B. v. New York City Dep't of
Educ.*, 630 F. App'x 73, 79 (2d Cir. 2015).

Here, the disabilities alleged are impairments of the immune system. Plaintiffs argue that
the narrow scope of the medical exemption discriminates against students with "disabilities that
fall outside of the non-exhaustive ACIP contraindications." (Dkt. No. 83, at 27–28). However,
the language of the regulation limits medical exemptions to children who can demonstrate that
they have "a medical contraindication or precaution to a specific immunization *consistent with*
ACIP guidance *or other nationally recognized evidence-based standard of care*." 10 N.Y.C.R.R.
§ 66-1.1(l) (emphasis added). The mandatory vaccination requirement and medical exemption
are facially neutral, as they apply to all students—not just those with disabilities. Furthermore,
although Plaintiffs strongly disagree with the state's decision to limit medical exemptions to this
class of medical contraindications or precautions, as discussed above, decisions as to what
medical contraindications and precautions qualify for exemption, as well as decisions about
whether a particular student's condition qualifies for an exemption, are well within the authority
of the legislature, state agencies, and local school administrators. *See Bryant*, 692 F.3d at 216
(dismissing claim that the New York Legislature's banning of aversive interventions in education
violates the Rehabilitation Act, explaining that "[t]he regulation applies to all students, regardless
of disability" and acknowledging the plaintiffs' argument that "there is no scholarly support for
banning aversives" but concluding that "such a dispute (regarding which education policy is the
most scientifically sound and effective approach that is least likely to present health, safety, and
moral and ethical concerns) is best left for resolution by the policymakers and education
administrators, not the judiciary").

Further, the Court has reviewed the allegations of the individual Plaintiffs but has found none that allege a plausible inference of disability discrimination. Crediting their allegations, Plaintiffs allege that their requests for medical exemptions were denied in the course of the application of this facially neutral regulation because their medical exemption requests lacked the requisite detail or were otherwise insufficient; the conditions identified did not qualify under the ACIP guidance; or the doctors relied on by the schools disagreed with student's doctor's opinion that the student's condition qualified for exemption. The First Amended Complaint thus fails to allow a plausible inference that Defendants denied Plaintiffs access to education solely by reason of disability. *See, e.g.*, *Flight v. Gloeckler*, 68 F.3d 61, 64 (2d Cir. 1995) (concluding that "Flight was not denied the additional subsidy 'solely by reason of . . . his disability' within the meaning of § 504" where "[t]he denial of the increased allowance was not based upon Flight's classification as a victim of multiple sclerosis, but rather upon the type of modification that he requested"). Thus, the Court concludes that the proposed First Amended Complaint fails to state a plausible claim for relief under the Rehabilitation Act.

### 3.   Disparate Impact and Reasonable Accommodation Claims

In their briefing, Plaintiffs assert they are proceeding with their Rehabilitation Act claims "under theories of disparate treatment, disparate impact and failure to make a reasonable accommodation," (Dkt. No. 74, at 27), and reference regulations requiring covering entities to make reasonable modifications to their polices . . . to avoid discrimination on the basis of disability." (Dkt. No. 112, at 24 (citing, inter alia, 28 C.F.R. §§ 36.302, 35.130(b)(7)). However, they do not meaningfully address disparate impact or the reasonable accommodation theories except to allege that the medical exemption "disparately impacts medically fragile children," like the Plaintiff children whose immune systems are compromised and whose conditions "fall outside the narrow list of ACIP contraindications." (Dkt. No. 113, at 26). *See, e.g.*, *B.C.*, 837

F.3d at 158 ("To establish a prima facie case under a disparate impact theory, plaintiff must demonstrate '(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices.'" (quoting *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574–75 (2d Cir. 2003) (emphasis omitted))). Indeed, no party has cited any law or advanced any specific arguments suggesting a belief that Plaintiffs have asserted a disparate impact or reasonable accommodation claims.

Having reviewed the proposed First Amended Complaint, the Court concludes that Plaintiffs allege no facts that would allow a plausible inference that they were denied a medical exemption and admission to school "by reason of" a disability within the meaning of the Rehabilitation Act—under the mandatory school vaccination law by its terms or by the Defendant school districts. Defendants, therefore, are entitled to dismissal of Plaintiffs' Rehabilitation Act claims.

### E.  Motion to Transfer Venue

The Three Village and South Huntington Defendants, as well as Defendant Brother Migliorino, seek severance of their claims and transfer of venue under 28 U.S.C. § 1404(a) to the Eastern District of New York, where they are located. (Dkt. No. 54-14, at 32–35; Dkt. No. 91-1, at 20–22). Plaintiff responds that severance is unwarranted. (Dkt. No. 83, at 29–30). Under 28 U.S.C. § 1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." It is not disputed that many of the Defendants reside in the Northern District of New York, thus venue in the Northern District of New York is proper under § 1391. In light of the Court's conclusion that this case must be dismissed, the Court does not reach the issue of whether transfer is warranted

under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice." Accordingly, Defendants' motion to transfer is denied as moot.

## VII.   CONCLUSION[30]

As described above, the medical exemption is reasonably related to the State's public health objective: to sustain a high vaccination rate among children in an attempt to prevent disease outbreaks, the regulation seeks to ensure that medical exemptions are issued for medical reasons based on evidence-based guidance. While the Court is sympathetic to the plight of the Plaintiff parents and children in this case, the Court is unable to find that they have stated a plausible constitutional violation or a federal claim. Rather, their recourse for any misapplication of the medical exemption in their particular cases is the state administrative process. For these reasons, it is hereby

**ORDERED** that Defendants' motions to dismiss (Dkt. Nos. 28, 54, 78, 91), are **GRANTED**; and it is further

**ORDERED** that Plaintiffs' motion to amend (Dkt. No. 93) is **DENIED as futile**; and it is further

**ORDERED** that Defendants' request for transfer of venue is **DENIED as moot.**

**ORDERED** that the Complaint (Dkt. No. 1) is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: February 17, 2021
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[30] Plaintiffs have sought to replead once and have not identified additional facts, in their briefing or at oral argument, that would provide a basis for alleging a plausible claim for relief.