UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------x
JANE DOE, et al.,

                                    Plaintiffs,

vs.                                 1:20-CV-840

HOWARD ZUCKER, et al.,

                                    Defendants.
--------------------------------------------x

        Transcript of a Telephone Conference held on

January 6, 2021, the HONORABLE BRENDA K. SANNES,

United States District Judge, Presiding.

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*
*(315) 234-8547*

A P P E A R A N C E S

(By Telephone)

```
For Plaintiffs:        THE GIBSON LAW FIRM, PLLC
                       Attorneys at Law
                       407 N. Cayuga St., Suite 201
                       Ithaca, New York  14850
                         BY:  SUJATA S. GIBSON, ESQ.


                       CHILDREN'S HEALTH DEFENSE
                         BY:  MARY HOLLAND, ESQ.


For Defendant:         STATE OF NEW YORK
(State dfts.)          Office of Attorney General
                       The Capitol
                       Albany, New York  12224
                         BY:  MICHAEL G. McCARTIN, ESQ.
                              ANDREW W. KOSTER, ESQ.


For Defendants:        JOHNSON LAWS LLC
(Three Vlg.,           Attorneys at Law
 S. Huntington,        646 Plank Road, Suite 205
 Ithaca, Alb. SD)      Clifton Park, New York  12065
                         BY:  GREGG JOHNSON, ESQ.
                              LORAINE CLARE JELINEK, ESQ.


                       SOKOLOFF STERN LLP
                       Attorneys at Law
                       179 Westbury Avenue
                       Carle Place, New York  11514
                         BY:  ADAM I. KLEINBERG, ESQ.
                              CHELSEA WEISBORD, ESQ.


For Defendants:        CULLEN, DYKMAN LAW FIRM
(Lansing, Penfield,    Attorneys at Law
 Shenendehowa,         100 Quentin Roosevelt Blvd.
 Coxsackie-Athens)     Garden City, New York  11530
                         BY:  ROXANNE TASHJIAN, ESQ.
                              JAMES G. RYAN, ESQ.


For Defendant:         BIEDERMANN HOENIG SEMPREVIVO
(Migliorino)           Attorneys at Law
                       One Grand Central Place
                       60 E. 42nd Street - 36th Floor
                       New York, New York  10165
                         BY:  MEISHIN RICCARDULLI, ESQ.
```

1            (The Court and all counsel present by

2              telephone, 10:00 a.m.)

3            THE CLERK:  Good morning, we're here with Judge

4    Sannes in the case Doe v. Zucker, 20-CV-840.  Counsel, please

5    state your appearances for the record, starting with

6    plaintiff.  Do we have counsel for the plaintiffs on the

7    line?

8            MS. HOLLAND:  This is Mary Holland for plaintiff

9    but Sujata Gibson and Michael Sussman should be on.

10           THE COURT:  I'm sorry, could you --

11           MS. HOLLAND:  My name is Mary Holland.

12           THE CLERK:  Spell your last name for the record.

13           MS. HOLLAND:  H-o-l-l-a-n-d.

14           THE CLERK:  Thank you.

15           MR. McCARTIN:  Your Honor, this is Michael

16   McCartin, and I'm with Andrew Koster with the AG's office for

17   the state defendants in this matter.

18           THE COURT:  Thank you.

19           MR. KLEINBERG:  Good morning, your Honor, this is

20   Adam Kleinberg from Sokoloff Stern, attorney for South

21   Huntington Union Free School District, Three Village Central

22   School District, Ithaca City School District, Albany City

23   School District, and there are various officials that were

24   sued in this matter.  I'm also joined on the line by Gregg

25   Johnson who's cocounsel, Chelsea Weisbord, and Loraine

1   Jelinek.

2              THE COURT:  Good morning.

3              MR. KLEINBERG:  Good morning.

4              THE COURT:  And is there counsel on the line for

5   the Lansing Central School District?

6                   (No Response.)

7              THE COURT:  Is there counsel on the line for David

8   Migliorino?  If counsel just joined, could you please

9   identify yourself?

10             MS. GIBSON:  Hi, Judge, this is Sujata Gibson for

11   Children's Health Defense and the plaintiffs.

12             THE COURT:  Good morning.

13             MS. GIBSON:  Good morning.

14             THE COURT:  And let me ask again, is there any

15   counsel for the Lansing Central School District?

16                   (No Response.)

17             THE COURT:  Or any counsel for David Migliorino?

18                   (No Response.)

19             THE COURT:  Okay, why don't we go forward since it

20   is after 10:00.  Let me just say, all parties who are not

21   attorneys, anyone who is not an attorney, please mute your

22   telephones, I don't think all the telephones are muted and

23   that makes it very hard for the court reporter to hear the

24   argument from counsel.

25                   Presently before the court are the defendants'

1    motions to dismiss and the plaintiffs' motion to amend the

2    complaint.  I have reviewed the proposed amended complaint

3    and I am considering the merits of the defendants' arguments

4    to dismiss in light of the proposed amended complaint.

5             And let me say at the outset that I understand the

6    frustration parents have with respect to vaccine regulations,

7    but I do have to apply the law that's been set by the

8    Second -- by the Supreme Court and Second Circuit Court of

9    Appeals.

10            So let me start with plaintiffs' counsel and ask,

11   given the framework of the court's ruling on injunctive

12   relief, which applies a rational basis test, how do these

13   regulations not pass the rational basis test?

14            MS. GIBSON:  Your Honor, I didn't see any

15   discussion on that ruling, are you referring to the ruling

16   that was certified this morning?

17            THE COURT:  No, I'm referring to the court's ruling

18   on injunctive relief.

19            MS. GIBSON:  Oh, I'm sorry, your decision and

20   order.  So the rational basis test, there was a circuit split

21   but the law has actually dramatically changed in the last

22   month.  The Supreme Court just decided the *Catholic Diocese*

23   case in -- *of Brooklyn v. Cuomo*, and that case, *Roman*

24   *Catholic Diocese v. Cuomo*, you know, clearly clarifies this

25   kind of confusion in the law about whether rational basis

1    needs to apply in these cases involving public health and the

2    effect of *Jacobson* on tiers of scrutiny, and the court

3    rejected the arguments that there should be any impact on

4    tiers of scrutiny and clarified that we need to look at all

5    of -- any case that involves the fundamental right through

6    those tiers of scrutiny using strict scrutiny.  And then

7    *Agudath Israel* here in the Second Circuit which was decided

8    on December 28th, 2020 also went into quite a bit of detail

9    on that and the effect of *Jacobson* and has since then made it

10   very clear that we now have these strict scrutiny --

11          THE COURT:  And let me, let me just stop you there

12   because aren't those cases freedom of religion cases and

13   strict scrutiny applies because it's a right, constitutional

14   right to freedom of religion?

15          MS. GIBSON:  Well, those cases clarify that anytime

16   any fundamental right is involved, we need to use strict

17   scrutiny and that there's no new -- no deference or special,

18   special, you know, standard that's triggered by public

19   health.  So this case is involving multiple fundamental

20   rights including, you know, the right to refuse medical

21   treatment, the right of parents to make medical decisions for

22   their children in cases where, especially where they're

23   supported by a license -- state-licensed physician, and the

24   right of -- the self-defense right, the right to life, to

25   avoid regulations that could cause you harm, particularly

1   where the state-licensed physician has certified that that is

2   true and particularly on a motion to dismiss where all of

3   these children have alleged and have presented plausible

4   evidence that they are in fact at risk of serious harm or

5   death from one or more of these vaccine doses.  That right is

6   very clearly defined as a fundamental right.

7        THE COURT:  And let me just ask you, assuming I

8   don't think the case law supports that position, how do these

9   regulations, or do you have any argument that these

10  regulations do not pass a rational basis test?

11       MS. GIBSON:  Yes, your Honor, I do.  It wouldn't be

12  rational to place children at risk of harm, particularly for

13  the vaccines that only have the ability to protect from the

14  symptoms, cannot have any kind of, you know, cannot help

15  others from not getting infected.  So there's a lot of these

16  vaccines in the schedule that, we're looking at that now, as

17  the COVID vaccine, there are some vaccines that can prevent

18  symptoms but can't stop asymptomatic transmission and there

19  are some vaccines that can actually prevent transmission as

20  well as symptoms.  And so many on the list and many of these

21  plaintiffs are only missing those in the category that can't

22  protect anyone else.  Their doctors have said that they're at

23  risk of serious harm or death, many of their, you know, two

24  of them -- three of them have had family members who did in

25  fact die from those vaccines, and it was not even -- it's not

1    even rational to force them then to get those vaccines in

2    order to go to school, or to say that they can't go to online

3    school.  So there's no kind of rational relationship between

4    these requirements and a violation of these fundamental

5    rights that the parents and children enjoy.

6           THE COURT:  Isn't it rational to require a

7    medically-based contraindication or precaution?

8           MS. GIBSON:  Yes, but that is not what this

9    complaint alleges happened.  So all of them have alleged that

10   they, and they all have, submitted medically-based,

11   evidence-based reasons for why they can't take the vaccine.

12   They didn't just come up with it, you know, off the top of

13   their heads.  Licensed, state-licensed physicians have

14   certified that they are at risk of serious harm or death.

15   Many of these children have had multiple state-licensed

16   physicians certify that and go into extensive detail on the

17   evidence-based reasons, peer-reviewed science, you know,

18   other, other bases.  Which also brings why this is

19   irrational, these limiting factors that the defendants have

20   individually and collectively kind of adopted are irrational

21   because even the CDC says that those ACIP guidelines, the

22   very narrow ACIP guidelines which all of these defendants

23   have been in practice using, are not meant to be a

24   population-based concept, cannot define the medical

25   exemption.  In fact, you know, we had quoted in the complaint

1    an e-mail from the person who wrote the CDC guidelines who is

2    the representative of the ACIP committee who says these

3    cannot be used, you know, these ACIP guidelines are not a

4    space to use as the limits of a medical exemption, they're

5    meant for practitioners who can then expand upon that based

6    upon, you know, clinical judgment and evidence-based reasons

7    with each specific child because this doesn't define the

8    limits of the medical exemption.  And so now, even though

9    that's the case, we have all these defendants using this very

10   narrow criteria that just by its nature is going to exclude

11   hundreds of medically fragile very vulnerable children and

12   subject them to risk of harm and death.

13            THE COURT:  And as I understand the complaint, in

14   many of these cases, the doctor at the -- in her capacity as

15   the director of the Bureau of Immunizations determined that

16   there was not a medical contraindication or precaution.  What

17   case law supports the federal court's power to second guess

18   decisions like that that are made by public health

19   professionals?

20            MS. GIBSON:  Well, again, I will point to *Roman*

21   *Catholic Diocese* and *Agudath Israel*, the December 28th

22   decision where they very clearly say the federal courts have

23   to second guess those when constitutional questions have been

24   brought before them, so is it constitutional.  You know, many

25   of these cases, the Department of Health does not have any

1    kind of reviewing opinion, but to be -- for the few cases

2    that defendant Rausch-Phung did weigh in on, for example in

3    the Coe family case where she said that the death of two

4    family members was not an ACIP condition listed in the ACIP

5    contraindications and so she recommended against dismissal.

6    You know, the federal government has to look at that.  They

7    very clearly say in *Roman Catholic Diocese* and in *Agudath*

8    *Israel* that it is the court's responsibility to look at that

9    and all of the *South Bay* notions from *South Bay Pentecostal*

10   that there's this deference that's just like a deference

11   that's supposed to be afforded, that has been expressly

12   changed now by the Supreme Court and the Second Circuit.

13         THE COURT:  And with respect to the rehabilitation

14   claim, the regulations appear to be on their face neutral,

15   facially neutral.  What disability or disabilities do the

16   regulations discriminate against?

17         MS. GIBSON:  Well, they're not facially neutral

18   because they exclude people with physical conditions that

19   don't fall into the three ACIP criteria.

20         THE COURT:  And let me just stop you there because

21   you've said that repeatedly and we went over this the last

22   time we had an argument.  The regulation says consistent with

23   ACIP guidance or other nationally recognized evidence-based

24   standard of care.

25         MS. GIBSON:  And this is an as-applied and facial

1    challenge and the complaint clearly outlines how the

2    individual defendants and members of the Department of Health

3    as applied do not apply it that way.  They apply it very

4    narrowly so that it only -- it encompasses a large number of

5    conditions.  And that's, you know, detailed for each child in

6    this, in this complaint, how their conditions were excluded

7    either because they didn't fall under the, you know, the

8    three conditions recognized by ACIP, and many of these

9    reviewing doctors wrote letters expressly stating that they

10   only consider ACIP and Dr. Rausch-Phung has written letters

11   which does not, do not consider anything other than ACIP.

12   So, so, if you have a condition that doesn't fall within ACIP

13   and you're unable to vaccinate because of that condition for

14   one or more of the vaccine doses, then you are being

15   discriminated against because of the vaccine.

16          THE COURT:  And just looking at the regulation,

17   what nationally recognized evidence-based standards of care

18   do the plaintiffs in this case, do their contraindications or

19   precautions fall within?

20          MS. GIBSON:  I think that that's -- it's an

21   interesting question what nationally recognized

22   evidence-based standards of care even mean.  A lot of lawyers

23   have parsed that and written, you know, lengthy letters back

24   and forth and it's unclear what that even means.  Does that

25   mean, you know, the Institutes of Medicine has written a

1    report?  You know, because we've laid out in the complaint

2    how the federal government, for example, compensates a number

3    of conditions that are not covered by ACIP, or one of the few

4    other kind of guidelines that the Department of Health has

5    mentioned.  And so is that nationally recognized?  I mean,

6    the federal government compensates those with table injuries

7    for vaccine injuries and reasons not to vaccinate, the

8    Institutes of Medicine have lengthy reports, but the problem

9    here is that if you are just limiting it to practitioners'

10   guidelines or trade organization guidelines, that's not going

11   to be a population-based concept as the CDC has itself made

12   clear.  This is going to be a guide for practitioners but

13   cannot encompass all reasons and this needs to be an

14   individually based decision, based on science, based on

15   evidence of course, these are doctors, they're licensed to

16   practice in the state and that's their responsibility but ...

17   it can't be a narrow, you know, set of guidelines from this

18   organization or that organization because it won't cover

19   everybody that needs protection.

20            THE COURT:  And then the state argues that there

21   are other nationally recognized evidence-based standards of

22   care, including the Infectious Disease Society of America,

23   the American Academy of Pediatrics, American Academy of

24   Family Physicians.

25            MS. GIBSON:  I would argue first of all, I would

1    object to that evidence at all, this is a motion to dismiss,

2    so that's not in our complaint, it's never been raised with

3    any of our plaintiffs when we've challenged these decisions

4    that there are those options available, ACIP was the only

5    thing that anyone said was available.  But in any event, I

6    think, you know, factually -- so I would object to the

7    state's assertions of fact, those are factual issues that are

8    contested that need to be explored.  To the extent there are,

9    you know, other guidelines, I think we'd also have to take a

10   look at them and see if, similar to the CDC, they're meant to

11   just be guidelines for practitioners, not an exhaustive list

12   of who's covered.

13          Also I'll point to *Doe v. Bolton* again and say the

14   court has been very clear with medical exemptions that you

15   can't limit, you can't limit the physicians' criteria that

16   they're going to be using to determine when a medical

17   exemption is necessary.

18          THE COURT:  I see.  And the medical exemption form

19   is on the Department of Health, New York State Department of

20   Health website.  Is there any reason why the court couldn't

21   take judicial notice of that medical exemption form?

22          MS. GIBSON:  Yeah, but the form doesn't, you know,

23   doesn't address the as-applied challenges.  Whether the form

24   says nationally recognized evidence-based standards of care

25   is irrelevant to whether the actual defendants considered

1 that, which they didn't in these cases.  If there was a

2 declaratory judgment that, you know, the -- all medical

3 exemptions had to be accepted if they fell under, you know, a

4 sufficient reading of nationally recognized evidence-based

5 standards of care such that they would cover any child who is

6 at risk through evidence-based reasons, that would be fine,

7 but that's not what has happened in practice.

8     THE COURT:  And I understand your arguments about

9 the regulation and the form, but my question is just a simple

10 one.  Is there any reason why the court couldn't take

11 judicial notice of that medical exemption form?

12     MS. GIBSON:  I don't see any reason -- I mean, I

13 think the inferences couldn't be drawn that that is what is

14 used, but I believe it's, so the court can only take notice

15 of -- I mean, the facts have to be the four corners of the

16 complaint and then, you know, to the extent that there are

17 documents that -- I mean, I think that the court could take

18 judicial notice of the form.

19     THE COURT:  Okay.  And then with respect to John

20 Doe, the complaint indicates that the Commissioner of

21 Education denied his request for relief.  As I understand it,

22 that opinion is actually in the record as Docket 54-4, is

23 there any reason why the court couldn't take judicial notice

24 of the fact that Docket 54-4 is the Commissioner of

25 Education's ruling denying John Doe's request for relief?

1          MS. GIBSON:  I think, your Honor, I didn't brief

2     this issue but I was looking at case law yesterday and I

3     would love an opportunity to brief it.  To the extent that

4     the inferences are going to be drawn on contested issues of

5     fact based on outside documents that contradict the facts in

6     the complaint, I think that that is improper.  But I am happy

7     to submit arguments on that if the court would like.

8          THE COURT:  And I do understand that argument and I

9     do think that argument is valid.  My only question is whether

10    the court could take judicial notice of the ruling, so -- of

11    the fact that the Department of Education denied the request

12    stating X, Y, and Z, the ruling by the Commissioner of

13    Education.

14         MS. GIBSON:  I -- I'm so sorry, your Honor, but I

15    can't remember, did we amend the complaint to mention it?

16         THE COURT:  I believe the complaint mentions the

17    fact that the Commissioner of Education denied John Doe's

18    request for relief.

19         MS. GIBSON:  I think that the court could take

20    judicial -- I mean, wouldn't even have to because the

21    complaint already says it, right?

22         THE COURT:  I was -- I believe the decision is

23    Docket 54-4, and the ruling is something I would like to take

24    judicial notice of.

25         MS. GIBSON:  I think the rationale for the decision

1   is full of contested issues of fact and so I would object to

2   that being part of the complaint or taken into consideration

3   for dismissing this motion because the Commissioner of

4   Education never had a hearing on the facts and a lot of the

5   things that they set forth are contested facts that our

6   client, my client has a right to have looked at in a court of

7   law.

8           THE COURT:  And again, I wouldn't be asking to take

9   judicial notice of the facts but just the ruling.  If you'd

10  like an opportunity to brief that, I'm happy to give you a

11  week to submit a letter brief on that issue.

12          MS. GIBSON:  Certainly, your Honor.  Thank you.

13          THE COURT:  So would, by January 14th give you

14  enough time?

15          MS. GIBSON:  Yes, your Honor, that would be fine.

16          THE COURT:  Okay.  And in the amended complaint,

17  you have further developed your legal claims.  Given the

18  framework that the court applied in its ruling on injunctive

19  relief, the court doesn't find the amended complaint

20  sufficient to state a cause of action.  Is there any basis

21  for a further amendment?

22          MS. GIBSON:  I guess it would depend on whether --

23  well, what grounds the court found lacking.  If there are

24  facts that we could add that we hadn't mentioned or more

25  detail that we can provide, I would preserve the right to try

1    to do that.

2           THE COURT:  Well, I guess I'm asking, applying the

3    rational basis test, is there any basis for further

4    amendment?

5           MS. GIBSON:  Applying the rational basis test.  Is

6    the court asking if the rational basis test were applied to

7    fundamental rights, would there be a basis for further

8    amendment of the facts in the complaint?

9           THE COURT:  I'm indicating that I believe the

10   rational basis test is the test that I'm required to apply

11   under the Supreme Court and Second Circuit law and given

12   that, is there any basis for a further amendment?

13          MS. GIBSON:  I'm sorry, your Honor, I would just

14   have to see your decision to see whether there's anything

15   that, you know, we felt that we could, we could add, but --

16          THE COURT:  Okay, okay, that's fair enough.

17   Anything further, Ms. Gibson, on the motion that you'd like

18   to add in response to the motions to dismiss?

19          MS. GIBSON:  Yes, I guess I would just -- well,

20   I'll reserve for later, your Honor, on that question.  Thank

21   you.  I don't have anything at the moment other than to

22   question whether the rational basis can be applied, if you

23   wanted any more information about the actual fundamental

24   rights at issue here, but ...

25          THE CLERK:  Judge, this is Renata, I just want to

1     let you know I got an e-mail for counsel for defendant

2     Migliorino, they were having trouble joining but it looks

3     like they joined now, just wanted to let you know they're on.

4           THE COURT:  Thank you, and let me get your

5     appearance.

6           MS. RICCARDULLI:  Hi, your Honor, yes, I apologize.

7     I was somehow given the wrong dial-in information.  When I

8     dialed into the call, there were other parties waiting so I

9     assumed it was the right one and apparently no one started

10     talking so that's when I e-mailed, but it's Meishin

11     Riccardulli from Biedermann Hoenig Semprevivo for defendant

12     Brother David Migliorino.

13           THE COURT:  Great, thank you very much.  And is

14     Mr. Ryan or anyone from the Lansing Central School District

15     on the phone?

16           MS. TASHJIAN:  Yes, your Honor, this is Roxanne

17     Tashjian, Jim Ryan is also on the phone from Cullen Dykman

18     for Coxsackie-Athens School District, Lansing Central School

19     District, and Penfield Central School District and various

20     administrators.

21           THE COURT:  Could you spell your last name?

22           MS. TASHJIAN:  Sure, it's T as in Thomas, a-s as in

23     Sam, h-j-i-a-n.

24           THE COURT:  Okay, thank you.  And let me ask

25     counsel for the state defendants, is there anything you would

1    like to say at this hearing?

2            MR. McCARTIN:  Yes, your Honor.  I'll be brief.

3    First of all, good morning and may it please the court.

4    Before I begin, your Honor, I wanted to point out and

5    highlight the fact that late yesterday afternoon, the Second

6    Circuit entered an order, it was a two-sentence order that

7    denied plaintiffs' motion for an injunction in this case.  So

8    based upon that, based upon the fact that the court has also

9    entered an order back in October applying, dealing with the

10   plaintiffs' application for preliminary relief and the fact

11   that the circuit has now added its weight of authority to

12   this court's prior ruling, we'll be very brief here.

13           In short, the court can grant the state defendants'

14   motion to dismiss for the same reasons that the court found

15   that the plaintiff did not show a likelihood of success on

16   the merits.  As the court knows, two Supreme Court cases,

17   *Jacobson* and *Zucht*, and the more recent Second Circuit

18   decision in *Phillips* control here.  So when it comes to

19   immunization issues, the court should apply a rational basis

20   analysis.  Plaintiffs, we assert, wrongly argue that strict

21   scrutiny applies because a fundamental right is at stake.

22   That's incorrect.  Plaintiff has cited numerous abortion

23   rights cases in support of this proposition, but those cases

24   simply do not apply here.  No one is forcing the plaintiffs

25   to be immunized; rather, plaintiffs here must be either

1    immunized or they must show that a physician determines that

2    a child has a medical contraindication consistent with the

3    CDC's guidance, or importantly, other nationally recognized

4    evidence-based standards of care.  That's what the regulation

5    says, your Honor.  So stated differently, when it comes to

6    immunization, there is simply no fundamental right not to be

7    required to conform to the CDC guidance or other nationally

8    recognized evidence-based standards of care.

9            Furthermore, because receiving an education is not

10   a fundamental right, and because plaintiffs can choose to be

11   homeschooled instead of being immunized, plaintiffs' strict

12   scrutiny argument completely fails.

13           Additionally, your Honor, plaintiffs bring only a

14   facial challenge against the state defendants in their

15   challenge to the 19 -- or the 2019 amendments to the

16   regulation.  This is crucial because to succeed on a facial

17   challenge, plaintiffs must demonstrate that no set of

18   circumstances exist under which the regulation would be

19   valid, that the law is unconstitutional in all of its

20   applications.  Because the Supreme Court has stated that this

21   is the most difficult challenge to mount successfully,

22   because the regulation at issue here is not unconstitutional

23   in all of its applications, the facial challenge fails.  The

24   regulation plainly has a legitimate sweep.  Plaintiffs argue

25   that the 2019 regulation's amendments are facially invalid

1    and unconstitutional because they theoretically allow for

2    non-medically-trained local school officials to overturn

3    opinions and recommendations of the plaintiffs' physicians.

4    However, as long as the court can conceive of any potential

5    circumstance, any -- in which a local school official could

6    possibly make such a determination correctly, and therefore

7    constitutionally, then the plaintiffs' facial challenge to

8    this aspect of the regulation also would fail, your Honor.

9         We would also ask the court for those reasons and

10   the reasons identified by Chief Justice John Roberts in the

11   *South Bay* decision where he said that public officials, when

12   they undertake acts in areas fraught with medical and

13   scientific uncertainty, their latitude must be especially

14   broad.  Where those broad limits are not exceeded, they

15   should not be subject to second guessing by an unelected

16   federal judiciary which lacks the background, competence, and

17   expertise to assess public health and is not accountable to

18   the people.  That was in *South Bay* decision, concurring

19   decision, your Honor.

20        Now for all of these reasons, we think that the

21   state defendants' motion to dismiss should be granted.

22        And as for the motion to amend the complaint, your

23   Honor, it would be futile to amend the complaint, because the

24   proposed amendments do not correct any problems in the

25   original complaint.  First of all, most of the amendments do

1   not even involve the plaintiffs' claims against the state

2   defendants and the others are clearly inadequate.  For

3   instance, your Honor, plaintiffs state that they want to more

4   clearly plead their substantive due process claim.  However,

5   the Second Circuit's *Phillips* decision completely blocks that

6   claim, your Honor, so amending it would be futile.

7   Additionally, your Honor, plaintiffs wish to amend the

8   complaint to raise a claim related to being barred from

9   attending online school.  But again, just yesterday, the

10  Second Circuit found no merit in that claim.  So the

11  amendment is also clearly futile.

12          With that said, your Honor, unless the court has

13  any questions, the state defendants are prepared to submit on

14  our papers as well as the court's prior decision in this

15  action addressing injunctive relief and on the Second

16  Circuit's order from yesterday.  All three point the way

17  toward dismissal of this action and toward denial of

18  plaintiffs' motion to amend.  Thank you, your Honor.

19          THE COURT:  Thank you, Mr. McCartin.  And let me

20  ask, do any of the other defense counsel seek to argue their

21  motions to dismiss?

22          MR. KLEINBERG:  Your Honor, this is Adam Kleinberg,

23  I just had a few things to supplement.

24          THE COURT:  Yes.

25          MR. KLEINBERG:  Thank you, your Honor.  Again, I

1    represent a few of the school districts and their officials.

2    Certainly not going to go over what the state defendants just

3    argued, I join in each and every one of those positions.

4         As far as the qualified immunity issue which

5    plaintiffs' counsel submitted a memorandum, I guess a letter

6    memorandum of law yesterday, one of the things they argue is

7    qualified immunity is normally asserted in the answer, but

8    the Second Circuit has held in *Pani v. Empire Blue Cross*, a

9    1998 decision, 152 F.3d 67, that affirmative defense of

10   qualified immunity could be resolved as early as possible by

11   the court and that's something that we see over and over and

12   over in decisions, that qualified immunity should be resolved

13   as early as possible.  That would be at this time, the

14   pre-answer stage.

15        As far as the clearly established right argument,

16   we don't believe anything prohibited the state from enacting

17   the qualifications it set on lawful medical exemption and I

18   believe plaintiffs' counsel conceded that at the prior oral

19   argument.  Here, the school officials in this case we believe

20   should be afforded qualified immunity as it was objectively

21   reasonable to believe that state law was lawful at the time

22   of these challenged decisions.  It certainly was not clearly

23   established law that school principals were forbidden from

24   denying an exemption where a student provides a doctor's

25   note.  We would, you know, look only at page 17 of the

1    court's prior decision on the injunction motion where the

2    court noted, states may vest officials with broad discretion

3    in matters of application of health laws and that the

4    plaintiffs were unlikely to succeed to show it was irrational

5    or arbitrary to assign the first level of review to school

6    principals.  Plaintiffs' memo on qualified immunity cites the

7    Second Circuit's decision in *Alliance for Open Society v.*

8    *U.S. Agency*, that's on page 5 of their memo.  In there the

9    Second Circuit applied a heightened standard of review

10   because compelling speech to receive a governmental benefit

11   could not be squared with the First Amendment.  Again,

12   there's no such heightened scrutiny warranted here, and that

13   goes hand in hand with plaintiff's argument this morning

14   about the *Catholic Diocese* case.  As your Honor questioned

15   and plaintiffs' counsel indicated, that case related to the

16   First Amendment, freedom of religion.  That's not here.

17   We've been over this already with plaintiffs before and the

18   court agreed in the prior decision.

19           As far as the, you know, the arguments I believe

20   are twisted in that the law lays out the definition for what

21   would qualify for medical exemption and your Honor's

22   questioned about it today.  If the school district believes

23   the students have not met that definition, they're bound to

24   apply the law.  And I believe to pretend that school

25   principals do this in a vacuum without relying on medical

1    officials in their determination is disingenuous.  But more

2    importantly, it's disproven by the comprehensive submissions

3    that the defendants made, you know, on the unsuccessful

4    injunction application made by the plaintiffs.  The school

5    officials did not disregard medical opinions.  As shown on

6    papers, it's not just me declaring it or concluding it, they

7    relied on medical officers, laid out their thought process

8    and steps taken in reaching conclusions.  So that allowed the

9    court to go past the sweeping allegations in the pleadings

10   and give the detailed review.

11            As far as the area of personal involvement on

12   qualified immunity, on page 9 of their memo, plaintiffs

13   allege the individuals created unconstitutional policy or

14   custom.  Just wanted to note for the court the decision in

15   *Agosto v. New York City Department of Education*, it's a

16   December 4th, 2020, Second Circuit decision in which the

17   Second Circuit held a school principal could not be held as a

18   policymaker for *Monell* purposes.  So here we would argue the

19   plaintiffs cannot establish liability against the school

20   districts themselves for claims that these "rogue"

21   administrators should have blindly accepted the doctors'

22   notes.  But more importantly, as we established on the

23   injunction motion, there is no unconstitutional policy so we

24   don't believe there's a viable claim against the individuals.

25            And additionally with another recent decision, your

1   Honor, plaintiffs allege that defendants were grossly

2   negligent in supervising these medical professionals.  There

3   was a decision, *Tangreti v. Bachmann*, 2020 WL 7687688, was

4   decided December 28th, 2020, so just about a week ago.

5   The -- basically it overturned the *Colon* decision from 1995

6   in favor of the *Iqbal* standard that the Supreme Court set in

7   2009.  And it basically says that supervisors can only be

8   held liable for their own intentional misconduct or

9   deliberate indifference, not gross negligence.  So the Second

10  Circuit is applying the *Iqbal* standard and I think that would

11  apply here as well.

12          And just very briefly on some of the substantive

13  arguments, as the court noted on page 14 of its prior

14  decision on the injunction motion, the plaintiffs were

15  unlikely to show the medical exemption regulations directly

16  infringed on liberty interests, parent's right to refuse

17  unwarranted medical procedures as they do not force the

18  parents to consent to vaccination.  That ties into the

19  fundamental right and heightened scrutiny test.

20          On the as-applied challenges, we still continue

21  that this should never have been a class action.  Suffolk

22  County school districts should not have been sued in the

23  Northern District, a six-hour drive away on a good day.

24          And lastly, I just want to point out that we have

25  raised in our papers but we've communicated with plaintiffs'

1    counsel many times on this and never got an answer, on the

2    Albany School District, the students moved out of the

3    district, so we have requested multiple times for the

4    plaintiff to discontinue and, you know, here we are, with

5    Albany still in the case despite there not being an Albany

6    resident as a plaintiff.

7              With that said, your Honor, unless there's any

8    further questions, we will rely on the papers and the court's

9    prior decisions, and thank you very much for your time.

10             THE COURT:  Thank you, Mr. Kleinberg.  Does any

11   other defense counsel seek to argue the motion to dismiss?

12             MS. TASHJIAN:  Your Honor, this is Roxanne Tashjian

13   of Cullen & Dykman for Coxsackie-Athens School District,

14   Penfield Central School District, and Lansing Central School

15   District.  We would just like to echo the sentiments of

16   counsel and submit our motion.

17             THE COURT:  Thank you, Counsel.

18             MS. RICCARDULLI:  Your Honor, this -- I'm sorry.

19             THE COURT:  Go ahead.

20             MS. RICCARDULLI:  Your Honor, this is Meishin

21   Riccardulli for Brother David Migliorino.  We also would like

22   to join in the arguments of our co-defendants, in particular

23   South Huntington Union Free School District and Dr. David

24   Bennardo.  I would just like to make a point that we are in

25   the unique position of, Brother David Migliorino is a

1   principal in a private Catholic high school.  He made no

2   independent determinations with regard to the sufficiency of

3   the plaintiff's request for medical exemption.  St. Anthony's

4   was simply informed that plaintiff John Loe did not have a

5   valid medical exemption for the required vaccinations and

6   acted accordingly.  Brother Migliorino never made any

7   determinations with respect to his application or whether it

8   was sufficient.  He simply followed the state regulations.

9   Otherwise we rest on our papers and join in the arguments of

10  the co-defendants.  Thank you for your time, your Honor.

11          THE COURT:  Thank you, Counsel.  And Ms. Gibson,

12  anything in response?

13          MS. GIBSON:  Yes, your Honor.  I, I guess as a

14  threshold matter, a number of the defendants have raised

15  factual assertions and submissions outside of the four

16  corners of the complaint.  Again, I object to that.  I will

17  waive, I will -- it sounds like the court has made a decision

18  about rational basis, I don't feel the need to submit further

19  briefing on the question of the -- of the decision for John

20  Doe, other than the argument that it should not be, that

21  decision should not be included because it has factual

22  assertions and other assertions that are not before the court

23  in the complaint but I don't need to submit briefing if the

24  court wants to issue a decision sooner than that.

25          And I object to the state's and other defendants'

1     characterization of this once again as a facial challenge.

2     This is facial and as applied, not only by the individual

3     defendants but by the Department of Health.  As applied, the

4     Department of Health has limited, limited the regulations

5     beyond a broad reading of nationally based evidence, national

6     evidence-based standards of care and has, you know, through

7     defendant Rausch-Phung and others, as the complaint details,

8     instituted a very narrow criteria that excludes hundreds of

9     medically fragile children who have conditions that fall

10    outside of that narrow reading, thereby submitting them to

11    risk.

12            I object to the characterization of the law and the

13    facts that nobody's being forced to vaccinate.  Infringement

14    on a fundamental right doesn't require complete prohibition,

15    there is always a penalty of some kind.  For example, the

16    court in *Roman Catholic Diocese v. Cuomo* recently laid out,

17    had a long discussion about *Jacobson* and how the fact that

18    the only penalty was a $5 fine, you know, might allow today

19    to meet strict scrutiny because he wasn't personally at risk

20    and he only fixed the $5 fine which didn't really prohibit

21    him from exercising that fundamental right to bodily

22    autonomy.  Slightly different than this case which is the

23    right in cases where you're actually put at risk of physical

24    harm as certified by a doctor, which *Jacobson* itself said

25    would be unconstitutional for any court to allow that.  And

1    so here, being deprived of any opportunity to go to any

2    school is a far greater infringement than a $5 fine, and

3    there's not the compelling need of that smallpox outbreak to

4    drive the state's interest to a point where it can justify

5    such a minor infringement.  So we do have to look at the

6    level of infringement, you know, just analyze under strict

7    scrutiny.  We are looking at well-established fundamental

8    rights, bodily autonomy, the right to receive medical

9    treatment, and the right to -- of parents to make these

10   decisions, but most importantly the right to a medical

11   exemption, to safeguard one's life and health when their life

12   and health is at risk.  And so that is an independent

13   determination this court needs to make in each of these

14   individual cases.  Were these children actually at risk of

15   harm and were they denied a medical exemption even though

16   they're at risk of harm.  And do these regulations create a

17   situation where children are being placed in that situation.

18            And you know, the complaint provides quite a lot of

19   detail about why they are being placed in that situation and

20   they have been placed in that situation.  These are very sick

21   children, and their doctors and specialists think they're at

22   risk and these school principals and administrators who have

23   never met them and have never examined their full chart were

24   not qualified to overrule their treating physicians.

25            And that's really the question before the court, is

1    it really the case that if any school principal randomly got

2    it right, that would make this law okay, even if hundreds of

3    children died as a result of this -- these policies.  Would

4    we say -- I mean, why should children have doctors at all?

5    Why not just go to their school principal directly for any

6    medical care they have?  These are well-protected rights.

7    Our medical rights are protected through the cases that I

8    cite in the papers and through many, many Supreme Court

9    decisions articulating the right to a medical exemption as a

10   separate right that requires the utmost strict scrutiny.

11          So I will rest there, other than to say that the

12   individual -- sorry, just two more responses.  The *Tangreti*

13   decision about personal involvement doesn't involve a case

14   like this where the school principals actually were the

15   final -- they were personally involved.  They may have

16   consulted with medical professionals but ultimately they made

17   the decision.  So they don't get to just, you know, this

18   isn't a *respondeat superior* case, this is a decision to

19   overrule a treating physician, and in some cases such as the

20   case of the Coe family, the principals allege that they

21   didn't even follow the advice of Dr. Rausch-Phung anyway,

22   they made the decision wholly on their own and they provided

23   no explanation for what it was based on.

24          And the case of a private school, that is really a

25   fact-based inquiry, it's not just the blanket if you're a

1     private school actor, you can't have liability.  The question

2     is the nature of the right and all of that is in the papers

3     so to the extent that is relevant, I would rest on my papers

4     on that issue.

5            THE COURT:  Okay.  Thank you, Ms. Gibson, and thank

6     you, all counsel, for your argument.  As I mentioned, I do

7     have to apply the law, I don't -- I have to apply the law

8     that's been set by the Supreme Court and the Second Circuit.

9     I will take this case under submission and issue a written

10    decision.  Anything further from any counsel?

11           MR. McCARTIN:  No, your Honor.

12           MR. KLEINBERG:  No, your Honor.

13           MS. GIBSON:  No, Judge, thank you.

14           MS. TASHJIAN:  No, your Honor, thank you.

15           MS. RICCARDULLI:  No, your Honor, thank you.

16           THE COURT:  Okay, thank you to all counsel.

17           MR. McCARTIN:  Thank you and happy new year, your

18    Honor.

19           THE COURT:  Happy new year to everyone.

20                (Proceedings Adjourned, 10:47 a.m.)

21

22

23

24

25

1

2                    CERTIFICATE OF OFFICIAL REPORTER

3

4

5        I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

6   Official Realtime Court Reporter, in and for the

7   United States District Court for the Northern

8   District of New York, DO HEREBY CERTIFY that

9   pursuant to Section 753, Title 28, United States

10   Code, that the foregoing is a true and correct

11   transcript of the stenographically reported

12   proceedings held in the above-entitled matter and

13   that the transcript page format is in conformance

14   with the regulations of the Judicial Conference of

15   the United States.

16

17                      Dated this 13th day of January, 2021.

18

19

20                      /S/ JODI L. HIBBARD

21                      JODI L. HIBBARD, RPR, CRR, CSR
                         Official U.S. Court Reporter
22

23

24

25